APPEAL,COMPLEX,PROTO,SEVER

# U.S. District Court
# DISTRICT OF KANSAS (Wichita)
# CRIMINAL DOCKET FOR CASE #: <u>6:12–cr–10089–MLB</u> All Defendants

Case title: USA v. Najera et al                    Date Filed: 04/16/2012

Assigned to: District Judge Monti L. Belot

### Defendant (1)

| | |
|---|---|
| **Jason Najera** | represented by **Jason Najera** |
| *TERMINATED: 04/30/2013* | 701 SE Stone Road |
| *also known as* | ElDorado, KS 67042 |
| Ene | Email: |
| *TERMINATED: 04/30/2013* | PRO SE |
| *also known as* | *Bar Status:* |
| Norte | |
| *TERMINATED: 04/30/2013* | **David H. Moses** |
| | Case, Moses, Zimmerman & Martin, PA – Wichita |
| | 200 W. Douglas, Suite 900 |
| | Wichita, KS 67202 |
| | 316–303–0100 |
| | Fax: 316–265–8263 |
| | Email: dmoses@cmzwlaw.com |
| | *LEAD ATTORNEY* |
| | *ATTORNEY TO BE NOTICED* |
| | *Designation: CJA Appointment* |
| | *Bar Status: Active* |

### Pending Counts

18:1959(a)(5) – Violent crimes in aid of racketeering: attempted murder; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (26)

### Disposition

120 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived; $16,242.10 Restitution

### Highest Offense Level (Opening)

Felony

### Terminated Counts

18:1962(d) – Conspiracy to commit racketeering activities (SEALED INDICTMENT 04/16/2012)

### Disposition

Dismissed

1

(1)

18:1959(a)(3) – Violent crimes in aid of racketeering: assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (27)

Dismissed

18:922(g)(1) and 18:924(a)(2) – Felon in possession of ammunition (SEALED INDICTMENT 04/16/2012) (33–34)

Dismissed

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

Assigned to: District Judge Monti L. Belot

Appeals court case number: 14–3006 10CCA

**Defendant (2)**

| | | |
| --- | --- | --- |
| **Pedro Garcia** | represented by | **John V. Wachtel** |
| *TERMINATED: 01/07/2014* | | Klenda Austerman, LLC – Wichita |
| *also known as* | | 1600 Epic Center |
| Peter Garcia | | 301 N. Main |
| *TERMINATED: 01/07/2014* | | Wichita, KS 67202–4816 |
| *also known as* | | 316–267–0331 |
| Pistol Pete | | Fax: 316–267–0333 |
| *TERMINATED: 01/07/2014* | | Email: jvwachtel@klendalaw.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: CJA Appointment* |
| | | *Bar Status: Active* |
| | | |
| | | **Charles M. Rogers** |
| | | Wyrsch Hobbs Mirakian, PC |
| | | 1000 Walnut–Ste. 1600 |
| | | Kansas City, MO 64106 |
| | | 816–221–0080 |
| | | Fax: 816–221–3280 |
| | | Email: acquit@whmlaw.net |
| | | *TERMINATED: 09/25/2012* |

*Designation: CJA Appointment*
*Bar Status: WDMO Active*

**Pending Counts**

18:1962(d) – Conspiracy to commit racketeering activities (SEALED INDICTMENT 04/16/2012)
(1)

18:1959(a)(5) – Violent crimes in aid of racketeering: conspiracy to murder (SEALED INDICTMENT 04/16/2012)
(2)

18:1959(a)(1) – Violent crimes in aid of racketeering: murder; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012)
(3)

18:1959(a)(5) – Violent crimes in aid of racketeering: attempted murder; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012)
(4)

18:1959(a)(3) – Violent crimes in aid of racketeering: assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012)
(5)

18:924(c)(1)(A) – Possess/discharge a firearm in furtherance of a crime of violence; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012)
(6)

18:1959(a)(3) – Violent crimes in aid of racketeering: Assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012)
(7)

18:1959(a)(6) – Violent crimes in aid of racketeering: conspiracy to commit assault with a dangerous weapon (SEALED INDICTMENT

**Disposition**

240 months imprisonment, said term to run concurrently with Counts 2, 3, 4 and 8; 3 years supervised release, said term to run concurrently with Counts 2–7, 8 and 9; $900.00 Assessment ($100/Count)

120 months imprisonment, said term to run concurrently with Counts 1, 3, 5, 7 and 8; 3 years supervised release, said term to run concurrently with Counts 1, 3–7, 8 and 9; $900.00 Assessment ($100/Count)

Life imprisonment; 3 years supervised release, said term to run concurrently with Counts 1–2, 4–7, 8 and 9; $900.00 Assessment ($100/Count)

120 months imprisonment, said term to run concurrently with Counts 1, 3, 5, 7 and 8; 3 years supervised release, said term to run concurrently with Counts 1–3, 5–7, 8 and 9; $900.00 Assessment ($100/Count)

240 months imprisonment, said term to run concurrently with Counts 2, 3, 4 and 8; 3 years supervised release, said term to run concurrently with Counts 1–4, 6–8 and 9; $900.00 Assessment ($100/Count)

25 years imprisonment, said term to run consecutively to all other Counts; 3 years supervised release, said term to run concurrently with Counts 1–5, 7, 8 and 9; $900.00 Assessment ($100/Count)

240 months imprisonment, said term to run concurrently with Counts 2, 3, 4 and 8; 3 years supervised release, said term to run concurrently with Counts 1–6, 8 and 9; $900.00 Assessment ($100/Count)

36 months imprisonment, said term to run concurrently with Counts 1, 2, 3, 4, 5, 7 and 8; 1 year supervised release, said term to run concurrently with all other Counts; $900.00

3

| | |
|---|---|
| 04/16/2012)<br>(8) | Assessment ($100/Count) |
| 18:924(c)(1)(A) – Possess and brandish a firearm in furtherance of a crime of violence; aggravated robbery; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (9) | 7 years imprisonment, said term to run consecutively to all other Counts; 3 years supervised release, said term to run concurrently with Counts 1–7 and 8; $900.00 Assessment ($100/Count) |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

Assigned to: District Judge Monti L. Belot

Appeals court case numbers: 13–3140 10CCA, 14–3039 10CCA

**Defendant (3)**

| | | |
|---|---|---|
| **Gonzalo Ramirez**<br>*TERMINATED: 01/09/2014*<br>*also known as*<br>Gonzo<br>*TERMINATED: 01/09/2014* | represented by | **Joel Mandelman**<br>Office of Federal Public Defender – Wichita<br>850 Epic Center<br>301 North Main Street<br>Wichita, KS 67202<br>316–269–6445<br>Fax: 316–269–6175<br>Email: joel_mandelman@fd.org<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Public Defender or Community Defender Appointment*<br>*Bar Status: Active*<br><br>**Kirk C. Redmond**<br>Office of Federal Public Defender – KCK<br>500 State Avenue, Suite 201 |

4

Kansas City, KS 66101–2400
913–551–6712
Fax: 913–551–6562
Email: kirk_redmond@fd.org
*TERMINATED: 09/12/2012*
*Designation: Public Defender or Community*
*Defender Appointment*
*Bar Status: Active*

**Melody J. Evans**
Office of Federal Public Defender – Topeka
117 SW 6th Avenue, Suite 200
Topeka, KS 66603
785–232–9828
Fax: 785–232–9886
Email: Melody_Evans@fd.org
*TERMINATED: 09/12/2012*
*Designation: Public Defender or Community*
*Defender Appointment*
*Bar Status: Active*

**Timothy J. Henry**
Office of Federal Public Defender – Wichita
850 Epic Center
301 North Main Street
Wichita, KS 67202
316–269–6445
Fax: 316–269–6175
Email: Tim_Henry@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community*
*Defender Appointment*
*Bar Status: Active*

| **Pending Counts** | **Disposition** |
| --- | --- |
| | Imprisonment: Life plus 57 years to be served consecutively (count 3 – life; counts 2,4,10 and 11 – 120 months, each count to run concurrently with counts 1,3,5,7,8 and 12; counts 1,5,7 and 12: 240 months, each count, to run concurrently with counts 2,3,4,8,10 and 11; count 8; 36 months to run concurrently with counts 1–5,7,8,10,11 & 12; Count 9 – 7 years to run consecutively to all other counts; Count 6 25 years to run consecutively to all other counts and count 13 – 25 years to run consecutively to all other counts); Supervised release: 3 years total (3 years on each of counts 1–7, 9–13 to run concurrently and 1 year on count 8, to run concurrently with all other counts); Assessment: $1,300.00 |
| 18:1962(d) – Conspiracy to commit racketeering activities (SEALED INDICTMENT 04/16/2012) (1) | |

5

18:1959(a)(5) – Violent crimes in aid of racketeering: conspiracy to murder (SEALED INDICTMENT 04/16/2012) (2)

Imprisonment: Life plus 57 years to be served consecutively (count 3 – life; counts 2,4,10 and 11 – 120 months, each count to run concurrently with counts 1,3,5,7,8 and 12; counts 1,5,7 and 12: 240 months, each count, to run concurrently with counts 2,3,4,8,10 and 11; count 8; 36 months to run concurrently with counts 1–5,7,8,10,11 & 12; Count 9 – 7 years to run consecutively to all other counts; Count 6 25 years to run consecutively to all other counts and count 13 – 25 years to run consecutively to all other counts); Supervised release: 3 years total (3 years on each of counts 1–7, 9–13 to run concurrently and 1 year on count 8, to run concurrently with all other counts); Assessment: $1,300.00

18:1959(a)(1) – Violent crimes in aid of racketeering: murder; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (3)

Imprisonment: Life plus 57 years to be served consecutively (count 3 – life; counts 2,4,10 and 11 – 120 months, each count to run concurrently with counts 1,3,5,7,8 and 12; counts 1,5,7 and 12: 240 months, each count, to run concurrently with counts 2,3,4,8,10 and 11; count 8; 36 months to run concurrently with counts 1–5,7,8,10,11 & 12; Count 9 – 7 years to run consecutively to all other counts; Count 6 25 years to run consecutively to all other counts and count 13 – 25 years to run consecutively to all other counts); Supervised release: 3 years total (3 years on each of counts 1–7, 9–13 to run concurrently and 1 year on count 8, to run concurrently with all other counts); Assessment: $1,300.00

18:1959(a)(5) – Violent crimes in aid of racketeering: attempted murder; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (4)

Imprisonment: Life plus 57 years to be served consecutively (count 3 – life; counts 2,4,10 and 11 – 120 months, each count to run concurrently with counts 1,3,5,7,8 and 12; counts 1,5,7 and 12: 240 months, each count, to run concurrently with counts 2,3,4,8,10 and 11; count 8; 36 months to run concurrently with counts 1–5,7,8,10,11 & 12; Count 9 – 7 years to run consecutively to all other counts; Count 6 25 years to run consecutively to all other counts and count 13 – 25 years to run consecutively to all other counts); Supervised release: 3 years total (3 years on each of counts 1–7, 9–13 to run concurrently and 1 year on count 8, to run concurrently with all other counts); Assessment: $1,300.00

18:1959(a)(3) – Violent crimes in aid of racketeering: assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (5)

Imprisonment: Life plus 57 years to be served consecutively (count 3 – life; counts 2,4,10 and 11 – 120 months, each count to run concurrently with counts 1,3,5,7,8 and 12; counts 1,5,7 and 12: 240 months, each count, to run concurrently with counts 2,3,4,8,10 and 11; count 8; 36 months to run

concurrently with counts 1–5,7,8,10,11 & 12; Count 9 – 7 years to run consecutively to all other counts; Count 6 25 years to run consecutively to all other counts and count 13 – 25 years to run consecutively to all other counts); Supervised release: 3 years total (3 years on each of counts 1–7, 9–13 to run concurrently and 1 year on count 8, to run concurrently with all other counts); Assessment: $1,300.00

18:924(c)(1)(A) – Possess/discharge a firearm in furtherance of a crime of violence; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (6)

Imprisonment: Life plus 57 years to be served consecutively (count 3 – life; counts 2,4,10 and 11 – 120 months, each count to run concurrently with counts 1,3,5,7,8 and 12; counts 1,5,7 and 12: 240 months, each count, to run concurrently with counts 2,3,4,8,10 and 11; count 8; 36 months to run concurrently with counts 1–5,7,8,10,11 & 12; Count 9 – 7 years to run consecutively to all other counts; Count 6 25 years to run consecutively to all other counts and count 13 – 25 years to run consecutively to all other counts); Supervised release: 3 years total (3 years on each of counts 1–7, 9–13 to run concurrently and 1 year on count 8, to run concurrently with all other counts); Assessment: $1,300.00

18:1959(a)(3) – Violent crimes in aid of racketeering: Assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (7)

Imprisonment: Life plus 57 years to be served consecutively (count 3 – life; counts 2,4,10 and 11 – 120 months, each count to run concurrently with counts 1,3,5,7,8 and 12; counts 1,5,7 and 12: 240 months, each count, to run concurrently with counts 2,3,4,8,10 and 11; count 8; 36 months to run concurrently with counts 1–5,7,8,10,11 & 12; Count 9 – 7 years to run consecutively to all other counts; Count 6 25 years to run consecutively to all other counts and count 13 – 25 years to run consecutively to all other counts); Supervised release: 3 years total (3 years on each of counts 1–7, 9–13 to run concurrently and 1 year on count 8, to run concurrently with all other counts); Assessment: $1,300.00

18:1959(a)(6) – Violent crimes in aid of racketeering: conspiracy to commit assault with a dangerous weapon (SEALED INDICTMENT 04/16/2012) (8)

Imprisonment: Life plus 57 years to be served consecutively (count 3 – life; counts 2,4,10 and 11 – 120 months, each count to run concurrently with counts 1,3,5,7,8 and 12; counts 1,5,7 and 12: 240 months, each count, to run concurrently with counts 2,3,4,8,10 and 11; count 8; 36 months to run concurrently with counts 1–5,7,8,10,11 & 12; Count 9 – 7 years to run consecutively to all other counts; Count 6 25 years to run consecutively to all other counts and count 13 – 25 years to run consecutively to all other counts); Supervised release: 3 years total (3 years on each of counts

18:924(c)(1)(A) – Possess and brandish a firearm in furtherance of a crime of violence; aggravated robbery; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012)
(9)

1–7, 9–13 to run concurrently and 1 year on count 8, to run concurrently with all other counts); Assessment: $1,300.00

Imprisonment: Life plus 57 years to be served consecutively (count 3 – life; counts 2,4,10 and 11 – 120 months, each count to run concurrently with counts 1,3,5,7,8 and 12; counts 1,5,7 and 12: 240 months, each count, to run concurrently with counts 2,3,4,8,10 and 11; count 8; 36 months to run concurrently with counts 1–5,7,8,10,11 & 12; Count 9 – 7 years to run consecutively to all other counts; Count 6 25 years to run consecutively to all other counts and count 13 – 25 years to run consecutively to all other counts); Supervised release: 3 years total (3 years on each of counts 1–7, 9–13 to run concurrently and 1 year on count 8, to run concurrently with all other counts); Assessment: $1,300.00

18:1959(a)(5) – Violent crimes in aid of racketeering: conspiracy to commit murder (SEALED INDICTMENT 04/16/2012)
(10)

Imprisonment: Life plus 57 years to be served consecutively (count 3 – life; counts 2,4,10 and 11 – 120 months, each count to run concurrently with counts 1,3,5,7,8 and 12; counts 1,5,7 and 12: 240 months, each count, to run concurrently with counts 2,3,4,8,10 and 11; count 8; 36 months to run concurrently with counts 1–5,7,8,10,11 & 12; Count 9 – 7 years to run consecutively to all other counts; Count 6 25 years to run consecutively to all other counts and count 13 – 25 years to run consecutively to all other counts); Supervised release: 3 years total (3 years on each of counts 1–7, 9–13 to run concurrently and 1 year on count 8, to run concurrently with all other counts); Assessment: $1,300.00

18:1959(a)(5) – Violent crimes in aid of racketeering: attempted murder; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012)
(11)

Imprisonment: Life plus 57 years to be served consecutively (count 3 – life; counts 2,4,10 and 11 – 120 months, each count to run concurrently with counts 1,3,5,7,8 and 12; counts 1,5,7 and 12: 240 months, each count, to run concurrently with counts 2,3,4,8,10 and 11; count 8; 36 months to run concurrently with counts 1–5,7,8,10,11 & 12; Count 9 – 7 years to run consecutively to all other counts; Count 6 25 years to run consecutively to all other counts and count 13 – 25 years to run consecutively to all other counts); Supervised release: 3 years total (3 years on each of counts 1–7, 9–13 to run concurrently and 1 year on count 8, to run concurrently with all other counts); Assessment: $1,300.00

18:1959(a)(3) – Violent crimes in aid of racketeering: assault with a

Imprisonment: Life plus 57 years to be served consecutively (count 3 – life; counts 2,4,10 and 11

dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012)
(12)

– 120 months, each count to run concurrently with counts 1,3,5,7,8 and 12; counts 1,5,7 and 12: 240 months, each count, to run concurrently with counts 2,3,4,8,10 and 11; count 8; 36 months to run concurrently with counts 1–5,7,8,10,11 & 12; Count 9 – 7 years to run consecutively to all other counts; Count 6 25 years to run consecutively to all other counts and count 13 – 25 years to run consecutively to all other counts); Supervised release: 3 years total (3 years on each of counts 1–7, 9–13 to run concurrently and 1 year on count 8, to run concurrently with all other counts); Assessment: $1,300.00

18:924(c)(1)(A) – Possess and discharge a firearm in furtherance of a crime of violence; aggravated assault; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012)
(13)

Imprisonment: Life plus 57 years to be served consecutively (count 3 – life; counts 2,4,10 and 11 – 120 months, each count to run concurrently with counts 1,3,5,7,8 and 12; counts 1,5,7 and 12: 240 months, each count, to run concurrently with counts 2,3,4,8,10 and 11; count 8; 36 months to run concurrently with counts 1–5,7,8,10,11 & 12; Count 9 – 7 years to run consecutively to all other counts; Count 6 25 years to run consecutively to all other counts and count 13 – 25 years to run consecutively to all other counts); Supervised release: 3 years total (3 years on each of counts 1–7, 9–13 to run concurrently and 1 year on count 8, to run concurrently with all other counts); Assessment: $1,300.00

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

None

**Disposition**

**Highest Offense Level (Terminated)**

None

**Complaints**

None

**Disposition**

Assigned to: District Judge Monti L. Belot

**Defendant (4)**

**Russell Worthey**
*TERMINATED: 01/28/2014*
*also known as*
Blanco
*TERMINATED: 01/28/2014*

represented by **James R. Pratt**
Pratt Law L.L.C.
445 N. Waco
Wichita, KS 67202
316–262–2600
Fax: 316–262–2606
Email: jim@jamesrprattlaw.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*
*Bar Status: Active*

**Pending Counts**

18:1962(d) Racketeering – narcotics
(INFORMATION 5/3/13)
(1s)

18:924(c)(1)(A) –
Possession/Discharging a firearm in
furtherance of a crime of violence;
18:2 – Aiding and abetting (FIRST
SUPERSEDING INFORMATION
05/13/2013)
(2ss)

**Disposition**

120 Months Imprisonment (Count 1: time served,
Count 2: 120 months, to run consecutively to
count 1); 3 Years Supervised Release (Counts 1 &
2: 3 years each count, to run concurrent); $200
Assessment; Fine is Waived

120 Months Imprisonment (Count 1: time served,
Count 2: 120 months, to run consecutively to
count 1); 3 Years Supervised Release (Counts 1 &
2: 3 years each count, to run concurrent); $200
Assessment; Fine is Waived

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

18:1962(d) – Racketeering –
Narcotics (FIRST SUPERSEDING
INFORMATION 05/13/2013)
(1ss)

18:1959(a)(5) – Violent crimes in
aid of racketeering: conspiracy to
murder (SEALED INDICTMENT
04/16/2012)
(2)

18:924(c)(1)(A) Possess/Discharge
a Firearm in Furtherance of a Crime
of Violence; 18:2 Aiding and
abetting (INFORMATION 5/3/13)
(2s)

18:1959(a)(1) – Violent crimes in
aid of racketeering: murder; 18:2 –
Aiding and abetting (SEALED
INDICTMENT 04/16/2012)

**Disposition**

Dismissed

Dismissed

Dismissed

Dismissed

(3)

| | |
|---|---|
| 18:1959(a)(5) – Violent crimes in aid of racketeering: attempted murder; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (4) | Dismissed |
| 18:1959(a)(3) – Violent crimes in aid of racketeering: assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (5) | Dismissed |
| 18:924(c)(1)(A) – Possess/discharge a firearm in furtherance of a crime of violence; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (6) | Dismissed |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

Assigned to: District Judge Monti L. Belot

**Defendant (5)**

| | | |
|---|---|---|
| **Anthony Wright**<br>*TERMINATED: 02/12/2014*<br>*also known as*<br>Huesos<br>*TERMINATED: 02/12/2014* | represented by | **Jay F. Fowler**<br>Foulston Siefkin LLP – Wichita<br>1551 N Waterfront Parkway – Ste. 100<br>Wichita, KS 67206–4466<br>316–291–9541<br>Fax: 316–267–6345<br>Email: jfowler@foulston.com<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment*<br>*Bar Status: Active* |

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1962(d) – Conspiracy to commit racketeering activities (SEALED INDICTMENT | 108 Months Imprisonment (Count 1: time served; Count 6: 108 months, term to run consecutively to count 1); 3 Years Supervised Release (counts 1 & |

04/16/2012)
(1)

18:924(c)(1)(A) –
Possess/discharge a firearm in
furtherance of a crime of violence;
18:2 – Aiding and abetting
(SEALED INDICTMENT
04/16/2012)
(6)

6: 3 years, each count, terms to run concurrently);
$200 Assessment; Fine is Waived

108 Months Imprisonment (Count 1: time served;
Count 6: 108 months, term to run consecutively to
count 1); 3 Years Supervised Release (counts 1 &
6: 3 years, each count, terms to run concurrently);
$200 Assessment; Fine is Waived

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(5) – Violent crimes in aid of racketeering: conspiracy to murder (SEALED INDICTMENT 04/16/2012) (2) | Dismissed |
| 18:1959(a)(1) – Violent crimes in aid of racketeering: murder; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (3) | Dismissed |
| 18:1959(a)(5) – Violent crimes in aid of racketeering: attempted murder; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (4) | Dismissed |
| 18:1959(a)(3) – Violent crimes in aid of racketeering: assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (5) | Dismissed |

**Highest Offense Level
(Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

Assigned to: District Judge Monti
L. Belot

**Defendant (6)**

**Joshua Flores**                          represented by    **Carl Fredrick A. Maughan**
*TERMINATED: 09/11/2013*                                    Maughan Law Group, LC
*also known as*                                             200 W Douglas, Suite 350
Big Knox
*TERMINATED: 09/11/2013*
                                                            Wichita, KS 67202
                                                            316–264–2023
                                                            Fax: 316–264–1919
                                                            Email: carl@mlglc.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Designation: CJA Appointment*
                                                            *Bar Status: Active*

**Pending Counts**                                          **Disposition**

18:924(c)(1)(A) – Possess and
brandish a firearm in furtherance of
a crime of violence; aggravated                             84 Months Imprisonment; 3 Years Supervised
robbery; 18:2 – Aiding and                                  Release; $100 Assessment
abetting (SEALED INDICTMENT
04/16/2012)
(9)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                                       **Disposition**

18:1959(a)(3) – Violent crimes in
aid of racketeering: Assault with a
dangerous weapon; 18:2 – Aiding                             Dismissed
and abetting (SEALED
INDICTMENT 04/16/2012)
(7)

18:1959(a)(6) – Violent crimes in
aid of racketeering: conspiracy to
commit assault with a dangerous                             Dismissed
weapon (SEALED INDICTMENT
04/16/2012)
(8)

**Highest Offense Level
(Terminated)**

Felony

**Complaints**                                              **Disposition**

None

Assigned to: District Judge Monti
L. Belot

## Defendant (7)

**Jesus Flores**                                  represented by   **Roger L. Falk**
*TERMINATED: 01/07/2014*                                        Law Office of Roger L. Falk, P.A.
*also known as*                                                 301 West Central Avenue
Tito                                                            Wichita, KS 67202
*TERMINATED: 01/07/2014*                                        316–265–5115
                                                                Fax: 316–265–5183
                                                                Email: roger_falk@sbcglobal.net
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*
                                                                *Designation: CJA Appointment*
                                                                *Bar Status: Active*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(3) – Violent crimes in aid of racketeering: Assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (7) | Time served; 3 years supervised release; $200.00 Assessment |
| 18:1959(a)(6) – Violent crimes in aid of racketeering: conspiracy to commit assault with a dangerous weapon (SEALED INDICTMENT 04/16/2012) (8) | Time served; 1 year supervised release, to run concurrently with Count 7; $200.00 Assessment |

## Highest Offense Level (Opening)

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:924(c)(1)(A) – Possess and brandish a firearm in furtherance of a crime of violence; aggravated robbery; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (9) | Dismissed |

## Highest Offense Level (Terminated)

Felony

| **Complaints** | **Disposition** |
|---|---|

None

Assigned to: District Judge
Monti L. Belot

### Defendant (8)

| | | |
|---|---|---|
| **Angel Cerda**<br>*TERMINATED: 09/05/2013*<br>*also known as*<br>Shrek<br>*TERMINATED: 09/05/2013* | represented by | **Paul S. McCausland**<br>Young, Bogle, McCausland, Wells & Blanchard, PA<br>One Main Place<br>100 North Main Street, Suite 1001<br><br>Wichita, KS 67202–1322<br>316–265–7841<br>Fax: 316–265–3956<br>Email: p.mccausland@youngboglelaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment*<br>*Bar Status: Active* |

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1959(a)(5) – Violent crimes in aid of racketeering: attempted murder; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (11) | 78 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived; $14,926.52 Restitution |

### Highest Offense Level (Opening)

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1959(a)(5) – Violent crimes in aid of racketeering: conspiracy to commit murder (SEALED INDICTMENT 04/16/2012) (10) | Dismissed |
| 18:1959(a)(3) – Violent crimes in aid of racketeering: assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) | Dismissed |

(12)

18:924(c)(1)(A) – Possess and
discharge a firearm in
furtherance of a crime of
violence; aggravated assault;
18:2 – Aiding and abetting
(SEALED INDICTMENT
04/16/2012)
(13)

Dismissed

## Highest Offense Level (Terminated)

Felony

| Complaints | Disposition |
| --- | --- |
| None | |

Assigned to: District Judge Monti
L. Belot

### Defendant (9)

**Juan Torres**
*also known as*
Bugsy

represented by   **Michael J. Shultz**
Shultz Law Office, P.A.
445 North Waco
Wichita, KS 67202
316–269–2284
Fax: 316–269–2011
Email: michael@shultzlaw.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*
*Bar Status: Active*

| Pending Counts | Disposition |
| --- | --- |
| 18:1959(a)(5) – Violent crimes in aid of racketeering: conspiracy to commit murder (SEALED INDICTMENT 04/16/2012) (10) | |
| 18:1959(a)(5) – Violent crimes in aid of racketeering: attempted murder; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (11) | |

18:1959(a)(3) – Violent crimes in

aid of racketeering: assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012)
(12)

18:924(c)(1)(A) – Possess and discharge a firearm in furtherance of a crime of violence; aggravated assault; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012)
(13)

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

Assigned to: District Judge Monti L. Belot

**Defendant (10)**

| | | |
| --- | --- | --- |
| **Alfredo Beltran–Ruiz**<br>*TERMINATED: 02/26/2014*<br>*also known as*<br>Deuce–Deuce<br>*TERMINATED: 02/26/2014* | represented by | **David M. Rapp**<br>Hinkle Law Firm LLC – Epic Center<br>301 North Main Street, Suite #2000<br>Wichita, KS 67202<br>316–660–6214<br>Fax: 316–264–1518<br>Email: drapp@hinklaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment*<br>*Bar Status: Active*<br><br>**Jessica M. Burtin**<br>Hinkle Law Firm LLC – Wichita<br>8621 E. 21st Street North, Suite 200<br>Wichita, KS 67206–2991 |

316–267–2000 x 3142
Fax: 316–631–1742
Email: jshannon@hinklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*
*Bar Status: Active*

**John B. Sullivan**
PSUSBSID–NOMAIL
316–262–5852
Fax: 316–265–5678
Email:
 *TERMINATED: 02/01/2013*
*Designation: CJA Appointment*
*Bar Status: Suspend*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1959(a)(5) – Violent crimes in aid of racketeering: attempted murder; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (16) | 67 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1959(a)(5) – Violent crimes in aid of racketeering: conspiracy to commit murder (SEALED INDICTMENT 04/16/2012) (15) | Dismissed |
| 18:1959(a)(3) – Violent crimes in aid of racketeering: assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (17) | Dismissed |
| 18:924(c)(1)(A) – Possess and discharge a firearm in furtherance of a crime of violence; aggravated assault; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (18) | Dismissed |

**Highest Offense Level
(Terminated)**

Felony

**Complaints**                                    **Disposition**

None

---

Assigned to: District Judge Monti
L. Belot

**Defendant (11)**

**Donte Barnes**                  represented by   **Jeff L. Griffith**
*TERMINATED: 01/07/2014*                           Griffith & Griffith
*also known as*                                    PO Box 184
Snipes                                             111 S. Baltimore
*TERMINATED: 01/07/2014*
*also known as*                                    Derby, KS 67037
Snipe                                              316–788–1551
*TERMINATED: 01/07/2014*                           Fax: 316–788–2371
*also known as*                                    Email: jlgriffithlaw@aol.com
Sniper                                             *LEAD ATTORNEY*
*TERMINATED: 01/07/2014*                           *ATTORNEY TO BE NOTICED*
                                                   *Designation: CJA Appointment*
                                                   *Bar Status: Active*

**Pending Counts**                                **Disposition**

18:1959(a)(5) – Violent crimes in
aid of racketeering: attempted
murder; 18:2 – Aiding and          32 months imprisonment; 3 years supervised
abetting (SEALED INDICTMENT        release; $100.00 Assessment
04/16/2012)
(16)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                             **Disposition**

18:1959(a)(5) – Violent crimes in
aid of racketeering: conspiracy to
commit murder (SEALED              Dismissed
INDICTMENT 04/16/2012)
(15)

18:1959(a)(3) – Violent crimes in
aid of racketeering: assault with a   Dismissed
dangerous weapon; 18:2 – Aiding

and abetting (SEALED
INDICTMENT 04/16/2012)
(17)

| | |
|---|---|
| 18:924(c)(1)(A) – Possess and discharge a firearm in furtherance of a crime of violence; aggravated assault; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (18) | Dismissed |

**Highest Offense Level
(Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

Assigned to: District Judge Monti
L. Belot

**Defendant (12)**

| | | |
|---|---|---|
| **Jesus Sanchez** | represented by | **Mark T. Schoenhofer** |
| *TERMINATED: 01/15/2014* | | Law Office of Mark Schoenhofer |
| *also known as* | | 1631 E. 1st |
| Drac | | Wichita, KS 67214 |
| *TERMINATED: 01/15/2014* | | 316–262–5400 |
| *also known as* | | Fax: 316–262–1787 |
| Dracula | | Email: mydefensefirst@yahoo.com |
| *TERMINATED: 01/15/2014* | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: CJA Appointment* |
| | | *Bar Status: Active* |

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1962(d) – Conspiracy to commit racketeering activities (SEALED INDICTMENT 04/16/2012) (1) | 120 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived |

**Highest Offense Level
(Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|

| | |
|---|---|
| 18:1959(a)(5) – Violent crimes in aid of racketeering: conspiracy to commit murder (SEALED INDICTMENT 04/16/2012) (19) | Dismissed |
| 18:1959(a)(5) – Violent crimes in aid of racketeering: attempted murder; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (20) | Dismissed |
| 18:1959(a)(3) – Violent crimes in aid of racketeering: assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (21) | Dismissed |
| 18:924(c)(1)(A) – Possess and discharge a firearm in furtherance of a crime of violence; aggravated assault; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (22) | Dismissed |
| 18:1959(a)(6) – Violent crimes in aid of racketeering: conspiracy to commit assault with a dangerous weapon (SEALED INDICTMENT 04/16/2012) (28) | Dismissed |
| 18:922(g)(5) and 18:924(a)(2) – Illegal alien in possession of a firearm (SEALED INDICTMENT 04/16/2012) (35) | Dismissed |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

Assigned to: District Judge Monti L. Belot

**Defendant (13)**

21

| | | |
|---|---|---|
| **Enrique Gobin** | represented by | **Benjamin Anthony Reed** |
| *TERMINATED: 09/05/2013* | | Seigfreid Bingham PC |
| *also known as* | | 911 Main Street, Suite 2800 |
| Ricky | | |
| *TERMINATED: 09/05/2013* | | |
| *also known as* | | Kansas City, MO 64105 |
| Sonny Boy | | 816–421–4460 |
| *TERMINATED: 09/05/2013* | | Email: breed@seigfreidbingham.com |

*TERMINATED: 11/15/2012*
*Designation: CJA Appointment*
*Bar Status: Active*

**Edward L. Robinson**
Joseph, Hollander & Craft, LLC – Wichita
500 N. Market Street
Wichita, KS 67214–3514
316–262–9393
Fax: 316–262–9006
Email: erobinson@josephhollander.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*
*Bar Status: Active*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1959(a)(5) – Violent crimes in aid of racketeering: attempted murder; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (20) | 120 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1959(a)(5) – Violent crimes in aid of racketeering: conspiracy to commit murder (SEALED INDICTMENT 04/16/2012) (19) | Dismissed |
| 18:1959(a)(3) – Violent crimes in aid of racketeering: assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (21) | Dismissed |
| | Dismissed |

18:924(c)(1)(A) – Possess and discharge a firearm in furtherance of a crime of violence; aggravated assault; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (22)

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

Assigned to: District Judge Monti L. Belot

**Defendant (14)**

| | | |
|---|---|---|
| **Alfonso Banda–Hernandez** | represented by | **Michael D. Hepperly** |
| *TERMINATED: 10/01/2013* | | Michael D. Hepperly Law Office, Chtd |
| *also known as* | | 310 W. Central – Ste. 119 |
| Fonso | | Wichita, KS 67202 |
| *TERMINATED: 10/01/2013* | | 316–267–5330 |
| | | Fax: 316–267–6589 |
| | | Email: mhepperly@aol.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: CJA Appointment* |
| | | *Bar Status: Active* |

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1959(a)(6) – Violent Crimes in Aid of Racketeering, Conspiracy to Commit an Assault with a Dangerous Weapon (INFORMATION 07/12/2013) (1s) | 72 Months Imprisonment (36 months each count, to run consecutively); 1 Year Supervised Release; $200 Assessment; Fine is Waived |
| 18:1959(a)(6) – Violent Crimes in Aid of Racketeering, Conspiracy to Commit an Assault with a Dangerous Weapon (INFORMATION 07/12/2013) (2s) | 72 Months Imprisonment (36 months each count, to run consecutively); 1 Year Supervised Release; $200 Assessment; Fine is Waived |

**Highest Offense Level (Opening)**

Felony

| Terminated Counts | Disposition |
|---|---|
| 18:1959(a)(5) – Violent crimes in aid of racketeering: conspiracy to commit murder (SEALED INDICTMENT 04/16/2012) (19) | Dismissed |
| 18:1959(a)(5) – Violent crimes in aid of racketeering: attempted murder; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (20) | Dismissed |
| 18:1959(a)(3) – Violent crimes in aid of racketeering: assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (21) | Dismissed |
| 18:924(c)(1)(A) – Possess and discharge a firearm in furtherance of a crime of violence; aggravated assault; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (22) | Dismissed |

**Highest Offense Level (Terminated)**

Felony

| Complaints | Disposition |
|---|---|
| None | |

---

Assigned to: District Judge Monti L. Belot

**Defendant (15)**

| | | |
|---|---|---|
| **Andrew Gusman** | represented by | **Eric A. Hartenstein** |
| *TERMINATED: 11/19/2013* | | 200 W. Douglas , Suite #600 |
| *also known as* | | Wichita, KS 67202 |
| Beaver | | 316–262–8911 |
| *TERMINATED: 11/19/2013* | | Fax: 316–262–5754 |
| | | Email: erichartenstein@att.net |
| | | *ATTORNEY TO BE NOTICED* |

*Designation: CJA Appointment*
*Bar Status: Active*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1959(a)(3) – Violent crimes in aid of racketeering: assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (21) | 21 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1959(a)(5) – Violent crimes in aid of racketeering: conspiracy to commit murder (SEALED INDICTMENT 04/16/2012) (19) | Dismissed |
| 18:1959(a)(5) – Violent crimes in aid of racketeering: attempted murder; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (20) | Dismissed |
| 18:924(c)(1)(A) – Possess and discharge a firearm in furtherance of a crime of violence; aggravated assault; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (22) | Dismissed |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

Assigned to: District Judge Monti L. Belot

**Defendant (16)**

**Eusebio Sierra–Medrano**
*TERMINATED: 12/11/2013*
*also known as*
TC
*TERMINATED: 12/11/2013*

represented by **Mark L. Bennett , Jr.**
Bennett and Hendrix, LLC
5605 S.W. Barrington Ct. South, Suite 201
Topeka, KS 66614
785–271–0800
Fax: 785–271–0803
Email: mark@mlbjrlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*
*Bar Status: Active*

**Pending Counts**

18:1962(d) – Conspiracy to
commit racketeering activities
(SEALED INDICTMENT
04/16/2012)
(1)

**Disposition**

120 months imprisonment, to be served
consecutive to State of Kansas, Ford County
District Court case 10–358 sentence; 3 years
supervised release; Assessment: $100.00

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

18:1959(a)(3) – Violent crimes in
aid of racketeering: assault with a
dangerous weapon; 18:2 – Aiding
and abetting (SEALED
INDICTMENT 04/16/2012)
(14)

18:922(g)(1) and 18:924(a)(2) –
Felon in possession of a firearm
(SEALED INDICTMENT
04/16/2012)
(36–37)

**Disposition**

Dismissed

Dismissed

**Highest Offense Level
(Terminated)**

Felony

**Complaints**

None

**Disposition**

Assigned to: District Judge Monti
L. Belot

**Defendant (17)**

**Jayson Vargas**
*also known as*
Wee Wee

represented by  **Mark A. Sevart**

PO Box 781602

Wichita, KS 67278
316–686–1519
Fax: 316–788–7437
Email: markchrissevart@yahoo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*
*Bar Status: Active*

**Pending Counts**

18:1962(d) – Conspiracy to
commit racketeering activities
(SEALED INDICTMENT
04/16/2012)
(1)

18:922(j) Possession of a stolen
firearm (SUPERSEDING
INFORMATION)
(1s)

18:1959(a)(3) – Violent crimes in
aid of racketeering: assault with a
dangerous weapon; 18:2 – Aiding
and abetting (SEALED
INDICTMENT 04/16/2012)
(23)

18:1959(a)(6) – Violent crimes in
aid of racketeering: conspiracy to
commit assault with a dangerous
weapon (SEALED INDICTMENT
04/16/2012)
(24)

18:924(c)(1)(A) – Possess and
brandish a firearm in furtherance
of a crime of violence; aggravated
robbery; 18:2 – Aiding and
abetting (SEALED
INDICTMENT 04/16/2012)
(25)

18:922(g)(1) and 18:924(a)(2) –
Felon in possession of a firearm
(SEALED INDICTMENT
04/16/2012)
(29)

**Disposition**

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

---

Assigned to: District Judge Monti L. Belot

**Defendant (18)**

| | | |
| --- | --- | --- |
| **Adam Flores** | represented by | **Sean C. McEnulty** |
| *TERMINATED: 01/03/2014* | | McEnulty Law Firm |
| *also known as* | | 151 Whittier St., Suite #1000 |
| Little Lazy | | Wichita, KS 67207 |
| *TERMINATED: 01/03/2014* | | 316–263–0142 |
| | | Fax: 316–681–4499 |
| | | Email: s@mcenultylawfirm.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: CJA Appointment* |
| | | *Bar Status: Active* |

| **Pending Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Opening)**

None

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(3) – Violent crimes in aid of racketeering: assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (23) | Dismissed without prejudice |
| 18:1959(a)(6) – Violent crimes in aid of racketeering: conspiracy to commit | Dismissed without prejudice |

assault with a dangerous weapon
(SEALED INDICTMENT 04/16/2012)
(24)

18:924(c)(1)(A) – Possess and brandish a
firearm in furtherance of a crime of
violence; aggravated robbery; 18:2 –
Aiding and abetting (SEALED
INDICTMENT 04/16/2012)
(25)

Dismissed without prejudice

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

Assigned to: District Judge Monti
L. Belot

**Defendant (19)**

| | | |
| --- | --- | --- |
| **Fabian Neave**<br>*TERMINATED: 12/03/2013*<br>*also known as*<br>Puppet<br>*TERMINATED: 12/03/2013* | represented by | **Gregory D. Bell**<br>Forker Suter LLC<br>129 West 2nd Ave, Suite 200<br>PO Box 1868<br><br>Hutchinson, KS 67504–1868<br>620–663–7131<br>Fax: 620–669–0714<br>Email: gbell@forkersuter.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment*<br>*Bar Status: Active* |

**Pending Counts**                                    **Disposition**

18:1962(d) – Conspiracy to
commit racketeering activities
(SEALED INDICTMENT
04/16/2012)
(1)

Deft sentenced to 60 months imprisonment; 3
years supervised release; Assessment: $100;
Restitution: $16,242.10

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |

| | |
|---|---|
| 18:1959(a)(3) – Violent crimes in aid of racketeering: assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (27) | Dismissed |
| 18:1959(a)(6) – Violent crimes in aid of racketeering: conspiracy to commit assault with a dangerous weapon (SEALED INDICTMENT 04/16/2012) (28) | Dismissed |
| 18:922(g)(1) and 18:924(a)(2) – Felon in possession of a firearm (SEALED INDICTMENT 04/16/2012) (30) | Dismissed |
| 21:841(a)(1) – Possession with intent to distribute methamphetamine, a controlled substance; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (31) | Dismissed |
| 18:924(c)(1)(A) – Possess a firearm in furtherance of a drug trafficking crime: possession with the intent to distribute methamphetamine (SEALED INDICTMENT 04/16/2012) (32) | Dismissed |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

Assigned to: District Judge Monti L. Belot

**Defendant (20)**

| | | |
|---|---|---|
| **Jesus Torres** *TERMINATED: 09/05/2013* *also known as* Rabbit | represented by | **Christopher S. O'Hara** O'Hara & O'Hara 1223 E. First Wichita, KS 67214 |

*TERMINATED: 09/05/2013*

316–263–5601
Fax: 316–263–7205
Email: ohara@oharaohara.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*
*Bar Status: Active*

**Charles A. O'Hara**
O'Hara & O'Hara
1223 E. First
Wichita, KS 67214
316–263–5601
Fax: 316–263–7205
Email: ohara@oharaohara.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*
*Bar Status: Active*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(3) – Violent crimes in aid of racketeering: assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (27) | 36 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived; $16,242.10 in Restitution |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

Assigned to: District Judge Monti L. Belot

**Defendant (21)**

| **Jose Neave** | represented by | **Kevin W. Loeffler** |
| --- | --- | --- |
| *TERMINATED: 07/09/2013* | | Law Office of Kevin Loeffler |

*also known as*
Caiyo
*TERMINATED: 07/09/2013*

111 E. 7th
PO Box #1175
Newton, KS 67114
316–283–7490
Fax: 316–283–8833
Email: kloeffler@lawyer.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*
*Bar Status: Active*

**Pending Counts**

18:1959(a)(5) – Violent crimes in aid of racketeering: attempted murder; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012)
(26)

**Disposition**

AMENDED JUDGMENT – 78 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived; $16,242.10 Restitution; ORIGINAL JUDGMENT –78 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived; $16,424.10 Restitution

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

18:1959(a)(3) – Violent crimes in aid of racketeering: assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012)
(27)

**Disposition**

Dismissed

**Highest Offense Level (Terminated)**

Felony

**Complaints**

None

**Disposition**

Assigned to: District Judge Monti L. Belot

**Defendant (22)**

**Hernan Quezada**
*TERMINATED: 09/11/2013*
*also known as*
Cheese

represented by **Derek S. Casey**
Triplett, Woolf & Garretson, LLC – Wichita
2959 North Rock Road, Suite 300
Wichita, KS 67226

*TERMINATED: 09/11/2013*
*also known as*
Cartoon
*TERMINATED: 09/11/2013*

316–630–8100
Fax: 316–630–8101
Email: dscasey@twgfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*
*Bar Status: Active*

**Pending Counts**                                    **Disposition**

18:1959(a)(3) – Violent crimes in
aid of racketeering: assault with a
dangerous weapon; 18:2 – Aiding          33 Months Imprisonment; 3 Years Supervised
and abetting (SEALED                     Release; $100 Assessment; Fine is Waived
INDICTMENT 04/16/2012)
(38)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                                 **Disposition**

None

**Highest Offense Level
(Terminated)**

None

**Complaints**                                        **Disposition**

None

---

Assigned to: District Judge Monti
L. Belot

**Defendant (23)**

**Humberto Jorge Ortiz**          represented by   **Molly M. Gordon**
*TERMINATED: 01/28/2013*                           Depew Gillen Rathbun & McInteer, LC
*also known as*                                    8301 East 21st Street North, Suite 450
Beto                                               Wichita, KS 67206–2936
*TERMINATED: 01/28/2013*                           316–262–4000 x 104
                                                   Fax: 316–265–3819
                                                   Email: molly@depewgillen.com
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*
                                                   *Designation: CJA Appointment*
                                                   *Bar Status: Active*

33

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1959(a)(3) – Violent crimes in aid of racketeering: assault with a dangerous weapon; 18:2 – Aiding and abetting (SEALED INDICTMENT 04/16/2012) (27) | 46 Months Imprisonment; 2 Years Supervised Release; $100 Assessment; Fine is waived; $16,242.10 Restitution |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

| | | |
|---|---|---|
| USA | represented by | **Aaron L. Smith** |
| | | Office of United States Attorney – Wichita |
| | | 301 North Main Street, Suite #1200 |
| | | Wichita, KS 67202–4812 |
| | | 316–269–6561 |
| | | Fax: 316–269–6484 |
| | | Email: aaron.smith3@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Bar Status: Active* |
| | | |
| | | **Lanny D. Welch** |
| | | Office of United States Attorney – Wichita |
| | | 301 North Main Street, Suite #1200 |
| | | Wichita, KS 67202–4812 |
| | | 316–269–6481 |
| | | Fax: 316–269–6484 |
| | | Email: lanny.welch@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Bar Status: Active* |

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 04/16/2012 | 1 | 140 | (UNSEALED PER ORDER FILED ON 05/09/2012) INDICTMENT as to Jason Najera (1): counts 1, 26–27 & 33–34; Pedro Garcia (2): counts 1–9; Gonzalo Ramirez (3): counts 1–13; Russell Worthey (4): counts 1–6; Anthony Wright (5): counts 1–6; Joshua Flores (6): counts 1 & 7–9; Jesus Flores (7): counts 1 & 7–9, Angel Cerda (8): counts 1 & 10–13; Juan Torres (9): counts 1 & 10–13; Alfredo Beltran–Ruiz (10): counts 1 & 15–18; Donte Barnes (11): counts 1 & 15–18; Jesus Sanchez (12): counts 1, 19–22, 28 & 35; Enrique Gobin (13): counts 1 & 19–22; Alfonso Banda–Hernandez (14): counts 1 & 19–22; Andrew Gusman (15): counts 1 & 19–22; Eusebio Sierra–Medrano (16): counts 1, 14 & 36–37; Jayson Vargas (17): counts 1, 23–25 & 29; Adam Flores (18): counts 1 & 23–25; Fabian Neave (19): counts 1, 27–28 & 30–32; Jesus Torres (20): counts 1 & 27; Jose Neave (21): counts 1 & 26–27; Hernan Quezada (22): counts 1 & 38; Humberto Ortiz (23): counts 1 & 27. (Sealed User Wichita aa) Modified on 5/9/2012 (aa). (Entered: 04/17/2012) |
| 04/16/2012 | 2 | | MELGREN NOTICE by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Ortiz (Sealed User Wichita aa) (Entered: 04/17/2012) |
| 05/09/2012 | 3 | | MOTION to Unseal by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Ortiz. (Sealed User Wichita aa) (Entered: 05/09/2012) |
| 05/09/2012 | 4 | | ORDER granting 3 Motion to Unseal Case as to Jason Najera (1), Pedro Garcia (2), Gonzalo Ramirez (3), Russell Worthey (4), Anthony Wright (5), Joshua Flores (6), Jesus Flores (7), Angel Cerda (8), Juan Torres (9), Alfredo Beltran–Ruiz (10), Donte Barnes (11), Jesus Sanchez (12), Enrique Gobin (13), Alfonso Banda–Hernandez (14), Andrew Gusman (15), Eusebio Sierra–Medrano (16), Jayson Vargas (17), Adam Flores (18), Fabian Neave (19), Jesus Torres (20), Jose Neave (21), Hernan Quezada (22), Humberto Ortiz (23). Signed by Magistrate Judge Kenneth G. Gale on 5/9/2012. (aa) (Entered: 05/09/2012) |
| 05/09/2012 | 5 | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Jason Najera. (Smith, Aaron) (Entered: 05/09/2012) |
| 05/09/2012 | 6 | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Fabian Neave. (Smith, Aaron) (Entered: 05/09/2012) |
| 05/09/2012 | 7 | | |

| | | | |
|---|---|---|---|
| | | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Jose Neave. (Smith, Aaron) (Entered: 05/09/2012) |
| 05/09/2012 | 8 | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Jesus Sanchez. (Smith, Aaron) (Entered: 05/09/2012) |
| 05/09/2012 | 9 | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Jayson Vargas. (Smith, Aaron) (Entered: 05/09/2012) |
| 05/09/2012 | 10 | | ENTRY OF APPEARANCE on behalf of USA by Lanny D. Welch (Welch, Lanny) (Entered: 05/09/2012) |
| 05/09/2012 | 11 | | ORDER FOR WRIT OF HABEAS CORPUS AD PROSEQUENDUM granting 5 Motion for Writ of Habeas Corpus ad prosequendum as to Jason Najera (1). Signed by Magistrate Judge Kenneth G. Gale on 5/9/2012. (aa) (Entered: 05/09/2012) |
| 05/09/2012 | 12 | | WRIT OF HABEAS CORPUS AD PROSEQUENDUM ISSUED as to Jason Najera to appear forthwith. (aa) (Entered: 05/09/2012) |
| 05/09/2012 | 13 | | ORDER granting 7 Motion for Writ of Habeas Corpus ad prosequendum as to Jose Neave (21). Signed by Magistrate Judge Kenneth G. Gale on 5/9/2012. (aa) (Entered: 05/09/2012) |
| 05/09/2012 | 14 | | WRIT OF HABEAS CORPUS AD PROSEQUENDUM ISSUED as to Jose Neave to appear forthwith. (aa) (Entered: 05/09/2012) |
| 05/09/2012 | 15 | | ORDER granting 6 Motion for Writ of Habeas Corpus ad prosequendum as to Fabian Neave (19). Signed by Magistrate Judge Kenneth G. Gale on 5/9/2012. (aa) (Entered: 05/09/2012) |
| 05/09/2012 | 16 | | WRIT OF HABEAS CORPUS AD PROSEQUENDUM ISSUED as to Fabian Neave to appear forthwith. (aa) (Entered: 05/09/2012) |
| 05/09/2012 | 17 | | ORDER granting 9 Motion for Writ of Habeas Corpus ad prosequendum as to Jayson Vargas (17). Signed by Magistrate Judge Kenneth G. Gale on 5/9/2012. (aa) (Entered: 05/09/2012) |
| 05/09/2012 | 18 | | WRIT OF HABEAS CORPUS AD PROSEQUENDUM ISSUED as to Jayson Vargas to appear forthwith. (aa) (Entered: 05/09/2012) |
| 05/09/2012 | 19 | | ORDER granting 8 Motion for Writ of Habeas Corpus ad prosequendum as to Jesus Sanchez (12). Signed by Magistrate Judge Kenneth G. Gale on 5/9/2012. (aa) (Entered: 05/09/2012) |
| 05/09/2012 | 20 | | WRIT OF HABEAS CORPUS AD PROSEQUENDUM ISSUED as to Jesus Sanchez to appear forthwith. (aa) (Entered: 05/09/2012) |
| 05/10/2012 | 21 | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Alfonso Banda–Hernandez. (Smith, Aaron) (Entered: 05/10/2012) |
| 05/10/2012 | 22 | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Hernan Quezada. (Smith, Aaron) (Entered: 05/10/2012) |
| 05/10/2012 | 23 | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Jesus Torres. (Smith, Aaron) (Entered: 05/10/2012) |
| 05/10/2012 | 24 | | |

| | | | |
|---|---|---|---|
| | | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Adam Flores. (Smith, Aaron) (Entered: 05/10/2012) |
| 05/10/2012 | 25 | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Humberto Ortiz. (Smith, Aaron) (Entered: 05/10/2012) |
| 05/10/2012 | 26 | | ORDER granting 25 Motion for Writ of Habeas Corpus ad prosequendum as to Humberto Ortiz (23). Signed by Magistrate Judge Kenneth G. Gale on 5/10/2012. (aa) (Entered: 05/10/2012) |
| 05/10/2012 | 27 | | WRIT OF HABEAS CORPUS AD PROSEQUENDUM ISSUED as to Humberto Ortiz to appear forthwith. (aa) (Entered: 05/10/2012) |
| 05/10/2012 | 28 | | ORDER granting 22 Motion for Writ of Habeas Corpus ad prosequendum as to Hernan Quezada (22). Signed by Magistrate Judge Kenneth G. Gale on 5/10/2012. (aa) (Entered: 05/10/2012) |
| 05/10/2012 | 29 | | WRIT OF HABEAS CORPUS AD PROSEQUENDUM ISSUED as to Hernan Quezada to appear forthwith. (aa) (Entered: 05/10/2012) |
| 05/10/2012 | 30 | | ORDER granting 23 Motion for Writ of Habeas Corpus ad prosequendum as to Jesus Torres (20). Signed by Magistrate Judge Kenneth G. Gale on 5/10/2012. (aa) (Entered: 05/10/2012) |
| 05/10/2012 | 31 | | WRIT OF HABEAS CORPUS AD PROSEQUENDUM ISSUED as to Jesus Torres to appear forthwith. (aa) (Entered: 05/10/2012) |
| 05/10/2012 | 32 | | ORDER granting 24 Motion for Writ of Habeas Corpus ad prosequendum as to Adam Flores (18). Signed by Magistrate Judge Kenneth G. Gale on 5/10/2012. (aa) (Entered: 05/10/2012) |
| 05/10/2012 | 33 | | WRIT OF HABEAS CORPUS AD PROSEQUENDUM ISSUED as to Adam Flores to appear forthwith. (aa) (Entered: 05/10/2012) |
| 05/10/2012 | 34 | | ORDER granting 21 Motion for Writ of Habeas Corpus ad prosequendum as to Alfonso Banda–Hernandez (14). Signed by Magistrate Judge Kenneth G. Gale on 5/10/2012. (aa) (Entered: 05/10/2012) |
| 05/10/2012 | 35 | | WRIT OF HABEAS CORPUS AD PROSEQUENDUM ISSUED as to Alfonso Banda–Hernandez to appear forthwith. (aa) (Entered: 05/10/2012) |
| 05/11/2012 | 36 | | ENTRY OF APPEARANCE: by attorney Charles A. O'Hara appearing for Jesus Torres (O'Hara, Charles) (Entered: 05/11/2012) |
| 05/11/2012 | 37 | | ENTRY OF APPEARANCE: by attorney James R. Pratt appearing for Russell Worthey (cs) (Entered: 05/11/2012) |
| 05/11/2012 | 38 | | CJA 20 as to Anthony Wright: Appointment of Attorney Jay F. Fowler. Signed by Magistrate Judge Kenneth G. Gale on 5/10/2012. (aa) (Entered: 05/11/2012) |
| 05/11/2012 | 39 | | ENTRY OF APPEARANCE: by attorney Jay F. Fowler appearing for Anthony Wright (Fowler, Jay) (Entered: 05/11/2012) |
| 05/11/2012 | 40 | | INVOCATION OF RIGHTS by defendant Anthony Wright (Fowler, Jay) (Main Document 40 replaced on 5/15/2012) (cs). (Entered: 05/11/2012) |
| 05/11/2012 | | | ARREST of Anthony Wright. (aa) (Entered: 05/14/2012) |

| 05/11/2012 | 41 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: RULE 5/INITIAL APPEARANCE as to Anthony Wright held on 5/11/2012. Arraignment set for 5/16/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. Detention Hearing set for 5/16/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. (Tape #1:33–1:37.) (aa) (Entered: 05/14/2012) |
|---|---|---|---|
| 05/11/2012 | 42 | | CJA 23 FINANCIAL AFFIDAVIT by Anthony Wright. (aa) (Entered: 05/14/2012) |
| 05/11/2012 | 43 | | ORDER OF TEMPORARY DETENTION as to Anthony Wright. Signed by Magistrate Judge Kenneth G. Gale on 5/11/2012. (aa) (Entered: 05/14/2012) |
| 05/11/2012 | 50 | | ARREST WARRANT returned executed on 5/9/2012 as to Anthony Wright (smg) (Entered: 05/15/2012) |
| 05/14/2012 | 44 | | ENTRY OF APPEARANCE: by attorney Eric A. Hartenstein appearing for Andrew Gusman (Hartenstein, Eric) (Entered: 05/14/2012) |
| 05/14/2012 | 45 | | CJA 20 as to Juan Torres: Appointment of Attorney Michael J. Shultz. Signed by Magistrate Judge Kenneth G. Gale on 5/11/2012. (aa) (Entered: 05/14/2012) |
| 05/14/2012 | 46 | | CJA 20 as to Russell Worthey: Appointment of Attorney James Pratt. Signed by Magistrate Judge Kenneth G. Gale on 5/11/2012. (aa) (Entered: 05/14/2012) |
| 05/14/2012 | 47 | | CJA 20 as to Jesus Flores: Appointment of Attorney Roger L. Falk. Signed by Magistrate Judge Kenneth G. Gale on 5/10/2012. (aa) (Entered: 05/14/2012) |
| 05/14/2012 | 48 | | CJA 20 as to Angel Cerda: Appointment of Attorney Paul S. McCausland. Signed by Magistrate Judge Kenneth G. Gale on 5/10/2012. (aa) (Entered: 05/14/2012) |
| 05/14/2012 | 49 | | CJA 20 as to Andrew Gusman: Appointment of Attorney Eric A. Hartenstein. Signed by Magistrate Judge Kenneth G. Gale on 5/10/2012. (aa) (Entered: 05/14/2012) |
| 05/14/2012 | 51 | | ARREST WARRANT returned executed on 5/9/2012 as to Russell Worthey (smg) (Entered: 05/15/2012) |
| 05/14/2012 | 52 | | ARREST WARRANT returned executed on 5/9/2012 as to Angel Cerda (smg) (Entered: 05/15/2012) |
| 05/14/2012 | 53 | | ARREST WARRANT returned executed on 5/9/2012 as to Jesus Flores (smg) (Entered: 05/15/2012) |
| 05/14/2012 | 54 | | ARREST WARRANT returned executed on 5/10/2012 as to Andrew Gusman (smg) (Entered: 05/15/2012) |
| 05/14/2012 | 55 | | ARREST WARRANT returned executed on 5/9/2012 as to Juan Torres (smg) (Entered: 05/15/2012) |
| 05/14/2012 | | | ARREST of Angel Cerda. (aa) (Entered: 05/15/2012) |
| 05/14/2012 | 56 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: RULE 5/INITIAL APPEARANCE as to Angel Cerda held on |

38

| | | | |
|---|---|---|---|
| | | | 5/14/2012. Arraignment set for 5/21/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. Detention Hearing set for 5/21/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. (Tape #1:53–1:56.) (aa) (Entered: 05/15/2012) |
| 05/14/2012 | 57 | | CJA 23 FINANCIAL AFFIDAVIT by Angel Cerda. (aa) (Entered: 05/15/2012) |
| 05/14/2012 | 58 | | ORDER OF TEMPORARY DETENTION as to Angel Cerda. Signed by Magistrate Judge Kenneth G. Gale on 5/14/2012. (aa) (Entered: 05/15/2012) |
| 05/14/2012 | | | ARREST of Andrew Gusman. (aa) (Entered: 05/15/2012) |
| 05/14/2012 | 59 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: RULE 5/INITIAL APPEARANCE as to Andrew Gusman held on 5/14/2012. Arraignment set for 5/18/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. Detention Hearing set for 5/18/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. (Tape #1:56–1:59.) (aa) (Entered: 05/15/2012) |
| 05/14/2012 | 60 | | CJA 23 FINANCIAL AFFIDAVIT by Andrew Gusman. (aa) (Entered: 05/15/2012) |
| 05/14/2012 | 61 | | ORDER OF TEMPORARY DETENTION as to Andrew Gusman. Signed by Magistrate Judge Kenneth G. Gale on 5/14/2012. (aa) (Entered: 05/15/2012) |
| 05/14/2012 | | | ARREST of Juan Torres. (aa) (Entered: 05/15/2012) |
| 05/14/2012 | 62 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: RULE 5/INITIAL APPEARANCE as to Juan Torres held on 5/14/2012. Arraignment set for 5/18/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. Detention Hearing set for 5/18/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. (Tape #1:37–1:41.) (aa) (Entered: 05/15/2012) |
| 05/14/2012 | 63 | | CJA 23 FINANCIAL AFFIDAVIT by Juan Torres. (aa) (Entered: 05/15/2012) |
| 05/14/2012 | 64 | | ORDER OF TEMPORARY DETENTION as to Juan Torres. Signed by Magistrate Judge Kenneth G. Gale on 5/14/2012. (aa) (Entered: 05/15/2012) |
| 05/14/2012 | | | ARREST of Russell Worthey. (aa) (Entered: 05/15/2012) |
| 05/14/2012 | 65 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: RULE 5/INITIAL APPEARANCE as to Russell Worthey held on 5/14/2012. Arraignment set for 5/17/2012 at 02:00 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. Detention Hearing set for 5/17/2012 at 02:00 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. (Tape #1:41–1:44.) (aa) (Entered: 05/15/2012) |
| 05/14/2012 | 66 | | CJA 23 FINANCIAL AFFIDAVIT by Russell Worthey. (aa) (Entered: 05/15/2012) |
| 05/14/2012 | 67 | | ORDER OF TEMPORARY DETENTION as to Russell Worthey. Signed by Magistrate Judge Kenneth G. Gale on 5/14/2012. (aa) (Entered: 05/15/2012) |
| 05/14/2012 | | | ARREST of Jesus Flores. (aa) (Entered: 05/15/2012) |

| 05/14/2012 | 68 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: RULE 5/INITIAL APPEARANCE as to Jesus Flores held on 5/14/2012. Arraignment set for 5/18/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. Detention Hearing set for 5/18/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. (Tape #1:43–1:47.) (aa) (Entered: 05/15/2012) |
|---|---|---|---|
| 05/14/2012 | 69 | | CJA 23 FINANCIAL AFFIDAVIT by Jesus Flores. (aa) (Entered: 05/15/2012) |
| 05/14/2012 | 70 | | ORDER OF TEMPORARY DETENTION as to Jesus Flores. Signed by Magistrate Judge Kenneth G. Gale on 5/14/2012. (aa) (Entered: 05/15/2012) |
| 05/15/2012 | 71 | | WAIVER OF DETENTION HEARING by Anthony Wright. (Fowler, Jay) (Main Document 71 replaced on 5/16/2012) (cs). (Entered: 05/15/2012) |
| 05/15/2012 | 72 | | ENTRY OF APPEARANCE: by attorney Paul S. McCausland appearing for Angel Cerda (McCausland, Paul) (Entered: 05/15/2012) |
| 05/15/2012 | 73 | | ENTRY OF APPEARANCE: by attorney Mark T. Schoenhofer appearing for Jesus Sanchez (Schoenhofer, Mark) (Entered: 05/15/2012) |
| 05/15/2012 | 79 | | ARREST WARRANT returned executed on 5/10/2012 as to Jesus Sanchez (smg) (Entered: 05/16/2012) |
| 05/15/2012 | 81 | | ARREST WARRANT returned executed on 5/10/2012 as to Jayson Vargas (smg) (Entered: 05/16/2012) |
| 05/15/2012 | 82 | | ARREST WARRANT returned executed on 5/10/2012 as to Jose Neave (smg) (Entered: 05/16/2012) |
| 05/15/2012 | 83 | | ARREST WARRANT returned executed on 5/10/2012 as to Fabian Neave (smg) (Entered: 05/16/2012) |
| 05/15/2012 | 85 | | ARREST WARRANT returned executed on 5/10/2012 as to Jason Najera (smg) (Entered: 05/16/2012) |
| 05/15/2012 | | | ARREST of Humberto Ortiz. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 89 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: RULE 5/INITIAL APPEARANCE as to Humberto Ortiz held on 5/15/2012. Arraignment set for 5/17/2012 at 02:00 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. Detention Hearing set for 5/17/2012 at 02:00 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. (Tape #1:59–2:02.) (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 90 | | CJA 23 FINANCIAL AFFIDAVIT by Humberto Ortiz. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 91 | | ORDER OF TEMPORARY DETENTION as to Humberto Ortiz. Signed by Magistrate Judge Kenneth G. Gale on 5/15/2012. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | | | ARREST of Jose Neave. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 92 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: RULE 5/INITIAL APPEARANCE as to Jose Neave held on 5/15/2012. Arraignment set for 5/18/2012 at 01:30 PM in Courtroom 406 (KGG) before |

| | | |
|---|---|---|
| | | Magistrate Judge Kenneth G. Gale. Detention Hearing set for 5/18/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. (Tape #1:55–1:57.) (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 93 | CJA 23 FINANCIAL AFFIDAVIT by Jose Neave. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 94 | ORDER OF TEMPORARY DETENTION as to Jose Neave. Signed by Magistrate Judge Kenneth G. Gale on 5/15/2012. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | | ARREST of Jesus Torres. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 95 | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: RULE 5/INITIAL APPEARANCE as to Jesus Torres held on 5/15/2012. Arraignment set for 5/21/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. Detention Hearing set for 5/21/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. (Tape #1:52–1:54.) (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 96 | ORDER OF TEMPORARY DETENTION as to Jesus Torres. Signed by Magistrate Judge Kenneth G. Gale on 5/15/2012. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | | ARREST of Fabian Neave. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 97 | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: RULE 5/INITIAL APPEARANCE as to Fabian Neave held on 5/15/2012. ARRAIGNMENT as to Fabian Neave (19) Count 1,27,28,30,31,32 held on 5/15/2012. The Defendant's next appearance before Judge Belot per scheduling order. The Defendant waived his right to a detention hearing due to a writ. The Court accepted the waiver and granted the Government motion for detention. (Tape #1:49–1:53.) (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 98 | CJA 23 FINANCIAL AFFIDAVIT by Fabian Neave. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 99 | WAIVER OF DETENTION HEARING by Fabian Neave. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | | ARREST of Adam Flores. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 100 | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: RULE 5/INITIAL APPEARANCE as to Adam Flores held on 5/15/2012. Arraignment set for 5/18/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. Detention Hearing set for 5/18/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. (Tape #1:47–1:49.) (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 101 | CJA 23 FINANCIAL AFFIDAVIT by Adam Flores. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 102 | ORDER OF TEMPORARY DETENTION as to Adam Flores. Signed by Magistrate Judge Kenneth G. Gale on 5/15/2012. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | | ARREST of Jayson Vargas. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 103 | |

| | | |
|---|---|---|
| | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: RULE 5/INITIAL APPEARANCE as to Jayson Vargas held on 5/15/2012. ARRAIGNMENT as to Jayson Vargas (17) Count 1,23,24,25,29 held on 5/15/2012. The Defendant's next appearance before Judge Belot per scheduling order. The Defendant has waived his right to a detention hearing due to a writ. The Court accepted the waiver and granted the Government's motion for detention. (Tape #1:43–1:47.) (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 104 | CJA 23 FINANCIAL AFFIDAVIT by Jayson Vargas. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 105 | WAIVER OF DETENTION HEARING by Jayson Vargas. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | | ARREST of Alfonso Banda–Hernandez. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 106 | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: RULE 5/INITIAL APPEARANCE as to Alfonso Banda–Hernandez held on 5/15/2012. Arraignment set for 5/21/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. Detention Hearing set for 5/21/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. (Tape #1:40–1:43.) (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 107 | CJA 23 FINANCIAL AFFIDAVIT by Alfonso Banda–Hernandez. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 108 | ORDER OF TEMPORARY DETENTION as to Alfonso Banda–Hernandez. Signed by Magistrate Judge Kenneth G. Gale on 5/15/2012. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | | ARREST of Jesus Sanchez. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 109 | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: RULE 5/INITIAL APPEARANCE as to Jesus Sanchez held on 5/15/2012. Arraignment set for 5/18/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. Detention Hearing set for 5/18/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. (Tape #1:37–1:40.) (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 110 | CJA 23 FINANCIAL AFFIDAVIT by Jesus Sanchez. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 111 | ORDER OF TEMPORARY DETENTION as to Jesus Sanchez. Signed by Magistrate Judge Kenneth G. Gale on 5/15/2012. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | | ARREST of Hernan Quezada. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 112 | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: RULE 5/INITIAL APPEARANCE as to Hernan Quezada held on 5/15/2012. Arraignment set for 5/21/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. Detention Hearing set for 5/21/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. (Tape #1:57–1:59.) (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 113 | CJA 23 FINANCIAL AFFIDAVIT by Hernan Quezada. (aa) (Entered: 05/16/2012) |

| 05/15/2012 | 114 | | ORDER OF TEMPORARY DETENTION as to Hernan Quezada. Signed by Magistrate Judge Kenneth G. Gale on 5/15/2012. (aa) (Entered: 05/16/2012) |
|---|---|---|---|
| 05/15/2012 | | | ARREST of Jason Najera. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 115 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: RULE 5/INITIAL APPEARANCE as to Jason Najera held on 5/15/2012. Arraignment set for 5/21/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. Detention Hearing set for 5/21/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. (Tape #1:32–1:37.) (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 116 | | CJA 23 FINANCIAL AFFIDAVIT by Jason Najera. (aa) (Entered: 05/16/2012) |
| 05/15/2012 | 117 | | ORDER OF TEMPORARY DETENTION as to Jason Najera. Signed by Magistrate Judge Kenneth G. Gale on 5/15/2012. (aa) (Entered: 05/16/2012) |
| 05/16/2012 | 74 | | CJA 20 as to Jason Najera: Appointment of Attorney David H. Moses. Signed by Magistrate Judge Kenneth G. Gale on 5/11/2012. (aa) (Entered: 05/16/2012) |
| 05/16/2012 | 75 | | CJA 20 as to Jesus Sanchez: Appointment of Attorney Mark T. Schoenhofer. Signed by Magistrate Judge Kenneth G. Gale on 5/14/2012. (aa) (Entered: 05/16/2012) |
| 05/16/2012 | 76 | | CJA 20 as to Alfonso Banda–Hernandez: Appointment of Attorney Michael D. Hepperly. Signed by Magistrate Judge Kenneth G. Gale on 5/11/2012. (aa) (Entered: 05/16/2012) |
| 05/16/2012 | 77 | | CJA 20 as to Jayson Vargas: Appointment of Attorney Mark A. Sevart. Signed by Magistrate Judge Kenneth G. Gale on 5/11/2012. (aa) (Entered: 05/16/2012) |
| 05/16/2012 | 78 | | CJA 20 as to Adam Flores: Appointment of Attorney Sean C. McEnulty. Signed by Magistrate Judge Kenneth G. Gale on 5/11/2012. (aa) (Entered: 05/16/2012) |
| 05/16/2012 | 80 | | CJA 20 as to Fabian Neave: Appointment of Attorney Gregory D. Bell. Signed by Magistrate Judge Kenneth G. Gale on 5/14/2012. (aa) (Entered: 05/16/2012) |
| 05/16/2012 | 84 | | CJA 20 as to Jose Neave: Appointment of Attorney Kevin W. Loeffler. Signed by Magistrate Judge Kenneth G. Gale on 5/14/2012. (aa) (Entered: 05/16/2012) |
| 05/16/2012 | 86 | | CJA 20 as to Hernan Quezada: Appointment of Attorney Derek S. Casey. Signed by Magistrate Judge Kenneth G. Gale on 5/11/2012. (aa) (Entered: 05/16/2012) |
| 05/16/2012 | 87 | | CJA 20 as to Humberto Ortiz: Appointment of Attorney Molly E. McMurray. Signed by Magistrate Judge Kenneth G. Gale on 5/11/2012. (aa) (Entered: 05/16/2012) |
| 05/16/2012 | 88 | | ENTRY OF APPEARANCE: by attorney Michael D. Hepperly appearing for Alfonso Banda–Hernandez (Hepperly, Michael) (Entered: 05/16/2012) |

| 05/16/2012 | 118 | | NOTICE OF CANCELLED HEARING: The Detention Hearing and Arraignment set for 5/21/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale is cancelled. NOTICE OF HEARING as to Defendant Jason Najera: Detention Hearing/ Arraignment re−set for 5/18/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. (THIS IS A TEXT ENTRY ONLY) (aa) (Entered: 05/16/2012) |
| --- | --- | --- | --- |
| 05/16/2012 | 119 | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Eusebio Sierra−Medrano. (Smith, Aaron) (Entered: 05/16/2012) |
| 05/16/2012 | 120 | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Gonzalo Ramirez. (Smith, Aaron) (Entered: 05/16/2012) |
| 05/16/2012 | 121 | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Donte Barnes. (Smith, Aaron) (Entered: 05/16/2012) |
| 05/16/2012 | 122 | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Enrique Gobin. (Smith, Aaron) (Entered: 05/16/2012) |
| 05/16/2012 | 123 | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Alfredo Beltran−Ruiz. (Smith, Aaron) (Entered: 05/16/2012) |
| 05/16/2012 | 124 | | ORDER FOR WRIT OF HABEAS CORPUS AD PROSEQUENDUM granting 123 Motion for Writ of Habeas Corpus ad prosequendum as to Alfredo Beltran−Ruiz (10). Signed by Magistrate Judge Kenneth G. Gale on 5/16/2012. (aa) (Entered: 05/16/2012) |
| 05/16/2012 | 125 | | ORDER FOR WRIT OF HABEAS CORPUS AD PROSEQUENDUM granting 122 Motion for Writ of Habeas Corpus ad prosequendum as to Enrique Gobin (13). Signed by Magistrate Judge Kenneth G. Gale on 5/16/2012. (aa) (Entered: 05/16/2012) |
| 05/16/2012 | 126 | | ORDER FOR WRIT OF HABEAS CORPUS AD PROSEQUENDUM granting 121 Motion for Writ of Habeas Corpus ad prosequendum as to Donte Barnes (11). Signed by Magistrate Judge Kenneth G. Gale on 5/16/2012. (aa) (Entered: 05/16/2012) |
| 05/16/2012 | 127 | | ORDER FOR WRIT OF HABEAS CORPUS AD PROSEQUENDUM granting 120 Motion for Writ of Habeas Corpus ad prosequendum as to Gonzalo Ramirez (3). Signed by Magistrate Judge Kenneth G. Gale on 5/16/2012. (aa) (Entered: 05/16/2012) |
| 05/16/2012 | 128 | | ORDER FOR WRIT OF HABEAS CORPUS AD PROSEQUENDUM granting 119 Motion for Writ of Habeas Corpus ad prosequendum as to Eusebio Sierra−Medrano (16). Signed by Magistrate Judge Kenneth G. Gale on 5/16/2012. (aa) (Entered: 05/16/2012) |
| 05/16/2012 | 129 | | WRIT OF HABEAS CORPUS AD PROSEQUENDUM ISSUED as to Gonzalo Ramirez, Alfredo Beltran−Ruiz, Donte Barnes, Enrique Gobin & Eusebio Sierra−Medrano to appear forthwith. (aa) (Entered: 05/16/2012) |
| 05/16/2012 | 130 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: DETENTION HEARING as to Anthony Wright held on 5/16/2012. ARRAIGNMENT as to Anthony Wright (5) Count 1,2,3,4,5,6 held on 5/16/2012. The Defendant's next appearance before Judge Belot per |

44

| | | | |
|---|---|---|---|
| | | | scheduling order. The Defendant has waived his right to a detention hearing due to a writ. The Court accepted the waiver and granted the Government's motion for detention. (Tape #1:29–1:33.) (aa) (Entered: 05/16/2012) |
| 05/17/2012 | 131 | | ARREST WARRANT returned executed on 5/10/2012 as to Alfonso Banda–Hernandez (smg) (Entered: 05/17/2012) |
| 05/17/2012 | 132 | | ARREST WARRANT returned executed on 5/10/2012 as to Hernan Quezada (smg) (Entered: 05/17/2012) |
| 05/17/2012 | 133 | | ARREST WARRANT returned executed on 5/10/2012 as to Adam Flores (smg) (Entered: 05/17/2012) |
| 05/17/2012 | 134 | | ARREST WARRANT returned executed on 5/10/2012 as to Humberto Ortiz (smg) (Entered: 05/17/2012) |
| 05/17/2012 | 135 | | ARREST WARRANT returned executed on 5/10/2012 as to Jesus Torres (smg) (Entered: 05/17/2012) |
| 05/17/2012 | 137 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: DETENTION HEARING as to Humberto Ortiz held on 5/17/2012. ARRAIGNMENT as to Humberto Ortiz (23) Count 1,27 held on 5/17/2012. Defendant has waived his right to a detention hearing due to a writ. Court accepted the waiver and granted Government's motion for detention. Defendant's next appearance per the Scheduling Order before Judge Belot. (Tape #3:09–3:13.) (alm) (Entered: 05/18/2012) |
| 05/17/2012 | 138 | | WAIVER OF DETENTION HEARING by Humberto Ortiz. (alm) (Entered: 05/18/2012) |
| 05/17/2012 | 139 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: DETENTION HEARING as to Russell Worthey held on 5/17/2012. Defendant waived his right to a detention hearing. Court accepted waiver and granted Government's motion for detention. Defense counsel requested a Psych Eval for Defendant. Court granted request for a psych eval. Written order to issue. Arraignment to be set after psych. eval. results. (Tape #2:40–2:43.) (alm) (Entered: 05/18/2012) |
| 05/17/2012 | 140 | | WAIVER OF DETENTION HEARING by Russell Worthey. (alm) (Entered: 05/18/2012) |
| 05/18/2012 | 136 | | ENTRY OF APPEARANCE: by attorney David H. Moses appearing for Jason Najera (Moses, David) (Entered: 05/18/2012) |
| 05/18/2012 | 148 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: DETENTION HEARING as to Jason Najera held on 5/18/2012. ARRAIGNMENT as to Jason Najera (1) Count 1,26,27,33–34 held on 5/18/2012. Government's motion for detention is granted. Defendant's next appearance per the Scheduling Order before Judge Belot. (Tape #2:42–2:57.) (alm) (Entered: 05/21/2012) |
| 05/18/2012 | 149 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: DETENTION HEARING as to Jesus Flores held on 5/18/2012. ARRAIGNMENT as to Jesus Flores (7) Count 1,7,8,9 held on 5/18/2012. Government's motion for detention is granted. Defendant's next appearance per the Scheduling Order before Judge Belot. (Tape #2:16–2:26.) (alm) |

| | | | |
|---|---|---|---|
| | | | (Entered: 05/21/2012) |
| 05/18/2012 | 150 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: DETENTION HEARING as to Juan Torres held on 5/18/2012. ARRAIGNMENT as to Juan Torres (9) Count 1,10,11,12,13 held on 5/18/2012. Government's motion for detention is denied. Release Order stayed until 5/21/12 at 5:00 p.m. to allow for Government to file the appeal. Defendant's next appearance per the Scheduling Order before Judge Belot. (Tape #1:56–2:15.) (alm) (Entered: 05/21/2012) |
| 05/18/2012 | 151 | | ORDER SETTING CONDITIONS OF RELEASE as to Juan Torres (9): $25,000 O/R. Order stayed until Monday, May 21, 2012, at 1700 hrs. Signed by Magistrate Judge Kenneth G. Gale on 5/18/2012. (alm) (Entered: 05/21/2012) |
| 05/18/2012 | 152 | | BOND POSTED as to Juan Torres. (alm) (Entered: 05/21/2012) |
| 05/18/2012 | 153 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: DETENTION HEARING as to Jose Neave held on 5/18/2012. ARRAIGNMENT as to Jose Neave (21) Count 1,26,27 held on 5/18/2012. Defendant has waived his right to a detention hearing due to a writ. Court accepted waiver and granted Government's motion for detention. Defendant's next appearance per the Scheduling Order before Judge Belot. (Tape #3:08–3:10.) (alm) (Entered: 05/21/2012) |
| 05/18/2012 | 154 | | WAIVER OF DETENTION HEARING by Jose Neave. (alm) (Entered: 05/21/2012) |
| 05/18/2012 | 155 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: DETENTION HEARING as to Adam Flores held on 5/18/2012. ARRAIGNMENT as to Adam Flores (18) Count 1,23,24,25 held on 5/18/2012. Government's motion for detention is granted. Defendant's next appearance per the Scheduling Order before Judge Belot. (Tape #2:57–3:08.) (alm) (Entered: 05/21/2012) |
| 05/18/2012 | 156 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: DETENTION HEARING as to Andrew Gusman held on 5/18/2012. ARRAIGNMENT as to Andrew Gusman (15) Count 1,19,20,21,22 held on 5/18/2012. Government's motion for detention is granted. Defendant's next appearance per the Scheduling Order before Judge Belot. (Tape #1:43–1:56.) (alm) (Entered: 05/21/2012) |
| 05/18/2012 | 157 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: DETENTION HEARING as to Jesus Sanchez held on 5/18/2012. ARRAIGNMENT as to Jesus Sanchez (12) Count 1,19,20,21,22,28,35 held on 5/18/2012. Government's motion for detention is granted. Defendant's next appearance per the Scheduling Order before Judge Belot. (Tape #2:26–2:42.) (alm) (Entered: 05/21/2012) |
| 05/21/2012 | 141 | | MOTION to Revoke Magistrate's Order of Release by USA as to Juan Torres. (Welch, Lanny) (Entered: 05/21/2012) |
| 05/21/2012 | 142 | | ORDER OF DETENTION PENDING TRIAL as to Jesus Sanchez. Signed by Magistrate Judge Kenneth G. Gale on 5/18/2012. (alm) (Entered: 05/21/2012) |
| 05/21/2012 | 143 | | |

| | | | |
|---|---|---|---|
| | | | ORDER OF DETENTION PENDING TRIAL as to Adam Flores. Signed by Magistrate Judge Kenneth G. Gale on 5/18/2012. (alm) (Entered: 05/21/2012) |
| 05/21/2012 | 144 | | ORDER OF DETENTION PENDING TRIAL as to Jason Najera. Signed by Magistrate Judge Kenneth G. Gale on 5/18/2012. (alm) (Entered: 05/21/2012) |
| 05/21/2012 | 145 | | ORDER OF DETENTION PENDING TRIAL as to Jesus Flores. Signed by Magistrate Judge Kenneth G. Gale on 5/18/2012. (alm) (Entered: 05/21/2012) |
| 05/21/2012 | 146 | | ORDER OF DETENTION PENDING TRIAL as to Andrew Gusman. Signed by Magistrate Judge Kenneth G. Gale on 5/18/2012. (alm) (Entered: 05/21/2012) |
| 05/21/2012 | 147 | | NOTICE OF HEARING ON MOTION as to Juan Torres 141 MOTION to Revoke Magistrate's Order of Release . Motion Hearing set for 5/22/2012 at 01:30 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(sbw) (Entered: 05/21/2012) |
| 05/21/2012 | 161 | | ARREST WARRANT returned executed on 5/18/2012 as to Joshua Flores (smg) (Entered: 05/22/2012) |
| 05/21/2012 | | | ARREST of Joshua Flores. (alm) (Entered: 05/22/2012) |
| 05/22/2012 | 158 | | CJA 20 as to Joshua Flores: Appointment of Attorney Carl Maughan. Signed by Magistrate Judge Kenneth G. Gale on 5/21/2012. (alm) (Entered: 05/22/2012) |
| 05/22/2012 | 159 | | ORDER OF DETENTION PENDING TRIAL as to Angel Cerda. Signed by Magistrate Judge Kenneth G. Gale on 5/21/2012. (alm) (Entered: 05/22/2012) |
| 05/22/2012 | 160 | | ORDER OF DETENTION PENDING TRIAL as to Alfonso Banda–Hernandez. Signed by Magistrate Judge Kenneth G. Gale on 5/21/2012. (alm) (Entered: 05/22/2012) |
| 05/22/2012 | 162 | | ORDER OF DETENTION PENDING TRIAL as to Jesus Torres. Signed by Magistrate Judge Kenneth G. Gale on 5/21/2012. (alm) (Entered: 05/22/2012) |
| 05/22/2012 | 163 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: RULE 5/INITIAL APPEARANCE as to Joshua Flores held on 5/22/2012. Arraignment set for 5/23/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. Detention Hearing set for 5/23/2012 at 01:30 PM in Courtroom 406 (KGG) before Magistrate Judge Kenneth G. Gale. (Tape #1:42–1:46.) (alm) (Entered: 05/22/2012) |
| 05/22/2012 | 164 | | CJA 23 FINANCIAL AFFIDAVIT by Joshua Flores. (alm) (Entered: 05/22/2012) |
| 05/22/2012 | 165 | | ORDER OF TEMPORARY DETENTION as to Joshua Flores. Signed by Magistrate Judge Kenneth G. Gale on 5/21/2012. (alm) (Entered: 05/22/2012) |
| 05/22/2012 | 166 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: DETENTION HEARING as to Jesus Torres held on 5/22/2012. ARRAIGNMENT as to Jesus Torres (20) Count 1,27 held on 5/22/2012. Government's motion for detention is granted. Defendant's next appearance per the Scheduling Order before Judge Belot. (Tape #2:34–2:46.) (alm) (Entered: 05/22/2012) |

| 05/22/2012 | 167 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: DETENTION HEARING as to Alfonso Banda–Hernandez held on 5/22/2012. ARRAIGNMENT as to Alfonso Banda–Hernandez (14) Count 1,19,20,21,22 held on 5/22/2012. Government's motion for detention is granted. Defendant's next appearance per the Scheduling Order before Judge Belot. (Tape #2:05–2:19.) (alm) (Entered: 05/22/2012) |
|---|---|---|---|
| 05/22/2012 | 168 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: DETENTION HEARING as to Angel Cerda held on 5/22/2012. ARRAIGNMENT as to Angel Cerda (8) Count 1,10,11,12,13 held on 5/22/2012. Government's motion for detention is granted. Defendant's next appearance per the Scheduling Order before Judge Belot. (Tape #2:18–2:34.) (alm) (Entered: 05/22/2012) |
| 05/22/2012 | 169 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: DETENTION HEARING as to Hernan Quezada held on 5/22/2012. ARRAIGNMENT as to Hernan Quezada (22) Count 1,38 held on 5/22/2012. Release order stayed until 5:00 p.m. on 5/22/12 to allow the Government to file an appeal. Government's motion for detention is denied. Defendant's next appearance per the Scheduling Order before Judge Belot. (Tape #1:45–2:05.) (alm) (Entered: 05/22/2012) |
| 05/22/2012 | 170 | | ORDER SETTING CONDITIONS OF RELEASE as to Hernan Quezada (22): $50,000 O/R. Order stayed until 1700 hours on 5/22/12. Signed by Magistrate Judge Kenneth G. Gale on 5/21/2012. (alm) (Entered: 05/22/2012) |
| 05/22/2012 | 171 | | BOND POSTED as to Hernan Quezada. (alm) (Entered: 05/22/2012) |
| 05/22/2012 | 172 | | MOTION to Revoke Magistrate's Order of Release by USA as to Hernan Quezada. (Welch, Lanny) (Entered: 05/22/2012) |
| 05/22/2012 | 173 | | NOTICE OF HEARING ON MOTION as to Hernan Quezada 172 MOTION to Revoke Magistrate's Order of Release : (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Motion Hearing set for 5/23/2012 at 10:30 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 05/22/2012) |
| 05/22/2012 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: MOTION HEARING as to Juan Torres held on 5/22/2012. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 05/22/2012) |
| 05/23/2012 | 174 | | MEMORANDUM AND ORDER denying 141 Motion to Revoke as to Juan Torres (9) and Magistrate Judge Kenneth Gale's order granting bond is affirmed, with conditions, for the reasons set forth in this Order. Defendant must post a surety bond with the Clerk's Office in the amount of $50,000 as an additional condition of his release. All other requirements set forth in Magistrate Gale's order setting conditions of release must also be complied with. SEE ORDER FOR ADDITIONAL DETAILS. Signed by District Judge Monti L. Belot on 5/22/2012. (alm) (Entered: 05/23/2012) |
| 05/23/2012 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: MOTION HEARING as to Hernan Quezada held on 5/23/2012. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 05/23/2012) |

| 05/23/2012 | 175 | | MEMORANDUM AND ORDER denying 172 Motion to Revoke as to Hernan Quezada (22) and Magistrate Judge Kenneth Gale's order granting bond is affirmed, with conditions, for reasons set forth in this Order. Defendant must post a surety bond with the Clerk's Office in the amount of $50,000 as an additional condition of his release. SEE ORDER FOR ADDITIONAL DETAILS. Signed by District Judge Monti L. Belot on 5/23/2012. (alm) (Entered: 05/23/2012) |
|---|---|---|---|
| 05/23/2012 | 176 | | ENTRY OF APPEARANCE: by attorney Kevin W. Loeffler appearing for Jose Neave (Loeffler, Kevin) (Entered: 05/23/2012) |
| 05/23/2012 | 177 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: DETENTION HEARING as to Joshua Flores held on 5/23/2012. ARRAIGNMENT as to Joshua Flores (6) Count 1,7,8,9 held on 5/23/2012. Defendant has waived his right to a detention hearing due to a writ. Court accepted waiver and grants Government's motion for detention. Defendant's next appearance per the Scheduling Order before Judge Belot. (Tape #1:58–2:00.) (alm) (Entered: 05/24/2012) |
| 05/23/2012 | 178 | | WAIVER OF DETENTION HEARING by Joshua Flores. (alm) (Entered: 05/24/2012) |
| 05/24/2012 | 179 | | ENTRY OF APPEARANCE: by attorney Michael J. Shultz appearing for Juan Torres (Shultz, Michael) (Entered: 05/24/2012) |
| 05/29/2012 | 180 | | BOND POSTED as to Juan Torres. (aa) (Additional attachment(s) added on 5/29/2012: # 1 Unredacted Bond Agreement) (aa). (Entered: 05/29/2012) |
| 05/29/2012 | 181 | | MINUTE ENTRY for proceedings held before Magistrate Judge Kenneth G. Gale: ARRAIGNMENT as to Russell Worthey (4) Count 1,2,3,4,5,6 held on 5/29/2012. Request for psychological evaluation has been withdrawn by defense counsel. Defendant's next appearance per the Scheduling Order before Judge Belot. (Tape #1:49–1:53.) (alm) (Entered: 05/30/2012) |
| 06/01/2012 | 182 | | MOTION for Review *of Magistrate's Order of Detention* by Jesus Torres. (Attachments: # 1 Exhibit)(O'Hara, Charles) (Entered: 06/01/2012) |
| 06/04/2012 | 183 | | NOTICE OF HEARING ON MOTION as to Jesus Torres 182 MOTION for Review *of Magistrate's Order of Detention*. Motion Hearing set for 6/11/2012 at 03:15 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(sbw) (Entered: 06/04/2012) |
| 06/08/2012 | | | ARREST of Donte Barnes. (aa) (Entered: 06/11/2012) |
| 06/08/2012 | 185 | | MINUTE ENTRY for proceedings held before Magistrate Judge Karen M. Humphreys: RULE 5/INITIAL APPEARANCE as to Donte Barnes held on 6/8/2012. ARRAIGNMENT as to Donte Barnes (11) Count 15,16,17,18 held on 6/8/2012. Defendant's next appearance before Judge Belot per scheduling order. The Defendant waived his right to a detention hearing. The Court accepted the waiver and sustained the Government motion for detention. (Tape #3:04–3:07; 3:13–3:19.) (aa) (Entered: 06/11/2012) |
| 06/08/2012 | 186 | | CJA 23 FINANCIAL AFFIDAVIT by Donte Barnes. (aa) (Entered: 06/11/2012) |

| 06/08/2012 | 187 | | WAIVER OF DETENTION HEARING by Donte Barnes. (aa) (Entered: 06/11/2012) |
| 06/11/2012 | 184 | | CJA 20 as to Donte Barnes: Appointment of Attorney Jeff L. Griffith. Signed by Magistrate Judge Karen M. Humphreys on 6/07/2012. (aa) (Entered: 06/11/2012) |
| 06/11/2012 | 188 | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: granting 182 Motion for Review as to Jesus Torres (20) for the reasons stated in open court; MOTION HEARING as to Jesus Torres held on 6/11/2012. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 06/11/2012) |
| 06/11/2012 | 191 | | ARREST WARRANT returned executed on 6/8/2012 as to Donte Barnes (smg) (Entered: 06/13/2012) |
| 06/12/2012 | 189 | | ORDER SETTING CONDITIONS OF RELEASE as to Jesus Torres (20): $25,000 O/R. Signed by District Judge Monti L. Belot on 6/11/2012. (aa) (Additional attachment(s) added on 6/13/2012: # 1 Unredacted Main Document) (aa). (Entered: 06/13/2012) |
| 06/12/2012 | 190 | | BOND POSTED as to Jesus Torres. (aa) (Entered: 06/13/2012) |
| 06/13/2012 | 192 | | CJA 20 as to Enrique Gobin: Appointment of Attorney Benjamin Anthony Reed. Signed by Magistrate Judge Karen M. Humphreys on 6/07/2012. (aa) (Entered: 06/13/2012) |
| 06/13/2012 | | | ARREST of Enrique Gobin. (aa) (Entered: 06/14/2012) |
| 06/13/2012 | 193 | | MINUTE ENTRY for proceedings held before Magistrate Judge Karen M. Humphreys: RULE 5/INITIAL APPEARANCE as to Enrique Gobin held on 6/13/2012. ARRAIGNMENT as to Enrique Gobin (13) Count 19,20,21,22 held on 6/13/2012. The Defendant's next appearance before Judge Belot per scheduling order. The Defendant waived his right to a detention hearing. The Court accepted the waiver and sustained the Government motion for detention. (Tape #1:39–1:47.) (aa) (Entered: 06/14/2012) |
| 06/13/2012 | 194 | | CJA 23 FINANCIAL AFFIDAVIT by Enrique Gobin. (aa) (Entered: 06/14/2012) |
| 06/13/2012 | 195 | | WAIVER OF DETENTION HEARING by Enrique Gobin. (aa) (Entered: 06/14/2012) |
| 06/13/2012 | | | ARREST of Gonzalo Ramirez. (aa) (Entered: 06/14/2012) |
| 06/13/2012 | 196 | | MINUTE ENTRY for proceedings held before Magistrate Judge Karen M. Humphreys: RULE 5/INITIAL APPEARANCE as to Gonzalo Ramirez held on 6/13/2012. Arraignment set for 6/27/2012 at 01:30 PM in Courtroom 326 (KMH) before Magistrate Judge Karen M. Humphreys. The Defendant waived his right to a detention hearing. The Court accepted the waiver and sustained the Government motion for detention. (Tape #1:39–1:42; 1:47–1:58.) (aa) (Entered: 06/14/2012) |
| 06/13/2012 | 197 | | CJA 23 FINANCIAL AFFIDAVIT by Gonzalo Ramirez. (aa) (Entered: 06/14/2012) |
| 06/13/2012 | 198 | | |

| | | | |
|---|---|---|---|
| | | | WAIVER OF DETENTION HEARING by Gonzalo Ramirez. (aa) (Entered: 06/14/2012) |
| 06/14/2012 | 199 | | ARREST WARRANT returned executed on 6/12/2012 as to Gonzalo Ramirez (smg) (Entered: 06/15/2012) |
| 06/15/2012 | 200 | | ENTRY OF APPEARANCE: by attorney Kirk C. Redmond appearing for Gonzalo Ramirez (Redmond, Kirk) (Entered: 06/15/2012) |
| 06/15/2012 | 201 | | ENTRY OF APPEARANCE: by attorney Jeff L. Griffith appearing for Donte Barnes (Griffith, Jeff) (Entered: 06/15/2012) |
| 06/15/2012 | 202 | | CJA 20 as to Alfredo Beltran–Ruiz: Appointment of Attorney John B. Sullivan. Signed by Magistrate Judge Karen M. Humphreys on 6/13/2012. (aa) (Entered: 06/15/2012) |
| 06/15/2012 | | | ARREST of Alfredo Beltran–Ruiz. (aa) (Entered: 06/18/2012) |
| 06/15/2012 | 204 | | MINUTE ENTRY for proceedings held before Magistrate Judge Karen M. Humphreys: RULE 5/INITIAL APPEARANCE as to Alfredo Beltran–Ruiz held on 6/15/2012. Arraignment set for 6/22/2012 at 02:00 PM in Courtroom 326 (KMH) before Magistrate Judge Karen M. Humphreys. Detention Hearing set for 6/22/2012 at 02:00 PM in Courtroom 326 (KMH) before Magistrate Judge Karen M. Humphreys. (Tape #1:30–1:33; 1:37–1:41.) (aa) (Entered: 06/18/2012) |
| 06/15/2012 | 205 | | CJA 23 FINANCIAL AFFIDAVIT by Alfredo Beltran–Ruiz. (aa) (Entered: 06/18/2012) |
| 06/15/2012 | 206 | | ORDER OF TEMPORARY DETENTION as to Alfredo Beltran–Ruiz. Signed by Magistrate Judge Karen M. Humphreys on 6/15/2012. (aa) (Entered: 06/18/2012) |
| 06/15/2012 | 214 | | ARREST WARRANT returned executed on 6/12/2012 as to Enrique Gobin (smg) (Entered: 06/19/2012) |
| 06/15/2012 | 215 | | ARREST WARRANT returned executed on 6/11/2012 as to Alfredo Beltran–Ruiz (smg) (Entered: 06/19/2012) |
| 06/18/2012 | 203 | | ENTRY OF APPEARANCE: by attorney Melody J. Evans appearing for Gonzalo Ramirez (Evans, Melody) (Entered: 06/18/2012) |
| 06/18/2012 | 207 | 174 | ENTRY OF APPEARANCE: by attorney John V. Wachtel appearing for Pedro Garcia (Wachtel, John) (Entered: 06/18/2012) |
| 06/18/2012 | 208 | | CJA 30 as to Pedro Garcia: Appointment of Attorney John V. Wachtel. Signed by Magistrate Judge Karen M. Humphreys on 6/14/2012. (aa) Modified on 9/25/2012 to reflect that the form filed was actually a CJA 30, not a CJA 20 (aa). (Entered: 06/18/2012) |
| 06/18/2012 | 209 | | CJA 30 as to Pedro Garcia: Appointment of Attorney Charles M. Rogers. Signed by Magistrate Judge Karen M. Humphreys on 6/14/2012. (aa) Modified on 9/25/2012 to reflect that the form filed was actually a CJA 30, not a CJA 20 (aa). (Entered: 06/18/2012) |
| 06/18/2012 | | | ARREST of Pedro Garcia. (aa) (Entered: 06/19/2012) |

| 06/18/2012 | 210 | | MINUTE ENTRY for proceedings held before Magistrate Judge Karen M. Humphreys: RULE 5/INITIAL APPEARANCE as to Pedro Garcia held on 6/18/2012. ARRAIGNMENT as to Pedro Garcia (2) Count 1,2,3,4,5,6,7,8,9 held on 6/18/2012. The Defendant's next appearance before Judge Belot per scheduling order. The Defendant waived his right to a detention hearing. The Court accepted the waiver and sustained the Government motion for detention. (Tape #1:32–1:43.) (aa) (Entered: 06/19/2012) |
|---|---|---|---|
| 06/18/2012 | 211 | | CJA 23 FINANCIAL AFFIDAVIT by Pedro Garcia. (aa) (Entered: 06/19/2012) |
| 06/18/2012 | 212 | 175 | WAIVER OF DETENTION HEARING by Pedro Garcia. (aa) (Entered: 06/19/2012) |
| 06/19/2012 | 213 | | ENTRY OF APPEARANCE: by attorney John B. Sullivan appearing for Alfredo Beltran–Ruiz (Sullivan, John) (Entered: 06/19/2012) |
| 06/22/2012 | 216 | | MINUTE ENTRY for proceedings held before Magistrate Judge Karen M. Humphreys: DETENTION HEARING as to Alfredo Beltran–Ruiz held on 6/22/2012. ARRAIGNMENT as to Alfredo Beltran–Ruiz (10) Count 15,16,17,18 held on 6/22/2012. The Defendant's next appearance before Judge Belot per scheduling order. The Government motion for detention is sustained. (Tape #3:00–3:09.) (aa) (Entered: 06/25/2012) |
| 06/25/2012 | 217 | | CJA 20 as to Eusebio Sierra–Medrano: Appointment of Attorney Mark Bennett. Signed by Magistrate Judge Karen M. Humphreys on 6/22/2012. (aa) (Entered: 06/25/2012) |
| 06/25/2012 | | | ARREST of Eusebio Sierra–Medrano. (aa) (Entered: 06/26/2012) |
| 06/25/2012 | 218 | | MINUTE ENTRY for proceedings held before Magistrate Judge Karen M. Humphreys: RULE 5/INITIAL APPEARANCE as to Eusebio Sierra–Medrano held on 6/25/2012. ARRAIGNMENT as to Eusebio Sierra–Medrano (16) Count 1,14,36–37 held on 6/25/2012. The Defendant's next appearance before Judge Belot per scheduling order. The Defendant waived his right to a detention hearing. The Court accepted the waiver and sustained the Government motion for detention. (Tape #1:32–1:41.) (aa) (Entered: 06/26/2012) |
| 06/25/2012 | 219 | | CJA 23 FINANCIAL AFFIDAVIT by Eusebio Sierra–Medrano. (aa) (Entered: 06/26/2012) |
| 06/25/2012 | 220 | | WAIVER OF DETENTION HEARING by Eusebio Sierra–Medrano. (aa) (Entered: 06/26/2012) |
| 06/25/2012 | 225 | | ARREST WARRANT returned executed on 6/25/2012 as to Eusebio Sierra–Medrano (smg) (Entered: 06/27/2012) |
| 06/26/2012 | 221 | 176 | GENERAL ORDER OF DISCOVERY & SCHEDULING as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada and Humberto Ortiz. Jury Trial set for 8/28/2012 at 09:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. Status Conference/Plea Hearing set for 8/20/2012 at |

| | | | |
|---|---|---|---|
| | | | 02:30 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. Signed by District Judge Monti L. Belot on 6/26/2012. (sbw) (Entered: 06/26/2012) |
| 06/26/2012 | 222 | | ENTRY OF APPEARANCE: by attorney Mark L. Bennett, Jr appearing for Eusebio Sierra–Medrano (Bennett, Mark) (Entered: 06/26/2012) |
| 06/26/2012 | 223 | | ORDER OF DETENTION PENDING TRIAL as to Alfredo Beltran–Ruiz. Signed by Magistrate Judge Karen M. Humphreys on 6/26/2012. (aa) (Entered: 06/26/2012) |
| 06/26/2012 | 224 | | ARREST WARRANT returned executed on 6/15/2012 as to Pedro Garcia (smg) (Entered: 06/27/2012) |
| 06/27/2012 | 226 | | MINUTE ENTRY for proceedings held before Magistrate Judge Karen M. Humphreys: ARRAIGNMENT as to Gonzalo Ramirez (3) Count 1,2,3,4,5,6,7,8,9,10,11,12,13 held on 6/27/2012. The Defendant's next appearance before Judge Belot per scheduling order. (Tape #1:46–1:48.) (aa) (Entered: 06/28/2012) |
| 06/29/2012 | 227 | | MOTION to Modify Conditions of Release by Jesus Torres. (O'Hara, Charles) (Entered: 06/29/2012) |
| 07/10/2012 | 228 | | ORDER MODIFYING CONDITIONS OF RELEASE granting 227 Motion to Modify Conditions of Release as to Jesus Torres (20). Signed by District Judge Monti L. Belot on 7/10/2012. (aa) (Entered: 07/10/2012) |
| 07/11/2012 | 229 | 182 | MOTION to Designate as Complex Case *and Requesting Excludable Time Computations* by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Ortiz. (Smith, Aaron) (Entered: 07/11/2012) |
| 07/11/2012 | 230 | | NOTICE of change of address by Paul S. McCausland as to Angel Cerda (email to Attorney Admission) (McCausland, Paul) (Entered: 07/11/2012) |
| 07/12/2012 | 231 | 188 | RESPONSE TO MOTION by Pedro Garcia re 229 MOTION to Designate as Complex Case *and Requesting Excludable Time Computations* (Wachtel, John) (Entered: 07/12/2012) |
| 07/12/2012 | 232 | | NOTICE of change of address by Derek S. Casey as to Hernan Quezada (email to Attorney Admission) (Casey, Derek) (Entered: 07/12/2012) |
| 07/16/2012 | 233 | | MOTION to Sever Defendant by Hernan Quezada. (Casey, Derek) (Entered: 07/16/2012) |
| 07/16/2012 | 234 | | OBJECTION(S) to 229 MOTION to Designate as Complex Case *and Requesting Excludable Time Computations* by Hernan Quezada (Casey, Derek) (Entered: 07/16/2012) |
| 07/16/2012 | 235 | | MOTION to Amend/Correct *Conditions of Pretrial Release* by Hernan Quezada. (Attachments: # 1 Exhibit A)(Casey, Derek) (Entered: 07/16/2012) |
| 07/18/2012 | 236 | | |

53

| | | | |
|---|---|---|---|
| | | | NOTICE OF HEARING ON MOTION as to Hernan Quezada. **THIS IS AN OFFICIAL NOTICE FOR THIS HEARING** 235 MOTION to Amend/Correct *Conditions of Pretrial Release* : (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Motion Hearing set for 7/23/2012 at 11:30 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (sbw) (Entered: 07/18/2012) |
| 07/18/2012 | 237 | | NOTICE OF HEARING as to Defendant Hernan Quezada **THIS IS AN OFFICIAL NOTICE FOR THIS HEARING** (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)( Motion Hearing set for 8/6/2012 at 02:15 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot.), NOTICE OF CANCELLED HEARING: Motion hearing set on July 23 as to Defendant Hernan Quezada cancelled. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 07/18/2012) |
| 07/19/2012 | 238 | | RESPONSE TO MOTION by Angel Cerda re 229 MOTION to Designate as Complex Case *and Requesting Excludable Time Computations* (McCausland, Paul) (Entered: 07/19/2012) |
| 07/19/2012 | 239 | | MOTION FOR INTERIM MONTHLY PAYMENTS TO CJA APPOINTED COUNSEL by Angel Cerda. (McCausland, Paul) (Entered: 07/19/2012) |
| 07/19/2012 | 240 | | RESPONSE TO MOTION by Eusebio Sierra–Medrano re 229 MOTION to Designate as Complex Case *and Requesting Excludable Time Computations* (Bennett, Mark) (Entered: 07/19/2012) |
| 07/20/2012 | 242 | | RESPONSE TO MOTION by Russell Worthey re 229 MOTION to Designate as Complex Case *and Requesting Excludable Time Computations* (Pratt, James) (Entered: 07/20/2012) |
| 07/22/2012 | 243 | | RESPONSE TO MOTION by Jesus Sanchez re 229 MOTION to Designate as Complex Case *and Requesting Excludable Time Computations* (Schoenhofer, Mark) (Entered: 07/22/2012) |
| 07/23/2012 | 244 | | RESPONSE TO MOTION by USA as to Hernan Quezada re 233 MOTION to Sever Defendant (Welch, Lanny) (Entered: 07/23/2012) |
| 07/23/2012 | 245 | | RESPONSE TO MOTION by Anthony Wright re 229 MOTION to Designate as Complex Case *and Requesting Excludable Time Computations* (Fowler, Jay) (Entered: 07/23/2012) |
| 07/23/2012 | 246 | | RESPONSE TO MOTION by Andrew Gusman re 229 MOTION to Designate as Complex Case *and Requesting Excludable Time Computations* (Hartenstein, Eric) (Entered: 07/23/2012) |
| 07/23/2012 | 247 | | RESPONSE TO MOTION by Alfonso Banda–Hernandez re 229 MOTION to Designate as Complex Case *and Requesting Excludable Time Computations* (Hepperly, Michael) (Entered: 07/23/2012) |
| 07/23/2012 | 248 | | RESPONSE TO MOTION by USA as to Hernan Quezada re 235 MOTION to Amend/Correct *Conditions of Pretrial Release* (Welch, Lanny) (Entered: 07/23/2012) |
| 07/23/2012 | 249 | | RESPONSE TO MOTION by Fabian Neave re 229 MOTION to Designate as Complex Case *and Requesting Excludable Time Computations* (Bell, |

| | | | |
|---|---|---|---|
| | | | Gregory) (Entered: 07/23/2012) |
| 07/24/2012 | 250 | | MOTION TO CONTINUE AND EXTEND PRETRIAL DEADLINES AND DATES re 221 Scheduling Order,, by Angel Cerda. (McCausland, Paul) (Entered: 07/24/2012) |
| 07/24/2012 | 251 | | SEALED MOTION for Leave to File Under Seal by Angel Cerda. (Attachments: # 1 Proposed Sealed Document)(McCausland, Paul) (Entered: 07/24/2012) |
| 07/24/2012 | 252 | | ORDER granting 251 Sealed Motion for Leave to File Under Seal. Counsel is directed to file forthwith the requested document(s) with an event from the SEALED DOCUMENTS category as to Angel Cerda (8) Signed by District Judge Monti L. Belot on 7/24/2012. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (sbw) (Entered: 07/24/2012) |
| 07/24/2012 | 253 | | SEALED MOTION by Angel Cerda. (McCausland, Paul) (Entered: 07/24/2012) |
| 07/25/2012 | 254 | 190 | MOTION to Continue *AND EXTEND* PRETRIAL DEADLINES AND DATES by Pedro Garcia. (Wachtel, John) (Entered: 07/25/2012) |
| 07/25/2012 | 255 | | MOTION To Join *Defendant Garcia's Motion to Continue and Extend Deadlines and Dates* by Russell Worthey. (Pratt, James) (Entered: 07/25/2012) |
| 07/25/2012 | 256 | | MOTION for Extension of Time to File *Pretrial Motions* by Gonzalo Ramirez. (Evans, Melody) (Entered: 07/25/2012) |
| 07/25/2012 | 257 | | MOTION for Joinder *To Defendant Cerda's Motion To Continue and Extend Pretrial Deadlines and Dates* by Eusebio Sierra–Medrano. (Bennett, Mark) (Entered: 07/25/2012) |
| 07/25/2012 | 258 | | MOTION for Joinder *in Co–Defendant Cerda's Motion to Continue and Extend Pre–Trial Deadlines and Dates* by Andrew Gusman. (Hartenstein, Eric) (Entered: 07/25/2012) |
| 07/25/2012 | 259 | | MOTION to Continue Pretrial Deadlines and Dates by Alfredo Beltran–Ruiz as to Alfredo Beltran–Ruiz, Humberto Ortiz. (Sullivan, John) (Entered: 07/25/2012) |
| 07/26/2012 | 260 | | MOTION for Joinder *to Continue and Extend Pretrial Deadlines and Dates* by Enrique Gobin. (Reed, Benjamin) (Entered: 07/26/2012) |
| 07/26/2012 | 261 | | RESPONSE TO MOTION by Enrique Gobin re 229 MOTION to Designate as Complex Case *and Requesting Excludable Time Computations* (Reed, Benjamin) (Entered: 07/26/2012) |
| 07/26/2012 | 262 | | MOTION to Continue *and extend pretrial deadlines and dates* by Jose Neave. (Loeffler, Kevin) (Entered: 07/26/2012) |
| 07/26/2012 | 263 | | RESPONSE TO MOTION by Juan Torres re 229 MOTION to Designate as Complex Case *and Requesting Excludable Time Computations* (Shultz, Michael) (Entered: 07/26/2012) |
| 07/26/2012 | 264 | | MOTION to Join Defendant Angel Cerda's Motion to Continue and Extend Pretrial Deadlines and Dates by Juan Torres. (Shultz, Michael) (Entered: |

| | | | |
|---|---|---|---|
| | | | 07/26/2012) |
| 07/26/2012 | 265 | | RESPONSE TO MOTION by Jose Neave re 229 MOTION to Designate as Complex Case *and Requesting Excludable Time Computations* (Loeffler, Kevin) (Entered: 07/26/2012) |
| 07/27/2012 | 267 | 194 | ORDER FOR CASE DESIGNATION AS COMPLEX AND ORDERING EXCLUDABLE TIME COMPUTATIONS granting 229 Motion to Designate as Complex Case; granting 254 Motion to Continue; granting 256 Motion for Extension of Time to File; granting 255 Motion for Joinder; granting 250 Motion to Continue; granting 264 Motion for Joinder; granting 259 Motion to Continue; granting 260 Motion for Joinder; granting 258 Motion for Joinder; granting 257 Motion for Joinder; granting 262 Motion to Continue. A Status Hearing is set for August 20, 2012, at 2:30 p.m. in order to set up a schedule for discovery, filing of motions and responses, pretrial hearing and for jury trial. Defendants do not need to appear. Signed by District Judge Monti L. Belot on 7/26/2012. (aa) (Entered: 07/27/2012) |
| 07/31/2012 | 269 | | MOTION for Review of Detention Order *Motion for Review of Order of Detention* by Humberto Ortiz. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(McMurray, Molly) (Entered: 07/31/2012) |
| 08/01/2012 | 270 | | MOTION for Attorneys Fees *Approval of Associate and Legal Assistant Billing* by Jason Najera. (Moses, David) (Entered: 08/01/2012) |
| 08/01/2012 | 271 | | NOTICE OF HEARING ON MOTION as to Humberto Ortiz. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. 269 MOTION for Review: Motion Hearing set for 8/27/2012 at 03:30 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(sbw) (Entered: 08/01/2012) |
| 08/03/2012 | 272 | | ORDER FOR INTERIM MONTHLY PAYMENTS TO CJA APPOINTED COUNSEL granting 239 Motion as to Angel Cerda (8). Signed by District Judge Monti L. Belot on 8/2/2012. (aa) (Entered: 08/03/2012) |
| 08/03/2012 | 275 | | MEMORANDUM AND ORDER REGARDING SEVERANCE denying 233 Motion to Sever Defendant as to Hernan Quezada (22). Signed by District Judge Monti L. Belot on 8/3/2012. (aa) (Entered: 08/03/2012) |
| 08/03/2012 | 276 | | ORDER denying 270 Motion for Attorney Fees as to Jason Najera (1). Signed by District Judge Monti L. Belot on 8/3/2012. (aa) (Entered: 08/03/2012) |
| 08/06/2012 | 278 | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: granting in part and denying in part 235 Motion to Amend/Correct as to Hernan Quezada (22) for the reasons set forth in open court. Defendant's surety bond has been reduced to $5000; MOTION HEARING as to Hernan Quezada held on 8/6/2012. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 08/06/2012) |
| 08/08/2012 | 280 | | RESPONSE TO MOTION by USA as to Humberto Ortiz re 269 MOTION for Review *of the Magistrate's Order of Detention* (Smith, Aaron) (Entered: 08/08/2012) |
| 08/20/2012 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: STATUS CONFERENCE as to Jason Najera, Pedro Garcia, Gonzalo |

| | | | |
|---|---|---|---|
| | | | Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Ortiz held on 8/20/2012. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 08/20/2012) |
| 08/20/2012 | 282 | | ORDER SETTING CONDITIONS OF RELEASE as to Hernan Quezada (22): $5,000 secured bond. Bond secured by Morey Bonding Co.. Signed by District Judge Monti L. Belot on 8/06/2012. (aa) (Entered: 08/21/2012) |
| 08/20/2012 | 283 | | BOND POSTED as to Hernan Quezada. (aa) (Entered: 08/21/2012) |
| 08/21/2012 | 281 | | NOTICE OF HEARING as to Defendant Hernan Quezada  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Bond Hearing set for 8/27/2012 at 10:45 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (sbw) (Entered: 08/21/2012) |
| 08/22/2012 | 284 | | MOTION for Reconsideration of Detention Order by Andrew Gusman. (Hartenstein, Eric) (Entered: 08/22/2012) |
| 08/22/2012 | 285 | | SEALED MOTION for Leave to File Under Seal by Andrew Gusman. (Attachments: # 1 Exhibit Exhibit A)(Hartenstein, Eric) (Entered: 08/22/2012) |
| 08/22/2012 | | | MINUTE ORDER granting 285 Sealed Motion for Leave to File Under Seal. Counsel is directed to file forthwith the requested document(s) with an event from the SEALED DOCUMENTS category as to Andrew Gusman (15) Signed by District Judge Monti L. Belot on 8/22/2012. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 08/22/2012) |
| 08/22/2012 | 286 | | SEALED EXHIBITS IN SUPPORT of 284 MOTION for Reconsideration of Detention Order by Andrew Gusman as to Andrew Gusman (Hartenstein, Eric) (Entered: 08/22/2012) |
| 08/23/2012 | 287 | | NOTICE OF HEARING ON MOTION as to Andrew Gusman.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING 284 MOTION for Reconsideration of Detention Order : (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Motion Hearing set for 9/17/2012 at 11:45 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (sbw) (Entered: 08/23/2012) |
| 08/27/2012 | 288 | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: denying 269 Motion for Review without prejudice as to Humberto Ortiz (23) for the reasons stated during the hearing; MOTION HEARING as to Humberto Ortiz held on 8/27/2012. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 08/27/2012) |
| 09/06/2012 | 289 | | PETITION AND ORDER for Offender Under Supervision as to Juan Torres. Signed by Magistrate Judge Kenneth G. Gale on 9/6/2012. (aa) (Entered: 09/06/2012) |

| 09/07/2012 | 290 | 198 | NOTICE of Intent *to Not Seek Death Penalty* by USA as to Pedro Garcia, Gonzalo Ramirez (Smith, Aaron) (Entered: 09/07/2012) |
|---|---|---|---|
| 09/12/2012 | 291 | | ENTRY OF APPEARANCE: by attorney Joel Mandelman appearing for Gonzalo Ramirez (Mandelman, Joel) (Entered: 09/12/2012) |
| 09/12/2012 | 292 | | RESPONSE TO MOTION by USA as to Andrew Gusman re 284 MOTION for Reconsideration of Detention Order (Welch, Lanny) (Entered: 09/12/2012) |
| 09/12/2012 | 293 | | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Kirk Redmond and Melody Evans (Redmond, Kirk) (Entered: 09/12/2012) |
| 09/17/2012 | 294 | | ENTRY OF APPEARANCE: by attorney Timothy J. Henry appearing for Gonzalo Ramirez (Henry, Timothy) (Entered: 09/17/2012) |
| 09/17/2012 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: MOTION HEARING as to Andrew Gusman held on 9/17/2012. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 09/17/2012) |
| 09/19/2012 | 295 | | ORDER denying 284 Motion for Reconsideration of Detention Order as to Andrew Gusman (15). Signed by District Judge Monti L. Belot on 9/17/2012. (aa) (Entered: 09/19/2012) |
| 09/21/2012 | 296 | 201 | MOTION for Protective Order *Governing Disclosure* by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Ortiz. (Welch, Lanny) (Entered: 09/21/2012) |
| 09/21/2012 | 297 | 205 | NOTICE OF EXPERT TESTIMONY pursuant to Rule 16(a)(1)(G) by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Ortiz (Attachments: # 1 curriculum vitae)(Welch, Lanny) (Entered: 09/21/2012) |
| 09/24/2012 | 298 | | MOTION to Withdraw Charles M. Rogers as Attorney by Pedro Garcia. (Rogers, Charles) (Entered: 09/24/2012) |
| 09/25/2012 | 299 | | MINUTE ORDER granting 298 Motion to Withdraw as Attorney as to Pedro Garcia (2). Signed by District Judge Monti L. Belot on 9/25/2012. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (sbw) (Entered: 09/25/2012) |
| 09/25/2012 | 301 | | SEALED MOTION for Leave to File Under Seal by Angel Cerda. (Attachments: # 1 Proposed Sealed Document Motion, # 2 Exhibit A, # 3 Exhibit B)(McCausland, Paul) (Entered: 09/25/2012) |
| 09/25/2012 | 302 | | MINUTE ORDER granting 301 Sealed Motion for Leave to File Under Seal. Counsel is directed to file forthwith the requested document(s) with an event |

| | | | |
|---|---|---|---|
| | | | from the SEALED DOCUMENTS category as to Angel Cerda (8) Signed by District Judge Monti L. Belot on 9/25/2012. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (sbw) (Entered: 09/25/2012) |
| 09/26/2012 | 305 | 303 | RESPONSE IN OPPOSITION by Russell Worthey as to Russell Worthey, Juan Torres re 296 MOTION for Protective Order *Governing Disclosure* (Pratt, James) (Entered: 09/26/2012) |
| 09/26/2012 | 307 | 306 | RESPONSE IN OPPOSITION by Jayson Vargas as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Ortiz re 296 MOTION for Protective Order *Governing Disclosure filed by USA* (Sevart, Mark) (Entered: 09/26/2012) |
| 09/26/2012 | 308 | | MOTION for Joinder *in Defendants Objections to Protective Order Governing Disclosure* by Jason Najera as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Ortiz. (Moses, David) (Entered: 09/26/2012) |
| 09/26/2012 | 309 | 310 | RESPONSE IN OPPOSITION by Alfonso Banda–Hernandez re 296 MOTION for Protective Order *Governing Disclosure* (Hepperly, Michael) (Entered: 09/26/2012) |
| 09/26/2012 | 310 | | MOTION for Joinder *IN RESPONSE AND OBJECTIONS BY BANDA–HERNANDEZ (ECF 309)* by Angel Cerda. (McCausland, Paul) (Entered: 09/26/2012) |
| 09/27/2012 | 311 | 312 | MOTION for Joinder *IN THE RESPONSES OF DEFENDANTS BANDA–HERNANDEZ'S, RUSSELL WORTHEY'S, JUAN TORRES' AND JAYSON VARGAS' OBJECTIONS TO THE GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER GOVERNING DISCLOSURE (DOC. 296)* by Pedro Garcia. (Wachtel, John) (Entered: 09/27/2012) |
| 09/27/2012 | 312 | | MOTION for Joinder *in the Responses of Defendants Banda–Hernandez's, Russell Worthey's, Juan Torres', Jason Vargas', & Pedro Garcia's Objection to the Government's Motion for a Protective Order Governing Disclosure (Doc. 296)* by Anthony Wright. (Fowler, Jay) (Entered: 09/27/2012) |
| 09/27/2012 | 313 | | MOTION for Joinder by Enrique Gobin. (Reed, Benjamin) (Entered: 09/27/2012) |
| 09/27/2012 | 314 | | MOTION for Joinder by Andrew Gusman. (Hartenstein, Eric) (Entered: 09/27/2012) |
| 09/27/2012 | 315 | 314 | LETTER from the Honorable Monti L. Belot to Counsel regarding 296 Government's MOTION for Protective Order *Governing Disclosure* and the corresponding Responses by Defendants. Plaintiff is to supplement its Motion |

59

| | | | |
|---|---|---|---|
| | | | and Defendants are to respond to said supplement. Supplemental Motion by the Government due by 10/5/12. Defendants responses due by 10/12/12. SEE ORDER FOR DETAILS. (alm) (Entered: 09/27/2012) |
| 09/28/2012 | 316 | | MOTION for Joinder *In The Responses of Defendants Banda–Hernandez, Russell Worthey's, Juan Torres' and Jayson Vargas' Objections to the Government's Motion for Protective Order Governing Disclosure* by Fabian Neave. (Bell, Gregory) (Entered: 09/28/2012) |
| 09/28/2012 | 317 | | PETITION AND ORDER for Action on Conditions of Pretrial Release as to Hernan Quezada. Signed by District Judge Monti L. Belot on 9/28/2012. (aa) (Entered: 09/28/2012) |
| 10/02/2012 | 318 | | ORDER CONVERTING CASE FROM CJA 30 to CJA 20 FOR BILLING PURPOSES as to Pedro Garcia re 290 NOTICE of Intent to Not Seek Death Penalty filed by USA. See order for details. Signed by Magistrate Judge Karen M. Humphreys on 10/1/2012. (aa) (Entered: 10/02/2012) |
| 10/02/2012 | 319 | | CJA 20 as to Pedro Garcia: Appointment of Attorney John V. Wachtel. Signed by Magistrate Judge Karen M. Humphreys on 10/1/2012. (alm) (Entered: 10/02/2012) |
| 10/02/2012 | 321 | | MOTION *for Interim Monthly Payments* by Andrew Gusman. (Hartenstein, Eric) (Entered: 10/02/2012) |
| 10/04/2012 | 323 | | ORDER FOR INTERIM MONTHLY PAYMENTS TO CJA APPOINTED COUNSEL granting 321 Motion for Interim Monthly Payments as to Andrew Gusman (15). Signed by District Judge Monti L. Belot on 10/2/2012. (alm) (Entered: 10/04/2012) |
| 10/05/2012 | 324 | 316 | Supplemental MOTION for Protective Order by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Ortiz. (Smith, Aaron) (Entered: 10/05/2012) |
| 10/09/2012 | 325 | 322 | MOTION for Discovery *FOR SPECIFIC DISCOVERY RELATED TO STREET GANGS IN DODGE CITY, KANSAS* by Pedro Garcia. (Wachtel, John) (Entered: 10/09/2012) |
| 10/09/2012 | 326 | 324 | MEMORANDUM IN SUPPORT of 325 MOTION for Discovery *FOR SPECIFIC DISCOVERY RELATED TO STREET GANGS IN DODGE CITY, KANSAS* by Pedro Garcia as to Pedro Garcia (Attachments: # 1 Exhibit 1 and 2)(Wachtel, John) (Entered: 10/09/2012) |
| 10/16/2012 | 327 | | MOTION for Joinder by Juan Torres. (Shultz, Michael) (Entered: 10/16/2012) |
| 10/17/2012 | 328 | 334 | MOTION FOR A BILL OF PARTICULARS (DEFENDANT GARCIA'S THIRD MOTION) by Pedro Garcia. (Wachtel, John) Modified on 10/18/2012 to correct event type (aa). (Entered: 10/17/2012) |
| 10/17/2012 | 329 | 336 | MEMORANDUM IN SUPPORT of 328 MOTION FOR A BILL OF PARTICULARS (DEFENDANT GARCIA'S THIRD MOTION) by Pedro |

| | | | |
|---|---|---|---|
| | | | Garcia as to Pedro Garcia (Wachtel, John) Modified on 10/18/2012 (aa). (Entered: 10/17/2012) |
| 10/17/2012 | 330 | 343 | MOTION FOR NOTICE OF CO–CONSPIRATOR STATEMENTS (DEFENDANT GARCIA'S FOURTH MOTION) by Pedro Garcia. (Wachtel, John) (Entered: 10/17/2012) |
| 10/17/2012 | 331 | 345 | MEMORANDUM IN SUPPORT of 330 MOTION FOR NOTICE OF CO–CONSPIRATOR STATEMENTS (DEFENDANT GARCIA'S FOURTH MOTION) by Pedro Garcia as to Pedro Garcia (Wachtel, John) (Entered: 10/17/2012) |
| 10/17/2012 | 332 | 348 | MOTION TO EXCLUDE CO–CONSPIRATORS' TESTIMONIAL STATEMENTS (DEFENDANT GARCIA'S FIFTH MOTION) by Pedro Garcia. (Wachtel, John) Modified on 10/18/2012 to correct event type (aa). (Entered: 10/17/2012) |
| 10/17/2012 | 333 | 350 | MEMORANDUM IN SUPPORT of 332 MOTION TO EXCLUDE CO–CONSPIRATORS' TESTIMONIAL STATEMENTS (DEFENDANT GARCIA'S FIFTH MOTION) by Pedro Garcia as to Pedro Garcia (Wachtel, John) (Entered: 10/17/2012) |
| 10/17/2012 | 334 | 356 | MOTION FOR NOTICE OF THE GOVERNMENT'S INTENT TO OFFER RULE 404(b) EVIDENCE AT TRIAL (DEFENDANT GARCIA'S SIXTH MOTION) by Pedro Garcia. (Wachtel, John) (Entered: 10/17/2012) |
| 10/17/2012 | 335 | 358 | MEMORANDUM IN SUPPORT of 334 MOTION FOR NOTICE OF THE GOVERNMENT'S INTENT TO OFFER RULE 404(b) EVIDENCE AT TRIAL (DEFENDANT GARCIA'S SIXTH MOTION) by Pedro Garcia as to Pedro Garcia (Wachtel, John) (Entered: 10/17/2012) |
| 10/17/2012 | 336 | 363 | MOTION IN LIMINE TO EXCLUDE EVIDENCE OF GUILTY PLEAS BY NON–TESTIFYING CO–DEFENDANTS (DEFENDANT GARCIA'S SEVENTH MOTION) by Pedro Garcia. (Wachtel, John) Modified on 10/18/2012 to correct event type (aa). (Entered: 10/17/2012) |
| 10/17/2012 | 337 | 365 | MEMORANDUM IN SUPPORT of 336 MOTION IN LIMINE TO EXCLUDE EVIDENCE OF GUILTY PLEAS BY NON–TESTIFYING CO–DEFENDANTS (DEFENDANT GARCIA'S SEVENTH MOTION) by Pedro Garcia as to Pedro Garcia (Wachtel, John) (Entered: 10/17/2012) |
| 10/17/2012 | 338 | 368 | MOTION FOR EXTENSION OF MOTION FILING DATE (DEFENDANT GARCIA'S EIGHTH MOTION) by Pedro Garcia. (Wachtel, John) Modified on 10/18/2012 to correct event type (aa). (Entered: 10/17/2012) |
| 10/17/2012 | 339 | | MOTION To Join Motions Filed by Pedro Garcia (Docs 325–326 and 328–338) by Russell Worthey. (Pratt, James) Modified on 10/18/2012 to correct event type (aa). (Entered: 10/17/2012) |
| 10/17/2012 | 340 | | MOTION to Exclude *Co–Conspirator's Testimonial Statements* by Eusebio Sierra–Medrano. (Bennett, Mark) (Entered: 10/17/2012) |
| 10/17/2012 | 341 | | MEMORANDUM IN SUPPORT of 340 MOTION to Exclude *Co–Conspirator's Testimonial Statements* by Eusebio Sierra–Medrano as to Eusebio Sierra–Medrano (Attachments: # 1 U.S. v. Vieyra–Vazquez)(Bennett, Mark) (Entered: 10/17/2012) |

| 10/17/2012 | 342 | | MOTION for Disclosure *of Rule 404(b) Evidence* by Eusebio Sierra–Medrano. (Bennett, Mark) (Entered: 10/17/2012) |
|---|---|---|---|
| 10/17/2012 | 343 | | MEMORANDUM IN SUPPORT of 342 MOTION for Disclosure *of Rule 404(b) Evidence* by Eusebio Sierra–Medrano as to Eusebio Sierra–Medrano (Bennett, Mark) (Entered: 10/17/2012) |
| 10/17/2012 | 344 | 372 | MOTION to Prohibit Government, Law Enforcement or Cooperating Individuals From Approaching Defendant by Eusebio Sierra–Medrano. (Bennett, Mark) (Entered: 10/17/2012) |
| 10/17/2012 | 345 | 374 | MEMORANDUM IN SUPPORT of 344 MOTION to Prohibit Government, Law Enforcement or Cooperating Individuals From Approaching Defendant by Eusebio Sierra–Medrano as to Eusebio Sierra–Medrano (Bennett, Mark) (Entered: 10/17/2012) |
| 10/17/2012 | 346 | | MOTION To Allow Agent/Investigator To Not Be Subject To Sequestration Rule by Eusebio Sierra–Medrano. (Bennett, Mark) (Entered: 10/17/2012) |
| 10/17/2012 | 347 | 378 | MOTION For Adequate Court Facilities by Eusebio Sierra–Medrano. (Bennett, Mark) (Entered: 10/17/2012) |
| 10/17/2012 | 348 | 380 | MEMORANDUM IN SUPPORT of 347 MOTION For Adequate Court Facilities by Eusebio Sierra–Medrano as to Eusebio Sierra–Medrano (Bennett, Mark) (Entered: 10/17/2012) |
| 10/17/2012 | 349 | 384 | MOTION for Disclosure *and Inspection of The Grand Jury Transcripts* by Eusebio Sierra–Medrano. (Bennett, Mark) (Entered: 10/17/2012) |
| 10/17/2012 | 350 | 386 | MEMORANDUM IN SUPPORT of 349 MOTION for Disclosure *and Inspection of The Grand Jury Transcripts* by Eusebio Sierra–Medrano as to Eusebio Sierra–Medrano (Bennett, Mark) (Entered: 10/17/2012) |
| 10/17/2012 | 351 | | MOTION for Bill of Particulars by Eusebio Sierra–Medrano. (Bennett, Mark) (Entered: 10/17/2012) |
| 10/17/2012 | 352 | | MEMORANDUM IN SUPPORT of 351 MOTION for Bill of Particulars by Eusebio Sierra–Medrano as to Eusebio Sierra–Medrano (Bennett, Mark) (Entered: 10/17/2012) |
| 10/17/2012 | 353 | | MOTION for Hearing *(James)* by Eusebio Sierra–Medrano. (Bennett, Mark) (Entered: 10/17/2012) |
| 10/17/2012 | 354 | | MEMORANDUM IN SUPPORT of 353 MOTION for Hearing *(James)* by Eusebio Sierra–Medrano as to Eusebio Sierra–Medrano (Bennett, Mark) (Entered: 10/17/2012) |
| 10/17/2012 | 355 | 392 | MOTION for Disclosure *Of Gang Participation Information* by Eusebio Sierra–Medrano. (Bennett, Mark) (Entered: 10/17/2012) |
| 10/17/2012 | 356 | | MOTION for Disclosure *of Specific Discovery Related to Street Gangs In Dodge City, Kansas* by Eusebio Sierra–Medrano. (Bennett, Mark) (Entered: 10/17/2012) |
| 10/17/2012 | 357 | | MEMORANDUM IN SUPPORT of 356 MOTION for Disclosure *of Specific Discovery Related to Street Gangs In Dodge City, Kansas* by Eusebio Sierra–Medrano as to Eusebio Sierra–Medrano (Bennett, Mark) (Entered: |

| | | | |
|---|---|---|---|
| | | | 10/17/2012) |
| 10/17/2012 | 358 | | MOTION for Joinder *In Certain Motions of Co−defendant Garcia* by Eusebio Sierra−Medrano. (Bennett, Mark) (Entered: 10/17/2012) |
| 10/17/2012 | 359 | | MOTION for Joinder *In Motions Filed By Co−defendants* by Eusebio Sierra−Medrano. (Bennett, Mark) (Entered: 10/17/2012) |
| 10/18/2012 | 360 | 395 | MOTION for Joinder *(DEFENDANT GARCIA'S NINTH MOTION)* by Pedro Garcia. (Wachtel, John) (Entered: 10/18/2012) |
| 10/18/2012 | 361 | | Second MOTION to Join Motions by Russell Worthey. (Pratt, James) Modified on 10/19/2012 to correct event type (aa). (Entered: 10/18/2012) |
| 10/18/2012 | 362 | | MINUTE ORDER granting 327 Motion for Joinder as to Juan Torres (9) Signed by District Judge Monti L. Belot on 10/18/2012. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (sbw) (Entered: 10/18/2012) |
| 10/18/2012 | 363 | | MOTION for Joinder *in Co−Defendant Motions* by Andrew Gusman. (Hartenstein, Eric) (Entered: 10/18/2012) |
| 10/18/2012 | 364 | | MOTION for Joinder *IN GARCIA MOTION # 325 AND FOR ADDITIONAL DISCOVERY RELATED TO STREET GANGS IN DODGE CITY* by Angel Cerda. (Attachments: # 1 Exhibit 1)(McCausland, Paul) (Additional attachment(s) added on 10/22/2012: # 2 Redacted Exhibit 1) (aa). (Entered: 10/18/2012) |
| 10/19/2012 | 365 | 397 | ORDER FOR PROTECTIVE ORDER terminating 296 Motion for Protective Order as to all Defendants. ; granting 324 Motion for Protective Order as to all Defendants. Signed by District Judge Monti L. Belot on 10/19/2012. (aa) (Entered: 10/19/2012) |
| 10/20/2012 | 366 | | MOTION FOR NOTICE OF GOVERNMENT'S INTENT TO OFFER by Jesus Sanchez. (Schoenhofer, Mark) (Entered: 10/20/2012) |
| 10/20/2012 | 367 | | MOTION in Limine by Jesus Sanchez. (Schoenhofer, Mark) (Entered: 10/20/2012) |
| 10/20/2012 | 368 | | MEMORANDUM IN SUPPORT of 367 MOTION in Limine by Jesus Sanchez as to Jesus Sanchez (Schoenhofer, Mark) (Entered: 10/20/2012) |
| 10/22/2012 | 369 | 400 | MOTION FOR JAMES HEARING TO DETERMINE THE ADMISSIBILITY OF EXTRA JUDICIAL STATEMENTS OF ALLEGED CO−CONSPIRATORS (DEFENDANT GARCIA'S TENTH MOTION) by Pedro Garcia. (Wachtel, John) Modified on 10/23/2012 to correct motion type (aa). (Entered: 10/22/2012) |
| 10/22/2012 | 370 | 402 | MEMORANDUM IN SUPPORT of 369 MOTION FOR JAMES HEARING TO DETERMINE THE ADMISSIBILITY OF EXTRA JUDICIAL STATEMENTS OF ALLEGED CO−CONSPIRATORS (DEFENDANT GARCIA'S TENTH MOTION) by Pedro Garcia as to Pedro Garcia (Wachtel, John) (Entered: 10/22/2012) |
| 10/22/2012 | 371 | | MOTION to Join by Russell Worthey. (Pratt, James) (Entered: 10/22/2012) |
| 10/23/2012 | 372 | 411 | |

| | | | |
|---|---|---|---|
| | | | MOTION to Produce *PRIOR CRIMINAL RECORD (DEFENDANT GARCIA'S ELEVENTH MOTION)* by Pedro Garcia. (Wachtel, John) (Entered: 10/23/2012) |
| 10/23/2012 | 373 | 414 | MINUTE ORDER granting all requests to join motions of co−defendants:granting 308 Motion for Joinder as to Jason Najera (1), Pedro Garcia (2), Gonzalo Ramirez (3), Russell Worthey (4), Anthony Wright (5), Joshua Flores (6), Jesus Flores (7), Angel Cerda (8), Juan Torres (9), Alfredo Beltran−Ruiz (10), Donte Barnes (11), Jesus Sanchez (12), Enrique Gobin (13), Alfonso Banda−Hernandez (14), Andrew Gusman (15), Eusebio Sierra−Medrano (16), Jayson Vargas (17), Adam Flores (18), Fabian Neave (19), Jesus Torres (20), Jose Neave (21), Hernan Quezada (22), Humberto Ortiz (23); granting 311 Motion for Joinder as to Pedro Garcia (2); granting 360 Motion for Joinder as to Pedro Garcia (2); granting 339 Motion for Joinder as to Russell Worthey (4); granting 361 Motion for Joinder as to Russell Worthey (4); granting 371 Motion as to Russell Worthey (4); granting 312 Motion for Joinder as to Anthony Wright (5); granting 310 Motion for Joinder as to Angel Cerda (8); granting 364 Motion for Joinder as to Angel Cerda (8); granting 313 Motion for Joinder as to Enrique Gobin (13); granting 314 Motion for Joinder as to Andrew Gusman (15); granting 363 Motion for Joinder as to Andrew Gusman (15); granting 358 Motion for Joinder as to Eusebio Sierra−Medrano (16); granting 359 Motion for Joinder as to Eusebio Sierra−Medrano (16); granting 316 Motion for Joinder as to Fabian Neave (19) Signed by District Judge Monti L. Belot on 10/23/2012. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 10/23/2012) |
| 10/24/2012 | 374 | | MOTION for Joinder *in Defendant, Russell Worthey's Motion to Join Motions filed by Pedro Garcia (Docs. 325−326 and 328−338)* by Fabian Neave. (Bell, Gregory) (Entered: 10/24/2012) |
| 10/24/2012 | 375 | | MOTION for Joinder *Motions and Memoranda filed by Co−Defendants* by Jason Najera. (Moses, David) (Entered: 10/24/2012) |
| 10/24/2012 | 376 | | PETITION AND ORDER for Action on Conditions of Pretrial Release as to Hernan Quezada. Signed by District Judge Monti L. Belot on 10/24/2012. (aa) (Entered: 10/24/2012) |
| 10/24/2012 | 377 | | MOTION in Limine *for Criminal Record and Other Prior Crimes* by Jason Najera. (Moses, David) (Entered: 10/24/2012) |
| 10/24/2012 | 378 | | MOTION to Exclude *Bruton Evidence* by Jason Najera. (Moses, David) (Entered: 10/24/2012) |
| 10/24/2012 | 379 | 441 | MOTION for Discovery *Specifically Related to Street Gangs in Dodge City* by Jason Najera. (Moses, David) (Entered: 10/24/2012) |
| 10/24/2012 | 380 | 443 | MEMORANDUM IN SUPPORT of 379 MOTION for Discovery *Specifically Related to Street Gangs in Dodge City* by Jason Najera as to Jason Najera (Attachments: # 1 Exhibit 1)(Moses, David) (Entered: 10/24/2012) |
| 10/24/2012 | 381 | 451 | MOTION for Disclosure *of Confidential Informants* by Jason Najera. (Moses, David) (Entered: 10/24/2012) |
| 10/24/2012 | 382 | 453 | |

| | | | |
|---|---|---|---|
| | | | MEMORANDUM IN SUPPORT of <u>381</u> MOTION for Disclosure *of Confidential Informants* by Jason Najera as to Jason Najera (Moses, David) (Entered: 10/24/2012) |
| 10/24/2012 | <u>383</u> | | MOTION for Separate Trial on Counts Jason Najera (1) Count 1,26,27,33–34 by Jason Najera. (Moses, David) (Entered: 10/24/2012) |
| 10/24/2012 | <u>384</u> | | MOTION for Joinder *in Defendant, Pedro Garcia's Motion for James Hearing to Determine the Admissibility of Extra Judicial Statements of Alleged Co−Conspirators (Docs. 369 and 370)* by Fabian Neave. (Bell, Gregory) (Entered: 10/24/2012) |
| 10/24/2012 | <u>385</u> | | MOTION for Bill of Particulars by Joshua Flores. (Maughan, Carl) (Entered: 10/24/2012) |
| 10/24/2012 | <u>386</u> | | MOTION to Sever Defendant by Joshua Flores. (Maughan, Carl) (Entered: 10/24/2012) |
| 10/24/2012 | <u>387</u> | | MOTION to Join in motions filed by Co−defendants by Joshua Flores. (Maughan, Carl) Modified on 10/25/2012 to correct motion type (aa). (Entered: 10/24/2012) |
| 10/25/2012 | <u>388</u> | | MOTION for Joinder *in the Motions and Memoranda of Co−Defendants* by Adam Flores. (McEnulty, Sean) (Entered: 10/25/2012) |
| 10/25/2012 | <u>391</u> | | MOTION to Sever Defendant *from Co−Defendants* by Andrew Gusman. (Hartenstein, Eric) (Entered: 10/25/2012) |
| 10/25/2012 | <u>392</u> | | MOTION for Joinder by Enrique Gobin. (Reed, Benjamin) (Entered: 10/25/2012) |
| 10/25/2012 | <u>393</u> | 458 | MOTION for Joinder *IN JASON NAJERA'S MOTION TO DISCLOSE CONFIDENTIAL INFORMANTS [DOC. 381] AND MEMORANDUM IN SUPPORT [DOC. 382] (GARCIA'S TWELFTH MOTION)* by Pedro Garcia. (Wachtel, John) (Entered: 10/25/2012) |
| 10/25/2012 | <u>394</u> | | MOTION for Joinder *In Motions Filed By Codefendants* by Angel Cerda. (McCausland, Paul) (Entered: 10/25/2012) |
| 10/25/2012 | <u>395</u> | 462 | MOTION FOR IDENTIFICATION AND PRODUCTION OF STATEMENTS OF PERCIPIENT WITNESSES AND SUPPORTING MEMORANDUM by Angel Cerda. (McCausland, Paul) Modified on 10/26/2012 to correct event type (aa). (Entered: 10/25/2012) |
| 10/25/2012 | <u>396</u> | 472 | MOTION for Disclosure *OF EXCULPATORY EVIDENCE, PLEA AGREEMENTS AND IMPEACHMENT MATERIALS* by Angel Cerda. (McCausland, Paul) (Entered: 10/25/2012) |
| 10/25/2012 | <u>397</u> | | MOTION FOR PRODUCTION OF DEFENDANT'S PRIOR RECORD AND NOTICE OF GOVERNMENT'S INTENT TO USE EVIDENCE AT TRIAL, INCLUDING EVIDENCE OF OTHER CRIMES, WRONGS OR ACTS NOT CHARGED IN THE INDICTMENT by Angel Cerda. (McCausland, Paul) Modified on 10/26/2012 to correct motion type (aa). (Entered: 10/25/2012) |
| 10/25/2012 | <u>398</u> | | MOTION for Separate Trial on Counts Angel Cerda (8) Count 10,11,12,13 by Angel Cerda. (McCausland, Paul) (Entered: 10/25/2012) |

| 10/25/2012 | 399 | | MEMORANDUM IN SUPPORT of 398 MOTION for Separate Trial on Counts Angel Cerda (8) Count 10,11,12,13 by Angel Cerda as to Angel Cerda (McCausland, Paul) (Entered: 10/25/2012) |
|---|---|---|---|
| 10/26/2012 | 400 | | MOTION to Suppress *Photo Lineups and Identifications* by Jason Najera. (Moses, David) (Entered: 10/26/2012) |
| 10/26/2012 | 401 | | MEMORANDUM IN SUPPORT of 400 MOTION to Suppress *Photo Lineups and Identifications* by Jason Najera as to Jason Najera (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Moses, David) (Entered: 10/26/2012) |
| 10/26/2012 | 402 | | MOTION to Supplement Motion to Suppress *Statements and Motion for Additional Discovery* by Jason Najera. (Moses, David). Added MOTION for Discovery on 10/29/2012. Also correct motion type for Motion to supplement (aa). (Entered: 10/26/2012) |
| 10/26/2012 | 403 | | MOTION in Limine *for Certain Documents* by Jason Najera. (Moses, David) (Entered: 10/26/2012) |
| 10/26/2012 | 404 | | Second MOTION for Joinder *of Motions and Memoranda filed by Co−Defendants* by Jason Najera. (Moses, David) (Entered: 10/26/2012) |
| 10/26/2012 | 405 | | MOTION to Suppress *Statements* by Jason Najera. (Moses, David) (Entered: 10/26/2012) |
| 10/26/2012 | 406 | | MEMORANDUM IN SUPPORT of 405 MOTION to Suppress *Statements* by Jason Najera as to Jason Najera (Moses, David) (Entered: 10/26/2012) |
| 10/26/2012 | 407 | 479 | MOTION to Sever Defendant *(GARCIA'S THIRTEENTH MOTION)* by Pedro Garcia. (Wachtel, John) (Entered: 10/26/2012) |
| 10/26/2012 | 408 | 481 | MEMORANDUM IN SUPPORT of 407 MOTION to Sever Defendant *(GARCIA'S THIRTEENTH MOTION)* by Pedro Garcia as to Pedro Garcia (Wachtel, John) (Entered: 10/26/2012) |
| 10/26/2012 | 409 | 490 | MOTION for Joinder *IN CERTAIN MOTIONS FILED BY CO−DEFENDANTS EUSEBIO SIERRA−MEDRANO AND JASON NAJERA (GARCIA'S FOURTEENTH MOTION)* by Pedro Garcia. (Wachtel, John) (Entered: 10/26/2012) |
| 10/26/2012 | 410 | 493 | MOTION for Joinder *IN CO−DEFENDANT ANGEL CERDA'S MOTION FOR DISCLOSURE OF EXCULPATORY EVIDENCE, PLEA AGREEMENTS AND IMPEACHMENT MATERIALS (GARCIA'S FIFTEENTH MOTION)* by Pedro Garcia. (Wachtel, John) (Entered: 10/26/2012) |
| 10/26/2012 | 411 | 498 | MOTION for Joinder *IN CO−DEFENDANT ANGEL CERDA'S MOTION FOR IDENTIFICATION AND PRODUCTION OF STATEMENTS OF PERCIPIENT WITNESSES (GARCIA'S SIXTEENTH MOTION)* by Pedro Garcia. (Wachtel, John) (Entered: 10/26/2012) |
| 10/26/2012 | 412 | | MOTION for Joinder by Jesus Torres. (O'Hara, Charles) (Entered: 10/26/2012) |
| 10/26/2012 | 413 | | MOTION for Joinder by Jose Neave. (Loeffler, Kevin) (Entered: 10/26/2012) |
| 10/26/2012 | 414 | | |

| | | | |
|---|---|---|---|
| | | | Second MOTION to Sever Defendant by Hernan Quezada. (Casey, Derek) (Entered: 10/26/2012) |
| 10/26/2012 | 415 | | MOTION for Joinder *of Motions and Memoranda Filed by Co−Defendants* by Hernan Quezada. (Casey, Derek) (Entered: 10/26/2012) |
| 10/26/2012 | 416 | | MOTION to Dismiss Indictment by Jesus Torres. (O'Hara, Charles) Modified on 10/29/2012 to correct motion type (aa). (Entered: 10/26/2012) |
| 10/26/2012 | 417 | | MOTION for Bill of Particulars by Juan Torres. (Shultz, Michael) (Entered: 10/26/2012) |
| 10/26/2012 | 418 | | MOTION to Sever Defendant by Juan Torres. (Shultz, Michael) (Entered: 10/26/2012) |
| 10/26/2012 | 419 | | MOTION to Dismiss Indictment *or For Hearing To Determine Reasons For Government Delay In Filing Indictment* by Juan Torres. (Shultz, Michael). Added MOTION for Hearing on 10/29/2012 (aa). (Entered: 10/26/2012) |
| 10/26/2012 | 420 | | MOTION to Join Co−Defendants' Motions by Juan Torres. (Shultz, Michael) Modified on 10/29/2012 to correct motion type (aa). (Entered: 10/26/2012) |
| 10/26/2012 | 421 | | Amended MOTION for Joinder *in Defendant, Pedro Garcia's Motions (Docs. 325−326 and 328−338)* by Fabian Neave. (Bell, Gregory) (Entered: 10/26/2012) |
| 10/26/2012 | 422 | | MOTION in Limine *to Prevent the Government From Referring to Him as a Gang Member* by Juan Torres. (Shultz, Michael) (Entered: 10/26/2012) |
| 10/26/2012 | 423 | | MOTION for Joinder *in Co−Defendants' Pleadings* by Gonzalo Ramirez. (Mandelman, Joel) (Entered: 10/26/2012) |
| 10/26/2012 | 424 | | MOTION to Suppress *Defendant's Post−Indictment Statement* by Gonzalo Ramirez. (Mandelman, Joel) (Entered: 10/26/2012) |
| 10/26/2012 | 425 | | MOTION to Suppress *Evidence Found In Connection With The October 19, 2010, Search of Defendant's Residence* by Gonzalo Ramirez. (Mandelman, Joel) (Entered: 10/26/2012) |
| 10/26/2012 | 426 | | MOTION to Suppress *Evidence Obtained As A Result of Illegal Seizure of Defendant's Car* by Gonzalo Ramirez. (Mandelman, Joel) (Entered: 10/26/2012) |
| 10/26/2012 | 427 | | MOTION for Joinder *of Motions and Memoranda filed by Co−Defendants* by Alfonso Banda−Hernandez. (Hepperly, Michael) (Entered: 10/26/2012) |
| 10/26/2012 | 428 | | MOTION to Sever Defendant by Alfonso Banda−Hernandez. (Hepperly, Michael) (Entered: 10/26/2012) |
| 10/26/2012 | 429 | | MEMORANDUM IN SUPPORT of 428 MOTION to Sever Defendant by Alfonso Banda−Hernandez as to Alfonso Banda−Hernandez (Hepperly, Michael) (Entered: 10/26/2012) |
| 10/26/2012 | 430 | 503 | MOTION to Dismiss Indictment , MOTION for Bill of Particulars by Gonzalo Ramirez. (Henry, Timothy) (Entered: 10/26/2012) |
| 10/26/2012 | 431 | | MOTION for Joinder *in Co−Defendants' Motions* by Humberto Ortiz. (Gordon, Molly) (Entered: 10/26/2012) |

| 10/26/2012 | 432 | | EXHIBITS IN SUPPORT of 416 MOTION to Dismiss Complaint/Case by Jesus Torres (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(O'Hara, Charles) (Entered: 10/26/2012) |
|---|---|---|---|
| 10/26/2012 | 433 | | MOTION to Join in Codefendants' Motions by Donte Barnes. (Griffith, Jeff) Modified on 10/29/2012 to correct motion type (aa). (Entered: 10/26/2012) |
| 10/26/2012 | 434 | | MOTION for Joinder by Jesus Sanchez. (Schoenhofer, Mark) (Entered: 10/26/2012) |
| 10/26/2012 | 435 | 515 | MOTION for Joinder *IN CO−DEFENDANT GONZALO RAMIREZ'S MOTION TO SUPPRESS EVIDENCE FOUND IN CONNECTION WITH THE OCTOBER 19, 2010 SEARCH OF HIS RESIDENCE (GARCIA'S SEVENTEENTH MOTION)* by Pedro Garcia. (Wachtel, John) (Entered: 10/26/2012) |
| 10/26/2012 | 436 | 518 | MOTION for Joinder *IN CO−DEFENDANT GONZALO RAMIREZ'S MOTION TO DISMISS AND REQUEST FOR BILL OF PARTICULARS (GARCIA'S EIGHTEENTH MOTION)* by Pedro Garcia. (Wachtel, John) (Entered: 10/26/2012) |
| 10/26/2012 | 437 | | Third MOTION for Joinder *of Motions filed by Co−Defendants* by Jason Najera. (Moses, David) (Entered: 10/26/2012) |
| 10/26/2012 | 438 | | MOTION to dismiss counts One by Jayson Vargas. (Sevart, Mark) (Entered: 10/26/2012) |
| 10/26/2012 | 439 | | −− DISREGARD. DUPLICATE FILING. SEE DE 416 . −− MOTION to Dismiss Indictment by Jesus Torres. (O'Hara, Charles) Modified on 10/30/2012 to add text (alm). (Entered: 10/26/2012) |
| 10/26/2012 | 440 | | MOTION to Suppress *Statements* by Jayson Vargas. (Sevart, Mark) (Entered: 10/26/2012) |
| 10/26/2012 | 441 | | MOTION to Sever Defendant by Jayson Vargas. (Sevart, Mark) (Entered: 10/26/2012) |
| 10/26/2012 | 442 | | −− DISREGARD. DUPLICATE FILING. SEE DE 432 . −− EXHIBITS IN SUPPORT of 439 MOTION to Dismiss Indictment by Jesus Torres (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(O'Hara, Charles) Modified on 10/30/2012 to add text (alm). (Entered: 10/26/2012) |
| 10/26/2012 | 443 | | MOTION for James & Bruton Hearing by Jayson Vargas. (Sevart, Mark) Modified on 10/29/2012 to correct motion type (aa). (Entered: 10/26/2012) |
| 10/26/2012 | 444 | | MOTION for Joinder *in Co−defendant Motions* by Jayson Vargas. (Sevart, Mark) (Entered: 10/26/2012) |
| 10/26/2012 | 445 | | MOTION To Join in Codefendant Motions by Anthony Wright. (Fowler, Jay) Modified on 10/29/2012 to correct motion type (aa). (Entered: 10/26/2012) |
| 10/26/2012 | 446 | | MOTION for Joinder by Jose Neave. (Loeffler, Kevin) (Entered: 10/26/2012) |
| 10/27/2012 | 447 | | MOTION for Joinder by Jesus Sanchez. (Schoenhofer, Mark) (Entered: 10/27/2012) |
| 10/28/2012 | 448 | | |

| | | | |
|---|---|---|---|
| | | | Supplemental MOTION for Joinder *As To Motions and Memoranda ECF 349, 350, 417, 418, 422, 430 and 438* by Angel Cerda. (McCausland, Paul) (Entered: 10/28/2012) |
| 10/28/2012 | 449 | | MOTION for Joinder *in Co−Defendants' Motions* by Alfredo Beltran−Ruiz. (Sullivan, John) (Entered: 10/28/2012) |
| 10/29/2012 | 450 | 521 | MOTION for Extension of Time to File Response/Reply as to 435 MOTION for Joinder *IN CO−DEFENDANT GONZALO RAMIREZ'S MOTION TO SUPPRESS EVIDENCE FOUND IN CONNECTION WITH THE OCTOBER 19, 2010 SEARCH OF HIS RESIDENCE (GARCIA'S SEVENTEENTH MOTION)*, 381 MOTION for Disclosure *of Confidential Informants*, 400 MOTION to Suppress *Photo Lineups and Identifications*, 351 MOTION for Bill of Particulars , 414 Second MOTION to Sever Defendant , 449 MOTION for Joinder *in Co−Defendants' Motions*, 334 MOTION FOR NOTICE OF THE GOVERNMENT'S INTENT TO OFFER RULE 404(b) EVIDENCE AT TRIAL (DEFENDANT GARCIA'S SIXTH MOTION) , 338 MOTION for Extension of Time to File, 434 MOTION for Joinder , 419 MOTION for Hearing MOTION to Dismiss Indictment *or For Hearing To Determine Reasons For Government Delay In Filing Indictment*, 422 MOTION in Limine *to Prevent the Government From Referring to Him as a Gang Member*, 378 MOTION to Exclude *Bruton Evidence*, 445 MOTION for Joinder, 358 MOTION for Joinder *In Certain Motions of Co−defendant Garcia*, 366 MOTION FOR NOTICE OF GOVERNMENT'S INTENT TO OFFER , 359 MOTION for Joinder *In Motions Filed By Co−defendants*, 427 MOTION for Joinder *of Motions and Memoranda filed by Co−Defendants*, 446 MOTION for Joinder , 431 MOTION for Joinder *in Co−Defendants' Motions*, 369 MOTION for Hearing, 417 MOTION for Bill of Particulars , 441 MOTION to Sever Defendant , 404 Second MOTION for Joinder *of Motions and Memoranda filed by Co−Defendants*, 349 MOTION for Disclosure *and Inspection of The Grand Jury Transcripts*, 437 Third MOTION for Joinder *of Motions filed by Co−Defendants*, 355 MOTION for Disclosure *Of Gang Participation Information*, 387 MOTION for Joinder, 395 MOTION to Produce, 344 MOTION to Prohibit Government, Law Enforcement or Cooperating Individuals From Approaching Defendant , 386 MOTION to Sever Defendant , 407 MOTION to Sever Defendant *(GARCIA'S THIRTEENTH MOTION)*, 391 MOTION to Sever Defendant *from Co−Defendants*, 447 MOTION for Joinder , 336 MOTION in Limine, 330 MOTION FOR NOTICE OF CO−CONSPIRATOR STATEMENTS (DEFENDANT GARCIA'S FOURTH MOTION) , 403 MOTION in Limine *for Certain Documents*, 413 MOTION for Joinder , 398 MOTION for Separate Trial on Counts Angel Cerda (8) Count 10,11,12,13 , 384 MOTION for Joinder *in Defendant, Pedro Garcia's Motion for James Hearing to Determine the Admissibility of Extra Judicial Statements of Alleged Co−Conspirators (Docs. 369 and 370)*, 396 MOTION for Disclosure *OF EXCULPATORY EVIDENCE, PLEA AGREEMENTS AND IMPEACHMENT MATERIALS*, 325 MOTION for Discovery *FOR SPECIFIC DISCOVERY RELATED TO STREET GANGS IN DODGE CITY, KANSAS*, 363 MOTION for Joinder *in Co−Defendant Motions*, 372 MOTION to Produce *PRIOR CRIMINAL RECORD (DEFENDANT GARCIA'S ELEVENTH MOTION)*, 418 MOTION to Sever Defendant , 421 Amended MOTION for Joinder *in Defendant, Pedro Garcia's Motions (Docs. 325−326 and 328−338)*, 377 |

MOTION in Limine *for Criminal Record and Other Prior Crimes*, 356 MOTION for Disclosure *of Specific Discovery Related to Street Gangs In Dodge City, Kansas*, 428 MOTION to Sever Defendant , 405 MOTION to Suppress *Statements*, 426 MOTION to Suppress *Evidence Obtained As A Result of Illegal Seizure of Defendant's Car*, 438 MOTION to dismiss counts One , 409 MOTION for Joinder *IN CERTAIN MOTIONS FILED BY CO−DEFENDANTS EUSEBIO SIERRA−MEDRANO AND JASON NAJERA (GARCIA'S FOURTEENTH MOTION)*, 367 MOTION in Limine , 340 MOTION to Exclude *Co−Conspirator's Testimonial Statements*, 385 MOTION for Bill of Particulars , 411 MOTION for Joinder *IN CO−DEFENDANT ANGEL CERDA'S MOTION FOR IDENTIFICATION AND PRODUCTION OF STATEMENTS OF PERCIPIENT WITNESSES (GARCIA'S SIXTEENTH MOTION)*, 328 MOTION for Bill of Particulars, 444 MOTION for Joinder *in Co−defendant Motions*, 424 MOTION to Suppress *Defendant's Post−Indictment Statement*, 346 MOTION To Allow Agent/Investigator To Not Be Subject To Sequestration Rule , 383 MOTION for Separate Trial on Counts Jason Najera (1) Count 1,26,27,33−34 , 353 MOTION for Hearing *(James)*, 392 MOTION for Joinder , 327 MOTION for Joinder , 397 MOTION to Produce, 393 MOTION for Joinder *IN JASON NAJERA'S MOTION TO DISCLOSE CONFIDENTIAL INFORMANTS [DOC. 381] AND MEMORANDUM IN SUPPORT [DOC. 382] (GARCIA'S TWELFTH MOTION)*, 436 MOTION for Joinder *IN CO−DEFENDANT GONZALO RAMIREZ'S MOTION TO DISMISS AND REQUEST FOR BILL OF PARTICULARS (GARCIA'S EIGHTEENTH MOTION)*, 440 MOTION to Suppress *Statements*, 448 Supplemental MOTION for Joinder *As To Motions and Memoranda ECF 349, 350, 417, 418, 422, 430 and 438*, 360 MOTION for Joinder *(DEFENDANT GARCIA'S NINTH MOTION)*, 339 MOTION for Joinder, 425 MOTION to Suppress *Evidence Found In Connection With The October 19, 2010, Search of Defendant's Residence*, 375 MOTION for Joinder *Motions and Memoranda filed by Co−Defendants*, 402 Supplemental MOTION to Suppress *Statements and Motion for Additional Discovery* MOTION for Discovery, 379 MOTION for Discovery *Specifically Related to Street Gangs in Dodge City*, 394 MOTION for Joinder *In Motions Filed By Codefendants*, 415 MOTION for Joinder *of Motions and Memoranda Filed by Co−Defendants*, 342 MOTION for Disclosure *of Rule 404(b) Evidence*, 410 MOTION for Joinder *IN CO−DEFENDANT ANGEL CERDA'S MOTION FOR DISCLOSURE OF EXCULPATORY EVIDENCE, PLEA AGREEMENTS AND IMPEACHMENT MATERIALS (GARCIA'S FIFTEENTH MOTION)*, 423 MOTION for Joinder *in Co−Defendants' Pleadings*, 433 MOTION for Joinder, 388 MOTION for Joinder *in the Motions and Memoranda of Co−Defendants*, 347 MOTION For Adequate Court Facilities , 439 MOTION to Dismiss Indictment , 416 MOTION to Dismiss Indictment, 361 MOTION for Joinder, 332 MOTION to Exclude, 371 MOTION to Join , 412 MOTION for Joinder , 443 MOTION for Hearing, 430 MOTION to Dismiss Indictment MOTION for Bill of Particulars , 374 MOTION for Joinder *in Defendant, Russell Worthey's Motion to Join Motions filed by Pedro Garcia (Docs. 325−326 and 328−338)*, 420 MOTION for Joinder by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran−Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda−Hernandez, Andrew Gusman, Eusebio Sierra−Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Ortiz.

| | | | |
|---|---|---|---|
| | | | (Smith, Aaron) (Entered: 10/29/2012) |
| 10/30/2012 | | | DOCKET ANNOTATION: PLEASE DISREGARD Docket Entry 439 , Motion to Dismiss, and Docket Entry 442 , Exhibits, filed by Jesus Torres as they are duplicate filings. See Docket Entries 416 and 432 for the correct filing. THIS IS FOR NOTICING PURPOSES ONLY. (alm) (Entered: 10/30/2012) |
| 10/31/2012 | 451 | 526 | ORDER granting 450 Motion for Extension of Time to File Response/Reply as to Jason Najera (1), Pedro Garcia (2), Gonzalo Ramirez (3), Russell Worthey (4), Anthony Wright (5), Joshua Flores (6), Jesus Flores (7), Angel Cerda (8), Juan Torres (9), Alfredo Beltran–Ruiz (10), Donte Barnes (11), Jesus Sanchez (12), Enrique Gobin (13), Alfonso Banda–Hernandez (14), Andrew Gusman (15), Eusebio Sierra–Medrano (16), Jayson Vargas (17), Adam Flores (18), Fabian Neave (19), Jesus Torres (20), Jose Neave (21), Hernan Quezada (22), Humberto Ortiz (23) Signed by District Judge Monti L. Belot on 10/31/2012. Responses due by 12/17/12. (alm) (Entered: 10/31/2012) |
| 10/31/2012 | 452 | 528 | ORDER denying 447 Motion for Joinder as to Jesus Sanchez (12); denying 444 Motion for Joinder as to Jayson Vargas (17); denying 412 Motion for Joinder as to Jesus Torres (20).SEE ORDER FOR DETAILS. Signed by District Judge Monti L. Belot on 10/31/2012. (alm) (Entered: 10/31/2012) |
| 11/01/2012 | 453 | | MOTION for Joinder by Jesus Sanchez. (Schoenhofer, Mark) (Entered: 11/01/2012) |
| 11/01/2012 | 454 | | Second MOTION for Joinder *of Co–Defendant Motions* by Jayson Vargas. (Sevart, Mark) (Entered: 11/01/2012) |
| 11/02/2012 | 455 | | Second MOTION for Joinder by Jesus Torres. (O'Hara, Charles) (Entered: 11/02/2012) |
| 11/02/2012 | 456 | | NOTICE OF HEARING as to Defendant Humberto Ortiz  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing set for 11/13/2012 at 02:45 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (ml) (Entered: 11/02/2012) |
| 11/06/2012 | 457 | | Supplemental MOTION to Join Co–Defendants' Motions by Juan Torres. (Shultz, Michael) (Entered: 11/06/2012) |
| 11/09/2012 | 458 | | Fourth MOTION for Joinder *of Motions and Memoranda filed by Co–Defendants* by Jason Najera. (Moses, David) (Entered: 11/09/2012) |
| 11/09/2012 | 463 | | MOTION to Appoint New Counsel by Jason Najera. (aa) (Entered: 11/13/2012) |
| 11/10/2012 | 459 | | MOTION Defendant Russell Worthey's Supplemental Motion to Join by Russell Worthey. (Pratt, James) Modified on 11/13/2012 to correct motion type (aa). (Entered: 11/10/2012) |
| 11/12/2012 | 460 | | Second MOTION for Joinder *with Motions and Memorandums filed by Co–Defendants* by Andrew Gusman. (Hartenstein, Eric) (Entered: 11/12/2012) |

| 11/12/2012 | 461 | | SEALED MOTION for Leave to File Under Seal by Pedro Garcia. (Attachments: # 1 Proposed Sealed Document)(Wachtel, John) (Entered: 11/12/2012) |
|---|---|---|---|
| 11/13/2012 | 462 | | MINUTE ORDER granting 461 Sealed Motion for Leave to File Under Seal. Counsel is directed to file forthwith the requested document(s) with an event from the SEALED DOCUMENTS category as to Pedro Garcia (2). Signed by District Judge Monti L. Belot on 11/13/2012. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (sbw) (Entered: 11/13/2012) |
| 11/13/2012 | 464 | | NOTICE OF HEARING ON MOTION as to Jason Najera. 463 MOTION to Appoint Counsel: Motion Hearing set for 11/19/2012 at 11:15 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(sbw) (Entered: 11/13/2012) |
| 11/13/2012 | | | NOTICE Re: Mailing. Document 464 Notice of Hearing on Motion, mailed on 11/13/2012 to Jason Najera by regular mail. (sbw) (Entered: 11/13/2012) |
| 11/13/2012 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Humberto Ortiz held on 11/13/2012 Sentencing set for 1/28/2013 at 10:45 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 11/13/2012) |
| 11/13/2012 | 466 | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Humberto Jorge Ortiz (23): Count 27. Signed by District Judge Monti L. Belot on 11/13/2012. (aa) (Entered: 11/14/2012) |
| 11/13/2012 | 467 | | PLEA AGREEMENT as to Humberto Jorge Ortiz re 466 Petition and Order to Enter Plea of Guilty. (aa) (Entered: 11/14/2012) |
| 11/15/2012 | 468 | | CJA 20 as to Enrique Gobin: Appointment of Attorney Edward Robinson. Signed by Magistrate Judge Karen M. Humphreys on 11/15/2012. (aa) (Entered: 11/15/2012) |
| 11/19/2012 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: denying 463 Motion to Appoint Counsel as to Jason Najera (1) for the reasons stated in the hearing; MOTION HEARING as to Jason Najera held on 11/19/2012. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 11/19/2012) |
| 11/30/2012 | 471 | | ORDER granting 470 Sealed Motion for Leave to File Under Seal. Counsel is directed to file forthwith the requested document(s) with an event from the SEALED DOCUMENTS category as to Pedro Garcia (2). Signed by District Judge Monti L. Belot on 11/30/2012. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ml) (Entered: 11/30/2012) |
| 12/17/2012 | 475 | 530 | RESPONSE TO MOTION by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, |

| | | | |
|---|---|---|---|
| | | | Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz re 449 MOTION for Joinder *in Co–Defendants' Motions*, 411 MOTION for Joinder *IN CO–DEFENDANT ANGEL CERDA'S MOTION FOR IDENTIFICATION AND PRODUCTION OF STATEMENTS OF PERCIPIENT WITNESSES (GARCIA'S SIXTEENTH MOTION)*, 431 MOTION for Joinder *in Co–Defendants' Motions*, 364 MOTION for Joinder *IN GARCIA MOTION # 325 AND FOR ADDITIONAL DISCOVERY RELATED TO STREET GANGS IN DODGE CITY*, 397 MOTION to Produce, 395 MOTION to Produce, 413 MOTION for Joinder , 433 MOTION for Joinder, 398 MOTION for Separate Trial on Counts Angel Cerda (8) Count 10,11,12,13 , 396 MOTION for Disclosure *OF EXCULPATORY EVIDENCE, PLEA AGREEMENTS AND IMPEACHMENT MATERIALS*, 420 MOTION for Joinder (Smith, Aaron) (Entered: 12/17/2012) |
| 12/17/2012 | 476 | 539 | RESPONSE TO MOTION by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz re 367 MOTION in Limine , 449 MOTION for Joinder *in Co–Defendants' Motions*, 366 MOTION FOR NOTICE OF GOVERNMENT'S INTENT TO OFFER , 431 MOTION for Joinder *in Co–Defendants' Motions*, 387 MOTION for Joinder, 394 MOTION for Joinder *In Motions Filed By Codefendants*, 413 MOTION for Joinder , 423 MOTION for Joinder *in Co–Defendants' Pleadings*, 433 MOTION for Joinder, 458 Fourth MOTION for Joinder *of Motions and Memoranda filed by Co–Defendants*, 420 MOTION for Joinder (Smith, Aaron) (Entered: 12/17/2012) |
| 12/17/2012 | 477 | | DISREGARD THIS ENTRY – DOCUMENT FILED USING THE WRONG EVENT –– SEE DE 488 FOR CORRECT FILING –– REPLY TO RESPONSE to Motion by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz re 460 Second MOTION for Joinder *with Motions and Memorandums filed by Co–Defendants*, 437 Third MOTION for Joinder *of Motions filed by Co–Defendants*, 416 MOTION to Dismiss Indictment (Smith, Aaron) Modified on 12/18/2012 (aa). (Entered: 12/17/2012) |
| 12/17/2012 | 478 | 545 | RESPONSE TO MOTION by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz re 428 MOTION to Sever Defendant (Smith, Aaron) (Entered: 12/17/2012) |
| 12/17/2012 | 479 | 549 | RESPONSE TO MOTION by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus |

| | | | |
|---|---|---|---|
| | | | Flores, Angel Cerda, Juan Torres, Alfredo Beltran−Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda−Hernandez, Andrew Gusman, Eusebio Sierra−Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz re 385 MOTION for Bill of Particulars , 386 MOTION to Sever Defendant (Smith, Aaron) (Entered: 12/17/2012) |
| 12/17/2012 | 480 | 555 | RESPONSE TO MOTION by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran−Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda−Hernandez, Andrew Gusman, Eusebio Sierra−Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz re 449 MOTION for Joinder *in Co−Defendants' Motions*, 334 MOTION FOR NOTICE OF THE GOVERNMENT'S INTENT TO OFFER RULE 404(b) EVIDENCE AT TRIAL (DEFENDANT GARCIA'S SIXTH MOTION) , 328 MOTION for Bill of Particulars, 358 MOTION for Joinder *In Certain Motions of Co−defendant Garcia*, 427 MOTION for Joinder *of Motions and Memoranda filed by Co−Defendants*, 431 MOTION for Joinder *in Co−Defendants' Motions*, 364 MOTION for Joinder *IN GARCIA MOTION # 325 AND FOR ADDITIONAL DISCOVERY RELATED TO STREET GANGS IN DODGE CITY*, 369 MOTION for Hearing, 392 MOTION for Joinder , 327 MOTION for Joinder , 387 MOTION for Joinder, 375 MOTION for Joinder *Motions and Memoranda filed by Co−Defendants*, 394 MOTION for Joinder *In Motions Filed By Codefendants*, 407 MOTION to Sever Defendant *(GARCIA'S THIRTEENTH MOTION)*, 336 MOTION in Limine, 415 MOTION for Joinder *of Motions and Memoranda Filed by Co−Defendants*, 330 MOTION FOR NOTICE OF CO−CONSPIRATOR STATEMENTS (DEFENDANT GARCIA'S FOURTH MOTION) , 413 MOTION for Joinder , 423 MOTION for Joinder *in Co−Defendants' Pleadings*, 433 MOTION for Joinder, 325 MOTION for Discovery *FOR SPECIFIC DISCOVERY RELATED TO STREET GANGS IN DODGE CITY, KANSAS*, 388 MOTION for Joinder *in the Motions and Memoranda of Co−Defendants*, 363 MOTION for Joinder *in Co−Defendant Motions*, 372 MOTION to Produce *PRIOR CRIMINAL RECORD (DEFENDANT GARCIA'S ELEVENTH MOTION)*, 332 MOTION to Exclude, 371 MOTION to Join , 455 Second MOTION for Joinder , 374 MOTION for Joinder *in Defendant, Russell Worthey's Motion to Join Motions filed by Pedro Garcia (Docs. 325−326 and 328−338)*, 420 MOTION for Joinder (Smith, Aaron) (Entered: 12/17/2012) |
| 12/17/2012 | 481 | | RESPONSE TO MOTION by USA as to Andrew Gusman re 391 MOTION to Sever Defendant *from Co−Defendants* (Smith, Aaron) (Entered: 12/17/2012) |
| 12/17/2012 | 482 | | RESPONSE TO MOTION by USA as to Hernan Quezada re 414 Second MOTION to Sever Defendant (Smith, Aaron) (Entered: 12/17/2012) |
| 12/17/2012 | 483 | 570 | RESPONSE TO MOTION by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran−Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda−Hernandez, Andrew Gusman, Eusebio Sierra−Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz re 438 MOTION |

| | | | |
|---|---|---|---|
| | | | to dismiss counts One , 460 Second MOTION for Joinder *with Motions and Memorandums filed by Co−Defendants*, 441 MOTION to Sever Defendant , 440 MOTION to Suppress *Statements*, 458 Fourth MOTION for Joinder *of Motions and Memoranda filed by Co−Defendants* (Smith, Aaron) (Entered: 12/17/2012) |
| 12/17/2012 | 484 | 576 | RESPONSE TO MOTION by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran−Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda−Hernandez, Andrew Gusman, Eusebio Sierra−Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz re 426 MOTION to Suppress *Evidence Obtained As A Result of Illegal Seizure of Defendant's Car*, 435 MOTION for Joinder *IN CO−DEFENDANT GONZALO RAMIREZ'S MOTION TO SUPPRESS EVIDENCE FOUND IN CONNECTION WITH THE OCTOBER 19, 2010 SEARCH OF HIS RESIDENCE (GARCIA'S SEVENTEENTH MOTION)*, 460 Second MOTION for Joinder *with Motions and Memorandums filed by Co−Defendants*, 449 MOTION for Joinder *in Co−Defendants' Motions*, 424 MOTION to Suppress *Defendant's Post−Indictment Statement*, 453 MOTION for Joinder , 436 MOTION for Joinder *IN CO−DEFENDANT GONZALO RAMIREZ'S MOTION TO DISMISS AND REQUEST FOR BILL OF PARTICULARS (GARCIA'S EIGHTEENTH MOTION)*, 448 Supplemental MOTION for Joinder *As To Motions and Memoranda ECF 349, 350, 417, 418, 422, 430 and 438*, 425 MOTION to Suppress *Evidence Found In Connection With The October 19, 2010, Search of Defendant's Residence*, 413 MOTION for Joinder , 433 MOTION for Joinder, 458 Fourth MOTION for Joinder *of Motions and Memoranda filed by Co−Defendants*, 430 MOTION to Dismiss Indictment MOTION for Bill of Particulars (Smith, Aaron) (Entered: 12/17/2012) |
| 12/17/2012 | 485 | 584 | RESPONSE TO MOTION by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran−Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda−Hernandez, Andrew Gusman, Eusebio Sierra−Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz re 460 Second MOTION for Joinder *with Motions and Memorandums filed by Co−Defendants*, 419 MOTION for Hearing MOTION to Dismiss Indictment *or For Hearing To Determine Reasons For Government Delay In Filing Indictment*, 422 MOTION in Limine *to Prevent the Government From Referring to Him as a Gang Member*, 417 MOTION for Bill of Particulars , 437 Third MOTION for Joinder *of Motions filed by Co−Defendants*, 448 Supplemental MOTION for Joinder *As To Motions and Memoranda ECF 349, 350, 417, 418, 422, 430 and 438*, 418 MOTION to Sever Defendant , 455 Second MOTION for Joinder (Smith, Aaron) (Entered: 12/17/2012) |
| 12/17/2012 | 486 | 594 | RESPONSE TO MOTION by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran−Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda−Hernandez, Andrew Gusman, Eusebio Sierra−Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz re 381 MOTION |

| | | | |
|---|---|---|---|
| | | | for Disclosure *of Confidential Informants*, 400 MOTION to Suppress *Photo Lineups and Identifications*, 409 MOTION for Joinder *IN CERTAIN MOTIONS FILED BY CO−DEFENDANTS EUSEBIO SIERRA−MEDRANO AND JASON NAJERA (GARCIA'S FOURTEENTH MOTION)*, 449 MOTION for Joinder *in Co−Defendants' Motions*, 434 MOTION for Joinder , 378 MOTION to Exclude *Bruton Evidence*, 454 Second MOTION for Joinder *of Co−Defendant Motions*, 453 MOTION for Joinder , 427 MOTION for Joinder *of Motions and Memoranda filed by Co−Defendants*, 431 MOTION for Joinder *in Co−Defendants' Motions*, 383 MOTION for Separate Trial on Counts Jason Najera (1) Count 1,26,27,33−34 , 392 MOTION for Joinder , 393 MOTION for Joinder *IN JASON NAJERA'S MOTION TO DISCLOSE CONFIDENTIAL INFORMANTS [DOC. 381] AND MEMORANDUM IN SUPPORT [DOC. 382] (GARCIA'S TWELFTH MOTION)*, 387 MOTION for Joinder, 379 MOTION for Discovery *Specifically Related to Street Gangs in Dodge City*, 394 MOTION for Joinder *In Motions Filed By Codefendants*, 459 MOTION for Joinder, 415 MOTION for Joinder *of Motions and Memoranda Filed by Co−Defendants*, 413 MOTION for Joinder , 423 MOTION for Joinder *in Co−Defendants' Pleadings*, 433 MOTION for Joinder, 455 Second MOTION for Joinder , 377 MOTION in Limine *for Criminal Record and Other Prior Crimes*, 405 MOTION to Suppress *Statements*, 420 MOTION for Joinder (Smith, Aaron) (Entered: 12/17/2012) |
| 12/17/2012 | 487 | 605 | RESPONSE TO MOTION by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran−Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda−Hernandez, Andrew Gusman, Eusebio Sierra−Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz re 409 MOTION for Joinder *IN CERTAIN MOTIONS FILED BY CO−DEFENDANTS EUSEBIO SIERRA−MEDRANO AND JASON NAJERA (GARCIA'S FOURTEENTH MOTION)*, 351 MOTION for Bill of Particulars , 460 Second MOTION for Joinder *with Motions and Memorandums filed by Co−Defendants*, 449 MOTION for Joinder *in Co−Defendants' Motions*, 427 MOTION for Joinder *of Motions and Memoranda filed by Co−Defendants*, 431 MOTION for Joinder *in Co−Defendants' Motions*, 349 MOTION for Disclosure *and Inspection of The Grand Jury Transcripts*, 355 MOTION for Disclosure *Of Gang Participation Information*, 387 MOTION for Joinder, 344 MOTION to Prohibit Government, Law Enforcement or Cooperating Individuals From Approaching Defendant , 413 MOTION for Joinder , 363 MOTION for Joinder *in Co−Defendant Motions*, 458 Fourth MOTION for Joinder *of Motions and Memoranda filed by Co−Defendants*, 455 Second MOTION for Joinder , 356 MOTION for Disclosure *of Specific Discovery Related to Street Gangs In Dodge City, Kansas*, 340 MOTION to Exclude *Co−Conspirator's Testimonial Statements*, 346 MOTION To Allow Agent/Investigator To Not Be Subject To Sequestration Rule , 353 MOTION for Hearing *(James)*, 392 MOTION for Joinder , 448 Supplemental MOTION for Joinder *As To Motions and Memoranda ECF 349, 350, 417, 418, 422, 430 and 438*, 360 MOTION for Joinder *(DEFENDANT GARCIA'S NINTH MOTION)*, 375 MOTION for Joinder *Motions and Memoranda filed by Co−Defendants*, 394 MOTION for Joinder *In Motions Filed By Codefendants*, 415 MOTION for Joinder *of Motions and Memoranda Filed by Co−Defendants*, 342 MOTION for Disclosure *of Rule 404(b) Evidence*, 423 |

| | | | |
|---|---|---|---|
| | | | MOTION for Joinder *in Co−Defendants' Pleadings*, 433 MOTION for Joinder, 347 MOTION For Adequate Court Facilities , 388 MOTION for Joinder *in the Motions and Memoranda of Co−Defendants*, 361 MOTION for Joinder, 420 MOTION for Joinder (Smith, Aaron) (Entered: 12/17/2012) |
| 12/17/2012 | 488 | 618 | RESPONSE TO MOTION by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran−Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda−Hernandez, Andrew Gusman, Eusebio Sierra−Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz re 416 MOTION to Dismiss Indictment, 460 Second MOTION for Joinder with Motions and Memorandums filed by Co−Defendants, 437 Third MOTION for Joinder of Motions filed by Co−Defendants. (THIS IS A DUPLICATE OF DE 477 . DOCUMENT HAS BEEN REFILED USING THE CORRECT EVENT FOR ADMINISTRATIVE PURPOSES.) (aa) (Entered: 12/18/2012) |
| 12/27/2012 | 490 | | REPLY TO RESPONSE to Motion by Hernan Quezada re 414 Second MOTION to Sever Defendant (Casey, Derek) (Entered: 12/27/2012) |
| 01/09/2013 | 491 | | NOTICE OF HEARING ON MOTION as to Jason Najera. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING 400 MOTION to Suppress *Photo Lineups and Identifications*, 402 Supplemental MOTION to Suppress *Statements and Motion for Additional Discovery* MOTION for Discovery, 405 MOTION to Suppress *Statements* : (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Motion Hearing set for 1/29/2013 at 10:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 01/09/2013) |
| 01/09/2013 | 492 | | NOTICE OF HEARING ON MOTION as to Gonzalo Ramirez. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING 426 MOTION to Suppress *Evidence Obtained As A Result of Illegal Seizure of Defendant's Car*, 425 MOTION to Suppress *Evidence Found In Connection With The October 19, 2010, Search of Defendant's Residence* : (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Motion Hearing set for 1/29/2013 at 02:00 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 01/09/2013) |
| 01/09/2013 | 493 | | NOTICE OF HEARING ON MOTION as to Juan Torres. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING 419 MOTION for Hearing MOTION to Dismiss Indictment *or For Hearing To Determine Reasons For Government Delay In Filing Indictment* : (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Motion Hearing set for 2/4/2013 at 03:30 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 01/09/2013) |
| 01/10/2013 | 494 | 622 | MEMORANDUM AND ORDER granting 375 Motion for Joinder as to Jason Najera (1); denying 378 Motion to Exclude as to Jason Najera (1); granting 379 Motion for Discovery as to Jason Najera (1); finding as moot 381 Motion for Disclosure as to Jason Najera (1); granting 404 Motion for Joinder as to Jason Najera (1); granting 437 Motion for Joinder as to Jason Najera (1); granting 458 Motion for Joinder as to Jason Najera (1); granting 325 Motion for Discovery as to Pedro Garcia (2); granting in part and denying in part 328 Motion for Bill of Particulars as to Pedro Garcia (2); granting 330 Motion as |

to Pedro Garcia (2); finding as moot 332 Motion to Exclude as to Pedro Garcia (2); granting 334 Motion as to Pedro Garcia (2); finding as moot 336 Motion in Limine as to Pedro Garcia (2); denying 338 Motion for Extension of Time to File. as to Pedro Garcia (2); granting 369 Motion for Hearing as to Pedro Garcia (2); granting 372 Motion to Produce as to Pedro Garcia (2); granting 393 Motion for Joinder as to Pedro Garcia (2); taking under advisement 407 Motion to Sever Defendant as to Pedro Garcia (2); granting 409 Motion for Joinder as to Pedro Garcia (2); granting 410 Motion for Joinder as to Pedro Garcia (2); granting 411 Motion for Joinder as to Pedro Garcia (2); granting 435 Motion for Joinder as to Pedro Garcia (2); granting 436 Motion for Joinder as to Pedro Garcia (2); granting 423 Motion for Joinder as to Gonzalo Ramirez (3); denying 424 Motion to Suppress as to Gonzalo Ramirez (3); denying 430 Motion to Dismiss Indictment as to Gonzalo Ramirez (3); granting in part and denying in part 430 Motion for Bill of Particulars as to Gonzalo Ramirez (3); granting 459 Motion for Joinder as to Russell Worthey (4); granting 445 Motion for Joinder as to Anthony Wright (5); granting in part and denying in part 385 Motion for Bill of Particulars as to Joshua Flores (6); taking under advisement 386 Motion to Sever Defendant as to Joshua Flores (6); granting 387 Motion for Joinder as to Joshua Flores (6); granting 394 Motion for Joinder as to Angel Cerda (8); granting 395 Motion to Produce as to Angel Cerda (8); granting 396 Motion for Disclosure as to Angel Cerda (8); granting 397 Motion to Produce as to Angel Cerda (8); granting 448 Motion for Joinder as to Angel Cerda (8); granting in part and denying in part 417 Motion for Bill of Particulars as to Juan Torres (9); taking under advisement 418 Motion to Sever Defendant as to Juan Torres (9); granting 420 Motion for Joinder as to Juan Torres (9); granting 457 Motion as to Juan Torres (9); granting 449 Motion for Joinder as to Alfredo Beltran–Ruiz (10); granting 433 Motion for Joinder as to Donte Barnes (11); granting 366 Motion as to Jesus Sanchez (12); granting 367 Motion in Limine as to Jesus Sanchez (12); granting 434 Motion for Joinder as to Jesus Sanchez (12); granting 453 Motion for Joinder as to Jesus Sanchez (12); granting 392 Motion for Joinder as to Enrique Gobin (13); granting 427 Motion for Joinder as to Alfonso Banda–Hernandez (14); taking under advisement 428 Motion to Sever Defendant as to Alfonso Banda–Hernandez (14); taking under advisement 391 Motion to Sever Defendant as to Andrew Gusman (15); granting 460 Motion for Joinder as to Andrew Gusman (15); finding as moot 340 Motion to Exclude as to Eusebio Sierra–Medrano (16); granting 342 Motion for Disclosure as to Eusebio Sierra–Medrano (16); denying 344 Motion as to Eusebio Sierra–Medrano (16); granting 346 Motion as to Eusebio Sierra–Medrano (16); denying 347 Motion as to Eusebio Sierra–Medrano (16); denying 349 Motion for Disclosure as to Eusebio Sierra–Medrano (16); granting in part and denying in part 351 Motion for Bill of Particulars as to Eusebio Sierra–Medrano (16); granting 353 Motion for Hearing as to Eusebio Sierra–Medrano (16); granting 355 Motion for Disclosure as to Eusebio Sierra–Medrano (16); granting 356 Motion for Disclosure as to Eusebio Sierra–Medrano (16); denying 438 Motion to Dismiss Counts as to Jayson Vargas (17); denying 440 Motion to Suppress as to Jayson Vargas (17); taking under advisement 441 Motion to Sever Defendant as to Jayson Vargas (17); granting 443 Motion for Hearing as to Jayson Vargas (17); granting 454 Motion for Joinder as to Jayson Vargas (17); granting 388 Motion for Joinder as to Adam Flores (18); granting 374 Motion for Joinder as to Fabian Neave (19); granting 384 Motion for Joinder

| | | | |
|---|---|---|---|
| | | | as to Fabian Neave (19); granting 421 Motion for Joinder as to Fabian Neave (19); denying 416 Motion to Dismiss Indictment as to Jesus Torres (20); granting 455 Motion for Joinder as to Jesus Torres (20); granting 413 Motion for Joinder as to Jose Neave (21); granting 446 Motion for Joinder as to Jose Neave (21); taking under advisement 414 Motion to Sever Defendant as to Hernan Quezada (22); granting 415 Motion for Joinder as to Hernan Quezada (22); granting 431 Motion for Joinder as to Humberto Jorge Ortiz (23). See order for details. Signed by District Judge Monti L. Belot on 1/10/2013. (aa) (Entered: 01/10/2013) |
| 01/11/2013 | | | NOTICE OF JAMES HEARING as to Defendants Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz THIS IS AN OFFICIAL NOTICE FOR THIS HEARING In Court Hearing set for 2/13/2013 at 09:30 AM in Courtroom 161 (MLB)before District Judge Monti L. Belot. (rs) (Entered: 01/11/2013) |
| 01/15/2013 | 495 | | PRESENTENCE INVESTIGATION REPORT as to Humberto Jorge Ortiz<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 01/15/2013) |
| 01/22/2013 | 496 | | MOTION to Marry by Fabian Neave. (Bell, Gregory) (Entered: 01/22/2013) |
| 01/23/2013 | 499 | | MINUTE ORDER denying 496 Motion to Marry as to Fabian Neave (19). Signed by District Judge Monti L. Belot on 1/23/2013. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (sbw) (Entered: 01/23/2013) |
| 01/23/2013 | 500 | | MOTION to Suppress *STATEMENTS* by Angel Cerda. (McCausland, Paul) (Entered: 01/23/2013) |
| 01/23/2013 | 501 | | MEMORANDUM IN SUPPORT of 500 MOTION to Suppress *STATEMENTS* by Angel Cerda as to Angel Cerda (Attachments: # 1 Exhibit A – MIRANDA WARNING)(McCausland, Paul) (Entered: 01/23/2013) |
| 01/28/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: SENTENCING HEARING held on 1/28/2013 as to defendant Humberto Jorge Ortiz. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 01/28/2013) |
| 01/28/2013 | 502 | 634 | JUDGMENT as to Humberto Jorge Ortiz (23): Count 27 = 46 Months Imprisonment; 2 Years Supervised Release; $100 Assessment; Fine is waived; $16,242.10 Restitution. Signed by District Judge Monti L. Belot on 1/28/2013. (aa) (Entered: 01/28/2013) |
| 01/28/2013 | 503 | | STATEMENT OF REASONS as to Humberto Jorge Ortiz re 502 Judgment. |

| | | | |
|---|---|---|---|
| | | | **(NOTE: Access to this document is restricted to the USA and this defendant.)** <br><br> (aa) (Entered: 01/28/2013) |
| 01/29/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: STATUS CONFERENCE as to Pedro Garcia held on 1/29/2013. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 01/29/2013) |
| 01/30/2013 | 504 | 640 | MOTION to Suppress *EVIDENCE FOUND IN CONNECTION WITH THE OCTOBER 19, 2010 SEARCH OF HIS RESIDENCE (GARCIA'S NINETEENTH MOTION)* by Pedro Garcia. (Wachtel, John) (Entered: 01/30/2013) |
| 01/31/2013 | 505 | | NOTICE OF HEARING ON MOTION as to Jason Najera. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING 400 MOTION to Suppress *Photo Lineups and Identifications*, 402 Supplemental MOTION to Suppress *Statements and Motion for Additional Discovery* MOTION for Discovery, 405 MOTION to Suppress *Statements* : (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Motion Hearing set for 2/13/2013 at 03:00 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 01/31/2013) |
| 02/01/2013 | 506 | 644 | MOTION FOR A DAUBERT/KUMHO TIRE HEARING ON CERTAIN EXPERT WITNESSES IDENTIFIED BY THE GOVERNMENT (GARCIA'S TWENTIETH MOTION) by Pedro Garcia. (Wachtel, John) (Entered: 02/01/2013) |
| 02/01/2013 | 507 | | CJA 20 as to Alfredo Beltran−Ruiz: Appointment of Attorney David M. Rapp. Signed by Magistrate Judge Karen M. Humphreys on 01/31/2013. (aa) (Entered: 02/01/2013) |
| 02/04/2013 | 508 | | MOTION TRANSCRIPTION SERVICES by Angel Cerda. (McCausland, Paul) (Entered: 02/04/2013) |
| 02/04/2013 | 509 | | MOTION for Joinder *Co−Defendant Pedro Garcia's Motion for a Daubert/Kumho Tire Hearing* by Jason Najera. (Moses, David) (Entered: 02/04/2013) |
| 02/04/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: MOTION HEARING as to Juan Torres held on 2/4/2013. (Witness: Aaron Smith)(Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 02/04/2013) |
| 02/04/2013 | 510 | | ENTRY OF APPEARANCE: by attorney David M. Rapp appearing for Alfredo Beltran−Ruiz (Rapp, David) (Entered: 02/04/2013) |
| 02/04/2013 | 511 | | WAIVER of Right to Appeal by Humberto Jorge Ortiz (aa) (Entered: 02/05/2013) |
| 02/05/2013 | 512 | | MOTION for Joinder *In Pedro Garcia's Motion For A Daubert/Kumho Tire Hearing* by Eusebio Sierra−Medrano. (Bennett, Mark) (Entered: 02/05/2013) |
| 02/06/2013 | 513 | | |

| | | | |
|---|---|---|---|
| | | | ORDER AUTHORIZING TRANSCRIPTIONS granting 508 Motion as to Angel Cerda (8). Signed by District Judge Monti L. Belot on 2/5/2013. (aa) (Entered: 02/06/2013) |
| 02/06/2013 | 514 | | MEMORANDUM AND ORDER denying 419 Motion to Dismiss Indictment as to Juan Torres (9). Signed by District Judge Monti L. Belot on 2/6/2013. (aa) (Entered: 02/06/2013) |
| 02/06/2013 | 515 | | MOTION to Suppress *EVIDENCE AND REQUEST FOR FRANKS HEARING* by Angel Cerda. (McCausland, Paul) (Entered: 02/06/2013) |
| 02/06/2013 | 516 | | MEMORANDUM IN SUPPORT of 515 MOTION to Suppress *EVIDENCE AND REQUEST FOR FRANKS HEARING* by Angel Cerda as to Angel Cerda (Attachments: # 1 Exhibit A – SEARCH WARRANT, APPLICATION AND AFFIDAVIT, # 2 Exhibit B – SEARCH WARRANT RETURN, # 3 Exhibit C – EVIDENCE CUSTODY RECEIPT, # 4 Exhibit D – REDACTED POLICE REPORT)(McCausland, Paul) (Entered: 02/06/2013) |
| 02/07/2013 | 517 | 649 | RESPONSE TO MOTION by USA as to Pedro Garcia re 504 MOTION to Suppress *EVIDENCE FOUND IN CONNECTION WITH THE OCTOBER 19, 2010 SEARCH OF HIS RESIDENCE (GARCIA'S NINETEENTH MOTION)* (Smith, Aaron) (Entered: 02/07/2013) |
| 02/08/2013 | 518 | | NOTICE OF HEARING as to Defendants Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz <span style="color:red">THIS IS AN OFFICIAL NOTICE FOR THIS HEARING</span> (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Status Conference set for 2/11/2013 at 03:00 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. DEFENDANTS DO NOT NEED TO APPEAR. Defense counsel must appear. Out of town counsel may appear by telephone. Call chambers to provide your contact number.(rs) (Entered: 02/08/2013) |
| 02/08/2013 | 519 | | ENTRY OF APPEARANCE: by attorney Christopher S. O'Hara appearing for Jesus Torres (O'Hara, Christopher) (Entered: 02/08/2013) |
| 02/11/2013 | 520 | 653 | MEMORANDUM OF LAW by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz *Regarding Admissibility of Co–Conspirator Statements* (Smith, Aaron) (Entered: 02/11/2013) |
| 02/11/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: STATUS CONFERENCE as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus |

| | | | |
|---|---|---|---|
| | | | Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz held on 2/11/2013. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 02/11/2013) |
| 02/12/2013 | 521 | 669 | NOTICE OF JAMES HEARING as to Defendants Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Joshua Flores, Donte Barnes THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) In Court Hearing set for 2/13/2013 at 09:00 AM in Courtroom 161 (MLB)before District Judge Monti L. Belot. (rs) (Entered: 02/12/2013) |
| 02/12/2013 | 522 | 678 | NOTICE OF JAMES HEARING as to Defendants Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Jayson Vargas, Adam Flores, Fabian Neave, Jose Neave  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) In Court Hearing set for 2/13/2013 at 01:00 PM in Courtroom 161 (MLB)before District Judge Monti L. Belot. (rs) (Entered: 02/12/2013) |
| 02/12/2013 | 523 | | MOTION to Continue All Pretrial Deadlines and Dates by Alfredo Beltran–Ruiz. (Rapp, David) (Entered: 02/12/2013) |
| 02/13/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: JAMES HEARING as to Pedro Garcia, Gonzalo Ramirez, Joshua Flores, Donte Barnes, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman held on 2/13/2013. (Witnesses: Shane Webb; Jay Bice) (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 02/13/2013) |
| 02/13/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: JAMES HEARING as to Jason Najera, Jayson Vargas, Adam Flores, Fabian Neave, Jose Neave held on 2/13/2013. (Witnesses: James Nau; Jay Bice; Shane Webb) (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 02/13/2013) |
| 02/13/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Jason Najera held on 2/13/2013 Sentencing set for 5/6/2013 at 10:30 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 02/13/2013) |
| 02/13/2013 | 524 | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Jason Najera (1) Count 26. Signed by District Judge Monti L. Belot on 2/13/2013. (aa) (Entered: 02/14/2013) |
| 02/13/2013 | 525 | | PLEA AGREEMENT as to Jason Najera re 524 Petition and Order to Enter Plea of Guilty. (aa) (Entered: 02/14/2013) |
| 02/14/2013 | 526 | | MEMORANDUM OF LAW by Jayson Vargas *& Summation for James Hearing* (Sevart, Mark) (Entered: 02/14/2013) |
| 02/18/2013 | 527 | 689 | RESPONSE by Pedro Garcia (Wachtel, John) (Entered: 02/18/2013) |
| 02/18/2013 | 528 | | |

| | | | |
|---|---|---|---|
| | | | MOTION to Exclude *RULE 801(d)(2)(E) EVIDENCE AND MEMORANDUM IN SUPPORT* by Angel Cerda. (McCausland, Paul) (Entered: 02/18/2013) |
| 02/19/2013 | 529 | 700 | EXHIBITS IN SUPPORT of 527 Response (Other) by Pedro Garcia *(ATTACHMENT A)* (Wachtel, John) (Entered: 02/19/2013) |
| 02/19/2013 | 530 | | MINUTE ORDER granting 523 Motion to Continue as to Alfredo Beltran–Ruiz (10) Signed by District Judge Monti L. Belot on 2/19/2013. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (sbw) (Entered: 02/19/2013) |
| 02/19/2013 | 531 | 703 | NOTICE of Disclosure of Known Unindicted Co–Conspirators by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz (Smith, Aaron) (Entered: 02/19/2013) |
| 02/20/2013 | 532 | | OBJECTION(S) to *Admission of Rule 801(d)(2)(E) Evidence with Accompanying Memorandum* by Gonzalo Ramirez (Mandelman, Joel) (Entered: 02/20/2013) |
| 02/20/2013 | 533 | | OBJECTION(S) to *Admission of Rule 801(d)(2)(E) Evidence and Memorandum in Support* by Donte Barnes (Griffith, Jeff) (Entered: 02/20/2013) |
| 02/21/2013 | 534 | | MOTION to Join Defendant Angel Cerda's Motion to Exclude Rule 801(d)(2)(E) Evidence by Juan Torres. (Shultz, Michael) (Entered: 02/21/2013) |
| 02/21/2013 | 535 | | MOTION for order To Overrule 801(d)(2)(E) Evidence by Adam Flores. (McEnulty, Sean) (Entered: 02/21/2013) |
| 02/21/2013 | 536 | | MOTION for Discovery *ADDITIONAL DISCOVERY SPECIFIED IN MOTION* by Angel Cerda. (Attachments: # 1 Exhibit A – 8–6–12 DISCOVERY LETTER, # 2 Exhibit B – 1–31–13 DISCOVERY LETTER)(McCausland, Paul) (Entered: 02/21/2013) |
| 02/21/2013 | 537 | | RESPONSE by Alfonso Banda–Hernandez (Attachments: # 1 Exhibit Excerpt from Preliminary Hearing)(Hepperly, Michael) (Entered: 02/21/2013) |
| 02/22/2013 | 538 | | MEMORANDUM OF LAW by Fabian Neave *In Opposition To Rule 801(d)(2)(E) Evidence* (Bell, Gregory) (Entered: 02/22/2013) |
| 02/22/2013 | 540 | 707 | SUPPLEMENTAL BRIEF IN SUPPORT OF ADMISSION OF COCONSPIRATOR STATEMENTS by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz. (aa) (Entered: 02/25/2013) |
| 02/23/2013 | 539 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE of objection to Rule 801 (d)(2)(E) evidence as to Joshua Flores (Maughan, Carl) (Entered: 02/23/2013) |
| 02/25/2013 | <u>541</u> | | MOTION to Suppress *Firearm, Ammunition, and Evidence Found on Defendant's Cell Phone* by Gonzalo Ramirez. (Mandelman, Joel) (Entered: 02/25/2013) |
| 02/25/2013 | <u>542</u> | 713 | MOTION to Suppress *and Exclude Evidence from Defendant's Gang Sheets, Including His Statements and Tattoos* by Gonzalo Ramirez. (Mandelman, Joel) (Entered: 02/25/2013) |
| 02/25/2013 | <u>543</u> | | OBJECTION(S) to *Admission of Rule 801(d)(2)(E) Evidence* by Andrew Gusman (Hartenstein, Eric) (Entered: 02/25/2013) |
| 02/25/2013 | <u>544</u> | 721 | MOTION to Dismiss Indictment *and Brief* by Gonzalo Ramirez. (Henry, Timothy) (Entered: 02/25/2013) |
| 02/25/2013 | <u>545</u> | | MOTION to Exclude *AND SUPPRESS EVIDENCE OF GANG SHEETS* by Angel Cerda. (McCausland, Paul) (Entered: 02/25/2013) |
| 02/26/2013 | <u>546</u> | 731 | MOTION for Joinder *IN CO−DEFENDANT GONZALO RAMIREZ'S MOTION TO DISMISS AND BRIEF (GARCIA'S TWENTY−FIRST MOTION)* by Pedro Garcia. (Wachtel, John) (Entered: 02/26/2013) |
| 02/26/2013 | <u>547</u> | 736 | MOTION for Joinder *IN CO−DEFENDANT GONZALO RAMIREZ'S MOTION TO SUPPRESS AND EXCLUDE EVIDENCE FROM DEFENDANT'S GANG SHEETS, INCLUDING HIS STATEMENTS AND TATTOOS (GARCIA'S TWENTY−SECOND MOTION)* by Pedro Garcia. (Wachtel, John) (Entered: 02/26/2013) |
| 02/26/2013 | <u>548</u> | | MOTION for Joinder *IN RAMIREZ MOTION TO DISMISS (ECF 544)* by Angel Cerda. (McCausland, Paul) (Entered: 02/26/2013) |
| 02/26/2013 | <u>549</u> | | EXHIBITS IN SUPPORT of <u>500</u> MOTION to Suppress *STATEMENTS* by Angel Cerda as to Angel Cerda *Exhibit B − 10−2008 Angel Cerda Interrogation Transcript, Exhibit C − 05−09−2012 Angel Cerda Interrogation Transcript* (McCausland, Paul) (Entered: 02/26/2013) |
| 02/26/2013 | <u>550</u> | | MOTION to Join Defendant Gonzalo Ramirez Motion to Dismiss (Doc 544) by Juan Torres. (Shultz, Michael) Modified on 2/27/2013 to correct motion event (aa). (Entered: 02/26/2013) |
| 02/27/2013 | <u>551</u> | 742 | AMENDED SCHEDULING ORDER as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran−Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda−Hernandez, Andrew Gusman, Eusebio Sierra−Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada. Defendant Pedro Garcia's motion to suppress will be heard on March 4 at 2:30 p.m. in Courtroom 161 (MLB) before District Judge Monti L. Belot. Please see order for additional deadlines. Signed by District Judge Monti L. Belot on 2/27/2013. (aa) (Entered: 02/27/2013) |
| 02/27/2013 | 552 | | NOTICE OF HEARING ON MOTION as to Angel Cerda. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING <u>515</u> MOTION to Suppress *EVIDENCE AND REQUEST FOR FRANKS HEARING*, <u>500</u> MOTION to |

| | | | |
|---|---|---|---|
| | | | Suppress *STATEMENTS* : (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Motion Hearing set for 3/18/2013 at 02:00 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 02/27/2013) |
| 02/27/2013 | 553 | | Unopposed MOTION for Extension of Time to File by Alfonso Banda−Hernandez. (Attachments: # 1 Exhibit Proposed Motion)(Hepperly, Michael) (Entered: 02/27/2013) |
| 02/28/2013 | 554 | | MINUTE ORDER granting 553 Motion for Extension of Time to File as to Alfonso Banda−Hernandez (14). Signed by District Judge Monti L. Belot on 2/28/2013. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (sbw) (Entered: 02/28/2013) |
| 02/28/2013 | 555 | | MOTION to Exclude *and Suppress Evidence of Gang Sheets, Including His Statements and Tattoos* by Alfonso Banda−Hernandez. (Hepperly, Michael) (Entered: 02/28/2013) |
| 02/28/2013 | 556 | | MOTION for Joinder *In Co−defendants Gonzalo Ramirez, Pedro Garcia and Angel Cerda's Motions To Exclude And Suppress Evidence of Gang Sheets* by Eusebio Sierra−Medrano. (Bennett, Mark) (Entered: 02/28/2013) |
| 02/28/2013 | 557 | | RESPONSE TO MOTION by USA as to Angel Cerda re 515 MOTION to Suppress *EVIDENCE AND REQUEST FOR FRANKS HEARING* (Smith, Aaron) (Entered: 02/28/2013) |
| 02/28/2013 | 558 | | MOTION for Joinder *In Ramirez's Motion to Dismiss* by Andrew Gusman. (Hartenstein, Eric) (Entered: 02/28/2013) |
| 03/01/2013 | 559 | | ENTRY OF APPEARANCE: by attorney Jessica M. Shannon appearing for Alfredo Beltran−Ruiz (Shannon, Jessica) (Entered: 03/01/2013) |
| 03/01/2013 | 560 | | MOTION for Joinder *in Co−Defendants' Motions to Suppress and Exclude Evidence from Defendant's Gang Sheets, Including His Statements and Tattoos* by Alfredo Beltran−Ruiz. (Rapp, David) (Entered: 03/01/2013) |
| 03/01/2013 | 561 | | MOTION for Joinder *in Ramirez's Motion to Suppress and Exclude Evidence* by Andrew Gusman. (Hartenstein, Eric) (Entered: 03/01/2013) |
| 03/04/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: MOTION HEARING as to Pedro Garcia held on 3/4/2013. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 03/04/2013) |
| 03/06/2013 | 562 | | MOTION for Joinder *on Co−Defendants' Motions (Docs 545 and 546) to Exclude and Supress Evidence of Gang Sheets and Tattoos* by Adam Flores. (McEnulty, Sean) (Entered: 03/06/2013) |
| 03/06/2013 | 563 | | MOTION for Joinder *Defendant Fabian Neave's Motion for Permission to Join in Co−Defendant Gonzalo Ramirez's Motion to Suppress and Exclude Evidence* by Fabian Neave. (Bell, Gregory) (Entered: 03/06/2013) |
| 03/07/2013 | 564 | 744 | MEMORANDUM IN SUPPORT of 504 MOTION to Suppress *EVIDENCE FOUND IN CONNECTION WITH THE OCTOBER 19, 2010 SEARCH OF HIS RESIDENCE (GARCIA'S NINETEENTH MOTION)* by Pedro Garcia as to Pedro Garcia (Wachtel, John) (Entered: 03/07/2013) |

| 03/11/2013 | 565 | 755 | RESPONSE TO MOTION by USA as to Pedro Garcia, Gonzalo Ramirez, Angel Cerda, Juan Torres, Alfredo Beltran−Ruiz, Alfonso Banda−Hernandez, Andrew Gusman, Eusebio Sierra−Medrano, Adam Flores, Fabian Neave re 563 MOTION for Joinder *Defendant Fabian Neave's Motion for Permission to Join in Co−Defendant Gonzalo Ramirez's Motion to Suppress and Exclude Evidence*, 560 MOTION for Joinder *in Co−Defendants' Motions to Suppress and Exclude Evidence from Defendant's Gang Sheets, Including His Statements and Tattoos*, 556 MOTION for Joinder *In Co−defendants Gonzalo Ramirez, Pedro Garcia and Angel Cerda's Motions To Exclude And Suppress Evidence of Gang Sheets*, 561 MOTION for Joinder *in Ramirez's Motion to Suppress and Exclude Evidence*, 541 MOTION to Suppress *Firearm, Ammunition, and Evidence Found on Defendant's Cell Phone*, 550 MOTION for Joinder, 546 MOTION for Joinder *IN CO−DEFENDANT GONZALO RAMIREZ'S MOTION TO DISMISS AND BRIEF (GARCIA'S TWENTY−FIRST MOTION)*, 548 MOTION for Joinder *IN RAMIREZ MOTION TO DISMISS (ECF 544)*, 555 MOTION to Exclude *and Suppress Evidence of Gang Sheets, Including His Statements and Tattoos*, 545 MOTION to Exclude *AND SUPPRESS EVIDENCE OF GANG SHEETS*, 547 MOTION for Joinder *IN CO−DEFENDANT GONZALO RAMIREZ'S MOTION TO SUPPRESS AND EXCLUDE EVIDENCE FROM DEFENDANT'S GANG SHEETS, INCLUDING HIS STATEMENTS AND TATTOOS (GARCIA'S TWENTY−SECOND MOTION)*, 544 MOTION to Dismiss Indictment *and Brief*, 562 MOTION for Joinder *on Co−Defendants' Motions (Docs 545 and 546) to Exclude and Supress Evidence of Gang Sheets and Tattoos*, 542 MOTION to Suppress *and Exclude Evidence from Defendant's Gang Sheets, Including His Statements and Tattoos*, 558 MOTION for Joinder *In Ramirez's Motion to Dismiss* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Smith, Aaron) (Entered: 03/11/2013) |
| 03/12/2013 | 566 | | MOTION for Joinder *in Co−Defendant Pedro Garcia's Motion For Daubert/Kumho Tire Hearing On Certain Expert Witnesses Identified By The Government* by Alfredo Beltran−Ruiz. (Rapp, David) (Entered: 03/12/2013) |
| 03/13/2013 | 567 | | NOTICE OF HEARING ON MOTION as to Gonzalo Ramirez. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING 541 MOTION to Suppress *Firearm, Ammunition, and Evidence Found on Defendant's Cell Phone* : (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Motion Hearing set for 3/25/2013 at 02:00 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 03/13/2013) |
| 03/14/2013 | 568 | 799 | RESPONSE TO MOTION by USA as to Pedro Garcia, Alfredo Beltran−Ruiz, Eusebio Sierra−Medrano re 512 MOTION for Joinder *In Pedro Garcia's Motion For A Daubert/Kumho Tire Hearing*, 566 MOTION for Joinder *in Co−Defendant Pedro Garcia's Motion For Daubert/Kumho Tire Hearing On Certain Expert Witnesses Identified By The Government*, 506 MOTION FOR A DAUBERT/KUMHO TIRE HEARING ON CERTAIN EXPERT WITNESSES IDENTIFIED BY THE GOVERNMENT (GARCIA'S TWENTIETH MOTION) (Smith, Aaron) (Entered: 03/14/2013) |
| 03/14/2013 | 569 | | NOTICE OF CANCELLED HEARING: Suppression hearing set on March 18 as to Defendant Angel Cerda cancelled. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 03/14/2013) |

| 03/15/2013 | 570 | | STIPULATION by Angel Cerda *AND THE UNITED STATES OF AMERICA REGARDING SEARCH EVIDENCE AND STATEMENTS MADE DURING CUSTODIAL INTERROGATION* (McCausland, Paul) (Entered: 03/15/2013) |
|---|---|---|---|
| 03/20/2013 | 571 | 808 | REPLY TO RESPONSE to Motion by Pedro Garcia re 506 MOTION FOR A DAUBERT/KUMHO TIRE HEARING ON CERTAIN EXPERT WITNESSES IDENTIFIED BY THE GOVERNMENT (GARCIA'S TWENTIETH MOTION) (Wachtel, John) (Entered: 03/20/2013) |
| 03/25/2013 | 572 | | TRANSCRIPT of Motion Hearing regarding Juan Torres held 2–4–2013 as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Michael Shultz. **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/24/2013. (Schwemmer, Cindy) (Entered: 03/25/2013) |
| 03/25/2013 | 573 | | TRANSCRIPT of Hearing on James Motion (Morning session) held 2–13–2013 as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Michael Shultz. **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** |

| | | | |
|---|---|---|---|
| | | | Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/24/2013. (Schwemmer, Cindy) (Entered: 03/25/2013) |
| 03/25/2013 | 574 | | TRANSCRIPT of Hearing on James Motion (Afternoon Session) held 2–13–2013 as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Michael Shultz.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/24/2013. (Schwemmer, Cindy) (Entered: 03/25/2013) |
| 03/25/2013 | 575 | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: sustaining 541 Motion to Suppress as to Gonzalo Ramirez (3) for the reasons stated in open court; MOTION HEARING as to Gonzalo Ramirez held on 3/25/2013. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 03/25/2013) |
| 03/26/2013 | 576 | | ORDER as to Gonzalo Ramirez granting 541 MOTION to Suppress *Firearm, Ammunition, and Evidence Found on Defendant's Cell Phone*. Follows oral order of 3/25/13, Docket Entry 575 . Signed by District Judge Monti L. Belot on 3/26/2013. (alm) (Entered: 03/26/2013) |
| 03/29/2013 | 577 | 812 | RESPONSE TO MOTION by USA as to Pedro Garcia re 504 MOTION to Suppress *EVIDENCE FOUND IN CONNECTION WITH THE OCTOBER 19, 2010 SEARCH OF HIS RESIDENCE (GARCIA'S NINETEENTH MOTION)* (Attachments: # 1 Exhibit Government Exhibit 1)(Welch, Lanny) (Entered: 03/29/2013) |
| 04/01/2013 | 578 | | MOTION for Reconsideration of Detention Order re 223 Order of Detention by Alfredo Beltran–Ruiz. (Rapp, David) (Entered: 04/01/2013) |
| 04/02/2013 | 579 | 853 | ORDER as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan |

| | | | |
|---|---|---|---|
| | | | Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada re 540 SUPPLEMENTAL BRIEF IN SUPPORT OF ADMISSION OF COCONSPIRATOR STATEMENTS by USA. Please see order for details. Signed by District Judge Monti L. Belot on 4/2/2013. (aa) (Entered: 04/02/2013) |
| 04/02/2013 | 580 | 855 | MEMORANDUM AND ORDER granting 546 Motion for Joinder as to Pedro Garcia (2); denying 544 Motion to Dismiss Indictment as to Gonzalo Ramirez (3); granting 548 Motion for Joinder as to Angel Cerda (8); granting 550 Motion for Joinder as to Juan Torres (9); granting 558 Motion for Joinder as to Andrew Gusman (15). Signed by District Judge Monti L. Belot on 4/2/2013. (aa) (Entered: 04/02/2013) |
| 04/02/2013 | 581 | | NOTICE OF HEARING ON MOTION as to Alfredo Beltran–Ruiz. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING 578 MOTION for Reconsideration of Detention Order re 223 Order of Detention : (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Motion Hearing set for 4/5/2013 at 01:30 PM in Courtroom 326 (KMH) before Magistrate Judge Karen M. Humphreys. (vs) (Entered: 04/02/2013) |
| 04/04/2013 | 582 | | RESPONSE TO MOTION by USA as to Alfredo Beltran–Ruiz re 578 MOTION for Reconsideration of Detention Order re 223 Order of Detention (Welch, Lanny) (Entered: 04/04/2013) |
| 04/05/2013 | 584 | | MINUTE ENTRY for proceedings held before Magistrate Judge Karen M. Humphreys: MOTION HEARING as to Alfredo Beltran–Ruiz held on 4/5/2013 re 578 MOTION for Reconsideration of Detention Order re 223 Order of Detention filed by Alfredo Beltran–Ruiz. Defendant's next appearance before Judge Belot as directed. The Defendant's motion for reconsideration of detention and release on conditions is denied. Order to follow. (Tape #1:46–2:13.) (aa) (Entered: 04/05/2013) |
| 04/08/2013 | 585 | | MOTION for Reconsideration re 576 Order – Written Order Following Oral Order on Motion, by USA as to Gonzalo Ramirez. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Smith, Aaron) (Entered: 04/08/2013) |
| 04/09/2013 | 586 | | ORDER denying 578 Motion for Reconsideration of Detention Order as to Alfredo Beltran–Ruiz (10). Signed by Magistrate Judge Karen M. Humphreys on 4/8/2013. (aa) (Entered: 04/09/2013) |
| 04/10/2013 | 587 | 859 | MEMORANDUM AND ORDER denying 504 Motion to Suppress as to Pedro Garcia (2). Signed by District Judge Monti L. Belot on 4/10/2013. (aa) (Entered: 04/10/2013) |
| 04/12/2013 | 588 | 865 | NOTICE of United States' Second Supplemental Brief in Support of Admission of Coconspirator Statements by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz re 526 Memorandum of Law, 533 Objection(s), 538 Memorandum of Law, 534 MOTION to Join Defendant Angel Cerda's Motion to Exclude Rule |

| | | | |
|---|---|---|---|
| | | | 801(d)(2)(E) Evidence , 532 Objection(s), 543 Objection(s), 539 Notice (Other), 537 Response (Other), 527 Response (Other) (Smith, Aaron) (Entered: 04/12/2013) |
| 04/12/2013 | 589 | | NOTICE OF DAUBERT HEARING as to Defendants Pedro Garcia, Gonzalo Ramirez, Angel Cerda, Juan Torres, Hernan Quezada THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) In Court Hearing set for 4/16/2013 at 09:00 AM in Courtroom 161 (MLB)before District Judge Monti L. Belot. (rs) (Entered: 04/12/2013) |
| 04/12/2013 | 590 | | NOTICE OF DAUBERT HEARING as to Defendants Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) In Court Hearing set for 4/17/2013 at 09:00 AM in Courtroom 161 (MLB)before District Judge Monti L. Belot. (rs) (Entered: 04/12/2013) |
| 04/12/2013 | 591 | | NOTICE OF HEARING as to Defendants Joshua Flores, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) In Court Hearing set for 4/18/2013 at 09:00 AM in Courtroom 161 (MLB)before District Judge Monti L. Belot. (rs) (Entered: 04/12/2013) |
| 04/12/2013 | 592 | 891 | NOTICE of Memorandum in Advance of a Daubert Hearing by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz (Smith, Aaron) (Entered: 04/12/2013) |
| 04/15/2013 | 593 | | NOTICE OF HEARING as to Defendant Anthony Wright: Change of Plea Hearing set for 4/22/2013 at 11:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(sbw) (Entered: 04/15/2013) |
| 04/16/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: DAUBERT HEARING as to Pedro Garcia, Gonzalo Ramirez, Angel Cerda, Juan Torres held on 4/16/2013. (Witnesses: Shane Webb; James Nau)(Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 04/16/2013) |
| 04/16/2013 | 594 | | NOTICE OF RESET HEARING as to Defendant Jason Najera THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Sentencing RESET for 4/29/2013 at 02:00 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 04/16/2013) |
| 04/17/2013 | 595 | | NOTICE OF HEARING as to Defendant Jose Neave. Change of Plea Hearing set for 4/22/2013 at 02:00 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with |

| | | | |
|---|---|---|---|
| | | | this entry.)(sbw) (Entered: 04/17/2013) |
| 04/17/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: DAUBERT HEARING as to Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman held on 4/17/2013. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) Modified on 4/18/2013 to correct hearing date (aa). (Entered: 04/18/2013) |
| 04/18/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: DAUBERT HEARING as to Joshua Flores, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres held on 4/18/2013. (Witnesses: Shane Webb; James Nau)(Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 04/18/2013) |
| 04/19/2013 | 596 | | RESPONSE TO MOTION by Gonzalo Ramirez re 585 MOTION for Reconsideration re 576 Order – Written Order Following Oral Order on Motion, (Mandelman, Joel) (Entered: 04/19/2013) |
| 04/22/2013 | 597 | | PRESENTENCE INVESTIGATION REPORT as to Jason Najera<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 04/22/2013) |
| 04/22/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Anthony Wright held on 4/22/2013 Sentencing set for 7/8/2013 at 10:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 04/22/2013) |
| 04/22/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Jose Neave held on 4/22/2013 Sentencing set for 7/8/2013 at 10:15 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 04/22/2013) |
| 04/22/2013 | 599 | | NOTICE OF HEARING as to Defendant Russell Worthey  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing set for 5/6/2013 at 02:15 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (sbw) (Entered: 04/22/2013) |
| 04/22/2013 | 600 | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Anthony Wright (5) Count 1,6. Signed by District Judge Monti L. Belot on 4/22/2013. (aa) (Entered: 04/23/2013) |
| 04/22/2013 | 601 | | PLEA AGREEMENT as to Anthony Wright re 600 Petition and Order to Enter Plea of Guilty. (aa) (Entered: 04/23/2013) |
| 04/22/2013 | 602 | | |

| | | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Jose Neave (21) Count 26. Signed by District Judge Monti L. Belot on 4/22/2013. (aa) (Entered: 04/23/2013) |
|---|---|---|---|
| 04/22/2013 | 603 | | PLEA AGREEMENT as to Jose Neave re 602 Petition and Order to Enter Plea of Guilty. (aa) (Entered: 04/23/2013) |
| 04/24/2013 | 604 | | TRANSCRIPT of Hearing on Daubert Motion held 4/16/2013 as to Pedro Garcia, Gonzalo Ramirez, Angel Cerda, Juan Torres before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: ALL counsel of Record. **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 7/23/2013. (Schwemmer, Cindy) (Entered: 04/24/2013) |
| 04/24/2013 | 605 | | TRANSCRIPT of Hearing on Daubert Motion held 4/17/2013 as to Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: ALL counsel of Record. **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 7/23/2013. (Schwemmer, Cindy) (Entered: 04/24/2013) |
| 04/24/2013 | 606 | | TRANSCRIPT of Hearing on Daubert Motion held 4/18/2013 as to Joshua Flores, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased |

| | | | |
|---|---|---|---|
| | | | by: ALL counsel of Record. |
| | | | **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** |
| | | | Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 7/23/2013. (Schwemmer, Cindy) (Entered: 04/24/2013) |
| 04/26/2013 | 608 | 899 | OBJECTION(S) to *DAUBERT HEARING* by Pedro Garcia (Wachtel, John) (Entered: 04/26/2013) |
| 04/29/2013 | 609 | | MOTION for Joinder *In Co−Defendant Garcia's Objections Following the Daubert Hearing* by Eusebio Sierra−Medrano. (Bennett, Mark) (Entered: 04/29/2013) |
| 04/29/2013 | 610 | | MOTION for Joinder by Andrew Gusman. (Hartenstein, Eric) (Entered: 04/29/2013) |
| 04/29/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: SENTENCING HEARING held on 4/29/2013 as to defendant Jason Najera. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 04/29/2013) |
| 04/29/2013 | 611 | | MOTION for Joinder *IN DAUBERT OBJECTIONS BY GARCIA (ECF 608)* by Angel Cerda. (McCausland, Paul) (Entered: 04/29/2013) |
| 04/29/2013 | 612 | | OBJECTION(S) to *following Daubert Hearing* by Jayson Vargas (Sevart, Mark) (Entered: 04/29/2013) |
| 04/29/2013 | 613 | | MOTION for Joinder by Jesus Sanchez. (Schoenhofer, Mark) (Entered: 04/29/2013) |
| 04/30/2013 | 614 | 906 | JUDGMENT as to Jason Najera (1): Counts 1, 27 and 33−34 are Dismissed; Count 26 = 120 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived; $16,242.10 Restitution. Signed by District Judge Monti L. Belot on 4/29/2013. (aa) (Entered: 04/30/2013) |
| 04/30/2013 | 615 | | STATEMENT OF REASONS as to Jason Najera re 614 Judgment. **(NOTE: Access to this document is restricted to the USA and this defendant.)** (aa) (Entered: 04/30/2013) |
| 04/30/2013 | 616 | | MOTION for Joinder *IN CO−DEFENDANT GARCIAS OBJECTIONS FOLLOWING THE DAUBERT HEARING* by Donte Barnes. (Griffith, Jeff) |

| | | | |
|---|---|---|---|
| | | | (Entered: 04/30/2013) |
| 04/30/2013 | 617 | | MOTION to Join Defendant Pedro Garcia's Objections Following Daubert Hearing by Juan Torres. (Shultz, Michael) (Entered: 04/30/2013) |
| 04/30/2013 | 618 | | MOTION for Joinder *in Daubert Objections* by Alfonso Banda–Hernandez. (Hepperly, Michael) (Entered: 04/30/2013) |
| 04/30/2013 | 619 | | OBJECTION(S) to *Government's Proposed Expert Testimony Regarding Gangs* by Gonzalo Ramirez (Mandelman, Joel) (Entered: 04/30/2013) |
| 04/30/2013 | 620 | | ORDER denying 585 Motion for Reconsideration as to Gonzalo Ramirez (3). Signed by District Judge Monti L. Belot on 4/30/2013. (aa) (Entered: 04/30/2013) |
| 04/30/2013 | 621 | | MOTION in Limine *Regarding the Expert Testimony of Shane Webb and James Nau on Count 38* by Hernan Quezada as to Jesus Torres, Hernan Quezada. (Casey, Derek) (Entered: 04/30/2013) |
| 04/30/2013 | 622 | | MOTION for Joinder *In Co–Defendant Garcias Objections Following The Daubert Hearing* by Alfredo Beltran–Ruiz. (Rapp, David) (Entered: 04/30/2013) |
| 04/30/2013 | 623 | | MOTION for leave to Join in Defendant Pedro Garcia's Daubert objections (doc 608) by Joshua Flores. (Maughan, Carl) (Entered: 04/30/2013) |
| 05/01/2013 | 624 | | SUPPLEMENT to 623 MOTION for leave to Join in Defendant Pedro Garcia's Daubert objections (doc 608) by Joshua Flores (Maughan, Carl) (Entered: 05/01/2013) |
| 05/01/2013 | 625 | | MOTION for Joinder *Co–Defendant's Objection Following Daubert Hearing* by Fabian Neave. (Bell, Gregory) (Entered: 05/01/2013) |
| 05/01/2013 | 626 | | MOTION for leave to Supplement Motion to Join by Alfredo Beltran–Ruiz. (Attachments: # 1 Exhibit A Supplement to Motion for Joinder)(Rapp, David) (Entered: 05/01/2013) |
| 05/02/2013 | 627 | | MOTION for Joinder *in co–Defendant's Motions* by Enrique Gobin. (Robinson, Edward) (Entered: 05/02/2013) |
| 05/03/2013 | 628 | | INFORMATION as to Russell Worthey (4) count(s) 1s, 2s. (alm) (Entered: 05/03/2013) |
| 05/06/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Russell Worthey held on 5/6/2013 and continued to May 14 at 10:00. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 05/06/2013) |
| 05/06/2013 | 629 | | NOTICE OF HEARING as to Defendant Russell Worthey  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing set for 5/14/2013 at 10:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 05/06/2013) |
| 05/08/2013 | 630 | | NOTICE OF RESET HEARING as to Defendant Russell Worthey  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY |

94

| | | | |
|---|---|---|---|
| | | | ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing RESET for 5/13/2013 at 10:45 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 05/08/2013) |
| 05/10/2013 | 633 | | RULE 404(b) NOTICE by USA as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz (Smith, Aaron) (Entered: 05/10/2013) |
| 05/13/2013 | 635 | | FIRST SUPERSEDING INFORMATION as to Russell Worthey (4) count(s) 1ss, 2ss. (aa) (Entered: 05/13/2013) |
| 05/13/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Russell Worthey held on 5/13/2013 Sentencing set for 7/29/2013 at 10:15 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 05/13/2013) |
| 05/13/2013 | 636 | | WAIVER OF INDICTMENT by Russell Worthey (aa) (Entered: 05/14/2013) |
| 05/13/2013 | 641 | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Russell Worthey (4) Count 1ss,2ss. Signed by District Judge Monti L. Belot on 5/13/2013. (aa) (Entered: 05/21/2013) |
| 05/13/2013 | 642 | | PLEA AGREEMENT as to Russell Worthey re 641 Petition and Order to Enter Plea of Guilty. (aa) (Entered: 05/21/2013) |
| 05/17/2013 | 638 | 912 | MEMORANDUM AND ORDER stating Jayson Vargas' objections are overruled in part and sustained in part. (Doc. 526). Pedro Garcia's objections are overruled. (Doc. 527). Angel Cerda's motion is denied. (Doc. 528). Gonzalo Ramirez' objections are overruled. (Doc. 532). Donte Barnes' objections are sustained in part and overruled in part. (Doc. 533). Juan Torres' motion to join is denied as moot. (Doc. 534). Adam Flores' motion is granted. (Doc. 535). Alfonso Banda–Hernandez's objections are overruled. (Doc. 537). Fabian Neave's objections are sustained. (Doc. 538). Josh Flores' motion to exclude/objection is denied. (Doc. 539). Andrew Gusman's objections are overruled. (Doc. 543). SEE ORDER FOR DETAILS. Signed by District Judge Monti L. Belot on 5/16/2013. (alm) (Entered: 05/17/2013) |
| 05/20/2013 | | | ORDER as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz. The deadline to notify the court of an intention to enter a guilty plea will be extended to May 31, 2013. No further extensions will be allowed. Signed by District Judge Monti L. Belot on 5/20/2013. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 05/20/2013) |
| 05/20/2013 | 640 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE OF HEARING as to Defendants Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Status Conference set for 6/10/2013 at 02:00 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. Defendants do not need to appear. Counsel who have notified the court of his client's intetion to enter a guilty plea do not need to appear. The hearing is to establish a trial schedule with the remaining defendants.(rs) (Entered: 05/20/2013) |
| 05/22/2013 | 643 | 934 | MEMORANDUM AND ORDER overruling 621 Motion in Limine as to Jesus Torres (20), Hernan Quezada (22). Order also grants 609 , 610 , 611 , 613 , 616 , 617 , 618 , 622 , 623 , 625 , 626 and 627 Motions to Join. See order for details. Signed by District Judge Monti L. Belot on 5/21/2013. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3) (aa) Modified on 5/22/2013 to reflect that motions 609–611, 613, 616–618, 622–623, and 625–627 are granted per the footnote located on page 2 of the order (aa). (Entered: 05/22/2013) |
| 05/22/2013 | 644 | | NOTICE OF HEARING as to Defendant Joshua Flores  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing set for 6/24/2013 at 02:00 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 05/22/2013) |
| 05/22/2013 | 645 | 968 | MINUTE ORDER terminating 506 Motion as to Pedro Garcia (2); terminating 566 Motion for Joinder as to Alfredo Beltran–Ruiz (10); terminating 512 Motion for Joinder as to Eusebio Sierra–Medrano (16). The court held Daubert hearings on April 16, 17, and 18. Signed by District Judge Monti L. Belot on 5/22/2013. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 05/22/2013) |
| 05/22/2013 | | | MINUTE ORDER terminating 500 Motion to Suppress as to Angel Cerda (8); terminating 515 Motion to Suppress as to Angel Cerda (8). See stipulation filed at doc. 570. Signed by District Judge Monti L. Belot on 5/22/2013. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 05/22/2013) |
| 05/24/2013 | 646 | | NOTICE OF HEARING as to Defendant Fabian Neave. Change of Plea Hearing set for 6/12/2013 at 03:30 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(sbw) (Entered: 05/24/2013) |
| 05/24/2013 | 647 | 998 | OBJECTION(S) to 633 Notice of Rule 404b, by Pedro Garcia (Wachtel, John) (Entered: 05/24/2013) |
| 05/24/2013 | 648 | | MOTION to Exclude *Evidence Listed in Government's Doc. 633 Notice* by Gonzalo Ramirez. (Mandelman, Joel) (Entered: 05/24/2013) |
| 05/29/2013 | 649 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE OF APPEAL (Interlocutory) by USA as to Gonzalo Ramirez re 620 Order on Motion for Reconsideration (Welch, Lanny) (Entered: 05/29/2013) |
| 05/30/2013 | | | APPEAL FEE STATUS: filing fee waived re: Notice of Appeal – Interlocutory 649 . (THIS IS A TEXT ONLY ENTRY–NO DOCUMENT IS ASSOCIATED WITH THIS TRANSACTION) (aa) (Entered: 05/30/2013) |
| 05/30/2013 | 650 | | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA as to Gonzalo Ramirez re 649 Notice of Appeal – Interlocutory. (Attachments: # 1 Preliminary Packet)(aa) (Entered: 05/30/2013) |
| 05/30/2013 | 651 | | MOTION to Exclude Evidence in Government's Notice (Document 633) re 633 Notice of Rule 404b, by Jayson Vargas. (Sevart, Mark) Modified on 5/31/2013 to correct motion event (aa). (Entered: 05/30/2013) |
| 05/30/2013 | 652 | | NOTICE OF HEARING as to Defendant Angel Cerda.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. Change of Plea Hearing set for 6/11/2013 at 01:30 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(sbw) (Entered: 05/30/2013) |
| 05/30/2013 | 653 | | NOTICE OF HEARING as to Defendant Jesus Torres.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. Change of Plea Hearing set for 6/12/2013 at 03:15 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(sbw) (Entered: 05/30/2013) |
| 05/30/2013 | 654 | | APPEAL DOCKETED in 10CCA on 05/30/2013 and assigned Appeal No. 13–3140 re 649 Notice of Appeal – Interlocutory filed by USA. Docketing statement due 06/13/2013 for United States of America. Notice of appearance due on 06/13/2013 for Gonzalo Ramirez and United States of America. Transcript order form due 06/13/2013 for Lanny D. Welch.(aa) (Entered: 05/31/2013) |
| 06/03/2013 | 655 | | NOTICE OF HEARING as to Defendant Alfonso Banda–Hernandez. Change of Plea Hearing set for 6/17/2013 at 02:45 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (sbw) (Entered: 06/03/2013) |
| 06/03/2013 | 656 | | NOTICE OF HEARING as to Defendant Juan Torres. Change of Plea Hearing set for 6/17/2013 at 10:15 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(sbw) (Entered: 06/03/2013) |
| 06/03/2013 | 657 | | NOTICE OF HEARING as to Defendant Donte Barnes. Change of Plea Hearing set for 6/24/2013 at 02:15 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(sbw) (Entered: 06/03/2013) |
| 06/03/2013 | 658 | | NOTICE OF HEARING as to Defendant Enrique Gobin. Change of Plea Hearing set for 6/17/2013 at 03:00 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot.  THIS IS AN OFFICIAL NOTICE FOR THIS |

| | | | |
|---|---|---|---|
| | | | HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(sbw) (Entered: 06/03/2013) |
| 06/03/2013 | 659 | | NOTICE OF HEARING as to Defendant Hernan Quezada. Change of Plea Hearing set for 6/24/2013 at 11:45 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(sbw) (Entered: 06/03/2013) |
| 06/07/2013 | 660 | | MOTION to Exclude *Evidence Identified In the Disclosure by the United States of Evidence to Be Presented* by Alfredo Beltran–Ruiz. (Rapp, David) (Entered: 06/07/2013) |
| 06/10/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: STATUS CONFERENCE as to Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran–Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Eusebio Sierra–Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernan Quezada, Humberto Jorge Ortiz held on 6/10/2013. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 06/10/2013) |
| 06/10/2013 | 661 | | NOTICE OF HEARING as to Defendants Pedro Garcia, Gonzalo Ramirez, Jayson Vargas, Adam Flores  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Jury Trial set for 10/1/2013 at 09:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 06/10/2013) |
| 06/10/2013 | 662 | | NOTICE OF HEARING as to Defendants Alfredo Beltran–Ruiz, Jesus Sanchez, Andrew Gusman, Eusebio Sierra–Medrano  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Jury Trial set for 12/3/2013 at 09:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 06/10/2013) |
| 06/11/2013 | 663 | | NOTICE OF RESET HEARING (TIME CHANGE ONLY) as to Defendant Jesus Torres  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing RESET for 6/12/2013 at 01:30 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 06/11/2013) |
| 06/11/2013 | 664 | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Angel Cerda (8) Count 11. Signed by District Judge Monti L. Belot on 6/11/2013. (aa) (Entered: 06/12/2013) |
| 06/11/2013 | 665 | | PLEA AGREEMENT as to Angel Cerda re 664 Petition and Order to Enter Plea of Guilty. (aa) (Entered: 06/12/2013) |
| 06/11/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Angel Cerda held on 6/11/2013 Sentencing set for 9/3/2013 at 10:00 AM in Courtroom 161 (MLB) before |

| | | | |
|---|---|---|---|
| | | | District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 06/12/2013) |
| 06/12/2013 | 666 | | NOTICE OF RESET HEARING (TIME CHANGE ONLY) as to Defendant Fabian Neave  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing set for 6/12/2013 at 02:30 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 06/12/2013) |
| 06/12/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Jesus Torres held on 6/12/2013 Sentencing set for 9/3/2013 at 10:15 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 06/12/2013) |
| 06/12/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Fabian Neave held on 6/12/2013 Sentencing set for 9/9/2013 at 10:45 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 06/12/2013) |
| 06/12/2013 | 667 | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Jesus Torres (20) Count 27. Signed by District Judge Monti L. Belot on 6/12/2013. (aa) (Entered: 06/13/2013) |
| 06/12/2013 | 668 | | PLEA AGREEMENT as to Jesus Torres re 667 Petition and Order to Enter Plea of Guilty. (aa) (Entered: 06/13/2013) |
| 06/12/2013 | 669 | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Fabian Neave (19) Count 1. Signed by District Judge Monti L. Belot on 6/12/2013. (aa) (Entered: 06/13/2013) |
| 06/12/2013 | 670 | | PLEA AGREEMENT as to Fabian Neave re 669 Petition and Order to Enter Plea of Guilty. (aa) (Entered: 06/13/2013) |
| 06/13/2013 | 671 | | TRANSCRIPT ORDER FORM: Transcript Requested Hearing on Motion to Suppress held on 3/25/2013 re 649 Notice of Appeal – Interlocutory filed by USA (Welch, Lanny) (Entered: 06/13/2013) |
| 06/13/2013 | 672 | | NOTICE OF RESET HEARING as to Defendant Alfonso Banda–Hernandez THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing RESET for 7/1/2013 at 10:45 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 06/13/2013) |
| 06/13/2013 | 673 | | NOTICE OF RESET HEARING as to Defendant Juan Torres  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing RESET for 7/1/2013 at 11:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 06/13/2013) |
| 06/13/2013 | 674 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE OF RESET HEARING (TIME CHANGE ONLY) as to Defendant Enrique Gobin  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing RESET for 6/17/2013 at 11:30 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 06/13/2013) |
| 06/17/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Enrique Gobin held on 6/17/2013 Sentencing set for 9/3/2013 at 10:45 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 06/17/2013) |
| 06/17/2013 | 675 | | TRANSCRIPT ORDER FORM by Court Reporter Cindy Schwemmer ordering transcripts of Motion to Suppress hearing held 3–25–2013 re 649 Notice of Appeal – Interlocutory filed by USA ( Appeal No. 13–3140) Transcript due by 7/17/2013. (Schwemmer, Cindy) (Entered: 06/17/2013) |
| 06/17/2013 | 676 | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Enrique Gobin (13) Count 20. Signed by District Judge Monti L. Belot on 6/14/2013. (aa) (Entered: 06/18/2013) |
| 06/17/2013 | 677 | | PLEA AGREEMENT as to Enrique Gobin re 676 Petition and Order to Enter Plea of Guilty. (aa) (Entered: 06/18/2013) |
| 06/18/2013 | 678 | | TRANSCRIPT of Hearing on Motion to Suppress held 3–25–2013 as to Gonzalo Ramirez before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Lanny Welch, Aaron Smith (US Attorney's Office).  **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**  Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 9/16/2013. (Schwemmer, Cindy) (Entered: 06/18/2013) |
| 06/18/2013 | 679 | | CERTIFICATE OF FILING OF TRANSCRIPT of Hearing on Motion to Suppress as to Gonzalo Ramirez held 3–25–2013 by Court Reporter Cindy Schwemmer (Schwemmer, Cindy) (Entered: 06/18/2013) |
| 06/20/2013 | 680 | | MOTION to Exclude by Andrew Gusman. (Hartenstein, Eric) (Entered: 06/20/2013) |
| 06/21/2013 | 681 | | NOTICE OF RESET HEARING as to Defendant Donte Barnes  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY |

| | | | |
|---|---|---|---|
| | | | ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing RESET for 7/8/2013 at 01:30 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 06/21/2013) |
| 06/24/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Hernan Quezada held on 6/24/2013 Sentencing set for 9/9/2013 at 10:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 06/24/2013) |
| 06/24/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Joshua Flores held on 6/24/2013 Sentencing set for 9/9/2013 at 10:15 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 06/24/2013) |
| 06/24/2013 | 682 | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Hernan Quezada (22): Count 38. Signed by District Judge Monti L. Belot on 6/24/2013. (alm) (Entered: 06/25/2013) |
| 06/24/2013 | 683 | | PLEA AGREEMENT as to Hernan Quezada re 682 Petition and Order to Enter Plea of Guilty. (alm) (Entered: 06/25/2013) |
| 06/24/2013 | 684 | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Joshua Flores (6): Count 9. Signed by District Judge Monti L. Belot on 6/24/2013. (alm) (Entered: 06/25/2013) |
| 06/24/2013 | 685 | | PLEA AGREEMENT as to Joshua Flores re 684 Petition and Order to Enter Plea of Guilty. (alm) (Entered: 06/25/2013) |
| 06/26/2013 | 686 | 1002 | OBJECTION(S) to 633 Notice of Rule 404b, *AND MOTION TO EXCLUDE* by Pedro Garcia (Wachtel, John) (Entered: 06/26/2013) |
| 06/26/2013 | 687 | 1008 | MOTION to Exclude by Pedro Garcia. (THIS IS A DUPLICATE OF DE 686. DOCUMENT REFILED TO ACCOUNT FOR THE MOTION PORTION.) (aa) (Entered: 06/27/2013) |
| 06/28/2013 | 688 | | MOTION to Sever Defendant *and Motion For Separate Jury Trial Pursuant to Rules 12(b)(3) and 14* by Adam Flores. (McEnulty, Sean) (Entered: 06/28/2013) |
| 06/28/2013 | 689 | | NOTICE OF RESET HEARING as to Defendant Alfonso Banda–Hernandez THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing RESET for 7/15/2013 at 10:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 06/28/2013) |
| 06/28/2013 | 690 | | MOTION to Exclude *Co–Defendant's Statements Under Bruton v. United States* by Gonzalo Ramirez. (Mandelman, Joel) (Entered: 06/28/2013) |
| 06/28/2013 | 691 | | MOTION to Produce *Additional Discovery* by Gonzalo Ramirez. (Mandelman, Joel) (Entered: 06/28/2013) |
| 06/28/2013 | 692 | | |

| | | | |
|---|---|---|---|
| | | | OBJECTION(S) to *Government's Document 633 Disclosures* by Gonzalo Ramirez (Mandelman, Joel) (Entered: 06/28/2013) |
| 07/01/2013 | 693 | | NOTICE OF CANCELLED & RESET HEARING: Sentencing set for 7/8/13 at 10:00 am as to Defendant Anthony Wright is cancelled and RESET for 9/9/2013 at 02:00 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (sbw) (Entered: 07/01/2013) |
| 07/01/2013 | 694 | | LETTER TO 10CCA stating record is complete as to Gonzalo Ramirez re 649 Notice of Appeal – Interlocutory. ( Appeal No. 13–3140) (aa) (Entered: 07/01/2013) |
| 07/01/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Juan Torres held on 7/1/2013 Sentencing set for 9/16/2013 at 10:15 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 07/01/2013) |
| 07/01/2013 | 695 | | PRESENTENCE INVESTIGATION REPORT as to Jose Neave<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 07/01/2013) |
| 07/01/2013 | 696 | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Juan Torres (9) Count 11. Signed by District Judge Monti L. Belot on 7/1/2013. (aa) (Entered: 07/02/2013) |
| 07/01/2013 | 697 | | PLEA AGREEMENT as to Juan Torres re 696 Petition and Order to Enter Plea of Guilty. (aa) (Entered: 07/02/2013) |
| 07/03/2013 | 698 | | NOTICE OF RESET HEARING as to Defendant Russell Worthey THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Sentencing RESET for 9/9/2013 at 10:30 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 07/03/2013) |
| 07/03/2013 | 699 | | NOTICE OF CANCELLED HEARING: Change of plea set on July 8 as to Defendant Donte Barnes cancelled. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 07/03/2013) |
| 07/08/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: SENTENCING HEARING held on 7/8/2013 as to defendant Jose Neave. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 07/08/2013) |
| 07/09/2013 | 700 | | JUDGMENT as to Jose Neave (21): Count 26 = 78 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived; $16,424.10 Restitution; Count 27 is Dismissed. Signed by District Judge Monti L. Belot on 7/9/2013. (aa) (Entered: 07/09/2013) |
| 07/09/2013 | 701 | | STATEMENT OF REASONS as to Jose Neave re 700 Judgment, |

| | | | |
|---|---|---|---|
| | | | **(NOTE: Access to this document is restricted to the USA and this defendant.)** |
| | | | (aa) (Entered: 07/09/2013) |
| 07/10/2013 | 702 | | DEMAND FOR NOTICE OF ALIBI DEFENSE by USA as to Pedro Garcia (Welch, Lanny) (Entered: 07/10/2013) |
| 07/10/2013 | 703 | | DEMAND FOR NOTICE OF ALIBI DEFENSE by USA as to Gonzalo Ramirez (Welch, Lanny) (Entered: 07/10/2013) |
| 07/10/2013 | 704 | | DEMAND FOR NOTICE OF ALIBI DEFENSE by USA as to Alfredo Beltran−Ruiz (Welch, Lanny) (Entered: 07/10/2013) |
| 07/10/2013 | 705 | | DEMAND FOR NOTICE OF ALIBI DEFENSE by USA as to Jesus Sanchez (Welch, Lanny) (Entered: 07/10/2013) |
| 07/10/2013 | 706 | | DEMAND FOR NOTICE OF ALIBI DEFENSE by USA as to Andrew Gusman (Welch, Lanny) (Entered: 07/10/2013) |
| 07/10/2013 | 707 | | DEMAND FOR NOTICE OF ALIBI DEFENSE by USA as to Jayson Vargas (Welch, Lanny) (Entered: 07/10/2013) |
| 07/10/2013 | 708 | | DEMAND FOR NOTICE OF ALIBI DEFENSE by USA as to Adam Flores (Welch, Lanny) (Entered: 07/10/2013) |
| 07/12/2013 | 709 | | INFORMATION as to Alfonso Banda−Hernandez (14) count(s) 1s−2s. (aa) (Entered: 07/15/2013) |
| 07/15/2013 | 710 | 1014 | AMENDED JUDGMENT as to Jose Neave (21): Count 26 = AMENDED JUDGMENT – 78 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived; $16,242.10 Restitution; ORIGINAL JUDGMENT –78 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived; $16,424.10 Restitution; Count 27 is Dismissed. Signed by District Judge Monti L. Belot on 7/15/2013. (aa) (Entered: 07/15/2013) |
| 07/15/2013 | 711 | | STATEMENT OF REASONS as to Jose Neave re 710 Amended Judgment. **(NOTE: Access to this document is restricted to the USA and this defendant.)** (aa) (Entered: 07/15/2013) |
| 07/15/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Alfonso Banda−Hernandez held on 7/15/2013 Sentencing set for 9/30/2013 at 10:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 07/15/2013) |
| 07/15/2013 | 712 | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Alfonso Banda−Hernandez (14) Count 1s−2s. Signed by District Judge Monti L. Belot on 7/15/2013. (aa) (Entered: 07/15/2013) |
| 07/15/2013 | 713 | | |

| | | | |
|---|---|---|---|
| | | | PLEA AGREEMENT as to Alfonso Banda–Hernandez re 712 Petition and Order to Enter Plea of Guilty. (aa) (Entered: 07/15/2013) |
| 07/15/2013 | 714 | | WAIVER OF INDICTMENT by Alfonso Banda–Hernandez (aa) (Entered: 07/15/2013) |
| 07/21/2013 | 715 | | NOTICE OF INTENT TO CALL WITNESS RE ALIBI by Jayson Vargas (Sevart, Mark) (Entered: 07/21/2013) |
| 07/21/2013 | 716 | | MOTION to Sever Defendant by Jayson Vargas. (Sevart, Mark) (Entered: 07/21/2013) |
| 07/22/2013 | 717 | | TRANSCRIPT ORDER FORM ordering transcript of Plea of Guilty of Anthony Wright held 4–22–13 re 649 Notice of Appeal – Interlocutory filed by USA ( Appeal No. N/A) Transcript due by 8/22/2013. (Schwemmer, Cindy) (Entered: 07/22/2013) |
| 07/22/2013 | 718 | | TRANSCRIPT ORDER FORM by Court Reporter Cindy Schwemmer ordering transcripts of Plea of Guilty of Russell Worthey held 5–6–13 re 649 Notice of Appeal – Interlocutory filed by USA ( Appeal No. N/A) Transcript due by 8/22/2013. (Schwemmer, Cindy) (Entered: 07/22/2013) |
| 07/22/2013 | 719 | | TRANSCRIPT ORDER FORM by Court Reporter Cindy Schwemmer ordering transcripts of Plea of Guilty of Russell Worthey held 5–13–13 re 649 Notice of Appeal – Interlocutory filed by USA ( Appeal No. N/A) Transcript due by 8/22/2013. (Schwemmer, Cindy) (Entered: 07/22/2013) |
| 07/22/2013 | 720 | | TRANSCRIPT of Plea of Guilty of Anthony Wright held 4–22–2013 before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** <br><br> Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 10/21/2013. (Schwemmer, Cindy) (Entered: 07/22/2013) |
| 07/22/2013 | 721 | | TRANSCRIPT of Plea of Guilty by Russell Worthey held 5–6–2013 before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy** |

|  |  |  | |
|---|---|---|---|
|  |  |  | **carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** <br><br> Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 10/21/2013. (Schwemmer, Cindy) (Entered: 07/22/2013) |
| 07/22/2013 | 722 |  | TRANSCRIPT of Continued Plea of Guilty of Russell Worthey held 5–13–2013 before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** <br><br> Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 10/21/2013. (Schwemmer, Cindy) (Entered: 07/22/2013) |
| 07/22/2013 | 723 |  | CERTIFICATE OF FILING OF TRANSCRIPTS of Plea of Guilty by Anthony Wright held 4–22–2013; Plea of Guilty of Russell Worthey held 5–6–2013 and 5–13–2013 by Court Reporter Cindy Schwemmer (Schwemmer, Cindy) (Entered: 07/22/2013) |
| 07/24/2013 | 725 |  | NOTICE of Compliance with Government's Request for Intended Alibi Defense as to Jesus Sanchez (Schoenhofer, Mark) (Entered: 07/24/2013) |
| 07/24/2013 | 726 |  | NOTICE OF INTENT TO CHANGE PLEA and NOTICE OF HEARING. The defendant Eusebio Sierra–Medrano has notified the court that he/she intends to change his/her plea. The time from this notice until the change of plea hearing (including any continuances) is excludable time for speedy trial purposes. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing set for 8/19/2013 at 02:00 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 07/24/2013) |
| 07/26/2013 | 727 |  | RESPONSE re 651 MOTION to Exclude by USA as to Jayson Vargas (Smith, Aaron) (Entered: 07/26/2013) |
| 07/26/2013 | 728 | 1020 | RESPONSE re 687 MOTION to Exclude, 647 Objection(s) by USA as to Pedro Garcia (Smith, Aaron) (Entered: 07/26/2013) |
| 07/31/2013 | 729 |  |  |

| | | | |
|---|---|---|---|
| | | | RESPONSE TO MOTION by USA as to Alfredo Beltran–Ruiz re 660 MOTION to Exclude *Evidence Identified In the Disclosure by the United States of Evidence to Be Presented* (Smith, Aaron) (Entered: 07/31/2013) |
| 08/02/2013 | 730 | | RESPONSE TO MOTION by USA as to Jayson Vargas re 716 MOTION to Sever Defendant (Smith, Aaron) (Entered: 08/02/2013) |
| 08/02/2013 | 731 | | RESPONSE TO MOTION by USA as to Adam Flores re 688 MOTION to Sever Defendant *and Motion For Separate Jury Trial Pursuant to Rules 12(b)(3) and 14* (Smith, Aaron) (Entered: 08/02/2013) |
| 08/06/2013 | 732 | | MINUTE ORDER terminating 386 Motion to Sever Defendant as to Joshua Flores (6); terminating 536 Motion for Discovery as to Angel Cerda (8); terminating 545 Motion to Exclude as to Angel Cerda (8); terminating 418 Motion to Sever Defendant as to Juan Torres (9); terminating 422 Motion in Limine as to Juan Torres (9); terminating 563 Motion for Joinder as to Fabian Neave (19); terminating 414 Motion to Sever Defendant as to Hernan Quezada (22). This is a housekeeping order only. All of these defendants have entered guilty pleas and the court is therefore terminating their pending motions. Signed by District Judge Monti L. Belot on 8/6/2013. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 08/06/2013) |
| 08/08/2013 | 734 | | JUDGMENT RETURNED EXECUTED as to Jason Najera on 7/31/2013. (smg) (Entered: 08/12/2013) |
| 08/12/2013 | 733 | | RESPONSE TO MOTION by USA as to Gonzalo Ramirez re 648 MOTION to Exclude *Evidence Listed in Government's Doc. 633 Notice*, 691 MOTION to Produce *Additional Discovery*, 690 MOTION to Exclude *Co–Defendant's Statements Under Bruton v. United States and* 692 *Supplemental Objections to Government's Document 633 Disclosure* (Smith, Aaron) (Entered: 08/12/2013) |
| 08/12/2013 | 735 | | MANDATE from 10CCA: dismissing appeal as to Gonzalo Ramirez. Procedural termination without judicial action (Appeal No. 13–3140) (Attachments: # 1 Mandate issued letter)(aa) (Entered: 08/12/2013) |
| 08/15/2013 | 736 | | NOTICE OF INTENT TO CHANGE PLEA and NOTICE OF HEARING. The defendant Andrew Gusman has notified the court that he intends to change his plea. The time from this notice until the change of plea hearing (including any continuances) is excludable time for speedy trial purposes. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing set for 8/26/2013 at 11:15 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (sbw) (Entered: 08/15/2013) |
| 08/19/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Eusebio Sierra–Medrano held on 8/19/2013 Sentencing set for 11/4/2013 at 01:30 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 08/19/2013) |
| 08/19/2013 | 737 | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Eusebio Sierra–Medrano (16) Count 1. Signed by District Judge |

| | | | |
|---|---|---|---|
| | | | Monti L. Belot on 8/19/2013. (aa) (Entered: 08/19/2013) |
| 08/19/2013 | <u>738</u> | | PLEA AGREEMENT as to Eusebio Sierra–Medrano re <u>737</u> Petition and Order to Enter Plea of Guilty. (aa) (Entered: 08/19/2013) |
| 08/26/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Andrew Gusman held on 8/26/2013 Sentencing set for 11/18/2013 at 10:45 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 08/26/2013) |
| 08/26/2013 | <u>739</u> | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Andrew Gusman (15) Count 21. Signed by District Judge Monti L. Belot on 8/26/2013. (aa) (Entered: 08/27/2013) |
| 08/26/2013 | <u>740</u> | | PLEA AGREEMENT as to Andrew Gusman re <u>739</u> Petition and Order to Enter Plea of Guilty. (aa) (Entered: 08/27/2013) |
| 08/27/2013 | <u>741</u> | | PRESENTENCE INVESTIGATION REPORT as to Angel Cerda<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 08/27/2013) |
| 08/27/2013 | <u>742</u> | | PRESENTENCE INVESTIGATION REPORT as to Enrique Gobin<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 08/27/2013) |
| 08/27/2013 | <u>743</u> | | PRESENTENCE INVESTIGATION REPORT as to Jesus Torres<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 08/27/2013) |
| 08/29/2013 | 744 | | NOTICE OF HEARING ON MOTION as to Jayson Vargas, Adam Flores. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING <u>716</u> MOTION to Sever Defendant , 688 MOTION to Sever Defendant *and Motion For Separate Jury Trial Pursuant to Rules 12(b)(3) and 14* : (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Motion Hearing set for 9/3/2013 at 10:30 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 08/29/2013) |
| 08/29/2013 | 745 | | NOTICE OF RESET HEARING as to Defendant Russell Worthey THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Sentencing RESET for 11/4/2013 at 10:15 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 08/29/2013) |
| 08/29/2013 | 746 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE OF RESET HEARING as to Defendant Anthony Wright  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Sentencing RESET for 11/4/2013 at 10:30 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 08/29/2013) |
| 08/30/2013 | 747 | | MOTION for Downward Departure by Jesus Torres. (O'Hara, Charles) (Entered: 08/30/2013) |
| 08/30/2013 | 748 | | NOTICE OF HEARING as to Defendants Jayson Vargas, Adam Flores  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING 716 MOTION to Sever Defendant, 688 MOTION to Sever Defendant and Motion for Separate Jury Trial Pursuant to Rules 12(b)(3) and 14: (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Motion Hearing set for 9/5/2013 at 01:00 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. Motion hearing previously set for 09/03/2013 at 10:30 a.m. is cancelled.(ml) (Entered: 08/30/2013) |
| 09/03/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: SENTENCING HEARING held on 9/3/2013 as to defendant Angel Cerda. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 09/03/2013) |
| 09/03/2013 | 749 | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: granting in part and denying in part 747 Motion for Downward Departure as to Jesus Torres (20). The court denied a departure but treated the motion as one for a downward variance and granted a variance.; SENTENCING HEARING held on 9/3/2013 as to defendant Jesus Torres. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 09/03/2013) |
| 09/03/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: SENTENCING HEARING held on 9/3/2013 as to defendant Enrique Gobin. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 09/03/2013) |
| 09/03/2013 | 750 | | PRESENTENCE INVESTIGATION REPORT as to Hernan Quezada  (NOTE: Access to this document is restricted to the USA and this defendant.)  (USPO) (Entered: 09/03/2013) |
| 09/03/2013 | 751 | | PRESENTENCE INVESTIGATION REPORT as to Joshua Flores  (NOTE: Access to this document is restricted to the USA and this defendant.)  (USPO) (Entered: 09/03/2013) |
| 09/03/2013 | 752 | | PRESENTENCE INVESTIGATION REPORT as to Fabian Neave  (NOTE: Access to this document is restricted to the USA and this defendant.) |

| | | | |
|---|---|---|---|
| | | | (USPO) (Entered: 09/03/2013) |
| 09/05/2013 | 753 | 1026 | JUDGMENT as to Jesus Torres (20): Count 27 = 36 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived; $16,242.10 in Restitution. Signed by District Judge Monti L. Belot on 9/5/2013. (aa) (Entered: 09/05/2013) |
| 09/05/2013 | 754 | | STATEMENT OF REASONS as to Jesus Torres re 753 Judgment. **(NOTE: Access to this document is restricted to the USA and this defendant.)** (aa) (Entered: 09/05/2013) |
| 09/05/2013 | 755 | 1032 | JUDGMENT as to Enrique Gobin (13): Counts 19, 21 & 22 are Dismissed; Count 20 = 120 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived. Signed by District Judge Monti L. Belot on 9/5/2013. (aa) (Entered: 09/05/2013) |
| 09/05/2013 | 756 | | STATEMENT OF REASONS as to Enrique Gobin re 755 Judgment. **(NOTE: Access to this document is restricted to the USA and this defendant.)** (aa) (Entered: 09/05/2013) |
| 09/05/2013 | 757 | 1038 | JUDGMENT as to Angel Cerda (8): Counts 10, 12 & 13 are Dismissed; Count 11 = 78 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived; $14,926.52 Restitution. Signed by District Judge Monti L. Belot on 9/5/2013. (aa) (Entered: 09/05/2013) |
| 09/05/2013 | 758 | | STATEMENT OF REASONS as to Angel Cerda re 757 Judgment. **(NOTE: Access to this document is restricted to the USA and this defendant.)** (aa) (Entered: 09/05/2013) |
| 09/05/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: MOTION HEARING as to Jayson Vargas, Adam Flores held on 9/5/2013. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 09/05/2013) |
| 09/05/2013 | 759 | | NOTICE OF RESET HEARING as to Defendants Pedro Garcia, Gonzalo Ramirez, Jayson Vargas  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Jury Trial RESET for 10/2/2013 at 09:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 09/05/2013) |
| 09/05/2013 | 760 | | ORDER denying 716 Motion to Sever Defendant as to Jayson Vargas (17); granting 688 Motion to Sever Defendant as to Adam Flores (18). Signed by District Judge Monti L. Belot on 9/5/2013. (aa) (Entered: 09/05/2013) |
| 09/05/2013 | 761 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE OF RESET HEARING as to Defendant Adam Flores  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Jury Trial RESET for 11/19/2013 at 09:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 09/05/2013) |
| 09/06/2013 | 762 | | NOTICE OF CANCELLED HEARING: Sentencing set on September 9 as to Defendant Fabian Neave cancelled. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.), NOTICE OF HEARING as to Defendant Fabian Neave  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)( Sentencing set for 12/2/2013 at 10:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.) (rs) (Entered: 09/06/2013) |
| 09/06/2013 | 763 | | NOTICE OF RESET HEARING as to Defendant Juan Torres  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Sentencing RESET for 11/4/2013 at 10:45 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 09/06/2013) |
| 09/09/2013 | 764 | | NOTICE OF HEARING as to Defendants Pedro Garcia, Gonzalo Ramirez, Jayson Vargas  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Motion Hearing set for 9/12/2013 at 01:30 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 09/09/2013) |
| 09/09/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: SENTENCING HEARING held on 9/9/2013 as to defendant Hernan Quezada. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 09/09/2013) |
| 09/09/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: SENTENCING HEARING held on 9/9/2013 as to defendant Joshua Flores. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 09/09/2013) |
| 09/10/2013 | 765 | 1044 | REPLY TO RESPONSE to Motion by Gonzalo Ramirez re 648 MOTION to Exclude *Evidence Listed in Government's Doc. 633 Notice*, 690 MOTION to Exclude *Co−Defendant's Statements Under Bruton v. United States*, 542 MOTION to Suppress *and Exclude Evidence from Defendant's Gang Sheets, Including His Statements and Tattoos and 692 Objections to Government's Document 633 Disclosures* (Mandelman, Joel) (Entered: 09/10/2013) |
| 09/11/2013 | 766 | 1051 | JUDGMENT as to Hernan Quezada (22): Count 38 = 33 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived. Signed by District Judge Monti L. Belot on 9/11/2013. (aa) (Entered: 09/11/2013) |
| 09/11/2013 | 767 | | STATEMENT OF REASONS as to Hernan Quezada re 766 Judgment.<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)** |

| | | | |
|---|---|---|---|
| | | | (aa) (Entered: 09/11/2013) |
| 09/11/2013 | 768 | 1057 | JUDGMENT as to Joshua Flores (6): Counts 7 & 8 are Dismissed; Count 9 = 84 Months Imprisonment; 3 Years Supervised Release; $100 Assessment. Signed by District Judge Monti L. Belot on 9/11/2013. (aa) (Entered: 09/11/2013) |
| 09/11/2013 | 769 | | STATEMENT OF REASONS as to Joshua Flores re 768 Judgment.<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(aa) (Entered: 09/11/2013) |
| 09/11/2013 | 770 | | WAIVER of Right to Appeal by Angel Cerda (McCausland, Paul) (Entered: 09/11/2013) |
| 09/11/2013 | 771 | 1063 | RESPONSE IN OPPOSITION by USA as to Gonzalo Ramirez re 648 MOTION to Exclude *Evidence Listed in Government's Doc. 633 Notice*, 690 MOTION to Exclude *Co−Defendant's Statements Under Bruton v. United States*, 542 MOTION to Suppress *and Exclude Evidence from Defendant's Gang Sheets, Including His Statements and Tattoos ; SUPPLEMENTAL RESPONSE to 765 Reply* (Welch, Lanny) (Entered: 09/11/2013) |
| 09/12/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: MOTION HEARING as to Pedro Garcia, Gonzalo Ramirez, Jayson Vargas held on 9/12/2013. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 09/12/2013) |
| 09/16/2013 | 772 | 1067 | MEMORANDUM AND ORDER denying 687 Motion to Exclude as to Pedro Garcia (2); denying 648 Motion to Exclude as to Gonzalo Ramirez (3); denying 690 Motion to Exclude as to Gonzalo Ramirez (3); denying 651 Motion to Exclude as to Jayson Vargas (17). Signed by District Judge Monti L. Belot on 9/16/2013. (alm) (Entered: 09/16/2013) |
| 09/18/2013 | 774 | | NOTICE OF HEARING as to Defendant Donte Barnes  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing set for 10/7/2013 at 10:45 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 09/18/2013) |
| 09/23/2013 | 775 | 1072 | PROPOSED JURY INSTRUCTIONS by Pedro Garcia (Wachtel, John) (Entered: 09/23/2013) |
| 09/23/2013 | 776 | | PRESENTENCE INVESTIGATION REPORT as to Alfonso Banda−Hernandez<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 09/23/2013) |
| 09/26/2013 | 777 | 1094 | PROPOSED JURY INSTRUCTIONS by USA as to Pedro Garcia, Gonzalo Ramirez, Jayson Vargas (Smith, Aaron) (Entered: 09/26/2013) |

| 09/27/2013 | 778 | | MOTION for Writ of Habeas Corpus ad testificandum by USA as to Pedro Garcia, Gonzalo Ramirez, Jayson Vargas. (Smith, Aaron) (Entered: 09/27/2013) |
|---|---|---|---|
| 09/27/2013 | 779 | | NOTICE OF INTENT TO CHANGE PLEA and NOTICE OF HEARING. The defendant Jesus Flores has notified the court on 9/27/2013 that he intends to change his plea. The time from this notice until the change of plea hearing (including any continuances) is excludable time for speedy trial purposes. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing set for 10/7/2013 at 02:15 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (sbw) (Entered: 09/27/2013) |
| 09/27/2013 | 780 | | PROPOSED JURY INSTRUCTIONS by Jayson Vargas (Sevart, Mark) (Entered: 09/27/2013) |
| 09/27/2013 | 781 | | ORDER FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM granting 778 Motion for Writ of Habeas Corpus ad testificandum as to Pedro Garcia (2), Gonzalo Ramirez (3), Jayson Vargas (17). Signed by District Judge Monti L. Belot on 9/27/2013. (aa) (Entered: 09/27/2013) |
| 09/27/2013 | 782 | | WRIT OF HABEAS CORPUS AD TESTIFICANDUM ISSUED as to Alonzo Diego for 10/10/2013 in case as to Pedro Garcia, Gonzalo Ramirez and Jayson Vargas. (aa) (Entered: 09/27/2013) |
| 09/27/2013 | 783 | 1146 | PROPOSED JURY INSTRUCTIONS by Gonzalo Ramirez (Mandelman, Joel) (Entered: 09/27/2013) |
| 09/27/2013 | 784 | | MOTION to Compel *Disclosure of Confidential Informant* by Gonzalo Ramirez. (Mandelman, Joel) (Entered: 09/27/2013) |
| 09/30/2013 | 786 | | RULE 404(b) NOTICE by USA as to Gonzalo Ramirez (Smith, Aaron) (Entered: 09/30/2013) |
| 09/30/2013 | 788 | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: SENTENCING HEARING held on 9/30/2013 as to defendant Alfonso Banda–Hernandez. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 09/30/2013) |
| 09/30/2013 | 789 | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: granting 441 Motion to Sever Defendant as to Jayson Vargas (17) for the reasons stated in court; MOTION HEARING as to Jayson Vargas held on 9/30/2013. The trial date will be determined at a status conference to be held in November, after the conclusion of the trial of the codefendants. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 09/30/2013) |
| 09/30/2013 | 790 | | WAIVER of Right to Appeal by Alfonso Banda–Hernandez (Hepperly, Michael) (Entered: 09/30/2013) |
| 10/01/2013 | 791 | | SEALED MOTION for Leave to File Under Seal *Motion* by USA as to Jason Najera, Pedro Garcia, Jayson Vargas. (Attachments: # 1 Proposed Sealed Document)(Smith, Aaron) (Entered: 10/01/2013) |
| 10/01/2013 | 792 | | |

| | | | |
|---|---|---|---|
| | | | RESPONSE TO MOTION by USA as to Gonzalo Ramirez re 784 MOTION to Compel *Disclosure of Confidential Informant* (Smith, Aaron) (Entered: 10/01/2013) |
| 10/01/2013 | 793 | | MINUTE ORDER granting 791 Sealed Motion for Leave to File Under Seal. Counsel is directed to file forthwith the requested document(s) with an event from the SEALED DOCUMENTS category as to Pedro Garcia (2), Jayson Vargas (17) Signed by District Judge Monti L. Belot on 10/1/2013. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 10/01/2013) |
| 10/01/2013 | 794 | | SEALED MOTION by USA as to Pedro Garcia, Gonzalo Ramirez, Jayson Vargas. (Smith, Aaron) (Entered: 10/01/2013) |
| 10/01/2013 | 795 | | OBJECTION(S) to 786 Notice of Rule 404b by Gonzalo Ramirez (Mandelman, Joel) (Entered: 10/01/2013) |
| 10/01/2013 | 796 | 1154 | JUDGMENT as to Alfonso Banda–Hernandez (14): Counts 19, 20, 21 & 22 are Dismissed; Couns 1s–2s = 72 Months Imprisonment (36 months each count, to run consecutively); 1 Year Supervised Release; $200 Assessment; Fine is Waived. Signed by District Judge Monti L. Belot on 10/1/2013. (aa) (Entered: 10/01/2013) |
| 10/01/2013 | 797 | | STATEMENT OF REASONS as to Alfonso Banda–Hernandez re 796 Judgment.<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(aa) (Entered: 10/01/2013) |
| 10/01/2013 | 798 | | MOTION for order to Delay Surrender by Jesus Torres. (Attachments: # 1 Exhibit)(O'Hara, Charles) (Entered: 10/01/2013) |
| 10/03/2013 | 800 | | ORDER granting 798 Motion for Order as to Jesus Torres (20). The Defendant will now voluntarily surrender on March 17, 2014, by 2:00 p.m. to the designated facility. Signed by District Judge Monti L. Belot on 10/3/2013. (alm) (Entered: 10/03/2013) |
| 10/07/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Donte Barnes held on 10/7/2013 Sentencing set for 12/23/2013 at 10:15 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 10/07/2013) |
| 10/07/2013 | 804 | | NOTICE OF RESET HEARING as to Defendants Alfredo Beltran–Ruiz, Jesus Sanchez, Jayson Vargas  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Jury Trial RESET for 1/7/2014 at 09:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 10/07/2013) |
| 10/07/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Jesus Flores held on 10/7/2013 |

| | | | |
|---|---|---|---|
| | | | Sentencing set for 12/23/2013 at 10:45 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 10/07/2013) |
| 10/07/2013 | 805 | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Donte Barnes (11) Count 16. Signed by District Judge Monti L. Belot on 10/7/2013. (aa) (Entered: 10/07/2013) |
| 10/07/2013 | 806 | | PLEA AGREEMENT as to Donte Barnes re 805 Petition and Order to Enter Plea of Guilty. (aa) (Entered: 10/07/2013) |
| 10/07/2013 | 807 | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Jesus Flores (7) Count 7. Signed by District Judge Monti L. Belot on 10/7/2013. (aa) (Entered: 10/07/2013) |
| 10/07/2013 | 808 | | PLEA AGREEMENT as to Jesus Flores re 807 Petition and Order to Enter Plea of Guilty. (aa) (Entered: 10/07/2013) |
| 10/09/2013 | 809 | | MOTION to Exclude *Statement of Gang Affiliation* by Gonzalo Ramirez. (Mandelman, Joel) (Entered: 10/09/2013) |
| 10/10/2013 | 812 | | MOTION to Expedite *Transcript of Co−Defendant Juan Torres' Motion to Dismiss Indictment or For Hearing To Determine Reasons for Government Delay In Filing Indictment Hearing Held on February 4, 2013* by Gonzalo Ramirez. (Henry, Timothy) (Entered: 10/10/2013) |
| 10/11/2013 | 815 | 1160 | PROPOSED JURY INSTRUCTIONS *(ADDITIONAL)* by Pedro Garcia (Wachtel, John) (Entered: 10/11/2013) |
| 10/14/2013 | 816 | 1162 | MOTION in Limine *To Exclude Testimony of Cooperating Witness* by Gonzalo Ramirez. (Mandelman, Joel) (Entered: 10/14/2013) |
| 10/15/2013 | 817 | 1168 | MOTION for Joinder *IN CO−DEFENDANT GONZALO RAMIREZ'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF COOPERATING WITNESS (GARCIA'S 23RD MOTION)* by Pedro Garcia. (Wachtel, John) (Entered: 10/15/2013) |
| 10/15/2013 | 818 | 1170 | PROPOSED JURY INSTRUCTIONS by Gonzalo Ramirez (Mandelman, Joel) (Entered: 10/15/2013) |
| 10/17/2013 | 819 | 1193 | JURY INSTRUCTIONS as to Pedro Garcia & Gonzalo Ramirez. (aa) Modified on 10/18/2013 to correct applicable parties (aa). (Entered: 10/17/2013) |
| 10/17/2013 | 820 | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: JURY TRIAL as to Pedro Garcia, Gonzalo Ramirez held on 10/17/2013. Verdict of guilty on all counts as to Pedro Garcia and Gonzalo Ramirez. The Government's exhibits were returned to the Government at the end of the case. Defendant Ramirez' exibits were returned to Joel Mandelman at the end of the case. (Court reporter Cindy Schwemmer.)(Interpreters: LuAnn Rivera & Terry Doolittle) (Attachments: # 1 Ramirez Exhibit List) (aa) (Entered: 10/18/2013) |
| 10/17/2013 | 821 | 1286 | JURY QUESTIONS FILED as to Pedro Garcia, Gonzalo Ramirez. (aa) (Additional attachment(s) added on 10/18/2013: # 1 Unredacted Main |

| | | | Document) (aa). (Entered: 10/18/2013) |
|---|---|---|---|
| 10/17/2013 | 822 | 1288 | JURY QUESTIONS FILED as to Pedro Garcia, Gonzalo Ramirez. (aa) (Additional attachment(s) added on 10/18/2013: # 1 Unredacted Main Document) (aa). (Entered: 10/18/2013) |
| 10/17/2013 | 823 | 1290 | JURY QUESTIONS FILED as to Pedro Garcia, Gonzalo Ramirez. (aa) (Additional attachment(s) added on 10/18/2013: # 1 Unredacted Main Document) (aa). (Entered: 10/18/2013) |
| 10/17/2013 | 824 | | WITNESS LIST. (aa) (Entered: 10/18/2013) |
| 10/17/2013 | 825 | | JURY VERDICT as to Gonzalo Ramirez (3) Guilty on Counts 1–13. (aa) (Additional attachment(s) added on 10/18/2013: # 1 Unredacted Main Document) (aa). (Entered: 10/18/2013) |
| 10/17/2013 | 826 | 1294 | JURY VERDICT as to Pedro Garcia (2) Guilty on Counts 1–9. (aa) (Additional attachment(s) added on 10/18/2013: # 1 Unredacted Main Document) (aa). (Entered: 10/18/2013) |
| 10/18/2013 | 827 | | NOTICE OF HEARING as to Defendant Pedro Garcia THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Sentencing set for 1/6/2014 at 10:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 10/18/2013) |
| 10/18/2013 | 828 | | DISREGARD THIS ENTRY – FILED BY MISTAKE –– NOTICE OF HEARING as to Defendant Gonzalo Ramirez THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Jury Trial set for 1/6/2014 at 10:15 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) Modified on 10/21/2013 (aa). (Entered: 10/18/2013) |
| 10/18/2013 | 829 | | NOTICE OF HEARING as to Defendant Gonzalo Ramirez THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Sentencing set for 1/6/2014 at 10:15 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. Please disregard previous notice setting a trial on the date of sentencing.(rs) (Entered: 10/18/2013) |
| 10/21/2013 | 830 | | MOTION to Continue Sentencing Hearing by Eusebio Sierra–Medrano. (Bennett, Mark) (Entered: 10/21/2013) |
| 10/21/2013 | 831 | | MINUTE ORDER as to Pedro Garcia, Gonzalo Ramirez. The Court orders that lunch be provided by the Clerk to the jury members during their deliberation. Signed by deputy clerk on 10/21/2013. (aa) (Entered: 10/21/2013) |
| 10/22/2013 | 832 | | ORDER CONTINUING SENTENCING granting 830 Motion to Continue as to Eusebio Sierra–Medrano (16). Sentencing continued to 12/9/2013 at 02:00 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. Signed by District Judge Monti L. Belot on 10/22/2013. (aa) (Entered: 10/22/2013) |
| 10/23/2013 | | | MINUTE ORDER terminating 791 Sealed Motion for Leave to File Under Seal. Counsel is directed to file forthwith the requested document(s) with an event from the SEALED DOCUMENTS category as to Jason Najera (1) |

| | | | |
|---|---|---|---|
| | | | Signed by District Judge Monti L. Belot on 10/23/2013. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 10/23/2013) |
| 10/24/2013 | 833 | | NOTICE OF RESET HEARING as to Defendant Russell Worthey THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Sentencing RESET for 1/27/2014 at 10:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 10/24/2013) |
| 10/24/2013 | 834 | 1298 | GOVERNMENT'S EXHIBIT LIST by USA as to Pedro Garcia, Gonzalo Ramirez. (aa) (Entered: 10/24/2013) |
| 10/24/2013 | 835 | | NOTICE OF RESET HEARING as to Defendant Juan Torres THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Sentencing RESET for 1/27/2014 at 10:15 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 10/24/2013) |
| 10/25/2013 | 836 | | NOTICE OF HEARING as to Defendant Jesus Sanchez THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing set for 10/30/2013 at 10:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 10/25/2013) |
| 10/28/2013 | 837 | | NOTICE OF RESET HEARING as to Defendant Anthony Wright THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Sentencing RESET for 1/27/2014 at 10:30 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (sbw) (Entered: 10/28/2013) |
| 10/29/2013 | 838 | | NOTICE OF INTENT TO CHANGE PLEA and NOTICE OF HEARING. The defendant Alfredo Beltran–Ruiz notified the court on 10/29/2013 that he intends to change his plea. The time from this notice until the change of plea hearing (including any continuances) is excludable time for speedy trial purposes. Change of Plea Hearing set for 12/2/2013 at 10:45 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(sbw) (Entered: 10/29/2013) |
| 10/30/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Jesus Sanchez held on 10/30/2013 Sentencing set for 1/13/2014 at 10:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 10/30/2013) |
| 10/30/2013 | 839 | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Jesus Sanchez (12) Count 1. Signed by District Judge Monti L. Belot on 10/30/2013. (aa) (Entered: 10/31/2013) |
| 10/30/2013 | 840 | | PLEA AGREEMENT as to Jesus Sanchez re 839 Petition and Order to Enter Plea of Guilty. (aa) (Entered: 10/31/2013) |
| 11/06/2013 | 841 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE OF HEARING as to Defendant Adam Flores THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Status Conference set for 11/13/2013 at 02:00 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. Defendant does not need to appear.(rs) Modified on 11/7/2013 (alm). (Entered: 11/06/2013) |
| 11/06/2013 | 842 | | PRESENTENCE INVESTIGATION REPORT as to Andrew Gusman<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 11/06/2013) |
| 11/13/2013 | 843 | | TRANSCRIPT of Plea of Guilty held 10–30–2013 as to Jesus Sanchez before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Mark Schoenhofer.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 2/11/2014. (Schwemmer, Cindy) (Entered: 11/13/2013) |
| 11/13/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: STATUS CONFERENCE as to Adam Flores held on 11/13/2013. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 11/13/2013) |
| 11/13/2013 | 844 | | NOTICE OF HEARING as to Defendant Adam Flores THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Jury Trial set for 1/7/2014 at 09:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 11/13/2013) |
| 11/17/2013 | 845 | | MOTION for order Granting Jail Credit for Time Served in Ford County by Jesus Sanchez. (Attachments: # 1 Exhibit)(Schoenhofer, Mark) (Entered: 11/17/2013) |
| 11/18/2013 | 846 | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: SENTENCING HEARING held on 11/18/2013 as to defendant Andrew Gusman. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ml) (Entered: 11/18/2013) |

| 11/19/2013 | 847 | 1312 | JUDGMENT as to Andrew Gusman (15): Counts 19, 20 & 22 are Dismissed; Count 21 = 21 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived. Signed by District Judge Monti L. Belot on 11/19/2013. (aa) (Entered: 11/19/2013) |
|---|---|---|---|
| 11/19/2013 | 848 | | STATEMENT OF REASONS as to Andrew Gusman re 847 Judgment.<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(aa) (Entered: 11/19/2013) |
| 11/19/2013 | 849 | | WAIVER of Right to Appeal by Andrew Gusman (Hartenstein, Eric) (Entered: 11/19/2013) |
| 11/25/2013 | 850 | | SEALED MOTION for Leave to File Under Seal *Motion* by USA as to Fabian Neave. (Attachments: # 1 Proposed Sealed Document)(Welch, Lanny) (Entered: 11/25/2013) |
| 11/25/2013 | | | MINUTE ORDER granting 850 Sealed Motion for Leave to File Under Seal. Counsel is directed to file forthwith the requested document(s) with an event from the SEALED DOCUMENTS category as to Fabian Neave (19) Signed by District Judge Monti L. Belot on 11/25/2013. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 11/25/2013) |
| 11/25/2013 | 851 | | SEALED MOTION by USA as to Fabian Neave. (Welch, Lanny) (Entered: 11/25/2013) |
| 11/27/2013 | 852 | | PRESENTENCE INVESTIGATION REPORT as to Eusebio Sierra–Medrano<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 11/27/2013) |
| 11/27/2013 | 853 | | PETITION AND ORDER for Modification of Term of Supervision as to Defendant Andrew Gusman. Signed by District Judge Monti L. Belot on 11/27/2013. (aa) (Entered: 11/27/2013) |
| 12/02/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: granting 851 Sealed Motion as to Fabian Neave (19); SENTENCING HEARING held on 12/2/2013 as to defendant Fabian Neave. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 12/02/2013) |
| 12/02/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Alfredo Beltran–Ruiz held on 12/2/2013 Sentencing set for 2/24/2014 at 10:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 12/02/2013) |
| 12/02/2013 | 854 | | |

| | | | |
|---|---|---|---|
| | | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Alfredo Beltran–Ruiz (10) Count 16. Signed by District Judge Monti L. Belot on 12/2/2013. (cs) (Entered: 12/03/2013) |
| 12/02/2013 | 855 | | PLEA AGREEMENT as to Alfredo Beltran–Ruiz re 854 Petition and Order to Enter Plea of Guilty (cs) (Entered: 12/03/2013) |
| 12/03/2013 | 856 | 1318 | JUDGMENT as to Fabian Neave (19), Count(s) 1 – Deft sentenced to 60 months imprisonment; 3 years supervised release; Assessment: $100; Restitution: $16,242.10; Count(s) 27, 28, 30, 31, 32, Dismissed. Signed by District Judge Monti L. Belot on 12/3/2013. (cs) (Entered: 12/03/2013) |
| 12/03/2013 | 857 | | STATEMENT OF REASONS as to Fabian Neave re 856 Judgment, <br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(cs) (Entered: 12/03/2013) |
| 12/09/2013 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: SENTENCING HEARING held on 12/9/2013 as to defendant Eusebio Sierra–Medrano. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 12/09/2013) |
| 12/10/2013 | 858 | | SEALED MOTION for Leave to File Under Seal *Motion* by USA as to Jesus Flores. (Attachments: # 1 Proposed Sealed Document)(Welch, Lanny) (Entered: 12/10/2013) |
| 12/10/2013 | 859 | | MINUTE ORDER granting 858 Sealed Motion for Leave to File Under Seal. Counsel is directed to file forthwith the requested document(s) with an event from the SEALED DOCUMENTS category as to Jesus Flores (7) Signed by District Judge Monti L. Belot on 12/10/2013. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 12/10/2013) |
| 12/10/2013 | 860 | | SEALED MOTION by USA as to Jesus Flores. (Welch, Lanny) (Entered: 12/10/2013) |
| 12/11/2013 | 861 | 1324 | JUDGMENT as to Eusebio Sierra–Medrano (16), Count(s) 1, 120 months imprisonment, to be served consecutively to State of Kansas, Ford County District Court case 10–358 sentence; 3 years supervised release; Assessment: $100.00; Count(s) 14, 36–37, Dismissed. Signed by District Judge Monti L. Belot on 12/9/2013. (cs) (Entered: 12/11/2013) |
| 12/11/2013 | 862 | | STATEMENT OF REASONS as to Eusebio Sierra–Medrano re 861 Judgment, <br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(cs) (Entered: 12/11/2013) |
| 12/12/2013 | 863 | | PRESENTENCE INVESTIGATION REPORT as to Donte Barnes |

| | | | |
|---|---|---|---|
| | | | **(NOTE: Access to this document is restricted to the USA and this defendant.)** (USPO) (Entered: 12/12/2013) |
| 12/13/2013 | 864 | | JUDGMENT RETURNED EXECUTED as to Joshua Flores on 12/3/2013. (smg) (Entered: 12/16/2013) |
| 12/16/2013 | 865 | | PRESENTENCE INVESTIGATION REPORT as to Jesus Flores **(NOTE: Access to this document is restricted to the USA and this defendant.)** (USPO) (Entered: 12/16/2013) |
| 12/16/2013 | 866 | | NOTICE OF RESET HEARING as to Defendant Donte Barnes  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Sentencing RESET for 1/6/2014 at 02:45 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 12/16/2013) |
| 12/16/2013 | 867 | | NOTICE OF RESET HEARING as to Defendant Jesus Flores  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Sentencing RESET for 1/6/2014 at 03:00 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 12/16/2013) |
| 12/17/2013 | 868 | | NOTICE OF INTENT TO CHANGE PLEA and NOTICE OF HEARING. The defendant Jayson Vargas notified the court on 12/17/13 that he intends to change his plea. The time from this notice until the change of plea hearing (including any continuances) is excludable time for speedy trial purposes. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Change of Plea Hearing set for 1/6/2014 at 11:30 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (sbw) (Entered: 12/17/2013) |
| 12/24/2013 | 869 | | SENTENCING MEMORANDUM by Gonzalo Ramirez (Attachments: # 1 A – Chart of Sentences)(Mandelman, Joel) (Entered: 12/24/2013) |
| 12/27/2013 | 870 | 1330 | SENTENCING MEMORANDUM by Pedro Garcia (Attachments: # 1 Exhibit A)(Wachtel, John) (Entered: 12/27/2013) |
| 12/30/2013 | 871 | | PRESENTENCE INVESTIGATION REPORT as to Pedro Garcia **(NOTE: Access to this document is restricted to the USA and this defendant.)** (USPO) (Entered: 12/30/2013) |
| 12/30/2013 | 872 | | PRESENTENCE INVESTIGATION REPORT as to Gonzalo Ramirez **(NOTE: Access to this document is restricted to the USA and this defendant.)** (USPO) (Entered: 12/30/2013) |

| 12/31/2013 | 873 | | MOTION to dismiss defendant Adam Flores *without prejudice* by USA as to Adam Flores. (Welch, Lanny) (Entered: 12/31/2013) |
|---|---|---|---|
| 01/02/2014 | 874 | | SUPPLEMENT to 869 Sentencing Memorandum by Gonzalo Ramirez (Mandelman, Joel) (Entered: 01/02/2014) |
| 01/03/2014 | 875 | | SENTENCING MEMORANDUM by Donte Barnes (Griffith, Jeff) (Entered: 01/03/2014) |
| 01/03/2014 | 876 | | ORDER granting 873 Motion to Dismiss Defendant as to Adam Flores (18). Signed by District Judge Monti L. Belot on 1/3/2014. (cs) (Entered: 01/03/2014) |
| 01/06/2014 | 877 | | SUPERSEDING INFORMATION as to Jayson Vargas (17) count(s) 1s. (cs) (Entered: 01/06/2014) |
| 01/06/2014 | 878 | | SEALED MOTION for Leave to File Under Seal *Motion* by USA as to Russell Worthey. (Attachments: # 1 Proposed Sealed Document)(Welch, Lanny) (Entered: 01/06/2014) |
| 01/06/2014 | 879 | | SEALED MOTION for Leave to File Under Seal *Motion* by USA as to Anthony Wright. (Attachments: # 1 Proposed Sealed Document)(Welch, Lanny) (Entered: 01/06/2014) |
| 01/06/2014 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: SENTENCING HEARING held on 1/6/2014 as to defendant Pedro Garcia. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 01/06/2014) |
| 01/06/2014 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: SENTENCING HEARING held on 1/6/2014 as to defendant Gonzalo Ramirez. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 01/06/2014) |
| 01/06/2014 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: CHANGE OF PLEA HEARING as to Jayson Vargas held on 1/6/2014 Sentencing set for 3/24/2014 at 10:15 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot.. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 01/06/2014) |
| 01/06/2014 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: SENTENCING HEARING held on 1/6/2014 as to defendant Donte Barnes. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 01/06/2014) |
| 01/06/2014 | 880 | | MINUTE ORDER granting 878 Sealed Motion for Leave to File Under Seal. Counsel is directed to file forthwith the requested document(s) with an event from the SEALED DOCUMENTS category as to Russell Worthey (4); granting 879 Sealed Motion for Leave to File Under Seal. Counsel is directed to file forthwith the requested document(s) with an event from the SEALED DOCUMENTS category as to Anthony Wright (5) Signed by District Judge Monti L. Belot on 1/6/2014. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 01/06/2014) |

| 01/06/2014 | 881 | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: granting 860 Sealed Motion as to Jesus Flores (7); SENTENCING HEARING held on 1/6/2014 as to defendant Jesus Flores. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 01/06/2014) |
| --- | --- | --- | --- |
| 01/06/2014 | 882 | | SEALED MOTION by USA as to Russell Worthey. (Welch, Lanny) (Entered: 01/06/2014) |
| 01/06/2014 | 883 | | SEALED MOTION by USA as to Anthony Wright. (Welch, Lanny) (Entered: 01/06/2014) |
| 01/06/2014 | 884 | | PRESENTENCE INVESTIGATION REPORT as to Jesus Sanchez<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 01/06/2014) |
| 01/06/2014 | 885 | | WAIVER OF INDICTMENT by Jayson Vargas. (alm) (Entered: 01/07/2014) |
| 01/06/2014 | 886 | | PETITION TO ENTER PLEA OF GUILTY AND ORDER ENTERING PLEA as to Jayson Vargas (17): Count 1s. Signed by District Judge Monti L. Belot on 1/6/2014. (alm) (Entered: 01/07/2014) |
| 01/06/2014 | 887 | | PLEA AGREEMENT as to Jayson Vargas re 886 Petition and Order to Enter Plea of Guilty. (alm) (Entered: 01/07/2014) |
| 01/07/2014 | 888 | | JUDGMENT as to Donte Barnes (11): Counts 15, 17 and 18 are dismissed; Count 16 = 32 months imprisonment; 3 years supervised release; $100.00 Assessment. Signed by District Judge Monti L. Belot on 1/7/2014. (alm) (Entered: 01/07/2014) |
| 01/07/2014 | 889 | | STATEMENT OF REASONS as to Donte Barnes re 888 Judgment.<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(alm) (Entered: 01/07/2014) |
| 01/07/2014 | 890 | | JUDGMENT as to Jesus Flores (7): Counts 7 = Time served; 3 years supervised release; $200.00 Assessment; Count 8 = Time served; 1 year supervised release, to run concurrently with Count 7; $200.00 Assessment; Count 9 is dismissed. Signed by District Judge Monti L. Belot on 1/7/2014. (alm) (Entered: 01/07/2014) |
| 01/07/2014 | 891 | | STATEMENT OF REASONS as to Jesus Flores re 890 Judgment.<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(alm) (Entered: 01/07/2014) |
| 01/07/2014 | 892 | 1336 | JUDGMENT as to Pedro Garcia (2): Count 1 = 240 months imprisonment, said term to run concurrently with Counts 2, 3, 4 and 8; 3 years supervised release, said term to run concurrently with Counts 2–7, 8 and 9; $900.00 |

| | | | |
|---|---|---|---|
| | | | Assessment ($100/Count); Count 2 = 120 months imprisonment, said term to run concurrently with Counts 1, 3, 5, 7 and 8; 3 years supervised release, said term to run concurrently with Counts 1, 3–7, 8 and 9; $900.00 Assessment ($100/Count); Count 3 = Life imprisonment; 3 years supervised release, said term to run concurrently with Counts 1–2, 4–7, 8 and 9; $900.00 Assessment ($100/Count); Count 4 = 120 months imprisonment, said term to run concurrently with Counts 1, 3, 5, 7 and 8; 3 years supervised release, said term to run concurrently with Counts 1–3, 5–7, 8 and 9; $900.00 Assessment ($100/Count); Count 5 = 240 months imprisonment, said term to run concurrently with Counts 2, 3, 4 and 8; 3 years supervised release, said term to run concurrently with Counts 1–4, 6–8 and 9; $900.00 Assessment ($100/Count); Count 6 = 25 years imprisonment, said term to run consecutively to all other Counts; 3 years supervised release, said term to run concurrently with Counts 1–5, 7, 8 and 9; $900.00 Assessment ($100/Count); Count 7 = 240 months imprisonment, said term to run concurrently with Counts 2, 3, 4 and 8; 3 years supervised release, said term to run concurrently with Counts 1–6, 8 and 9; $900.00 Assessment ($100/Count); Count 8 = 36 months imprisonment, said term to run concurrently with Counts 1, 2, 3, 4, 5, 7 and 8; 1 year supervised release, said term to run concurrently with all other Counts; $900.00 Assessment ($100/Count); Count 9 = 7 years imprisonment, said term to run consecutively to all other Counts; 3 years supervised release, said term to run concurrently with Counts 1–7 and 8; $900.00 Assessment ($100/Count). Signed by District Judge Monti L. Belot on 1/7/2014. (alm) (Entered: 01/07/2014) |
| 01/07/2014 | 893 | | STATEMENT OF REASONS as to Pedro Garcia re 892 Judgment. **(NOTE: Access to this document is restricted to the USA and this defendant.)** (alm) (Entered: 01/07/2014) |
| 01/08/2014 | 894 | | AMENDED PRESENTENCE INVESTIGATION REPORT as to Gonzalo Ramirez **(NOTE: Access to this document is restricted to the USA and this defendant.)** (USPO) (Entered: 01/08/2014) |
| 01/08/2014 | 895 | | NOTICE OF RESET HEARING as to Defendant Anthony Wright THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Sentencing RESET for 2/10/2014 at 11:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 01/08/2014) |
| 01/08/2014 | 897 | | STATEMENT OF REASONS as to Gonzalo Ramirez re 896 Judgment,,, **(NOTE: Access to this document is restricted to the USA and this defendant.)** (cs) (Entered: 01/09/2014) |

| 01/09/2014 | 896 | | JUDGMENT as to Gonzalo Ramirez (3), Count(s) 1, Imprisonment: Life plus 57 years to be served consecutively (count 3 – life; counts 2,4,10 and 11 – 120 months, each count to run concurrently with counts 1,3,5,7,8 and 12; counts 1,5,7 and 12: 240 months, each count, to run concurrently with counts 2,3,4,8,10 and 11; count 8; 36 months to run concurrently with counts 1–5,7,8,10,11 & 12; Count 9 – 7 years to run consecutively to all other counts; Count 6 25 years to run consecutively to all other counts and count 13 – 25 years to run consecutively to all other counts); Supervised release: 3 years total (3 years on each of counts 1–7, 9–13 to run concurrently and 1 year on count 8, to run concurrently with all other counts); Assessment: $1,300.00. Signed by District Judge Monti L. Belot on 1/8/2014. (cs) (Entered: 01/09/2014) |
| 01/09/2014 | 898 | 1343 | NOTICE OF APPEAL TO 10CCA as to defendant PEDRO GARCIA re 892 Judgment,,,,,,,, (Wachtel, John) (Entered: 01/09/2014) |
| 01/09/2014 | 899 | | PRESENTENCE INVESTIGATION REPORT as to Juan Torres<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 01/09/2014) |
| 01/09/2014 | 900 | | PRESENTENCE INVESTIGATION REPORT as to Russell Worthey<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 01/09/2014) |
| 01/09/2014 | | | APPEAL FEE STATUS: filing fee WAIVED re: 898 Notice of Appeal – Final Judgment on behalf of Defendant Pedro Garcia. (THIS IS A TEXT ONLY ENTRY–NO DOCUMENT IS ASSOCIATED WITH THIS TRANSACTION) (alm) (Entered: 01/09/2014) |
| 01/09/2014 | 901 | | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA as to Pedro Garcia re 898 Notice of Appeal – Final Judgment. (Attachments: # 1 Preliminary Packet)(alm) (Entered: 01/09/2014) |
| 01/09/2014 | 902 | 1345 | APPEAL DOCKETED in 10CCA on 1/9/14 and assigned Appeal No. 14–3006 re 898 Notice of Appeal – Final Judgment filed by Pedro Garcia.(alm) (Entered: 01/10/2014) |
| 01/12/2014 | 903 | | MOTION for Downward Departure by Jesus Sanchez. (Attachments: # 1 Memorandum of Law in Support of Motion)(Schoenhofer, Mark) (Entered: 01/12/2014) |
| 01/13/2014 | 904 | | NOTICE OF RESET HEARING as to Defendant Juan Torres  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Sentencing RESET for 3/24/2014 at 10:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 01/13/2014) |
| 01/13/2014 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: SENTENCING HEARING held on 1/13/2014 as to defendant Jesus Sanchez. |

| | | | |
|---|---|---|---|
| | | | (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 02/03/2014) |
| 01/14/2014 | 905 | | PETITION AND ORDER for Modification of Term of Supervision as to Defendant Jesus Flores. Signed by District Judge Monti L. Belot on 1/13/2014. (aa) (Entered: 01/14/2014) |
| 01/15/2014 | 906 | | JUDGMENT as to Jesus Sanchez (12): Count 1 = 120 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived; Counts 19–22, 28 & 35 are Dismissed. Signed by District Judge Monti L. Belot on 1/14/2014. (aa) (Entered: 01/15/2014) |
| 01/15/2014 | 907 | | STATEMENT OF REASONS as to Jesus Sanchez re 906 Judgment.<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(aa) (Entered: 01/15/2014) |
| 01/15/2014 | 908 | | SEALED MOTION for Leave to File Under Seal by Russell Worthey. (Attachments: # 1 Proposed Sealed Document)(Pratt, James) (Entered: 01/15/2014) |
| 01/15/2014 | | | MINUTE ORDER granting 908 Sealed Motion for Leave to File Under Seal. Counsel is directed to file forthwith the requested document(s) with an event from the SEALED DOCUMENTS category as to Russell Worthey (4) Signed by District Judge Monti L. Belot on 1/15/2014. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 01/15/2014) |
| 01/15/2014 | 909 | | SEALED SENTENCING MEMORANDUM by Russell Worthey as to Russell Worthey (Pratt, James) (Entered: 01/15/2014) |
| 01/21/2014 | 910 | | WAIVER of Right to Appeal by Jesus Sanchez (Schoenhofer, Mark) (Entered: 01/21/2014) |
| 01/21/2014 | 911 | | MOTION for Extension of Time to File *Notice of Appeal* by Gonzalo Ramirez. (Mandelman, Joel) (Entered: 01/21/2014) |
| 01/22/2014 | 912 | | MOTION for New Trial by Gonzalo Ramirez. (Attachments: # 1 A – The Wichita Eagle Article dated January 14, 2014)(Mandelman, Joel) Modified on 1/28/2014 to seal per DE 931 (aa). (Entered: 01/22/2014) |
| 01/22/2014 | 913 | | ORDER FOR EXTENSION OF TIME granting 911 Motion for Extension of Time to File Notice of Appeal as to Gonzalo Ramirez (3). The deadline for filing the notice of appeal is continued for a period of 30 days, until February 24, 2014. Signed by District Judge Monti L. Belot on 1/22/2014. (aa) (Entered: 01/22/2014) |
| 01/23/2014 | 914 | 1348 | MOTION for New Trial *PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 33 (Defendant's first post−trial motion)* by Pedro Garcia. (Attachments: # 1 Exhibit A and B)(Wachtel, John) Modified on 1/28/2014 to seal per DE 931 (aa). (Entered: 01/23/2014) |
| 01/23/2014 | 915 | | SEALED MOTION for Leave to File Under Seal *Motion* by USA as to Juan Torres. (Attachments: # 1 Proposed Sealed Document)(Welch, Lanny) |

| | | | |
|---|---|---|---|
| | | | (Entered: 01/23/2014) |
| 01/23/2014 | 916 | | MINUTE ORDER granting 915 Sealed Motion for Leave to File Under Seal. Counsel is directed to file forthwith the requested document(s) with an event from the SEALED DOCUMENTS category as to Juan Torres (9) Signed by District Judge Monti L. Belot on 1/23/2014. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (sbw) (Entered: 01/23/2014) |
| 01/23/2014 | 917 | | SEALED MOTION by USA as to Juan Torres. (Welch, Lanny) (Entered: 01/23/2014) |
| 01/23/2014 | 918 | | TRANSCRIPT ORDER FORM: Transcript Requested 10/16/13 Instruction Conf.; Sentencing hearing 1/6/14; Motion to Suppress hearing 3/4/13; motion hearing 9/12/13; entire transcript of trial proceedings of 10/1/13 through 10/17/13 including any court and counsel conferences occurring outside the presence of Mr. Garcia. re 898 Notice of Appeal – Final Judgment filed by Pedro Garcia (Wachtel, John) (Entered: 01/23/2014) |
| 01/23/2014 | 919 | | DESIGNATION OF RECORD ON APPEAL by Pedro Garcia re 898 Notice of Appeal – Final Judgment ( Appeal No. 14–3006) (Attachments: # 1 Exhibit Part 1, # 2 Exhibit Part 2)(Wachtel, John) (Entered: 01/23/2014) |
| 01/23/2014 | 929 | | JUDGMENT RETURNED EXECUTED as to Alfonso Banda–Hernandez on 12/19/2013. (smg) (Entered: 01/27/2014) |
| 01/24/2014 | 920 | | SEALED MOTION for Leave to File Under Seal by Russell Worthey. (Attachments: # 1 Proposed Sealed Document)(Pratt, James) (Entered: 01/24/2014) |
| 01/24/2014 | | | MINUTE ORDER granting 920 Sealed Motion for Leave to File Under Seal. Counsel is directed to file forthwith the requested document(s) with an event from the SEALED DOCUMENTS category as to Russell Worthey (4) Signed by District Judge Monti L. Belot on 1/24/2014. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 01/24/2014) |
| 01/25/2014 | 921 | | SEALED RESPONSE by Russell Worthey as to Pedro Garcia, Gonzalo Ramirez, Russell Worthey re 912 MOTION for New Trial , 914 MOTION for New Trial *PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 33 (Defendant's first post–trial motion)* (Pratt, James) (Entered: 01/25/2014) |
| 01/25/2014 | 922 | | SEALED MOTION for Leave to File Under Seal by Russell Worthey. (Attachments: # 1 Proposed Sealed Document)(Pratt, James) (Entered: 01/25/2014) |
| 01/27/2014 | 923 | | SEALED MOTION for Leave to File Under Seal *Response* by USA as to Pedro Garcia, Gonzalo Ramirez. (Attachments: # 1 Proposed Sealed Document)(Welch, Lanny) (Entered: 01/27/2014) |
| 01/27/2014 | 924 | | MINUTE ORDER granting 922 Sealed Motion for Leave to File Under Seal. Counsel is directed to file forthwith the requested document(s) with an event from the SEALED DOCUMENTS category as to Russell Worthey (4) Signed by District Judge Monti L. Belot on 1/27/2014. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (sbw) (Entered: 01/27/2014) |

| | | | |
|---|---|---|---|
| 01/27/2014 | 925 | | MINUTE ORDER granting 923 Sealed Motion for Leave to File Under Seal. Counsel is directed to file forthwith the requested document(s) with an event from the SEALED DOCUMENTS category as to Pedro Garcia (2), Gonzalo Ramirez (3) Signed by District Judge Monti L. Belot on 1/27/2014. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (sbw) (Entered: 01/27/2014) |
| 01/27/2014 | 926 | | SEALED RESPONSE by USA as to Pedro Garcia, Gonzalo Ramirez re 912 MOTION for New Trial , 914 MOTION for New Trial *PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 33 (Defendant's first post−trial motion)* (Welch, Lanny) (Entered: 01/27/2014) |
| 01/27/2014 | 927 | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: sustaining 882 Sealed Motion as to Russell Worthey (4); SENTENCING HEARING held on 1/27/2014 as to defendant Russell Worthey. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 01/27/2014) |
| 01/27/2014 | 928 | | SEALED MOTION *for Future Filings to be Filed Under Seal* by Russell Worthey as to Pedro Garcia, Gonzalo Ramirez. (Pratt, James) (Entered: 01/27/2014) |
| 01/28/2014 | 930 | | WAIVER of Appeal by Russell Worthey (Pratt, James) (Entered: 01/28/2014) |
| 01/28/2014 | 931 | | MINUTE ORDER granting 928 Sealed Motion as to Pedro Garcia (2), Gonzalo Ramirez (3). Signed by deputy clerk on 1/28/2014. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (aa) (Entered: 01/28/2014) |
| 01/28/2014 | 932 | | JUDGMENT as to Russell Worthey (4): Counts 1s & 2ss = 120 Months Imprisonment (Count 1: time served, Count 2: 120 months, to run consecutively to count 1); 3 Years Supervised Release (Counts 1 & 2: 3 years each count, to run concurrent); $200 Assessment; Fine is Waived; Counts 1ss−2s & 2−6 are Dismissed. Signed by District Judge Monti L. Belot on 1/27/2014. (aa) (Entered: 01/28/2014) |
| 01/28/2014 | 933 | | STATEMENT OF REASONS as to Russell Worthey re 932 Judgment.<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(aa) (Entered: 01/28/2014) |
| 01/29/2014 | 934 | | SEALED REPLY TO RESPONSE to Motion by Pedro Garcia re 914 MOTION for New Trial *PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 33 (Defendant's first post−trial motion)* (Attachments: # 1 Exhibit A) (Wachtel, John) (Entered: 01/29/2014) |
| 01/30/2014 | 935 | | SEALED REPLY TO RESPONSE to Motion by Pedro Garcia re 914 MOTION for New Trial *PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 33 (Defendant's first post−trial motion) "Supplement to Garcia's Reply to United States' Response to Defendants' Motions for New Trial"* (Attachments: # 1 Exhibit B)(Wachtel, John) (Entered: 01/30/2014) |
| 01/31/2014 | 936 | | |

| | | | |
|---|---|---|---|
| | | | SEALED DOCUMENT by USA as to Pedro Garcia (Welch, Lanny) (Entered: 01/31/2014) |
| 02/03/2014 | 937 | | PRESENTENCE INVESTIGATION REPORT as to Anthony Wright<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 02/03/2014) |
| 02/03/2014 | 938 | | Supplemental SEALED MOTION *For A New Trial and Reply to Government's Response to First New Trial Motion* by Gonzalo Ramirez. (Attachments: # 1 A – State Prelim. Hrg Transcript, # 2 B – Federal Jury Trial Transcript, # 3 C – Federal Pretrial Hearing Transcript of 9–12–13, # 4 D – Government's Motion, # 5 E – Sentencing Memorandum)(Mandelman, Joel) (Entered: 02/03/2014) |
| 02/03/2014 | 939 | | SEALED MOTION *For Production* by Gonzalo Ramirez. (Mandelman, Joel) (Entered: 02/03/2014) |
| 02/03/2014 | 941 | | SEALED REPLY TO RESPONSE to Motion by Gonzalo Ramirez re 912 MOTION for New Trial . (THIS ENTRY WAS MADE TO ACCOUNT FOR THE REPLY PORTION OF A TWO–PART DOCUMENT; THE PDF FILE IS IDENTICAL TO DOCKET ENTRY 938 . SEE THAT ENTRY FOR EXHIBITS.) (Sealed User Wichita am) (Entered: 02/04/2014) |
| 02/04/2014 | 940 | | SEALED MOTION *For Joinder in Co–Defendant Gonzalo Ramirez's Motion for Production (Garcia's Second Post Trial Motion)* by Pedro Garcia. (Wachtel, John) (Entered: 02/04/2014) |
| 02/05/2014 | 942 | | NOTICE OF RESET HEARING as to Defendant Anthony Wright  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Sentencing RESET for 2/11/2014 at 02:00 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 02/05/2014) |
| 02/06/2014 | 943 | | TRANSCRIPT ORDER FORM by Court Reporter Cindy Schwemmer ordering transcripts of Motion to Suppress Hearing held 3–4–13; Motion Hearing held 9–12–13; Jury Trial (excluding Voir Dire and Opening Statements) held 10–2–2013 through 10–17–2013 and Sentencing held 1–6–2014 re 898 Notice of Appeal – Final Judgment filed by Pedro Garcia ( Appeal No. 14–3006) Transcript due by 3/6/2014. (Schwemmer, Cindy) (Entered: 02/06/2014) |
| 02/07/2014 | 944 | | NOTICE OF HEARING as to Defendants Pedro Garcia, Gonzalo Ramirez, Russell Worthey. Status Conference set for 2/11/2014 at 02:45 PM in Courtroom 161 (MLB) before District Judge Monti L. Belot.  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(sbw) (Entered: 02/07/2014) |
| 02/07/2014 | 945 | | SEALED MOTION for Leave to File Under Seal *Document Under Seal* by Anthony Wright. (Attachments: # 1 Proposed Sealed Document)(Fowler, Jay) (Entered: 02/07/2014) |

| | | | |
|---|---|---|---|
| 02/07/2014 | 946 | | MINUTE ORDER granting 945 Sealed Motion for Leave to File Under Seal. Counsel is directed to file forthwith the requested document(s) with an event from the SEALED DOCUMENTS category as to Anthony Wright (5). Signed by District Judge Monti L. Belot on 2/7/2014. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (sbw) (Entered: 02/07/2014) |
| 02/07/2014 | 947 | | SEALED SENTENCING MEMORANDUM by Anthony Wright as to Anthony Wright (Fowler, Jay) (Entered: 02/07/2014) |
| 02/11/2014 | 948 | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: granting 883 Sealed Motion as to Anthony Wright (5); SENTENCING HEARING held on 2/11/2014 as to defendant Anthony Wright. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 02/11/2014) |
| 02/12/2014 | 949 | | WAIVER of Right to Appeal by Anthony Wright (Fowler, Jay) (Entered: 02/12/2014) |
| 02/12/2014 | 950 | | JUDGMENT as to Anthony Wright (5): Counts 1 & 6 = 108 Months Imprisonment (Count 1: time served; Count 6: 108 months, term to run consecutively to count 1); 3 Years Supervised Release (counts 1 & 6: 3 years, each count, terms to run concurrently); $200 Assessment; Fine is Waived; Counts 2–5 are Dismissed. Signed by District Judge Monti L. Belot on 2/11/2014. (aa) (Entered: 02/12/2014) |
| 02/12/2014 | 951 | | STATEMENT OF REASONS as to Anthony Wright re 950 Judgment.<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(aa) (Entered: 02/12/2014) |
| 02/18/2014 | 952 | | PRESENTENCE INVESTIGATION REPORT as to Alfredo Beltran–Ruiz<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 02/18/2014) |
| 02/18/2014 | 953 | | SENTENCING MEMORANDUM by Alfredo Beltran–Ruiz (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Rapp, David) (Entered: 02/18/2014) |
| 02/19/2014 | 954 | | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Gonzalo Ramirez. (Smith, Aaron) (Entered: 02/19/2014) |
| 02/19/2014 | 955 | | ORDER granting 954 Motion for Writ of Habeas Corpus ad prosequendum as to Gonzalo Ramirez (3). Signed by District Judge Monti L. Belot on 02/19/2014. (aa) (Entered: 02/19/2014) |
| 02/19/2014 | 956 | | WRIT OF HABEAS CORPUS AD PROSEQUENDUM ISSUED as to Gonzalo Ramirez to appear forthwith. (aa) (Entered: 02/19/2014) |
| 02/19/2014 | 957 | | NOTICE OF HEARING as to Defendants Pedro Garcia, Gonzalo Ramirez THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT |

129

| | | | |
|---|---|---|---|
| | | | ENTRY ONLY. There is no.pdf document associated with this entry.) Status Conference set for 2/24/2014 at 10:30 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. Defendants do not need to appear.(rs) (Entered: 02/19/2014) |
| 02/19/2014 | 958 | | SEALED RESPONSE by USA as to Pedro Garcia, Gonzalo Ramirez re 940 SEALED MOTION *For Joinder in Co−Defendant Gonzalo Ramirez's Motion for Production (Garcia's Second Post Trial Motion)*, 939 SEALED MOTION *For Production* (Smith, Aaron) (Entered: 02/19/2014) |
| 02/21/2014 | 959 | | NOTICE OF APPEAL TO 10CCA as to defendant Gonzalo Ramirez re 896 Judgment,,, (Mandelman, Joel) (Entered: 02/21/2014) |
| 02/24/2014 | 960 | | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA as to Gonzalo Ramirez re 959 Notice of Appeal − Final Judgment. (Attachments: # 1 Preliminary Packet)(aa) (Entered: 02/24/2014) |
| 02/24/2014 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: SENTENCING HEARING held on 2/24/2014 as to defendant Alfredo Beltran−Ruiz. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 02/24/2014) |
| 02/24/2014 | | | MINUTE ENTRY for proceedings held before District Judge Monti L. Belot: STATUS CONFERENCE as to Pedro Garcia, Gonzalo Ramirez held on 2/24/2014. (Court Reporter Cindy Schwemmer.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 02/24/2014) |
| 02/24/2014 | 961 | | NOTICE OF HEARING ON MOTION as to Pedro Garcia, Gonzalo Ramirez. THIS IS AN OFFICIAL NOTICE FOR THIS HEARING 914 MOTION for New Trial *PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 33 (Defendant's first post−trial motion)*, 912 MOTION for New Trial , 938 Supplemental SEALED MOTION *For A New Trial and Reply to Government's Response to First New Trial Motion* : (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Motion Hearing set for 3/31/2014 at 10:00 AM in Courtroom 161 (MLB) before District Judge Monti L. Belot. (rs) (Entered: 02/24/2014) |
| 02/24/2014 | 962 | | WAIVER of Right to Appeal by Alfredo Beltran−Ruiz (Rapp, David) (Entered: 02/24/2014) |
| 02/24/2014 | 963 | | APPEAL DOCKETED in 10CCA on 02/24/2014 and assigned Appeal No. 14−3039 re 959 Notice of Appeal − Final Judgment filed by Gonzalo Ramirez. Docketing statement, notice of appearance, designation of record and transcript order form due on 03/10/2014 for Gonzalo Ramirez. Notice of appearance due 3/10/14 for United States of America. (aa) (Entered: 02/25/2014) |
| 02/25/2014 | 964 | | SEALED PROTECTIVE ORDER. Signed by District Judge Monti L. Belot on 02/25/2014. (aa) (Entered: 02/25/2014) |
| 02/26/2014 | 965 | | JUDGMENT as to Alfredo Beltran−Ruiz (10): Counts 15, 17 & 18 are Dismissed; Count 16 = 67 Months Imprisonment; 3 Years Supervised Release; $100 Assessment; Fine is Waived. Signed by District Judge Monti L. |

| | | | |
|---|---|---|---|
| | | | Belot on 02/26/2014. (aa) (Entered: 02/26/2014) |
| 02/26/2014 | 966 | | STATEMENT OF REASONS as to Alfredo Beltran−Ruiz re 965 Judgment.<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(aa) (Entered: 02/26/2014) |
| 02/28/2014 | 971 | | SEALED REPLY TO RESPONSE to Motion by Pedro Garcia re 914 MOTION for New Trial *PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 33 (Defendant's first post−trial motion) {"Defendant Pedro Garcia's Second Supplement to Reply to United States' Response to Defendants' Motions for New Trial"}* (Attachments: # 1 Exhibit A – E)(Wachtel, John) (Entered: 02/28/2014) |
| 03/10/2014 | 972 | | (DISREGARD THIS ENTRY – SEE DE 973 FOR CORRECTED TRANSCRIPT ORDER FORM) –– TRANSCRIPT ORDER FORM: Transcript Requested List of Transcripts on Attachment A re 959 Notice of Appeal – Final Judgment filed by Gonzalo Ramirez (Attachments: # 1 Attachment A)(Mandelman, Joel) Modified on 3/11/2014 (aa). (Entered: 03/10/2014) |
| 03/10/2014 | 973 | | TRANSCRIPT ORDER FORM: Transcript Requested –See List of Transcripts Attached as Attachment A re 959 Notice of Appeal – Final Judgment filed by Gonzalo Ramirez (Attachments: # 1 Attachment A – List of Transcripts)(Mandelman, Joel) (Entered: 03/10/2014) |
| 03/10/2014 | 974 | | DESIGNATION OF RECORD ON APPEAL by Gonzalo Ramirez re 959 Notice of Appeal – Final Judgment ( Appeal No. 14–3039) (Attachments: # 1 Attachment A and Criminal Docket Sheet)(Mandelman, Joel) (Entered: 03/10/2014) |
| 03/11/2014 | 975 | | MOTION for order to Delay Surrender by Jesus Torres. (Attachments: # 1 Exhibit)(O'Hara, Charles) (Entered: 03/11/2014) |
| 03/11/2014 | 976 | | TRANSCRIPT ORDER FORM: Transcript Requested Closing Arguments on 10/16/2013 re 898 Notice of Appeal – Final Judgment filed by Pedro Garcia. (aa) (Entered: 03/11/2014) |
| 03/13/2014 | 977 | | PRESENTENCE INVESTIGATION REPORT as to Jayson Vargas<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 03/13/2014) |
| 03/13/2014 | 978 | | AMENDED PRESENTENCE INVESTIGATION REPORT as to Juan Torres<br><br>**(NOTE: Access to this document is restricted to the USA and this defendant.)**<br><br>(USPO) (Entered: 03/13/2014) |
| 03/13/2014 | 979 | | |

| | | |
|---|---|---|
| | | TRANSCRIPT ORDER FORM by Court Reporter Jo Wilkinson ordering transcripts of Closing Argument, 10–16–13 jury trial re 898 Notice of Appeal – Final Judgment filed by Pedro Garcia ( Appeal No. 14–3006) Transcript due by 4/11/2014. (jw) (Entered: 03/13/2014) |
| 03/14/2014 | 980 | ORDER as to Jesus Torres. The Defendant will now voluntary surrender on June 16, 2014 by 2:00 p.m. to the designated facility. Defendant's surrender date will not be continued for any reason beyond June 16, 2014. Signed by District Judge Monti L. Belot on 03/14/2014. (aa) (Entered: 03/14/2014) |
| 03/18/2014 | 981 | CERTIFICATE OF FILING OF TRANSCRIPT by Court Reporter Jo Wilkinson (jw) (Entered: 03/18/2014) |
| 03/18/2014 | 982 | TRANSCRIPT of Trial, Excerpt of Closing Arguments, held October 16, 2013, as to Pedro Garcia before Judge Monti L. Belot, Court Reporter Jo Wilkinson, 316–315–4334, jo_wilkinson@ksd.uscourts.gov. Transcript purchased by: Mr. John V. Wachtel. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** <br><br> Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/16/2014. (jw) (Entered: 03/18/2014) |
| 03/19/2014 | 983 | TRANSCRIPT of Motion Hearing held 3–4–2013 as to Pedro Garcia before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel; Joel Mandelman/Tim Henry. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** <br><br> Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/17/2014. (Schwemmer, Cindy) (Entered: 03/19/2014) |
| 03/19/2014 | 984 | TRANSCRIPT of Motion Hearing held 9–12–2013 as to Pedro Garcia before |

| | | | |
|---|---|---|---|
| | | | Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel; Joel Mandelman/Tim Henry.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/17/2014. (Schwemmer, Cindy) (Entered: 03/19/2014) |
| 03/19/2014 | 985 | | TRANSCRIPT of MASTER INDEX for Jury Trial held 10–2–2013 through 10–17–2013 as to Pedro Garcia before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel; Joel Mandelman/Tim Henry.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/17/2014. (Schwemmer, Cindy) (Entered: 03/19/2014) |
| 03/19/2014 | 986 | | TRANSCRIPT of Jury Trial held 10–2–2013 & 10–3–2013 Pgs 1–243 as to Pedro Garcia before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel; Joel Mandelman/Tim Henry.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** |

| | | | |
|---|---|---|---|
| | | | Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/17/2014. (Schwemmer, Cindy) (Entered: 03/19/2014) |
| 03/19/2014 | 987 | | TRANSCRIPT of Jury Trial held 10–4–2013 AM Pg 244–353 as to Pedro Garcia before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel;Joel Mandelman/Tim Henry.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/17/2014. (Schwemmer, Cindy) (Entered: 03/19/2014) |
| 03/19/2014 | 988 | | TRANSCRIPT of Jury Trial held 10–4–2013 PM pg 354–459 as to Pedro Garcia before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel;Joel Mandelman/Tim Henry.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/17/2014. (Schwemmer, Cindy) (Entered: 03/19/2014) |
| 03/19/2014 | 989 | | TRANSCRIPT of Jury Trial held 10–8–2013 AM pg 460–584 as to Pedro Garcia before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel;Joel Mandelman/Tim Henry.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of** |

| | | | |
|---|---|---|---|
| | | | **Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/17/2014. (Schwemmer, Cindy) (Entered: 03/19/2014) |
| 03/19/2014 | 990 | | TRANSCRIPT of Jury Trial held 10–8–2013 PM pg 585–764 as to Pedro Garcia before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel; Joel Mandelman/Tim Henry.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/17/2014. (Schwemmer, Cindy) (Entered: 03/19/2014) |
| 03/19/2014 | 991 | | TRANSCRIPT of Jury Trial held 10–9–2013 AM pg 765–875 as to Pedro Garcia before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel; Joel Mandelman/Tim Henry.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/17/2014. (Schwemmer, Cindy) (Entered: 03/19/2014) |

| | | | |
|---|---|---|---|
| 03/19/2014 | 992 | | TRANSCRIPT of Jury Trial held 10–9–2013 PM pg 876–1023 as to Pedro Garcia before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel;Joel Mandelman/Tim Henry.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/17/2014. (Schwemmer, Cindy) (Entered: 03/19/2014) |
| 03/19/2014 | 993 | | TRANSCRIPT of Jury Trial held 10–10–2013 AM pg 1024–1165 as to Pedro Garcia before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel; Joel Mandelman/Tim Henry.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/17/2014. (Schwemmer, Cindy) (Entered: 03/19/2014) |
| 03/19/2014 | 994 | | TRANSCRIPT of Jury Trial held 10–10–2013 PM pg 1166–1283 as to Pedro Garcia before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel; Joel Mandelman/Tim Henry.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth** |

| | | | |
|---|---|---|---|
| | | | below. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/17/2014. (Schwemmer, Cindy) (Entered: 03/19/2014) |
| 03/19/2014 | 995 | | TRANSCRIPT of Jury Trial held 10–11–2013 AM pg 1284–1394 as to Pedro Garcia before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel; Joel Mandelman/Tim Henry. **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/17/2014. (Schwemmer, Cindy) (Entered: 03/19/2014) |
| 03/19/2014 | 996 | | TRANSCRIPT of Jury Trial held 10–11–2013 PM pg 1395–1519 as to Pedro Garcia before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel; Joel Mandelman/Tim Henry. **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/17/2014. (Schwemmer, Cindy) (Entered: 03/19/2014) |
| 03/19/2014 | 997 | | TRANSCRIPT of Jury Trial held 10–15–2013 AM pg 1520–1653 as to Pedro Garcia before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel; Joel Mandelman/Tim Henry. |

| | | | |
|---|---|---|---|
| | | | **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/17/2014. (Schwemmer, Cindy) (Entered: 03/19/2014) |
| 03/19/2014 | 998 | | TRANSCRIPT of Jury Trial held 10–15–2013 PM pg 1654–1724 as to Pedro Garcia before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel; Joel Mandelman/Tim Henry.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/17/2014. (Schwemmer, Cindy) (Entered: 03/19/2014) |
| 03/19/2014 | 999 | | TRANSCRIPT of Jury Trial held 10–16–2013 & 10–17–2013 pg 1725–1880 (end) as to Pedro Garcia before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel; Joel Mandelman/Tim Henry.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of |

| | | | |
|---|---|---|---|
| | | | Transcript Restriction set for 6/17/2014. (Schwemmer, Cindy) (Entered: 03/19/2014) |
| 03/19/2014 | 1000 | | TRANSCRIPT of Sentencing held 1–6–2014 as to Pedro Garcia before Judge Belot, Court Reporter Cindy Schwemmer, 316–315–4354, cindy_schwemmer@ksd.uscourts.gov. Transcript purchased by: Val Wachtel; Joel Mandelman/Tim Henry. <br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** <br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/17/2014. (Schwemmer, Cindy) (Entered: 03/19/2014) |
| 03/19/2014 | 1001 | | CERTIFICATE OF FILING OF TRANSCRIPT of Motion Hearing held 3–4–2013; Motion Hearing held 9–12–2013; Jury Trial held 10–2–2013 through 10–17–2013; Sentencing held 1–6–2014 by Court Reporter Cindy Schwemmer (Schwemmer, Cindy) (Entered: 03/19/2014) |
| 03/20/2014 | 1002 | | SEALED MOTION for Leave to File Under Seal by Juan Torres. (Attachments: # 1 Proposed Sealed Document)(Shultz, Michael) (Entered: 03/20/2014) |
| 03/20/2014 | | | MINUTE ORDER granting 1002 Sealed Motion for Leave to File Under Seal. Counsel is directed to file forthwith the requested document(s) with an event from the SEALED DOCUMENTS category as to Juan Torres (9) Signed by District Judge Monti L. Belot on 3/20/14. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 03/20/2014) |
| 03/20/2014 | 1003 | | SEALED SENTENCING MEMORANDUM by Juan Torres as to Juan Torres (Shultz, Michael) (Entered: 03/20/2014) |
| 03/20/2014 | 1004 | | AMENDED EXHIBIT LIST by Gonzalo Ramirez. (aa) (Entered: 03/20/2014) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
### (Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-<u>10089</u> -01-23- <u>MLB</u> |
| | } | |
| JASON NAJERA, | } | FILED UNDER SEAL |
| a.k.a. Ene, | } | |
| a.k.a. Norte, | } | |
| PEDRO GARCIA, | } | |
| a.k.a. Peter Garcia, | } | |
| a.k.a. Pistol Pete, | } | |
| GONZALO RAMIREZ, | } | |
| a.k.a. Gonzo, | } | |
| RUSSELL WORTHEY, | } | |
| a.k.a. Blanco, | } | |
| ANTHONY WRIGHT, | } | |
| a.k.a. Huesos, | } | |
| JOSHUA FLORES, | } | |
| a.k.a. Big Knox, | } | |
| JESUS FLORES, | } | |
| a.k.a. Tito, | } | |
| ANGEL CERDA, | } | |
| a.k.a. Shrek, | } | |
| JUAN TORRES, | } | |
| a.k.a. Bugsy, | } | |
| ALFREDO BELTRAN-RUIZ, | } | |
| a.k.a. Deuce-Deuce, | } | |
| DONTE BARNES, | } | |
| a.k.a. Snipes, | } | |
| a.k.a. Snipe, | } | |
| a.k.a. Sniper, | } | |
| JESUS SANCHEZ, | } | |
| a.k.a. Drac, | } | |
| a.k.a. Dracula, | } | |
| ENRIQUE GOBIN, | } | |
| a.k.a. Ricky, | } | |

141

| | |
|---|---|
| a.k.a. Sonny Boy, | } |
| **ALFONSO BANDA-HERNANDEZ,** | } |
| a.k.a. Fonso, | } |
| **ANDREW GUSMAN,** | } |
| a.k.a. Beaver, | } |
| **EUSEBIO SIERRA-MEDRANO,** | } |
| a.k.a. TC, | } |
| **JAYSON VARGAS,** | } |
| a.k.a. Wee Wee, | } |
| **ADAM FLORES,** | } |
| a.k.a. Little Lazy, | } |
| **FABIAN NEAVE,** | } |
| a.k.a. Puppet, | } |
| **JESUS TORRES,** | } |
| a.k.a. Rabbit, | } |
| **JOSE NEAVE,** | } |
| a.k.a. Caiyo, | } |
| **HERNAN QUEZADA,** | } |
| a.k.a. Cheese, | } |
| a.k.a. Cartoon, | } |
| **HUMBERTO ORTIZ,** | } |
| a.k.a. Beto, | } |
| **Defendants.** | } |

## INDICTMENT

## COUNT 1

The Grand Jury charges:

## The Enterprise

1.      At various times relevant to this Indictment;

**JASON NAJERA, PEDRO GARCIA, GONZALO RAMIREZ, RUSSELL**

**WORTHEY, ANTHONY WRIGHT, JOSHUA FLORES, JESUS FLORES,**

**ANGEL CERDA, JUAN TORRES, ALFREDO BELTRAN-RUIZ, DONTE**

**BARNES, JESUS SANCHEZ, ENRIQUE GOBIN, ALFONSO BANDA-HERNANDEZ, ANDREW GUSMAN, EUSEBIO SIERRA-MEDRANO, JAYSON VARGAS, ADAM FLORES, FABIAN NEAVE, JESUS TORRES, JOSE NEAVE, HERNAN QUEZADA, HUMBERTO ORTIZ,**

the defendants, and others known and unknown, were leaders, members and associates of the **Nortenos**, a criminal organization whose members and associates engaged in narcotics distribution and acts of violence including acts involving murder and robbery, and which operated principally in Dodge City, Kansas.

2.      The **Nortenos**, including its leadership, membership and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4) (hereinafter "the enterprise"), that is, a group of individuals associated in fact.  The enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.  This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

3.      The **Nortenos** (Spanish: Northerners) is a street gang present in numerous states in the United States.  In Dodge City, Kansas, **Nortenos** members and associates identify with "sets" named **Diablos Viejos (DV)** and **Los Carnales Chingones (LCC).** The **DV** and **LCC** members are organized under the common identity of **Nortenos**.  Both

the **DV** and **LCC** members identify with the same colors and symbols, identify themselves as **Nortenos**, and associate regularly in the commission of various crimes.

## Purposes of the Enterprise

4.    The purposes of the enterprise included the following:

a.    Enriching the members and associates of the enterprise through, among other things, murder, robbery, and distribution of narcotics.

b.    Preserving and protecting the power, territory and profits of the enterprise through the use of actual and threatened violence, including assaults and murder.

c.    Promoting and enhancing the enterprise and the activities and reputations of its members and associates.

d.    Keeping victims in fear of the enterprise and in fear of its members and associates through actual violence and threats of violence.

## Roles of the Defendants

5.    The defendants participated in the operation and management of the enterprise.

a.    Members and associates of the enterprise identify themselves through, amongst other things, clothing, hand signals and tattoos which signify gang affiliation.  Red clothing and paraphernalia are associated with the **Nortenos** street gang. **Nortenos** gang members frequently reference the number "14" through hand signals and

4

tattoos because the letter "N", which represents "Norteno", is the 14th letter of the alphabet.

b.      The defendant **Jason NAJERA** was a leader of the enterprise who directed other members of the enterprise in carrying out unlawful and other activities in furtherance of the conduct of the enterprise's affairs.

c.      Under the direction of **Jason NAJERA** and other leaders of the enterprise, including **Eusebio SIERRA-MEDRANO** and **Fabian NEAVE**, the defendants and others participated in unlawful and other activities in furtherance of the conduct of the enterprise's affairs.

### Means and Methods of the Enterprise

6.      Among the means and methods by which the defendants and others conducted and participated in the conduct of the affairs of the enterprise were the following:

a.      Members of the enterprise and their associates used, attempted to use, and conspired to use murder, robbery and assault, which affected interstate commerce.

b.      Members of the enterprise and their associates committed, attempted and threatened to commit acts of violence, including murder and robbery, to protect and expand the enterprise's criminal operations.

5

c.      Members of the enterprise and their associates promoted a climate of fear through violence and threats of violence.

d.      Members of the enterprise and their associates used and threatened to use physical violence against various individuals, including rival gang members and associates.

e.      Members of the enterprise and their associates trafficked in narcotics, including methamphetamine, cocaine and marijuana.

### The Racketeering Conspiracy

7.      On or about and between 2008 through the date of this Indictment, both dates being approximate and inclusive, within the District of Kansas, and elsewhere, **JASON NAJERA, PEDRO GARCIA, GONZALO RAMIREZ, ANTHONY WRIGHT, JESUS SANCHEZ, EUSEBIO SIERRA-MEDRANO, JAYSON VARGAS, FABIAN NEAVE,** together with persons known and unknown, being persons associated with the **Nortenos** street gang, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Sections 1961(1) and 1961(5) of Title 18, United States Code, consisting of multiple acts involving:

a. Distribution and possession with intent to distribute controlled substances and conspiracy to do so under 21 U.S.C. §841 and §846. and multiple acts involving:

b. Distribution and possession with intent to distribute controlled substances and conspiracy to do so under Kan. Stat. Ann. §§21-5705 and 5302 (formerly §§65-4161 and 21-36a05 and 21-3302).

c. Murder, chargeable under Kan. Stat. Ann. §§21-5402 and 5403 (formerly §§21-3401 and 3402), Kan. Stat. Ann. §21-5403 (formerly §21-3402), and attempts and conspiracies to do so under Kan. Stat. Ann. §§21-5301 and 5302 (formerly §§21-3301 and 3302).

d. Robbery, chargeable under Kan. Stat. Ann. §21-5420 (formerly §21-3426 and §21-3427), and attempts and conspiracies to do so under Kan. Stat. Ann. §§21-5301 and 5302 (formerly §§21-3301 and 3302).

8. It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT 2

### Violent Crimes in Aid of Racketeering
### Conspiracy to Murder Israel Peralta, Mariano Sorano, Faustino Peralta, and Roberto Arco

9.      At all times relevant to this Indictment, the **Nortenos**, as more fully described in Paragraphs 1 through 6 of Count One of this Indictment, which are realleged and incorporated by reference as though set forth fully herein, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), namely the **Nortenos**, that is, a group of individuals associated in fact which was engaged in, and the activities of which affected, interstate and foreign commerce.  The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

10.      At all times relevant to this Indictment, the above-described enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, robbery, and narcotics trafficking in violation of the laws of the State of Kansas, and narcotics trafficking in violation of Title 21, United States Code, Sections 841 and 846.

11.      On or about June 8, 2009, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

8

**PEDRO GARCIA,**
**GONZALO RAMIREZ,**
**RUSSELL WORTHEY, and**
**ANTHONY WRIGHT**,

the defendants herein, and others known and unknown, unlawfully, and knowingly

conspired to murder Israel Peralta, Mariano Sorano, Faustino Peralta, and Roberto Arco,

in violation of Kan. Stat. Ann. §21-5402 (formerly §21-3401).

In violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT 3

### Violent Crimes in Aid of Racketeering
### Murder of Israel Peralta

12.    Paragraphs 9 and 10 of Count Two of this Indictment are realleged and
incorporated by reference as though fully set forth herein.

13.    On or about June 8, 2009, in the District of Kansas, for the purpose of
gaining entrance to and maintaining and increasing position in the **Nortenos**, an
enterprise engaged in racketeering activity,

**PEDRO GARCIA,**
**GONZALO RAMIREZ,**
**RUSSELL WORTHEY, and**
**ANTHONY WRIGHT,**

the defendants herein, unlawfully, and knowingly murdered Israel Peralta, in violation of

Kan. Stat. Ann. § 21-5402 (formerly §21-3401).

In violation of Title 18, United States Code, Section 1959(a)(1) and Section 2.

## COUNT 4

### Violent Crimes in Aid of Racketeering
### Attempted Murder of Mariano Sorano, Faustino Peralta, and Roberto Arco

14.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

15.     On or about June 8, 2009, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**PEDRO GARCIA,
GONZALO RAMIREZ,
RUSSELL WORTHEY, and
ANTHONY WRIGHT**,

the defendants herein, unlawfully, and knowingly attempted the murder of Mariano Sorano, Faustino Peralta, and Roberto Arco, in violation of Kan. Stat. Ann. §21-5402 (formerly §21-3401).

All in violation of Title 18, United States Code, Section 1959(a)(5) and Section 2.

## COUNT 5

### Violent Crimes in Aid of Racketeering
### Assault With a Dangerous Weapon Upon Israel Peralta, Mariano Sorano, Faustino Peralta, and Roberto Arco

16.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

17.   On or about June 8, 2009, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**PEDRO GARCIA,
GONZALO RAMIREZ,
RUSSELL WORTHEY, and
ANTHONY WRIGHT**,

the defendants herein, unlawfully, and knowingly assaulted Israel Peralta, Mariano Sorano, Faustino Peralta, and Roberto Arco with a dangerous weapon, to wit: a firearm, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

All in violation of Title 18, United States Code, Section 1959(a)(3) and Section 2.

## COUNT 6

### Possess/Discharge a Firearm in Furtherance of a Crime of Violence

18.   On or about June 8, 2009, in the District of Kansas, the defendants,

**PEDRO GARCIA,
GONZALO RAMIREZ,
RUSSELL WORTHEY, and
ANTHONY WRIGHT**,

the defendants herein, did knowingly possess firearms and discharge firearms, in furtherance of a crime of violence for which they may be prosecuted in a court of the United States, to wit: 18 U.S.C.§1959, referencing Murder in the First Degree in violation of Kan. Stat. Ann. §21-5402 (formerly §21-3401).

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and Section 2.

11

## COUNT 7

### Violent Crimes in Aid of Racketeering
### Assault with a Dangerous Weapon Upon Isidro Raleas-Velasquez

19.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

20.     On or about June 8, 2009, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**PEDRO GARCIA,**
**GONZALO RAMIREZ,**
**JOSHUA FLORES, and**
**JESUS FLORES,**

the defendants herein, and others known and unknown, unlawfully, and knowingly committed an assault with a dangerous weapon, to wit: a firearm, upon Isidro Raleas-Velasquez, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

In violation of Title 18, United States Code, Section 1959(a)(3) and Section 2.

## COUNT 8

### Violent Crimes in Aid of Racketeering
### Conspiracy to Commit an Assault with a Dangerous Weapon

21.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

22.     On or about June 8, 2009, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**PEDRO GARCIA,**
**GONZALO RAMIREZ,**
**JOSHUA FLORES, and**
**JESUS FLORES,**

the defendants herein, and others known and unknown, unlawfully, and knowingly conspired to commit an assault with a dangerous weapon, to wit: a firearm, upon Isidro Raleas-Velasquez, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

In violation of Title 18, United States Code, Section 1959(a)(6).

## COUNT 9

### Possess and Brandish a Firearm in Furtherance of a Crime of Violence

23.     On or about June 8, 2009, in the District of Kansas,

**PEDRO GARCIA,**
**GONZALO RAMIREZ,**
**JOSHUA FLORES, and**
**JESUS FLORES,**

the defendants herein, did knowingly possess firearms and brandish firearms, in furtherance of a crime of violence for which they may be prosecuted in a court of the United States, to wit: 18 U.S.C. §1951 and 18 U.S.C. §1959, referencing Aggravated Robbery, in violation of Kan. Stat. Ann. §21-5420(b)(1) (formerly §21-3427).

13

In violation of Title 18, United States Code, Section 924(c)(1)(A) and Section 2.

## COUNT 10

### Violent Crimes in Aid of Racketeering
### Conspiracy to Commit the Murder of Rumalda Hipolito and Abel Hernandez

24.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

25.     On or about October 4, 2008, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**ANGEL CERDA,**
**JUAN TORRES, and**
**GONZALO RAMIREZ,**

the defendants herein, and others known and unknown, unlawfully, and knowingly conspired to muder Ruamlda Hipolito and Abel Hernandez, in violation of Kan. Stat. Ann. §21-5402 formerly §21-3401).

All in violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT 11

### Violent Crimes in Aid of Racketeering
### Attempted Murder of Rumalda Hipolito and Abel Hernandez

26.    Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

27.    On or about October 4, 2008, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**ANGEL CERDA,**
**JUAN TORRES, and**
**GONZALO RAMIREZ,**

the defendants herein, unlawfully, and knowingly attempted the murder of Rumalda Hipolito and Abel Hernandez, in violation of Kan. Stat. Ann. §21-5402 (formerly §21-3401).

All in violation of Title 18, United States Code, Section 1959(a)(5) and Section 2.

## COUNT 12

### Violent Crimes in Aid of Racketeering
### Assault With a Dangerous Weapon Upon Rumalda Hipolito and Abel Hernandez

28.    Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

29.     On or about October 4, 2008, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**ANGEL CERDA,**
**JUAN TORRES, and**
**GONZALO RAMIREZ,**

the defendants herein, unlawfully, and knowingly assaulted Rumalda Hipolito and Abel Hernandez, with a dangerous weapon, to wit: a firearm, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

All in violation of Title 18, United States Code, Section 1959(a)(3) and Section 2.

## COUNT 13

### Possess and Discharge a Firearm in Furtherance of a Crime of Violence

30.     On or about October 4, 2008, in the District of Kansas,

**ANGEL CERDA,**
**JUAN TORRES, and**
**GONZALO RAMIREZ,**

the defendants herein, did knowingly possess firearms and discharge firearms, in furtherance of a crime of violence for which they may be prosecuted in a court of the United States, to wit: 18 U.S.C. § 1959, referencing Aggravated Assault, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and Section 2.

16

## COUNT 14

### Violent Crimes in Aid of Racketeering
### Assault With a Dangerous Weapon Upon Jose Arreola

31.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

32.     On or about March 29, 2010, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

### EUSEBIO SIERRA-MEDRANO,

the defendant herein, unlawfully, and knowingly committed an assault with a dangerous weapon, to wit: a knife, upon Jose Arreola, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

All in violation of Title 18, United States Code, Section 1959(a)(3) and Section 2.

## COUNT 15

### Violent Crimes in Aid of Racketeering
### Conspiracy to Commit the Murder of Reyes Delira-Padilla

33.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

17

34.     On or about March 15, 2011, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**ALFREDO BELTRAN-RUIZ, and
DONTE BARNES,**

the defendants herein, and others known and unknown, unlawfully, and knowingly conspired to murder Reyes Delira-Padilla, in violation of Kan. Stat. Ann. §21-5402 (formerly §21-3401).

All in violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT 16

### Violent Crimes in Aid of Racketeering
### Attempted Murder of Reyes Delira-Padilla

35.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

36.     On or about March 15, 2011, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity,

**ALFREDO BELTRAN-RUIZ, and
DONTE BARNES,**

the defendants herein, unlawfully, and knowingly attempted the murder of Reyes Delira-Padilla, in violation of Kan. Stat. Ann. §21-5402 (formerly §21-3401).

18

All in violation of Title 18, United States Code, Section 1959(a)(5) and Section 2.

## COUNT 17

### Violent Crimes in Aid of Racketeering
### Assault with a Dangerous Weapon Upon Reyes Delira-Padilla

37.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

38.     On or about March 15, 2011, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**ALFREDO BELTRAN-RUIZ, and
DONTE BARNES,**

the defendants herein, unlawfully, and knowingly assaulted Reyes Delira-Padilla with a dangerous weapon, to-wit: a firearm, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

All in violation of Title 18, United States Code, Section 1959(a)(3) and Section 2.

## COUNT 18

### Possess and Discharge a firearm in Furtherance of a Crime of Violence

39.     On or about March 15, 2011, in the District of Kansas,

**ALFREDO BELTRAN-RUIZ, and
DONTE BARNES,**

19

the defendants herein, did knowingly possess a firearm and discharge a firearm, in furtherance of a crime of violence for which they may be prosecuted in a court of the United States, to wit:  18 U.S.C. §1959, referencing Aggravated Assault, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

In violation of Title 18, United States Code, Section 924(c)(1)(A) and Section 2.

## COUNT 19

### Violent Crimes in Aid of Racketeering
### Conspiracy to Commit the Murder of George Gonzalez

40.    Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

41.    On or about March 30, 2011, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**JESUS SANCHEZ,**
**ENRIQUE GOBIN,**
**ALFONSO BANDA-HERNANDEZ, and**
**ANDREW GUSMAN**,

the defendants herein, and others known and unknown, unlawfully, and knowingly conspired to commit the murder of George Gonzalez, in violation of Kan. Stat. Ann. §21-5402 (formerly §21-3401).

All in violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT 20

### Violent Crimes in Aid of Racketeering
### Attempted Murder of George Gonzalez

42.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

43.     On or about March 30, 2011, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**JESUS SANCHEZ,
ENRIQUE GOBIN,
ALFONSO BANDA-HERNANDEZ, and
ANDREW GUSMAN**,

the defendants herein, unlawfully, and knowingly attempted the murder of George Gonzalez, in violation of Kan. Stat. Ann. §21-5402 (formerly §21-3401).

All in violation of Title 18, United States Code, Section 1959(a)(5) and Section 2.

## COUNT 21

### Violent Crimes in Aid of Racketeering
### Assault with a Dangerous Weapon Upon George Gonzalez

44.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

45.     On or about March 30, 2011, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**JESUS SANCHEZ,
ENRIQUE GOBIN,
ALFONSO BANDA-HERNANDEZ, and
ANDREW GUSMAN**,

the defendants herein, unlawfully, and assaulted George Gonzalez with a dangerous weapon, to-wit: a firearm, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

All in violation of Title 18, United States Code, Section 1959(a)(3) and Section 2.

## COUNT 22

### Possess and Discharge a firearm in Furtherance of a Crime of Violence

46.     On or about March 30, 2011, in the District of Kansas,

**JESUS SANCHEZ,
ENRIQUE GOBIN,
ALFONSO BANDA-HERNANDEZ, and
ANDREW GUSMAN**,

the defendants herein, did knowingly possess firearms and discharge firearms, in furtherance of a crime of violence for which they may be prosecuted in a court of the United States, to wit: Aggravated Assault, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and Section 2.

## COUNT 23

### Violent Crimes in Aid of Racketeering
### Assault with a Dangerous Weapon Upon Jose Santaella and Santos Gutierrez

47.    Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

48.    On or about April 30, 2011, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**JAYSON VARGAS, and**
**ADAM FLORES,**

the defendants herein, unlawfully, and assaulted Jose Santaella and Santos Gutierrez with a dangerous weapon, to-wit: a firearm, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

All in violation of Title 18, United States Code, Section 1959(a)(3) and Section 2.

## COUNT 24

### Violent Crimes in Aid of Racketeering
### Conspiracy to Commit an Assault with a Dangerous Weapon

49.    Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

50.    On or about April 30, 2011, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**JAYSON VARGAS, and
ADAM FLORES,**

the defendants herein, and others known and unknown, unlawfully, and knowingly conspired to commit an assault with a dangerous weapon, to wit; a firearm, against Jose Santaella and Santos Gutierrez, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

In violation of Title 18, United States Code, Section 1959(a)(6).

## COUNT 25

### Possess and Brandish a Firearm in Furtherance of a Crime of Violence

51.    On or about April 30, 2011, in the District of Kansas,

**JAYSON VARGAS, and
ADAM FLORES,**

the defendants herein, did knowingly possess firearms and brandish firearms, in furtherance of a crime of violence for which they may be prosecuted in a court of the United States, to wit:18 U.S.C. §1951 and 18 U.S.C. §1959, referencing Aggravated Robbery, in violation of Kan. Stat. Ann. §21-5420(b)(1) (formerly §21-3427).

In violation of Title 18, United States Code, Section 924(c)(1)(A) and Section 2.

## COUNT 26

### Violent Crimes in Aid of Racketeering
### Attempted Murder of Gabriel Rivera and Carlos Ramirez

52.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

53.     On or about August 27, 2011, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

### JASON NAJERA, and
### JOSE NEAVE,

the defendant herein, unlawfully, and knowingly attempted the murder of Gabriel Rivera and Carlos Ramirez, in violation of Kan. Stat. Ann. §21-5402 (formerly §21-3401).

All in violation of Title 18, United States Code, Section 1959(a)(5) and Section 2.

## COUNT 27

### Violent Crimes in Aid of Racketeering
### Assault with a Dangerous Weapon Upon Gabriel Rivera and Carlos Ramirez

54.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

55.     On or about August  27, 2011, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**JASON NAJERA,
FABIAN NEAVE,
JESUS TORRES,
JOSE NEAVE, and
HUMBERTO ORTIZ**

the defendants herein, unlawfully, and assaulted Gabriel Rivera and Carlos Ramirez with a dangerous weapon, to-wit: a knife, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

All in violation of Title 18, United States Code, Section 1959(a)(3) and Section 2.

## COUNT 28

### Violent Crimes in Aid of Racketeering
### Conspiracy to Commit an Assault with a Dangerous Weapon

56.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

57.     On or about July 2, 2008, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**JESUS SANCHEZ, and
FABIAN NEAVE,**

the defendants herein, and others known and unknown, unlawfully, and knowingly conspired to commit an assault with a dangerous weapon, to wit: a knife, against Bryant Licon, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

In violation of Title 18, United States Code, Section 1959(a)(6).

26

## COUNT 29

### Felon in Possession of a Firearm

58.    On or about August 20, 2011, in the District of Kansas, the defendant,

**JAYSON VARGAS**,

having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce, a firearm, to wit: an Ejericto Argentino, Model 1927, .45 caliber handgun, with an obliterated Serial Number, said firearm having been shipped and transported in interstate commerce.

In violation of Title 18, United States Code, Section 922(g)(1) and Title 18, United States Code, Section 924(a)(2).

## COUNT 30

### Felon in Possession of a Firearm

59.    On or about December 27, 2011, in the District of Kansas, the defendant,

**FABIAN NEAVE**,

having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce, a firearm and ammunition, to wit: Jiminez Arms, model J.A. Nine, 9 mm semi-automatic handgun, Serial Number obliterated, said firearm having been shipped and transported in interstate commerce.

In violation of Title 18, United States Code, Section 922(g)(1) and Title 18, United States Code, Section 924(a)(2).

## COUNT 31

### Possession with Intent to Distribute Methamphetamine

60.     On or about December 27, 2011, in the District of Kansas, the defendant,

**FABIAN NEAVE**,

did unlawfully, knowingly, and intentionally posses with intent to distribute

approximately 22 grams of a mixture or substance containing methamphetamine, a

controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and Section 2.

## COUNT 32

### Possess a Firearm in Furtherance of a Drug Trafficking Crime

61.     On or about December 27, 2011, in the District of Kansas,

**FABIAN NEAVE,**

the defendant herein, did knowingly possess a firearm, in furtherance of a drug trafficking

crime, for which they may be prosecuted in a court of the United States, to wit: possess

with the intent to distribute methamphetamine in violation of 21 U.S.C. §841(a).

In violation of Title 18, United States Code, Section 924(c)(1)(A).

## COUNT 33

### Felon in Possession of Ammunition

62.    On or about March 21, 2008, in the District of Kansas, the defendant,

**JASON NAJERA**,

having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce, ammunition, to wit: Winchester, Western Model,  .380 caliber ammunition, said ammunition having been shipped and transported in interstate commerce.

In violation of Title 18, United States Code, Section 922(g)(1) and Title 18, United States Code, Section 924(a)(2).

## COUNT 34

### Felon in Possession of Ammunition

63.    On or about January 28, 2012, in the District of Kansas, the defendant,

**JASON NAJERA,**

having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce, ammunition, to wit: Federal, Champion Model, 9mm caliber ammunition and Winchester, SuperX model, 20 gauge ammunition, said ammunition having been shipped and transported in interstate commerce.

In violation of Title 18, United States Code, Section 922(g)(1) and Title 18, United States Code, Section 924(a)(2).

## COUNT 35

### Illegal Alien in Possession of a Firearm

64.     On or about February 20, 2011, in the District of Kansas, the defendant,

**JESUS SANCHEZ**,

being a citizen of Mexico, who is illegally and unlawfully in the United States, and who is not a citizen or national of the United States, did knowingly possess in and affecting commerce, a firearm and ammunition, to wit: Frontier, model Six-Shooter, .22 caliber handgun, Serial Number 15726, said firearm having been shipped and transported in interstate commerce.

In violation of Title 18, United States Code, Section 922(g)(5) and Title 18, United States Code, Section 924(a)(2).

## COUNT 36

### Felon in Possession of a Firearm

65.     On or about July 30, 2010, in the District of Kansas, the defendant,

**EUSEBIO SIERRA-MEDRANO**,

having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce, a firearm and ammunition, to wit: Springfield Armory, model 1911A1, .45 caliber semi-automatic handgun, Serial Number 47727, said firearm having been shipped and transported in interstate commerce.

In violation of Title 18, United States Code, Section 922(g)(1) and Title 18, United States Code, Section 924(a)(2).

## COUNT 37

### Felon in Possession of a Firearm

66.    On or about July 30, 2010, in the District of Kansas, the defendant,

**EUSEBIO SIERRA-MEDRANO**,

having been convicted of a crime punishable by imprisonment for a term exceeding one

year, did knowingly possess in and affecting commerce, a firearm and ammunition, to

wit: Norinco, model SKS, 7.62 mm rifle, Serial Number 24004675K, said firearm having

been shipped and transported in interstate commerce.

In violation of Title 18, United States Code, Section 922(g)(1) and Title 18, United

States Code, Section 924(a)(2).

## COUNT 38

### Violent Crimes in Aid of Racketeering
### Assault with a Dangerous Weapon Upon Reyes Bocanegra

67.    Paragraphs 9 and 10 of Count Two of this Indictment are realleged and

incorporated by reference as though fully set forth herein.

68.    On or about February 5, 2012, in the District of Kansas, for the purpose of

gaining entrance to and maintaining and increasing position in the **Nortenos**, an

enterprise engaged in racketeering activity,

**HERNAN QUEZADA,**

the defendant herein, unlawfully, and assaulted Reyes Bocanegra with a dangerous weapon, to-wit: a beer bottle, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

All in violation of Title 18, United States Code, Section 1959(a)(3) and Section 2.

## NOTICE OF SPECIAL FINDINGS

The allegations contained in paragraphs 1 through 18 of this Indictment are hereby re-alleged and incorporated by reference as if fully set forth herein.

### Defendants PEDRO GARCIA, a/k/a "Peter Garcia" and "Pistol Pete" and GONZALO RAMIREZ, a/k/a "Gonzo"

As to Count 3 of this Indictment, the defendants PEDRO GARCIA, a/k/a "Peter Garcia" and "Pistol Pete" and GONZALO RAMIREZ, a/k/a "Gonzo":

(1)     Were both 18 years of age or older at the time of the offense. Title 18, United States Code, Section 3591(a).

(2)     Intentionally killed Israel Peralta. Title 18, United States Code, Section 3591(a)(2)(A).

(3)     Intentionally inflicted serious bodily injury that resulted in the death of Israel Peralta.  Title 18, United States Code, Section 3591(a)(2)(B).

(4)     Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person,

32

other than one of the participants in the homicide offense and Israel Peralta died as a direct result of the act. Title 18, United States Code, Section 3591(a)(2)(C).

(5)     Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the homicide offense, such that participation in the act constituted a reckless disregard for human life, and Israel Peralta died as a direct result of the act.  Title 18, United States Code, Section 3591(a)(2)(D).

(6)     In the commission of the offense knowingly created a grave risk of death to one or more persons in addition to the victim of the offense. Title 18, United States Code, Section 3592(c)(5).

(7)     Intentionally killed or attempted to kill more than one person in a single criminal episode. Title 18, United States Code, Section 3592(c)(16).

Pursuant to Title 18, United States Code, Sections 3591 and 3592.

A TRUE BILL


 April 16, 2012                          s/Foreperson                          
DATE                                     FOREMAN OF THE GRAND JURY

33

  /s/ Barry R. Grissom
BARRY R. GRISSOM
United States Attorney
District of Kansas
1200 Epic Center, 301 N. Main
Wichita, Kansas 67202
(316) 269-6481
(316) 269-6484 (fax)
barry.grissom@usdoj.gov
KS. S. Ct. No. 10866

(It is requested that trial be held in Wichita, Kansas.)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

UNITED STATES OF AMERICA,          )
                                   )
                    Plaintiff,     )
                                   )
vs.                                )        Case No. 12-CR-10089-02-MLB
                                   )
                                   )
PEDRO GARCIA, *et al.*,            )
                                   )
                    Defendant.     )
                                   )

## ENTRY OF APPEARANCE

COMES NOW John Val Wachtel of Klenda, Mitchell, Austerman & Zuercher, L.L.C., and hereby enters his appearance on behalf of defendant, Pedro Garcia, in the above captioned cause of action.

Respectfully submitted,

s/John Val Wachtel
John Val Wachtel
S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN, LLC
301 N. Main St., Ste. 1600
Wichita, KS  67202-4816
Tele.:  (316) 267-0331
Fax:  (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of June, 2012, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

s/John Val Wachtel
John Val Wachtel

20J0820

**FILED**
U.S. District Court
District of Kansas

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

JUN 18 2012

Clerk, U.S. District Court
By _____ Deputy Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.    12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA | ) | |
| Defendant. | ) | |
| | ) | |

## WAIVER OF DETENTION HEARING

I, PEDRO GARCIA, having appeared before this Court and been advised of my rights under the Bail Reform Act, 18 U.S.C. § 3142, including my right to have a detention hearing, do hereby waive (give up) my right to a detention hearing.

_____
Defendant

June 18, 2012
Date

_____
Counsel for Defendant

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>            Plaintiff,        )<br>)<br>v.                              )<br>)<br>Jason Najera, Pedro Garcia,     )<br>Gonzalo Ramirez, Russell Worthey, )<br>Anthony Wright, Joshua Flores,  )<br>Jesus Flores, Angel Cerda,      )<br>Juan Torres, Alfredo Beltran-Ruiz, )<br>Donte Barnes, Jesus Sanchez,    )<br>Enrique Gobin, Alfonso          )<br>Banda-Hernandez, Andrew Gusman, )<br>Eusebio Sierra-Medrano, Jayson  )<br>Vargas, Adam Flores, Fabian Neave, )<br>Jesus Torres, Jose Neave, Hernan )<br>Quezada, Humberto Ortiz,        )<br>)<br>            Defendants.       )<br>                                ) | **CRIMINAL ACTION**<br><br>No. 12-10089-01-23 |

**GENERAL ORDER OF DISCOVERY AND SCHEDULING**

In the interests of justice and judicial economy, the Court enters the following general order of discovery and scheduling which will apply to the charges and to any superceding charges in this case. In general, the Court will order the parties to comply with Rules 12, 12.1, 12.2, 16 and 26.2 of the Federal Rules of Criminal Procedure, with Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763 (1972) and their progeny and with Title 18, U.S.C. § 3500, as well as Rule 404(b), Federal Rules of Evidence.

Revised April 2012.

Unless otherwise specified, a request is not necessary to trigger the operation of this Order, notwithstanding Rule 16's "upon request" language.  Thus, the absence of a request may not be asserted as a reason for noncompliance.  A principal purpose of this order is to make self-executing the disclosure and discovery provisions of the Rules, thereby reducing or eliminating the filing of "boilerplate" discovery motions and motions for extension of time.  Counsel are expected to communicate with each other regarding discovery and nothing in this order is intended to deter the voluntary exchange of information between counsel at times sooner than those specified.

<div align="center">Disclosure by the Government</div>

No later than 30 days after arraignment, the government shall comply with Rule 16.

Pursuant to <u>Brady</u> and <u>Giglio</u> and their progeny, and no later than 30 days after arraignment, the government shall produce any and all evidence in its possession, custody or control which would tend to exculpate the defendant (that is, evidence which is favorable and material to a defense), or which would constitute impeachment of government witnesses, or which would serve to mitigate punishment, if any, which may be imposed in this case.  This includes and is not limited to the following:

1.   Any evidence tending to show threats, promises, payments or inducements made by the government or any agent thereof which would bear upon the credibility of any government witness.

2.   Any statement of any government witness which is inconsistent with a statement by the witness which led to the indictment in this case.

<div align="center">-2-</div>

3.   Any statement of any government witness which the attorney for the government knows or reasonably believes will be inconsistent with the witness' testimony at trial.

4.   Any prior conviction of any government witness, which involved dishonesty or false statement, or for which the penalty was death or imprisonment in excess of one year under the law under which he was convicted.

5.   Any pending felony charges against any government witness.

6.   Any specific instances of the conduct of any government witness which would tend to show character for untruthfulness.

Subject to the requirements of Brady, Giglio and pursuant to 18 U.S.C. § 3500 and Rule 26.2, the government may decline to disclose pretrial statements of any of its witnesses until each such witness has concluded his or her direct examination at trial.  At that time, the government shall produce the witness' prior statement that is in its possession relating to the witness' testimony.   The Court nevertheless urges the government to provide the statements at least 48 hours prior to the witness' scheduled appearance.

Pursuant to Rule 404(b), the government shall provide to the defendant the general nature of other crimes, wrongs or acts of the defendant which the government intends to use at trial.   The government shall provide this information at least 30 days prior to trial. No later than 14 days prior to trial, the defendant shall file any motion objecting to the use of such evidence.  The motion shall state whether the defendant requests an evidentiary hearing.

<u>Disclosure by the Defendant</u>

The defendant is not required to give notice of an alibi defense

-3-

unless the government requests such notice pursuant to Rule 12.1(a)(1). The defendant must comply as required by Rule 12.1(a)(2).

Pursuant to Rule 16(b)(1), the government is granted reciprocal discovery which shall be disclosed by the defendant 14 days following Rule 16 disclosures by the government.

The defendant shall file all motions and notices pursuant to Rules 12(b)(3)(A) and (B), 12.2 and 12.3 no later than 30 days following arraignment. These motions are not dependent on discovery from the government. Motions pursuant to Rule 12(b)(3)(C), which arguably may be dependent on discovery from the government, shall be filed no later than 50 days following arraignment or 20 days following disclosure by the government, whichever is the shorter period. The defendant's compliance with these requirements may not be delayed or excused by a claim that the government has not met its obligations under this order.

### Miscellaneous Requirements

The original arraignment date governs the times specified herein. Rule 45 governs time computations. The times will not be automatically modified, suspended, extended or restarted by the filing of additional or superceding charges. If the filing of additional or superceding charges causes the government or the defendant to believe a modification of the time limits is required, counsel shall promptly request a status conference. The defendant's presence will not be required at the conference. Rule 43(b)(3).

If either the government or the defendant is unable for good cause shown to comply with the requirements of this order, the non-compliant party shall file, at least 3 days before the compliance

-4-

date, a statement setting forth the reasons for non-compliance and stating when there will be compliance.  Failure to comply with this order or to show good cause for not being able to comply may result in disallowance of use of evidence or defenses not disclosed.

Should the government or the defendant require additional discovery not covered by this order, the party shall file a motion requesting the specific discovery along with proper memorandum and specific citations setting forth the authority for the request.  The motion shall be filed no later than 7 days following the date(s) for disclosure set forth herein.

Any motion not specifically contemplated by the Rules shall be filed no later than 30 days following arraignment unless a different time is specified herein.

Responses to any motions filed pursuant to this order shall be filed no later than 14 days following the filing of the motion.  The court will set hearings, as needed.

It shall be the continuing duty of counsel for all parties to immediately reveal to opposing counsel any newly discovered information or other material within the scope of this order.

All requests for special voir dire questions to be asked by the court and jury instructions shall be submitted no later than 3 days prior to trial.

Whenever a defendant or witness has need for the services of an interpreter, the attorney whose client or witness will require the interpreter shall be responsible for arranging for the services of a competent interpreter.   The court pays for the services of interpreters for all court proceedings whether or not counsel is

-5-

appointed or retained.  However, retained counsel is responsible for interpreter's fees incurred for services other than court proceedings such as consultations outside the courthouse, jail interviews, witness interviews, etc.

This case is set for trial on August 28, 2012 at 9:00 a.m.  A status conference/plea hearing will be held at 2:30 p.m. on August 20, 2012.

Should a defendant decide to plead guilty, defense counsel must make arrangements to schedule the plea prior to the day of trial so that a jury panel will not be called unnecessarily.  A failure to do so, without good cause shown, may result in imposition of sanctions, including assessment of the costs of calling the jury panel.

IT IS SO ORDERED.

Dated this 26th day of June, 2012, at Wichita, Kansas.


s/ Monti Belot
MONTI L. BELOT
UNITED STATES DISTRICT JUDGE

-6-

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
### (Wichita Docket)

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **Plaintiff,** | } | **Criminal Action** |
| | } | |
| v. | } | **No. 12-10089 -01-23-MLB** |
| | } | |
| **JASON NAJERA,** | } | |
| a.k.a. Ene, | } | |
| a.k.a. Norte, | } | |
| **PEDRO GARCIA,** | } | |
| a.k.a. Peter Garcia, | } | |
| a.k.a. Pistol Pete, | } | |
| **GONZALO RAMIREZ,** | } | |
| a.k.a. Gonzo, | } | |
| **RUSSELL WORTHEY,** | } | |
| a.k.a. Blanco, | } | |
| **ANTHONY WRIGHT,** | } | |
| a.k.a. Huesos, | } | |
| **JOSHUA FLORES,** | } | |
| a.k.a. Big Knox, | } | |
| **JESUS FLORES,** | } | |
| a.k.a. Tito, | } | |
| **ANGEL CERDA,** | } | |
| a.k.a. Shrek, | } | |
| **JUAN TORRES,** | } | |
| a.k.a. Bugsy, | } | |
| **ALFREDO BELTRAN-RUIZ,** | } | |
| a.k.a. Deuce-Deuce, | } | |
| **DONTE BARNES,** | } | |
| a.k.a. Snipes, | } | |
| a.k.a. Snipe, | } | |
| a.k.a. Sniper, | } | |
| **JESUS SANCHEZ,** | } | |
| a.k.a. Drac, | } | |
| a.k.a. Dracula, | } | |
| **ENRIQUE GOBIN,** | } | |
| a.k.a. Ricky, | } | |
| a.k.a. Sonny Boy, | } | |

| | |
|---|---|
| **ALFONSO BANDA-HERNANDEZ,** | } |
| **a.k.a. Fonso,** | } |
| **ANDREW GUSMAN,** | } |
| **a.k.a. Beaver,** | } |
| **EUSEBIO SIERRA-MEDRANO,** | } |
| **a.k.a. TC,** | } |
| **JAYSON VARGAS,** | } |
| **a.k.a. Wee Wee,** | } |
| **ADAM FLORES,** | } |
| **a.k.a. Little Lazy,** | } |
| **FABIAN NEAVE,** | } |
| **a.k.a. Puppet,** | } |
| **JESUS TORRES,** | } |
| **a.k.a. Rabbit,** | } |
| **JOSE NEAVE,** | } |
| **a.k.a. Caiyo,** | } |
| **HERNAN QUEZADA,** | } |
| **a.k.a. Cheese,** | } |
| **a.k.a. Cartoon,** | } |
| **HUMBERTO ORTIZ,** | } |
| **a.k.a. Beto,** | } |
| **Defendants.** | } |

## MOTION FOR DESIGNATION OF CASE AS COMPLEX AND REQUESTING EXCLUDABLE TIME COMPUTATIONS

The United States of America, by and through Assistant United States Attorneys Aaron L. Smith and Lanny D. Welch, move for an order of the court designating this case as complex and unusual, and setting a status hearing for all parties to attend, to allow the Court to set a schedule for discovery, the filing of motions, the setting of hearings and the setting of jury trial in an expanded time frame which would ultimately result in setting the trial past normal time limits. The United States couches this motion as a request to continue the trial date past the normal time frame, and to designate the time in excess of that normally set as excludable time under 18 U.S.C. § 3161(h)(8)(A), (B)(ii).

A scheduling order was issued, setting trial for August 28, 2012.  The United States asks that the court recognize the  unusual and complex nature of this case. This proposition of the United States would require the trial and other matters be set beyond the normal period of time  provided under 18 U.S.C. § 3161, unless excludable time is designated.  The United States requests that the period of time from the date of the court's order on this motion until the date of the pretrial motions hearing be excluded in computing the time within which the trial of this case must commence.

Under 18 U.S.C. § 3161(h)(8)(A), (B)(ii) the court may grant a continuance and a speedy trial exclusion for a period of delay if the court finds that the ends of justice served by granting a continuance outweigh the interest of the public and the defendants in a speedy trial.  Among the factors to be considered when a court determines whether to grant such a continuance under § 3161(h)(8)(A), (B)(ii) are:

Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.  18 U.S.C. § 3161(h)(8)(A)(B)(ii).

This is an unusual and complex case, due to these factors:

(1)  There are 23 current defendants in this case.  Several other cases have been filed including members of the same RICO enterprise, and there is some necessary interaction of the case management of those cases and the current indictment.  A trial date of August 28, 2012 has been set.

(2)  There is a large volume of evidence which defense counsel will need to review and discuss with the defendants.  This includes multiple different crimes occurring over a period of several years.

(3)  The indictment is based upon the existence of a enterprise conspiracy based upon RICO and VCAR definitions, and defense counsel will have a large volume of discovery to interpret to explore the existence of those conspiracies.

(4)   There is an allegation involving a murder for which the death penalty can be imposed.  Currently, two defendants have been advised of special allegations making them eligible for the death penalty.  These defendants are Pedro Garcia and Gonzalo Ramirez.  The Department of Justice has not issued the final determination as to whether the death penalty is to be sought in this prosecution.  Defense counsel for Pedro Garcia and Gonzalo Ramirez do not object to the case being declared complex.

Since it would be unreasonable to expect adequate preparation for pretrial proceedings and for the trial itself within the normal time limits, the United States moves for an order granting the relief requested.

The United States is gathering discovery for disclosure to defense counsel, and at this time is attempting to provide the relevant law enforcement reports to each defendant pertaining to the crime in which they are charged.  The United States will need additional time to make available to each of the defendants the entire body of discoverable material  for inspection, review, and copying by defense counsel and allow sufficient time for all parties to prepare for trial following the pretrial motions hearing.  The United States would also like to allow sufficient time from the pretrial motions hearing until the commencement of trial to allow defendants the

opportunity to enter into timely plea agreements so they may obtain the three level reduction available to them for acceptance of responsibility under USSG § 3E1.1.

**WHEREFORE,** the United States requests that the Court declare this case an unusual and complex case under 18 U.S.C. §3161(h)(8)(A) and (B)(ii), finding the case outside the boundaries of the traditional time line in criminal procedure, and holding the extra time needed to prepare as excludable.  The United States also requests that the court set a status hearing, with all attorneys present, to discuss the setting of the deadlines for discovery, motions,  hearings,  and jury trial in this matter.

<div style="margin-left:50%">

Respectfully submitted,

BARRY R. GRISSOM
United States Attorney

S/Aaron L. Smith
AARON L. SMITH, #20447
Assistant U.S. Attorney
1200 Epic Center, 301 N. Main
Wichita, Kansas 67202
Telephone: (316) 269-6481
Fax: (316) 269-6484
E-mail: aaron.smith3@usdoj.gov

</div>

5

CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this case.

S/Aaron L. Smith
AARON L. SMITH
Assistant U.S. Attorney

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-CR-10089-02-MLB |
| | ) | |
| | ) | |
| PEDRO GARCIA, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S RESPONSE TO
PLAINTIFF'S MOTION FOR DESIGNATION OF CASE AS COMPLEX AND
REQUESTING EXCLUDABLE TIME COMPUTATIONS**

COMES NOW John Val Wachtel of Klenda Austerman, LLC, court appointed counsel for Pedro Garcia, and hereby notifies the court that Mr. Garcia has no objection to the government's Motion for Designation of Case as Complex and Requesting Excludable Time Computations.

Respectfully submitted,

s/John Val Wachtel
John Val Wachtel
S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN, LLC
301 N. Main St., Ste. 1600
Wichita, KS  67202-4816
Tele.:  (316) 267-0331
Fax:  (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of July, 2012, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

s/John Val Wachtel

Klenda Doc. 20L3142

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-CR-10089-02-MLB |
| | ) | |
| | ) | |
| PEDRO GARCIA, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION TO CONTINUE
AND EXTEND PRETRIAL DEADLINES AND DATES**

**Defendant Garcia's First Motion**

COMES NOW John Val Wachtel of Klenda Austerman, L.L.C., court appointed counsel for Pedro Garcia, and moves this court for an order continuing and extending the deadlines and dates established in the General Order of Discovery and Scheduling (ECF 221). In Support of his motion, Mr. Garcia shows the court the following:

1. Mr. Garcia and some twenty-two other defendants are charged in a multiple count Indictment. *See* Indictment, Doc. 1. Count 1charges all defendants with having violated the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. 1962(d). *Id*. Count 2 charges various violent crimes in aid of racketeering in violation of 18 U.S.C. 1959(a)(5); more specifically the Count charges Mr. Garcia and three other defendants conspired to murder Israel Peralta, Mariano Sorano, Faustino Peralta and Robert Arco. *Id*.

2. Count 3 Charges Mr. Garcia and three other defendants with the murder of Isreal Peralta, in violation of 18 U.S.C. 1959(a)(1). *Id*. Count 4 charges Mr. Garcia and three other defendants with the attempted murders of Mariano Sorano, Faustino Peralta and Robert Arco, in violation of 18 U.S.C. 1959(a)(5). *Id*.

3.  Count 5 charges Mr. Garcia and three other defendants with assault with dangerous weapons In violation of 18 U.S.C. 1969(a)(3)  *Id*. Count 6 charges Mr. Garcia and three other defendants with possession/discharge of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. 924(c)(1)(A).  *Id*.

4.  Count 7 charges Mr. Garcia and the three other defendants with committing a violent crime in aid of racketeering, specifically assault with a dangerous weapon upon Isidro Raleas-Velasquez, in violation of 18 U.S.C. 1969(a)(3).  *Id*.  Count 8 charges Mr. Garcia and those same other defendants with conspiracy to commit and assault with a dangerous weapon upon Mr. Raleas-Velasquez, in violation of 18 U.S.C. 1959(a)(6).  *Id*.  Count 9 charges Mr. Garcia and those same co-defendants with possession and brandishing a firearm in furtherance of a crime of violence, in particular an aggravated robbery, in violation of 18 U.S.C. 924(c)(1(A).  *Id*.

5.  The Indictment contains a section titled "NOTICE OF SPECIAL FINDINGS."  *Id*. That section states that Pedro Garcia and Gonzalo Ramirez, as to Count 3:

(1) Were both 18 years of age or older at the time of the offense.  Title 18 United States Code § 3591(a).
(2)  Intentionally killed Isreal Peralta. Title 18 United States Code § 3591(a)(2)(A).
(3)  Intentionally inflicted serious bodily injury that resulted in the death of Isreal Peralta.  Title 18 United States Code § 3591(a)(2)(B).
(4)  Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the homicide offense and Isreal Peralta dies as a direct result of the act.  Title 18 United States Code § 3591(a)(2)(C).
(5)  Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the homicide offense, such that participation in the act constituted a reckless disregard for human life, and Isreal Peralta died as a direct result of the act.  Title 18 United States Code § 3591(a)(2)(D).
(6)  In the commission of the offense knowingly created a grave risk of death to one or more persons in addition to the victim of the offense.  Title 18 United States Code § 3592(c)(5).
(7)  Intentionally killed or attempted to kill more than one person in a single criminal episode. Title 18 United States Code § 3592(c)(16)

Pursuant to Title 18, United States Code, Sections 3591 and 3592.

2

*Id.* Pursuant to the Complaint and pursuant as well to the Notice of Special Findings, if Mr. Garcia is convicted of the alleged murder of Peralta, <u>Mr. Garcia could face the death penalty</u>.

6. The government has filed a motion requesting that the Court designate the above captioned case a complex case pursuant to 18 U.S.C. § 3161(h)(8)(A) and (B)(ii). *See* Doc. 229. Mr. Garcia and his counsel agree with the government's statement that preparation of this case will require extensive time for review of voluminous documents and forensic evidence and investigation by defense counsel.

7. The defense anticipates filing a number of pretrial motions, including motions addressing the admissibility of conversations and out-of-court statements of alleged co-conspirators. These motions are presently due on August 15, 12012 under the present schedule.

8. The defense also contemplates filing motions and notices pursuant to Fed. R. Crim. P. 12(b)(3)(A) and (B), 12.2 and 12.3. These motions are due on July 26, 2012.

9. As this case progresses, the defense anticipates filing challenges to the death penalty. Moreover, the investigation of the facts and the aggravating and mitigating circumstances will be a long, arduous and time consuming project.

10. It is impossible for defense counsel to file pretrial motions under the current schedule. Mr. Garcia has only lately received partial discovery (i.e., police reports and evidence logs) from the government concerning the events described in Counts 2 through 9, and perhaps the Notice of Special findings. The defense has not received any discovery concerning the methods and means of the operation of the alleged Nortenos gang or of Mr. Garcia's alleged involvement in the gang. The defense requires time to investigate the events and facts alleged in the Indictment prior to filing any pretrial motions. The defendant also requires this time to develop the facts and determine what disclosures, if any, must be made by the defendant.

WHEREFORE, the undersigned defense counsel respectfully request that the court continue the present deadlines in the scheduling order and set a status conference with counsel to discuss reasonable and appropriate deadlines for filing pretrial motions and making discovery.

Respectfully submitted,

s/John Val Wachtel

John Val Wachtel
S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN, LLC
301 N. Main St., Ste. 1600
Wichita, KS  67202-4816
Tele.:  (316) 267-0331
Fax:  (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

s/Charles M. Rogers

Charles M. Rogers
KS Fed. No. 70185
Attorney for Defendant Jason L. Tisdale
WYRSCH HOBBS MIRAKIAN, P.C.
1000 Walnut St., Suite 1600
Kansas City, MO 64106
Tele:  (816) 221-0080
Fax:  (816) 221-3280
E-mail:  acquit@whmlaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of July, 2012, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

s/John Val Wachtel

John Val Wachtel

20M6461

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**
**(Wichita Docket)**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **Plaintiff,** | } | **Criminal Action** |
| | } | |
| v. | } | **No. 12-10089 -01-23-MLB** |
| | } | |
| **JASON NAJERA,** | } | |
|   a.k.a. Ene, | } | |
|   a.k.a. Norte, | } | |
| **PEDRO GARCIA,** | } | |
|   a.k.a. Peter Garcia, | } | |
|   a.k.a. Pistol Pete, | } | |
| **GONZALO RAMIREZ,** | } | |
|   a.k.a. Gonzo, | } | |
| **RUSSELL WORTHEY,** | } | |
|   a.k.a. Blanco, | } | |
| **ANTHONY WRIGHT,** | } | |
|   a.k.a. Huesos, | } | |
| **JOSHUA FLORES,** | } | |
|   a.k.a. Big Knox, | } | |
| **JESUS FLORES,** | } | |
|   a.k.a. Tito, | } | |
| **ANGEL CERDA,** | } | |
|   a.k.a. Shrek, | } | |
| **JUAN TORRES,** | } | |
|   a.k.a. Bugsy, | } | |
| **ALFREDO BELTRAN-RUIZ,** | } | |
|   a.k.a. Deuce-Deuce, | } | |
| **DONTE BARNES,** | } | |
|   a.k.a. Snipes, | } | |
|   a.k.a. Snipe, | } | |
|   a.k.a. Sniper, | } | |
| **JESUS SANCHEZ,** | } | |
|   a.k.a. Drac, | } | |
|   a.k.a. Dracula, | } | |
| **ENRIQUE GOBIN,** | } | |
|   a.k.a. Ricky, | } | |
|   a.k.a. Sonny Boy, | } | |

| | |
|---|---|
| **ALFONSO BANDA-HERNANDEZ,** | } |
| a.k.a. Fonso, | } |
| **ANDREW GUSMAN,** | } |
| a.k.a. Beaver, | } |
| **EUSEBIO SIERRA-MEDRANO,** | } |
| a.k.a. TC, | } |
| **JAYSON VARGAS,** | } |
| a.k.a. Wee Wee, | } |
| **ADAM FLORES,** | } |
| a.k.a. Little Lazy, | } |
| **FABIAN NEAVE,** | } |
| a.k.a. Puppet, | } |
| **JESUS TORRES,** | } |
| a.k.a. Rabbit, | } |
| **JOSE NEAVE,** | } |
| a.k.a. Caiyo, | } |
| **HERNAN QUEZADA,** | } |
| a.k.a. Cheese, | } |
| a.k.a. Cartoon, | } |
| **HUMBERTO ORTIZ,** | } |
| a.k.a. Beto, | } |
| **Defendants.** | } |

## ORDER FOR CASE DESIGNATION AS COMPLEX AND ORDERING EXCLUDABLE TIME COMPUTATIONS

The United States of America, has moved for an order of the court designating this

case as complex and unusual, and requesting that a status hearing be held to allow the

Court to set a schedule for discovery, the filing of motions, the setting of hearings and

the setting of jury trial in an expanded time frame which would include designating the

time in excess of normal limits as excludable time under 18 U.S.C. § 3161(h)(7)(A) and (B)(ii).

This request and motion is due to the unusual and complex nature of this case. The

United States asks the court to find that the ends of justice served by granting this

motion, which if granted, would ultimately result in a continuance from a normal time

frame for trial, outweigh the interest of the public and the defendants in a speedy trial,

and to grant a continuance and a speedy trial exclusion, all under 18 U.S.C. § 3161(h)(7)(A), (B)(ii).

The United States has represented the following as factors which justify a finding that this is an unusual and complex case:

(1)  There are 23 current defendants in this case.  Several other cases have been filed including members of the same RICO enterprise, and there is some necessary interaction of the case management of those cases and the current indictment.  A trial date of August 28, 2012 has been set.

(2)  There is a large volume of evidence which defense counsel will need to review and discuss with the defendants.  This includes multiple different crimes occurring over a period of several years.

(3)  The indictment is based upon the existence of a enterprise conspiracy based upon RICO and VCAR definitions, and defense counsel will have a large volume of discovery to interpret to explore the existence of those conspiracies.

(4)   There is an allegation involving a murder for which the death penalty can be imposed.  Currently, two defendants have been advised of special allegations making them eligible for the death penalty.  These defendants are Pedro Garcia and Gonzalo Ramirez.  The Department of Justice has not issued the final determination as to whether the death penalty is to be sought in this prosecution.  Defense counsel for Pedro Garcia and Gonzalo Ramirez do not object to the case being declared complex.

With the exception of Hernan Quezada, there are no objections to the government's motion and the response deadline has now passed.  (Docs. 231, 234, 238, 240, 242, 243, 245, 246, 247, 249).  The court is satisfied that the government has made a sufficient representation to

the court to warrant granting the motion.

Because of these factors, the court finds this case is so unusual and so complex, due to the number of defendants, the number of counts charged in the indictment,  and the nature of the prosecution, that it is unreasonable to expect adequate preparation for pretrial proceedings and for the trial itself within the time limits established by 18 U.S.C. § 3161.

Accordingly, under 18 U.S.C. § 3161(h)(7)(A) and (B)(ii), the court finds that the ends of justice served by granting this continuance outweigh the interest of the public and the defendants in a speedy trial, for the reasons stated herein.

IT IS THEREFORE ORDERED that a status hearing is set for August 20, 2012, at 2:30 p.m. in order to set up a schedule for discovery, filing of motions and responses, pretrial hearing and for jury trial.  Defendants do not need to appear.

IT IS FURTHER ORDERED that, for the reasons previously stated herein, the period of time from the date of this order until the date set for pretrial motions to be heard is excluded under 18 U.S.C. § 3161(h)(7)(A) and (B)(ii) in computing the time within which the trial of this case must commence.

ORDERED THIS 26th  day of July,  2012.

s/ Monti Belot
HONORABLE MONTI L. BELOT
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-02-03- MLB |
| | } | |
| PEDRO GARCIA, | } | |
| a.k.a. Peter Garcia, | } | |
| a.k.a. Pistol Pete, | } | |
| GONZALO RAMIREZ, | } | |
| a.k.a. Gonzo, | } | |

## NOTICE

Comes now the United States of America, by and through Assistant U.S. Attorneys

Aaron L. Smith and Lanny D. Welch, and hereby gives notice the United States will not

be seeking a penalty of death against defendants Pedro Garcia or Gonzalo Ramirez upon

their convictions for offenses charged in this matter.


  /s/ Aaron L. Smith
AARON SMITH
Asst. U.S. Attorney
District of Kansas
1200 Epic Center, 301 N. Main
Wichita, Kansas 67202
(316) 269-6481
(316) 269-6484 (fax)
Aaron.Smith3@usdoj.gov
KS. S. Ct. No. 20447

>  /s/ Lanny D. Welch
> LANNY D. WELCH
> Asst. U.S. Attorney
> District of Kansas
> 1200 Epic Center, 301 N. Main
> Wichita, Kansas 67202
> (316) 269-6481
> (316) 269-6484 (fax)
> Lanny.Welch@usdoj.gov
> KS. S. Ct. No. 13267

## CERTIFICATE OF FILING

The undersigned hereby certifies that on this 7th day of September 2012, a true and correct copy of the foregoing was filed electronically and a copy was transmitted to the following:

John V. Wachtel
Attorney for Defendant Garcia
301 N. Main, Suite 1600
Wichita, Kansas 67202

Charles Rogers
Attorney for Defendant Garcia
1000 Walnut, Suite 1600
Kansas City, Missouri 64106

Melody Evans
Asst. Federal Public Defender
Attorney for Defendant Ramirez
424 S. Kansas Avenue
Topeka, Kansas  66603

2

Kirk Redmond
Asst. Federal Public Defender
Attorney for Defendant Ramirez
500 State Ave., Suite 201
Kansas City, Kansas 66101


   /s/ Lanny D. Welch
LANNY D. WELCH
Asst. U.S. Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-01-23-MLB |
| | } | |
| JASON NAJERA | } | |
| a.k.a. Ene, | } | |
| a.k.a. Norte, | } | |
| PEDRO GARCIA, | } | |
| a.k.a. Peter Garcia, | } | |
| a.k.a. Pistol Pete, | } | |
| GONZALO RAMIREZ, | } | |
| a.k.a. Gonzo, | } | |
| RUSSELL WORTHEY, | } | |
| a.k.a. Blanco, | } | |
| ANTHONY WRIGHT, | } | |
| a.k.a. Huesos, | } | |
| JOSHUA FLORES, | } | |
| a.k.a. Big Knox, | } | |
| JESUS FLORES, | } | |
| a.k.a. Tito, | } | |
| ANGEL CERDA, | } | |
| a.k.a. Shrek, | } | |
| JUAN TORRES, | } | |
| a.k.a. Bugsy, | } | |
| ALFREDO BELTRAN-RUIZ, | } | |
| a.k.a. Deuce-Deuce, | } | |
| DONTE BARNES, | } | |
| a.k.a. Snipes, | } | |
| a.k.a. Snipe, | } | |
| a.k.a. Sniper, | } | |
| JESUS SANCHEZ, | } | |
| a.k.a. Drac, | } | |
| a.k.a. Dracula, | } | |
| ENRIQUE GOBIN, | } | |
| a.k.a. Ricky, | } | |
| a.k.a. Sonny Boy, | } | |

1

ALFONSO BANDA-HERNANDEZ,       }
   a.k.a. Fonso,                  }
ANDREW GUSMAN,                 }
   a.k.a. Beaver,                 }
EUSEBIO SIERRA-MEDRANO,        }
   a.k.a. TC,                     }
JAYSON VARGAS                  }
   a.k.a. Wee Wee,                }
ADAM FLORES,                   }
   a.k.a. Little Lazy,            }
FABIAN NEAVE,                  }
   a.k.a. Puppet,                 }
JESUS TORRES,                  }
   a.k.a. Rabbit,                 }
JOSE NEAVE,                    }
   a.k.a. Caiyo,                  }
HERNAN QUEZADA,                }
   a.k.a. Cheese,                 }
   a.k.a. Cartoon,                }
HUMBERTO ORTIZ,                }
   a.k.a. Beto,                   }
             Defendants.       }

## MOTION FOR ENTRY OF A
## PROTECTIVE ORDER GOVERNING DISCLOSURE

The United States of America, by Lanny D. Welch, Assistant United States Attorney, moves the Court for a protective order concerning certain information contained within the discovery in this matter, pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure. In support of its motion, the United States alleges as follows:

1. Discovery in this matter includes digital copies of voluminous documents. As part of its discovery obligations the Government intends to provide the defense with digital copies of the materials.

2

2.  The data will include documents that contain personal identifying information of the defendants and other individuals.  It is the policy of the U.S. Department of Justice to not disclose such information unless specifically required by the Court, Rule 16, or *Brady/Giglio*.

3.  Due to the volume of documents, redaction would consume many hours.

4.  Instead of requiring defense counsel to come in person to the U.S. Attorney's Office to view unredacted copies of documents, the United States is requesting the entry of a protective order.  The United States is requesting a protective order which would prevent the defendants and defense counsel from using the information provided by the Government for any purpose other than litigation, to not disseminate the information to any other person, and defense counsel agree that, although they are free to show their clients personal identifying information of other individuals while consulting with their respective client in person, they will not provide the defendant with physical copies of the information or allow the defendant to take notes that include any other individual's personal identifying information.   Defense counsel would be permitted to make physical copies of documents containing personal identifying information, so long as the documents are not disseminated and are destroyed upon completion of litigation in this matter.  Defense counsel would also be permitted to provide the documents to any retained expert witness, provided counsel informs the witness of the terms of the protective order, and the expert witness agrees to be bound by the terms.

5.  The United States requests the parties comply with Federal Rule of Criminal Procedure 49.1 relative to any document they intend to use as an exhibit at trial or which they provide in public filings.

3

6.  Within 90 days of the final conclusion of this litigation, the United States requests each defendant submit a letter to the United States Attorney's Office certifying they have destroyed or otherwise properly disposed of this material.

7.  Federal Rule of Criminal Procedure 16(d)(1) states, in part, "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."

WHEREFORE, the United States requests the Court enter a protective order as requested in this motion.

Respectfully submitted,
BARRY R. GRISSOM
UNITED STATES ATTORNEY


/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov


CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of September, 2012, I electronically filed the foregoing response with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Lanny D. Welch
LANNY D. WELCH
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-01-23-MLB |
| | } | |
| JASON NAJERA | } | |
|   a.k.a. Ene, | } | |
|   a.k.a. Norte, | } | |
| PEDRO GARCIA, | } | |
|   a.k.a. Peter Garcia, | } | |
|   a.k.a. Pistol Pete, | } | |
| GONZALO RAMIREZ, | } | |
|   a.k.a. Gonzo, | } | |
| RUSSELL WORTHEY, | } | |
|   a.k.a. Blanco, | } | |
| ANTHONY WRIGHT, | } | |
|   a.k.a. Huesos, | } | |
| JOSHUA FLORES, | } | |
|   a.k.a. Big Knox, | } | |
| JESUS FLORES, | } | |
|   a.k.a. Tito, | } | |
| ANGEL CERDA, | } | |
|   a.k.a. Shrek, | } | |
| JUAN TORRES, | } | |
|   a.k.a. Bugsy, | } | |
| ALFREDO BELTRAN-RUIZ, | } | |
|   a.k.a. Deuce-Deuce, | } | |
| DONTE BARNES, | } | |
|   a.k.a. Snipes, | } | |
|   a.k.a. Snipe, | } | |
|   a.k.a. Sniper, | } | |
| JESUS SANCHEZ, | } | |
|   a.k.a. Drac, | } | |
|   a.k.a. Dracula, | } | |
| ENRIQUE GOBIN, | } | |
|   a.k.a. Ricky, | } | |

a.k.a. Sonny Boy,                           }
ALFONSO BANDA-HERNANDEZ,                     }
  a.k.a. Fonso,                             }
ANDREW GUSMAN,                              }
  a.k.a. Beaver,                            }
EUSEBIO SIERRA-MEDRANO,                      }
  a.k.a. TC,                                }
JAYSON VARGAS                               }
  a.k.a. Wee Wee,                           }
ADAM FLORES,                                }
  a.k.a. Little Lazy,                       }
FABIAN NEAVE,                               }
  a.k.a. Puppet,                            }
JESUS TORRES,                               }
  a.k.a. Rabbit,                            }
JOSE NEAVE,                                 }
  a.k.a. Caiyo,                             }
HERNAN QUEZADA,                             }
  a.k.a. Cheese,                            }
  a.k.a. Cartoon,                           }
HUMBERTO ORTIZ,                             }
  a.k.a. Beto,                              }
                    Defendants.             }

## UNITED STATES' DISCLOSURE OF ANTICIPATED EXPERT WITNESSES

Comes Now the United States of America, by and through Assistant U.S. Attorneys

Aaron L. Smith and Lanny D. Welch, and pursuant to Federal Rule of Criminal Procedure

16(a)(1)(G), hereby discloses its anticipated expert witnesses:

**Qualifications of expert witnesses:**

*Investigators:*

Jimmie "J.L." Bice – See attached *curriculum vitae*
Shane Webb – See attached *curriculum vitae*
James Nau – See attached *curriculum vitae*

- 2 -

*Pathologist/Forensic Scientists:*

Bamidele Adeagbo – See attached *curriculum vitae*
Harold Riddle – See attached *curriculum vitae*
Eric Moore – See attached *curriculum vitae*
Jessica Ziepfel – See attached *curriculum vitae*
Dawn Ford – See attached *curriculum vitae*
James Newman – See attached *curriculum vitae*
Holly Latham – See attached *curriculum vitae*
Jessica Kaiser - See attached *curriculum vitae*
Justin Rankin - See attached *curriculum vitae*
Leanora Bender - See attached *curriculum vitae*

*Firearms/ballistics identification/interstate nexus experts:*

Neal Tierney – See attached *curriculum vitae*
Doug Monty - See attached *curriculum vitae*
David Wright - See attached *curriculum vitae*
Justin Rankin - See attached *curriculum vitae*
Arnold Esposito - See attached *curriculum vitae*

**Matters as Shown in the Discovery Material**

The government incorporates by reference herein all of the discovery materials previously provided to counsel as part of the basis of knowledge of this investigator or these investigators.

**Gang testimony**

The witnesses may testify concerning the methods used by law enforcement to identify gang members and their associates.  The witnesses may testify concerning the history, makeup, and practices of the Nortenos street gang and its subsets in Dodge City, Kansas and elsewhere.  This testimony may include the hierarchy of the leadership of the subsets of the gang and the roles various members play within the gang, and the methods and means by which gang members who violate rules of the gang are punished and crimes commonly committed by members and associates of the gang.  Witnesses may identify rival

gangs to the Nortenos and its subsets and the identification of members of those rival gangs. *(See: United States v. Chavful*, 100 Fed. Appx. 226, 2004 WL 737606 (5th Cir. 2004).

The witnesses may testify concerning the primary purposes of the Nortenos street gang and its subsets. (*See: United States v. Robinson*, 978 F.2d 1554, 1563 (10th Cir. 1992; *United States v. Roach*, 582 F.3d 1192, 1206-07 (10th Cir. 2009)). This testimony may include the means and methods utilized by the gang in furthering the purposes of the gang. The witnesses may testify concerning how the Nortenos street gang and its subsets distinguish themselves from other street gangs. This testimony may include, but is not limited to, the usage of color-specific clothing items, symbols, numbers, hand signals, graffiti, tattoos, nicknames, language and writing that is specific to the Nortenos and its subsets. This testimony may include the translation of slang terms.

The witnesses may testify that gang members carry or possess firearms for protection (of themselves, other gang members and/or their property which includes drugs and/or money), to enhance the gang's and their reputations, and to commit crimes (including but not limited to drive-by shootings, robberies, assaults, attempted murders, murders and/or retaliatory shootings).

The witnesses may testify about how and why gang members respond to insults or threats, explaining that an insult or threat to a gang member threatens his or the gang's reputation. If the gang or its members do not respond to the insult or threat, the gang itself will appear weak. A violent response by a gang member sends the message to others that if someone challenges the gang or reports the gang to the police, he or she will be dealt with in a violent manner. This message not only instills a sense of fear in others (including non-gang members who live or work in close proximity to gang activity), but also garners respect for the gang among other gangs and potential recruits.

The witnesses may testify that gangs have an interest in and need for establishing a reputation for being tough. The existence of such a reputation gives a gang the power of intimidation over witnesses and other gangs. The stronger the reputation, the greater the power. If a gang has an established reputation for violence, witnesses (to the criminal activity of the gang and its members) will be hesitant to report a gang's criminal behavior and rival gangs will be hesitant to

attack them.  Possessing this power, in turn, makes it easier for a gang to commit crimes for financial gain.

The witnesses will testify that conduct constituting violations in the gang include not hanging out with the gang enough or failing to attend meetings, associating with a rival gang member, not taking action during an altercation and/or not doing what you are told to do (a mission).  The witnesses may offer their opinion as to the primary purposes of the Nortenos street gang and its subsets.  This testimony will include the means and methods utilized by the gang in furthering the purposes of the gang.  The witnesses may also testify that the Nortenos and rival gangs generally refuse to cooperate with law enforcement even when they are the victims of gang crime.

There is a significant population of Guatemalan immigrants living in Dodge City, Kansas who come to the area to work in the meat packing industry.  Many of these immigrants are in the United States illegally. The witnesses may testify about Guatemalan immigrants living in Dodge City being a frequent target of the Nortenos and their subsets for robbery and assault because these immigrants ordinarily do not use banks so they keep large quantities of money in their residences.  Many Guatemalan immigrants send money to their families in Guatemala so they frequently save quantities of money which they plan to wire to their families.  Because many of these immigrants are in the United States illegally they are reticent to report being the victim of a crime to law enforcement out of fear of being identified as illegal and deported.  They also tend to be small in stature and not likely to possess firearms and are viewed by gang members as compliant and not likely to fight back.

**Tools of the Trade**

The witnesses may testify, based upon their training and experience, that certain items constitute "tools of the trade" for gang members and drug dealers. *(See: United States v Martinez*, 938 F.2d 1078 (10th Cir. 1991)).  These items may include, but are not limited to, firearms, sums of cash, weighing scales, packaging materials, debt lists, and uncharged quantities of illegal drugs.

- 5 -

**Drug distribution**

The witnesses will likely testify that drug distribution is one of the illegal activities engaged in by members of the Nortenos and its subsets. The witnesses may testify concerning the differences between drug users, user-dealers and dealers. (*See: United States v. Peach*, 1997 WL 282867 (10th Cir. 1997, unpublished) *cert denied,* 522 U.S. 974 (1997)); the jargon used in drug trafficking (*See: United States v. Quintana*, 70 F.3d 1167, 1170-71 (10th Cir. 1995)); the street prices typically paid for illegal drugs, the quantities that are typically possessed by users and dealers and whether a particular amount is intended for distribution or personal use. (*See: United States v. Muldrow*, 19 F.3d 1332, 1338 (10th Cir. 1994).

Dealers often maintain such paraphernalia for drug distribution and packaging as plastic baggies, scales, cutting agents, laboratory glassware, and hypodermic needles. Often the drug investigator will find the remains of plastic baggies and plastic baggie corners, which is the common method in this location of packaging drugs. For communication purposes, drug dealers will use cell-phones.

**Additional Disclosures**

The United States anticipates additional expert witnesses may be utilized at trial. Once their identities are known and the substance of their testimony is identified, their reports and curriculum vitae (CV) will be disclosed. In some cases, their reports have been included as part of discovery but their CV has not yet been obtained but will be disclosed once received. It is also possible additional reports have yet to be completed. They will be disclosed once they are received.

**Miscellaneous Matters**

In addition, the government incorporates into this notice the written laboratory reports and officer reports filed in this matter and their supporting documentation supplied to counsel.

Respectfully submitted,
BARRY R. GRISSOM
UNITED STATES ATTORNEY


/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov


/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith@usdoj.gov


CERTIFICATE OF SERVICE

    I hereby certify that on the 21st day of September, 2012, I electronically filed the

foregoing United States' Disclosures of Anticipated Expert Witnesses with the clerk of the court

by using the CM/ECF system, which will send a notice of electronic filing to all counsel of

record.


/s/ Lanny D. Welch

# *CURRICULUM VITAE*
# OF EXPERT WITNESSES

Jimmie L. "J.L." Bice
110 W. Spruce St.
Dodge City, Kansas 67801
Phone: (620) 225-8126

**Introduction**

Detective J.L. Bice is currently a detective with the Dodge City Police Department in Dodge City, Ford County, Kansas. He is currently assigned cases in all aspects and areas of short term and long term investigations, but primarily works narcotics and violent street gang crimes.

Detective Bice has approximately fifteen (15) total years in law enforcement. He began his law enforcement career in the United States Army at Fort McClellon, Alabama by successfully completing Army Basic Training and Army Military Police School in 1983. He then completed a voluntary twenty-six (26) month tour of duty in the Republic of Korea, where he was assigned to the 260th Military Police Co, 728th Military Police Bn, 8th U.S. Army, at Camp Carroll. For approximately eight (8) months he was assigned patrol duties (on and off compound), physical security, special assignments (route reconnaissance, transportation security for sensitive military equipment, and VIP security), and combat field training exercises. Detective Bice was then detached to the U.S. Army Criminal Investigation Command (CID) Camp Carroll Branch Office, where he was originally assigned as the Criminal Information Coordinator (CIC). These duties included the collection, compilation, and dissemination of criminal information. He also had his first opportunity to work as an undercover operative for the CID Drug Suppression Team for a short period of time. Then due to an increase in case load at the Camp Carroll CID Branch Office Detective Bice was sent to Military Police Investigator Course in Seoul. Upon successfully completing the school he returned to Camp Carroll CID Branch Office and assisted in investigations along with his CIC duties.

Upon Detective Bice's completion of his military commitment he served approximately seventeen (17) months as a Detention Officer at the San Juan County Detention Center in Aztec, San Juan County, New Mexico. His main duties were the direct supervision of inmates in Maximum, Medium, Minimum (Trustee), Holding, and Booking sections of the approximate 250 bed facility.

From 1987 to 1995 Detective Bice pursued other employment opportunities which led to supervisory positions such as Machine Forman, Welding Forman, and a Service Manager in a motorcycle dealership from 2000 to 2005.

In 1995 Detective Bice was employed with the Ford County Sheriff's Office as a Patrol Deputy conducting rural patrol and short term investigations. In 1997 he was promoted to the rank of Corporal and assumed supervisory duties in the absence of the Patrol Sergeant, and then in 1998

he was promoted to the rank of Sergeant. As a Patrol Sergeant, Detective Bice assumed the duties of the Lieutenant in his absence and the immediate supervision of the Patrol Deputies, Detention Officers, and Records Clerks for that shift and held that position until June of 2000.

Detective Bice also served approximately three (3) years on the Ford County Sheriff's Office Special Enforcement Division (SED), high risk tactical team in various capacities including Scout, Entry Specialist, Impact Weapons Specialist, Chemical Specialist, and Diversionary Specialist. During this time Detective Bice participated in numerous high risk tactical breeches and barricaded suspect calls.

In 2005 Detective Bice returned to the Ford County Sheriff's Office as a Patrol Deputy and achieved the rank of Master Deputy in six (6) months.

In 2006 Detective Bice accepted a position with the Gray County Sheriff's Office as a Patrol Deputy and was promoted to Investigator in January of 2007 which he held until June of 2008. During his employment as an Investigator he conducted investigations in all areas and was directly responsible for the identification and prosecution of two (2) clandestine methamphetamine manufacturing labs in Gray County. He was also involved in investigations which led to working with the Drug Enforcement Agency (DEA). This activity led to a temporary assignment in assisting with drug related investigations with the Kansas Bureau of Investigation (KBI) Southwest Kansas Drug Task Force. While working with the DEA and KBI Drug Task Force and CID, Detective Bice has been involved in multiple purchases of illegal drugs which have led to successful state and federal prosecutions. Detective Bice maintained this position until his employment with the Dodge City Police Department on June 23, 2008.

## A. LAW ENFORCEMENT EMPLOYMENT

| | |
|---|---|
| Employed with Dodge City Police Department | June 23, 2008 to Present |
| Employed with Gray County Sheriff's Office | June 2006 to June 2008 |
| Employed with Ford County Sheriff's Office | June 2005 to June 2006 |
| Employed with Ford County Sheriff's Office | April 1995 to June 2000 |
| Employed with San Juan County Detention Center (New Mexico) | January 1986 to June 1987 |
| Employed with the United States Army | 1982-1985 |

## B. EDUCATION

| | |
|---|---|
| Garden City Community College | May 20, 1996-Aug 1, 1996 |
| | Jan 21-22, 2006 |
| Dodge City Community College | 1995-1999 |
| Kansas Law Enforcement Training Center | 1996 |
| Military Police Investigator Course | Apr 8-26, 1985 (110 Hrs) |
| Central Texas College (Overseas Campus) | 1983-1984 |
| Military Police School | Feb. 25, 1982-Jun. 15, 1983 |
| Tucumcari High School | 1980-1982 |
| Summit High School | 1980 |
| South Park High School | 1978-1980 |

**C. PROMOTIONS**

| | |
|---|---|
| Detective for Dodge City P.D. | June 23, 2008 |
| Investigator for Gray County S.O. | January, 2007 |
| Master Deputy for Ford County S.O. | January, 2006 |
| Patrol Sergeant for Ford County S.O. | February 16, 1998 |
| Patrol Corporal for Ford County S.O. | January 6, 1997 |

**D. TRAINING**

1. General

| | |
|---|---|
| Background Investigation for Police Applicants | Jan 9-10, 2012 (12 Hrs) |
| Asset Forfeiture in Kansas | Sep. 14, 2011 (4 Hrs) |
| Computer Voice Stress Analyst Re-Certification | Jul. 26-28, 2011 (24 Hrs) |
| Computer Voice Stress Analyst Certification | Nov. 16-20, 2009 (52 Hrs) |
| Incident Command System (ICS-300) | Nov. 9-10, 2009 (16 Hrs) |
| Incident Command System (ICS-200a) | Oct. 6, 2009 (3 Hrs) |
| Visions of Courage, Dealing w/Tragic Events (KGIA Con) | Feb. 6, 2009 (4 Hrs) |
| An Inside Look at Undercover Investigations (KGIA Con.) | Feb. 4, 2009 (4 Hrs) |
| School Threat Assessment (KGIA Conference) | Feb. 3, 2009 (2 Hrs) |
| Response to School Violence & Terrorism | Jun. 2-3, 2008 (16 Hrs) |
| Kinesic Interview & Interrogations Phase I & II | Jan 14-18, 2008 (40 Hrs) |
| Interview & Interrogation (MOCIC) | May 17-19, 2006 (14 Hrs) |
| Emergency Vehicle Operation Level I | Jan. 21-22, 2006 (14 Hrs) |
| National Incident Management System (ICS-700) | Feb. 7, 2006 (3 Hrs) |
| Incident Command System (ICS-100) | Feb. 7, 2006 (3 Hrs) |
| Hazardous Materials Recognition & Identifying | Sep. 9, 1996 (4 Hrs) |
| Emergency Vehicle Operation | Aug 29, 1996 |
| Military Police Investigator Course | April 8-26, 1985 (110 Hrs) |

2. Medical

| | |
|---|---|
| EMT-B to EMT Transition Course | Mar 29-Apr 7, 2011 (24 Hrs) |
| Ellis County EMS Seminar | Oct. 28-29, 2006 (15 Hrs) |
| Medical Management of the Contaminated Patient | Dec. 20, 2005 (16 Hrs) |
| Emergency Medical Technician (Kansas) | Jun. 30, 2005 |
| *Emergency Medical Technician (National) | Jun. 4, 2005 |
| CPR/First Aid | October 2, 1996 |

3. Defensive Tactics

| | |
|---|---|
| Pressure Point Control Tactics | Jul. 11-12, 2012 (16 Hrs) |
| Controlled Force (Phase I) | Apr. 14, 2009 (8 Hrs) |
| Taser X26 (Recertification) | Apr. 7, 2009 |
| Taser X26 | Sep. 9, 2008 |
| OC Pepper Spray | Sep. 9, 1997 (4 Hrs) |
| Quik-kuf Level II Advanced Course | Jan. 6, 1996 |
| ASP Expandable Baton | 1995 |

4.  Sexual Assault/Rape
    Rape & Sex Crime Investigation                          Jul. 16-17, 2007
    Response to Rape & Sexual Assault Victims               Sep. 22, 1997 (4 Hrs)

5.  Supervisory
    Field Training Officer (FTO)                            Mar. 13-15, 2006
    Sheriffs' Administration & Management Seminar           Feb. 1-3, 1999 (18 Hrs)
    Basic Supervision Seminar                               Date Unknown

6.  Tactical
    Basic Tactical Entry                                    Jan. 15, 1998 (22 Hrs)

7.  Firearms
    Patrol Rifle (M&P 15T .223 Cal. Assault Rifle)          Nov. 3, 2011 (5 Hrs)
    Glock Armorer's Course                                  Jul. 15, 2010 (8 Hrs)
    Glock Armorer's Course                                  Jan. 18, 2007 (8 Hrs)
    Glock Armorer's Course                                  Jun. 22, 1999 (8 Hrs)
    9mm Colt Submachine Gun (SMG)                           Jun. 18, 1998 (20 Hrs)
    FBI Range Master's School                               Aug. 11-15, 1997 (40 Hrs)

8.  Military Firearms and Weapons
    M16 .223 cal. Assault Rifle                             1982-1985 (All Inclusive)
    M1911 .45 cal. Pistol,
    M67 90mm Recoilless Rifle
    S&W Model 10 .38 Cal.Snub Nose Revolver
    M72 Light Anti Tank Weapon (LAW)
    M61 Fragmentation Grenade
    M60 7.62mm Machine Gun
    M18A1 Claymore Mine
    Smoke Grenades

9.  Crime Scene Investigations
    Practical Homicide Investigations Seminar               Jul. 12-14, 2010 (22 Hrs)
    Techniques of Electrostatic Lifting at Crime Scenes     Aug. 22, 2009 (2 Hrs)
    Process & Recovery of High Volume Shoe Impressions      Aug. 20, 2009 (1.5 Hrs)
    Evidence Detection with a Forensic Light                Aug. 20, 2009 (2 Hrs)
    Preparation for Buried Bodies and Surface Skeletons     Aug. 20, 2009 (4 Hrs)
    Bloodstain Pattern on Clothing                          Aug. 19, 2009 (4 Hrs)
    Size, Shape & Surface Effects in Bloodstain Patterns    Aug. 19, 2009 (4 Hrs)
    Tire Impression Identification                          Aug. 18, 2009 (5 Hrs)
    Trajectory Reconstruction Using Lasers                  Aug. 17, 2009 (2 Hrs)
    Autopsy & Gross Specimen Photography                    Aug. 17, 2009 (1.5 Hrs)
    Uxoricide and Crime Scene Staging                       Aug. 17, 2009 (1 Hr)
    Capital Murder Investigation                            Mar. 18, 1999 (16 Hrs)
    Crime Scene Investigation                               Feb 12, 1997 (7 Hrs)

10. Drugs & Alcohol

| | |
|---|---|
| One Pot Meth Cooks:  Hazards and Handling | Jan. 24, 2012 (8 Hrs) |
| Alcohol Beverage Control ID Training & Updates | Sep. 15, 2011 (1.5 Hrs) |
| Patron Saints of the Mexican Cartel | Aug. 9, 2011 (1 Hr) |
| Basic Clandestine Laboratory Safety Training | May 23-27, 2011 (32 Hrs) |
| Kansas Narcotics Officer Association Conference | Mar. 17-20, 2008 (24 Hrs) |
| Kansas Narcotics Officer Association Conference | Mar. 26-29, 2007 (24 Hrs) |
| Nark II Basic Drug Identification Skills | Nov. 7, 2005 |
| Nartec Meth-1 & CO-2 Detection Kits | Nov. 7, 2005 |
| DWI & Standardized Field Sobriety Testing | Mar. 11-13, 1999 (24 Hrs) |

11. GANGS

| | |
|---|---|
| "Straight Talk" White Pride & Neo-Nazism (KGIA) | Feb. 5, 2010 (2.5 Hrs) |
| Sureno and Norteno Migration (KGIA Conference) | Feb. 4, 2010 (3.5 Hrs) |
| Juggalos (KGIA Conference) | Feb. 4, 2010 (2 Hrs) |
| Gangs in the Military (KGIA Conference) | Feb. 4, 2010 (2 Hrs) |
| National Gang Overview: Prison Gangs (KGIA Conf.) | Feb. 3, 2010 (4 Hrs) |
| Border Violence (KGIA Conference) | Feb. 3, 2010 (3 Hrs) |
| Gang Prevention/Intervention (KGIA Conference) | Feb. 2, 2010 (2 Hrs) |
| Gangs 101 (KGIA Conference) | Feb. 2, 2010 (2 Hrs) |
| Local Gang Updates (KGIA Conference) | Feb. 6, 2009 (3 Hrs) |
| MySpace and Gangs on the Internet (KGIA Conference) | Feb. 5, 2009 (3 Hrs) |
| White Supremacist Groups and Extremism (KGIA Con.) | Feb. 5, 2009 (3 Hrs) |
| Hip Hop Music and Gang Culture (KGIA Conference) | Feb. 4, 2009 (3 Hrs) |
| Gangs 101 (KGIA Conference) | Feb. 3, 2009 (2 Hrs) |

**D. INSRUCTOR CERTIFICATIONS**

| | |
|---|---|
| Kansas Stalking Statute and Policy Train-The-Trainer Course | Jan. 26, 2009 (4 Hrs) |
| *Distraction Devices | May 18-22, 1998 |
| *Specialty Impact Munitions Instructor Certification | May 18-22, 1998 |
| *Chemical Munitions Instructor Certification | May 18-22, 1998 |
| *OC Aerosol Projectors Instructor Certification | May 18-22, 1998 |
| *National Rifle Association Police Firearms Instructor | Apr. 15, 1998 |
| *ASP Expandable Baton Instructor Course | Nov. 15, 1997 (4 Hrs) |

(* Expired)

### E. Awards & Accomplishments

| | |
|---|---|
| VFW Certificate of Appreciation | 2007-2010 |
| Certificate of Appreciation (Patriot Guard of Kansas) | May 2, 2006 |
| VFW Meritorious & Distinguished Service Award | Sep. 21, 1999 |
| Dodge City Community College Dean's Honor Roll | Spring Semester 1999 |
| FBI Range Master's School Proficiency Award | 1997 |
| KLETC Marksmanship Proficiency Award | 1996 |
| U.S.A. Letter of Recommendation (SSG Osborn) | Jun. 24, 1985 |
| U.S.A. Letter of Recommendation (WO1 Potter) | Jun. 10, 1985 |
| U.S.A. Letter of Recommendation (CW2 Keller) | May 29, 1985 |
| U.S.A. Letter of Recognition & Commendation (CPT. Harper) | Apr. 23, 1985 |
| U.S.A. Letter of Recognition & Commendation (LTC. Mills) | Apr. 23, 1985 |
| U.S.A. Letter of Recognition & Commendation (BG. Murray) | Apr. 18, 1985 |
| U.S.A. Letter of Recognition & Commendation (COL. Sherwood) | Apr. 11, 1985 |
| U.S. Army Nomination for Professional Excellence Award | Apr. 4, 1985 |
| U.S. Army Korean Defense Service Medal | 2006 |
| U.S. Army Certificate of Recognition for Cold War Service | 2006 |
| U.S. Army Expert Badge (.38 Cal. Pistol) | 1985 |
| U.S. Army Marksman Badge (.45 Cal. Pistol) | 1985 |
| U.S. Army Sharpshooter Badge (M-16 Rifle) | 1985 |
| U.S. Army Sharpshooter Badge (Hand Grenade) | 1985 |
| U.S. Army Achievement Medal | 1985 |
| U.S. Army Good Conduct Medal | 1985 |
| U.S. Army Overseas Service Ribbon | 1985 |
| U.S. Army Service Ribbon | 1983 |

### Reading Material (Personal Library)

Hell's Angels:  Into the Abyss, by: Yves Lavigne

Hell's Angel:  The Life and Times of Sonny Barger and the Hell's Angel's Motorcycle Club, by: Sonny Barger, Keith Zimmerman, and Kent Zimmerman

Mind Hunter, by:  John Douglas and Mark Olshaker

Under and Alone, by:  William Queen

## Shane R. Webb

Dodge City Police Department
110 W. Spruce
Dodge City, KS 67801
(620) 225-8135 (office)
(620) 339-5594 (cell)

# Curriculum Vita

**EDUCATION**

*05/1995*     Dodge City High School

05/1996     Dodge City Community College

12/1997     Hutchinson Community College
- Associates in Arts – Criminal Justice
- Emergency Medical Technician

*04/2005*     University of Kansas, Kansas Law Enforcement Training Center
- Full Time Law Enforcement Officer

**EMPLOYMENT**

*5/1999- 12/2005-*     Manager, Spare Tyme Bowl

*01/03/2005-*     Police Officer, Dodge City Police Department

**ACADEMY TRAINING**

*01/24/2005*     **KLETC Basic Full Time Law Enforcement Officer**
- **560 hours**

**Training topics included but are not limited to:**
- Emergency Vehicle Operation Course (E.V.O.C.)
- Basic Straight Baton
- O.C. Irritant Projector Certification including exposure
- Controlled burn of known marijuana for exposure to the odor
- Hazardous Material Recognition & Identification
- CPR / First Aid Infection Control
- Narcotics Investigation and Identification
- Kansas Law
- Supreme Court Rulings
- Search and Seizure
- Firearms
- Officer Safety
- Accident Investigation
- Report Writing
- Railway Crossing Accident Investigation
- Interview and Interrogation
- Building Searches
- Criminal Investigations
- Patrol Tactics

- Verbal Judo
- Gang Identification

*01/03/2005-07/18/2005*   **Dodge City Police Department Field Training Officer Program**
**•400 hours**

**Training topics included but are not limited to:**
- Emergency Vehicle Operation (E.V.O.C.)
- **Orcutt Police Nunchaku**
- O.C. Irritant Projector Certification including exposure
- CPR / First Aid Infection Control
- Narcotics Investigation and Identification
- Kansas Law
- Supreme Court Rulings
- Search and Seizure
- Firearms
- Officer Safety
- Accident Investigation
- Report Writing
- Railway Crossing Accident Investigation
- Interview and Interrogation
- Building Searches
- Criminal Investigations
- Patrol Tactics
  Gang Identification

**PATROL TRAINING**

01/00/2005  **Patrol Weapon Training**
- Dodge City Police Department – Cpl. Kocher
- 8 hours

*05/12/2005*  **Certified Operator of Kustom Doppler Traffic Radar**
- Dodge City Police Department – Sgt. Fleming
- 4hours

06/24/2005  **Patrol Rifle Training**
- Dodge City Police Department – Sgt. Morton
- 16 hours

01/13/2005  **CPR Certification**
- Dodge City Police Department – Officer Mooradian
- 8 hours

04/24/2006  **Basic Spanish for Law Enforcement**
- Midwest Counter Drug Training Center- Dr. Sam Slick
- 24 hours

04/11/2007  **CPR Recertification**
- Dodge City Police Department – Officer Mooradian
- 8 hours

07/24/2007  **Firearms Training Course**
- Dodge City Police Department – Sgt. Warren
- 1 hours

09/20/2007  **Defensive Driving**
- Library
- 2 hours

03/12/2009  **CPR Recertification**
- Dodge City Police Department – Officer Mooradian
- 2 hours

05/19/2009  **Interview and Interogation**
- Camp Dodge Iowa-Steve Rhodes
- 40 hours

**DUI TRAINING**

*08/19/2005* **Intoxilyzer 5000 Certification**
- Kansas Department of Health and Environment
- 8 hours

08/22/2006  **Intoxilyzer 5000 Certification**
- Kansas Department of Health and Environment-Cpl Thad Brown
- 1 hour

09/04/2007  **Intoxilyzer 5000 Certification**
- Kansas Department of Health and Environment-Cpl Thad Brown
- 1 hour

02/15/2008  **Intoxilyzer 8000 Certification**
- Kansas Department of Health and Environment-Cpl Thad Brown
- 4 hours

06/13/2008  **Standardized Field Sobriety Testing**
- Kansas Department of Health and Environment-Cpl Thad Brown
- 4 hour

**Narcotics Training**

09/09/2005  **Narcotic Test Kits Certification – Narco- Pouches & Swabs**
- Dodge City Police Department – Detective McClure
- 2 hours

03/27/2007  **Narcotics Operations and Undercover Work**
- 4 hours - Kevin Fitzpatrick

03/27/2007  **Dangers of Undercover Narcotics**
- 4 hours – Tim Lane

03/28/2007  **Narcotics Test Kit Certified Trainer - Narco- Pouches & Swabs**
- Kansas Narcotic Association –Jack Thorndike
- 4 hours

08/13/2007  **Highway Drug Investigations for Patrol**
- Midwest Counter Drug Training Center-Texas Department of Safety
- 40 hours

11/15/2007  **Introduction to Drug Investigations**
- MCTFT-Online
- 16 hours

11/15/2007  **Drug Identification**
- MCTFT-Online
- 16 hours

11/15/2007  **Airport Narcotics Investigations**
- MCTFT-Online
- 16 hours

11/15/2007  **Clandestine Laboratory Investigations**
- MCTFT-Online
- 16 hours

03/17/2008  **Kansas Narcotics Officers Association**
- 24 hours

11/20/2008  **Kansas Bureau of Investigation "Top Gun"**
- 40

11/22/2009  **NARTEC Certified Trainer – NARTEC Swabs**
- 2 hours

03/15/2010  **Kansas Narcotics Officers Association**
**Post interdiction, Mexican Drug Saints,**
**Mexican Cartels, Hotel Motel interdiction**
- 24 hours

08/10/2010  **Kansas Narcotics Officers Association**
**Post interdiction, Mexican Drug Saints,**
**Court Room Testimony**
- 8 hours

12/06/2010  **Basic Clandestine Laboratory Safety Training**
**NES Hays KS**
- 40 hours

01/24/2012  **One Pot Methamphetamine Hazards and Handling**
**NES Great Bend KS**
- 8 hours

08/27/2012  **Authorized Central Storage Program**
**Drug Enforcement Administration**
**Clandestine Laboratory Investigators Association**
- 16 hours

08/29/2012  **Mexican Drug Cartels**
**Drug Enforcement Administration**
**Clandestine Laboratory Investigators Association**
- 4 hours

08/29/2012  **Marijuana Grow Investigations**
**Clandestine Laboratory Investigators Association**
- 4 hours

08/30/2012  **Bath Salt and MDMA Synthesis Cook**
**Drug Enforcement Administration**
**Clandestine Laboratory Investigators Association**
- 4 hours

08/31/2012  **Bath Salt and Synthetic Marijuana**
**Drug Enforcement Administration**
**Clandestine Laboratory Investigators Association**
- 4 hours

**LEGAL TRAINING**

07/12/2005 **Search and Seizure**
- Judge Leigh Hood
- 2.5 hours

11/21/2008 **Search and Seizure and Narcotic Investigations**
- Judge Leigh Hood
- 3 hours

09/14/2011 **Asset Forfeiture in Kansas**
- KLETC
- 8 hours

12/02/2011 **Search and Seizure**
- ACA Scott James
- 3 hours

01/06/2012 **Problem Gambling Issues**
- Patrick Klecker
- 4 hours

01/09/2012 **Background Investigation for Police Applicants**
- Thomas Ward
- 12 hours

**LESS LETHAL TRAINING**

01/2005    **OC Deployment and Use of Force**
- Cpl. Slickers Dodge City P.D.
- 4 hours

*06/22/2005* **Advanced M26 Taser Certified**
- Dodge City Police Department – Detective Unruh
- 4 hours

07/05/2005 **Orcutt Police Nunchaku Basic Certification Course**
- Sgt. Russell Fleming, Dodge City P.D.
- 16 hours

04/04/2007 **Orcutt Police Nunchaku  Recertification**
- Dodge City Police Department- SCU Robert Stein
- 4 hours

07/18/2007 **Controlled F.O.R.C.E. Enhanced End User**
- Dodge City Police Department – Detective Drew Francis
**8 hours**

05/27/2008 **Taser Recertification**
- Dodge City Police Department- Sgt. Brooks, Cpl McGee
- 4 hours

04/14/2009 **Controlled F.O.R.C.E. Enhanced End User recert**
- Dodge City Police Department – Detective Drew Francis
**8 hours**

08/20/2010  **Basic Baton training using the ASP**
- Dodge City Police Department- GCPD Brandi Unruh
- 3 hours

10/14/2011  **Taser Recertification**
- Dodge City Police Department- Lt. Brooks, Cpl Gordon
- 4 hours

04/16/2012  **PPCT**
- Dodge City Police Department – Officer Justin Warkentin
- **16 hours**

**GANG TRAINING**

12/19/2005 **Prison Gangs**
- Wichita State University – David Starbuck
- 8 hours

09/18/2007 **Criminal Street Gangs**
- Midwest Counter Drug Training Center – Lou Savelli
- 24 hours

02/05/2007  1st **Kansas Gang Investigators Inaugural Conference-Topeka**
- Latino Gangs – Al Valdez
- 20 hours

03/28/2007 **How to Work Street Gangs**
- 4 hours Investigator Timmy McClure

11/15/2007  **Introduction to Conspiracy Gang Investigations**
- MCTFT-Online
- 16 hours

11/15/2007  **Street Gangs Overview**
- MCTFT-Online
- 16 hours

02/05/2007 **2nd Annual Kansas Gang Investigators Conference-Wichita**
- Latino Gangs, Conspiracy investigations, Tattoo ID
- 24

04/23/2008 **Gang Prosecution Techniques**
- Jerry Stanaszak MCTFT
- 24 hours

06/02/2008 **School Violence Conference**
- John Gudick-Archangel- KU Fire Science
- 8 hours

06/02/2008 **Latino's: Crime, Culture, and Community**
- Guillermo Faira and Pedro Francisco MCTC
- 24 hours

02/03/2009  3rd  Annual **Kansas Gang Investigators Inaugural Conference-Topeka**
**Gangs 101, Gang Culture, Internet Usage, White Supremist,  Latino Gangs**
- 23.5 hours

04/21/2009 **MOCIC RISS Gang Data Entry**
- Cindy Heath, Intelligence Specialist
- 4 hours

06/07/2010 **Midwest Law Enforcement Conference on Gangs and Drugs**
- Wichita Crime Commission
- 20 hours

06/06/2011 **Midwest Law Enforcement Conference on Gangs and Drugs**
- Wichita Crime Commission

           ● 20 hours
06/04/2012 **Midwest Law Enforcement Conference on Gangs and Drugs**
           ● Wichita Crime Commission
           ● 20 hours

**INSTRUCTOR TRAINING**
    03/28/2007 **Narcotics Test Kit Certified Trainer**
           ●Kansas Narcotic Association
    11/22/2009 **NARTEC Certified Trainer**

**SORT TRAINING**
    01/04/2007 **Deliberate Entry Method**
           ● 6 hours - Lt. Mellecker
    01/30/2007 **Deliberate Entry Method**
           ● 6.5 hours – Lt. Mellecker
    03/06/2007 **Deliberate Entry Method**
           ● 6.5 hours – Lt. Mellecker
    03/13/2007 **How to Deploy Noise, Flash, Distraction, Device Safely**
           ● 7 hours – Lt. Mellecker
    04/10/2007 **How to Perform Scouting Missions**
           ● 4.5 hours – Lt. Mellecker
    04/24/2007 **Basic Hostage Negotiations**
           ● 6.5 hours  - Detective Francis & Detective George
    05/22/2007 **Deliberate Entry Method**
           ● 5 hours – Lt. Mellecker
    08/30/2007 **Firearms Qualification for Pistols and Long Guns**
           ● 6hours – Lt. Mellecker
    10/11/2007 **Deliberate Entry Method**
           ● 7 hours – Lt. Mellecker
    10/26/2007 **Tour of High School in Preparation for Potential Violence**
           ● 3 hours – Lt. Mellecker
    01/17/2008 **High Risk Entry Tactics-Ford County Court House**
           ● 7 hours – Lt. Mellecker
    02/28/2008 **Firearm Training**
           ● 7 hours – Lt. Mellecker
    05/08/2008 **Entry Training with K-9**
           ● 7 hours – Lt. Mellecker
    05/22/2008 **Repelling Entry Training- Ford County Fire**
           ● 7 hours – Lt. Mellecker
    06/05/2008 **Entry Training- Dodge City Community College**
           ● 5 hours – Lt. Mellecker
    06/19/2008 **High Risk Entry Training Chamber of Commerce**
           ● 7 hours – Lt. Mellecker
    07/17/2008 **Repelling Entry Training- Ford County Fire**
           ● 7 hours – Lt. Mellecker
    08/07/2008 **SORT training deliberate entries, Flood entries, gas mask refresher Fort Dodge**
           ● 7 hours – Lt. Mellecker
    09/11/2008 **Firearm Training**

* 7 hours – Lt. Mellecker

12/18/2008 **Firearm Training**
* 1.5 hours – Lt. Mellecker

01/15/2009 **SORT training deliberate entries, Flood entries**
* 6 hours – Lt. Mellecker

01/29/2009 **How to Deploy Noise, Flash, Distraction, Device Safely**
* 5 hours – Lt. Mellecker

02/12/2009 **Firearms Qualification for Pistols and Long Guns**
* 7hours – Lt. Mellecker

02/26/2009 **SORT training deliberate entries, Flood entries**
* 6 hours – Lt. Mellecker

03/12/2009 **SORT Combat Tactics**
* 7 hours – Lt. Mellecker

02/12/2009 **Firearms Training**
* 5hours – Lt. Mellecker

## Tactical Operations   11

### Past Assignments

01/2005 FTO Training
07/2005 Weekend Days
08/2005 Weekend Nights
01/2006 Weekend Nights Street Crime Unit
07/2007 Detective Bureau
11/2009 Kansas Bureau of Investigation, Southwest Kansas Drug Task Force Agent

### Instructor

**Gang Training**
* **February 2007 Leadership Dodge**
2 hours
* **February 2007 Latino Rights Council**
4 hours
* **March 2007 Parenting group at Area Mental Health**
4 hours
* **September 2007 Miller School**
4 hours
* **November 2007 KBI/ATF/US Attorneys Office**
4 hours
* **September 2008 Parenting Group St. Marys**
6 hours
* **October 2008 Middle School**
4 hours
* **November 2008 Area Mental Health**
4 hours

- **February 2009 Leadership Dodge**
4 hours
- **November 2009 Dodge City Chamber Luncheon**
1 hours
- **February 2010 Area Mental Health**
4 hours
**2010, 2011, and 2012 Midwest Conference on Gangs and Drugs Presenter on South West Kansas Gangs**
**4 hours**

**Nartec Swabs & Narco Pouches 2 Hour Classes**
**05/20/2010-DodgeCity**
**11/11/2010-DodgeCity**
**12/22/2010-DodgeCity**
**03/16/2011-DodgeCity**
**08/04/2011-DodgeCity**
**08/24/2011-DodgeCity**
**10/18/2011-DodgeCity**
**02/02/2012-DodgeCity**
**03/13/2012-Ness City**
**06/25/2012-DodgeCity**

**Languages**

- Intermediate Spanish

| | |
|---|---|
| **Total Training Hours** | 1963.5 |

## James Nau

## Gang Unit, Dodge City Police Department

**James Nau #212**

**Experience**

February 2006 – Present: Patrol Officer
July 2007 – August 2010: Assigned to Street Crime Unit (Gang Unit)

August 2010 – August 2011: Problem Oriented Policing Unit (Formerly Street Crime Unit)

January 2012 – Present: Gang Resistance Education and Training (G.R.E.A.T.) Instructor/Gang Unit

Patrol Officer – I was assigned to work a certain beat to investigate criminal activities.
- Routine patrol in high crime areas
- Enforced traffic laws
- Served outstanding warrants
- Testified in court trials

Street Crime Unit – I was assigned to the Street Crime Unit to work street level narcotics investigations as well as gang crimes, which include drive by shootings, assaults/batteries (aggravated), robberies, burglaries, weapons violations; as well as document gang members.
- I utilized confidential informants for drug cases and gang investigations.
- Debrief arrested gang members or any gang member who wanted to talk about the gang they were in or other gangs in our community.
- I also conducted surveillance on gang members, gang houses, and drug houses.
- I was also assigned to the Southwest Kansas Gang Task Force (SWKGTF). The SWKGTF was designed to conduct random checks of gang members on probation or corrections to assure they were abiding by the conditions of their probation/corrections.
- I was also tasked with teaching gang awareness and prevention to the school administration/teachers in our District which comprised of 8 schools. In 2007 I taught gang identification/awareness/prevention training to parents at the Dodge City Middle School. Aside from

228

schools I also taught gang training to the Dodge City Police Department, Ford County Sheriffs Department, Gray County Sheriffs Department, Santa Fe Trail Community Corrections (Dodge City), Court Services (Dodge City), Ford County Attorneys Office, Dodge City Municipal Court Staff, as well as other businesses and to the community of Dodge City. Testified in court on gang trials to establish gang affiliation on defendants.

Problem Oriented Policing Unit (P.O.P.) - I was assigned to the Problem Oriented Policing Unit where I was assigned to investigate gang crimes (same crimes as Street Crime Unit). I worked closely with the street officers and built cases on crimes that involved gang members.
- I was also assigned as SWKGTF Leader where I organized our task force deployment dates and put together a target list of gang members with outstanding warrants for our task force to look for. Testified in court on gang trials to establish gang affiliation on defendants.

G.R.E.A.T. Instructor/Gang Unit – I was certified to teach gang education and training to our middle school as well as fifth grade classes.
- Aside from teaching I was put in charge of maintaining and updating our gang database.
- During the summer I was assigned to work gang unit on the weekend night shift where our primary focus was debriefing gang members, surveillance on gang and drug houses, and investigating gang crimes. Testified in court on gang trials to establish gang affiliation on defendants. During our RICO investigation I was assigned as a team leader on a particular target. I was also assigned to look at each residence that a gang search warrant was executed on to assure all proper gang paraphernalia items were taken.

**Education**

-  Associates of Science Degree from Dodge City Community College (Biology)
-  Approximately 34 hours at Fort Hays State University

**Specialized Training**

- Midwest Counter Drug Training: Criminal Street Gang Identification and Interdiction (2007) (24 hours)
- Kansas Gang Investigators Association Conference (2008) (28 hours)
- Kansas Narcotic Officers Association Conference (2008) (24 hours)
- Kansas Gang Investigators Association Conference (2009) (23.5 hours)
- Kansas Gang Investigators Association Conference (2010) (23 hours)
- Kansas Narcotics Association Classes (2010) (8 hours)
- Midwest Counter Drug Training: Advanced Gang Investigation & Interdiction (2010) (24 hours) (Instructor-Lou Savelli)
- Kansas Gang Investigators Association Conference (2011) (23 hours)
- Gang Resistance Education and Training Instructor (2012) (60 hours)
- Midwest Law Enforcement Conference on Gangs and Drugs (2012) (20 hours)

**Training Given**

- Gang Identification and Awareness-Dodge City Public Schools/Parents, Community Businesses of Dodge City (2007) (Approximately 100 hours)
- Gang Identification and Awareness-Dodge City Public Schools/Parents, Community Businesses of Dodge City (2008) (Approximately 50 hours)
- Gang Identification and Awareness-Dodge City Public Schools/Parents, Community Businesses of Dodge City (2009) (Approximately 50 hours)
- Gang Identification and Updates-Dodge City Police Department (Approximately 16 hours)
- Gang Identification and Awareness-Dodge City Public Schools/Parents, Community Businesses of Dodge City (2010) (Approximately 30 hours)
- Gang Identification and Awareness-Dodge City Public Schools/Parents, Community Businesses of Dodge City (2011) (Approximately 25 hours)
- Gang Identification-Probation Offices, District and City Court (2011) (Approximately 20 hours)
- Gang Identification and Awareness-Dodge City Public Schools/Parents, Community Businesses of Dodge City (2012) (Approximately 25 hours)
- Gang Updates-Dodge City Police Department, District and City Courts (2012) (Approximately 20 hours)

**Awards**

- Distinguished Service Award (2007)
- Silver Medal of Valor (2010)

The following gang information is being provided by Dodge City Police Department Officer James Nau, Detective J.L. Bice and Detective Shane Webb and our 18 years combined experience working gang crimes.  This gang intelligence is from previous gang officers as well as our own information that has been gathered through trainings (National Gang Intelligence), informants, gang members, former gang members, and family of gang members through debriefs, formal, and informal interviews.  This intelligence is general in nature and not always agreed on by individual gang members.

# Diablos Viejos (Old Devils)
# Los Carnales Chingones (The Bad Ass Brothers)
## Two of Dodge City's Local Norteno Criminal Street Gangs

## Diablos Viejos

Date first entered into NCIC by DCPD as a Certified Violent Criminal Street Gang:  June 26th, 1996

- Current documented number of members in Dodge City = 218 as of 07/01/2012

*Organization, association or group of three (3) or more persons;*

- Norteno's established by second generation Hispanics or Chicanos in California prisons to protect from other race gangs and the Mexican Mafia. Mexican Mafia (southern Hispanics) preyed upon northern Hispanics prison inmates whom banded together and formed Nuestra Familia in the 1960's for protection.
- Diablos Viejos, Norteno gang set was started by local high school aged males in approximately 1993 and the gangs recruitment increased its numbers after one of the gangs cofounders died in a gang altercation in October of 1993.

*Identifying signs, colors, or symbols;*

- Number "14" - representing the 14th letter of the alphabet "N" also represented by roman numerals XIV or X4 or Dots on each hand, wrist, or corner of the eyes (1 on one side 4 on the other.) Huelga bird which is the logo for the United Farm Workers Union which was based out of northern California.

1

- Color Red – due to the affiliation with Norteno (Northerner (north of Bakersfield, CA)) California Hispanic Prison gang represented with red bandanas.

- Use 5 pointed star in graffiti and tattoos.

- "N", "ene", "Norte" or "Norte 14" – representing Norteno and their allegiance to La Nuestra Familia / Our Family.

- Hand signals – Hand signs forming "N", "D" "V", 1 & 4 - all showing pride and association to La Nuestra Familia/Norteno/DV.

- Hand signs forming upside down "1 & 3" or "S & K" (scrap killa) ~ disrespecting Sureno, MCB, or 18th Street – local rival gangs.

- Verbally disrespect Sureno, MCB, or 18th Street by calling them "Faketeen St." "Scraps" (table scraps of food) "streezys" "screezys" "Mommas Cry Babies (MCB)"

### *Current status and structure*;

*"Shot Caller"* this person(s) "calls the shots" (directs the gangs criminal activity), but dosen't carry them out, hes already done that role, hence his elevated status within the gang membership.

*"Foot Soldiers"* are members who have been in the gang and have proven themselves to the gang.

*"Peewees"* are new members of the gang or those who have not proven themselves through "missions" and such.

> *Has members or associates who, individually or collectively, engage in, or have engaged, in criminal activity;*

> Most commonly including but not limited to;

>> - Burglaries, thefts, criminal damage, criminal trespass, robbery, assaults, batteries, violence against Law Enforcement Officers, disorderly conduct, gang tagging/graffiti, home invasions, intimidations of victim/witnesses, criminal threats, possession of firearms, criminal use of weapons, discharge of firearms; mainly in the form of drive-by shootings, alcohol violations, drug trafficking, use/ sale, distribution of drugs in schools, obstruction of legal process, attempted homicides and murder.

## Los Carnales Chingones

Date first entered into NCIC by DCPD as a Certified Violent Criminal Street Gang: **August 27th 1996**

> - Current documented number of members in Dodge City = 67 as of 07/01/2012

### *Organization*;
- Established by local kids living on the east side of Dodge City. Started in approximately 1991.

### *Identifying signs, colors, or symbols*;
- East Side or E S representing the local set originally residing on the east side of Dodge City.
- 12 3 3 representing the letters LCC in the alphabet
- Color Red

2

- 5-point star is affiliated with LCC

- Hand signals – Hand signs forming "L" "C" "C",

- Hand signs forming upside down "1 & 3" disrespecting Sureno, MCB or 18th Street – local rival gangs.

- Verbally disrespect Sureno, MCB, or 18th Street by calling them "Faketeen St." "Scraps" (table scraps of food) "streezys" "screezys" "Mommas Cry Babies (MCB)"

### *Current status and structure*;

*"Shot Caller"* this person(s) "calls the shots" (directs the gangs criminal activity), but dosen't carry them out, hes already done that role, hence his elevated status within the gang membership.

*"Foot Soldiers"* are members who have been in the gang and have proven themselves to the gang.

*"Peewees"* are new members of the gang or those who have not proven themselves through "missions" and such.

> *Has members or associates who, individually or collectively, engage in, or have engaged, in criminal activity;*

> > Most commonly including but not limited to;

- Burglaries, thefts, criminal damage, criminal trespass, robbery, assaults, batteries, violence against Law Enforcement Officers, disorderly conduct, gang tagging/graffiti, home invasions, intimidations of victim/witnesses, criminal threats, possession of firearms, criminal use of weapons, discharge of firearms; mainly in the form of drive-by shootings, alcohol violations, drug trafficking, use/ sale, distribution of drugs in schools, obstruction of legal process, attempted homicides and murder.

# <u>Sureno 13(Southsider)</u>

# M C B / 18th Street

## Three of Dodge City's Local Sureno Criminal Street Gangs

## Master Criminal Boys

Date first entered into NCIC by DCPD as a Certified Violent Criminal Street Gang:   August 27th, 1996

> *Organization, association or group of three (3) or more persons*;

- Originated in Garden City, KS ~ Early 1990's

3

- Current documented number of members in Dodge City = 237 as of 07/01/2012.

*Identifying signs, colors, or symbols;*

- "M" – representing their allegiance to the Mexican Mafia "La Eme" or Maravilla –(mother of all southern Ca. gangs.)
- Number "13" - representing the 13th letter of the alphabet "M" also represented by roman numerals and Dots (1 on one side 3 on the other.)
- Color Blue – due to the affiliation with Sureno (Southsider (south of Bakersfield, CA)) California Hispanic Prison gang "La Eme" who represented with blue bandanas.
- "S" or "Sur" or "Sur 13" – representing Sureno.
- Hand signals – Hand signs forming "M", 1 & 3, "S" all showing pride and association to MCB/Sureno
- Hand signs forming upside down "1&4" disrespecting *Norteno*s – a local rival gang.
- Verbally will refer to Nortenos as "Busters" which is an old derogatory term that came from California's northern Hispanic farm workers having to bust the sod in fields.

*Has members or associates who, individually or collectively, engage in, or have engaged, in criminal activity;*

Most commonly including but not limited to;

- Burglaries, thefts, criminal damage, criminal trespass, robbery, assaults, batteries, violence against Law Enforcement Officers, disorderly conduct, gang tagging/graffiti, home invasions, intimidations of victim/witnesses, criminal threats, possession of firearms, criminal use of weapons, discharge of firearms; mainly in the form of drive-by shootings, alcohol violations, drug trafficking, use/ sale, distribution of drugs in schools, obstruction of legal process, attempted homicides and murder.

**Current Status and structure:**

*"Shot Caller"* this person(s) "calls the shots" (directs the gangs criminal activity), but dosen't carry them out, hes already done that role, hence his elevated status within the gang membership.

*"Foot Soldiers"* are members who have been in the gang and have proven themselves to the gang.

*"Peewees"* are new members of the gang or those who have not proven themselves through "missions" or criminal activity. Involved in tagging/graffiti to mark the gangs turf or territory as well as other petty crimes.

# 18th Street

4

Date first entered into NCIC by DCPD as a Certified Violent Criminal Street Gang: February 15th, 2002

*Organization, association or group of three (3) or more persons*;

- 18th Street has some affiliation to southern California street gangs. Mostly 18th Street stands alone. It's the fastest-growing gang in the country. 18th Street has no recognized national leader but is based like Crip sets: Each gang has its own leader. There are a lot of 18th Street set leaders in the country, and most of them trace their orders and national leadership to the Mexican Mafia members in prison.

- 18th Street started in and is the largest gang in Los Angeles County California, with estimated gang membership from 4,000 - 21,000. 18th Street has had injunctions placed on them by the courts in California to prevent them from gathering due to the violent nature and drug activity controlled by the gang. 18th Street started in the 1960's and was one of the first Hispanic gangs to break the racial barrier. 18th Street has accepted all races into the gang and still does today; it recruits illegal aliens coming into the United States from South America and Mexico. 18th Street is a turf-oriented gang; they will tax everything in their claimed territory, to include drug dealers, prostitutes, and legitimate businesses operating in their area of control.

- Local origin- a California transplant to Kansas, brought 18th Street with him to Dodge City somewhere around 2000-2001.

- Current documented number of members = 86 as of 07/01/2012.

*Identifying signs, colors, or symbols*;

- "M" – representing their allegiance to the Mexican Mafia "La Eme" or Maravilla –(mother of all southern Ca. gangs.)

- The Black Widow Spider tattoo – a "1" is inside the head of the spider and an "8" is the hour glass in the body.  Distinct to Dodge City and always found on left forearm.

- Number "13" - representing the 13th letter of the alphabet "M" also represented by roman numerals and Dots (3 on one side 1 on the other.)

- Color Blue – due to the affiliation with Sureno (Southsider (south of Bakersfield, CA)) California Hispanic Prison gang "La Eme" who represented with blue bandanas.

- "S" or "Sur" or "Sur13" – representing Sureno.

- Hand signals – Hand signs forming "M", 1 & 3, 1 & 8, "S" all showing pride and association to La Eme, Sureno or 18th Street.

- Hand signs forming upside down "1&4" disrespecting *Norteno*– rival gang.

5

- Verbally will refer to Nortenos as "Busters" which is an old derogatory term that came from California's northern Hispanic farm workers having to bust the sod in fields.

*Has members or associates who, individually or collectively, engage in, or have engaged, in criminal activity;*

Most commonly including but not limited to;

- Burglaries, thefts, criminal damage, criminal trespass, robbery, assaults, batteries, violence against Law Enforcement Officers, disorderly conduct, gang tagging/graffiti, home invasions, intimidations of victim/witnesses, criminal threats, possession of firearms, criminal use of weapons, discharge of firearms; mainly in the form of drive-by shootings, alcohol violations, drug trafficking, use/ sale, distribution of drugs in schools, obstruction of legal process, attempted homicides and murder.

## Current Status and structure:

*"Shot Caller"* this person(s) "calls the shots" (directs the gangs criminal activity), but dosen't carry them out, hes already done that role, hence his elevated status within the gang membership.

*"Foot Soldiers"* are members who have been in the gang and have proven themselves to the gang.

*"Peewees"* are new members of the gang or those who have not proven themselves through "missions" and such.

\* Current gang intelligence there is no known 18th Street gang members in Garden City, Great Bend, or Liberal Ks.

# Sureno 13

Date first entered into NCIC by DCPD as a Certified Violent Criminal Street Gang:    March 20th, 2002

*Organization, association or group of three (3) or more persons;*

- Originated in California prisons as a Hispanic gang made up of those who considered themselves *"Southsiders"* or *"Sureno"* in Spanish. This was determined by claiming support of or living south of Bakersfield, CA. When inmates were given the option to take bandanas as they went to work in the field, *southsiders* would show their common association to each other by all taking the blue bandanas vs. the red ones. The *"Northsiders"* or *"Norteno"* in Spanish took the red bandanas.

- Local origin: First appearance came through the MCB set. Today membership is made up from numerous transplants from other areas who won't claim a local set's name but do claim the alliance and devotion to the Sureno 13 nationally. These transplants have increased their numbers through local recruiting efforts.

6

236

- Dodge City has 31 Current documented members of Sureno 13 (not including MCB or 18th St.) as of 07/01/2012.

*Identifying signs, colors, or symbols*;

- "M" – representing their allegiance to the Mexican Mafia "La Eme" or Maravilla –(mother of all southern Ca. gangs.)

- Number "13" - representing the 13th letter of the alphabet "M" also represented by roman numerals and Dots (1 on one side 3 on the other.)

- Color Blue – due to the affiliation with Sureno (Southsider (south of Bakersfield, CA)) California Hispanic Prison gang "La Eme" who represented with blue bandanas.

- "S" or "Sur" or "Sur13" – representing Sureno.

- Hand signals – Hand signs forming "M", 1 & 3, "S" all showing pride and association to La Eme/Sureno 13.

- Hand signs forming upside down "1&4" disrespecting *Norteno* a local rival gang.

*Has members or associates who, individually or collectively, engage in, or have engaged, in criminal activity;*

Most commonly including but not limited to;

- Burglaries, thefts, criminal damage, criminal trespass, robbery, assaults, batteries, violence against Law Enforcement Officers, disorderly conduct, gang tagging/graffiti, home invasions, intimidations of victim/witnesses, criminal threats, possession of firearms, criminal use of weapons, discharge of firearms; mainly in the form of drive-by shootings, alcohol violations, drug trafficking, use/ sale, distribution of drugs in schools, obstruction of legal process, attempted homicides and murder.

**Current Status and structure:** No current organized structure has been identified by gang intelligence for local Sureno 13 <u>ONLY</u> gangs.

**Bamidele Adeagbo, MD**
Office of Chief Medical Examiner, Calgary, Canada
Office Phone: (403) 297-8123.  Office Fax: (403) 403 297 3429
Office E-mail: bamidele.adeagbo@gov.ba.ca    Personal E-mail: Deleaa@yahoo.com
Mailing address: 4070 Bowness Road NW, Calgary, Alberta T3B 3R7

## WORK EXPERIENCE

OFFICE OF CHIEF MEDICAL EXAMINER, CALGARY, CANADA                   January 2012-Till
- Forensic Pathologist/Assistant Chief Medical Examiner.

SEDGWICK COUNTY REGIONAL FORENSIC SCIENCE CENTER (SCRFSC),          August 2008-October 2012
WICHITA, KS
- Deputy Coroner/Medical Examiner.

MEDICAL UNIVERSITY OF SOUTH CAROLINA                                July 2006-June 2007
- Research assistant in the department of Forensic Pathology.

PROGRESSIONS HEALTH SYSTEM, PHILADELPHIA, PA                        March 2000-June 2001
- Behavioral consultant performed counseling, created treatment plan, ongoing functional evaluation and advocate for services for clients.

SALVATION ARMY, PHILADELPHIA, PA                                   April 1998-January 1991
- Therapeutic counselor for developmental disability programs: performed evaluation, counseling, and support of mentally retarded in home and occupational settings.

## CLINICAL PRACTICE EXPERIENCE

MEDICS MEDICAL CENTER, LAGOS NIGERIA                                November 1993-April 1997
- General Medical Practice (Family Practice)

ISI-UZO GENERAL HOSPITAL, ENUGU STATE, NIGERIA                      December 1992-October 1993
- Corps Medical Practitioner.

MILITARY HOSPITAL YABA, LAGOS NIGERIA                               November 1991-November 1992
- Clinical Internship.

## EDUCATION

                                                                   July 2007 -present
SURGICAL PATHOLOGY FELLOWSHIP
Medical College of Georgia, Augusta, Georgia

FORENSIC PATHOLOGY FELLOWSHIP                                       July 2005-June 2006
Medical University of South Carolina, Charleston, South Carolina

ANATOMICAL/CLINICAL PATHOLOGY RESIDENCY                             July 2001-June 2005
Saint Barnabas Medical Center, Livingston, New Jersey

GENERAL SURGERY RESIDENCY                                           May 1997-November 1997
Lagos State General Hospital, Lagos, Nigeria

COLLEGE OF MEDICINE OF UNIVERSITY OF ILORIN                         November 1985-September 1991
Kwara State, Nigeria.

**PROFESSIONAL EDUCATION**

|  |  |
|---|---|
| | April 2008 |
| The 22nd Annual Postgraduate Pathology Symposium<br>Medical College of Georgia, Augusta, GA | |
| Forensic Anthropology Course.<br>Armed Forces Institute of Pathology (AFIP). | June 2006 |
| McKee Cytology Seminar. Pratt-Thomas Symposium in Surgical Pathology<br>Medical University of South Carolina. Charleston, SC | April 2006 |
| South Carolina Law Enforcement Division (SCLED)<br>Forensic Toxicology and Crime Laboratory. | April 2006 |
| Basic Forensic Pathologic Course.<br>Armed Forces Institute of Pathology (AFIP) | November 2005 |
| Donald West King Orthopedic Pathology Fellowship.<br>Armed Forces Institute of Pathology (AFIP) | September 2004 |
| Dermatopathology.<br>Ackermann Academy of Dermatopathology | December 2003 |
| Core Forensic Pathology Rotation.<br>Medical Examiners Office, Bergen County, New Jersey | November 2003 |
| Renal Pathology and Electron Microscopy.<br>Saint Barnabas Medical Center | October 2003 |
| 2nd Update Course in Surgical Pathology<br>Ohio State University, Columbus, Ohio | August 2002 |

**ACADEMIC APPOINTMENT**

UNIVERSITY OF CALGARY, CANADA                          July 1, 2012- June 30, 2015
  • Clinical Assistant Professor, Department of Pathology
UNIVERSITY OF ALBERTA, CANADA                       March 28, 2012- June 30, 2015
  • Clinical lecturer, Department of Pathology
NNAMDI AZIKIWE UNIVERSITY, NIGERIA                            April 2012- Till
  • Visiting Professor, Faculty of Pharmaceutical Sciences
KANSAS UNIVERSITY MEDICAL SCHOOL, WICHITA, KS           November 2008 – Till
  • Clinical instructor, Department of Pathology.

**RESEARCH EXPERIENCE**

FOX CHASE CANCER CENTER, PHILADELPHIA, PA.               January 1999-January 2000
Research Assistant, Gary D Kruh, MD PhD.
  • Participated in several research projects involving sequencing of genomic clones, electroporated into embryonic stem cells and into "knockout" mice to study specific ABC membrane transporters.
  • Bench work involving making reagents, and performing routine laboratory analysis.

## VOLUNTEER EXPERIENCE AND COMMUNITY SERVICE

ALAS Clinica Latina, Salvation Army 1389 Green St, Augusta Georgia.                          2008
- Volunteer doctor providing primary health care services for the needy.

## LEADERSHIP EXPERIENCE

President, Sunrise Toastmaster Club, Wichita.

Vice President Education, Colleagues of Wisdom, Toastmaster Club, Wichita, Kansas.

Junior Member-Inspector, College of American Pathologists.

Public relations officer, Nigerian Medical Association, Apapa Branch, Lagos Nigeria.

Member, Standing Committee on Medical Education and Health, Nigerian Medical Students Association.

Member, Leadership Council, National Youth Service Corps, Enugu State, Nigeria.

## AWARDS AND HONORS

First place poster presentation:                                                              2008
Medical College of Georgia 22nd Annual Postgraduate Pathology
Symposium

Special Award for Distinguished Service, Nigerian Medical Association                         1997

Special Award for Distinguished Service, National Youth Service Corps,                        1993
Enugu State. Nigeria.

Certificate of Merit, Isi-Uzo local government, Enugu State. Nigeria.                          1993

## PEERS REVIEW PUBLICATIONS

Reid-Nicholson MD, Ramalingam P, Adeagbo B, Cheng N, Peiper SC, Terris MK:  The use of
Urovysion fluorescence in situ hybridization in the diagnosis and surveillance of non-urothelial
carcinoma of the bladder.Mod Pathol. 2009 Jan; 22(1):119-27. Epub 2008 Oct 31.

Bamidele A. Adeagbo, Colin Clark, Kim A. Collins: Homicides committed by Youth Assailants: A Retrospective
Study. Am J Forensic Med Pathol 2008; 29: 219-223.

P. Ramalingam, B. A Adeagbo,  R. Bollag, J. Lee, M. Reid-Nicholson: Metastatic Hepatocellular Carcinoma
With CD138 Positivity: An Unusual Mimic of Multiple Myeloma? Diagn. Cytopathol. 2008; 36: 742-748.

B. A Adeagbo, W Shertz. Patient with Testicular Pain: a pathologic quiz case. Arch Pathol Lab Med 2004; 128:
105-106.

B. A Adeagbo, M.C Onuorah. "Cholera - prevention and management in epidemics". Nigerian Medical
Association Brochure. 1997; 001: 22-24.

B. A Adeagbo."Social acceptability of HIV testing in urban center, Lagos experience". Project Proposal
submitted for approval and funding to organization of African Unity scientific and Technological research
commission (O.A.U/S.T.R.C). 1992.

B.A Adeagbo et al."Knowledge, attitude and behavior of adolescents on contraception, abortion and pregnancy

in Ilorin, Kwara State."
Community health project -1990. Medical School Dissertation.

## PROFESSIONAL MEETING PRESENTATIONS

P. Ramalingam, B. Adeagbo, SC Peiper, MK Terris and MD Reid-Nicholson: Role of Urovysion[TM] Fluorescence *In Situ* Hybridization (FISH) in the Diagnosis and Surveillance of Primary and Secondary Adenocarcinoma of the Bladder. Presentation at the 34th European Congress of Cytology: 15-18 June 2008, Rovaniemi, Finland.

B. A Adeagbo, T Goldsmith, S Ghamande, P Ramalingam: Overexpression of Heat Shock Protein (HSP27, HSP70 and HSP90) in uterine papillary serous carcinoma (UPSC). Poster #141.USCAP, Denver Colorado. 2008. Modern Pathology Vol. 21, Supplement 1 No. 888. January 2008.

B. A  Adeagbo, M.J Caplan: Comparative Analysis of Medical Examiner and Coroner Systems of Medicolegal Death Investigation: Is There a Bias Toward Manner of Death? Platform presentation at AAFS Annual Meeting, San Antonio, Texas, February 2007.

B. A  Adeagbo, M.J Caplan: Fatal Chemical Asphyxia due to Hydrogen Sulfide Exposure on a Ship - A Major Occupational Hazard. Report of a case and review of the literature. Platform presentation at NAME Annual Meeting, San Antonio, Texas, October 2006.

B. J Marcus, K. A. Collins, B.A Adeagbo: Death by Wax Bullet. Poster presentation: NAME Annual Meeting, San Antonio, Texas. October 2006.

Bamidele Adeagbo, Diane Esagui, E. Delaflor-Weiss: Prospective evaluation of Maternal Red Cell Antibodies and Correlation with Severity of Hemolytic Disease of the Newborn at a Community Hospital in New Jersey: A 4-year experience. Transfusion J Vol 43, No. 9S, September 2003. Platform presentation: American Association of Blood Banks Annual Conference, San Diego. September 2003.

B. A Adeagbo."AIDS- The scourge on human race". Public awareness lecture presented to various communities in Enugu State. 1993.

## PROFESSIONAL MEMBERSHIPS

College of Physicians and Surgeons of Alberta (CPSA)
College of American Pathologists (CAP)
National Association of Medical Examiners (NAME)
American Academy of Forensic Sciences (AAFS)
United States and Canadian Academy of Pathology (USCAP)
American Society of Clinical Pathology (ASCP)

## AMERICAN BOARD OF PATHOLOGY CERTIFICATION

ANATOMICAL PATHOLOGY                                               November 2010
FORENSIC PATHOLOGY                                                September 2011

## LICENSURES

CANADA: ALBERTA
UNITED STATES OF AMERICA: KANSAS STATE, VIRGINIA STATE

# HAROLD C. RIDDLE, F-ABC
Forensic Scientist III
· Curriculum Vitae

## WORK ADDRESS:

**Kansas Bureau of Investigation**
625 Washington St.
Great Bend, Kansas 67530-5442
Phone: (620) 792-4353
Fax: (620) 792-1850
E-mail: chris.riddle@kbi.state.ks.us

## EDUCATION:

| | |
|---|---|
| **Bachelor of Science** | **Spring 1995** |
| UNIVERSITY OF KANSAS | LAWRENCE, KANSAS |
| Major:   Chemistry | |

## EMPLOYMENT HISTORY:

| | |
|---|---|
| **Forensic Chemist III** | **(May 2000 - Present)** |
| KANSAS BUREAU OF INVESTIGATION | GREAT BEND, KANSAS |
| | |
| **Forensic Chemist II** | **(May 1997 - May 2000)** |
| KANSAS BUREAU OF INVESTIGATION | GREAT BEND, KANSAS |
| | |
| **Forensic Chemist I** | **(May 1996 - May 1997)** |
| KANSAS BUREAU OF INVESTIGATION | GREAT BEND, KANSAS |
| | |
| **Special Project (Chemistry Section)** | **(Sept 1995 - May 1996)** |
| KANSAS BUREAU OF INVESTIGATION | TOPEKA, KANSAS |

## SPECIAL TRAINING:

| | |
|---|---|
| **Synthesis of Amphetamines from P2P and Related Compounds** | **September 2012** |
| CLIC | INIANAPOLIS, IN |
| | |
| **Clandestine Laboratory Training Seminar** | **September 2012** |
| CLIC | INIANAPOLIS, IN |
| | |
| **ASCLD/LAB-International Assessor Training Course** | **June 2012** |
| ASCLD/LAB-International | BALTIMORE, MD |
| | |
| **Inorganic Analysis Workshop** | **September 2011** |
| CLIC | SEATTLE, WA |
| | |
| **Clandestine Laboratory Training Seminar** | **September 2011** |
| CLIC | SEATTLE, WA |
| | |
| **The Chemistry of Clan Labs** | **October 2010** |
| MAFS | KANSAS CITY, MO |
| | |
| **Mass Spectral Interpretation of Unknowns** | **October 2010** |
| MAFS | KANSAS CITY, MO |
| | |
| **Clandestine Laboratory Training Seminar** | **September 2009** |
| CLIC | BIRMINGHAM, AL |

| | |
|---|---|
| **Steroid Analysis Workshop**<br>CAC | **May 2008**<br>SAN DIEGO, CA |
| **IR Interpretation and Forensic Applications**<br>SWAFS | **November 2006**<br>COLORADO SPRINGS, CO |
| **Clandestine Laboratory Training Seminar**<br>CLIC | **September 2005**<br>ST. LOUIS, MO |
| **Advanced Fire Debris Analysis Course**<br>MFRC | **August 2005**<br>AMES, IA |
| **Clandestine Laboratory Training Seminar**<br>CLIC | **September 2004**<br>PORTLAND, OR |
| **Symposium for Fire and Explosion Debris Analysis**<br>TWGFEX | **November 2003**<br>ORLANDO, FL |
| **Clandestine Laboratory Training Seminar**<br>CLIC | **September 2002**<br>NEW ORLEANS, LA |
| **Laboratory Analysis of Fire Debris School**<br>FBI | **April 1999**<br>QUANTICO, VIRGINIA |
| **Industrial Perspectives on Paint and Glass**<br>MAFS | **October 1998**<br>ANN ARBOR, MICHIGAN |
| **Analysis of Botanical Drugs**<br>MAFS | **October 1998**<br>ANN ARBOR, MICHIGAN |
| **DEA Forensic Chemistry Seminar**<br>DEA | **March 1997**<br>FAIRFAX, VIRGINIA |

## PROFESSIONAL ORGANIZATIONS:

- **Midwestern Association of Forensic Scientists** (Dec 1998 to present)
- **Southwestern Association of Forensic Scientists** (Mar 1999 to present)
- **Clandestine Laboratory Investigating Chemists** (Sept 2004 to present)
- **American Board of Criminalistics** (June 2008 to present)

## TECHNICAL SKILLS:

- **Gas Chromatography**
- **Mass Spectrometry**
- **Thin Layer Chromatography**
- **Infrared Spectrophotometry**
- **UV/VIS Spectrophotometry**
- **High Performance Liquid Chromatography**
- **Flame Spectrophotometry**
- **X-ray Fluorescence**
- **Microscopy**

## COURTROOM EXPERIENCE:

- **Testified over 210 times in controlled substances, fire debris and/or clandestine laboratory cases in civil, municipal, district and federal courts.**

**Eric R. Moore**
Forensic Scientist III
Curriculum Vitae

**WORK ADDRESS**:
Kansas Bureau of Investigation
625 Washington
Great Bend, Kansas 67530
Phone: (620) 792-4353
Fax: (620) 792-1850
E-mail: Eric.Moore@kbi.state.ks.us

**EDUCATION**:
Bachelor of Science Degree, 1999, University of Central Oklahoma, Edmond, Oklahoma
Major: Forensic Science

Bachelor of Science Degree, 1994, Kansas State University, Manhattan, Kansas
Major: Secondary Education

**EXPERIENCE**:
Forensic Scientist, Latent Print Section, Kansas Bureau of Investigation, February(1999 – present)
Assistant team leader for KBI Crime Scene Response Team (2011 – present)

**SPECIAL QUALIFICATIONS**:

**Certifications**:
International Association for Identification Certified Latent Print Examiner (2003 – present)
International Association for Identification Certified Crime Scene Analyst (2006 – present)
International Association for Identification Certified Bloodstain Pattern Analyst (2010 – present)

**Specialized Training**:
Crime Scene Reconstruction I (Iris Dalley)
    September 10-14, 2012, Plano, TX
Kansas Division of the International Association for Identification conference
    March 6-7, 2012, Junction City, KS
Bloodstain Pattern Analysis Annual Quality Assurance meeting
    February 21-23, 2012
Association for Crime Scene Reconstruction conference
    February, 2012, Monterey, CA
International Association for Identification, Educational Conference
    August, 2011, Milwaukee, WI
Kansas Division of the International Association for Identification conference
    April, 2010, Manhattan, KS
Forensic Science Initiative
    March 2010, Fort Worth, TX
Midwest Forensic Resource Center, Bloodstain Symposium
    August, 2009, Ames, IA
Kansas Division of the International Association for Identification conference
    April, 2009, Lawrence, KS
Fingerprint Expert Witness Testimony Techniques (Ron Smith)
    October 13-14, 2008 Kansas City, KS
International Association for Identification, Educational Conference
    August, 2008, Louisville, KY

244

Kansas Division of the International Association for Identification conference
    April, 2008, Salina, KS
FBI Universal Workstation training
    March, 2008, Topeka, KS
Midwest Forensic Resource Center, Bloodstain Symposium
    February, 2008, Ames, IA
International Association of Bloodstain Pattern Analysts, Educational conference
    October, 2007, San Antonio, TX
Metamorpho AFIS Latent Training
    April, 2007, Topeka, KS
Kansas Division of the International Association for Identification conference
    April, 2007, Topeka, KS
Kansas Division of the International Association for Identification conference
    October, 2006, Junction City, KS
Detection, Recovery and Examination of Footwear Impression Evidence (William Bodziak)
    September 18-22, 2006, Oklahoma City, OK
International Association for Identification, Educational Conference
    July 3 – 7, 2006, Boston, MA
Advanced Bloodstain Pattern Analysis (Tom Bevel)
    March 6 – 10, 2006 , Lawrence, KS
Kansas Division of the International Association for Identification conference
    October, 2005 Manhattan, KS
International Association for Identification, Educational Conference
    August 22 – 27, 2004, St. Louis, MO
Forensic Ridgeology (David Ashbaugh)
    January 25-29, 2004, Oklahoma City, OK
Kansas Division of the International Association for Identification conference
    October 13-14, 2003, Lawrence, KS
Ridgeology Science Workshop (Kasey Werthiem)
    October 7-11, 2002, Dallas, TX
Vacuum Metal Deposition Training
    August 13, 2002 , Topeka, KS
Reflective UltraViolet Imaging System Training
    July 1, 2002 , Topeka, KS
CBI Fingerprint Symposium (Steve Megher)
    May 6, 2002 , Denver, CO
Kansas Division of the International Association for Identification conference
    October 10-11, 2001 Salina, KS
International Association for Identification, Educational Conference
    July 22 - July 28, 2001, Miami, FL
Advanced Computer Bloodstain Analysis
    June 11-15, 2001, Wichita, KS
Clandestine Laboratory Investigation/ Safety Certification Program
    June 25 – June 29, 2001, Salina, KS.
FBI Fingerprint Classification School
    September 18-21, 2000  Mission, KS
Bloodstain Pattern Interpretation (Michael VanStratton)
    May 15- May 19, 2000, Great Bend, KS.
Kansas Division of the International Association for Identification conference
    October 10- October 11,  2000, Salina, KS.
International Association for Identification, Educational Conference
    July 13 - July 18, 2000, Milwaukee, WI
FBI Latent Print Identification Workshop, July 13-15, 1999 (Barbara Pace)
    Milwaukee, WI
Advanced Palm Print Identification (Ron Smith)
    November 8-10, 1999, Austin, TX

**TECHNICAL SKILLS**:
Development and recovery of latent fingerprints
Comparison of friction ridge skin
Forensic Photography
Operation of latent AFIS workstation
Crime scene examination
Bloodstain pattern interpretation

**PROFESSIONAL ORGANIZATIONS**:
International Association for Identification (1999 - present)
Kansas Division of the International Association for Identification (1999 - present)
Association for Crime Scene Reconstruction (2012 – present)

**PROFESSIONAL PRESENTATIONS**:
KHP Arson Investigation school
    Lab and latent presentations, September 2011
Russell Police Department
    Recovery and Development of Latent Prints, March 2011
Introduction to Bloodstain Pattern Analysis
    International Forensic Science Academy, June 2010
Introduction to Bloodstain Pattern Analysis
    Finney Co. SO, June 2008
South Hutchinson Police Department, January 23, 2007
    Training in recovery and development of latent prints
Basic Bloodstain 40 Hour Course, October 2006
    University of Tennessee, National Forensic Academy
South Hutchinson Police Department, January 20, 2004
    Training in recovery and development of latent prints
Kansas Highway Patrol, July 17, 2003
    Training in recovery and development of latent prints
Kansas Investigators Association Meeting, March 2003
    Qualitative v. Quantitative latent prints
Southwest Kansas Death investigation School, September 2002
    Using RUVIS to find latent fingerprints and photograph bloodstains
Kansas Bureau of Investigation Agent Training, August 2002
    Using RUVIS to find latent fingerprints and photograph bloodstains
Kansas Investigators Association Meeting, August 7, 2002
    Training in recovery and development of latent prints
Leoti Police Department, June 18, 2002
    Training in recovery and development of latent prints
Kansas Highway Patrol,  March 5, 2002
    Training in recovery and development of latent prints
Kansas Highway Patrol,  March 1, 2001
    Training in recovery and development of latent prints
Hamilton Co. Sheriff's Office,  December 6, 2000
    Training in recovery and development of latent prints
Kansas Division of the International Association for Identification, October 11, 2000
    Presentation on Blood Enhancement
Kansas Highway Patrol,  March 1, 2000
    Training in recovery and development of latent prints
Kansas Highway Patrol,  August 10, 2000
    Assisted in training in recovery and development of latent prints
Kansas Highway Patrol, November 15, 1999
    Assisted in training in recovery and development of latent prints

*CURRICULUM VITAE*

## JESSICA ZIEPFEL
**Kansas Bureau of Investigation**
**625 Washington**
**Great Bend, KS 67530**
**Phone: (620)792-4353 Fax (620)792-1850**
**Email: Jessica.Ziepfel@kbi.state.ks.us**

### Experience

April 2011-Present | Forensic Scientist II
Kansas Bureau of Investigation
Great Bend, KS

March 2010-April 2011 | Forensic Scientist I
Kansas Bureau of Investigation
Great Bend, KS

Duties have included quantitative and qualitative analysis of suspected controlled substances. Proficient in many analytical methods such as GC-MS, FTIR, UV/vis as well as wet chemistry.

### Education

**Bachelor of Science, Forensic Chemistry**
Ohio University, Athens, Ohio, June 2009

### Meetings

Southwestern Association of Forensic Scientists (SWAFS) Meeting 2010
Midwestern Association of Forensic Scientists (MAFS) Meeting 2010

### Continuing Education

Comparison of GC-MS and GC-IRD Methods for the Identification of Isomeric Substituted Phenethylamines and Related Drug Substances, SWAFS 2010

Drugs, Analogs, and Controlled Substance Analogs SWAFS 2010

Current JWH Compounds, SWAFS 2010

Mass Spectral Interpretation of Unknown Compounds, MAFS 2010

The Chemistry of Clan Labs, MAFS 2010

Synthetic Cannabinoids and Natural Highs, MAFS Spring Workshop 2011

# DAWN M. FORD, M.S.

Kansas Bureau of Investigation
625 Washington
Great Bend, KS 67530
(620) 792-4353
dawn.ford@kbi.state.ks.us

**CURRENT EMPLOYMENT:**

Forensic Scientist III                                    August 2008 – Present
Kansas Bureau of Investigation
Great Bend, KS

Responsible for examining criminal casework evidence for the presence of biological material and performing DNA Profiling procedures according to standard operating procedures.

**EDUCATION:**

Master of Science                                         May 2005
Forensic Science
University of Central Oklahoma
Edmond, OK

Bachelor of Science                                       May 1993
Criminal Justice
University of Nebraska-Omaha
Omaha, NE

**PROFESSIONAL EXPERIENCE:**

DNA Analyst I                                             April 2006 – August 2008
Orchid Cellmark Inc., Nashville, TN

DNA Analyst in Training                                   October 2005 – January 2006
Identigene, Inc.
Houston, TX

**PROFESSIONAL ASSOCIATIONS:**

ASCLD/LAB International Assessment Team – May 2012 to present
Midwestern Association of Forensic Scientists – September 2009 to present
International Association for Identification – Kansas Division, January 2009 to present
American Academy of Forensic Sciences, Trainee Affiliate, February 2007 – January 2009

**CONTINUING EDUCATION:**

Combined DNA Index (CODIS) Version 7.0 Training, Austin, TX, July 2012

Combined DNA Index (CODIS) Version 7.0 Training, Online Curriculum, July 2012

ASCLD/LAB International Assessor Training, Sterling, VA, May 2011

Mid-America Forensic DNA Conference, Columbia, MO, April 2011

National CODIS Conference, Salt Lake City, UT, November 2010

Last Updated July 2012                                    Page 1 of 2

## DAWN M. FORD, M.S.

**CONTINUING EDUCATION:**

Midwestern Association of Forensic Scientists Annual Meeting, Kansas City, MO, October 2010
      Forensic Science Laboratory Accreditation Workshop
      Capillary Electrophoresis Instrumentation: Theory and Application Workshop
      Joint Symposium on DNA and Latent Prints

Combined DNA Index (CODIS) Training, Vienna, VA, September 2010

Midwest Forensics Resource Center/Midwestern Association of Forensic Scientists - Forensic Science Education Forum, Indianapolis, IN, June 2010

Bloodstain Pattern Analysis QA/QC Meeting, Salina, KS, January 2010

Applied BioSystems Validation Teach Back: Quantifiler Duo, Identifiler, YFiler, 3130 Genetic Analyzer, Great Bend, KS, May 2009

Mid-America Forensic DNA Conference, Columbia, MO, April 2009
      Basic DNA Statistics Workshop

International Association for Identification – Kansas Division Annual Meeting, Lawrence, KS, March 2009

DNA Crime Scene Collection Training Course, Sorenson Forensics, October 2008

Bloodstain Pattern Analysis, 40 hour basic course, Lawrence, KS, September 2008

American Academy of Forensic Sciences Annual Meeting, San Antonio, TX, February 2007

Orchid Cellmark Continuing Education Seminars, Nashville, TN
Topics: Troubleshooting Capillary Electrophoresis, July 2008
      Comparison of STR Kits, March 2008
      Parentage Testing, January 2008
      PowerPlex 16, July 2007
      Significance, Use, and Interpretation of Controls, June 2007
      DNA Quantitation, May 2007
      DNA Extraction:  Theory and Application, April 2007
      PCR Amplification:  Theory and Application, April 2007
      Y-STR and Mitochondrial DNA Analysis, March 2007
      Mixture Interpretation, February 2007
      Expert Witness Testimony Training, January 2007
      DNA Admissibility:  Frye, Daubert, and Rule 702, September 2006
      Ethics in Forensic Science, August 2006
      Forensic Statistics, June and July 2006
      Forensics Lab and Theory Basics, May 2006
      Parentage Testing, May 2006
      Y-STR Analysis, April 2006

Applied BioSystems Quantifiler Training, Nashville, TN, April 2006

Applied BioSystems GeneMapper ID Training, Nashville, TN, April 2006

American Academy of Forensic Sciences Annual Meeting, New Orleans, LA, February 2005

# James Newman
FORENSIC SCIENTIST
KANSAS BUREAU OF INVESTIGATION
625 WASHINGTON
GREAT BEND, KS 67530
(620) 792-4353

## EDUCATION:

**Masters of Science in Biology**                                      **Summer 2004**
FORT HAYS STATE UNIVERSITY                                                HAYS, KANSAS

**Bachelor of Arts in Biochemistry**                                    **Spring 1995**
UNIVERSITY OF KANSAS                                                   LAWRENCE, KANSAS

## WORK HISTORY:

**Forensic Biologist**                                                **Jan. 1999 – Current**
KANSAS BUREAU OF INVESTIGATION                                       GREAT BEND, KANSAS

**Forensic Chemist**                                                  **Feb. 1997 – July 1999**
KANSAS BUREAU OF INVESTIGATION                                       GREAT BEND, KANSAS

**Forensic Chemist**                                                  **Nov. 1996 – Jan. 1997**
KANSAS BUREAU OF INVESTIGATION                                         TOPEKA, KANSAS

**Associate Instructor**                                              **Jan. 2006 - Current**
BARTON COUNTY COMMUNITY COLLEGE                                      GREAT BEND, KANSAS

## CURRENT DUTIES:
**Forensic Biology/DNA Analysis**
**Biology Section Safety Officer – Great Bend**
**Crime Scene Response Team**

## CERTIFICATIONS:
**Crime Scene Certified – Analyst Level**
**Bloodstain Pattern Examiner**

## TRAINING RECEIVED:

**Mid-America 2012 Forensic DNA Conference**                          **April, 2012**
Paternity Testing Corporation                                       COLUMBIA, MISSOURI
                                                                          14 Hours

**Kansas Division of the International Association of Identification**    **March, 2012**
**2012 Meeting**
Kansas Division of the International Association for Identification    JUNCTION CITY, KANSAS
                                                                          12 Hours

JAMES NEWMAN
CURRICULUM VITAE
1

| | |
|---|---|
| **Bloodstain Pattern Analysis Annual Quality Assurance Meeting**<br>Kansas Bureau of Investigation | **February, 2012**<br>KANSAS CITY, MISSOURI<br>16 Hours |
| **Leica Geosystems – Public Safety & Forensic Training Level 2**<br>Leica Geosystems | **December, 2011**<br>TOPEKA, KANSAS<br>32 Hours |
| **Mid-America 2011 Forensic DNA Conference**<br>Paternity Testing Corporation | **April, 2011**<br>COLUMBIA, MISSOURI<br>16 Hours |
| **Kansas Division of the International Association of Identification 2011 Meeting**<br>Kansas Division of the International Association for Identification | **March, 2011**<br><br>WICHITA, KANSAS<br>6 Hours |
| **Crime Scene Symposium**<br>Midwestern Association of Forensic Scientists | **October, 2010**<br>KANSAS CITY, MISSOURI<br>20 Hours |
| **Leica Geosystems – Public Safety & Forensic Training Level 1**<br>Leica Geosystems | **September, 2010**<br>TOPEKA, KANSAS<br>30 Hours |
| **Mid-America 2010 Forensic DNA Conference**<br>Paternity Testing Corporation | **April, 2010**<br>COLUMBIA, MISSOURI<br>16 Hours |
| **Kansas Division of the International Association of Identification 2010 Meeting**<br>Kansas Division of the International Association for Identification | **March, 2010**<br><br>MANHATTAN, KANSAS<br>12 Hours |
| **Bloodstain Pattern Symposium**<br>Midwest Forensic Research Center | **August, 2009**<br>AMES, IOWA<br>16 Hours |
| **Kansas Division of the International Association of Identification 2009 Meeting**<br>Kansas Division of the International Association for Identification | **March, 2009**<br><br>LAWRENCE, KANSAS<br>12 Hours |
| **18th Annual Training Conference on Crime Scene Reconstruction**<br>Association for Crime Scene Reconstruction | **February, 2009**<br>DENVER, COLORADO<br>24 Hours |
| **DNA Auditor Training**<br>Federal Bureau of Investigation | **November, 2008**<br>CRYSTAL CITY, VIRGINIA<br>16 Hours |
| **14th National CODIS Conference**<br>Federal Bureau of Investigation | **November, 2008**<br>CRYSTAL CITY, VIRGINIA<br>24 Hours |

JAMES NEWMAN
CURRICULUM VITAE
2

**Mid-America 2008 Forensic DNA Conference**
Paternity Testing Corporation

**April, 2008**
COLUMBIA, MISSOURI
18 Hours

**Kansas Division of the International Association of Identification 2008 Meeting**
Kansas Division of the International Association of Identification

**April, 2008**

SALINA, KANSAS
16 Hours

**17th Annual Training Conference on Crime Scene Reconstruction**
Association for Crime Scene Reconstruction

**February, 2008**
TULSA, OKLAHOMA
20 Hours

**Kansas Division of the International Association of Identification 2007 Meeting**
Kansas Division of the International Association of Identification

**April, 2007**

TOPEKA, KANSAS
16 Hours

**Mid-America 2007 Forensic DNA Conference**
Paternity Testing Corporation

**April, 2007**
COLUMBIA, MISSOURI
12 Hours

**Kansas Division of the International Association of Identification 2006 Meeting**
Kansas Division of the International Association of Identification

**October, 2006**

JUNCTION CITY, KANSAS
12 Hours

**Tri-Division Educational Conference**
Arizona Identification Council, Nevada State Division and Utah Division of the International Association for Identification

**August, 2006**
HENDERSON, NEVADA

20 Hours

**International Association for Identification 2006 Meeting**
International Association for Identification

**July, 2006**
BOSTON, MASSACHUSETTES
30 Hours

**Kansas Bureau of Investigation Bloodstain QA Meeting 2006**
Kansas Bureau of Investigation

**May, 2006**
LAWRENCE, KANSAS
5 Hours

**Mid-America 2006 Forensic DNA Conference**
Paternity Testing Corporation

**April, 2006**
COLUMBIA, MISSOURI
12 Hours

**Advanced Bloodstain Pattern Analysis**
Tom Bevel

**March, 2006**
LAWRENCE, KANSAS
40 Hours

**DNA Population Statistics & Courtroom Presentation of DNA Evidence**
Wyoming Division of Criminal Investigation State Crime Laboratory

**December, 2005**

CHEYENNE, WYOMING
16 Hours

**Kansas Division of the International Association of Identification 2005 Meeting**

**October, 2005**

JAMES NEWMAN
CURRICULUM VITAE
3

Kansas Division of the International Association for Identification

MANHATTAN, KANSAS
12 Hours

## Kansas Bureau of Investigation Bloodstain QA Meeting 2005
Kansas Bureau of Investigation

**August, 2005**
SALINA, KANSAS
12 Hours

## Statistics Workshop
Charles Brenner, Ph.D.

**March, 2005**
COLUMBIA, MISSOURI
4 Hours

## Mid-America 2005 Forensic DNA Conference
Paternity Testing Corporation

**March, 2005**
COLUMBIA, MISSOURI
12 Hours

## Back-to-Basics: Processing the Crime Scene from Start to Finish
Kansas Division of the International Association for Identification

**October, 2004**
MANHATTAN, KANSAS
12 Hours

## Statistics Workshop
Paternity Testing Corporation

**March, 2004**
COLUMBIA, MISSOURI
2 Hours

## Missouri-Kansas 2004 Forensic DNA Conference
Paternity Testing Corporation

**March, 2004**
COLUMBIA, MISSOURI
10 Hours

## 13th International Training Conference on Crime Scene Reconstruction
Association for Crime Scene Reconstruction

**October, 2003**
OKLAHOMA CITY,
OKLAHOMA
20 Hours

## Paternity Testing Workshop
Paternity Testing Corporation

**March, 2003**
COLUMBIA, MISSOURI
2 Hours

## Missouri-Kansas 2003 Forensic DNA Conference
Paternity Testing Corporation

**March, 2003**
COLUMBIA, MISSOURI
8 Hours

## 13th International Symposium on Human Identification
PROMEGA

**October, 2002**
PHOENIX, ARIZONA
20 Hours

## 2001 Southwestern Association of Forensic Scientists Meeting
SOUTHWESTERN ASSOCIATION OF FORENSIC SCIENTISTS

**November, 2001**
SAN ANTONIO, TEXAS
26 Hours

## Advanced Bloodstain Pattern Analysis with Computers
KANSAS BUREAU OF INVESTIGATION/ONTARIO PROVINCIAL POLICE
Vince Hawkes

**June, 2001**
WICHITA, KANSAS
40 Hours

## Short Tandem Repeat Analysis by Capillary Electrophoresis
FEDERAL BUREAU OF INVESTIGATION
Sam Baechtel

**August, 2000**
QUANTICO, VIRGINIA
40 Hours

JAMES NEWMAN
CURRICULUM VITAE
4

**CODIS Training**
FEDERAL BUREAU OF INVESTIGATION/SAIC
Lisa Kennedy

**June, 2000**
VIENNA, VIRGINIA
30 Hours

**Bloodstain Pattern Analysis Workshop**
KANSAS BUREAU OF INVESTIGATION
Michael VanStratton

**May, 2000**
GREAT BEND, KANSAS
40 Hours

**DNA Statistical Workshop**
SOUTHWESTERN WORKING GROUP ON DNA ANALYSIS METHODS
George Carmody

**July, 1999**
AUSTIN,TEXAS
12 Hours

**Homicide Investigation**
BARTON COUNTY COMMUNITY COLLEGE
Phil Vannatter

**May, 1999**
GREAT BEND, KANSAS
7.5 Hours

## PRESENTATIONS GIVEN:

**Trace Evidence and DNA Collection Techniques**
Kansas Division of the International Association for Identification

**March, 2012**
JUNCTION CITY, KANSAS
6 Hours

**Evidence Packaging and Collection**
McPherson Police Department

**July, 2011**
MCPHERSON, KANSAS
2 Hours

**Blood Enhancement Techniques and DNA Analysis**
Midwestern Association of Forensic Scientists

**October, 2010**
KANSAS CITY, MISSOURI
1.5 Hours

**Bloodstain Pattern Interpretation and Blood Collection**
KANSAS BUREAU OF INVESTIGATION

**June, 2007**
GARDEN CITY, KANSAS
7 Hours

**Forensic Biology and Crime Scenes**
KANSAS INTELLIGENCE ASSOCIATION

**June, 2007**
KINGMAN, KANSAS
3 Hours

**Bloodstain Pattern Interpretation and Blood Collection**
M-SQUAD

**May, 2007**
LAWRENCE, KANSAS
8 Hours

**Forensic Biology and Crime Scenes**
KANSAS INTELLIGENCE ASSOCIATION

**November, 2006**
HUTCHINSON, KANSAS
3.5 Hours

**Luminol vs Bluestar: A Comparative Study**
INTERNATIONAL ASSOCIATION FOR IDENTIFICATION

**July, 2006**
BOSTON, MASSACHUSETTES
Poster Presentation

**Forensic Biology**
SANE/SART

**May, 2006**
WICHITA, KANSAS
2.5 Hours

JAMES NEWMAN
CURRICULUM VITAE
5

**Blood Enhancement Techniques**
Kansas Division of the International Association for Identification

**October, 2005**
MANHATTAN, KANSAS
8 Hours

**Criminal Investigation**
KANSAS BUREAU OF INVESTIGATION – HUTCHINSON CORRECTIONAL FACILITY

**May, 2005**
HUTCHINSON, KANSAS
16 Hours

**Blood Enhancement Techniques and their Effects on DNA Analysis**
MID-AMERICA 2005 FORENSIC DNA CONFERENCE

**March, 2005**
COLUMBIA, MISSOURI
30 Minutes

**Forensic Biology**
SANE/SART

**March, 2005**
GREAT BEND, KANSAS
2.0 Hours

**Forensic Biology**
SANE/SART

**August, 2004**
COLBY, KANSAS
2.0 Hours

**Forensic Biology and Crime Scenes**
KANSAS BUREAU OF INVESTIGATION

**April, 2004**
HAYS, KANSAS
8 Hours

**Forensic Biology and Crime Scenes**
KANSAS INTELLIGENCE ASSOCIATION (DISTRICTS 9 AND 13)

**November, 2003**
HUTCHINSON, KANSAS
2.5 Hours

**Forensic Biology**
SANE/SART

**September, 2003**
WINFIELD, KANSAS
2.0 Hours

**Crime Scene Evidence: Blood Enhancement and DNA Profiles**
KANSAS ACADEMY OF SCIENCE

**April, 2003**
PITTSBURG, KANSAS
0.5 Hours

**Death Investigation Seminar**
KANSAS BUREAU OF INVESTIGATION / SEWARD COUNTY

**September, 2002**
LIBERAL, KANSAS
5 Hours

**Criminal Investigation – Latent Fingerprints, Blood Collection, and DNA**
KANSAS BUREAU OF INVESTIGATION

**May, 2002**

EUREKA, KANSAS
8 Hours

**DNA – The Newest Technology**
KANSAS BUREAU OF INVESTIGATION / SEDGEWICK COUNTY

**May, 2002**
WICHITA, KANSAS
6 Hours

**Crime Scene Evidence: Blood Enhancement and DNA Profiles**
KANSAS ACADEMY OF SCIENCE

**April, 2002**
HAYS, KANSAS
Poster Presentation

JAMES NEWMAN
CURRICULUM VITAE
6

| | |
|---|---|
| **Blood Enhancement and DNA**<br>KANSAS DIVISION OF THE INTERNATIONAL ASSOCIATION OF IDENTIFICATION | **October, 2001**<br>SALINA, KANSAS<br>0.5 Hours |
| **Criminal Investigation – Blood Collection**<br>KANSAS BUREAU OF INVESTIGATION | **August, 2001**<br>SALINA, KANSAS<br>5 Hours |
| **DNA**<br>KANSAS INTELLIGENCE ASSOCIATION | **August, 2001**<br>GREAT BEND, KANSAS<br>2 Hours |
| **Criminal Investigation – Blood Collection**<br>KANSAS BUREAU OF INVESTIGATION<br>Hutchinson Correctional Facility | **May, 2001**<br>HUTCHINSON, KANSAS<br>8 Hours |
| **Criminal Investigation – Blood Collection**<br>KANSAS BUREAU OF INVESTIGATION<br>New Agent Class | **May, 2001**<br>SALINA, KANSAS<br>2 Hours |
| **Criminal Investigation – Blood Collection**<br>KANSAS BUREAU OF INVESTIGATION | **August, 2000**<br>SALINA, KANSAS<br>4 Hours |
| **Evidence Packaging and Preservation**<br>KANSAS INTELLIGENCE ASSOCIATION DISTRICT #5 | **March, 2000**<br>WAKEENY, KANSAS<br>1 Hour |

## PROFESSIONAL ORGANIZATIONS:

| | |
|---|---|
| **Kansas Division of the International Association of Identification (KDIAI)** | Member since 2005 |
| **International Association for Identification (IAI)** | Member since 2006 |

JAMES NEWMAN
CURRICULUM VITAE
7

# Holly M. Latham
KBI Great Bend Laboratory
Forensic Scientist
Curriculum Vitae

## WORK ADDRESS:
Kansas Bureau of Investigation
625 Washington
Great Bend, Kansas 67530
Phone: (620) 792-4353
Fax: (620) 792-1850
E-mail: holly.latham@kbi.state.ks.us

## EDUCATION:
Bachelor of Science Degree, 1998, Kansas State University, Manhattan, Kansas
    Major: Microbiology
Master of Liberal Studies, 2009, Fort Hays State University, Hays, Kansas
    Major: Criminal Justice

## EXPERIENCE:
Forensic Scientist III, Latent Print Section, Kansas Bureau of Investigation,
November 1999 – Present

## SPECIAL QUALIFICATIONS:
**Certification**:
Clandestine Laboratory Investigation/ Safety Certification Program
    June 25- June 29, 2001, Salina, KS.
Certified Latent Print Examiner
    January 30, 2003
Certified Bloodstain Pattern Examiner
    July 12, 2006

**Specialized Training**:
Bloodstain Pattern Interpretation
    May 15- May 19, 2000, Great Bend, KS.
International Association for Identification, Educational Conference
    July 23- July 27, 2000, Charleston, WV.
Courtroom Testimony Techniques
    September  18- September 19, 2000, Indianapolis, IN.
Advanced Palm Print Identification
    September 20- September 22, 2000, Indianapolis, IN.
Kansas Division of the International Association for Identification,
    October 10- October 11,  2000, Salina, KS.
Clandestine Laboratory Investigation / Safety Certification Program
    June 25 – June 29, 2001, Salina, KS.
International Association for Identification, Educational Conference
    July 22- Jully 28, 2001, Miami, FL.
Kansas Division of the International Association for Identification,
    October 10- October 11, 2001, Salina, KS.
IAFIS Customer Service Seminar,
    March 11- March 12, 2002, Columbus, Ohio.
Identicoat 500 Operation Training
    May 14, 2002, Great Bend, KS

Reflective UltraViolet Imaging System Training
    July 1, 2002, Topeka, KS.
FBI Basic Fingerprint Classification Course
    August 5 – August 8, 2002, Mission, KS.
Ridgeology Science Workshop
    October 7 – October 11, 2002, Arlington, TX.
Kansas Division of the International Association for Identification.
    October 13 2003, Lawrence, KS.
Forensic Ridgeology Course
    January 26 – January 30, 2004 Oklahoma City, OK
International Association for Identification, Educational Conference
    August 23 – August 27, 2004 St. Louis, MO
Kansas Division of the International Association for Identification.
    October  2004, Manhattan, KS.
Bloodstain Pattern Analysis Quality Assurance Meeting,
    August  2-3, 2005 Salina, KS.
Kansas Division of the International Association for Identification.
    October 11-12 2005, Manhattan, KS.
Advanced Bloodstain Pattern Analysis
    March 6 – March 10, 2006.  Lawrence, KS.
International Association for Identification, Educational Conference
    July 3 – July 7, 2006, Boston, MA
Tri-Divisions Educational Conference
    August 22 – August 24, 2006, Henderson, NV
Detection, Recovery, and Examination of Footwear Impression Evidence
    September 18 – 22, 2006,  Oklahoma City, OK
Kansas Division of the International Association for Identification
    October 3 – 4, 2006,  Junction City, KS
Kansas Division of the International Association for Identification
    April 24 – 26, 2007, Topeka, KS
MetaMorpho AFIS latent training
    April 27, 2007, Topeka, KS
International Association for Identification
    July 2007, San Diego, CA
Bloodstain Symposium, MFRC
    February 5-7, 2008, Ames, IA
Universal Latent Workstation Training
    March 4-5, 2008, Topeka, KS
Kansas Division of the International Association for Identification
    April 2008, Salina, KS
Bloodstain Pattern Analysis Quality Assurance Meeting,
    January 22.23, 2009, Salina, KS
Association of Crime Scene Reconstructionists
    February 10-13, 2009, Denver, CO
Kansas Division of the International Association of Identification
    March 24-25, 2009, Lawrence, KS
International Association for Identification
    August 17-21, 2009, Tampa Bay, FL
Quality Assurance Bloodstain Pattern Analysis
    November 17-20, 2009, Ames, IA
Kansas Division of the International Association for Identification
    March 23-24, 2010, Manhattan, KS
International Association for Identification
    July 12-16, 2010, Spokane, WA
MFRC Bloodstain Symposium
    August 17-19, 2010, Ames, IA

International Association for Identification
        August 8-12, 2011, Milwaukee, W
Bloodstain Pattern Quality Assurance Meeting
        February 2012, Kansas City, MO
SWGSTAIN
        April 15-20, 2012, Salt Lake City, UT
International Association for Identificaiton
        July 23-27, 2012, Phoenix, AZ
Impression and Pattern Evidence Symposium, National Institute of Justice
        August 6-9, 2012, Clear Water, FL

## TECHNICAL SKILLS
        Comparison of latent and inked impressions
        Development and recovery of latent fingerprints
        Clandestine laboratory investigation and safety trained
        Forensic Photography
        Operation of latent AFIS and IAFIS workstation
        Crime scene examination
        Bloodstain Pattern Analysis

## PROFESSIONAL ORGANIZATIONS:
        International Association for Identification (2000- present)
                Bloodstain Pattern Analysis Sub-committee member (2007- present)
                Bloodstain Pattern Analysis Sub-committee Chair (2009 – present)
                Editorial Review Board Member (2011 – present)
        Kansas Division of the International Association for Identification (2000- present)
                Secretary/Treasurer (2001- 2003)
                Board Member (2006 – 2009)
                President (2009 – 2010)
                Chairman of the Board (2010-2011)
                Regional Representative (2011- present)
        International Association of Bloodstain Pattern Analysts (2005- present)

## PROFESSIONAL PRESENTATIONS:
        Kansas Highway Patrol, November 15, 1999
                Assisted in training in recovery and development of latent prints
        Kansas Highway Patrol,  August 10, 2000
                Assisted in training in recovery and development of latent prints
        Kansas Division of the International Association for Identification, October 11, 2000
                Presentation on Mikrosil
        Kansas Bureau of Investigation, November 14, 2000
                Trained law enforcement on crime scenes and evidence collection
        Hamilton County Sheriff's Department, December 6, 2000
                Training in recovery and development of latent prints
        Kansas Highway Patrol, March 1, 2001
                Training in recovery and development of latent prints
        Kansas Investigators Association, September 5, 2001
                Training in recovery and development of latent prints, and evidence packaging
        Kansas Highway Patrol, March 5, 2002
                Training in recovery and development of latent prints
        Leoti Police Department, June 18, 2002
                Training in recovery and development of latent prints
        Kansas Bureau of Investigation Agent Training, August 2002
                Using RUVIS to find latent fingerprints and photograph bloodstains
        Butler County Attorney's Office, Andover, KS March 13, 2003

Crime Scene Investigations and Laboratory Techiniques
National Forensics Academy, Knoxville, TN February 28 – March 4, 2005
 40 hour basic Bloodstain Pattern Analysis
Lindsborg Police Department, June 28, 2005
 Training in recovery and development of latent prints, and evidence packaging
National Forensics Academy, Knoxville, TN July 11 – 15, 2005
 40 hour basic Bloodstain Pattern Analysis
Bloodstain Pattern Analysis Quality Assurance Meeting, Salina, KS Aug 2-3, 2005
 Digital Photography and case presentation
Kansas Division of the International Association for Identification, October 20015
 Advanced Chemical development techniques for fingerprints
Kansas Bureau of Investigation Agent Inservice, Topeka, KS December  21, 2005
 Digital Photography and Enhancement of Luminol
National Forensics Academy, Knoxville, TN February 27 – March 3, 2006
 40 hour basic Bloodstain Pattern Analysis
International Association for Identification, Boston, MA July 4, 2006
 Aging and Wound Healing in Friction Ridge Skin
International Association for Identification, Boston, MA July 5, 2006
 PowerPoint for the Courtroom in Bloodstain Pattern Analysis
Kansas Division of the IAI, Junction City, KS Oct 3, 2006
 PowerPoint for the Courtroom
Kansas Division of the IAI, Junction City, KS Oct 3, 2006
 Wound Healing in Friction Ridge Skin
Death Investigation School, Kansas Law Enforcement Training Center October 6, 2006
 Bloodstain Pattern Analysis
National Forensics Academy, Knoxville, TN October  30 – November  3, 2006
 40 Hour Basic Bloodstain Pattern Analysis
Toronto Police Forensic Conference, Toronto, Canada February 28, 2007
 Wound Healing in Friction ridge skin
National Forensics Academy, Las Vegas, NV March 19 – 23, 2007
 40 Hour Basic Bloodstain Pattern Analysis
M-Squad Training, Lawrence, KS May 23, 2007
 Introduction to Bloodstain Pattern Analysis
International Association for Identification, San Diego, CA  July 2007
 PowerPoint for the Courtroom in Bloodstain Pattern Analysis
International Association for Identification, San Diego CA July 2007
 Swipe, Wipes, and other Transfer Impressions
Kansas Bureau of Investigation, Topeka, KS July 21 – July 25, 2008
 40 Hour Basic Bloodstain Pattern Analysis
Lawrence Police Department, Lawrence, KS September  8 – September 12, 2008
 40 Hour Basic Bloodstain Pattern Analysis
International Association for Identification, Tampa, FL August 2009
 The Convergence of the Scientific Method and Bloodstain Pattern Analysis
International Association for Identification, Spokane, WA July 2010
 The Convergence of the Scientific Method and Bloodstain Pattern Analysis
International Association for Identification, Spokane, WA July 2010
 Applying the Scientific Method to Bloodstain Pattern Analysis
Kansas Sheriff's Spring Training, Emporia, KS
 Bloodstain Pattern Analysis at the Crime Scene
International Association for Identification, Milwaukee, WI August 2011
 The Convergence of the Scientific Method and Bloodstain Pattern Analysis
International Association for Identification, Milwaukee, WI August 2011
 Applying the Scientific Method to Bloodstain Pattern Analysis
Bloodstain Pattern Analysis Quality Assurance Meeting, Kansas City, MO February 2012
 Applying the Scientific Method to Bloodstain Pattern Analysis
SWGSTAIN, Salt Lake City, UT April 2012

Applying the Scientific Method to Bloodstain Pattern Analysis
International Association for Identification, Phoenix, AZ August 2012
The Convergence of the Scientific Method and Bloodstain Pattern Analysis
International Association for Identification, Phoenix, AZ 2012
Applying the Scientific Method to Bloodstain Pattern Analysis
International Association for Identification, Phoenix, AZ 2012
Complex Bloodstain Patterns
Impression and Pattern Evidence Symposium, Clear Water, FL August 2012
Applying Logic and the Scientific Method to Bloodstain Pattern Analysis

## PUBLISHED WORKS:

Latham, H.M. Reasoning, the Scientific Method, and Bloodstain Pattern Analysis – Assuring that the Questions are being Answered Correctly. *J. For Ident.* **2011**, 61 (4), 333-340.

Latham, H.M. Using and Articulating the Scientific Method in Bloodstain Pattern Analysis. *J. For Ident.* **2011**, 61 (5), 487-494.

# JESSICA M. KAISER, F-ABC

1560 SR 56 SW
LONDON, OHIO 43140
(740) 845-2447

## EDUCATION:

**Bachelor of Science**                                        **May 2005**
DEFIANCE COLLEGE                                          DEFIANCE, OHIO
     Major:     Forensic Science
     Minor:     Criminal Justice

## EXPERIENCE:

**Forensic Scientist**                                        **March 2012 – Current**
OHIO BUREAU OF CRMINAL INVESTIGATION                          LONDON, OHIO
DRUG CHEMISTRY SECTION

**Forensic Scientist**                                        **February 2006 – September 2011**
KANSAS BUREAU OF INVESTIGATION                                GREAT BEND, KANSAS
DRUG CHEMISTRY SECTION

## TRAINING:

**Synthetic Cannabinoids and Natural Highs**                 **April, 2011**
MIDWESTERN ASSOCIATION OF FORENSIC SCIENTISTS                 DAYTON, OHIO

**The Chemistry of Clan Labs**                               **October, 2010**
MIDWESTERN ASSOCIATION OF FORENSIC SCIENTISTS                 KANSAS CITY, MISSOURI

**Mass Spectral Interpretation of Unknowns**                 **October, 2010**
MIDWESTERN ASSOCIATION OF FORENSIC SCIENTISTS                 KANSAS CITY, MISSOURI

**Advanced Structure Elucidation: Spectral Interpretation**  **October, 2009**
MIDWESTERN ASSOCIATION OF FORENSIC SCIENTISTS                 ORLANDO, FLORIDA

**Nuisance Plants for Forensic Chemists and Toxicologists**  **October, 2009**
MIDWESTERN ASSOCIATION OF FORENSIC SCIENTISTS                 ORLANDO, FLORIDA

**Advances in Techniques for Analysis of Drugs of Abuse**    **October, 2009**
MIDWESTERN ASSOCIATION OF FORENSIC SCIENTISTS                 ORLANDO, FLORIDA

**Analysis of Low Explosives**                               **June, 2008**
MIDWESTERN FORENSICS RESOURCE CENTER                          LANSING, MICHIGAN

**Steroid Workshop**                                         **May, 2008**
CALIFORNIA ASSOCIATION OF CRIMINALISTICS                      SAN DIEGO, CALIFORNIA

**Forensic Chemist Seminar**                                 **July, 2007**
DRUG ENFORCEMENT ADMINISATRATION                             STERLING, VIRGINIA

**Gas Chromatography Maintenance and Troubleshooting**       **October, 2006**
MIDWESTERN ASSOCIATION OF FORENSIC SCIENTISTS                 INDIANAPOLIS, INDIANA

**Laboratory Approach to the Methamphetamine Problem**       **October, 2006**
MIDWESTERN ASSOCIATION OF FORENSIC SCIENTISTS                 INDIANAPOLIS, INDIANA

**Basic Drug Identification Workshop**                       **May, 2006**
MIDWESTERN ASSOCIATION OF FORENSIC SCIENTISTS                 OVERLAND PARK, KANSAS

## PERFESSIONAL ORGANIZATIONS:

- **Midwestern Association Of Forensic Scientists**    **October 2009 – Present**
- **American Board of Criminalistics**    **June 2008 – Present**
  - DRUG ANALYSIS FELLOW

## TECHNICAL SKILLS:

**Gas Chromatography**
**Mass Spectrometry**
**Microscopy**
**Photography**
**Thin Layer Chromatography**
**Infrared Spectrophotometry**
**UV/VIS Spectrophotometry**



## Leanora (Brun-Conti) Bender

Education:
MICHIGAN STATE UNIVERSITY: Bachelor of Sciences in Criminalstics, 1981.
UNIVERSITY OF MICHIGAN-DEARBORN: Teaching Certificate, Major: Chemistry,
Minor: General Science, 1987.

Experience:
LABORATORY TECHNICIAN/BENCH CHEMIST
BASF COATINGS AND COLORANTS, 1982-1986
Duties at BASF included formulating and making test batches of automotive paint,
performing physical and chemical durability tests on the paint, and testing the
sprayability and feasibility of the coating in the automotive assembly plant.

FORENSIC SCIENTIST, MICHIGAN STATE POLICE, 1988-2001
Primary duty was as a trace evidence analyst, which includes the analysis of the
following types of evidence: fire debris, paints and polymers, glass, footwear and tire
track impressions, fibers, explosive residue, headlamps, and chemical and microscopical
analysis of any unknown substances. Other duties included the processing of homicide
scenes, bloodstain pattern interpretation, testifying in court, training new examiners, and
monitoring interns.

CHEMIST, BUREAU OF ALCOHOL, TOBACCO AND FIREARMS AND
EXPLOSIVES, 2001 to present
Primary duty was as a trace evidence analyst. This includes the analysis of the following
types of evidence: paints and polymers, glass, footwear and tire track impressions, fibers,
hairs and chemical and microscopical analysis of any unknown substances. Other duties
included the processing of crime scenes, testifying in court, training new examiners, and
training agents and military personnel.

### Specialized Training (chronological order)

Forensic Paint and Glass Examination (3/88)-Scott Ryland, Florida Department of Law
Enforcement

Forensic Photography (12/88)-Michigan State Police Forensic Science Division

Instrumental Analysis of Paint and Polymers (8/89)-FBI Academy

1

Footwear Workshop (10/89)-Midwestern Association of Forensic Scientists

Arson Symposium (2/90)-American Academy of Forensic Sciences Meeting

Polarized Light Microscopy Workshop (3/90)-Wild-Leitz Microscope Company

Spectrum 91, International Symposium on Forensic Techniques (6/91)

International Symposium on the Forensic Aspects of Trace Evidence (6/91)-FBI
Academy

Microscopical Examination of Non-mineralogical Trace Evidence (10/91)-Midwestern
Association of Forensic Sciences Meeting

Polarized Light Microscopy (3/93)-McCrone Research Institute

Fourier Transform Infrared Spectroscopy Analysis of Fibers (10/93)-Illinois State Police
Laboratory

Photomicrography Workshop (10/93)-Midwestern Association of Forensic Sciences
Meeting

American Academy of Forensic Sciences Meeting (2/94)-Took and passed the General
Knowledge and Fire Debris Certification Tests given by the American Board of
Criminalists

International Symposium of Footwear and Tire Track Examiners (6/94)-FBI Academy

Canine Accelerant Detection Association Conference (10/94)-Springfield, IL

Identification of Low Explosives (3/95)-Thomas Hopen of MVA Associates and James
Crippen of the Colorado Bureau of Investigation

Infrared Spectroscopy Interpretation I (7/95)-Bowdoin College
Brunswick, ME
7/95

Identification of Unknown Particles (10/95)-Midwestern Association of Forensic
Sciences
Paduca, KY
10/95

2

International Symposium on Trace in Transition (6/96)-Sponsored by the FBI

Canadian Society of Forensic Sciences Meeting (12/96)-Attended a workshop on infrared spectroscopy techniques and interpretation

Paint Microscopy Workshop (10/97)-Midwestern Association of Forensic Sciences

Infrared Spectroscopy II (8/98)-Bowdoin College

Midwestern Association of Forensic Sciences-Program Chair (10/98)

Bloodstain Pattern Interpretation (4/99)-Mike Van Stratton and Kelly Robbins of the Kansas Bureau of Investigation

Color Workshop (2/00)-Max Houck and Ron Menold of the FBI Laboratory, and Dr. Paul Martin of S.E.E., Inc.

Interpretation of Mass Spectra (4/01)-Mass Spectrometry Discussion Group of the Greater Washington Area

Tape Analysis Workshop (9/01)-Midwestern Association of Forensic Scientist's Meeting

HAZMAT Training (12/01)-Environmental Protection Agency

The Chemistry of Pyrotechnics (1/02)-Dr. John Conkling, Washington College

FBI Forensic Hair Examination (4/02)-FBI Hairs and Fibers Unit

Photography Workshop (5/02)-United States Secret Service
Washington, DC
5/02

Textile Fundamentals (7/03)-North Carolina State University-Raleigh
7-03

Scanning Electron Microscopy-Operations Course (8/03)-JEOL USA
Peabody, MA
8-03

Advanced Fiber Analysis (5/04)-McCrone Associates

DNA for the Non-Biologist (10/05)-Midwestern Association of Forensic Scientists

Bloodstain Pattern Interpretation on Clothing (10/06)-Midwestern Association of Forensic Scientists

3

Cosmetics/Glitter Master Workshop (8/07) Trace Symposium, Clearwater Beach, FL

Inter/Micro (7/10), Chicago, IL

Dyes, Fibers and Recent Advances in Textile Chemistry (8/11), Trace Symposium, Clearwater Beach, FL

Inter/Micro (7/12), Chicago, IL

## Papers and Posters

"The Chemistry and Industrial Application of Acrylic Basecoat/Clearcoat Automotive Topcoats" presented as a paper (Midwestern Association of Forensic Sciences meeting 10/89) and as a poster (International Symposium on the Forensic Aspects of Trace Evidence 6/91).

"Homemade Gelatin Lifters" co-authored and presented as a paper (Midwestern Association of Forensic Sciences meeting 10/91) and as a poster (International Symposium of Footwear and Tire Track Examiners 6/94).

"A Look at Pearlescent Pigments" co-authored and presented as a paper (Midwestern Association of Forensic Sciences meeting 10/93).

"Birds of a Feather: The Microscopical Examination of Bird Down as Trace Evidence and its Use in Solving 'The Case of the Heinous Hamster Stomper'" co-authored and presented as a paper (Midwestern Association of Forensic Sciences 10/95).

"Paint as Evidence" presented as a paper (International Symposium on Trace in Transition 6/96).

"Low Beam Filament Distortion in a Dual Filament Halogen Headlamp" presented as a paper (Midwestern Association of Forensic Sciences 10/96 and the American Academy of Forensic Sciences meeting 2/00).

"Nylon Membranes Impregnated with Tetramethylbenzadine for Lifting Bloody Footwear Impressions and Fingerprints" co-authored and presented as a paper (Midwestern Association of Forensic Sciences 10/96).

"Duct Tape: The Shurtape Plant" presented as a paper (Midwestern Association of Forensic Scientists, 9/02).

4

"Pipe Analysis in IED's for Investigative Leads" co-authored and presented at the Advanced Trace Symposium, sponsored by MAFS and the Midwest Forensic Resource Center, 6-06.

"What's New in Automotive Paint Technology", presented at the Trace Symposium, sponsored by the FBI Laboratory Division and the National Institute of Justice, 9/07.

"The Investigation of the Washington DC Area Snipers", presented at the Trace Symposium, sponsored by the FBI Laboratory Division and the National Institute of Justice, 9/07.

### Professional Organizations

Midwestern Association of Forensic Sciences-Member since 1988
Research Committee Member 1992
Planning Committee Member 1994
Training and Education Committee Member 1995-1999
Training and Education Committee Chair 1997
Trace Section Chair 2000-2002
Member-At-Large and Training and Education Chair-2002-4
President-Elect 2004-2005
President 2005-2006
Past President 2006-2007
Ethics Chair 2007-2008
Treasurer 2012-present

Scientific Working Group for Materials Examination (SWGMAT)
Charter member
Member of the paint subgroup 1993-2006
Member of the tape subgroup 2006-present
Recording Secretary 1992-1996
Compiled a country-wide paint analysis survey

Technical Working Group for Fire Debris and Explosive Analysis (TWGFEX)
Training and Education committee member 2000-2004

### Awards

American Academy of Forensic Sciences Regional Award given through the Midwestern Association of Forensic Sciences, 1990.

Outstanding Scientist Award given by the Midwestern Association of Forensic Scientists, 2008.

5

## International Training

Instructor: <u>Crime Scene Investigation</u> in Biskek, Kyrgystan, April 1998. The three instructors taught students all aspects of crime scene investigation including photography, documentation, and the collection of various types of physical evidence; exhumation of buried remains, and had the students process mock crime scenes.

## Certification

<u>American Board of Criminalists:</u>

Diplomat in the General Knowledge Examination, 1994 to present.
Fellow in the Fire Debris Examination 1994-1998 (I am no longer analyzing fire debris; therefore, the Fellow status was terminated.
Fellow in General Criminalstics, 2008 to present

## Publications

<u>Encyclopedia of Forensic Sciences,</u> Dr. Jay Siegal, Pekka J. Saukko, and Geoffrey C. Knupher, eds. "Paints and Coatings: Commercial, Domestic and Automotive". 9/2000 and in the 2nd edition (2012): Paints and Coatings (four chapters) : Overview of paint, Automotive paints, Architectural paints, and Interpretation of paint analysis.*
        *2nd Edition is currently in pre-publication review.

"Discrimination of the 1990s Original Automotive Paint systems: A Collaborative Study of Black Nonmetallic Base Coat/Clear Coat Finishes using Infrared Spectroscopy" (co-author), <u>Journal of Forensic Sciences</u>, 2000.

<u>Mute Witness: How Trace Makes the Case,</u> Max Houck, ed. "Feathers". 3/01

"Nylon Membranes Impregnated with Tetramethylbenzadine for Lifting Bloody Footwear Impressions and Fingerprints" (co-author) <u>Journal of Forensic Sciences,</u> 2004

"Identification and Comparison of Electrical Tapes Using Instrumental and Statistical Techniques: I. Microscopic Surface Texture and Elemental Composition" (co-author) <u>Journal of Forensic Sciences,</u> 2007

6

"Chemical Enhancement Techniques of Bloodstain Patterns after Fire Exposure" (co-author) Journal of Forensic Sciences, 2009 and in Fire & Arson Investigator Magazine, 2012.

### Training Given

Instructor: Teaching about evidential value of trace evidence and the collection of trace evidence in the continuing education of agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives, primarily to their Certified Explosives Specialists and their Certified Fire Investigators, 2005 to present.

Instructor: Teaching about evidential value of trace evidence and the collection of trace evidence in the continuing education of military personnel being deployed to Iraq, 2006 to present.

Co-instructor: Introductory Hair Analysis.  Training was given at the Midwestern Association of Forensic Scientists meeting in Traverse City, MI, September, 2007.

Visiting Scientist Program for the Midwestern Association of Forensic Scientists: invited to train two forensic scientists from the Johnson County Crime Laboratory (KS) in the analysis and comparison of forensic paint samples (2008-9).

Co-instructor: Tape Analysis.  Training was given at the Trace Evidence Symposium, Clearwater Beach, FL, August 2009.

Co-instructor: Natural Fibers. Training given at the Trace Evidence Symposium, Kansas City, MO August 2011.

7

# CURRICULUM VITAE



## *Neal D. Tierney, Special Agent*

Department of Justice
Bureau of Alcohol, Tobacco, Firearms & Explosives
Kansas City Field Division
Wichita Field Office
301 North Main, Suite 225
Wichita, Kansas 67202
Office: (316) 269-6229, Facsimile: (316) 269-6220
Email: Neal.Tierney@atf.gov

---

## PROFESSIONAL EXPERIENCE:

11/01/2001 to present **Special Agent, CES, Firearms/Ammunition Interstate Nexus Expert**
Bureau of Alcohol, Tobacco, Firearms and Explosives
Kansas City Field Division/Wichita Field Office
Wichita, Kansas

**Duties:**  Responsible for investigating crimes and allegations of crimes involving alcohol, tobacco, firearms, explosives and arson.  Responsible for all aspects involving explosive materials to include their seizure, forfeiture, safe handling and destruction.  Responsible for collection of explosive evidence, processing explosive evidence, case investigation, trial preparation, expert testimony at trial and destruction of explosive evidence at case conclusion.  Responsible for examining firearms and ammunition for the purpose of determining their place of manufacture and/or origin, preparing a written report of said research and providing expert testimony in courtroom proceedings.

11/01/2000 – 11/2001 **Spceial Agent**
Bureau of Alcohol, Tobacco, Firearms and Explosives
Kansas City Field Division, Group II
Kansas City, Missouri

**Duties:**  Responsible for investigating crimes and allegations of crimes involving alcohol, tobacco, firearms, explosives and arson.  Primary responsibilities were to investigate alleged violations of Federal explosive, arson, firearms, alcohol, and tobacco statutes.  Investigative functions included obtaining evidence, preparing and presenting criminal case reports to the United States Attorney for prosecution of said violations; preparing and serving arrest and/or search warrants; and testifying as a government witness. Further responsibilities include providing technical assistance to special agents and other law enforcement officers engaged in the investigation of explosions and fires

05/01/1993 – 11/2000 **ATF Inspector**
Bureau of Alcohol, Tobacco, Firearms and Explosives
Kansas City Field Division/Kansas City Area Office
Kansas City, Missouri

**Duties:** Responsible for regulating the industries related to alcohol, tobacco, firearms and explosives. Responsible for qualifying and inspecting firearms licensees. Responsible for qualifying and inspecting explosive licensee and permittees. Responsible for qualifying and inspecting producers and distributors of alcohol products. Responsible for qualifying and inspecting producers and distributors of tobacco products.

## PROFESSIONAL EXPERIENCE – FIRE AND EXPLOSIVES:

2003 to present      **ATF Certified Explosives Specialist**

**Duties**: Conduct post-blast investigations in the Kansas City Field Division and other ATF jurisdictions as assigned; provide technical assistance to state/local bomb squads and other ATF agent in the investigation of explosions; provide safe disposal of recovered, purchased, seized or forfeited explosive materials; provide explosive diagnostic capabilities at special events.

I have participated in the scene examination and post-blast investigation of over 50 explosions and approximately 10 fires. I have initiated over approximately 100 explosive/fire investigations during the course of my tenure with ATF. I have coordinated, instructed and participated in over 50 live training explosives scenarios for post blast investigation training. I have conducted or participated in approximately 100 destructions of explosive materials.

## EDUCATION:

1986 - 1987      **Lees McRae College**
Banner Elk, North Carolina
General College classes preparing for (BS)

1987 - 1991      **Appalachian State University**
Boone, North Carolina
Bachelor of Science degree in Management
Minor in Geography

1990 – summer      **National Park Service**
Montrose, Colorado
College internship as a Park Ranger; Wild-land Firefighter, Search & Rescue, Interpretive Programs and all other general ranger duties

1994      **Newman University**
Kansas City, Missouri
Accounting I

1995      **Johnson County Community College**
Overland Park, Kansas
Accounting II, Business Law

**CERTIFICATIONS:**

2003 - present     Certified Explosives Specialist (ATF)
                   Certification #0318

**PROFESSIONAL TRAINING RECEIVED:**

*Explosives Specialist Recertification:*

2012           National Center for Explosives Training & Research, Huntsville, AL (40 hours)
2010           Fort A.P. Hill, Bowling Green, Virginia (40 hours)
2007           Fort A.P. Hill, Bowling Green, Virginia (80 hours)
2005           Fort A.P. Hill, Bowling Green, Virginia (80 hours)
2003           Fort A.P. Hill, Bowling Green, Virginia (80 hours)

*Explosives Related Training:*

2009           HME (Homemade Explosives) Training
                   National Center for Explosives Training and Research
                   Fort A.P. Hill, Bowling Green, Virginia (40 hours)

2007           Certified Explosives Specialist Recertification
                   National Center for Explosives Training and Research
                   Fort A.P. Hill, Bowling Green, Virginia (80 hours)

2005           Certified Explosives Specialist Recertification
                   National Center for Explosives Training and Research
                   Fort A.P. Hill, Bowling Green, Virginia (80 hours)

2005           Chemistry of Pyrotechnics
                   Washington College, Chestertown, MD
                   Dr. John Conklin, Instructor (40 hours)

2004           Advanced Explosives Destruction Techniques
                   NCETR, Fort A.P. Hill, Bowling Green, VA (80 hours)

2004           WMD Awareness for the LE Executive Course Certificate
                   Lawrence, Kansas

2004           Hazardous Material Incident Response
                   U.S. Environmental Protection Agency,
                   Cincinnati, OH (40 hours)

2003           Certified Explosives Specialist Training
                   National Center for Explosives Training and Research
                   Fort A.P. Hill, Bowling Green, Virginia (80 hours)

2003           IABTI International Training Conference
                   Advanced Improvised Explosives/Terrorism

2003           International Society of Explosives
                   Engineers Practical Blasting-Level 1

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 274

Fort McClellan, Alabama (July 2003)

| | |
|---|---|
| 2002 | Special Investigator – Certificate of Appointment by the State of Kansas Attorney General/Secretary of State, Topeka, Kansas |
| 2002 | Reid Technique of Interviewing and Interrogation John E. Reid & Associates Western Missouri Regional Police Academy |
| 2000 | National Professional Training – NPT #105 ATF/FLETC, Glynco Georgia |
| 2000 | Criminal Investigator Training Program FLETC, Glynco, Georgia |
| 1998 | Post Blast Investigation Training Fort Leonard Wood, Missouri |
| 1998 | ATF Advanced Explosives Training Fort McClellan, Alabama |
| 1994 | Reid Interviewing Techniques Kansas City Field Division, Kansas City, Missouri |
| 1994 | ATF Inspector Basic Training Part I ATF/FLETC, Glynco, Georgia |
| 1994 | ATF Inspector Basic Training Part II ATF/FLETC, Glynco, Georgia |

*Other ATF Related Training:*

| | |
|---|---|
| 2010 | Advanced Ammunition Interstate Nexus Training |
| 2003 | Advanced Firearms and Ammunition Interstate Nexus Training |
| 2003 | Firearms and Ammunition Interstate Nexus Training |
| 1999 | Alcohol and Tobacco Diversion Training |
| 1997 | Advanced Examination Techniques Training |
| 1995 | Firearms and Ammunition Excise Tax Training |

---

**PROFESSIONAL EXPERIENCE – Alcohol, Tobacco and Firearms:**

| | |
|---|---|
| 2003 to present | **ATF Firearms and Ammunition Interstate Nexus Expert** |

**Duties**: Conduct examinations of both firearms and ammunition in the Kansas City Field Division and other ATF jurisdictions for the purpose of determining the place of manufacture, origin and classification of specific firearms and ammunition as assigned; conduct research and often clearing and test-firing procedures for all

types of firearms; prepare written determinations presented to the United States Attorney's Office concerning firearms and ammunition classifications and origins; provide expert witness testimony in both state and federal courts concerning the place of origin.

I have participated in the examination, classification and place of origin in several hundred firearms and ammunition determinations.  I have testified in approximately 30 state and federal trials concerning firearms and ammunition classifications and origins.  I have further provided training to state and local personnel in the field of firearms and ammunition.

2000 – present      **ATF Special Agent**

**Duties**: Responsible for investigating crimes and allegations of crimes involving alcohol, tobacco, firearms, explosives and arson.  Primary responsibilities were to investigate alleged violations of Federal explosive, arson, firearms, alcohol, and tobacco statutes.  Investigative functions included obtaining evidence, preparing and presenting criminal case reports to the United States Attorney for prosecution of said violations; preparing and serving arrest and/or search warrants; and testifying as a government witness. Further responsibilities include providing technical assistance to special agents and other law enforcement officers engaged in the investigation of explosions and fires.

**INSTRUCTOR EXPERIENCE:**

The following instructor assignments are highlights and not all-inclusive.  I have conducted training classes pertaining to firearms and explosives issues, for federal, state, local police and fire personnel, private businesses, colleges and universities, mass media organizations and other public entities.

| | |
|---|---|
| ILEA, International Training Branch Explosives Instructor | ILEA, Gabarone, Botswana, International Explosives Recognition and Post Blast Training 2012 |
| Explosives Instructor, Special Agent FLETC/Glynco, Georgia | Industry Operations Investigator Training, ATF National Academy, 2010 |
| Explosives Instructor, Special Agent FLETC/Glynco, Georgia | Special Agent  Basic Training ATF National Academy, 2009, 2008 and 2007 |
| ILEA, International Training Branch Explosives Instructor | ILEA, Budapest, Hungary, International Post Blast Training (Hungarians, Slovanians & Croatians) 2009 |
| Weapons Recognition Instructor, Midwest Criminal Justice Institute | Weapons Recognition Training provided to attendees at Wichita State University, Spring, 2009 |
| Guest Instructor – Intro to Explosives, Improvised Explosive Devices | Kansas Bureau of Investigation Top Gun School Salina, Kansas, October 2008 |
| Guest Instructor – Intro to Explosives, IEDs, Search Techniques | Kansas Chapter International Association of Arson Investigators, 2010, 2008, 2004 |

| | |
|---|---|
| Guest Instructor – Understanding Title I Versus Title II Firearms | Kansas Department of Wildlife and Parks Annual Training August 2008 |
| Guest Instructor – Intro to Explosives | Kansas Highway Patrol Academy, Salina, Kansas (2007) |
| Explosives Instructor, Post Blast Investigation Techniques (PBIT) | Kansas City Field Division PBIT (November 2009) Wichita, Kansas PBIT (April and November 2009) Columbia, Missouri PBIT (state & local training) 2006 Springfield, Missouri PBIT (state & local training) 2008, 2005 |
| Explosives Instructor, Certified Explosives Specialist Training and Recertification | ATF Career Development Division, NCETR and FLETC, (2005 - present) |
| Firearms Training Instructor | ATF/FLETC, Glynco, Georgia (2005) |

**SPECIAL PROJECTS AND INVESTIGATIONS**

| | |
|---|---|
| ESF – 13, Greensburg, Kansas Disaster | Greensburg, Kansas (May 2007) |
| U. S. Attorney's Citizen Academy | Wichita, Kansas (April 2007) |
| National Governor's Conference | Des Moines, Iowa (July 2005) |

**PROFESSIONAL ORGANIZATIONS**

| | |
|---|---|
| 2003 – present | International Association of Bomb Technicians and Investigators |
| 2003 – present | International Society of Explosives Engineers |

**AWARDS AND COMMENDATIONS**

| | |
|---|---|
| June 2012 | U. S. Department of Justice Certificate of Acknowledgement |
| April 2008 | U. S. Department of Justice Guardian of Justice Award |
| October 2006 | U. S. Department of Justice Special Act Award |
| April 2005 | U. S. Department of Justice Special Act Award |
| August 2003 | U. S. Department of Justice Special Act Award |
| June 2003 | U. S. Department of Justice Johnny A. Masengale Award |
| July 2002 | U. S. Department of the Treasury Time Off Award |
| September 1999 | U. S. Department of the Treasury Special Act Award |
| May 1999 | U. S. Department of the Treasury Adopted Suggestion Award |

## STATEMENT OF QUALIFICATIONS

Neal D. Tierney, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives
Wichita, Kansas

I, Neal D. Tierney, hereby declare and state:

1.    That I am employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been so employed since November of 2000.  Prior to employment with ATF as a Special Agent, I was employed as an Inspector with ATF since May of 1993.  Prior to employment with ATF as an Inspector, I was employed by ATF in Washington, DC in the National Firearms Act Branch (NFA) since August of 1992.

2.    That as a Special Agent with ATF, one of my responsibilities is conducting criminal investigations concerning alleged violations of the Federal firearms laws.  I have acquired knowledge and experience as to firearms and ammunition and the interstate nexus of firearms and ammunition, due to investigations, research, records, familiarity, conferring with other experts, training, and certifications.  I prepare reports and official correspondence relating to the identification, origin and classification of firearms and ammunition under the provisions of the Federal firearms laws.

3.    That during the course of my duties, I have examined thousands of firearms and thousands of rounds of ammunition for the purpose of determining the manufacturer, model, caliber or gauge and serial number; the place of manufacturer; function and design, and/or the status as related to the National Firearms Act.

4.    That I have visited and contacted the National Tracing Center on numerous occasions and requested firearms traces concerning the manufacture and interstate/intrastate shipment of firearms.  I have also assisted numerous Federal, state and local law enforcement agencies with firearms traces.

5.    That I have had numerous contacts with firearms dealers and manufacturers who are Federal firearms licensees (FFLs), regarding licensing application, firearms transfer, acquisition, disposition, compliance with Federal regulations and criminal enforcement matters and continue to do so as part of ATF's liaison with the firearms industry.

6.    That I have received formal training for law enforcement personnel in both a general and specific nature as it pertains to the recognition and identification of firearms and ammunition and their place of manufacture.  This training includes, but is not limited to the following:

- ATF Inspector Basic Training, Part I and II, Federal Law Enforcement Training Center, Brunswick, Georgia.
- Advanced Firearms Ammunition Excise Tax (FAET) Auditing Class, Federal Law Enforcement Training Center, Brunswick, Georgia.
- Criminal Investigator Training Program, Federal Law Enforcement Training Center, Brunswick, Georgia.
- New Professional Training, ATF National Academy, Federal Law Enforcement Training Center.
- Firearms Interstate Nexus Training, ATF Headquarters, Washington, DC.
- Advanced Interstate Nexus Training, Various Firearms Manufacturers in the New England States

7. During my employment with ATF, I have personally examined the ATF Firearms Technology Branch's Reference Collection on five separate occasions, which includes approximately 5,000 firearms. During my employment with ATF, I have conducted inspections at hundreds of Federal Firearms Licensed dealers (FFLs) and have examined thousands of firearms and ammunition cartridges. During my employment with ATF and as a direct result of the eight months I was employed by the National Firearms Act Branch, I continue to assist Federal, state and local law enforcement agencies and persons from the general public in understanding the National Firearms Act of 1934 and the differences between Title I and Title II firearms as defined by Federal law.

8. That I maintain current information regarding a historical list of licensed United States and foreign manufacturers, importers and distributors, as well as, common firearms proof marks utilized by numerous foreign countries.

9. That my expertise relative to the various disciplines of firearms and ammunition to include interstate nexus, has been requested and recognized by the following agencies:

- Bureau of Alcohol, Tobacco, Firearms and Explosives
- United States Secret Service
- Bureau of Immigration and Customs Enforcement
- Drug Enforcement Administration
- United States Marshal's Service
- The Office of the Judge Advocate General
- United States Attorney's Office for the Judicial District of Kansas
- Kansas Bureau of Investigation
- Various Police Departments and Sheriff's Departments within the states of Kansas and Missouri
- Various museums within the states of Kansas and Missouri regarding legal possession and registration of firearms
- Federal Bureau of Investigation

10.   That for 20 years, I have had a personal interest in the history, collection, nomenclature and sporting use of firearms and ammunition.  I have also accumulated a personal reference library of firearms and ammunition related publications such as Blue Book of Gun Values, Gun Trader's Guide, Gun Digest, Jane's Firearms Reference Guide, Modern and Military Firearms of the World, Flayderman's Guide to Antique American Firearms, Shooter's Bible, Standard Catalog of Firearms, Cartridges of the World, and other publications and listings referencing firearms and ammunition in order to remain familiar with firearms and ammunition trends.

11.   I am a Special Agent Certified Explosives Specialist (SACES) who is authorized to transport, receive, demonstrate and destroy explosive materials.

12.   I am a Firearms and Ammunition Interstate Nexus Expert who is authorized to conduct research to determine the place of origin for firearms and ammunition for the purpose of providing expert testimony in state and Federal court for issues relating to firearms and ammunition.

_____

Neal D. Tierney
Special Agent

# CURRICULUM VITAE



## *Douglas J. Monty, Senior Special Agent*

Department of Justice
Bureau of Alcohol, Tobacco, Firearms & Explosives
Kansas City Field Division
Wichita Field Office
301 North Main, Suite 225
Wichita, Kansas 67202
Office: (316) 269-6229, Facsimile: (316) 269-6220
Email: Douglas.Monty@atf.gov

## PROFESSIONAL EXPERIENCE:

5/20/1999 to present **Special Agent, Special Agent Certified Fire Investigator/Firearms Interstate Nexus Expert**
Bureau of Alcohol, Tobacco, Firearms and Explosives
Kansas City Field Division/Wichita Field Office
Wichita, Kansas

**Duties:** Responsible for investigating crimes and allegations of crimes involving alcohol, tobacco, firearms, explosives and arson. Primarily responsible for conducting origin and cause investigations of fire and explosion incidents affecting interstate commerce and other fires in which assistance from state and local agencies has been requested. Responsible for collection of evidence from fire and explosion scenes and processing that evidence for submission to the laboratory. Responsible for case investigation; report preparation; trial preparation; expert testimony at trial pertaining to origin and cause of fires and destruction of evidence at case conclusion. Investigative functions include interviewing witnesses and suspects; preparing and presenting criminal case reports to the United States Attorney's Office; preparing and serving arrest and/or search warrants, and testifying as a government witness. Also responsible for examining firearms and ammunition for the purpose of determining their place of manufacture and/or origin, preparing a written report of said research and providing expert testimony in courtroom proceedings.

3/17/1997–5/20/1999 **Special Agent, Special Agent Certified Fire Investigator Candidate/Firearms Interstate Nexus Expert**
Bureau of Alcohol, Tobacco, Firearms and Explosives
Kansas City Field Division/Wichita Field Office
Wichita, Kansas

**Duties:** Responsible for investigating crimes and allegations of crimes involving alcohol, tobacco, firearms, explosives and arson. Primary responsibilities were to conduct a minimum of one hundred fire scene examinations under the guidance of another ATF Special Agent Certified Fire Investigator or other experienced certified fire investigator, and to document the origin and cause determination in a written report. Responsible for obtaining mandatory training at the National Fire Academy, ATF National Academy, United States Environmental Protection Agency, University of Maryland/University College and the University of Maryland Fire Protection Engineering Department. Other responsibilities included completing various assignments as assigned by the ATF Arson and Explosives Training

Branch and the completion of a research paper into an aspect of fire or explosion investigation. Investigative functions included include conducting investigations; interviewing witnesses and suspects; preparing and presenting criminal case reports to the United States Attorney's Office; preparing and serving arrest and/or search warrants, and testifying as a government witness. Also responsible for examining firearms and ammunition for the purpose of determining their place of manufacture and/or origin, preparing a written report of said research and providing expert testimony in courtroom proceedings.

12/23/1995–3/17/1997 **Special Agent/Firearms Interstate Nexus Expert**
Bureau of Alcohol, Tobacco, Firearms and Explosives
Kansas City Field Division/Wichita Field Office
Wichita, Kansas

**Duties:** Responsible for investigating crimes and allegations of crimes involving alcohol, tobacco, firearms, explosives and arson. Primary responsibilities were to investigate alleged violations of the Federal firearms, explosives and arson statutes. Investigative functions included obtaining evidence, interviewing witnesses and suspects, preparing and serving arrest and/or search warrants, preparing written reports; preparing and presenting criminal case reports to the United States Attorney for prosecution of violations of Federal law and testifying as a government witness. Also responsible for examining firearms and ammunition for the purpose of determining their place of manufacture and/or origin, preparing a written report of said research and providing expert testimony in courtroom proceedings.

8/1/1994–12/23/1995 **Special Agent/Firearms Interstate Nexus Expert**
Bureau of Alcohol, Tobacco, Firearms and Explosives
Dallas Field Division/Fort Worth Field Office
Fort Worth, Texas

**Duties:** Responsible for investigating crimes and allegations of crimes involving alcohol, tobacco, firearms, explosives and arson. Primary responsibilities were to investigate alleged violations of the Federal firearms, explosives and arson statutes. Investigative functions included obtaining evidence, interviewing witnesses and suspects, preparing and serving arrest and/or search warrants, preparing written reports; preparing and presenting criminal case reports to the United States Attorney for prosecution of violations of Federal law and testifying as a government witness. Also responsible for examining firearms and ammunition for the purpose of determining their place of manufacture and/or origin, preparing a written report of said research and providing expert testimony in courtroom proceedings.

7/1/1990-8/1/1994 **Special Agent**
Bureau of Alcohol, Tobacco, Firearms and Explosives
Dallas Field Division/Fort Worth Field Office
Fort Worth, Texas

**Duties:** Responsible for investigating crimes and allegations of crimes involving alcohol, tobacco, firearms, explosives and arson. Primary responsibilities were to investigate alleged violations of the Federal firearms, explosives and arson statutes. Investigative functions included obtaining evidence, interviewing witnesses and suspects, preparing and serving arrest and/or search warrants, preparing written reports; preparing and presenting criminal case reports to the

United States Attorney for prosecution of violations of Federal law and testifying as a government witness.

## PROFESSIONAL EXPERIENCE – FIRE INVESTIGATION:

1997 to present   **ATF Special Agent Certified Fire Investigator**

**Duties**: Conduct fire origin and cause investigations pertaining to fires and explosions affecting interstate commerce along with other fires/explosions in which assistance is requested by state and local agencies where a significant impact on their community has occurred, especially when the nature or magnitude of the problem extends beyond the investigative jurisdiction or resource capability of the affected agencies within the Kansas City Field Division and other ATF jurisdictions as assigned; provide technical assistance to state/local fire investigators and other ATF agents in the investigation of fire/explosion incidents. Provide training to other Federal, state and local enforcement agencies relative to the detection and investigation of fires and arson over a broad spectrum of fire related topics.

I have conducted or participated in three hundred and thirty-nine origin and cause determinations. I have coordinated, instructed and/or participated in thirteen training sessions pertaining to the investigation of fire and explosion incidents to various Federal, state and local entities. I have also provided expert opinion as to the origin and cause of fires on seventeen occasions in Federal and state court as well as civil depositions.

10/1/99-10/23/99   **ATF Special Agent Certified Fire Investigator**
Washington, D.C./ATF Fire Investigation Task Force
Washington, D.C.

**Duties**: Conduct fire origin and cause investigations in the Washington, D.C. area assisting the Washington, D.C. fire investigation unit as an element of the Washington D.C. Fire Investigation Unit/ATF Arson Task Force.

10/1/98-10/31/98   **ATF Special Agent Certified Fire Investigator**
Washington, D.C./ATF Fire Investigation Task Force
Washington, D.C.

**Duties**: Conduct fire origin and cause investigations in the Washington, D.C. area assisting the Washington, D.C. fire investigation unit as an element of the Washington D.C. Fire Investigation Unit/ATF Arson Task Force.

6/2/1997-8/4/1998   **ATF National Response Team Member**

**Duties**: Respond to fire and explosion incidents around the United States as assigned by ATF headquarters along with a cadre of other ATF Certified Fire Investigators and other experts; assist with large scale origin and cause determinations; interview witnesses and suspects; collect evidence for submission to the ATF National Laboratory.

## PROFESSIONAL EXPERIENCE – FIREARMS INTERSTATE NEXUS

1994 to present   **Duties**: Examine firearms for the purpose of determining the place of manufacture; to conduct research as to the origin of various firearms as well as

conducting test-fires of firearms in order to determine if they are operable; prepare written reports pertaining to the origin of firearms to the United States Attorney's Office and to provide expert testimony in court regarding the place of origin of various types of firearms.

I have examined thousands of firearms during my career as a special agent while conducting interstate nexus determinations along with being the primary evidence vault custodian for periods of time in Fort Worth, Texas and Wichita, Kansas. As the vault custodian, I had to ensure the proper manufacturer, model and serial number of firearms for evidentiary purposes. I have researched and generated official reports of investigation on well over four hundred (400) firearms as to the place of origin. I have also supplied numerous verbal consultations on the origins of firearms over the years. Furthermore, I have testified multiple times in the District of Kansas; Northern District of Texas and once each in the Western District of Missouri and the District of Nebraska as to the origin of firearms.

## EDUCATION:

| 1986 | **Friends University**<br>Wichita, Kansas<br>General College classes preparing for (BA) |
| 1987 - 1988 | **Wichita State University**<br>Wichita, Kansas<br>General College classes preparing for (BA) |
| 1988-1990 | **University of Oklahoma**<br>Norman, Oklahoma<br>BA in Criminal Justice |

## CERTIFICATIONS:

| 2010 – present | International Association of Arson Investigators Certified Fire Investigator |
| 1999 - present | Certified Fire Investigator (ATF) |

## PROFESSIONAL TRAINING RECEIVED:

*ATF Certified Fire Investigator Recertification:*

| 2010 | Chicago, Illinois (30 hours) |
| 2009 | Kansas City, Missouri (30 hours) |
| 2008 | Wilmington, North Carolina (40 hours) |
| 2007 | Federal Law Enforcement Training Center, Glynco, Georgia (40 hours) |
| 2006 | Federal Law Enforcement Training Center, Glynco, Georgia (40 hours) |
| 2005 | ATF National Laboratory Center, Ammendale, Maryland (40 hours) |
| 2004 | ATF National Laboratory Center, Ammendale, Maryland (40 hours) |
| 2003 | ATF National Laboratory Center, Ammendale, Maryland (40 hours) |
| 2002 | Williamsburg, Virginia (80 hours) |
| 2001 | Rapid City, South Dakota (40 hours) |

*Training Received:*

| 2010 | International Association of Arson Investigators |

|  |  |
|---|---|
|  | Physical Evidence at the Fire Scene<br>CFITrainer.net (4 hours) |
| 2010 | International Association of Arson Investigators<br>Electrical Safety<br>CFITrainer.net (3 hours) |
| 2010 | International Association of Arson Investigators<br>Investigating Fatal Fires<br>CFITrainer.net (4 hours) |
| 2010 | International Association of Arson Investigators<br>Fundamentals of Residential Building Construction<br>CFITrainer.net (3 hours) |
| 2010 | International Association of Arson Investigators<br>A Ventilation-Focused Approach to the Impact of Building Structures and Systems on Fire<br>CFITrainer.net (4 hours) |
| 2010 | International Association of Arson Investigators<br>Kansas Chapter Seminar<br>Wichita, Kansas (22 hours) |
| 2009 | International Association of Arson Investigators<br>Scientific Method for Fire and Explosives Investigation<br>CFITrainer.net (3 hours) |
| 2009 | International Association of Arson Investigators<br>Oklahoma Chapter Fire and Arson Training Conference<br>Stillwater, Oklahoma (17 hours) |
| 2009 | International Association of Arson Investigators<br>Kansas Chapter Seminar<br>Topeka, Kansas (21 hours) |
| 2009 | South Central Kansas Arson Strike Force<br>Evidence Collection and Processing<br>Wichita, Kansas (2 hours) |
| 2008 | CFI Trainer.net<br>Managing Complex Fire Scene Investigations<br>IAAI webtrainer (4 hours) |
| 2008 | The Kansas City Arson Task Force<br>Training Seminar<br>Kansas City, Missouri (16 hours) |
| 2008 | International Association of Arson Investigators<br>Kansas Chapter Seminar<br>Wichita, Kansas  (20 hours) |
| 2007 | Certified Fire Investigator Recertification<br>Federal Law Enforcement Training Center<br>Glynco, Georgia (40 hours) |

| | |
|---|---|
| 2006 | Certified Fire Investigator Recertification<br>Federal Law Enforcement Training Center<br>Glynco, Georgia (40 hours) |
| 2006 | Fire Pattern Recognition and Identification<br>Public Agency Training Council<br>Wichita, Kansas (24 hours) |
| 2006 | International Association of Arson Investigators<br>Kansas Chapter Seminar<br>Topeka, Kansas (20 hours) |
| 2005 | Certified Fire Investigator Recertification<br>ATF National Laboratory Center<br>Ammendale, Maryland (40 hours) |
| 2005 | International Association of Arson Investigators<br>Nevada Chapter Seminar<br>Henderson, Nevada (32 hours) |
| 2005 | International Association of Arson Investigators<br>Kansas Chapter Seminar<br>Topeka, Kansas (20 hours) |
| 2004 | Certified Fire Investigator Recertification<br>ATF National Laboratory Center<br>Ammendale, Maryland (40 hours) |
| 2004 | Fire Findings<br>Investigation of Gas and Electrical Appliance Fires<br>St. Joseph's, Michigan (32 hours) |
| 2004 | International Association of Arson Investigators<br>Kansas Chapter Seminar<br>Topeka, Kansas (20 hours) |
| 2003 | Certified Fire Investigator Recertification<br>ATF National Laboratory Center<br>Ammendale, Maryland (40 hours) |
| 2003 | Kinesic Interviewing for Fire and Arson Investigations<br>Public Agency Training Council<br>Newton, Kansas (24 hours) |
| 2003 | International Association of Arson Investigators<br>Training Conference and General Meeting<br>Reno, Nevada (40 hours) |
| 2003 | International Association of Arson Investigators<br>Kansas Chapter Seminar<br>Topeka, Kansas (20 hours) |
| 2002 | Certified Fire Investigator Recertification<br>Williamsburg, Virginia (80 hours) |

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 286

| | |
|---|---|
| 2002 | International Association of Arson Investigators<br>Kansas Chapter Seminar<br>Topeka, Kansas (20 hours) |
| 2002 | Technical Working Group on Fire and Explosives<br>Symposium on house fires to terrorism<br>Orlando, Florida (24 hours) |
| 2001 | Certified Fire Investigator Recertification<br>Rapid City, South Dakota (40 hours) |
| 2001 | International Association of Arson Investigators<br>Kansas Chapter Seminar<br>Topeka, Kansas (20 hours) |
| 2001 | Electrical Fire Investigation<br>Public Agency Training Council<br>Springdale, Arkansas |
| 2000 | Fire Phenomena and Enclosure Fires<br>University of Maryland Fire Engineering Department<br>College Park, Maryland (80 hours) |
| 2000 | International Association of Arson Investigators<br>Kansas Chapter Seminar<br>Topeka, Kansas (20 hours) |
| 1999 | Fire Related Human Behavior<br>University of Maryland University College<br>(3 credit hours – fall semester) |
| 1999 | Fire Dynamics<br>University of Maryland University College<br>(3 credit hours – spring semester) |
| 1999 | International Association of Arson Investigators<br>Kansas Chapter Seminar<br>Topeka, Kansas (20 hours) |
| 1998 | Fire Phenomena and Enclosure Fires<br>University of Maryland Fire Engineering Department<br>College Park, Maryland (80 hours) |
| 1998 | Advanced Origin and Cause and Court Techniques<br>ATF National Academy<br>Glynco, Georgia (80 hours) |
| 1998 | Incendiary Fire Analysis and Investigation<br>University of Maryland University College<br>(3 credit hours – spring semester) |
| 1997 | Hazardous Materials Incident Response Operations Training<br>U.S. Environmental Protection Agency<br>Cincinnati, Ohio (40 hours) |

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 287

| 1997 | National Response Team Training<br>Bureau of Alcohol, Tobacco and Firearms<br>Collinsville, Illinois (40 hours) |
|------|---|
| 1997 | Post Blast Investigation<br>Bureau of Alcohol, Tobacco and Firearms<br>Chicago, Illinois (40 hours) |
| 1997 | Fire and Arson Investigation<br>National Fire Academy<br>Emmitsburg, Maryland (80 hours) |
| 1994 | Basic Special Response Team Training<br>Bureau of Alcohol, Tobacco and Firearms<br>Anniston, Alabama (80 hours) |
| 1994 | Interstate Nexus Training<br>Bureau of Alcohol, Tobacco and Firearms<br>Dallas, Texas (24 hours) |
| 1992 | Basic Fire and Arson Investigation<br>North Richland Hills, Texas Fire Department<br>North Richland Hills, Texas (120 hours) |
| 1991 | Emergency Medical Technician Training<br>North Richland Hills, Texas Fire Department<br>North Richland Hills, Texas (120 hours) |
| 1991 | ATF New Agent Training – NAT #110<br>ATF National Academy<br>Glynco, Georgia (8 weeks) |
| 1990 | Basic Criminal Investigator Training – CI #101<br>Federal Law Enforcement Training Center<br>Glynco, Georgia (8 weeks) |

**INSTRUCTOR EXPERIENCE:**

| September 2010 | Kansas IAAI 80 hour class<br>Origin Determination<br>Fire Cause Determination<br>Incendiary Fire Investigation<br>Salina, Kansas |
|------|---|
| September 2008 | Kansas IAAI 80 hour class<br>Fire Scene Documentation<br>Accidental Fire Causes<br>Motivations of the Fire Setter<br>Fire Scene Safety<br>Evidence Recognition and Collection<br>Salina, Kansas |
| April 2008 | South Central Kansas Arson Strike Force<br>Investigative Team Concept |

Hutchinson, Kansas

| | |
|---|---|
| January 2003 | South Central Kansas Arson Strike Force<br>Scientific Method<br>Wichita, Kansas |
| September 2002 | ATF National Academy<br>Assistant Instructor at ATF Advanced Origin and Cause and Court Techniques<br>Glynco, Georgia |
| June 2002 | Butler County Community College<br>Basic Fire Investigation<br>El Dorado, Kansas |
| February 2002 | International Association of Arson Investigators – Kansas Chapter<br>Heat Transfer and use of the Scientific Method<br>Topeka, Kansas |
| May 2001 | Kansas Law Enforcement Training Center<br>Assistant Instructor for Basic Fire Investigation for Law Enforcement<br>Hutchinson, Kansas |
| January 2001 | Kansas State Fire Marshal's Office<br>Fire Dynamics<br>Wichita, Kansas |
| May 2000 | ATF Arson for Prosecutors Training<br>Assistant Instructor on fire scene examination<br>Topeka, Kansas |
| December 1999 | Butler County Community College<br>Fire and Explosion Investigation<br>El Dorado, Kansas |
| May 1998 | Butler County Community College<br>Fire and Explosion Investigation<br>El Dorado, Kansas |
| July 1997 | Wichita State University<br>Fire and Explosion Investigation<br>Wichita, Kansas |

## PROFESSIONAL ORGANIZATIONS

| | |
|---|---|
| 2009 to 2010 | International Association of Arson Investigators – Oklahoma Chapter |
| 1997 – present | International Association of Arson Investigators |
| 1997 – present | International Association of Arson Investigators – Kansas Chapter |

## AWARDSANDCOMMENDATIONS

| | |
|---|---|
| August 2010 | Bureau of Alcohol, Tobacco, Firearms and Explosives<br>Hostile Action Award |
| January 2010 | Sedgwick County Sheriff's Department |

Silver Medal of Valor

May 2010              Kansas Associations of Chiefs of Police
                     Gold Award for Police Service

December 2008        U.S. Department of Justice Performance Award

February 2008        International Association of Arson Investigators – Kansas Chapter
                     Investigator of the Year

December 2006        U. S. Department of Justice Performance Award

March 2005           U.S. Department of Justice Performance Award

June 2004            U. S. Department of Justice Special Act Award

July 2002            U. S. Department of Justice Time Off Award

January 2002         U.S. Department of the Army – Letter of Commendation

December 2001        U. S. Department of Justice Time-off Award

August 2001          U. S. Department of Justice Special Act Award

July 2001            U.S. Department of the Treasury Special Act Award

April 2001           Wichita Police Department – Certificate of Commendation

February 2001        Kansas State Fire Marshal's Office – Letter of Commendation

October 1999         National Association of Police Organizations
                     Top Cop – Honorable Mention

September 1999       U. S. Department of the Treasury Performance Award

February 1999        International Association of Arson Investigators – Kansas Chapter
                     Investigator of the Year

January 1999         United States Attorney's Office – District of Kansas
                     Letter of Commendation

July 1998            U.S. Department of the Treasury Performance Award

December 1997        Kansas State Fire Marshal's Office – Letter of Commendation

September 1997       U.S. Department of the Treasury Special Act Award

September 1995       U.S. Department of the Treasury Special Act Award

June 1992            City of Abilene, Texas – Letter of Commendation


**FIRE RELATED EXPERT TESTIMONY**
March 2010           Grand Jury
                     United States v. Shivantha Kulatunga

Wichita, Kansas

November 2009     Grand Jury
United States v. Mario William Petardi
Wichita, Kansas

October 2009      Grand Jury
United States v. Francis A. Mlaga
Wichita, Kansas

August 2009       Shawnee County District Court
State of Kansas v. Frank Jerome Robinson
Topeka, Kansas

May 2009          Shawnee County District Court
State of Kansas v. Frank Jerome Robinson
Topeka, Kansas

May 2008          Allen County District Court
State of Kansas v. Rory Foster
Iola, Kansas

October 2007      Grand Jury
United States v. James H. Keller
Wichita, Kansas

March 2007        Grand Jury
United States v. Troy Croney
Wichita, Kansas

January 2007      U.S. District Court – District of Kansas
United States v. Frank Robinson
Topeka, Kansas

October 2006      Allen County, Kansas District Court
State of Kansas v. Rory Foster
Iola, Kansas

February 2006     Douglas County, Kansas District Court
State of Kansas v. Jason Allen Rose
Lawrence, Kansas

June 2005         Grand Jury
United States v. Damion Klenk
Wichita, Kansas

October 2004      Sedgwick County, Kansas District Court
State of Kansas v. Douglas Belt
Wichita, Kansas

April 2003        Sedgwick County, Kansas District Court
State of Kansas v. Douglas Belt
Wichita, Kansas

August 2001       Civil Deposition

St. Peter's Episcopal Church v. Ruby Hinman, et. al.
Wichita, Kansas

August 1999          Civil Deposition
                     Clemons v. Tom Jones Construction
                     Wichita, Kansas

April 1998           Grand Jury
                     United States v. Stephen Hager
                     Wichita, Kansas

## David C. Wright
### Forensic Scientist III
### Curriculum Vitae

**Work Address:**

Kansas Bureau of Investigation Regional Laboratory
7250 State Avenue
Kansas City, Kansas 66112
Phone:  (913) 288-0080
Fax:      (913) 288-0086

**Education:**

Master of Science in Forensic Science
Marshall University
Huntington, West Virginia  2000

Bachelor of Arts in Biology
West Virginia University
Morgantown, West Virginia  1998

**Experience:**

Forensic Scientist III, Firearm and Toolmark Identification Unit
Kansas Bureau of Investigation Forensic Science Laboratory
(October 2005-Present)

Forensic Scientist II, Firearm and Toolmark Identification Unit
Kansas Bureau of Investigation Forensic Science Laboratory
(October 2002-October 2005)

Forensic Scientist I, Firearm and Toolmark Identification Unit
Kansas Bureau of Investigation Forensic Science Laboratory
(September 2000-September 2002)

**Specialized Experience:**

**Workshops and Training Courses Attended:**

2008-Association of Firearm and Tool Mark Examiners Annual Training Seminar, Honolulu, HI
2008-SHOT Show, Las Vegas, NV
2007-Concealed Carry Handgun Training Course, Office of Kansas Attorney General Kansas
       City, KS
2007-Investigative Photography, Brooks Photographic Imaging, Kansas City, MO
2007-Surviving & Thriving in the Courtroom, Raymond Davis, San Francisco, CA
2007-Association of Firearm and Tool Mark Examiners Annual Training Seminar, San Francisco,
       CA
2007-Shooting Reconstruction Course, NIJ/West Virginia University, Richard Ernest, Orlando, FL
2006-Firearms Markings-What Do They Indicate?, Springfield, MA
2006-Overview of Tool Mark Identification, Carlo Rosati, Springfield, MA
2006-Association of Firearm and Tool Mark Examiners Annual Training Seminar, Springfield,
       MA

2006-Bullet Trajectory Reconstruction, Federal Bureau of Investigation, Palestine, TX
2005-A Simplified Protocol for the Examination of Materials that Possess Gunshot Discharge
    Products, Robert J. Shem, Indianapolis, IN
2005-The Investigation and Analysis of Firearms Misadventures: Firearms Bursts, Ammunition
    Failures, Accidental Discharges, Unintentional Discharges, Luke Haag. Indianapolis. IN
2005-Association of Firearm and Tool Mark Examiners Annual Training Seminar, Indianapolis,
    IN
2005-The Science of Firearms-Toolmarks Identification, Federal Bureau of Investigation,
    Quantico, VA
2004-Alliant Techsystems Ammunition Testing and Wound Ballistics Workshop, Lawrence, KS
2004-Association of Firearm and Tool Mark Examiners Annual Training Seminar, Vancouver, BC
2004-Crime Fighter B.E.A.S.T User's Training Seminar, Porter Lee Corporation, Schaumburg, IL
2004 Bloodstain Pattern Analysis Workshop, Topeka, KS
2003-NIST/ATF Standard Bullet Workshop, Largo, FL
2003-Machinegun Conversion Course, Bureau of Alcohol, Tobacco, and Firearms, Philadelphia,
    PA
2003-Association of Firearm and Tool Mark Examiners Annual Training Seminar, Philadelphia,
    PA
2002-NIBIN Training, Bureau of Alcohol, Tobacco and Firearms/Forensic Technology Inc.,
    Largo, FL
2002-Crime Scene Archaeology Course, Federal Bureau of Investigation, St. Louis, MO
2002-Association of Firearm and Tool Mark Examiners Annual Training Seminar, San Antonio,
    TX
2002-Firearms Distance Determination Training Course, University of North Texas Police
    Academy, Denton, TX
2001-Techniques in Digital Imaging, Kansas Bureau of Investigation/Washburn University Police
    Department, Topeka, KS
2001-FBI Measurement of Land and Groove Impressions and Utilization of the General Rifling
    Characteristics File, Topeka, KS
2001-Serial Number Restoration School, Bureau of Alcohol, Tobacco, and Firearms, Kansas City,
    MO
2001-Criminal Investigation Techniques, Kansas Bureau of Investigation, Salina, KS
2001-CSC/FBI NIBIN/DRUGFIRE Training Course, Rosslyn, VA
2001-SHOT Show, New Orleans, LA
2001-NIBIN/DRUGFIRE National User's Group Meeting, New Orleans, LA
2000-Association of Firearm and Tool Mark Examiners Annual Training Seminar, St. Louis, MO
2000-Death Investigation Training Course, Marshall University School of Medicine, Huntington,
    WV

**Armorer's Courses Attended:**

2005-Hi-Point Firearms, Indianapolis, IN
2005-Kahr Arms, Indianapolis, IN
2005-Gemtech Suppressors, Indianapolis, IN
2003-Hi-Point Firearms, Philadelphia, PA
2002-SIG Arms, San Antonio, TX
2002-Savage Arms Tactical Rifle, San Antonio, TX
2001-GLOCK, Kansas City, MO
2001-Colt M16/AR-15, Topeka, KS
2001-Remington M/870, Salina, KS

**Manufacturing Facilities and Museums Toured:**

2007-J.M. Davis Arms and Historical Museum, Claremore, OK
2007-Lake City Army Ammunition Plant, Independence, MO
2006-Winchester Ammunition, East Alton, IL

2006-Savage Arms, Westfield, MA
2006-Smith & Wesson, Springfield, MA
2003-Electroline Corp./Jenny Tools, Pipersville, PA
2001-Private Firearms Collection at Smithsonian National Museum of American History, Washington, DC
2001-Arms Collection at NRA National Firearms Museum, Fairfax, VA
2000-Winchester Arms Company, New Haven, CT
2000-Wilson Arms Company, Branford, CT
2000-O.F. Mossberg & Sons Inc., New Haven, CT
2000-The Marlin Firearms Company, North Haven, CT
2000-Colt Industries, Inc., West Hartford, CT
2000-Remington Arms Company, Inc., Ilion, NY
2000-Military Arms Collection at West Point Military Academy Museum, Utica, NY
2000-Arms and Manufacturing Equipment Collection at Springfield Armory Museum, Springfield, MA
2000-Smith & Wesson, Springfield, MA
2000-Harrington & Richardson, Gardner, MA
2000-Sturm, Ruger, & Company, Inc., Newport, NH
2000-SIG Arms, Inc., Exeter, NH
2000-Thompson Center Arms, Rochester, NH
2000-Green Mountain Barrels, North Conway, NH

## Professional Organizations:

Association of Firearm and Tool Mark Examiners, September 2002 – Present
-Training & Standardization Committee
-Website Committee

## Publications:

"Individuality and Reproducibility of Striae on Plastic Wad Components Fired from a Sawed-off Shotgun," AFTE Journal, Vol. 35, No. 2, Spring 2003, pp. 161-166.

## Professional Presentations:

2002-"Firearms and Toolmark Evidence", Kansas City Kansas Police Department Crime Scene and Evidence Collection Workshop, Kansas City, KS
2002-"Firearms and Toolmark Evidence", Wyandotte County District Attorney's Office Training Seminar, Kansas City, KS
2002-"Firearms and Toolmark Evidence", Death Investigation Seminar, Liberal, KS
2002-"Individuality and Reproducibility of Striae on Plastic Wad Components Fired From a Sawed-off Shotgun", AFTE Annual Training Seminar, San Antonio, TX
2002-"Firearms and Toolmark Evidence", Kansas Bureau of Investigation Special Agent Training Class, Topeka, KS
2001-"Firearms and Toolmark Evidence", Kansas Bureau of Investigation Criminal Investigation Techniques, Salina, KS
2001-"Firearm Familiarization and Firearms Evidence Recovery Procedures", Kansas Bureau of Investigation Special Agent Training Class, Topeka, KS

# JUSTIN D. RANKIN
Curriculum Vitae

## WORK ADDRESS:

Sedgwick County Regional Forensic Science Center
1109 N. Minneapolis
Wichita, Kansas 67214
Phone: (316) 660-4800
Fax: (316) 383-4535

## EDUCATION:

**Bachelor of Science**                                          **Spring 1999**
SOUTHWESTERN COLLEGE OF KANSAS                WINFIELD, KANSAS
Major: Biochemistry

## EXPERIENCE:

**Forensic Scientist II (Firearms)**                          **June 2009**
SEDGWICK COUNTY FORENSIC SCIENCE CENTER       WICHITA, KANSAS

**Forensic Scientist II (Firearms)**                         **October 2005**
KANSAS BUREAU OF INVESTIGATION              KANSAS CITY, KANSAS

**Forensic Scientist III (Chemistry)**                        **March 2005**
KANSAS BUREAU OF INVESTIGATION               GREAT BEND, KANSAS

**Forensic Scientist II (Chemistry)**                         **March 2002**
KANSAS BUREAU OF INVESTIGATION               GREAT BEND, KANSAS

**Forensic Scientist I (Chemistry)**                         **January 2001**
KANSAS BUREAU OF INVESTIGATION               GREAT BEND, KANSAS

**Lab Technician**                                    **June 1999-January 2001**
UNITED STATES TEST LAB                            WICHITA, KANSAS

## SPECIAL TRAINING:

**The Association of Firearm and Tool Mark Examiners**      **June 2012**
43[nd] ANNUAL TRAINING SEMINAR                  BUFFALO, NEW YORK

**UNCERTAINTY OF MEASUREMENT ASCLD/LAB**        **May 2012**
43[nd] ANNUAL TRAINING SEMINAR                  BUFFALO, NEW YORK

**The Association of Firearm and Tool Mark Examiners**      **May 2011**
42nd ANNUAL TRAINING SEMINAR                 CHICAGO, ILLINOIS

Justin D. Rankin
1

**Magna Flux Serial Number Restoration Workshop**          **May 2011**
42nd AFTE ANNUAL TRAINING SEMINAR          CHICAGO, ILLINOIS

**Firearms Markings-What Do They Indicate? Workshop**          **May 2011**
42nd AFTE ANNUAL TRAINING SEMINAR          CHICAGO, ILLINOIS

**The Association of Firearm and Tool Mark Examiners**          **May 2010**
41st ANNUAL TRAINING SEMINAR          HENDERSON, NEVADA

**The Association of Firearm and Tool Mark Examiners**          **May 2008**
39th ANNUAL TRAINING SEMINAR          HONOLULU, HAWAII

**Kansas Concealed Carry Class**          **December 2007**
SPECIALIST RESEARCH AND TRAING GROUP          KANSAS CITY, KANSAS

**Investigative Photography**          **September 2007**
BROOKS PHOTOGRAPHIC IMAGING, LLC          KANSAS CITY, MISSOURI

**Gunpowder and Gunshot Residue Course**          **September 2007**
FEDERAL BUREAU OF INVESTIGATION          PASADENA, TEXAS

**The Association of Firearm and Tool Mark Examiners**          **May 2007**
38th ANNUAL TRAINING SEMINAR          SAN FRANCISCO, CALIFORNIA

**Scientifically Defensible Criteria for Identification**          **May 2007**
38th AFTE ANNUAL TRAINING SEMINAR          SAN FRANCISCO, CALIFORNIA

**Silencer Design Workshop**          **May 2007**
38th AFTE ANNUAL TRAINING SEMINAR          SAN FRANCISCO, CALIFORNIA

**Mossberg Armorer Course**          **April 2007**
AIMPRO          HUTCHINSON, KANSAS

**Shooting Reconstruction Class**          **March 2007**
NIJ/WVU CONTINUING EDUCATION          ORLANDO, FLORIDA

**Colt M-16/AR-15 Armorer Course**          **October 2006**
COLT          HUTCHINSON, KANSAS

**The Association of Firearm and Tool Mark Examiners**          **June 2006**
37th ANNUAL TRAINING SEMINAR          SPRINGFIELD, MASSACHUSETTS

**GSR Workshop**          **June 2006**
37TH AFTE ANNUAL TRAINING SEMINAR          SPRINGFIELD, MASSACHUSETTS

**Hi-Point Familiarization Course**          **June 2006**
37TH AFTE ANNUAL TRAINING SEMINAR          SPRINGFIELD, MASSACHUSETTS

Justin D. Rankin
2

| | |
|---|---|
| **Remington Police Armorer Course** | **March 2006** |
| REMINGTON ARMS Co., Inc. | HUTCHINSON, KANSAS |
| **Integrated Ballistics Identification System Data Acquisition Course** | **December 2005** |
| ATF | LARGO, FLORIDA |
| **Kansas Hunter Education Certification** | **October 2005** |
| KANSAS DEPT. OF WILDLIFE & PARKS | LAWRENCE, KANSAS |
| **Glass Examination and Comparison with a Focus on Elemental Analysis of Forensic Glass Samples by ICP-MS and LA-ICP-MS Workshop** | **July 2003** |
| AMES LABORATORY | AMES, IOWA |
| **Serial Number Restoration Course** | **August 2001** |
| ATF | KANSAS CITY, MISSOURI |

## MANUFACTURING FACILITIES AND MUSEUMS TOURED:

| | |
|---|---|
| **Lake City Ammunition** | **June 2007** |
| INDEPENDENCE, MO | |
| **Winchester Ammunition** | **November 2006** |
| EAST ALTON, IL | |
| **Remington Ammunition** | **July 2006** |
| NORTH LITTLE ROCK, AR | |
| **United States Military Academy** | **June 2006** |
| UTICA , NY | |
| **Remington Firearms** | **June 2006** |
| ILION, NY | |
| **Sturm, Ruger & Co.** | **June 2006** |
| NEW PORT, NH | |
| **SIG Arms** | **June 2006** |
| EXETER, NH | |
| **Harrington & Richardson** | **June 2006** |
| GARDNER, MA | |
| **Mayhew Tools** | **June 2006** |
| TURNER'S FALLS, MA | |
| **Colt Defense** | **June 2006** |
| HARTFORD, CT | |
| **US Firearms** | **June 2006** |
| HARTFORD, CT | |
| **Springfield Armory Museum** | **June 2006** |
| SPINGFIELD, MA | |
| **Smith & Wesson** | **June 2006** |
| SPINGFIELD, MA | |
| **Savage Arms** | **June 2006** |
| WESTFIELD, MA | |
| **O.F. Mossberg & Sons Inc.** | **June 2006** |
| NEW HAVEN, CT | |
| **Wilson Arms** | **June 2006** |
| BRANFORD, CT | |

Justin D. Rankin

3

## PROFESSIONAL ORGANIZATIONS:

**Association of Firearm and Tool Mark Examiners**          **March 2011**
REGULAR MEMBER

**Association of Firearm and Tool Mark Examiners**          **May 2007**
PROVISIONAL MEMBER

**Kansas Division of the International Association**          **March 2006**
**for Identification**                                                ACTIVE MEMBER

Justin D. Rankin
4

# CIRRICULUM VITAE

## ARNOLD J. ESPOSITO
## FIREARMS & TOOLMARK EXAMINER

## EMPLOYMENT

**FIREARMS & TOOLMARK SECTION**                          May 2009 - Present

Bureau of Alcohol, Tobacco, Firearms and Explosives National Laboratory Center
Ammendale, MD


**FORENSIC SCIENCES DIVISION,**                          January 2006 - May 2009
**FIREARMS & TOOLMARK SECTION**

Maryland State Police
Pikesville, MD


**BARRACK U**                                            December 2002 - January 2006

Maryland State Police
Prince Frederick, MD

- **PATROL DIVISION**                     December 2002 - March 2004
- **CRIMINAL APPREHENSION TEAM**          March 2004 - September 2004
- **CALVERT INVESTIGATIVE TEAM**          September 2004 - January 2006


**POLICE ACADEMY**                                       July 2002 - December 2002

Maryland State Police
Pikesville, MD


**FORENSIC SERVICES DIVISION,**                          January 1994 - June 2002, Retired

**FIREARMS EXAMINATION UNIT**

Prince George's County Police
Landover, MD


**ASSOCIATION OF FIREARM AND TOOL MARK EXAMINERS TRAINING SYLLABUS**

Prince George's County Police                            January 1994 - June 1996
Landover, MD


**CRIMINAL INVESTIGATIONS DIVISION,**                    November 1989 - January 1994

**EVIDENCE UNIT**

Prince George's County Police
Landover, MD


**DISTRICT IV**                                          November 1982 - November 1989

Prince George's County Police
Oxon Hill, MD

- **PATROL DIVISION**                     June 1987 - November 1989
- **SOUTHERN AREA ACTION UNIT**           May 1986 - June 1987
- **INVESTIGATIVE SECTION**               April 1984 - May 1986
- **PATROL DIVISION**                     November 1982 - April 1984


**POLICE ACADEMY**                                       June 1982 - November 1982

Prince George's County Police
Forestville, MD

## EDUCATION

**PRINCE GEORGE'S COMMUNITY COLLEGE**

Largo, MD                                                    September 1979 - June 1982
Course of Study:  Criminal Justice

**FREDERICK COMMUNITY COLLEGE**

Pikesville, MD                                              July 2002 - December 2002
Course of Study:  Criminal Justice

## TRAINING SEMINARS

**EASTERN TRAINING SEMINAR FOR FIREARM EXAMINERS**          October 2011
Ammendale, MD

**EASTERN TRAINING SEMINAR FOR FIREARM EXAMINERS**          October 2010
Pikesville, MD

**AFTE ANNUAL TRAINING CONFERENCE**                         June 2010
Henderson, NV

**EASTERN TRAINING SEMINAR FOR FIREARM EXAMINERS**          October 2009
Ammendale, MD

**EASTERN TRAINING SEMINAR FOR FIREARM EXAMINERS**          October 2007
Ammendale, MD

**AFTE ANNUAL TRAINING CONFERENCE**                         May 2007
San Francisco, CA

**EASTERN TRAINING SEMINAR FOR FIREARM EXAMINERS**          October 2006
Charlottesville, VA

**AFTE ANNUAL TRAINING CONFERENCE**                         June 2006
Springfield, MA

**EASTERN TRAINING SEMINAR FOR FIREARM EXAMINERS**          November 2001
National Rifle Association Headquarters, Fairfax, VA

**EASTERN TRAINING SEMINAR FOR FIREARM EXAMINERS**          November 2000
Seminar Host Committee
Ocean City, MD

**AFTE ANNUAL TRAINING CONFERENCE**                         June 1999
Williamsburg, VA

**EASTERN TRAINING SEMINAR FOR FIREARMS EXAMINERS**         October 1998
Philadelphia, PA

**EASTERN TRAINING SEMINAR FOR FIREARMS EXAMINERS**         October 1997
Richmond, VA

**AFTE ANNUAL TRAINING CONFERENCE**                         July 1997
Seminar Host Committee
Annapolis, MD

**AFTE ANNUAL TRAINING CONFERENCE**                         July 1996
Presentation on cartridge case proficiency test
Milwaukee, WI

| | |
|---|---|
| **EASTERN TRAINING SEMINAR FOR FIREARMS EXAMINERS**<br>Seminar Host Committee<br>Annapolis, MD | November 1995 |
| **EASTERN TRAINING SEMINAR FOR FIREARMS EXAMINERS**<br>Presentation on the Micron Viewer and its use in Gunshot Residue Detection<br>Williamsburg, VA | October 1994 |
| **AFTE ANNUAL TRAINING CONFERENCE**<br>Indianapolis, IN | June 1994 |

## AFFILIATIONS

| | |
|---|---|
| **INTEGRATED BALLISTIC IDENTIFICATION SYSTEM (IBIS)**<br>Users Group Meeting<br>Portland, OR | April 1998 |
| **INTEGRATED BALLISTIC IDENTIFICATION SYSTEM (IBIS)**<br>Users Group Meeting<br>Walnut Creek, CA | May 1997 |
| **DISTINGUISHED MEMBER OF THE**<br>**ASSOCIATION OF FIREARM AND TOOL MARK EXAMINERS**<br>Past Committee Member: Scientific Working Group for Firearm & Tool Mark Examiners (SWGGUN);<br>Financial Advisory Committee; AFTE Conference Host Committee; Training Committee;<br>and Business Committee | June 1994 to Present |
| **BALTIMORE/WASHINGTON AREA DRUGFIRE USERS GROUP** | March 1994 |
| **U.S. DEPARTMENT OF JUSTICE**<br>Homicide/Death Investigators Seminar | January 1990 |

## SPECIALIZED TRAINING

| | |
|---|---|
| **MACHINING FOR FIREARMS AND TOOLMARK EXAMINERS**<br>Dayton, OH | August 2010 |
| **A.T.F. MACHINE GUN CONVERSION TRAINING**<br>(A.T.F. Lab) Ammendale, MD | October 2009 |
| **F.B.I. SHOOTING INCIDENT RECONSTRUCTION SCHOOL**<br>Washington, PA | June 2009 |
| **A.T.F. TOOLMARK IDENTIFICATION AND COMPARISON SCHOOL**<br>(A.T.F. Lab) Ammendale, MD | January 2006 |
| **2001 SPORT HUNTING OUTDOOR TRADE SHOW**<br>(S.H.O.T. Show) New Orleans, LA | January 2001 |
| **F.B.I. SPECIALIZED TECHNIQUES FOR**<br>**FIREARM & TOOLMARK EXAMINERS**<br>(F.B.I. Academy) Quantico, VA | February 2000 |
| **1999 SPORT HUNTING OUTDOOR TRADE SHOW**<br>(S.H.O.T. Show) Atlanta, GA | February 1999 |
| **A.T.F. SERIAL NUMBER RESTORATION SCHOOL**<br>Landover, MD | May 1998 |

**F.B.I. GUNPOWDER AND PRIMER RESIDUE SCHOOL**
Towson, MD

March 1996

**F.B.I. SHOOTING CRIME SCENE RECONSTRUCTION
& PROCEDURES SEMINAR**
(F.B.I. Academy) Quantico, VA

September 1996

**OPERATION CLEAN-UP**
(F.B.I. Academy) Quantico, VA

January – August 1995

**NATIONAL MUSEUM OF AMERICAN HISTORY
FIREARMS COLLECTION**
Washington, D. C.

November 1994

## FACTORY ARMORERS SCHOOLS

**STURM, RUGER
(PISTOLS, RIFLES &
REVOLVERS)**
Newport, NH

**REMINGTON ARMS
(SHOTGUNS & RIFLES)**
Ilion, NY

**SMITH & WESSON (PISTOLS &
REVOLVERS)**
Springfield, MA

**BERETTA
(PISTOLS & SHOTGUNS)**
Accokeek, MD

**COLT
(AR15/M16 & PISTOLS)**
Newburg, NY

**GLOCK
(PISTOLS)**
Smyrna, GA

## FACTORY VISITATIONS – FIREARMS/AMMUNITION/TOOLS

**HI-POINT**
Mansfield, OH (8/10)

**COLT MANUFACTURING**
Hartford, CT (6/94)

**WILSON ARMS**
Bradford, CT (6/94)

**REMINGTON**
Lonoke, AR (2/10)

**STURM, RUGER**
Newport, NH (6/94)

**SPRINGFIELD ARMORY**
Springfield, MA (6/94)

**STANLEY TOOLS**
New Britain, CT (6/96)

**DAN WESSON**
Palmer, MA (6/94)

**BECHDON MACHINING**
Upper Marlboro, MD (6/94)

**OLIN/WINCHESTER**
East Alton, IL (3/96)

**HARRINGTON &
RICHARDSON**
Gardner, MA (6/94)

**REMINGTON**
Illion, NY (3/94)

**SIERRA BULLET**
Sedalia, MI (3/96)

**SAVAGE**
Westfield, MA (6/94)

**SMITH & WESSON**
Springfield, MA (2/94)

**BERETTA, USA**
Accokeek, MD (9/94)

**MARLIN**
North Haven, CT (6/94)

## FIREARMS LABS VISITED

**A.T.F. LAB**
Walnut Creek, CA

**MPDC LAB**
Washington, D. C.

**ILLINOIS STATE POLICE LAB**
Fairfield Heights, IL

**A.T.F. LAB**
Ammendale, MD

**BALTIMORE CITY LAB**
Baltimore, MD

**NORTHERN VIRGINIA LAB**
Fairfax, VA

**F.B.I. LAB**
Washington, D. C.

**PENNSYLVANIA STATE
POLICE LAB**
Harrisburg, PA

**MARYLAND STATE POLICE
LAB**
Pikesville, MD

A. J. Esposito  Page 4 of 4
Updated January 2012

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

UNITED STATE OF AMERICA     )
     Plaintiff,               )
                       )
v.                         )     Case No. 12-10089-02, 09-MLB
                       )
RUSSELL WORTHEY,        )
JUAN TORRES             )
     Defendants          )
                       )
_____)

### DEFENDANTS RUSSELL WORTHEY AND JUAN TORRES OBJECTIONS TO
### THE GOVERNMENT'S MOTION FOR A
### PROTECTIVE ORDER GOVERING DISCLOSURE (DOC. 296).

COMES NOW, defendants, Russell Worthey and Juan Torres, by and through their attorneys, James R. Pratt and Michael Shultz respectively and submit the following objections to the government's motion:

1. The government has provided counsel with *unredacted* copies of discoverable material, claiming that due to the volume of the documents redaction "would consume many hours". (Doc. 296 ¶ 3).

2. Based on the fact the material is *unredacted* and contains "documents that contain personal identifying information of the defendants and other individuals," the government is asking for an order that will prevent counsel from:

    a.  Providing hard copies of the discovery to their clients;

    b.  "Disseminating" the information to "any other person"

1

    i. The government's motion does allow for one exception: "retained expert witnesses," however, this exception does not appear to cover necessary office staff or private investigators.

3. The government's request also does not allow for defense counsel to provide *redacted* copies of discovery to their clients,[1] and instead would require counsel to be in the physical presence of their client whenever the client reviews the evidence against them. This is both unreasonable and a waste of resources, especially given the fact that the majority if not all counsel are appointed.

4. Finally, the government's motion would require counsel to destroy <u>all</u> discovery provided by the government and <u>all</u> copies of discovery made by counsel within 90 days of the end of the case. This too is an unreasonable request.

    a. At the very least this could interfere with a client's right to file a § 2255 petition. Such right does not even expire until one year after all appellate remedies have been exhausted.

WHEREFORE, the defendant, Russell Worthey and Juan Torres, respectfully request that the government's motion be denied, or modified as set forth above and for further relief as this Court may deem just and equitable.

---

[1] This was confirmed via email with AUSA Lanny Welch on September 24, 2012.

Respectfully Submitted

 /s/ James R. Pratt
James R. Pratt #17716
445 N. Waco
Wichita, Kansas 67202
Phone: 316-262-2600
Fax: 316-262-2606
jim@jamesrprattlaw.com
Attorney for Russell Worthey


s/ Michael Shultz
Michael Shultz #23133
SHULTZ LAW OFFICE, P.A.
445 N. Waco
Wichita, Kansas 67202
Telephone:   316.269.2284
Fax          316.269.2011
Michael@shultzlaw.net
Attorney for Juan Torres


CERTIFICATE OF SERVICE

        I hereby certify that on September 26, 2012, I electronically filed the foregoing
with the clerk of the court by using the CM/ECF system which will send a notice of
electronic filing to each counsel of record in this case.

        I further certify that I mailed the foregoing document and the notice of electronic
filing by first-class mail to the following non-CM/ECF participants: none


s/James R. Pratt
JAMES R. PRATT #17716
Attorney for Defendant
445 N. Waco
Wichita, Kansas 67202
Ph: (316) 262-2600
Fax: (316) 262-2602
Jim@JamesRPrattLaw.com

3

MARK SEVART
111 NORTH BALTIMORE
DERBY, KANSAS  67037
(316) 686-1519

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,         ) Criminal Action
      Plaintiff,           )
  v.                          ) Case No.: 12-10089-17 MLB
                                    )
JAYSON VARGAS,              )
      Defendant.           )
_____)

## OBJECTION TO PROTECTIVE ORDER

COMES NOW, the Defendant, Jayson Vargas, by and through his attorney, Mark Sevart, and submits the following objection to the Government's Proposed Protective Order on Discovery.

The United States seeks to have a protective order issued pursuant to Federal Rule of Criminal Procedure 16(d)(1) which reads:

> *Protective and Modifying Orders*. At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect ex parte. If relief is granted, the court must preserve the entire text of the party's statement under seal.

The United States appears to be attempting in good faith to comply with Rule 16 and with the prodigy of due process case law under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

The Defendant further acknowledges that discovery rulings rest within the sound discretion of the district court, and are only reviewed for abuse of discretion. <u>Pippinger v. Rubin</u>, 129 F.3d 519, 533 (10th Cir. 1997).

## *REDACTION OF INFORMATION GIVEN TO DEFENDANT*

The Defendant objections to an order limiting what the Defense Attorney can show his client.

It is presumed by defense counsel that the purpose of the protective Order is to comply with Federal Rule of Criminal Procedure 49.1 which has to do with privacy protection for filings made with the Court.

The redacting of evidence going into a public file is different than a prohibition of allowing a defendant to see the reports and evidence against him.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI.   In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause "guarantees a defendant's right to confront those 'who bear testimony' against him."  Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527, 2531 (2009) (quoting Crawford, 541 U.S. at 51).

While Crawford has to do with cross-examination of witnesses at trial, the point to be made here is, it is the Defendant who has the right to confrontation under the 6th Amendment, not the Defense attorney.  Therefore, the full reports should be made available to the Defendant.

The Defendant recognizes the obligation to comply with the redaction requirements of Federal Rule of Criminal Procedure 49.1 when filing matters with the Court or when submitting documents

into evidence.  The Rule however, does not prohibit a defendant from seeing the entirety of the prosecution report.

Defense counsel needs to be able to have full access to provide information to his client in order to maintain a level of trust between the client and his Court appointed counsel. Therefore, full access to the information should be allowed.

### *DESTRUCTION OF DEFENSE FILE AFTER 90 DAYS*

A second issue of concern is the provision of the Defense Attorney destroying the file 90 days after the case is over. Issues of ethics, malpractice insurance coverage and general office practice usually require attorneys to maintain a copy of their client's file after conclusion of the representation.  The lawyer should be allowed to maintain the contents of the file for at least 5 years after the termination of representation, if for no other reason, than to have the information through any statute of limitation period.

WHEREFORE, the Defendant, Jayson Vargas, by and through his attorney, Mark Sevart, objects to the Government's proposed Protective Order on Discovery.

Respectfully Submitted,

s/Mark Sevart
Mark Sevart  # 12503
Attorney for Defendant
Jayson Vargas

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion was filed via electronic filing and automatically forwarded, this September 26, 2012 to:

Lanny Welch, US Attorney's Office, and all Defense Counsel of record for the Co-Defendants.


s/Mark Sevart
Mark Sevart

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12-10089-14-MLB |
| | ) | |
| v. | ) | |
| | ) | |
| ALFONSO BANDA-HERNANDEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OBJECTION TO THE GOVERNMENT'S MOTION
FOR A PROTECTIVE ORDER GOVERNING DISCLOSURE (DOC. 296)**

COMES NOW, the defendant Alfonso Banda-Hernandez, by and through his attorney, Michael D. Hepperly, and hereby files his objections to the government's motion for a protective order:

The government's motion, if granted, would require all counsel to destroy all discovery provided by the government and all copies of discovery made by counsel within 90 days of the end of the case. This is unreasonable since it would interfere with the defendant's appeal should one be filed and the right to file a § 2255 petition.

Defendant is not otherwise opposed to the entry of a protective order with the exception that clarification should be made to permit copying or dissemination to counsel's office staff, private investigators and any persons specifically retained by counsel for this case.

RESPECTFULLY submitted this 26th day of September, 2012.

s/Michael D. Hepperly
MICHAEL D. HEPPERLY, KSB# 09542
Michael D. Hepperly Law Office, Chtd.
310 W. Central, Suite 119
Wichita, KS 67202
Tel: (316) 267-5330
Fax: (316) 267-6589
Email: mhepperly@aol.com
   *ATTORNEY FOR DEFENDANT*
   *Alfonso Banda-Hernandez*

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2012, I caused to be electronically filed, the foregoing

**OBJECTION TO THE GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER**

**GOVERNING DISCLOSURE (DOC. 296)** with the Clerk of the Court by using the CM/ECF

system which will send a notice of electronic filing to all counsel of record.

s/Michael D. Hepperly
MICHAEL D. HEPPERLY

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-100089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION FOR JOINDER IN THE RESPONSES OF DEFENDANTS BANDA-HERNANDEZ'S, RUSSELL WORTHEY'S, JUAN TORRES' AND JASON VARGAS' OBJECTIONS TO THE GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER GOVERNING DISCLOSURE (DOC. 296)**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby moves this Court for an order allowing him to join in the objections filed by certain of his co-defendants.  Mr. Garcia seeks to join in the objections filed by the following co-defendants:

1.  Defendants Russell Worthey and Juan Torres Objection to the Government's

motion for a Protective Order Governing Disclosure (Doc. 296);

2.  Defendant Jayson Vargas's Objection to Protective Order (Doc. 307) and

3.  Defendant Alfonso Banda-Hernandez's Objection to the Government's Motion for

a Protective Order Governing Disclosure (Doc. 309).

The defendant, Mr. Garcia, shares the same concerns raised by his co-defendants in their objections.

Respectfully submitted;

s/ John Val Wachtel
John Val Wachtel
KS S.C. No. 08310

313

Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN  L.L.C.
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of September, 2012, I electronically filed te foregoing by

using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/ John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN  L.L.C.
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

KMAZ Doc. 20T1957

2

# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**MONTI L. BELOT**
**Judge**

111 U.S. Courthouse
401 N. Market
Wichita, Kansas 67202
(316) 315-4340

September 27, 2012

ALL COUNSEL OF RECORD

    Re:  United States v. Jason Najera, et al.
        Case No. 12-10089-01-23

Dear Counsel:

    I have reviewed defendants' responses to the government's motion for a protective order (Docs. 296, 305, 307, 308, 309, 311, 312, 313, 314 and Mark Bennett's email response).  If I'm reading the responses correctly, defendants object to the government's proposed order to the extent it provides (1) counsel will not provide their clients with physical copies of disclosed information or allow their clients to take notes that include any other individual's personal identifying information and (2) defense counsel must destroy their copies of the documents upon completion of the litigation.

    I'll take up objection (2) first.  Defense counsels' position seems to be that "completion of the litigation" could include post-conviction matters such as motions under 28 U.S.C. § 2255.  Because I don't know what the documents are, much less whether and, if so, how they might support a post-conviction motion, I'll require defense counsel to retain the documents until the client has exhausted all conceivable post-conviction remedies.  Then the documents will be returned to the government.

    Turning to objection (1), counsel may want to read <u>United States v. Lee</u>, 374 F.3d 637, 652 (8th Cir. 2004).  <u>Lee</u> seems to uphold a protective order that is even more restrictive than the order proposed by the government.  You might note that <u>Lee</u> is a RICO case.

    While I suspect I know the reason for the government's request, I think the proper procedure will be for the government to supplement its motion to provide its reasons to which defendants can then respond.  I hate to drag this out but it's best to follow proper procedure.

    The government should file its supplemental motion by October 5 and defendants may respond by October 12.

                    Very truly yours,

                    s/ Monti Belot

                    Monti L. Belot

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 315

MLB/sw

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-01-23-MLB |
| | } | |
| JASON NAJERA | } | |
|   a.k.a. Ene, | } | |
|   a.k.a. Norte, | } | |
| PEDRO GARCIA, | } | |
|   a.k.a. Peter Garcia, | } | |
|   a.k.a. Pistol Pete, | } | |
| GONZALO RAMIREZ, | } | |
|   a.k.a. Gonzo, | } | |
| RUSSELL WORTHEY, | } | |
|   a.k.a. Blanco, | } | |
| ANTHONY WRIGHT, | } | |
|   a.k.a. Huesos, | } | |
| JOSHUA FLORES, | } | |
|   a.k.a. Big Knox, | } | |
| JESUS FLORES, | } | |
|   a.k.a. Tito, | } | |
| ANGEL CERDA, | } | |
|   a.k.a. Shrek, | } | |
| JUAN TORRES, | } | |
|   a.k.a. Bugsy, | } | |
| ALFREDO BELTRAN-RUIZ, | } | |
|   a.k.a. Deuce-Deuce, | } | |
| DONTE BARNES, | } | |
|   a.k.a. Snipes, | } | |
|   a.k.a. Snipe, | } | |
|   a.k.a. Sniper, | } | |
| JESUS SANCHEZ, | } | |
|   a.k.a. Drac, | } | |
|   a.k.a. Dracula, | } | |
| ENRIQUE GOBIN, | } | |
|   a.k.a. Ricky, | } | |
|   a.k.a. Sonny Boy, | } | |

1

ALFONSO BANDA-HERNANDEZ,          }
  a.k.a. Fonso,                              }
ANDREW GUSMAN,                           }
  a.k.a. Beaver,                            }
EUSEBIO SIERRA-MEDRANO,           }
  a.k.a. TC,                                   }
JAYSON VARGAS                             }
  a.k.a. Wee Wee,                         }
ADAM FLORES,                               }
  a.k.a. Little Lazy,                       }
FABIAN NEAVE,                              }
  a.k.a. Puppet,                            }
JESUS TORRES,                              }
  a.k.a. Rabbit,                             }
JOSE NEAVE,                                  }
  a.k.a. Caiyo,                               }
HERNAN QUEZADA,                        }
  a.k.a. Cheese,                             }
  a.k.a. Cartoon,                            }
HUMBERTO ORTIZ,                         }
  a.k.a. Beto,                                 }
                  Defendants.     }

## SUPPLEMENTAL MOTION FOR ENTRY OF A
## PROTECTIVE ORDER GOVERNING DISCLOSURE

The United States of America, by Aaron L. Smith, Assistant United States Attorney, moves

the Court for a protective order concerning certain information contained within the discovery in this

matter, pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure.  In support of its

motion, the United States alleges as follows:

1.      Discovery in this matter includes digital copies of voluminous documents.  As part

of its discovery obligations the Government intends to provide the defense with digital copies of the

materials.

2.      The data will include documents that contain personal identifying information of the

2

defendants and other individuals.  It is the policy of the U.S. Department of Justice to not disclose such information unless specifically required by the Court, Rule 16, or *Brady/Giglio*.

3.      Due to the volume of documents, redaction would consume many hours.  Blanket protective orders "expedite the flow of discovery" and avoid the time consuming, inefficient process of a document by document review.  Cipollone v. Ligget Group, Inc., 785 F.2d 1108, 1123 (3rd Cir. 1986).  They are particularly useful in cases involving large-scale discovery.  Id at 1123.

4.      Instead of requiring defense counsel to come in person to the U.S. Attorney's Office to view unredacted copies of documents, the United States is requesting the entry of a protective order.  The United States is requesting a protective order which would prevent the defendants and defense counsel from using the information provided by the Government for any purpose other than litigation, to not disseminate the information to any other person, and defense counsel and staff of such counsel agree that, although they are free to show their clients personal identifying information of other individuals while consulting with their respective client in person, they will not provide the defendant with physical copies of the information or allow the defendant to take notes that include any other individual's personal identifying information.  Defense counsel and staff of such counsel would be permitted to make physical copies of documents containing personal identifying information, so long as the documents are not disseminated and are destroyed upon completion of litigation in this matter.  Defense counsel would also be permitted to provide the documents to any retained expert witness, provided counsel informs the witness of the terms of the protective order, and the expert witness agrees to be bound by the terms.

5.      The United States requests the parties comply with Federal Rule of Criminal Procedure 49.1 relative to any document they intend to use as an exhibit at trial or which they

3

provide in public filings.

6.      After the final conclusion of this litigation, including post-conviction remedies, the United States requests each defendant return all discovery materials to the United States Attorney's Office, or submit a letter to the United States Attorney's Office certifying they have destroyed or otherwise properly disposed of this material.

7.      Federal Rule of Criminal Procedure 16(d)(1) states, in part, "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."

8.      The advisory committee notes to Rule 16(d) recognize the need to protect material when disclosure may impact the safety of a witness or lead to witness intimidation. The 1966 amendments to Rule 16(d) similarly explain that, "Among the considerations to be taken into account by the court will be the safety of witnesses and others, a particular danger or perjury or witness intimidation." Fed. R. Crim. P. 16(d), Advisory Committee Notes to the 1966 Amendments. The 1974 advisory committee notes likewise recognize the "obvious" appropriateness of a protective order "where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed." Fed. R. Crim. P. 16(d), Advisory Committee Notes to the 1974 Amendments.

9.      As noted by the court, more restrictive protective orders have been approved and upheld be courts. See United States v. Lee, 374 F.3d 637 (8th Cir. 2004).

10.     While 23 defendants have been charged in the present indictment, there are numerous Norteno gang members, associates, and family members thereof that remain in the Dodge City

community.  Allowing the defendant's in this case to have copies[1] of reports identifying witnesses would allow that information to be transferred to persons in Dodge City who could pose a threat to the safety of those witnesses.

WHEREFORE, the United States requests the Court enter a protective order as requested in this motion.

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY


/s/ Aaron L. Smith
AARON L. SMITH #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, KS  67202
Phone: 316-269-6481
aaron.smith3@usdoj.gov

---

[1] The slang term "paper" often refers to copies of reports, statements of cooperating witnesses or plea agreements reflecting cooperation.  Once an individual possesses "paper" on a cooperator, whether the cooperation is real or imagined, there is a heightened risk of harm to the cooperator, or risk of heightened harm.  As relayed by defense counsel in this case and other cases, if "paper" made its way into the hands of inmates housed with a cooperating defendant, the cooperating defendant would be at increased risk of violence.  Cooperating witnesses in this case have communicated a fear of reprisal against them or their families.  In fact, defendants in this case and other ancillary cases, through their attorneys, have communicated that they have a fear of reprisal against themselves or their families if they are perceived to be cooperators, whether true or not.

321

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of October, 2012, I electronically filed the foregoing response with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Aaron L. Smith
AARON L. SMITH #20447
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION FOR SPECIFIC DISCOVERY RELATED TO STREET GANGS IN DODGE CITY, KANSAS**

**- DEFENDANT GARCIA'S SECOND MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby moves this Court for an order allowing specific discovery of certain materials related to street gangs in Dodge City, Kansas, as the same are more specifically identified in Mr. Garcia's memorandum in support of this motion. In support of this motion Mr. Garcia has submitted a memorandum of authorities.

WHEREFORE, defendant Pedro Garcia prays for an order of this Court granting the motion.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail: jvwachtel@klendalaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of October, 2012, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.


s/John Val Wachtel
John Val Wachtel


KA Doc. 20U3273

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

UNITED STATES OF AMERICA,      )
                               )
                    Plaintiff, )      Criminal Action
                               )
          vs.                  )      No. 12-10089-02-MLB
                               )
PEDRO GARCIA,                  )
                               )
                   Defendant.  )
_____)

**MEMORANDUM IN SUPPORT OF DEFENDANT PEDRO GARCIA'S MOTION FOR SPECIFIC DISCOVERY RELATED TO STREET GANGS IN DODGE CITY, KANSAS**

**- IN SUPPORT OF DEFENDANT GARCIA'S SECOND MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby submits this memorandum in support of his motion for specific discovery related to street gangs in Dodge City, Kansas.

**I.  Factual Background**

1.  Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains thirty-eight alleged separate violations of federal criminal law.  (Doc. 1.)

2.  COUNT 1, inter alia, charges the defendant, along with Jason Najera, Gonzalo Ramirez, Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together with persons known and unknown, being persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c) ... [a]ll in violation of  18 U.S.C. § 1962(d)." *Id.*

2.  COUNT 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright

with the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5). *Id.*

3. COUNT 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering. It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1). *Id.*

4. COUNT 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1). *Id.*

5. COUNT 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3). *Id.*

6. COUNT 6, charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

7. COUNT 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3). COUNT 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6). COUNT 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

8. On or about August 15, 2012, the government provided Mr. Garcia with discovery which contained "gang sheets and photographs." This discovery contains 702 pages of documents, not all of which were Mr. Garcia's 'gang sheets.' These gang sheets contain what is denominated as "Gang Verification Criteria." The Gang Verification Criteria (hereinafter "Gang Sheet(s)"), contains three general categories, which are titled "Self Admission," "Association" and "Other Criteria."

9. Each criteria section is contains various subdivisions. Self Admission Criteria is subdivided as follows: "Subject admits gang affiliation, Subject has gang-related tattoos, Subject writes gang graffiti, and Subject uses gang-related moniker." The Association Criteria contains the following subdivisions: "Subject associates with known gang members, Subject included in

2

photographs with known gang members and Subject involved in criminal gang incidents.  The Other

Criteria is divided into the following subdivisions:

> Judicial findings of gang membership.
> Subject's victims or targets of crime are members of a rival gang.
> Subject uses hand signs and gang language, the content and context of which clearly indicated gang affiliation.
> Subject's name appears on gang document, hit list or gang-related graffiti.
> Subject wears "colors," gang clothing, gang paraphernalia in such & [*sic*] way that indicates gang affiliation.
> Subject identified as a gang member by another law enforcement agency.
> Subject identified as a gang member by a reliable informant.
> Subject identified as a gang member by another gang.
> Subject identified as a gang member by a public source.

See e.g. Gang Sheet Garcia, Pedro, 08/14/2002, a copy of which is attached hereto as EXHIBIT 1,

and incorporated herein by reference.  Gang Sheets also contain a section titled "COMMENTS."  By

way of an example, this section of EXHIBIT 1 reads, "Found in traffic stop, had XIV carved in arm

found with Juan Morales."  Each gang sheet contains or should contain the identity or identities of

the submitting law enforcement officer or officers.  *Id*.

10.  On September 22, 2012, the government filed a document titled "UNITED STATES'

DISCLOSURE OF ANTICIPATED EXPERT WITNESSES," (hereinafter "Disclosure."  (Doc. 297.)

 Among the expert witnesses disclosed are Jimmie "J.L." Bice, Shane Webb, James Nau.  Bice,

Webb and Nau are identified as officers of the Dodge City, Kansas Police Department.  *Id*. p.2 and

attached C.V.s.

11.  The Disclosure contains a section identified as "Gang testimony."  In the Disclosure, the

Gang testimony consists of two single spaced pages of disclosures.  With respect to Gang testimony,

the Disclosure, among other things, states that, "The witnesses may testify concerning the methods

used by law enforcement officers, to identify gang members and their associates."  Disclosure at p. 3.

 Nothing in the Gang testimony section of the Disclosure indicates which of the identified Dodge

City police officers will testify as to any specific thing or things contained in the Disclosure regarding Gang testimony.

## II.  Argument and Authorities and Specific Discovery Sought

Gang Related Policies and Procedures:   Mr. Garcia seeks the Dodge City Police Department policies and procedural material developed and used in connection with the creation of the Gang Sheets.  By "in connection with the creation," the defendant includes the development of the blank Gang Sheets, and the instructional material used to guide Dodge City law enforcement officers in completing the Gang Sheets, i.e. training materials.

In approximately 1988, The California Youth Gang Task Force, identified a set of criteria used in identifying street gang members.  Placido G. Gomez, *It is not so Simply Because an Expert Says it is so:  The Reliability of Gang Expert Testimony Regarding Membership in Criminal Street Gangs:  Pushing the Limits of Texas Rule of Evidence 702*, 34 S. Mary's L.J. 581, 600 (2003).  The criteria developed was:

> (1) Subject admits being a member of a gang;
> (2) [s]ubject has tattoos, clothing, etc., that are only associated with certain gangs;
> (3) [s]ubject has been arrested while participating in activities with a known gang member;
> (4) [i]normation that places the subject with a gang has been obtained from a reliable informant [and]
> (5) [c]lose association with known gang members has been confirmed.

*Id*. 610, see also FN 179 (Jeffery J. Mayer, *Individual Moral Responsibility and the Criminalization of Youth Gangs*, 28 Wake Forrest L.Rev. 943-969-74 (1993) (outlining the criteria used by law enforcement agencies in San Diego, Kansas City and Portland)).  It is a challenge for law enforcement to identify members of different street gangs which contain unique structures as new gangs emerge.  "Nevertheless, it is critical that agencies develop criteria that accurately identifies gang members. Otherwise the gang expert's testimony will lack the methodological foundational

reliability courts require for its admissibility." *Id*. 610-11.

Review of the Gang Sheets in Mr. Garcia's case reveals that few of the criteria set out in the Sheets are objective criteria.  Accordingly, it is critical that the defense be provided with the materials requested here.  That material is essential to the defense to test the reliability of the reliability of the gang expert's or experts' testimony.  Under Kumho Tire, unreliable testimony cannot be admitted, and unreliable testimony must not be considered by the court or jury.

Mr. Garcia expects that a *James* hearing will be conducted in connection with the RICO allegations contained in the Indictment.  In the absence of a *James* hearing the defense will probe and attack the reliability of the opinions which the government  indicates in its Disclosure that Bice, Webb and Nau are expected to provide.  Among the things that defense attorneys will inquire about are the policies and procedures developed by the Dodge City Police Department and the training that officers have received in applying those policies to individuals.  Granting Mr. Garcia's motion will reduce the length of any *James* hearing, and if a *James* hearing is not conducted, will reduce that length of expert witness voir dire during trial.  As such, granting the motion is in the best interest of judicial economy and due process of law.

Underlying Source Material - Gang Sheets:  In a Gang Sheet dated August 9, 2003, and completed by SCST Officer Thompson, the following Gang Verification Criteria were checked regarding Mr. Garcia.

Subject admits gang affiliation;
Subject uses gang-related moniker;
Subject associates with known gang members;
Subject identified as gang member by another law enforcement agency;
Subject identified as a gang member by another gang; and
Subject identified as a gang member by a public source.

*See* Gang Sheet dated August 9, 2003, a copy of which is marked as EXHIBIT 2, attached hereto and

5

incorporated herein by reference.  For a gang expert's testimony as to gang membership to be reliable, "the expert must possess accurate information regarding the existence of a gang and the defendant's membership in the gang."  Placido G. Gomez, *It is not so Simply Because an Expert Says it is so.*  Id. at 611.

There are reasons which are not gang membership related why a person might identify himself as a gang member.  "A common reason appears to be survival; gangs are notorious for effective intimidation techniques.  "Young males may have to make peace with local gangs to go to school, work, or merely walk around in the neighborhood," and some nongang members would "rather blend in than fight it."  Id. at 618, and FN 215 citing Suzin Kim, Note, *Gangs and Law Enforcement:  The Necessity of limiting the Use of Gang Profiles*, 5. B.U. Pub. Int. L.J.265, 273 (1996), and FN 216, Linda S. Beres & Thomas D. Griffith, *Demonizing Youth*, 34 Loy. L.A.L.Rev. 747, 761 (2001).

In EXHIBIT 2, Mr. Garcia is labeled as a gang member by an unidentified member of another gang.  Mr. Garcia's gang sheet does not identify the person from another gang who identified Mr. Garcia as a Norteno, much less identify the gang that the informant was a member of.  This absence of information makes the Gang Sheet unreliable on its face.  One cannot tell if the source was reliable, or if the source had some motive other than assisting law enforcement when he or she identified Mr. Garcia as a gang member.

Also, in EXHIBIT 2, we are given to understand that Mr. Garcia identified himself as a gang member.  This statement made by Mr. Garcia is not provided in the discovery, nor is the content of that supposed admission mentioned in the Comments section of EXHIBIT 2.  If indeed such a statement by the defendant exists the defense is entitled to it.

EXHIBIT 2 indicates that Mr. Garcia was identified as a gang member by "**another** law

enforcement agency." (Emphasis added.)  That other law enforcement agency is not identified. There is no way from the gang sheet that the defense can identify that agency.

As argued above, for the opinion of the expert to be reliable, the expert's opinion must arise out of reliable information.  That reliability is tested in cross-examination.  To be effective in cross-examination, Mr. Garcia's counsel must have the Gang Sheet underlying source material sufficiently prior to any hearing during which a gang expert or gang experts may testify.  In the interest of judicial economy, it is important that Mr. Garcia have that information now.

The defense points out that Mr. Garcia is not just seeking source material on EXHIBITS 1 and 2.  Rather that information is sought with respect to each of Mr. Garcia's Gang Sheets disclosed in the discovery, as well as any Gang Sheets of which the government is aware or should be aware, that have not been disclosed.

### Conclusion

The scope of discovery under Rule 16 of the Federal Rules of Criminal Procedure "is within the discretion of the trial judge and is not reviewable absent abuse.  *United States v. Smaldone*, 484 F.2d 311 (10th Cir.)"  *United States v. Evans*, 542 F.2d 805, 809 (10th Cir. 1976).  Accordingly, this Court has the discretion to grant Mr. Garcia's motion for specific discovery.  Granting the motion would be in the best interest of due process of law, and will serve to promote judicial economy.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333

E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of October, 2012, I electronically filed the foregoing by

using the CM/ECF system which will send a notice of electronic filing to the counsel of record.


s/John Val Wachtel
John Val Wachtel


KMAZ Doc. 20U3318

## GANG VERIFICATION CRITERIA

NAME: GARCIA, PEDRO                    DATE: 08142002

GANG: DV

☐ **SELF ADMISSION**

☐ Subject admits gang affiliation.

☒ Subject has gang-related tattoos.      Picture of Tattoo? ...  Yes ☐ No ☒

☐ Subject writes gang graffiti.         An Example? - - - - - - - - Yes ☐ No ☐

☐ Subject uses gang-related moniker.

☒ **ASSOCIATION**

☒ Subject associates with known gang members.

☐ Subject included in group photographs with known gang members.

☐ Subject involved in criminal gang incidents.

☐ **OTHER CRITERIA**

☐ Judicial findings of gang membership.

☐ Subject's victims or targets of crime are members of a rival gang.

☐ Subject uses hand signs and gang language, the content and context of which clearly indicated gang affiliation.

☐ Subject's name appears on gang document, hit list, or gang-related graffiti.

☒ Subject wears "colors," gang clothing, gang paraphernalia in such & way that indicates gang affiliation.

☒ Subject identified as a gang member by another law enforcement agency.

☐ Subject identified as a gang member by a reliable informant.

☐ Subject identified as a gang member by another gang.

☐ Subject identified as a gang member by a public source.

☒ **COMMENTS:**

FOUND IN TRAFFIC STOP.  HAD XIV CARVED IN ARM FOUND WITH JUAN MORALAS

SUBMITTED By: SGT. LEJAY T. WARREN P-105     DATE: 08142002

TITLE:

**EXHIBIT**

**1**

## GANG VERIFICATION CRITERIA

NAME: PEDRO GARCIA     DATE: 08092003

GANG: DV

☒ **SELF ADMISSION**

☒ Subject admits gang affiliation.

☒ Subject has gang-related tattoos.    Picture of Tattoo? ... Yes ☐ No ☒

☐ Subject writes gang graffiti.    An Example? --------- Yes ☐ No ☐

☒ Subject uses gang-related moniker.

☒ **ASSOCIATION**

☒ Subject associates with known gang members.

☐ Subject included in group photographs with known gang members.

☐ Subject involved in criminal gang incidents.

☒ **OTHER CRITERIA**

☐ Judicial findings of gang membership.

☐ Subject's victims or targets of crime are members of a rival gang.

☒ Subject uses hand signs and gang language, the content and context of which clearly indicated gang affiliation.

☐ Subject's name appears on gang document, hit list, or gang-related graffiti.

☒ Subject wears "colors," gang clothing, gang paraphernalia in such & way that indicates gang affiliation.

☒ Subject identified as a gang member by another law enforcement agency.

☐ Subject identified as a gang member by a reliable informant.

☒ Subject identified as a gang member by another gang.

☒ Subject identified as a gang member by a public source.

☒ **COMMENTS:**

STOPPED AT F AND SPRUCE WITH TWO FEMALES. WAS WEARING MOSTLY RED CLOTHING. ADMITTED HE WAS INVOLVED WITH DV

SUBMITTED By: THOMPSON     DATE: 08092003

TITLE: SCST OFFICER

**EXHIBIT**

2

Gang Sheets & Photos - 000003

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION PURSUANT TO RULE 7(f) OF THE
FEDERAL RULES OF CRIMINAL PROCEDURE FOR A BILL OF PARTICULARS**

**- DEFENDANT GARCIA'S THIRD MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John

Val Wachtel of Klenda Austerman LLC, and pursuant to Rule 7(f) of the Federal Rules of Criminal

Procedure, hereby moves for a bill of particulars as further, and more completely set out in the

memorandum submitted in support of this motion.  Together with this motion Mr. Garcia has

submitted a memorandum of authorities.

WHEREFORE, Mr. Garcia prays for an order of this Court granting the motion.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of October 2012, I electronically filed the foregoing by

using the CM/ECF system which will send a notice of electronic filing to the counsel of record.


                                     s/John Val Wachtel
                                     John Val Wachtel


KA Doc. 20U9624

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT PEDRO GARCIA'S MOTION
PURSUANT TO RULE 7(f) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE
FOR A BILL OF PARTICULARS**

**- IN SUPPORT OF DEFENDANT GARCIA'S THIRD MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John

Val Wachtel of Klenda Austerman LLC, and hereby submits this memorandum in support of his

motion pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure for a bill of particulars.

**Factual Background**

1.  Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains

thirty-eight alleged separate violations of federal criminal law.  (Doc. 1.)

2.  COUNT 1, inter alia, charges the defendant, along with Jason Najera, Gonzalo Ramirez,

Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together

with persons known and unknown, being persons associated with the Nortenos street gang, an

enterprise which engaged in, and the activities of which affected, interstate and foreign commerce,

knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c) ... [a]ll in violation of  18

U.S.C. § 1962(d)." *Id.*

2. COUNT 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright with the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5). *Id.*

3. COUNT 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering. It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1). *Id.*

4. COUNT 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1). *Id.*

5. COUNT 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3). *Id.*

6. COUNT 6, charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

7. COUNT 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3). COUNT 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6). COUNT 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

### Argument and Authorities

Rule 7(f) of the Federal Rules of Criminal Procedure states: "The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires." Rule 7(f) Fed.R.Crim.Proc. A decision regarding whether or not to direct the government to file a bill of particulars rests within the sound discretion of the court. *United States v. Evans*, 542 F.2d, 805, 808 (10th Cir. 1976) *cert. den.* 429 U.S. 1101 (1977); *United States v. Eaton*, 485 F.2d 102 (10th Cir. 1973) and *Wong Tai v. United*

2

*States*, 273 U.S. 77 (1927).

In his motion, Mr. Garcia he seeks a bill of particulars with respect to the following: (1) The persons present when the alleged conspiracy was formed; (2) the terms of the conspiratorial agreement; (3) the location(s) at which the conspiracy was formed; (4) the identities of all known but unidentified co-conspirators referred to in the Indictment; (5) the manner in which the conspiracy was designed to achieve its purposes and goals; (6) the locations of any and all meetings or conspiratorial conversations in which any defendant, including Mr. Garcia, and/or any known but unidentified co-conspirators allegedly participated; (7) the approximate dates in which Mr. Garcia, each co-defendant and each known but unidentified co-conspirator joined the conspiracy; and (8) the particulars of all meetings and conversations in which any defendant, including Mr. Garcia, participated in the conspiracy, including without limitation the names of all persons that the government will claim at trial were co-conspirators who participated in those meetings and conversations.

Considering the complex nature of the charges lodged against Mr. Garcia, including the RICO Count(s),the number of co-defendants, the number of allegedly known but unidentified co-conspirators, Mr. Garcia submits that an order directing the government to file a bill of particulars pursuant to Rule 7(f) is necessary, appropriate and in the substantial interest of justice. It is clear in this case that the Indictment fails to comport with Rule 7(c) of the Federal Rules of Criminal Procedure, which mandates that that the indictment contain "a plain, concise and definite written statement of the essential facts constituting the offense charged." Rule 7(c), F.R.Crim.P.

A bill of particulars enables an accused to prepare for trial by providing him with sufficient notice of the charge(s) against him, while minimizing the possibility of prejudicial surprise. *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988). Further, the bill serves the laudable purpose of

allowing a defendant to know the names of the unindicted and, to the extent that any exist, unidentified co-conspirators whom the government will call as witnesses. *United States v. Barrentine*, 519 F.2d 1069 (5th Cir. 1976) *cert. den.* 444 U.S. 990 (1979).  In addition, the bill of particulars allows the defendant to know at least the substance, time, place, date and identities associated with the overt acts of all co-conspirators. *United States v. Rogers*, 617, F.Supp. 1024 (D.Co. 1985).  "It is axiomatic that a criminal defendant should be given enough information about the crime charged so that he may prepare adequately for trial." *Rogers*, 617 F.Supp. at 1027 (internal citation omitted).

The "primary purpose of a bill of particulars is to more specifically define the charge set forth in the indictment, so that the defendant is apprised of the charges against him with sufficient clarity in order to allow him the opportunity to prepare his defense and to obviate prejudicial surprise to the defendant at trial." *Id*.  Equally as important, the clarity provided by a bill of particulars may allow a defendant, where applicable, to raise the defense of double jeopardy. *Id*.

The Indictment in the present case is insufficient with respect to putting Mr. Garcia on notice of the precise nature and manner of the alleged conspiracy.  An indictment must fairly and accurately describe the nature of the charge(s) so that the defendant can confront and cross-examine his accusers and frame the issues in such a way as to enable him to receive a fair trial.

> It is axiomatic that "all material facts and circumstances embraced in the definition of the offense [sic] must be stated, or the indictment will be defective." *United States v. Hess*, 124 U.S. 483, 486, 8 S.Ct. 571, 573, 31 L.Ed. 516 L.Ed.2d  516 (1988). Moreover, a court cannot by implication, add an element to the indictment.  "[A defendant] cannot be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury." *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979).

*United States v. Kilpatrick*, 821 F.2d 1456, 1463 (10th Cir. 1987) (reversed on other grounds, *sub nom United States v. Bank of Nova Scotia*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988).

This requirement of factual particularity operates to prohibit the prosecution from filing elements of its case other than those known to the grand jury. *United States v. Salazar*, 720 F.2d 1482, 1486 (10th Cir. 1982) *cert. den.* 469 U.S. 1110 (1985).

Count 1 of the Indictment comes immediately to mind in Mr. Garcia's case. See Indictment, (Doc. 1), which points out in pertinent part that Mr. Garcia, Jason Najera, Gonzalo Ramirez, Russell Worthey, Anthony Wright, Joshua Flores, Jesus Flores, Angel Cerda, Juan Torres, Alfredo Beltran-Ruiz, Donte Barnes, Jesus Sanchez, Enrique Gobin, Alfonso Banda-Hernandez, Andrew Gusman, Eusebio Sierra-Medrano, Jayson Vargas, Adam Flores, Fabian Neave, Jesus Torres, Jose Neave, Hernandez Quezada, Humberto Ortiz and "**others known and unknown** [to the Grand Jury]" were "among the conspirators and were leaders, members and associates of the Nortenos, a criminal organization." Id. ¶ 1 (emphasis added).

Count 1 of the Indictment, while voluminous, fails to meet these requirements, for what could be more material than the identities of the allegedly known but unidentified co-conspirators? The Grand Jury failed to identify the allegedly known co-conspirators, and accordingly the Court, the parties and the trial jurors are left to speculate. What is more, this absence of identification works to allow the government to frustrate Mr. Garcia's ability to attack the credibility of these alleged but unidentified persons. For Mr. Garcia to adequately prepare a defense to these charges, he must be informed by means of a bill of particulars who it is contended that the co-conspirators are. *See United States v. Anderson*, 31 F.Supp.2d 933, 938 (D.Kan. 1998) ("leaving unnamed co-conspirators undisclosed subjects the defendants to a risk of double jeopardy if the government one day sought to indict the defendants because of their alleged conspiracy with the unnamed co-conspirators.").

Mr. Garcia also requests that the bill of particulars provide information as to all meetings and conversations in which any defendant, including without limitation, himself and the un-named

5

persons, which the government may claim at trial were co-conspirators, as well as the approximate

dates and locations of all meetings and conversations not identified in the indictment and the

approximate dates that he and all others known to the government joined and/or left the conspiracy.

> While the Government argues against a bill of particulars on the basis of the less stringent pleading requirements, this court believes that the logic cuts the other way … [T]he Court concludes that defendants **must be provided with** certain information in order to permit them to prepare adequately for trial. Specifically they are entitled to a bill of particulars setting forth the names of all persons the Government would claim at trial were co-conspirators (whether or not they will be called as witnesses), the approximate dates and locations of any meetings or conversations not already identified in the indictment in which each defendant allegedly participated, and the approximate date on which each defendant joined the conspiracy. *United States v. Taylor*, 707 F.Supp. 696, 700 (S.D.N.Y. 1989) … While the Court is not expressly requiring that the government provide the defendants with all overt acts taken by anyone in furtherance of the conspiracy, **the Government** should understand that it **is required to provide particulars as to all overt acts (or at least all meetings and conversations** in which any defendant participated so that each defendant may understand the government's view of his alleged role in the conspiracy).

*United States v. Ramirez*, 54 F.Supp.2d, 25, 30 (D.D.C. 1999) (emphasis added).

An indictment may generally be upheld even though it may contain a technical error or

omission. *United States v. Kilpatrick*, 821 F.2d 1456 (10th Cir. 1987. On the other hand, a defendant

is certainly entitled to understand the specific nature of the indictment and who he is alleged to have

conspired with. Where an indictment lacks such specificity a bill of particulars should be provided

to the defendant. *See Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).

Where large numbers of acts in the indictment are attributable to several co-conspirators in the

indictment, an individual defendant is entitled to a bill of particulars identifying which co-

conspirator performed the specified acts. *United States v. Hisa*, 24 F.Supp.2d 31 (D.D.C. 1998).

WHEREFORE, Mr. Garcia prays for an order of Court granting his motion for a bill of

particulars.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail: jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of October 2012, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

KMAZ Doc. 20U9642

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION FOR NOTICE OF
CO-CONSPIRATOR STATEMENTS**

**- DEFENDANT GARCIA'S FOURTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John

Val Wachtel of Klenda Austerman LLC, and pursuant to the rights and protections granted to him by

the Constitution of the United States, hereby moves the Court for an order directing the government

to identify any co-conspirator statements which it intends to offer, or which it may offer, at trial.  In

support of this motion, Mr. Garcia has submitted a memorandum of authorities.

WHEREFORE, Mr. Pedro Garcia prays for an order of this Court granting the motion.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

344

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of October 2012, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

KA Doc. 20U8706

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT PEDRO GARCIA'S MOTION FOR NOTICE OF CO-CONSPIRATORS' STATEMENTS**

**- IN SUPPORT OF DEFENDANT GARCIA'S FOURTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby submits this memorandum in support of his motion for notice of co-conspirator statements.

**Factual Background**

1. Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains thirty-eight alleged separate violations of federal criminal law. (Doc. 1.)

2. COUNT 1, inter alia, charges the defendant, along with Jason Najera, Gonzalo Ramirez, Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together with persons known and unknown, being persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c) ... [a]ll in violation of 18 U.S.C. § 1962(d)." *Id*.

2. COUNT 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright

346

with the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5). *Id.*

3. COUNT 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering. It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1). *Id.*

4. COUNT 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1). *Id.*

5. COUNT 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3). *Id.*

6. COUNT 6, charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

7. COUNT 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3). COUNT 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6). COUNT 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

### Argument and Authorities and Specific Discovery Sought

The allegations against Mr. Garcia, and the other defendants in this complex case, arise in part out of alleged violations of the Racketeer Influenced and Corrupt Organizations Act (hereinafter at times "the Act" or "RICO"), in violation of 21 U.S.C. § 1962 *et seq*. It is apparent from the Indictment, and apparent as well from the experience of Mr. Garcia's counsel, that the government has relied upon, or may rely upon, statements made by alleged co-conspirators in its prosecution of Mr. Garcia. The Federal Rules of Evidence allow the admission of non-testifying co-conspirators' statements, if such statements were made "during the course and in furtherance of the conspiracy." F.R.Evid. 801(d)(2)(E). In the event that the government intends to introduce any such co-

conspirator statements, or may introduce such statements, Mr. Garcia is entitled to a pre-trial hearing on the admissibility of those statements. *United States v. James*, 590 F.2d 575 (5th Cir. 1979) and *United States v. Gonzales-Montoya*, 161 F.3d 643 (10th Cir. 1998).

Accordingly, it is appropriate and necessary that the government identify the co-conspirators whose statements will be offered, and identify as well the statements that will be offered, so that a determination can be made as to the admissibility of the same. If the government does identify such persons and statements, Mr. Garcia will ultimately request a James hearing to determine prior to trial the admissibility of those statements. Should the government identify such statements Mr. Garcia will request a hearing under Rule 104(c) of the Federal Rules of Evidence.

WHEREFORE, Mr. Garcia prays that the Court grant this motion.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail: jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of October 2012, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

KMAZ Doc. 20U8752

3

347

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION TO EXCLUDE CO-CONSPIRATORS'
TESTIMONIAL STATEMENTS**

**- DEFENDANT GARCIA'S FIFTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby moves the Court for an order prohibiting the government from offering into evidence, or referring to in any way during voir dire or argument in this case, any and all of the co-defendants' and alleged co-conspirators' statements that are testimonial hearsay statements regarding Mr. Garcia and any of his co-defendants and alleged co-conspirators, unless the Court should otherwise first determine that the declarants are unavailable and that Mr. Garcia has had an opportunity to cross-examine those declarants, whether or not those statements might otherwise be admissible under Federal Rule of Evidence 801. In support of this motion, Mr. Garcia has submitted a memorandum of authorities.

WHEREFORE, Mr. Garcia prays for an order of this Court granting the motion.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 349

349

Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of October 2012, I electronically filed the foregoing by

using the CM/ECF system which will send a notice of electronic filing to the counsel of record.


s/John Val Wachtel
John Val Wachtel


KA Doc. 20U8794

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT PEDRO GARCIA'S MOTION TO EXCLUDE CO-CONSPIRATORS' TESTIMONIAL STATEMENTS**

**- IN SUPPORT OF DEFENDANT GARCIA'S FIFTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby submits this memorandum in support of his motion to exclude co-conspirators testimonial statements.

**Factual Background**

1.  Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains thirty-eight alleged separate violations of federal criminal law.  (Doc. 1.)

2.  COUNT 1, inter alia, charges the defendant, along with Jason Najera, Gonzalo Ramirez, Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together with persons known and unknown, being persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c) ...  [a]ll in violation of  18 U.S.C. § 1962(d)." *Id.*

2.  COUNT 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright

with the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5).  *Id.*

3.  COUNT 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering.  It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1).  *Id.*

4.  COUNT 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1).  *Id.*

5.  COUNT 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3).  *Id.*

6.  COUNT 6, charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A).  *Id.*

7.  COUNT 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3).  COUNT 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6).  COUNT 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A).  *Id.*

### Argument and Authorities and Specific Discovery Sought

The allegations against Mr. Garcia and his co-defendants in this complex case arise in part out of an alleged violation of the Racketeer Influenced and Corrupt Organizations Act, Title 21 U.S.C. 1962 *et seq.*  Even at this early stage of this litigation is has become apparent to the defendant and his counsel that the government may well attempt to offer the testimony of co-conspirators and possibly co-defendants as a part of its effort to convict Mr. Garcia.  For that reason, Mr. Garcia has filed a motion seeking an order compelling the government to identify any such co-conspirators and co-defendants.  That motion has not yet been ruled upon.  However, and out of an abundance of caution Mr. Garcia files the present motion to protect his rights pursuant to the Confrontation Clause

2

of the Sixth Amendment.

The Sixth Amendment to the United States Constitution provides in pertinent part that: "In all criminal prosecutions, the accused shall enjoy the right … to be confronted by the witnesses against him." *Constitution of the United States*, Amendment 6. The Constitution's Confrontation Clause is directed primarily to 'testimonial' statements. *See, Crawford v. Washington*, 541 U.S. 36, 53, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In *Crawford*, the United States Supreme Court unambiguously held that in those instances where testimonial evidence is the issue, the Confrontation Clause requires that the declarant be unavailable, and further in such case that the defendant have had a prior opportunity for cross-examination of the declarant(s). Failing that, the testimonial statements are inadmissible. *Crawford*, 541 U.S. at 53-54.

While the *Crawford* Court did not delineate all 'testimonial statements,' it did clearly hold that "statements taken by police officers in the course of interrogations and which were not made in the course and furtherance of the conspiracy are testimonial under even a narrow standard." *Id*. at 52. Furthermore, the Court found that "[a] statement knowingly given in response to structured police questioning, **qualifies under any conceivable definition** [of interrogation]" *Id*. at 53 (emphasis added). Since *Crawford* was decided, the Court has gone on to hold that statements are testimonial "when the circumstances objectively indicate … that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

The Tenth United States Circuit Court of Appeals has concluded that a *Crawford* analysis requires that the intentions of the declarant must be taken into account. *United States v. Summers*, 414 F.3d 1287, 1320 (10th Cir. 2005). It is the reasonable expectation of the declarant that the statement would later be used at trial "which distinguishes the flippant remark, proffered to a casual

3

acquaintance … from the true testimonial statement." *Id.* Such an objective test focused on the expectations of the declarant under the circumstances of the case, "more adequately safeguards the accused's confrontation right and more closely reflects the concerns underpinning the Sixth Amendment." *Id.* Thus, "**a statement is testimonial** if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime." *Id.* (emphasis added).

*United States v. Baines*, 486 F.Supp.2d 1288 (D.N.M. 2007) involved statements made by co-conspirators to border patrol agents. The defendant sought to exclude the statements made by co-conspirators under Crawford, while the government sought to admit the statements under the co-conspirator hearsay exception. The district court found that the statements made to the agents while the declarants were detained at a check point were in response to structured police questioning and that in those circumstances and under *Crawford* the circumstances amounted to an interrogation. *Baines*, 486 F.Supp.2d at 1297-98. Noting the Tenth Circuit's rulings in *United States v. Townley*, 427 F.3d 1267 (10th Cir. 2007) and *United States v. Ramirez*, 479 F.3d 1229, 1249 (10th Cir. 2007) the district court concluded that Crawford did not overrule the Supreme Court's holding in *United States v. Bourjaily*, 483 U.S. 171, 181-84, 107 S.Ct. 275, 97 L.Ed.2d 144 (1987) to the effect that statements made unwittingly by a co-conspirator to an FBI informant did not make prior cross-examination an indispensable requirement to admissibility. However, the court went on to conclude that *Townley*, *Ramirez* and *Bourjaily* were distinguishable because none of those cases concerned co-conspirators' knowingly making statements to police officers during a custodial interrogation. *Id.* at 1299-1300. Thus the court concluded that while the majority of co-conspirator statements are not testimonial in nature, "when such a statement is testimonial it is subject to the requirements of the Confrontation Clause." *Id.* at 1300.

In *United States v. Miller*, 250 F.R.D.588 (D.Kan. 2008) the district court was confronted with the issue that Mr. Garcia raises here. In that case, the district court conducted a *James* hearing to determine the admissibility of co-conspirator statements. *Miller*, 250 F.R.D. 595-97. The defendant Earnshaw "moved to exclude co-conspirator testimonial statements arguing that even if admissible under the co-conspirator exception to the hearsay rule, admitting such statements in evidence violates the Sixth Amendment" *Id.* at 596. After examining *Crawford* and *Summers*, the district court noted that a statement is testimonial "'if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime.'" *Id. citing United States v. Townley*, 427 Fed 1267, 1272 (10th Cir. 2007) (quoting *United States v. Summers*, 414 F.3d 1287, 1302 (10th Cir. 2005)). The court pointed out that under Fed.R.Evid. 801(d)(2)(E) a statement is not hearsay if it is offered against a party and is also a statement by a co-conspirator made during and in furtherance of the conspiracy. Those statements, the court noted, are made to promote the objectives of the conspiracy. *Id.* The court concluded that such statements are admissible as non hearsay. *Id.* citing *Townley*, 472 F.3d at 1273, quoting *United States v. Smith*, 833 F.2d 380, 394 (10th Cir. 1987). Notwithstanding those findings, the court went on to state that "[w]here however, the statements qualify both as non-hearsay under Rule 801(d)(2)(E) and are testimonial an **analysis under *Crawford* and its progeny is required**." *Id.* (emphasis added) citing *Baines*, 486 F.Supp.2d at 1300 ("while the majority of co-conspirator statements are not testimonial in nature, where such a statement is testimonial it is subject to the requirements of the Confrontation Clause.").

Accordingly, and pursuant to the sound reasoning in *Miller* and *Baines*, Mr. Garcia is entitled to an order excluding any and all co-conspirator statements which are testimonial under *Crawford* and its progeny unless the co-conspirator declarants are unavailable and Mr. Garcia has had prior

5

opportunity to cross-examine the declarants.  In addition, the government should be prohibited from making any reference to such testimonial statements unless the Court has first ruled as to their admissibility under *Crawford* as applied by *Miller* and *Baines*.

WHEREFORE, Mr. Garcia prays that the Court grant his motion, and for such other and further relief as is just and equitable in these premises.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail: jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of  October 2012, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

KMAZ Doc. 20U8798

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT PEDRO GARCIA'S MOTION FOR NOTICE OF THE GOVERNMENT'S INTENT TO OFFER RULE 404(b) EVIDENCE AT TRIAL

### - DEFENDANT GARCIA'S SIXTH MOTION -

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby moves the Court for an order requiring the government to give notice of its intent to offer Rule 404(b) evidence at trial.  In support of this motion, Mr. Garcia has submitted a memorandum of authorities.

WHEREFORE, Mr. Garcia prays for an order of this Court granting the motion.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of October, 2012, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

KA Doc. 20U9511

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

UNITED STATES OF AMERICA,          )
                                   )
                    Plaintiff,     )      Criminal Action
                                   )
          vs.                      )      No. 12-10089-02-MLB
                                   )
PEDRO GARCIA,                      )
                                   )
                    Defendant.     )
_____)

**MEMORANDUM IN SUPPORT OF DEFENDANT PEDRO GARCIA'S
MOTION FOR NOTICE OF THE GOVERNMENT'S INTENT
TO OFFER RULE 404(b) EVIDENCE AT TRIAL**

**- IN SUPPORT OF DEFENDANT GARCIA'S SIXTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John

Val Wachtel of Klenda Austerman LLC, and hereby submits this memorandum in support of his

motion for notice of the government's intent to offer rule 404(b) evidence at trial.

**Factual Background**

1.  Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains

thirty-eight alleged separate violations of federal criminal law.  (Doc. 1.)

2.  COUNT 1, inter alia, charges the defendant, along with Jason Najera, Gonzalo Ramirez,

Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together

with persons known and unknown, being persons associated with the Nortenos street gang, an

enterprise which engaged in, and the activities of which affected, interstate and foreign commerce,

knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c) ...  [a]ll in violation of  18

U.S.C. § 1962(d)."  *Id*.

2.  COUNT 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright with the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5).  *Id.*

3.  COUNT 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering.  It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1).  *Id.*

4.  COUNT 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1).  *Id.*

5.  COUNT 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3).  *Id.*

6.  COUNT 6, charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A).  *Id.*

7.  COUNT 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3).  COUNT 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6).  COUNT 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A).  *Id.*

### Argument and Authorities

Rule 12(b) of the Federal Rules of Criminal Procedure provides in pertinent part that:

> (A) At the Government's Discretion.  At the arraignment or as soon afterward as practicable, the government may notify the defendant of its intent to use specified evidence at trial in order to afford the defendant an opportunity to object before trial under Rule 12(b)(3)(C).
> (B)  At the Defendant's Request.  At the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

F.R.Crim.P. 12(b)(4)(A) and (B).  Rule 404 of the Federal Rules of Evidence provides that evidence

2

of a person's character or a trait thereof "is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." F.R.Evid. 404(a)(1). A decided exception to this general rule is found within Rule 404(b) which provides. "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *Id*. at (b)(1). The Rule goes on to provide at subsection (b)(2) that: "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:" *Id*. (b)(2). Subsection (b)(2) directs what the government must do upon the defendant's request, to-wit: (A) Provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial-or during trial if the court, for good cause, excuses lack of pretrial notice." *Id.* at (b)(2)(A) and (B).

In the event that the government seeks to admit evidence of other crimes and wrongful acts, it bears the burden of demonstrating how, if at all, such other crimes and/or wrongful acts might be relevant to any issue in the case. In other words, how, if at all, do the other crimes and/or acts allow for the inference by the trier of fact with respect to the case at issue. If there is any connection between those crimes and acts, the connection must be logical and clear. *United States v. Hogue*, 827 F.2d 660 (10th Cir. 1987). The evidence to be offered against the defendant must be of his or her acts rather than those of another and/or those of his co-defendants. *United States v. Cardall*, 885 F.2d 656 (10th Cir. 1989) (evidence of unlawful acts in connection with a business which was a predecessor to the business being prosecuted not admissible with respect to a defendant where the evidence concerned bad acts of the defendant's associates and not the defendant).

Such 404(b) evidence may have probative value; however, that value may be easily

3

outweighed by its prejudicial nature.  That 'nature' cannot be known to the defendant if the notice of the same is not clear and logical.  Mr. Garcia does not seek here to enter into legal debate as to whether the government's 404(b) evidence - if any -  might be admissible.  Rather, he simply seeks to determine whether the government plans to use such evidence and what that evidence might be.  In addition, he seeks a notice which articulates the relevant purpose of such evidence as well as what inferences the government would have the jury make from the evidence it seeks to introduce.  Mr. Garcia is entitled to this.  *See United States v. Birch*, 39 F.3d 1089 (10th Cir. 1994).  *See also United States v. Long*, 814 F.Supp. 72, 74 (D.Kan. 1993) ( wherein the government's notice was deemed insufficient where it identified a witness but failed to describe the nature of the conduct which the government sought to introduce).

By compelling the government to respond now, Mr. Garcia seeks to lessen the complexity of the case.  He seeks to avoid the 'trial within a trial' discussed in *Welch v. United States*, 371 F.2d 287 (10th Cir. 1966).  Mr. Garcia points out that in order for the notice to be sufficient, enough time must remain between the giving of the notice and the trial so that he may effectively oppose the evidence.

### Conclusion

Although the present Indictment was a relatively short time ago, surely by now the government is aware of the 404(b) evidence it contemplates offering against Mr. Garcia, and nothing about this case should prevent the government from providing the notice within the next thirty (30) days.  Accordingly, Mr. Garcia seeks the following notice:

1.  A detailed summary of the evidence sought to be introduced regarding any crime, wrong or act not charged in the Superseding Indictment;

2.  Regarding each crime, wrong or act, whether the evidence is offered to prove an

allegation in the Indictment by indicating the specific allegation it is offered to prove; and

3.  Regarding each crime, wrong or act, whether the evidence is offered under Rule 404(b), and if the evidence is offered as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, a specific allegation that articulates precisely the evidentiary hypothesis by which one of these elements may be inferred from the evidence.

Anything less would violate all concepts of fundamental fairness.

WHEREFORE, Mr. Garcia prays that his motion in limine will be granted by the Court.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of  October 2012, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

Doc. 20U9523

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF
GUILTY PLEAS BY NON-TESTIFYING CO-DEFENDANTS**

**- DEFENDANT GARCIA'S SEVENTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John

Val Wachtel of Klenda Austerman LLC, and hereby moves for an order in limine, excluding

evidence of guilty pleas by non-testifying co-defendants.  In support of this motion, Mr. Garcia has

submitted a memorandum of authorities.

WHEREFORE, defendant Pedro Garcia prays for an order of this Court granting the motion.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of October 2012, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

KA Doc. 20U9461

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT PEDRO GARCIA'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF GUILTY PLEAS BY NON-TESTIFYING CO-DEFENDANTS**

**- IN SUPPORT OF DEFENDANT GARCIA'S SEVENTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby submits this memorandum in support of his motion in limine to exclude evidence of guilty pleas by non-testifying co-defendants.

**Factual Background**

1. Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains thirty-eight alleged separate violations of federal criminal law.  (Doc. 1.)

2. COUNT 1, inter alia, charges the defendant, along with Jason Najera, Gonzalo Ramirez, Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together with persons known and unknown, being persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c) ...  [a]ll in violation of  18 U.S.C. § 1962(d)." *Id*.

2. COUNT 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright with the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5). *Id.*

3. COUNT 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering. It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1). *Id.*

4. COUNT 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1). *Id.*

5. COUNT 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3). *Id.*

6. COUNT 6, charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

7. COUNT 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3). COUNT 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6). COUNT 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

### Argument and Authorities and Specific Discovery Sought

A co-defendant's guilty plea may not be used as substantive evidence of a defendant's guilt. *United States v. Whitney,* 229 F.3d 1296, 1304 (10th Cir. 2000). Any reference to, or evidence of, the plea of a co-defendant is irrelevant unless and until such co-defendant actually testifies at trial. However, either party may elicit testimony from a co-defendant regarding a guilty plea for purposes of impeachment or discrediting the witness. *Id.* Further, evidence of a co-defendant's guilty plea may be used to establish "the witness's claim to firsthand knowledge based on his or her admitted participation." *United States v. Davis,* 766 F.2d 1452, 1456 (10th Cir. 1985). These rules apply to

2

guilty pleas of co-conspirators as well.  *See United States v. Austin,* 786 F.2d 986, 991 (10th Cir. 1986).

As of this writing, counsel for Mr. Garcia is unaware of any guilty pleas which have been entered by any of the co-defendants.  What is not apparent to Mr. Garcia's counsel is whether any of the co-defendants have entered into plea agreements with the government which will result in guilty pleas, and whether any of such co-defendants will testify against Mr. Garcia at his trial.   An order in limine should issue excluding any reference to a co-defendant's guilty plea during voir dire, opening statement or at any other stage of the trial until and unless that co-defendant testifies.

WHEREFORE, Mr. Garcia prays that his motion in limine will be granted by the Court.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of October 2012, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

Doc. 20U9479

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION FOR EXTENSION OF
MOTION FILING DATE**

**- DEFENDANT GARCIA'S EIGHTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John

Val Wachtel of Klenda Austerman LLC, and hereby submits this motion for extension of time within

which to file motions.  In support of the motion Mr. Garcia states as follows.

**Factual Background**

1.  Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains

thirty-eight alleged separate violations of federal criminal law.  (Doc. 1.)

2.  COUNT 1, inter alia, charges the defendant, along with Jason Najera, Gonzalo Ramirez,

Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together

with persons known and unknown, being persons associated with the Nortenos street gang, an

enterprise which engaged in, and the activities of which affected, interstate and foreign commerce,

knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c) ...  [a]ll in violation of  18

U.S.C. § 1962(d)." *Id*.

2.  COUNT 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright

with the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5).  *Id*.

3.  COUNT 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering.  It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1).  *Id*.

4.  COUNT 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1).  *Id*.

5.  COUNT 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3).  *Id*.

6.  COUNT 6, charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A).  *Id*.

7.  COUNT 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3).  COUNT 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6).  COUNT 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A).  *Id*.

8.  On June 26, 2012, this Court filed its General Order of Discovery and Scheduling, hereinafter "the Order."  (Doc. 221.)  The Order set a pretrial hearing for August 20, 2012.  At that hearing the Court set a motion filing cut-off date of October 26, 2012.

9.  Commencing on June 11, 2012, the government began to provide discovery to the defendants. Between that date and the date of this writing, the government has provided twenty-six (26) computer disks containing discovery.  Twenty-three (23) of those disks were provided on or about September 25, 2012.

10.  The disks contain voluminous amounts of materials, including video and audio recordings.  Counsel for Mr. Garcia has not yet fully completed a review of all of the disks, and has

struggled with opening and accessing some of the audio and visual recordings. In addition, counsel for Mr. Garcia has not yet had time to review with Mr. Garcia all the discovery supplied. Mr. Garcia's counsel understands that the government has additional discovery which it intends to provide.

11. As of this date, counsel for Mr. Garcia has filed seven (7) motions. When counsel is more familiar with the discovery, and when counsel has had reasonable time within which to discuss all the discovery with Mr. Garcia and allow him to examine the same, counsel reasonably believes that additional motions will be filed. For these reasons, Mr. Garcia seeks a reasonable extension of the motion filing date(s).

12. Counsel for Mr. Garcia has discussed this matter with Assistant United States Attorney Aaron Smith. Mr. Smith has advised that the government does not object to this motion.

WHEREFORE, Mr. Garcia prays that this motion be granted and that the Court set a new motion filing date.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of October 2012, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

3

s/John Val Wachtel
John Val Wachtel


Doc. 20V2945

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-CR-10089-16-MLB |
| | ) | |
| EUSEBIO SIERRA-MEDRANO, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MOTION OF DEFENDANT EUSEBIO SIERRA-MEDRANO TO PROHIBIT THE
GOVERNMENT, LAW ENFORCEMENT OFFICERS, OR "COOPERATING
INDIVIDUALS" FROM APPROACHING HIM AND ATTEMPTING TO DISCUSS OR
DISCUSSING POSSIBLE PAST OR FUTURE ILLEGAL ACTIVITY WITH THE
DEFENDANT**

**COMES NOW** the defendant by and through his court appointed attorney, Mark L.

Bennett, Jr. and pursuant to the rights and protections guaranteed to him by the United States

Constitution, hereby moves the Court for an order prohibiting the Government, Law enforcement

officers, government agents or "cooperating individuals" from approaching and discussing or

attempting to discuss with the defendant possible or future illegal activity in order to bolster or

manufacture evidence which could be used by the Government in its prosecution of the

defendant herein.

A memorandum in support has been filed in conjunction with this motion.

s/  Mark L. Bennett, Jr.
Mark L. Bennett, Jr., #5781
BENNETT & HENDRIX, L.L.P
5605 SW Barrington Court S., Suite 201
Topeka, KS  66614-2489
(785) 271-0800
(785) 271-0803 (fax)
mark@mlbjrlaw.com
*Attorney for Defendant Eusebio Sierra-Medrano*

1

2

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2012, the undersigned filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/ Mark L. Bennett, Jr.
Mark L. Bennett, Jr., #5781
BENNETT & HENDRIX, LLP
5605 SW Barrington Court South, Suite 201
Topeka, KS  66614
(785) 271-0800
(785) 271-0803 (fax)
mark@mlbjrlaw.com

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-CR-10089-16-MLB |
| | ) | |
| EUSEBIO SIERRA-MEDRANO, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT EUSEBIO SIERRA-MEDRANO'S MOTION TO PROHIBIT THE GOVERNMENT, LAW ENFORCEMENT OFFICERS, OR "COOPERATING INDIVIDUALS" FROM APPROACHING HIM AND ATTEMPTING TO DISCUSS OR DISCUSSING POSSIBLE PAST OR FUTURE ILLEGAL ACTIVITY WITH THE DEFENDANT

**COMES NOW** the defendant by and through his court appointed attorney, Mark L. Bennett, Jr. and herby submits the following memorandum of authorities in support of his motion for an order prohibiting the Government from seeking to obtain inculpatory evidence or information from the defendant by use of law enforcement officers, informants or "cooperating" individuals.

The defendant has been charged in an Indictment, along with 23 other co-defendants. Said Indictment charges the defendant with having conspired with the other codefendants to engage in a racketeering conspiracy and four substantive counts.  In total, the defendant is charged with five felony offenses.

As a result of the foregoing and his arrest in this matter, Mr. Sierra-Medrano wishes, at this time, to assert his Fifth Amendment Rights stating that he is unwilling to speak with the Government and/or any of its agents, representatives, employees, informants, cooperating witnesses, sources of information or known but unidentified co-conspirators regardless of

1

whether or not said individuals are identified or unidentified or are working openly or in an undercover capacity.

The charges against the defendant and his codefendants involve a large number of defendants, extends over a four year time period of alleged criminal activity as is illustrated by the Indictment which indicates that the conspiracy alleged commenced on or about and between 2008 and continued through the date of the Indictment which was filed April 16, 2012.  It is counsel's belief and understanding, from the Indictment, the reference to known but unidentified co-conspirators and counsel's experience in defending charges brought in similar prosecutions that the Government has relied upon informants or cooperating witnesses to construct its case against Mr. Sierra-Medrano in this matter and may rely upon such persons during the pendency of this matter to attempt to obtain incriminating information from Mr. Sierra-Medrano.

Counsel for the defendant has advised him that he has a Fifth Amendment privilege that protects him from self incrimination and that he should at all times assert that privilege should anyone, including Government agents, law enforcement officers, Government cooperators, codefendants or co-conspirators attempt to discuss the circumstances of the charges or the basis therefore with him.  In that regard, the defendant has indicated that he wishes to exercise said Fifth Amendment Privilege and hereby through his attorney invokes his Constitutional Right to remain silent absent the presence of his attorney at any time that any person should approach him that is acting either openly or in an undercover capacity on behalf of the Government.  As has been indicated in *Edwards v. Arizona* 415 U.S. 477, 484-485 (1981), when an accused has invoked his right to counsel, the prosecution may not approach him and initiate or attempt to initiate questioning.  The defendant has invoked his right to counsel and intends to continue to invoke that right to counsel throughout all proceedings in this case and therefore requests that

2

this Court enter an order prohibiting the government, its agents, representatives or law enforcement officers from approaching the defendant and attempting to discuss his activities or the circumstances which form the basis for the present charges against him.

Counsel for defendant also wishes to place both the court and the Government on notice that any person, who subsequent to prior agreement with the Government, contacts Mr. Sierra-Sierra-Medrano in an attempt to speak about the facts of this case, does so in contravention of Mr. Sierra-Medrano's right to counsel and is acting in violation of the opinion in *Edwards v. Arizona*. As has been held in *United States v. Henry*, 477 U.S. 264, 271-275, when Government informants are directed to contact an accused who has invoked his or her Fifth Amendment Rights, even if that contact is to just listen to the defendant and report back to what is said, the testimony of such informants inadmissible.

**WHEREFORE**, Mr. Sierra-Medrano respectfully request that this Court enter an order directing the Government to insure that no such contact occurs or is attempted during the pendency of these proceedings.

Respectfully Submitted,

s/  Mark L. Bennett, Jr.
Mark L. Bennett, Jr., #5781
BENNETT & HENDRIX, LLP
5605 SW Barrington Court S., Suite 201
Topeka, KS  66614-2489
(785) 271-0800
(785) 271-0803 (fax)
mark@mlbjrlaw.com
*Attorney for Defendant Eusebio Sierra-Medrano*

3

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2012, the undersigned filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/ Mark L. Bennett, Jr.
Mark L. Bennett, Jr., #5781
BENNETT & HENDRIX, LLP
5605 SW Barrington Court South, Suite 201
Topeka, KS  66614
(785) 271-0800
(785) 271-0803 (fax)
mark@mlbjrlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-CR-10089-16-MLB |
| | ) | |
| EUSEBIO SIERRA-MEDRANO, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MOTION OF DEFENDANT EUSEBIO SIERRA-MEDRANO
FOR ADEQUATE COURT FACILITIES**

**COMES NOW** the defendant Eusebio Sierra-Medrano and moves the Court for adequate court facilities at trial.  Specifically, the defendant requests that he and his counsel be provided with a separate table from any of his co-defendants which proceed to trial at the same time his case goes to trial, inclusive of the jury selection phase of the trial through completion of said trial.

In support of defendant's motion, a memorandum in support is also filed herein.

Respectfully Submitted,


s/  Mark L. Bennett, Jr.
Mark L. Bennett, Jr., #5781
BENNETT & HENDRIX, LLP
5605 SW Barrington Court S., Suite 201
Topeka, KS  66614-2489
(785) 271-0800
(785) 271-0803 (fax)
mark@mlbjrlaw.com
*Attorney for Defendant Eusebio Sierra-Medrano*

1

2

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2012, the undersigned filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/ Mark L. Bennett, Jr.
Mark L. Bennett, Jr., #5781
BENNETT & HENDRIX, LLP
5605 SW Barrington Court South, Suite 201
Topeka, KS  66614
(785) 271-0800
(785) 271-0803 (fax)
mark@mlbjrlaw.com

2

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-CR-10089-16-MLB |
| | ) | |
| EUSEBIO SIERRA-MEDRANO, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT EUSEBIO SIERRA-MEDRANO FOR ADEQUATE COURT FACILITIES**

Defendant respectfully requests that this Court order that the defendant and his attorney be provided with a separate counsel table from that of the other defendants herein. In support of his motion, defendant Sierra-Medrano would respectfully submit that the sharing of a defense table among all of the defendants that proceed to trial herein is both impractical in view of the number of defendants and their counsel herein as well as prejudicial.

First, the defendant will be prejudiced by being forced to sit in close proximity to his co-defendants and their counsel throughout the trial. Being required to sit in close proximity with the other defendants at the same table when all are charged with having conspired together to commit the substantive crimes alleged in the indictment greatly increases the probability that the alleged bad acts of the co-defendants herein will be attributed to the defendant Sierra-Medrano by the jury. The jury, if not consciously, is likely to subconsciously consider all of the defendants as a group and in the same light, if they are allowed to observe all of the defendants sitting together at one table during the trial of this matter, which is likely to last several weeks at a minimum. Such a situation is similar to those cases where the court discusses a defendant who

1

is forced to acquit himself of an acquaintance's actions simply because he or she knew and/or associated with the same people. To that end, the courts have stated that one can only guess whether the defendant would also be forced to share their guilt. *United States v. Heath*, 580 F.2d 1011, 1033 (10th Cir. 1978), cert. denied, 439 U.S. 1075 (1979) and the cases cited therein.

Secondly, the attorney-client privilege is applicable to all stages of actions, cases and proceedings. *See* Rule 1101(c) F.R.E. This privilege is rendered meaningless if all of the co-defendants and their counsel are expected to share a counsel table one with another and to discuss attorney client privileged information in a setting where it can and will be overheard by other defendants and their attorneys. The likelihood of inadvertent disclosure exists if communications between Mr. Sierra-Medrano and his counsel are overheard. Moreover, defendant's Sixth Amendment right to effective assistance of counsel most likely will be impaired if he is forced to share the same counsel table with some or all of his co-defendants. Courts have recognized that a defendant's right to a fair trial is severely jeopardized by intrusion into conversations between an attorney and his client which were intended to be confidential. *United States v. Blasco*, 702 F.2d 1315, 1329 (11th Cir. 1983), cert. denied, 464 U.S. 914 (1983) and *United States v. Melvin*, 650 F.2d 641, 645 (5th Cir. 1981). Defendant would respectfully submit that being forced to share a counsel table with any of the co-defendants and their counsel would clearly expose him to unintended disclosure of otherwise attorney-client privileged information and that the inability to freely engage in conversations with his counsel would affectively prohibit both he and his attorney from affectively discussing and presenting his defense herein. Such a restriction on his ability to present his defense would clearly constitute a violation of his Sixth Amendment Right to do so. Finally, there will be numerous exhibits, the vast majority of which in no way make reference to nor implicate the defendant Sierra-Medrano

2

in many of the charges that have been asserted against his co-defendants.  As these exhibits and recordings are offered, each will require extensive review and discussions between defendant Sierra-Medrano and his counsel relative to accuracy, interpretation of alleged reference to matters and words and phrases and the defendant's knowledge of and/or participation in said activities set out therein as well as discussions concerning the rebuttal of said exhibits.  To require the defendant and his counsel to discuss these subjects in the presence of the other defendants and their counsel at a common defense table would further compromise the defendant's Sixth Amendment Right to prepare and present his defense as well as his attorney-client privilege.

WHEREFORE, the defendant Eusebio Sierra-Medrano respectfully requests that this court provide him with a counsel table separate and apart from that of each of his codefendants.

Respectfully Submitted,

s/  Mark L. Bennett, Jr.
Mark L. Bennett, Jr., #5781
BENNETT & HENDRIX, LLP
5605 SW Barrington Court S., Suite 201
Topeka, KS  66614-2489
(785) 271-0800
(785) 271-0803 (fax)
mark@mlbjrlaw.com
*Attorney for Defendant Eusebio Sierra-Medrano*

3

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2012, the undersigned filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/  Mark L. Bennett, Jr.
Mark L. Bennett, Jr., #5781
BENNETT & HENDRIX, LLP
5605 SW Barrington Court South, Suite 201
Topeka, KS  66614
(785) 271-0800
(785) 271-0803 (fax)
mark@mlbjrlaw.com

4

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-CR-10089-16-MLB |
| | ) | |
| EUSEBIO SIERRA-MEDRANO, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### MOTION BY DEFENDANT EUSEBIO SIERRA-MEDRANO FOR AN ORDER REQUIRING THAT THE GOVERNMENT PRODUCE AND ALLOW INSPECTION OF THE GRAND JURY TRANSCRIPTS AND MINUTES WHICH RESULTED IN HIS INDICTMENT

**COMES NOW** the defendant pursuant to the provisions of Rule 6(e) of the Federal Rules of Criminal Procedure and the Sixth Amendment to the United States Constitution, and moves the Court for an order allowing him to examine the testimony of all witnesses who testified before the Grand Jury which returned the indictment herein.

A memorandum in support of defendant's motion is also filed herein and incorporated by reference.

Respectfully Submitted,

s/  Mark L. Bennett, Jr.
Mark L. Bennett, Jr., #5781
BENNETT & HENDRIX, LLP
5605 SW Barrington Court S., Suite 201
Topeka, KS  66614-2489
(785) 271-0800
(785) 271-0803 (fax)
mark@mlbjrlaw.com
*Attorney for Defendant Eusebio Sierra-Medrano*

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2012, the undersigned filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/ Mark L. Bennett, Jr.
Mark L. Bennett, Jr., #5781
BENNETT & HENDRIX, LLP
5605 SW Barrington Court South, Suite 201
Topeka, KS 66614
(785) 271-0800
(785) 271-0803 (fax)
mark@mlbjrlaw.com

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 12-CR-10089-16-MLB |
| | ) |
| EUSEBIO SIERRA-MEDRANO, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

### MEMORANDUM IN SUPPORT OF DEFENDANT EUSEBIO SIERRA-MEDRANO'S MOTION FOR PRODUCTION AND INSPECTION OF GRAND JURY MINUTES

The defendant, Eusebio Sierra-Medrano, pursuant to the provisions of Rule 6(e) of the Federal Rules of Criminal Procedure and the Sixth Amendment to the United States Constitution has requested that he be allowed to examine the testimony of all witnesses who testified before the Grand Jury which returned the indictment herein and which he anticipates may be called as Government witnesses in the trial of this matter. Rule 6(e)(C) of the Federal Rules of Criminal Procedure provides:

> "Disclosure otherwise prohibited by this rule of matters occurring before the Grand Jury may also be made - (i) when so directed by a court preliminary to or in connection with the judicial proceeding; (ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the Grand Jury; . . ."

The defendant Eusebio Sierra-Medrano is charged in the indictment with one count of conspiracy with both **known** and known but unidentified individuals to violate 18 USC Sec. 1962(d) from 2008 until the dated of the return of the Indictment herein. However, all of the defendant's known co-conspirators are not identified.

1

Rule 16(a)(1) of the Federal Rules of Criminal Procedure entitles a defendant to a transcript of his or her own Grand Jury testimony.  Defendant did not testify before the Grand Jury, however, it is respectfully suggested that the testimony of his "**known**" but unidentified co-conspirators, government informants, cooperating individuals and/or cooperating witnesses, should be made available to him sufficiently in advance of the trial herein for him to (1) identify the known but unidentified co-conspirators referred to in the indictment to prepare a defense to their allegations and to prepare to confront; (2) to enable him to prepare a defense to their allegations; (3) to prepare a defense to their allegation and (4) to cross-examine their testimony in a knowing, intelligent and meaningful manner.  As noted in the Sixth Amendment to the United States Constitution provides in part that:

> "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him; to have compulsory process for obtaining witness in his favor, and to have the assistance of counsel for his defense."

How can the defendant confront, cross examine and dispute the government's contention that he and the alleged **known** but unidentified co-conspirators were involved in the alleged conspiracy without knowing who they are?  The answer is obvious – he can't and the inability to do so is highly prejudicial.

Additionally, based upon a review of the discovery provided to defendant's counsel to date, it appears that there may be confidential informants, cooperating individuals or cooperating witnesses who have provided information to the Grand Jury that returned the indictment herein who either testified before the Grand Jury or whose testimony was summarized by law enforcement agents who testified before the Grand Jury.

Under Rule 26.2 of the Federal Rules of Criminal Procedure, a defendant is entitled to the Grand Jury transcripts of those prosecution witnesses who testify at trial.  While the defendant

2

recognizes that the general practice has been to withhold the production of Grand Jury minutes until such time as a government witness has testified, the defendant would respectfully suggest that in the instant case, such a practice is impracticable and would be counter productive to his counsel's preparation to cross-examine and confront the witnesses against him. Obviously, if the practice is followed in the instant case, it will require numerous recesses of substantial duration at the conclusion of the testimony of each government witness in order to allow counsel for the defendant to review the testimony in preparation for cross-examination. This, in turn, will make what is already anticipated to be a lengthy trial even longer and will certainly frustrate judicial economy and further inconvenience the jury. Such a practice will also hinder or prohibit the defendant from fully and effectively preparing to defend against the charges lodged against him, in the presentation of his defense and will prejudice his ability to defend against the charges and to guard against exposure to potential future double jeopardy exposure. This in turn will deny him his Sixth Amendment right to confront and cross-examine the witnesses against him, particularly those witnesses who fall within the category of "co-conspirators", "**known** but unidentified co-conspirators", "confidential informants", "cooperating individuals" and/or "cooperating witnesses". Furthermore, it will deny to the defendant his right to ascertain whether or not the Grand Jury members who indicted him were provided with information by the government regarding the identity of any alleged "**known**" but unidentified co-conspirators and the compensation or other considerations, if any, extended to each by the government. Such information clearly reflects on said witnesses' credibility and should be considered as exculpatory.

Defendant also requests disclosure of the Grand Jury testimony so as to enable him to determine what, if any, exculpatory evidence is contained in said minutes. As has been noted in

3

the case of *In Re: Grand Jury Subpoena of Flanagan*, 691 F.2d 116, 123 (2nd Cir. 1982) the disclosure of Grand Jury minutes containing exculpatory material is mandated by *Brady vs. Maryland*, 373 U.S. 83 (1963).

The investigative reports herein appear to clearly establish that one or more cooperating individuals or confidential informants actively participated in the Government's investigation, and/or provided information regarding the defendant's activities. It is counsel for defendant's belief and understanding that some, if not all, of said **known** but unidentified co-conspirators, confidential informants and/or cooperating individuals and/or cooperating witnesses may have either entered into plea agreements with the government in which they have received or will receive substantial considerations in return for their cooperation and testimony against the defendant or have received other benefits. Defendant would respectfully submit that he should be allowed to inspect the Grand Jury minutes and records for the purpose of determining whether or not the Government informed the Grand Jury with regard to the use of these **known** but unidentified co-conspirators confidential informants and/or cooperating individuals and/or cooperating witnesses and the fact that some or all of these individuals were given or expect to receive substantial considerations with regard to pending criminal charges and/or sentences in return for their cooperation and/or testimony before the Grand Jury and/or during defendant's jury trial. Defendant would respectfully submit that the prosecution had a duty to so inform the Grand Jury. Information concerning such a disclosure or nondisclosure to the Grand Jury must be provided to the defendant. *United States v. Gallo*, 394 F.Supp. 310 (DC 1975); *United States v. Provenzano*, 440 F.Supp. 561 (S.D.N.Y. 1977); and *United States v. Samago*, 607 F.2d 877 (9th Cir. 1979).

In the instant case it is impossible for the defendant to determine from the indictment

itself and/or the discovery provided to date whether or not evidence was presented to the Grand Jury and/or the Grand Jury determined that there were, in fact, other **known** co-conspirators in addition to those identified in the indictment.   The Sixth Amendment to the United States Constitution guarantees to the defendant the right to prepare and present a defense.   Until the defendant can determine whether or not the Grand Jury, in returning the indictment, determined there was, in fact, other **known** but unidentified co-conspirators involved and if so, their identity, the defendant will be unable to prepare to defend against the allegations that he conspired with others **known** to the Grand Jury, but who have not been identified.   Additionally, without the identity of all of the known co-conspirators, how can the defendant guard against or prevent being placed in jeopardy twice?   Since this determination cannot be made from the information and documents previously provided by the government during the course of pretrial discovery, defendant would respectfully suggest that the only way to make such a determination is by examining the evidence presented to the Grand Jury regarding the facts and circumstances surrounding the occurrences which form the basis for the conspiracy and who the alleged **known** but unidentified co-conspirators were.

Respectfully Submitted,

s/  Mark L. Bennett, Jr.
Mark L. Bennett, Jr., #5781
BENNETT & HENDRIX, LLP
5605 SW Barrington Court S., Suite 201
Topeka, KS  66614-2489
(785) 271-0800
(785) 271-0803 (fax)
mark@mlbjrlaw.com
*Attorney for Defendant Eusebio Sierra-Medrano*

5

391

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2012, the undersigned filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/ Mark L. Bennett, Jr.
Mark L. Bennett, Jr., #5781
BENNETT & HENDRIX, LLP
5605 SW Barrington Court South, Suite 201
Topeka, KS  66614
(785) 271-0800
(785) 271-0803 (fax)
mark@mlbjrlaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-CR-10089-16-MLB |
| | ) | |
| EUSEBIO SIERRA-MEDRANO, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MOTION FOR PRODUCTION OF GANG PARTICIPATION INFORMATION

**COMES NOW** the defendant, Eusebio Sierra-Medrano, by and through his attorney, Mark L. Bennett, Jr. and moves the Court for an order directing the government to produce the following documents, reports or records:

1.      Any and all gang intelligence records or information maintained by or in the custody of the Dodge City Police Department, the Ford County Sheriff's Department or the Kansas Bureau of Investigation which indicate that the defendant Eusebio Sierra-Medrano was an active member of the Dodge City, Kansas street gang known as Nortenos, Diablos Viejos (DV) or Los Carnales Chingones (LCC) at any time between 2008 and April 16, 2012 the date of the indictment herein.

2.      Any and all gang intelligence records or information maintained by or in the custody of any federal law enforcement agency including but not limited to the FBI, DEA or ATF which indicate that the defendant Eusebio Sierra Medrano was an active member of the Dodge City, Kansas street gang known as the Nortenos, Diablos Viejos (DV) or Los Carnales

1

Chingones (LCC) at any time between 2008 and April 16, 2012, the date of the indictment herein.

3. Any and all gang intelligence records or in formation maintained by or in the custody of the Kansas Department of Corrections which indicate that the defendant Eusebio Sierra Medrano was an active member of the Dodge City, Kansas street gang known as the Nortenos, Diablos Viejos (DV) or Los Carnales Chingones (LCC) at any time between 2008 and April 16, 2012, the date of the indictment herein.

4. Any and all gang intelligence records or information maintained by or in the custody of the Dodge City Police Department, the Ford County Sheriff's Department or the Kansas Bureau of Investigation which indicates that the defendant Eusebio Sierra-Medrano **was not** a member of the Dodge City street gang known as the Nortenos, the Diablos Viejos (DV) or Los Carnales Chingones (LCC) and/or had withdrawn or was an inactive member of said organizations at any time between 2008 and April 16, 2012 the date of the indictment herein.

5. Any and all gang intelligence records or information maintained by or in the custody of any federal law enforcement agency including but not limited to the FBI, DEA or ATF, which indicate that the defendant Eusebio Sierra-Medrano **was not** a member of the Dodge City street gang known as the Nortenos, the Diablos Viejos (DV) or Los Carnales Chingones (LCC) and/or had withdrawn or was an inactive member of said organizations at any time between 2008 and April 16, 2012 the date of the indictment herein.

6. Any and all gang intelligence records or information maintained by or in the custody of the Kansas Department of Corrections which indicate that the defendant Eusebio Sierra-Medrano **was not** a member of the Dodge City street gang known as the Nortenos, the Diablos Viejos (DV) or Los Carnales Chingones (LCC) and/or had withdrawn or was an inactive

member of said organizations at any time between 2008 and April 16, 2012 the date of the

indictment herein.

Respectfully Submitted,


s/  Mark L. Bennett, Jr.
Mark L. Bennett, Jr., #5781
BENNETT & HENDRIX, LLP
5605 SW Barrington Court S., Suite 201
Topeka, KS  66614-2489
(785) 271-0800
(785) 271-0803 (fax)
mark@mlbjrlaw.com
*Attorney for Defendant Eusebio Sierra-Medrano*


## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2012, the undersigned filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.


s/  Mark L. Bennett, Jr.
Mark L. Bennett, Jr., #5781
BENNETT & HENDRIX, LLP
5605 SW Barrington Court South, Suite 201
Topeka, KS  66614
(785) 271-0800
(785) 271-0803 (fax)
mark@mlbjrlaw.com

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

UNITED STATES OF AMERICA,          )
                                   )
                Plaintiff,         )     Criminal Action
                                   )
        vs.                        )     No. 12-100089-02-MLB
                                   )
PEDRO GARCIA,                      )
                                   )
                Defendant.         )
_____    )

**DEFENDANT PEDRO GARCIA'S SECOND MOTION FOR JOINDER**

**- DEFENDANT GARCIA'S NINTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby moves this Court for an order allowing him to join in the following motions filed on behalf of the co-defendant Eusebio Sierra-Medrano, to-wit:

1.  Motion of Defendant Eusebio Sierra-Medrano for adequate Court Facilities and Memorandum in Support (Doc. 347 and Doc. 348);

2. Motion of Defendant Eusebio Sierra-Medrano for an Order Requiring that the Government Produce and Allow Inspection of the Grand Jury Transcripts and Minutes Which Resulted in his Indictment, and Memorandum in Support (Doc. 349 and Doc. 350); and

3.   [Defendant Eusebio Sierra-Medrano's] Motion for Production of Gang Participation Information (Doc. 355).

In support of this motion Mr. Garcia notes that the motions and supporting arguments presented by Mr. Sierra-Medrano are equally applicable to him, and he should therefore be allowed to join in said

motions and their supporting arguments and authorities.

WHEREFORE, Mr. Garcia prays for an order of Court granting this motion.

Respectfully submitted;

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of October, 2012, I electronically filed the foregoing by

using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

KMAZ Doc. 20V4060

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-01-23-MLB |
| | } | |
| JASON NAJERA | } | |
| a.k.a. Ene, | } | |
| a.k.a. Norte, | } | |
| PEDRO GARCIA, | } | |
| a.k.a. Peter Garcia, | } | |
| a.k.a. Pistol Pete, | } | |
| GONZALO RAMIREZ, | } | |
| a.k.a. Gonzo, | } | |
| RUSSELL WORTHEY, | } | |
| a.k.a. Blanco, | } | |
| ANTHONY WRIGHT, | } | |
| a.k.a. Huesos, | } | |
| JOSHUA FLORES, | } | |
| a.k.a. Big Knox, | } | |
| JESUS FLORES, | } | |
| a.k.a. Tito, | } | |
| ANGEL CERDA, | } | |
| a.k.a. Shrek, | } | |
| JUAN TORRES, | } | |
| a.k.a. Bugsy, | } | |
| ALFREDO BELTRAN-RUIZ, | } | |
| a.k.a. Deuce-Deuce, | } | |
| DONTE BARNES, | } | |
| a.k.a. Snipes, | } | |
| a.k.a. Snipe, | } | |
| a.k.a. Sniper, | } | |
| JESUS SANCHEZ, | } | |
| a.k.a. Drac, | } | |
| a.k.a. Dracula, | } | |
| ENRIQUE GOBIN, | } | |
| a.k.a. Ricky, | } | |
| a.k.a. Sonny Boy, | } | |
| ALFONSO BANDA-HERNANDEZ, | } | |
| a.k.a. Fonso, | } | |
| ANDREW GUSMAN, | } | |

a.k.a. Beaver,                        }
EUSEBIO SIERRA-MEDRANO,               }
  a.k.a. TC,                          }
JAYSON VARGAS                         }
  a.k.a. Wee Wee,                     }
ADAM FLORES,                          }
  a.k.a. Little Lazy,                 }
FABIAN NEAVE,                         }
  a.k.a. Puppet,                      }
JESUS TORRES,                         }
  a.k.a. Rabbit,                      }
JOSE NEAVE,                           }
  a.k.a. Caiyo,                              }
HERNAN QUEZADA,                       }
  a.k.a. Cheese,                      }
  a.k.a. Cartoon,                     }
HUMBERTO ORTIZ,                       }
  a.k.a. Beto,                        }
                  Defendants.         }

## ORDER

This matter comes before the Court on the Government's Motion For Entry of A

Protective Order Governing Disclosure.   The Court finds the Government's request for a

protective order is appropriate and therefore, pursuant to Rule 16(d)(1) of the Federal Rules of

Criminal Procedure, it is ORDERED:

1.  The United States may provide to the defendants as discovery documents containing

unredacted personal identifying information and may provide such in digital format.

2.  Defendants and defense counsel are ordered not to use the personal identifying

information provided by the Government for any purpose other than litigation in this matter, and

are precluded from disseminating the information to any other person.  Although they are free to

show their clients the information while consulting with their respective client in person, defense

counsel will not provide the defendant with physical copies of the information or allow the

defendant to take notes that include any other individual's personal identifying information.

Defense counsel is permitted to provide the documents to any retained expert witness, provided counsel informs the witness of the terms of the protective order, and the expert witness agrees to be bound by the terms.

3.  The parties shall comply with Fed. R. Crim. Pro. Rule 49.1 relative to any document they intend to use as an exhibit at trial, or to provide in public filings.

4.  Defense counsel will be allowed to retain this material until their client has exhausted post-conviction remedies. Within 90 days of the exhaustion of their client's post-conviction remedies, each defense counsel shall submit a letter to the United States Attorney's Office certifying they have destroyed or have otherwise properly disposed of this material or shall return the material to the United States.

IT IS SO ORDERED.

        s/ Monti Belot
        MONTI L. BELOT
        United States District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-100089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION FOR *JAMES* HEARING TO DETERMINE THE ADMISSIBILITY OF EXTRA JUDICIAL STATEMENTS OF ALLEGED CO-CONSPIRATORS**

**- DEFENDANT GARCIA'S TENTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby moves this Court for an order that a *James* hearing be held for the purpose of determining the admissibility of extra judicial statements of alleged co-conspirators.  In support of this motion Mr. Garcia has submitted a memorandum of authorities.

WHEREFORE, Mr. Garcia prays for an order of Court granting this motion.

Respectfully submitted,

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of October, 2012, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel

John Val Wachtel

KMAZ Doc. 20V5418

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT PEDRO GARCIA'S
MOTION FOR *JAMES* HEARING TO DETERMINE THE ADMISSIBILITY OF
EXTRA JUDICIAL STATEMENTS OF ALLEGED CO-CONSPIRATORS**

**- IN SUPPORT OF DEFENDANT GARCIA'S TENTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John

Val Wachtel of Klenda Austerman LLC, and hereby submits this memorandum in support of his

motion for a *James* hearing to determine the admissibility of extra judicial statements of alleged co-

conspirators.

**Factual Background**

1.  Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains

thirty-eight alleged separate violations of federal criminal law.  (Doc. 1.)

2.  COUNT 1, inter alia, charges the defendant, along with Jason Najera, Gonzalo Ramirez,

Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together

with persons known and unknown, being persons associated with the Nortenos street gang, an

enterprise which engaged in, and the activities of which affected, interstate and foreign commerce,

knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c) ...  [a]ll in violation of  18

U.S.C. § 1962(d)." *Id.*

2.  COUNT 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright with the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5). *Id.*

3.  COUNT 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering. It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1). *Id.*

4.  COUNT 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1). *Id.*

5.  COUNT 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3). *Id.*

6.  COUNT 6, charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

7.  COUNT 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3). COUNT 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6). COUNT 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

8.  On or about August 15, 2012, the government provided Mr. Garcia with discovery which contained "gang sheets and photographs." This discovery contains 702 pages of documents, not all of which were Mr. Garcia's 'gang sheets.' These gang sheets contain what is denominated as "Gang Verification Criteria." The Gang Verification Criteria (hereinafter "Gang Sheet(s)"), contains three general categories, which are titled "Self Admission," "Association" and "Other Criteria." Some of Mr. Garcia's Gang Sheets indicate that he was identified as a gang member by a member of the Nortenos street gang in Dodge City, Kansas.

## Argument and Authorities

As one reviews the language of the Indictment, it is apparent that it is the government's position that the criminal enterprise at issue extended from some time in 2008 through the filing of the Indictment. It also appears that the enterprise alleged in Count 1 continued through that time period. The Indictment identifies co-conspirators as the same are defendants in the case. (Doc. 1.) The Indictment also states at more than one place that there are other co-conspirators not indicted whose identities are known to the government. See e.g. Count 1 of the Indictment. (*Id*.) As of this writing, the government has not provided Mr. Garcia with any of the co-conspirator statements made in furtherance of the alleged enterprise. In addition, there is absent from the Indictment information as to what Mr. Garcia actually agreed to, when the enterprise was actually initially formed, where the enterprise initially formed, who were initially involved in forming the enterprise, what the terms of the conspiratorial/enterprise agreement were, when Mr. Garcia joined the enterprise, the factual particularity required of an indictment to fully inform the defendant of what he must defend against while minimizing the possibility of prejudicial surprise.

Accordingly, the government should be required to provide evidence in a *James* hearing to establish, if it can, the existence of a conspiracy/RICO enterprise, as well as Mr. Garcia's participation in the same to the satisfaction of this Court outside the presence of Mr. Garcia's jury. Such a hearing serves the purpose of apprising Mr. Garcia of what 'facts' he must be prepared against, and fully allows him to prepare for cross-examination and effective confrontation of his accusers. Further, such a hearing provides the Court with information to allow it to make a knowing and intelligent determination regarding which hearsay statements, if any qualify for admission under the co-conspiracy exception to the hearsay rule.

     I.  A *James* Hearing

It has not gone unnoticed that "'[a] conspiracy charge is a favorable weapon in the prosecution's arsenal.'" *United States v. DeRoche*, 726 F.2d 1025, 1028 (5th Cir. 1984) quoting *United States v. Nichols*, 695 F.2d 86, 89 (5th Cir. 1982). A primary advantage gained by the government, when bringing a conspiracy charge, is the admissibility of statements made by the co-conspirator of a party during the "course and furtherance of the conspiracy." Rule 801(d)(2)(E), Federal Rules of Evidence. *United States v. James* holds that for the hearsay statements to be admissible, in addition to the pendency and furtherance requirements of the Rule, "the declarant and the defendant must be members of the conspiracy." *United States v. James*, 590 F.2d 575, 578 (5th Cir.) *en banc, cert. den.* 442 U.S. 817 (1979).

Co-conspirator statements are inherently prejudicial to the defendant against whom they are offered, which explains why the charge has gained its favored status among prosecutors. *See DeRoche*, 726 F.2d at 1029. This is most especially the case when the maker(s) of the alleged co-conspirator statement(s) is unidentified. It is for this reason that co-conspirators statements must be scrutinized carefully before they are presented to the jury. *Id*.

In *James*, the court recognized, as courts still do, the "danger of prejudice to a defendant which would result if the jury were to rely upon co-conspirator statements without first addressing and deciding the admissibility question." *James*, 590 F.2d at 577. Thus, the decision on admissibility cannot be left to the jury. "A rule that puts the admissibility of co-conspirator statements in the hands of the jury does not avoid the danger that the jury might convict on the basis of these statements without first dealing with the admissibility question." *Id.* at 597. Thus, "[t]he district court should, whenever reasonably practicable, require the showing of a conspiracy and of the connection of the defendant with it, before admitting declarations of a co-conspirator." *Id.* Neither has been shown in Mr. Garcia's case.

The government is required, at a *James* hearing, to make a sufficient showing of both the existence of the alleged conspiracy and the defendant's connection with it by "evidence independent of the co-conspirator statement itself." *Id*. at 581. To do otherwise runs the risk of a co-conspirator's statement being bootstrapped into admissible evidence. *United States v. Grassi*, 616 F.2d 1295, 1300 (5th Cir.) cert. den. 449 U.S. 956 (1980).

The Tenth United States Circuit Court of Appeals favors holding James determinations outside the presence of the jury. See *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995) and *United States v. Urena*, 27 F.3d 1487, 1491(10th Cir. 1995). These cases support the Tenth Circuits position of not mandating James hearings outside the presence of the jury, but <u>strongly favoring that practice</u>.

There is no reason not to conduct a *James* hearing in the present case. Indeed such a hearing may be even more necessary given that some of the statements alleged to be in furtherance of the conspiracy may be judicial/testimonial statements and subject to the limitations of *Crawford*. In *United States v. Miller*, 250 F.R.D.588 (D.Kan. 2008) in which the court conducted a *James* hearing to determine the admissibility of co-conspirator statements, one of the defendants moved to exclude co-conspirator testimonial statements arguing that even if admissible under the co-conspirator exception to the hearsay rule, admitting such statements in evidence violates the Sixth Amendment" *Miller*, 250 F.R.D. at 596. After examining *Crawford* and *Summers*, the district court noted that a statement is testimonial "'if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime.'" *Id. citing United States v. Townley*, 427 Fed 1267, 1272 (10th Cir. 2007) (quoting *United States v. Summers*, 414 F.3d 1287, 1302 (10th Cir. 2005)). The court pointed out that under Fed.R.Evid. 801(d)(2)(E) a statement is not hearsay if it is offered against a party and is also a statement by a co-conspirator

5

made during and in furtherance of the conspiracy. Those statements, the court noted, are made to promote the objectives of the conspiracy. *Id*. The court concluded that those statements are admissible as non hearsay. *Id*. citing *Townley*, 472 F.3d at 1273, quoting *United States v. Smith*, 833 F.2d 380, 394 (10th Cir. 1987). Notwithstanding those rulings, the court went on to state that "[w]here however, the statements qualify both as non-hearsay under Rule 801(d)(2)(E) and are testimonial an **analysis under *Crawford* and its progeny is required**." *Id*. (emphasis added) citing *Baines*, 486 F.Supp.2d at 1300 ("while the majority of co-conspirator statements are not testimonial in nature, where such a statement is testimonial it is subject to the requirements of the Confrontation Clause."). Thus, in the present case, a *James* hearing is necessary and reasonable.

## II. Pre-Testimonial Disclosure

In order for Mr. Garcia's participation in the James hearing, he must be entitled to pre-hearing disclosure of the statements allegedly made in furtherance of the conspiracy in which he is alleged to be a member. This is all the more reasonable because the statements sought to be admitted against him may well be his statements. See Rule 16(a)(1)(A), Federal Rules of Criminal Procedure and *United States v. Thevis*, 84 F.R.D. 47 (N.E.Ga. 1979) citing *James*. Mr. Garcia points out that he has not yet received in discovery any statements of his alleged co-conspirators which would be relevant to establishing the conspiracy. Mr. Garcia has filed a motion for notice of co-conspirator statements and a brief in support of that motion seeking discovery of the statements of all co-conspirators. (Doc. 330 and Doc. 331.)

In *Thevis* the court specifically concluded that because the statement of a co-conspirator, following proper foundation, "is admissible against [a] defendant as if it were his own, … statements of co-conspirators concerning activity conduct or statements made during the course of the conspiracy of which [a] declarant and [a] defendant were members shall be deemed to be statements

6

of [a] defendant and discoverable under Rule 16(a)(1)(A)." *Thevis*, 84 F.R.D. at 56.

Absent pre-hearing disclosure of the statement(s), Mr. Garcia will be ill-prepared, if not un-prepared, to participate meaningfully in any *James* hearing. Like any other hearing in a criminal case, a *James* hearing involves due process rights under the Constitution of the United States as well as confrontation rights under the Sixth Amendment thereof. Absent pre-hearing disclosure, defense counsel will be less able to assist in arriving at the correct factual decisions required.

### III. An Aid to the Proceedings

The Tenth United States Circuit Court of Appeals has held that James hearings are not mandated. However, such hearings are strongly preferred. *See United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995) and *United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1990). It is in the interest of judicial economy and fundamental fairness that the court hold the *James* hearing pre-trial rather than at the close of the case. Holding such a hearing after the statements have been heard by the jury, and assuming arguendo that the prosecution has not prevailed, the court is then confronted with the difficult decision of whether a cautionary instruction will suffice, or whether a mistrial must be ordered.

Such a risk arose in *DeRoche*, where the court proceeded to trial in the absence of a *James* hearing. In *DeRoche*, the trial court admitted co-conspirator statements subject to the statements being connected up. Ultimately the court found that there was insufficient evidence of a conspiracy, and limited the use of the statements. On appeal, the Fifth United States Circuit Court of Appeals found the district court's prophylactic measures inadequate and remanded for new trial, admonishing that the "failure to adhere to established *James* procedures results in an inadequate record for review. *DeRoche*, 726 F.2d at 1029.

A pre-trial *James* hearing fully eliminates the need for the court to wager on whether the

7

government can 'connect up' the proffered co-conspirator testimony by the end of trial.  In Mr. Garcia's case where the conspiracy allegations made by the government are so wide ranging and are based as well on unidentified co-conspirators who are known to the government, a *James* hearing will best serve the interests of justice, the court and the parties.  Counsel for Mr. Garcia is unaware of any cases which have determined that the co-conspirator hearsay exception is applicable when the Grand Jury which returned an indictment which has failed to set out persons it determined to be known co-conspirators but whom it did not identify.

### Conclusion

For the reasons set out hereinabove and based upon the authorities cited, Mr. Garcia submits that his motion for a *James* hearing should be granted.  In addition, should the motion be granted, Mr. Garcia requests that the Court direct the government to provide him with the following, to wit: 1) identification of statements, if any it seeks to have admitted against him under Rule 801(d)(2)(E); 2) the identities of the known but unidentified co-conspirators referred to in the Indictment; 3) the identities of all members of the conspiracy and 4) all statements made in furtherance of the conspiracy made by Mr. Garcia and each member of the conspiracy, as well as the statements made by each known but unidentified co-conspirator.  For the requested information to be of any real use to Mr. Garcia during the *James* hearing, the requested material should be provided to the defense well in the advance of such hearing.

WHEREFORE, Mr. Garcia prays that his motion be granted, and for such other and further relief as is just and equitable in these premises.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310

8

410

Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of October 2012, I electronically filed the foregoing by

using the CM/ECF system which will send a notice of electronic filing to the counsel of record.


s/John Val Wachtel
John Val Wachtel


Doc. 20V5437

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-CR-100089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION FOR PRIOR CRIMINAL RECORD WITH
SUPPORTING MEMORANDUM**

**- DEFENDANT GARCIA'S ELEVENTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby moves this Court for an Order requiring the government to provide a copy of his criminal record.  In support of this motion Mr. Garcia states:

Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains thirty-eight alleged separate violations of federal criminal law.  (Doc. 1.)  COUNT 1, inter alia, charges the defendant, along with Jason Najera, Gonzalo Ramirez, Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together with persons known and unknown, being persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c) ... [a]ll in violation of  18 U.S.C. § 1962(d)." *Id*.

COUNT 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright with the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5). *Id*.  When the Indictment in this case was filed, it contained a section titled "Notice of Special Findings." *Id*. p. 32-33.  The Notice of

Special Findings placed Mr. Garcia on notice that should the Department of Justice approve a request from the United States Attorney for the District of Kansas, the government could seek the death penalty against Mr. Garcia and his co-defendant Gonzalo Ramirez.

COUNT 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering. It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1). *Id.*

COUNT 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3). *Id.* COUNT 6, charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.* COUNT 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3). COUNT 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6). COUNT 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

On August 9, 2012, counsel for Mr. Garcia wrote to Assistant United States Attorney Aaron Smith, requesting certain discovery. In that letter counsel for Mr. Garcia wrote: "(4) The Defendant's Prior Record. The defendant requests, pursuant to Fed.R.Crim.P. 16(a)(1)(D), that the government provide a copy of the defendant's prior criminal record that is within the possession, custody or control of the government." As of this writing, and acknowledging that there are certain discovery disks provided by the government that Mr. Garcia has not been able to access, it appears that the government has not provided the requested criminal record(s).

Among the discovery provided to counsel for Mr. Garcia were certain 'gang sheets.' On a document titled "GANG VERIFICATION CRITERIA" (hereinafter as necessary "gang sheet") dated July 9, 2009, Officer FNU Simmons has checked the box on the gang sheet identified as "OTHER

CRITERIA," Simmons has also checked the box identified as "Judicial findings of gang membership." This gang sheet indicates that some legal proceeding was conducted during which a judicial finding or findings were made concluding that Mr. Garcia was a gang member.

Rule 16(a)(1)(D) provides:

Defendant's Prior Record. Upon a defendant's request the government must furnish the defendant with a copy of the defendant's prior criminal record that is within the government's possession, custody, or control if the attorney for the government known - or through due diligence could know - that the record exists.

The gang sheet clearly demonstrates that the government is aware, or with due diligence could be aware of Mr. Garcia's criminal history. Because a request for Mr. Garcia's criminal record was made, the government is obligated to provide it.

WHEREFORE, Mr. Garcia prays for an order of Court granting this motion.

Respectfully submitted,

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail: jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of October, 2012, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

KMAZ Doc. 20V7069

3

```
MIME-Version:1.0
From:KSD_CMECF@ksd.uscourts.gov
To:ksd_nef@localhost.localdomain
Bcc:
--Case Participants: Gregory D. Bell (gbell@forkersuter.com), Mark L. Bennett, Jr
(dana@mlbjrlaw.com, mark@mlbjrlaw.com), Derek S. Casey (dscasey@twgfirm.com,
jodownum@twgfirm.com), Roger L. Falk (roger_falk@sbcglobal.net), Jay F. Fowler
(jfowler@foulston.com, lclark@foulston.com), Molly M. Gordon (karin@depewgillen.com,
molly@depewgillen.com), Jeff L. Griffith (jlgriffithlaw@aol.com), Eric A. Hartenstein
(erichartenstein@att.net), Timothy J. Henry (beth_two_hatchett@fd.org,
jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org, tim_henry@fd.org),
Michael D. Hepperly (mhepperly@aol.com), Kevin W. Loeffler (kloeffler@lawyer.com), Joel
Mandelman (beth_two_hatchett@fd.org, jackie_carter@fd.org, joel_mandelman@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org), Carl Fredrick A. Maughan
(carl@mandmattorneys.com), Paul S. McCausland (p.mccausland@youngboglelaw.com), Sean C.
McEnulty (s@mcenultylawfirm.com), David H. Moses (dmoses@cmzwlaw.com, justin@cmzwlaw.com,
sher@cmzwlaw.com), Charles A. O'Hara (ohara@oharaohara.com), James R. Pratt
(jim.prattesq@gmail.com, jim@jamesrprattlaw.com), Benjamin Anthony Reed
(ben@josephhollander.com, julie@josephhollander.com), Mark T. Schoenhofer
(jenniferlewilson@yahoo.com, mydefensefirst@yahoo.com), Mark A. Sevart
(markchrissevart@yahoo.com), Michael J. Shultz (lura@shultzlaw.net,
michael@shultzlaw.net), Aaron L. Smith (aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov),
John B. Sullivan (johnsullivanlaw@gmail.com), John V. Wachtel (jvwachtel@klendalaw.com),
Lanny D. Welch (lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov,
usaks.ecfwiccrm@usdoj.gov), District Judge Monti L. Belot
(ksd_belot_chambers@ksd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:2812497@ksd.uscourts.gov
Subject:Activity in Case 6:12-cr-10089-MLB USA v. Najera et al Order on Motion for Joinder
Content-Type: text/html
```

## U.S. District Court

### DISTRICT OF KANSAS

## Notice of Electronic Filing

The following transaction was entered on 10/23/2012 at 2:43 PM CDT and filed on 10/23/2012

| | |
|---|---|
| **Case Name:** | USA v. Najera et al |
| **Case Number:** | 6:12–cr–10089–MLB |
| **Filer:** | |
| **Document Number:** | 373(No document attached) |

**Docket Text:**

**MINUTE ORDER granting all requests to join motions of co–defendants:granting [308] Motion for Joinder as to Jason Najera (1), Pedro Garcia (2), Gonzalo Ramirez (3), Russell Worthey (4), Anthony Wright (5), Joshua Flores (6), Jesus Flores (7), Angel Cerda (8), Juan Torres (9), Alfredo Beltran–Ruiz (10), Donte Barnes (11), Jesus Sanchez (12), Enrique Gobin (13), Alfonso Banda–Hernandez (14), Andrew Gusman (15), Eusebio Sierra–Medrano (16), Jayson Vargas (17), Adam Flores (18), Fabian Neave (19), Jesus Torres (20), Jose Neave (21), Hernan Quezada (22), Humberto Ortiz (23); granting [311] Motion for Joinder as to Pedro Garcia (2); granting [360] Motion for Joinder as to Pedro Garcia (2); granting [339] Motion for Joinder as to Russell Worthey (4); granting [361] Motion for Joinder as to Russell Worthey (4); granting [371] Motion as to Russell Worthey (4); granting [312] Motion for Joinder as to**

**Anthony Wright (5); granting [310] Motion for Joinder as to Angel Cerda (8); granting [364] Motion for Joinder as to Angel Cerda (8); granting [313] Motion for Joinder as to Enrique Gobin (13); granting [314] Motion for Joinder as to Andrew Gusman (15); granting [363] Motion for Joinder as to Andrew Gusman (15); granting [358] Motion for Joinder as to Eusebio Sierra–Medrano (16); granting [359] Motion for Joinder as to Eusebio Sierra–Medrano (16); granting [316] Motion for Joinder as to Fabian Neave (19) Signed by District Judge Monti L. Belot on 10/23/2012. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs)**

**6:12–cr–10089–MLB–1 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−1 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−2 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12–cr–10089–MLB–2 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–3 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12–cr–10089–MLB–3 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–4 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−4 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−5 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−5 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−6 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−6 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−7 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12–cr–10089–MLB–7 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−8 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−8 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−9 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12–cr–10089–MLB–9 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–10 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12–cr–10089–MLB–10 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–11 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12–cr–10089–MLB–11 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–12 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−12 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−13 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−13 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−14 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−14 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−15 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12–cr–10089–MLB–15 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–16 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12–cr–10089–MLB–16 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–17 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12–cr–10089–MLB–17 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–18 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12–cr–10089–MLB–18 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–19 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12–cr–10089–MLB–19 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–20 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12–cr–10089–MLB–20 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–21 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−21 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−22 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−22 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−23 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

John B. Sullivan johnsullivanlaw@gmail.com

Benjamin Anthony Reed ben@josephhollander.com, julie@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−23 Notice has been delivered by other means to:**

David H. Moses, #10239
CASE, MOSES, ZIMMERMAN & MARTIN, P.A.
200 West Douglas, Suite 900
Wichita, Kansas 67202-1321
(316) 303-0100

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## WICHITA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.  6:12-CR-10089-MLB |
| | ) |
| JASON NAJERA, et al | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT JASON NAJERA'S MOTION FOR SPECIFIC DISCOVERY RELATED TO STREET GANGS IN DODGE CITY, KANSAS

COMES NOW, the defendant, Jason Najera, by and through his attorney, David H. Moses of Case, Moses, Zimmerman & Martin, P.A., and moves this Court for an order allowing specific discovery of certain materials related to street gangs in Dodge City, Kansas, as the same are more specifically identified in Mr. Najera's Memorandum in support of this Motion.  In support of this Motion, Mr. Najera has submitted a Memorandum of authorities.

WHEREFORE, defendant Jason Najera prays for an order of this Court granting the motion.

Respectfully submitted

CASE, MOSES, ZIMMERMAN & MARTIN, P.A.

s/David H. Moses
David H. Moses,  Bar Number 10239
Attorney For Defendant Jason Najera
Case, Moses, Zimmerman & Martin, P.A.
200 West Douglas, Suite 900
Wichita, Kansas 67202
Phone Number: (316) 303-0100
Fax Number: (316) 265-8263
E-mail Address: dmoses@cmzwlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of October, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all attorneys of record for the co-defendants named herein and to the attorney for the United States of America:

Aaron L. Smith, Assistant, U.S. Attorney
Lanny Welch, Assistant, U.S. Attorney
District of Kansas
1200 Epic Center
301 North Main Street
Wichita, KS 67202

s/David H. Moses
David H. Moses, Bar Number 10239
Attorney For Defendant Jason Najera
Case, Moses, Zimmerman & Martin, P.A.
200 West Douglas, Suite 900
Wichita, Kansas 67202
Phone Number: (316) 303-0100
Fax Number: (316) 265-8263
E-mail Address: dmoses@cmzwlaw.com

2

David H. Moses, #10239
CASE, MOSES, ZIMMERMAN & MARTIN, P.A.
200 West Douglas, Suite 900
Wichita, Kansas 67202-1321
(316) 303-0100

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## WICHITA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  6:12-CR-10089-MLB |
| | ) | |
| JASON NAJERA, et al | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT JASON NAJERA'S MOTION FOR SPECIFIC DISCOVERY RELATED TO STREET GANGS IN DODGE CITY, KANSAS AND MOTION FOR JOINDER IN MOTION

COMES NOW, the defendant, Jason Najera, by and through his attorney, David H. Moses of Case, Moses, Zimmerman & Martin, P.A., and hereby submits this Memorandum in Support of his Motion for Specific Discovery Related to Street Gangs in Dodge City, Kansas.

**I.      DEFENDANT'S ADOPTION OF PEDRO GARCIA'S MEMORANDUM IN SUPPORT OF MOTION FOR SPECIFIC DISCOVERY RELATED TO STREET GANGS IN DODGE CITY, KANSAS (DOC. NO. 325)**

Mr. Najera seeks to join and adopt the statements, allegations, and authorities included within Pedro Garcia's Memorandum in Support of his Motion for Specific Discovery Related to Street Gangs in Dodge City, Kansas.  The portion that Mr. Najera seeks to join and adopt include all of the Factual Background section, as well as the Argument and Authorities and Specific Discovery Sought through the start of the Underlying Source Material-Gang Sheets subsection.

Mr. Najera's request to join and adopt Pedro Garcia's Memorandum in Support of his Motion are meant to correspond, where appropriate, to the facts and circumstances specific to Mr. Najera's case.

## II.   UNDERLYING SOURCE MATERIAL–GANG SHEETS

In a Gang Sheet dated November 14, 2007, and completed by SCU Officer Nau, the following Gang Verification Criteria were checked regarding Mr. Najera, which included:

> Subject admits to gang affiliation;
> Subject has gang-related tattoos;
> Subject associates with known gang members;
> Subject involved in criminal gang incidents;
> Subject identified as a gang member by another law enforcement agency; and
> Subject identified as a gang member by another gang.

*See* Exhibit 1.  Gang Sheet dated November 14, 2007 also states that "word on the street is Najera is running DV."  For a gang expert's testimony as to gang membership to be reliable, "the expert must possess accurate information regarding the existence of a gang and the defendant's membership in the gang.  Placido G. Gomez, *It is not so Simply Because an Expert Says it is so*. *Id*. at 611.

There are reasons which are not gang membership related why a person might identify himself as a gang member.  "A common reason appears to be survival; gangs are notorious for effective intimidation techniques.  Young males may have to make peace with local gangs to go to school, work, or merely walk around in the neighborhood," and some nongang members would "rather blend in than fight it."  *Id*. at 618, and FN 215 citing Suzin Kim, Note, *Gangs and Law Enforcement: The Necessity of Limiting the Use of Gang Profiles*, 5 B.U. Pub. Int. L.J. 265, 273 (1996), and FN 216, Linda S. Beres & Thomas D. Griffith, *Demonizing Youth*, 34 Loy. L.A. Rev. 747, 761 (2001).

We are given to understand that Mr. Najera identified himself as a gang member.

However, it should be noted that within the Gang Sheet dated November 14, 2007, Mr. Najera has indicated that "he was trying to get out of DV." It is a bit of an imprecise fit to say that someone has admitted being a part of a gang when their statement is that they were (note: past tense was used) trying to get out of the gang. Arguably, if Mr. Najera's actions of intending to get out of the gang manifested themselves in the November 14, 2007 incident (a physical fight), then Mr. Najera may not have admitted that he remained affiliated with DV. Rather, he may have already terminated his membership. Neither Mr. Najera's alleged statement of admission of gang affiliation, nor any of his other statements mentioned in the Comments section are provided in the discovery. If indeed such statements by Mr. Najera exist, he is entitled to them.

Exhibit 1 also labels Mr. Najera as a "gang member by an unidentified member of another gang." Exhibit 1 does not identify the person from another gang who identified Mr. Najera as a Norteno, nor does it identify the gang that the informant was a member of. This absence of information makes the Gang Sheet unreliable on its face. One cannot tell if the source was reliable, or if the source had some motive other than assisting law enforcement when he or she identified Mr. Najera as a gang member. Furthermore, this criterion is dependent upon there being a proper factual basis to establish that the informant is a gang member. Accordingly, Mr. Najera requests that the Government be required to provide information indicating that the informant is reliable and establishing the informant's membership in another gang, including but not limited to any Gang Sheet(s) as to the informant.

The "gang-related tattoos" label contains its own set of potential problems. There is evidence within Exhibit 1 that Mr. Najera "was trying to get out of DV." Even if Mr. Najera had succeeded in getting out of the gang in which he was purportedly a member, unless he had gone through the arduous process of removing his tattoos, he would likely have been labeled as a gang member because of tattoos that are likely to remain on his skin for the rest of his life. If the

3

Government and/or any law enforcement has evidence relating to any tattoos that are claimed to be signature tattoos for the purported gangs that are at issue in this case, including but not limited to photographs of gang members with said tattoos, descriptions of said tattoos, and training that law enforcement officers may have received in identifying said tattoos, Mr. Najera is entitled to such evidence.

Within Exhibit 1, the box next to "Subject associates with known gang members" is checked.  Exhibit 1 does not state which gang members (plural) are relied upon for this box being checked.  The Comments section refers to another purported gang member named Mario Barraza.  It is unclear if Marcos Sotelo is claimed to be a member of DV.  Regardless, based on the requirements that must be met for the aforementioned box to be checked, Mr. Najera requests that the Government be required to provide documents regarding all known gang members, including but not limited to Marco Sotelo and Mario Barraza.

Exhibit 1 also displays the box next to "Subject involved in criminal gang incidents" as being checked.  However, Exhibit 1 does not state which criminal gang incidents (plural) are relied upon for this box being checked.  The Comments section indicates that this incident might qualify as gang-related.  As a result, Mr. Najera requests that the Government be required to provide all documents (including but not limited to all police reports) from all "criminal gang incidents" that Mr. Najera has been involved in throughout his life.

Exhibit 1 indicates that Mr. Najera was identified as a gang member by "another law enforcement agency."  That other law enforcement agency is not identified.  There is no way from the gang sheet that the defense can identify that agency.  The defense would also be entitled to all documents from the other law enforcement agency, in order to test the reliability and validity of the statements of the Government's expert witnesses.

As argued above, for the opinion of the expert to be reliable, the expert's opinion must

4

arise out of reliable information.  That reliability is tested in cross-examination.  To be effective in cross-examination, Mr. Najera's counsel must have the Gang Sheet underlying source material sufficiently prior to any hearing during which a gang expert or gang experts may testify.  In the interest of judicial economy, it is important that Mr. Najera have that information now.

Mr. Najera wishes to point out that he is not just seeking source material on Exhibit 1. Rather, Mr. Najera seeks information with respect to each of the gang sheets that applies to him, as disclosed in the discovery, as well as any gang sheets of which the Government is aware or should be aware of that have not yet been disclosed. Furthermore, Mr. Najera requests underlying source material with respect to each gang sheet in the same manner as requested within Exhibit 1.

## CONCLUSION

The scope of discovery under Rule 16 of the Federal Rules of Criminal Procedure "is within the discretion of the trial judge and is not reviewable absent abuse." *United States v. Smaldone*, 484 F.2d 311 (10th Cir.)  Accordingly, this Court has the discretion to grant Mr. Najera's Motion for Specific Discovery.  Granting the Motion would be in the best interest of due process of law, and will serve to promote judicial economy.

Respectfully submitted

CASE, MOSES, ZIMMERMAN & MARTIN, P.A.

s/David H. Moses
David H. Moses,  Bar Number 10239
Attorney For Defendant Jason Najera
Case, Moses, Zimmerman & Martin, P.A.
200 West Douglas, Suite 900
Wichita, Kansas 67202
Phone Number: (316) 303-0100
Fax Number: (316) 265-8263
E-mail Address: dmoses@cmzwlaw.com

5

447

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of October, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all attorneys of record for the co-defendants named herein and to the attorney for the United States of America:

Aaron L. Smith, Assistant, U.S. Attorney
Lanny Welch, Assistant, U.S. Attorney
District of Kansas
1200 Epic Center
301 North Main Street
Wichita, KS 67202

s/David H. Moses
David H. Moses, Bar Number 10239
Attorney For Defendant Jason Najera
Case, Moses, Zimmerman & Martin, P.A.
200 West Douglas, Suite 900
Wichita, Kansas 67202
Phone Number: (316) 303-0100
Fax Number: (316) 265-8263
E-mail Address: dmoses@cmzwlaw.com

## GANG VERIFICATION CRITERIA

NAME: JASON NAJERA                     DATE: 11142007

                                      GANG: DV

☒ **SELF ADMISSION**

☒ Subject admits gang affiliation.

☒ Subject has gang-related tattoos.          Picture of Tattoo? ...   Yes ☐  No ☒

☐ Subject writes gang graffiti.              An Example? - - - - - - -   Yes ☐  No ☐

☐ Subject uses gang-related moniker.

---

☒ **ASSOCIATION**

☒ Subject associates with known gang members.

☐ Subject included in group photographs with known gang members.

☒ Subject involved in criminal gang incidents.

☒ **OTHER CRITERIA**

☐ Judicial findings of gang membership.

☐ Subject's victims or targets of crime are members of a rival gang.

☐ Subject uses hand signs and gang language, the content and context of which clearly indicated gang affiliation.

☐ Subject's name appears on gang document, hit list, or gang-related graffiti.

☐ Subject wears "colors," gang clothing, gang paraphernalia in such & way that indicates gang affiliation.

☒ Subject identified as a gang member by another law enforcement agency.

☐ Subject identified as a gang member by a reliable informant.

☒ Subject identified as a gang member by another gang.

☐ Subject identified as a gang member by a public source.

☒ **COMMENTS:**

NAJERA AND ANOTHER DV MEMBER WERE JUMPING MARCOS SOTELO IN THE MIDDLE OF 7TH ST. NEAR SPRUCE ST. SOTELO STATED TO OFFICER STEIN THAT HE THOUGHT HE WAS GETTING JUMPED OUT OF DV BUT IT WENT A LITTLE TO FAR. NAJERA STATED HE WAS TRYING TO GET OUT OF DV ALSO HOWEVER WORD ON THE STREET IS NAJERA IS RUNNING DV. NAJERA SAID HE WAS TRYING TO HELP SOTELO BUT VIDEO FOOTAGE SHOWS NAJERA IS HELPING THE OTHER DV MEMBER BEAT UP SOTELO. THE OTHER DV MEMBER NAJERA SAID WAS MARIO GARZA, AKA-CREEPER. GARZA IS NOT LISTED BUT THERE IS A BARRAZA THAT IS.

SUBMITTED By: NAU                     DATE: 11142007

        TITLE: SCU OFFICER



EXHIBIT

_1_

 

SUBJECT IDENTIFICATION RECORD

| Subject's Name | Residence Address City | | Res.Phone | Gang |
|---|---|---|---|---|
| Jason Najera | 806 5TH AVE. ,Dodge City KS | | | DV |

| Aliases | Business Address | City | Bus.Phone | CFS Number |
|---|---|---|---|---|
| | | | | 0730664 |

| Sex | Race | DOB | Height | Weight | Hair | Eyes | Type Activity |
|---|---|---|---|---|---|---|---|
| M | W | 1115 1983 | 600 | 150 | Bro | Bro | Gang Fight |

| Occupation | Employed By | DL # | SS # | Name of spouse |
|---|---|---|---|---|
| | | | | |

| Veh. Year-Make | Body Type | Color | Lic. # | Yr. | St | Vin. # |
|---|---|---|---|---|---|---|
| | | | | | | |

| Veh. Reg. to | Address | City | Relation to Subject |
|---|---|---|---|
| | | | |

Photo

Hang Outs

Associates
MARIO GARZA-MARIO BARRAZA

Misc. Info - Additional Addressee
NORTE Tattoo on chest, 14 on
back of neck, Norteno with bird
on back of right arm, 1 and 4 dots
on each hand

Submitted By
NAU #212

Date
11142007

David H. Moses, #10239
CASE, MOSES, ZIMMERMAN & MARTIN, P.A.
200 West Douglas, Suite 900
Wichita, Kansas 67202-1321
(316) 303-0100

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS
### WICHITA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.  6:12-CR-10089-MLB |
| | ) |
| JASON NAJERA, et al | ) |
| | ) |
| Defendant. | ) |
| | ) |

### DEFENDANT JASON NAJERA'S
### MOTION TO DISLCOSE CONFIDENTIAL INFORMANTS

COMES NOW the Defendant, Jason Najera, by and through his attorney of record, David H. Moses of CASE, MOSES, ZIMMERMAN & MARTIN, P.A, and moves this Court to enter an order requiring the Government to disclose:

(1)    Any co-defendants who are cooperating witnesses;

(2)    The identity of all confidential informants who had contact with Mr. Najera and any co-defendants during the investigation of this case; and

(3)    Criminal records of the informants and co-defendants who are cooperating witnesses, along with any promises or other incentives offered to the informants and said co-defendant cooperating witnesses in exchange for their cooperation.

The bases for this Motion are detailed within the supporting Memorandum.

451

452

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS (WICHITA)
UNITED STATES OF AMERICA v. JASON NAJERA, Case No. 12-CR-10089-MLB
DEFENDANT JASON NAJERA'S MOTION TO DISCLOSE CONFIDENTIAL INFORMANTS
Page 2


Respectfully submitted,

CASE, MOSES, ZIMMERMAN & MARTIN, P.A.

s/David H. Moses
David H. Moses, #10239
Attorney For Defendant Jason Najera
200 W. Douglas, Suite 900
Wichita, Kansas 67202
Phone Number: (316) 303-0100
Fax Number: (316) 265-8263
E-mail Address: dmoses@cmzwlaw.com


## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of October, 2012, I electronically filed the foregoing Motion with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.


s/David H. Moses
David H. Moses

David H. Moses, #10239
CASE, MOSES, ZIMMERMAN & MARTIN, P.A.
200 West Douglas, Suite 900
Wichita, Kansas 67202-1321
(316) 303-0100

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## WICHITA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  6:12-CR-10089-MLB |
| | ) | |
| JASON NAJERA, et al | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT JASON NAJERA'S MEMORANDUM IN SUPPORT OF
### MOTION TO DISCLOSE CONFIDENTIAL INFORMANTS

COMES NOW the Defendant, Jason Najera, by and through his attorney of record, David H. Moses of CASE, MOSES, ZIMMERMAN & MARTIN, P.A, and files this Memorandum in Support of his Motion to Disclose Confidential Informants.  In support of said Motion, Mr. Najera alleges and states as follows:

1.      Within the discovery provided by the Government, there is some text that is redacted and it appears that the redacted information may contain the identities of confidential informants. As will be set forth in more detail below, because these informants are "transactional witnesses" they must be identified.

2.      Furthermore, gang sheets on Mr. Najera that have been provided by the Government, through which the defense believes the Government intends to introduce against Mr. Najera at trial to establish his purported participation in a gang.  Some gang sheets refer to third parties (who

453

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS (WICHITA)
UNITED STATES OF AMERICA v. JASON NAJERA, Case No. 12-CR-10089-MLB
DEFENDANT JASON NAJERA'S MEMORANDUM IN SUPPORT OF MOTION TO DISCLOSE
CONFIDENTIAL INFORMANTS
Page 2

generally remain unnamed within the gang sheets) that purportedly identified Mr. Najera as a gang member. Other gang sheets would refer to "word on the street", without referring to the declarant(s). Accordingly, Mr. Najera is entitled to the identities of each of these hitherto confidential informants.

2.      It is not proper that the Government disclose the identity of only those informants that they intend to call as witnesses at trial. Furthermore, it is not appropriate to allow the Government to withhold the identity of the informants until shortly before trial.

3.      A defendant's rights to disclosure of confidential informants was first established in *Roviaro . United States*, 353 U.S. 53, 60, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957) and the law has changed very little in the intervening 55 years.

4.      In determining whether to reveal an informant's identity, a district court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62.

5.      The Government's limited privilege of withholding the identity of an informant gives way once the defendant proves that the disclosure of the informant's identity 'is relevant and helpful" to his defense "*or* is essential to a fair determination of a cause." *Id*. at 60-61.

6.      The Government may emphasize the "relevant and helpful to the defense" portion of the analysis. This is because a defendant will almost never be able to establish that the informant's information would be helpful to the defense. All the defendants ever know about confidential

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS (WICHITA)
UNITED STATES OF AMERICA v. JASON NAJERA, Case No. 12-CR-10089-MLB
DEFENDANT JASON NAJERA'S MEMORANDUM IN SUPPORT OF MOTION TO DISCLOSE
CONFIDENTIAL INFORMANTS
Page 3

informants is the *inculpatory* information that they provide to law enforcement as set forth in affidavits in support of search warrant applications, gang sheets, and other similar documents. Rarely, if ever, do agents record information from informants that is not helpful to the Government. Moreover, if an informant's information is *exculpatory*, the Government has an independent obligation to disclose the information under *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963).

7.      Under the alternative portion in the *Roviaro* analysis (which includes an "or"), the Supreme Court states that the informants must also be identified if their disclosure is "essential to a fair determination of the cause." Typically, this analysis is satisfied if the informant is found to be a "transactional witness." An informant is a transactional witness when he or she was an active participant in the events leading to an arrest. *Id*. at 60. This is because where an informant is a transaction witness, the defendant ought to be afforded the same opportunity as the Government to interview the person and decide whether this person's testimony is necessary. This is a fundamental precept of due process. Mr. Najera has a fundamental right to prepare his defense without governmental intrusion. *Weathisford v. Bursey*, 429 U.S. 545 (1977). Government intrusion into defense preparation may operate to deny the defendant effective assistance of counsel, particularly when the Government seeks to make use of information from the confidential informants.

8.      In this case, at a minimum, it is apparent that unnamed individuals (some of whom are allegedly in gangs besides the gang which Mr. Najera is claimed to be a member) have made statements that Mr. Najera was a member and/or a leader of the Nortenos or the other various

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS (WICHITA)
UNITED STATES OF AMERICA v. JASON NAJERA, Case No. 12-CR-10089-MLB
DEFENDANT JASON NAJERA'S MEMORANDUM IN SUPPORT OF MOTION TO DISCLOSE
CONFIDENTIAL INFORMANTS
Page 4

purported sub-sections of the Nortenos.

9.      As the instant case is a RICO matter in which the statements of said unnamed individuals identified in the preceding paragraph have claimed that Mr. Najera is involved in the aforementioned gang, the unnamed individuals would be considered active participants in the events leading to Mr. Najera's arrest on RICO charges, thereby qualifying as transactional witnesses. This is bolstered by any claims that Mr. Najera was the leader of the aforementioned gang, as such knowledge would generally require the declarant to be intimately involved within the gang's operations in order for their statements to have any reliability. Accordingly, said transactional witnesses must be identified.

10.     Likewise, any of Mr. Najera's co-defendants would almost certainly qualify as transactional witnesses, wherein they would need to be identified.

11.     Other potential confidential informants are difficult for Mr. Najera to clearly identify, as it appears said potential informants' names appear to be blocked out, as well as some of the details regarding the witness. However, in other instances, law enforcement specifically referred to information received from confidential informants.

WHEREFORE, Jason Najera respectfully requests that this Court enter and order requiring the Government to disclose: (1) any co-defendants who are cooperating witnesses; (2) the identity of all confidential informants who had contact with Mr. Najera and any co-defendants during the investigation of this case; and (3) criminal records of the informants and co-defendants who are cooperating witnesses, along with any promises or other incentives offered to the informants and said

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS (WICHITA)
UNITED STATES OF AMERICA v. JASON NAJERA, Case No. 12-CR-10089-MLB
DEFENDANT JASON NAJERA'S MEMORANDUM IN SUPPORT OF MOTION TO DISCLOSE
CONFIDENTIAL INFORMANTS
Page 5

co-defendant cooperating witnesses in exchange for their cooperation.


Respectfully submitted,

CASE, MOSES, ZIMMERMAN & MARTIN, P.A.

s/David H. Moses
David H. Moses, #10239
Attorney For Defendant Jason Najera
200 W. Douglas, Suite 900
Wichita, Kansas 67202
Phone Number: (316) 303-0100
Fax Number: (316) 265-8263
E-mail Address: dmoses@cmzwlaw.com


## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of October, 2012, I electronically filed the foregoing Motion with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.


s/David H. Moses
David H. Moses

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-100089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION FOR JOINDER IN DEFENDANT JASON NAJERA'S MOTION TO DISCLOSE CONFIDENTIAL INFORMANTS AND MEMORANDUM IN SUPPORT**

**- DEFENDANT GARCIA'S TWELFTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby moves this Court for an order allowing him to join in Defendant Jason Najera's Motion to Disclose Confidential Informants (Doc. 381) and in the Memorandum in Support (Doc. 382). In support of this motion Mr. Garcia states.

Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains thirty-eight alleged separate violations of federal criminal law. (Doc. 1.) COUNT 1, inter alia, charges the defendant, along with Jason Najera, Gonzalo Ramirez, Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together with persons known and unknown, being persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c) ... [a]ll in violation of 18 U.S.C. § 1962(d)." *Id*.

COUNT 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright with

the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5). *Id*. When the Indictment in this case was filed, it contained a section titled "Notice of Special Findings." *Id*. p. 32-33. The Notice of Special Findings placed Mr. Garcia on notice that should the Department of Justice approve a request from the United States Attorney for the District of Kansas, the government could seek the death penalty against Mr. Garcia and his co-defendant Gonzalo Ramirez.

COUNT 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering. It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1). *Id*. COUNT 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1). *Id*.

COUNT 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3). *Id*. COUNT 6 charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id*. COUNT 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3). COUNT 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6). COUNT 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id*.

On September 7, 2012, the government filed a "Notice." (Doc. 290.) In the Notice the government advised the Court that it would not seek the death penalty in its case against Mr. Garcia and Mr. Ramirez. Accordingly, if Mr. Garcia is convicted of the most serious of the charges filed against him he could face life in prison.

On August 7, 2012, counsel for Mr. Garcia wrote to Assistant United States Attorney Aaron Smith requesting certain discovery. Included in that letter was the following request:

(10) Information Regarding Informants and Cooperating Witnesses. The defendant

2

requests that the government provide all relevant information concerning any informants or cooperating witnesses involved in this case. At a minimum, the government is obligated to disclose the identification and location of any informants or cooperating witnesses, as well as the identity and location of any other percipient witnesses unknown to the defendant. *Roviaro v. U.S.*, 353 U.S. 53 (1957). We know that Mr. Worthey was identified by at least one civilian witness that was questioned regarding Counts 3 through 9. There were multiple percipient witnesses to the alleged crimes. All witnesses must be identified. Any privilege against disclosing the identity of a witness must give way when the disclosure of an informer's identity is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause. *U.S. v. Vincent*, 611 F.3d 1246, 1251 (10th Cir. 2010).

The government has not responded to this request.

Mr. Garcia has filed a motion for Notice of Co-Conspirator Statements (Doc. 330) that was not broad enough to cover the information which Mr. Jason Najera requests in his present motion. Mr. Garcia notes that Mr. Najera's present motion and supporting arguments are equally applicable to him, and he should therefore be allowed to join in said motion and its supporting arguments and authorities.

*Roviaro v. United States*, 353 U.S. 53 (1957) established a defendant's right to disclosure of confidential informants. In considering a motion such as this a court must balance the public's interest in "protecting the flow of information against the individual's right to prepare his defense." *Roviaro*, 353 U.S. at 62. This limited privilege to withhold the identities of informant gives way when a defendant establishes that disclosure "is relevant and helpful" to the defense "or is essential to a fair determination of a cause." *Id*. at 60-61.

Accordingly, and for the reasons set out in Mr. Najera's supporting memorandum, which are virtually identical to the issues in Mr. Garcia's case, Mr. Garcia requests that the motion be granted and that the government be ordered to provide the following to Mr. Garcia's counsel, to-wit:

1. The identity of co-defendants who are cooperating witnesses; 2. The identities of all confidential informants who had contact with Mr. Garcia and any co-defendant during the investigation; and 3.

3

Criminal records of the informants and co-defendants who are cooperating witnesses, along with any promises or other incentives offered to the informants and said co-defendants who are cooperating.

WHEREFORE, Mr. Garcia prays for an order of Court granting this motion.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail: jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of October, 2012, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

KMAZ Doc. 20V9543

4

461

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,    )
                             )
            Plaintiff,       )
                             )
vs.                          )        Case No.  12-10089-08-MLB
                             )
ANGEL CERDA,                 )
                             )
            Defendant.       )
                             )

**DEFENDANT CERDA'S MOTION FOR IDENTIFICATION
AND PRODUCTION OF STATEMENTS OF PERCIPIENT
WITNESSES AND SUPPORTING MEMORANDUM**

COMES NOW Angel Cerda and respectfully moves the Court to enter an Order compelling the Government to identify and provide statements made by percipient witnesses to the drive-by shooting described in Counts 10 to 13 of the Indictment (ECF 1). The defendant believes there must be one or more percipient and participating witnesses to the shootings of Rumalda Hipolito and Abel Hernandez and that the witness or witnesses are a cooperating witness who possesses facts unknown to this defendant.

## I.  Evidence to be Produced

The defendant requests production of the following reports and evidence under *Roviaro v. United States*, *Brady v. Maryland,* and Rule 16 of the Federal Rules of Criminal Procedure:

A.    All unredacted statements by any Government cooperating witness given to law enforcement after arrest in order allow defendant Cerda to prepare defenses in this case as discussed below.

B.    The identity and unredacted statement of the percipient witness or witnesses who observed the shooting.

C.    The identity of and any law enforcement reports concerning interviews of any percipient witness, who claim to have been a member of the Nortenos, Diablos Viejos (DV) or Los Carnales Chingones (LCC) gangs and who was

present at the shootings, in order for the defendant to refute the Government's motive for the attempted murders and assaults of Ms. Hipolito or Mr. Abel Hernandez that the crimes were committed for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos.

D.   Any interviews of Abel Hernandez's family, friends and associates that will provide insight into his gang affiliations, friends, acquaintances and associates  in order for the defendant to refute the Government motive for the attempted murders and assaults as stated above.

The defense requires the identity of these witnesses and unredacted copies of their statements to law enforcement as a part of the defendant's general pretrial investigation of the murder.  The defendant also needs the statements of any cooperating witness to refute the Government's claimed motive that the crimes were committed for the  "purpose of gaining entrance to and maintaining and increasing position in the Nortenos," and to attempt to determine the true identity of the persons who shot Ms. Hipolito or Mr. Abel Hernandez .

## II. Procedural History

1.   Defendant Cerda is one of twenty-three (23) Hispanic defendants being prosecuted by the United States Government in a thirty-eight (38) count RICO indictment (ECF 1).  Mr. Cerda is charged in Count 10 with conspiracy to commit the murder of Rumalda Hipolito and Abel Hernandez, for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity, a violation of 18 U.S.C. §1959(a)(5); in Count 11 with the attempted murder of Rumalda Hipolito and Abel Hernandez, a violation of 18 U.S.C. §1959(a)(5); in Count 12 with assault with a dangerous weapon upon Rumalda Hipolito and Abel Hernandez, a violation of 18 U.S.C. §1959(a)(3); and in Count 13 with possessing and discharging a firearm in furtherance of a crime of violence, a violation of 18 U.S.C. §924(c)(1)(A).  Counts

10, 11 and 12 are charged as violent crimes in aid of racketeering under the VICAR statute, 18 U.S.C. §1959.  The incident involving Rumalda Hipolito and Abel Hernandez allegedly occurred in Dodge City on October 4, 2008.  Defendants Gonzalo Ramirez and Juan Torres also are charged in Counts 10 through 13.

2.  The defendant Angel Cerda has at all times maintained his innocence and has disavowed any knowledge of the facts surrounding the shooting or the assailants involved. The only source that the defendant has to investigate this murder and prepare a defense is through Government discovery which to this point has been wrongfully withheld. Discovery produced by the government to date includes police reports of the shooting.

3.  The police reports indicate that the incident took place on October 4, 2008, at approximately 12:30 a.m., at a residence located at 1110 Fourth Avenue in Dodge City. The residence was located on the southeast corner of Fourth Avenue and Oak Street. One or more rifles were fired from a location on Oak Street west of Fourth Avenue by members of a "juvenile gang" wounding Rumalda Hipolito, a Hispanic female, age 40 and her son,  Abel Hernandez, a Dodge City High School student, a Hispanic male, age 16. Abel Hernandez is reported to be a member of the Surenos gang, a rival of the Nortenos. Earlier in the evening, an altercation took place in the yard of the residence between young Hispanic males who lived at or were visiting the residence and young Hispanic males in a Cadillac automobile.  A verbal altercation ensued and persons from the Cadillac allegedly used words like "north side", "Norteno" and "Fourteen" and allegedly tried to start a fight. There were reports of five or six males in the Cadillac.  No witness at the residence identified any of the males in the Cadillac.

4.  At the time of the shooting, the persons associated with the residence were at the back outside of the dwelling and the victims were inside.  No witness at the residence or in the neighborhood saw the shootings.  At least one witness saw the same Cadillac drive off down an alley south of Oak Street.  No witness identified any occupant of the

Cadillac at the time of the shootings.

5. Law enforcement later located a Cadillac believed to have been the vehicle involved in the shooting. Despite obtaining forensic evidence from the street at the scend of the shootings (shell casings) and from the Cadillac (latent prints and DNA evidence and other tangible evidence, no evidence has been produced by the Government showing that Mr. Cerda was present at 1110 Fourth Avenue before or at the time of the shooting or that he was ever in the Cadillac. The government's investigation indicates that the defendant was at home all evening taking care of his ill infant daughter.

6. The defense has carefully examined the thousands of pages of additional documents, photographs, laboratory reports, audio recordings and video recordings produced by the government, including laboratory reports for DNA and firearms evidence collected from the scene and the Cadillac. There is no physical or scientific evidence to connect Angel Cerda to the shootings. The defendant surmises that the only evidence connecting the defendant to the shootings must be the statements or grand jury testimony of one or more cooperating witnesses, who must have been percipient witnesses in the Cadillac.

7. On August 6, 2012, the defendant made a written request to the government to disclose the identity of percipient witnesses and their statements concerning the defendant.

> (10) Information Regarding Informants and Cooperating Witnesses. The defendant requests that the government provide all relevant information concerning any informants or cooperating witnesses involved in this case. At a minimum, the government is obligated to disclose the identification and location of any informants or cooperating witnesses, as well as the identity and location of any other percipient witnesses unknown to the defendant. *Roviaro v. U.S.*, 353 U.S. 53 (1957). We know from the produced police reports that there were multiple percipient witnesses to the alleged attempted murder of Ms. Hipolito and Mr. Hernandez, including at least five individuals in the suspect vehicle. Those witnesses must be identified. Any privilege against disclosing the identity of a witness must give way when the disclosure of an informer's identity is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause. *U.S. v. Vincent*,

4

611 F.3d 1246, 1251 (10th Cir. 2010).

The government has not responded to this request.

8. Having exhausted informal efforts to obtain this evidence, the defendant files this motion to obtain the identity and statements of the percipient witness who provides the only evidence that allegedly links the defendant to the attempted murders. This "evidence" does not come from the massive discovery produced by the government in this case.

### Legal Arguments andAuthorities

In *Roviaro v. United States*, 353 U.S. 53, 77 Sup.Ct. 623 (1957), the Supreme Court held that an informant's identity must be revealed whenever it would be relevant and helpful to an accused's defense or essential to a fair determination of a cause. *Id.* at 60-61, 77 S.Ct. at 627-628. Where the government opposes disclosure of the identity of an informant, a trial judge must balance the public's interest in protecting the flow of information against the individual's right to prepare his or her defense. *Id.* at 62, 77 S.Ct. at 628. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informant's testimony, and other relevant factors. *Id.* Mr. Cerda's defense is that he is actually innocent of the attempted murders, was not present during the attempted murders, does not know who committed the attempted murders and that his involvement in this case is based solely on the information provided by one or more percipient witnesses. Mr. Cerda cannot attack the truthfulness of these unknown witnesses unless their statements are disclosed.

*Roviaro* discusses the government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials

5

and, by preserving their anonymity, encourages them to perform that obligation. *Id.* 59, 77 S.Ct. 627. The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable. *Id.*

The Supreme Court recognized that the circumstances of the privilege must give way in appropriate circumstances to fundamental fairness.

> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

*Id.* at 61.

In *Roviaro*, the Supreme Court addressed the problem raised here, the government's right to withhold the identity of an informer who helped to set up the commission of the crime and who was present at its occurrence. The Supreme Court cited three Courts of Appeals decisions which had considered the issue, *Portomene v. United States*, 221 F.2d 582 (5th Cir. 1955); *United States v. Conforti*, 200 F.2d 365 (7th Cir. 1952); and *Sorrentino v. United States*, 163 F.2d 627 (9th Cir. 1947). In each of those cases it was held that the identity of such an informer must be disclosed whenever the informer's testimony may be relevant and helpful to the accused's defense. *Roviaro*, 353 U.S. at 61-62. The Court stated that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible

6

significance of the informer's testimony, and other relevant factors." *Id.*, 77 Sup.Ct at 628-29.   The Court held it was prejudicial error to withhold the identity of the informer where "the Government's informer was the sole participant, other than the accused, in the transaction charged" and "was the only witness in a position to amplify or contradict the testimony of government witnesses." *Id.* 353 U.S. at 64, 77 Sup.Ct. at 630.   In this case, according to the  discovery provided, the Government alleges Gonzalo Ramirez and Juan Torres are the sole participants, other than the accused, in the transaction charged. There is no physical evidence or witness statement connecting those defendants to the alleged crimes either.

The Tenth Circuit has given practical application to the holding in *Roviaro.*   In making the requisite showing under the *Roviaro* standard, the defendant must present more than mere speculation about the possible usefulness of an informant's testimony. *United States v. Zamora,* 784 F.2d 1025, 1030 (10th Cir.1986).   Disclosure of an informant is not required where the information sought from him or her would be merely cumulative, or where the informant is not a participant in or a witness to the crime charged.   *United States v. Scafe,* 822 F.2d 928, 933 (10th Cir.1987); *United States v. Halbert,* 668 F.2d 489, 496 (10th Cir.1982).   In *United States v. Moralez*, 908 F.2d 565 (10th Cir. 1990), the Tenth Circuit discussed how cases involving confidential informants fall into several broad categories, citing *United States v. Fischer,* 531 F.2d 783, 787 (5th Cir.1976).   At one extreme are the cases where the informant is a mere tipster, and disclosure is not required. *See e.g., United States v. Zamora*, 784 F.2d at 1030; *United States v. Halbert,* 668 F.2d 489, supra.   At the other extreme are cases such as *Roviaro* itself where the informant has "played a crucial role in the alleged criminal transaction," and disclosure and production of the informant are required to ensure a fair trial.   *See, e.g., United States v. Price,* 783 F.2d 1132, 1140 (4th Cir.1986).   In addition, there are cases where there is a slight possibility a defendant might benefit from disclosure, but the government has demonstrated a

7

compelling need to protect its informant. *Fischer,* 531 F.2d at 787.

The present case falls within the category of cases such as *Roviaro* itself where the informant must have played a crucial role in the alleged criminal transaction, and disclosure and production of the informant are required to ensure a fair trial.   Only a participant in the shootings could know who was in the Cadillac.  That person was a participant in the crimes and culpable for the attempted murder.  Disclosure of his identity is required because the information sought from him is not merely cumulative.  His statements about this event are critical.  Presumably, the informer knows the motivation behind the attempted murders of Hipolito and Abel Hernandez and the relationship, if any, between these acts and the alleged gang activities of the Nortenos street gang, essential elements in the proof of a 18 U.S.C. § 1959 offense.  Certainly, if there was no "gang related" motivation for the attempted murders then Government's prosecution of Mr. Cerda under the VICAR act must fail.

In order to prove the defendant is guilty of a violent crime in aid of racketeering activity, the government must prove beyond a reasonable doubt that (1) the Nortenos street gang was an enterprise within the meaning of the act; (2) that the Nortenos street gang was engaged in racketeering activity; (3) that the defendant had or sought a position in the Nortenos street gang; (4) that the defendant conspired to and attempted to murder Ms. Hipolito and Mr. Hernandez; and (5) that his general purpose in doing so was to gain entrance to or maintain or increase his position in the Nortenos street gang.  *United States v. Smith*, 413 F.3d 1253, 1277 (10th Cir. 2005).

In all of the evidence produced by the government to date, only someone in the Cadillac in a position to possess the information necessary for the government to satisfy its burden of proof.  The informant(s) must provide the evidence of identity, motive and relationship of the act to the gang's alleged racketeering activity.

There should not be a concern about protecting the identity of any informant, as he

or they undoubtedly are in government custody somewhere and the defendant Cerda is in custody in the Harvey County Jail.  Under the circumstances, any informant can be protected from harm by administrative measures if this Court determines there is any credibility to the assertion there have been threats made against CW#3.

The defense urges the Court to follow the procedure outlined in *Moralez.*  In *Moralez*, the Tenth Circuit remanded the case to the district court for an *in camera* hearing to determine whether the informant's testimony was relevant and whether disclosure was warranted.  "[A]n *in camera* hearing will best accommodate the competing governmental and individual interests in this case." *Moralez*, 908 F.2d at 569.  In addition, the district court was directed to ascertain the government's interests in resisting disclosure and production. Although the Tenth Circuit left to the discretion of the trial court how best to conduct the proceedings and assess the relevance of the informant's testimony, it directed that "the *in camera* hearings should be transcribed and sealed to permit meaningful review while retaining limited disclosure," quoting  *Gaines v. Hess,* 662 F.2d 1364, 1369 (10th Cir. 1981).

Wherefore, upon the premises considered, the defendant prays that the Court direct the Government to identify and provide statements made by percipient witnesses.  If the government identifies any credible government interest for withholding the information requested, the defendant prays that the Court conduct an *in camera* hearing as suggested in *Moralez*.

Respectfully submitted this 25th day of October 2012.

YOUNG, BOGLE, MCCAUSLAND,
 WELLS & BLANCHARD, P.A.
One Main Place
100 N. Main, Suite1001
Wichita, Kansas  67202-1322
Telephone:   (316) 265-7841
Facsimile:    (316) 265-3956
p.mccausland@youngboglelaw.com

By Paul S. McCausland
Paul S. McCausland, KS #08878
Attorney for Angel Cerda

## REQUEST FOR HEARING

The defendant Angel Cerda respectfully requests a hearing on this motion.

YOUNG, BOGLE, MCCAUSLAND,
 WELLS & BLANCHARD, P.A.

By Paul S. McCausland
Paul S. McCausland, KS #08878
Attorney for Angel Cerda

## CERTIFICATE OF SERVICE

The undersigned counsel for defendant Angel Cerda hereby certifies that on this 25th day of October 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Aaron L. Smith and Lanny D. Welch, Assistant U.S. Attorneys, and all attorneys of record for the co-defendants named herein.

 s/ Paul S. McCausland
Paul S. McCausland, KS #08878

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,      )
                               )
             Plaintiff,        )
                               )
vs.                            )      Case No.  12-10089-08-MLB
                               )
ANGEL CERDA,                   )
                               )
             Defendant.        )
_____)

**DEFENDANT CERDA'S MOTION FOR DISCLOSURE OF EXCULPATORY EVIDENCE, PLEA AGREEMENTS AND IMPEACHMENT MATERIALS**

The defendant Angel Cerda, by and through his attorney, Paul S. McCausland, moves this Court to enter an Order requiring the government to disclose at least ninety (90) days in advance of trial information or documents as follows:

a.    Exculpatory evidence required by *Brady v. Maryland*, 373 U.S. 83 (1963).

b.    Plea agreements of any co-defendant or other witness whom the government intends to call as a witness at trial.

c.    Any evidence that any prospective government witness has engaged in any criminal act, whether or not resulting in a conviction.

d.    Any other impeachment material relative to a government witness required by *Brady* or *Giglio v. U.S.*, 405 U.S. 150 (1972).

e.    The Wichita Police Department Gang Intelligence Unit sheet for each government witness.

On August 6, 2012, defendant's counsel wrote a letter to the government requesting discovery of the following:

(5) *Brady* Material. The defendant requests all documents,

statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Impeachment as well as exculpatory evidence falls within *Brady*'s definition of evidence favorable to the accused. *U.S. v. Bagley*, 473 U.S. 667 (1985); *U.S. v. Agurs*, 427 U.S. 97 (1976); *Bowen v Maynard*, 799 F.2d 593 (10th Cir. 1986). Alleged incidents involving other members of the Nortenos gang are discoverable as potential exculpatory evidence, particularly if the reports and evidence do not mention Mr. Cerda as being involved in the alleged gang activities.

(10) <u>Information Regarding Informants and Cooperating Witnesses</u>. The defendant requests that the government provide all relevant information concerning any informants or cooperating witnesses involved in this case. At a minimum, the government is obligated to disclose the identification and location of any informants or cooperating witnesses, as well as the identity and location of any other percipient witnesses unknown to the defendant. *Roviaro v. U.S.*, 353 U.S. 53 (1957). We know from the produced police reports that there were multiple percipient witnesses to the alleged attempted murder of Ms. Hipolito and Mr. Hernandez, including at least five individuals in the suspect vehicle. Those witnesses must be identified. Any privilege against disclosing the identity of a witness must give way when the disclosure of an informer's identity is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause. *U.S. v. Vincent*, 611 F.3d 1246, 1251 (10th Cir. 2010).

(11) <u>Evidence of Bias or Motive to Lie</u>. The defendant requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony. *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987); *U.S. v. Moreno-Rodriguez*, 744 F.Supp. 1040, 1041-42 (D.Kan. 1990).

(12) <u>Impeachment Evidence</u>. The defendant requests any evidence that any prospective government witness has engaged in any criminal act, whether or not resulting in a conviction, and whether any witness has made a statement favorable to the defendant. *See* Fed. R. Evid. 608, 609 and 613. Such evidence is discoverable under *Brady*, 373 U.S. at 83. *See U.S. v. Strifler*, 851 F.2d 1197 (9th Cir. 1988)

2

(witness' prior record), *Thomas v. U.S.*, 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility).

(13) <u>Evidence of Criminal Investigation of Any Government Witness</u>.   The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. *U.S. v. Chitty*, 760 F.2d 425 (2d Cir. 1985).

(14) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>.  The defense  requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.   *U.S. v. Strifler*, 851 F.2d 1197 (9th Cir. 1988); *Chavis v. North Carolina*, 637 F.2d 213, 224 (4th Cir. 1980).

(15) <u>Names of Witnesses Favorable to the Defendant</u>.  The defendant requests the name of any witness who has made an arguably favorable statement concerning the defendant. *Brady v. Maryland*, 373 U.S. 83 (1963); *Bowen v Maynard*, 799 F.2d 593 (10th Cir. 1986).

(18) *Giglio* Information. Pursuant to *Giglio v. U.S.*, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information that could arguably be used for the impeachment of any government witnesses.  *See U.S. v. Moreno-Rodriguez*, 744 F.Supp. 1040, 1041-42 (D.Kan. 1990).

### *Brady* Material.

The defendant has requested all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Impeachment as well as exculpatory evidence falls within *Brady*'s definition of evidence favorable to the accused.  *U.S. v. Bagley*, 473 U.S. 667 (1985); *U.S. v. Agurs*, 427 U.S. 97 (1976); *Bowen v Maynard*, 799 F.2d 593 (10th Cir.

1986). In particular, incidents involving other members of the Nortenos gang charged in this indictment should be discoverable as potential exculpatory evidence, particularly if the reports and evidence do not mention Mr. Cerda as being involved in the alleged gang activities. Although the government has provided police reports regarding the crimes charged against the defendant, it has not provided defendant Cerda the police reports regarding the specific offenses charged against the other 22 defendants. Defendant is entitled to see those reports.

Likewise, the defendant requested the name of any witness who has made an arguably favorable statement concerning the defendant. *Brady v. Maryland*, 373 U.S. 83 (1963); *Bowen v Maynard*, 799 F.2d 593 (10th Cir. 1986). No response has been received to this request.

### *Giglio* Impeachment Evidence

Pursuant to *Giglio v. U.S.*, 405 U.S. 150 (1972), the defendant is entitled to documents showing the statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information that could arguably be used for the impeachment of any government witnesses. *See U.S. v. Moreno-Rodriguez*, 744 F.Supp. 1040, 1041-42 (D.Kan. 1990). The government has not responded to defendant's written request for *Giglio* impeachment evidence.

The defendant has not received information about plea agreements or any other documentation that any other prospective government witness has engaged in any criminal act, whether or not resulting in a conviction or any evidence that any prospective witness

4

475

is under investigation by federal, state or local authorities for any criminal conduct. *See* Fed. R. Evid. 608, 609 and 613. Such evidence is discoverable also under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963). *See U.S. v. Strifler*, 851 F.2d 1197, 1202 (9th Cir. 1988) (the criminal record of a witness is available to the prosecutor and, as it bears on the witness's credibility, must be turned over to the defendant), *Thomas v. U.S.*, 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility is admissible).

It is defendant Cerda's position that he is entitled to plea agreements and other impeachment information regarding any government witness who may testify as to his gang participation or the gang participation of any of the "associates" of the defendant listed on the gang sheets produced by the government. Defendant Cerda is unable to prepare cross-examination of any witness offered on the subject of his gang affiliation until he receives the requested information.

Defendant also requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony. *See, Pennsylvania v. Ritchie*, 480 U.S. 39, 51-52,107 S.Ct. 989, 998 (1987) (the right to cross-examine includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable); *U.S. v. Moreno-Rodriguez*, 744 F.Supp. 1040, 1041-42 (D.Kan. 1990) (any promises of favorable treatment or leniency could rarely be deemed immaterial under either  Rule 16 or *Brady).*

The defense requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used

narcotics or other controlled substance, or has ever been an alcoholic. *U.S. v. Strifler*, 851 F.2d 1197 (9th Cir. 1988); *Chavis v. North Carolina*, 637 F.2d 213, 224 (4th Cir. 1980).

Defendant further requests all statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information that could arguably be used for the impeachment of any government witnesses. This information is discoverable pursuant to *Giglio v. U.S.*, 405 U.S. 150 (1972). *See also, U.S. v. Moreno-Rodriguez*, 744 F.Supp. supra, at 1041-42 (D.Kan. 1990).

In addition to any other impeachment information, the defendant is entitled to the gang sheet for each gang witness offered by the government. These sheets list information on tattoos, gang activity, associates and criteria for determining gang membership. A sheet is maintained for every suspected gang member. The sheets should be available for use to test the credibility of any cooperating gang witness.

The defendant prays that this Honorable Court enter an Order granting the disclosures and discovery requested herein.

Respectfully submitted this 25th day of October 2012.

> YOUNG, BOGLE, MCCAUSLAND,
>  WELLS & BLANCHARD, P.A.
> One Main Place
> 100 N. Main, Suite1001
> Wichita, Kansas  67202-1322
> Telephone:   (316) 265-7841
> Facsimile:    (316) 265-3956
> p.mccausland@youngboglelaw.com
>
> By Paul S. McCausland
> Paul S. McCausland, KS #08878
> Attorney for Angel Cerda

6

## REQUEST FOR HEARING

The defendant Angel Cerda respectfully requests a hearing on this motion.

YOUNG, BOGLE, MCCAUSLAND,
 WELLS & BLANCHARD, P.A.

By Paul S. McCausland
Paul S. McCausland, KS #08878
Attorney for Angel Cerda

## CERTIFICATE OF SERVICE

The undersigned counsel for defendant Angel Cerda hereby certifies that on this 25th day of October 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Aaron L. Smith and Lanny D. Welch, Assistant U.S. Attorneys, and all attorneys of record for the co-defendants named herein.

 s/ Paul S. McCausland
Paul S. McCausland, KS #08878

7

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 479

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 12-CR-100089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT PEDRO GARCIA'S MOTION TO SEVER

## - DEFENDANT GARCIA'S THIRTEENTH MOTION -

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John

Val Wachtel of Klenda Austerman LLC, and, pursuant to Rule 14 of the Federal Rules of Criminal

Procedure, hereby moves this Court for an order severing his trial from that of his co-defendants.

In support of this motion Mr. Garcia has submitted a memorandum of authorities.

WHEREFORE, Mr. Garcia prays for an order of Court granting this motion.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of October, 2012, I electronically filed the foregoing by

using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

KMAZ Doc. 20V5967

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

UNITED STATES OF AMERICA,     )
                                          )
              Plaintiff,     )
                                          )
          vs.               )     No. 12-CR-10089-02-MLB
                                          )
PEDRO GARCIA,              )
                                          )
              Defendant.    )
_____)

**MEMORANDUM IN SUPPORT OF DEFENDANT PEDRO GARCIA'S
MOTION FOR SEVERANCE**

**- IN SUPPORT OF DEFENDANT GARCIA'S THIRTEENTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John

Val Wachtel of Klenda Austerman LLC, and hereby submits this memorandum in support of his

motion pursuant to Rule 14 of the Federal Rules of Criminal procedure for an order severing his trial

from the trial of his co-defendants.

**Factual Background**

1.  Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains

thirty-eight alleged separate violations of federal criminal law.  (Doc. 1.)

2.  Count 1, charges the defendant, along with Jason Najera, Gonzalo Ramirez, Anthony

Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together with

persons known and unknown, being persons associated with the Nortenos street gang, an enterprise

which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly

and intentionally conspired to violate 18 U.S.C. § 1962(c) ...  [a]ll in violation of  18 U.S.C. §

1962(d)." *Id*. These named defendants are charged specifically with the "Racketeering Conspiracy."

Id., ¶ 7.  <u>None of the remaining fourteen defendants are charged with a racketeering conspiracy charged in Count 1</u>.  *Id*.

2.  Count 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright with the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5).  *Id*.

3.  When the Indictment in this case was filed, it contained a section titled "Notice of Special Findings."  *Id*. p. 32-33.  The Notice of Special Findings placed Mr. Garcia on notice that should the Department of Justice approve a request from the United States Attorney for the District of Kansas, the government could seek the death penalty against Mr. Garcia and his co-defendant Gonzalo Ramirez.

4.  Count 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering.  It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1).  *Id*.

5.  Count 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1).  *Id*.

6.  Count 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3).  *Id*.

7.  Count 6, charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A).  *Id*.

8.  Count 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3).  Count 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6).  Count 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A).  *Id*.  Neither Joshua Flores nor Jesus Flores is charged in the racketeering conspiracy.

9.  On September 7, 2012, the government filed a "Notice."  (Doc. 290.)  In the Notice the

2

government advised the Court that it would not seek the death penalty in its case against Mr. Garcia and Mr. Ramirez.

## Argument and Authorities

Rule 8(b) of the Federal Rules of Criminal Procedure provides in part that the government, in the indictment "... may charge 2 or more defendants if they are alleged to have participated in the same transaction, or in the same series of acts or transactions, constituting an offense or offenses ... ."

However, Rule 14(a) provides:

> **(a) Relief**. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trial of counts, sever the defendants' trials, or provide any other relief that justice requires.

Rule 14(a), Fed. R. Crim. Pro. (emphasis in the original). The Advisory Committee Comments to the Rule state, in part, that:

> A defendant may be prejudiced by the admission in evidence against a co-defendant or a statement or confession made by that co-defendant. This prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not erase the prejudice. While the question whether to grant a severance is generally left within the discretion of the trial court, recent Fifth Circuit cases have found sufficient prejudice involved to make denial of a motion for severance reversible error. ...  ."

*Id*. Advisory Committee Notes, 1966 Amendment (internal citations omitted).

Mr. Garcia anticipates that in opposition to this motion to sever the government will argue that because Mr. Garcia is charged with being a member of the Nortenos street gang, which it alleges was an enterprise in Dodge City, Kansas that operated for a common purpose and to achieve common objectives he is properly joined in the Indictment with all the other defendants. The government will likely argue that Mr. Garcia's alleged acts are part of a series of acts and offenses which were committed on behalf of and in furtherance of the enterprise, and for those reasons, the

3

joinder of all defendants is correct in Mr. Garcia's case. *See* Response of the United States to Defendant Quezada's Motion to Sever, (Doc. 244).

With respect to severance motions, "a court 'may' sever the trial of more than one defendant if joinder 'appears to prejudice a defendant or the government' Fed.R.Crim.P. 14(a). *United States v. Wardell*, 591 F.3d 1279, 1299 (10th Cir. 2009). The defendant moving for severance bears the burden of showing real prejudice. *Id*. citing *United States v. McConnell*, 749 F2d 1441, 1444 (10th Cir. 1984). "Prejudice occurs when there is a serious risk that **a joint trial will compromise a specific trial right** of one of the defendants, **or prevent the jury from making a reliable judgment about guilt or innocence**." *United States v. Stiger*, 413 F. 3d 1195, 1197 (10th Cir. 2005) (emphasis added), citing *United States v. Edwards*, 69 F.3d 419, 434 (10th Cir. 1995).

To determine whether a court abused its discretion in denying a motion to sever the certain non-exhaustive factors are evaluated, i.e. the "*McConnell* factors." *Wardell*, 519 F3d at 1299." The *McConnell* factors are:

> 1) the likelihood that the co-defendant would in fact testify at the movant's severed trial and waive his Fifth Amendment privilege; 2) the significance of the testimony in relation to the defendant's theory of defense; 3) the exculpatory nature and effect of such testimony; 4) the likelihood that the co-defendant's testimony would be impeached; 5) the extent of prejudice caused by the absence of the testimony; 6) the effect of severance on judicial administration and economy; [and] 7) the timeliness of the motion.

*Id*. citing *McConnell*, 749 F2d 1445.

The Indictment identifies those whom the government views as "leaders" of the Norteno street gang. Those "leaders" are, the government alleges, Jason Najera, Eusebio Sierra-Medrano and Fabian Neave." What role Mr. Garcia may have played in the street gang, is not set out in the Indictment. See Indictment, Count 1, "Roles of the Defendants," pp. 4-5.

Count 2 of the indictment charges violent crimes in aid of racketeering. Specifically, Mr.

4

Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright are charged with conspiracy to murder, Israel Peralta, Mariano Sorano, Faustino Peralta and Robert Arco.  Count 3 charges the same defendants with having murdered Peralta.  Count 4 charges the four with attempting to murder Sorano, Peralta and Arco, while Count 5 charges the four with assault with a dangerous weapon. Count 6 charges the four with possessing and discharging a firearm.

Counts 7, 8 and 9 charge Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with committing other violent crimes against different victims.  Count 7 charges assault with a dangerous weapon against Isidro Raleas-Velasquez. Count 8 charges these four co-defendants with conspiracy to commit an assault with a dangerous weapon, and Count 9 charges them with brandishing a firearm in furtherance of a crime of violence.

Mr. Garcia does not argue that the crimes with which he is charged are not serious.  He does point out that based solely on the discovery he has received to date, there is no evidence connecting him with the crimes alleged in Counts 2 through 9, and that the evidence connecting him with Count 1 is spotty.

Regarding Count 1, the government's disclosed 'evidence' consists, in-the-main of 'gang sheets.'  The government may argue that during telephone calls placed by Mr. Garcia while in prison he admitted to being a Norteno; however, that evidence is circumstantial and can be interpreted in a number is fashions.

As to Counts 2 through 6, the allegations are not supported by any evidence produced by the government in discovery as of this writing.  There is eye witness testimony which places the co-defendant Worthey in or near the vicinity in which these crimes were committed - including a photo array out of which Mr. Worthey was identified by that witness.  It should be noted that a photo of Mr. Garcia was included in the various photo arrays shown to potential witnesses, and no eye witness

5

identified him as a participant in these crimes.   There may be other discovery regarding these crimes; however that discovery has not been provided to Mr. Garcia.

With regard to Counts 7 through 9, there is likewise no evidence produced in discovery connecting Mr. Garcia to any of those charged crimes.  Nor has the defense been able to locate any evidence linking Gonzalo Ramirez, Joshua Flores and Jesus Flores to these crimes.  The government may have some evidence making a connection; however if it does that evidence has not been disclosed.

Joinder of defendants is permissible under Rule 8(b) of the Federal Rules of Criminal procedure if the defendants are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense.  However, "when the connection between different groups is limited to a few individuals common to each but those individuals commit separate acts which involve them in separate offenses with no common aim, then the requisite substantial identity of facts or participants is not present." *United States v. Nettles*, 570 F.2d 545, 551 (10th Cir.1978).  As the Eleventh  United States Circuit Court of Appeals pointed out in *Weaver*, "while criminal acts of several defendants may be similar in nature, those acts cannot be properly joined in a multiple defendant trial if different facts and circumstances must be established to support the alleged violation." *United States v. Weaver*, 905 F.2d 1466, 1477 (11th Cir. 1990).  As can readily be seen from the indictment in Mr. Garcia's case different facts and circumstances are involved in the allegations against Mr. Garcia than are involved in the Counts against most of the other defendants.  Joinder is not appropriate in Mr. Garcia's case, and severance is required.

Assuming *arguendo* that joinder was appropriate when this case was filed, Mr. Garcia recognizes that there is a court created presumption that "in a conspiracy trial that coconspirators charged together should be tried together." *Stiger*, 413 F.3d at 1197.  If that ruling is followed in this

6

Case 6:12-cr-10089-MLB   Document 408   Filed 10/26/12   Page 7 of 9

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 487

case it might be appropriate to try him along with the racketeering conspirators identified in Count 1.

Mr. Garcia also recognizes that "[j]oint trials of defendants who are charged together are preferred because they promote efficiency and serve the interest of justice by avoiding the scandal and inequity of inconsistent verdicts." *United States v. Zapata*, 546 F.3d 1179, 1191 (10th Cir. 2008). Neither of these factors is directly set out in the *McConnell* factors. Moreover, Mr. Garcia points out that the presumption pointed out at *Stiger*, p. 1197, by its very nature operates against a defendant. Granting a preference to the government as to the manner in which co-conspirators are tried, based upon the way in which the government chose to draft an indictment gives an interesting advantage to the government simply by the preference arising out of the pleadings.

Based upon counsel's understanding of this case and based as well on the discovery received to date, Mr. Garcia believes that in the absence of an order severing his case, he will suffer the prejudice acknowledged and identified in the *Stiger* case. That is to say, such a joint trial will operate to prevent the jury from making a reliable judgment about guilt or innocence. *See Stiger*, 413 F. 3d at 1197.

It has long been recognized that a greater potential for prejudice arises in a conspiracy case than it does in cases involving substantive crimes. The evidence of conspiracy "[is] often provided by evidence that is admissible only upon the assumption that the conspiracy existed." *Krulewitch v. United States*, 363 U.S. 440, 453 (1949). Court's and practicing attorneys know that this prejudice cannot be overcome by instructions to the jury, which "[is] unmitigated fiction." *Id*.

Mr. Garcia realizes that he has not addressed in this motion all of the *McConnell* factors. He is unable to do this at this time because the discovery as the same impacts upon him provides nothing which leads to his guilt of the crimes with which he has been charged. Accordingly, Mr. Garcia reserves the right to amend this motion or to file an additional such motion following discovery.

487

As noted above there is an absence of evidence connecting Mr. Garcia to the crimes with which he is charged.  Mr. Garcia reasonably believes that the government's evidence will consist of the testimony of co-conspirators who have pled guilty, or who will plead guilty or who are not being charged.  Despite the rule that the Constitution prohibits comments from the government on the failure of a defendant to testify, *Griffen v. California*, 380 U.S. 609 (1965), courts also recognize that if one defendant testifies at trial and another does not, counsel for the testifying defendant may comment on the a co-defendant's failure to testify.  The testifying defendant's right to comment is at odds with the non-testifying defendant's Fifth Amendment right to remain silent.  This conundrum can be satisfied only by severance. *See DeLuan v. United States*, 308 F.2d, 140, 141 (5th Cir. 1962).

Mr. Garcia and other defendants have filed motions for a *James* hearing on the conspiracy issues raised by the government.  Mr. Garcia will supplement this motion following the *James* hearing, he also reserves his right to file a second motion for severance after the *James* hearing if this motion is not granted.

### Conclusion

WHEREFORE, Mr. Garcia prays that his motion be granted, and for such other and further relief as is just and equitable in these premises.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

8

489

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of  October 2012, I electronically filed the foregoing by

using the CM/ECF system which will send a notice of electronic filing to the counsel of record.


s/John Val Wachtel
John Val Wachtel


Doc. 20V5981

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 12-CR-100089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION FOR JOINDER IN CERTAIN MOTIONS FILED BY CO-DEFENDANTS EUSEBIO SIERRA-MEDRANO AND JASON NAJERA**

**- DEFENDANT GARCIA'S FOURTEENTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby moves this Court for an order allowing him to join in Defendant Eusebio Sierra-Medrano's motion for order prohibiting the government, law enforcement officers, government agents or cooperating individuals from approaching and discussing or attempting to discuss with the defendant possible or future illegal activity in order to bolster or manufacture evidence which could be used by the government in its prosecution of Mr. Garcia, and the memorandum filed in support thereof.  (Doc.  344 and Doc. 345.)  In addition, Mr. Garcia seeks leave to join Jason Najera's motion to exclude *Bruton* evidence (Doc. 379), and Defendant Jason Najera's motion for specific street gang evidence (Doc. 380).

In support of this motion Mr. Garcia states that he and twenty-two other defendants are charged in an Indictment which contains thirty-eight alleged separate violations of federal criminal law.  (Doc. 1.)  Count 1, inter alia, charges the defendant, along with Jason Najera, Gonzalo Ramirez, Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave,

"together with persons known and unknown, being persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c) ... [a]ll in violation of 18 U.S.C. § 1962(d)." *Id.*

Count 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright with the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5). *Id.* When the Indictment in this case was filed, it contained a section titled "Notice of Special Findings." *Id.* p. 32-33. The Notice of Special Findings placed Mr. Garcia on notice that, should the Department of Justice approve a request from the United States Attorney for the District of Kansas, the government could seek the death penalty against Mr. Garcia and his co-defendant Gonzalo Ramirez.

Count 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering. It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1). *Id.* Count 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1). *Id.* Count 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3). *Id.* Count 6 charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

Count 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3). Count 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6), and Count 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

This case has been declared complex. Thousands of pages of discovery have been provided to the defendants in electronic fashion. The motions referenced hereinabove are relevant to Mr.

2

492

Garcia, and if ruled upon favorable will provide him with relief.

Mr. Garcia has in interest in preserving objections and legal issues for a potential appeal; however, the filing of separate motions by him might be repetitive or cumulative in light of the fact that adequate and well briefed motions have been filed by other defendants.  The filing of multiple and repetitive motions is burdensome to the Court, defense counsel and the government.  Both judicial economy and simple justice are served by granting Mr. Garcia's motion.

WHEREFORE, Mr. Garcia prays for an order of Court granting this motion.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of October, 2012, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

KMAZ Doc. 20W0713

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 12-CR-100089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION FOR JOINDER IN CO-DEFENDANT
ANGEL CERDA'S MOTION FOR DISCLOSURE OF EXCULPATORY EVIDENCE,
PLEA AGREEMENTS AND IMPEACHMENT MATERIALS**

**- DEFENDANT GARCIA'S FIFTEENTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby moves this Court for an order allowing him to join in Defendant Angel Cerda's motion for disclosure of exculpatory evidence, plea agreements and impeachment materials.  (Doc. 396.)  In support of this motion, Mr. Garcia states as follows:

Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains thirty-eight alleged separate violations of federal criminal law.  (Doc. 1.)  Count 1, inter alia, charges the defendant, along with Jason Najera, Gonzalo Ramirez, Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together with persons known and unknown, being persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c) ...  [a]ll in violation of  18 U.S.C. § 1962(d)."  *Id.*

Count 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright with

the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5).  *Id*.  When the Indictment in this case was filed, it contained a section titled "Notice of Special Findings."  *Id*.  p. 32-33.  The Notice of Special Findings placed Mr. Garcia on notice that, should the Department of Justice approve a request from the United States Attorney for the District of Kansas, the government could seek the death penalty against Mr. Garcia and his co-defendant Gonzalo Ramirez.

Count 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering.  It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1).  *Id*.  Count 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1).  *Id*.  Count 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3).  *Id*.  Count 6 charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A).  *Id*.

Count 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3).  Count 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6), and Count 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A).  *Id*.

On August, 7, 2012, counsel for Mr. Garcia wrote to Assistant United States Attorney Aaron Smith, making, among others, the following requests for discovery:

> (5) *Brady* Material.  The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affect the credibility of the government's case.  Impeachment as well as exculpatory evidence falls within *Brady*'s definition of evidence favorable to the accused.  *U.S. v. Bagley*, 473 U.S. 667 (1985); *U.S. v. Agurs*, 427 U.S. 97 (1976); *Bowen v. Maynard*, 799 F.2d 593 (10th Cir. 1986).  Alleged incidents involving other members of the Nortenos gang are discoverable potential exculpatory evidence, particularly if the reports and evidence do not mention Mr. Garcia as being involved in the alleged gang activities.

2

(10) <u>Information Regarding Informants and Cooperating Witnesses</u>.  The defendant requests that the government provide all relevant information concerning any informants or cooperating witnesses involved in this case.  At a minimum, the government is obligated to disclose the identification and location of any informants or cooperating witnesses, as well as the identity and location of any other percipient witnesses unknown to the defendant.  *Roviaro v. U.S.*, 353 U.S. 53 (1957).  We know that Mr. Worthey was identified by at least one civilian witness that was questioned regarding Counts 3 through 9.  There were multiple percipient witnesses to the alleged crimes.  All witnesses must be identified.  Any privilege against disclosing the identity of a witness must give way when the disclosure of an informer's identity is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause.  *U.S. v. Vincent*, 611 F.3d 1246, 1251 (10th Cir. 2010).

(11) <u>Evidence of Bias or Motive to Lie</u>.  The defendant requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony.  This includes *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987); *U.S. v. Moreno-Rodriguez*, 744 F.Supp. 1040, 1041-42 (D.Kan. 1990).

(12) <u>Impeachment Evidence</u>.  The defendant requests any evidence that any prospective government witness has engaged in any criminal act, whether or not resulting in a conviction, and whether any witness has made a statement favorable to the defendant.  *See* Fed. R. Evid. 608, 609 and 613.  Such evidence is discoverable under *Brady*, 373 U.S. at 83.  *See U.S. v. Strifler*, 851 F.2d 1197 (9th Cir. 1988) (witness' prior record), *Thomas v. U.S.*, 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility).

(13) <u>Evidence of Criminal Investigation of Any Government Witness</u>.  The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. *U.S. v. Chitty*, 760 F.2d 425 (2d Cir. 1985).

(14) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>.  The defense  requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.  *U.S. v. Strifler*, 851 F.2d 1197 (9th Cir. 1988); *Chavis v. North Carolina*, 637 F.2d 213, 224 (4th Cir. 1980).

(15) <u>Names of Witnesses Favorable to the Defendant</u>.  The defendant requests the name of any witness who has made an arguably favorable statement concerning

the defendant. *Brady v. Maryland*, 373 U.S. 83 (1963); *Bowen v Maynard*, 799 F.2d 593 (10th Cir. 1986).

(18) *Giglio* Information. Pursuant to *Giglio v. U.S.*, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information that could arguably be used for the impeachment of any government witnesses. *See U.S. v. Moreno-Rodriguez*, 744 F.Supp. 1040, 1041-42 (D.Kan. 1990).

The government has not yet provided the requested information.

This case has been declared complex. Thousands of pages of discovery have been provided to the defendants in electronic fashion. Mr. Cerda's motion is as applicable to Mr. Garcia as it is applicable to Mr. Cerda, and Mr. Garcia makes the same requests for relief as does Mr. Cerda. If Mr. Cerda's motion is ruled upon favorably such ruling will provide Mr. Garcia with the same relief.

Mr. Garcia has an interest in preserving objections and legal issues for a potential appeal; however, the filing of separate motions by him might be repetitive or cumulative in light of the fact that adequate and well briefed motions have been filed by other defendants. The filing of multiple and repetitive motions is burdensome to the Court, defense counsel and the government. Both judicial economy and simple justice are served by granting Mr. Garcia's motion.

WHEREFORE, Mr. Garcia prays for an order of Court granting this motion.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail: jvwachtel@klendalaw.com

4

497

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of October, 2012, I electronically filed the foregoing by

using the CM/ECF system which will send a notice of electronic filing to the counsel of record.


s/John Val Wachtel
John Val Wachtel


KMAZ Doc. 20W0716

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 12-CR-100089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION FOR JOINDER IN CO-DEFENDANT ANGEL CERDA'S MOTION FOR IDENTIFICATION AND PRODUCTION OF STATEMENTS OF PERCIPIENT WITNESSES**

**- DEFENDANT GARCIA'S SIXTEENTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby moves this Court for an order allowing him to join in Defendant Angel Cerda's motion for identification and production of percipient witnesses. (Doc. 395.)  In support of this motion, Mr. Garcia states as follows:

Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains thirty-eight alleged separate violations of federal criminal law. (Doc. 1.)  Count 1, inter alia, charges the defendant, along with Jason Najera, Gonzalo Ramirez, Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together with persons known and unknown, being persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c) ...  [a]ll in violation of  18 U.S.C. § 1962(d)."  *Id.*

Count 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright with

the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5). *Id*. When the Indictment in this case was filed, it contained a section titled "Notice of Special Findings." *Id*. p. 32-33. The Notice of Special Findings placed Mr. Garcia on notice that, should the Department of Justice approve a request from the United States Attorney for the District of Kansas, the government could seek the death penalty against Mr. Garcia and his co-defendant Gonzalo Ramirez.

Count 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering. It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1). *Id*. Count 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1). *Id*. Count 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3). *Id*. Count 6 charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id*.

Count 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3). Count 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6), and Count 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id*.

At Section I of his motion, titled "Evidence to be Produced," Mr. Cerda has identified four categories of reports and materials which he seeks to be produced. Mr. Garcia hereby revises subsections "C" and "D" as follows:

(C) With respect to Counts 2 through 6, the identity of any law enforcement reports

concerning interviews of any percipient witnesses who claim to have been members

of the Nortenos, Diablos Viejos and/or Los Carnales Chingones street gangs and who

were present at the attack(s) upon Isreal Peralta, Mariano Sorano, Faustino Peralta

2

and Robert Arco which occurred on or about June 8, 2009, in Dodge City, Kansas, in order to refute the government's motive for these crimes which the government alleges were committed for the purpose of Mr. Garcia gaining admittance to and/or maintaining or increasing his position in the Nortenos street gang.  Mr. Garcia makes the same requests regarding Counts 7 thorough 9, regarding crimes allegedly committed against Isidro Raleas-Velasquez, on or about June 8, 2009, in Dodge City, Kansas.  These crimes are also alleged to have been committed for the purpose of gaining admittance to and/or maintaining or increasing his position in the Nortenos street gang.

D.  Any interviews with the victims' of Counts 2 through 9, families, friends and associates which will provide insight into the victims' gang affiliations, their friends' family members and associates' gang affiliations that will provide insight to the defendant in order to refute the government's alleged motives for committing these alleged crimes.

As did Mr. Cerda, Mr. Garcia seeks the identities of these witnesses and unreadacted copies of their statements to law enforcement officers for the same reasons set out by Mr. Cerda.  In addition, Mr. Garcia seeks statements of any cooperating witnesses for the same purposes set out in Mr. Cerda's motion.

On August, 7, 2012, counsel for Mr. Garcia wrote to Assistant United States Attorney Aaron Smith, making, among others, the following requests for discovery:

(10) Information Regarding Informants and Cooperating Witnesses.  The defendant requests that the government provide all relevant information concerning any informants or cooperating witnesses involved in this case.  At a minimum, the government is obligated to disclose the identification and location of any informants or cooperating witnesses, as well as the identity and location of any other percipient

3

witnesses unknown to the defendant. *Roviaro v. U.S.*, 353 U.S. 53 (1957). We know that Mr. Worthey was identified by at least one civilian witness that was questioned regarding Counts 3 through 9. There were multiple percipient witnesses to the alleged crimes. All witnesses must be identified. Any privilege against disclosing the identity of a witness must give way when the disclosure of an informer's identity is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause. *U.S. v. Vincent*, 611 F.3d 1246, 1251 (10th Cir. 2010).

The government has not yet fully responded to this discovery request.

Mr. Garcia points out that although investigations were conducted with respect to Counts 2 through 9, no evidence has yet been produced in discovery connecting Mr. Garcia to those crimes. No DNA identifying Mr. Garcia has been produced, no fingerprint evidence has been produced connecting Mr. Garcia to these crimes, and no weapons have been identified as connecting Mr. Garcia to these crimes. The government provided with a copy of a search warrant which was issued by a Ford County Judge for the search of Mr. Garcia's home. Nothing was collected during the search which connects Mr. Garcia to any of the crimes alleged against him.

The statement of a witness who reports to have seen the defendant Russell Worthey at or near the scene of the crimes alleged in Counts 2 through 6 had been produced, as has a copy of a photo array in which the eye witness purportedly identified Mr. Worthey as being at or near the scene. No witness has placed Mr. Garcia at or near the scene of the crimes charged in Counts 2-7, and the same is true with regard to the crimes alleged in Counts 7 through 9. In short the government has produced no evidence linking Mr. Garcia to these crimes.

Mr. Garcia recognizes the government's interest in protecting confidential informants and cooperating witnesses. Mr. Garcia is currently housed in the Butler County Jail. To the extent that confidential informants or cooperating witnesses are housed in that facility, the government has the power to secure their transfers to some other facility.

This case has been declared complex. Mr. Cerda's motion is as applicable to Mr. Garcia as it

4

is applicable to Mr. Cerda.  Mr. Garcia makes the same requests for relief as does Mr. Cerda.  If Mr. Cerda's motion is ruled upon favorably such ruling will provide Mr. Garcia with the same relief.

Mr. Garcia has an interest in preserving objections and legal issues for a potential appeal; however, the filing of separate motions by him might be repetitive or cumulative in light of the fact that adequate and well briefed motions have been filed by other defendants.  The filing of multiple and repetitive motions is burdensome to the Court, defense counsel and the government.  Both judicial economy and simple justice are served by granting Mr. Garcia's motion.

WHEREFORE, Mr. Garcia prays for an order of Court granting this motion.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of October, 2012, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

KMAZ Doc. 20W0728

5

502

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  12-10089-03 MLB |
| | ) | |
| GONZALO RAMIREZ, | ) | |
| Defendant. | ) | |
| | ) | |

## MOTION TO DISMISS AND REQUEST FOR BILL OF PARTICULARS

COMES NOW the defendant, Gonzalo Ramirez, by and through his counsel, Joel Mandelman and Timothy J. Henry, Assistant Federal Public Defenders for the District of Kansas, and moves this Court to dismiss the indictment in this case as an improper exercise of Commerce Clause to permit the Government from invoking federal jurisdiction through the RICO statute upon which the Government's theory rests.  Additionally, defendant moves for a Bill of Particulars to issue requiring the Government to more fully set forth their theory of how common crimes of violence invoke the necessary nexus to interstate commerce.  On behalf of this motion, defense counsel state as follows:

Defendant Gonzalo Ramirez is charged in Count 1 with a RICO conspiracy under 18 U.S.C. § 1962(d); in Count 2 with a VICAR conspiracy under 18 U.S.C. § 1959(a)(5); in Count 3 with a VICAR substantive act of murder under 18 U.S.C. § 1959(a)(1) and (2); in Count 4 with a VICAR substantive act of attempted murder under 18 U.S.C. § 1959(a)(5) and (2); in Count 5 with a VICAR substantive act of assault with a dangerous weapon under 18 U.S.C. § 1959(a)(3) and (2); in Count 6 with possession and discharge of a firearm in

furtherance of a crime of violence which may be prosecuted in a court of the United States, to wit: murder in the first degree under 18 U.S.C. § 924(c)(1)(A) and (2); in Count 7 with a VICAR substantive act of assault with a dangerous weapon under 18 U.S.C. § 1959(a)(3) and (2); in Count 8 with a VICAR conspiracy count to commit assault with a dangerous weapon under 18 U.S.C. § 1959(a)(6); in Count 9 with possession and brandish of a firearm in furtherance of a crime of violence which may be prosecuted in a court of the United States, to wit: aggravated robbery under 18 U.S.C. § 924(c)(1)(A) and (2); in Count 10 with a VICAR conspiracy count to commit murder under 18 U.S.C. § 1959(a)(5); in Count 11 with a VICAR substantive act of attempted murder under 18 U.S.C. § 1959(a)(5) and (2); in Count 12 with a VICAR substantive act of assault with a dangerous weapon under 18 U.S.C. § 1959(a)(3) and (2); and finally in Count 13 with possession and discharge of a firearm in furtherance of a crime of violence which may be prosecuted in a court of the United States under 18 U.S.C. § 924(c)(1)(A) and (2).

Whether any of these crimes of violence alleged above can be prosecuted in a court of the United States hinges on the Government's ability to invoke the RICO and VICAR statutes under what has traditionally been the subject of state jurisdiction, *i.e.*, the crimes of violence alleged above against the defendant.  To do so, the Government has to allege and prove not only that there is a nexus somehow to interstate commerce but, as will be argued below and in the memorandum of law in support of this motion to dismiss, that showing must be that these crimes of violence have a "substantial" affect on interstate commerce.

> RICO is a powerful statute but also a confounding one.  Because of RICO's broad text and scope, courts have found it challenging to interpret the statute so as to capture racketeers–those who engage in a *pattern* of continued criminal activity–without also subjecting garden-variety fraud or criminal conduct to the statute's severe penal and monetary sanctions.

*United States v. Knight*, 659 F.3d 1285, 1288 (10th Cir. 2011) (emphasis by court).  The alleged crimes of violence found in Counts 1-13 against the defendant are simply the garden-variety criminal activity that should not find its way into the federal courthouse.  As such, the present indictment fails to state a claim upon which federal jurisdiction under the Commerce Clause arises and, therefore, defense counsel requests the indictment be dismissed.

Under Article I, § 8, clause 3 of the United States Constitution, Congress has the power to "regulate Commerce with foreign Nations, and among several States, and with Indian Tribes...."  Congress "may exercise  **only** the powers granted to it" by the Constitution.  *McCulloch v. Maryland*, 4 Wheat. (17 U.S.) 316, 405 (1819) (emphasis supplied).  The Commerce Clause is neither self-executing nor an affirmative command that Congress shall regulate.  It is an enumerated power, which Congress may execute within its authority.  The Supreme Court has cautioned against the abuse of this authority:

> The authority of the federal government may not be pushed to such an extreme as to destroy the distinction, which the commerce clause itself establishes, between commerce "among the several States" and the internal concerns of a State.  That distinction between what is national and what is local in the activities of commerce is vital to the maintenance of our federal system.

*N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30 (1937).

"[U]nlike the reserved police powers of the States, which are plenary unless

3

challenged as violating some specific provision of the Constitution, the connection with interstate commerce is itself a jurisdictional prerequisite for any substantive legislation by Congress under the Commerce Clause." *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 311 (1981) (Rehnquist, J., concurring).  Moreover, "simply because Congress may conclude that a particular activity substantially affects interstate commerce does not necessarily make it so." *Id.*[1]

This case concerns whether, in view of the federalist design of our Constitution, Congress has the power to criminalize what has traditionally been the province of the States, *i.e.*, common crimes of violence that have no effect on interstate commerce, much less a substantial one.

In its landmark decision in *United States v. Lopez*, 514 U.S. 549 (1995), the Supreme Court held that the Commerce Clause does not authorize Congress to criminalize the purely local, non-economic or non-commercial, possession of a firearm within a school zone because such an activity does not constitute a "substantial" effect on interstate commerce. *Lopez*, 514 U.S. at 560-561.  Likewise, crimes of murder, attempted murder or assault with a dangerous weapon simply are the non-economic, non-commercial type of crimes that traditionally have been the fodder of the state courts, not federal courts.

---

[1]   As Judge (now Justice) Alito exclaimed, "[w]as *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, L.Ed.2d 626 (1995), a constitutional freak?  Or did it signify that the Commerce Clause still imposes some meaningful limits on congressional power?"  *United States v. Rybar*, 103 F.3d 273, 286 (3rd Cir. 1996) (J. Alito, dissenting).

4

The Supreme Court has identified three general areas of regulation that Congress is permitted to engage in under the Commerce Clause. *See Lopez*, 514 U.S. at 558; *see also Perez v. United States*, 402 U.S. 146, 150 (1971). The first area or category is the "channels" of interstate commerce. 514 U.S. at 558. Second is the "instrumentalities of interstate commerce, or persons or things in interstate commerce." *Id.* Finally, there are "those activities that substantially affect interstate commerce." *Id.* at 559. Clearly, the RICO and VICAR allegations contained in Counts 1-13, and in the indictment as a whole, are the very intrastate activities that, if permitted to provide this Court with federal jurisdiction under the Commerce Clause, must be analyzed under this third area of regulation that requires a substantial affect on interstate commerce. *See, e.g.*, *United States v. Nascimento*, 491 F.3d 25, 40-42 (1st Cir. 2007). Not only does this non-commercial, non-economic activity not fit within this 3rd prong of Commerce Clause jurisprudence, but the Government is also precluded from using the aggregation theory when it attempts to prove this "substantial" affect on interstate commerce. *Id.*

Although the Supreme Court in *United States v. Robertson*, 514 U.S. 669, 671 (1995), left open the question of whether the affecting interstate commerce provision of the RICO statute would require the Government to prove the activities of the enterprise have a substantial, as opposed to a *de minimis* affect on interstate commerce, defense counsel submit that Commerce Clause jurisprudence since then has clearly required the "substantial" standard. Further, it is clear the Government cannot invoke the Commerce Clause or federal

jurisdiction for what are local crimes of violence as there is no affect on interstate commerce, much less a substantial one.

More recent Commerce Clause jurisprudence by the Supreme Court appears in *United States v. Morrison*, 529 U.S. 598 (2000) and *Gonzales v. Raich*, 545 U.S. 1 (2005).  In *Raich*, this Court permitted federal regulation of a purely local activity where there was a comprehensive regulatory scheme that was "economic" or "commercial" in nature if the intrastate activity had a substantial affect upon interstate commerce. *Raich*, 545 U.S. at 2205. This was not the case in both *Lopez* and *Morrison* which were criminal in nature.  However, as with *Lopez* and *Morrison*, intrastate crimes of violence are not "commercial," nor are they subject to a comprehensive regulatory scheme.

Unlike the marijuana in *Raich*, or even the wheat in *Wickard v. Filburn*, 317 U.S. 111 (1942), where there was an established comprehensive regulatory scheme thereby permitting the *de minimis* local activity or conduct to have, in the aggregate, a substantial affect on interstate commerce, crimes of violence are not  "an essential part of a larger regulation of economic activity, in which the regulatory scheme would be undercut unless the intrastate activity were regulated." *Lopez*, 514 U.S. at 560.  Given the criminal, non-commercial nature of the RICO and VICAR allegations, the aggregation analysis cannot be applied under the Supreme Court's more recent Commerce Clause jurisprudence.  *Morrison* made clear that Congress cannot constitutionally regulate purely intrastate criminal conduct that is non-economic by aggregating such non-economic activity.

6

> We . . . reject the argument that Congress may regulate noneconomic . . . criminal conduct based solely on that conduct's aggregate effect on interstate commerce.  The Constitution requires a distinction between what is truly national and what is truly local. . . .  In recognizing this fact we preserve one of the few principles that has been consistent since the Clause was adopted. The regulation and punishment of intrastate [criminal conduct] that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States.

*Morrison*, 529 U.S. at 617-618.

If this Court were to hold merely a *de minimis* standard need only apply to the interstate commerce nexus, alternatively, this Court should apply the "constitutional doubt" or sometimes called the "constitutional avoidance" doctrine to require the heightened "substantial" affect on interstate commerce standard.  *See Jones v. United States*, 529 U.S. 848 (2000)**.**

In *Jones*, the Supreme Court, applying the "constitutional doubt" doctrine of statutory construction,[2] strongly suggested that 18 U.S.C. § 844(i) could not constitutionally be construed to cover the arson of a private residence and specifically held that the mere fact that private residences are constructed with supplies that have moved in interstate commerce at some point in the past cannot serve as the basis of federal jurisdiction.  *Id*. at 856-58.

> Were we to adopt the Government's expansive interpretation of § 844(i), hardly a building in the [country] would fall outside the statute's

---

[2]  "[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter."  *Jones*, 529 U.S. at 857, quoting *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909) (citations omitted).

> domain. Practically every building in our cities, towns, and rural areas is constructed with supplies that have moved in interstate commerce, served by utilities that have an interstate connection, financed or insured by enterprises that do business across state lines, or bears some other trace of interstate commerce.

*Id.* at 857.

Finally, defense counsel maintain the Government's conclusory pleading of the interstate commerce nexus in the indictment is insufficient to properly allege and, therefore, give this Court the federal jurisdiction needed to permit this prosecution to go forward. Incorporating by reference the other codefendants' counsel arguments with respect to their request for a bill of particulars to issue, defendant Gonzalo Ramirez would add this request that the Government spell out how crimes of violence, even from the "enterprise" alleged in the indictment, affects interstate commerce. It is not a given simply because they file a RICO or VICAR indictment. As mentioned at the beginning of this motion, invoking the Commerce Clause in the context of what has traditionally been the sole domain of state jurisdiction requires more. Further, the issuance of such a bill of particulars would give this Court the ability to more fully decide whether the present prosecution belongs in federal court, as opposed to state court.

WHEREFORE, for the above and foregoing reasons, defendant prays this Court dismiss this prosecution as being an invalid exercise of the Government's Commerce Clause powers.

Respectfully submitted,

s/Timothy J. Henry
TIMOTHY J. HENRY
KS Sup. Ct. No. 12934
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Tim_Henry@fd.org

s/Joel Mandelman
JOEL MANDELMAN
KS Sup. Ct. No. 25726
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Joel_Mandelman@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2012, I electronically filed the foregoing Motion to Dismiss and Request for Bill of Particulars with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Aaron Smith
Assistant U.S. Attorney
301 N. Main, Suite 1200
Wichita, KS  67202

David H. Moses
Case, Moses, Zimmerman & Martin, P.A.
200 West Douglas, Suite 900
Wichita, KS 67202

John V. Wachtel
Klenda, Austerman, L.L.C.
301 N. Main, Suite 1600
Wichita, KS 67202

James R. Pratt
Attorney at Law
445 N. Waco
Wichita, KS 67202

Jay F. Fowler
Foulston Siefkin, L.L.P.
1551 N. Waterfront Pkwy, Ste. 100
Wichita, KS 67206

Carl F.A. Maughan
Maughan & Maughan
200 West Douglas, Suite 350
Wichita, KS 67202

Roger L. Falk
Law office of Roger L. Falk, P.A.
301 West Central
Wichita, KS 67202

Paul S. McCausland
Young, Bogle, McCausland, Wells &
   Blanchard
100 North Main, Suite 1001
Wichita, KS 67202

Michael J. Shultz
Shultz Law Office, P.A.
445 North Waco
Wichita, KS 67202

John B. Sullivan
The Law Office of John B. Sullivan
1041 N. Waco
Wichita, KS 672030

Jeff L. Griffith
Griffith & Griffith
111 South Baltimore
Derby, KS 67037

Mark T. Schoenhofer
Law Office of Mark Schoenhofer
1631 E. 1st
Wichita, KS 67214

Benjamin Anthony Reed
Joseph & Hollander, L.L.C.
500 N. Market Street
Wichita, KS 67214

Eric A. Hartenstein
Attorney at Law
200 West Douglas, Suite 600
Wichita, KS 67202

Mark A. Sevart
Attorney at Law
P.O. Box 781602
Wichita, KS 67278

Gregory D. Bell
Forker Suter, L.L.C.
129 West 2nd Ave., Suite 200
Hutchinson, KS 67504

Kevin W. Loeffler
Law Office of Kevin Loeffler
111 E. 7th
Newton, KS 67114

Molly E. McMurray
Depew, Gillen, Rathbun, & McInteer
8301 East 21st Street North, Suite 450
Wichita, KS 67206

Michael D. Hepperly
Michael D. Hepperly Law Office, Chtd.
310 West Central, Suite 119
Wichita, KS 67202

Mark L. Bennett, Jr.
Bennett & Hendrix, L.L.P.
5605 S.W. Barrington Ct. S., Suite 201
Topeka, KS 66614

Sean C. McEnulty
McEnulty Law Firm
151 Whittier St., Suite 1000
Wichita, KS 67207

Charles A. O'Hara
O'Hara & O'Hara
1223 E. First
Wichita, KS 67214

Derek S. Casey
Triplett, Woolf, Garretson, L.L.C.
2959 North Rock Road, Suite 300
Wichita, KS 67226

514

One copy mailed to:

> Gonzalo Ramirez
> c/o Sedgwick County Detention Facility
> 141 West Elm Street
> Wichita, KS 67203

<div style="margin-left: 45%;">

s/Timothy J. Henry
TIMOTHY J. HENRY
KS Sup. Ct. No. 12934
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Tim_Henry@fd.org


s/Joel Mandelman
JOEL MANDELMAN
KS Sup. Ct. No. 25726
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Joel_Mandelman@fd.org

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 12-CR-100089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION FOR JOINDER IN CO-DEFENDANT
GONZALO RAMIREZ'S MOTION TO SUPPRESS EVIDENCE FOUND IN
CONNECTION WITH THE OCTOBER 19, 2010, SEARCH OF HIS RESIDENCE**

**- DEFENDANT GARCIA'S SEVENTEENTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby moves this Court for an order allowing him to join in defendant Gonzalo Ramirez's motion to suppress evidence found in connection with the October 19, 2010 search of his residence.  (Doc. 395.)  In support of this motion, Mr. Garcia states as follows:

Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains thirty-eight alleged separate violations of federal criminal law.  (Doc. 1.)  Count 1, inter alia, charges the defendant, along with Jason Najera, Gonzalo Ramirez, Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together with persons known and unknown, being persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c) ... [a]ll in violation of  18 U.S.C. § 1962(d)."  *Id.*

515

Count 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright with the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5). *Id.* When the Indictment in this case was filed, it contained a section titled "Notice of Special Findings." *Id.* p. 32-33. The Notice of Special Findings placed Mr. Garcia on notice that, should the Department of Justice approve a request from the United States Attorney for the District of Kansas, the government could seek the death penalty against Mr. Garcia and his co-defendant Gonzalo Ramirez.

Count 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering. It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1). *Id.* Count 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1). *Id.* Count 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3). *Id.* Count 6 charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

Count 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3). Count 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6), and Count 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

The background facts set out in Mr. Ramirez's motion are accurate with respect to Mr. Garcia as well. The principal difference between Mr. Ramirez and Mr. Garcia is that Mr. Garcia's residence in Dodge City, Kansas was located at 1302 Avenue D,.

This case has been declared complex. Mr. Ramirez's motion is as applicable to Mr. Garcia as it is applicable to Mr. Ramirez. Mr. Garcia makes the same requests for relief as does Mr. Ramirez. If Mr. Ramirez's motion is ruled upon favorably such ruling will provide Mr. Garcia with the same

relief.

Mr. Garcia has an interest in preserving objections and legal issues for a potential appeal; however, the filing of separate motions by him might be repetitive or cumulative in light of the fact that adequate and well briefed motions have been filed by other defendants.  The filing of multiple and repetitive motions is burdensome to the Court, defense counsel and the government.  Both judicial economy and simple justice are served by granting Mr. Garcia's motion.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of October, 2012, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

KMAZ Doc. 20W1244

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 12-CR-100089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION FOR JOINDER IN CO-DEFENDANT
GONZALO RAMIREZ'S MOTION TO DISMISS AND REQUEST FOR BILL OF
PARTICULARS**

**- DEFENDANT GARCIA'S EIGHTEENTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John

Val Wachtel of Klenda Austerman LLC, and hereby moves this Court for an order allowing him to

join in defendant Gonzalo Ramirez's motion to dismiss and request for bill of particulars.  (Doc.

430.)  In support of this motion, Mr. Garcia states as follows:

Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains

thirty-eight alleged separate violations of federal criminal law.  (Doc. 1.)  Count 1, inter alia, charges

the defendant, along with Jason Najera, Gonzalo Ramirez, Anthony Wright, Jesus Sanchez, Eusebio

Sierra-Medrano, Jason Vargas and Fabian Neave, "together with persons known and unknown, being

persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities

of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate

18 U.S.C. § 1962(c) ...  [a]ll in violation of  18 U.S.C. § 1962(d)." *Id.*

Count 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright with

the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5).  *Id*.  When the Indictment in this case was filed, it contained a section titled "Notice of Special Findings."  *Id*.  p. 32-33.  The Notice of Special Findings placed Mr. Garcia on notice that, should the Department of Justice approve a request from the United States Attorney for the District of Kansas, the government could seek the death penalty against Mr. Garcia and his co-defendant Gonzalo Ramirez.

Count 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering.  It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1).  *Id*. Count 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1).  *Id*. Count 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3).  *Id*.  Count 6 charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A).  *Id*.

Count 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3).  Count 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6), and Count 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A).  *Id*.

With the exception that Mr. Ramirez's motion bears his name, there no differences between Mr. Ramirez and Mr. Garcia with respect to the motion in which Mr. Garcia seeks to join.  Mr. Garcia points out that he has filed a separate motion for a bill of particulars; however that motion does not address the materials sought by Mr. Ramirez in his current motion.  Those materials are equally important to both defendants.

This case has been declared complex.  Mr. Ramirez's motion is as applicable to Mr. Garcia as it is applicable to Mr. Ramirez. Mr. Garcia makes the same requests for relief as does Mr. Ramirez.

If Mr. Ramirez's motion is ruled upon favorably such ruling will provide Mr. Garcia with the same relief.

Mr. Garcia has an interest in preserving objections and legal issues for a potential appeal; however, the filing of separate motions by him might be repetitive or cumulative in light of the fact that adequate and well briefed motions have been filed by other defendants.  The filing of multiple and repetitive motions is burdensome to the Court, defense counsel and the government.  Both judicial economy and simple justice are served by granting Mr. Garcia's motion.

WHEREFORE, Mr. Garcia prays for an order of Court granting this motion.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of October, 2012, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

KMAZ Doc. 20W1251

3

520

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-01-23-MLB |
| | } | |
| JASON NAJERA | } | |
| a.k.a. Ene, | } | |
| a.k.a. Norte, | } | |
| PEDRO GARCIA, | } | |
| a.k.a. Peter Garcia, | } | |
| a.k.a. Pistol Pete, | } | |
| GONZALO RAMIREZ, | } | |
| a.k.a. Gonzo, | } | |
| RUSSELL WORTHEY, | } | |
| a.k.a. Blanco, | } | |
| ANTHONY WRIGHT, | } | |
| a.k.a. Huesos, | } | |
| JOSHUA FLORES, | } | |
| a.k.a. Big Knox, | } | |
| JESUS FLORES, | } | |
| a.k.a. Tito, | } | |
| ANGEL CERDA, | } | |
| a.k.a. Shrek, | } | |
| JUAN TORRES, | } | |
| a.k.a. Bugsy, | } | |
| ALFREDO BELTRAN-RUIZ, | } | |
| a.k.a. Deuce-Deuce, | } | |
| DONTE BARNES, | } | |
| a.k.a. Snipes, | } | |
| a.k.a. Snipe, | } | |
| a.k.a. Sniper, | } | |
| JESUS SANCHEZ, | } | |
| a.k.a. Drac, | } | |
| a.k.a. Dracula, | } | |

1

ENRIQUE GOBIN,                          }
  a.k.a. Ricky,                        }
  a.k.a. Sonny Boy,                    }
ALFONSO BANDA-HERNANDEZ,         }
  a.k.a. Fonso,                        }
ANDREW GUSMAN,                       }
  a.k.a. Beaver,                       }
EUSEBIO SIERRA-MEDRANO,          }
  a.k.a. TC,                           }
JAYSON VARGAS                        }
  a.k.a. Wee Wee,                      }
ADAM FLORES,                         }
  a.k.a. Little Lazy,                  }
FABIAN NEAVE,                        }
  a.k.a. Puppet,                       }
JESUS TORRES,                        }
  a.k.a. Rabbit,                       }
JOSE NEAVE,                          }
  a.k.a. Caiyo,                        }
HERNAN QUEZADA,                      }
  a.k.a. Cheese,                       }
  a.k.a. Cartoon,                      }
HUMBERTO ORTIZ,                      }
  a.k.a. Beto,                         }
               Defendants.          }

## MOTION FOR ADDITIONAL TIME
## TO RESPOND TO DEFENSE MOTIONS

The United States of America, by Aaron L. Smith and Lanny D. Welch, Assistant

United States Attorneys, moves the Court for additional time to respond to defense

motions.  In support of its motion, the United States avers as follows:

1.     At the status conference conducted in this matter on August 20, 2012, the

Court set October 26, 2012, as the deadline for defense motions to be filed.

2

2.     The Court set November 16, 2012, as the preliminary deadline for the United States  to file its responses.  However, the Court also stated it would allow the United States additional time if the government requested an extension of its motion response deadline.

3.     There have been approximately 92 motions filed by defendants in this case.[1] While a number of motions were filed seeking to join motions filed by other defendants, there were a large number of substantive motions addressing a multitude of issues.  These will require a significant amount of time for government counsel to prepare responses.

4.     Preparation of responses to some of the motions filed will require consultation with the investigators and it may be necessary for counsel to travel to Dodge City, Kansas, and/or the investigators to travel to Wichita.

5.     Between now and December 4, 2012, government counsel assigned to this matter have three trials scheduled.[2]  Some preparation has already taken place for these trials and additional work on these trials will be necessary over the next three weeks.

6.     The United States is requesting an additional 30 days to file its responses and is asking that its deadline to respond to motions be extended to December 17, 2012.

---

[1] This includes motions to join other motions.

[2] *United States v. Juvenal Fernandez, et al,* 12-10085-MLB (November 27, 2012)
   *United States v. Maria Perez,* 12-10133-JTM (December 4, 2012)
   *United States v. Paul Sifuentez,* 12-10154-JTM (December 4, 2012)

3

WHEREFORE, the United States requests the Court extend the deadline by which the United States must respond to defense motions to December 17, 2012, as requested in this motion.

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of October, 2012, we electronically filed the foregoing motion with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Lanny D. Welch
LANNY D. WELCH
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)


| UNITED STATES OF AMERICA, | } | |
|---|---|---|
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-01-23-MLB |
| | } | |
| JASON NAJERA | } | |
| a.k.a. Ene, | } | |
| a.k.a. Norte, | } | |
| PEDRO GARCIA, | } | |
| a.k.a. Peter Garcia, | } | |
| a.k.a. Pistol Pete, | } | |
| GONZALO RAMIREZ, | } | |
| a.k.a. Gonzo, | } | |
| RUSSELL WORTHEY, | } | |
| a.k.a. Blanco, | } | |
| ANTHONY WRIGHT, | } | |
| a.k.a. Huesos, | } | |
| JOSHUA FLORES, | } | |
| a.k.a. Big Knox, | } | |
| JESUS FLORES, | } | |
| a.k.a. Tito, | } | |
| ANGEL CERDA, | } | |
| a.k.a. Shrek, | } | |
| JUAN TORRES, | } | |
| a.k.a. Bugsy, | } | |
| ALFREDO BELTRAN-RUIZ, | } | |
| a.k.a. Deuce-Deuce, | } | |
| DONTE BARNES, | } | |
| a.k.a. Snipes, | } | |
| a.k.a. Snipe, | } | |
| a.k.a. Sniper, | } | |
| JESUS SANCHEZ, | } | |
| a.k.a. Drac, | } | |
| a.k.a. Dracula, | } | |
| ENRIQUE GOBIN, | } | |
| a.k.a. Ricky, | } | |
| a.k.a. Sonny Boy, | } | |
| ALFONSO BANDA-HERNANDEZ, | } | |

1

|                          |   |   |
|--------------------------|---|---|
| a.k.a. Fonso,            | } |   |
| ANDREW GUSMAN,           | } |   |
| a.k.a. Beaver,           | } |   |
| EUSEBIO SIERRA-MEDRANO,  | } |   |
| a.k.a. TC,               | } |   |
| JAYSON VARGAS            | } |   |
| a.k.a. Wee Wee,          | } |   |
| ADAM FLORES,             | } |   |
| a.k.a. Little Lazy,      | } |   |
| FABIAN NEAVE,            | } |   |
| a.k.a. Puppet,           | } |   |
| JESUS TORRES,            | } |   |
| a.k.a. Rabbit,           | } |   |
| JOSE NEAVE,              | } |   |
| a.k.a. Caiyo,            |   | } |
| HERNAN QUEZADA,          | } |   |
| a.k.a. Cheese,           | } |   |
| a.k.a. Cartoon,          | } |   |
| HUMBERTO ORTIZ,          | } |   |
| a.k.a. Beto,             | } |   |
| Defendants.              | } |   |

## ORDER

This matter comes before the Court on the Government's Motion For Additional Time to Respond to Defense Motions.   The Court finds the Government's request for additional time to file its responses to defense motions is appropriate and therefore, it is ORDERED:

The United States' request for an additional 30 days to file its responses to defense motions is granted and the deadline by which the government must file its responses is extended to December 17, 2012.

IT IS SO ORDERED.

s/ Monti Belot
MONTI L. BELOT
United States District Court Judge

2

527

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| | ) | |
| v. | ) | No. 12-10089-01-23 |
| | ) | |
| Jason Najera, Pedro Garcia, | ) | |
| Gonzalo Ramirez, Russell Worthey, | ) | |
| Anthony Wright, Joshua Flores, | ) | |
| Jesus Flores, Angel Cerda, | ) | |
| Juan Torres, Alfredo Beltran-Ruiz, | ) | |
| Donte Barnes, Jesus Sanchez, | ) | |
| Enrique Gobin, Alfonso | ) | |
| Banda-Hernandez, Andrew Gusman, | ) | |
| Eusebio Sierra-Medrano, Jayson | ) | |
| Vargas, Adam Flores, Fabian Neave, | ) | |
| Jesus Torres, Jose Neave, Hernan | ) | |
| Quezada, Humberto Ortiz, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER**

This case comes before the court on the following motions to join:

1)   Jesus Sanchez' motion to join (Doc. 447);

2)   Jayson Vargas' motion to join (Doc. 444); and

3)   Jesus Torres' motion to join (Doc. 412).

Defendants seek to join any and all defense motions which are applicable to their defenses.  Defendants, however, have failed to specifically identify which motions are relevant to their defense and the reasons that the motions are applicable.  Defendants' motions are therefore denied but may be refiled to identify relevant motions and docket numbers.  (Docs. 412, 444, 447).

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 529

IT IS SO ORDERED.

Dated this   __31st__   day of October 2012, at Wichita, Kansas.


                                               s/ Monti Belot
                                             Monti L. Belot
                                             UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| v. | } | |
| | } | No. 12-10089-08-MLB |
| ANGEL CERDA, | } | |
| a.k.a. Shrek, | } | |
| | } | |
| Defendant. | } | |

**RESPONSE OF THE UNITED STATES TO
DEFENDANT ANGEL CERDA'S MOTIONS**

COMES NOW the United States of America, by and through Aaron L. Smith and Lanny

D. Welch, Assistant United States Attorneys, and hereby responds to the defendant Angel

Cerda's motions.  In support of this response the United States avers as follows:

**A.      Charges**

Defendant Angel Cerda is charged in the following counts of the indictment returned on

April 16, 2012:

Count 10 -      VICAR/Conspiracy to Commit Murder, in violation of Title 18, U.S.C. § 1959(a)(5);

Count 11 -      VICAR/Attempted Murder, in violation of Title 18, U.S.C. § 1959(a)(5) and § 2;

Count 12 -      VICAR/Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(3) and § 2;

Count 13 -      Possess and Discharge a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A).

1

**B.**      **Motion for Joinder in Garcia's Motion (Doc.325) and for Additional Discovery Related to Street Gangs in Dodge City (Doc. 364)**

The United States does not object to the specific discovery requests contained in the instant motion.  The United States will provide the "Gang Related Policies and Procedures" used by the Dodge City Police Department.  These policies and procedures relate to the creation of the individual "gang sheets" for this defendant, as well as his co-defendants.

The United Sates filed a notice of expert testimony in Doc. 297.  Identified in the notice are three officers of the Dodge City Police Department.  Those officers can testify not only to the defendant's participation in the gang, but also the implementation of the policies and procedures.

The defendant requests the gang sheets of individuals identified in the defendant's own gang sheets.  The relevance of that material is those individuals could be identified as other "known gang members" as described in the defendant's relevant gang sheet.  The United States acknowledges the relevance of those gang sheets and will provide such in discovery. At this time, and to the extent possible, the United States will produce the underlying source material of the defendant's gang sheets.

Further, the defendant requests the underlying source material for any gang sheets of those other individuals identified as "known gang members" or associates.  While the United States agrees to produce the gang sheets of those third parties, producing the underlying source material for each named third party would be unduly burdensome.  Discovery "is within the discretion of the trial judge and is not reviewable absent abuse."  *United States v. Smaldone*, 484 F.2d 311 (10th Cir. 1973).

2

Of the three gang sheets provided on the defendant, twice the defendant admitted gang affiliation, once there is note of the defendant wearing gang "colors" and once there is note of the defendant having gang related tattoos.  In each of the gang sheets, the defendant is identified as associating with other gang members.  Setting aside the associations with other gang members, evidence of gang membership has been allowed when a defendant has merely been found with gang colors at their residence, been wearing gang "colors" and been engaged in activity consistent with the gang at issue.  *United States v. Robinson*, 978 F.2d 1554 (10th Cir. 1992), see also *United States v. Hartsfield,* 1992 WL 253650 (10th Cir. 1992)[1].

The defendant has not been joined in his request for the underlying source materials of third-party gang members.  The United States submits that providing underlying source material for third parties' gang sheets can only serve the purpose of the defendant challenging the classification of those third parties.  This argument is similar to requesting suppression of evidence when the defendant lacks standing to object to a search.

At this time, the United States urges the Court to deny the discovery request of underlying source material of third parties' gang sheets.

---

[1] Testimony concerning the defendant's membership in the "Black Mafia Crip Dawgs" was admitted.  A fellow gang member confirmed that the defendant belonged to the gang and a police detective served as an expert witness, explaining that the gang's "main purpose is to distribute cocaine and crack cocaine."  An envelope bearing the "Black Mafia Crip Dawgs" insignia that was found in a car used to transport cocaine was introduced.

### C.   Motion for Identification and Production of Statements of Percipient Witnesses (Doc. 395)[2]

#### 1.   Law Applicable to Disclosure of Informants

The defendant seeks the disclosure of the identity of confidential informants he suspects have provided information about his membership in the Nortenos street gang and/or his involvement in crimes charged in the indictment.  The U.S. Supreme Court has held that an informant's identity must be revealed whenever it would be relevant and helpful to an accused's defense or essential to a fair determination of a cause.  *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957).   "In making the requisite showing under the *Roviaro* standard, the defendant must present more than mere speculation about possible usefulness of an informant's testimony.  Disclosure of an informant is not required where the information sought from him or her would be merely cumulative, or where the informant is not a participant in or a witness to the crime charged."  *United States v. Moralez*, 908 F.2d 565, 567 (10th Cir. 1990)(cites omitted).  Generally, if an informant is merely a tipster disclosure is not required.  *United States v. Zamora*, 784 F.2d 1025, 1030 (10th Cir. 1986).

#### 2.   Cooperators/Informants

There are not a large number of confidential informants in this investigation.  Persons who have provided information to investigators in this case who will testify as government witnesses will be disclosed prior to trial as part of our discovery obligations.  The United States has already committed to disclosing *Jencks* material prior to trial and this information will

---

[2] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Pedro Garcia (Doc. 411); Jose Neave (Doc. 413); Juan Torres (Doc. 420); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc. 449).

4

include reports compiled from information provided by persons affiliated with the Nortenos street gang or who otherwise provided information about the gang or crimes perpetrated by its members.

The United States has produced any interviews of the victim's family, friends or associates conducted in relation to the investigation of the counts charged. The United States will provide the gang sheets of all government witnesses in this case, including the victim(s) of counts 10-13, if they exist.

   **D.      Motion for Disclosure of Exculpatory Evidence, Plea Agreements and Impeachment Materials (Doc. 396)[3]**

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), the United States shall provide, if it has not already done so, discovery materials governed by those cases and their progeny.

The United States will provide *Giglio* impeachment material, including plea agreements of government witnesses, evidence of bias, favorable treatment, etc. as requested by the defendant. The United States will also provide the gang sheet(s) for government witnesses it intends to call at trial.

---

   [3] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Pedro Garcia (Doc. 411); Jose Neave (Doc. 413); Juan Torres (Doc. 420); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc. 449); and Jesus Torres (Doc. 455).

**E.** **Motion for Production of Defendant's Prior Record and Notice of Government's Intent to Use Evidence at Trial, Including Evidence of Other Crime, Wrongs or Acts Not Charged in the Indictment (Doc. 397)[4]**

In accordance with Rule 404(b), the United States will provide to the defense the general nature of crimes, wrongs or acts of the defendant which the United States intends to use at trial. The United States shall comply with the disclosure guidelines announced by the Court in the General Order of Discovery and Scheduling (Doc. 221).

The defendant requests notification, in the next 30 days, from the United States regarding Rule 404(b) evidence.  The defendant suggests no prejudice to the United States if immediate notification was ordered, and suggests immediate notification would assist the defendant in contemplating a plea.  This case has been designated a complex case by the Court.  (Doc. 267). As such, final scheduling orders have yet to be ordered.  The Court can provide the defendant with sufficient time to challenge any Rule 404(b) evidence, or prepare for trial or plea in a final or intermediate scheduling order.

Further, co-defendants have moved for disclosure of Rule 404(b) evidence in various motions.  *See*: (Doc. 377) and (Doc. 342).  The defendant requests forthwith notice, but asks or suggests that notice be at least 90 days prior to any trial.  The defendant acknowledges the complexity of the case and voluminous nature of discovery to date.  Each of the co-defendants in the case at hand have also filed motions, or joined in motions, regarding specific discovery requests.  The United States will not be opposing the great majority of those discovery requests. This will result in the case becoming more complex, scheduling of further deadlines and hearings

---

[4] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Jose Neave (Doc. 413); Hernan Quezada (Doc. 415); Juan Torres (Doc. 420); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) and Alfredo

being further expanded.  For those reasons the United States suggests immediate disclosure is unnecessary and unduly prejudicial, based upon the volume of additional discovery likely to be produced.  The United States does not object to disclosure of Rule 404(b) evidence greater than 30 days in advance of trial, but only in contemplation of any trial date being greater than 180 days in the future.

The United States will disclose the prior criminal records of all defendants.

### F.   Motion for Severance (Doc. 398)[5]

The defendant requests a separate trial from his codefendants because he fears possible prejudice from a joint trial.  Federal Rule of Criminal Procedure 8(b) allows for joinder of defendants who are alleged to have participated in the same act or series of acts.[6]  Courts are expected to "construe Rule 8 broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997).  While Federal Rule of Criminal Procedure 14 does allow for severance if defendants would suffer prejudice from joinder, a defendant must first show that denial of his request for a severance would result in actual prejudice to his defense.  *United States v. Eads*, 191 F.3d 1206, 1209 (10th Cir. 1999).  A defendant must also show that any prejudice would outweigh the expense and inconvenience of separate trials.  *United States v. Martin*, 18 F. 3d 1515, 1518 (10th Cir. 1994).

---

Beltran-Ruiz (Doc. 449).

   [5] This motion was joined by the following defendants and the United States offers this response to address these motions as well:  Jose Neave (Doc. 413); Juan Torres (Doc. 420); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc. 449).

   [6] Rule 8(b) states: **(b) Joinder of Defendants.**  The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need

7

Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).   "In the context of conspiracy, severance will rarely, if ever, be required.  In a conspiracy case, joint trials reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague and provide the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome." *United States v. Miller*, 250 F.R.D. 588, 597-98 (D. Kansas 2008)(cites omitted).

A defendant has a difficult burden of showing actual prejudice which would warrant granting separate trials in the ordinary case, that burden is even greater when he is charged as a member of a criminal enterprise engaged in racketeering activity.  The indictment alleges each of these defendants is a member of the Nortenos street gang, an enterprise which is involved in the commission of a variety of criminal acts for common purposes.   By definition the United States will present evidence that multiple defendants acted in concert as part of the enterprise and that groups of defendants acted in concert during the commission of various violent crimes in aid of racketeering activity.  The Court can protect individual defendants from possible prejudice which might result from the introduction of evidence of crimes committed by codefendants which are unrelated to their charged acts with the use of limiting instructions.  *United States v. Hardwell*, 80 F.3d 1471, 1487 (10th Cir. 1996).  The defendant has failed to meet his heavy burden to establish the need for separate trials. Given the nature of the charges filed in this indictment meeting this burden would be an extremely difficult, if not impossible, task.

---

not be charged in each count.

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov

CERTIFICATE OF FILING

I hereby certify that on December 17, 2012, I electronically filed the foregoing Response

to the Defendant's Motions with the Clerk of the Court by using the CM/ECF system which will

send a notice of electronic filing to all counsel of record.

/s/ Aaron L. Smith
AARON L. SMITH
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| v. | } | |
| | } | No. 12-10089-12-MLB |
| JESUS SANCHEZ, | } | |
| a.k.a. Drac, | } | |
| a.k.a. Dracula, | } | |
| | } | |
| Defendant. | } | |

**RESPONSE OF THE UNITED STATES TO**
**DEFENDANT JESUS SANCHEZ'S MOTIONS**

COMES NOW the United States of America, by and through Aaron L. Smith and Lanny D. Welch, Assistant United States Attorneys, and hereby responds to the defendant Jesus Sanchez's motions.  In support of this response the United States avers as follows:

**A.** **Charges**

Defendant Jesus Sanchez is charged in the following counts of the indictment returned on April 16, 2012:

Count 1  - RICO Conspiracy, in violation of Title 18, U.S.C. § 1962(d);

Count 19 - VICAR/Conspiracy to Commit Murder, in violation of Title 18, U.S.C. § 1959(a)(5);

Count 20 - VICAR/Attempted Murder, in violation of Title 18, U.S.C. § 1959(a)(5);

Count 21 - VICAR/Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(3);

Count 22 - Possess and Discharge a Weapon in Furtherance of a Crime of Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A);

Count 28 - VICAR/Conspiracy to Commit Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(6);

Count 35 - Illegal Alien in Possession of a Firearm, in violation of Title 18, U.S.C. § 922(g)(5).

**B.** **Motion for Notice of Government's Intent to Offer 404(b) Evidence at Trial (Doc. 366)[1]**

In accordance with Rule 404(b), the United States will provide to the defense the general nature of crimes, wrongs or acts of the defendant which the United States intends to use at trial. The United States shall comply with the disclosure guidelines announced by the Court in the General Order of Discovery and Scheduling (Doc. 221).

The defendant requests immediate notification from the United States regarding Rule 404(b) evidence. The defendant suggests no prejudice to the United States if immediate notification was ordered, and suggests immediate notification would assist the defendant in contemplating a plea. This case has been designated a complex case by the Court. (Doc. 267). As such, final scheduling orders have yet to be ordered. The Court can provide the defendant with sufficient time to challenge any Rule 404(b) evidence, or prepare for trial or plea in a final or intermediate scheduling order.

Further, co-defendants have moved for disclosure of Rule 404(b) evidence in various motions. See (Doc. 377), (Doc. 342) and (Doc. 397). Co-defendant Cerda in (Doc. 397) requests forthwith notice, but asks or suggests that notice be at least 90 days prior to any trial. Cerda acknowledges the complexity of the case and voluminous nature of discovery to date.

---

[1] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Jose Neave (Doc. 413); Juan Torres (Doc. 420); Gonzalo Ramirez (Doc. 423); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433); and Alfredo Beltran-Ruiz (Doc. 449).

Each of the co-defendants in the case at hand have also filed motions, or joined in motions, regarding specific discovery requests.  The United States will not be opposing the great majority of those discovery requests.  This will result in the case becoming more complex, scheduling of further deadlines and hearings being further expanded.  For those reasons the United States suggests immediate disclosure is unnecessary and unduly prejudicial, based upon the volume of additional discovery likely to be produced.  The United States does not object to disclosure of Rule 404(b) evidence greater than 30 days in advance of trial, but only in contemplation of any trial date being greater than 180 days in the future.

### C.   Motion in Limine to Preclude Evidence of Co-Conspirator Hearsay Statements (Doc. 367)[2]

Under Federal Rule of Evidence 801(d)(2)(E), co-conspirator statements are not considered hearsay and are properly admitted if the district court finds, by a preponderance of the evidence, that (1) a conspiracy existed, (2) both the declarant and the defendant against whom the declaration is offered were members of the conspiracy, and (3) the statement was made in the course of and in furtherance of the conspiracy.  *United States v. Eads*, 191 F.3d 1206, 1210 (10th Cir. 1999).  The district court may satisfy the prerequisites for admission of a co-conspirator statement through either of two means: by holding a James hearing or by provisionally admitting the statement "with the caveat that . . . the party offering [it] must prove the existence of the predicate conspiracy through trial testimony of other evidence." *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995).  Although the Tenth Circuit has stated a "strong preference for James proceedings where the government relies on co-conspirator statements," *United States v.*

---

[2] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Joshua Flores (Doc. 387); Angel Cerda (Doc. 394); Juan Torres (Doc. 420); and Humberto Ortiz (Doc. 431); and Jason Najera (Doc. 458).

*Gonzalez-Montoya*, 161 F.3d 643, 649 (10th Cir. 1998), the Tenth Circuit does permit the district court to provisionally admit statements with the caveat that the offering party must prove the existence of the predicate conspiracy through trial testimony of other evidence.  *Id.*  In either case, the court may consider the hearsay statement itself, as well as independent factors, in determining whether the government has established a conspiracy by a preponderance of the evidence.  Fed. R. Evid. 801(d)(2); *Bourjaily v. United States*, 483 U.S. 171, 181 (1987).

Any conversations of which the defendant himself is involved are admissible as admissions against interest and co-conspirator statements.   Fed. Rule Evid. 801(d)(2)(A), (E).  *United States v. Mayes*, 917 F.2d 457, 463, n. 8 (10th Cir. 1990) (holding that statements by defendants in tape-recorded conversations with co-conspirators were party admissions).  "[T]he *Bruton* doctrine does not rule situations...in which the evidence is admissible under a well recognized exception to the hearsay rule".  *United States v. Ramirez*, 479 F. 3d 1229, 1248 (10th Cir. 2007), quoting *United States v. Cox*, 449 F. 2d 679, 688-89 (10th Cir. 1971).

The indictment need not charge a defendant with a conspiracy for coconspirator statements to be admissible.  *United States v. Jones*, 540 F. 2d 465, 471 (10th Cir. 1976).  However, in this case the defendant is charged in substantive conspiracy counts as well as counts that necessitate the United States establish the existence of an enterprise under RICO and VICAR law.  Statements made to an undercover police officer, legally not a member of the conspiracy by virtue of being a government agent, are admissible.  *United States v. Leroy*, 944 F. 2d 787, 789 (10th Cir. 1991).

If the Court determines a *James/Bruton* hearing is needed, the United States will present evidence at a James hearing to establish a conspiracy by a preponderance of the evidence.  Further, by a preponderance of the evidence, the United States will present evidence that each

4

declarant and defendant was a member of the conspiracy and each declaration was made during the course of and in furtherance of the conspiracy.

In this case the United States respectfully suggests that a *James/Bruton* hearing would be appropriate and asks the court to schedule the same in accordance with further scheduling and discovery orders and obligations.   The United States requests a *James/Bruton* hearing be scheduled at a date appropriate in the future.

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov

544

CERTIFICATE OF FILING

I hereby certify that on December 17, 2012, I electronically filed the foregoing Response

to the Defendant's Motions with the Clerk of the Court by using the CM/ECF system which will

send a notice of electronic filing to all counsel of record.


/s/ Aaron L. Smith
AARON L. SMITH
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-14-MLB |
| | } | |
| ALFONSO BANDA-HERNANDEZ, | } | |
| a.k.a. Fonso, | } | |
| | } | |
| Defendant. | } | |

**RESPONSE OF THE UNITED STATES TO**
**DEFENDANT ALFONSO BANDA-HERNANDEZ'S MOTION**

The United States of America, by Aaron L. Smith and Lanny D. Welch, Assistant United

States Attorneys, hereby responds to Defendant Alfonso Banda-Hernandez's motion.  In support

of this response, the United States avers as follows:

**A.      Charges**

Defendant Alfonso Banda-Hernandez is charged in the following counts of the

indictment returned on April 16, 2012:

Count 19   -   Violent Crime in Aid of Racketeering/Conspiracy to
Commit Murder, in violation of Title 18, U.S.C. §
1959(a)(5);

Count 20   -   Violent Crime in Aid of Racketeering/Attempted Murder,
in violation of Title 18, U.S.C. § 1959(a)(5);

Count 21   -   Violent Crime in Aid of Racketeering/Assault with a
Dangerous Weapon, in violation of Title 18, U.S.C. §
1959(a)(3);

Count 22   -   Possess and Discharge a Firearm in Furtherance of a Crime
of Violence, in violation of Title 18, U.S.C. § 924(c).

1

**B.     Motion for Severance (Doc. 428)**

The defendant requests a separate trial from his codefendants because he fears possible prejudice from a joint trial.   Federal Rule of Criminal Procedure 8(b) allows for joinder of defendants who are alleged to have participated in the same act or series of acts.[1]   Courts are expected to "construe Rule 8 broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997).   While Federal Rule of Criminal Procedure 14 does allow for severance if defendants would suffer prejudice from joinder, a defendant must first show that denial of his request for a severance would result in actual prejudice to his defense.  *United States v. Eads*, 191 F.3d 1206, 1209 (10th Cir. 1999).   A defendant must also show that any prejudice would outweigh the expense and inconvenience of separate trials.  *United States v. Martin*, 18 F. 3d 1515, 1518 (10th Cir. 1994). Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).    "In the context of conspiracy, severance will rarely, if ever, be required.  In a conspiracy case, joint trials reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague and provide the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome." *United States v. Miller*, 250 F.R.D. 588, 597-98 (D. Kansas 2008)(cites omitted).

---

[1] Rule 8(b) states: **(b) Joinder of Defendants.**  The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need

A defendant has a difficult burden of showing actual prejudice which would warrant granting separate trials in the ordinary case, that burden is even greater when he is charged as a member of a criminal enterprise engaged in racketeering activity.  The indictment alleges each of these defendants is a member of the Nortenos street gang, an enterprise which is involved in the commission of a variety of criminal acts for common purposes.   By definition the United States will present evidence that multiple defendants acted in concert as part of the enterprise and that groups of defendants acted in concert during the commission of various violent crimes in aid of racketeering activity.  The Court can protect individual defendants from possible prejudice which might result from the introduction of evidence of crimes committed by codefendants which are unrelated to their charged acts with the use of limiting instructions.  *United States v. Hardwell*, 80 F.3d 1471, 1487 (10th Cir. 1996).  The defendant has failed to meet his heavy burden to establish the need for separate trials.   The United States asks once again that this motion be denied.

                              Respectfully submitted,

                              BARRY R. GRISSOM
                              UNITED STATES ATTORNEY

                              /s/ Aaron L. Smith
                              AARON L. SMITH  #20447
                              Assistant United States Attorney
                              301 N. Main, 1200 Epic Center
                              Wichita, Ks  67202
                              Phone: 316-269-6481
                              Aaron.Smith2@usdoj.gov

---

not be charged in each count.

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of December, 2012, we electronically filed the

foregoing motion with the clerk of the court by using the CM/ECF system, which will send a

notice of electronic filing to all counsel of record.

/s/ Lanny D. Welch
LANNY D. WELCH
Assistant United States Attorney

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-06-MLB |
| | } | |
| JOSHUA FLORES, | } | |
| a.k.a. Big Knox, | } | |
| | } | |
| Defendant. | } | |

**RESPONSE OF THE UNITED STATES TO
DEFENDANT JOSHUA FLORES'S MOTIONS**

The United States of America, by Aaron L. Smith and Lanny D. Welch, Assistant United

States Attorneys, hereby responds to Defendant Joshua Flores's motions. In support of this

response, the United States avers as follows:

**A.    Charges**

Defendant Joshua Flores is charged in the following counts of the indictment returned on

April 16, 2012:

> Count 7 - Violent Crime in Aid of Racketeering/Assault with a
> Dangerous Weapon, in violation of Title 18, U.S.C. §
> 1959(a)(3);
>
> Count 8 - Violent Crime in Aid of Racketeering/Conspiracy to
> Commit an Assault with a Dangerous Weapon, in violation
> of Title 18, U.S.C. § 1959(a)(6);
>
> Count 9 - Possess and Brandish a Firearm in Furtherance of a Crime
> of Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A).

**B.        Motion for Bill of Particulars (Doc. 385)**

"The VICAR statute provides that 'whoever,…*for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity*, murders [or]…assaults with a dangerous weapon…in violation of the laws of any State or the United States, or attempts  or conspires so to do, shall be punished.'  18 U.S.C. § 1959(a) (emphasis added).  In our prior decisions we have identified four elements required for a conviction under this statute: '(1) that the criminal organization exists; (2) that the organization is a racketeering enterprise; (3) that the defendant committed a violent crime; and (4) that [the defendant] acted for the purpose of promoting [his] position in a racketeering enterprise.'"  *United States v. Banks,* 514 F.3d 959, 964 (9th Cir. 2008), quoting *United States v. Bracy,* 67 F.3d 1421, 1429 (9th Cir. 1995).

An indictment is sufficient if it is a "plain, concise, and definite written statement of the essential facts constituting the offense charged..."[1]

Federal Rule of Criminal Procedure 7(f) addresses bills of particular and provides:

> **(f) Bill of Particulars.**  The court may direct the government to file a bill of particulars.  The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits.  The government may amend a bill of particulars subject to such conditions as justice requires.

"The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense." *United States v. Ivy,* 83 F.3d 1266, 1281 (10th Cir. 1996).  If "the indictment sets forth the elements of the offense charged and sufficiently apprised the defendant of the charges to enable him to prepare for trial," a bill of

---

[1] Federal Rule of Criminal Procedure 7(c).

particulars is not necessary. *Id*.  A bill of particulars is not a discovery device. *United States v. Dunn,* 841 F.2d 1026, 1029 (10th Cir. 1988).  "[T]he defendant is not entitled to notice of all of the evidence the government intends to produce, but only the theory of the government's case." *United States v. Levine,* 983 F.2d 165, 167 (10th Cir. 1992).

In this motion, Defendant Flores makes specific demands for information the United States will have no obligation to present at trial and other information which is already contained in the indictment.  Additional information requested by the defendant, as he likely knows, simply does not exist.  The information requested includes: 1) the name of the gang and gang subsets to which the defendant belonged; 2) the time, date and place when he became a Norteno; 3) the names and "contact details" of those who brought him into the gang; 4) the names of the persons who initiated him into the gang and the date, time and place where it occurred; 5) the date and time when he joined the "conspiracies" in which he is charged; 6) the date, time and place he first and last participated in any act in furtherance of racketeering or conspiracy; 7) the names of the gang members who ordered the defendant to commit the crimes alleged; 8) how the crimes charged benefitted the gang; 9) uncharged acts the defendant performed which furthered the interests of the "conspiracies"; 10) how law enforcement determined the defendant was involved in a conspiracy; 11) what acts performed by co-conspirators were known to this defendant; and 12) the name of uncharged co-conspirators involved in the conspiracies.[2]

The indictment provides a great deal of information as to what the government alleges the purpose of the enterprise was and the manner by which it sought to achieve its goals.  The additional counts alleged in the indictment shed additional light on the racketeering acts

---

[2] Doc. 385 at 1-3.

committed by this defendant and others.  Further, the United States has disclosed thousands of pages of discovery which should have provided much of the information which the defendant will need to present his defense.  Additional information will be forthcoming in the form of *Jencks* material.   Most importantly, the vast majority of the information requested by the defendant be disclosed in the form of a bill of particulars is irrelevant to the charges filed against him.  Little, if any, of this information will be necessary to prove the defendant guilty and while it might satisfy his curiosity the law does not require the government to provide a bill of particulars for these purposes.  The United States respectfully suggests this motion should be denied.

### C.      Motion for Severance (Doc. 386)[3]

The defendant requests a separate trial from his codefendants because he fears possible prejudice from a joint trial.  Federal Rule of Criminal Procedure 8(b) allows for joinder of defendants who are alleged to have participated in the same act or series of acts.[4]  Courts are expected to "construe Rule 8 broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997).   While Federal Rule of Criminal Procedure 14 does allow for severance if defendants would suffer prejudice from joinder, a defendant must first show that denial of his request for a severance would result in actual prejudice to his defense. *United States v. Eads*, 191 F.3d 1206, 1209 (10th Cir. 1999).  A defendant must also show that any prejudice would outweigh the expense and

---

[3] This motion was joined by Jesus Torres (Doc. 455).

[4] Rule 8(b) states: **(b) Joinder of Defendants.**  The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

4

inconvenience of separate trials. *United States v. Martin*, 18 F. 3d 1515, 1518 (10th Cir. 1994).

Severance should be granted "only if there is a serious risk that a joint trial would compromise a

specific trial right of one of the defendants, or prevent the jury from making a reliable judgment

about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "In the context of

conspiracy, severance will rarely, if ever, be required. In a conspiracy case, joint trials reduce

the chance that each defendant will try to create a reasonable doubt by blaming an absent

colleague and provide the jury the best perspective on all of the evidence and therefore increases

the likelihood of a correct outcome." *United States v. Miller*, 250 F.R.D. 588, 597-98 (D. Kansas

2008)(cites omitted).

A defendant has a difficult burden of showing actual prejudice which would warrant

granting separate trials in the ordinary case, that burden is even greater when he is charged as a

member of a criminal enterprise engaged in racketeering activity. The indictment alleges each of

these defendants is a member of the Nortenos street gang, an enterprise which is involved in the

commission of a variety of criminal acts for common purposes. By definition the United States

will present evidence that multiple defendants acted in concert as part of the enterprise and that

groups of defendants acted in concert during the commission of various violent crimes in aid of

racketeering activity. The Court can protect individual defendants from possible prejudice which

might result from the introduction of evidence of crimes committed by codefendants which are

unrelated to their charged acts with the use of limiting instructions. *United States v. Hardwell*,

80 F.3d 1471, 1487 (10th Cir. 1996). The defendant has failed to meet his heavy burden to

establish the need for separate trials. Given the nature of the charges filed in this indictment

meeting this burden would be an extremely difficult, if not impossible, task.

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of December, 2012, we electronically filed the

foregoing motion with the clerk of the court by using the CM/ECF system, which will send a

notice of electronic filing to all counsel of record.

/s/ Lanny D. Welch
LANNY D. WELCH
Assistant United States Attorney

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-02-MLB |
| | } | |
| PEDRO GARCIA, | } | |
| a.k.a. Peter Garcia, | } | |
| a.k.a. Pistol Pete, | } | |
| | } | |
| Defendant. | } | |

### RESPONSE OF THE UNITED STATES TO
### DEFENDANT PEDRO GARCIA'S MOTIONS

The United States of America, by Aaron L. Smith and Lanny D. Welch, Assistant United States Attorneys, hereby responds to Defendant Pedro Garcia's motions.  In support of this response, the United States avers as follows:

**A.    Charges**

Defendant Pedro Garcia is charged in the following counts of the indictment returned on April 16, 2012:

Count 1  -  RICO Conspiracy, in violation of Title 18, U.S.C. § 1962(d);

Count 2  -  Violent Crime in Aid of Racketeering/Conspiracy to Murder, in violation of Title 18, U.S.C. § 1959(a)(5);

Count 3  -  Violent Crime in Aid of Racketeering/Murder, in violation of Title 18, U.S.C. § 1959(a)(1);

Count 4  -  Violent Crime in Aid of Racketeering/Attempted Murder, in violation of Title 18, U.S.C. § 1959(a)(5);

1

Count 5  -  Violent Crime in Aid of Racketeering/Assault with a
Dangerous Weapon, in violation of Title 18, U.S.C. §
1959(a)(3);

Count 6  -  Possess/Discharge a Firearm in Furtherance of a Crime of
Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A);

Count 7  -  Violent Crime in Aid of Racketeering/Assault with a
Dangerous Weapon, in violation of Title 18, U.S.C. §
1959(a)(3);

Count 8  -  Violent Crime in Aid of Racketeering/Conspiracy to
Commit an Assault with a Dangerous Weapon, in violation
of Title 18, U.S.C. § 1959(a)(6);

Count 9  -  Possess and Brandish a Firearm in Furtherance of a Crime
of Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A).

**B.**     **Motion for Specific Discovery Related to Street Gangs (Doc. 325)**[1]

The United States does not object to the specific discovery requests contained in the

instant motion.  The United States will provide the "Gang Related Policies and Procedures" used

by the Dodge City Police Department.  These policies and procedures relate to the creation of the

individual "gang sheets" for this defendant, as well as his co-defendants.

The United Sates filed a notice of expert testimony in Doc. 297.  Identified in the notice

are three officers of the Dodge City Police Department.  Those officers can testify not only to the

defendant's participation in the gang, but also the implementation of the policies and procedures.

The defendant requests material used to create the policies and procedures as well as training

manuals used to guide officers in creating those policies and procedures.

---

[1] This motion was joined by the following defendants and the United States offers this
response to address these motions as well: Juan Torres (Doc. 327); Russell Worthey (Doc. 339);
Andrew Gusman (Doc. 363); Angel Cerda (Doc. 364); Fabian Neave (Doc. 374); Enrique Gobin
(Doc. 392); Jose Neave (Doc. 413); Hernan Quezada (Doc. 415); Gonzalo Ramirez (Doc. 423);
Alfonso Banda-Hernandez (Doc. 427); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc.
449); and Jesus Torres (Doc. 455).

The defendant also requests underlying source material used to create the gang sheets specific to the defendant.  As the defendant has noted, discovery "is within the discretion of the trial judge and is not reviewable absent abuse."  *United States v. Smaldone*, 484 F.2d 311 (10th Cir.).  At this time, and to the extent possible, the United States will produce material "in connection with the creation" of the policies and procedures, as well as the underlying source material of the defendant's gang sheets.

### C.   **Motion for Bill of Particulars (Doc. 328)**[2]

#### 1.   **Law Related to Bills of Particular**

An indictment is sufficient if it is a "plain, concise, and definite written statement of the essential facts constituting the offense charged..."[3]

Federal Rule of Criminal Procedure 7(f) addresses bills of particular and provides:

> **(f) Bill of Particulars.**  The court may direct the government to file a bill of particulars.  The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits.  The government may amend a bill of particulars subject to such conditions as justice requires.

"The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense."  *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996).  If "the indictment sets forth the elements of the offense charged and

---

[2] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Russell Worthey (Doc. 339); Andrew Gusman (Doc. 363); Fabian Neave (Doc. 374); Jason Najera (Doc. 375); Enrique Gobin (Doc. 392); Angel Cerda (Doc. 394); Jose Neave (Doc. 413); Juan Torres (Doc. 420); Gonzalo Ramirez (Doc. 423); Alfonso Banda-Hernandez (Doc. 427); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc. 449).

[3] Federal Rule of Criminal Procedure 7(c).

3

sufficiently apprised the defendant of the charges to enable him to prepare for trial," a bill of particulars is not necessary. *Id.* A bill of particulars is not a discovery device. *United States v. Dunn,* 841 F.2d 1026, 1029 (10th Cir. 1988). "[T]he defendant is not entitled to notice of all of the evidence the government intends to produce, but only the theory of the government's case." *United States v. Levine,* 983 F.2d 165, 167 (10th Cir. 1992).

### 2. RICO Conspiracy (18 U.S.C. § 1962(d))

In this motion, Defendant Garcia makes specific demands for information the United States will have no obligation to present at trial and other information which is already contained in the indictment. Additional information requested by the defendant, as he likely knows, simply does not exist.

The information requested includes: "(1) the persons present when the alleged conspiracy was formed; (2) the terms of the conspiratorial agreement; (3) the location(s) at which the conspiracy was formed; (4) the identities of all known but unidentified co-conspirators referred to in the Indictment; (5) the manner in which the conspiracy was designed to achieve its purposes and goals; (6) the locations of any and all meetings or conspiratorial conversations in which any defendant, including Mr. Garcia, and/or any known but unidentified co-conspirators allegedly participated; (7) the approximate dates in which Mr. Garcia, each co-defendant and each known but unidentified co-conspirator joined the conspiracy; and (8) the particulars of all meetings and conversations in which any defendant, including Mr. Garcia, participated in the conspiracy, including without limitation the names of all persons that the government will claim at trial were co-conspirators who participated in those meetings and conversations."[4]

---

[4] Defendant's Memorandum at p. 3.

The indictment provides a great deal of information as to what the government alleges the purpose of the enterprise was and the manner by which it sought to achieve its goals. The additional counts alleged in the indictment shed additional light on the racketeering acts committed by this defendant and others. Further, the United States has disclosed thousands of pages of discovery which should have provided much of the information which the defendant will need to present his defense. Additional information will be forthcoming in the form of *Jencks* material.

The members of the conspiracy are charged in Count 1 and additional members of the enterprise include those fellow Nortenos charged in the indictment. The defendant appears eager to know the identity of other unidentified co-conspirators but that language appears in the indictment largely because the government presumes other Dodge City Nortenos joined in this criminal activity but they are not charged either because their identities were not discovered or the evidence proving their involvement was lacking. In other words, the United States has not identified these additional conspirators because their identity is not known to the government or there is presently insufficient evidence to charge them. The government fails to see how providing the names of other uncharged Nortenos the United States believes were members of the conspiracy would benefit this defendant or those who joined this motion.

Additional information requested by the defendant includes who was present when the conspiracy was formed, the terms of the conspiracy, the location where it was formed, locations of meetings, the dates each conspirator joined the conspiracy and the topics discussed at all meetings. The United States is not required to perform an autopsy on the conspiracy and much of the information demanded by this defendant concerning the conspiracy is irrelevant. In addition, the simple fact is much of this information does not exist. The investigation has not

uncovered the existence of recordings of conspiratorial meetings and conversations.  The exact date the conspiracy was created, assuming there was a single date, is unknown.  So too are the dates each conspirator joined or the location where he made his intention to join the conspiracy known and who was present for the likely non-existent announcement.  The indictment alleges the conspiracy commenced at least as early as 2008 and continued through the return of the indictment.  The dates the VICAR acts were committed are also listed in the indictment.

Count 1 charges this defendant, and seven other Nortenos, with RICO Conspiracy in violation of Title 18, U.S.C. § 1962(d).   In order to prove the defendant guilty of violating this statute, the United States must prove the following:[5]

| | |
|---|---|
| *First:* | A conspiracy or agreement, as detailed in the indictment, existed between two or more persons to participate in the affairs of an enterprise that affected interstate commerce through a pattern of racketeering activity; |
| *Second:* | That the defendant deliberately joined or became a member of the conspiracy or agreement with knowledge of its purpose; and |
| *Third:* | The defendant agreed that someone, not necessarily the defendant, would commit at least two of the racketeering acts detailed in the indictment. |

The question, therefore, as it relates to Count 1, is has the defendant been provided with sufficient information with which he can present his defense.  The information demanded by this defendant, assuming it even exists, might be illuminating but it is not required to defend against this charge.  Because the United States has provided and will provide sufficient information through the indictment and discovery, a bill of particulars is not necessary and the United States requests this motion be denied.

---

[5] *United States v. Harris*, 695 F.3d 1125, 1130-34 (10th Cir. 2012).

**D.**      **Motion for Notice of Co-Conspirators' Statements (Doc. 330)**[6]

Under Federal Rule of Evidence 801(d)(2)(E), co-conspirator statements are not considered hearsay and are properly admitted if the district court finds, by a preponderance of the evidence, that (1) a conspiracy existed, (2) both the declarant and the defendant against whom the declaration is offered were members of the conspiracy, and (3) the statement was made in the course of and in furtherance of the conspiracy. *United States v. Eads*, 191 F.3d 1206, 1210 (10th Cir. 1999). The district court may satisfy the prerequisites for admission of a co-conspirator statement through either of two means: by holding a James hearing or by provisionally admitting the statement "with the caveat that . . . the party offering [it] must prove the existence of the predicate conspiracy through trial testimony of other evidence." *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995). Although the Tenth Circuit has stated a "strong preference for James proceedings where the government relies on co-conspirator statements," *United States v. Gonzalez-Montoya*, 161 F.3d 643, 649 (10th Cir. 1998), the Tenth Circuit does permit the district court to provisionally admit statements with the caveat that the offering party must prove the existence of the predicate conspiracy through trial testimony of other evidence. Id. In either case, the court may consider the hearsay statement itself, as well as independent factors, in determining whether the government has established a conspiracy by a preponderance of the evidence. Fed. R. Evid. 801(d)(2); *Bourjaily v. United States*, 483 U.S. 171, 181 (1987).

---

[6] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Russell Worthey (Doc. 339); Andrew Gusman (Doc. 363); Fabian Neave (Doc. 374); Jason Najera (Doc. 375); Joshua Flores (Doc. 387); Enrique Gobin (Doc. 392); Angel Cerda (Doc. 394); Jose Neave (Doc. 413); Hernan Quezada (Doc. 415); Juan Torres (Doc. 420); Gonzalo Ramirez (Doc. 423); Alfonso Banda-Hernandez (Doc. 427); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc. 449); and Jesus Torres (Doc. 455).

Any conversations of which the defendant himself is involved are admissible as admissions against interest and co-conspirator statements.   Fed. Rule Evid. 801 (d)(2)(A), (E). *United States v. Mayes*, 917 F.2d 457, 463, n. 8 (10th Cir. 1990). (holding that statements by defendants in tape-recorded conversations with co-conspirators were party admissions).  "[T]he Bruton doctrine does not rule situations...in which the evidence is admissible under a well recognized exception to the hearsay rule".  *United States v. Ramirez*, 479 F. 3d 1229, 1248 (10th Cir. 2007), quoting *United States v. Cox*, 449 F. 2d 679, 688-89 (10th Cir. 1971).

The indictment need not charge a defendant with a conspiracy for coconspirator statements to be admissible.  *United States v. Jones*, 540 F. 2d 465, 471 (10th Cir. 1976). However, in this case the defendant is charged in substantive conspiracy counts as well as counts that necessitate the United States establish the existence of an enterprise under RICO and VCAR law.  Statements made to an undercover police officer, legally not a member of the conspiracy by virtue of being a government agent, are admissible.  United States v. Leroy, 944 F. 2d 787, 789 (10th Cir. 1991).

If the Court determines a *James/Bruton* hearing is needed, the United States will present evidence at a James hearing to establish a conspiracy by a preponderance of the evidence. Further, by a preponderance of the evidence, the United States will present evidence that each declarant and defendant was a member of the conspiracy and each declaration was made during the course of and in furtherance of the conspiracy.

In this case the United States respectfully suggests that a James/Bruton hearing would be appropriate and asks the court to schedule the same in accordance with further scheduling and discovery orders and obligations.

**E.**      <u>Motion to Exclude Co-Conspirators' Testimonial Statements (Doc. 332)</u>[7]

The defendant asks that co-conspirator *testimonial* statements be excluded.  The United

States is not currently aware of any such statements and the defendant does not identify any in

his motion.  The United States anticipates it will seek to offer at trial co-conspirator statements

which are properly admitted under Federal Rule of Criminal Procedure 801(d)(2)(E).  In

*Crawford v. Washington*, the U.S. Supreme Court made clear that co-conspirator statements

properly admitted pursuant to Rule 801(d)(2)(E); i.e., statements made during and in furtherance

of the conspiracy are not testimonial and are, therefore, not affected by its holding in *Crawford*.[8]

Although the United States is not currently aware of co-conspirator statements in this case which

would be considered testimonial, we will remain cognizant of this potential issue and will make

the Court aware if any such statements are identified.

**F.**      <u>Motion for Notice of 404(b) Evidence (Doc. 334)</u>[9]

In accordance with Rule 404(b), the United States will provide to the defense the general

---

[7] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Russell Worthey (Doc. 339); Andrew Gusman (Doc. 363); Fabian Neave (Doc. 374); Jason Najera (Doc. 375); Joshua Flores (Doc. 387); Enrique Gobin (Doc. 392); Angel Cerda (Doc. 394); Jose Neave (Doc. 413); Hernan Quezada (Doc. 415); Juan Torres (Doc. 420); Gonzalo Ramirez (Doc. 423); Alfonso Banda-Hernandez (Doc. 427); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc. 449); and Jesus Torres (Doc. 455).

[8] 541 U.S. 36, 56 (2004).

[9] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Russell Worthey (Doc. 339); Andrew Gusman (Doc. 363); Fabian Neave (Doc. 374); Jason Najera (Doc. 375); Joshua Flores (Doc. 387); Enrique Gobin (Doc. 392); Jose Neave (Doc. 413); Hernan Quezada (Doc. 415); Juan Torres (Doc. 420); Gonzalo Ramirez (Doc. 423); Alfonso Banda-Hernandez (Doc. 427); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc. 449); and Jesus Torres (Doc. 455).

nature of crimes, wrongs or acts of the defendant which the United States intends to use at trial. The United States shall comply with the disclosure guidelines announced by the Court in the General Order of Discovery and Scheduling (Doc. 221).

The defendant requests notification, in the next 30 days, from the United States regarding Rule 404(b) evidence.  The defendant suggests no prejudice to the United States if immediate notification was ordered, and suggests immediate notification would assist the defendant in contemplating a plea.  This case has been designated a complex case by the Court.  (Doc. 267). As such, final scheduling orders have yet to be ordered.  The Court can provide the defendant with sufficient time to challenge any Rule 404(b) evidence, or prepare for trial or plea in a final or intermediate scheduling order.

Further, co-defendants have moved for disclosure of Rule 404(b) evidence in various motions.  *See*: (Doc. 377), (Doc. 342) and (Doc. 397).  Co-defendant Cerda in (Doc. 397) requests forthwith notice, but asks or suggests that notice be at least 90 days prior to any trial. Cerda acknowledges the complexity of the case and voluminous nature of discovery to date. Each of the co-defendants in the case at hand have also filed motions, or joined in motions, regarding specific discovery requests.  The United States will not be opposing the great majority of those discovery requests.  This will result in the case becoming more complex, scheduling of further deadlines and hearings being further expanded.  For those reasons the United States suggests immediate disclosure is unnecessary and unduly prejudicial, based upon the volume of additional discovery likely to be produced.  The United States does not object to disclosure of Rule 404(b) evidence greater than 30 days in advance of trial, but only in contemplation of any trial date being greater than 180 days in the future.

### G.      <u>Motion to Exclude Non-Testifying Co-Defendants' Guilty Pleas (Doc. 336)</u>[10]

The United States will not offer into evidence guilty pleas of non-testifying co-defendants.

### H.      <u>Motion for *James* Hearing (Doc. 369)</u>[11]

Under Federal Rule of Evidence 801(d)(2)(E), co-conspirator statements are not considered hearsay and are properly admitted if the district court finds, by a preponderance of the evidence, that (1) a conspiracy existed, (2) both the declarant and the defendant against whom the declaration is offered were members of the conspiracy, and (3) the statement was made in the course of and in furtherance of the conspiracy. *United States v. Eads*, 191 F.3d 1206, 1210 (10th Cir. 1999). The district court may satisfy the prerequisites for admission of a co-conspirator statement through either of two means: by holding a James hearing or by provisionally admitting the statement "with the caveat that . . . the party offering [it] must prove the existence of the predicate conspiracy through trial testimony of other evidence." *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995). Although the Tenth Circuit has stated a "strong preference for

---

[10] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Russell Worthey (Doc. 339); Eusebio Sierra-Medrano (Doc. 358); Andrew Gusman (Doc. 363); Fabian Neave (Doc. 374); Jason Najera (Doc. 375); Joshua Flores (Doc. 387); Enrique Gobin (Doc. 392); Angel Cerda (Doc. 394); Jose Neave (Doc. 413); Hernan Quezada (Doc. 415); Juan Torres (Doc. 420); Gonzalo Ramirez (Doc. 423); Alfonso Banda-Hernandez (Doc. 427); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc. 449).

[11] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Russell Worthey (Doc. 371); Fabian Neave (Doc. 384); Jason Najera (Doc. 375); Joshua Flores (Doc. 387); Adam Flores (Doc. 388); Enrique Gobin (Doc. 392); Angel Cerda (Doc. 394); Jose Neave (Doc. 413); Juan Torres (Doc. 420); Gonzalo Ramirez (Doc. 423); Alfonso Banda-Hernandez (Doc. 427); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc. 449); and Jesus Torres (Doc. 455).

James proceedings where the government relies on co-conspirator statements," *United States v. Gonzalez-Montoya*, 161 F.3d 643, 649 (10th Cir. 1998), the Tenth Circuit does permit the district court to provisionally admit statements with the caveat that the offering party must prove the existence of the predicate conspiracy through trial testimony of other evidence.  Id.  In either case, the court may consider the hearsay statement itself, as well as independent factors, in determining whether the government has established a conspiracy by a preponderance of the evidence.  Fed. R. Evid. 801(d)(2); *Bourjaily v. United States*, 483 U.S. 171, 181 (1987).

Any conversations of which the defendant himself is involved are admissible as admissions against interest and co-conspirator statements.   Fed. Rule Evid. 801 (d)(2)(A), (E). *United States v. Mayes*, 917 F.2d 457, 463, n. 8 (10th Cir. 1990). (holding that statements by defendants in tape-recorded conversations with co-conspirators were party admissions).  "[T]he Bruton doctrine does not rule situations...in which the evidence is admissible under a well recognized exception to the hearsay rule".  *United States v. Ramirez*, 479 F. 3d 1229, 1248 (10th Cir. 2007), quoting *United States v. Cox*, 449 F. 2d 679, 688-89 (10th Cir. 1971).

The indictment need not charge a defendant with a conspiracy for coconspirator statements to be admissible.  *United States v. Jones*, 540 F. 2d 465, 471 (10th Cir. 1976). However, in this case the defendant is charged in substantive conspiracy counts as well as counts that necessitate the United States establish the existence of an enterprise under RICO and VCAR law.  Statements made to an undercover police officer, legally not a member of the conspiracy by virtue of being a government agent, are admissible.  United States v. Leroy, 944 F. 2d 787, 789 (10th Cir. 1991).

If the Court determines a *James/Bruton* hearing is needed, the United States will present evidence at a James hearing to establish a conspiracy by a preponderance of the evidence.

Further, by a preponderance of the evidence, the United States will present evidence that each declarant and defendant was a member of the conspiracy and each declaration was made during the course of and in furtherance of the conspiracy.

In this case the United States respectfully suggests that a *James/Bruton* hearing would be appropriate and asks the court to schedule the same in accordance with further scheduling and discovery orders and obligations.

### I.  Motion to Disclose Defendants' Criminal Records (Doc. 372)[12]

The United States will disclose the prior criminal records of all defendants.

### J.  Motion for Severance (Doc. 407)

The defendant requests a separate trial from his codefendants because he fears possible prejudice from a joint trial.   Federal Rule of Criminal Procedure 8(b) allows for joinder of defendants who are alleged to have participated in the same act or series of acts.[13]   Courts are expected to "construe Rule 8 broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997).   While Federal Rule of Criminal Procedure 14 does allow for severance if defendants would suffer prejudice from joinder, a defendant must first show that denial of his request for a severance would result in actual prejudice to his defense.  *United States v. Eads*, 191 F.3d 1206, 1209 (10th

---

[12] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Jason Najera (Doc. 375); Enrique Gobin (Doc. 392); Jose Neave (Doc. 413); Hernan Quezada (Doc. 415); Juan Torres (Doc. 420); Alfonso Banda-Hernandez (Doc. 427); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc. 449).

[13] Rule 8(b) states: **(b) Joinder of Defendants.**  The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need

Cir. 1999).  A defendant must also show that any prejudice would outweigh the expense and inconvenience of separate trials.  *United States v. Martin*, 18 F. 3d 1515, 1518 (10th Cir. 1994). Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro v. United States*, 506 U.S. 534, 539 (1993).    "In the context of conspiracy, severance will rarely, if ever, be required.  In a conspiracy case, joint trials reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague and provide the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome."  *United States v. Miller*, 250 F.R.D. 588, 597-98 (D. Kansas 2008)(cites omitted).

A defendant has a difficult burden of showing actual prejudice which would warrant granting separate trials in the ordinary case, that burden is even greater when he is charged as a member of a criminal enterprise engaged in racketeering activity.  The indictment alleges each of these defendants is a member of the Nortenos street gang, an enterprise which is involved in the commission of a variety of criminal acts for common purposes.   By definition the United States will present evidence that multiple defendants acted in concert as part of the enterprise and that groups of defendants acted in concert during the commission of various violent crimes in aid of racketeering activity.  The Court can protect individual defendants from possible prejudice which might result from the introduction of evidence of crimes committed by codefendants which are unrelated to their charged acts with the use of limiting instructions.  *United States v. Hardwell*, 80 F.3d 1471, 1487 (10th Cir. 1996).  The defendant has failed to meet his heavy burden to

---

not be charged in each count.

establish the need for separate trials. Given the nature of the charges filed in this indictment

meeting this burden would be an extremely difficult, if not impossible, task.

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of December, 2012, we electronically filed the

foregoing motion with the clerk of the court by using the CM/ECF system, which will send a

notice of electronic filing to all counsel of record.

/s/ Lanny D. Welch
LANNY D. WELCH
Assistant United States Attorney

15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-17-MLB |
| | } | |
| JAYSON VARGAS, | } | |
| a.k.a. Wee Wee, | } | |
| | } | |
| Defendant. | } | |

**RESPONSE OF THE UNITED STATES TO
DEFENDANT JAYSON VARGAS'S MOTIONS**

The United States of America, by Aaron L. Smith and Lanny D. Welch, Assistant United

States Attorneys, hereby responds to Defendant Jayson Vargas's motions.  In support of this

response, the United States avers as follows:

A.     **Charges**

Defendant Jayson Vargas is charged in the following counts of the indictment returned on

April 16, 2012:

Count 1 - RICO Conspiracy, in violation of Title 18, U.S.C. § 1962(d);

Count 23 - Violent Crime in Aid of Racketeering/Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(3);

Count 24 - Violent Crime in Aid of Racketeering/Conspiracy to Commit an Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(6);

Count 25 - Possess and Brandish a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A);

Count 29 - Felon in Possession of a Firearm, in violation of Title 18, U.S.C. § 922(g)(1).

1

**B.**     **Motion to Dismiss for Selective Prosecution (Doc. 438)**[1]

The defendant requests dismissal of the indictment because he claims he and his co-defendants were indicted solely because they are Hispanic.  Because the defendant, and his fellow Nortenos, are lawfully indicted for their participation in an enterprise which was responsible for numerous acts of violence in Dodge City, Kansas, the United States suggests this motion is without merit and we respectfully request it be denied.

A defendant claiming selective prosecution must demonstrate "that the federal prosecutorial policy had a discriminatory purpose." *United States v. Armstrong*, 517 U.S. 456, 465 (1996).  "To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." *Id.* "Caution is required when evaluating selective-prosecution claims.  The defendant is asking the judiciary to exercise power over a 'special province' of the executive branch, a province in which, for good reason, the executive possesses broad discretion." *United States v. Deberry*, 430 F.3d 1294, 1299 (10th Cir. 2005) quoting *Armstrong*, 517 U.S. at 464.  "[T]he standard [for proving a selective-prosecution claim] is a demanding one." *Id.* at 463.

The defendant's sole basis for making the claim that he is the victim of selective prosecution is that the defendants in this case are Hispanic; therefore, he reasons, they were charged because they are Hispanic.[2]  Ironically, the defendant cites in his brief

_____

[1] This motion was joined by Angel Cerda (Doc. 448); Jason Najera (Doc. 458) and Andrew Gusman (Doc. 460).

[2] While, for the sake of responding to this motion, the government will accept as true that all 23 defendants are Hispanic, it is possible one or more of the defendants charged are non-Hispanic Caucasian and that another is African-American.  The United States is not certain of the

2

*United States v. Harris*, 695 F.3d 1125 (10th Cir. 2012), to discuss proof necessary to establish an enterprise. Tracy Harris was one of 15-20 Crips charged by the United States Attorney's Office for the District of Kansas as part of a RICO conspiracy which alleged the Crips were an enterprise engaged in the commission of violent crimes and in trafficking narcotics in Wichita, Kansas. All of the Crips charged in that case were African-American. Mr. Harris and his fellow Crip gang members were tried in the same courthouse where this defendant and his fellow Nortenos gang members will be tried. The fact that gang members of another race have been charged and convicted for their roles in a RICO conspiracy in the very courthouse this defendant will be tried and convicted in is dispositive of his motion. The defendant has failed to meet his heavy burden and the United States requests this motion be denied.

### C.    Motion to Suppress Statements (Doc. 440)[3]

The United States is not currently aware of any post-arrest statements of this defendant which will be offered at trial. If such statements are identified the United States will alert the Court so that a ruling can be made as to its admission prior to an attempt to introduce such statement to the jury.

### D.    Motion for Severance (Doc. 441)

The defendant requests a separate trial from his codefendants because he fears possible prejudice from a joint trial. Federal Rule of Criminal Procedure 8(b) allows for joinder of

---

ethnicity of all 23 defendants because ethnicity was not a factor in the decision to indict.

[3] This motion was joined by Andrew Gusman (Doc. 460).

3

defendants who are alleged to have participated in the same act or series of acts.[4]   Courts are expected to "construe Rule 8 broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997).   While Federal Rule of Criminal Procedure 14 does allow for severance if defendants would suffer prejudice from joinder, a defendant must first show that denial of his request for a severance would result in actual prejudice to his defense.  *United States v. Eads*, 191 F.3d 1206, 1209 (10th Cir. 1999).   A defendant must also show that any prejudice would outweigh the expense and inconvenience of separate trials.  *United States v. Martin*, 18 F. 3d 1515, 1518 (10th Cir. 1994). Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).    "In the context of conspiracy, severance will rarely, if ever, be required.  In a conspiracy case, joint trials reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague and provide the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome." *United States v. Miller*, 250 F.R.D. 588, 597-98 (D. Kansas 2008)(cites omitted).

A defendant has a difficult burden of showing actual prejudice which would warrant granting separate trials in the ordinary case, that burden is even greater when he is charged as a member of a criminal enterprise engaged in racketeering activity.  The indictment alleges each of these defendants is a member of the Nortenos street gang, an enterprise which is involved in the

---

[4] Rule 8(b) states: **(b) Joinder of Defendants.**  The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need

4

commission of a variety of criminal acts for common purposes.   By definition the United States will present evidence that multiple defendants acted in concert as part of the enterprise and that groups of defendants acted in concert during the commission of various violent crimes in aid of racketeering activity.  The Court can protect individual defendants from possible prejudice which might result from the introduction of evidence of crimes committed by codefendants which are unrelated to their charged acts with the use of limiting instructions.  *United States v. Hardwell,* *80 F.3d 1471, 1487 (10th Cir. 1996).*  The defendant has failed to meet his heavy burden to establish the need for separate trials. Given the nature of the charges filed in this indictment meeting this burden would be an extremely difficult, if not impossible, task.

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov

---

not be charged in each count.

5

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of December, 2012, we electronically filed the

foregoing motion with the clerk of the court by using the CM/ECF system, which will send a

notice of electronic filing to all counsel of record.


<div style="text-align:center">

/s/ Lanny D. Welch

LANNY D. WELCH

Assistant United States Attorney

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-03-MLB |
| | } | |
| GONZALO RAMIREZ, | } | |
| a.k.a. Gonzo, | } | |
| | } | |
| Defendant. | } | |

**RESPONSE OF THE UNITED STATES TO
DEFENDANT GONZALO RAMIREZ'S MOTIONS**

The United States of America, by Aaron L. Smith and Lanny D. Welch, Assistant United

States Attorneys, hereby responds to Defendant Gonzalo Ramirez's motions.  In support of this

response, the United States avers as follows:

**A.**     **Charges**

Defendant Gonzalo Ramirez is charged in the following counts of the indictment returned

on April 16, 2012:

Count 1  -   RICO Conspiracy, in violation of Title 18, U.S.C. §
1962(d);

Count 2  -   Violent Crime in Aid of Racketeering/Conspiracy to
Murder, in violation of Title 18, U.S.C. § 1959(a)(5);

Count 3  -   Violent Crime in Aid of Racketeering/Murder, in violation
of Title 18, U.S.C. § 1959(a)(1);

Count 4  -   Violent Crime in Aid of Racketeering/Attempted Murder,
in violation of Title 18, U.S.C. § 1959(a)(5);

Count 5  -   Violent Crime in Aid of Racketeering/Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(3);

Count 6  -   Possess/Discharge a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A);

Count 7  -   Violent Crime in Aid of Racketeering/Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(3);

Count 8  -   Violent Crime in Aid of Racketeering/Conspiracy to Commit an Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(6);

Count 9  -   Possess and Brandish a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A);

Count 10  -   Violent Crime in Aid of Racketeering/Conspiracy to Commit Murder, in violation Title 18, U.S.C. § 1959(a)(5);

Count 11  -   Violent Crime in Aid of Racketeering/Attempted Murder, in violation Title 18, U.S.C. § 1959(a)(5);

Count 12  -   Violent Crime in Aid of Racketeering/Assault with a Dangerous Weapon, in violation Title 18, U.S.C. § 1959(a)(3);

Count 13  -   Possess and Discharge a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A).

**B.**   **Motion to Suppress Statement (Doc. 424)**

The United States, in their case-in-chief, will not seek admission of the defendant's statements rendered to law enforcement officers on or about May 14, 2012 while the defendant was incarcerated in state prison.  At the time, the defendant was in custody and under indictment in the instant case.

C.       **Motion to Suppress Evidence Seized from Defendant's Residence (Doc. 425)**[1]

On October 18, 2010, law enforcement officers in Dodge City obtained search warrants from Kansas District Judge Van Hampton authorizing the searches of the residences of Gonzalo Ramirez and Pedro Garcia.  The search warrants sought evidence of gang attire and gang membership to include red bandanas or other items commonly associated with the Nortenos street gang in Dodge City.  These warrants were executed the following day.

In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court stated that when determining if probable cause exists for the issuance of a search warrant, "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Id.* at 238.  Probable cause is "a practical, nontechnical conception" based on "common-sense conclusions about human behavior."  *Id.* at 231.  "[D]etermination of probable cause should be paid great deference by reviewing courts."  *Id.* at 236.

There was probable cause to believe the evidence sought by Dodge City investigators would be found at the residences of Gonzalo Ramirez and Pedro Garcia and the search warrants issued by Judge Hampton were proper.  The United States will respectfully request, following a hearing on this matter, this motion be denied.

---

[1] This motion was joined by the following defendant and the United States offers this response to address this motion as well: Pedro Garcia (Doc. 435).

**D.      Motion to Suppress Evidence Seized from 1990 Cadillac (Doc. 426)**

On October 4, 2008, just after midnight numerous bullets were fired into a residence located at 1110 4th Avenue in Dodge City, Kansas.  Two occupants of the residence were struck by rounds fired into the home.  Both recovered from their wounds. Immediately following the shooting witnesses observed an older model Cadillac drive past the residence.  Witnesses believed the Cadillac was the same car which had been present earlier that evening when occupants of the car had stopped and two men got out and started identifying themselves as Nortenos and appeared to be attempting to start a fight with persons at the residence who were outside drinking beer.  The persons in the car referred to the people at the house as Surenos.  A verbal altercation ensued and the Cadillac drove away after persons at the residence threw beer bottles at the car.

After the shooting, police officers arrived and were told by witnesses at the scene they believed the persons in the Cadillac were responsible for the shooting.   Police then learned a Cadillac matching the vehicle's description was seen driving to 10770 Kettleway in Dodge City.  When officers arrived at the Kettleway address they located in a barn on the property a 1990 Cadillac bearing Kansas license tag WRO 809 which was registered to Griselda Vargas Flores[2] at 1409 Avenue H, Dodge City, Kansas.  Persons who reside at 10770 Kettleway told officers the car did not belong to anyone who lived there and Marie Cerda, the owner of 10770 Kettleway, gave officers written consent to search the vehicle.  The vehicle was not searched pursuant to the written waiver.  Instead,

---

[2] Flores is the mother of Gonzalo Ramirez.

4

police officers had the vehicle impounded and it was placed in police custody.  The car was not searched until a search warrant was obtained for the vehicle on October 7, 2008.

The United States has previously cited the appropriate standard to determine whether probable cause existed for the issuance of a search warrant.[3]  The search warrant issued for the 1990 Cadillac was supported by probable cause and the defendant's motion to suppress the evidence seized pursuant to that warrant should be denied.

### E.   Motion to Dismiss and for Bill of Particulars (Doc. 430)[4]

### 1.   Effect on Interstate Commerce under RICO

The defendant suggests under the Supreme Court's decisions in *United States v. Lopez,* 514 U.S. 549 (1995) and *United States v. Morrison,* 529 U.S. 598 (2000), the government must show the RICO enterprise's activity had a substantial effect on interstate commerce.  This is not true.  *Lopez* concerned the Gun Free School Zones Act and *Morrison* examined the civil remedy provided by the Violence Against Women Act.  Neither Act contained a jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce.

However, in contrast, RICO contains a jurisdictional element: "[i]t shall be unlawful for any person employed by or associated with any enterprise *engaged in, or the activities of which affect, interstate or foreign commerce*, to conduct or participate…in the conduct of such

---

[3] *Illinois v. Gates,* 462 U.S. 213, 238 (1983)(probable cause is a consideration of whether there is the fair probability that contraband or evidence of a crime will be found in a particular place).

[4] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Donte Barnes (Doc. 433); Pedro Garcia (Doc. 436); Jose Neave (Doc. 413); Angel Cerda (Doc. 448) and Alfredo Beltran-Ruiz (Doc. 449); Jesus Sanchez (Doc. 453); Jason Najera (458); and Andrew Gusman (Doc. 460).

enterprise's affairs…" Title 18, U.S.C. § 1962(c)(emphasis added).  A number of circuits have held, post-*Lopez*, that the government does not need to prove the RICO enterprise's effect on interstate commerce is substantial.[5]   The overwhelming weight of authority supports the United States' position that the government is only required to prove a de minimis effect on interstate commerce to support a conviction under Title 18, U.S.C. § 1962.  The defendant's motion to dismiss should be denied.

### 2.   Effect on Interstate Commerce under VICAR/Bill of Particulars

The defendant makes a similar argument related to the VICAR counts of the indictment. He claims the United States must prove each violent crime charged in the indictment had an effect on interstate commerce.  A plain reading of the statute makes clear this claim is erroneous.

"VICAR was enacted by Congress in 1984 as a violent crime corollary to the RICO statute." *United States v. Jones*, 566 F.3d 353, 361 (3d Cir.), *cert. denied*, __U.S.__ (2009).

---

[5] See: *United States v. Smith*, 413 F.3d 1253, 1273-74 (10th Cir. 2005)(requisite de minimis effect established when the street gang enterprise engaged in drug dealing and robberies), *abrogated on other grounds by United States v. Hutchinson*, 573 F.3d 1011 (10th Cir. 2009)(the court left undisturbed *Smith's* conclusion that a de minimis effect on interstate commerce was all that was necessary but rejected *Smith's* conclusion that a more formal structure of the enterprise must be proven based on the Supreme Court's holding in *Boyle v. United States*, 556 U.S. 938 (2009)); *United States v. Nascimento*, 491 F.3d 25, 43-45 (1st Cir. 2007)(RICO enterprise's necessary relationship to interstate commerce is still de minimis); *United States v. Urban*, 404 F.3d 754, 761-67 (3d Cir. 2005)(de minimis effect established by depletion of assets of a business through extortion); *United States v. Delgado*, 401 F.3d 290, 297 (5th Cir. 2005)(effect on interstate commerce shown by enterprise's trafficking in drugs obtained outside of U.S. and members used telephones, Western Union and U.S. Postal Service); *United States v. Frega*, 179 F.3d 793, 800 (9th Cir. 1999)(de minimis impact on interstate commerce is sufficient to establish RICO's required interstate commerce nexus);  *United States v. Maloney,* 71 F. 3d 645, 662-63 (7th Cir. 1995)(de minimis test sufficient and *Lopez'* substantial effects test is inapplicable); *but see*, *Waucaush v. United States*, 380 F.3d 251, 256 (6th Cir. 2004)("where enterprise itself did not engage in economic activity, a minimal effect on commerce will not do").

"Congress enacted VICAR to complement RICO" and intended for VICAR "to be liberally construed to effectuate it remedial purposes." *United States v. Banks*, 514 F.3d 959, 967 (9th Cir. 2008)(other cites omitted).  VICAR requires, as charged in this case, that a defendant have committed a crime of violence in order to advance or maintain his position within an *enterprise affecting interstate commerce* that is engaging in racketeering activity.[6]  Under the VICAR statute the government is required to prove the *enterprise* had an effect on interstate commerce, not the individual violent crimes committed by members of the enterprise.  The United States will establish that the activities of the Nortenos street gang, the enterprise which is the focus of this indictment, had a de minimis effect on interstate commerce.  Because it represents a misapprehension of the VICAR statute, the defendant's request for a bill of particulars to receive additional information as to how the violent crimes he committed affected interstate commerce should be denied.

<div style="margin-left:40%">

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov

</div>

---

[6] Title 18, U.S.C. § 1959.

7

CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of December, 2012, we electronically filed the

foregoing motion with the clerk of the court by using the CM/ECF system, which will send a

notice of electronic filing to all counsel of record.

/s/ Lanny D. Welch
LANNY D. WELCH
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-09-MLB |
| | } | |
| JUAN TORRES, | } | |
| a.k.a. Bugsy, | } | |
| | } | |
| Defendant. | } | |

**RESPONSE OF THE UNITED STATES TO
DEFENDANT JUAN TORRES'S MOTIONS**

The United States of America, by Aaron L. Smith and Lanny D. Welch, Assistant United

States Attorneys, hereby responds to Defendant Juan Torres's motions.  In support of this

response, the United States avers as follows:

A.    **Charges**

Defendant Juan Torres is charged in the following counts of the indictment returned on

April 16, 2012:

Count 10  -   Violent Crime in Aid of Racketeering/Conspiracy to Commit
Murder in violation of Title 18, U.S.C. § 1959(a)(5);

Count 11  -   Violent Crime in Aid of Racketeering/Attempted Murder,
in violation of Title 18, U.S.C. § 1959(a)(5);

Count 12  -   Violent Crime in Aid of Racketeering/Assault with a
Dangerous Weapon, in violation of Title 18, U.S.C. §
1959(a)(3);

Count 13  -   Possess and Discharge a Firearm in Furtherance of a Crime
of Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A).

1

**B.**     <u>**Motion for Bill of Particulars (Doc. 417)**</u>[1]

An indictment is sufficient if it is a "plain, concise, and definite written statement of the essential facts constituting the offense charged..."[2]

Federal Rule of Criminal Procedure 7(f) addresses bills of particular and provides:

> **(f) Bill of Particulars.**  The court may direct the government to file a bill of particulars.  The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits.  The government may amend a bill of particulars subject to such conditions as justice requires.

"The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense." *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996).  If "the indictment sets forth the elements of the offense charged and sufficiently apprised the defendant of the charges to enable him to prepare for trial," a bill of particulars is not necessary. *Id*.  A bill of particulars is not a discovery device. *United States v. Dunn,* 841 F.2d 1026, 1029 (10th Cir. 1988).  "[T]he defendant is not entitled to notice of all of the evidence the government intends to produce, but only the theory of the government's case." *United States v. Levine,* 983 F.2d 165, 167 (10th Cir. 1992).

In this motion, Defendant Torres makes specific demands for information the United States will have no obligation to present at trial and other information which is already contained in the indictment.  Additional information requested by the defendant, as he likely knows, simply does not exist.  The information requested includes: 1) the date when he became a Norteno; 2)

---

[1] This motion was joined by Angel Cerda (Doc. 448).

[2] Federal Rule of Criminal Procedure 7(c).

how he participated in the operation of the enterprise; 3) how *his* actions affected interstate commerce[3]; 3) the elements of the conspiracy charged in Count 10 including the names of the coconspirators and the when the conspiracy began, times of meetings of conspirators, etc.; 4) coconspirators not indicted for "any count of the indictment alleging conspiracy"; and 5) the effect within the gang of the defendant's participation in the crimes charged.[4]

The indictment provides a great deal of information as to what the government alleges the purpose of the enterprise was and the manner by which it sought to achieve its goals.  The additional counts alleged in the indictment shed additional light on the racketeering acts committed by this defendant and others.  Further, the United States has disclosed thousands of pages of discovery which should have provided much of the information which the defendant will need to present his defense.  Additional information will be forthcoming in the form of *Jencks* material.   Most importantly, the vast majority of the information requested by the defendant be disclosed in the form of a bill of particulars is irrelevant to the charges filed against him.  Little, if any, of this information will be necessary to prove the defendant guilty and while it might satisfy his curiosity the law does not require the government to provide a bill of particulars for these purposes.  The United States respectfully suggests this motion should be denied.

---

[3] The defendant misapprehends the government's burden with respect to proof of effect on interstate commerce.  The United States must prove the *enterprise* had an effect on interstate commerce, not an individual defendant or crime.  *See*: Title 18, U.S.C. § 1959(b)(2)(enterprise includes any group of individuals associated in fact the activities of which affect interstate or foreign commerce).

[4] Doc. 417 at 1-2.

### C.    Motion for Severance (Doc. 418)[5]

The defendant requests a separate trial from his codefendants because he fears possible prejudice from a joint trial.  Federal Rule of Criminal Procedure 8(b) allows for joinder of defendants who are alleged to have participated in the same act or series of acts.[6]  Courts are expected to "construe Rule 8 broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997).  While Federal Rule of Criminal Procedure 14 does allow for severance if defendants would suffer prejudice from joinder, a defendant must first show that denial of his request for a severance would result in actual prejudice to his defense.  *United States v. Eads*, 191 F.3d 1206, 1209 (10th Cir. 1999).  A defendant must also show that any prejudice would outweigh the expense and inconvenience of separate trials.  *United States v. Martin*, 18 F. 3d 1515, 1518 (10th Cir. 1994).  Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).   "In the context of conspiracy, severance will rarely, if ever, be required.  In a conspiracy case, joint trials reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague and provide the jury the best perspective on all of the evidence and therefore increases

---

[5] This motion was joined by Angel Cerda (Doc. 448); and Jesus Torres (Doc. 455).

[6] Rule 8(b) states: **(b) Joinder of Defendants.**  The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

the likelihood of a correct outcome." *United States v. Miller*, 250 F.R.D. 588, 597-98 (D. Kansas 2008)(cites omitted).

A defendant has a difficult burden of showing actual prejudice which would warrant granting separate trials in the ordinary case, that burden is even greater when he is charged as a member of a criminal enterprise engaged in racketeering activity.  The indictment alleges each of these defendants is a member of the Nortenos street gang, an enterprise which is involved in the commission of a variety of criminal acts for common purposes.   By definition the United States will present evidence that multiple defendants acted in concert as part of the enterprise and that groups of defendants acted in concert during the commission of various violent crimes in aid of racketeering activity.  The Court can protect individual defendants from possible prejudice which might result from the introduction of evidence of crimes committed by codefendants which are unrelated to their charged acts with the use of limiting instructions.  *United States v. Hardwell*, 80 F.3d 1471, 1487 (10th Cir. 1996).  The defendant has failed to meet his heavy burden to establish the need for separate trials. Given the nature of the charges filed in this indictment meeting this burden would be an extremely difficult, if not impossible, task.

> **D.   Motion to Dismiss for Preindictment Delay (Doc. 419)[7]**

> **1.   Defendant's Claim**

The defendant claims the indictment should be dismissed because if the indictment had been filed prior to the defendant turning 21 years of age he would have been entitled to the protections of the Juvenile Delinquency Act.

---

[7] This motion was joined by Jason Najera (Doc. 437).

The United States Supreme Court has previously addressed claims of preindictment delay in *United States v. Marion*, 404 U.S. 307 (1971) and then again in *United States v. Lovasco*, 431 U.S. 783 (1977).  In these decisions the Court held that preindictment delay is inexcusable only if it results in actual prejudice to the defendant.  The standard to be applied in considering the validity of a claim of preindictment delay has been further defined by the United States Court of Appeals for the Tenth Circuit where that Court said, "[p]reindictment delay is a violation of due process where (1) the defendant suffered 'actual prejudice resulting from the delay' and (2) 'the delay was purposefully designed to gain tactical advantage or to harass.'" *United States v. Colonna*, 360 F.3d 1169, 1176 (10th Cir. 2004), quoting *United States v. Comosona*, 848 F.2d 1110, 1113 (10th Cir. 1998).  "Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice.  Defendant must show definite and not speculative prejudice, and in what specific manner missing witnesses would have aided the defense." *United States v. Trammell*, 133 F.3d 1343, 1351 (10th Cir. 1998).  The burden of proving actual prejudice and that the delay was purposeful in order to gain a tactical advantage is on the defendant. *United States v. Engstrom*, 965 F.2d 836, 838 (10th Cir. 1992).

### 2. Two Pronged Test

#### a. Actual Prejudice

To prevail on a claim of preindictment delay a defendant must first establish the delay has caused him actual prejudice.  The prejudice offered by the defendant is that he suggests if he had been indicted earlier he may have been able to avail himself of protections offered by the

Juvenile Delinquency Act.  This suggestion ignores the fact that the Juvenile Delinquency Act affords the United States the opportunity to have the juvenile, in cases of crimes of violence and where there is substantial federal interest, transferred to United States District Court.[8]  If the defendant had been eligible for proceedings under the Juvenile Delinquency Act the United States, given the nature of this investigation and the substantial federal interest in a RICO/VICAR prosecution, would have requested to have had the defendant prosecuted in United States District Court.  The United States does not presume to suggest how the Court would have resolved the government's request to proceed against the defendant in this manner but there would appear to be a strong possibility the defendant would have been joined in this indictment regardless of the timing of the indictment's return.  Therefore, the defendant's claim of actual prejudice rings hollow.

### b.      Intentional Delay

However, even if the defendant is able to establish he has suffered actual prejudice as the result of the alleged delay, he then must prove "the delay was purposefully designed to gain tactical advantage or to harass."  *Colonna*, 360 F.3d at 1177.  The defendant's brief fails to address his burden of showing any delay was intentionally designed to gain an advantage or to harass.  The United States contends his claim of actual prejudice is without merit but even if this were true the defendant's motion must fail because he makes no showing the delay was done purposefully by the United States to gain an advantage or to harass him.

The Nortenos street gang in Dodge City, Kansas, is the focus of the indictment.  That focus has resulted in the indictment of 23 members of that gang and numerous offenses committed by them.  The United States can assure the defendant that at no time was there a

7

discussion, a mention or any effort whatsoever to delay the return of this comprehensive

indictment because of him or his date of birth.  The timing of the indictment was the result of a

multitude of factors, none of which involved the defendant's age.  Consequently, the defendant

has failed to meet his burden to prove the delay occurred on purpose and with the express intent

of gaining an advantage or to harass.   The defendant has failed to meet his burden to establish he

is the victim of preindictment delay and that if he was, it was done for the purpose of gaining an

advantage or to harass.   The United States requests this motion be denied.

E.      **Motion to Prevent Government from Referring to Defendant as a Gang Member (Doc. 422)[9]**

We recognize that a jury is likely to associate gangs with "criminal activity and deviant

behavior," such that the admission of gang evidence raises the specter of guilt by association or a

verdict influenced by emotion. *United States v. Irvin*, 87 F.3d 860, 865 (7th Cir. 1996). In

recognition of the prejudicial nature of gang affiliation evidence, "we examine the care and

thoroughness with which a district judge considered the admission or exclusion of gang-

involvement evidence." *United States v. Westbrook*, 125 F.3d 996, 1007 (7th Cir. 1997).  But the

risk of prejudice associated with gang evidence does not render it automatically inadmissible. In

numerous cases, we have upheld the admission of gang evidence as more probative than

prejudicial. See *United States v. Montgomery*, 390 F.3d 1013, 1018 (7th Cir. 2004) (admission of

gang evidence proper to help establish motive); *United States v. King*, 627 F.3d 641, 649 (7th

Cir. 2010) (admission of gang-related evidence is appropriate "to demonstrate the existence of a

---

[8] Title 18, U.S.C. § 5032.

[9] This motion was joined by Jason Najera (Doc. 437) and Angel Cerda (Doc. 448); Jesus Torres (Doc. 455); and Andrew Gusman (Doc. 460).

joint venture or conspiracy and a relationship among its members") (citation omitted); *Clark v. O'Leary*, 852 F.2d 999 (7th Cir. 1988) (witness' membership in rival gang admissible for purposes of impeachment to show bias); *United States ex rel. Garcia v. Lane*, 698 F.2d 900 (7th Cir. 1983) (evidence of defendant's gang affiliation admissible to explain earlier inconsistent statement of witness due to fear of retaliation).

Counts 10 through 12 charge this defendant with Violent Crimes in Aid of Racketeering in violation of Title 18, U.S.C. § 1959.   In order to prove the defendant guilty of violating this statute, the United States must prove the following:[10]

| | |
|---|---|
| *First:* | A conspiracy or agreement, as detailed in the indictment, existed between two or more persons to participate in the affairs of an enterprise that affected interstate commerce through a pattern of racketeering activity; |
| *Second:* | That the defendant deliberately joined or became a member of the conspiracy or agreement with knowledge of its purpose; and |
| *Third:* | The defendant agreed that someone, not necessarily the defendant, would commit at least two of the racketeering acts detailed in the indictment. |

Therefore, the United States must prove to the trier of fact that the defendant was a member of the "enterprise" as defined in 18 U.S.C. § 1959(b)(2).  The "enterprise" at hand is a street gang identified as the **Nortenos** with sets named **Diablos Viejos (DV)** and **Los Carnales Chingones (LCC)**.  The defendant appears to concede the United States must refer to his gang affiliation and membership in the enterprise at the time of the alleged crimes.  Thus, the United

---

[10] *United States v. Harris*, 695 F.3d 1125, 1130-34 (10th Cir. 2012).

9

States shall present evidence and reference the defendant's gang membership during that relevant time period.

<div style="margin-left: 40%;">

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov

</div>

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of December, 2012, we electronically filed the foregoing motion with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

<div style="margin-left: 40%;">

/s/ Lanny D. Welch
LANNY D. WELCH
Assistant United States Attorney

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-01-MLB |
| | } | |
| JASON NAJERA, | } | |
| a.k.a. Ene, | } | |
| a.k.a. Norte, | } | |
| | } | |
| Defendant. | } | |

**RESPONSE OF THE UNITED STATES TO
DEFENDANT JASON NAJERA'S MOTIONS**

The United States of America, by Aaron L. Smith and Lanny D. Welch, Assistant United

States Attorneys, hereby responds to Defendant Jason Najera's motions.  In support of this

response, the United States avers as follows:

**A.     Charges**

Defendant Jason Najera is charged in the following counts of the indictment returned on

April 16, 2012:

> Count 1 -     RICO Conspiracy, in violation of Title 18, U.S.C. §
>               1962(d);
>
> Count 26 -    Violent Crime in Aid of Racketeering/Attempted Murder,
>               in violation of Title 18, U.S.C. § 1959(a)(5);
>
> Count 27 -    Violent Crime in Aid of Racketeering/Assault with a
>               Dangerous Weapon, in violation of Title 18, U.S.C. §
>               1959(a)(3);
>
> Count 33 -    Felon in Possession of Ammunition, in violation of Title
>               18, U.S.C. § 922(g)(1);

1

Count 34 -   Felon in Possession of Ammunition, in violation of Title 18, U.S.C. § 922(g)(1).

## B.   Motion in Limine for Criminal Record and Other Prior Crimes (Doc. 377)[1]

In accordance with Rule 404(b), the United States will provide to the defense the general nature of crimes, wrongs or acts of the defendant which the United States intends to use at trial.  The United States will comply with the disclosure guidelines announced by the Court in the General Order of Discovery and Scheduling (Doc. 221).

The United States does not concede that the defendant's prior crimes, wrongs or acts are irrelevant or lack probative value.  To the contrary, the defendant is charged in Count One with a RICO Conspiracy.  Consequently, the United States must prove the defendant engaged in a "pattern of racketeering activity" as defined in 18 U.S.C. §1961(5).  That provision requires the United States prove the defendant committed at least two acts of racketeering activity.

The defendant is charged with one such act in counts 26 and 27.  This obviates the need for the United States to prove at least another act of racketeering activity that is not currently contained in the indictment.  A RICO conspiracy charge need not specify the predicate racketeering acts that the defendant agreed would be committed.  *United States v. Randall*, 661 F.3d 1291, 1297 (10th Cir. 2011).  However, the government must prove the defendant agreed that a member of the conspiracy would commit two predicate

---

[1] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Enrique Gobin (Doc. 392); Jose Neave (Doc. 413); Hernan Quezada (Doc. 415); Juan Torres (Doc. 420); Alfonso Banda-Hernandez (Doc. 427); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc. 449).

racketeering acts, or that the particular defendant committed or agreed to commit two predicate acts himself.  *Salinas v. United States,* 522 U.S. 52 at 65; *United States v. Elliott*, 571 F.2d 880, 903 (5th Cir. 1978).  "A RICO conspiracy case does not require proof that any racketeering acts were actually carried out." *United States v. Benabe*, 654 F.3d 753, 776 (7th Cir. 2011).

Accordingly, the United States prays the defendant's motion in limine be denied and the admissibility of Rule 404(b) evidence be determined in accordance with the procedures identified in the General Order of Discovery and Scheduling (Doc. 221), and further scheduling orders of the Court.

## C.   Motion to Exclude *Bruton* Evidence (Doc. 378)[2]

The defendant moves to prevent the United States from introducing statements of codefendants which implicate him in criminal activity.  The United States is aware that it is precluded from introducing at trial a codefendant's extrajudicial confession that incriminates this defendant.  *Bruton v. United States*, 391 U.S. 123, 137 (1968).  However, the United States is not precluded from introducing confessions of codefendants which do not incriminate this defendant.  *Richardson v. Marsh*, 481 U.S. 200, 208-09 (1987).  Further, redaction of the defendant's name from a codefendant's confession may be sufficient to protect the defendant under *Bruton*.  *United States v. Verduzco-Martinez*, 186 F.3d 1208, 1214-15 (10th Cir. 1999).

---

[2] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Enrique Gobin (Doc. 392); Angel Cerda (Doc. 394); Jose Neave (Doc. 413); Hernan Quezada (Doc. 415); Juan Torres (Doc. 420); Alfonso Banda-Hernandez (Doc. 427); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433); Jesus Sanchez (Doc. 434); Alfredo Beltran-Ruiz (Doc. 449); and Andrew Gusman(460)..

The United States will comply with its obligations under *Bruton* and if an out-of-court confession of a codefendant is offered the United States will redact the names of other defendants at trial also implicated in the statement.  If there is any question whether redaction alone is sufficient the United States will make the Court aware of the issue and will seek guidance.

### D.        Motion for Specific Discovery Related to Street Gangs (Doc. 379)[3]

The United States does not object to the specific discovery requests contained in the instant motion.  The United States will provide the "Gang Related Policies and Procedures" used by the Dodge City Police Department.  These policies and procedures relate to the creation of the individual "gang sheets" for this defendant, as well as his co-defendants.

The United Sates filed a notice of expert testimony in (Doc. 297).  Identified in the notice are three officers of the Dodge City Police Department.  Those officers can testify not only to the defendant's participation in the gang, but also the implementation of the policies and procedures.

The defendant also requests underlying source material used to create the gang sheets specific to the defendant.  At this time, and to the extent possible, the United States will produce the underlying source material of the defendant's gang sheets.

---

[3] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Enrique Gobin (Doc. 392); Angel Cerda (Doc. 394); Pedro Garcia (Doc. 409); Jose Neave (Doc. 413); Juan Torres (Doc. 420); Alfonso Banda-Hernandez (Doc. 427); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433); Alfredo Beltran-Ruiz (Doc. 449); and Jesus Torres (Doc. 455).

**E.**   **Motion for Disclosure of Confidential Informants (Doc. 381)[4]**

### 1.   Law Applicable to Disclosure of Informants

The defendant seeks the disclosure of the identity of confidential informants he suspects have provided information about his membership in the Nortenos street gang and/or his involvement in crimes charged in the indictment.  The U.S. Supreme Court has held that an informant's identity must be revealed whenever it would be relevant and helpful to an accused's defense or essential to a fair determination of a cause.  *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957).  "In making the requisite showing under the *Roviaro* standard, the defendant must present more than mere speculation about possible usefulness of an informant's testimony. Disclosure of an informant is not required where the information sought from him or her would be merely cumulative, or where the informant is not a participant in or a witness to the crime charged."  *United States v. Moralez*, 908 F.2d 565, 567 (10th Cir. 1990)(cites omitted). Generally, if an informant is merely a tipster disclosure is not required.  *United States v. Zamora*, 784 F.2d 1025, 1030 (10th Cir. 1986).

### 2.   Cooperators/Informants

In the instant case the defense is asking for disclosure of the identities of persons who identified this defendant and others as members of the Nortenos street gang.  He appears to suggest that if a person provided information to the police and the tipster was a member of the

---

[4] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Joshua Flores (Doc. 387); Enrique Gobin (Doc. 392); Pedro Garcia (Doc. 393); Angel Cerda (Doc. 394); Jose Neave (Doc. 413); Juan Torres (Doc. 420); Gonzalo Ramirez (Doc. 423); Alfonso Banda-Hernandez (Doc. 427); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433); Alfredo Beltran-Ruiz (Doc. 449); Jesus Sanchez (453); Jayson Vargas (Doc. 454); Jesus Torres (Doc. 455); Russell Worthey (Doc. 459) and Andrew Gusman (Doc. 460).

Nortenos, this person must be involved in criminal activity with the defendant and this person is, therefore, a "transactional witness."[5]  However, the bulk of information contained in the gang sheets disclosed to the defendants comes from observations made by law enforcement officers or from admissions made by the gang member to a police officer.

There are not a large number of confidential informants in this investigation.  Persons who have provided information to investigators in this case who will testify as government witnesses will be disclosed prior to trial as part of our discovery obligations.  The United States has already committed to disclosing *Jencks* material prior to trial and this information will include reports compiled from information provided by persons affiliated with the Nortenos street gang or who otherwise provided information about the gang or crimes perpetrated by its members.

The defendant also suggests he is entitled to know the identity of any cooperating defendants because they would have to be closely involved in criminal activity with him.  The identity of cooperating defendants will become known once they enter pleas of guilty.   No dates have been set for these pleas but the United States is confident these pleas will take place sufficiently in advance of trial to afford this defendant and others to prepare for the cooperators' testimony.  Further, the United States will disclose the criminal histories of each of its cooperators and benefits provided to them to the defendants who plan to go to trial and we will do so prior to trial.

---

[5] Doc. 382 at p. 4.

**F.       Motion for Severance/Separate Trials (Doc. 383)[6]**

The defendant requests a separate trial from his codefendants because he fears possible prejudice from a joint trial.   Federal Rule of Criminal Procedure 8(b) allows for joinder of defendants who are alleged to have participated in the same act or series of acts.[7]   Courts are expected to "construe Rule 8 broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997).   While Federal Rule of Criminal Procedure 14 does allow for severance if defendants would suffer prejudice from joinder, a defendant must first show that denial of his request for a severance would result in actual prejudice to his defense.  *United States v. Eads*, 191 F.3d 1206, 1209 (10th Cir. 1999).   A defendant must also show that any prejudice would outweigh the expense and inconvenience of separate trials.  *United States v. Martin*, 18 F. 3d 1515, 1518 (10th Cir. 1994). Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).   "In the context of conspiracy, severance will rarely, if ever, be required.  In a conspiracy case, joint trials reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague and provide the jury the best perspective on all of the evidence and therefore increases

---

[6] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Jose Neave (Doc. 413); Juan Torres (Doc. 420); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc. 449).

[7] Rule 8(b) states: **(b) Joinder of Defendants.**  The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

7

the likelihood of a correct outcome." *United States v. Miller*, 250 F.R.D. 588, 597-98 (D. Kansas 2008)(cites omitted).

A defendant has a difficult burden of showing actual prejudice which would warrant granting separate trials in the ordinary case, that burden is even greater when he is charged as a member of a criminal enterprise engaged in racketeering activity. The indictment alleges each of these defendants is a member of the Nortenos street gang, an enterprise which is involved in the commission of a variety of criminal acts for common purposes. By definition the United States will present evidence that multiple defendants acted in concert as part of the enterprise and that groups of defendants acted in concert during the commission of various violent crimes in aid of racketeering activity. The Court can protect individual defendants from possible prejudice which might result from the introduction of evidence of crimes committed by codefendants which are unrelated to their charged acts with the use of limiting instructions. *United States v. Hardwell*, 80 F.3d 1471, 1487 (10th Cir. 1996). The defendant has failed to meet his heavy burden to establish the need for separate trials. Given the nature of the charges filed in this indictment meeting this burden would be an extremely difficult, if not impossible, task.

**G.      Motion to Suppress Photo Lineups and Identifications (Doc. 400)**

Defendant Najera next asks the Court to suppress the identifications made by victims of his attack. After the stabbings which occurred during the assault on August 27, 2011, several victims were presented multiple photo spreads containing photographs of Jason Najera and other Nortenos. Each photo lineup contained six photographs of men of roughly the same age and appearance. The defendant was identified from the photo spreads by multiple victims as being one of the Nortenos who participated in the attacks.

8

When a defendant moves to suppress a photo lineup as being unduly suggestive a court employs a two-step inquiry: (1) the first question is whether the photo array was impermissibly suggestive, and if it is found to be so, then (2) a court must then decide whether the identifications were nevertheless reliable in view of the totality of the circumstances.  *United States v. Sanchez*, 24 F.3d 1259, 1261-62 (10th Cir. 1994).  In determining whether a lineup was unduly suggestive a number of factors are to be considered including the number of photos in the lineup, the manner in which it was presented by law enforcement, and the details of the pictures themselves.  *Id*.

In determining whether an impermissibly suggestive photo lineup nonetheless yielded a sufficiently reliable identification a court is to consider the opportunity the witness had to view the suspect at the time of the offense, the witness's degree of attention, the accuracy of the witness's prior description of the suspect, the level of certainty the witness demonstrates when the lineup is presented and the time which has elapsed between the criminal activity alleged and presentment of the lineup to the witness.  *United States v. Wiseman*, 172 F.3d 1196, 1210 (10th Cir. 1999).  The ultimate test is whether the unduly suggestive lineup created a "very substantial likelihood of irreparable misidentification."  *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977).

The United States will demonstrate the photo spreads presented by the Dodge City police officers to the victims were not suggestive and the identifications made by them of this defendant should not be suppressed.

### H.      Motion to Suppress Statement (Doc. 405)

Defendant Najera moves to suppress a statement he provided to Dodge City police officers on June 29, 2008.  He contends at the time he was presented with his *Miranda* rights he

was intoxicated to such a degree as to be unable to make a valid waiver of his rights against self-incrimination.

The United States believes the defendant has set forth the proper standard for considering whether a waiver of *Miranda* rights was voluntary.[8]  At a hearing on this motion the United States will demonstrate Jason Najera's statement was obtained after he had provided a voluntary and knowing waiver and was not the product of coercion or deception.  Further, we will establish the defendant was not intoxicated to such a degree that he did not have the ability to understand his *Miranda* rights or have the ability to make a valid waiver of his right to remain silent. Because the defendant provided a knowing and voluntary waiver of his *Miranda* rights his statement should not be suppressed.

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov

---

[8] *United States v. Smith*, 606 F.3d 1270, 1276 (10th Cir. 2010).

604

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of December, 2012, we electronically filed the

foregoing motion with the clerk of the court by using the CM/ECF system, which will send a

notice of electronic filing to all counsel of record.


/s/ Lanny D. Welch
LANNY D. WELCH
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-16-MLB |
| | } | |
| EUSEBIO SIERRA-MEDRANO, | } | |
| a.k.a. TC, | } | |
| | } | |
| Defendant. | } | |

**RESPONSE OF THE UNITED STATES TO
DEFENDANT EUSEBIO SIERRA-MEDRANO'S MOTIONS**

The United States of America, by Aaron L. Smith and Lanny D. Welch, Assistant United States Attorneys, hereby responds to Defendant Eusebio Sierra-Medrano's motions.  In support of this response, the United States avers as follows:

A.       **Charges**

Defendant Eusebio Sierra-Medrano is charged in the following counts of the indictment returned on April 16, 2012:

Count 1   -   RICO Conspiracy, in violation of Title 18, U.S.C. § 1962(d);

Count 14  -   Violent Crime in Aid of Racketeering/Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(3);

Count 36  -   Felon in Possession of a Firearm, in violation of Title 18, U.S.C. § 922(g)(1);

Count 37  -   Felon in Possession of a Firearm, in violation of Title 18, U.S.C. § 922(g)(1).

1

**B.**      **Motion to Exclude Co-Conspirators' Testimonial Statements (Doc. 340)[1]**

The defendant asks that co-conspirator *testimonial* statements be excluded. The United States is not currently aware of any such statements and the defendant does not identify any in his motion. The United States anticipates it will seek to offer at trial co-conspirator statements which are properly admitted under Federal Rule of Criminal Procedure 801(d)(2)(E). In *Crawford v. Washington*, the U.S. Supreme Court made clear that co-conspirator statements properly admitted pursuant to Rule 801(d)(2)(E); i.e., statements made during and in furtherance of the conspiracy are not testimonial and are, therefore, not affected by its holding in *Crawford*.[2] Although the United States is not currently aware of co-conspirator statements in this case which would be considered testimonial, we will remain cognizant of this potential issue and will make the Court aware if any such statements are identified.

**C.**      **Motion for Order Directing Government to Disclose Whether it Intends to Offer 404(b) into Evidence and if so, Identify the Purpose (Doc. 342)[3]**

In accordance with Rule 404(b), the United States will provide to the defense the general nature of crimes, wrongs or acts of the defendant which the United States intends to use at trial.

---

[1] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Andrew Gusman (Doc. 363); Jason Najera (Doc. 375); Enrique Gobin (Doc. 392); Jose Neave (Doc. 413); Juan Torres (Doc. 420); Gonzalo Ramirez (Doc. 423); Alfonso Banda-Hernandez (Doc. 427); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc. 449); and Jesus Torres (Doc. 455).

[2] 541 U.S. 36, 56 (2004).

[3] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Andrew Gusman (Doc. 363); Jason Najera (Doc. 375); Enrique Gobin (Doc. 392); Jose Neave (Doc. 413); Juan Torres (Doc. 420); Gonzalo Ramirez (Doc. 423); Alfonso Banda-Hernandez (Doc. 427); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc. 449); and Jesus Torres (Doc. 455).

The United States shall comply with the disclosure guidelines announced by the Court in the General Order of Discovery and Scheduling (Doc. 221).

**D.**   **Motion to Prohibit Government and Cooperating Individuals from Approaching Him and Attempting to Discuss Case with Defendant (Doc. 344)[4]**

The United States will act in accordance with the law, and the defendant's invocation of his Fifth Amendment rights and privileges.  The United States recognizes the defendant's motion as an unequivocal invocation of defendant's rights under the Fifth Amendment.

**E.**   **Motion to Allow Case Agent/Investigator to not be Subject to Sequestration Rule (Doc. 346)[5]**

The United States does not object to the exception to sequestration suggested in the instant motion.

**F.**   **Motion for Adequate Court Facilities (Doc. 347)[6]**

The United States takes no position on the instant motion.  However, the United States would note that the District Courts of Kansas, and specifically Wichita, have conducted numerous multi-defendant trials.  The District Courts of Kansas have also conducted multi-

---

[4] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Joshua Flores (Doc. 387); Angel Cerda (Doc. 394); Pedro Garcia (Doc. 409); Juan Torres (Doc. 420); Gonzalo Ramirez (Doc. 423); Alfonso Banda-Hernandez (Doc. 427); and Humberto Ortiz (Doc. 431); and Jason Najera (Doc. 458).

[5] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Jose Neave (Doc. 413); Juan Torres (Doc. 420); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc. 449).

[6] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Pedro Garcia (Doc. 360); Russell Worthey (Doc. 361); Joshua Flores (Doc. 387); Adam Flores (Doc. 388); Jason Najera (Doc. 375); Hernan Quezada (Doc. 415); Juan Torres (Doc. 420); Alfonso Banda-Hernandez (Doc. 427); and Humberto Ortiz (Doc. 431).

3

defendant trials involving the complexity and criminal allegations contained in the instant indictment.

### G.      Motion for Disclosure of Grand Jury Transcripts (Doc. 349)[7]

Federal Rule of Criminal Procedure 6(e) generally prohibits the disclosure of matters occurring before the grand jury.  However, courts are authorized under limited circumstances to order disclosure.[8]  "Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979).  The party seeking disclosure bears the burden of showing there is a "particularized need" for disclosure.  *Id*. at 223.  "Relevance alone is not sufficient; secrecy will not be broken absent a compelling necessity for the materials.  Further, the request must amount to more than a request for authorization to engage in a fishing expedition." *In re Grand Jury 95-1*, 118 F.3d 1433, 1437 (10th Cir. 1997).   "The rule governing disclosure of grand jury testimony is not to be used as a substitute for general discovery." *In re Lynde*, 922 F.2d 1448, 1453-54 (10th Cir. 1991).

---

[7] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Pedro Garcia (Doc. 360); Russell Worthey (361); Jason Najera (Doc. 375); Joshua Flores (Doc. 387); Adam Flores (Doc. 388); Enrique Gobin (Doc. 392); Jose Neave (Doc. 413); Hernan Quezada (Doc. 415); Juan Torres (Doc. 420); Gonzalo Ramirez (Doc. 423); Alfonso Banda-Hernandez (Doc. 427); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433); Angel Cerda (Doc. 448) and Alfredo Beltran-Ruiz (Doc. 449); Jesus Torres (Doc. 455); and Andrew Gusman (Doc. 460).

[8] Fed. Rule of Crim. Pro. 6(e)(3)(E).

The United States will disclose, prior to trial, grand jury transcripts of witnesses who presented testimony about the Nortenos investigation whom the government expects will testify at trial.  These transcripts of government trial witnesses will be disclosed as part of the United States' *Jencks* disclosure.  It is possible that other witnesses testified before the grand jury who will not be called as witnesses by the government at trial.  The United States does not currently plan to disclose those transcripts and the government does not believe the defendant has met his burden of establishing a particularized need for their disclosure.  To the extent his motion asks for the disclosure of grand jury transcripts which Rule 6(e) and case law do not require be disclosed, the government requests his motion be denied.

### H.  Motion for Bill of Particulars (Doc. 351)[9]

#### 1.  Law Related to Bills of Particular

An indictment is sufficient if it is a "plain, concise, and definite written statement of the essential facts constituting the offense charged..."[10]

Federal Rule of Criminal Procedure 7(f) addresses bills of particular and provides:

> **(f) Bill of Particulars.**  The court may direct the government to file a bill of particulars.  The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits.  The government may amend a bill of particulars subject to such conditions as justice requires.

---

[9] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Andrew Gusman (Doc. 363); Jason Najera (Doc. 375); Enrique Gobin (Doc. 392); Angel Cerda (Doc. 394); Jose Neave (Doc. 413); Juan Torres (Doc. 420); Gonzalo Ramirez (Doc. 423); Alfonso Banda-Hernandez (Doc. 427); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc. 449).

[10] Federal Rule of Criminal Procedure 7(c).

"The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense." *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996). If "the indictment sets forth the elements of the offense charged and sufficiently apprised the defendant of the charges to enable him to prepare for trial," a bill of particulars is not necessary. *Id*. A bill of particulars is not a discovery device. *United States v. Dunn,* 841 F.2d 1026, 1029 (10th Cir. 1988). "[T]he defendant is not entitled to notice of all of the evidence the government intends to produce, but only the theory of the government's case." *United States v. Levine,* 983 F.2d 165, 167 (10th Cir. 1992).

### 2.   RICO Conspiracy (18 U.S.C. § 1962(d))

In this motion, Defendant Sierra-Medrano makes specific demands for information the United States will have no obligation to present at trial and other information which is already contained in the indictment. Additional information requested by the defendant, as he likely knows, simply does not exist.

The information requested includes: "(1) the identity of all known but unidentified co-conspirators; (2) the location at which the conspiracy was formed; (3) the manner in which the conspiracy was designed to achieve its purpose; (4) the persons present when the conspiracy was formed; (5) the terms of the conspiratorial agreement; (6) the "particulars" of all meetings and conversations which the defendant and other conspirators participated; (7) the approximate date the defendant joined the conspiracy.[11]

The indictment provides a great deal of information as to what the government alleges the purpose of the enterprise was and the manner by which it sought to achieve its goals. The

---

[11] Defendant's Memorandum at p. 3-4.

additional counts alleged in the indictment shed additional light on the racketeering acts committed by this defendant and others. Further, the United States has disclosed thousands of pages of discovery which should have provided much of the information which the defendant will need to present his defense. Additional information will be forthcoming in the form of *Jencks* material.

The members of the conspiracy are charged in Count 1 and additional members of the enterprise include those fellow Nortenos charged in the indictment. The defendant appears eager to know the identity of other unidentified co-conspirators but that language appears in the indictment largely because the government presumes other Dodge City Nortenos joined in this criminal activity but they are not charged either because their identities were not discovered or the evidence proving their involvement was lacking. In other words, the United States has not identified these additional conspirators because their identity is not known to the government or there is presently insufficient evidence to charge them. The government fails to see how providing the names of other uncharged Nortenos the United States believes were members of the conspiracy would benefit this defendant or those who joined this motion.

Additional information requested by the defendant includes who was present when the conspiracy was formed, the terms of the conspiracy, the location where it was formed, locations of meetings, the dates each conspirator joined the conspiracy and the topics discussed at all meetings. The United States is not required to perform an autopsy on the conspiracy and much of the information demanded by this defendant concerning the conspiracy is irrelevant. In addition, the simple fact is much of this information does not exist. The investigation has not uncovered the existence of recordings of conspiratorial meetings and conversations. The exact date the conspiracy was created, assuming there was a single date, is unknown. So too are the

dates each conspirator joined or the location where he made his intention to join the conspiracy known and who was present for the likely non-existent announcement.  The indictment alleges the conspiracy commenced at least as early as 2008 and continued through the return of the indictment.  The dates the VICAR acts were committed are also listed in the indictment.

Count 1 charges this defendant, and seven other Nortenos, with RICO Conspiracy in violation of Title 18, U.S.C. § 1962(d).   In order to prove the defendant guilty of violating this statute, the United States must prove the following:[12]

| | | |
|---|---|---|
| *First:* | A conspiracy or agreement, as detailed in the indictment, existed between two or more persons to participate in the affairs of an enterprise that affected interstate commerce through a pattern of racketeering activity; | |
| *Second:* | That the defendant deliberately joined or became a member of the conspiracy or agreement with knowledge of its purpose; and | |
| *Third:* | The defendant agreed that someone, not necessarily the defendant, would commit at least two of the racketeering acts detailed in the indictment. | |

The question, therefore, as it relates to Count 1, is has the defendant been provided with sufficient information with which he can present his defense.  The information demanded by this defendant, assuming it even exists, might be illuminating but it is not required to defend against this charge.  Because the United States has provided and will provide sufficient information through the indictment and discovery, a bill of particulars is not necessary and the United States requests this motion be denied.

---

[12] *United States v. Harris*, 695 F.3d 1125, 1130-34 (10th Cir. 2012).

## I.    <u>Motion for a *James* Hearing (Doc. 353)</u>[13]

Under Federal Rule of Evidence 801(d)(2)(E), co-conspirator statements are not considered hearsay and are properly admitted if the district court finds, by a preponderance of the evidence, that (1) a conspiracy existed, (2) both the declarant and the defendant against whom the declaration is offered were members of the conspiracy, and (3) the statement was made in the course of and in furtherance of the conspiracy. *United States v. Eads*, 191 F.3d 1206, 1210 (10th Cir. 1999). The district court may satisfy the prerequisites for admission of a co-conspirator statement through either of two means: by holding a James hearing or by provisionally admitting the statement "with the caveat that . . . the party offering [it] must prove the existence of the predicate conspiracy through trial testimony of other evidence." *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995). Although the Tenth Circuit has stated a "strong preference for James proceedings where the government relies on co-conspirator statements," *United States v. Gonzalez-Montoya*, 161 F.3d 643, 649 (10th Cir. 1998), the Tenth Circuit does permit the district court to provisionally admit statements with the caveat that the offering party must prove the existence of the predicate conspiracy through trial testimony of other evidence. Id. In either case, the court may consider the hearsay statement itself, as well as independent factors, in determining whether the government has established a conspiracy by a preponderance of the evidence. Fed. R. Evid. 801(d)(2); *Bourjaily v. United States*, 483 U.S. 171, 181 (1987).

---

[13] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Andrew Gusman (Doc. 363); Jason Najera (Doc. 375); Enrique Gobin (Doc. 392); Angel Cerda (Doc. 394); Jose Neave (Doc. 413); Hernan Quezada (Doc. 415); Juan Torres (Doc. 420); Gonzalo Ramirez (Doc. 423); Alfonso Banda-Hernandez (Doc. 427); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc. 449); and Jesus Torres (Doc. 455).

Any conversations of which the defendant himself is involved are admissible as admissions against interest and co-conspirator statements.   Fed. Rule Evid. 801 (d)(2)(A), (E). *United States v. Mayes*, 917 F.2d 457, 463, n. 8 (10th Cir. 1990). (holding that statements by defendants in tape-recorded conversations with co-conspirators were party admissions).  "[T]he Bruton doctrine does not rule situations...in which the evidence is admissible under a well recognized exception to the hearsay rule".  *United States v. Ramirez*, 479 F. 3d 1229, 1248 (10th Cir. 2007), quoting *United States v. Cox*, 449 F. 2d 679, 688-89 (10th Cir. 1971).

The indictment need not charge a defendant with a conspiracy for coconspirator statements to be admissible.  *United States v. Jones*, 540 F. 2d 465, 471 (10th Cir. 1976). However, in this case the defendant is charged in substantive conspiracy counts as well as counts that necessitate the United States establish the existence of an enterprise under RICO and VICAR law.  Statements made to an undercover police officer, legally not a member of the conspiracy by virtue of being a government agent, are admissible.  United States v. Leroy, 944 F. 2d 787, 789 (10th Cir. 1991).

If the Court determines a *James/Bruton* hearing is needed, the United States will present evidence at a James hearing to establish a conspiracy by a preponderance of the evidence. Further, by a preponderance of the evidence, the United States will present evidence that each declarant and defendant was a member of the conspiracy and each declaration was made during the course of and in furtherance of the conspiracy.

In this case the United States respectfully suggests that a James/Bruton hearing would be appropriate and asks the court to schedule the same in accordance with further scheduling and discovery orders and obligations.

**J.**      **Motion for Production of Gang Participation Information (Doc. 355)[14]**

The United States does not object to the discovery requests and will provide such discovery as ordered by the Court.  The United States requests further scheduling orders to address the supplemental discovery requested in this motion.

As contemplated by the defendant's motion the United States will provide "gang intelligence records" in the United States' possession, custody or control.  By extension, the United States will provide those records in the possession, custody or control of the Dodge City Police Department, Ford County Sherriff's Department, Kansas Bureau of Investigation and the Kansas Bureau of Prisons.  The United States is not aware of any federal law enforcement agency that possesses such records.

The defendant requests such "gang intelligence records" tending to show the defendant was not a member of the Nortenos, had withdrawn his membership or was inactive.  The United States will provide such records in its possession, custody or control.

**K.**      **Motion for Specific Discovery Related to Street Gangs in Dodge City (Doc. 356)[15]**

The United States does not object to the specific discovery requests contained in the instant motion.  The United States will provide the "Gang Related Policies and Procedures" used

---

[14] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Pedro Garcia (Doc. 360); Russell Worthey (Doc. 361); Joshua Flores (Doc. 387); Adam Flores (Doc. 388); Jason Najera (Doc. 375); Enrique Gobin (Doc. 392); Jose Neave (Doc. 413); Hernan Quezada (Doc. 415); Juan Torres (Doc. 420); Alfonso Banda-Hernandez (Doc. 427); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) and Alfredo Beltran-Ruiz (Doc. 449).

[15] This motion was joined by the following defendants and the United States offers this response to address these motions as well: Andrew Gusman (Doc. 363); Enrique Gobin (Doc. 392); Jose Neave (Doc. 413); Juan Torres (Doc. 420); Alfonso Banda-Hernandez (Doc. 427); Humberto Ortiz (Doc. 431); Donte Barnes (Doc. 433) Alfredo Beltran-Ruiz (Doc. 449); and Jesus Torres (Doc. 455).

by the Dodge City Police Department.  These policies and procedures relate to the creation of the individual "gang sheets" for this defendant, as well as his co-defendants.

The United States filed a notice of expert testimony in Doc. 297.  Identified in the notice are three officers of the Dodge City Police Department.  Those officers can testify not only to the defendant's participation in the gang, but also the implementation of the policies and procedures.

The defendant requests material used to create the policies and procedures as well as training manuals used to guide officers in creating those policies and procedures.  The defendant also requests underlying source material used to create the gang sheets specific to the defendant.  As the defendant has noted, discovery "is within the discretion of the trial judge and is not reviewable absent abuse."  *United States v. Smaldone*, 484 F.2d 311, 320 (10th Cir. 1973).  At this time, and to the extent possible, the United States will produce material "in connection with the creation" of the policies and procedures, as well as the underlying source material of the defendant's gang sheets.

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov

617

CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of December, 2012, we electronically filed the

foregoing motion with the clerk of the court by using the CM/ECF system, which will send a

notice of electronic filing to all counsel of record.


//s/ Lanny D. Welch
LANNY D. WELCH
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| v. | } | |
| | } | No. 12-10089-20-MLB |
| JESUS TORRES, | } | |
| a.k.a. Rabbit, | } | |
| | } | |
| Defendant. | } | |

**RESPONSE OF THE UNITED STATES TO
DEFENDANT JESUS TORRES' MOTION**

COMES NOW the United States of America, by and through Aaron L. Smith and Lanny

D. Welch, Assistant United States Attorneys, and hereby responds to the defendant Jesus Torres'

motion.  In support of this response the United States avers as follows:

**A.      Charge**

Defendant Jesus Torres is charged in the following count of the indictment returned on

April 16, 2012:

> Count 27 **-**     VICAR/Assault with a Dangerous Weapon, in violation of Title
> 18, U.S.C. § 1959(a)(3).

1

B.        **Motion to Dismiss (Doc. 416)**[1]

Pursuant to the Dual Sovereignty Doctrine, neither double jeopardy nor collateral estoppel principles are violated by successive prosecutions or cumulative punishment for a RICO offense and state offenses that are charged as predicate racketeering acts underlying the RICO offense even if they arose from the same conduct and had the same elements.  In that regard, the Supreme Court has consistently held that the Double Jeopardy Clause does not bar successive federal and state prosecutions for offenses arising from the same acts.  See: *United States v. Wheeler*, 435 U.S. 313 (1978); *Abbate v. United States*, 359 U.S. 187 (1959); *Barkus v. Illinois*, 359 U.S. 121 (1959); *United States v. Lanza*, 260 U.S. 377 (1922).  The rationale underlying this rule lies in the concept of "dual sovereignty" which the Supreme Court has summarized as follows:

> We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject matter within the same territory....Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.
>
> It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each....Here the same act was an offense against the State of Washington, because a violation of its law, and also an offense against the United States under the National Prohibition Act. The defendants thus committed two different offenses by the same act, and a conviction by a court of Washington of the offense against that state is not a conviction of the different offense against the United States, and so is not double jeopardy. *Lanza*, 260 U.S. at 382.

---

[1] This motion was joined by the following defendant and the United States offers this response to address this motion as well: Jason Najera (Doc. 437); and Andrew Gusman (Doc. 460).

2

Further, the Supreme Court also has explicitly held that the Dual Sovereignty Doctrine is not defeated even where there is substantial cooperation between the two sovereignties involved. See *Wheeler*, 435 at 319-320; *Barkus,* at 122-123.   Indeed, the Supreme Court has noted that cooperation between the state and federal government "is the conventional practice between [state and federal] prosecutors throughout the country," and was perfectly proper.   *Barkus*, at 122-123.

Even further, under the dual sovereignty doctrine, courts have held that neither principles of double jeopardy nor alleged violations of the U.S. Department of Justice's *Petite* policy barred Section 1959 prosecutions because the defendants previously had been acquitted of the charged underlying state crimes of violence in state courts even though the federal and state authorities cooperated in those prosecutions. See: *United States v. Williams*, 181 F.Supp.2d 267, 292-93 (S.D.N.Y. 2001); *United States v. Claiborne*, 92 F.Supp.2d 503, 506-510 (E.D. Va. 2000).

In accordance with the foregoing authority, under the Dual Sovereignty Doctrine, double jeopardy and collateral estoppel principles are not violated by charging state offenses on which the defendant previously had been acquitted or convicted in state prosecutions as RICO predicate racketeering acts.   In this case the defendant is subject to successive prosecution by Federal and State sovereigns.   The United States exercised its rights under the Supremacy Clause to effect prosecution of the defendant.   The United States issued a writ from state custody intending prosecution of the defendant first in United States District Court.

WHEREFORE, the government respectfully requests the defendant's motion be denied.

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov

CERTIFICATE OF FILING

I hereby certify that on December 17, 2012, I electronically filed the foregoing Response to the Defendant's Motions with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Aaron L. Smith
AARON L. SMITH
Assistant United States Attorney

4

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **CRIMINAL ACTION** |
| ) | |
| v. ) | No. 12-10089-01-23 |
| ) | |
| Jason Najera, Pedro Garcia, ) | |
| Gonzalo Ramirez, Russell Worthey, ) | |
| Anthony Wright, Joshua Flores, ) | |
| Jesus Flores, Angel Cerda, ) | |
| Juan Torres, Alfredo Beltran-Ruiz, ) | |
| Donte Barnes, Jesus Sanchez, ) | |
| Enrique Gobin, Alfonso ) | |
| Banda-Hernandez, Andrew Gusman, ) | |
| Eusebio Sierra-Medrano, Jayson ) | |
| Vargas, Adam Flores, Fabian Neave, ) | |
| Jesus Torres, Jose Neave, Hernan ) | |
| Quezada, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on extensive pretrial motions filed by defendants.[1] (Docs. 325, 328, 330, 332, 334, 336, 338, 340, 342, 344, 346, 347, 349, 351, 353, 355, 356, 366, 367, 369, 372, 374, 375, 377, 378, 379, 381, 383, 384, 385, 386, 387, 388, 391-398, 400, 402-405, 407, 409-411, 413-428, 430, 431, 433-438, 440, 441, 443, 445, 446, 448, 449, 453-455, 457, 458, 459, 460).  The motions have been fully briefed and are ripe for decision. (Docs. 475-488, 490).

**I.   Facts**

On April 16, 2012, the grand jury returned an indictment against

---

[1] Due to the fact that all defendants have moved to join various motions filed by their co-defendants, the court will refer to defendants collectively even if a particular defendant did not join a particular motion.  On that note, the court will group the motions based on subject matter unless the motion is specific to a single defendant.

23 defendants.  The indictment alleges 38 counts, including charges of violent crimes in aid of racketeering, conspiracy and felon in possession of a firearm.  The indictment alleges that defendants were engaged in a criminal organization, the Nortenos gang, whose members engaged in narcotics distribution and acts of violence involving murder and robbery.  These crimes were alleged to have been committed in Dodge City, Kansas.  Defendant Jason Najera is the alleged leader of the Nortenos.  The indictment further alleges that the racketeering conspiracy began in 2008 and continued through the date of the indictment.

On November 13, 2012, defendant Humberto Ortiz entered a guilty plea.  The remaining 22 defendants, with the exception of Jesus Flores, have filed the present motions before the court.

## II.   Analysis

### A.   Motions for Gang Related Discovery (Docs. 325, 355, 356, 379)

Defendants seek Dodge City Police Department policies and procedural material developed and used in connection with the creation of the Gang Sheets.  Defendants also seek gang participation records kept by any law enforcement agency.  The government responds that it will provide the Dodge City Police Department policies and gang sheets for all defendants.  The government will also provide each defendant with the underlying source material for their gang sheets.  In addition, the government will provide gang participation records of other agencies that it has in its control.  The government must provide these records, if it has not already done so, on or before February 4, 2013.

-2-

Defendant Pedro Garcia additionally seeks the underlying source documents for third-party gang sheets. (Doc. 380 at 2-6). The government responds, to the extent possible, it will produce the source material. (Doc. 486 at 4).

Defendants' motions for gang related discovery are therefore granted. (Docs. 325, 355, 356, 379).

**B.    Motions for a Bill of Particulars (Docs. 328, 351, 385, 417, 430)**

Defendants argue that the indictment is not sufficient to put defendants on notice of the nature and manner of the commission of the alleged conspiracy. Defendants seek the identity of known but unidentified co-conspirators, the location of the conspiracy, the manner in which it was designed, the persons present when it was formed, the terms of the agreement, the particulars and locations as to all meetings, and the date when defendants joined such conspiracy. Further, defendant Ramirez asserts that the government's conclusory allegation that the charges affect interstate commerce is not sufficient.

"The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense . . . ." United States v. Kunzman, 54 F.3d 1522, 1526 (10th Cir. 1995)(quoting United States v. Levine, 983 F.2d 165, 166-67 (10th Cir. 1992)). "A bill of particulars, however, is not a discovery device but may serve to amplif[y] the indictment by providing additional information." United States v. Dunn, 841 F.2d 1026, 1029 (10th Cir. 1988)(internal citations omitted). The Tenth Circuit has held that an indictment is sufficient if it apprises

-3-

624

defendants of their crimes and defendants have been provided full discovery.  Kunzman, 54 F.3d at 1526.  Defendants' request must show that the failure to provide the information would result in prejudicial surprise.  United States v. Anderson, 31 F. Supp.2d 933, 938 (D. Kan. 1998)(citing United States v. Wright, 826 F.2d 938, 943 (10th Cir. 1987)).

Defendants cite Anderson for the proposition that they should be provided with the identity of unindicted known co-conspirators.  The court agrees.  This information, if not disclosed, may subject defendants to prejudicial surprise or double jeopardy problems as Anderson contemplated.  The government must disclose the names on or before February 4, 2013.  The remaining information sought by defendants, however, has not been shown to be necessary for defendants to prepare for trial.  Anderson, 31 F. Supp.2d at 938.  The government has provided defendants with extensive discovery, a fact that defendants have not contested.  Defendants are not entitled to know the entirety of the government's case, which is essentially what they are requesting.

Defendants' motions for a bill of particulars are granted in part and denied in part.  (Docs. 328, 351, 385, 417, 430).

**C.   Motions for Notice of Co-Conspirator Statements and James Hearing (Doc. 330, 353, 367, 369, 443)**

The court will conduct a James hearing in this case on February 13, 2013, at 9:30 a.m.  Defendants' motions are therefore granted.

**D.   Motions to exclude Co-Conspirator Testimonial Statements**

-4-

(Docs. 332, 340)

Defendants' seek to exclude co-conspirator testimonial statements. The government responds that it is not aware of any such statements at this time. Defendants' motions are denied. (Docs. 332, 340).

E.    **Motions for Notice of the Government's Intent to Offer Rule 404(b) Evidence (Docs. 334, 342, 366, 397)**

Defendants seek an order requiring the government to provide them with a notice of its intent to offer Rule 404(b) evidence by a certain date. The government is instructed to provide defendants with the notice thirty days prior to trial, which date will be discussed at the James hearing.

F.    **Motion to Exclude Guilty Pleas by Non-Testifying Defendants (Doc. 336)**

Defendants move to preclude the admission of non-testifying co-defendants' guilty pleas. The government responds that it does not intend to introduce this evidence. (Doc. 480). Defendants' motion is denied as moot. (Doc. 336).

G.    **Motion for an Extension of Time to File Additional Motions (Doc. 338)**

Defendant Garcia seeks additional time to file any motions that may be appropriate after reviewing the discovery. The motion deadline has passed and Garcia filed eighteen motions prior to the deadline. Garcia's motion is denied, without prejudice, but any defendant desiring to file additional motions will be required to show why the motion could not have been filed before the deadline. (Doc. 338).

H.    **Motion to Prohibit Law Enforcement from Approaching**

-5-

626

**Defendants (Doc. 344)**

Defendants move for an order which will prohibit the government from approaching them with regard to this case, presumably without the knowledge of their counsel.  The court's general order of discovery entered in this case states that the government shall not violate any defendant's Constitutional rights.  The court assumes the government will not do anything which will jeopardize its case.  The motion is denied. (Doc. 344).

**I.   Motion to Allow Defendant's Investigator Not to be Subject to the Sequestration Rule (Doc. 346)**

The United States does not object to the exception to sequestration suggested in the motion.  Therefore, the motion is granted, subject to conditions which the court may impose at trial. (Doc. 346).

**J.   Motion for Adequate Court Facilities (Doc. 347)**

Defendant Sierra-Medrano's motion for a separate table at trial is denied.  The court has conducted numerous trials with two defendants seated at one table and finds that the seating arrangement is not prejudicial.

**K.   Motion for Disclosure of Grand Jury Transcripts (Doc. 349)**

Defendant Sierra-Medrano moves for an order requiring the government to disclose the grand jury transcripts and minutes.

> There is a long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts.  The Supreme Court has stated that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings. The Court consistently has held that Fed. R. Crim. P. 6(e)(3)(C)(i) requires a strong showing of particularized need before grand jury materials are disclosed.
> Rule 6(e)(3)(C)(ii) of the Federal Rules of Criminal

Procedure provides that disclosure of grand jury materials may be had when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. Fed. R. Crim. P. 6(e)(3)(C)(ii).

United States v. Warren, 747 F.2d 1339, 1347 (10th Cir. 1984)(internal case citations omitted).

Sierra-Medrano does not suggest that the production of the grand jury minutes or testimony will reveal grounds for dismissal of the indictment. Rather, Sierra-Medrano appears to argue that the production of the minutes will result in the identification of known co-conspirators and their testimony. There is no exception in the federal rules to allow for disclosure of grand jury minutes for identification of known co-conspirators. The court has, however, infra, required the government to disclose the identity of known unindicted co-conspirators.

Sierra-Medrano has not satisfied the requirement of a particularized need. Therefore, he is not entitled to the grand jury minutes. Defendants are, however, to be provided with the testimony of any witnesses who will also be testifying at trial. 18 U.S.C. § 3500(a). (There is no suggestion that any defendant testified before the grand jury). The government assures the court that it will disclose the testimony of testifying witnesses prior to their testimony in this trial. The date of disclosure will be set by the court. The government's response is satisfactory.

Defendant's motion is denied. (Doc. 349).

**L.   Motions to Produce (Docs. 372, 395, 396, 397)**

The government either intends to disclose or has disclosed all

-7-

information sought in the motions to produce.  This material must be disclosed on or before February 4, 2013, unless a different time is allowed under a statute or rule, i.e. <u>Jencks</u> material.  The motions are granted.  (Docs. 372, 395, 396, 397).

### M.  Motions for Joinder

Defendants' motions to join in their co-defendants' filings are granted.  (Docs. 374, 375, 384, 387, 388, 392, 393, 394, 404, 409, 410, 411, 413, 415, 420, 421, 423, 427, 431, 433, 434, 435, 436, 437, 445, 446, 448, 449, 453, 454, 455, 457, 458, 459, 460).

### N.  Motion to Exclude <u>Bruton</u> Evidence (Doc. 378)

Defendants move to prevent the government from introducing any co-defendant statements which implicate them in criminal activity. The government responds that it fully intends to comply with the <u>Bruton</u> case and redact names from any statements offered.  The government shall make all Bruton disclosures at least ten days before trial and the court will take up specific challenges to the statements prior to or during trial, as may be appropriate.

The motion to exclude <u>Bruton</u> evidence is denied, without prejudice.

### O.  Motion for Disclosure of Confidential Informants (Doc. 381)

Defendants seek the disclosure of persons who identified them as members of the Nortenos and cooperating defendants.  The government responds that the majority of the information about defendants was gained from law enforcement who will testify at trial.  The government further responds that it will disclose all <u>Jencks</u> material prior to trial, including information provided by persons affiliated with the Nortenos.  The government likewise responds that it will also provide

-8-

all information about cooperating defendants as those defendants enter into agreements with the government.

The motion for disclosure of confidential informants is therefore denied as moot.  (Doc. 381).

**P.   Motions to Sever (Docs. 383, 386, 391, 398, 407, 414, 418, 428, 441)**

The majority of the 22 defendants filed motions or joined in motions to sever in this case.  The government's response to each motion was virtually identical and included the standard language regarding prejudice and the necessity of limiting instructions. Interestingly, the government remarked that defendants charged with lesser crimes might have an advantage in going to trial with those co-defendants charged with more serious crimes because they would appear less culpable.  (Doc. 482 at 3).

The court will not conduct a trial with 22 defendants.  It would be chaotic and an undue burden on all parties, including the United States Marshals and the jurors.  The government suggests, and experience proves, that at least some defendants will plead guilty. At this time, the court does not have a sufficient basis to determine which defendants would be best tried together.  At the James hearing, the court will set a deadline for pleas.  After all the motions are ruled on and pleas are completed, the court will revisit with counsel the matter of severance.

Defendants' motions to sever are taken under advisement.

**Q.   Motions to Dismiss (Docs. 416, 430, 438)**

**1.   Jesus Torres' Motion to Dismiss on Double Jeopardy Grounds**

-9-

Torres moves to dismiss the indictment on the basis that because he is being charged with crimes based on the same conduct in state court, this prosecution violates his Fifth Amendment rights.  The Fifth Amendment's Double Jeopardy Clause states that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.   There is one limitation to this right – the dual sovereignty doctrine.  United States v. Barrett, 496 F.3d 1079, 1118 (10th Cir. 2007).  Under this doctrine, a defendant has committed two offenses when he breaks the law of two sovereigns.  Id.  "A classic application of the dual sovereignty doctrine is the case of successive prosecutions by a state and the federal government."  Id.  "In United States v. Lanza, 260 U.S. 377, 384, 43 S. Ct. 141, 67 L. Ed. 314 (1922), the Supreme Court held that the Double Jeopardy Clause did not bar the federal prosecution of a criminal defendant who had previously been tried and convicted in state court for the same underlying conduct."  Id.

Torres' motion to dismiss is therefore denied.  (Doc. 416).

### 2.   Gonzalo Ramirez' Motion to Dismiss (Doc. 430)

Ramirez moves to dismiss the indictment on the basis that it is an improper exercise of the Commerce Clause.  Ramirez' motion is denied for the reasons stated in the government's response.  (Doc. 484).

### 3.   Jayson Vargas' Motion to Dismiss on the Basis of Selective Prosecution (Doc. 438)

Vargas moves to dismiss the indictment on the basis that the government "lumped these common minorities into a group and upped the anti by calling them a Criminal Enterprise, without much commonality,

-10-

except their ethnic uniformities." (Doc. 438 at 5). In <u>United States v. Armstrong</u>, 517 U.S. 456 (1996), the United States Supreme Court held that a defendant claiming selective prosecution must demonstrate "that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." 517 U.S. at 465. Vargas' conclusory motion does not satisfy this burden. The motion is therefore denied. (Doc. 438).

### R.   Motions to Suppress (Docs. 424, 440)

Ramirez and Vargas move to suppress statements made to law enforcement. The government responds that it will not introduce these statements, if they even exist, at trial. Therefore, the motions are denied. (Docs. 424, 440).

## III. Conclusion

Defendants' motions for gang related discovery are granted. (Docs. 325, 355, 356, 379). Defendants' motions for a bill of particulars are granted in part and denied in part. (Docs. 328, 351, 385, 417, 430). Defendants' motions for a <u>James</u> Hearing are granted. (Doc. 330, 353, 367, 369, 443). Defendants' motions to exclude co-conspirator testimonial statements (Docs. 332, 340) are denied as moot. Defendants' motions for notice of the government's intent to offer rule 404(b) evidence are granted. (Docs. 334, 342, 366, 397). Defendants' motion to exclude guilty pleas by non-testifying defendants is denied as moot. Defendant Garcia's motion for an extension of time is denied. (Doc. 338). Defendants' motion to prohibit law enforcement from approaching defendants is denied. (Doc. 344). Defendants' motion to allow defendants' investigators not to be subject to the sequestration rule is granted. (Doc. 346).

-11-

Defendant Sierra-Medrano's motions for a separate table at trial and disclosure of grand jury materials are denied.  (Doc. 347, 349). Defendants' motions for production are granted.  (Docs. 372, 395, 396, 397).  Defendants' motions to join in their co-defendants' filings are granted.  (Docs. 374, 375, 384, 387, 388, 392, 393, 394, 404, 409, 410, 411, 413, 415, 420, 421, 423, 427, 431, 433, 434, 435, 436, 437, 445, 446, 448, 449, 453, 454, 455, 457, 458, 459, 460).  The motion to exclude <u>Bruton</u> evidence is denied.  (Doc. 378).  The motion for disclosure of confidential informants is denied as moot.  (Doc. 381). Defendants' motions to sever are taken under advisement.  (Docs. 383, 386, 391, 398, 407, 414, 418, 428, 441).  Defendants' motions to dismiss are denied.  (Docs. 416, 430, 438).  Defendants' Ramirez and Vargas' motions to suppress are denied.  (Docs. 424, 440).


       IT IS SO ORDERED.

       Dated this ___10th___ day of January 2013, at Wichita, Kansas.


                                    s/ Monti Belot
                                    Monti L. Belot
                                    UNITED STATES DISTRICT JUDGE

-12-

AO 245B   (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 1

# United States District Court
## District of Kansas

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>Humberto  Ortiz | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number:  6:12CR10089 - 023<br>USM Number:  22112-031<br>Defendant's Attorney:  Molly M. Gordon |

**THE DEFENDANT:**

☒   pleaded guilty to count(s): 27 of the Indictment.

☐   pleaded nolo contendere to count(s) ___ which was accepted by the court.

☐   was found guilty on count(s) ___ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 1959(a)(3) and 2 | VIOLENT CRIMES IN AID OF RACKETEERING: ASSAULT WITH A DANGEROUS WEAPON, a Class C Felony | 08/27/2011 | 27 |

The defendant is sentenced as provided in pages 1 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐   The defendant has been found not guilty on count(s) ___.

☐   Count(s) ___ is dismissed on the motion of the United States.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

01/28/2013
Date of Imposition of Judgment

s/ Monti Belot
Signature of Judge

Honorable Monti L. Belot, U.S. District Judge
Name & Title of Judge

1/28/13
Date

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 2 — Imprisonment

Judgment – Page **2** of **6**

DEFENDANT:     Humberto  Ortiz
CASE NUMBER:   6:12CR10089 - 023

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of
<u>46 months</u>.

☐    The Court makes the following recommendations to the Bureau of Prisons:

☒    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district.

  ☐ at ___ on ___.

  ☐ as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐ before ___ on ___.

  ☐ as notified by the United States Marshal.

  ☐ as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
Deputy U.S.  Marshal

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 3 - Supervised Release

DEFENDANT:        Humberto  Ortiz
CASE NUMBER:   6:12CR10089 - 023

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of <u>two (2) years</u>.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check if applicable)*

☒    The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check if applicable)*

☒    The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check if applicable)*

☐    The defendant shall register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student.  For initial registration purposes only, the defendant shall also register in the jurisdiction in which convicted, if such jurisdiction is different from the jurisdiction of residence.  Registration shall occur not later than 3 business days after being sentenced, if the defendant is not sentenced to a term of imprisonment.  The defendant shall, not later than 3 business days after each change in name, residence, employment, or student status, appear in person in at least one jurisdiction in which the defendant is registered and inform that jurisdiction of all changes in the information required.  *(Check if applicable)*

☐    The defendant shall participate in an approved program for domestic violence. *(Check if applicable)*

If this judgment imposes a fine or restitution, it is to be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without permission of the court or probation officer;
2)    the defendant shall report to the probation officer in a manner and frequency directed by the court or the probation officer;
3)    the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4)    the defendant shall support his or her dependents and meet other family responsibilities;
5)    the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substances or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)    the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B     (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
            Sheet 3C – Supervised Release

DEFENDANT:      Humberto  Ortiz
CASE NUMBER:    6:12CR10089 - 023

## SPECIAL CONDITIONS OF SUPERVISION

1.      The defendant shall successfully participate in an approved program for substance abuse, which may include urine, breath, or sweat patch testing, outpatient and/or residential treatment, and share in the costs, based on the ability to pay. The defendant shall abstain from the use of alcohol and other intoxicants during said treatment program as directed by the Probation Office.

2.      The defendant shall not be a member of any street gang, participate in any gang-related activities, or associate with any gang members during the term of supervision. The defendant shall comply with any curfew established by the probation officer, who may utilize electronic monitoring to verify the defendant's compliance with the curfew schedule. As instructed by the probation officer, the defendant may be required to maintain a telephone at the defendant's place of residence without call forwarding, caller ID, call waiting, portable cordless telephones, answering machines/service, or any other feature or service which would interfere with the operation of electrical monitoring equipment. The defendant may be required to wear an electronic monitoring device, which may include Global Positioning System and/or Random Tracking, and follow electronic monitoring procedures specified by the probation officer. Additionally, the probation officer may restrict the defendant from certain areas within the community, and the defendant must comply with these restrictions. The defendant shall assist in the costs of home confinement, based on the ability to pay, at the direction of the probation officer.

3.      The defendant shall submit his/her person, house, residence, vehicle(s), papers, business or place of employment and any property under the defendant's control to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

4.      The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon.

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 5 - Criminal Monetary Penalties

Judgment – Page **5** of **6**

DEFENDANT:      Humberto  Ortiz
CASE NUMBER:   6:12CR10089 - 023

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the Schedule of Payments set forth in this Judgment.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $100 | Waived | $16,242.10 |

☐    The determination of restitution is deferred until ___. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☒    The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Crime Victims Compensation Board Claim # 120252 | | $2,811.60 | |
| Crime Victims Compensation Board Claim # 120231 | | $13,430.50 | |
| Totals: | $ | $16,242.10 | |

☐    Restitution amount ordered pursuant to plea agreement $___ .

☐    The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options set forth in this Judgment may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒    The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☒ the interest requirement is waived for the ☐ fine and/or ☒ restitution.

☐ the interest requirement for the ☐ fine and/or ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 09/11 - D/KS 08/12) Judgment in a Criminal Case
Sheet 6A    Schedule of Payments

DEFENDANT:        Humberto  Ortiz
CASE NUMBER:    6:12CR10089 - 023

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A    ☐    Lump sum payment of $___ due immediately, balance due
            ☐ not later than ___, or
            ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B    ☒    Payment to begin immediately (may be combined with ☐ C, ☒ D, or ☒ F below); or

C    ☐    Payment in monthly installments of not less than 5% of the defendant's monthly gross household income over a period
            of ___ years to commence ___ days after the date of this judgment; or

D    ☒    Payment of not less than 10%  of the funds deposited each month into the inmate's trust fund account and monthly
            installments of not less than 5% of the defendant's monthly gross household income over a period of <u>two (2)</u> years, to
            commence <u>30</u> days after release from imprisonment to a term of supervision;  or

E    ☐    Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
            imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that
            time; or

F    ☒    Special instructions regarding the payment of criminal monetary penalties:

If restitution is ordered, the Clerk, U.S. District Court, may hold and accumulate restitution payments, without distribution, until the
amount accumulated is such that the minimum distribution to any restitution victim will not be less than $25.

Payments should be made to Clerk, U.S. District Court, U.S. Courthouse - Room 259, 500 State Avenue, Kansas City, Kansas 66101.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is
due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒        Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount Joint and Several Amount and
corresponding payee, if appropriate.

| Case Number (Including Defendant Number) | Defendant Name | Joint and Several Amount |
|---|---|---|
| 6:12CR10089-01 | Jason Najera | $16,242.10 |
| 6:12CR10089-19 | Fabian Neave | $16,242.10 |
| 6:12CR10089-20 | Jesse Torres | $16,242.10 |
| 6:12CR10089-21 | Jose Neave | $16,242.10 |

☐    The defendant shall pay the cost of prosecution.
☐    The defendant shall pay the following court cost(s):
☐    The defendant shall forfeit the defendant's interest in the following property to the United States.  Payments against any
        money judgment ordered as part of a forfeiture order should be made payable to the United States of America, c/o United
        States Attorney, at 301 N. Main, Ste 1200, Wichita, KS 67202 Attn: David Stevens.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

UNITED STATES OF AMERICA,          )
                                   )
                  Plaintiff,       )
                                   )
        vs.                        )          No. 12-CR-10089-02-MLB
                                   )
PEDRO GARCIA,                      )
                                   )
                  Defendant.       )
_____)

**DEFENDANT PEDRO GARCIA'S MOTION TO SUPPRESS EVIDENCE FOUND IN
CONNECTION WITH THE OCTOBER 19, 2010, SEARCH OF HIS RESIDENCE**

**- DEFENDANT GARCIA'S NINETEENTH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John

Val Wachtel of Klenda Austerman LLC, and hereby moves this Court for an order to suppress the

evidence obtained during the October 19, 2010 search of his residence.  In support of the motion Mr.

Garcia states as follows:

1.  Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains

thirty-eight alleged separate violations of federal criminal law.  (Doc. 1.)  Count 1, inter alia, charges

the defendant, along with Jason Najera, Gonzalo Ramirez, Anthony Wright, Jesus Sanchez, Eusebio

Sierra-Medrano, Jason Vargas and Fabian Neave, "together with persons known and unknown, being

persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities

of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate

18 U.S.C. § 1962(c) ... [a]ll in violation of  18 U.S.C. § 1962(d)." *Id.*

2.  Count 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright

with the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5).  *Id.*  When the Indictment

in this case was filed, it contained a section titled "Notice of Special Findings." *Id*. p. 32-33. The Notice of Special Findings placed Mr. Garcia on notice that, should the Department of Justice approve a request from the United States Attorney for the District of Kansas, the government could seek the death penalty against Mr. Garcia and his co-defendant Gonzalo Ramirez.

3. Count 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering. It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1). *Id*. Count 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1). *Id*. Count 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3). *Id*. Count 6 charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id*.

4. Count 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3). Count 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6), and Count 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id*.

5. On October 18, 2010, the Dodge City Kansas police obtained a search warrant for the house in which Mr. Garcia was and had been residing, located at 1302 Avenue D, Dodge City, Kansas. This residence is also the residence in which Mr. Garcia's mother and step parent live.

6. To secure the warrant, the police relied upon an oral affidavit given by Officer Shane Webb to Ford County District Judge Van Z. Hampton. The defendant requested a copy of the affidavit, and the government provided a heavily redacted transcript. Based upon the testimony of Officer Shane Webb, the District Court issued a warrant for the search of the premises located at 1302 Avenue D, Dodge City, Kansas. The Warrant specifically authorized the seizure of the

following:

> Any gang attire including but not limited to red bandannas and items with Norteno gang association, photos, drawings, writings, gang roll calls etc.  Any documents, photographs, mail and bills or other personal or business items indicating the identity of persons residing at the location

7.  The warrant was executed the following day.  During the search, law enforcement officers took numerous photographs.  According to the inventory provided in discovery, the following items were seized from Mr. Garcia's residence:

> 1. 16 St Ramon Candles, 2.  Northern Ave Street Sign, 3. Scarface Picture, 4. Northtown decorative license plate, 5. Letter from Gonzo to Peter, 6. 2 wall posters, 7. Letter to Peter in red ink, 8. St. Ramon Figurine, 9. Letter and notes along with envelope addressed to Pedro Garcia, 10. Gun (illegible) and break Free Solvent, 11. Wood clipboard with gang graffiti written in red ink, and 12. Letter to Peter from Knox.

8.  To obtain a search warrant, law enforcement officers must comply with the Fourth Amendment to the Constitution of the United States.  The Fourth Amendment requires a law enforcement officer show probable cause for the search, and provide a particularized description of the place to be searched and the items to be seized.

9.  As of this writing, the government has not yet demonstrated the basis upon which law enforcement obtained the warrant to search Mr. Garcia's residence and seize items from that residence.

WHEREFORE, Mr. Garcia seeks an order suppressing any and all items seized from his residence, and for such other and further relief as is just and equitable in these premises.  In addition, Mr. Garcia seeks the right to supplement this motion with additional grounds and further pleadings once he has been furnished an unreadacted affidavit.

                              Respectfully submitted:

                              s/John Val Wachtel

John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2013, I electronically filed the foregoing by using the

CM/ECF system which will send a notice of electronic filing to the counsel of record.


s/John Val Wachtel
John Val Wachtel


KMAZ Doc. 2150318

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 12-CR-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION FOR A *DAUBERT/KUMHO TIRE*
HEARING ON CERTAIN EXPERT WITNESSES IDENTIFIED BY THE
GOVERNMENT**

**- DEFENDANT GARCIA'S TWENTIETH MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John

Val Wachtel of Klenda Austerman LLC, and hereby moves this Court for a Daubert/Kumho Tire

hearing with respect to the qualifications and opinions of certain proposed expert witnesses as the

same are more particularly identified herein below.  In support of the motion Mr. Garcia states as

follows:

<u>Undisputed Facts</u>

1. Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains

thirty-eight alleged separate violations of federal criminal law.  (Doc. 1.)  Count 1, inter alia, charges

the defendant, along with Jason Najera, Gonzalo Ramirez, Anthony Wright, Jesus Sanchez, Eusebio

Sierra-Medrano, Jason Vargas and Fabian Neave, "together with persons known and unknown, being

persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities

of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate

18 U.S.C. § 1962(c) ... [a]ll in violation of 18 U.S.C. § 1962(d)." *Id.*

2. Count 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright with the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5). *Id.* When the Indictment in this case was filed, it contained a section titled "Notice of Special Findings." *Id.* p. 32-33. The Notice of Special Findings placed Mr. Garcia on notice that, should the Department of Justice approve a request from the United States Attorney for the District of Kansas, the government could seek the death penalty against Mr. Garcia and his co-defendant Gonzalo Ramirez.

3. Count 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering. It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1). *Id.* Count 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1). *Id.* Count 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3). *Id.* Count 6 charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

4. Count 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3). Count 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6), and Count 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

5. In September, 2012, the government filed a Disclosure of Anticipated Expert witnesses. (Doc. 297). As a part of that Disclosure, the government identified eighteen expert witnesses whom it anticipated calling at trial. *Id.* at pp. 2-3. Among those experts are Jimmie "J.L." Bice, Shane Webb and James Nau who appear to be Dodge City Police Officers. *Id.* at p. 2. See also CVs of Bice, Webb and Nau which are attached to the Disclosure.

2

6. In the Disclosure, and under the heading "Gang testimony," the government sets out seven paragraphs of information which it indicates that its experts "may testify about." *Id*. pp. 3-5. Indeed each paragraph which sets out the expected gang testimony begins, "The Witnesses may testify ..... ." *Id*. In none of those paragraphs does the government disclose which opinions are held by which proposed expert, and it does not identify the expert or experts who will be providing "Gang testimony." Based upon the CVs of Bice, Webb and Nau, this defendant assumes that these three officers are the government's gang experts.

7. From the discovery thus far provided to the defendants, it is expected that officers Bice, Webb and Nau will likely also testify as fact witnesses.

8. It also appears from the Disclosure that these expert witnesses may testify about other matters. At page 5 of the Disclosure there is a section titled "Tools of the Trade." *Id*. p.5. The Disclosure also contains a two paragraph section titled "Drug distribution" which appears to be a part of the disclosure as about what the experts will opine. *Id*. p. 6.

<u>Argument and Authorities</u>

"Federal Rule of Evidence 702 requires courts to assess the reliability of expert testimony based on scientific, technical or other specialized knowledge before admitting it. *United States v. Roach*, 582 F.3d 1192, 1206 (10th Cir. 2009), citing *Daubert v. Merrell Dow Pharmaceuticals, Inc*. 509 U.S.570, 580 (1983) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). *Kumho Tire* grants the trial courts broad authority to assess the reliability of expert testimony. This 'gate keeping function' can be satisfied "by ruling on a Rule 702 objection at trial, so long as the court has sufficient evidence to perform the tasks of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Roach,* 582 F.3d at 206 (internal quotation marks and subsequent citations omitted). It appears that the Tenth Circuit's preferred manner of disposing of

3

such issues before the District Courts is pursuant to *Daubert/Kumho Tire* proceedings

Under the evidentiary rule, the court's inquiry in such proceedings is twofold. First the court must determine whether the witnesses are qualified as experts in the area about which they will testify. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) ("In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training or education' to render an opinion." (quoting Fed.R.Evid. 702)). Second, the court must determine whether the expert opinion is relevant and reliable. *Nacchio*, 555 F.3d at 1241, citing *Daubert*, 509 U.S. 579, 589 (1993).

An expert exercises independent judgment. He does not and may not parrot some another individual's out-of-court statement for, if the expert does so, he is offering that statement for the truth rather than conveying an independent judgment, and the out of court statement is disclosed for its truth, and there has been an end run around *Crawford. United States v. Pablo*, 696 F.3d 1280, 1288 (10th Cir. 2012). Thus to exercise its gatekeeper function, the court must evaluate the proposed expert testimony in light of the experts experience and training and determine whether the expert opinion is in fact an independent judgment arrived at by the expert(s).

From the discovery and the government's Disclosure, it is apparent to Mr. Garcia that the government's proposed experts will testify to fact matters rather than just to conclusions based upon their experience and independent judgment. As but one example of this, Mr. Garcia directs the court's attention the penultimate paragraph of the Gang testimony, page 5 of the disclosure. That paragraph reads as follows:

> There is a significant population of Guatemalan immigrants living in Dodge City, Kansas who come to the area to work in the meat packing industry. Many of these immigrants are in the United States illegally. The witnesses may testify about Guatemalan immigrants living in Dodge City being a frequent target of the Nortenos and their subsets for robbery and assault because these immigrants ordinarily do not

<div align="center">4</div>

648

> use banks so they keep large quantities of money in their residences.  Many Guatemalan immigrants send money to their families in Guatemala so they frequently save quantities of money which they plan to wire to their families.  Because many of these immigrants are in the United States illegally they are reticent to report being the victim of a crime to law enforcement out of fear of being identified as illegal and deported.  They also tend to be small in stature and not likely to possess firearms and are viewed by gang members as compliant and not likely to fight back.

*See* Disclosure, p. 5.  During the course of the *Daubert*/*Kumho Tire* hearing the court may well have to make rulings as to what is admissible opinion, what is fact testimony and how the two are to be treated.

WHEREFORE, the defendant prays for a *Daubert*/*Kumho Tire* regarding the government's gang experts.

<div style="text-align:right">

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of February, 2013, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

<div style="text-align:right">

s/John Val Wachtel
John Val Wachtel

</div>

KMAZ Doc. 2150014

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-02-MLB |
| | } | |
| PEDRO GARCIA, | } | |
|   a.k.a. Peter Garcia, | } | |
|   a.k.a. Pistol Pete, | } | |
| | } | |
| Defendant. | } | |

**RESPONSE OF THE UNITED STATES TO
DEFENDANT PEDRO GARCIA'S MOTION TO
SUPPRESS EVIDENCE SEIZED FROM HIS RESIDENCE (Doc. 504)**

The United States of America, by Aaron L. Smith and Lanny D. Welch, Assistant United

States Attorneys, hereby responds to Defendant Pedro Garcia's Motion to Suppress Evidence.[1]

In support of this response, the United States avers as follows:

**A.      Charges**

Defendant Pedro Garcia is charged in the following counts of the indictment returned on

April 16, 2012:

Count 1  -  RICO Conspiracy, in violation of Title 18, U.S.C. § 1962(d);

Count 2  -  Violent Crime in Aid of Racketeering/Conspiracy to Murder, in violation of Title 18, U.S.C. § 1959(a)(5);

Count 3  -  Violent Crime in Aid of Racketeering/Murder, in violation of Title 18, U.S.C. § 1959(a)(1);

---

[1] Doc. 504.

Count 4 -  Violent Crime in Aid of Racketeering/Attempted Murder, in violation of Title 18, U.S.C. § 1959(a)(5);

Count 5 -  Violent Crime in Aid of Racketeering/Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(3);

Count 6 -  Possess/Discharge a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A);

Count 7 -  Violent Crime in Aid of Racketeering/Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(3);

Count 8 -  Violent Crime in Aid of Racketeering/Conspiracy to Commit an Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(6);

Count 9 -  Possess and Brandish a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A).

**B.**     **Motion to Suppress Search of Residence**

On October 18, 2010, law enforcement officers in Dodge City obtained search warrants from Kansas District Judge Van Hampton authorizing the searches of the residences of Gonzalo Ramirez and Pedro Garcia.  The search warrants sought evidence of gang attire and gang membership to include red bandanas or other items commonly associated with the Nortenos street gang in Dodge City.  These warrants were executed the following day.

In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court stated that when determining if probable cause exists for the issuance of a search warrant, "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability

2

that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.

Probable cause is "a practical, nontechnical conception" based on "common-sense

conclusions about human behavior." *Id.* at 231. "[D]etermination of probable cause

should be paid great deference by reviewing courts." *Id.* at 236.

There was probable cause to believe the evidence sought by Dodge City

investigators would be found at the residence of Pedro Garcia and the search warrant

issued by Judge Hampton was proper. The United States will respectfully request,

following a hearing on this matter, this motion be denied.[2]

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov

---

[2] The United States previously announced it would not be introducing evidence seized during the search of Gonzalo Ramirez' residence and, therefore, would not contest Ramirez' motion to suppress (Doc. 425). As stated in the body of the motion response, the United States would request a hearing as to this motion filed by Pedro Garcia.

CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of February, 2013, we electronically filed the

foregoing motion with the clerk of the court by using the CM/ECF system, which will send a

notice of electronic filing to all counsel of record.


/s/ Lanny D. Welch
LANNY D. WELCH
Assistant United States Attorney

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

UNITED STATES OF AMERICA,          }
                                   }
          Plaintiff,               }          Criminal Action
                                   }
     v.                            }          No. 12-10089-01-23-MLB
                                   }
JASON NAJERA                       }
   a.k.a. Ene,                     }
   a.k.a. Norte,                   }
PEDRO GARCIA,                      }
   a.k.a. Peter Garcia,            }
   a.k.a. Pistol Pete,             }
GONZALO RAMIREZ,                   }
   a.k.a. Gonzo,                   }
RUSSELL WORTHEY,                   }
   a.k.a. Blanco,                  }
ANTHONY WRIGHT,                    }
   a.k.a. Huesos,                  }
JOSHUA FLORES,                     }
   a.k.a. Big Knox,                }
JESUS FLORES,                      }
   a.k.a. Tito,                    }
ANGEL CERDA,                       }
   a.k.a. Shrek,                   }
JUAN TORRES,                       }
   a.k.a. Bugsy,                   }
ALFREDO BELTRAN-RUIZ,              }
   a.k.a. Deuce-Deuce,             }
DONTE BARNES,                      }
   a.k.a. Snipes,                  }
   a.k.a. Snipe,                   }
   a.k.a. Sniper,                  }
JESUS SANCHEZ,                     }
   a.k.a. Drac,                    }
   a.k.a. Dracula,                 }
ENRIQUE GOBIN,                     }
   a.k.a. Ricky,                   }
   a.k.a. Sonny Boy,               }

1

ALFONSO BANDA-HERNANDEZ,           }
  a.k.a. Fonso,                              }
ANDREW GUSMAN,                          }
  a.k.a. Beaver,                            }
EUSEBIO SIERRA-MEDRANO,          }
  a.k.a. TC,                                   }
JAYSON VARGAS                             }
  a.k.a. Wee Wee,                        }
ADAM FLORES,                               }
  a.k.a. Little Lazy,                       }
FABIAN NEAVE,                             }
  a.k.a. Puppet,                             }
JESUS TORRES,                              }
  a.k.a. Rabbit,                             }
JOSE NEAVE,                                 }
  a.k.a. Caiyo,                              }
HERNAN QUEZADA,                       }
  a.k.a. Cheese,                            }
  a.k.a. Cartoon,                           }
HUMBERTO ORTIZ,                        }
  a.k.a. Beto,                                 }
                               }
       Defendants.                          }

## GOVERNMENT'S MEMORANDUM
## REGARDING ADMISSIBILITY OF
## CO-CONSPIRATOR STATEMENTS

COMES NOW the United States of America, by and through Aaron L. Smith, Assistant United States Attorney and Lanny D. Welch, Assistant United States Attorney, and hereby submits this memorandum on the admissibility of co-conspirator statements against the defendants.

**FACTS AND CIRCUMSTANCES**

On April 16, 2012 the defendants, were indicted in a multi-count indictment.  This indictment alleges each defendant was a member of either a RICO or VCAR enterprise pursuant to 18 U.S.C. § 1962 and 18 U.S.C. § 1959 et seq.  The indictment alleges numerous violent

crimes and conspiracies to commit those crimes were perpetrated by the defendants in Dodge City, Kansas. The United States seeks to admit co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E). The following crimes and conspiracies are at issue:

### (Counts 2-8)

On or about June 8th, 2009, Israel Peralta was murdered. Mariano Sorano was wounded by gunfire and two others, Faustino Peralta and Roberto Arco, were present when Peralta and Sorano were fired upon. The four victims had been sitting outside in a trailer park on the south side of Dodge City, Kansas. This is known as the territory of Sureno gang members, and it appeared by the dress of some of the victims that they associated with Sureno gang members.

A Confidential Source (CS) has provided information on these crimes. On or about June 8th, 2009, the CS was at GARCIA'S house, and heard RAMIREZ make the statement to GARCIA that, "you really got that one." GARCIA responds, "Yeah I fucking got him." CS asked GARCIA what happened and GARCIA told him, "I fucking killed a scrap."

GARCIA stated that he, RAMIREZ, Anthony WRIGHT and Russell WORTHEY went looking for scraps. GARCIA stated that WORTHEY and WRIGHT had seen some scraps earlier in the day at the trailer park in south Dodge City.

GARCIA stated that WRIGHT drove to the trailer park, and that RAMIREZ and GARCIA got out of the car and started shooting at a group of scraps. GARCIA stated that GARCIA chased one over a fence and yelled "pure Norte" (in Spanish) and shot him in the back. RAMIREZ kept repeating, "You really got that one," and GARCIA would respond, "Fuck yeah."

GARCIA also stated they had robbed some "Guats" earlier in the evening.

Late in 2010, another CS was interviewed by law enforcement. The CS stated that Anthony WRIGHT and Russell WORTHEY were cruising around Dodge City in June of 2009 in

3

a Mazda in a trailer park in south Dodge City and ran across a group of Hispanic males. Those males appeared as if they may have been Sureno gang members.

Later in the evening WRIGHT and WORTHEY drove to GARCIA'S house and went around the back and knocked on the door. At that time, GARCIA, RAMIREZ, Tito (Jesus) FLORES and Josh FLORES came running down the alley with firearms. Then GARCIA, RAMIREZ, J FLORES, T FLORES, WORTHEY and WRIGHT went into GARCIA'S house and GARCIA, RAMIREZ, J FLORES and T FLORES began dividing up money and talking about how they had just robbed some Guatemalans. Afterwards, GARCIA or RAMIREZ said let's go looking for some "scraps." GARCIA and RAMIREZ were both armed with firearms.

WRIGHT drove the Mazda with WORTHEY in the passenger seat and GARCIA and RAMIREZ were in the back seat. They drove to the trailer park in south Dodge City where WORTHEY and WRIGHT had been earlier. WRIGHT drove past the Hispanic males they had seen earlier and parked the car at GARCIA'S direction. RAMIREZ and GARCIA got out of the car with guns drawn and ran toward the group of Hispanic males with WORTHEY and WRIGHT following.

GARCIA and RAMIREZ began firing and one of them yelled "puro norte" (pure north) and fired numerous times. When WORTHEY and WRIGHT heard the shots they ran back to the vehicle.

Once in the vehicle RAMIREZ said to GARCIA "you got that one" and Garcia responded affirmatively. GARCIA directed them to drive towards the country and told WORTHEY and WRIGHT "you both have kids" indicating a threat if WRIGHT or WORTHEY cooperated with law enforcement. Eventually WRIGHT and WORTHEY dropped off GARCIA and RAMIREZ and WRIGHT returned to WORTHEY's home.

4

**(Counts 7-9)**

On or about June 8th, 2009 in Dodge City, Kansas, Isidro RALEAS-VELASQUEZ and other Guatemalans were robbed in their home located at 1005 Ave E in Dodge City.  Isidro RALEAS-VELASQUEZ stated that up to six people entered the home with their faces covered and carrying firearms.  The assailants demanded money of the Guatemalans.  One of the assailants pistol-whipped Isidro RALEAS-VELASQUEZ several times in the head, leaving a sizeable laceration.  The assailants left with U.S. currency taken from the Guatemalan victims.

Later that night, a CS heard statements made by GARCIA alluding to the fact that he and RAMIREZ were involved in a robbery of Guatemalans before the homicide.  Later, at the home of Jesus FLORES, in the presence of GARCIA, RAMIREZ, Jesus FLORES and Joshua FLORES, the four robbers openly discussed the details of the robbery.  Jesus FLORES stated that he had beaten one of the victims.

Law enforcement officers discovered four different types of shoe prints leading from the victim's residence north in an alley toward GARCIA'S home.

**(Counts 15 -18)**

On or about March 15, 2011 in Dodge City, Reyes Delira-Padilla was at his home located at 1705 Ave D in Dodge City when he was fired upon.  Delira-Padilla was a Sureno gang member. Delira-Padilla was in his home that evening when he observed a maroon Lincoln parked in front of his house.  When Delira-Padilla stepped onto his porch he observed a Hispanic male in the vehicle.  That person began flashing Norteno gang signs at Delira-Padilla.  Delira-Padilla re-entered his home and told his wife to gather the kids and lie down on the floor because he thought a shooting may occur.  Delira-Padilla exited his back door, got in his vehicle, and drove around the block to find the maroon Lincoln.  Delira-Padilla located the Lincoln parked on

another street with its lights off and no occupant. Delira-Padilla then heard three or four gunshots. Delira-Padilla ducked in his vehicle and struck the Lincoln with his vehicle in order to "mark" it, so as to identify it later.

Delira-Padilla returned to his residence and noticed a tan-looking Lincoln parked in the driveway of a home a few houses down. There were three occupants of that vehicle. One occupant exited the vehicle and walked toward the home. Delira-Padilla's brother-in-law arrived and they found bullet holes in his home. The tan-colored Lincoln then drove in the alley behind Delira-Padilla's residence at a high rate of speed. Delira-Padilla's brother-in-law began to pursue that vehicle.

Delira-Padilla walked toward the front of his house when he saw flashes from the driveway where the tan-colored Lincoln had been parked. He also heard three or four gunshots. Delira-Padilla observed a person dressed in dark red clothing holding what appeared to be a handgun in the area near the flashes. That person then ran away.

Delira-Padilla then contacted law enforcement officers that had just stopped the tan-colored Lincoln. It was discovered that this vehicle was actually a very faded red. The driver of that vehicle was Donte BARNES, a documented Norteno. The maroon Lincoln matched the description of a car driven by Alfredo BELTRAN-RUIZ, a documented Norteno. Law enforcement processed the crime scene, and found no shell casings, indicating revolvers were probably used. There where gunshots in two separate sides of the house.

Suzanna Osornio was interviewed by law enforcement. She was the girlfriend of BELTRAN-RUIZ. The night of the shooting, BELTRAN-RUIZ left her residence driving the maroon Lincoln. He returned approximately one and a half hours later. BELTRAN-RUIZ was upset and told Osornio that some "scraps" had hit his car and damaged it. Osornio observed

6

659

damage to the vehicle.  Law enforcement later seized the maroon Lincoln and there was damage

consistent with it being struck by Delira-Padilla.

BELTRAN-RUIZ was later taken into custody on a probation violation.  While in custody

BELTRAN-RUIZ was visited by Laura Rodriguez.[1]  The conversation between Rodriguez and

BELTRAN-RUIZ was recorded.  In that conversation, Rodriguez asked BELTRAN-RUIZ

"Where's it at?"  BELTRAN-RUIZ described a house to Rodriguez and told her there was a

white garage and "it" was under a lawnmower.  Officers quickly responded to the area and found

a lawnmower in the area described.  Under the lawnmower they discovered a revolver.

**(Counts 19 – 22)**

On or about March 30, 2011, George Gonzalez, a Sureno gang leader, was fired upon in

Dodge City.  Gonzalez was at a local convenience store when a car load of Norteno gang

members arrived.  The car was a green-colored Plymouth.  The Norteno gang members

immediately began taunting, threatening and throwing gang signs at Gonzalez.  Gonzalez

recognized the driver of the vehicle as Enrique GOBIN.

Gonzalez, the passenger in a vehicle, left to attempt to return to his home.  While driving

through a neighborhood near the convenience store, Gonzalez saw GOBIN'S vehicle begin to

follow him.  Another vehicle was also following Gonzalez, and the vehicles appeared to be

working in concert.  Gonzalez recognized the driver of the second vehicle as Alfonso BANDA-

HERNANDEZ.

Gonzalez arrived at an alley behind his home and bailed from the vehicle.  While

Gonzalez was running toward his back door, several shots were fired at him from GOBIN'S

---

[1]   Laura Rodriguez is the mother of Enrique GOBIN and other Norteno gang members and associates.  Rodriguez is known as "Mama Norte".  It is known in the Norteno community that her home is a safe haven for Nortenos.

vehicle.  The shots were fired from the passenger side of the vehicle.  Gonzalez heard the bullets striking a fence directly beside him.  Law enforcement officers discovered bullet holes in that location in the fence.  He was uninjured and entered his home as the assailants left the scene.

Gonzalez later identified GOBIN as being the driver of the Plymouth.

Ysenia Rios has provided information on these crimes at hand.  Ysenia Rios had been dating GOBIN on the date in question.  She had been drinking with GOBIN, Jesus SANCHEZ, Alfonso BANDA-HERNANDEZ, and Andrew GUSMAN at GOBIN'S house.  Rios then left with the four Nortenos to the convenience store where they saw and confronted Gonzalez.  After the confrontation, BANDA-HERNANDEZ and GUSMAN retrieved another vehicle. SANCHEZ saw the vehicle that Gonzalez was riding in.  The vehicle with Rios, GOBIN and SANCHEZ then met up with the vehicle with BANDA-HERNANDEZ and GUSMAN.  The two vehicles then located Gonzalez and began the car chase.  Rios witnessed Gonzalez bail from his vehicle and run toward his home.  Rios witnessed SANCHEZ hold a handgun from the back passenger window and fire several times at Gonzalez.

### (Counts 23 - 25)

On April 30, 2011, two Guatemalan immigrants living in Dodge City were robbed inside their home by armed and masked gunmen.  The residence was located at 609 E Spruce in Dodge City.  One robber was armed with a handgun and the other was armed with a rifle.  The immigrants were Jose Santaella and Santos Gutierrez.

Jose Santaella has provided information on the crime at hand.  Santaella stated that he and Gutierrez were in possession of a large amount of U.S. currency.  Santaella, who was in the country illegally, did not use a bank and saved his money for his expenses and to send back to Guatemala to benefit his family.  Santaella stated that two people kicked in the door to his home

8

and demanded money at gunpoint.  Santaella and Gutierrez were ordered to lie on their stomachs and were repeatedly told not to move or they would be shot.  Santaella and Gutierrez gave U.S. currency to the gunmen.  Santaella and Gutierrez were locked in a bathroom before the robbers fled.

A CS has provided information on these crimes.  CS was told by Jayson VARGAS that he committed a home invasion robbery with Adam FLORES.  VARGAS identified the house, which was the home of Santaella and Gutierrez.  VARGAS stated he had kicked in the door with FLORES and took money from two Guatemalans.  VARGAS and FLORES were each armed.  VARGAS was armed with a .45 caliber pistol, and FLORES with an unknown model of rifle.

VARGAS had borrowed a pair of tennis shoes from a CS earlier in the day of the robbery.  When VARGAS later returned home, he gave CS the tennis shoes back, but told CS to destroy them because he had used those shoes to kick in the door.  VARGAS then gave CS money to purchase a new pair of shoes.

**(Count 29)**

On or about August 20, 2011, Jayson VARGAS became angry at his ex-girlfriend Kendra Owens.  Owens is a known associate of the Nortenos, and has dated several Norteno gang members.

On the date in question VARGAS became upset at Owens, presumably about the end of their relationship.  VARGAS saw Owens driving in Dodge City and began pursuing her, each of them in a separate vehicle.  At one point during the chase VARGAS attempted to fire a shot from a handgun at Owens.  Owens did not hear a shot fired, but saw the handgun pointed at her.  VARGAS was taken into custody contemporaneously with the assault.  A firearm was recovered from VARGAS and there was a round in the chamber of the handgun with an impression in from

9

the firing pin, however the round was not discharged.  VARGAS was a convicted felon at the time.  Jose Luna, a documented Norteno, later confronted Owens and stated that Jason NAJERA is warning Owens not to testify against VARGAS.

<div align="center"><strong>(Counts 26 – 27)</strong></div>

On or about August 27, 2011 in Dodge City, Gabriel Rivera and Carlos Ramirez were seriously injured by stab wounds inflicted by Norteno gang members.  Rivera and Ramirez were with several other people at a party celebrating a birthday in the front yard of a home.

Witnesses stated that two individuals initially approached the party and confronted Daniel Ramirez-Molina about a shirt he was wearing.  Soon thereafter, a tan Tahoe approached and four or five others from the Tahoe confronted the partygoers.  A physical confrontation began, and soon Rivera and Ramirez were each stabbed.

Ramirez-Molina stated that while at the party two males approached and accused the partygoers of being Surenos, and the males identified themselves as Norteno.  Ramirez-Molina states that one of the Nortenos made a phone call and the tan Tahoe arrived with at least five more males.  The fight then started.  Ramirez-Molina recognized one of the Nortenos because he had previously worked with him.  Ramirez-Molina picked Jason NAJERA out of a photo line-up.  Two other witnesses picked NAJERA out of a line-up and identified him as one of the initial attackers.

Carlos Ramirez was interviewed at the hospital.  He had sustained stab wounds to his back.  Rivera stated that two people approached the party shouting Norteno gang slogans and throwing gang signs.  Rivera and Ramirez specifically told the two Nortenos that they were not gang members.  Ramirez identified NAJERA from a photo line-up and stated that NAJERA was the person instigating the fight, and NAJERA told the other Norteno to call for their friends.

<div align="center">10</div>

Ramirez stated that no one at the party was a Sureno gang member, but that he had been a Sureno in 2003.  When the other Nortenos arrived, Ramirez began to flee, fearing for his life.  While running he was stabbed in the back.  Ramirez remembered one of the younger Nortenos that arrived tell NAJERA that they should leave because the partygoers were not Surenos.  NAJERA responded, "No, fuck it," and began to fight.

Gabriel Rivera suffered 6 stab wounds.  One of which pierced a lung.  His injuries required a life-flight to Wichita, Kansas for emergency treatment.  Rivera made statements consistent with the other witnesses.  Rivera identified NAJERA from a photo line-up, stating that he thought, although wasn't sure, that was the person who attacked him.

A CS was interviewed by law enforcement officers.  CS stated that he was at a home, just up the street from the partygoers.  Present were NAJERA, Fabian NEAVE, TORRES, Humberto ORTIZ and Jose NEAVE.  NAJERA and TORRES left and walked up the street.  CS noticed that they stopped at the party.  ORTIZ, Fabian NEAVE, and Jose NEAVE then went to see what was happening.  CS stated the Nortenos began to fight with the partygoers.  CS stated that any of the others could have done the stabbings.  CS stated that he knew Fabian NEAVE to always carry a knife, but it was typical for all of them to carry a knife at all times.  CS stated ORTIZ, NAJERA, Fabian NEAVE, and Jose NEAVE fled in the tan Tahoe, but TORRES ran back towards his home just up the street.  CS believed that TORRES could have fired the shots at the partygoers.

Another CS has been interviewed by law enforcement in Dodge City regarding these crimes.  CS was present at the party with the five co-conspirators.  CS states a version of events substantially similar to the above, differing in a few respects.  CS rode in the Tahoe down to the party where the stabbing happened.  CS states the NAJERA didn't want to go with TORRES

11

initially, however eventually gave in.  CS notes that TORRES ran off soon after the fight started (presumably to retrieve a firearm).  CS stated that all five named defendants were involved in the fight.  CS states that after the fight ended and the Norteno males got back into the vehicle, Jose NEAVE made a statement that he stabbed two people.

### Admissibility of Co-conspirator Statements

Under Federal Rule of Evidence 801(d)(2)(E), co-conspirator statements are not considered hearsay and are properly admitted if the district court finds, by a preponderance of the evidence, that (1) a conspiracy existed, (2) both the declarant and the defendant against whom the declaration is offered were members of the conspiracy, and (3) the statement was made in the course of and in furtherance of the conspiracy.  *United States v. Eads*, 191 F.3d 1206, 1210 (10th Cir. 1999).  The court may consider the hearsay statement itself, as well as independent factors, in determining whether the government has established a conspiracy by a preponderance of the evidence.  Fed. R. Evid. 801(d)(2); *Bourjaily v. United States*, 483 U.S. 171, 181 (1987).

Rule 801(d)(2)(E) "does not embody a requirement that the statement in question 'be made by a coconspirator to a coconspirator.'"  Stated alternatively, in deciding whether statements are admissible under Rule 801(d)(2)(E), the appropriate focus is on whether the statements were 'made by' a member of the conspiracy, and not on whether the statements were 'made to' a member of the conspiracy.  *United States v. Williamson*, 53 F 3d. 1500 (10th Cir. 1995).

Statements by a conspirator are in furtherance of the conspiracy when they are "intended to promote the conspiratorial objectives."  *United States v. Townley*, 472 F 3d. 1267, 1273 (10th Cir. 1995).  These include "[s]tatements of a coconspirator identifying a fellow coconspirator."  *id*. (quoting *United States v. Handy*, 668 F. 2d 407, 408 (8th Cir. 1982)).

12

Rule 801(d)(2)(E) provides for the admission of statements "between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy." *id*. at 1273. *United States v. Smith*, 833 F. 2d 213, 219 (10th Cir. 1987). (quoting *United States v. Gomez*, 810 F. 2d 947, 953 (10th Cir. 1987).

The indictment need not charge a defendant with a conspiracy for coconspirator statements to be admissible. *United States v. Jones*, 540 F. 2d 465, 471 (10th Cir. 1976).

The district court may satisfy the prerequisites for admission of a co-conspirator statement by holding a *James* hearing or by provisionally admitting the statement "with the caveat that . . . the party offering [it] must prove the existence of the predicate conspiracy through trial testimony of other evidence." *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995).

## The Statements

The United States seeks the admissibility of the statements reflected in the following summarized table:

| Stmt Number | Declarant(s) | Offered Against | Counts | Date of Stmt | Synopsis |
|---|---|---|---|---|---|
| 1a | Pedro Garcia Gonzalo Ramirez | Pedro Garcia Gonzalo Ramirez Russell Worthey Anthony Wright | 1-6 | 06/08/2009 | Garcia or Ramirez state "let's go get some scraps". |
| 1b | Gonzalo Ramirez | Pedro Garcia Gonzalo Ramirez Russell Worthey Anthony Wright | 1-6 | 06/08/2009 | Ramirez says to Garcia in car following shooting "you really got that one". |

13

| Stmt Number | Declarant(s) | Offered Against | Counts | Date of Stmt | Synopsis |
|---|---|---|---|---|---|
| 1c | Pedro Garcia | Pedro Garcia Gonzalo Ramirez Russell Worthey Anthony Wright | 1-6 | 06/08/2009 | Garcia tells Wright and Worthey "remember, you have kids". |
| 2a | Pedro Garcia Gonzalo Ramirez | Pedro Garcia Gonzalo Ramirez Jesus Flores Joshua Flores | 1, 7-9 | 06/08/2009 | "Let's go look for a house" (to rob). |
| 2b | Gonzalo Ramirez | Pedro Garcia Gonzalo Ramirez Jesus Flores Joshua Flores | 1, 7-9 | 06/08/2009 | "Let's do this house" "Let's kick this one" |
| 2c | Pedro Garcia | Pedro Garcia Gonzalo Ramirez Jesus Flores Joshua Flores | 1, 7-9 | 06/08/2009 | Says they should drive east out of Dodge City to avoid police. |
| 3 | Alfredo Beltran-Ruiz | Donte Barnes | 15-18 | 03/15/2011 | Tells Laura Rodriguez to get something under a lawn mower near Humberto Ortiz' residence. |
| 4a | Jesus Sanchez | Jesus Sanchez Enrique Gobin Alfonso Banda-Hernandez Andrew Gusman | 1, 19-22 | 03/30/2011 | Tells Banda-Hernandez to "come where they are." |
| 4b | Jesus Sanchez | Jesus Sanchez Enrique Gobin Alfonso Banda-Hernandez Andrew Gusman | 1, 19-22 | 03/30/2011 | Tells Banda-Hernandez and Gusman he shot at victim's car. |
| 4c | Jesus Sanchez | Jesus Sanchez Enrique Gobin Alfonso Banda-Hernandez Andrew Gusman | 1, 19-22 | 03/30/2011 | Tells Banda-Hernandez to get out of area because "it will be getting hot." |
| 5a | Jayson Vargas | Adam Flores | 1, 23-25 | 04/30/2011 | Tells witness to get rid of pair of shoes he had used in home invasion he committed with Adam Flores. |

14

| Stmt Number | Declarant(s) | Offered Against | Counts | Date of Stmt | Synopsis |
|---|---|---|---|---|---|
| 5b | Jayson Vargas | Adam Flores | 1, 23-25 | 04/2011 | Identifies for witness the house he and Adam Flores robbed. |
| 6 | Jason Najera | Jason Najera Jayson Vargas | 1 & 29 | 08/2011 | Threatens witness not to cooperate in prosecution of Jayson Vargas. |
| 7 | Jesus Torres | Jason Najera Jesus Torres Fabian Neave Jose Neave | 1, 26-27 | 08/27/2011 | Torres says he doesn't like "scraps" living near his mother's residence and wants Nortenos to go with him to confront them. |

WHEREFORE, the government respectfully requests the statements proffered be ruled admissible against the defendants at jury trial.

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov

## CERTIFICATE OF FILING

I hereby certify that on February 11, 2013, I electronically filed the foregoing Government's Memorandum Regarding Admissibility of Co-Conspirator Statements with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

/s/ Aaron L. Smith
AARON L. SMITH
Assistant United States Attorney

16

```
MIME-Version:1.0
From:KSD_CMECF@ksd.uscourts.gov
To:ksd_nef@localhost.localdomain
Bcc:
--Case Participants: David M. Rapp (drapp@hinklaw.com, jshannon@hinklaw.com,
lcatlin@hinklaw.com, lvitanova@hinklaw.com), John V. Wachtel (jvwachtel@klendalaw.com),
Michael D. Hepperly (mhepperly@aol.com), Molly M. Gordon (karin@depewgillen.com,
molly@depewgillen.com), Jeff L. Griffith (jlgriffithlaw@aol.com), Edward L. Robinson
(erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com),
David H. Moses (dmoses@cmzwlaw.com, justin@cmzwlaw.com, mjimenez@cmzwlaw.com,
sher@cmzwlaw.com), Mark A. Sevart (markchrissevart@yahoo.com), Mark T. Schoenhofer
(jenniferlewilson@yahoo.com, mydefensefirst@yahoo.com), Timothy J. Henry
(beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org,
sharon_padgett@fd.org, tim_henry@fd.org), Kevin W. Loeffler (kloeffler@lawyer.com),
Charles A. O'Hara (ohara@oharaohara.com), Gregory D. Bell (gbell@forkersuter.com), Joel
Mandelman (beth_two_hatchett@fd.org, jackie_carter@fd.org, joel_mandelman@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org), Paul S. McCausland
(p.mccausland@youngboglelaw.com), Derek S. Casey (dscasey@twgfirm.com,
jodownum@twgfirm.com), Mark L. Bennett, Jr (dana@mlbjrlaw.com, mark@mlbjrlaw.com),
Christopher S. O'Hara (ohara@oharaohara.com), Roger L. Falk (courtney_unruh@sbcglobal.net,
dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net, roger_falk@sbcglobal.net), James R.
Pratt (jim.prattesq@gmail.com, jim@jamesrprattlaw.com), Lanny D. Welch
(lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov), Aaron L.
Smith (aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov), Jay F. Fowler
(jfowler@foulston.com, lclark@foulston.com), Carl Fredrick A. Maughan
(carl@mandmattorneys.com), Sean C. McEnulty (s@mcenultylawfirm.com), Michael J. Shultz
(lura@shultzlaw.net, michael@shultzlaw.net), Eric A. Hartenstein
(erichartenstein@att.net), District Judge Monti L. Belot
(ksd_belot_chambers@ksd.uscourts.gov)
--Non Case Participants: US Marshal (court.mail-ksd@usdoj.gov, jovan.archuleta@usdoj.gov,
roland.hoffer@usdoj.gov, ryan.roberts2@usdoj.gov), US Probation
(ksp_cmecf@ksp.uscourts.gov)
--No Notice Sent:

Message-Id:2901830@ksd.uscourts.gov
Subject:Activity in Case 6:12-cr-10089-MLB USA v. Najera et al Notice of Hearing
Content-Type: text/html
```

## U.S. District Court

## DISTRICT OF KANSAS

## Notice of Electronic Filing

The following transaction was entered on 2/12/2013 at 2:25 PM CST and filed on 2/12/2013

**Case Name:**     USA v. Najera et al

**Case Number:**   6:12–cr–10089–MLB

**Filer:**

**Document Number:** 521(No document attached)

**Docket Text:**

 **NOTICE OF JAMES HEARING as to Defendants Jason Najera, Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Joshua Flores, Donte Barnes  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) In Court Hearing set for 2/13/2013 at 09:00 AM in Courtroom 161 (MLB)before District Judge Monti L. Belot. (rs)**

**6:12–cr–10089–MLB–1 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, mjimenez@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

David M. Rapp drapp@hinklaw.com, jshannon@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara ohara@oharaohara.com

Edward L. Robinson erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12–cr–10089–MLB–1 Notice has been delivered by other means to:**

Jason Najera
701 SE Stone Road
ElDorado, KS 67042

**6:12–cr–10089–MLB–2 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, mjimenez@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

David M. Rapp drapp@hinklaw.com, jshannon@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara ohara@oharaohara.com

Edward L. Robinson erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−2 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−3 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, mjimenez@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

David M. Rapp drapp@hinklaw.com, jshannon@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara ohara@oharaohara.com

Edward L. Robinson erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−3 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−4 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, mjimenez@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

David M. Rapp drapp@hinklaw.com, jshannon@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara ohara@oharaohara.com

Edward L. Robinson erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12–cr–10089–MLB–4 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−6 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, mjimenez@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

David M. Rapp drapp@hinklaw.com, jshannon@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara ohara@oharaohara.com

Edward L. Robinson erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−6 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−11 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, mjimenez@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

David M. Rapp drapp@hinklaw.com, jshannon@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara ohara@oharaohara.com

Edward L. Robinson erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−11 Notice has been delivered by other means to:**

```
MIME-Version:1.0
From:KSD_CMECF@ksd.uscourts.gov
To:ksd_nef@localhost.localdomain
Bcc:
--Case Participants: David M. Rapp (drapp@hinklaw.com, jshannon@hinklaw.com,
lcatlin@hinklaw.com, lvitanova@hinklaw.com), John V. Wachtel (jvwachtel@klendalaw.com),
Michael D. Hepperly (mhepperly@aol.com), Jeff L. Griffith (jlgriffithlaw@aol.com), Molly
M. Gordon (karin@depewgillen.com, molly@depewgillen.com), David H. Moses
(dmoses@cmzwlaw.com, justin@cmzwlaw.com, mjimenez@cmzwlaw.com, sher@cmzwlaw.com), Edward
L. Robinson (erobinson@josephhollander.com, julie@josephhollander.com,
meaghan@josephhollander.com), Mark T. Schoenhofer (jenniferlewilson@yahoo.com,
mydefensefirst@yahoo.com), Mark A. Sevart (markchrissevart@yahoo.com), Timothy J. Henry
(beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org,
sharon_padgett@fd.org, tim_henry@fd.org), Charles A. O'Hara (ohara@oharaohara.com), Kevin
W. Loeffler (kloeffler@lawyer.com), Joel Mandelman (beth_two_hatchett@fd.org,
jackie_carter@fd.org, joel_mandelman@fd.org, lorraine_schroeder@fd.org,
sharon_padgett@fd.org), Gregory D. Bell (gbell@forkersuter.com), Paul S. McCausland
(p.mccausland@youngboglelaw.com), Derek S. Casey (dscasey@twgfirm.com,
jodownum@twgfirm.com), Mark L. Bennett, Jr (dana@mlbjrlaw.com, mark@mlbjrlaw.com),
Christopher S. O'Hara (ohara@oharaohara.com), James R. Pratt (jim.prattesq@gmail.com,
jim@jamesrprattlaw.com), Roger L. Falk (courtney_unruh@sbcglobal.net,
dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net, roger_falk@sbcglobal.net), Lanny D.
Welch (lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov), Aaron
L. Smith (aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov), Jay F. Fowler
(jfowler@foulston.com, lclark@foulston.com), Carl Fredrick A. Maughan
(carl@mandmattorneys.com), Sean C. McEnulty (s@mcenultylawfirm.com), Michael J. Shultz
(lura@shultzlaw.net, michael@shultzlaw.net), Eric A. Hartenstein
(erichartenstein@att.net), District Judge Monti L. Belot
(ksd_belot_chambers@ksd.uscourts.gov)
--Non Case Participants: US Marshal (court.mail-ksd@usdoj.gov, jovan.archuleta@usdoj.gov,
roland.hoffer@usdoj.gov, ryan.roberts2@usdoj.gov), US Probation
(ksp_cmecf@ksp.uscourts.gov)
--No Notice Sent:

Message-Id:2901837@ksd.uscourts.gov
Subject:Activity in Case 6:12-cr-10089-MLB USA v. Najera et al Notice of Hearing
Content-Type: text/html
```

<div align="center">

**U.S. District Court**

**DISTRICT OF KANSAS**

</div>

**Notice of Electronic Filing**

The following transaction was entered on 2/12/2013 at 2:26 PM CST and filed on 2/12/2013

**Case Name:**        USA v. Najera et al

**Case Number:**    6:12–cr–10089–MLB

**Filer:**

**Document Number:** 522(No document attached)

**Docket Text:**
 **NOTICE OF JAMES HEARING as to Defendants Enrique Gobin, Alfonso Banda–Hernandez, Andrew Gusman, Jayson Vargas, Adam Flores, Fabian Neave, Jose Neave  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) In Court Hearing set for 2/13/2013 at 01:00 PM in Courtroom 161 (MLB)before District Judge Monti L. Belot. (rs)**

**6:12–cr–10089–MLB–13 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, mjimenez@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

David M. Rapp drapp@hinklaw.com, jshannon@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara ohara@oharaohara.com

Edward L. Robinson erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12–cr–10089–MLB–13 Notice has been delivered by other means to:**

Jason Najera
701 SE Stone Road
ElDorado, KS 67042

**6:12–cr–10089–MLB–14 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, mjimenez@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

David M. Rapp drapp@hinklaw.com, jshannon@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara ohara@oharaohara.com

Edward L. Robinson erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−14 Notice has been delivered by other means to:**

Jason Najera
701 SE Stone Road
ElDorado, KS 67042

**6:12−cr−10089−MLB−15 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, mjimenez@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

David M. Rapp drapp@hinklaw.com, jshannon@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara ohara@oharaohara.com

Edward L. Robinson erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12–cr–10089–MLB–15 Notice has been delivered by other means to:**

Jason Najera
701 SE Stone Road
ElDorado, KS 67042

**6:12–cr–10089–MLB–17 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, mjimenez@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

David M. Rapp drapp@hinklaw.com, jshannon@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara ohara@oharaohara.com

Edward L. Robinson erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−17 Notice has been delivered by other means to:**

Jason Najera
701 SE Stone Road
ElDorado, KS 67042

**6:12−cr−10089−MLB−18 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, mjimenez@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

David M. Rapp drapp@hinklaw.com, jshannon@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara ohara@oharaohara.com

Edward L. Robinson erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−18 Notice has been delivered by other means to:**

Jason Najera
701 SE Stone Road
ElDorado, KS 67042

**6:12−cr−10089−MLB−19 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, mjimenez@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

David M. Rapp drapp@hinklaw.com, jshannon@hinklaw.com, lcatlin@hinklaw.com,
lvitanova@hinklaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net,
ianm_clark@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara ohara@oharaohara.com

Edward L. Robinson erobinson@josephhollander.com, julie@josephhollander.com,
meaghan@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12–cr–10089–MLB–19 Notice has been delivered by other means to:**

Jason Najera
701 SE Stone Road
ElDorado, KS 67042

**6:12–cr–10089–MLB–21 Notice has been electronically mailed to:**

Mark L. Bennett, Jr mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith jlgriffithlaw@aol.com

Eric A. Hartenstein erichartenstein@att.net

Michael D. Hepperly mhepperly@aol.com

Paul S. McCausland p.mccausland@youngboglelaw.com

David H. Moses dmoses@cmzwlaw.com, justin@cmzwlaw.com, mjimenez@cmzwlaw.com, sher@cmzwlaw.com

Charles A. O'Hara ohara@oharaohara.com

Mark A. Sevart markchrissevart@yahoo.com

Lanny D. Welch lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov, usaks.ecfwiccrm@usdoj.gov

Kevin W. Loeffler kloeffler@lawyer.com

John V. Wachtel jvwachtel@klendalaw.com

David M. Rapp drapp@hinklaw.com, jshannon@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty s@mcenultylawfirm.com

Timothy J. Henry Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell gbell@forkersuter.com

Roger L. Falk roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan carl@mandmattorneys.com

Aaron L. Smith aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara ohara@oharaohara.com

Edward L. Robinson erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon molly@depewgillen.com, karin@depewgillen.com

Appellate Case: 14-3006    Document: 23-1    Date Filed: 04/01/2014    Page: 688

Joel Mandelman joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12–cr–10089–MLB–21 Notice has been delivered by other means to:**

Jason Najera
701 SE Stone Road
ElDorado, KS 67042

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S *JAMES* HEARING CONDUCTED SUMMATION**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby submits his argument with respect to the *James* hearing held before this Court on February 2, 2003.

**Discussion of Applicable Law**

The purpose of a *James* hearing is "to establish the existence, or nonexistence, of the predicates for the admission of a co-conspirator's extrajudicial declaration *before* the declaration is made known to the jury."  *United States v. Grassi*, 616 F.2d 1295, 1300 (5th Cir.) (emphasis original), cert. denied, 449 U.S. 956 (1980); see also *United States v. Perry*, 624 F.2d 29, 31 (5th Cir. 1980).  This "protect[s] the defendant from the admission of prejudicial hearsay on the basis of threadbare evidence of conspiracy." *United States v. Caldwell*, 771 F.2d 1485, 1487 (11th Cir. 1985) (quoting *Grassi,* 616 F.2d 1295).

For the statement of an alleged co-conspirator to be admissible, the prosecution must lay a foundation which shows:  (1) the existence of a conspiracy; (2) the statements sought to be admitted were made during the course and in furtherance of the conspiracy; and (3) the declarations or

statements were made by one who conspired with the party against whom the statements are offered. Fed.R.Evid. 801(d)(2)(E); *Bourjaily v. United States*, 483 U.S. 171, 175-176, (1987); *United States v. Sinclair,* 109 F.3d 1527, 1533 (10th Cir. 1997); *Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995) and *United States v. James,* 590 F.2d 575, 579-80 (5th Cir. 1979) *en banc, cert. den.* 442 U.S. 817 (1979).

The determination of whether or not a statement is made in furtherance of a conspiracy focuses on the intent of the declarant in making the statement, which requires an examination of the context in which the statement was made. *United States v. Gutierrez*, 48 F.3d 1134, 1137 (10th Cir. 1995), citing *United States v. Roberts*, 14 F.3d 502, 515 (10th Cir. 1993). "In general, mere narratives between co-conspirators or narrative declarations of past events are not 'in furtherance,' while statements of future intent that set transactions to the conspiracy in motion and maintain the information flow among conspirators meet the 'in furtherance' requirement." *Id*.

The evidence linking the defendant to the conspiracy must be substantial. *Caldwell,* 771 F.2d at 1487; *United States v. Kopituk*, 690 F.2d 1289, 1324 (11th Cir.1982), *cert*. denied, 463 U.S. 1209 (1983); *Grassi,* 616 F.2d at 1300 and *James,* 590 F.2d at 580-81. Despite this clear requirement, the burden of proof which the government must meet at the *James* hearing, is a preponderance of the evidence. *Owens*, 70 F.3d at 1123.

**The *James* Hearing**

At the *James* hearing, the government provided court and counsel with a document identified as Government Exhibit 1, a copy of which is attached hereto as Attachment A, and incorporated herein by reference. Exhibit 1 purports to identify certain statements first by statement number, then by the declarant(s); then by the names of the party or parties against whom the statement is offered; then the applicable counts; then the date of the statement(s) and a synopsis of the statement offered.

2

For example, see Exhibit 1, "Stmt [sic] Number 1a." According to Exhibit A, Statements 1a, 1b, and 1c are offered against Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright in respect to Counts 1 through 6. In addition, and according to Exhibit A, Statements 2(a), 2b and 2c are offered against Mr. Garcia, Gonzalo Ramirez, Jesus Flores and Joshua Flores with respect to Counts 7 through 9. The exhibit contains other statements made by other alleged co-conspirators. These statements are not offered against Mr. Garcia in Counts 2 through 9; however the statements identified as 4a, 4b, 4c, 5a, 5b, 6 and 7 are identified as applicable to Count 1, RICO conspiracy, in which Mr. Garcia is also charged.

Two witnesses were presented by the government against Mr. Garcia, Mr. Ramirez, Mr. Worthy, Mr. Wright, Mr. Jesus Flores and Mr. Joshua Flores, with respect to Counts 2 through 9. That testimony is discussed in the sections which follow. It is unclear from the context in which the testimony was offered whether this testimony was also offered with respect to Count 1.

### A. Counts 2 through 6

COUNT 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright with the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5). COUNT 3 charges these defendants, and others both known and unknown, with having committed violent crimes in aid of racketeering. It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1). COUNT 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1). COUNT 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3). COUNT 6, charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

Statement 1a: According to Exhibit 1, the synopsis of the statement reads: "Garcia or

3

Ramirez state 'let's go get some scraps.'"  The statement pertains to Counts 1 through 6.  According to the testimony law enforcement does not know who made the statement, and while this information was provided to law enforcement by a confidential informant, that person does not recall who made that statement.  While the statement may or may not be a statement made in furtherance of the conspiracy, it cannot be admitted.  To be admissible under *James*, the government must prove that the declarations or statements were made by one who conspired with the party against whom the statements are offered .  *James* provides that the declaration of a co-conspirator can be admitted, to be admissible it must be the statement of a co-conspirator and not the statement of Mr. Garcia  See Rule 801(d)(2)(E); *Bourjaily*, 483 U.S. at 175-176; *Sinclair,* 109 F.3d at 1533; *Owens*, 70 F.3d at 1123 and *James,* 590 F.2d at 579-80.  Assuming that a conspiracy to "get some scraps" existed, the statement is inadmissible under Rule 801(d)(2)(E).

Statement 1b:  According to the testimony and according to Exhibit 1, Statement 1b was made by the defendant Ramirez, and it pertains to Counts 1through 6.  According to the testimony and according to Exhibit 1, the synopsis of the statement is as follows:  "Ramirez says to Garcia in car following shooting 'you really got that one.'"  According to Rule. 801(d)(2)(E), to be admissible, the statement must have been made during the course of the and in furtherance of the conspiracy .  *Bourjaily*, 483 at 175-176.  Assuming again that the objective of the conspiracy was "to get some scraps," this particular statement was made after the conspiracy had ended and is not admissible.  In addition, the statement is not in furtherance of the conspiracy because it is at best a mere narrative describing the events that took place, and for that reason as well, the statement is not admissible.  *Gutierrez*, 48 F.3d at 1137.

Statement 1c:  According to the testimony and according to Exhibit 1, prior to the commission of the crimes described in Counts 2 through 6, Mr. Garcia, made a statement directed at

4

defendants Worthey and Wright, the synopsis of which is as follows: "Garcia tells Wright and Worthey "remember you have kids." According to the testimony, Wright and Worthey believed that the statement was made as a threat to them. According to Exhibit 1, the statement is offered against Garcia - the supposed declarant, Worthey, Wright and Garcia. Under Rule 801(d)(2)(E), the statement is inadmissible against Mr. Garcia. The statement may be admissible under some other exception to the hearsay rule, but it is not admissible under subsection (d)(2)(E) of the Rule. Assuming that the conspiracy alleged in Counts 2 through 6 existed, the statement may be admissible against Ramirez, Worthey and Wright.

The Count 2-6 Conspiracy:   The proof of conspiracy at a *James* hearing is by a preponderance of the evidence. Despite that low burden of proof, the evidence linking the defendant to the conspiracy must be substantial. *Caldwell,* 771 F.2d at 1487; *Kopituk*, 690 F.2d at 1324; *Grassi,* 616 F.2d at 1300 and *James,* 590 F.2d at 580-81. The evidence presented by the government with respect to the Counts 2 through 6 conspiracy is not substantial, and is unreliable. The government has failed to meet its burden of proving the conspiracy, and accordingly the alleged co-conspirator statements described in Exhibit 1 at 1a, 1b and 1c are not admissible.

**B.  Counts 7through 9**

COUNT 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3). COUNT 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6). COUNT 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.* During the *James* hearing the government presented the testimony of law enforcement officers and also relied upon Exhibit 1.

Statement 2a:   According to witness testimony and according to Exhibit 1, the government contends that either Mr. Garcia or Mr. Ramirez said "Let's go look for a house [to rob]." It should be

5

noted that during the testimony of the government's witness, it appears that the words "[to rob]" are the words of whomever prepared Exhibit 1,  and that neither Garcia nor Ramirez used those words. The government's confidential informant(s) does not know who made this statement.   The government seeks to admit the sentence against Garcia, Ramirez, Joshua Flores and Jesus Flores. While the statement may or may not be a statement made in furtherance of the conspiracy, it cannot be admitted.  To be admissible under *James*, the government must prove that the declarations or statements were made by one who conspired with the party against whom the statements are offered . *James* provides that the declaration of a co-conspirator can be admitted against the declarant, but be admissible under Rule 801(d)(2)(E) it must be the statement of a co-conspirator. *Bourjaily*, 483 U.S. at 175-176.   In short, the government must identify who made the statement.  Assuming that a conspiracy to commit a robbery existed, the statement set out at 2a, is inadmissible.  It may be admissible under some other hearsay exception; however it is not admissible under Rule 801(d)(2)(E).

Statement 2b:  According to the testimony offered at the hearing, and according to Exhibit 1, Mr. Garcia is alleged to have said either "Let's do this house," or "Let's kick this one."  The witness presented at the *James* hearing did not know which statement Mr. Garcia is alleged to have made, and, from the testimony, it is clear that the cooperating witnesses do not know which statement was made.  Assuming that the government can meet its burden with respect to proving the existence of this conspiracy in a *James* context, the above statements, might be considered in furtherance of a conspiracy.

Statement 2c:  According to the testimony offered at the hearing, Exhibit 1, following the robbery charged in Counts 7-9, Mr. Garcia is alleged to have said something to the effect of "they should drive east out of Dodge City to avoid the police."  This statement makes no sense in the

6

context of Counts 2-9.  The Memorandum submitted by the government in pertinent part states:

> Later in the evening WRIGHT and WORTHEY drove to GARCIA'S house and went around the back and knocked on the door.  At that time, GARCIA, RAMIREZ, Tito (Jesus) FLORES and Josh FLORES **came running down the alley** with firearms.  Then GARCIA, RAMIREZ, J. FLORES and T FLORES began dividing up the money and talking about how they had just robbed some Guatemalans.

Memorandum at p. 4 (emphasis added).  In addition, during the *James* hearing the government's witness testified that the four men had walked the three blocks from Mr. Garcia's house to the residence that was robbed.  The testimony and the government's statement that Garcia, Ramirez, Flores and Flores returned on foot from the robbery alleged in Counts 7-9, puts the lie to the statement referred to in Exhibit A at Statement 2c, that Mr. Garcia said they should drive east out of Dodge City to avoid the police. No one drove to Mr. Garcia's house following the robbery.  The statement is unreliable, and has nothing to do with Counts 7-9.  Moreover, and if somehow this Court might believe that this alleged statement relates somehow to Counts 7-9, it is not made in furtherance of any conspiracy.  Assuming that the conspiracy was to rob the residence of the Guatemalans, the conspiracy had ended.

The Count 7-9 Conspiracy:  The proof of conspiracy at a *James* hearing is whether the government has presented substantial evidence of the conspiracy and substantial evidence linking the defendant to it.  The burden of proof is a preponderance of the evidence.  The evidence presented by the government with respect to the Counts 7 through 9 is not substantial, and is unreliable.  The government has failed to meet its burden of proving the conspiracy, and accordingly the alleged co-conspirator statements described in Exhibit 1, 2a, 2b and 2c are not admissible.

**C.  Count 1, the RICO Conspiracy**

COUNT 1 of the indictment, charges Mr. Garcia, along with Jason Najera, Gonzalo Ramirez, Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together

7

695

with persons known and unknown, being persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, **knowingly and intentionally conspired** to violate 18 U.S.C. § 1962(c) ... [a]ll in violation of 18 U.S.C. § 1962(d)."   Indictment, Count 1 (emphasis added).   Exhibit 1 indicates that certain statements discussed at the *James* hearing are related to Count 1.   The statements which the government thinks should be admissible to prove the conspiracy alleged in Count 1 are identified in Exhibit 1 as "1a, 1b, 1c, 2a, 2b, 2c, 4a, 4b, 4c, 5a, 5b, 6 and 7.   As opposed to the discrete conspiracies charged against Mr. Garcia and others in Counts 2 through 6 and 7 through 9, the conspiracy alleged in Count 1 is an overarching conspiracy, involving untold numbers of persons.

At a *James* hearing, and in order to demonstrate that a conspiracy exists, the government must show:

> (1) that two or more people agreed to violate the law, (2) that the defendant knew at least the essential objectives of the conspiracy, (3) that the defendant knowingly and voluntarily became a part of it, and (4) **that the alleged coconspirators were interdependent**. (Citations omitted.)  '[A]single conspiracy does not exist solely because many individuals deal with a common central player.' (Citations omitted.) On the other hand,'[a] defendant need not have actual knowledge of all the details or all the members of the conspiracy and may play only a minor role in the conspiracy.' (Citations omitted.)  The government need only prove by direct or circumstantial evidence 'that the defendant knew at least the essential objectives of the conspiracy and the defendant knowingly and voluntarily became a part of it. (Citations omitted).

*United States v. Small*, 423 F.3d 1165, 1182-83 (10th Cir. 2005) (emphasis added).   Not all communications, even those between alleged conspirators, are in furtherance of any conspiracy or conspiracies.   *United States v. Rivera*, 775 F.2d 1559 (11th Cir. 1985) *cert. denied* 475 U.S. 1051(1986).   Such an overarching conspiracy has been compared to a wheel or hub and spoke conspiracy similar to that discussed in *Kotteakos v. United States*, 328 U.S. 750-754 (1946).

In *Kotteakos*, the Court concluded that one Brown was a common player in all of the

8

transactions at issue with respect to the conspiracy.  In other words, Brown was the hub of a wheel, and the other defendants were the spokes of that wheel.  The Court found no rim enclosing the spokes and the hub.  The Court said that "[i]n many cases the other defendants did not have any relationship with one another other than Brown's connection with each transaction." *Id*. at 769.  The Court ultimately found that while the government's evidence proved the existence of several conspiracies, it did not prove the one charged.

In *United States v. Carnagie*, 533 F.3d 1231 (10th Cir. 2008), the Tenth Circuit was confronted with a similar conspiracy. *Id*. at 1234.  The Tenth Circuit concluded that the conspiracy at issue was of the wheel variety and the issue at hand was the alleged spokes.  The Court wrote: "[T]he focal point of the [interdependence] analysis is whether the alleged co-conspirators were united in a common unlawful goal or purpose. ... This common goal, however **is not, by itself, enough to establish interdependence**: '[w]hat is required is a shared, single criminal objective, not just similar or parallel objectives between similarly situated people.'" *Id*. at 1239 (emphasis added).

In *United States v. Evans*, 970 F.2d 633 (10th Cir. 1992), the Tenth Circuit had the opportunity to discuss a wheel conspiracy.  Critical to the courts analysis was Evans' relationship to the conspiracy as a whole.  The court wrote:

> In a wagon wheel conspiracy, 'a single person or group (the hub) deal[s] individually with two or more other persons or groups (the spokes). []Separate spokes meeting at a common center constitute a wheel conspiracy **only if** those spokes are enclosed by a rim. ... What is required is a shared single criminal objective, not just similar or parallel objectives between similarly situated people.

*Id*. at 673 (emphasis added) (internal citations omitted).

During the *James* hearing in the present case, there was no testimony presented which connected Mr. Garcia with anyone charged in Count 1 other than Ramirez and Wright.  Although Mr. Gonzales might be found to have conspired, in separate individual conspiracies with Gonzales,

9

Wright, Flores, Worthey and Flores, no evidence was presented which linked Mr. Garcia with the overarching wheel conspiracy. In short, while the government may have proved different hubs and different spokes, it failed to produce evidence of a rim. Absent from the government's evidence was proof of a common goal, proof of a shared single criminal objective and proof of interdependence. Accordingly, the government offered no proof of the overarching RICO conspiracy. *Carnagie*, 533 F.3d at 1239.

The government may argue that, in this RICO, case it is enough that Mr. Garcia be a member of the street gang. While there was evidence regarding membership of various defendants in the Nortenos, or the Diablos Viejos, or the LCCs, there was no evidence that Mr. Garcia was a member of any of these "gangs." However, even if there was evidence connecting Mr. Garcia to the Nortenos, the Diablos Viejos or the LCCs mere membership is not enough to establish the overarching conspiracy required in this case. Mere association is insufficient to prove one guilty of a crime - no matter what the type of crime. In addition, and excepting Mr. Garcia's co-defendants in Counts 2 through 9, there was no evidence presented which would show that Mr. Garcia shared a similar objective with any other defendant, nor was evidence presented that Mr. Garcia shared a single criminal objective with the Count 1 defendants other than Ramirez and Wright who are also charged in Counts 2 through 6.

The government has failed to establish the *Carnagie/Evans* elements with respect to the Count 1 RICO conspiracy. The statements made by any of the defendants identified by the government in Exhibit 1, cannot be admitted against Mr. Garcia with respect to Count 1.

WHEREFORE, Mr. Garcia submits that the government has failed to meet its burden of proof in this *James* hearing with respect to him, and he prays for an order preventing the government from offering any and all of the hearsay statements contained within Exhibit 1 and testified about in

10

699

the *James* hearing.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of February, 2013, I electronically filed the foregoing by

using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

Doc. 2162909

11

| Stmt Number | Declarant(s) | Offered Against | Counts | Date of Stmt | Synopsis |
|---|---|---|---|---|---|
| 1a | Pedro Garcia Gonzalo Ramirez | Pedro Garcia Gonzalo Ramirez Russell Worthey Anthony Wright | 1-6 | 06/08/2009 | Garcia or Ramirez state "let's go get some scraps". |
| 1b | Gonzalo Ramirez | Pedro Garcia Gonzalo Ramirez Russell Worthey Anthony Wright | 1-6 | 06/08/2009 | Ramirez says to Garcia in car following shooting "you really got that one". |
| 1c | Pedro Garcia | Pedro Garcia Gonzalo Ramirez Russell Worthey Anthony Wright | 1-6 | 06/08/2009 | Garcia tells Wright and Worthey "remember, you have kids". |
| 2a | Pedro Garcia Gonzalo Ramirez | Pedro Garcia Gonzalo Ramirez Jesus Flores Joshua Flores | 1, 7-9 | 06/08/2009 | "Let's go look for a house" (to rob). |
| 2b | Gonzalo Ramirez | Pedro Garcia Gonzalo Ramirez Jesus Flores Joshua Flores | 1, 7-9 | 06/08/2009 | "Let's do this house" "Let's kick this one" |
| 2c | Pedro Garcia | Pedro Garcia Gonzalo Ramirez Jesus Flores Joshua Flores | 1, 7-9 | 06/08/2009 | Says they should drive east out of Dodge City to avoid police. |
| 3 | Alfredo Beltran-Ruiz | Donte Barnes | 15-18 | 03/2011 | Tells Laura Rodriguez to get something under a lawn mower near Humberto Ortiz' residence. |
| 3a | Alfredo Beltran-Ruiz | Donte Barnes | 15-18 | 3/25/2011 | Beltran: What time Snipes have court on the 7th? D: What time's what? Beltran: What time does Homeboy got court on the 7th? D: Fuck if I know. His lady called like "Oh my |

ATTACHMENT A


GOVERNMENT EXHIBIT 1
700

| Stmt Number | Declarant(s) | Offered Against | Counts | Date of Stmt | Synopsis |
|---|---|---|---|---|---|
| | | | | | God, he has court" and I'm like alright. Beltran: For real? Call her and be like "oh my God." |
| | | | | | D: Nah, when he got locked up she, she called me crying and was like, "why isn't Alfredo Locked up, I thought they were together?" Beltran: Yeah, we were, but I know how to run. |
| 4a | Jesus Sanchez | Jesus Sanchez Enrique Gobin Alfonso Banda-Hernandez Andrew Gusman | 1, 19-22 | 03/30/2011 | Tells Banda-Hernandez to "come where they are." |
| 4b | Jesus Sanchez | Jesus Sanchez Enrique Gobin Alfonso Banda-Hernandez Andrew Gusman | 1, 19-22 | 03/30/2011 | Tells Banda-Hernandez and Gusman he shot at victim's car. |
| 4c | Jesus Sanchez | Jesus Sanchez Enrique Gobin Alfonso Banda-Hernandez Andrew Gusman | 1, 19-22 | 03/30/2011 | Tells Banda-Hernandez to get out of area because "it will be getting hot." |
| 5a | Jayson Vargas | Adam Flores | 1, 23-25 | On or about 04/30/2011 | Tells witness to get rid of pair of shoes he had used in home invasion he committed with Adam Flores. |
| 5b | Jayson Vargas | Adam Flores | 1, 23-25 | On or about 04/2011 | Identifies for witness the house he and Adam Flores robbed. |
| 6 | Jason Najera | Jason Najera Jayson Vargas | 1 & 29 | 08/2011 | Threatens witness not to cooperate in prosecution of Jayson Vargas. |

| Stmt Number | Declarant(s) | Offered Against | Counts | Date of Stmt | Synopsis |
|---|---|---|---|---|---|
| 7 | Jesus Torres | Jason Najera Jesus Torres Fabian Neave Jose Neave | 1, 26-27 | 08/27/2011 | Torres says he doesn't like "scraps" living near his mother's residence and wants Nortenos to go with him to confront them. |
|  |  |  |  |  |  |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-01-23-MLB |
| | } | |
| JASON NAJERA | } | |
| a.k.a. Ene, | } | |
| a.k.a. Norte, | } | |
| PEDRO GARCIA, | } | |
| a.k.a. Peter Garcia, | } | |
| a.k.a. Pistol Pete, | } | |
| GONZALO RAMIREZ, | } | |
| a.k.a. Gonzo, | } | |
| RUSSELL WORTHEY, | } | |
| a.k.a. Blanco, | } | |
| ANTHONY WRIGHT, | } | |
| a.k.a. Huesos, | } | |
| JOSHUA FLORES, | } | |
| a.k.a. Big Knox, | } | |
| JESUS FLORES, | } | |
| a.k.a. Tito, | } | |
| ANGEL CERDA, | } | |
| a.k.a. Shrek, | } | |
| JUAN TORRES, | } | |
| a.k.a. Bugsy, | } | |
| ALFREDO BELTRAN-RUIZ, | } | |
| a.k.a. Deuce-Deuce, | } | |
| DONTE BARNES, | } | |
| a.k.a. Snipes, | } | |
| a.k.a. Snipe, | } | |
| a.k.a. Sniper, | } | |
| JESUS SANCHEZ, | } | |
| a.k.a. Drac, | } | |
| a.k.a. Dracula, | } | |
| ENRIQUE GOBIN, | } | |
| a.k.a. Ricky, | } | |
| a.k.a. Sonny Boy, | } | |

1

ALFONSO BANDA-HERNANDEZ,            }
  a.k.a. Fonso,                                  }
ANDREW GUSMAN,                               }
  a.k.a. Beaver,                                }
EUSEBIO SIERRA-MEDRANO,             }
  a.k.a. TC,                                       }
JAYSON VARGAS                                  }
  a.k.a. Wee Wee,                            }
ADAM FLORES,                                     }
  a.k.a. Little Lazy,                         }
FABIAN NEAVE,                                    }
  a.k.a. Puppet,                                }
JESUS TORRES,                                     }
  a.k.a. Rabbit,                                 }
JOSE NEAVE,                                        }
  a.k.a. Caiyo,                                   }
HERNAN QUEZADA,                            }
  a.k.a. Cheese,                                 }
  a.k.a. Cartoon,                               }
HUMBERTO ORTIZ,                             }
  a.k.a. Beto,                                      }
                                                    }
         Defendants.                            }

## UNITED STATES' DISCLOSURE
## OF KNOWN UNINDICTED COCONSPIRATORS

     The United States of America, by Aaron L. Smith and Lanny D. Welch, Assistant United

States Attorneys, hereby discloses the identities of known unindicted coconspirators:

| | |
|---|---|
| Counts 10-13: | Erik Sanchez |
| Count 14: | Joe Galindo |
| | Christian Sanchez |
| | Miguel Maestas |
| Counts 15-18: | Laura Rodriguez |
| Counts 19-22: | Ysenia Rios |
| | Laura Rodriguez |
| Counts 23-25: | Kendra Owens |

2

Counts 26-27:          Jose Luna
                       Christy Sanchez

Count 28:              Jose Ochoa, Jr.

Count 29:              Jason Najera

Count 31:              David Ochoa
                       Armando Maestas
                       Mickashell Knapp

Count 38:              Lorenzo Gobin
                       Russell Worthey


                                Respectfully submitted,

                                BARRY R. GRISSOM
                                UNITED STATES ATTORNEY

                                /s/ Aaron L. Smith
                                AARON L. SMITH  #20447
                                Assistant United States Attorney
                                301 N. Main, 1200 Epic Center
                                Wichita, Ks  67202
                                Phone: 316-269-6481
                                Aaron.Smith2@usdoj.gov


                                /s/ Lanny D. Welch
                                LANNY D. WELCH  #13267
                                Assistant United States Attorney
                                301 N. Main, 1200 Epic Center
                                Wichita, Ks  67202
                                Phone: 316-269-6481
                                Lanny.Welch@usdoj.gov

3

CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of February, 2013, we electronically filed the

foregoing motion with the clerk of the court by using the CM/ECF system, which will send a

notice of electronic filing to all counsel of record.


/s/ Lanny D. Welch
LANNY D. WELCH
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS



13   FEB 22   AM 9:06

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| v. | } | |
| | } | No. 12-10089-01-23-MLB |
| JASON NAJERA | } | |
| a.k.a. Ene, | } | |
| a.k.a. Norte, | } | |
| PEDRO GARCIA, | } | |
| a.k.a. Peter Garcia, | } | |
| a.k.a. Pistol Pete, | } | |
| GONZALO RAMIREZ, | } | |
| a.k.a. Gonzo, | } | |
| RUSSELL WORTHEY, | } | |
| a.k.a. Blanco, | } | |
| ANTHONY WRIGHT, | } | |
| a.k.a. Huesos, | } | |
| JOSHUA FLORES, | } | |
| a.k.a. Big Knox, | } | |
| JESUS FLORES, | } | |
| a.k.a. Tito, | } | |
| ANGEL CERDA, | } | |
| a.k.a. Shrek, | } | |
| JUAN TORRES, | } | |
| a.k.a. Bugsy, | } | |
| ALFREDO BELTRAN-RUIZ, | } | |
| a.k.a. Deuce-Deuce, | } | |
| DONTE BARNES, | } | |
| a.k.a. Snipes, | } | |
| a.k.a. Snipe, | } | |
| a.k.a. Sniper, | } | |
| JESUS SANCHEZ, | } | |
| a.k.a. Drac, | } | |
| a.k.a. Dracula, | } | |
| ENRIQUE GOBIN, | } | |
| a.k.a. Ricky, | } | |

|                              |   |
|------------------------------|---|
| a.k.a. Sonny Boy,            | } |
| ALFONSO BANDA-HERNANDEZ,     | } |
| a.k.a. Fonso,                | } |
| ANDREW GUSMAN,               | } |
| a.k.a. Beaver,               | } |
| EUSEBIO SIERRA-MEDRANO,      | } |
| a.k.a. TC,                   | } |
| JAYSON VARGAS                | } |
| a.k.a. Wee Wee,              | } |
| ADAM FLORES,                 | } |
| a.k.a. Little Lazy,          | } |
| FABIAN NEAVE,                | } |
| a.k.a. Puppet,               | } |
| JESUS TORRES,                | } |
| a.k.a. Rabbit,               | } |
| JOSE NEAVE,                  | } |
| a.k.a. Caiyo,                | } |
| HERNAN QUEZADA,              | } |
| a.k.a. Cheese,               | } |
| a.k.a. Cartoon,              | } |
| HUMBERTO ORTIZ,              | } |
| a.k.a. Beto,                 | } |
| Defendants.                  | } |

### UNITED STATES' SUPPLEMENTAL BRIEF IN
### SUPPORT OF ADMISSION OF COCONSPIRATOR STATEMENTS

COMES NOW the United States of America, by and through Aaron L. Smith and Lanny D. Welch, Assistant United States Attorneys, and hereby provides additional support for the admission of coconspirator statements:

Federal Rule of Evidence 801(d)(2)(E) provides that statements which are "made by a party's coconspirator during and in furtherance of the conspiracy" are not hearsay and can be admitted against the party. The court only has to find by a preponderance of the evidence that: "1) a conspiracy existed; 2) both the declarant and the defendant against whom the declaration is

2

offered were members of the conspiracy; and 3) the statement was made in the course of and in furtherance of the conspiracy."[1]

Statements by a conspirator are in furtherance of the conspiracy when they are intended to promote the conspiratorial objectives.[2]  Statements which explain events of importance to the conspiracy in order to facilitate the operation of the conspiracy are admissible as conconspirator statements.[3]  Further, "statements between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy"[4] are likewise admissible under the rule.  Statements which identify a fellow coconspirator are coconspirator statements.[5]  Finally, testimony of a coconspirator describing his actions and the actions of others is not hearsay.[6]

At the *James* hearings conducted on February 13, 2013, and in the briefs filed in support, the United States has demonstrated why the statements identified in Government Exhibit 1, attached to the government's brief and introduced at the hearings, are admissible pursuant to Federal Rule of Evidence 801(d)(2)(E).  Several of these statements represent the birth of the conspiracy in which they are now offered.  Other statements help define the conspirators or explain events of importance which occurred during the conspiracy.  Still others were made in an

---

[1] *United States v. Eads,* 191 F.3d 1206, 1210 (10th Cir. 1999).

[2] *United States v. Reyes,* 798 F.2d 380, 384 (10th Cir. 1986).

[3] *United States v. Smith,* 833 F.2d 213, 219 (10th Cir. 1987).

[4] *United States v. Gomez,* 810 F.2d 947, 953 (10th Cir. 1987).

[5] *United States v. Handy,* 668 F.2d 407, 408 (8th Cir. 1982).

[6] *United States v. Mobile Materials, Inc.,* 881 F.2d 866, 871 (10th Cir. 1989).

effort to avoid capture or criminal liability, effectively extending the life of the conspiracy.

In the first group of statements, those which represent the conspiracy's inception, are statements 1a, 2a, 2b and 7.[7] Each of these statements exhort fellow conspirators to engage in illegal activity and the statements result in multiple Nortenos responding to the statement and committing criminal acts. These statements were made by a conspirator, during the conspiracy and certainly furthered the conspiracy.

The second group of statements qualify as coconspirator statements because they either identify the members of the conspiracy, explain important events which occurred during the conspiracy or promote the conspiratorial objectives. These statements include 1b, 3a, 4a, 4b and 5b.[8] Each of these statements are admissible under the rule.

The final group of statements all were intended to assist in avoiding capture for crimes committed, criminal liability for crimes committed and/or to dispose of evidence of these crimes.

---

[7] 1a – "Let's get some scraps" led to multiple conspirators looking for rival gang members to attack which resulted in the murder of Israel Peralta and the shooting of Mariano Sorano.

2a – "Let's look for a house" led to multiple conspirators committing a home invasion robbery.

2b – "Let's do this house" or "Let's kick this one" Ramirez selected the victim house which multiple conspirators then invaded and robbed the occupants.

7 – Jesus Torres lamented that "scraps" lived near his mother's residence and called his fellow Nortenos to action to which they responded and two victims were stabbed.

[8] 1b – "You really got that one" informed fellow conspirators a rival had been shot.

3a – Identified Donte Barnes as a member of the conspiracy.

4a – Was an effort by Jesus Sanchez to strengthen their numbers just prior to an attack on a rival gang member.

4b – Jesus Sanchez confirmed he shot at George Gonzalez.

5b – Jayson Vargas identified to a fellow conspirator the house he and another conspirator robbed.

4

These remaining statements are 1c, 2c, 3, 4c, 5a and 6.[9]  These statements are not hearsay and

are properly admitted pursuant to Federal Rule of Evidence 801(d)(2)(E).

<div style="text-align:right">

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov


/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov

</div>

---

[9]  1c – "Remember you have kids" was intended by Garcia as a warning to others not to talk about the shooting with law enforcement or others who might provide information to law enforcement.

2c – Garcia suggested to Worthey that he drive away from area of Dodge City where the home invasion occurred to reduce possibility of arrest for those crimes because he believed police officers would be responding to that crime scene.

3 – Beltran-Ruiz identified location of "it" (a firearm) to Laura Rodriguez so that she or another would retrieve the weapon.

4c – Jesus Sanchez advised coconspirators to get out of the area because he believed it would be "getting hot" meaning police officers would be arriving soon.

5a – Jayson Vargas told Kendra Owens to dispose of shoes he wore during the robbery because he feared the police could link the shoes to the robbery.

6 – Jason Najera threatened Kendra Owens not to cooperate in the prosecution of Jayson Vargas so that Vargas would not be convicted.

<div style="text-align:center">5</div>

CERTIFICATE OF FILING

I hereby certify that on February 22, 2013, I filed the foregoing Supplemental Brief in Support with the United States Clerk's Office and provided copies to the Court and to counsel for the defendants.

/s/ Lanny D. Welch
Lanny D. Welch
Assistant U.S. Attorney

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-10089-03 MLB |
| | ) | |
| GONZALO RAMIREZ, et al., | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MOTION TO SUPPRESS AND EXCLUDE EVIDENCE FROM DEFENDANT'S GANG SHEETS, INCLUDING HIS STATEMENTS AND TATTOOS**

COMES NOW the Defendant, Gonzalo Ramirez, by and through his attorneys, Joel Mandelman and Timothy J. Henry, Assistant Federal Public Defenders for the District of Kansas, and moves this Court to suppress or exclude the statements found in his gang sheets compiled by law-enforcement officials.  In support of this motion, the Defendant relies on his rights under the Fourth, Fifth, and Sixth Amendments of the U.S. Constitution, and Federal Rules of Evidence 401, 403, and 404(b).  The Defendant also relies on the additional grounds discussed below and reserves the right to supplement this pleading with further support.  He also reserves the right to challenge the admissibility at trial of the events described in the gang sheets, if the Government files notice under Fed. R. Evid. 404(b).

**I. BACKGROUND**

The Defendant is one of twenty-three gentlemen charged in a thirty-eight-count racketeering indictment.  He faces charges on the first thirteen counts, which accuse him of participating in a gang-related racketeering conspiracy and three other substantive

conspiracies, also allegedly gang related.  The racketeering conspiracy allegedly took place between 2008 and April 16, 2012.

As part of the discovery in this case, the Government has disclosed gang sheets compiled by the Dodge City Police Department.  The sheets provide information about various defendants.  The Government has supplemented these gang sheets with hundreds of pages of additional discovery.  Mr. Ramirez is the subject of about a dozen gang sheets and lots of accompanying law-enforcement information, including police reports.  The gang sheets for Mr. Ramirez cover a period between September 29, 2000, and July 6, 2009.  The one-page sheets, which the Defendant intends to introduce at a evidentiary hearing on this motion, contain gang "verification criteria" and several blank lines for a short narrative description of the alleged encounter.  In many cases, this narrative description contains statements attributed to the Defendant.  Those statements, as well as additional information on the gang sheets, are the subject of this motion.  The specific statements are discussed in more detail below.

## II. DISCUSSION

The Fourth, Fifth, and Sixth Amendments of the U.S. Constitution all provide individuals with various protections during police questioning.  Generally, the police are prohibited from using statements against a defendant if those statements are the fruit of unlawful police action, if the defendant is in custody and not advised of his *Miranda* rights, if the defendant does not make the statements voluntary, or if a defendant is facing formal charges and is questioned about those charges.  Further, the Federal Rules of Evidence place

limits on the use of an accused's statements.  Generally, a statement is inadmissible at trial if it is irrelevant under Fed. R. Evid. 401, if its probative value is substantially outweighed by the risk of unfair prejudice under Fed. R. Evid. 403, or if it is inadmissible character evidence under Fed. R. Evid. 404(b).  In the interest of clarity, the Defendant will highlight the most objectionable material on each of the gang sheets and, briefly, identify the grounds for suppression or exclusion.

The Sept. 29, 2000, sheet states: "Subject was in possession of wooden club which he stated was for self defense because he was in a rival gang area."  The sheet also claims the defendant "admits gang affiliation" and "uses gang-related moniker."  The above statement is problematic for a number of reasons.  Based on an accompanying police report, it does not appear the Defendant was advised of his rights under *Miranda*.  The statement also occurred nearly eight years before the indictment in this case, making it irrelevant and substantially more prejudicial than probative.  It is also inadmissible character evidence.

The June 22, 2003, gang sheet includes:  "Admits he is member of DV.  Subject was at party with other gang members and was in possession of a police scanner."  An accompanying incident report does not clarify the circumstances of this encounter or the subsequent police questioning.  As such, the Defendant moves to suppress or exclude the statement under *Miranda*, Fed. R. Evid. 401, 403, 404(b).

The February 8, 2005, sheet states: "Subject was in possession of wooden club which he stated was for self defense because he was in a rival gang area."  This statement is identical to the Sept. 29, 2000, statement described above and appears to be recycled from

3

the earlier incident.  Therefore, the Defendant moves to suppress or exclude the statement for the reasons stated above.

An April 14, 2007, sheet states:

> Ramirez when asked told me he "kicks with DV, but is trying to stay aw[a]y from them."  Ramirez has the gang moniker of "Gonzo".  Ramirez has a tattoo of a julega bird on his right arm with Norteno written above it.  Ramirez was at known DV gang members Angie Gonzales house and is now dating her.

The above statements and evidence are inadmissible under *Miranda*, at a minimum.  This information also was obtained prior to the beginning of the alleged conspiracy, making it irrelevant, substantially more prejudicial than probative, and inadmissible character evidence. A supplemental page to the gang sheet states, "has new tattoo on left hand but would not show it to me."  While courts have found that tattoos may subject a defendant to self-incrimination, courts have admitted them on the theory that the tattoos were not the product of police compulsion.  *Cf. United States v. Greer*, 631 F.3d 608 (2nd Cir. 2011).  The above fact pattern, however, appears to raise a slightly more complicated scenario, as the Defendant essentially exercised his right to remain silent.  On these facts, the Government's introduction of the Defendant's tattoos would violate the Defendant's Fifth Amendment right against self-incrimination and his right to suppress involuntary statements.  Similarly, from the disclosed records, it is not clear whether the Defendant ever voluntarily displayed any of his tattoos to law-enforcement officials.

Gang sheets made on at least three other occasions contain statements attributed to the Defendant:  April 9, 2009 ("Gonzo still says he is DV and will be"), May 18, 2009 ("Ramirez stated he is DV and always will be"), and June 19, 2009 ("Ramirez said he is a DV gang

member"). A fourth sheet, dated July 6, 2009, states: "Ramirez was not cooperative and did not want his photo taken. He is entered [in] NCIC as Violent Criminal Street Gang Member." None of this evidence should be admissible at trial for the reasons stated above: *Miranda*, relevancy, undue prejudice, and inadmissible character evidence.

WHEREFORE, the Defendant moves this Court for an order suppressing and excluding the information contained in the gang sheets related to the Defendant, including his tattoos and alleged statements.

Respectfully submitted,

s/Joel Mandelman
JOEL MANDELMAN
KS Sup. Ct. No. 25726
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Joel_Mandelman@fd.org

s/Timothy J. Henry
TIMOTHY J. HENRY
KS Sup. Ct. No. 12934
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Tim_Henry@fd.org

5

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2013, I electronically filed the foregoing Motion to Suppress and Exclude Evidence from Defendant's Gang Sheets, Including His Statements and Tattoos with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Aaron Smith
Assistant U.S. Attorney
301 N. Main, Suite 1200
Wichita, KS  67202

David H. Moses
Case, Moses, Zimmerman & Martin, PA
200 West Douglas, Suite 900
Wichita, KS 67202

John V. Wachtel
Klenda, Austerman, L.L.C.
301 N. Main, Suite 1600
Wichita, KS 67202

James R. Pratt
Attorney at Law
445 N. Waco
Wichita, KS 67202

Jay F. Fowler
Foulston Siefkin, L.L.P.
1551 N. Waterfront Pkwy, Ste. 100
Wichita, KS 67206

Carl F.A. Maughan
Maughan & Maughan
200 West Dougals, Suite 350
Wichita, KS 67202

Roger L. Falk
Law office of Roger L. Falk, P.A.
301 West Central
Wichita, KS 67202

Paul S. McCausland
Young, Bogle, McCausland, Wells &
    Blanchard
100 North Main, Suite 1001
Wichita, KS 67202

Michael J. Shultz
Shultz Law Office, P.A.
445 North Waco
Wichita, KS 67202

John B. Sullivan
The Law Office of John B. Sullivan
1041 N. Waco
Wichita, KS 672030

6

Jeff L. Griffith
Griffith & Griffith
111 South Baltimore
Derby, KS 67037

Mark T. Schoenhofer
Law Office of Mark Schoenhofer
1631 E. 1st
Wichita, KS 67214

Benjamin Anthony Reed
Joseph & Hollander, L.L.C.
500 N. Market Street
Wichita, KS 67214

Michael D. Hepperly
Michael D. Hepperly Law Office, Chtd.
310 West Central, Suite 119
Wichita, KS 67202

Eric A. Hartenstein
Attorney at Law
200 West Douglas, Suite 600
Wichita, KS 67202

Mark L. Bennett, Jr.
Bennett & Hendrix, L.L.P.
5605 S.W. Barrington Ct. S., Suite 201
Topeka, KS 66614

Mark A. Sevart
Attorney at Law
P.O. Box 781602
Wichita, KS 67278

Sean C. McEnulty
McEnulty Law Firm
151 Whittier St., Suite 1000
Wichita, KS 67207

Gregory D. Bell
Forker Suter, L.L.C.
129 West 2nd Ave., Suite 200
Hutchinson, KS 67504

Charles A. O'Hara
O'Hara & O'Hara
1223 E. First
Wichita, KS 67214

Kevin W. Loeffler
Law Office of Kevin Loeffler
111 E. 7th
Newton, KS 67114

Derek S. Casey
Triplett, Woolf, Garretson, L.L.C.
2959 North Rock Road, Suite 300
Wichita, KS 67226

Molly E. McMurray
Depew, Gillen, Rathbun, & McInteer
8301 East 21st Street North, Suite 450
Wichita, KS 67206

One copy mailed to:

    Gonzalo Ramirez
    c/o Sedgwick County Detention Facility
    141 West Elm
    Wichita, KS 67203


                s/Joel Mandelman
                JOEL MANDELMAN
                KS Sup. Ct. No. 25726
                Assistant Federal Public Defender
                Federal Public Defender Office
                301 N. Main, Suite 850
                Wichita, KS 67202
                Telephone: (316) 269-6445
                Fax: (316) 269-6175
                E-mail: Joel_Mandelman@fd.org


                And


                s/Timothy J. Henry
                TIMOTHY J. HENRY
                KS Sup. Ct. No. 12934
                Assistant Federal Public Defender
                Federal Public Defender Office
                 301 N. Main, Suite 850
                Wichita, KS 67202
                Telephone: (316) 269-6445
                Fax: (316) 269-6175
                E-mail: Tim_Henry@fd.org

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-10089-03 MLB |
| | ) | |
| GONZALO RAMIREZ, | ) | |
| Defendant. | ) | |
| | ) | |

**MOTION TO DISMISS AND BRIEF**

COMES NOW the defendant, Gonzalo Ramirez, by and through his counsel, Joel

Mandelman and Timothy J. Henry, Assistant Federal Defenders for the District of Kansas,

and moves this Court to dismiss the indictment or, alternatively, charges contained therein,

as being in violation of defendant's rights protected by the Double Jeopardy Clause of the

Fifth Amendment to the United States Constitution.  On behalf of this Motion, defense

counsel state as follows:

BACKGROUND

Defendant Gonzalo Ramirez is charged in the first 13 counts of a 38 count indictment

alleging various violations of the RICO and VICAR statutes (18 U.S.C. § 1962(d) (count 1),

and § 1959 (counts 2-5, 7-8, 10-12) respectively), as well as three counts alleging violations

of 18 U.S.C. § 924(c) (counts 6 and 13 (discharge alleged), and count 9 (brandishing

alleged)).  Count one alleging a violation of the federal RICO statute requires as an element

that "at least two acts of racketeering activity [occur] in the conduct of the affairs of the

enterprise."  *See* Indictment.  The VICAR counts (counts 2-5, 7-8, and 10-12) simply state

their underlying purpose as "gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity." *See* Indictment, counts 2 (¶ 11), 3 (¶ 13), 4 (¶ 15), 5 (¶ 17), 7 (¶ 20), 8 (¶ 22), 10 (¶ 25), 11 (¶ 27), and 12 (¶ 29).

Although much discovery have been provided, including a large amount just prior to the *James* hearing recently held in this case, neither the Government nor the Indictment has set forth with any clarity the purported minimum two predicate acts underlying the overarching RICO violation charged in count 1. It is uncertain whether the later VICAR counts are the very predicate acts that are to be used to prove up the purported RICO count charged in count 1. Considering issues relating to a defendant's Double Jeopardy rights are waived if not filed prior to trial, defense counsel files the following motion seeking dismissal of some, if not all of the charges against defendant Gonzalo Ramirez in the present indictment.

## AUTHORITIES

The Double Jeopardy Clause states that no person shall "be subject for the same offence to be twice put in jeopardy of life and limb." In the context of a single criminal prosecution, the clause "protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed.2d 656 (1969). This guarantee simply prevents "the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed.2d 535 (1983); []. It does not, however, prohibit the legislature from punishing the same act or course of conduct under different statutes. *Albernaz v. United States*, 450 U.S. 333, 344, 101 S. Ct. 1137, 67 L. Ed.2d 275 (1981).

Thus, when a defendant violates more than one statute in a single course of conduct, a court may impose multiple punishments without violating the Double Jeopardy Clause if the legislature authorizes it to do so. []

2

*United States v. Ayala*, 601 F.3d 256, 264-265 (4th Cir. 2010).  The Tenth Circuit, as with

other circuits, follow the *Blockburger* test to determine whether two distinct statutes violate

double jeopardy.  *See United States v. Cardall*, 885 F.2d 656, 665 (10th Cir. 1989), citing

*United States v. Blockburger*, 384 U.S. 299, 304 (1932).

> Where the same act or transaction constitutes a violation of two distinct
> statutory provisions, "the test to be applied to determine whether [prosecution
> for both violates double jeopardy] is whether each provision requires proof of
> a fact which the other does not."

*Id*.

Thus, where the same act constitutes a violation of two distinct statutory provisions,

the test for whether there are two offenses or one depends on whether each requires proof of

a fact that the other does not.  When applying this test, courts are to look to the elements of

the offense contained in the statute, not the underlying facts of each count.  Thus, if the RICO

violation charged in count one is the overall "Norteno" conspiracy that has, as an element,

the requirement of two predicate criminal acts, and those acts are the later VICAR allegations

of murder, attempted murder or robbery, then those later offenses, whether charged as a

conspiracy or the underlying offense, become elements of the overarching RICO violation

in count one if the Government's theory is that the two underlying predicates come from

these later counts.

If not, then counsel would call upon the Court to require the Government identify

what are their alleged two predicate offenses underlying that element of count one.  Is the

Government relying on one overarching conspiracy count, or are they charging multiple

3

conspiracies that are separate and distinct from the two underlying predicates needed to prove count one?  Certainly defense counsel, as well as the Court, need to know what theory the Government is proceeding upon prior to the jury trial in this case.  Although RICO and VICAR counts can survive a particular indictment, it is uncertain whether this indictment can survive a double jeopardy challenge.

> We have long recognized "the ease with which prosecutors can draft indictments that allege what appear to be separate conspiracies but may actually be parts of an overall conspiracy." *United States v. Abbamonte*, 759 F.2d 1065, 1068 (2d Cir. 1985).  To guard against this danger, we have held that, if a defendant makes a non-frivolous showing that two indictments in fact charge only one conspiracy, the burden shifts to the prosecution to show, by a preponderance of the evidence, that there are in fact two distinct conspiracies and that the defendant is not being placed in jeopardy twice for the same crime. []

*United States v. Lopez*, 356 F.3d 463, 467 (2d. Cir. 2004) (citations omitted).  The Second Circuit which, due to its experience with organized crime, has a dearth of cases dealing with the issues of conspiracy and double jeopardy.  They have "'identified a number of factors as relevant to the task of individuating conspiracies,' the factors being,

> (1) [T]he criminal offenses charged in successive indictments; (2) the overlap of participants; (3) the overlap in time; (4) similarity of operation; (5) the existence of common overt acts; (6) the geographic scope of the alleged conspiracies or location where overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies.

*Lopez*, 356 F.3d at 467-468.

Without question, a number of the above factors apply to the secondary VICAR conspiracies that are charged after the overarching RICO conspiracy charged in this

indictment. In fact, counts 2-6, which deals with the murder of Israel Peralta, and counts 7-9, which deal with the home invasion, are two acts that are separated by approximately one hour in time purportedly by actors that "overlap." It is hard to see how the Government can split out individually into multiple conspiracies the counts contained in the indictment in this case. Frankly, this Court should find that there is one conspiracy, and that the substantive acts purportedly underlying this conspiracy are the other acts which the Government says are separate conspiracies within or without the conspiracy charged in count one. In either scenario, the Court should force the Government to set forth their theory of their prosecution more fully to answer these questions.

Further, the charges contained within the conspiracies within the conspiracy are multiplicious and violative of the Double Jeopardy Clause. For example, counts 2 and 3 charge a conspiracy to commit murder and the underlying murder. Counts 4 and 5 charge the attempted murder and assault with a dangerous weapon against the victims in that first cluster of counts. Counts 7 and 8 charge an assault with a dangerous weapon and conspiracy to commit an assault with a dangerous weapon on the same victim in the same act in the home invasion alleged to have occurred an hour or so before the murder previously mentioned. Likewise, the multiplicity of charges occur in counts 10-12 which allege a conspiracy to commit murder on two victims of the drive-by shooting (count 10), or alternatively attempted murder or assault with a dangerous weapon (counts 11 and 12, respectively).

5

Moreover, if the underlying acts charged in their multiple of ways (*see* counts 2-13) are not the predicate acts of the RICO conspiracy of count one, then the question arises whether the Government will be alleging defendant's drug conviction, under which he is presently serving a sentence, as an underlying predicate act. To do so would raise a successive prosecution double jeopardy issue.

Additionally, it raises other issues regarding whether the Government is allowed to admit coconspirator statements as it is believed that a codefendant, and purported Norteno gang member, is the very drug dealer that sold drugs to the defendant while working as a confidential informant with the Dodge City Police Department that set up the controlled buys that landed defendant Ramirez in jail. First, someone who is working as a confidential informant for law enforcement has withdrawn from any conspiracy, and cannot be deemed a coconspirator with the defendant to permit the admission of any coconspirator hearsay. Second, a buyer/seller relationship, without more, cannot establish a conspiracy. *See United States v. McIntyre*, 836 F.2d 467, 471 (10th Cir. 1987) (citing *United States v. Watson*, 594 F.2d 1330, 1337 (10th Cir.), *cert. denied*, 444 U.S. 840 (1979) ("'[P]roof of the existence of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy.'").

Granted, now that the *James* hearing has been completed, there appear to be no statements from defendant's drug conviction that they intend to enter before the jury. However, the relationship between the defendant and his supplier in that case, if also a

member of the "Norteno" RICO conspiracy of count one, certainly raises issues that argue against the Government's theory that it qualifies as a predicate for any conspiracy supposedly involving the defendant.

WHEREFORE, for the above and foregoing reasons, defendant prays this Court sustain this motion and dismiss the indictment or, alternatively charges contained therein, as being in violation of defendant's rights guaranteed by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

Respectfully submitted,

s/Timothy J. Henry
TIMOTHY J. HENRY
KS Sup. Ct. No. 12934
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Tim_Henry@fd.org

s/Joel Mandelman
JOEL MANDELMAN
KS Sup. Ct. No. 25726
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Joel_Mandelman@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2013, I electronically filed the foregoing Motion

to Dismiss and Brief with the Clerk of the Court by using the CM/ECF system which will

send a notice of electronic filing to the following:

| | |
|---|---|
| Aaron Smith | David H. Moses |
| Assistant U.S. Attorney | Case, Moses, Zimmerman & Martin, PA |
| 301 N. Main, Suite 1200 | 200 West Douglas, Suite 900 |
| Wichita, KS  67202 | Wichita, KS 67202 |
| | |
| John V. Wachtel | James R. Pratt |
| Klenda, Austerman, L.L.C. | Attorney at Law |
| 301 N. Main, Suite 1600 | 445 N. Waco |
| Wichita, KS 67202 | Wichita, KS 67202 |
| | |
| Jay F. Fowler | Carl F.A. Maughan |
| Foulston Siefkin, L.L.P. | Maughan & Maughan |
| 1551 N. Waterfront Pkwy, Ste. 100 | 200 West Douglas, Suite 350 |
| Wichita, KS 67206 | Wichita, KS 67202 |
| | |
| Roger L. Falk | Paul S. McCausland |
| Law office of Roger L. Falk, P.A. | Young, Bogle, McCausland, Wells & |
| 301 West Central |    Blanchard |
| Wichita, KS 67202 | 100 North Main, Suite 1001 |
| | Wichita, KS 67202 |
| | |
| Michael J. Shultz | John B. Sullivan |
| Shultz Law Office, P.A. | The Law Office of John B. Sullivan |
| 445 North Waco | 1041 N. Waco |
| Wichita, KS 67202 | Wichita, KS 672030 |
| | |
| Jeff L. Griffith | Mark T. Schoenhofer |
| Griffith & Griffith | Law Office of Mark Schoenhofer |
| 111 South Baltimore | 1631 E. 1st |
| Derby, KS 67037 | Wichita, KS 67214 |

Benjamin Anthony Reed
Joseph & Hollander, L.L.C.
500 N. Market Street
Wichita, KS 67214

Michael D. Hepperly
Michael D. Hepperly Law Office, Chtd.
310 West Central, Suite 119
Wichita, KS 67202

Eric A. Hartenstein
Attorney at Law
200 West Douglas, Suite 600
Wichita, KS 67202

Mark L. Bennett, Jr.
Bennett & Hendrix, L.L.P.
5605 S.W. Barrington Ct. S., Suite 201
Topeka, KS 66614

Mark A. Sevart
Attorney at Law
P.O. Box 781602
Wichita, KS 67278

Sean C. McEnulty
McEnulty Law Firm
151 Whittier St., Suite 1000
Wichita, KS 67207

Gregory D. Bell
Forker Suter, L.L.C.
129 West 2nd Ave., Suite 200
Hutchinson, KS 67504

Charles A. O'Hara
O'Hara & O'Hara
1223 E. First
Wichita, KS 67214

Kevin W. Loeffler
Law Office of Kevin Loeffler
111 E. 7th
Newton, KS 67114

Derek S. Casey
Triplett, Woolf, Garretson, L.L.C.
2959 North Rock Road, Suite 300
Wichita, KS 67226

Molly E. McMurray
Depew, Gillen, Rathbun, & McInteer
8301 East 21st Street North, Suite 450
Wichita, KS 67206

9

One copy mailed to:

> Gonzalo Ramirez
> c/o Sedgwick County Detention Facility
> 141 West Elm St.
> Wichita, KS 67203

<div style="margin-left:40%">

s/Timothy J. Henry

TIMOTHY J. HENRY
KS Sup. Ct. No. 12934
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Tim_Henry@fd.org

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 12-CR-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION FOR JOINDER IN CO-DEFENDANT
GONZALO RAMIREZ'S MOTION TO DISMISS AND BRIEF**

**- DEFENDANT GARCIA'S TWENTY-FIRST MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby moves to join in defendant Gonzalo Ramirez's Motion to Dismiss and Brief (Doc. 544) in so far as the same pertains to him.  Mr. Garcia seeks dismissal of the indictment, or the charges therein, as being in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.  This is the same relief sought by Mr. Ramirez in his motion.  The only appreciable difference between Mr. Garcia and Mr. Ramirez is that Mr. Ramirez is charged in thirteen counts of the Indictment, while Mr. Garcia is charged in only nine counts.  In support of the motion Mr. Garcia states:

<u>Background</u>

Mr. Garcia and the remaining defendants are charged in an Indictment which contains thirty-eight alleged separate violations of federal criminal law.  (Doc. 1.)  Count 1charges the defendant, along with Jason Najera, Gonzalo Ramirez, Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together with persons known and unknown, being

persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c) ... [a]ll in violation of 18 U.S.C. § 1962(d)." *Id*. Count 1 is a RICO count. An element of that crime requires "at least two acts of racketeering activity [occur] in the conduct of the affairs of the enterprise. As with Mr. Ramirez, Counts 2-5, 7-8 charge VICAR counts under 18 U.S.C. 1959. Count 6 charges Mr. Garcia, Mr. Ramirez and others with having violated 18 U.S.C. § 924(c)(1)(A) (criminal discharge), while Count 9 charges violation of 18 U.S.C. § 924(c)(1)(A) (brandishing). With respect to counts 2-5 and 7-9, the VICAR counts, these counts simply state that the underlying purpose of these crimes was "gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity. See Indictment, Counts 2-5 and 7-8.

The government has provided considerable discovery in this case; however, neither the government nor the Indictment has set forth, with clarity, the purported minimum two predicate acts which provide a base for Count 1. It is unclear to Mr. Garcia, just as it is to Mr. Ramirez, whether the VICAR counts are the predicate acts which the government must prove in proving its RICO count. A defendant's double jeopardy rights are waived if not asserted prior to trial, and accordingly Mr. Garcia files this joinder motion to assert those rights and to seek dismissal of some of the charges levied against him.

<div align="center">Argument and Authorities</div>

The double jeopardy clause has been often discussed. An illuminating discussion can be found in the Fourth Circuit's *Ayala* opinion.

> The Double Jeopardy Clause states that no person shall 'be subject for the same offence to be twice put in jeopardy of life and limb.' In the contest of a single criminal prosecution, the clause 'protects against multiple punishments for the same

<div align="center">2</div>

> offense.' *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  This guarantee simply prevents 'the sentencing court from prescribing greater punishment than the legislature intended.' *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). [ ] It does not, however prohibit the legislature from punishing the same act or course of conduct under different statutes.  *Albernaz v. United States*, 450 U.S. 333, 334 (1981).
>
> Thus, when a defendant violates more than one statute in a single course of conduct, a court may impose multiple punishments without violating the Double Jeopardy Clause, if the legislature authorizes it to do so.

*United States v. Ayala*, 601 F.3d 256, 264-265 (4rh Cir. 2012) (L.Ed. and S.Ct. citations omitted.

The Tenth Circuit follows the *Blockburger* test to determine whether two distinct statutes violate the

double jeopardy clause.  *United States v. Cardall*, 885 F.2d 656, 665 (10th Cir. 1989) citing *United*

*States v. Blockburger*, 384 U.S. 299, 304 (1932).  According to *Cardall* and *Blockburger*, in those

instances where the same act or transaction violates two or more distinct statutory provisions, "the

test to be applied to determine whether [prosecution for both violates double jeopardy] is whether

each provision requires proof of a fact which the other does not.  *Id*.

When applying this test, the courts must look to the elements of the offense contained in the

statute rather than the underlying facts of each count.  As Mr. Ramirez put it in his Motion:

> Thus, if the RICO violation charged in count one is the overall 'Norteno' conspiracy that has as an element, the requirement of two predicate criminal acts, and those acts are the latter VICAR allegations of murder, attempted murder or robbery, then those later offenses, whether charged as a conspiracy or the underlying offense, become elements of the overarching RICO violation in count one if the government's theory is that the two underlying predicates come from these later counts.

Ramirez Motion (Doc.544), p. 3.  However, if it is not the case that the government is relying on the

VICAR counts, then the government ought to be compelled to identify what the predicate acts are.

As Mr. Ramirez asked, "Is the Government relying on one overarching conspiracy count, or [is it]

charging multiple conspiracies that are separate and distinct from the two underlying predicates

needed to prove count one?"  *Id*. at 3-4.

<center>3</center>

The Second Circuit has long recognized that it is easy for the government to draft indictments that allege to appear to be separate conspiracies, but may be parts of an overall conspiracy. United *States v. Lopez*, 356 F.3d 467 (2d. Cir. 2004). In Lopez the Circuit went on to hold that as a guard against this danger, should a defendant "make a non-frivolous showing that two indictments in fact charge only one conspiracy, the burden shifts to the prosecution to show by a preponderance of the evidence, that there are in fact two distinct conspiracies and the defendant is not being placed in jeopardy twice for the same crime." *Id*. That Circuit has identified a number of factors which are relevant and must be considered regarding conspiracy allegations. They are:

> (1)[T]he criminal offenses charged in successive indictments; (2) the overlap of participants; (3) the overlap in time; (4) similarity of operation; (5) the existence of common overt acts; (6) the geographic scope of the alleged conspiracies or [the] location where overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies.

*Id*. 467-468.

With respect to Mr. Garcia, counts 2-6 deal with the alleged murder of one Isreal Peralta, while counts 7-9 are related to a home invasion. These two acts are separated by approximately one hour in time and allegedly by actors which overlap. It is indeed difficult to imagine how the government splits into multiple conspiracies, the acts alleged by the government. The court might well find but one conspiracy - the RICO conspiracy - and that the predicate acts supposedly underlying that conspiracy are acts other than those charged in counts 2-6 and 7-9.

The court should note that the conspiracies within the overarching conspiracy are multiplicious and violate the double jeopardy clause. As Mr. Ramirez points out in his motion;

> [C]ounts 2 and 3 charge a conspiracy to commit murder and the underlying murder. Counts 4 and 5 charge the attempted murder and assault with a dangerous weapon against the victims in that first cluster of counts. Counts 7 and 8 charge an assault with a dangerous weapon and conspiracy to commit an assault with a dangerous weapon on the same victim in the same act in the home invasion alleged to have

4

occurred an hour or so before the murder previously mentioned.

Ramirez Motion (Doc. 544) p. 5.

Mr. Garcia, like Mr. Ramirez asserts if the underlying acts charged in a multiple of ways (see Counts 2-9) are not the RICO conspiracy predicate acts, then the question arises of whether the government will be alleging Mr. Garcia's present crime of conviction - felon in possession of a firearm - for which he is serving time in federal prison. To do this would raise yet another double jeopardy question.

WHEREFORE, Mr. Garcia prays for an order of this Court sustaining his motion and dismissing the Indictment, or in the alternative that the individual charges therein should be dismissed as being violation of Mr. Garcia's double jeopardy rights

<div style="text-align:right">

Respectfully submitted:

s/John Val Wachtel

John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail: jvwachtel@klendalaw.com

</div>

### CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2013, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

Klenda Doc. 2171225

<div style="text-align:right">

s/John Val Wachtel

John Val Wachtel

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

UNITED STATES OF AMERICA,        )
                                 )
                Plaintiff,       )
                                 )
        vs.                      )    No. 12-CR-100089-02-MLB
                                 )
PEDRO GARCIA,                    )
                                 )
                Defendant.       )
_____)

**DEFENDANT PEDRO GARCIA'S MOTION FOR JOINDER IN CO-DEFENDANT GONZALO RAMIREZ'S MOTION TO SUPPRESS AND EXCLUDE EVIDENCE FROM DEFENDANT'S GANG SHEETS, INCLUDING HIS STATEMENTS AND TATTOOS**

**- DEFENDANT GARCIA'S TWENTY-SECOND MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby moves this Court for an order allowing him to join in defendant Gonzalo Ramirez's motion to suppress and exclude evidence from defendant's gang sheets, including his statements and tattoos (Doc. 542) in so far as the same may be applied to him. In his motion, Mr. Garcia too relies upon the Fourth,, Fifth and Sixth Amendments to the United States Constitution and Federal Rules of Evidence 402, 403 and 404. In support of this motion, Mr. Garcia states:

Background

Mr. Garcia, like Mr. Ramirez, is one of twenty-three men charged in a multiple count RICO indictment. Mr. Garcia and Mr. Ramirez are charged in the first nine counts. Ramirez, like Mr. Ramirez, is charged in nine counts, which also accuse him of participating in a street gang racketeering conspiracy and other substantive conspiracies, which are also allegedly gang related.

The Indictment alleges that the RICO conspiracy took place between sometime in 2008 through April 16, 2012.

As Mr. Ramirez points out in his motion, as part of the discovery in this case the government disclosed scores of gang sheets compiled by the Dodge City Police Department. Mr. Garcia is the subject of but a few of the gang sheets and accompanying reports. While these gang sheets consist of two pages, the information which Mr. Garcia seeks to suppress is contained only on the first sheet. It is these first sheets which Mr. Garcia addresses here and which he will present to the Court at any hearing on this motion.

<div align="center">Argument and Authorities</div>

The Fourth, Fifth and Sixth Amendments to the Constitution provide persons with certain protections during police questioning. As a general rule, law enforcement authorities are prohibited from using statements against a defendant if those statements were a result of wrongful police conduct, while the defendant is in custody, if the defendant is not advised of his rights under *Miranda*, if the statements are not voluntary, or if the defendant is facing formal charges and is questioned about these charges.

The Federal Rules of Evidence too provide defendants some protection by making certain types of evidence inadmissible; however those Rules pale by comparison with the Amendments mentioned above.

Below, Mr. Garcia addresses his gang sheets and the materials contained within them. At hearing on this motion, the defense will supply the Court with an exhibit which will contain the gang sheets complained of.

August 14, 2002: This gang sheet predates the present conspiracy by some six years, making it irrelevant and substantially more prejudicial than it is probative.

<div align="center">2</div>

August 9, 2003:  The gang sheet indicates that Mr. Garcia admits gang affiliation and has gang tattoos.  It also says that he associates with known  gang members, that he uses gang signs and that he wears colors.  The sheet indicates that Mr. Garcia has been identified as a gang member by a member of another gang, and "by a public source."  It must first be noted that this gang sheet predates the present alleged street gang RICO case by five years, making it irrelevant and substantially more prejudicial than it is probative.  The gang sheet does not identify the member of the other gang who identified Mr. Garcia as a gang member, nor does it identify the public source. To admit this into evidence will violate Mr. Garcia's confrontation rights as discussed more fully in *Crawford*.

March 30, 2009:  This gang sheet indicates that Mr. Garcia is a self- admitted gang member. The Comment section provides as follows:

> Pedro was a passenger in a car that Officer Roach stopped at my request.  Paula Torrez was the driver of the vehicle and was arrested for DWS.  Pedro had four dots on his left wrist and had his red flag in his rear pocket.  He admitted he was down with DV and old habits die hard.  He was cooperative with me.

The gang sheet was prepared by one "Sharp, SCST Officer."  Mr. Garcia objects that the gang sheet is pure hearsay, and without the presence of the officer who did the car stop, the hearsay statements attributed to Mr. Garcia are in violation of *Crawford* and its progeny, and cannot be admitted.

June 19, 2009:  This gang sheet indicates that Mr. Garcia is a self-admitted gang member, who has gang related tattoos and who associates with other gang members.  In the Comment section the following can be found:  "Pedro was a passenger in a car that was driven by Gonzalo Ramirez who is a known DV gang member.  Joe Galindo is also a known DV gang member and was also a passenger in the car.  Pedro had four dots on his left wrist Pedro said he is down with DV."  With regard to tattoos, it should be noted that while some courts recognize that tattoos may subject a

defendant to self-incrimination, evidence of tattoos has been admitted because the evidence of the same is not a part of police compulsion, *United States v. Greer*, 632 F.3d 608 (2d Cir. 2011). However if the government cannot display that Mr. Garcia displayed his tattoos voluntarily, then to admit this evidence violates Mr. Garcia's right against self-incrimination.  The same is true with respect to the statement in the gang sheet to the effect that Mr. Garcia is a self-admitted gang member.  If this was a custodial interrogation, there is no evidence that Mr. Garcia was read his Miranda rights, and statements about self-identification must be excluded.

July 6, 2009:   This gang sheet indicates that Mr. Garcia has gang related tattoos and associates with known gang members.  Without being specific, the sheet indicates that as "Other Criteria" that there have been "[j]udicial findings of gang membership."  The sheet contains the following narrative:

> Pedro was with Gonzalo Ramirez who was walking with him in the alley at 400 East Elm St.  Pedro was flamed out in red and was uncooperative with officers.  Pedro has four dots on his left wrist and one dot on his right wrist. I know that Pedro Garcia is a member of DV by speaking with Gang Detail Officers in the Dodge City Police Department.  Pedro is also entered NCIC as a violent Criminal Street Gang Member.

The sheet indicates that Mr. Garcia was uncooperative with officers.  It is otherwise silent about Mr. Garcia's behavior.  Perhaps that is so because Mr. Garcia refused to speak with officers.

The officer's statement about Mr. Garcia being uncooperative is inadmissible under the Federal Rules of Evidence because it is more prejudicial than it is probative.  Regarding Mr. Garcia's tattoos, that statement should be suppressed.  While some courts recognize that tattoos may subject a defendant to self-incrimination, evidence of tattoos has been admitted because the evidence of the same is not a part of police compulsion, *United States v. Greer*, 632 F.3d 608 (2d Cir. 2011).  The situation described above is more complicated.  If indeed Mr. Garcia exercised his right to remain silent, the government's introduction would violate Mr. Garcia's right against self-incrimination.  It

should be noted that from the gang sheet it cannot be told whether Mr. Garcia voluntarily displayed his tattoo.

The gang sheet indicates that there has been a judicial determination that Mr. Garcia is a gang member.   The sheet is silent with respect to what judicial officer made this determination. Accordingly the statement should not be admitted because it is more prejudicial than it is probative. In addition, the statement violates the best evidence rule.

November 6, 2009:  The comments to this gang sheet are as follows:

> Pedro was being investigated for an aggravated intimidation of a witness or victim and was on bond.  He blew a .053 on a PBT, and was arrested for the bond violation He was arrested and interviewed He admitted that Antonio Flores is an LCC gang member and he is not the same "Set" as he is.  Pedro has numerous tattoos that are gang affiliated.  Pedro is also entered NCIC as a Violent ...

The gang sheet is accompanied by some fifty pages of police reports.  The reports indicate that Mr. Garcia was interviewed, and the interview appears that it might have been a custodial interview.  At no place does the discovery indicate that Mr. Garcia was read his right under *Miranda*.  Mr. Garcia moves to suppress and exclude the police questioning and Mr. Garcia's responses thereto pursuant to F.R. Evid.401, 403, 404(b) and *Miranda*.

The gang sheet prepared by Officer Nau indicates that the defendant is a gang member because "[he was] identified as a gang member by a reliable informant."  The gang sheet further states "A confidential informant stated that Pedro Garcia is still an active DV gang member." The confidential informant relied upon by Det. Nau is not identified.   Unless that unidentified confidential informant testifies at trial, his statement is hearsay and is inadmissible under *Crawford*, because the defendant cannot exercise his Sixth Amendment right of confrontation.

November 8, 2010:  This gang sheet was also prepared by Officer Nau.  It indicates that Mr. Garcia was considered a gang member based upon "other criteria," and specifically by a reliable

informant.  The Comments section states:  "A confidential informant stated that Pedro is still an active DV gang member.  The confidential informant relied upon by Det. Nau is not identified. Unless that unidentified confidential informant testifies at trial, his statement is hearsay and is inadmissible under *Crawford*, because the defendant cannot exercise his Sixth Amendment right of confrontation.

WHEREFORE, Mr. Garcia prays that his motion be granted.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of February, 2013, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

Klenda Doc. 2171197

6

Appellate Case: 14-3006 Document: 23-1 Date Filed: 04/01/2014 Page: 742

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| | ) | |
| v. | ) | No. 12-10089-01-23 |
| | ) | |
| Jason Najera, Pedro Garcia, | ) | |
| Gonzalo Ramirez, Russell Worthey, | ) | |
| Anthony Wright, Joshua Flores, | ) | |
| Jesus Flores, Angel Cerda, | ) | |
| Juan Torres, Alfredo Beltran-Ruiz, | ) | |
| Donte Barnes, Jesus Sanchez, | ) | |
| Enrique Gobin, Alfonso | ) | |
| Banda-Hernandez, Andrew Gusman, | ) | |
| Eusebio Sierra-Medrano, Jayson | ) | |
| Vargas, Adam Flores, Fabian Neave, | ) | |
| Jesus Torres, Jose Neave, Hernan | ) | |
| Quezada, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**AMENDED SCHEDULING ORDER**

On February 11, 2013, this court held a status conference with counsel.  The following deadlines were established at the hearing.

By February 19, the government must identify, in each charged conspiracy count, the known but unindicted co-conspirators.

Any additional defense motions based on newly disclosed evidence must be filed by February 22.

Supplemental briefing on the admissibility of the co-conspirator statements introduced at the James hearings must be filed by February 25.

Defendant Pedro Garcia's motion to suppress will be heard on March 4 at 2:30 p.m.

Daubert hearings will be held on April 16, 17 and 18.  No more than seven defendants will be present at each hearing.  Counsel must

notify the court by April 1 who is appearing on each day.  In the event that fifteen or less defendants remain in the case on April 1, the court will only hold <u>Daubert</u> hearings on April 16 and 17.

By May 10, 2013, the government must disclose <u>Jenks</u> Act material.

Defendants must notify the court of their intention to enter a guilty plea on or before May 24.


IT IS SO ORDERED.

Dated this __27th__ day of February 2013, at Wichita, Kansas.


s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-2-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 12-CR-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT PEDRO GARCIA'S WRITTEN ARGUMENT
IN SUPPORT OF HIS MOTION TO SUPPRESS**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby submits his argument In Support of His Motion to Suppress Evidence Found in Connection with the October 19, 2010 Search of His Residence (Doc. 504).

Statement of Facts

In the government's Indictment (Doc. 2) Mr. Garcia and three other defendants are charged with the murder of Isreal Peralta and other VICAR crimes which are alleged to have occurred in Dodge City, Kansas, on June 8, 2009. *Id*. Counts 2-6. The Indictment also charges Mr. Garcia and three other defendants with a home invasion and robbery (also as VICAR crimes) which also occurred in Dodge City on that same date. *Id*. at Counts 7-9.

In late January or early February, 2010, Mr. Garcia was arrested on the federal charge of being a felon in possession of a firearm. On June 29, 2010, Mr. Garcia and the government entered into a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C). *See* Plea Agreement, (Doc. 35) United States v. Garcia, United States District Court for the District of Kansas, 10-10021-01-MLB.

Ultimately this Court sentenced Mr. Garcia to a term of imprisonment, which Mr. Garcia is presently serving.  From the date of his arrest through the date of this writing Mr. Garcia is and has been either detained or imprisoned.

On October 18, 2010, some sixteen (16) months after the crimes charged in Counts 2-9 of the present indictment, Detective Shane Webb of Dodge City, Kansas sought search warrants authorizing the search of Mr. Garcia's place of residence in Dodge City, and a search of co-defendant Gonzalo Ramirez's residence also in Dodge City.  Rather than submit an affidavit in support of the application for a warrant, Detective Webb gave testimony before Ford County District Judge Van Z. Hampton, as support for a warrant, allowing law enforcement officers to search both Mr. Garcia's home of record and Mr. Gonzalo Ramirez's home.  *See* Transcript of Application for Search Warrant, government's Exhibit 1, provided to the Court at the hearing on Mr. Garcia's motion to suppress, and consisting of the Search Warrant issued by the Ford County District Court, the Return of the Warrant, the List of Property Seized, the Affidavit and Application for Search Warrant, and Detective Webb's testimony in support of issuance of the search warrant.

In support of the Search Warrant, Webb testified in part, as follows:  He advised the court of the items for which he wished to search Mr. Garcia's house.  Transcript of Affidavit and Application for Search Warrant, Exhibit 1, p. 3.  Webb testified that he wanted the search warrant in relation to a crime or crimes which occurred June 8, 2009, in Dodge, City.  *Id*. pp. 4-5.  Although Detective Webb appears to have told the court that he was investigating the possibility of gang involvement in these crimes, Detective Webb failed to inform the court of what gangs, if any, Mr. Garcia, Mr. Ramirez, and the other persons involved in these crimes, were, either individually separately or jointly, members of.

While Detective Webb did inform the Court that he had been working with three cooperating

witnesses, he failed to provide the court that any of the cooperating witnesses were members of street gangs, and did not tie their memberships to any alleged gang that Mr. Garcia might be alleged to have been a member of. In addition, the information Webb did provide the court lacked any reference to current or past gang activity in which Mr. Garcia was involved, nor did Detective Webb provide the court with information describing Mr. Garcia's gang activity, if any, directly following the commission of the crimes complained of in the affidavit. Counts 2 through 9 of the Indictment. *See*, *Id.* Transcript, Exhibit 1, in its entirety.

On October 18, 2010, Judge Hampton issued a search warrant. In that warrant he authorized law enforcement to search Mr. Garcia's residence located at 1302 Avenue D, Dodge City, Kansas, any persons present and any vehicles for the following:

> Any gang attire including but not limited to red bandannas and items with Norteno gang association, photos, drawings, writings, gang roll calls etc. Any documents, photographs, mail, bills or other personal or business items indicating the identity of persons residing at the location.

*See* Exhibit 1, District Court of Ford County, Kansas Search Warrant, dated October 18, 2010. The search was conducted on October 19, 2010, and the return was ultimately filed on September, 17, 2012. *See* Exhibit 1, Return [of Warrant]. The List of Property Seized was also filed on September 17, 2012. *See* Exhibit 1, List of Property Seized. That list indicates the following items were seized pursuant to the warrant, to-wit:

> (1) 16 St. Ramon Candles, (2) Northern Ave Street Sign, (3) Scarface Picture, (4) Northtown Decorative License Plate, (5) Letter from Gonzo to Peter, (5) 2 wall posters, (7) Letter to Peter in Red ink, (8) St. Ramon Figurine, (9) Letter & notes along w/envelope addressed to Pedro Garcia, (10) Gun rim oil & break free solvent, (11) Wood clipboard w/gang graffiti written in red ink and (12) Letter to Peter from Knox.

*Id.*

## Argument and Authorities

3

Mr. Garcia argues that the search warrant at issue should be suppressed due to staleness, and accordingly the want of probable cause.   Search warrants can only be issued upon probable cause.

> An affidavit establishes probable cause for a search warrant **if the totality of the information it contains** establishes the fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Soderstrand*, 412 F.3d 1146, 1152 (10th Cir. 2005 (quotation omitted).

*United Sates v. Roach*, 582 F.2d 1192, 1200 (10th Cir. 2009) (emphasis added).  "The affidavit must show a 'nexus between ... suspected criminal activity and the place to be searched.'" *Id*. citing *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005).   A court "**may not** arrive at probable cause simply by piling hunch upon hunch." *Id*. (emphasis added) citing *United States v. Valenzuela*, 265 F.3d 892, 897 (10th Cir. 2004).  "Probable cause to search cannot be based on stale information that no longer suggests the items sought will be found in the place to be searched." *United States v. Mathis*, 357 F.3d. 1200, 1206-07 (10th Cir. 2004) See also *United States v. Snow*, 919 F.2d 1458, 1459-60 (10th Cir. 1990).  A search warrant "cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched."

"Probable cause existing sometime in the past **will not suffice unless** circumstances exist from which it may be inferred that the grounds [for probable cause] continued to the time the affidavit was filed." *United States v. Neal*, 500 F.2d 305,309 (10th Cir. 1974) (emphasis added). Accordingly, "otherwise stale information may be refreshed by more recent events," and "[w]hen the circumstances suggest on-going criminal activity, the passage of time recedes in importance." *United States v. Cantu*, 405 F.3d 1173, 1177-78 (10th Cir. 2005).

Mr. Garcia can find no bright line establishing when information is stale and when it is not. It appears that the questions of probable cause and staleness are dependent in great part upon the existence of circumstances from which it can be inferred that probable cause continued to the time

the affidavit was filed.  See *Neal*, 500 F.2d at 309.   Those circumstances must be found within the affidavit or testimony given in support of the request for the warrant.

In *United States v. Campbell*, 603 F.3d 1218 (10th Cir. 2010), questions regarding probable cause to issue a search warrant, along with issue of staleness were raised by the defense.  With respect to staleness, the *Campbell* court noted "[i]nformation's staleness 'depends upon the nature of the criminal activity, the length of the activity and the nature of the property to be seized.'  *United States v. Riccardi*, 405 P.3d 852, 860-61 (10th Cir. 2005) (quoting *United States v. Snow*, 919 F.2d, 1458, 1460 (10th Cir. 1990)" *Campbell* 603 F.3d, at 1233.  The court noted:

> 'Ongoing and continuous activity makes the passage of time less critical when judging the staleness of information upon which a search warrant is based,' ... because evidence of a longstanding pattern of repeated activity makes it less likely that the activity has ceased within a short time frame.  *Roach*, 582 F.3d at 1201(quoting *United States v. Mathis*, 357 F.3d 1200, 1207 (10the Cir. 2004).

*Id*.  "'Otherwise stale information can be refreshed by more recent events."  *Id*. quoting *United States v. Cantu*, 405 F.3d 1173, 1178 (10th Cir. 2005).  To answer those - probable cause and staleness - issues, the Tenth Circuit had to confront the contents of the affidavit given in support of the request for the search warrant at issue in the *Campbell* case.  *Id*. at 1220-24.  With respect to the other circumstances existing to support an inference that probable cause continued to exist to transform an otherwise stale search, the affidavit given in Mr. Garcia's case pales by comparison to the affidavit given in the *Campbell* case.

In *Campbell*, the affidavit in support of application was given by Detective Goodwyn, who served as a narcotics detective with the Sedgwick County Sheriff's Office, assigned to work with the DEA as a Task Force Officer.  Goodwyn prepared a 125 page affidavit which "describe[d] the evidence of the Crip street gang and its subsets activities in Wichita gathered by law enforcement over the past decade."  *Id*. at 1221. Goodwyn's affidavit described evidence of Crip gang activities in

5

Wichita during the course of the prior decade.  Goodwyn advised that as a result of his investigation of the case involving Mr. Campbell, he learned that members of the Crip gang "generally conduct their illegal activities with other known members of the Crips and individuals closely associated with the gang."  *Id*.  In his affidavit Goodwyn informed the court that the Crips have a history of using violence to maintain control over the drug trade.  He averred that members of the gang maintain records such as address books, letters, outstanding accounts registers, profits generated and other indicia of the enterprise.  *Id*.  Goodwyn identified some thirty-three members of the Crips that had been gathered  "'through investigative methods such as reviewing of police reports, information gathered by the [WPD] gang officers, interviews of gang members and associates, surveillance, phone records and undercover operations utilizing confidential informants.'"  *Id*.  Goodwyn averred that he had probable cause to believe these individuals were engaged in ongoing and continued patterns of violations of numerous laws including but not limited to conspiracy to distribute narcotics, continuing criminal enterprise, maintaining drug involved premises, felon in possession of a firearm, money laundering and violent crimes in aid of racketeering.  *Id*.

Goodwyn identified the information law enforcement received from three cooperating witnesses.  Although Goodwyn did not identify the three cooperators he did inform the court that "(a)ll three of these witnesses are 'documented members of the Crips or one of its subsets operating in Wichita and [who] claim to possess personal knowledge of the history and activity of these gangs.'"  *Id*. at 1221-22.  The affidavit then went on to "provide ninety-seven pages of specific examples of alleged Crip street gang associations and criminal activity."  *Id*.  With respect to Mr. Campbell generally, the affidavit provided Mr. Campbell's address, and pointed out that he was associated with the Neighborhood Crips.  The affidavit advised the court that on July 31, 1997, while executing a search warrant on the residence of Curtis Profit, also an alleged Neighborhood Crip,

6

Campbell was found inside the residence.  The affidavit informed the court that on October 24, 2000, officers responded to a call of shots fired at the residence of Jim Jones (also a Crip), and Campbell was inside the residence.  The victims of that shooting were uncooperative.  *Id*. at 1222.  The affidavit went on to describe several other incidents of criminal gang activity, and in each incident, Campbell was involved.  *Id*. at 1222-23.  "Detective Goodwyn concluded that based on the facts he described, his experience, and training, he had probable cause to believe firearms, ammunition, telephone records, gang paraphernalia, and other evidence of gang  activity would be found in [Campbell's] residence.  *Id*. at 1223.  Goodwyn also stated:

> [T]hese items will link members of the Crips and its sets, identified in this affidavit, and other known and unknown co-conspirators, to distribution of narcotics, the collection of narcotics proceeds, the illegal possession and sale of firearms, and the laundering of monetary instruments.  In addition I have probable cause to believe that [Defendant's] residence ... will contain valuable evidence of other criminal activities associated with the Crips and its sets, and that this evidence will establish membership and/or association within the criminal enterprise known at the Crips in violation of 18 U.S.C. § 1962 [Racketeer Influenced Corrupt Organizations Act] (RICO).

*Id*. at 1223.  Thus, despite any staleness issues, the court ruled that the affidavit given in *Campbell* survived the tests applicable in *Riccardi*, *Snow* and *Cantu*.

In the present case, the prosecutor asked Detective Webb what it was that he was looking for in the residences of Mr. Garcia and Mr. Ramirez.  Detective Webb responded:

> At both residences exactly the same thing, any gang attire including but not limited to red bandanas, and any items with Norteno gang association, photos, drawings, writings, gang role calls, etc., any documents, photographs, mail, bills or other personal or business items indicating the identity of persons residing at the location.

Exhibit 1, Transcript of Webb Testimony, p.3.  Detective. Webb was then asked if he believed "that a search for this -- for those items you're looking for at these residences are connect to do [*sic*] a crime that you've listed, robbery.  When would that have occurred?"  Webb responds that the crime

7

occurred June 8, 2009.

Despite the subsequent discussion of information about the crime provided to Mr. Webb by a confidential informant, is clear from Webb's testimony the search warrant sought was to allow <u>only</u> a search for and seizure of gang related documents and occupancy documents.  Later in the testimony, Webb makes it plain that law enforcement believes this robbery was gang related, due to the dress of a victim of a homicide which occurred following the robbery.  *Id.* at p. 7-8.  From the face of the testimony it is clear that law enforcement sought this warrant to secure gang information and using the murder and the home/invasion robbery as cover.  The conclusion that the search warrant was sought as part of an investigation larger than the two crimes committed on June 8th, is confirmed later in the application where Detective Webb stated:

> **This is part of a larger investigation going on right now with this gang** as far as narcotics, these homicides and home invasions.  The reason that we put down to search just under robbery and not under aggravated robbery is not to let them think that we are possibly looking for these firearms that were involved in the homicide **unless we come across them**.  We don't want to show our hand that we knew we were going after these guys right now for the homicides.  But **what we are looking for is gang attire to associate them together**, the bandannas they were wearing on their face when the committed both the home invasion robbery as well as the homicide.

*Id.* at 25-26 (emphasis added).  Later, after being asked if the items that he wants a search warrant to seize "are all described in the written application, "Webb responds:

> Yes they are.  **If we find any other items that we believe were used in either the homicide or the robbery we will reapply for a search warrant for those items**.  **We don't believe that, at this time**, though, that **they're gonna be at either residence**.  However we believe all gang attire, gang bandannas to associate them with these crimes would still be located there.

*Id.* at p.27 (emphasis added).  It is clear that these search warrants were sought as a part of the greater investigation one involving gang activity with respect to narcotics and violent crimes.

Mr. Garcia submits that the application for a search warrant discussed by the Tenth Circuit in

8

*Campbell* is the *sine qua non* of meeting the test to overcome the staleness argument as set out in the *Snow*, *Riccardi*, *Neal*, *Cantu* and *Roach* line of cases.

There is no doubt that the information provided to the Ford County Court to secure the search warrant of Mr. Garcia's home was stale. The crimes charged against Mr. Garcia and others in Counts 2 through 9 of the Indictment occurred on June 8, 2009, some <u>sixteen months prior to the application for the warrant</u>. That being case, the question becomes, can the information provided be refreshed by more recent events, the circumstances of which suggest on-going criminal activity? *Cantu*, 405 F.3d at 1177-78. If it cannot be refreshed, then the search warrant cannot stand because "probable cause existing sometime in the past **will not suffice, unless it may be inferred that the grounds continued to the time the affidavit was filed**. *Neal*, 500 F.2d at 309 (emphasis added). Information allowing such an inference is absent from the testimony provided by Detective Webb.

While Detective Goodwyn's affidavit meets every requirement necessary to demonstrate, and from which the issuing court could infer, continuing criminal activity and other grounds creating a basis to draw an inference that the probable cause continued until the time the affidavit was filed, the affidavit given by Detective Webb's testimony does not. In *Campbell*, the affidavit given was 125 pages in length. Webb's testimony barely reached 27 pages. Goodwyn's affidavit described gang activity occurring in Wichita for over ten years. Webb's affidavit said nothing about the continuing nature of whatever street gangs he may have made reference to. Goodwyn advised the court of what investigations he had conducted in learning about gang activity. Webb's testimony is silent in this regard. Goodwyn identified some thirty-five members of the Crips, while Webb's affidavit doesn't really identify any gang members, and, to the extent that it might, it fails to link those persons to the same gang or gang subset. Goodwyn's affidavit provides discussion of Mr. Campbell's involvement in street gang activity, while Webb's testimony as to Mr. Garcia's gang involvement does not. More

9

simply said, Webb's testimony does not provide any information from which the court might infer that whatever probable cause might have existed in the past still existed when the search warrant was applied for. See *Neal* and *Cantu*. The information used to apply for the search warrant was stale, and accordingly probable cause did not exist. *See Mathis*, 357 F.3d at 1225, 1228.

### Conclusion

Affidavits provide probable cause for the issuance of a search warrant when the information they contain, "establishes a fair probability that contraband or evidence of a crime will be found in a particular place." *Roach*, 582 F.2d at 1200. With respect to the guns used in the crimes charged in Counts 2-9, Detective Webb told the issuing court that those guns, and for that matter any other direct evidence of the crimes, would not be in any of the residences to be searched. Exhibit 1, Testimony of Webb, p. 27. Regarding gang related items, Webb fails to provide sufficient evidence to overcome *Cantu's* holding that "[o]therwise stale information can be refreshed by more recent events." *Cantu*, 405 F.3d at 1178.

Accordingly, Mr. Garcia contends that this Court should conclude that because probable cause cannot be based on stale information no probable cause was established for the search warrant. As the *Neal* court taught, "[p]robable cause existing sometime in the past will not suffice [to establish probable cause] unless circumstances from which it may be inferred that the grounds [for probable cause] continued to the time the affidavit was filed." *Neal*, 500 F.2d 309.

WHEREFORE Mr. Garcia prays that his motion be granted, and that an order issue from this Court suppressing the items seized from Mr. Garcia's residence.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310

10

Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

### CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2013, I electronically filed the foregoing by

using the CM/ECF system which will send a notice of electronic filing to the counsel of record.


s/John Val Wachtel
John Val Wachtel


Doc. 2179138

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-03-MLB |
| | } | |
| GONZALO RAMIREZ, | } | |
| a.k.a. Gonzo, | } | |
| | } | |
| Defendant. | } | |

**RESPONSE OF THE UNITED STATES TO
DEFENDANT GONZALO RAMIREZ'S MOTIONS**

The United States of America, by Aaron L. Smith and Lanny D. Welch, Assistant

United States Attorneys, hereby responds to Defendant Gonzalo Ramirez's motions.  In

support of this response, the United States avers as follows:

**A.      Charges**

Defendant Gonzalo Ramirez is charged in the following counts of the indictment

returned on April 16, 2012:

Count 1  -   RICO Conspiracy, in violation of Title 18,
             U.S.C. § 1962(d);

Count 2  -   Violent Crime in Aid of Racketeering/Conspiracy to
             Murder, in violation of Title 18, U.S.C. § 1959(a)(5);

Count 3  -   Violent Crime in Aid of Racketeering/Murder, in
             violation of Title 18, U.S.C. § 1959(a)(1);

Count 4  -   Violent Crime in Aid of Racketeering/Attempted

1

Murder, in violation of Title 18, U.S.C. § 1959(a)(5);

Count 5 - Violent Crime in Aid of Racketeering/Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(3);

Count 6 - Possess/Discharge a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A);

Count 7 - Violent Crime in Aid of Racketeering/Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(3);

Count 8 - Violent Crime in Aid of Racketeering/Conspiracy to Commit an Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(6);

Count 9 - Possess and Brandish a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A);

Count 10 - Violent Crime in Aid of Racketeering/Conspiracy to Commit Murder, in violation Title 18, U.S.C. § 1959(a)(5);

Count 11 - Violent Crime in Aid of Racketeering/Attempted Murder, in violation Title 18, U.S.C. § 1959(a)(5);

Count 12 - Violent Crime in Aid of Racketeering/Assault with a Dangerous Weapon, in violation Title 18, U.S.C. § 1959(a)(3);

Count 13 - Possess and Discharge a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A).

2

**B.** **Motion to Suppress Firearm, Ammunition, and Evidence Found on Defendant's Cell Phone (Doc. 541)**

**1. Search Warrants/Probable Cause**

On August 3, 2009, KBI Special Agent Brian Montgomery applied for and received a search warrant for a residence located at 1409 Ave. H in Dodge City, Kansas. This was the residence of Gonzalo Ramirez. The search warrant (first warrant) was issued by Ford County District Court Judge Leigh Hood.[1] The search warrant authorized, amongst other things, the investigators to search for drugs; drug paraphernalia; telephone records and other records (written, recorded or electronic) of drug activity; information (including names, addresses, telephone numbers) of suppliers or purchasers of drugs; money; documents, photographs, mail and other items which indicated the identity of persons residing at the address; and any devices used to capture moving motions. The affidavit provided in support of the search warrant established probable cause for the issuance of the warrant for 1409 Avenue H, Dodge City, Kansas to include information that Gonzalo Ramirez had conducted multiple drug transactions at the residence.

Courts encourage investigators to request search warrants prior to conducting searches of residences. In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court stated that when determining if probable cause exists for the issuance of a search warrant, "the task of the issuing magistrate is simply to make

---

[1] This Application, Affidavit and Search Warrant are attached as Exhibit 1.

3

a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.  Probable cause is "a practical, nontechnical conception" based on "common-sense conclusions about human behavior." *Id.* at 231. "[D]etermination of probable cause should be paid great deference by reviewing courts." *Id.* at 236.   An examination of the affidavit provided in support of the first warrant makes clear probable cause was established for the issuance of the warrant to search for the items listed.

During the execution of the first warrant on August 3, 2009, investigators seized inside the residence a black Blackberry Curve cellular telephone which belonged to Gonzalo Ramirez.  Pursuant to the first warrant , KBI Task Force Officer James Thompson, reviewed images stored in the telephone and observed the defendant in possession of a firearm in one or more images.  The investigators were aware that at the time of the execution of the first warrant Gonzalo Ramirez was a convicted felon and could not lawfully possess a firearm.  Thompson then presented a second search warrant  (second warrant) to Ford County District Court Judge Leigh Hood on August 4, 2009.[2]  The second warrant was executed on

---

[2] The second search warrant is attached and identified as Exhibit 2.

4

August 5th and investigators located numerous photographs and video recordings which were seized as evidence.

The United States will establish at a hearing in this matter that both search warrants were issued upon probable cause.  The first warrant authorized a search of the telephone as an item located within the residence.  The first warrant gave officers authority to search for, amongst other things: telephone records, names, addresses, photographs, moving images (videos), indicia of residency and other items which could logically have been located in the telephone.  In an abundance of caution, a second warrant was obtained from the same judge who issued the first.  The second warrant focused upon the telephone itself and requested authority to search for digitally stored information which may relate to firearms and possible violations of Kansas law.   Both warrants were valid and the officers acted in compliance with established Fourth Amendment procedures and law.  The defendant's motion to suppress should be denied.

### 2. Plain View Doctrine

If the Court finds reason to question the actions of the officers in the receipt or execution of the second warrant, the United States believes their actions were lawful pursuant to the plain view exception to the warrant requirement.   An officer's observation of items in plain view which could be readily identified as contraband or evidence of a crime allows for the seizure of those items. *Coolidge v. New Hampshire,* 403 U.S. 443, 465 (1971).  "There are three requirements to the plain view doctrine

which allows an officer to seize evidence without a warrant: '(1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent - i.e., the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself.'" *United States v. Sparks*, 291 F.3d 683, 690 (10th Cir. 2002)(quoting *United States v. Carey*, 172 F.3d 1268, 1272 (10th Cir. 1999)).

In this matter, Officer Thompson had a right to review information contained on the cell phone looking for items authorized in the first warrant. Once he began reviewing images stored in the phone he observed photographs of the defendant in possession of firearms. Because the defendant was a convicted felon the investigators had probable cause to believe the defendant was in violation of Kansas law while possessing a firearm. The image's incriminating nature was immediately apparent. Finally, the first warrant gave Thompson lawful access to the telephone and the evidence need not be suppressed.

### 3. Inevitable Discovery

If the Court were to determine the discovery of the images on the cell phone was not permissible because a search warrant was required in advance, suppression of this evidence is still not required. In *Nix v. Williams*, 467 U.S. 431, 446-47 (1984) the United States Supreme Court found that evidence obtained in violation of the Sixth Amendment was still admissible because the evidence would have been inevitably discovered. "If the government can demonstrate inevitable discovery...the evidence is not fruit of the

6

poisonous tree and need not be suppressed." *United States v. Torres-Castro*, 470 F.3d 992, 999 (10th Cir. 2006).

In the instant case, the plain view observation of incriminating images in the defendant's cell phone would have provided probable cause for the second warrant. In this case, of course, that is a fact and not speculation. During the execution of that search warrant the officers certainly would have located the images they later seized. Consequently, this evidence would have been discovered pursuant to a search warrant for which we know probable cause existed as is evidenced by the issuance of the second warrant; therefore, this evidence should not be suppressed.

### 4. Exclusionary Rule

Of course, even if the defendant demonstrates that the officers violated his Fourth Amendment rights as suggested, suppression is not automatically required under the exclusionary rule. As the Supreme Court has repeatedly stated, the suppression of evidence "is not an automatic consequence of a Fourth Amendment violation." *Herring v. United States*, 555 U.S. 135, 129 S.Ct. 694, 698  (2009); *see also id.* at 700 (Court noting it has "repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation"). Indeed, "[e]xclusion is not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search." *Davis v. United States*, 131 S Ct. 2419, 2426 (2011) (internal quotations omitted). Rather, the sole purpose of the exclusionary rule "is to deter future Fourth Amendment violations," *id.*, and the Supreme Court has "limited the rule's operation to situations in

7

which this purpose is thought most efficaciously served," *id.* (quotations omitted).

"Where suppression fails to yield appreciable deterrence, exclusion is clearly

unwarranted.  *Id.* at 2426-27 (quotations and alteration omitted).

"Because the "principal cost of applying the rule is...letting guilty and possibly

dangerous defendants go free–something that offends basic concepts of the criminal

justice system," *Herring*, 129 S.Ct. at 701, the Supreme Court limits application of the

exclusionary rule to police practices that "are deliberate enough to yield meaningful

deterrence, and culpable enough to be worth the price paid by the justice system," *Davis*,

131 S.Ct. at 2428 (quotations omitted).  Deterrent-worthy practices include "deliberate,

reckless, or grossly negligent conduct, or in some circumstances recurring or systemic

negligence" by the police.  *Herring*, 129 S. Ct. at 702.  However, isolated and

nonrecurring police negligence will not justify exclusion.  *Davis*, 131 S.Ct. at 2428.

Therefore, before this Court may exclude evidence of the basis of the alleged illegality, it

must find that the high price paid by applying the rule is outweighed by the deterrence

benefits of applying it.  *See id.* at 2427 ("For exclusion to be appropriate, the deterrence

benefits of suppression must outweigh its heavy costs.")  "The pertinent analysis of

deterrence and culpability is objective, not an inquiry into the subjective awareness of

arresting officers[.]" *Herring*, 129 S.Ct. at 703 ((internal quotations omitted).

In this case, the deterrence benefits would not outweigh the heavy costs of

applying the exclusionary rule because the officers' conduct  was not sufficiently

culpable.  Even if the officers violated the defendant's Fourth Amendment rights

763

as alleged, the officers did not do so deliberately, recklessly, or with gross negligence; therefore, the officers' conduct was not sufficiently culpable. *See*, *e.g.*, *Davis* at 2428-29 (refusing to apply exclusionary rule where officers who conducted illegal search "did not violate [Defendant's] Fourth Amendment rights deliberately, recklessly, or with gross negligence"; case did not involve "'systemic negligence' on the part of law enforcement," and "police acted in strict compliance with binding [court] precedent."). It is clear the officers operated in an attempt to comply with the requirement of the Fourth Amendment because they sought two search warrants. Clearly these officers were not operating recklessly and without regard to their duties and the law. Therefore, this Court should decline to apply the exclusionary rule in this case.

**C.** **Motion to Suppress and Exclude Evidence From Defendant's Gang Sheets, Including his Statements and Tattoos (Doc. 542)**[3]

The defendant argues for exclusion of information contained within the gang sheets which generally offer statements or observations tending to identify the defendant as a gang member. The basis for the defendant's request is that the information is not relevant, is unduly prejudicial if relevant, or is inadmissible as a "prior bad act", citing Federal Rules of Evidence 401, 403 and 404(b). The

---

[3] This motion was joined by the following defendants and the United States offers this response to address this motion as well: Pedro Garcia (Doc. 547), Angel Cerda (Doc. 545), Alfonso Banda-Hernandez (Doc. 555), Eusebio Sierra-Medrano (Doc. 556), Alfredo Beltran-Ruiz (Doc. 560), Andrew Gusman (Doc. 561), Adam Flores (Doc. 562), and Fabian Neave (Doc. 563).

defendant also moves to exclude statements or admissions of the defendant reflected in the gang sheets on the basis that the statements were obtained in violation of the defendant's *Miranda* rights.

The Court has set deadlines for the United States to announce its intention to admit evidence under Fed. R. Evid. 404(b).  The United States will comply with such deadline.  The United States reserves argument on the admissibility under Fed. R. Evid. 404 of any evidence at issue in the instant motion.

The 10th Circuit has found evidence of gang affiliation to generally be relevant and admissible pursuant to Fed. R. Evid. 401 and 403.  *United States v. Robinson*, 978 F.2d 1554, 1561-1565 (10th Cir. 1992).  The *Robinson* Court, in citing *United States v. Hartsfield*, 976 F.2d 1349 (10th Cir. 1992) agrees that gang association "…evidence was probative of the existence of the actual conspiracy alleged." *Robinson* at 1561.  The 10th Circuit is "persuaded that associational evidence may be directly relevant on the issues of formation, agreement and purpose of the conspiracy," and associational and affiliation evidence will often be probative of something other than character evidence or evidence of "prior bad acts" subject to admission under Fed. R. Evid. 404.  *Id* at 1562.

The United States argues that the "gang affiliation" evidence reflected in the gang sheets of the defendant is relevant, not unduly prejudicial and admissible under Fed. R. Evid. 801 and 803.  The admissibility of this evidence is particularly acute when analyzed in contrast to the *Robinson* and *Hartsfield* cases.  Both

*Robinson* and *Hartsfield* involved narcotics distribution and conspiracies to distribute those narcotics under Title 21, United States Code.  Each Court found the gang affiliation evidence admissible and relevant to the existence of the conspiracies.  The Indictment at hand is markedly different.  While the defendant is charged individually in conspiracies to commit VCAR acts, and commission of VCAR acts under 18 U.S.C. § 1959, the defendant is also charged in Count One of the Indictment (Doc. 1) with a RICO Conspiracy violation under 18 U.S.C. § 1962(d).  In each of the VCAR counts and well as the RICO Conspiracy count, the United States must prove the existence of an enterprise, generally defined as a "group of individuals associated in fact" by 18 U.S.C. § 1961(4).  Therefore, the evidence of gang affiliation is not only relevant to the "existence," "formation, agreement and purpose" of any RICO or VCAR conspiracy, but also to the existence and purpose of the enterprise itself.  Proof of the enterprise being a necessary element, the United States argues that the defendant's statements of association as well as other "verification criteria" as reflected in the gang sheets is relevant and the probative value outweighs any prejudicial effect.

Further, the United States submits that gang verification data created before the dates of the conspiracy alleged in Count One continue to be relevant to the existence, formation, agreement and purpose of the conspiracy and enterprise.

The defendant(s) argue that the gang sheets contain hearsay that could be inadmissible.  The Court has scheduled *Daubert* hearings to determine the

certification of expert witnesses.  The United States expects the proposed experts to discuss the use and reliance of the gang sheets in question, which will shed light on the admissibility of the information contained therein.  The United States would argue the gang sheets, and information therein is admissible through Fed. R. Evid. 803(6).  At this time, the United States is not seeking admission of the physical gang sheets, but reserves argument on that issue until conclusion of the *Daubert* hearings.

### D.   Motion to Dismiss (Doc. 544)[4]

The defendant argues for dismissal of the Indictment on the grounds of violation of the Double Jeopardy Clause of the 5th Amendment of the United States Constitution.  As the defendant has cited, the Double Jeopardy Clause does not prohibit the legislature from punishing the same act or course of conduct under different statutes.  *Albernaz v. United States*, 450 U.S. 333, 334 (1981).  The test the 10th Circuit follows to determine if a violation of the Double Jeopardy Clause has occurred is cited in *United States v. Cardall*, 885 F. 2d 656, 665 (10th Cir. 1989), citing *United States v. Blockburger*, 384 U.S. 299 (1932).

The Indictment (Doc. 1) in paragraph 7 (a) through (d) identifies several categories of predicate acts generally "involving" murder, robbery and distribution

---

[4] This motion was joined by the following defendants and the United States offers this response to address this motion as well: Pedro Garcia (Doc. 546), Angel Cerda (Doc. 548), Andrew Gusman (Doc. 558), and Juan Torres (Doc. 550).

and possession with the intent to distribute controlled substances.  The defendant

is charged in Counts 2-13 with multiple acts involving murder and robbery, and

has been provided discovery of further acts involving the distribution of controlled

substances.   The United States submits that the defendant has sufficient

information to identify at least two predicate acts available to support Count One

of the Indictment.

Every court that has decided the issue has held that under the *Blockburger* test, a

substantive RICO offense and a RICO conspiracy to commit that substantive RICO

offense are separate offenses for double jeopardy purposes, and that, therefore, those

offenses may be prosecuted consecutively and cumulatively punished. *United States v.*

*Sessa,* 125 F.3d 68, 71-73 (2d Cir. 1997), *cert. denied,* 522 U.S. 1065 (1998).[5]

Similarly, RICO violations and violations of 18 U.S.C. § 1959 (Violent Crimes in

Aid of Racketeering Activity), as alleged in Counts 2-13, arising from the same course of

conduct are not the same offenses, and hence may be the basis for successive

prosecutions and multiple punishments. *See, e.g.*, *United States v. Nascimento*, 491 F.3d

25, 48 (1st Cir. 2007); *United States v. Merlino*, 310 F.3d 137, 141 (3rd Cir. 2002); *United*

---

[5] *See also, United States v. Masters*, 978 F.2d 281, 285-86 (7th Cir. 1992), *cert. denied*, 508 U.S. 906 (1993); *Coonan*, 938 F.2d at 1566-67; *Pungitore*, 910 F.2d at 1115-17; *United States v. West*, 877 F.2d 281, 292 (4th Cir.), *cert. denied*, 493 U.S. 869 (1989); *United States v. Yarbrough*, 852 F.2d 1522, 1545 (9th Cir.), *cert. denied*, 488 U.S. 866 (1988); *United States v. Benevento,* 836 F.2d 60, 72-73 (2d Cir. 1986); *United States v. Callanan*, 810 F.2d 544, 545-48 (6th Cir.), *cert. denied*, 484 U.S. 832 (1987); *Biasucci*, 786 F.2d at 515-16; *Watchmaker*, 761 F.2d 1477; *United States v. Thomas*, 757 F.2d 1359, 1368 (2d Cir. 2985); *United States v. Marrone*, 746 F.2d 957, 959 (3d Cir. 1984); *Bagaric*, 706 F.2d at 63; *Cagnina*, 697 F.2d at 923; *Rone*, 598 F.2d at 569-71.

*States v. Marino*, 277 F.3d 11, 39 (1st Cir. 2002); and *United States v. Polanco*, 145 F.3d 536, 542 (2nd Cir. 1998).

Of note, it is not necessary to prove a RICO Conspiracy by showing the defendant personally agreed to commit any two specific acts. Therefore, proof of Count One does not necessarily incorporate the elements of any crime charged in Counts 2 through 13. The court in *United States v. Nguyen*, 255 F.3d 1335 (11th Cir. 2001), *cert. denied*, 534 U.S. 1032 (2001), stated:

> In order to be guilty of a RICO conspiracy, a defendant must either agree to [personally] commit two predicate acts or agree to participate in the conduct of the enterprise with the knowledge and intent that other members of the conspiracy would commit at least two predicate acts in furtherance of the enterprise.

*Id.* At 1341.  *See also*, *United States v. Salinas*, 522 U.S. 52, 63-66 (1997), where the Supreme Court made clear that while evidence of such an agreement to commit two racketeering acts is sufficient to establish a RICO Conspiracy, RICO does not require the plaintiff to prove that the defendant agreed to personally commit two predicate acts of racketeering.

Likewise, courts repeatedly have held that a RICO substantive or conspiracy offense and its underlying predicate racketeering acts are separate offenses for Double Jeopardy purposes and may be consecutively prosecuted and cumulatively punished. *See, e.g.*, *United States v. Luong*, 393 F.3d 913, 916-17 (9th Cir. 2004); *United States v.*

14

*Corrado*, 304 F.3d 593, 609 n.8 (6th Cir. 2002); *Marino*, 277 F.3d at 39; *Polanco*, 145 F.3d at 542-43.

The defendant appears to argue that individual conspiracies charged in Counts 2-13 cannot be considered as predicate acts and implicate double jeopardy considerations.  The United States must prove, in Count One, a pattern of "racketeering activity" as defined in Title 18, United States Code, Section 1961(1)(A).  Courts have repeatedly rejected claims that conspiracy offenses may not constitute predicate racketeering acts under RICO conspiracy charges because such pleadings would constitute impermissible "conspiracies to conspire."  *See United States v. Fernandez*, 388 F.3d 1199, 1259 (9th Cir. 2004)[6].  This is so because, in part, a RICO conspiracy is not a conspiracy to commit the alleged predicate racketeering acts; rather, a RICO conspiracy offense is a conspiracy to

---

[6] Also see, *United States v. Pimentel*, 346 F.3d 285, 303-04 (2d Cir. 2003), *cert. denied*, 543 U.S. 955 (2004) (attempted murder); *United States v. Warneke*, 310 F.3d 542, 546-47 (7th Cir. 2002) (conspiracies to commit various state offenses listed under subdivision A); *United States v. Marino*, 277 F.3d 11, 28-31 (1st Cir.), *cert. denied*, 536 U.S. 948 (2002) (conspiracy to murder); *United States v. Carrillo*, 229 F.3d 177, 181-82 (2d Cir.) (conspiracy to murder), *cert. denied*, 531 U.S. 1026 (2000); *United States v. Darden*, 70 F.3d 1507, 1524-25 (8th Cir. 1995) (conspiracy to distribute, and possess with intent to distribute controlled substances constitutes a RICO predicate, but simple possession of cocaine is not a RICO predicate), *cert. denied*, 517 U.S. 1149 (1996); *United States v. Pungitore*, 910 F.2d 1084, 1135 (3d Cir. 1990) (conspiracy to murder and attempted murder in violation of state law proper RICO predicates), *cert. denied*, 500 U.S. 915 (1991); *United States v. Angiulo*, 847 F.2d 956, 963 n.18 (1st Cir. 1988) (conspiracy to murder); *United States v. Manzella*, 782 F.2d 533 (5th Cir.) (conspiracy to commit state law arson proper RICO predicate), *cert. denied*, 476 U.S. 1123 (1986); *United States v. Ruggiero*, 726 F.2d 913, 919 (2d Cir.) (conspiracy to murder in violation of state law is an "act or threat involving murder" under 18 U.S.C. § 1961(1)(A)), *cert. denied*, 469 U.S. 831 (1984); *United States v. Licavoli*, 725 F.2d 1040, 1045 (6th Cir.) (same), *cert. denied*, 467 U.S. 1252 (1984); *United States v. Welch*, 656 F.2d 1039, 1063 n.32 (5th Cir. 1981) (same) (dictum), *cert. denied*,

15

770

participate in the affairs of an enterprise through a pattern of racketeering activity.

*See, e.g*, *United States v. Sutherland*, 656 F.2d 1181, 1192-93 (5th Cir. 1981);

*United States v. Elliott*, 571 F.2d 880, 902-04 (5th Cir. 1978).

Similarly, it is not error for the RICO Conspiracy in Count One to allege

predicate acts of racketeering that are in themselves conspiracies because a RICO

Conspiracy and the predicate conspiracies are distinct offenses with different

objectives. The objective of a RICO Conspiracy is to participate in the affairs of

an enterprise through a pattern of racketeering activity, and, hence, to agree to

further the overall objective of the RICO enterprise and its conspiratorial

members. In contrast, the objective of the conspiracy charged as an act of

racketeering is confined to the goals and commission of that particular discrete

offense. *See Fernandez*, 388 F.3d at 1226-28 & n.18 (finding a single RICO

conspiracy where diverse predicate acts, including several conspiracies, benefitted

the same enterprise and its members); *Shea*, 211 F.3d at 664-65 (finding that

various predicate acts involving robbery and conspiracies were part of a single,

overarching RICO conspiracy); *Ruggiero*, 726 F.2d at 923 (a RICO conspiracy,

supported by acts of racketeering activity that are in themselves conspiracies, does

not violate the prohibition against conviction for multiple conspiracies when the

indictment charges a single conspiracy).

---

456 U.S. 915 (1982); *United States v. Dellacroce*, 625 F.Supp. 1387, 1392 (E.D.N.Y. 1986)
(conspiracy to murder); *United States v. Gambale*, 610 F.Supp. 1515 (D. Mass. 1985) (same).

16

770

The defendant further argues, without authority, that substantive crimes and associated conspiracies violate the Double Jeopardy Clause.  An example of Counts 2 and 3 are given, charging conspiracy to commit murder and the underlying murder.  It is clear under the principles of *Blockburger* and its progeny that crimes charged in Counts 2 through 13 each require proof of elements distinct from each other. *See United States v. Smith*, 454 Fed. Appx. 658, 661 (10th Cir. 2011) (commission of a substantive offense and a conspiracy to commit it are separate crimes).

Co-defendants Angel Cerda, Andrew Gusman and Juan Torres have joined the motion to dismiss.  None of those defendants have been charged in Count One of the present Indictment and arguments relating to the identification of predicate acts do not apply to these defendants.  The United States relies on arguments above in response to these defendants multiplicity argument.

Co-defendant Pedro Garcia joins in this motion to dismiss.  The United States relies on arguments above in response to the multiplicity arguments.  Pedro Garcia is charged in Count One of the indictment.  In Counts 2-9 of the Indictment, Pedro Garcia is charge with two distinct VCAR crimes alleging in commission of crimes involving murder and robbery.  Further, Garcia has been provided evidence related to his involvement in narcotics distribution.  Garcia has been provided notice of acts, the existence of which qualify as predicate crimes supporting Count One.

17

The United States prays the court to deny the defendant's motion to dismiss the indictment and counts therein.

> Respectfully submitted,
>
> BARRY R. GRISSOM
> UNITED STATES ATTORNEY
>
> /s/ Aaron L. Smith
> AARON L. SMITH  #20447
> Assistant United States Attorney
> 301 N. Main, 1200 Epic Center
> Wichita, Ks  67202
> Phone: 316-269-6481
> Aaron.Smith2@usdoj.gov
>
> /s/ Lanny D. Welch
> LANNY D. WELCH  #13267
> Assistant United States Attorney
> 301 N. Main, 1200 Epic Center
> Wichita, Ks  67202
> Phone: 316-269-6481
> Lanny.Welch@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of March, 2013, we electronically filed the foregoing motion with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

> /s/ Aaron L. Smith
> AARON L. SMITH
> Assistant United States Attorney

18

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 773

# ATTACHMENT 1

## DISTRICT COURT OF FORD COUNTY, KANSAS
## AFFIDAVIT AND APPLICATION FOR SEARCH WARRANT



FOR COURT USE ONLY

FILED
09 AUG -4 PM 4:30
CLERK DISTRICT COURT
FORD COUNTY, KANSAS

No. 09 MR 112
Ford County, Kansas

Dated: **August 03, 2009**, at _9 : 20_ _A_.M.

*Affiant's name:* **SA. Brian Montgomery** *being first duly sworn on oath, says that Affiant has reason to believe facts as follows:*

The following crimes have been or are being committed:
**Sale of MethamphetamineKSA 65-4161**
**Violation of the Uniform Controlled Substance Act KSA 65-4101**

The following particularly described items are contraband or evidence, fruits, or instrumentalities of said crimes:

The stimulant methamphetamine and any other controlled substances in any form, Any drug paraphernalia including but not limited to any item used to weigh or package illegal drugs, including but not limited to scales, plastic baggies or any other material commonly used to package illegal drugs for sale. Any drug paraphernalia used to use, smoke, ingest, inject, or other wise introduce any illegal substance into the human body. Any records whether in written, recorded, or electronic data format including telephone records, records of sales or purchases or prospective sales or purchases of controlled substances. Any names, address, telephone or pager numbers of suppliers or purchasers of controlled substances. Any money or other valuables transferred or held in association with purchase or sales of controlled substances. Any currency or other valuables in such proximity to controlled substances as to raise the presumption that they are proceeds of sales or controlled substances. Any documents, photographs, mail, bills, or other personal or business items indicating the identity of persons residing at the location. Any devices used to capture moving motions including but not limited to VHS tapes or DVDs.

The foregoing items are located at or on:

1409 Ave H Dodge City, Ford County Kansas. This single story residence with a basement is tan in color with green trim around the window. The numbers 1409 appear in black on the front of the residence. The front door is on the east side of the residence facing H Ave. 1409 Ave H has a limestone rock sitting out front with "Ramirez" carved into it. All persons and vehicles present at the residence and to include all curtilage and separate/detached outbuildings located on or within the property. Any vehicles belonging to any resident present within the property which are in close proximity to the above described property.

This affidavit and application is based on the facts contained in the separately attached Affidavit form. Authorization to enter the location **without** first knocking and announcing **IS** requested.

WHEREFORE, the undersigned requests that a search warrant issue for the location described herein and authorizing seizure of the items described herein, as provided by law.

_____
SA. Brian Montgomery
Affiant

SUBSCRIBED and sworn to before me on the above shown date and time.

_____
Judge of the District Court of Ford County, Kansas
District Judge

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

Comes now, the Affiant, Brian D. Montgomery, a Special Agent with the Kansas Bureau of Investigations, being of lawful age, first duly sworn and on oath deposes:

The Affiant is a resident of Ford County and is employed as a Law Enforcement Officer for the Kansas Bureau of Investigations, having been so employed since November 2007. That the Affiant is assigned to the Kansas Bureau of Investigations Southwest Kansas Drug Task Force made up of law enforcement officers from the Kansas Bureau of Investigations and the Dodge City Police Department. This task force is combined effort of the law enforcement agencies involved to investigate those persons involved in the production, manufacture, distribution, and sale of illegal narcotics.

### AFFIANT'S BACKROUND

Comes now, Special Agent Brian D. Montgomery, a Special Agent with the Kansas Bureau of Investigations being of lawful age, first duly sworn, and on his oath deposes:

That the Affiant has received a Bachelor's Degree in Criminal Justice from Fort Hays State University and has been a Law Enforcement Officer for nine years; eight years which were with the Pawnee County Sheriff's Office. The Affiant has received a variety of specialized training focused on drug crime investigations, including Kansas Law Enforcement Training Center (basic training, which included a block devoted to drug crime investigation). The Affiant has attended a forty hour Clandestine Laboratory Investigations Certification Course which allows him to investigate and dismantle methamphetamine laboratories. The Affiant has received on the job training in drug crime investigation from senior investigators at the Pawnee County Sheriff's Office and the Kansas Bureau of Investigations. The Affiant has received specialized training in the

1

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

area of narcotics enforcement from such agencies as the Kansas Bureau of Investigations, the United States Drug Enforcement Administration, Kansas Narcotics Officer's Association, Midwest Counter Drug Training center, Northeast Counter Drug Training Center, Bureau of Alcohol, Tobacco, Firearms, and Explosive (ATF) and numerous other agencies. The Affiant has nine years of experience in the investigation of narcotic related offences.

The Affiant has participated in well over a hundred investigations related to the unlawful possession, sale, growth, manufacture, and distribution of controlled substances. These investigations have included the use of confidential informants, the execution of numerous arrest and search warrants. During the course of the Affiant's drug enforcement career he has written affidavits and executed numerous search and seizure warrants for narcotics, dangerous drugs, drug paraphernalia, records, and proceeds derived as a result of illicit drug activities. Further the Affiant has arrested numerous individuals for violation of both state and federal controlled substances statutes. As a result of these activities the Affiant has interrogated many defendants, informants, and other persons who were users, sellers, distributors, or purchasers of controlled substances.

Through his training and experience, the Affiant is familiar with the manner in which controlled substances are obtained, diluted, packaged, distributed, sold, used, manufactured, grown, and the procedures in which these activities are carried out. The Affiant knows that drugs are often sold from residences and that this kind of operation regularly involves a noticeable volume of stop-and-go traffic at the residence with people arriving, purchasing drugs, and then quickly leaving.

2

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

**Based on your affiant's training and experience, your affiant knows the following:**

During the course of trafficking controlled substances, dealers commonly amass large quantities of currency as a result of the proceeds from the sale of these controlled substances. These funds are commonly found in close proximity to the drugs they have for sale so they can provide change to customers, and pay other dealers for their supply. Dealers usually keep the currency on hand until such time they can deposit it to other locations and convert them to other assets.

Drug traffickers often place assets in names other than their own to avoid detection of these assets by government agencies.

Even though these assets are in other person's names, the drug dealers actually own and continue to use these assets. They exercise dominion and control over them.

Large-scale drug traffickers commonly maintain on hand large amounts of U.S. currency in order to maintain and finance their on-going drug business.

Drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, other papers, computerized records; relating to transportation, ordering, sale and distribution of controlled substances. Drug traffickers commonly "front" (provide drugs on consignment) to their clients, and that the aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the traffickers have ready access to them.

Drug traffickers use telephones in the furtherance of drug transactions, arranging for delivery, transportation, purchase, sale and distribution of controlled substances. Drug traffickers often maintain photographs and videocassette tapes depicting violations of controlled substance statutes.

3

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

It is common for large-scale drug dealers to conceal contraband, (i.e. cocaine, marijuana, methamphetamine, etc.). They often keep more then one type of drug on hand.

When drug traffickers amass large proceeds from the sale of drugs, the traffickers attempt to legitimize these profits. To accomplish this goal, drug traffickers utilize domestic banks, their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts.

Drug traffickers commonly maintain addresses, telephone numbers in books, papers, and/or telephone numbers of their associates in the trafficking organization.

Drug traffickers commonly have in their possession, that is on their person, at their residence or residences of family or close associates: Illegal drugs, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. Firearms are used to protect and secure: Drug trafficker's property, drugs, money, financial books or records. The courts have recognized that weapons are tools of drug trafficker's trade, that it is reasonably foreseeable that conspirators involved in a large scale drug conspiracy will carry, possess and use weapons (see United Stated Vs. ALVAREZ, 755 F .2d 830. 848 (11th Cir. 1985)).

Drug traffickers also maintain certain paraphernalia. This paraphernalia routinely includes scales, instructional books, or magazines, and plastic bags of packaging material, used in the distribution of illegal drugs.

Drug traffickers also commonly use controlled substances themselves in addition to selling them. As a result, paraphernalia related to the use and ingestion of controlled substances is also commonly found. This type of paraphernalia commonly includes smoking devices such as "bongs", commercially made pipes and "one hitters", home made

4

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

smoking devices, cigarette rolling papers, lighters, tubes used to ingest controlled substance in either powder or vapor form, and syringes.

The Affiant was working in the capacity as a Law Enforcement Officer and was involved in an investigation of the distribution of illegal drugs. The Affiant composed the affidavit based on my own investigation, talking with other officers involved with this case, and by speaking with other sources of information. The following are the facts which occurred in Dodge City, Ford County, Kansas to-wit:


### PROBABLE CAUSE

Beginning May 2009 KANSAS BUREAU OF INVESTIGATION along with the DODGE CITY POLICE DEPARTMENT began an investigation into Gonzo RAMIREZ for the Distribution of Methamphetamine in Dodge City Ford County Kansas. Within the last 60 days three controlled buys of methamphetamine have been completed with RAMIREZ.

The first deal was set up to purchase fifty (50) dollars of methamphetamine from RAMIEREZ. For this deal SA Will MAHONEY was asked to work as the Undercover (UC) Agent. It was decided that SA MAHONEY would ride along with a KBI Confidential Informant (CI) to complete the deal. SA MAHONEY and a KBI CI left the predetermined location en route to RAMIREZ'S home. While en route RAMIREZ called and said that he was out driving around and to meet at the East LOVE'S convenience store, 400 E Wyatt Earp, Dodge City, Ford County, KS. SA MAHONEY and the CI arrived at the LOVE'S and parked on the West side of the store along the North side of the parking lot. SA MAHONEY observed a male walking towards them wearing a red

5

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

short sleeve shirt and a pony tail. SA MAHONEY later identified the male subject to be Gonzalo RAMIREZ. The male approached the driver's side door and handed the CI an item that the CI immediately handed SA MAHONEY. The item was a small plastic bag containing a white crystal substance suspected to be Methamphetamine. Once the controlled buy was completed Task Force Agent James THOMPSON began following the target vehicle as it left Loves. The vehicle drove east on Wyatt Earp and turned north on Avenue H until it pulled into the driveway of 1409 Avenue H which is Gonzalo RAMIREZ'S residence. According to the KBI Forensic Lab report the crystal substance purchased tested positive for methamphetamine.

The second deal was set up to purchase a fifty (50) bag of methamphetamine for $50.00 from RAMIREZ. This deal was completed within the past 40 days. For this deal SA Joby HARRSION was asked to work as the Undercover (UC) Agent. It was decided that SA HARRISON would ride along with a KBI Confidential Informant (CI) to complete the deal. SA MONTGOMERY watched as the CI received a text message from RAMIREZ agreeing to sell the methamphetamine for $50.00 and to meet at Avenue D and Ash. SA MONTGOMERY knew the area and the residence in which RAMIREZ was going to be at 1302 Ave. D Roque GARCIA'S residence a known criminal associate involved in narcotic distribution and gang activity. GARCIA is associated with the same gang (DV) as RAMIREZ. The controlled purchase of methamphetamine was completed. SA HARRISON was able to watch the entire deal. According to the KBI Forensic Lab report the crystal substance purchased tested positive for methamphetamine.

The third and final deal was set up to purchase a quarter (1/4) ounce of methamphetamine from RAMIEREZ for $400.00. The third deal was completed with in

6

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

the last four days. For this deal SA Will MAHONEY was asked to work as the Undercover (UC) Agent. It was decided that SA MAHONEY would ride along with a KBI Confidential Informant (CI) to complete the deal. SA MAHONEY and a KBI CI left the predetermined location en route to RAMIREZ'S home. SA MAHONEY and the CI arrived at 1409 H. Ave and parked in the driveway. The CI sent RAMIREZ a text message stating they were out front. SA MAHONEY observed a male walk out of from the back of 1409 Ave H. wearing a white t-shirt and white shorts. SA MAHONEY recognized the male subject to be RAMIREZ. The RAMIREZ approached the driver's side door and the CI handed RAMIREZ the money. RAMIREZ then handed the CI an item that the CI immediately handed SA MAHONEY. The item was a small plastic bag containing a white crystal substance suspected to be Methamphetamine. Once the deal was completed SA MAHONEY watched as RAMIREZ walked to the backside of 1409 H. Ave. The crystal substance tested presumptive positive for methamphetamine.

The CI described has been proven reliable by corroboration of information provided to law enforcement on multiple occasions.

While visiting with the CI it was learned on multiple occasions RAMIREZ would complete the drug deal at his residence, 1409 Ave H. CI stated they would call RAMIREZ on his cell phone and tell him what they needed. The CI stated they would then pull into the driveway of 1409 Ave H. RAMIREZ would walk out of the house and meet the CI at their vehicle. Once the deal was completed RAMIREZ would walk back inside of the house. The CI stated RAMIREZ lives at 1409 Ave. H.

Through further investigation it has been discovered RAMIREZ resides at 1409 Ave H with his mother.

7

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

According to the Dodge City Police Department RAMIREZ is a documented gang member. RAMIREZ claims association with Diablo Viejos (DV). It was discovered that RAMIREZ is 2nd or 3rd in charge of Diablo Viejos gang in Dodge City. Within the last month and a half the Dodge City Police Department intercepted a text message from RAMIREZ stating he was attempting to get rid of a firearm.

Throughout the investigations it was discovered RAMIREZ has been sentenced for two prior felonies. According to KASPER RAMIREZ was sentenced to the following charges:

| | | |
|---|---|---|
| 1. | Aggravated Assault | Sentenced August 11, 2004 |
| 2. | Criminal Discharge of Firearm at an Occupied Dwelling or vehicle | Sentenced August 11, 2004 |

RAMIREZ was sentenced in Ford County Kansas on the above charges.

Further the Affiant Saith Naught!

_____                    _____
        Affiant                                  Judge/Notary Public

Sworn to and subscribed before me this __3__ day of _August_,2004.

Term expires on _____ day of _____,20_____.

8

782

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 783





**DISTRICT COURT OF FORD COUNTY, KANSAS**
**SEARCH WARRANT**
**TO ALL LAW ENFORCEMENT OFFICERS IN THE STATE OF KANSAS**

FOR COURT USE ONLY



Dated: **August 03, 2009**, at _4:20 A._M.

WHEREAS, affidavit and application for search warrant has been made to me by **SA. Brian Montgomery** and having evidence under oath before me I find there is probable cause for believing as follows:

The following crimes have been or are being committed:

**Sale of MethamphetamineKSA 65-4161**
**Violation of the Uniform Controlled Substance Act KSA 65-4101**

No. _09 MR 112_
Ford County, Kansas

The following particularly described items are contraband or evidence, fruits, or instrumentalities of said crimes:

> The stimulant methamphetamine and any other controlled substances in any form, Any drug paraphernalia including but not limited to any item used to weigh or package illegal drugs, including but not limited to scales, plastic baggies or any other material commonly used to package illegal drugs for sale. Any drug paraphernalia used to use, smoke, ingest, inject, or other wise introduce any illegal substance into the human body. Any records whether in written, recorded, or electronic data format including telephone records, records of sales or purchases or prospective sales or purchases of controlled substances. Any names, address, telephone or pager numbers of suppliers or purchasers of controlled substances. Any money or other valuables transferred or held in association with purchase or sales of controlled substances. Any currency or other valuables in such proximity to controlled substances as to raise the presumption that they are proceeds of sales or controlled substances. Any documents, photographs, mail, bills, or other personal or business items indicating the identity of persons residing at the location. Any devices used to capture moving motions including but not limited to VHS tapes or DVDs.

The foregoing items are located at or on:

> 1409 Ave H Dodge City, Ford County Kansas. This single story residence with a basement is tan in color with green trim around the window. The numbers 1409 appear in black on the front of the residence. The front door is on the east side of the residence facing H Ave. 1409 Ave H has a limestone rock sitting out front with "Ramirez" carved into it. All persons and vehicles present at the residence and to include all curtilage and separate/detached outbuildings located on or within the property. Any vehicles belonging to any resident present within the property which are in close proximity to the above described property.

YOU ARE THEREFORE COMMANDED forthwith and within the time provided by law to search the herein described person, place, or means of conveyance for the above described items, seizing and holding them to be dealt with according to law, and make due return of this warrant.

☒ Good cause also having been found to justify the same, you are hereby **authorized** to enter the location without first knocking and announcing your presence.

☐ This warrant **does not specifically authorize** entering the location without first knocking and announcing your presence.

Judge of the District Court of Ford County, Kansas
District Judge

LIST OF PROPERTY SEIZED:

PAGE _____ of _____ pages

Item No.        Item Description

Location Where Item Found

## RETURN

I received this warrant on **August 03, 2009**, at  9 : 20  A .M. and have executed it as follows:

On  August  3rd , 20___, at  2 : 55  P .M., I conducted a search of the person, place, or means of conveyance described in the above warrant and seized the items of property listed below, on the reverse side, or on the attached list.

The search was completed at  5 : 40  P .M.

Officers present and participating in this search were:

KBI SA Montgomery, KBI SA Harrison, KBI SA Hawkins, KBI SA Diaz, KBI SA Mahoney, DCPD Lt Mellecker, DCPD Det Webb, TFA Thompson, FO Co SO. McClure, FO Co SO. Williams, FO Co SO McClure, DCPD K-9 Officer Kramer DCPD Officer Alford

A copy of this warrant, with signed copy of this return listing said property seized and held, was by me:

☑ left with  Griselda Vargas  as a receipt particularly describing each such item seized.

☐ left at the place of search and seizure, there being no person available with whom to leave it.

_____
Officer in Charge of Search

Returned to the Court on _____ _____, 20___.

I do solemnly swear the above and foregoing is true and correct to the best of my knowledge, so help me God.

_____
Officer Making Return

SUBSCRIBED and sworn to before me on  August  04 , 20 09 .

_____
Judge or Clerk of the District Court



# KANSAS BUREAU OF INVESTIGATION
## ~~EVIDENCE~~ ~~CUSTODY~~ RECEIPT

#1

| Contributing Agency/Address | Nature of Offense — NARCOTICS | | KBI Case Number — KBI09-387 | |
|---|---|---|---|---|
| _____ | **Victim** STATE OF KANSAS | Sex: ☐ Male ☐ Female | | |
| _____ | Last   First   Middle | Race: ☐ White   ☐ Black | 09 AUG 11 | ☐ Hispanic |
| Phone: _____ | DOB: _____ | ☐ Indian   ☐ Asian | | ☐ Unknown |
| | SSN/ID: _____ | ☐ Other | | |
| Send Report To: | **Suspect** RAMIREZ   GONZALO | Sex: ☒ Male | | ☐ Female |
| | Last   First   Middle | Race: ☒ White | PM 4:31 | ☐ Black |
| Agency Case #   Co. of Offense | DOB: _____ | ☐ Indian   ☐ Asian | | ☒ Hispanic ☐ Unknown |
| FORD | SSN/ID: _____ | ☐ Other | | |
| Agency ORI _____ | FOR ADDITIONAL SUSPECTS AND VICTIMS, USE CASE SYNOPSIS AREA ON THE BACK SIDE OF THIS FORM. | | | |

| EXHIBIT NUMBER | NUMBER OF ITEMS | EXHIBIT DESCRIPTION | REQUESTED EXAMINATION |
|---|---|---|---|
| 01 | 02 | 1- BROWN LEATHER HOLSTER WITH BELT AND 1-.22 CALIBER F.I.E. MODEL E15 CHROME WITH BLACK HANDLE (SERIAL # IB28251) | SA MONTGOMERY (LOCATED LIVING ROOM CLOSET UPSTAIRS) |
| 02 | 01 | 1- BLACK RADIOSHACK 200 CHANNELS PRO-135 POLICE SCANNER (SERIAL # 84040210) | SA DIAZ (BASEMENT BEDROOM ON SHELF) |
| 03 | 02 | 1- REMINGTON BOX OF .22 CALIBER BULLETS HIGH VELOCITY HOLLOW POINT, 1- THUNDERBOLT BOX .22 CALIBER BULLETS | SA DIAZ (BASEMENT BEDROOM ON SHELF) |
| 04 | 03 | 1- GREEN PRESCRIPTION BOTTLE WITHOUT LABEL, 1- ORANGE PRESCRIPTION BOTTLE TO GONZALO RAMIREZ, 1- MAGAZINE WITH .380 BULLETS. (BOTH PILL BOTTLES CONTAINED PILLS) | TFA THOMPSON (BASEMENT BEDROOM ON DRESSER) |
| 05 | 01 | 1- 2 lb. PLASTIC JAR CONTAINING WHITE CRYSTALINE SUBSTANCE (Supreme MSM) | DCPD OFC. ALFORD (BASEMENT FLOOR IN CLOSET) |

IF CHARGES ARE FILED UNDER THE ILLEGAL DRUG TAX STAMP LAW, WEIGHING OR COUNTING MUST BE REQUESTED

| Previous evidence submitted in this case? ☐ YES ☐ NO | Brief Case Synopsis (See Back) ☐ YES ☐ NO |
|---|---|
| Do any of the items submitted present a safety or a health hazard? (If answer is yes, describe hazard in case synopsis.) | ☐ YES ☐ NO |

| Date Collected | Printed or Typed Name of Collector | Written Signature of Collector |
|---|---|---|
| 08-03-2009 | | SA _____ 213 |

SUBMIT ORIGINAL ONLY

FORM KBI-L04

# KANSAS BUREAU OF INVESTIGATION
## ~~EVIDENCE CUSTODY~~ RECEIPT

#2

| Contributing Agency/Address | Nature of Offense | | | KBI Case Number | |
|---|---|---|---|---|---|
| | NARCOTICS | | | KBI09-387 | |
| _____ | **Victim** | | | Sex: ☐ Male | ☐ Female |
| _____ | STATE OF KANSAS | | | Race: ☐ White | ☐ Black |
| Phone: _____ | Last     First     Middle | | | ☐ Indian | ☐ Hispanic |
| | DOB: _____ | | | ☐ Asian | ☐ Unknown |
| | SSN/ID: _____ | | | ☐ Other ____ | |
| **Send Report To:** | **Suspect** | | | Sex: ☒ Male | ☐ Female |
| | RAMIREZ   GONZALO | | | | |
| | Last     First     Middle | | | Race: ☒ White | ☐ Black |
| Agency Case # | Co. of Offense | DOB: _____ | | ☐ Indian | ☒ Hispanic |
| | FORD | | | ☐ Asian | ☐ Unknown |
| | | SSN/ID: _____ | | ☐ Other ____ | |
| Agency ORI _____ | FOR ADDITIONAL SUSPECTS AND VICTIMS, USE CASE SYNOPSIS AREA ON THE BACK SIDE OF THIS FORM. | | | | |

| EXHIBIT NUMBER | NUMBER OF ITEMS | EXHIBIT DESCRIPTION | REQUESTED EXAMINATION |
|---|---|---|---|
| 06 | 01 | 1- GREEN LEAFY BOTANICAL SUBSTANCE WITH GREEN RUBBER BAND | SA HAWKINS (BASEMENT BEDROOM ON SHELF) |
| 07 | 01 | 1- SILVER METAL BUTTERFLY KNIFE | SA HAWKINS (BASEMENT BEDROOM CHAIR) |
| 08 | 02 | 1- BLACK/SILVER DIGITAL SCALE, 1- WHITE PLASTIC SPOON | TFA THOMPSON (BASEMENT BEDROOM ON TOP OF VCR NEXT TO TV) |
| 09 | 02 | 2- CLEAR PLASTIC BAGGIES WITH RESIDUE | TFA THOMPSON (BASEMENT BEDROOM ON DRESSER) |
| 10 | 01 | 1- CLEAR PLASTIC BAGGIE WITH RESIDUE | SA DIAZ (BASEMENT BEDROOM CLOSET TOP SHELF) |
| 11 | 05 | 2- CLEAR PLASTIC BAGGIES WITH WHITE CRYSTALLINE SUBSTANCE, 1- CLEAR PLASTIC BAGGIE WITH MULTIPLE CLEAR PLASTIC BAGGIES, 1- MULTIPLE WHITE COFFEE FILTERS, 1- BLUE BOTTLE OF ACETONE (1 QUART BOTTLE) DESTROYED | Lt. MELLECKER (BASEMENT BEDROOM IN SPEAKER BOX NEXT TO CLOSET) |

IF CHARGES ARE FILED UNDER THE ILLEGAL DRUG TAX STAMP LAW, WEIGHING OR COUNTING MUST BE REQUESTED

| Previous evidence submitted in this case? ☐ YES ☐ NO | Brief Case Synopsis (See Back) | ☐ YES ☐NO |
|---|---|---|
| Do any of the items submitted present a safety or a health hazard? (If answer is yes, describe hazard in case synopsis.) | | ☐YES ☐NO |

| Date Collected | Printed or Typed Name of Collector | Written Signature of Collector |
|---|---|---|
| 08-03-2009 | | SA ____ 213 |

SUBMIT ORIGINAL ONLY

FORM KBI-L04

# KANSAS BUREAU OF INVESTIGATION
## EVIDENCE CUSTODY RECEIPT

#3

| Contributing Agency/Address | Nature of Offense | KBI Case Number |
| --- | --- | --- |
| | NARCOTICS | KBI09-387 |

**Victim**
STATE OF KANSAS
Last    First    Middle
DOB:
SSN/ID:

| Sex: | ☐ Male | ☐ Female |
| --- | --- | --- |
| Race: | ☐ White | ☐ Black |
| | ☐ Indian | ☐ Hispanic |
| | ☐ Asian | ☐ Unknown |
| | ☐ Other | |

09 AUG 14

Send Report To:

**Suspect**
RAMIREZ    GONZALO
Last    First    Middle
DOB:
SSN/ID:

| Sex: | ☒ Male | ☐ Female |
| --- | --- | --- |
| Race: | ☒ White | ☐ Black |
| | ☐ Indian | ☒ Hispanic |
| | ☐ Asian | ☐ Unknown |
| | ☐ Other | |

PM 4:31

Agency Case #   Co. of Offense   FORD

Agency ORI

FOR ADDITIONAL SUSPECTS AND VICTIMS, USE CASE SYNOPSIS AREA
ON THE BACK SIDE OF THIS FORM.

| EXHIBIT NUMBER | NUMBER OF ITEMS | EXHIBIT DESCRIPTION | REQUESTED EXAMINATION |
| --- | --- | --- | --- |
| 12 | 01 | 1- BLACK BLACKBERRY CELLULAR PHONE (ALLTEL) | TFA THOMPSON (BASEMENT BEDROOM ON SHELF BY TV) |
| 13 | 02 | 2- CLEAR PLASTIC BAGGIES WITH WHITE CRYSTALLINE SUBSTANCE RESIDUE | SA HAWKINS (BASEMENT BEDROOM IN SPEAKER BOX ABOVE BED) |
| 14 | 03 | 1- WHITE COFFEE FILTERS, 2- CLEAR PLASTIC BAGGIES WITH RESIDUE | TFA THOMPSON (BASEMENT BEDROOM IN SHOE BOX) |
| 15 | 03 | 3- CLEAR PLASTIC BAGGIES WITH RESIDUE | SA HAWKINS (BASEMENT BEDROOM TRASH CAN BY BED) |
| 16 | ~~~~ | 1- SILVER RADIOSHACK ~~DIGITAL RECORDER~~ AM/FM DIGITAL DEVICE *LEFT AT RESIDENCE WAS NOT A RECORDABLE DEVICE* | SA HARRISON (BASEMENT BEDROOM ON DRESSER) |
| 17 | 01 | 1- BLACK PURE DIGITAL FLIP VIDEO CAMERA | SA HARRISON (BASEMENT BEDROOM CLOSET SHELF) |

IF CHARGES ARE FILED UNDER THE ILLEGAL DRUG TAX STAMP LAW, WEIGHING OR COUNTING MUST BE REQUESTED

| Previous evidence submitted in this case? | ☐ YES   ☐ NO | Brief Case Synopsis (See Back) | ☐ YES ☐NO |
| --- | --- | --- | --- |

Do any of the items submitted present a safety or a health hazard? (If answer is yes, describe hazard in case synopsis.)   ☐YES ☐NO

| Date Collected | Printed or Typed Name of Collector | Written Signature of Collector |
| --- | --- | --- |
| 08-03-2009 | | SA ___ 213 |

SUBMIT ORIGINAL ONLY

FORM KBI-L04

# KANSAS BUREAU OF INVESTIGATION
## EVIDENCE-CUSTODY RECEIPT

#4

| Contributing Agency/Address | Nature of Offense NARCOTICS | KBI Case Number KBI09-387 |
|---|---|---|

| | Victim STATE OF KANSAS | Sex: ☐ Male   ☐ Female |
|---|---|---|
| | Last   First   Middle | Race: ☐ White ☐ Black  ☐ Indian ☑ Hispanic  ☐ Asian ☐ Unknown  ☐ Other |
| Phone: | DOB: | 09 AUG 11 |
| | SSN/ID: | |

| Send Report To: | Suspect RAMIREZ   GONZALO | Sex: ☑ Male   ☐ Female |
|---|---|---|
| | Last   First   Middle | Race: ☑ White ☐ Black  ☐ Indian ☑ Hispanic  ☐ Asian ☐ Unknown  ☐ Other |
| Agency Case #   Co. of Offense FORD | DOB: | PM 4:31 |
| | SSN/ID: | |

Agency ORI _____

FOR ADDITIONAL SUSPECTS AND VICTIMS, USE CASE SYNOPSIS AREA
ON THE BACK SIDE OF THIS FORM.

| EXHIBIT NUMBER | NUMBER OF ITEMS | EXHIBIT DESCRIPTION | REQUESTED EXAMINATION |
|---|---|---|---|
| 18 | 01 | 1- WHITE CERAMIC PLATE WITH WHITE CRYSTALLINE SUBSTANCE | SA HAWKINS (BASEMENT BEDROOM ON SHELF) |
| 19 | 02 | 1- ENVELOPE WITH LETTER , 1- MISC. REPORTS | DET. WEBB (BASEMENT BEDROOM) |
| 20 | 01 | 1- U.S. CURRENCY $100.00 BILL (SERIAL # AB12457560M) | (BASEMENT BEDROOM ON DRESSER) |

IF CHARGES ARE FILED UNDER THE ILLEGAL DRUG TAX STAMP LAW, WEIGHING OR COUNTING MUST BE REQUESTED

| Previous evidence submitted in this case? | ☐ YES   ☐ NO | Brief Case Synopsis (See Back) | ☐ YES ☐ NO |
|---|---|---|---|
| Do any of the items submitted present a safety or a health hazard? (If answer is yes, describe hazard in case synopsis.) | | | ☐ YES ☐ NO |

| Date Collected 08-03-2009 | Printed or Typed Name of Collector | Written Signature of Collector SA |
|---|---|---|

SUBMIT ORIGINAL ONLY

FORM KBI-L04

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 792

# ATTACHMENT 2

**DISTRICT COURT OF FORD COUNTY, KANSAS**
**AFFIDAVIT AND APPLICATION FOR SEARCH WARRANT**

FOR COURT USE ONLY



No.

09 me 115

Dated: **August 04, 2009**, at _4_ : _00_ _P._M.

*Affiant's name:* **James Thompson**
*being first duly sworn on oath, says that*
*Affiant has reason to believe facts as follows:*

The following crimes have been or are being committed:

**Felon in Possession of a Firearm KSA 21-4204**

The following particularly described items are contraband or evidence,
fruits or instrumentalities of said crimes:

**Any digitally stored information either sent or received by a black Blackberry Curve cellphone, including but not limited to video, photographs, and audio recordings. Any media that would identify the owner and or subscriber information.**

The foregoing items are located at or on:

> **A black Blackberry Curve cellphone commonly referred to as a smartphone including any digital storage device inserted into said phone that was seized from Gonzalo Ramirez. The phone is currently secured in evidence at the KBI office in Dodge City, Ford County Kansas.**

This affidavit and application is based on the facts contained in the separately attached Affidavit form.
Authorization to enter the location **without** first knocking and announcing **is not** requested.

WHEREFORE, the undersigned requests that a search warrant issue for the location described herein and authorizing seizure of the items described herein, as provided by law.

**James Thompson**
Affiant

SUBSCRIBED and sworn to before me on the above shown date and time.

Judge of the District Court of Ford County, Kansas
District Judge

### AFFIDAVIT IN SUPPORT OF AN SEARCH WARRANT

Comes now, Det. James L. Thompson, a Detective with the Dodge City Police Department and Task Force Agent with the Kansas Bureau of Investigation's Southwest Kansas Drug Task Force, being of lawful age, first duly sworn, and on his oath deposes:

The Affiant was working in his capacity as a Law Enforcement Officer and was involved in an investigation of Gonzalo Ramirez possessing a firearm after being convicted of a felony in Dodge City Kansas. The Affiant composed this affidavit based on his own investigation, talking with other officers involved with this case, and by speaking with other sources of information. The following are the facts which occurred in Dodge City, Ford County, Kansas to-wit:

### PROBABLE CAUSE

On 8-3-2009 law enforcement officers executed a narcotics search warrant at 1409 Avenue H in Dodge City, Ford County Kansas. The warrant included cell phones, narcotics, guns, and ammunition. During the search a black Blackberry Curve that was found in Gonzalo Ramirez's bedroom and seized pursuant to the search warrant. Det. Thompson searched the digital media in the phone and discovered a photograph showing Gonzalo Ramirez holding a black handgun. Several other photos stored on the phone show other known gang members wearing bullet proof vests and holding hand guns. A photograph also shows what appears to be a Mac 11 sub machine gun along with several other hand guns displayed on a bullet proof vest. On August 24, 2004 Ramirez was admitted to the Kansas Department of Corrections for convictions of Aggravated Assault a level 7 person felony and Criminal Discharge of a Firearm a level 7 person felony. Ramirez was released June 22, 2008 from the custody of the Department of Corrections. A search warrant is requested to seize and copy the digital media stored on the Blackberry Curve and its media card storage device. The phone is currently secured until a search warrant can be applied for.

AFFIDAVIT IN SUPPORT OF AN SEARCH WARRANT

Further the Affiant Saith Naught!

_____
Affiant

Sworn to and subscribed before me this _____ day of _____, 20___.

_____
Judge/ Notary Public

Term expires on _____ day of _____, 20____.

Page 2 of 2

**DISTRICT COURT OF FORD COUNTY, KANSAS**
**SEARCH WARRANT**
**TO ALL LAW ENFORCEMENT OFFICERS IN THE STATE OF KANSAS**

FOR COURT USE ONLY

FILED
09 AUG -5 PM 4:49
CLERK DISTRICT COURT
FORD COUNTY, KANSAS

Dated: **August 04, 2009**, at 4 : 00 P.M.

WHEREAS, affidavit and application for search warrant has been made to me by **James Thompson** and having evidence under oath before me from which I find there is probable cause for believing as follows:

The following crimes have been or are being committed:

**Felon in Possession of a Firearm KSA 21-4204**

No. _09 mR 115_
Ford County, Kansas

The following particularly described items are contraband or evidence, fruits or instrumentalities of said crimes:

**Any digitally stored information either sent or received by a black Blackberry Curve cellphone, including but not limited to video, photographs, and audio recordings. Any media that would identify the owner and or subscriber information.**

The foregoing items are located at or on:

**A black Blackberry Curve cellphone commonly referred to as a smartphone including any digital storage device inserted into said phone that was seized from Gonzalo Ramirez. The phone is currently secured in evidence at the KBI office in Dodge City, Ford County Kansas.**

YOU ARE THEREFORE COMMANDED forthwith and within the time provided by law to search the herein described person, place, or means of conveyance for the above described items, seizing and holding them to be dealt with according to law, and make due return of this warrant.

☐ Good cause also having been found to justify the same, you are hereby **authorized** to enter the location without first knocking and announcing your presence.

☐ This warrant **does not specifically authorize** entering the location without first knocking and announcing your presence.

Judge of the District Court of Ford County, Kansas
District Judge

## RETURN

I received this warrant on **August 04, 2009**, at _4 : 00_ P.M. and have executed it as follows:

On _August_ _05_, 20_09_, at _9 : 00_ A.M., I conducted a search of the person, place or means of conveyance described in the above warrant and seized the items of property listed below, on the attached list.

The search was completed on _August_ _05_, 20_09_, at _4 : 22_ P.M.

Officers present and participating in this search were:

_TFA Thompson, SA Harrison, Det. Webb_

FILED
09 AUG -5 PM 4:49

A copy of this warrant, with signed copy of this return listing said property seized and held, was by me:

☒ left with _Blackberry - Sealed in Evidence Bag_ as a receipt particularly describing each such item seized.

☐ left at the place of search and seizure, there being no person available with whom to leave it.

_____
Officer in Charge of Search

Returned to the Court on _August_ _5_, 20_09_.

I do solemnly swear the above and foregoing is true and correct to the best of my knowledge, so help me God.

SA _____ 213
Officer Making Return

SUBSCRIBED and sworn to before me on _August_ _05_, 20_09_.

_____
Judge or Clerk of the District Court

[SEAL - DISTRICT COURT, FORD COUNTY, KANSAS]

LIST OF PROPERTY SEIZED:                                      PAGE __1__ of __1__ pages

| Item No. | Item Description | Location Where Item Found | By |
|----------|-----------------|--------------------------|-----|
| 01 | Digital Media and Data from BlackBerry | 1409 Ave. H – Basement Bedroom | TFA Thompson |

FILED
09 AUG -5 PM 4: 49
CLERK DISTRICT COURT
FORD COUNTY, KANSAS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-02-MLB |
| | } | |
| PEDRO GARCIA, | } | |
| a.k.a. Peter Garcia, | } | |
| a.k.a. Pistol Pete, | } | |
| | } | |
| Defendant. | } | |

**UNITED STATES' RESPONSE TO DEFENDANT
PEDRO GARCIA'S MOTION FOR A *DAUBERT* HEARING (Doc. 506)[1]**

Comes now the United States of America, by and through Aaron L. Smith and Lanny D.

Welch, Assistant United States Attorneys for the District of Kansas, and responds to the

defendant Pedro Garcia's motion for a *Daubert/Kumho Tire* hearing (Doc. 506):

**A.      Charges**

Defendant Pedro Garcia is charged in the following counts of the indictment returned on

April 16, 2012:

> Count 1  -   RICO Conspiracy, in violation of Title 18, U.S.C. §
> 1962(d);
>
> Count 2  -   Violent Crime in Aid of Racketeering/Conspiracy to
> Murder, in violation of Title 18, U.S.C. § 1959(a)(5);

---

[1] This motion was joined by the following defendants and the United States offers this response to address this
motion as well: Eusebio Sierra-Medrano (512) and Alfredo Beltran-Ruiz (566).

Count 3 - Violent Crime in Aid of Racketeering/Murder, in violation of Title 18, U.S.C. § 1959(a)(1);

Count 4 - Violent Crime in Aid of Racketeering/Attempted Murder, in violation of Title 18, U.S.C. § 1959(a)(5);

Count 5 - Violent Crime in Aid of Racketeering/Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(3);

Count 6 - Possess/Discharge a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A);

Count 7 - Violent Crime in Aid of Racketeering/Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(3);

Count 8 - Violent Crime in Aid of Racketeering/Conspiracy to Commit an Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(6);

Count 9 - Possess and Brandish a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A).

**B.**   **Introduction**

The United States previously disclosed a multitude of expert reports and curricula vitae of witnesses expected to testify in the trial of this defendant and other defendants charged in the Nortenos prosecution. Included in these disclosures, were the identities of law enforcement officers who would be testifying as experts concerning the activities of the Nortenos street gang and other gangs operating in Dodge City, Kansas, during the time period charged in the indictment. Also included was an overview of their training, experience and anticipated testimony.

2

The discovery provided in this case has also included additional information reports/incident reports from these officers concerning specific investigative actions that each has conducted as part of this overall investigation.  In other words, in addition to providing expert testimony the United States expects these officers will be called to testify as a fact witnesses concerning interviews they have conducted, evidence they have collected and observations they have made during the course of specific incidents.

The defendant's motion requests a hearing pursuant to *Daubert/Kumho Tire* to allow the Court to make a determination as to the qualifications of some of the expert witnesses the government intends to call at trial.  In particular, the motion focuses on those witnesses identified as gang experts.  The United States agrees a hearing is appropriate and will ask the Court to make a finding that this expected testimony is proper under the law.

C.      **Legal Analysis**

American jurisprudence on evidence rests upon a foundation of liberal admissibility and the belief that the jury should be presented with any and all reliable evidence that will assist it in its deliberation.  See: *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 587 (1993) ("*Daubert*").  Rule 702 of the Federal Rules of Evidence ("Rule 702"), which governs the introduction of expert testimony, was drafted in accordance with the "'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to opinion testimony.'"  *Id.* (citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988)).

In 1993, the Supreme Court decided *Daubert*, which addressed those instances where a party seeks to introduce expert testimony based upon a novel or unorthodox scientific theory or technique.  Under the traditional test enunciated in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), a new discipline or technique had to reach general acceptance within the relevant scientific community before it could be admitted as expert scientific testimony.  In *Daubert*, the Court held that the *Frye* test had been superseded by adoption of the Federal Rules of Evidence, and that the rigid, restrictive "general acceptance" standard was incompatible with the liberal precepts of Rule 702.  *Daubert*, 509 U.S. at 585-88.

The *Daubert* Court cautioned, however, that Rule 702 does not extend carte blanche to litigants to present unorthodox or unproven theories to juries as established "science."  As the Court noted, the text of Rule 702 itself calls upon the trial judge to act as gatekeeper and screen purported scientific evidence for reliability.  *Id.* at 589-90.  Accordingly, the party offering purported scientific testimony must demonstrate that it represents "scientific knowledge" or the product of scientific reasoning or methods.  *Id.* at 592-93.

In undertaking the latter inquiry, the Court provided non-mandatory and non-exclusive factors for the trial court to consider:  1) whether the method consists of a testable hypothesis; 2) whether the method has been subject to peer review and publication; 3) the known or potential rate of error of the technique or theory when applied; 4) the existence and maintenance of standards and controls; and 5) whether the method is generally acceptable within the relevant scientific community.  Id. at 592-96 (envisioning flexible analysis when applying above "*Daubert* factors").

In the wake of *Daubert*, confusion arose over whether *Daubert's* analysis was restricted to expertise in purely scientific disciplines, or should be applied to "technical or other specialized knowledge" under Rule 702.  See, *e.g., United States v. Plunk*, 153 F.3d 1011, 1016 (9th Cir. 1998) (expertise in drug trade jargon not subject to *Daubert* analysis); *United States v. Starzecpyzel*, 880 F. Supp.2d 1027, 1028-29 (S.D.N.Y. 1995) (*Daubert* inapplicable to handwriting analysis as expertise is practical and not scientific).

The Supreme Court's decision in *Kumho Tire Company v. Carmichael*, 526 U.S. 137, 141, 149-51 (1999) ("*Kumho Tire*") erased that distinction and held that *Daubert* applied not only to strictly scientific disciplines, but to expertise based upon skill, experience, or observation as well.  The Court in *Kumho Tire* instructed that the trial judge may consider one or more of the *Daubert* factors in performing the gatekeeping function under Rule 702.  The Court emphasized, however, that the *Daubert* factors do not comprise a mandatory checklist of requirements.  Since the range of non-scientific expertise admissible under Rule 702 is so varied, none of the *Daubert* factors should necessarily be included or excluded in any assessment of reliability.  *Kumho Tire*, 526 U.S. at 150-52 (factors intended to be helpful, not definitive).  The Supreme Court has clearly stated that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire*, 526 U.S. at 156.

It is within the discretion of this Court to determine how to perform its gatekeeping function under *Daubert*.  *Goebel v. Denver and Rio Grande Western Railroad Company*, 215 F.3d 1083, 1087 (10th Cir. 2000).  A pretrial *Daubert* hearing is not specifically mandated.  *Id.* However, it is necessary for the Court to make a record of its findings and analysis of the proffered expert testimony.

As it relates to this motion, the United States is offering expert testimony regarding the experts' opinions, training and experiences concerning the Nortenos street gang[2] in Dodge City, Kansas (characteristics, indicia of membership, common practices/activities and identification of members).  It will also be necessary to delve somewhat into the membership and activities and of the rival Surenos street gang to add context to this evidence.

Relevant expert testimony should be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591.  "In assessing whether testimony will assist the trier of fact, district courts consider several factors, including whether the testimony is within the juror's common knowledge and experience." *United States v. Garcia*, 635 F.3d 472, 476-77 (10th Cir. 2011)(other cites omitted).  "Pursuant to Rule 702, courts must conduct a 'common sense inquiry' into whether a juror would be able to understand certain evidence without specialized knowledge." *Id.* at 477, quoting, *United States v. Becker*, 230 F.3d 1224, 1231 (10th Cir. 2000).   Specialized knowledge can be acquired through experience and training and should not be limited to scientific experts.  *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009).

The Tenth Circuit Court of Appeals has frequently upheld the admission of expert gang testimony.  See: *United States v. Doddles*, 539 F.3d 1291 (10th Cir. 2008)(investigating officer identified members of a rival gang, testified that it would not be unusual for a leader of a drug trafficking gang to keep drugs in his bedroom and that members of such a gang make guns available to other gang members); *United States v. Robinson*, 978 F.2d 1554, 1562 (10th Cir. 1992)("We are persuaded that associational evidence may be directly relevant on the issues of

---

[2] As disclosed in the indictment, the Nortenos street gang in Dodge City has sub-gang sets identified as the Diablos Viejos (DV) and Los Carnales Chingones (LCC).

6

formation, agreement and purpose of the conspiracy...Gang membership helped to establish an agreement among the subject, the purpose of the conspiracy and knowledge on the part of these defendants.") ; and *United States v. Hartsfield*, 976 F.2d 1349 (10th Cir. 1992)(The court concluded that testimony, concerning the defendant's membership in the Black Mafia Crip Dawgs and that the main purpose of this gang was to distribute cocaine and crack cocaine, was probative of the existence of the actual conspiracy alleged).  See also: *United States v. Chavful*, 100 Fed. Appx. 226 (5th Cir. 2004); and *United States v. Hankey*, 203 F.3d 1160, 1168-70 (9th Cir. 2000).

The Tenth Circuit has allowed expert testimony from police officers on other issues on many occasions.  See: *United States v. Quintana*, 70 F.3d 1167, 1170-71(10th Cir. 1995)(detective's testimony about the meaning of terms used by drug traffickers); *United States v. Sturmoski*, 971 F.2d 452, 459 (10th Cir. 1992)(law enforcement agent's testimony about methamphetamine labs and the use of firearms in those labs); *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991)(evidence concerning possession and probable use of single edge razor, beeper and gun was admissible); and *United States v. Martinez*, 938 F.2d 1078, 1083 (10th Cir. 1991)(testimony regarding possession of guns and scales is admissible as tools of the trade).

The testimony of some Dodge City Police Department personnel is properly admitted as expert testimony.  It should be expected that jurors serving in these cases would not possess knowledge about street gangs in general and would particularly lack knowledge and understanding about the activities of the Nortenos street gang in Dodge City, Kansas.  The gang's membership, leadership, symbolism, signs, dress, appearance, activities, rivals, rules, etc. would not be within the common knowledge and experience of a juror called for service in

7

Wichita, Kansas.  This expert testimony will assist the juries in performing their duty in determining whether the Nortenos comprised an enterprise under the law.

The defense may further complain that the officers' opinions are based on hearsay rendering the opinions inadmissible.   The United States would initially note that all expert opinions are based on hearsay – from the information contained in books relied upon for education and theories, to the information and ideas taught by professors who are not testifying at trial.  Rule 703 states that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing."  The rule further states that if the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted."

The officers' expert opinions are based upon their years of working the streets of Dodge City as police officers, formal and informal education, formal and informal training, interviews of witnesses, suspects, victims and other officers, as well as their observations of criminal and non-criminal conduct.  Within their particular field, this is the type of data and/or factual information that officers rely upon when forming their opinions about gang activity.  This testimony is relevant and reliable as required by law.

Finally, the defendant may assert that a lay witness may not testify as an expert witness in the same case.  This is not the law of the Tenth Circuit.  "[I]t is possible for the same witness to provide both lay and expert testimony in a single case." *United States v. Caballero*, 277 F.3d 1235, 1247 (10th Cir. 2002).

Wherefore, the United States respectfully requests that this Court deny the defendant's motion after engaging in the necessary analysis required by *Daubert* and *Kumho Tire*.

> s/ Aaron L. Smith
> AARON L. SMITH
> Assistant United States Attorney
> 301 N. Main, Suite 1200
> Wichita, Kansas 67202
> 316-269-6481
> K.S.Ct.No. 20447
>
> s/ Lanny D. Welch
> LANNY D. WELCH
> Assistant United States Attorney
> 301 N. Main, Suite 1200
> Wichita, Kansas 67202
> 316-269-6481
> K.S.Ct.No. 13267

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of March, 2013, we electronically filed the foregoing motion with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

> /s/ Aaron L. Smith
> AARON L. SMITH
> Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 12-CR-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S REPLY TO THE UNITED STATES' RESPONSE TO THE MOTION FOR A *DAUBERT* HEARING**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and replies to the United States' Response to The Motion for a *Daubert* Hearing (Doc. 568) hereinafter "Response." Defendant filed the motion for *Daubert* hearing with respect to the qualification and opinions of certain 'gang' expert witnesses identified by the government.

The defense agrees with the government that the *Daubert* decision and Rule 702 of the Federal Rules of Evidence, have liberalized or relaxed the traditional barriers to expert opinion testimony. *See* Response at p. 3. That said, neither Rule 702 of *Daubert* contemplated opening the expert opinion barn door to the admission of unorthodox and/or unproven theories. Both the Rule and *Daubert* demand the court act as a "gatekeeper," with the duty of screening the expert testimony that a party proposes to offer. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S., 579, 589-90 (1993). *See also* Response at p. 3.

Against this backdrop, and for good or ill, the Tenth Circuit has, as have the other Circuits, seen fit to admit law enforcement officers' 'expert' opinions regarding gang or street gangs. *See*

*United States v. Doodles*, 539 F.3d 1291 (10th Cir. 2009).  It is the use of law enforcement officers to testify as gang experts in the context of the present case that problems arise.   In the eyes of the defense the most troubling problem is the probability of *Crawford* barred hearsay in the guise of expert opinion.

The Confrontation Clause operates to restrict the admission of testimonial statements against a defendant.  *United States v. Pursley*, 577 F.3d 1204, 1223 (10th Cir. 2009*) cert. denied* 130 S.Ct. 1098 (2010.)  "A testimonial statement is a statement that a reasonable person in the position of the declarant would objectively foresee might be used in the investigation or prosecution of a crime." *United States v. Pablo*, 696 F.3d 1280, 1287 (10th Cir. 2012), citing *Pursley*, *Id*.  "A trial court may not admit out-of-court testimonial statements against a defendant if the declarant does not testify, unless the declarant is unavailable to testify and the defendant had an opportunity to cross examine the [declarant].  *Williams v. Illinois* 132 S.Ct. 2221, 2232 (2012)."  *Id*. (other internal citations omitted).

*Crawford* bars only the admission of testimonial statements when they are admitted to establish the truth of the matter asserted.  But for certain exceptions, hearsay statements are generally admissible.  An example of the admission of out-of -court statements for a purpose other than the truth, "is where an expert witness testifies regarding the out-of-court development of facts or data on which the expert's opinion is based."  *Id*. at 1287.  "**However**," note that "the **disclosure of this otherwise inadmissible information is to assist the jury in evaluating the expert's opinion, not to prove the substantive truth of the otherwise inadmissible information**."  *Id*. at 1288 citing *Wilson v. Merrell Dow Pharm., Inc*., 893 F.2d 1149, 1153 (10th Cir. 1990) (emphasis added).

Addressing the issue of admitting judicial statements in the guise of expert testimony was addressed by the Court:

<div align="center">2</div>

We have previously held that the extent to which an expert witness may disclose to a jury an otherwise inadmissible out-of-court statement without implicating a defendant's confrontation rights is a question of degree. *See Johnson*, 587 F.3d at 635 ('[A]n expert's use of testimonial hearsay is a matter of degree.')  If an expert **simply parrots** another individual's out-of-court statement, rather than conveying an independent judgment that only incidentally discloses the statement to assist the jury in evaluating the expert's opinion, then the expert is, in effect, disclosing that out-of-court statement for its substantive truth; the expert thereby becomes little more than a backdoor conduit for an otherwise inadmissible statement. *See, e.g.id*. ('Allowing a witness simply to parrot out-of-court testimonial statements of cooperating witnesses and confidential informants directly to the jury in the guise of expert opinion **would provide an end run around Crawford**.').

*Id*. (emphasis added).  In reaching its decision the Pablo court went on:

*United States v. Lombardozzi*, 491 F3d 61, 72 (2d Cir. 2007), explaining that because an expert witness "may form an opinion by applying her expertise to otherwise inadmissible evidence," including out-of-court statements, and convey that information to the jury for purposes of evaluating the expert's opinion, the admission of the out-of-court statement deprives a defendant of his confrontation rights only if the expert conveys the statement "directly to the jury **in the guise of an expert opinion**."

Id. (emphasis added).  Looked at another way, there is no error in a district court's admission of hearsay statements relied upon by an expert to form an opinion where the "expert's testimony was not simply a summarizing of the out-of-court statements of others" and "consisted primarily on his conclusions" based in part on hearsay.  *United States v. Affleck*, 776 F.2d 1451, 1457-58  (10th Cir. 1985.

"Federal Rule of Evidence 702 requires courts to assess the reliability of expert testimony based on scientific, technical or other specialized knowledge before admitting it.  *United States v. Roach*, 582 F.3d 1192, 1206 (10th Cir. 2009), citing *Daubert* 509 U.S.at 580 and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  Under the evidentiary Rule, the court's inquiry is twofold. First the court must determine whether the witnesses are qualified as experts in the area about which they will testify.  *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) ("In determining

3

whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training or education' to render an opinion." (quoting Fed.R.Evid. 702)).  Second, the court must determine whether the expert opinion is relevant and reliable.  *Id.* 555 F.3d at 1241, citing *Daubert*, 509 U.S. 579, 589 (1993).

An expert exercises independent judgment.  He does not **and may not parrot** some another individual's out-of-court statement for, if the expert does so, he is offering that statement or statements, for the truth rather than conveying an independent judgment.   In such case there has been an end run around *Crawford*.  *United States v. Pablo*, 696 F.3d 1280, 1288 (10th Cir. 2012).

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

### CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of March, 2013, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

KMAZ Doc. 2188637

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-02-MLB |
| | } | |
| PEDRO GARCIA, | } | |
| a.k.a. Peter Garcia, | } | |
| a.k.a. Pistol Pete, | } | |
| | } | |
| Defendant. | } | |

**RESPONSE OF THE UNITED STATES TO
DEFENDANT PEDRO GARCIA'S WRITTEN ARGUMENT TO
SUPPRESS EVIDENCE SEIZED FROM HIS RESIDENCE (Doc. 564)**

The United States of America, by Aaron L. Smith and Lanny D. Welch, Assistant United States Attorneys, hereby responds to Defendant Pedro Garcia's Written Argument to Suppress Evidence Seized from his Residence.[1]  In support of this response, the United States avers as follows:

**A.     Facts**

On June 8, 2009, two crimes occurred in Dodge City, Kansas, which are currently charged as counts in the RICO/VICAR indictment assigned to this Court.  The first was a home invasion robbery which took place at 1005 Avenue E at approximately 11:00 p.m. that evening.[2] The victims of these crimes reported to the Dodge City Police Department (DCPD) that four to six armed men wearing masks rushed into the home through the front door.  One of the robbers

---

[1] Doc. 564.

[2] The home invasion robbery is charged as Counts 7-9 of the Indictment.

1

pistol whipped one of the occupants while demanding money.  After being struck in the head with a handgun, this victim was forced into different rooms in the home at gunpoint where he was forced to locate money.  Another robber or robbers stood guard by the door.  After taking money in the residence the robbers fled from the home.

The second criminal episode occurred at approximately 11:30 p.m. in a trailer park located in the 200 block of E. McArtor Street.[3]  At that location, victims and witnesses reported four men attacked another group of men who were gathered near Lot 24.  One or more of the attackers were armed and it was reported to the DCPD that it sounded as if multiple weapons were fired in the direction of the men gathered near Lot 24.  Witnesses reported the attackers had their faces covered and were shouting at the victims while the shots were being fired.  During the attack one of the men gathered near Lot 24 was struck at least twice by gun shots.  This man, Israel Peralta, died at the scene as the result of a gunshot wound he suffered to his back.  A second man, Mariano Sorano, was struck by gunfire but survived.  The attack appeared to be unprovoked; however, the area where the murder occurred was considered by street gangs in Dodge City to be territory belonging to the Sureno street gang.  The Surenos were and are rivals of the Nortenos street gang.  The DCPD has no evidence that Israel Peralta was associated with the Surenos, or any other street gang.  However, it appears that both Mariano Sorano and Roberto Arco, another victim present during the assault, may have been associated with the Surenos.

The DCPD also received information that earlier in the day two individuals had driven by the location of the trailer park and flashed gang signs at persons there which identified the persons in the car as members of the Nortenos street gang.  Witnesses later identified Russell

---

[3] These crimes are charged as Counts 2-6 of the Indictment.

2

Worthey from a photo-lineup as being one of the Nortenos in the vehicle who flashed gang signs at persons in the trailer park. Russell Worthey was documented by the DCPD as a Norteno and the witness who identified Worthey from the lineup also stated they knew Worthey to be a Norteno. Subsequent investigation revealed the other gang member present in the vehicle was Anthony Wright.

The crimes which occurred on June 8, 2009, were investigated by the DCPD. As explained by Detective Webb in his oral testimony supplied in support of the search warrant for 1302 Avenue D, the investigations received a tremendous boost in June and October of 2010, when officers interviewed Joe Galindo. Galindo told them about his contact with Pedro Garcia, Gonzalo Ramirez and other Nortenos gang members on June 8, 2009. Galindo said he received a call from Garcia that evening to pick he and Gonzalo Ramirez up. After picking them up, they saw police cars in an area south of Garcia's residence. Garcia and Ramirez told Galindo some "Guats" were "knocked off" to explain why police cars were at that location.[4] Later, when they arrived at Ramirez's house, Garcia admitted to shooting a "scrap" and that a "scrap died tonight."[5]

The investigation of these crimes was also greatly assisted by the cooperation of Anthony Wright which began, in earnest, in October of 2010.[6] At that time Wright told law enforcement

---

[4] Webb testimony, pp. 13-16.

[5] Webb testimony, p. 14, lines 3-19.

[6] The defendant claims the information supplied to the issuing judge was stale because the murder and robbery occurred approximately 16 months prior to the application for the warrant. However, the United States contends the fact that this search warrant was applied for the same month the DCPD received credible information from Galindo and Wright suggests the DCPD applied for the search warrant immediately after their investigation had established Pedro Garcia and his residence were relevant to these investigations.

3

that he had been present when Israel Peralta was killed.[7]  Wright informed the DCPD he and Russell Worthey had driven to Garcia's residence on June 8, 2009, in time to see Garcia, Ramirez, Joshua Flores and Jesus Flores running back to the house with red bandanas covering their faces.  After entering Garcia's residence, Wright said Garcia, Ramirez, Joshua Flores and Jesus Flores discussed the robbery of Guatemalans they had just committed.  After Wright and Worthey watched the four divide the robbery proceeds, Wright, Worthey, Garcia and Ramirez left in Wright's car looking for some "scraps."  The four decided to drive to the trailer park on E. McArtor specifically because they believed they would find Sureno gang members there.

On October 18, 2010, DCPD Detective Shane Webb presented oral testimony to Ford County District Judge Van Hampton in support of search warrants for 1302 Avenue D and 1409 Avenue H, both were residences in Dodge City, Kansas.[8]  1302 Avenue D was the residence of Pedro Garcia.  1409 Avenue H was the residence of Gonzalo Ramirez.  In his testimony, Detective Webb stated that the DCPD was investigating the Nortenos street gang for a variety of criminal activity.[9]  He also stated their belief that the murder which occurred on June 8, 2009, was gang related.[10]  Throughout his testimony he provided information received from Joe Galindo and Anthony Wright where Pedro Garcia and Gonzalo Ramirez expressed the desire to find rival gang members and after the shooting Garcia and Ramirez believed Garcia had killed a Sureno.[11]  Anthony Wright told the DCPD that during the attack Garcia and/or Ramirez yelled "fucking Norte" which would have informed the victims they were being assaulted by members

---

[7] Webb testimony, pp. 16-25.

[8] The search warrant issued by Judge Hampton for 1302 Avenue D, Dodge City, Kansas, is attached as Exhibit 1.

[9] Webb testimony, pp. 25-26.

[10] Webb testimony, p. 7, lines 12-25; p. 8, lines 1-5.

[11] Webb testimony, p. 14, lines 3-19; p. 20, lines 7-25; pp. 21-23.

of the Nortenos.[12]  Webb also told the court that Garcia informed Joe Galindo that Ramirez was "dumping on the scraps" which meant they had been confronting rival gang members.

Finally, in his testimony Detective Webb addressed the link between 1302 Avenue D in Dodge City, Pedro Garcia's residence and the residence which was the subject of the relevant search warrant, and the crimes which took place on June 8, 2009.  Anthony Wright said he had seen Pedro Garcia and the other Norteno gang members return to that residence wearing red bandanas following their robbery of the Guatemalans who lived at 1005 Avenue E.[13]  Detective Webb corroborated that a home invasion robbery had taken place in close proximity to Pedro Garcia's residence on June 8, 2009.[14]  Once they entered the basement of 1302 Avenue D, Wright observed the four "divvying up" the robbery proceeds.[15]  Finally, Webb informed the judge that Garcia, Ramirez, Wright and Worthey left from 1302 Avenue D immediately prior to the murder in search of "scraps."[16]

**B.     Relevant Evidence Seized**

The DCPD's belief that gang evidence would still be located at Pedro Garcia's residence was confirmed with the items seized during the execution of the warrant.  The United States intends to offer at trial two signs found in the defendant's bedroom which make reference to the word North.  One is a street sign which says "Northern Ave." and the other is a "Northtown" license plate.  Both the sign and license plate indicate the defendant's continued affiliation with the Nortenos[17] street gang.  Four letters from fellow gang members, some written in red ink,

---

[12] Webb testimony, p. 21, lines 18-19.
[13] Webb testimony, p. 17, lines 10-25; pp. 18-20; p. 24, lines 10-25.
[14] Webb testimony, p. 14, lines 20-25; p. 15, lines 1-9.
[15] Webb testimony, p. 19, lines 17-18.
[16] Webb testimony, p. 19, lines 20-25; pp. 20-23.
[17] "Nortenos" is the Spanish word for "Northerners."

5

were found in the defendant's room.[18] Multiple St. Ramon candles were found which had pennies strapped to the mouth of the saint depicted on the candle. This is a practice utilized by criminals, usually of Hispanic derivation, to hope and/or pray that others involved in their crimes will not talk to or cooperate with law enforcement. Finally, although not seized by the officers, in the basement of the house officers observed Norteno graffiti painted on the walls with red paint. Photographs of the graffiti were taken and would be offered into evidence.

### C. Search Warrant

The search warrant which is the subject of this motion was narrowly drawn and only sought permission to search for gang attire and paraphernalia and proof of residency. "An affidavit establishes probable cause for a search warrant if the totality of the information it contains establishes the fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Soderstand*, 412 F.3d 1146, 1152 (10th Cir. 2005). Regardless the focus of the warrant "probable cause to search cannot be based on stale information that no longer suggests that items sought will be found in the place to be searched." *United States v. Mathis*, 357 F.3d 1200, 1206-07 (10th Cir 2004). However, "searches conducted pursuant to a warrant are favored, and, as such, the magistrate's determination that probable cause exists is entitled to great deference." *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005).

Detective Webb acknowledged that he lacked probable cause to believe the firearms used in the robbery and murder would still be located at 1302 Avenue D. Instead, he informed the judge that Pedro Garcia was currently incarcerated on federal charges and it was his experience and belief that clothing items would be maintained at his residence by his parents. Specific

---

[18] Red is the adopted color of the Nortenos and members frequently wear red clothing and otherwise use that color to display their allegiance to the gang.

6

clothing items, red bandanas, were identified to the DCPD as being worn to conceal the identities of the men who committed the home invasion robbery.  Detective Webb also discussed the link between the home invasion robbery and 1302 Avenue D which was that Garcia and the others were seen returning to that residence wearing red bandanas immediately following the robbery and used the basement of that home to divide the robbery proceeds.  When Garcia, Ramirez, Wright and Worthey left the residence to look for rival gang members, Joshua Flores and Jesus Flores remained at 1302 Avenue D.[19]  That is why he offered that probable cause existed to believe red bandanas and gang clothing would still be located at the residence.[20]

In his brief, the defendant holds up the affidavit filed in support of the search warrant in *United States v. Campbell*, 603 F.3d 1218 (10th Cir. 2010),[21] as being far more comprehensive than Detective Webb's and, therefore, he claims Webb's is deficient because it falls short in comparison.  Comparing these two affidavits is of little value because they were created for different cases and the *Campbell* warrant was intended to have a far greater scope and purpose. It appears the *Campbell* warrant affidavit was essentially the same as the one supplied in *United States v. Roach*, 582 F.3d 1192 (10th Cir. 2009).  The *Campbell/Roach* affidavit was drawn to address multiple searches of numerous gang members' residences.  Further, these warrants sought far more items of evidence than the warrant which is the subject of this motion.  It is not surprising that the *Campbell/Roach* affidavit was more comprehensive given the intent of the investigators in those cases and the greater scope of their investigation.  Detective Webb's

---

[19] Webb testimony, p. 20, lines 3-7.

[20] Webb testimony, p. 26, lines 9-21.

[21] As will be discussed later, it is difficult to determine if the Tenth Circuit Court of Appeals was as impressed with the *Campbell/Roach* affidavit as the defendant given the fact the court upheld both search warrants based upon the good faith exception and not because it found probable cause existed.

affidavit was offered in support of two search warrants which focused on two people and was for the very limited purpose of seeking gang attire/paraphernalia and proof of residency at two locations.

### D.      Good Faith

If the Court should find the search warrant was lacking in probable cause the United States suggests suppression of the evidence gathered from the execution of the search warrant is not appropriate. When, as in this case, officers rely in good faith on a judge's authorization for the search warrant, suppression of the evidence is not necessary. *United States v. Leon*, 468 U.S. 897, 922 (1984). An officer's reliance on a judge's issuance of a search warrant is only unreasonable if an affidavit is devoid of factual support. *United States v. Henderson*, 595 F.3d 1198, 1201-01 (10th Cir. 2010). An affidavit is not devoid of factual support if it establishes a minimally sufficient nexus between the illegal activity and the place to be searched. *Gonzales*, 399 F.3d at 1230-31. "An affidavit establishes a sufficient nexus when it describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place." *Campbell*, 603 F.3d at 1231 (other cites omitted). "[M]agistrates may permissibly rely on law enforcement officers' opinions regarding where contraband or evidence may be kept." *Id.*

A warrant which is found to be lacking requires suppression only if one of the following four situations occurred:

> First, evidence should be suppressed if the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth. Second, the [good faith] exception does not apply when the issuing magistrate wholly abandons her judicial role. Third, the good-faith exception does not apply when the affidavit in support of the warrant is so lacking in indicia of

8

probable cause as to render official belief in its existence entirely unreasonable. Fourth, the exception does not apply when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid.

*United States v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000).

The United States does not believe any of the four exceptions rendering the good-faith rule inapplicable are present in the instant case. We presume the defendant would offer that the third exception should be considered given his suggestion probable cause was lacking. In *United States v. Roach*, 582 F.3d 1192, 1204 (10th Cir. 2009), the Tenth Circuit considered a similar argument that officers could not have reasonably believed probable cause existed because the information contained in the affidavit was stale. The affidavit filed in support of the search warrant in *Roach* detailed crimes committed by him which occurred more than 5 years before the presentation of the search warrant. *Roach*, 582 F.3d at 1202. Further, the Tenth Circuit found the affidavit did not supply a sufficient nexus between Roach and the residence to be searched. *Id*. at 1203. Despite finding the information in the warrant was stale and that there was a lack of showing of a nexus between Roach and the residence to be searched, the court ruled the evidence should not be suppressed because the officers had relied in good faith on the magistrate's issuance of the warrant.

In the instant case, in addition to the separate crimes which occurred on June 8, 2009, for which Pedro Garcia was being investigated, Detective Webb testified in support of the search warrant that Pedro Garcia was incarcerated at that time for an unrelated federal crime.[22] The most recent crimes committed by Pedro Garcia and presented to the judge considering the

---

[22] Webb testimony, p. 25, lines 13-17.

9

821

issuance of the search warrant occurred much closer in time than was presented in *Roach.*[23]

Gonzalo Ramirez, an associate of Pedro Garcia's and whose residence was the subject of a contemporaneous search warrant application as part of the same testimony from Webb, was incarcerated in a Kansas prison for drug trafficking.[24] He also informed the judge there was a larger investigation of the Nortenos underway regarding narcotics trafficking, homicides and home invasions/robberies.[25] To his credit, Detective Webb acknowledged they lacked probable cause to believe the firearms used in the murder and home invasion robberies would be found at Garcia's residence. He made clear they were only seeking evidence of gang affiliation because they believed it was likely those items would still be located at 1302 Avenue D.[26] Clearly, Detective Webb believed probable cause existed for the issuance of the search warrant and Ford County District Judge Van Hampton agreed. The only conclusion which can be drawn is that Detective Webb, and presumably the officers who joined in the search, justifiably relied on the search warrant. Therefore, the good-faith exception applies in this case and if the Court finds probable cause was lacking the evidence should not be suppressed.

---

[23] Roach's last criminal conduct had occurred more than 5 years prior to the issuance of the warrant in that case and Garcia's murder and robbery took place approximately 16 months prior to the issuance of this warrant. In addition, Garcia had been incarcerated on federal charges for several months and, presumably, unable to commit new criminal conduct for several months prior to the issuance of this warrant.

[24] Webb testimony, p. 25, lines 18-19; p. 23, lines 20-21.

[25] Webb testimony, p. 25, lines 24-25; p. 26, lines 1-7.

[26] Webb testimony, p. 27, lines 11-19.

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov


/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of March, 2013, we electronically filed the foregoing response with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Lanny D. Welch

11

DISTRICT COURT OF FORD COUNTY, KANSAS
SEARCH WARRANT
TO ALL LAW ENFORCEMENT OFFICERS IN THE STATE OF KANSAS

FOR COURT USE ONLY

FILED
2012 SEP 17 PM 3:46
CLERK DISTRICT COURT
FORD COUNTY, KANSAS

Dated: **October 18, 2010**, at ___5:05 P___.M.

WHEREAS, affidavit and application for search warrant has been made
to me by **Detective Shane Webb** and having evidence under oath before me
I find there is probable cause for believing as follows:

The following crimes have been or are being committed:

**Robbery KSA 21-3426**

No. _12-MR-27_
Ford County, Kansas

The following particularly described items are contraband or evidence,
fruits, or instrumentalities of said crimes:

> Any gang attire including but not limited to red bandannas and items with Norteno gang association, photos,
> drawings, writings, gang roll calls ect..  Any documents, photographs, mail, bills, or other personal or business items
> indicating the identity of persons residing at the location.

The foregoing items are located at or on:

1302 Avenue D Dodge City, Ford County, Kansas 67801.  The residence is a bi-level residence with the front door facing west
toward Avenue D.  The numbers 1302 are affixed to the south side of the front door in black and white.  The numbers 1302 are
also affixed on the side of the mailbox in the front yard west side of residence.  The residence is white / cream sided house with
brown trim and a front concrete porch.  The back door of the residence faces the east toward an alley.  There is a small
wooden deck with stairs that comes off from the house.

> All persons and vehicles present at the residence and to include all curtilage and separate / detached outbuildings
> located on or within the property.  Any vehicles belonging to any resident or any persons present within the property.

YOU ARE THEREFORE COMMANDED forthwith and within the time provided by law to search the herein
described person, place, or means of conveyance for the above described items, seizing and holding them to be
dealt with according to law, and make due return of this warrant.

☐   Good cause also having been found to justify the same, you are hereby **authorized** to enter the location without first
knocking and announcing your presence.

☒   This warrant **does not specifically authorize** entering the location without first knocking and announcing your presence.

Judge of the District Court of Ford County, Kansas
District Judge

GOVERNMENT
EXHIBIT
1
CARBERS 800-763-0339

823

**RETURN**

I received this warrant on **October 18, 2010**, at _5 05_ _P_.M. and have executed it as follows:

On _October_ _19_, 20_10_, at _10:56_ _A_.M., I conducted a search of the person, place, or means of conveyance described in the above warrant and seized the items of property listed below, on the reverse side, or on the attached list.

The search was completed at _1:50_ _P_.M.

Officers present and participating in this search were:

_Webb  Gravatt  Bice  Hawkins_

FILED
2012 SEP 17 PM 3:46
CLERK DISTRICT COURT
FORD COUNTY, KANSAS

A copy of this warrant, with signed copy of this return listing said property seized and held, was by me:

☐ left with _____ as a receipt particularly describing each such item seized.

☒ left at the place of search and seizure, there being no person available with whom to leave it.

_____
Officer in Charge of Search

Returned to the Court on _September_ _17_, 20_12_.

I do solemnly swear the above and foregoing is true and correct to the best of my knowledge, so help me God.

_____ #237 (Retained by Judge Love until filed this date)
Officer Making Return

SUBSCRIBED and sworn to before me on _September_ _17_, 20_12_.

_____
Judge or Clerk of the District Court

[SEAL: DISTRICT COURT FORD COUNTY KANSAS]

LIST OF PROPERTY SEIZED:                                    PAGE ____ of _____ pages

| Item No. | Item Description | Location Where Item Found |
|---|---|---|
| 1 | 16 St. Ramon Candles | Center North Room of Basement #200 |
| 2 | Northern Ave. Street Sign | NW Bedroom in Basement #2 |
| 3 | Scarface Picture | NW Bedroom in Basement #20 |
| 4 | Nortatown Decorative License Plate | NW Bedroom in Basement #200 |
| 5 | ~~St. Ramon Figurine~~ Letter from Gonzo to Peter | NW Bedroom in Basement #200 |
| 6 | 2 Wall Posters | NW Bedroom in Basement #20 |
| 7 | Letter to Peter in Red Ink | NW Bedroom in Basement #200 |
| 8 | St. Ramon Figurine | NW Bedroom in Basement #200 |
| 9 | Letter & Notes Along w/ Envelope Addressed to Pedro Gargia | NW Bedroom in Basement #200 |
| 10 | Gun Rimoil & Break Free Solvent | NW Bedroom in Basement #200 |
| 11 | Wood Clipboard w/ Gang Graffiti Written in Red Ink | Closet of NW Bedroom in Basement #200 |
| 12 | Letter to Peter from Knox | Center West Room of Basement #200 |

FILED
2012 SEP 17 PM 3:46
CLERK DISTRICT COURT
FORD COUNTY, KANSAS



**DISTRICT COURT OF FORD COUNTY, KANSAS**
**AFFIDAVIT AND APPLICATION FOR SEARCH WARRANT**

FOR COURT USE ONLY

No. 12-MR-217

Ford County, Kansas

Dated: **October 18, 2010**, at __5:05__ P.M.

*Affiant's name:* **Detective Shane Webb** *being first duly sworn on oath, says that Affiant has reason to believe facts as follows:*

The following crimes have been or are being committed:
**Robbery KSA 21-3426**

The following particularly described items are contraband or evidence, fruits, or instrumentalities of said crimes:

> Any gang attire including but not limited to red bandannas and items with Norteno gang association, photos, drawings, writings, gang roll calls ect..  Any documents, photographs, mail, bills, or other personal or business items indicating the identity of persons residing at the location.

The foregoing items are located at or on:

1302 Avenue D Dodge City, Ford County, Kansas 67801.  The residence is a bi-level residence with the front door facing west toward Avenue D.  The numbers 1302 are affixed to the south side of the front door in black and white.  The numbers 1302 are also affixed on the side of the mailbox in the front yard west side of residence.  The residence is white / cream sided house with brown trim and a front concrete porch.  The back door of the residence faces the east toward an alley.  There is a small wooden deck with stairs that comes off from the house.

> All persons and vehicles present at the residence and to include all curtilage and separate / detached outbuildings located on or within the property.  Any vehicles belonging to any resident or any persons present within the property.

Testimony @
This ~~affidavit~~ and application is based on the facts contained in the separately attached Affidavit form.  Authorization to enter the location **without** first knocking and announcing **is not** requested.

WHEREFORE, the undersigned requests that a search warrant issue for the location described herein and authorizing seizure of the items described herein, as provided by law.

_____
**Detective Shane Webb**
Affiant

(SUBSCRIBED and sworn to before me on the above shown date and time.

_____
Judge of the District Court of Ford County, Kansas
District Judge

warrant.101810.txt

1

IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
SIXTEENTH JUDICIAL DISTRICT

In the Matter of the Application
for Search Warrants for:
1302 Avenue D
and
1409 Avenue H

TRANSCRIPT OF APPLICATION FOR SEARCH WARRANTS

(Digitally Recorded)

Before the
Honorable Van Z. Hampton
District Judge

October 18, 2010

APPEARANCES:

State appears by and through J. Scott James, Assistant Ford County Attorney, P.O. Box 1057, Dodge City, Kansas 67801.

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

2

10:27   THE COURT:   We're here for application for a warrant being presented by

Page 1

warrant.101810.txt

Scott James. And, present to testify is Detective Shane Webb. I'm going to administer the oath. Please raise your right hand.

SHANE WEBB,

(Called as a witness on behalf of the State, and after having been duly sworn to tell the truth, the whole truth and nothing but the truth testified as follows:)

THE COURT:  You may have a seat.

You may proceed, Mr. James.

DIRECT EXAMINATION

BY MR. JAMES:

Q   Would you please state your name for the record?

A   Shane Webb.

Q   And, who are you employed by?

A   The Dodge City Police Department.

Q   What's your capacity there?

A   I'm currently assigned to the Southwest Kansas Drug Task Force. I'm cross credentialed with the Kansas Bureau of Investigation.

Q   All right.  Do you also hold the rank of detective with the Police Department?

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

3

A   Yes, I do.

Q   All right. You are applying today for a warrant -- two warrants, for 1302 Avenue D in Dodge City here in Ford County, Kansas, and at 1409 Avenue H here in Dodge City, Ford County,

Page 2

warrant.101810.txt

Kansas. What items are you looking for at those locations?

A    At both residences exactly the same thing, any gang attire including but not limited to red bandanas, and any items with Norteno gang association, photos, drawings, writings, gang role calls, etc., any documents, photographs mail, bills or other personal or business items indicating the identity of persons residing at the locations.

Q    All right.  And, do you know any of the people who reside at these two locations?

A    Yes.  At 1302 Avenue D would be the parents of Peter Garcia.  Peter is what he goes by, Pedro Garcia would be his real name. And, at 1409 Avenue H would be the parents of Gonzalo Ramirez.

Q    All right. And, you have -- you believe that a search for this -- for those items you're looking for at these residences are connect to

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

4

do a crime that you've listed, robbery.  When would that have occurred?

A    It would have occurred on June 8th of 2009.

Q    And, why do you believe that the -- these items at these locations would be connected with a crime that would have occurred on or about that date?

A    On June 23rd, 2010, I went to Wichita, Kansas to debrief Joe Galindo, who was, at the time,

Page 3

warrant.101810.txt

10:31 charged with a federal crime for--

Q Was it ag. intimidation of a witness?

A Exactly, ag. intimidation of a witness through the federal system. He agreed to cooperate. Part of his cooperation was to give information

10:31 about crimes that he knew of, including also persons who were dealing narcotics.

Q I'm sorry. And, for the record, when did you do that debriefing?

A It was on June 23rd of 2010. And, the

10:31 interview started at approximately 1328 hours on that date. It was at 301 North Main at the A.T.F. office, in that building.

Q Okay.

A As I began talking to Galindo, we talked for a

10:31 while. He appeared that he wasn't giving all

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

♀

5

10:31 his information that he had. We left the room.

His attorney spoke to Galindo in reference to

the deal that he was going to be getting

through the attorneys up there. His attorney,

10:32 at one point, came and got us, stated okay,

that basically he thought he would be willing

to cooperate more than he did when we first

were in the room. Going back in the room,

Galindo told me about a homicide that he knew

10:32 about that occurred on June the 8th of 2010 --

excuse me, 2009.

Q June 8th or 18th?

Page 4

warrant.101810.txt

A      June 8th of 2009.  This would have occurred at 201 McCarter lot number 42. Dodge City Police Department, Ford County Sheriff's Department worked this crime. It turned out to be the murder of Israel Peralta. There was another person that was with Peralta at the time that was also shot.  And, there was another three to four individuals that were with Peralta. The other individual was shot, and they were shot at. Galindo gave information that on that evening that he had picked up Peter Garcia, Gonzalo Ramirez walking north of Peter's house, and described it being at the intersection of

Avenue D and Briar. Galindo stated that he then went to -- drove them around, went to a residence on Avenue H behind Gonzalo Ramirez's house where they talked for a while about them doing these crimes. At the time, we were just signing up Galindo.  It was obvious now that he was gonna be a cooperator. I was not personally involved in the original report that came out on June 8th of 2009. I wasn't even in town. I had nothing to do with the case at the time, other than going to the south part of Dodge City a week or so later and looking for businesses that might have had some kind of video of vehicles from that evening. Which, I wasn't able to find, and I really had nothing else to do with this case. So, I needed more

warrant.101810.txt

information before I began asking Galindo questions about it. During the time when we had Galindo out, being a cooperating individual, it was then set up through the Ford County attorneys office with an individual by the name of Anthony Wright to be a cooperating individual. Anthony Wright had -- I'm under the understanding that Anthony Wright had all right pled to crimes, he was just waiting to be

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

7

sentenced. His level of cooperation was gonna determine what kind of a sentence he got out of the deal. Wright debriefed with Lieutenant Craig Mellecker of the Dodge City Police Department. During the debrief, Wright spoke of several crimes that he knew about in Dodge, as well as who he bought narcotics from, or who sold narcotics. Wright told me that -- excuse me.  Wright told Lieutenant Mellecker that when he was asked about this homicide that occurred in June 8th of 2009, if he had any knowledge of it, and Wright denied any knowledge. The reason that Wright was asked about this was two reasons:  One is we believe that this is possibly a gang motivated crime at the time. Wright was a Norteno gang member. We believed that the way that victim Peralta was dressed, as well as other individuals down there, that they could have possibly been mistaken for

Page 6

warrant.101810.txt

Surenos gang members, even though they weren't. It was also known that Russell Worthey, who was Anthony Wright's cousin, was picked out of a photo lineup by persons from the address of the shooting on that evening, as being a person that had came by earlier in the evening, threw

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

♀

8

gang signs, or, flashed gang signs towards these individuals as he was driving by. It was something that obviously stuck out in their heads, and they let law enforcement know about this. As -- when we got Wright out, we decided to place him on house arrest for the period of time. We let him sit at home, basically, to see if, one, he was gonna cooperate with house arrest. During this time, I had talked to Lieutenant Mellecker of the Dodge City Police Department in regards to the first time of using Wright, that I wanted him to go and talk to Russell Worthey. I knew that Wright was living in the area of the homicide when the homicide occurred. He was actually living at 202 East McCartor lot D-4, which would be approximately 100 yards, maybe, to the north of where the homicide occurred. Wright and Worthey are known to hang out together. Just, all the fingers kinda pointed towards Worthey. I mean, that Wright would have had some information about Worthey's involvement. If not, him being involved also. So, the first thing I decided to

Page 7

warrant.101810.txt

do with Wright, I was going to place a body wire on him and have him go talk to his cousin,

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

♀

9

Russell Worthey, about the homicide. I figured during the homicide, either Russell Worthey would tell Wright, you know, basically, what are you talking, about type deal, if he questioned him about the homicide, because you were there, or, you know, this is kinda what happened on that date. Wright then, basically, that day when we met with him, he stated -- he got very deceptive from when I was talking to him on that date about doing that. Then, all the sudden, he didn't talk to Russell very much, Russell's wife didn't like him, it was going to take him a while to set this up to go talk to his cousin. It all seemed very fishy. Two days later, when we were suppose to go meet with Russell Worthey, Anthony Wright cut his ankle monitor that he was on and he ran. Wright was later found in Oklahoma, I believe on -- I believe it was about a month later. Excuse me, it was September 1st, 2010, was when Wright was then found in Oklahoma. The day that he ran, that was July 11th of 2010. On that evening, Wright's wife, or significant other, came to the Dodge City Police Department. She was wanting to speak with me. At approximately 1730

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801
Page 8

warrant.101810.txt

10

hours, I met with her at the Police Department. Her name is Sara Rangel, Sara Wright. Rangel would be her maiden name. I told Sara -- she was asking me what all was going on with Anthony, because he was acting weird around the house. He was on house arrest, he wasn't suppose to leave, but he left. She stated that he got a phone, she doesn't know how he got the phone. It was a phone that was provided to him by the Dodge City Police Department for his ankle monitoring so he could be out. Speaking to Wright, I told her what the plans were, what was going on with Anthony, because she wanted to know. And, I wanted to find Anthony at the time. I thought she might have information about that. So, I told Wright -- I told Sara that I believed that Anthony Wright had been involved, you know, somehow in this homicide. I was going to have him go talk to Russell and then he ran, which gave me even more indication that he was possibly involved. Sara told me she remembers when that homicide happened, because like I said, she was staying with Anthony. They were staying at 40 -- excuse me, 202 East McCartor lot D-4. She stated during that time,

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

11

it was kinda funny because she had a gold-colored 1999 Mazda. That, after the

Page 9

warrant.101810.txt

homicide, Anthony didn't want to drive, didn't want to be in anymore. She stated the funny thing is the first time Anthony drove that vehicle, he drove it over to her cousin's, Rashay Hurt's, house on Johnson Avenue and the vehicle broke down. They pushed it behind the house, and it stayed there for a long period. She thought that was very weird. She told me who the vehicle was sold to, and she stated that she ended up selling it to a Angela Burnett in Bucklin, Kansas. Lieutenant Mellecker of the Dodge City Police Department went down there, contacted Burnett. Burnett basically said she sold it to a person that came from Colorado and got it. Lieutenant Mellecker was able to trace back down the guy in Colorado. He stated he couldn't get it fixed and it ended up going to a salvage yard. It has since been crushed and demolished and is no longer. The salvage yard it was at does keep the vin numbers of vehicles it crushes and destroys. And, they do have that down as the VIN number and the description of the vehicle.

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

♀

12

Once Wright was found on September 1st, 2010, Detective Bice of the Dodge City Police Department and I went down to Woodward, Oklahoma to interview Anthony Wright. I read Anthony Miranda when I was down there, spoke to

Page 10

warrant.101810.txt

him for a short time. He again denied having any involvement in anything, having any knowledge of this homicide.  He was being very deceptive about several things. He had just been placed under arrest. I kinda got the feeling that that was the last thing that he had any grasp on of helping him out in his situation about getting sentenced to prison. So, I spoke to Wright before I left, told Wright, or, Anthony Wright, you know, that I was still interested in the information that he had, that I knew he had information, when he got back to speak to his attorney, Steve Cott. And, I would still like him to get together with the Ford County Attorneys office and work out some details about him possibly telling me what he knew. He -- Wright thanked me and told me that he would do that. Again, leading me to believe that he still had information on this.

On -- skipping ahead to October.  It was set up

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

♀

13

with the Ford County Attorneys Office and Mr. Cott to -- for me to interview Anthony Wright on October the 14th at approximately 3:00. Which, I had set that time on my calendar.  On October 12th, 2010, I went to Wichita, Kansas and was again able to speak to Joe Galindo. Having more information on this case, and having the case book with me, I was able to go through the case and listen to what Galindo was

Page 11

warrant.101810.txt

telling me. Galindo told me on that date that, again, that he was contacted by Peter and Gonzo (sic) sometime in the evening, still picked them up on -- north of Peter's address on Avenue D, somewhere around Briar. He stated that he was driving his father's green Intrepid. And, then, when he picked up Gonzo and Peter, that they drove around for a little bit. Galindo stated somewhere south of Peter and Gonzo's house, there was officers in the area and they were walking around with flash lights. It was dark out, and he remembered seeing them. He remembered asking -- he wondered what the cops were doing. And, Peter and Gonzo stated that there was some Guats, referring to Guatemalan people, were knocked

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

14

off. And, they quoted -- that Galindo stated that it was just kinda laughed it off and went to Ramirez's house. He stated whenever they got out of the vehicle at Ramirez's house, they were talking in the back of the residence, that Peter told him that Gonzo was quote dumping on the scraps, referring to the individuals now down on 201 East McCartor lot 42. They were thinking they were Surenos gang member. Scrap is a derogatory term for a Surenos gang member. Galindo said that Peter said Gonzo's gun, at some point, jammed. And, he saw one of the

Page 12

warrant.101810.txt

scraps trying to go over a fence. Galindo said Peter then said he got him when he was trying to go over a fence, indicating when the guy was jumping over a fence, he shot him. Galindo said that Peter also told him that, you know, a scrap died tonight, and they just kinda laughed about it when they were talking. Galindo said that -- I guess whenever I was talking, I stepped out of the room once he talked about the home invasion, that -- about the Guatemala people getting knocked off, or robbed, is what he was referring to. I did contact the Dodge City Police Department, and approximately 40

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

15

minutes before the homicide that occurred down on 201 East McCartor lot 42, there was a home invasion robbery, an aggravated robbery that occurred at 1005 Avenue E.  Avenue E and Avenue D are -- butt up to each other, the streets do. So, the alleyway behind 1005, being the odd side of the street, you can go directly to the north three blocks and you would be in the back of Peter Garcia's residence. I went back in and began talking to Galindo more about what he knew about this. And, he stated that after they talked in the backyard for a while, him and Peter and Gonzalo, that they then went to some female's residence on the Walker Addition, which turns in right off of Avenue H. It's actually called the Comanche Terrace

Page 13

warrant.101810.txt

Apartments. He stated when they went to a female's house, that he -- there was an individual in there that he knew by the name of Tito Flores. This person has later been identified as Jesus Flores, has a nickname of Tito. There was also another individual there that he identified as Big Knox. Big Knox is identified as Joshua Flores, who is a known L.C.C. Norteno gang member. Galindo stated that

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

16

when he was inside the residence talking, that Josh Flores and Jesus Flores were talking and laughing about robbing these Guatemalans earlier. He stated -- Galindo stated that he thought that all four of the individuals had been involved, just by the way they were talking. And, that they had divided some money, and that there was a female screaming in the house. They were making fun of the noises this lady was making whenever they robbed these people at 1005 Avenue E. After -- that's about all the information Galindo had in reference to the homicide. Just that he picked them up later. They stated that they had been involved in it, and then talking to Josh and Jesus Flores, who are not related, I don't believe. Then came October 14th, when I had a meeting at the Dodge City Police Department with Anthony Wright, his attorney Steve Cott, Ford County

Page 14

warrant.101810.txt

Assistant Attorney, Scott James, and myself. It had been set out as part of a deal with Anthony Wright if he would give me a full debriefing, basically, on the homicide, that the Ford County Attorneys Office was still willing to work with him. Wright did admit to being

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

17

involved in this homicide. He stated that he knew it was the evening of June 8th of 2009 when he was driving around. He stated that he went by his cousin, Russell Worthey's, residence. At the time, he was living on Woodland Street. I believe the address to be 104 Woodland. Went by there, picked him up. He knows it was the evening time. He stated they then went driving around, just cruising around town. Anthony Wright stated that after they cruised around for a couple hours, went down to his residence at 202 East McCartor lot D-4, that they then at some point decided to go to Peter Garcia's residence at 1302 Avenue D. Anthony Wright stated whenever they went up to Peter's residence, that they pulled down the alleyway between Avenue D and Avenue E in the 1300 block, pulling into the backyard of the residence behind 1302 Avenue D. Anthony Wright stated that whenever he did that, they got out, him and Russell got out, and went and were knocking on the door. Anthony stated that he was driving his wife's Sara Rangel's 1999

Page 15

warrant.101810.txt

gold-colored Honda passenger car.

Q   Was it a Honda or was it a Mazda?

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

♀

18

A   I believe it's a Mazda, sorry. Yeah, 1999 gold Mazda. While they were knocking on the door, they heard people come running up the alley. They turned and looked, and it was Peter Garcia, Gonzalo Ramirez, Joshua Flores and the person that he knows by the name of Tito, but did not know his last name, I don't believe. He stated that these individuals were pulling off masks off their face, which he described as red bandanas, and came running very quickly into the basement of the residence at 1302 Avenue D. Anthony Wright stated that him and Russell followed them inside the residence, where they were talking about they just robbed some Guatemalans. Peter Garcia had a Mac-10 or Mac-11 machine gun.  It looks like a -- looks like a small, like, uzi, or what people would think of as an uzi on T.V.. He held it up in the air and told Anthony look at this, at this gun. There has also been photos of these guns that we've been able to identify, and both Galindo and Anthony Wright have stated that the Mac-11 was Peter Garcia's gun, and that it was a Nine Millimeter. They stayed in the residence, talked to these individuals for

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801
Page 16

warrant.101810.txt

♀

19

10:57   about 10 minutes.  They were talking about how a kid was screaming during the robbery. This would coincide with the same time, approximately, that the call came out at 1005 Avenue E where persons were robbed. There was actually a total of, I believe, five or six persons of Guatemala descent inside the residence when it was robbed.  And, looking at reports from officers, it states that there was approximately four to six males that came inside the residence, had their faces covered. Three of them -- in the reports stated, that one person saw three of them with guns. One of them was a silver gun, was how it was described. Anthony and -- Anthony stated that him and Russell stayed at Peter's house for a little while while they were divying up the money from the robbery that just occurred. Which also coincides with the report that there was money stolen from 1005 Avenue E. They then left the residence to go cruising in Anthony Wright's vehicle.  He stated that he got in the front seat. That Russell Worthey got in the front passenger seat. That Gonzalo Ramirez got in the rear seat on the passenger side, and

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

♀

20

10:59   that Peter Garcia got in the rear seat on the driver side of the vehicle. He stated --

Page 17

warrant.101810.txt

Anthony Wright stated that both Josh Flores and Jesus Flores stayed inside Peter Garcia's residence, as Jesus Flores and Peter Garcia are cousins, so they just stayed there at the house. Anthony stated they started driving, and that Peter and Gonzo, or Gonzalo Ramirez, told him let's go find some scraps to hit up. He stated that he -- Anthony stated he drove around the east side of town before heading down Wyatt Earp, and then heading down to the south part of town. Anthony Wright stated they were driving through 201 East McCartor. He had a above area photograph of it, just a map basically.  And, he showed me the road they came down, which would be right in front of lot 42 headed south. When they passed lot 42 and they saw the individuals drinking, dressed in blue colors, that they immediately thought that they were Surenos gang members. Peter and Gonzo said hey pull around, pull around to the other side, and we're gonna get out and hit these guys up. Anthony told me that he thought they were just going to get out and scare them. He

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

♀

21

said that's a lot about what gang members do, they scare people. He stated they then pulled around to the road to the west of lot 42, headed back north where they parked. Anthony stated that they went through some trailers.

Page 18

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 845

warrant.101810.txt

Or, when they got out, they started to head through some trailers, and that Peter and Gonzo pulled bandannas up over their face, and told Anthony and Russell to stay back a little because they didn't have no mask, referring to the bandannas covering their face. Anthony told me that him and Russell followed Peter and Gonzalo. As they rounded the corner by lot 42, that Peter must have been out for blood is what he told me. Anthony said that as soon as they rounded the corner and seen the individuals, that Peter and Gonzo lifted their weapons and began firing, began yelling fucking norte, and stuff like that. Anthony told me when he heard the shots start ringing out, that he turned and ran exactly the same way that he walked from his vehicle. He said Russell ran to the north in the trailer park. Anthony said he heard at least -- he thought at least 20 gunshots. He said he didn't know, that they were just going

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

22

off one in succession, one after another. Anthony stated that he ran back to his car, got in his car.  And, about the time he was getting in his car, Russell showed up, hopped back in the front seat of the car. He stated that they started to take off. When they stopped, because they seen Peter Garcia and Gonzalo Ramirez running back, running to the vehicle.  So, he stopped to let them in. He stated they got in

Page 19

warrant.101810.txt

the backseat, and that they got back in the same positions, Peter was behind him and Gonzalo Ramirez was on the passenger side in the rear seat.  Anthony told me that when they got in the vehicle that Gonzo said to Peter you got that scrap, man, you got that one, or something to that effect. Anthony said that he immediately thought that he meant that Gonzalo had -- or, excuse me, that Peter had shot one of those individuals.  And, that Peter answered back to Gonzalo, yeah, I know. And, he described the way he sounded, it was very somber, just like it kinda just hit him that they possibly just killed somebody. Anthony stated they then drove out of the trailer park, went to the east to Minneola Road, headed south

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

♀

23

at Beeson, took a right heading east on Beeson, headed around, which turns into Red Road, which curves around and comes out on Wilroads Gardens Road in between Minneola Road and the boys home out there. He stated that they then turned east on Wilroads Gardens Road headed towards the bypass. Anthony told me that he's been to prison, and he knows how this stuff works, and he was waiting for a bullet to get put in the back of his head at any time, just describing that many people knowing about a homicide, you know.  So, he was scared that he was gonna get

Page 20

warrant.101810.txt

shot. He stated that they drove east on Wilroads Gardens Road to the south bypass where they then turned north heading up towards U.S. 400 and Trail. Anthony stated when they turned north, that they then passed a Sheriff's deputy unit heading down to where they just were. From me looking at reports, Sheriffs units were the first ones to arrive on scene at that call, because the Dodge City Police Department officers were tied up investigating the home invasion robbery that occurred on Avenue E. Anthony told me whenever they passed that Sheriff's deputy, that Peter and Gonzo both

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

24

started telling Russell and him, you guys got kids, you guys got kids, you know, and just kept saying that over and over. I asked Anthony what he thought that meant. He was like that they were telling him that they would kill my family if we told. Anthony stated that nothing else was discussed in the vehicle, that they went up to -- drove north all the way up on 13 Road to Comanche before heading west back into town.  And, somehow, they ended up back at Peter's house. Anthony stated when they ended up back at Peter's house that both Gonzo and Peter got out of the vehicle. They both had their guns on 'em. Anthony described the guns as Gonzalo having a revolver that had wood grips. That was either a .357 or .38, which is

Page 21

warrant.101810.txt

common, they'll shoot either size bullet. As well as Peter had the Mac-10 or Mac-11 that shoots Nine Millimeter bullets. It appears from a photo that we got off of Gonzalo Ramirez's telephone from a search warrant last year that it appears to have approximately a 20 to 30 round magazine on it. Anthony stated once he dropped those two individuals off and they got out with their guns, that he drove back down to

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

25

around Second and Front Street where he dropped off Russell Worthey, and Russell Worthey then walked the five blocks back to the southeast, back down to Woodland where he was living. Anthony Wright stated that he then went to his mother-in-law's residence. Anthony stated that this crime hasn't been talked about since it happened, other than Russell Worthey told him one time that he got questioned by law enforcement, which he did, in regards to this, because he was picked out of a photo lineup, but stated that he was arrested for something else and officers weren't worried. Since this time, Peter Garcia has been sentenced to approximately eight years in the federal bureau -- or, for federal crimes, and is currently housed with the bureau of prisons right now. Gonzalo Ramirez that been found guilty and sentenced for narcotics distribution, and is

Page 22

warrant.101810.txt

currently serving, I think, four or five years in the Kansas Department of Corrections. Russell Worthey is still here in Ford County as well as -- and the whereabouts of Tito Flores are unknown as this time. This is part of a larger investigation going on right now with

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

♀

26

this gang as far as narcotics, these homicides, home invasions. The reason that we put down to search just under robbery and not under aggravated robbery is not to let them think that we are possibly looking for these firearms that were involved in the homicide unless we come across them. We didn't want to show our hand that we knew we were going after these guys right now for these homicides. But, what we are looking for is the gang attire to associate them together, the bandannas they were wearing on their face when they committed both the home invasion robbery as well as the homicide. Though, both of these guys are locked up in the penitentiaries at this time, I know it's not uncommon that family members aren't going to throw away their clothing and their personal items from their residence. Those items, you know, if not left their the room should be boxed up somewhere in their residence.

Q   All these events you described to us, Detective, all would have occurred in Ford

warrant.101810.txt

County, Kansas?

11:08   A   Yes, Sir.

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

♀

27

11:08   MR. JAMES:  And, Judge, I believe you heard Detective Webb testify many times before.  I guess, just for the record, I would ask that you take notice of his training and

11:08   experience regarding gang activity.

THE COURT:  All right, I do. I know it's extensive.

Are the items that you're seeking permission or authority to search for are all

11:08   described in the written application?

THE WITNESS:  Yes, they are. If we find any other items that we believe were used in either the homicide or the robbery, we will reapply for a search warrant for those items.

11:09   We don't believe that, at this time, though, that they're gonna be at either residence. However, we do believe all the gang attire, gang bandannas to associate them with these crimes would still be located there.

11:09   THE COURT:  Okay.  Anything else, Mr. James?

MR. JAMES:  That's all I have, Judge.

THE COURT:  I find the evidence

11:09   presented establishes probable cause to believe

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801
Page 24

warrant.101810.txt

28

there is evidence of crimes located at the two addresses, the two residences described, 1302 Avenue D in Dodge City, and 1409 Avenue H. I'm authorizing a search of those two residences for the purpose of locating and seizing the evidence described in the written applications, that primarily being gang attire and evidence of gang membership or activity.

And, we'll go off record.

(END OF DIGITAL RECORDING)

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

29

STATE OF KANSAS    )
                   ) ss.
                   )

Page 25

warrant.101810.txt

COUNTY OF FORD          )

I, CASSIE CAMPBELL-BICE, Certified Shorthand Reporter under and by virtue of the laws of the State of Kansas, and the regularly appointed, qualified and acting Official Reporter for the Sixteenth Judicial District of the State of Kansas, do hereby certify that the foregoing transcript, consisting of 28 pages, is a true and correct transcription to the best of my ability to hear and understand the official digital recording made of the above case, held before the Honorable Van Z. Hampton, District Judge of the Sixteenth Judicial District of the State of Kansas, sitting in and for the County of Ford.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my signature at my office in Dodge City, Ford County, Kansas, this 2nd day of October, 2012.

_____
Cassie Campbell-Bice, CSR, RPR, CRR
Official Court Reporter, SC #1368
Ford County Courthouse
P.O. Box 197
Dodge City, KS 67801
(620) 227-4561

Cassie Campbell-Bice, CSR, RPR, CRR
P.O. Box 197
Dodge City, KS 67801

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| | ) | |
| v. | ) | No. 12-10089-01-23 |
| | ) | |
| Jason Najera, Pedro Garcia, | ) | |
| Gonzalo Ramirez, Russell Worthey, | ) | |
| Anthony Wright, Joshua Flores, | ) | |
| Jesus Flores, Angel Cerda, | ) | |
| Juan Torres, Alfredo Beltran-Ruiz, | ) | |
| Donte Barnes, Jesus Sanchez, | ) | |
| Enrique Gobin, Alfonso | ) | |
| Banda-Hernandez, Andrew Gusman, | ) | |
| Eusebio Sierra-Medrano, Jayson | ) | |
| Vargas, Adam Flores, Fabian Neave, | ) | |
| Jesus Torres, Jose Neave, Hernan | ) | |
| Quezada, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER**

This case comes before the court on the admissibility of certain statements made by alleged coconspirators in this case. The court held <u>James</u> hearings on February 13, 2013. Subsequent to the hearings, defendants filed supplemental memoranda in objection to the admissibility of the statements.[1] (Docs. 526, 527, 532, 533, 534, 537, 538, 539, 543). The government filed a response brief. (Doc. 540). The government's brief, however, does not address the substantive issues raised by defendants in their briefing. Therefore, the court requests that the government file an appropriate response brief on or before April 12.

---

[1] Defendant Juan Torres filed a motion to join defendant Angel Cerda's motion to exclude. (Doc. 534). The motion is granted.

854

IT IS SO ORDERED.

Dated this ___2nd___ day of April 2013, at Wichita, Kansas.


                              s/ Monti Belot
                              Monti L. Belot
                              UNITED STATES DISTRICT JUDGE

-2-

854

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,      )
                               )
                Plaintiff,     )     **CRIMINAL ACTION**
                               )
v.                             )     No.  12-10089
                               )
GONZALO RAMIREZ,               )
                               )
                Defendant.     )
_____)

**MEMORANDUM AND ORDER**

This case comes before the court on defendant Gonzalo Ramirez' motion to dismiss.  (Doc. 544).  Co-defendants Pedro Garcia, Angel Cerda, Juan Torres, and Andrew Gusman move to join in Ramirez' motion. (Docs.  546,  548,  550,  558).   The  motions  to  join  are  granted. Ramirez' motion to dismiss has been fully briefed and is ripe for decision.  (Doc. 565).  The motions are denied for the reasons herein.

**I.    Facts**

On April 16, 2012, the grand jury returned a 38-count indictment against 23 defendants.  All defendants are alleged in count 1 to be members of a criminal organization, the Nortenos gang.  However, only eight defendants are charged in count 1 with being a participant in the  overall  RICO  conspiracy  in  violation  of  18  U.S.C.  § 1962(d). Count 1 of the indictment alleges the members of the Nortenos gang engaged  in  narcotics  distribution  and  acts  of  violence  involving murder and robbery committed in Dodge City, Kansas.  The indictment further  alleges  that  the  racketeering  conspiracy  began  in  2008  and continued through the date of the indictment.  In Counts 2-12, 14-21, 23, 24, 26-28 and 38, some of the defendants are charged with VICAR

offenses in violation of various sections of 18 U.S.C. § 1959.  The remaining counts generally charge drug and weapons violations.

## II.  Analysis

Ramirez is charged in counts 1 through 13 of the indictment.[1] Ramirez argues that the indictment may violate the Double Jeopardy Clause and should be dismissed.  Ramirez' argument is difficult to follow.  Ramirez states that he is uncertain whether any of the VICAR counts set forth in the indictment are the predicate acts listed in count 1 and requests that the court order the government to specify its "theory," i.e. to identify the two predicate offenses underlying the RICO conspiracy charged in Count 1.  The government responds that it has provided defendants with all discovery relating to alleged crimes that qualify as predicate acts.  Notably, both Ramirez and the government fail to cite United States v. Randall, 661 F.3d 1291 (10th Cir. 2011) and United States v. Harris, 695 F.3d 1125 (10th Cir. 2012) and United States v. Cornelius, 696 F.3d 1307 (10th Cir. 2012), cases which discuss the elements of a § 1962(d) RICO conspiracy.

In Randall, the Tenth Circuit specifically addressed the issue of predicate acts following the United States Supreme Court decision in Salinas v. United States, 522 U.S. 52 (1997).  The Circuit agreed with some of its sister circuits and held that the specific predicate acts that a defendant agreed to commit need not be alleged or proved for a section 1962(d) offense.  Randall, 661 F.3d at 1297.  Rather, "a jury need only be unanimous as to the types of predicate

---

[1] Garcia is charged in counts 1 through 9 of the indictment. Cerda and Torres are charged in counts 10 through 13 of the indictment.  Gusman is charged in counts 19 through 22 of the indictment.

-2-

racketeering acts that the defendant agreed to commit, not to the specific predicate acts themselves." Id. at 1299 (emphasis supplied). Therefore, the government does not have to identify the two predicate offenses underlying count 1.

Ramirez further argues that a "successive prosecution double jeopardy issue" would arise if his previous drug conviction for which he is currently serving a sentence is a predicate act for the charge in count 1.  (Doc. 544 at 6).  Ramirez is incorrect.  The Tenth Circuit has held that "Congress envisioned that a RICO conviction and sentence could be based upon a predicate crime for which the defendant has already been punished." United States v. Hampton, 786 F.2d 977, 980 (10th Cir. 1986).

Finally, Ramirez asserts that the charges in the indictment are multiplicious and violate the Double Jeopardy Clause because they charge a conspiracy in one count and the substantive offense in the subsequent count.  "[T]he government may prosecute successively a conspiracy and the substantive offenses it encompasses.  This rule has been interpreted to allow prosecution of a defendant once for a RICO conspiracy and thereafter for the predicate offense constituting a pattern of racketeering activity." United States v. Saccoccia, 18 F.3d 795, 798 (9th Cir. 1994), cert. denied, 116 S. Ct. 1322 (1996)(citing United States v. Esposito, 912 F.2d 60, 66 (3d Cir. 1990), cert. dismissed, 111 S. Ct. 806 (1991)); see also Hampton, 786 F.2d at 980. Ramirez has not cited any authority which overrules these cases or the additional cases cited by the government.  (Doc. 565 at 13-14).

Therefore, the RICO conspiracy charged in count 1 can include the allegations contained in the substantive offenses.  Moreover, the

-3-

government does not violate the Double Jeopardy Clause by alleging both a VICAR conspiracy and a VICAR substantive offense.  <u>United States v. Johnson</u>, 977 F.2d 1360, 1371 (10th Cir. 1992)(It "is well settled that commission of a substantive offense and a conspiracy to commit it are separate crimes.")

**III. Conclusion**

Ramirez' motion to dismiss is denied.  (Doc. 544).

IT IS SO ORDERED.

Dated this   2nd   day of April 2013, at Wichita, Kansas.

<div style="text-align:right">

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE
</div>

-4-

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,    )
                             )
                 Plaintiff,  )    **CRIMINAL ACTION**
                             )
v.                           )    No.  12-10089-MLB
                             )
PEDRO GARCIA,                )
                             )
                 Defendant.  )
                             )

MEMORANDUM AND ORDER

This case comes before the court on defendant Pedro Garcia's motion to suppress.  (Doc. 504).  The motion has been fully briefed and is ripe for decision.  (Docs. 517, 564, 577).  The court held a hearing on March 4, 2013.  Defendant's motion is denied for the reasons herein.

I.    Facts

Government authorities searched the home of Garcia's parents on October 19, 2010, pursuant to a search warrant issued by Judge Hampton in Ford County, Kansas.  At that time, Garcia was in custody serving a federal sentence which commenced on or about November 8, 2009.[1]  The application for the search warrant was submitted by Detective Shane Webb on October 18, 2010.  Webb applied for a search warrant for both Garcia's residence and the residence of co-defendant Gonzalo Ramirez.[2]

---

[1] However, there is no dispute that Garcia resided at his parents' home prior to his incarceration.

[2] Ramirez also moved to suppress the evidence seized pursuant to the warrant executed on October 19, 2010.  (Doc. 425).  The government, however, informed the court that it does not intend to present evidence seized during the search of Ramirez' residence on October 19, 2010.  The government also executed a search on August 3,

In his affidavit, Webb discusses both a robbery and a murder which occurred on June 8, 2009. Garcia is currently charged with VICAR counts pertaining to these alleged crimes. Webb details his investigation of both the robbery and the murder. According to Webb, Dodge City police were not aware of Garcia's involvement in the robbery and murder until they interviewed Joe Galindo on June 23, 2010, and October 12, 2010. On October 14, 2010, Anthony Wright was interviewed by Webb and verified Galindo's information.

On June 8, 2009, Garcia and at least three other individuals entered a home wearing red bandannas and committed an armed robbery. After committing the robbery, Garcia and the others left the home and returned to Garcia's residence on foot. At this time, Anthony Wright arrived at Garcia's residence. Webb stated that Wright is a documented Nortenos gang member. Wright observed Garcia and the others pulling off red bandannas and talking about the robbery they just committed. They remained in Garcia's residence for approximately one hour. They divided the money they took from the victims, who were of Guatemalan descent. They left Garcia's residence in Wright's vehicle. Garcia or Gonzalo Ramirez stated that they wanted to go find some "scraps" to hit up. "Scraps" is a derogatory term for the Surenos, a rival gang to the Nortenos.

Wright drove to an area south of town where he had observed some Surenos gang members. They arrived at a trailer park on MacArthor. Near lot 24, they observed four individuals drinking and dressed in blue colors. They assumed that the individuals were associated with

---

2009. The government does seek to introduce this evidence against Ramirez. (Doc. 585).

the Surenos gang.  Both Garcia and Ramirez exited the vehicle, pulled red bandannas over their faces and fired approximately 20 rounds. They were also yelling "Norte."  Israel Peralta was killed.  Wright drove Garcia and Ramirez back to Garcia's residence.  Garcia exited the car with his gun.

Webb is a trained detective and has extensive experience with gang activity.  Webb stated that he believed that the gang attire and gang bandanas would still be at Garcia's residence.  Webb stated that even though Garcia was in custody, he believed that his family members would not have thrown out his clothing but instead placed it in boxes if it was not still in his room.  Webb was investigating Garcia and the gang for narcotics, home invasions and homicides.  Webb indicated in his affidavit that he was searching for items for the robbery but the investigation of the gang encompasses more crimes.

Judge Hampton signed the warrant and authorized the officers to search for the following:

> Any gang attire including but not limited to red bandannas and items with Norteno gang association, photos, drawings, writings, gang roll calls ect [sec].. Any documents, photographs, mail, bills, or other personal or business items indicating the identity of persons residing at the location.

(Doc. 577, exh. 1).

When authorities executed the search warrant on Garcia's residence, they seized letters written in red ink, St. Ramon candles, posters, gang graffiti, and other items.  Garcia moves to suppress the items seized on the basis that probable cause did not exist for the search warrant because it was based on stale information.

-3-

## II.   Analysis

The Fourth Amendment to the United States Constitution provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  In determining the validity of a warrant, the test is whether, under the totality of the circumstances presented in the affidavit, the issuing judge had a "substantial basis" for determining that probable cause existed.  Illinois v. Gates, 462 U.S. 213, 238-39 (1983); United States v. Harris, 369 F.3d 1157, 1165 (10th Cir. 2004) ("In determining whether a search warrant was supported by probable cause, we review "the sufficiency of the affidavit upon which a warrant [wa]s issued by looking at the totality of the circumstances and simply ensuring 'that the [issuing] magistrate had a substantial basis for concluding that probable cause existed.'" (internal citation omitted)).

Probable cause exists when "the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched." Harris, 369 F.3d at 1165 (quoting United States v. Hernandez-Rodriquez, 352 F.3d 1325, 1330 (10th Cir. 2003)).  The Tenth Circuit has adopted the general rule that probable cause requires a "nexus between [the contraband to be seized] or suspected criminal activity and the place to be searched." United States v. Rowland, 145 F.3d 1194, 1203-04 (10th Cir. 1998)(quoting United States v. Corral-Corral, 899 F.2d 927, 937

-4-

(10th Cir. 1990)).

The court finds that the facts set forth in the affidavit establish probable cause to search Garcia's residence. Evidence of Garcia's gang association with documented gang members, the allegations of two individuals that Garcia was involved in the murder and the robbery on June 8 and that he wore a red bandanna on that day, the fact that clothing items and gang items are often kept in the home and Garcia's criminal history, are sufficient to warrant a person of reasonable caution in believing that the items sought would be found in Garcia's home. See United States v. Mathis, 357 F.3d 1200, 1205 (10th Cir. 2004) (noting that an officer's opinion, based on his professional expertise, that evidence of illegal activity will be found in the place to be searched is entitled to consideration in determining whether probable cause existed at the time a warrant is issued).

Regarding staleness, the court also finds that probable cause is supported by timely information. Defendant argues that the affidavit did not provide any basis to believe that the criminal activity of the gang was ongoing and that it would be found at Garcia's residence. "Whether information is stale depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." United States v. Riccardi, 405 F.3d 852, 860-61 (10th Cir. 2005). The Webb affidavit alleges gang association, and targeted crimes against individuals of Guatemalan descent and/or Surenos gang members. The affidavit also states that the investigation is ongoing and relates to all gang members and their criminal activity in the area. While the affidavit is not as detailed

-5-

as the affidavit this court addressed in United States v. Campbell, No. 07-10104, 2007 WL 2155657 (D. Kan. July 25, 2007), aff'd 603 F.3d 1218 (10th Cir. 1010), the search warrant in this case sought, among other things, clothing and gang material that are usually maintained in a residence over a lengthy period. See United States v. Cantu, 405 F.3d 1173, 1178 (10th Cir. 2005) (stating that when "the circumstances suggest ongoing criminal activity, the passage of time recedes in importance"). To his credit, Webb stated that he did not believe any items stolen in the robbery or the guns used in the robbery and murder would be in the residence.

Even assuming the affidavit's information was so stale as to not establish probable cause with regard to Garcia, the court concludes "the affidavit's information nonetheless provided sufficient indicia of probable cause to justify the officers good-faith reliance." Campbell, 603 F.3d at 1233.

## III.  Conclusion

Garcia's motion to suppress is denied.  (Doc. 504).


IT IS SO ORDERED.

Dated this ___10th___ day of April 2013, at Wichita, Kansas.


                              s/ Monti Belot
                              Monti L. Belot
                              UNITED STATES DISTRICT JUDGE

-6-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,      }

                     }

           Plaintiff,      }        Criminal Action

     v.                   }

                     }        No. 12-10089-01-23-MLB

JASON NAJERA            }

  a.k.a. Ene,          }

  a.k.a. Norte,        }

PEDRO GARCIA,          }

  a.k.a. Peter Garcia,    }

  a.k.a. Pistol Pete,     }

GONZALO RAMIREZ,     }

  a.k.a. Gonzo,        }

RUSSELL WORTHEY,     }

  a.k.a. Blanco,       }

ANTHONY WRIGHT,      }

  a.k.a. Huesos,       }

JOSHUA FLORES,        }

  a.k.a. Big Knox,      }

JESUS FLORES,         }

  a.k.a. Tito,          }

ANGEL CERDA,          }

  a.k.a. Shrek,         }

JUAN TORRES,          }

  a.k.a. Bugsy,         }

ALFREDO BELTRAN-RUIZ,   }

  a.k.a. Deuce-Deuce,    }

DONTE BARNES,        }

  a.k.a. Snipes,        }

  a.k.a. Snipe,         }

  a.k.a. Sniper,        }

JESUS SANCHEZ,       }

  a.k.a. Drac,         }

  a.k.a. Dracula,       }

ENRIQUE GOBIN,       }

  a.k.a. Ricky,         }

| | |
|---|---|
| a.k.a. Sonny Boy, | } |
| ALFONSO BANDA-HERNANDEZ, | } |
| a.k.a. Fonso, | } |
| ANDREW GUSMAN, | } |
| a.k.a. Beaver, | } |
| EUSEBIO SIERRA-MEDRANO, | } |
| a.k.a. TC, | } |
| JAYSON VARGAS | } |
| a.k.a. Wee Wee, | } |
| ADAM FLORES, | } |
| a.k.a. Little Lazy, | } |
| FABIAN NEAVE, | } |
| a.k.a. Puppet, | } |
| JESUS TORRES, | } |
| a.k.a. Rabbit, | } |
| JOSE NEAVE, | } |
| a.k.a. Caiyo, | } |
| HERNAN QUEZADA, | } |
| a.k.a. Cheese, | } |
| a.k.a. Cartoon, | } |
| HUMBERTO ORTIZ, | } |
| a.k.a. Beto, | } |
| Defendants. | } |

**UNITED STATES' SECOND SUPPLEMENTAL BRIEF IN
SUPPORT OF ADMISSION OF COCONSPIRATOR STATEMENTS**

COMES NOW the United States of America, by and through Aaron L. Smith and Lanny

D. Welch, Assistant United States Attorneys, and hereby provides a response to the defendants'

post-*James* hearing submissions (Docs. 526, 527, 532, 533, 534, 537, 538, 539 and 543):

## 1.  Coconspirator Statements

The applicable law for consideration of the admissibility of coconspirator statements is

found at Fed.R.Evid. 801(d)(2)(E).   The rule requires a court to determine "(1) by a

preponderance of the evidence, a conspiracy existed, (2) the declarant and the defendant were

both members of the conspiracy, and (3) the statements were made in the course of and in

2

furtherance of the conspiracy." *United States v. Patterson*, ___F.3d___, No. 11-3258 (10th Cir. April 5, 2013)(quoting *United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994)). "In making its preliminary factual determination as to whether a conspiracy exists, the court may consider the hearsay statement sought to be admitted, along with the independent evidence tending to establish the conspiracy." *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996). "Coconspirator statements may be admissible under Rule 801(d)(2)(E) even when no conspiracy has been charged." *United States v. Martinez*, 430 F.3d 317, 327 n.4 (6th Cir. 2005).

### 2.  Jayson Vargas (Doc. 526)

Defendant Vargas makes several claims which include that the testimony offered during the *James* hearing was hearsay, that he was denied his right of confrontation and the government failed to establish he participated in a conspiracy.

#### a.  Hearsay

Federal Rule of Evidence 1101(d) provides a number of hearings at which the Rules of Evidence do not apply.  This includes a hearing where the court is determining the admissibility of evidence.[1]  Therefore, the hearsay rule is inapplicable at a *James* hearing where the court is determining the admissibility of statements.  The testimony presented by the United States was not governed by the hearsay rule.  The United States does not recall if Vargas made a contemporaneous objection to hearsay which is the time it should have been made but, nonetheless, the exceptions listed in Fed.R.Evid. 1101(d) govern this hearing and the hearsay rule does not apply.

---

[1] F.R.E. 1101(d)(1) and F.R.E 104(a).

The defendant also claims the confidential informant "is apparently unavailable for cross examination and his or her reliability is unverified."[2]   The United States has never said this informant is unavailable.   The informant will be available for trial but, given the law which applies to this type of pretrial hearing, their information was not precluded by the hearsay rule.

### b.  Confrontation Clause

The defendant's next claim is somewhat confusing because the defendant discusses the Supreme Court's holding in *Crawford v. Washington*, 541 U.S. 36 (2004) as if to suggest *Crawford* applies to this hearing.   However, the defendant also appropriately cites Tenth Circuit law which makes clear that *Crawford* was not intended to apply to statement of coconspirators addressed in Rule 801(d)(2)(E) because the rule provides that such statements are not hearsay. *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007).   The defendant's claim that he "has a constitutional right, under the 6th amendment to confrontation and cross examination of the witnesses against him" would appear to be resolved in favor of the government by *Townley* and Rule 801(d)(2)(E).

### c.  Statements 5a and 5b

The defendant first claims the United States failed to prove a conspiracy existed.   At this stage, the United States is only required to make such a showing the conspiracy existed by a preponderance of the evidence. *United States v. Urena*, 27 F.3d at 1490.   The United States presented ample evidence at the *James* hearing establishing there was a conspiracy and the defendant's involvement in said conspiracy.

---

[2] Doc. 526 at 2.

At the *James* hearing the government presented evidence that on April 30, 2011, Guatemalan immigrants residing at 609 E. Spruce in Dodge City, Kansas, were the victims of a home invasion robbery.  Testimony was presented at the hearing that robberies of this type (armed home invasion robberies preying on Guatemalans) were commonly committed by Nortenos gang members in Dodge City.  A witness testified that Nortenos victimized Guatemalans because they were illegally in the country and did not use banks, preferring to keep their money at their homes.  Evidence was also presented that the Guatemalan workers are in this country to earn a living and to send a portion of their earnings to family members remaining in Guatemala.

The victims of this robbery told the police that two men broke into their home in the evening of April 30, 2011, and that the two men possessed firearms.  The victims were ordered to the ground by the robbers and were told not to move or they would be killed.  As the victims remained on the floor, the robbers looked for money and other property which was stolen from them.  The victims told the police money was taken from them at gunpoint.

The United States further presented evidence that a source of information was told by Jayson Vargas on the night of the robbery that he and Adam Flores had committed a robbery. The source was instructed to dispose of the shoes Jayson Vargas wore during the robbery because Vargas feared the police would be able to link the shoes to the home where the robbery occurred.[3]  Vargas also gave money, which was proceeds of the robbery, to the source to purchase new shoes to replace the shoes Vargas had directed be discarded.  On a date uncertain, but authorities know it occurred following the robbery, the source said Jayson Vargas and he/she

---

[3] This statement was identified as 5a.

walked past 609 E. Spruce in Dodge City and Vargas identified the house as the residence he and Adam Flores had robbed on April 30, 2011.[4]

The defendant claims the statements do not qualify as coconspirator statements because: 1) the exact date, time and location the statements were made have not been shown; 2) the foundation of the statements have not been provided; 3) the context of the statements have not been provided; 4) if the latter statement was made it was merely made to impress a girl; and 5) neither statement was sworn nor recorded.  The defendant's standard of proof is impossible to meet and, more importantly, is found nowhere in the law.

As previously mentioned, statements further a conspiracy when they are "intended to promote the conspiratorial objectives." *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986).  Also, statements of a conspirator identifying another conspirator are not hearsay. *Townley*, 472 F.3d at 1273.  The two robbers who entered 609 E. Spruce on April 30, 2011, armed with firearms and who threatened to murder the occupants if they failed to comply with their demands clearly worked in concert with each other and conspired to commit the robbery of the occupants of that residence.  The defendant, on two occasions, identified himself and Adam Flores as the two robbers.  Consequently both statements were made by a conspirator in furtherance of the conspiracy and, as such, are not hearsay.

The defendant's instructions to the source to get rid of incriminating evidence from the crime, the shoes he wore during the robbery, was certainly intended to further the conspiracy because Vargas believed it would help them to evade capture and/or make it more difficult to prove their involvement in these crimes. See: *United States v. Medina*, 761 F.2d 12, 18 (1st Cir.

---

[4] This statement was identified as 5b.

6

1985)(conspiracy continued so long as the conspirators were acting to destroy incriminating evidence).

### d.   Statement 6

The defendant argues this statement should not be offered against him because there is no direct evidence the threat occurred, there is no proof that Vargas "endorsed" the threat made by Najera and there was no proof Vargas was involved in a conspiracy with Jason Najera.  At trial, the United States will offer the testimony of Kendra Owens, who will present direct evidence that she was threatened by Jason Najera not to cooperate in the prosecution of Vargas.  In order for this statement to be admissible as a coconspirator statement the law does not require proof that Vargas endorsed, asked for or was even aware of the threat made by Najera to Kendra Owens.     The government, again, only has to show, by a preponderance of the evidence, there was a conspiracy and the statement was made during and in furtherance of the conspiracy. At the *James* hearing the government presented evidence that both Jayson Vargas and Jason Najera were Nortenos gang members.  There can be little question that it would be more likely true than not that Najera's threat to Owens was motivated in large part because Najera and Vargas were members of the same gang and Najera did not want Owens to cooperate with the police against a fellow Norteno.  Whether or not Vargas knew about the threat is irrelevant to this analysis.

### 3.   Pedro Garcia (Doc. 527)

Defendant Garcia claims the government failed to establish, even by a preponderance of the evidence, any conspiracies existed or if a conspiracy or conspiracies were established there was a failure to prove he was a member of them.  He also contends none of the statements can be

offered against him with regard to Count 1, which charges a RICO conspiracy in violation of Title 18, U.S.C. Section 1962(d).

The United States agrees with the defendant as to one point, he is correct that Statement 1c cannot be offered against him pursuant to Rule 801(d)(2)(E) because he is the declarant. The statement will be offered against Pedro Garcia as a statement against interest under Fed.R.Evid. 804(b)(3). The United States contends Statement 1c is properly admitted as a coconspirator statement against Gonzalo Ramirez, Russell Worthey and Anthony Wright.

### a. Statements 1a-1c

At the *James* hearing, the United States presented evidence pertaining to these statements that on the evening of June 8, 2009, a gang related homicide occurred at a trailer park in south Dodge City, Kansas, at approximately 11:30 p.m. The witness testified this area of Dodge City was considered to be territory belonging to the Surenos street gang which is a gang that is the rival of the Nortenos in Dodge City.

Testimony was presented that prior to the murder, multiple members of the Nortenos street gang were gathered at the residence of Pedro Garcia in Dodge City. Four of these gang members were Pedro Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright. As will be discussed later, Garcia and Ramirez, along with two other Nortenos (Joshua Flores and Jesus Flores), had committed a home invasion armed robbery of Guatemalan immigrants earlier that night. It was decided following the robbery that Pedro Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright would ride together in Wright's car. The purpose of the trip was to "get some scraps" and the statement was made by either Pedro Garcia or Gonzalo Ramirez. Evidence was presented that "scraps" was a derogatory term commonly used by Nortenos to

8

refer to Surenos.   There was a clear understanding the meaning of "get some scraps" was an intent to locate members of the Surenos street gang for the purpose of engaging them.   All four entered Anthony Wright's car for the purpose of getting "scraps."

Testimony was presented that earlier that day Russell Worthey and Anthony Wright had driven in the area of the trailer park in south Dodge City and had seen men they believed to be affiliated with the Surenos gang.   When Garcia, Ramirez, Worthey and Wright drove from Garcia's residence they decided to drive to the trailer park because they believed it to be a location where Surenos gang members would be found.   When the four arrive at the trailer park and men are seen congregating outside a trailer the four Nortenos in Wright's car assume they are Surenos.

All four Nortenos exit the car but only Garcia and Ramirez are armed.   Without provocation, the four Nortenos attack the group and one or more of the attackers shouted "puro Norte"[5] to identify themselves to the suspected Surenos as being members of their rival gang. Surviving victims later reported to the police they believed the attackers were Nortenos based on the comments they made and the clothing they wore.   Israel Peralta died as the result of being struck by multiple bullets.   Mariano Sorano was struck by multiple bullets but survived.

### i.  Statement 1a

The United States contends this statement is the very definition of a coconspirator statement.   While it is true the declarant is identified as one of two people, there can be no question: (1) a conspiracy to "get scraps" was formed (2) the declarant, whether it was Pedro Garcia or Gonzalo Ramirez, was a member of the conspiracy, and (3) the statement was made in

_____

[5] Spanish for "pure North".

9

the course of and in furtherance of the conspiracy to "get scraps."  By definition, in Dodge City, Kansas, on June 8, 2009, expressing the intent to "get scraps" identifies the speaker as a member of the Nortenos street gang and is a clear intent to threaten, assault, harm and even kill members of their rival gang.  This statement explains how, when, where and why the conspiracy was formed.

As for the defendant's contention it cannot be offered as a coconspirator statement against Pedro Garcia without identifying the declarant.  Both Garcia and Ramirez were members of the conspiracy and the statement is admissible against both either as a coconspirator statement pursuant to Rule 801(d)(2)(E) or as a statement against interest under Rule 804(b)(3).

### ii.  Statement 1b

The defendant suggests this statement is not admissible under Rule 801(d)(2)(E) because it was made after the conspiracy had ended.  The statement occurred just minutes after the murder and only minutes prior to Statement 1c where Garcia warns Worthey and Wright to remember that they have children.  The timing and context of the statement would seem to make clear the conspiracy was ongoing at that moment.  "[S]tatements that explain events of importance to the conspiracy in order to facilitate its operation" are not hearsay.  *United States v. Smith*, 833 F.2d 213, 219 (10th Cir. 1987).  There is no event in this conspiracy more important than the murder of Israel Peralta and Ramirez' statement that Garcia "really got that one" is a declaration that the conspiracy was a success.  They believed the "one" who was "got" was a scrap, which was the object of the conspiracy as evidenced by Statement 1a.

### iii.   Statement 1c

As stated previously, Statement 1c will not be offered against Garcia pursuant to Rule 801(d)(2)(E) because he is the declarant.  However, the statement will be offered against Pedro Garcia as a statement against interest under Fed.R.Evid. 804(b)(3).  The United States contends Statement 1c is properly admitted as a coconspirator statement against Gonzalo Ramirez, Russell Worthey and Anthony Wright.  Statements designed to discourage other conspirators from turning against the conspiracy are properly admitted under the rule.  See: *United States v. Carson*, 455 F.3d 336, 367 (D.C. Cir. 2006).

### b.   Statements 2a-2c

At the *James* hearing the government presented evidence that prior to the murder at the trailer park, Pedro Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores committed a home invasion robbery.  The United States further presented evidence that all four were members of the Nortenos street gang.  At approximately 11:00 p.m. on June 8, 2009, victims reported that 4-6 men burst into their home at 1005 Avenue E in Dodge City.  The house was rented by Guatemalan immigrants.  The robbers were armed with guns and one of them immediately pistol whipped one of the occupants of the home.  One or more robbers stood guard in the front room as the others forced one of the occupants in the bedrooms to look for money.  After finding money and threatening the occupants the robbers fled.

Garcia, Ramirez, Joshua Flores and Jesus Flores were observed by Russell Worthey and Anthony Wright returning to Garcia's residence following the robbery.  Worthey and Wright saw that the four robbers had their faces covered with bandanas, possessed firearms and watched as they divided the robbery proceeds in the basement of Garcia's residence.  The United States

11

presented further evidence that prior to the robbery Garcia, Ramirez, Joshua Flores and Jesus Flores agreed to commit a robbery and departed together from Garcia's house looking for a house to rob.

### i.  Statement 2a

As he did with Statement 1a, the defendant asserts Statement 2a cannot be offered as a coconspirator statement because the declarant is either Garcia or Ramirez.  The defendant cites no law which indicates the identity of the declarant must be known.  The law only requires that the declarant be a member of the conspiracy.  Regardless of who made the statement, it is clear Statement 2a was made by a member of the robbery conspiracy.  The statement is similar to Statement 1a in that it explains when, where and how the conspiracy was formed.  This statement is the beginning of the robbery conspiracy which means it was made by a coconspirator during and in furtherance of this conspiracy.  Both Garcia and Ramirez were members of the conspiracy and the statement is admissible against both either as a coconspirator statement pursuant to Rule 801(d)(2)(E) or as a statement against interest under Rule 804(b)(3).

### ii.  Statement 2b

At the *James* hearing it was established by the United States that *Gonzalo Ramirez* made this statement rather than Pedro Garcia.  Defendant Garcia's argument concerning this statement is made with his apparent understanding that it is alleged he made it. That understanding is incorrect.

In an abundance of caution, the government will address the viability of this statement because it is our contention the statement can be offered against Garcia because he was a member of the robbery conspiracy.  While the exact words used by Ramirez were not reported,

12

there is a clear understanding that Ramirez selected the victim house after taking a close look at the residence.   He turned to his conspirators and announced they should rob that house. Moments later they robbed the occupants of that house and beat one of the occupants in the process.  This statement was made by Ramirez, a conspirator, during and in furtherance of the conspiracy.

### iii.   Statement 2c

Defendant Garcia is also confused concerning this statement.  This statement was made by Pedro Garcia while in the car with Gonzalo Ramirez, Russell Worthey and Anthony Wright as the four were driving to "get scraps."  In other words, Garcia makes this statement *after* the robbery but *before* the murder.  The reason it will be offered by the United States as evidence in the home invasion robbery is because Pedro Garcia is warning Anthony Wright, the driver, to stay away from the area of town where the home invasion had recently occurred.  Garcia is concerned there will be police officers in the area east of them because he presumes officers are responding to the home invasion robbery.

Garcia is concerned police officers might stop and/or arrest them while investigating the robbery.  The government believes this was an effort by Garcia to avoid capture for the robbery and, therefore, was in furtherance of the conspiracy.  See: *United States v. Garate-Vergara*, 942 F.2d 1543, 1553 (11th Cir. 1991)(statements made to avoid capture were made in furtherance of the conspiracy and admissible under Rule 801(d)(2)(E)).

### c.   Count 1 – RICO Conspiracy

At trial, in order to prove the defendant guilty of Count 1 the United States will be required to prove the following:

13

(1)  A conspiracy or agreement existed between two or more persons to participate in the affairs of an enterprise that affected interstate commerce through a pattern of racketeering activity;

(2)  that the defendant deliberately joined or became a member of the conspiracy or agreement with knowledge of its purpose; and

(3)  the defendant agreed that someone, not necessarily the defendant, would commit at least two of the racketeering acts detailed in the indictment.

*United States v. Harris*, 695 F.3d 1125, 1131 (10th Cir. 2012).

The law does not require proof that Pedro Garcia himself committed two or more racketeering acts to prove him guilty of the RICO conspiracy under Count 1.  However, the government is required to prove that the defendant agreed that someone would commit at least two racketeering acts.  However, the government anticipates offering proof that his commission of the other substantive crimes charged in the indictment should be considered against him, and the other conspirators, charged in Count 1 as acts of racketeering.  To be specific, the government will prove the defendant engaged in the conduct charged in Counts 2-9, some of which are racketeering acts.[6]  The United States believes it stands to reason that coconspirator statements which are admissible under Rule 801(d)(2)(E) as to the conspiracies charged against Pedro Garcia in Counts 2 and 8 are likewise admissible against Pedro Garcia in proving his involvement in Count 1.

### 4.  Gonzalo Ramirez (Doc. 532)

Defendant Ramirez makes the same or similar arguments presented by Jayson Vargas and Pedro Garcia concerning the Confrontation Clause and that the United States has failed to

---

[6] Racketeering acts include murder and robbery within the definition of racketeering activity found at Title 18, U.S.C. Section 1961(1).

establish his participation in any of the conspiracies charged.   The United States concedes Ramirez is correct that Statements 1b and 2b cannot be offered against him as coconspirator statements because he is the declarant.   The government will offer these statements against his fellow conspirators under Rule 801(d)(2)(E) and against him as statements against interest pursuant to Rule 804(b)(3).

As to the Confrontation Clause issue, the United States anticipates it will present the testimony of multiple coconspirators at trial and the defendant will be afforded the opportunity to cross examine them.

As for Ramirez' claims the government has failed to prove his involvement in any conspiracies the government adopts its same responses provided to Pedro Garcia's identical arguments.  The United States presented ample evidence at the *James* hearing that this defendant, and other Nortenos, conspired to murder and assault Surenos at a trailer park in south Dodge City.  There can be no question the attack was gang related and gang motivated when the crimes began with the announced intention of getting "scraps."  The location they drove to was selected for one reason only which was because they believed Sureno gang members would be found there.  Once they arrived they attacked these men simply because they believed them to be rivals. During the attack they announced themselves as Nortenos so the victims would be clear it was their rival gang responsible for the assault.

Prior to participating in this attack Ramirez, Garcia and two other Nortenos gang members robbed and beat the occupants of the residence located at 1005 Avenue E in Dodge City.  Evidence was presented that all four robbers were Nortenos and that they committed a coordinated assault on the residence, all were armed and all actively participated.  When they

15

arrived back at Pedro Garcia's residence they divided the robbery proceeds. The evidence presented was sufficient to prove by a preponderance of the evidence a conspiracy existed and the statements offered are properly admitted pursuant to Rule 801(d)(2)(E).

Finally, with regard to the RICO Conspiracy charged in Count 1 the government expects to prove the defendant guilty of another count in the indictment which is a racketeering act.[7] Two of the coconspirator statements pertinent to the murder charge (Statements 1a and 1c) can be offered against this defendant as proof of his involvement in the RICO Conspiracy.

### 5. Donte Barnes (Doc. 533)

Defendant Barnes contends the government has failed to prove his involvement in a conspiracy and that if a conspiracy was established the statements were not made in furtherance of the conspiracy.

At the *James* hearing the government presented evidence that on March 15, 2011, the occupants of 1705 Avenue D in Dodge City were the victims of a drive by shooting. The evidence established the strong presumption the intended target of the shootings was Reyes Delira-Padilla, who admitted he was a member of the Surenos street gang. Prior to the shootings, Delira-Padilla told the police a red/maroon Lincoln Towncar pulled in front of his home playing loud music. When he went to the door to look outside he saw the car and one of the occupants of the vehicle flashed gang signs which identified the occupants as Nortenos gang members. When Delira-Padilla saw the gang signs he feared he and his family were about to be

---

[7] Count 3 charges murder which is a racketeering act. The government also expects to demonstrate this defendant has committed narcotics offenses which also constitute a racketeering act.

16

the victims of a drive by shooting so he told his wife to get the children in the back of the house and lie on the floor.

Delira-Padilla exited the back door and got into his car to look for the red/maroon Lincoln Towncar.  He found the Towncar approximately one block away now unoccupied. When Delira-Padilla heard gunshots coming from the area of his house he rammed the red/maroon Lincoln and returned to his residence.  When he got back to his house he saw a different Lincoln Towncar which was tan in color parked in the drive of a house on his block.  A person who got out of the tan Lincoln is later seen by Delira-Padilla shooting again at his house.

Dodge City police officers were responding to the area following a 911 call from Sabrina Quinones, the wife of Delira-Padilla.  When they arrived they observed the brown/tan Lincoln driving at a high rate of speed and stopped the car.  The driver and only occupant was Donte Barnes, the other defendant charged with these offenses.  Delira-Padilla was at the scene and identified this Lincoln as the one he had just seen drive through the alley immediately before the second round of shooting occurred.

The red Lincoln Towncar which had been previously struck and "marked" by Delira-Padilla was identified as a car belonging to Alfredo Beltran-Ruiz.  Beltran-Ruiz' girlfriend confirmed he had the car during the time of the shooting and when she saw and asked about the damage to his Lincoln he told her a "scrap" had damaged his car.

Beltran-Ruiz was arrested on a probation violation on March 18, 2011, in Dodge City. While in custody he had several recorded visitations.  During one he told a visitor he had been with Donte Barnes the night of the shooting and was not arrested that night because he could run. He also directed Laura Rodriguez, mother of Defendant Enrique Gobin and other Nortenos, to

17

retrieve an unidentified item for him under a lawnmower in the backyard of a residence near Humberto Ortiz' house. Ortiz was a fellow Norteno gang member. Beltran-Ruiz provided a sufficient description of the residence to the visitor that a police officer who watched the recording of the visit was able to locate the residence first and when he looked under the lawnmower located in the backyard he found a .22 caliber revolver. Beltran-Ruiz's gang moniker is "Deuce-Deuce" because of his frequent possession and use of .22 caliber firearms.

On the night of the shootings at 1705 Avenue D, police officers at the house observed multiple gunshots had struck the front and side of Delira-Padilla's home. One shot entered the bedroom of the youngest child approximately two feet above the child's bed. Although most of the bullet fragments found inside the home were degraded to such a degree as to make identification impossible at least one fragment was recovered which police officers believed was consistent with a smaller caliber bullet such as a .22 or .25 caliber.

### a.  Statement 3

This statement was made by Alfredo Beltran-Ruiz in an effort to elicit help in disposing of a firearm he used during the shootings at the Delira-Padilla residence. As cited previously, statements made by conspirators to eliminate evidence are made in furtherance of the conspiracy and admissible under the rule. *Medina*, 761 F.2d at 18.

### b.  Statement 3a

During this recorded conversation Beltran-Ruiz identified "Snipes" as being with him the night of the shooting. Dodge City police officers knew "Snipes" to be the moniker of Donte Barnes. Despite the fact this statement was made following the shooting and while Beltran-Ruiz was in jail, it is still made in furtherance of the conspiracy because it identified another member

18

of the conspiracy. *Smith*, 833 F.2d at 219 ("statements of coconspirator identifying a fellow coconspirator" are not hearsay)(quoting *United States v. Handy*, 668 F.2d 407, 408 (8th Cir. 1982).

### 6. Juan Torres (Doc. 534)

The United States has not offered any coconspirator statements against Defendant Juan Torres and, therefore, this motion to join would appear to be moot.

### 7. Alfonso Banda-Hernandez and Andrew Gusman (Docs. 537 and 543)

These defendants present arguments which are virtually identical regarding the same statements so they will be addressed in unison.

At the *James* hearing, the government presented evidence that on March 30, 2011, George Gonzalez, a Sureno gang leader in Dodge City, encountered four Nortenos gang members at a convenience store in Dodge City. These four Nortenos were defendants Jesus Sanchez, Enrique Gobin, Alfonso Banda-Hernandez and Andrew Gusman. Also in the vehicle with the Nortenos was Ysenia Rios, a Nortenos associate. The four male Nortenos threw gang signs and insults at George Gonzalez. Gonzalez left the convenience store and avoided a direct confrontation with the rival gang members at that location.

Later Gonzalez observed that he was being followed by two vehicles occupied by the same Nortenos he had seen earlier at the convenience store. One vehicle was occupied by Enrique Gobin, Jesus Sanchez and Ysenia Rios and the other was occupied by Alfonso Banda-Hernandez and Andrew Gusman. Gonzalez believed the two cars represented a threat to him because he was a Sureno. It also appeared to Gonzalez that the two cars were working in concert in chasing him. The cars pursued Gonzalez until Gonzalez arrived at his girlfriend's residence

19

where he got out of the car and ran toward her residence. As he was doing so, one of the cars drove past Gonzalez and an occupant inside the car shot at Gonzalez multiple times. Gonzalez was not struck by gunfire but bullet holes were later located by police officers in a fence near Gonzalez's location as he fled toward the house.

### a. Statement 4a

This statement was made by Jesus Sanchez to get Alfonso Banda-Hernandez and Andrew Gusman to join him and Enrique Gobin so that both vehicles could pursue George Gonzalez. This statement was intended to continue the confrontation which began at the convenience store and to bolster the Nortenos' numbers as they made contact with a Sureno leader. The conspiracy began when the Nortenos encountered George Gonzalez and blossomed as they gave chase and then shot at him. The United States humbly suggests a conspiracy to murder George Gonzalez has been shown by a preponderance of the evidence. Additional conspiracies, although not charged, have also been demonstrated by the government's evidence to include a conspiracy to assault Gonzalez with a deadly weapon.[8] Sanchez' exhortation to the second car of Nortenos to join them in pursuit of Gonzalez was made during and in furtherance of these conspiracies and is admissible under the rule.

### b. Statement 4b

The government views this statement made by Jesus Sanchez to coconspirators that he had shot at George Gonzalez as a statement which informs members of the conspiracy about events of importance to the conspiracy in order to facilitate its operation are not hearsay. *Smith*,

---

[8] Rule 801(d)(2)(E) is applicable to uncharged conspiracies as well. See: *United States v. Martinez*, 430 F.3d at 327 n.4.

20

833 F.2d at 219. Shooting at George Gonzalez was the culmination of these conspiracies and is the most important event which occurred during these conspiracies.

### c. Statement 4c

The final statement offered from this series of events was Jesus Sanchez telling Alfonso Banda-Hernandez and Andrew Gusman to drive out of the area because "it will be getting hot." The government asserts this was an effort by Sanchez for him and his fellow Nortenos to avoid capture. The government has previously cited support that statements made by coconspirators to avoid capture are made in furtherance of the conspiracy. *United States v. Garate-Vergara*, 942 F.2d at 1553.

### 8. Fabian Neave (Doc. 538)

During the *James* hearing the United States presented evidence that on August 27, 2011, several persons were attending a party at 703 9th Avenue in Dodge City. Two men approached the gathering. The men identified themselves as Nortenos and accused the persons at the party of being Surenos. One of the Nortenos made a phone call and shortly afterward a vehicle arrived and several more men joined the first two. A fight ensued and two of the party goers were stabbed. Victims later identified Jason Najera as one of the first two men who had approached them and identified themselves as Nortenos. Evidence was also introduced that the other man who accompanied Najera to 703 9th Avenue was Jesus Torres. The other men who arrived in the vehicle were identified as Jose Neave, Fabian Neave and Humberto Ortiz.

The United States also introduced evidence as to what had caused Jesus Torres and Jason Najera to confront the party-goers. A woman who was present with the men in a residence in close proximity to 703 9th Avenue told the police and the grand jury that Jesus Torres was upset

21

because his mother lived close to 703 9th Avenue and he believed the persons at that address were "scraps." He tried to get the Nortenos with him to confront the persons at 703 9th Avenue and, after making several attempts, finally got Najera to agree to go with him. The others watched as Najera and Jesus Torres walked to 703 9th Avenue. Later, Jose Neave, Fabian Neave and Humberto Ortiz drove in a car to 703 9th Avenue to provide support to their fellow Nortenos.

The defendant suggests the statement cannot be offered against him because there is no proof Fabian Neave heard Jesus Torres make the statement regarding "scraps" and no specific actions taken by Fabian Neave when he arrived at 703 9th Avenue were identified at the *James* hearing. This statement, much like Statement 1a, explains how, when, where and why this conspiracy began and is admissible under the rule. The government does not have to prove each conspirator heard the statement nor are we required to prove at this stage the defendant participated in the attack beyond a reasonable doubt. The law merely requires at this hearing the government make a showing there was a conspiracy and the statement was made during and in furtherance of the conspiracy.

Fabian Neave's arrival at 703 9th Avenue occurred shortly after Jesus Torres and Jason Najera had agreed to confront "scraps." Further, it is of consequence that the attack and stabbings occur right after he and other reinforcements arrived by car. During the *James* hearing the government met its burden of showing by a preponderance of the evidence that Fabian Neave was a member of the uncharged conspiracy to assault suspected Surenos. There is no other logical explanation for his presence and the timing of his arrival at 703 9th Avenue.

22

### 9.  Joshua Flores (Doc. 539)

This defendant largely repeats arguments made by other defendants which include that the evidence offered against him regarding the robbery[9] was unreliable, failed to show he heard any of the statements when they were made, failed to prove he benefitted from the crimes and failed to prove he was involved in the conspiracy.  The United States has recited a good portion of the evidence presented regarding Counts 7-9 at the *James* hearing in response to Defendants Garcia and Ramirez's arguments.  Therefore, these facts will only be summarized here.

The United States presented evidence at the hearing that a home invasion robbery occurred at 1005 Avenue E in Dodge City on June 8, 2009.  It was also established the victims of the robbery/beating were Guatemalan immigrants and that home invasion robberies of Guatemalan immigrants were a signature crime committed by the Nortenos.   The victims told the police after the robbery that 4-6 armed men committed the robbery and some robbers beat one of the victims and forced him from room to room to gather money while other robbers stood guard in the front room.

The government presented evidence at the *James* hearing that three cooperators identified Joshua Flores as being present at Pedro Garcia's house on June 8, 2009.  All three of these cooperators observed this defendant return to the house immediately following the robbery.  Joshua Flores was wearing a bandana and possessed a gun.  He participated in dividing the robbery proceeds in the basement of Garcia's home.  Testimony was also presented that a cooperator who actually participated in the robbery identified Joshua Flores, along with Pedro

---

[9] At page 3 of his brief the defendant refers to this crime as an "alleged Burglary" but the evidence established the crimes committed were far more serious.

23

Garcia, Gonzalo Ramirez and Jesus Flores as the four who committed the robbery. It is expected that all three of these cooperators will testify at trial and the defendant will be afforded the opportunity to cross examine them. As for the defendant's claim this evidence is not reliable, it is difficult to imagine evidence which has more reliability than that of eyewitnesses who have admitted their participation in these same crimes.

### i. Statement 2a

The defendant asserts Statement 2a cannot be offered as a coconspirator statement because the declarant is not specifically identified. This defendant also cites no law which indicates the identity of the declarant must be known. The law only requires that the declarant be a member of the conspiracy. The statement was made either by Pedro Garcia or Gonzalo Ramirez, at a time when both were clearly members of a robbery conspiracy and a conspiracy to assault with a dangerous weapon. This statement is the beginning of these conspiracies which means it was made by a coconspirator during and in furtherance of these conspiracies. Both Garcia and Ramirez were members of the conspiracy with Joshua Flores and the statement is admissible against Joshua Flores as a coconspirator statement pursuant to Rule 801(d)(2)(E).

### ii. Statement 2b

While the exact words used by Ramirez were not reported, there is a clear understanding that Ramirez selected the victim house after taking a close look at the residence. He turned to his fellow conspirators and announced they should rob that house. Moments later they robbed the occupants of that house and beat one of the occupants in the process. This statement is far more than chatter amongst conspirators and clearly is during and in furtherance of conspiratorial

24

action.  This statement was made by Ramirez, a conspirator, during and in furtherance of the conspiracy and is admissible against Joshua Flores under Rule 801(d)(2)(E).

### iii.  Statement 2c

Defendant Joshua Flores does not directly address this statement but it is presumed he objects to its admission against him as well.  This statement was made by Pedro Garcia while in the car with Gonzalo Ramirez, Russell Worthey and Anthony Wright as the four were driving to "get scraps."  Garcia makes this statement *after* the robbery but *before* the murder.  The reason it will be offered by the United States as evidence in the home invasion robbery is because Pedro Garcia is warning Anthony Wright, the driver, to stay away from the area of town where the home invasion had recently occurred.  Garcia is concerned there will be police officers in the area east of them because he presumes officers are responding to the home invasion robbery.

Garcia is concerned police officers might stop and/or arrest them while investigating the robbery.  The government believes this was an effort by Garcia to avoid capture for the robbery and, therefore, was in furtherance of the conspiracy.  *Garate-Vergara*, 942 F.2d at 1553.

<div style="text-align:right">

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov

</div>

25

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov


CERTIFICATE OF FILING

I hereby certify that on April 12, 2013, I filed the foregoing Supplemental Brief in Support with the United States Clerk's Office who provided copies to the Court and to counsel for the defendants.

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-01-23-MLB |
| | } | |
| JASON NAJERA | } | |
| a.k.a. Ene, | } | |
| a.k.a. Norte, | } | |
| PEDRO GARCIA, | } | |
| a.k.a. Peter Garcia, | } | |
| a.k.a. Pistol Pete, | } | |
| GONZALO RAMIREZ, | } | |
| a.k.a. Gonzo, | } | |
| RUSSELL WORTHEY, | } | |
| a.k.a. Blanco, | } | |
| ANTHONY WRIGHT, | } | |
| a.k.a. Huesos, | } | |
| JOSHUA FLORES, | } | |
| a.k.a. Big Knox, | } | |
| JESUS FLORES, | } | |
| a.k.a. Tito, | } | |
| ANGEL CERDA, | } | |
| a.k.a. Shrek, | } | |
| JUAN TORRES, | } | |
| a.k.a. Bugsy, | } | |
| ALFREDO BELTRAN-RUIZ, | } | |
| a.k.a. Deuce-Deuce, | } | |
| DONTE BARNES, | } | |
| a.k.a. Snipes, | } | |
| a.k.a. Snipe, | } | |
| a.k.a. Sniper, | } | |
| JESUS SANCHEZ, | } | |
| a.k.a. Drac, | } | |
| a.k.a. Dracula, | } | |
| ENRIQUE GOBIN, | } | |
| a.k.a. Ricky, | } | |
| a.k.a. Sonny Boy, | } | |
| ALFONSO BANDA-HERNANDEZ, | } | |
| a.k.a. Fonso, | } | |
| ANDREW GUSMAN, | } | |
| a.k.a. Beaver, | } | |

1

| | |
|---|---|
| EUSEBIO SIERRA-MEDRANO, | } |
|   a.k.a. TC, | } |
| JAYSON VARGAS | } |
|   a.k.a. Wee Wee, | } |
| ADAM FLORES, | } |
|   a.k.a. Little Lazy, | } |
| FABIAN NEAVE, | } |
|   a.k.a. Puppet, | } |
| JESUS TORRES, | } |
|   a.k.a. Rabbit, | } |
| JOSE NEAVE, | } |
|   a.k.a. Caiyo, | } |
| HERNAN QUEZADA, | } |
|   a.k.a. Cheese, | } |
|   a.k.a. Cartoon, | } |
| HUMBERTO ORTIZ, | } |
|   a.k.a. Beto, | } |
| | } |
|       Defendants. | } |

## UNITED STATES' MEMORANDUM IN ADVANCE OF A *DAUBERT* HEARING

Comes now the United States of America, by and through Aaron L. Smith and Lanny D. Welch, Assistant United States Attorneys for the District of Kansas, and submits this memorandum in advance of *Daubert/Kumho Tire* hearings to address specific issues of interest:

1. The scope and focus of the testimony offered by the United States' proposed expert witnesses on gangs.

2. The treatment or admission of certain evidence (contained within gang sheets) inquired upon by the Court and certain counsel as represented by various motions.

**Scope of Testimony**

The United States is offering expert testimony regarding the experts' opinions, training and experiences concerning the street gangs, including those indicted, in Dodge City, Kansas (characteristics, indicia of membership, common practices/activities and identification of

2

members).  It will also be necessary to delve somewhat into the membership and activities and of the rival Surenos street gang to add context to this evidence.

The United States will offer James Nau and Shane Webb as the experts at the upcoming *Daubert/Kumho Tire* hearings.  These witnesses have previously been identified and a summary of their expert opinion has been provided.  (Doc. 297)  At the upcoming *Daubert/Kumho Tire* hearings, the United States will offer the experts to qualify them generally on the subjects of gangs, gangs specific to Dodge City, and the relevant material contained in their expert summary.  At the upcoming hearings, the witnesses will not be offered to provide evidence as to the status of each individual defendant.   Further, the witnesses will not be offered as fact witnesses to any "qualifying event" tending to show a defendant's association with a gang, whether that be the underlying crimes charged, an "event" contained within a gang sheet, or other conduct that may or may not be admissible at a future trial on the facts of the case.

The United States will offer photographs of clothing, graffiti, tattoos, hand signals and hairstyles at the upcoming *Daubert/Kumho Tire* hearings.  Those photographs will be offered as an aid to explain the testimony at these hearings.  Some, but not all, of the photographs will contain representations of named defendants.  The use of the photographs at the *Daubert/Kumho Tire* hearings does not indicate the United States intent, or lack thereof, of admitting, nor the admissibility of, the same exhibits at future hearings.

While not a subject of the upcoming *Daubert/Kumho Tire* hearings, the witnesses may be presented as expert witnesses, as well as lay witnesses or fact witnesses at any upcoming trial or hearing relying on specific facts of distinct events.   "[I]t is possible for the same witness to provide both lay and expert testimony in a single case." *United States v. Caballero*, 277 F.3d 1235, 1247 (10th Cir. 2002).

The United States has previously submitted a response regarding the law governing admission of expert testimony (Doc. 568), and relies on the law contained therein.

The Tenth Circuit Court of Appeals has frequently upheld the admission of expert gang testimony.  See: *United States v. Doddles*, 539 F.3d 1291 (10th Cir. 2008)(investigating officer identified members of a rival gang, testified that it would not be unusual for a leader of a drug trafficking gang to keep drugs in his bedroom and that members of such a gang make guns available to other gang members); *United States v. Robinson*, 978 F.2d 1554, 1562 (10th Cir. 1992)("We are persuaded that associational evidence may be directly relevant on the issues of formation, agreement and purpose of the conspiracy...Gang membership helped to establish an agreement among the subject, the purpose of the conspiracy and knowledge on the part of these defendants.") ; and *United States v. Hartsfield*, 976 F.2d 1349 (10th Cir. 1992)(The court concluded that testimony, concerning the defendant's membership in the Black Mafia Crip Dawgs and that the main purpose of this gang was to distribute cocaine and crack cocaine, was probative of the existence of the actual conspiracy alleged).  See also: *United States v. Chavful*, 100 Fed. Appx. 226 (5th Cir. 2004); and *United States v. Hankey*, 203 F.3d 1160, 1168-70 (9th Cir. 2000).

The testimony of some Dodge City Police Department personnel is properly admitted as expert testimony.  It should be expected that jurors serving in these cases would not possess knowledge about street gangs in general and would particularly lack knowledge and understanding about the activities of the Nortenos street gang in Dodge City, Kansas.  The gang's membership, leadership, symbolism, signs, dress, appearance, activities, rivals, rules, etc. would not be within the common knowledge and experience of a juror called for service in

Wichita, Kansas.  This expert testimony will assist the juries in performing their duty in determining whether the Nortenos comprised an enterprise under the law.

The officers' expert opinions are based upon their years of working the streets of Dodge City as police officers, formal and informal education, formal and informal training, interviews of witnesses, suspects, victims and other officers, as well as their observations of criminal and non-criminal conduct.  Within their particular field, this is the type of data and/or factual information that officers rely upon when forming their opinions about gang activity.  This testimony is relevant and reliable as required by law.

**Admission of Certain Evidence (contained within gang sheets)**

The United States has provided a large volume of gang sheets associated with each defendant, as well as existing reports underlying any gang sheets.  Various defendants filed motions in objection to or for the suppression of certain evidence contained therein.[1]  The United States responded to those motions in (Doc. 565).   Further, the Court has inquired about the United States' use of the "gang sheets" in any trials resulting from the instant prosecution.[2]

The United States relies on its relevance and prejudice arguments presented in the prior response (Doc. 565).  Various defendants also seek the exclusion of their own admissions, hearsay statements, and representation of their own tattoos.  The arguments rely primarily on those communications being un-*Mirandized*.[3]

---

[1] Motions were filed by or joined by Gonzalo Ramirez (Doc. 542), Pedro Garcia (Doc. 547), Angel Cerda (Doc. 545), Alfonso Banda-Hernandez (Doc. 555), Eusebio Sierra-Medrano (Doc. 556), Alfredo Beltran-Ruiz (Doc. 560), Andrew Gusman (Doc. 561), Adam Flores (Doc. 562), and Fabian Neave (Doc. 563).

[2] Done so in open court and in the presence of various defendants' counsel prior to a hearing on a motion to suppress.

[3] See motions represented in footnote 1.

5

In response to the inquiries, the United States offers the following clarifications:[4]

1. The United States does not intend to offer the actual, physical gang sheets of the defendants as substantive evidence in its' case-in-chief.

2. The United States does not intend to offer a defendant's admission, other statements, representations of tattoos, etc. that are reflected through the gang sheets by the testimony of the expert witnesses absent independent legal bases for the admission of the evidence.

3. The United States will comply with the deadlines set by the Court for notifications of intent to offer evidence under Rule 404(b), and such evidence may contain events reflected in the gang sheets.

4. The United States will seek admission of a defendant's statement made voluntarily, made while properly mirandized, or made in a manner otherwise legally admissible.

5. The United States will seek admission of relevant tattoos of the defendants viewed or viewable in a manner in which the defendant could assert no reasonable expectation of privacy.  Similarly, the United States will seek admission of relevant tattoos viewed during consensual encounters or in settings in which a defendant has no Miranda based objections.

6. The United States will present testimony by lay witnesses and fact witnesses to the same evidence contained within the "gang sheets" based upon all traditional standards of the admissibility of evidence.

---

[4] Such clarifications represent the United States' current understanding of the case and evidence.  Future rulings of the Court, developments in future hearings, dispositions of claims or defendants and the ever-changing landscape of complex litigation may change the trial strategies of the United States, as it deems appropriate.

6

At the upcoming *Daubert/Kumho Tire* hearings, the United States expects the experts may rely on the content of the gang sheets in creating a basis for their expert opinions. Regardless of the admissibility arguments of defense counsel, and the representations of the United States above, the experts may properly rely on the information contained within the gang sheets.  Under Rule 703, and expert may rely on facts or data the expert has been made aware of, and the facts or data need not be admissible for the opinion to be admitted.  In that instance the Court must make a probative value versus prejudicial effect analysis.  In the upcoming *Daubert/Kumho Tire* hearings, the evidence is not before a jury, and the analysis is unnecessary.

Further, the experts may rely on "hearsay" testimony in the formation of their opinions. *United States v. Ayala*, 601 F.3d 256, 275 (4th Cir. 2010) (cert. denied 131 S. Ct. 262, U.S. 2010) (gang affiliation experts; Crawford does not "silently invalidate" Rule 703 unless the expert is simply acting as a mere "conduit or transmitter" of hearsay).

The United States submits this memorandum for the Court and benefit of counsel in advance of the *Daubert/Kumho Tire* hearings scheduled April 16, 17 and 18 of the year 2013.

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov

7

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov


CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of April, 2013, we electronically filed the foregoing motion with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Aaron L. Smith
AARON L. SMITH
Assistant United States Attorney

8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 12-CR-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT PEDRO GARCIA'S OBJECTIONS FOLLOWING**
***DAUBERT* HEARING**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John

Val Wachtel of Klenda Austerman LLC, and hereby files his objections to the expert qualifications

of the government's gang expert witnesses and to the 'expert witnesses' opinion(s).

Preface

Three separate *Daubert* hearings were conducted in the present case. Mr. Garcia participated

in the first *Daubert* hearing which was conducted during the morning hours of April 16, 2013.

During that hearing Government Exhibit 1 was admitted as was defendant Garcia's Exhibit A.

Exhibit 1 was titled Diablos Viejos (Old Devils) Los Carnales Chingones (The Bad Ass Brothers)

two of Dodge City's local Norteno Criminal Street Gangs. On page 1 of Exhibit 1, the following is

written by whomever prepared the exhibit:

> The following gang information is being provided by Dodge City Police Department
> Officer James Nau, Detective J.L. Bice and Detective Shane Webb and our 18 years
> combined experience working gang crimes. This gang intelligence is from previous
> gang officers as well as our own information that has been through training (National
> Gang Intelligence), informants, gang members, former gang members, and family
> [sic]of gang members through debriefs, formal, and informal gang interviews. This
> intelligence is general in nature and not always agreed on by individual gang

members.

See Government's Exhibit 1, page 1, *Daubert* Hearing.  Exhibit A is a copy of the government's

Disclosure of Anticipated Expert Witnesses (Doc. 297) and it contains the CVs of Nau, Bice and

Webb.  Exhibit A also contains a synopsis of what those three witnesses are expected to testify to as

experts.  In the discussion regarding the admission of Exhibit A, Mr. Welch advised the Court that he

wanted to "make sure it's clear [ ]  This summary, which is admitted as Exhibit 1 that Mr. Webb has

testified he helped create, was attached to this [Doc. 297] when it was filed, so I think you need to

take both of those together."  Transcript, First *Daubert* Hearing, April 16, 2013, p. 86, ll 9-16, hear in

after "Transcript."  Thus the government advised that Exhibit A and Exhibit 1 contain the expert

testimony that Detective Webb and Agent Nau are expected to present at trial.

At the conclusion of Mr. Garcia's counsel's cross-examination of Agent Nau, the Court made

the following comment, which is most telling in the *Daubert* context:

> And Val has hit on something that strikes me here, too.  I realize what we are doing
> here, to some extent, is legitimate *Daubert* testimony.  Maybe.  But there's also
> straight Rule 701 testimony here that really doesn't require expertise to testify about.
> Maybe a little expertise that if you're hanging around the mall, you can identify a
> gang member and a peewee.

*Id*. p. 181-82, ll. 21-3.  Judge Belot's comment is telling indeed when applied to Exhibits 1 and A.

Exhibits 1 and A are filled with Rule 701 testimony and are void of virtually anything that qualifies

as legitimate gang expert testimony and opinion.

There is a distinction between Rule 701 evidence and Rule 702 evidence.  Rule 701, lay

opinions, have to be "(a) rationally based on the witness's perception; (b) helpful to clearly

understanding the witness's testimony or to determining a fact in issue; and (c) not based on

scientific, technical, or other specialized knowledge within the scope of Rule 702."  Opinions that are

not based on the witness's perception are not admissible under Rule 701.  Rule 702 expert opinions

<div align="center">2</div>

to the contrary, must be based on the expert's personal knowledge, and/or facts or data made known to the expert at trial or data presented to the expert outside the courtroom. <u>The proponent of the expert witness has the burden of establishing the facts or data forming the basis for the expert's opinion are of a type that experts in the witness's field of expertise would rely on in forming their opinions</u>. Rule 702 does not allow mere repetition of third party declarations which are hearsay. Expert testimony must apply reliable principles and methods to the facts of the case. In short, mere regurgitation of facts learned from third persons are nothing more than Rule 801 hearsay declarations offered for the truth.

Hearsay statements are admissible in expert testimony so long as they are admitted for purposes other than their truth, and but for certain exceptions these statements so offered are generally admissible. An example of the admission of out-of -court statements for a purpose other than the truth, "is where an expert witness testifies regarding the out-of-court development of facts or data on which the expert's opinion is based." *United States v. Pablo*, 696 F.3d 1280, 1287 (10th Cir. 2012). "**However**," note that "the **disclosure of this otherwise inadmissible information is to assist the jury in evaluating the expert's opinion, not to prove the substantive truth of the otherwise inadmissible information**." *Id*. at 1288

### The Qualifications of Webb and Nau

Rule 702 of the Federal Rules of Evidence and the *Daubert* decision liberalized or relaxed the traditional barriers to expert opinion testimony. Both the Rule and *Daubert* demand the court act as a "gatekeeper," with the duty of screening the expert testimony that a party proposes to offer. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S., 579, 589-90 (1993). Tenth Circuit has seen fit to admit law enforcement officers' 'expert' opinions regarding gang and/or street gangs. *See United States v. Doodles*, 539 F.3d 1291 (10th Cir. 2009). Accordingly and based upon the CVs of Webb

3

and Nau which were provided to the defense, and based as well on the testimony of Webb and Nau

regarding their training and experience given at the *Daubert* hearing, Mr. Garcia has no objection to

Webb and Nau being accepted by this Court as experts in street gangs.

### Objection to the Gang Experts' Proffered Testimony

In performing its gatekeeper function, a court is required to assess more than just the expert's

qualifications.  The court must "assess the proffered testimony to ensure it is both relevant and

reliable."  *United States v. Avitia-Guillen*, 689 F.3d 1253 (10th Cir. 2012).   In the context of the

present case, the court is also required to determine what parts of the proffered opinion are Rule 701

testimony, and which parts, if any, are legitimate expert opinion.  In addition to assessing the

qualification of the expert witness in the area about which such a witness is expected to testify, the

trial court must perform one other function.  The court must determine whether the expert opinion is

relevant and reliable.  *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

"Federal Rule of Evidence 702 requires courts to assess the reliability of expert testimony

based on scientific, technical or other specialized knowledge before admitting it.  *United States v.*

*Roach*, 582 F.3d 1192, 1206 (10th Cir. 2009), citing *Daubert* 509 U.S. at 580 and *Kumho Tire Co. v.*

*Carmichael*, 526 U.S. 137, 141 (1999).  Under the evidentiary Rule, the court's inquiry is twofold.

First the court must determine whether the witnesses are qualified as experts in the area about which

they will testify.  *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) ("In determining

whether expert testimony is admissible, the district court generally must first determine whether the

expert is qualified 'by knowledge, skill, experience, training or education' to render an opinion."

(quoting Fed.R.Evid. 702)).  Second, the court must determine whether the expert opinion is relevant

and reliable.  *Id.* 555 F.3d at 1241, citing *Daubert*, 509 U.S. 579, 589 (1993).

An expert exercises independent judgment.  He does not and may not parrot some another

4

individual's out-of-court statement for, if the expert does so, he is offering that statement or statements, for the truth rather than conveying an independent judgment. In such case there has been an end run around *Crawford*. *Pablo*, 696 F.3d at 1288. In reaching this decision the *Pablo* court went on:

> *United States v. Lombardozzi*, 491 F3d 61, 72 (2d Cir. 2007), explaining that because an expert witness "may form an opinion by applying her expertise to otherwise inadmissible evidence," including out-of-court statements, and convey that information to the jury for purposes of evaluating the expert's opinion, the admission of the out-of-court statement deprives a defendant of his confrontation rights only if the expert conveys the statement "directly to the jury **in the guise of an expert opinion**."

*Id*. (emphasis added). To meet the burden to which a trial court is subject in this regard, the court must examine the methodology applied by the expert in exercising his or her independent judgment. *Avitia-Guillen*, 680 F.3d at 1256 ("the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology" citing *Naccio*, 555 F.3d at 124.).

Assessing the methodology and reasoning applied by the expert in developing his opinion is of vital importance in evaluating cases such as the present one. It is clear that an expert witness can rely upon hearsay, and even Crawford hearsay, in reaching his opinion if the hearsay is not offered for its truth. *Pablo*, 696 F.3d at 1287-88.

Counsel for Mr. Garcia has examined Government Exhibit 1, defense Exhibit A and the transcript of the *Daubert* hearing. Counsel can find nothing in either of the exhibits or the transcript which even begins to identify which parts of the testimony and exhibits are statements of fact and which parts are expression of expert opinion. Moreover, the government has not proffered any evidence of reasoning and methodology used or applied by Nau and Webb. Such evidence is an integral part of the Daubert analysis of experts and their opinions. It was the burden of the government to provide that evidence, and because it failed to do so this Court cannot make a ruling

5

on the reliability and hence the admissibility of any of the proffered testimony as expert testimony.
Accordingly, the Court should not allow any law enforcement gang expert testimony to be admitted.

When one examines Government Exhibit 1 by section, it is apparent that none of the experts who assisted in preparing this document exercised any methodology if and to the extent that they reached any independent conclusion. Sections "Diablos Viejos" and subsection "*Identifying signs, colors or symbols*" contain no conclusions of either Webber of Nau. These sections simply parrot what may have been taught in training. The same is true of subsection "Current Status and structure."

Section "Los Carnales Chingones," and subsections "Organization," Identifying signs, colors or symbols." Likewise contain nothing to indicate that the contents of these paragraphs are the product of the witnesses reasoning and expertise. Additionally there is no indication that any information contained therein arises out of the independent judgment of the proposed experts.

An entire section of Government Exhibit 1 concerns the "Sureno 13 (Southsider)," the "MCB/18th Street criminal gangs," apparently including the "Master Criminal Boys." When analyzed as the prior sections were analyzed, the information or opinions, if any, contained in these sections and subsections cannot be admitted.

When one examines the proffered testimony of Webb and Nau, no greater light is shed on which of the statements they intend to testify to are expert conclusions drawn by them. The testimony sheds no light on the application of expertise to facts and the methodology used by either Webb or Nau. The government may have some idea of which statements testified to are expert opinions and which are simply regurgitation of facts known to the proposed experts or others.

Mr. Garcia has not discussed herein Defendant's Exhibit A. That exhibit has not been discussed here because the document is at best murky. It is less illuminating than is Government

6

905

Exhibit 1.

By reason of the above, Mr. Garcia submits that the supposed expert opinions of Webb and Nau not be admitted at the trial of this case.  To the extent that Nau and Webb have Rule 701 evidence the government can seek to admit that testimony subject to objection.  Accordingly, Mr. Garcia prays for the relief discussed herein.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2013, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

KMAZ Doc. 21C6510

905

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
          Sheet 1

# United States District Court
## District of Kansas

UNITED STATES OF AMERICA

v.

Jason  Najera

**JUDGMENT IN A CRIMINAL CASE**

Case Number:  6:12CR10089 - 001

USM Number:  22114-031

Defendant's Attorney:  David H. Moses

### THE DEFENDANT:

☒    pleaded guilty to count:  26 of the Indictment.

☐    pleaded nolo contendere to count(s) ___ which was accepted by the court.

☐    was found guilty on count(s) ___ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1959(a)(5) | VIOLENT CRIMES IN AID OF RACKETEERING-ATTEMPTED MURDER OF GABRIEL RIVERA AND CARLOS RAMIREZ, a Class C Felony | 08/27/2011 | 26 |

The defendant is sentenced as provided in pages 1 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐    The defendant has been found not guilty on count(s) ___.

☒    Counts  1, 27, 33 and 34 of the Indictment as they pertain to this defendant  are dismissed on the motion of the United States.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

04/29/2013
Date of Imposition of Judgment

s/ Monti Belot
Signature of Judge

Honorable Monti L. Belot, Senior U.S. District Judge
Name & Title of Judge

4/29/13
Date

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 2 - Imprisonment

Judgment – Page **2** of **6**

DEFENDANT:      Jason  Najera
CASE NUMBER:    6:12CR10089 - 001

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 120 months .

☒      The Court makes the following recommendations to the Bureau of Prisons:

The defendant be designated as close to his family in Dodge City, Kansas as possible and, if eligible, be allowed to participate in the Residential Drug Abuse Program.

☒      The defendant is remanded to the custody of the United States Marshal.

☐      The defendant shall surrender to the United States Marshal for this district.

☐ at ___ on ___ .

☐ as notified by the United States Marshal.

☐      The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before ___ on ___ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____  to  _____

at  _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By  _____
Deputy U.S.  Marshal

AO 245B    (Rev. 09/11 - D/KS 08/12) Judgment in a Criminal Case
Sheet 3 - Supervised Release

Judgment – Page **3** of **6**

DEFENDANT:    Jason Najera
CASE NUMBER:    6:12CR10089 - 001

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of <u>three (3) years</u> .

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check if applicable)*

☒    The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check if applicable)*

☒    The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check if applicable)*

☐    The defendant shall register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student. For initial registration purposes only, the defendant shall also register in the jurisdiction in which convicted, if such jurisdiction is different from the jurisdiction of residence. Registration shall occur not later than 3 business days after being sentenced, if the defendant is not sentenced to a term of imprisonment. The defendant shall, not later than 3 business days after each change in name, residence, employment, or student status, appear in person in at least one jurisdiction in which the defendant is registered and inform that jurisdiction of all changes in the information required. *(Check if applicable)*

☐    The defendant shall participate in an approved program for domestic violence. *(Check if applicable)*

If this judgment imposes a fine or restitution, it is to be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without permission of the court or probation officer;
2)    the defendant shall report to the probation officer in a manner and frequency directed by the court or the probation officer;
3)    the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4)    the defendant shall support his or her dependents and meet other family responsibilities;
5)    the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substances or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)    the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 909

AO 245B     (Rev. 09/11 - D/KS 08/12) Judgment in a Criminal Case
Sheet 3C - Supervised Release

Judgment – Page **4** of **6**

DEFENDANT:      Jason  Najera
CASE NUMBER:   6:12CR10089 - 001

# SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant shall successfully participate in an approved program for substance abuse, which may include urine, breath, or sweat patch testing, outpatient and/or residential treatment, and share in the costs, based on the ability to pay. The defendant shall abstain from the use of alcohol and other intoxicants during said treatment program as directed by the Probation Office.

2.  During the course of supervision, the defendant shall make regular monthly child support payments in accordance with any payment plan established by state authorities.

3.  The defendant shall not be a member of any street gang, participate in any gang-related activities, or associate with any gang members during the term of supervision. The defendant shall comply with any curfew established by the probation officer, who may utilize electronic monitoring to verify the defendant's compliance with the curfew schedule. As instructed by the probation officer, the defendant may be required to maintain a telephone at the defendant's place of residence without call forwarding, caller ID, call waiting, portable cordless telephones, answering machines/service, or any other feature or service which would interfere with the operation of electrical monitoring equipment. The defendant may be required to wear an electronic monitoring device, which may include Global Positioning System and/or Random Tracking, and follow electronic monitoring procedures specified by the probation officer. Additionally, the probation officer may restrict the defendant from certain areas within the community, and the defendant must comply with these restrictions. The defendant shall assist in the costs of home confinement, based on the ability to pay, at the direction of the probation officer.

4.  The defendant shall submit his/her person, house, residence, vehicle(s), papers, business or place of employment and any property under the defendant's control to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

5.  The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon.

AO 245B      (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case

Sheet 5 — Criminal Monetary Penalties

DEFENDANT:      Jason  Najera
CASE NUMBER:   6:12CR10089 - 001

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the Schedule of Payments set forth in this Judgment.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $100 | Waived | $16,242.10 |

☐  The determination of restitution is deferred until ___. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☒  The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Crime Victims Compensation Board Claim # 120252 | | $ 2,811.60 | |
| Crime Victims Compensation Board Claim # 120231 | | $ 13,430.50 | |
| Totals: | $ | $ 16,242.10 | |

☐  Restitution amount ordered pursuant to plea agreement $___.

☐  The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options set forth in this Judgment may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒  The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☒ the interest requirement is waived for the ☐ fine and/or ☒ restitution.

☐ the interest requirement for the ☐ fine and/or ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 09/11 - D/KS 08/12) Judgment in a Criminal Case
Sheet 6A   Schedule of Payments

Judgment – Page **6** of **6**

DEFENDANT:     Jason  Najera
CASE NUMBER:   6:12CR10089 - 001

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A    ☐    Lump sum payment of $___ due immediately, balance due
            ☐ not later than ___ , or
            ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B    ☒    Payment to begin immediately (may be combined with ☐ C, ☒ D, or ☒ F below); or

C    ☐    Payment in monthly installments of not less than 5% of the defendant's monthly gross household income over a period
            of ___ years to commence ___ days after the date of this judgment; or

D    ☒    Payment of not less than 10%  of the funds deposited each month into the inmate's trust fund account and monthly
            installments of not less than 5% of the defendant's monthly gross household income over a period of  three (3)  years, to
            commence thirty (30)  days after release from imprisonment to a term of supervision;  or

E    ☐    Payment during the term of supervised release will commence within ____  (e.g., 30 or 60 days) after release from
            imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that
            time; or

F    ☒    Special instructions regarding the payment of criminal monetary penalties:

If restitution is ordered, the Clerk, U.S. District Court, may hold and accumulate restitution payments, without distribution, until the
amount accumulated is such that the minimum distribution to any restitution victim will not be less than $25.

Payments should be made to Clerk, U.S. District Court, U.S. Courthouse - Room 259, 500 State Avenue, Kansas City, Kansas 66101.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is
due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒      Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount Joint and Several Amount and
corresponding payee, if appropriate.

| Case Number (Including Defendant Number) | Defendant Name | Joint and Several Amount |
|---|---|---|
| 6:12CR10089-019 | Fabian Neave | $16,242.10 |
| 6:12CR10089-020 | Jesse Torres | $16,242.10 |
| 6:12CR10089-021 | Jose Neave | $16,242.10 |
| 6:12CR10089-023 | Humberto Ortiz | $16,242.10 |

☐      The defendant shall pay the cost of prosecution.
☐      The defendant shall pay the following court cost(s):
☐      The defendant shall forfeit the defendant's interest in the following property to the United States.  Payments against any
         money judgment ordered as part of a forfeiture order should be made payable to the United States of America, c/o United
         States Attorney, at 301 N. Main, Ste 1200, Wichita, KS 67202 Attn: David Stevens.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) **CRIMINAL ACTION** |
| | ) |
| v. | ) No. 12-10089-01-23 |
| | ) |
| Jason Najera, Pedro Garcia, | ) |
| Gonzalo Ramirez, Russell Worthey, | ) |
| Anthony Wright, Joshua Flores, | ) |
| Jesus Flores, Angel Cerda, | ) |
| Juan Torres, Alfredo Beltran-Ruiz, | ) |
| Donte Barnes, Jesus Sanchez, | ) |
| Enrique Gobin, Alfonso | ) |
| Banda-Hernandez, Andrew Gusman, | ) |
| Eusebio Sierra-Medrano, Jayson | ) |
| Vargas, Adam Flores, Fabian Neave, | ) |
| Jesus Torres, Jose Neave, Hernan | ) |
| Quezada, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM AND ORDER**

This case comes before the court on the admissibility of certain statements made by alleged coconspirators. The court held hearings on February 13, 2013, to determine the admissibility of the statements. Shane Webb, a deputy sheriff, Jay Bice, a detective with the Dodge City police department, and James Nau, an agent with the Kansas Department of Revenue, testified as witnesses. The court explained to defendants present at the hearings[1] their rights to testify and/or call witnesses. After consulting with counsel, defendants declined to testify or call witnesses. Subsequent to the

---

[1] The following defendants were present at the hearing: Jason Najera, Pedro Garcia, Gonzalo Ramirez, Joshua Flores, Donte Barnes, Enrique Gobin, Alfonso Banda-Hernandez, Andrew Gusman, Jayson Vargas, Adam Flores, Fabian Neave and Jose Neave. The remaining defendants were not present because the statements are not going to be offered against them at trial or because they do not object to the admission of the statements.

hearings, defendants filed supplemental memoranda in objection to the admissibility of the statements.[2] (Docs. 526, 527, 528[3], 532, 533, 534, 537, 538, 539, 543). The government filed responses in support of the admissibility of the statements. (Docs. 540, 588).

## I.   Facts and Procedural History

On April 16, 2012, the grand jury returned an indictment against 23 defendants. The indictment alleges 38 counts, including charges of violent crimes in aid of racketeering, conspiracy and felon in possession of a firearm. The indictment alleges that defendants were in a criminal organization, the Nortenos gang, whose members engaged in narcotics distribution and acts of violence involving murder and robbery. These crimes are alleged to have been committed in Dodge City, Kansas. The indictment further alleges that the racketeering conspiracy began in 2008 and continued through the date of the indictment.

Eight defendants are charged in count 1 with conspiracy to commit racketeering activities in violation of 18 U.S.C. § 1962(d). The RICO conspiracy alleged in count 1 occurred from 2008 through April 16, 2012. Counts 2, 8, 10, 15, 19, 24 and 28 charge VICAR conspiracies in violation of 18 U.S.C. § 1959. The remaining counts allege VICAR substantive offenses along with charges of possession of a firearm in furtherance of a crime of violence. The government seeks to introduce

---

[2] Defendant Juan Torres filed a motion to join defendant Angel Cerda's motion to exclude. (Doc. 534). The motion is denied as moot because the government has not offered any statements against Torres.

[3] Defendant Cerda moves to exclude co-conspirator statements offered against him. At this time, the government has not identified any statements it seeks to offer against Cerda. Therefore, Cerda's motion is denied, without prejudice.

-2-

15 statements concerning seven different events charged in the indictment.

**Statements 1a, 1b, 1c, 2a, 2b and 2c**

On June 8, 2009, a robbery occurred at 1005 Avenue E in Dodge City, Kansas.  Four to six individuals were armed and broke into the residence.  The victims in the home were from Guatemala.  Witnesses to the crime identified the following four defendants as the individuals who committed the robbery: Jesus Flores, Joshua Flores, Pedro Garcia and Gonzalo Ramirez.  During the robbery, Ramirez hit a victim on his head with a pistol and forced him into a room to look for money.  The Dodge City police department had seen similar crimes against victims from Guatemala.

A confidential witness informed police that prior to the robbery Jesus and Joshua Flores, Pedro Garcia and Gonzalo Ramirez were all at 1302 Avenue D, Garcia's residence.  Garcia or Ramirez made the statement "lets go look for a house."  (Exh. 1, statement 2a).  The four defendants then left Garcia's residence on foot and walked south to the alley until they were behind 1005 Avenue E.  Ramirez looked in the back window and said "let's kick this one" or "let's do this house."  (Exh. 1, statement 2b).  Defendants then went around to the front and robbed the victims.  All four defendants participated in the robbery and then returned to Garcia's residence to divide the money. With the exception of Joshua Flores, the witness informed police that Jesus Flores, Pedro Garcia and Gonzalo Ramirez split the proceeds from the robbery.

There were other Nortenos gang members in Garcia's residence after the robbery, including defendants Anthony Wright and Russell

-3-

Worthey.  Shortly after the robbery and while in Garcia's basement, Garcia or Ramirez said "let's go get some scraps." (Exh. 1, statement 1a).  "Scraps" is a derogatory term towards a Surenos gang member, a rival gang to the Nortenos.  Officer Webb testified that the statement meant that they were going to confront Surenos' gang members.  Garcia and Ramirez then left the house with Wright and Worthey.  The four defendants got into Wright's vehicle armed with firearms.  While driving, Garcia told Wright to go east in order to avoid the cops in Dodge City who were in the area of the robbery.  (Exh. 1, statement 2c).

Garcia, Ramirez, Wright and Worthey drove to a mobile home park at 201 E. McCarter in Dodge City.  The area is located on the South side of Dodge City and is considered to be more likely to be lived in by Surenos gang members.  They proceeded to lot number 24 where a group of individuals, Israel Peralta, Mariano Sorano, Faustino Peralta and Roberto Arco, were drinking alcohol.  Ramirez and Garcia fired their weapons at the four individuals killing Israel Peralta.  The four defendants fled in the vehicle and drove back to Garcia's residence.  In the vehicle, Ramirez said to Garcia, "you really got that one."  (Exh. 1, statement 1b).  Garcia then told Wright and Worthey to "remember [that] you have kids."  (Exh. 1, statement 1c). Wright informed deputy Webb that he interpreted Garcia's statement as a threat toward his family and an instruction to not say anything about the shooting.

**Statements 3 and 3a**

On March 15, 2011, a shooting occurred at 1705 Ave D in Dodge City.  The victim, Reyes Delera Padilla, a Surenos gang member,

-4-

915

reported that a red Lincoln pulled up and an individual "threw up" Norteno gang signs.  Padilla went inside his home to ensure the safety of his family.   Padilla then left his home and observed the red Lincoln parked around the corner.   At that time, Padilla heard a gunshot.   Padilla got into his vehicle and rammed it into the red Lincoln to "mark it."   Padilla then called his brother-in-law who immediately came to the Padilla's home.   Padilla observed a tan Lincoln parked with two passengers approximately two houses down from his house.   Padilla parked in the driveway which is located in the back alley.   Padilla and his brother-in-law were on the south side of the house when Padilla observed an individual a couple of houses away, saw a muzzle flash, and heard gunshots.   The tan Lincoln then drove down the alleyway behind the house.   At some point, Padilla's wife called 911.

The tan Lincoln was stopped by Sergeant Meridian approximately one block away.   Defendant Donte Barnes was the sole occupant and driver of the tan Lincoln and he was placed under arrest.   Defendant Alfredo Beltran-Ruiz was arrested on a probation violation at a later date.  On March 20, Laura Rodriguez, defendant Enrique Gobin's mother, visited Beltran-Ruiz when he was in custody.   During the visit, Rodriguez asked Beltran-Ruiz, where "it" was.   Beltran-Ruiz told Rodriguez to go to defendant Humberto Ortiz' house and that "it" was under the lawnmower in the shed.   (Exh. 1, statement 3).   Law enforcement officers went to the location and retrieved a .22 caliber revolver under the lawnmower.

On March 25, 2011, Beltran-Ruiz was visited at the jail by an individual named Destiny.  The following conversation occurred:

-5-

Beltran stated: What time Snipes have court on the 7th?

Destiny replies: What time's what.

Beltran states: What time does home boy got court on the 7th?

Destiny states: Fuck if I know. His lady called, like, oh, my God, he has court. And I'm like, all right.

Beltran states: For real. Call her and be like, oh, my God.

Destiny states: Not -- when he got locked up, she called me crying and was like why isn't Alfredo locked up, I thought they were together.

Beltran stated: Yeah, we were, but I know how to run.

(Tr., Doc. 573 at 75, 76); (Exh. 1, statement 3a).

**Statements 4a, 4b and 4c**

On March 30, George Gonzalez, a high ranking member of the Surenos, was approached by Jesus Sanchez, Enrique Gobin, Alfonso Banda-Hernandez and Andrew Gusman while he was getting gas at an East Love's gas station. Defendants gave gang signs and slurs. Gonzalez left the Love's and began driving to his girlfriend's house. Gonzalez saw a Blazer and recognized Banda-Hernandez as the individual driving. A green Plymouth also began following Gonzalez. The Plymouth contained Gobin, Sanchez and an individual named Yesenia Rios. Sanchez called Banda-Hernandez on his cell phone and told him to "come where they are." (Exh. 1, statement 4a). The two vehicles followed Gonzalez around town. The driver[4] of Gonzalez' vehicle tried to speed up. At some point, Gonzalez exited the car and walked towards his girlfriend's house. Gonzalez saw the Plymouth and the individual in

---

[4] The identity of the driver was not established at the hearing.

-6-

917

the rear passenger seat fired shots.

Later, Yesenia Rios was interviewed and stated that Jesus Sanchez shot at Gonzalez from the back seat.  At the time of the shooting, Rios was under the influence of alcohol.  Banda-Hernandez was interviewed by police and stated that after the shooting, Sanchez called him by cell phone and told him to get out of the area because "it will be getting hot."  (Exh. 1, statement 4c).  They immediately left the area and met up at an unknown location.  Sanchez told Banda-Hernandez that he shot at Gonzalez' car.  (Exh. 1, statement 4b).

**Statements 5a and 5b**

On April 30, a home invasion occurred at 609 E Spruce in Dodge City.  The victims, who are Guatemalan, reported that two people kicked in the door, held one victim at gunpoint and robbed him of money.  A confidential witness spoke with defendant Jayson Vargas about the robbery later that day.  Vargas told the witness that he and defendant Adam Flores committed a robbery.  Vargas told the witness that he needed to get a new pair of shoes and gave the witness his old shoes to get rid of.  (Exh. 1, statement 5a).  Vargas also gave the witness money to buy the new shoes.  Vargas then showed the witness the house they robbed and pointed to the window that the victim tried to climb through during the robbery.  (Exh. 1, statement 5b).

**Statement 6**

On August 20, 2011, Kendra Owens and Jose Luna were driving in a vehicle and observed Jayson Vargas following them.  Owens had previously had been involved in a relationship with Vargas.  Vargas pulled up to their vehicle, pointed his gun and threatened Owens and

-7-

Luna.  The Dodge City police believe that Vargas is in the LCC[5] gang which is affiliated with the Nortenos.  Vargas was arrested and the firearm was found in his vehicle.

Defendant Jason Najera is a member of the DV[6] gang which is associated with the Nortenos.  At some later date in August 2011, both Najera and Luna were incarcerated at the Ford County Detention Center.  Najera told Luna to tell Owens not to testify against Vargas or "bad things may happen to her."  (Tr., Doc. 574 at 35; exh. 1, statement 6).

**Statement 7**

On August 27, 2011, Jesus Torres arrived at Humberto Ortiz' home.  At that time, Jason Najera, Christy Sanchez and Jose Luna were at Ortiz' home which is in the 800 block of 9th Avenue.  Jesus Torres stated that he did not like "scraps" living by his mom's house and wanted to confront them.  (Exh. 1, statement 7).  Torres asked other individuals in the home to go with him.  Luna, Torres and Najera walked to 703 9th Avenue, where an individual lived who was associated with the Surenos where a party was in progress.  After they arrived, there was a verbal altercation between the individuals at the party and Torres and Najera.  Jose Neave, Fabian Neave and Sanchez then pulled up to the house in Jose's vehicle.  Jose, Fabian, Najera and Torres got in a physical altercation with various individuals at the party and, as a result, Carlos Ramirez and Gabriel Rivera were stabbed.

---

[5] Los Carnales Chingones.

[6] Diablos Viejos.

-8-

The government seeks to introduce all 15 statements during trial. Defendants object to their introduction and assert that the statements are inadmissible hearsay.

## II.  Analysis

Out-of-court statements made by coconspirators are non-hearsay and admissible evidence under Fed. R. Evid. 801(d)(2)(E).[7]  United States v. Owens, 70 F.3d 1118, 1123 (10th Cir. 1995).  "Before admitting evidence under this rule, 'The court must determine that (1) by a preponderance of the evidence,[8] a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy.'"  Id.  In determining whether Rule 801(d)(2)(E) is met, the court may rely on the coconspirator statements themselves, but the government must produce some "independent evidence" that a conspiracy exists.

The court will address each defendant's argument in turn.

### Jayson Vargas and Adam Flores (Docs. 526, 535)

Statements 5a, 5b and 6 are offered by the government against Vargas.  Statements 5a and 5b are offered against Flores.  Vargas and Flores argue that the statements are not admissible at trial because the confidential informant who heard the statements did not testify.

---

[7]Fed. R. Evid. 801(d)(2)(E) provides: "A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

[8] In the present situation, preponderance of evidence is evidence sufficient to persuade the court that a fact is more likely present than not present. Tenth Circuit Pattern Criminal Federal Jury Instruction 1.05.1.

-9-

Rule 602 of the Federal Rules of Evidence states that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. . . ."   These rules are relaxed during a <u>James</u> hearing; however, at trial, the testimony will need to be presented through the informant who heard the statement.  The government responds that the informant will be available for trial.

Vargas and Flores further contend that the statements are not admissible as co-conspirator statements because the government has failed to establish the existence of a conspiracy.  Statements 5a and 5b, however, were made by Vargas.  Therefore, these statements are admissible pursuant to Fed. R. Evid. 804(b)(3) as statements against interest.  However, the identification of Flores in both statements is not admissible unless the government has established that a conspiracy existed, both Vargas and Flores were members of the conspiracy and that the statements were made in furtherance of the conspiracy.

"A person is a member of a conspiracy if he was aware of the common purpose, willingly participated in the conspiracy, and intended to advance the purpose of the conspiracy." <u>United States v. Rutland</u>, 705 F.3d 1238, 1251 (10th Cir. 2013).  The only evidence introduced at the hearing pertaining to Adam Flores and his involvement were the statements made by Vargas identifying Flores.[9]   The evidence

---

[9] The government's exhibit states that these statements are admissible as to both the RICO conspiracy and the robbery conspiracy. Flores, however, is not charged as a co-conspirator in the RICO conspiracy.  Moreover, the government has not responded to Flores' position that he is not a member of any conspiracy.  The government has the burden of establishing that Flores is a conspirator and it has

-10-

surrounding the events of the actual robbery do not identify who committed the robbery. Even assuming that Flores was a member of the robbery conspiracy, the statements were clearly made after the commission of the robbery. A statement occurring after a robbery is not made in furtherance of the conspiracy because at that point the conspiracy has ended. Rutland, 705 F.3d at 1252-53. With respect to part of statement 5a, the directive to get rid of the shoes and buy new ones, this is an instruction and is not hearsay. Id. at 1253. Therefore, it is irrelevant that the statement was made after the conspiracy ended. Id.

The portions of statements 5a and 5b that identify Adam Flores are not admissible. Statement 5a and 5b are admissible against Vargas if the person to whom the statements were made testifies at trial.

The testimony at the James hearing was that statement 6 was made by Najera to Luna. The government's response brief, however, appears to contend that the statement was made by Najera to Owens. (Doc. 588 at 7). Neither Luna or Owens are defendants. The government must call the witness to whom the statement was made in order for it to be admissible at trial against Vargas.[10]

The government asserts that this statement is admissible against Vargas as a coconspirator statement because it was made in furtherance of the RICO conspiracy alleged in count 1.

The government recaps its evidence against Vargas as follows:

not met its burden.

[10] Najera pled guilty to a VICAR conspiracy count and was sentenced to 120 months imprisonment. The government has agreed that it will not call Najera at trial.

-11-

> both Jayson Vargas and Jason Najera were Nortenos gang members. There can be little question that it would be more likely true than not that Najera's threat to Owens was motivated in large part because Najera and Vargas were members of the same gang and Najera did not want Owens to cooperate with the police against a fellow Norteno. Whether or not Vargas knew about the threat is irrelevant to this analysis.

(Doc. 588 at 7).

Vargas argues that there is no evidence to support a finding that he is a member of the RICO conspiracy and that the statement was made in furtherance of the conspiracy.  The evidence submitted at the James hearing establishes that Vargas is a member of the LCC gang and Najera is a member of the DV, both of which are affiliated with the Nortenos. There was also testimony pertaining to a home invasion that occurred in April 2011 and committed by Vargas.  The victims of the home invasion were Guatemalan, a nationality that is targeted by the various Nortenos' gangs.  The court finds that this evidence is sufficient to support a finding that both Najera and Vargas were members of the RICO conspiracy, both were willing participants, and both intended to advance its purpose which was to commit crimes.

The court must now determine if statement 6 was made in furtherance of the conspiracy.  With respect to statement 6, Vargas is alleged to have pulled a gun on Owens while driving.  Najera allegedly threatened Owens if she cooperated in a prosecution against Vargas.  The RICO conspiracy alleged in count 1 was still ongoing at the time the threat was made.  The statement benefitted the RICO conspiracy because it would prevent a member from being prosecuted. See Rutland, 705 F.3d at 1253 (paying someone to keep quiet about a crime is a statement in furtherance of a conspiracy); United States

-12-

v. Carson, 455 F.3d 336, 367 (D.C. Cir. 2006)(attempts to silence a witness is a statement in furtherance of a conspiracy).  Therefore, the statement is admissible against Vargas.

**Pedro Garcia (Doc. 527) and Gonzalo Ramirez (Doc. 532)**

Statements 1a, 1b, 1c, 2a, 2b, and 2c are offered against Garcia and Ramirez as evidence for the crimes alleged in counts 1 through 9, including the RICO conspiracy in count 1, VICAR conspiracy to murder alleged in count 2 and VICAR conspiracy to commit assault alleged in count 8.  Garcia spends an extended amount of time arguing that the government has not established that he is a member of the RICO conspiracy because there is not interdependence between the members. Garcia, however, cites to authority which deal with drug conspiracies to support his position.  "Interdependence is an essential element of a § 371 conspiracy."  10th Cir. Criminal Pattern Jury Instructions (2011), page 107.  It is not an element of a RICO conspiracy.  In United States v. Harris, 695 F.3d 1125 (10th Cir. 2012), the Tenth Circuit set forth the elements for a RICO conspiracy as follows:

> First: A conspiracy or agreement, as detailed in the indictment, existed between two or more persons to participate in the affairs of an enterprise that affected interstate commerce through a pattern of racketeering activity;
>
> Second: that defendant deliberately joined or became a member of the conspiracy or agreement with knowledge of its purpose[;] and[ ]
>
> Third: the defendant agreed that someone, not necessarily the defendant, would commit at least two of the racketeering acts detailed in the indictment.

695 F.3d at 1131.

Although Garcia objects to his membership in the RICO conspiracy, he makes conflicting statements regarding his membership in the

-13-

conspiracies alleged in counts 2 and 8. The evidence presented at the hearing was that Garcia was a member of the Nortenos, he made statements 1c and 2c, and may have also made statements 1a and 2a. Those statements clearly show that there was an agreement on June 8 to "go get some scraps [Surenos gang members]" and that they did just that by shooting men they believed to be Surenos. There was also an agreement to rob a house prior to the commission of the robbery. Garcia was then involved in the robbery. The court finds that there is sufficient evidence to establish the existence of the conspiracies alleged in counts 1, 2, and 8, and Garcia's membership and participation in those conspiracies.

The court further finds that Ramirez was also a member of the conspiracies alleged in counts 1, 2, and 8. The evidence at the hearing was that Ramirez was involved in both the robbery and the shooting. Ramirez instigated the robbery by picking out the house and he was clearly pleased by the murder of Peralta as evidenced by statement 1b. Ramirez is also a documented member of the Nortenos.

### Statements 1a, 1b, and 1c

Turning to the statements, Garcia asserts that statements 1a and 2a are inadmissible because the informant is unsure of who actually made the statements, Garcia or Ramirez. The evidence was that both Garcia and Ramirez were either standing or sitting next to each other when the statements were made. The fact that the witness cannot identify the speaker goes to the weight of the evidence and not its admissibility. Garcia can cross examine the witness at trial about his or her recollection. Because both Garcia and Ramirez were members of the conspiracy, the statements would be admissible against either

-14-

or both if they were made in furtherance of the conspiracies.

Discussions of future intent "that set transactions to the conspiracy in motion" are statements made in furtherance of a conspiracy. Rutland, 705 F.3d at 1253. Statements 1a and 2a were both made in furtherance of the conspiracies as they were the formation of plans to "get some scraps" and to rob a home. Therefore, they are admissible against both Garcia and Ramirez.

Garcia argues that statement 1b is inadmissible because it was made after the conspiracy ended. The statement "you really got that one" was made in the car after they were fleeing the shooting. Although the shooting had concluded, the court does not find that the conspiracy to murder ended. The conspiracy to murder began as they left Garcia's house in a car. After the murder, they all returned to Garcia's house. The court finds that the murder conspiracy did not end until, at the earliest, the point they made it safely home to Garcia's house.

Garcia also contends that statement 1b was a narrative and therefore not made in furtherance of the conspiracy. "Statements between coconspirators which provide reassurance" and statements "explaining events of importance to the conspiracy" are made in furtherance of the conspiracy. Rutland, 705 F.3d at 1253. This was an affirmation that the goal of the conspiracy was completed. It is admissible against Garcia and Ramirez.

Statement 1c, the threat to Worthey and Wright, is admissible against both Garcia and Ramirez because it benefitted the RICO conspiracy and the murder conspiracy as it would prevent a member from being prosecuted. See Rutland, 705 F.3d at 1253 (paying someone to

-15-

keep quiet about a crime in furtherance of a conspiracy); Carson, 455 F.3d at 367 (D.C. Cir. 2006)(attempts to silence a witness is a statement in furtherance of a conspiracy).

### Statements 2a, 2b, 2c

Both statements 2a and 2b are clearly statements made in furtherance of the robbery conspiracy because they signify the planning of the object of the conspiracy and the decision of which house to rob.  Therefore, they are both admissible against Garcia and Ramirez.

Statement 2c was made by Garcia and indicated that he wanted Wright to drive east so they would avoid police who were in the area investigating the robbery that they had committed.  Garcia argues that this statement doesn't make sense and is not credible because the facts do not support that they left the commission of the crime in a car.  Garcia and Ramirez allegedly walked to the house which was robbed and then returned on foot to Garcia's house.  The evidence at the hearing was that statement 2c was made when they were driving to commit the murder which was discussed in statements 1a-1c.  A statement occurring after a robbery is not made in furtherance of the conspiracy because at that point the conspiracy has ended.  Rutland, 705 F.3d at 1252-53.  Therefore, this statement is not admissible as evidence of the robbery conspiracy.  However, the statement is admissible as evidence of the overall RICO conspiracy.  See id. (in a case involving multiple conspiracies, a statement may be admissible to one or all of the alleged conspiracies).  The statement is made in furtherance of the overreaching RICO conspiracy because they are attempting to avoid police detection of their crimes.

-16-

**Josh Flores (Doc. 539)[11]**

Statements 2a, 2b and 2c are also offered against Josh Flores. Flores makes similar arguments that were raised by Garcia. The evidence at the <u>James</u> hearing established that Flores was at Garcia's house when the statements were made to go rob a house. Flores left with Garcia, Jesus Flores and Ramirez and walked to the victims' house. Statement 2b was then made by Ramirez to "do" a certain house. Flores entered the house with the other three defendants and robbed the victims. Flores then returned to Garcia's house on foot. Flores is a member of the Nortenos gang and is charged in the VICAR conspiracy to commit robbery but not charged in the RICO conspiracy.

The court finds that there is sufficient evidence to conclude that Flores is a member of the conspiracy to commit robbery. The court also finds that statements 2a and 2b were made in furtherance of the conspiracy as discussed <u>supra</u>.

With respect to statement 2c, this statement was made in Wright's car and Flores was not present. The statement has been found to be admissible as to the RICO conspiracy but not the VICAR conspiracy to commit robbery. Therefore, it is not admissible against Flores because the government has not attempted to establish that Flores was an uncharged member of the RICO conspiracy.

**Donte Barnes (Doc. 533) and Alfredo Beltran-Ruiz (Doc. 537)**

**Statements 3 and 3a**

Statements 3 and 3a concern a shooting which occurred on March 15, 2011. The government contends that these statements are

---

[11] Jesus Flores did not appear at the <u>James</u> hearing and did not object to the admission of the statements against him.

-17-

admissible as evidence of the VICAR conspiracy to murder Reyes Delira-Padilla.  Barnes was arrested after the shooting about a block from the scene.  Beltran-Ruiz was not arrested until a few days later.  On March 20, Beltran-Ruiz told Laura Rodriguez to go get something from under a lawn mower at Humberto Ortiz' house.  This statement was made while Beltran-Ruiz was incarcerated.  The statement is admissible against Beltran-Ruiz because it is an instruction.  See Rutland, 705 F.3d at 1253.  It is not admissible against Donte Barnes.

Statement 3a, however, is quite a different matter.  Even presuming that both Barnes and Beltran-Ruiz were members of the conspiracy to murder, the statement was made by Beltran-Ruiz several days after the murder and it also is hearsay within hearsay.  See Fed. R. Evid. 805 ("Hearsay included within hearsay is not excluded . . . if each part of the combined statement conforms with an exception to the hearsay rule. . . .") The statement includes an individual telling Beltran-Ruiz about her conversation with an unidentified "lady." Moreover, the statement was made after the conspiracy to murder had concluded.  There is no evidence that the conspiracy charged was ongoing on March 25.  In fact, the indictment charges that the conspiracy occurred on March 15.

The government contends that the statement is admissible because it identifies Barnes and cites to United States v. Smith, 833 F.2d 213 (10th Cir. 1987).  In Smith, the Tenth Circuit held that a statement identifying a member of conspiracy is admissible as a coconspirator statement.  However, the facts in Smith are not similar.  The identification of the coconspirator in Smith was made during the conspiracy, not ten days later.  Smith does not stand for the

-18-

929

proposition that an identification of a coconspirator is admissible even if it is made after the conspiracy had concluded.  Statement 3a is not admissible against either Barnes or Beltran-Ruiz.

<div align="center">

**Alfonso Banda-Hernandez (Doc. 537), Enrique Gobin**

**and Andrew Gusman (Doc. 543)**

**Statements 4a, 4b and 4c**

</div>

Statements 4a, 4b and 4c were made by Jesus Sanchez on March 30 and were disclosed to police by Yesenia Rios who presumably will testify at trial.  On March 30, Gobin and Sanchez were in one vehicle and Banda-Hernandez and Gusman were in a different vehicle.  Evidence at the hearing established that all four defendants are members of the Nortenos gang.  The two vehicles approached George Gonzalez, a known Surenos gang member, at a Love's gas station and gang slurs and gang hand signals were exchanged between the four defendants and Gonzalez.  The two vehicles then followed Gonzalez.  Sanchez, who was a passenger in Gobin's car, called Banda-Hernandez on his cell phone and told him to "come where they are." (Exh. 1, statement 4a).  The two vehicles followed Gonzalez around town.  Sanchez then shot at Gonzalez.  Sanchez called Banda-Hernandez and told him to get out of the area because "it will be getting hot."  (Exh. 1, statement 4c).  Both vehicles left the area and met at a location where Sanchez told Banda-Hernandez that he shot at Gonzalez.

The court finds that a conspiracy to murder George Gonzalez existed and that all four defendants were members of that conspiracy for the following reasons: all four defendants had a heated interaction with Gonzalez prior to the shooting; Sanchez directed Banda-Hernandez on where to go in order to facilitate their objective;

-19-

the four defendants followed Gonzalez while he stopped at his girlfriend's house; Sanchez instructed Banda-Hernandez to evade police; and, Sanchez informed the group that the objective was met.

Statements 4a and 4c were made in furtherance of the conspiracy. Statement 4a was made to maintain the flow of information or set the objective of the conspiracy in motion. Rutland, 705 F.3d at 1253. Statement 4c was made in furtherance of the conspiracy because it was an instruction to leave the area to evade the police. Statement 4b was also made in furtherance of the conspiracy. Although the shooting had already occurred, Banda-Hernandez did not know the status of the conspiracy. Statements made between coconspirators which "inform each other of the current status of the conspiracy" are made in furtherance of the conspiracy. Therefore, statements 4a, 4b, and 4c are all admissible against Gobin, Banda-Hernandez and Gusman.

### Fabian Neave (Doc. 538) and Jose Neave

### Statement 7

Fabian Neave is charged in the RICO conspiracy count and charged in count 27 with a VICAR substantive count alleging assault with a dangerous weapon on August 27, 2011. Jose Neave is not charged in a conspiracy count but is charged in a VICAR substantive count alleging attempted murder on August 27, 2011. On that date, Jesus Torres arrived at Humberto Ortiz' home. Jesus Torres stated that he did not like "scraps" living by his mom's house and wanted to confront them. (Exh. 1, statement 7).[12]  Torres asks other individuals in the home to

---

[12] This statement was made in the presence of Christy Torres who testified in front of the grand jury. Presumably, Torres will testify at trial.

-20-

go with him.  Fabian and Jose are not present.  Torres and others walk to a residence where an individual who was associated with the Surenos was located and an altercation ensued.  Jose and Fabian then pulled up to the house in Jose's vehicle and joined in the altercation.

The government asserts that there is a conspiracy and Fabian was a member of that conspiracy.[13]  The government, however, neglects to explain the conspiracy at issue here.  The government also suggests that Fabian and Jose are members of the conspiracy because they magically arrive after the altercation began.  There is no evidence to support that they had agreed to be a part of some unnamed conspiracy on August 27, 2011.

At this time, the court finds that the government has not established that Fabian and Jose are a part of the conspiracy which existed on August 27.  Their involvement in a gang fight does not equate to membership in a conspiracy and the government has not provided any authority which would suggest otherwise.  Therefore, statement 7 cannot be offered against Fabian and Jose.  It can be admitted against Torres.

### Conclusion

Jayson Vargas' objections are overruled in part and sustained in part.  (Doc. 526).  Pedro Garcia's objections are overruled.  (Doc. 527).  Angel Cerda's motion is denied.  (Doc. 528).  Gonzalo Ramirez' objections are overruled.  (Doc. 532).  Donte Barnes' objections are sustained in part and overruled in part.  (Doc. 533).  Juan Torres' motion to join is denied as moot.  (Doc. 534).  Adam Flores' motion

---

[13] Jose did not file any written submissions but was present at the hearing and objected to the testimony.

-21-

is granted. (Doc. 535). Alfonso Banda-Hernandez' objections are overruled. (Doc. 537). Fabian Neave's objections are sustained. (Doc. 538). Josh Flores' motion to exclude is denied. (Doc. 539). Andrew Gusman's objections are overruled. (Doc. 543).

IT IS SO ORDERED.

Dated this ___16th___ day of May 2013, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,          )
                                   )
                Plaintiff,         )   **CRIMINAL ACTION**
                                   )
v.                                 )   No. 12-10089-01-23
                                   )
Jason Najera, Pedro Garcia,        )
Gonzalo Ramirez, Russell Worthey,  )
Anthony Wright, Joshua Flores,     )
Jesus Flores, Angel Cerda,         )
Juan Torres, Alfredo Beltran-Ruiz, )
Donte Barnes, Jesus Sanchez,       )
Enrique Gobin, Alfonso             )
Banda-Hernandez, Andrew Gusman,    )
Eusebio Sierra-Medrano, Jayson     )
Vargas, Adam Flores, Fabian Neave, )
Jesus Torres, Jose Neave, Hernan   )
Quezada,                           )
                                   )
                Defendants.        )
                                   )

### MEMORANDUM AND ORDER

On April 16, 17 and 18, 2013, the court held so-called <u>Daubert</u> hearings with respect to two officers the government has identified as expert witnesses about gang activity in Dodge City, Kansas. Defendants were present with counsel and, following the extensive direct testimony of both officers, all counsel had the opportunity to question the officers with respect to their qualifications and the substance of their anticipated testimony and opinions.  Most elected not to question the officers, perhaps recognizing that they had gotten far more details from the officers' direct testimony than from any Rule 16 disclosures.[1]

---

[1]Mr. Mandelman, one of the public defenders representing Ramirez has asked the court  to strike the government's Rule 16 disclosure (Doc. 297) because it does not clearly delineate the witnesses'

Following the conclusion of the three days of testimony, defense counsel were offered the additional opportunity to file objections to the officers' qualifications and opinions. The court has reviewed defendants' submissions (Docs. 608, 609, 610, 611, 612, 613, 616, 617, 618, 619, 621, 622, 623, 624, 625, 626, 626-1 and 627). The majority of the defendants simply elected to join in submissions filed by a few of their codefendants.[2]

Although the term "Daubert hearing" has become common to describe challenges to the testimony of expert witnesses, the analysis of the officers' proposed testimony more properly falls under Fed. R. Evid. 702 and 703 and applicable case law. Therefore, it is important to remember what this case is about, and not about.

On April 16, 2012, the grand jury returned an indictment against 23 defendants. The indictment alleges 38 counts, including charges of violent crimes in aid of racketeering, conspiracy and felon in possession of a firearm. The indictment alleges that defendants were in a criminal organization, the Nortenos gang, whose members engaged in narcotics distribution and acts of violence including murder and robbery. These crimes were alleged to have been committed in Dodge City, Kansas, population around 27,000. The indictment further

_____

testimony (Doc. 619 at 6-7). The disclosure was filed in September 2012. Mr. Mandelman does not explain why he waited until after the Daubert hearings to move to strike the disclosure. If he believed the disclosure was inadequate (which it isn't), then it was inadequate at the time of filing, not many months later. The court notes that Mr. Mandelman was present during all three days of testimony. If there is something he still believes was not clearly delineated, he does not identify it. Ramirez's motion to strike is denied.

[2]The following motions to join are granted. (Docs. 609, 610, 611, 613, 616, 617, 618, 622, 623, 625, 626, 627).

-2-

alleges that the racketeering conspiracy began in 2008 and continued through the date of the indictment.

It is readily apparent that to a great extent, this case is about gangs, gang membership and gang activity. At least as early as United States v. Robinson, 978 F.2d 1554, 1562-64 (10th Cir. 1992), the Circuit has recognized the admissibility of gang-related evidence. Robinson was decided before Daubert but no post-Daubert Tenth Circuit case has held that expert testimony regarding gangs is inadmissible. A recent example is United States v. Roach, 582 F.3d 1192 (10th Cir. 2009). Over objection, the district judge allowed a Wichita Police Department officer to give the following testimony:

> Miller went on to give expert testimony about "the types of tools of the trade that people who are affiliated with gangs, specifically the Neighborhood Crips, carry or maintain," explaining that firearms are such a tool and are used to protect drugs and to battle with other gangs. He also testified that gang members commonly use certain slang present in the letters from Roach to Hughes, including replacing the letters "ck" with the letters "cc." Finally, he told the jury that drug dealers often use colored lights to guide their customers, and that a blue bulb in particular indicates an association with the Crips, who identify with the color blue.

Id. at 1199.

On appeal, the Circuit ruled that admission of the testimony was error, albeit harmless, but not because the detective's testimony was irrelevant. The error was the court's failure to make the requisite Rule 702 Daubert analysis and findings. The Circuit noted that "other circuits have similarly allowed expert police testimony on street gang's use of slang, signifying colors, and other indicia of membership or activity." Id. at 1207 (citations omitted).

It is reasonable to assume that most, if not all, of the

-3-

prospective jurors are not now, and have not been, gang members, and will be unfamiliar with gang activity in and around Dodge City. Proper expert testimony, including testimony by defendants' gang experts, if any, will be helpful to assist the jury to understand the evidence.

<u>Qualifications</u>

The qualifications of the officers, James Nau and Shane Webb, are set forth in their resumes, attached as exhibits 1 and 2.  Only three of the defendants have asserted any specific challenges to the officers' qualifications: Jason Vargas (Doc. 612), Gonzalo Ramirez (Doc. 610) and Joshua Flores (Doc. 624).  It is significant that none of the challenges to the officers' qualifications is supported by reference to applicable case authority; indeed, to <u>any</u> case authority.

Vargas objects to the officers' qualifications because they do not have specialized education and knowledge of sociology, family studies, anthropology, art history or any of the other social sciences.  Vargas does not explain why such specialized education would be necessary, for example, to explain the significance and meaning of gang colors, signs, graffiti and tattoos; how gangs in Dodge City are structured and how rival gangs interact.  Vargas goes on to point out that neither officer has published any peer-reviewed articles about gangs or testified as defense experts.  This may, or may not, be a persuasive basis for cross-examination at trial but it is not a basis for disqualification.

Vargas asserts that the officers lack qualifications to testify about gangs because they have not been gang members themselves.  No authority is cited for this proposition, undoubtedly because there is

-4-

none.[3] The illogical extension of this proposition would be that a law enforcement officer cannot qualify as an expert witness on the illegal drug trade unless he or she is a drug dealer or a drug addict.

Vargas objects that the fact that officer Webb grew up in Dodge City does not make him any more knowledgeable than any other citizen or potential juror. This objection seems to presuppose that all potential jurors are knowledgeable about gang activity in Dodge City, an especially doubtful supposition since none of the petit jurors will be drawn from Ford County. One might ask: who is more knowledgeable about Dodge City, someone who grew up there or someone, perhaps a defense expert, whose knowledge of criminal activity in Dodge City prior to being hired in this case came from watching reruns of Gunsmoke?

Finally, Vargas speculates that the officers have become hired experts rather than ". . . someone with independent credentials in the field of gang formation and social science." Whether the officers will be compensated by the government can be the subject of cross-examination. But if compensation is disqualifying, what about defense experts? Will they be appearing pro bono? Hardly, in view of the authorizations for payment already approved by the court. But the bigger question is why would anyone assume that a defense expert will have "independent credentials," whatever those are? It has been this court's experience that virtually every expert has either an agenda

---

[3]It is possible that one or more of the defendants may elect to use "gang experts." If a defense expert has not been a gang member, will counsel for another defendant object on that ground? Doubtful.

It is also possible that some of the defendants will enter into plea agreements and testify for the government. If this happens, they will not be testifying as experts but rather as fact witnesses.

-5-

or an identifiable bias to the side on which he or she testifies. That's how they get business and that's why they're hired. The court has yet to encounter an "expert" witness who is called by one side notwithstanding having given opinions favorable to the other side of the case.

Ramirez's objections are similar. He acknowledges that while both officers have "some training" about gangs, it is not specific to the Nortenos. But again, this objection presupposes that out there somewhere is Nortenos/Dodge City-specific training that is essential to the officers' qualifications but which the officers missed. If there is, counsel has failed to identify it. We're not talking here about the qualifications of a surgeon who never took basic courses in human anatomy. Will any defense expert have specific Nortenos/Dodge City training? Doubtful, once again.

Flores objects to the officers' qualifications because neither has written or read academic articles about gangs in southwest Kansas. The officers acknowledged that they have not written any academic articles and counsel is free to cross-examine them on this topic if he believes it will be effective. But it is not disqualifying. As to not having read academic articles about Dodge City gangs, there is no evidence that there are any such articles.

The use of law enforcement officers as expert witnesses about criminal activity is well-recognized. The fact that the expert also may be a fact witness or that some of the testimony technically may be within Rule 701 is not disqualifying, United States v. DeSoto, 885 F.2d 354 (7th Cir. 1989) and United States v. Caballero, 277 F.3d 1235, 1247 (10th Cir. 2002) ("[b]oth Rules 701 and 702 distinguish

-6-

between expert and lay testimony, not between expert and lay witnesses . . . it is possible for the same witness to provide both lay and expert testimony in a single case.") See also United States v. Blake, No. 07-8050, 2008 WL 2610474, at *9 (10th Cir. Jul 3, 2008).  An expert's testimony can embrace the ultimate issue, so long as the testimony assists, rather than supplants, the jury's judgment. United States v. Dazey, 403 F.3d 1147, 1171 (10th Cir. 2005).  (This is not to imply that the court endorses such opinions - they are problematic, at best.)  The keys are reliability and helpfulness to the jury and, as the cases cited in the next section demonstrate, expert testimony by law enforcement officers is routinely received as helpful to jurors who are not familiar with criminal activity.

In summary, the court finds that officers Webb and Nau are sufficiently qualified by knowledge, education, training and experience to offer expert testimony about general aspects of gang activity in and around Dodge City, Kansas, subject to the requirements discussed in the following section.

### Substance of the Testimony

Defendant Garcia's objections on the substance of the officers' opinions are adopted by many of the co-defendants so his will be examined first.  (Doc. 608 at 5-6).  Garcia objects that the government has not "proffered any evidence of reasoning and methodology used or applied . . ." by the officers.  The court disagrees.  Unlike law enforcement expert testimony which identifies the kind and purity of a controlled substance by the use of scientific tests and procedures, the methodology and reliability of an officer's testimony regarding gang activity must be evaluated by a non-

-7-

scientific approach.  In other words, for example, there is no recognized scientific test to determine the meaning of gang graffiti. This is made clear in cases like <u>United States v. Mejia</u>, 545 F.3d 179 (2nd Cir. 2008) ("An appropriate (admissible) example of such expertise would have been an expert's explanation of how the graffiti near a body indicated that the murderer was a member of MS-13 . . .") <u>Id.</u> at 195.  Rather, the reliability of the expert's opinion must be based on law enforcement methodology which, to a considerable extent, must turn upon the training, education and experience of the officer on <u>that</u> particular subject.  Scientific methods are not required.  <u>See</u> <u>United States v. Garza</u>, 566 F.3d 1194, 1198-99 (10th Cir. 2009).  "The <u>Daubert</u> factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony from a gang expert, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it."  <u>United States v. Thomas</u>, No. 10-4725, 2012 WL 2951410, *5 (4th Cir. July 20, 2012)(quoting <u>United States v. Hankey</u>, 203 F.3d 1160, 1168 (9th Cir. 2000)); A couple of examples are illustrative.

In its expert disclosure (Doc. 297), the government mentioned gang graffiti.  It is highly unlikely that jurors will be able to decipher the meaning and significance of the graffiti displayed at the hearings.  Webb and Nau's ability to interpret gang graffiti was acquired, at least in part, by conversations with individuals who may or may not be Nortenos members.  (Both officers testified that they spoke frequently with gang members.)  Such conversations, if directly related to jury, may be hearsay but as many defendants' submissions acknowledge, Rule 703 permits an expert's opinion to be based on

-8-

hearsay which, itself, does not need to be recited to the jury. Rather, if such hearsay is reasonably relied upon by law enforcement officers involved in investigation of gang activity (and the evidence sufficiently established that it is), then the opinion is admissible, hearsay notwithstanding.

Another example is the roles or titles of gang members ("shot callers," "foot soldiers," "pee wees"). The government's disclosure identifies roles of gang members but not specific titles. The court is satisfied that Webb and Nau can give reliable testimony on this subject. The fact that the written disclosure does not mention titles is irrelevant because the information was disclosed at the hearings.

Identification of specific defendants' roles is another matter. The court will not speculate whether proper foundation could be laid for such testimony. But neither Webb nor Nau can offer expert testimony that they learned from conversations with gang members that a particular defendant is a "shot caller" who ordered a crime. Clearly, such testimony would be offered for its truth and would violate Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

The remainder of Garcia's objections can be similarly rejected. It is not necessary for the government to establish some sort of scientific methodology in order for Webb and Nau to explain such generic things as gang colors, signs and symbols, which undoubtedly are subjects with which the jurors will be unfamiliar.

Turning to Ramirez's objections, he goes on at some length to question the relevance of the officers' knowledge of gangs in California and their "link" to gangs in Dodge City. The government's

-9-

disclosure noted "subsets" of the Nortenos and this apparently morphed into substantial questioning of the officers about California gangs which, at least at the time, seemed to the court to be tangential both to the officers' qualifications and to their opinions about gang activity in Dodge City.  The court allowed this sort of far-reaching line of inquiry because of the nature of the hearings.  Whether any of it will be inquired into at trial, either  by the government or by the defense, remains to be seen.  But once again, even though not specifically disclosed, defense counsel have delved into the matter and cannot claim surprise.

Ramirez makes the obligatory <u>Crawford</u> objection, which the court has just discussed.  He objects to the officers' methodology as "conclusory, ad hoc and repetitious," apparently without recognizing that his objections are no different.  He asserts that Kansas' statutory definition of a gang member is of little relevance and does not mean that a defendant who meets the state definition translates to a finding that the Nortenos are an enterprise under federal law.  No one says it does.[4]

_____

[4]The indictment alleges in Counts 1 and 2 that the Nortenos are an "enterprise."  Count 1 charges a violation of 18 U.S.C. § 1962(d) and numerous other counts charge violations of various subsections of 18 U.S.C. § 1959.  The Circuit has specifically held that the existence of an enterprise is <u>not</u> an element of § 1962(d).  <u>United States v. Harris</u>, 695 F.3d 1125 (10th Cir. 2012).  It has also held that existence of an enterprise <u>is</u> an element of § 1959(a)(5).  <u>United States v. Arrington</u>, No. 09-2151, 2010 WL 4027823 (10th Cir. Oct. 15, 2010).  The content of instructions is not relevant to the present discussion but an instruction such as hypothesized by Ramirez seems unlikely.

The term "criminal street gang" is a term defined by Kansas statute, K.S.A. 22-3901(j).  Thus Webb and Nau, as state law enforcement officers, were guided to some extent by a statutory framework in terms of what constitutes gang activity in Dodge City. Based in part on the statute, Webb and Nau participated in the

-10-

Flores attacks the methodology of the officers' opinions in a manner, the logic is pretty obscure:

> Thus, the government's proposed experts methodology for forming their expert opinion is to taking training about something that, may have some similarities, but cannot be said to be consistently similar over time geography, culture or group, to the subject of their proposed expertise and then render an opinion about the alleged gangs which are the subject of their proposed expertise based upon that training. In short, the government's proposed experts have studied one thing and based upon their studies rendered an opinion about something that can not be said to be consistently similar to the thing studied. They are comparing apples and oranges and rendering reaching proposed expert opinions about the oranges based upon their training relating to apples. Such a methodology cannot be said to render reliable opinions. This is especially true as the government's exhibits nor the testimony of their proposed experts reveal how the behavior, actions, language and operating procedures of the alleged gangs of Dodge City may differ from that of the gangs which were the subject of the witness' training or from the behavior, actions, language and operating procedures of the same alleged gang at a different time.

(Doc. 624 at 3).

If Flores's point is that the officers' (and particularly Webb's) training involved gangs other than the Nortenos and Surenos, it is not well-taken.  No single authoritative, Dodge City/Nortenos/Surenos-study has been identified, or likely will be identified in this case. Assuming defense gang experts are identified, it seems reasonable to assume that their opinions will be based, to some extent, on gangs

---

creation of written materials, including portions of the Dodge City Police department Policy and Procedure Manual, which defines and provides general information about the Nortenos and Surenos (Gov't Exs. 1 and 2).  The officers were questioned in detail about these materials.  It remains to be seen whether the materials, or any portion thereof, will be offered into evidence at trials, whether by the government or defense, or both.  But the court observes that if the materials did not exist, Ramirez's counsel would attack the officers' opinions as mere speculation and ipse dixit.

-11-

other than those in Dodge City.  Will Flores lodge similar objectives to the methodology of defense experts?  Doubtful.

The most straight-forward objection to the officers' opinions is made in a three page submission by David Rapp, counsel for Beltran-Ruiz (Doc. 626).  He cites Judge Tena Campbell's decision in <u>United States v. Kamahele</u>, No. 2:08-cr-758, 2011 WL 3861576 (D. Utah Sept. 1, 2011), which does an excellent job of covering the bases for admission of expert gang evidence.  Mr. Rapp's objection is that the government has failed to present sufficient methodology evidence to allow the defendants to determine which of the officers' opinions are based on independent judgment as opposed to simply repeating information provided by other officers or individuals.  The court disagrees. Other than her comment that Officer Merino applied his individual judgment and "expertise derived over many years and from multiple sources" citing <u>United States v. Johnson</u>, 587 F.3d 625, 635 (4th Cir. 2009), Judge Campbell's decision does not discuss "methodology."[5]  It seems reasonable to assume that she recognized that Officer Merino's methodology was derived from experience, which is very similar to how Officers Webb and Nau developed the opinions initially disclosed in writing and covered extensively at the hearings.

---

[5]In a subsequent decision, not cited by the parties but attached as Exhibit 3, Judge Campbell allowed the opinion.  She precluded Officer Merino from using as the basis for his opinions ". . . any information from alleged sources of that information whose identities were not given to Defendants.  Those sources include those whom Officer Merino described as "reliable source," "witnesses and victims," "church leaders," "concerned members of the community," and non-testifying "co-Defendants."" Judge Campbell ruled that if during trial, any defense counsel believes that Merino is relying on undisclosed information, counsel may object.  A similar rule may, or may not, be appropriate in this case.  The specific issue is not presently before the court.

-12-

Conclusion

After performing its "gatekeeping" role, the court finds that Nau and Webb's opinions are reliable, relevant and will be helpful to the jury, assuming proper foundations are laid.  Therefore, their opinions are admissible, subject to appropriate objections at trial, the substance of which cannot be determined and ruled upon at this time. Defendants' objections to Nau and Webb's testimony are overruled. (Docs. 608, 612, 619, 621[6]).


IT IS SO ORDERED.

Dated this __21st__ day of May 2013, at Wichita, Kansas.


s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

---

[6] Quezada's motion in limine to exclude the testimony of Nau and Webb is denied.

-13-

# James Nau

## Gang Unit, Dodge City Police Department

**James Nau #212**

**Experience**

February 2006 – Present: Patrol Officer
July 2007 – August 2010: Assigned to Street Crime Unit (Gang Unit)

August 2010 – August 2011: Problem Oriented Policing Unit (Formerly Street
    Crime Unit)

January 2012 – Present: Gang Resistance Education and Training (G.R.E.A.T.)
Instructor/Gang Unit

Patrol Officer – I was assigned to work a certain beat to investigate criminal activities.
    - Routine patrol in high crime areas
    - Enforced traffic laws
    - Served outstanding warrants
    - Testified in court trials

Street Crime Unit – I was assigned to the Street Crime Unit to work street level narcotics
        investigations as well as gang crimes, which include drive by
        shootings, assaults/batteries (aggravated), robberies, burglaries,
        weapons violations; as well as document gang members.
    - I utilized confidential informants for drug cases and gang
      investigations.
    - Debrief arrested gang members or any gang member who wanted to
      talk about the gang they were in or other gangs in our community.
    - I also conducted surveillance on gang members, gang houses, and
      drug houses.
    - I was also assigned to the Southwest Kansas Gang Task Force
      (SWKGTF).  The SWKGTF was designed to conduct random checks
      of gang members on probation or corrections to assure they were
      abiding by the conditions of their probation/corrections.
    - I was also tasked with teaching gang awareness and prevention to the
      school administration/teachers in our District which comprised of 8
      schools.  In 2007 I taught gang identification/awareness/prevention
      training to parents at the Dodge City Middle School.  Aside from

Exhibit 1

schools I also taught gang training to the Dodge City Police Department, Ford County Sheriffs Department, Gray County Sheriffs Department, Santa Fe Trail Community Corrections (Dodge City), Court Services (Dodge City), Ford County Attorneys Office, Dodge City Municipal Court Staff, as well as other businesses and to the community of Dodge City.  Testified in court on gang trials to establish gang affiliation on defendants.

Problem Oriented Policing Unit (P.O.P.) - I was assigned to the Problem Oriented Policing Unit where I was assigned to investigate gang crimes (same crimes as Street Crime Unit).  I worked closely with the street officers and built cases on crimes that involved gang members.
- I was also assigned as SWKGTF Leader where I organized our task force deployment dates and put together a target list of gang members with outstanding warrants for our task force to look for.  Testified in court on gang trials to establish gang affiliation on defendants.

G.R.E.A.T. Instructor/Gang Unit – I was certified to teach gang education and training to our middle school as well as fifth grade classes.
- Aside from teaching I was put in charge of maintaining and updating our gang database.
- During the summer I was assigned to work gang unit on the weekend night shift where our primary focus was debriefing gang members, surveillance on gang and drug houses, and investigating gang crimes. Testified in court on gang trials to establish gang affiliation on defendants.  During our RICO investigation I was assigned as a team leader on a particular target.  I was also assigned to look at each residence that a gang search warrant was executed on to assure all proper gang paraphernalia items were taken.

**Education**

- Associates of Science Degree from Dodge City Community College (Biology)
- Approximately 34 hours at Fort Hays State University

**Specialized Training**

948

- Midwest Counter Drug Training: Criminal Street Gang Identification and Interdiction (2007) (24 hours)
- Kansas Gang Investigators Association Conference (2008) (28 hours)
- Kansas Narcotic Officers Association Conference (2008) (24 hours)
- Kansas Gang Investigators Association Conference (2009) (23.5 hours)
- Kansas Gang Investigators Association Conference (2010) (23 hours)
- Kansas Narcotics Association Classes (2010) (8 hours)
- Midwest Counter Drug Training: Advanced Gang Investigation & Interdiction (2010) (24 hours) (Instructor-Lou Savelli)
- Kansas Gang Investigators Association Conference (2011) (23 hours)
- Gang Resistance Education and Training Instructor (2012) (60 hours)
- Midwest Law Enforcement Conference on Gangs and Drugs (2012) (20 hours)

**Training Given**

- Gang Identification and Awareness-Dodge City Public Schools/Parents, Community Businesses of Dodge City (2007) (Approximately 100 hours)
- Gang Identification and Awareness-Dodge City Public Schools/Parents, Community Businesses of Dodge City (2008) (Approximately 50 hours)
- Gang Identification and Awareness-Dodge City Public Schools/Parents, Community Businesses of Dodge City (2009) (Approximately 50 hours)
- Gang Identification and Updates-Dodge City Police Department (Approximately 16 hours)
- Gang Identification and Awareness-Dodge City Public Schools/Parents, Community Businesses of Dodge City (2010) (Approximately 30 hours)
- Gang Identification and Awareness-Dodge City Public Schools/Parents, Community Businesses of Dodge City (2011) (Approximately 25 hours)
- Gang Identification-Probation Offices, District and City Court (2011) (Approximately 20 hours)
- Gang Identification and Awareness-Dodge City Public Schools/Parents, Community Businesses of Dodge City (2012) (Approximately 25 hours)
- Gang Updates-Dodge City Police Department, District and City Courts (2012) (Approximately 20 hours)

**Awards**

- Distinguished Service Award (2007)
- Silver Medal of Valor (2010)

## Shane R. Webb

Dodge City Police Department
110 W. Spruce
Dodge City, KS 67801
(620) 225-8135 (office)
(620) 339-5594 (cell)

# Curriculum Vita

## EDUCATION

05/1995   Dodge City High School

05/1996   Dodge City Community College

12/1997   Hutchinson Community College
- Associates in Arts – Criminal Justice
- Emergency Medical Technician

04/2005   University of Kansas, Kansas Law Enforcement Training Center
- Full Time Law Enforcement Officer

## EMPLOYMENT

5/1999- 12/2005-   Manager, Spare Tyme Bowl

01/03/2005-   Police Officer, Dodge City Police Department

## ACADEMY TRAINING

01/24/2005   **KLETC Basic Full Time Law Enforcement Officer**
- **560 hours**

**Training topics included but are not limited to:**
- Emergency Vehicle Operation Course (E.V.O.C.)
- Basic Straight Baton
- O.C. Irritant Projector Certification including exposure
- Controlled burn of known marijuana for exposure to the odor
- Hazardous Material Recognition & Identification
- CPR / First Aid Infection Control
- Narcotics Investigation and Identification
- Kansas Law
- Supreme Court Rulings
- Search and Seizure
- Firearms
- Officer Safety
- Accident Investigation
- Report Writing
- Railway Crossing Accident Investigation
- Interview and Interrogation
- Building Searches
- Criminal Investigations
- Patrol Tactics

Exhibit 2

- Verbal Judo
- Gang Identification

01/03/2005-07/18/2005   **Dodge City Police Department Field Training Officer Program**
**•400 hours**

**Training topics included but are not limited to:**
- Emergency Vehicle Operation (E.V.O.C.)
- **Orcutt Police Nunchaku**
- O.C. Irritant Projector Certification including exposure
- CPR / First Aid Infection Control
- Narcotics Investigation and Identification
- Kansas Law
- Supreme Court Rulings
- Search and Seizure
- Firearms
- Officer Safety
- Accident Investigation
- Report Writing
- Railway Crossing Accident Investigation
- Interview and Interrogation
- Building Searches
- Criminal Investigations
- Patrol Tactics
  Gang Identification

**PATROL TRAINING**

01/00/2005 **Patrol Weapon Training**
- Dodge City Police Department – Cpl. Kocher
- 8 hours

05/12/2005 **Certified Operator of Kustom Doppler Traffic Radar**
- Dodge City Police Department – Sgt. Fleming
- 4hours

06/24/2005 **Patrol Rifle Training**
- Dodge City Police Department – Sgt. Morton
- 16 hours

01/13/2005 **CPR Certification**
- Dodge City Police Department – Officer Mooradian
- 8 hours

04/24/2006 **Basic Spanish for Law Enforcement**
- Midwest Counter Drug Training Center- Dr. Sam Slick
- 24 hours

04/11/2007 **CPR Recertification**
- Dodge City Police Department – Officer Mooradian
- 8 hours

07/24/2007 **Firearms Training Course**
- Dodge City Police Department – Sgt. Warren
- 1 hours

Case 6:12-cr-10089-MLB   Document 643-2   Filed 05/22/13   Page 3 of 9

Appellate Case: 14-3006     Document: 23-1     Date Filed: 04/01/2014     Page: 952

09/20/2007  **Defensive Driving**
- Library
- 2 hours

03/12/2009  **CPR Recertification**
- Dodge City Police Department – Officer Mooradian
- 2 hours

05/19/2009  **Interview and Interogation**
- Camp Dodge Iowa-Steve Rhodes
- 40 hours

## DUI TRAINING

*08/19/2005*  **Intoxilyzer 5000 Certification**
- Kansas Department of Health and Environment
- 8 hours

08/22/2006  **Intoxilyzer 5000 Certification**
- Kansas Department of Health and Environment-Cpl Thad Brown
- 1 hour

09/04/2007  **Intoxilyzer 5000 Certification**
- Kansas Department of Health and Environment-Cpl Thad Brown
- 1 hour

02/15/2008  **Intoxilyzer 8000 Certification**
- Kansas Department of Health and Environment-Cpl Thad Brown
- 4 hours

06/13/2008  **Standardized Field Sobriety Testing**
- Kansas Department of Health and Environment-Cpl Thad Brown
- 4 hour

## Narcotics Training

09/09/2005  **Narcotic Test Kits Certification – Narco- Pouches & Swabs**
- Dodge City Police Department – Detective McClure
- 2 hours

03/27/2007  **Narcotics Operations and Undercover Work**
- 4 hours - Kevin Fitzpatrick

03/27/2007  **Dangers of Undercover Narcotics**
- 4 hours – Tim Lane

03/28/2007  **Narcotics Test Kit Certified Trainer - Narco- Pouches & Swabs**
- Kansas Narcotic Association –Jack Thorndike
- 4 hours

08/13/2007  **Highway Drug Investigations for Patrol**
- Midwest Counter Drug Training Center-Texas Department of Safety
- 40 hours

11/15/2007  **Introduction to Drug Investigations**
- MCTFT-Online
- 16 hours

952

11/15/2007 **Drug Identification**
      • MCTFT-Online
      • 16 hours
11/15/2007 **Airport Narcotics Investigations**
      • MCTFT-Online
      • 16 hours
11/15/2007 **Clandestine Laboratory Investigations**
      • MCTFT-Online
      • 16 hours
03/17/2008 **Kansas Narcotics Officers Association**
      • 24 hours
11/20/2008 **Kansas Bureau of Investigation "Top Gun"**
      • 40
11/22/2009 **NARTEC Certified Trainer – NARTEC Swabs**
      •2 hours
03/15/2010 **Kansas Narcotics Officers Association**
      **Post interdiction, Mexican Drug Saints,**
      **Mexican Cartels, Hotel Motel interdiction**
      • 24 hours
08/10/2010 **Kansas Narcotics Officers Association**
      **Post interdiction, Mexican Drug Saints,**
      **Court Room Testimony**
      • 8 hours
12/06/2010 **Basic Clandestine Laboratory Safety Training**
      **NES Hays KS**
      •40 hours
01/24/2012 **One Pot Methamphetamine Hazards and Handling**
      **NES Great Bend KS**
      •8 hours
08/27/2012 **Authorized Central Storage Program**
      **Drug Enforcement Administration**
      **Clandestine Laboratory Investigators Association**
      •16 hours
08/29/2012 **Mexican Drug Cartels**
      **Drug Enforcement Administration**
      **Clandestine Laboratory Investigators Association**
      •4 hours
08/29/2012 **Marijuana Grow Investigations**
      **Clandestine Laboratory Investigators Association**
      •4 hours
08/30/2012 **Bath Salt and MDMA Synthesis Cook**
      **Drug Enforcement Administration**
      **Clandestine Laboratory Investigators Association**
      •4 hours
08/31/2012 **Bath Salt and Synthetic Marijuana**
      **Drug Enforcement Administration**
      **Clandestine Laboratory Investigators Association**
      •4 hours

## LEGAL TRAINING

07/12/2005 **Search and Seizure**
- Judge Leigh Hood
- 2.5 hours

11/21/2008 **Search and Seizure and Narcotic Investigations**
- Judge Leigh Hood
- 3 hours

09/14/2011 **Asset Forfeiture in Kansas**
- KLETC
- 8 hours

12/02/2011 **Search and Seizure**
- ACA Scott James
- 3 hours

01/06/2012 **Problem Gambling Issues**
- Patrick Klecker
- 4 hours

01/09/2012 **Background Investigation for Police Applicants**
- Thomas Ward
- 12 hours

## LESS LETHAL TRAINING

01/2005   **OC Deployment and Use of Force**
- Cpl. Slickers Dodge City P.D.
- 4 hours

06/22/2005 *Advanced M26 Taser Certified*
- Dodge City Police Department – Detective Unruh
- 4 hours

07/05/2005 **Orcutt Police Nunchaku Basic Certification Course**
- Sgt. Russell Fleming, Dodge City P.D.
- 16 hours

04/04/2007 **Orcutt Police Nunchaku Recertification**
- Dodge City Police Department- SCU Robert Stein
- 4 hours

07/18/2007 **Controlled F.O.R.C.E. Enhanced End User**
- Dodge City Police Department – Detective Drew Francis
**8 hours**

05/27/2008 **Taser Recertification**
- Dodge City Police Department- Sgt. Brooks, Cpl McGee
- 4 hours

04/14/2009 **Controlled F.O.R.C.E. Enhanced End User recert**
- Dodge City Police Department – Detective Drew Francis
**8 hours**

08/20/2010  **Basic Baton training using the ASP**
  - Dodge City Police Department- GCPD Brandi Unruh
  - 3 hours

10/14/2011  **Taser Recertification**
  - Dodge City Police Department- Lt. Brooks, Cpl Gordon
  - 4 hours

04/16/2012  **PPCT**
  - Dodge City Police Department – Officer Justin Warkentin
  - **16 hours**


**GANG TRAINING**

12/19/2005  **Prison Gangs**
  - Wichita State University – David Starbuck
  - 8 hours

09/18/2007  **Criminal Street Gangs**
  - Midwest Counter Drug Training Center – Lou Savelli
  - 24 hours

02/05/2007  **1st Kansas Gang Investigators Inaugural Conference-Topeka**
  - Latino Gangs – Al Valdez
  - 20 hours

03/28/2007  **How to Work Street Gangs**
  - 4 hours Investigator Timmy McClure

11/15/2007  **Introduction to Conspiracy Gang Investigations**
  - MCTFT-Online
  - 16 hours

11/15/2007  **Street Gangs Overview**
  - MCTFT-Online
  - 16 hours

02/05/2007  **2nd Annual Kansas Gang Investigators Conference-Wichita**
  - Latino Gangs, Conspiracy investigations, Tattoo ID
  - 24

04/23/2008  **Gang Prosecution Techniques**
  - Jerry Stanaszak MCTFT
  - 24 hours

06/02/2008  **School Violence Conference**
  - John Gudick-Archangel- KU Fire Science
  - 8 hours

06/02/2008  **Latino's: Crime, Culture, and Community**
  - Guillermo Faira and Pedro Francisco MCTC
  - 24 hours

02/03/2009  **3rd  Annual Kansas Gang Investigators Inaugural Conference-Topeka**
  **Gangs 101, Gang Culture, Internet Usage, White Supremist,  Latino Gangs**
  - 23.5 hours

04/21/2009  **MOCIC RISS Gang Data Entry**
  - Cindy Heath, Intelligence Specialist
  - 4 hours

06/07/2010  **Midwest Law Enforcement Conference on Gangs and Drugs**
  - Wichita Crime Commission
  - 20 hours

06/06/2011  **Midwest Law Enforcement Conference on Gangs and Drugs**
  - Wichita Crime Commission

- 20 hours

06/04/2012 **Midwest Law Enforcement Conference on Gangs and Drugs**
- Wichita Crime Commission
- 20 hours

## INSTRUCTOR TRAINING

03/28/2007 **Narcotics Test Kit Certified Trainer**
- Kansas Narcotic Association

11/22/2009 **NARTEC Certified Trainer**

## SORT TRAINING

01/04/2007 **Deliberate Entry Method**
- 6 hours - Lt. Mellecker

01/30/2007 **Deliberate Entry Method**
- 6.5 hours – Lt. Mellecker

03/06/2007 **Deliberate Entry Method**
- 6.5 hours – Lt. Mellecker

03/13/2007 **How to Deploy Noise, Flash, Distraction, Device Safely**
- 7 hours – Lt. Mellecker

04/10/2007 **How to Perform Scouting Missions**
- 4.5 hours – Lt. Mellecker

04/24/2007 **Basic Hostage Negotiations**
- 6.5 hours  - Detective Francis & Detective George

05/22/2007 **Deliberate Entry Method**
- 5 hours – Lt. Mellecker

08/30/2007 **Firearms Qualification for Pistols and Long Guns**
- 6hours – Lt. Mellecker

10/11/2007 **Deliberate Entry Method**
- 7 hours – Lt. Mellecker

10/26/2007 **Tour of High School in Preparation for Potential Violence**
- 3 hours – Lt. Mellecker

01/17/2008 **High Risk Entry Tactics-Ford County Court House**
- 7 hours – Lt. Mellecker

02/28/2008 **Firearm Training**
- 7 hours – Lt. Mellecker

05/08/2008 **Entry Training with K-9**
- 7 hours – Lt. Mellecker

05/22/2008 **Repelling Entry Training- Ford County Fire**
- 7 hours – Lt. Mellecker

06/05/2008 **Entry Training- Dodge City Community College**
- 5 hours – Lt. Mellecker

06/19/2008 **High Risk Entry Training Chamber of Commerce**
- 7 hours – Lt. Mellecker

07/17/2008 **Repelling Entry Training- Ford County Fire**
- 7 hours – Lt. Mellecker

08/07/2008 **SORT training deliberate entries, Flood entries, gas mask refresher Fort Dodge**
- 7 hours – Lt. Mellecker

09/11/2008 **Firearm Training**

- 7 hours – Lt. Mellecker
12/18/2008 **Firearm Training**
- 1.5 hours – Lt. Mellecker
01/15/2009 **SORT training deliberate entries, Flood entries**
- 6 hours – Lt. Mellecker
01/29/2009 **How to Deploy Noise, Flash, Distraction, Device Safely**
- 5 hours – Lt. Mellecker
02/12/2009 **Firearms Qualification for Pistols and Long Guns**
- 7hours – Lt. Mellecker
02/26/2009 **SORT training deliberate entries, Flood entries**
- 6 hours – Lt. Mellecker
03/12/2009 **SORT Combat Tactics**
- 7 hours – Lt. Mellecker
02/12/2009 **Firearms Training**
- 5hours – Lt. Mellecker

## Tactical Operations   11

**Past Assignments**

01/2005 FTO Training
07/2005 Weekend Days
08/2005 Weekend Nights
01/2006 Weekend Nights Street Crime Unit
07/2007 Detective Bureau
11/2009 Kansas Bureau of Investigation, Southwest Kansas Drug Task Force Agent

**Instructor**

**Gang Training**
- **February 2007 Leadership Dodge**
2 hours
- **February 2007 Latino Rights Council**
4 hours
- **March 2007 Parenting group at Area Mental Health**
4 hours
- **September 2007 Miller School**
4 hours
- **November 2007 KBI/ATF/US Attorneys Office**
4 hours
- **September 2008 Parenting Group St. Marys**
6 hours
- **October 2008 Middle School**
4 hours
- **November 2008 Area Mental Health**
4 hours

- **February 2009 Leadership Dodge**

4 hours

- **November 2009 Dodge City Chamber Luncheon**

1 hours

- **February 2010 Area Mental Health**

4 hours

**2010, 2011, and 2012 Midwest Conference on Gangs and Drugs Presenter on South West Kansas Gangs**

**4 hours**

**Nartec Swabs & Narco Pouches 2 Hour Classes**
**05/20/2010-DodgeCity**
**11/11/2010-DodgeCity**
**12/22/2010-DodgeCity**
**03/16/2011-DodgeCity**
**08/04/2011-DodgeCity**
**08/24/2011-DodgeCity**
**10/18/2011-DodgeCity**
**02/02/2012-DodgeCity**
**03/13/2012-Ness City**
**06/25/2012-DodgeCity**

**Languages**

- Intermediate Spanish

**Total Training Hours**          1963.5

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ERIC KAMAHELE, et al.,<br><br>Defendants. | ORDER AND MEMORANDUM DECISION<br><br><br>Case No. 2:08-CR-758-TC |

**INTRODUCTION**

In an earlier order, the court held that Officer Break Merino is qualified to testify as an

expert on <u>general</u> subjects covering the background, structure and organization of the Tongan

Crip Gang (TCG), that is, 1(A) through 1(N) of the United States' Supplemental Notice (Dkt.

No. 517). But the court took under advisement whether Officer Merino may offer expert

testimony on the issue of the individual Defendants' membership in or association with TCG.

On September 9, 2010, the court held another evidentiary hearing on the question of Officer

Merino's proposed testimony on the eight Defendants and their association with TCG. Now,

after reviewing the testimony, hearing oral arguments, and reading the parties' memoranda, the

court holds that Officer Merino is qualified to give his opinions about the Defendants and their

association with TCG. But, as explained below, in making this decision the court excludes some

of the proposed bases of Officer Merino's testimony. Accordingly, Officer Merino may not rely

on these excluded bases when testifying at trial.

Exhibit 59

Case 6:12-cr-10089-MLB   Document 643-3   Filed 05/22/13   Page 2 of 9

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 960
`   Case 2:08-cr-00758-TC-DBP   Document 1006   Filed 09/19/11   Page 2 of 9

BACKGROUND

Following the Daubert hearings involving Officer Merino on May 6 and July 13, 2011,

Defendant David Kamoto filed a Motion To Compel Gang Records (Docket No. 691), seeking

production of the gang field cards that Officer Merino testified he relied on in forming his

opinion that the Defendants are members or associates of TCG. On August 17, 2011, United

States Magistrate Judge Samuel Alba granted Mr. Kamoto's Motion To Compel and ordered

compliance by the Government no later than August 25, 2011 (Docket No. 772). The

Government did not object to Judge Alba's order. On August 26, 2011, Mr. Kamoto filed a

Motion For Order To Show Cause Regarding Violation of Order To Provide Gang Information

(Docket No. 833), contending that the Government had not produced the gang records as

required by Judge Alba's order.

On September 2, 2011, after holding a hearing on the matter, Judge Alba granted Mr.

Kamoto's Motion For Order To Show Cause. Specifically, Judge Alba ordered "that copies of

the flash drive containing the gang records in question be duplicated and a copy is provided to

each defendant's counsel by 5:00 p.m. on 9/2/2011." (Docket No. 902.) The Government

objected to Judge Alba's order (Docket No. 905) and requested a stay pending review of its

objection (Docket No. 904). That Friday afternoon, the court affirmed Judge Alba's order but

temporarily limited the way in which the disclosed information could be used. (Docket No. 911.)

The next Tuesday, September 6, 2011, the court held a follow-up hearing, after which the court

amended its previous order and required that the unredacted information be viewed by attorneys

only and that if counsel for the Defendants were to make any hard copies of the information, they

must redact the copies. The copies could then be used during trial but the information may not

2

Case 6:12-cr-10089-MLB   Document 643-3   Filed 05/22/13   Page 3 of 9

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 961
`   Case 2:08-cr-00758-TC-DBP   Document 1006   Filed 09/19/11   Page 3 of 9

be used to contact victims or witnesses.  (Docket No. 942.)

In preparation for the September 9, 2011, Daubert hearing, the Government produced a list of factors that support Officer Merino's opinion that each Defendant is a member or associate of TCG (Daubert Ex. 3).  During the hearing, the Defendants were able to cross-examine Officer Merino about the listed bases for his opinions.

<div align="center">ANALYSIS</div>

**A.      Standard of Review**

The court initially believed that it would consider all the types of information cited by Officer Merino as forming the basis of his opinion when the court acted as a "gatekeeper," that is, when the court decided whether Officer Merino could testify as an expert on this issue.  Then the court would make a separate determination about the information Officer Merino could use when testifying at trial.

The court has since changed its view of the procedure it must follow.  The court must decide the appropriate bases of Officer Merino's proposed opinions when the court undertakes its gatekeeper analysis.  Then, during trial, Officer Merino may rely on the approved bases when testifying.  To proceed otherwise would not be helpful to the jury or to counsel.  But the court cautions all parties that even if the court allows Officer Merino to base his opinion on certain information, that does not necessarily mean that this information can be disclosed to the jury. Federal Rule of Evidence 703 allows an expert to base opinions on inadmissible facts or data.

**B.      Prohibited and Approved Bases**

There is one category of information on which Officer Merino cannot base his opinions: information that has not been provided, in some form, to the Defendants.  But the court has

Case 6:12-cr-10089-MLB   Document 643-3   Filed 05/22/13   Page 4 of 9

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 962
Case 2:08-cr-00758-TC-DBP   Document 1006   Filed 09/19/11   Page 4 of 9

carefully considered the bases which are left and finds them relevant and reliable and, as discussed in the court's first Daubert order (Docket No. 876), finds that Officer Merino is thoroughly qualified through his experience and training to express those opinions.

### 1.   Information That Was Not Disclosed

To force Defendants to cross-examine Officer Merino at trial without adequate notice of certain bases supporting his opinions would not be appropriate in this case, where the issue of disclosure has been the subject of extensive litigation, resulting in several court orders. Moreover, to permit such testimony would be contrary to the intention of the Federal Rules of Evidence. See Fed. R. Evid. 705 advisory committee's note (1992) (advisory committee "assumes that the cross-examiner has the advance knowledge which is essential for effective cross-examination").

Because certain information was not disclosed, Officer Merino may not use the following as a basis for his opinion: any information from alleged sources of that information whose identities were not given to Defendants. These sources include those whom Officer Merino described as "reliable source," "witnesses and victims," "church leaders," "concerned citizens," "concerned members of the community," and non-testifying "co-Defendants." (Daubert Ex. 3.)

This list is not exclusive. If, during trial, any Defendant's counsel believes that Officer Merino is relying on undisclosed information, she or he may object.

### 2.   Violation of Confrontation Clause

Defendants contend that some of the information supporting Officer Merino's proposed testimony violates their Sixth Amendment right to confrontation. To some extent, the court agrees. Certainly statements made by non-testifying Co-Defendants and "testimonial" statements

4

Case 6:12-cr-10089-MLB   Document 643-3   Filed 05/22/13   Page 5 of 9

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 963
`   Case 2:08-cr-00758-TC-DBP   Document 1006   Filed 09/19/11   Page 5 of 9

by unavailable speakers would violate the Confrontation Clause if offered directly to the jury.

But, as recognized by the Supreme Court in Crawford v. Washington, 541 U.S. 36 (2004), not all

hearsay implicates the Sixth Amendment's core concerns.  The Confrontation Clause applies to

"testimony," which "is typically '[a] solemn declaration or affirmation made for the purpose of

establishing or proving some fact.'"  Ross Andrew Oliver, Testimonial Hearsay as the Basis for

Expert Opinion: the Intersection of the Confrontation Clause and Federal Rule of Evidence 703

After Crawford v. Washington, 55 Hastings L.J. 1539, 1544 (2004) (quoting Crawford, 541 at

51).

Under Federal Rule of Evidence 703, an expert witness may base his or her opinion on

inadmissible evidence as long as the evidence is of a type reasonably relied upon by experts in

the field.  Fed. R. Evid. 703.  Accordingly, "[s]ometimes the facts upon which an expert bases an

opinion amount to testimonial hearsay and present a risk of violating a defendant's constitutional

right to confrontation."  Oliver, Testimonial Hearsay, supra, at 1556.  The Second Circuit has

held that an expert's reliance, in the form of "repetition of out-of-court testimonial statements

made by individuals during the course of custodial interrogations violate[s] [a defendant's] rights

under the Confrontation Clause of the Sixth Amendment."  United States v. Mejia, 545 F.3d 179,

199 (2nd Cir. 2008).

But, "[i]n a case where an expert forms an opinion from many sources, including his own

experience, rather than simply relating testimonial hearsay to the jury, there is less risk of a

Confrontation Clause violation."  Oliver, Testimonial Hearsay, supra, at 1558.  Consistent with

this principle, the court in United States v. Johnson, 587 F.3d 625 (4th Cir. 2009), rejected the

defendants' arguments that the expert testimony of two police officer experts violated the

Case 6:12-cr-10089-MLB   Document 643-3   Filed 05/22/13   Page 6 of 9

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 964
Case 2:08-cr-00758-TC-DBP   Document 1006   Filed 09/19/11   Page 6 of 9

Confrontation Clause because the experts based their opinions in part on inadmissible testimonial hearsay. The court noted that "Crawford forbids the introduction of testimonial hearsay as evidence in itself, but it in no way prevents expert witnesses from offering their independent judgments merely because those judgments were in some part informed by their exposure to otherwise inadmissible evidence." Id. at 635. The court clarified that "[a]n expert witness's reliance on evidence that Crawford would bar if offered directly only becomes a problem where the witness is used as little more than a conduit or transmitter for testimonial hearsay, rather than as a true expert whose considered opinion sheds light on some specialized factual situation." Id. But, "[a]s long as [the expert] is applying his training and experience to the sources before him and reaching an independent judgment, there will typically be no Crawford problem. The expert's opinion will be an original product that can be tested through cross-examination." Id.

In this case, Officer Merino applied his individual judgment and "expertise, derived over many years and from multiple sources" to arrive at his opinion that the Defendants are members or associates of TCG. See Johnson, 587 F.3d at 636. Accordingly, Officer Merino's proposed opinions and the bases for them do not violate the Defendants' right to confrontation.[1] Bearing in mind that Officer Merino may not base his opinions on information from undisclosed sources, counsel for the Defendants may object if they believe that Officer Merino has crossed the line into simply recounting inadmissible testimonial hearsay evidence.

---

[1] The possibility of a Confrontation Clause problem is substantially decreased by the court's ruling that Officer Merino may not rely on statements made by undisclosed sources. These statements comprise most, if not all, of the testimonial hearsay statements that Officer Merino relied on.

Case 6:12-cr-10089-MLB   Document 643-3   Filed 05/22/13   Page 7 of 9

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 965
-   Case 2:08-cr-00758-TC-DBP   Document 1006   Filed 09/19/11   Page 7 of 9

**C.     Rule 404(b) Evidence**

Several Defendants object to Officer Merino's proposed testimony, claiming that he relies on Rule 404(b) testimony that the court held inadmissible or that the Government had agreed not to use.

In May 2011, the Government filed a lengthy notice of intent to use certain evidence under Rule 404(b) of the Federal Rules of Criminal Procedure. (See May 26, 2011, Notice of Intent to Use Certain Evidence Pursuant to 404(b) (Docket No. 597).) The original notice listed ninety-three specific incidents and twenty-four generic categories of documentation ("prison documentation" and "case history summary" for various Defendants). (Id.) During a July 13, 2011, hearing, the court, based on objections from the Defendants and the Government's oral modification of the list of proposed 404(b) evidence, ordered the Government to submit an amended notice of the specific 404(b) evidence the Government intended to use.

The Amended Notice listed five specific incidents. (See July 21, 2011, Amended Notice of Intent to Use Certain Evidence Pursuant to 404(b) (Docket No. 665).) During a subsequent 404(b) hearing, the court excluded all but one of the incidents. (See Aug. 12, 2011, Order on 404(b) Evidence and Other Pretrial Matters (Docket No. 751).)

The withdrawn and excluded 404(b) incidents relied upon by Officer Merino are not being offered as evidence for the truth of the matter asserted. The evidence is admissible under Rule 703 of the Federal Rules of Evidence, which reads as follows:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or

7

Case 6:12-cr-10089-MLB   Document 643-3   Filed 05/22/13   Page 8 of 9

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 966
·   Case 2:08-cr-00758-TC-DBP   Document 1006   Filed 09/19/11   Page 8 of 9

data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703. Officer Merino is properly relying on facts or data that are not admissible for other reasons but are legitimate bases for his opinion (i.e., they are evidence that an expert in his field would reasonably rely upon). Accordingly, the objections are overruled.

**D.    Assisting the Jury**

Defendants' final contention is that Officer Merino's proposed testimony on each Defendant's membership in or association with TCG would not be helpful to the jury. They argue that members of the jury are fully capable of drawing their own conclusions from the evidence, such as whether the tattoos and gang signs show that a Defendant is a member or associate of TCG. This is not so.

The requirement in the Federal Rules of Evidence that expert testimony must be helpful to the trier of fact "marks a significant departure from the common law of evidence, which required that expert testimony be necessary, rather than merely helpful, to the finder of fact." 4 Jack Weinstein & Margaret Berger, Weinstein's Federal Evidence § 702.02[03], 702-10 to -10.1 (2011). "Under the Federal Rules of Evidence, if the expert's evidence will assist the finder of fact in any way in determining the factual issues before it, the evidence is admissible." Id. at 702-10.1 to -11; see also United States v. Brawner, 173 F.3d 966, 969 (6th Cir. 1999) ("It is, of course, well settled that 'necessity' is not a condition precedent for the admissibility of opinion testimony under Federal Rule of Evidence 702; rather, the test is whether the opinion 'will assist the trier of fact.'"). In the Tenth Circuit, "[d]oubts about whether an expert's testimony will be

8

Case 6:12-cr-10089-MLB   Document 643-3   Filed 05/22/13   Page 9 of 9

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 967
Case 2:08-cr-00758-TC-DBP   Document 1006   Filed 09/19/11   Page 9 of 9

useful 'should generally be resolved in favor of admissibility.'" Robinson v. Mo. Pac. R.R., 16 F.3d 1083, 1090 (10th Cir. 1994) (quoting 4 Jack Weinstein & Margaret Berger, Weinstein's Federal Evidence § 702[02], 702-30 (1988)).

Here, Officer Merino uses his many years of experience to evaluate and synthesize multiple pieces of evidence to determine whether a particular Defendant is a member or associate of TCG. Although the jury may be able to look at each individual piece of evidence and draw a conclusion about each Defendant's relationship to TCG, Officer Merino's testimony will assist the jury in evaluating the totality of the evidence relating to a particular Defendant and the interplay between and the significance of the individual pieces of evidence. It is enough that Office Merino's testimony will assist the jury; it need not be necessary to the jury's understanding of the evidence.

## ORDER

For the foregoing reasons, the Defendants' motions on this matter (Docket Nos. 362, 540, 544, 740, and 928) are DENIED subject to the conditions set forth in this order.

SO ORDERED this 19th day of September, 2011.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge

```
MIME-Version:1.0
From:KSD_CMECF@ksd.uscourts.gov
To:ksd_nef@localhost.localdomain
Bcc:
--Case Participants: David M. Rapp (drapp@hinklaw.com, lcatlin@hinklaw.com,
lvitanova@hinklaw.com), John V. Wachtel (jvwachtel@klendalaw.com), Michael D. Hepperly
(mhepperly@aol.com), Jeff L. Griffith (jlgriffithlaw@aol.com), Molly M. Gordon
(karin@depewgillen.com, molly@depewgillen.com), Edward L. Robinson
(erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com),
David H. Moses (dmoses@cmzwlaw.com, heather@cmzwlaw.com), Mark A. Sevart
(markchrissevart@yahoo.com), Mark T. Schoenhofer (jenniferlewilson@yahoo.com,
mydefensefirst@yahoo.com), Timothy J. Henry (beth_two_hatchett@fd.org,
jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org, tim_henry@fd.org),
Charles A. O'Hara (ohara@oharaohara.com), Kevin W. Loeffler (kloeffler@lawyer.com),
Gregory D. Bell (gbell@forkersuter.com), Joel Mandelman (beth_two_hatchett@fd.org,
jackie_carter@fd.org, joel_mandelman@fd.org, lorraine_schroeder@fd.org,
sharon_padgett@fd.org), Paul S. McCausland (p.mccausland@youngboglelaw.com), Derek S.
Casey (dscasey@twgfirm.com, jodownum@twgfirm.com), Mark L. Bennett, Jr (dana@mlbjrlaw.com,
mark@mlbjrlaw.com), Christopher S. O'Hara (ohara@oharaohara.com), James R. Pratt
(jim.prattesq@gmail.com, jim@jamesrprattlaw.com), Roger L. Falk
(courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net,
roger_falk@sbcglobal.net), Lanny D. Welch (lanny.welch@usdoj.gov,
tracy.ballard@usdoj.gov), Jessica M. Shannon (jshannon@hinklaw.com), Aaron L. Smith
(aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov), Jay F. Fowler (jfowler@foulston.com,
lclark@foulston.com), Carl Fredrick A. Maughan (carl@mandmattorneys.com), Sean C. McEnulty
(s@mcenultylawfirm.com), Michael J. Shultz (lura@shultzlaw.net, michael@shultzlaw.net),
Eric A. Hartenstein (erichartenstein@att.net), District Judge Monti L. Belot
(ksd_belot_chambers@ksd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:2987702@ksd.uscourts.gov
Subject:Activity in Case 6:12-cr-10089-MLB USA v. Najera et al Order on Motion for
Miscellaneous Relief
Content-Type: text/html
```

## U.S. District Court

## DISTRICT OF KANSAS

## Notice of Electronic Filing

The following transaction was entered on 5/22/2013 at 3:32 PM CDT and filed on 5/22/2013

| | |
|---|---|
| **Case Name:** | USA v. Najera et al |
| **Case Number:** | 6:12–cr–10089–MLB |
| **Filer:** | |
| **Document Number:** | 645(No document attached) |

**Docket Text:**

**MINUTE ORDER terminating [506] Motion as to Pedro Garcia (2); terminating [566] Motion for Joinder as to Alfredo Beltran–Ruiz (10); terminating [512] Motion for Joinder as to Eusebio Sierra–Medrano (16). The court held Daubert hearings on April 16, 17, and 18. Signed by District Judge Monti L. Belot on 5/22/2013. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs)**

**6:12–cr–10089–MLB–1 Notice has been electronically mailed to:**

Mark L. Bennett, Jr   mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler   jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith   jlgriffithlaw@aol.com

Eric A. Hartenstein   erichartenstein@att.net

Michael D. Hepperly   mhepperly@aol.com

Paul S. McCausland   p.mccausland@youngboglelaw.com

David H. Moses   dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara   ohara@oharaohara.com

Mark A. Sevart   markchrissevart@yahoo.com

Lanny D. Welch   lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler   kloeffler@lawyer.com

John V. Wachtel   jvwachtel@klendalaw.com

David M. Rapp   drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty   s@mcenultylawfirm.com

Timothy J. Henry   Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell   gbell@forkersuter.com

Roger L. Falk   roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey   dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer   mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt   jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan   carl@mandmattorneys.com

Aaron L. Smith   aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara   ohara@oharaohara.com

Edward L. Robinson   erobinson@josephhollander.com, julie@josephhollander.com,

meaghan@josephhollander.com

Michael J. Shultz    michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon    molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman    joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon    jshannon@hinklaw.com

**6:12–cr–10089–MLB–1 Notice has been delivered by other means to:**

Jason Najera(Terminated)
701 SE Stone Road
ElDorado, KS 67042

**6:12–cr–10089–MLB–2 Notice has been electronically mailed to:**

Mark L. Bennett, Jr    mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler    jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith    jlgriffithlaw@aol.com

Eric A. Hartenstein    erichartenstein@att.net

Michael D. Hepperly    mhepperly@aol.com

Paul S. McCausland    p.mccausland@youngboglelaw.com

David H. Moses    dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara    ohara@oharaohara.com

Mark A. Sevart    markchrissevart@yahoo.com

Lanny D. Welch    lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler    kloeffler@lawyer.com

John V. Wachtel    jvwachtel@klendalaw.com

David M. Rapp    drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty    s@mcenultylawfirm.com

Timothy J. Henry    Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell    gbell@forkersuter.com

Roger L. Falk    roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey    dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer    mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt    jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan    carl@mandmattorneys.com

Aaron L. Smith    aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara    ohara@oharaohara.com

Edward L. Robinson    erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz    michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon    molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman    joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon    jshannon@hinklaw.com

**6:12−cr−10089−MLB−2 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−3 Notice has been electronically mailed to:**

Mark L. Bennett, Jr    mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler    jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith    jlgriffithlaw@aol.com

Eric A. Hartenstein    erichartenstein@att.net

Michael D. Hepperly    mhepperly@aol.com

Paul S. McCausland    p.mccausland@youngboglelaw.com

David H. Moses    dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara    ohara@oharaohara.com

Mark A. Sevart    markchrissevart@yahoo.com

Lanny D. Welch    lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler    kloeffler@lawyer.com

John V. Wachtel     jvwachtel@klendalaw.com

David M. Rapp     drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty     s@mcenultylawfirm.com

Timothy J. Henry     Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell     gbell@forkersuter.com

Roger L. Falk     roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey     dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer     mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt     jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan     carl@mandmattorneys.com

Aaron L. Smith     aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara     ohara@oharaohara.com

Edward L. Robinson     erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz     michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon     molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman     joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon     jshannon@hinklaw.com

**6:12–cr–10089–MLB–3 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–4 Notice has been electronically mailed to:**

Mark L. Bennett, Jr     mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler     jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith     jlgriffithlaw@aol.com

Eric A. Hartenstein     erichartenstein@att.net

Michael D. Hepperly     mhepperly@aol.com

Paul S. McCausland     p.mccausland@youngboglelaw.com

David H. Moses     dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara     ohara@oharaohara.com

Mark A. Sevart     markchrissevart@yahoo.com

Lanny D. Welch     lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler     kloeffler@lawyer.com

John V. Wachtel     jvwachtel@klendalaw.com

David M. Rapp     drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty     s@mcenultylawfirm.com

Timothy J. Henry     Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell     gbell@forkersuter.com

Roger L. Falk     roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net,
ianm_clark@sbcglobal.net

Derek S. Casey     dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer     mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt     jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan     carl@mandmattorneys.com

Aaron L. Smith     aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara     ohara@oharaohara.com

Edward L. Robinson     erobinson@josephhollander.com, julie@josephhollander.com,
meaghan@josephhollander.com

Michael J. Shultz     michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon     molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman     joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon     jshannon@hinklaw.com

**6:12−cr−10089−MLB−4 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–5 Notice has been electronically mailed to:**

Mark L. Bennett, Jr     mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler     jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith     jlgriffithlaw@aol.com

Eric A. Hartenstein     erichartenstein@att.net

Michael D. Hepperly     mhepperly@aol.com

Paul S. McCausland     p.mccausland@youngboglelaw.com

David H. Moses     dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara     ohara@oharaohara.com

Mark A. Sevart     markchrissevart@yahoo.com

Lanny D. Welch     lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler     kloeffler@lawyer.com

John V. Wachtel     jvwachtel@klendalaw.com

David M. Rapp     drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty     s@mcenultylawfirm.com

Timothy J. Henry     Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell     gbell@forkersuter.com

Roger L. Falk     roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey     dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer     mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt     jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan     carl@mandmattorneys.com

Aaron L. Smith     aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara     ohara@oharaohara.com

Edward L. Robinson     erobinson@josephhollander.com, julie@josephhollander.com,

meaghan@josephhollander.com

Michael J. Shultz    michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon    molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman    joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon    jshannon@hinklaw.com

**6:12–cr–10089–MLB–5 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–6 Notice has been electronically mailed to:**

Mark L. Bennett, Jr    mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler    jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith    jlgriffithlaw@aol.com

Eric A. Hartenstein    erichartenstein@att.net

Michael D. Hepperly    mhepperly@aol.com

Paul S. McCausland    p.mccausland@youngboglelaw.com

David H. Moses    dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara    ohara@oharaohara.com

Mark A. Sevart    markchrissevart@yahoo.com

Lanny D. Welch    lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler    kloeffler@lawyer.com

John V. Wachtel    jvwachtel@klendalaw.com

David M. Rapp    drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty    s@mcenultylawfirm.com

Timothy J. Henry    Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell    gbell@forkersuter.com

Roger L. Falk    roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey    dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer    mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt    jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan    carl@mandmattorneys.com

Aaron L. Smith    aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara    ohara@oharaohara.com

Edward L. Robinson    erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz    michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon    molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman    joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon    jshannon@hinklaw.com

**6:12–cr–10089–MLB–6 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–7 Notice has been electronically mailed to:**

Mark L. Bennett, Jr    mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler    jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith    jlgriffithlaw@aol.com

Eric A. Hartenstein    erichartenstein@att.net

Michael D. Hepperly    mhepperly@aol.com

Paul S. McCausland    p.mccausland@youngboglelaw.com

David H. Moses    dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara    ohara@oharaohara.com

Mark A. Sevart    markchrissevart@yahoo.com

Lanny D. Welch    lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler    kloeffler@lawyer.com

John V. Wachtel    jvwachtel@klendalaw.com

David M. Rapp    drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty    s@mcenultylawfirm.com

Timothy J. Henry    Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell    gbell@forkersuter.com

Roger L. Falk    roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey    dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer    mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt    jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan    carl@mandmattorneys.com

Aaron L. Smith    aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara    ohara@oharaohara.com

Edward L. Robinson    erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz    michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon    molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman    joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon    jshannon@hinklaw.com

**6:12−cr−10089−MLB−7 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−8 Notice has been electronically mailed to:**

Mark L. Bennett, Jr    mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler    jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith    jlgriffithlaw@aol.com

Eric A. Hartenstein    erichartenstein@att.net

Michael D. Hepperly    mhepperly@aol.com

Paul S. McCausland    p.mccausland@youngboglelaw.com

David H. Moses    dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara     ohara@oharaohara.com

Mark A. Sevart     markchrissevart@yahoo.com

Lanny D. Welch     lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler     kloeffler@lawyer.com

John V. Wachtel     jvwachtel@klendalaw.com

David M. Rapp     drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty     s@mcenultylawfirm.com

Timothy J. Henry     Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell     gbell@forkersuter.com

Roger L. Falk     roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net,
ianm_clark@sbcglobal.net

Derek S. Casey     dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer     mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt     jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan     carl@mandmattorneys.com

Aaron L. Smith     aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara     ohara@oharaohara.com

Edward L. Robinson     erobinson@josephhollander.com, julie@josephhollander.com,
meaghan@josephhollander.com

Michael J. Shultz     michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon     molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman     joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon     jshannon@hinklaw.com

**6:12–cr–10089–MLB–8 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–9 Notice has been electronically mailed to:**

Mark L. Bennett, Jr     mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler     jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith     jlgriffithlaw@aol.com

Eric A. Hartenstein     erichartenstein@att.net

Michael D. Hepperly     mhepperly@aol.com

Paul S. McCausland     p.mccausland@youngboglelaw.com

David H. Moses     dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara     ohara@oharaohara.com

Mark A. Sevart     markchrissevart@yahoo.com

Lanny D. Welch     lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler     kloeffler@lawyer.com

John V. Wachtel     jvwachtel@klendalaw.com

David M. Rapp     drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty     s@mcenultylawfirm.com

Timothy J. Henry     Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell     gbell@forkersuter.com

Roger L. Falk     roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net,
ianm_clark@sbcglobal.net

Derek S. Casey     dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer     mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt     jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan     carl@mandmattorneys.com

Aaron L. Smith     aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara     ohara@oharaohara.com

Edward L. Robinson     erobinson@josephhollander.com, julie@josephhollander.com,
meaghan@josephhollander.com

Michael J. Shultz     michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon     molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman     joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon     jshannon@hinklaw.com

**6:12−cr−10089−MLB−9 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−10 Notice has been electronically mailed to:**

Mark L. Bennett, Jr     mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler     jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith     jlgriffithlaw@aol.com

Eric A. Hartenstein     erichartenstein@att.net

Michael D. Hepperly     mhepperly@aol.com

Paul S. McCausland     p.mccausland@youngboglelaw.com

David H. Moses     dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara     ohara@oharaohara.com

Mark A. Sevart     markchrissevart@yahoo.com

Lanny D. Welch     lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler     kloeffler@lawyer.com

John V. Wachtel     jvwachtel@klendalaw.com

David M. Rapp     drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty     s@mcenultylawfirm.com

Timothy J. Henry     Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell     gbell@forkersuter.com

Roger L. Falk     roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey     dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer     mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt     jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan    carl@mandmattorneys.com

Aaron L. Smith    aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara    ohara@oharaohara.com

Edward L. Robinson    erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz    michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon    molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman    joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon    jshannon@hinklaw.com

**6:12–cr–10089–MLB–10 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–11 Notice has been electronically mailed to:**

Mark L. Bennett, Jr    mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler    jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith    jlgriffithlaw@aol.com

Eric A. Hartenstein    erichartenstein@att.net

Michael D. Hepperly    mhepperly@aol.com

Paul S. McCausland    p.mccausland@youngboglelaw.com

David H. Moses    dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara    ohara@oharaohara.com

Mark A. Sevart    markchrissevart@yahoo.com

Lanny D. Welch    lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler    kloeffler@lawyer.com

John V. Wachtel    jvwachtel@klendalaw.com

David M. Rapp    drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty    s@mcenultylawfirm.com

Timothy J. Henry    Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,

lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell      gbell@forkersuter.com

Roger L. Falk      roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey      dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer      mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt      jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan      carl@mandmattorneys.com

Aaron L. Smith      aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara      ohara@oharaohara.com

Edward L. Robinson      erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz      michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon      molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman      joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon      jshannon@hinklaw.com

**6:12−cr−10089−MLB−11 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−12 Notice has been electronically mailed to:**

Mark L. Bennett, Jr      mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler      jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith      jlgriffithlaw@aol.com

Eric A. Hartenstein      erichartenstein@att.net

Michael D. Hepperly      mhepperly@aol.com

Paul S. McCausland      p.mccausland@youngboglelaw.com

David H. Moses      dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara      ohara@oharaohara.com

Mark A. Sevart      markchrissevart@yahoo.com

Lanny D. Welch     lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler     kloeffler@lawyer.com

John V. Wachtel     jvwachtel@klendalaw.com

David M. Rapp     drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty     s@mcenultylawfirm.com

Timothy J. Henry     Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell     gbell@forkersuter.com

Roger L. Falk     roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey     dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer     mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt     jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan     carl@mandmattorneys.com

Aaron L. Smith     aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara     ohara@oharaohara.com

Edward L. Robinson     erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz     michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon     molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman     joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon     jshannon@hinklaw.com

**6:12–cr–10089–MLB–12 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–13 Notice has been electronically mailed to:**

Mark L. Bennett, Jr     mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler     jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith     jlgriffithlaw@aol.com

983

Eric A. Hartenstein    erichartenstein@att.net

Michael D. Hepperly    mhepperly@aol.com

Paul S. McCausland    p.mccausland@youngboglelaw.com

David H. Moses    dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara    ohara@oharaohara.com

Mark A. Sevart    markchrissevart@yahoo.com

Lanny D. Welch    lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler    kloeffler@lawyer.com

John V. Wachtel    jvwachtel@klendalaw.com

David M. Rapp    drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty    s@mcenultylawfirm.com

Timothy J. Henry    Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell    gbell@forkersuter.com

Roger L. Falk    roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net,
ianm_clark@sbcglobal.net

Derek S. Casey    dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer    mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt    jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan    carl@mandmattorneys.com

Aaron L. Smith    aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara    ohara@oharaohara.com

Edward L. Robinson    erobinson@josephhollander.com, julie@josephhollander.com,
meaghan@josephhollander.com

Michael J. Shultz    michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon    molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman    joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon    jshannon@hinklaw.com

**6:12–cr–10089–MLB–13 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–14 Notice has been electronically mailed to:**

Mark L. Bennett, Jr    mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler    jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith    jlgriffithlaw@aol.com

Eric A. Hartenstein    erichartenstein@att.net

Michael D. Hepperly    mhepperly@aol.com

Paul S. McCausland    p.mccausland@youngboglelaw.com

David H. Moses    dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara    ohara@oharaohara.com

Mark A. Sevart    markchrissevart@yahoo.com

Lanny D. Welch    lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler    kloeffler@lawyer.com

John V. Wachtel    jvwachtel@klendalaw.com

David M. Rapp    drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty    s@mcenultylawfirm.com

Timothy J. Henry    Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell    gbell@forkersuter.com

Roger L. Falk    roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey    dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer    mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt    jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan    carl@mandmattorneys.com

Aaron L. Smith    aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara    ohara@oharaohara.com

Edward L. Robinson    erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz    michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon    molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman    joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon    jshannon@hinklaw.com

**6:12–cr–10089–MLB–14 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–15 Notice has been electronically mailed to:**

Mark L. Bennett, Jr    mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler    jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith    jlgriffithlaw@aol.com

Eric A. Hartenstein    erichartenstein@att.net

Michael D. Hepperly    mhepperly@aol.com

Paul S. McCausland    p.mccausland@youngboglelaw.com

David H. Moses    dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara    ohara@oharaohara.com

Mark A. Sevart    markchrissevart@yahoo.com

Lanny D. Welch    lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler    kloeffler@lawyer.com

John V. Wachtel    jvwachtel@klendalaw.com

David M. Rapp    drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty    s@mcenultylawfirm.com

Timothy J. Henry    Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell    gbell@forkersuter.com

Roger L. Falk    roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey    dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer    mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt    jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan    carl@mandmattorneys.com

Aaron L. Smith    aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara    ohara@oharaohara.com

Edward L. Robinson    erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz    michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon    molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman    joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon    jshannon@hinklaw.com

**6:12–cr–10089–MLB–15 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–16 Notice has been electronically mailed to:**

Mark L. Bennett, Jr    mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler    jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith    jlgriffithlaw@aol.com

Eric A. Hartenstein    erichartenstein@att.net

Michael D. Hepperly    mhepperly@aol.com

Paul S. McCausland    p.mccausland@youngboglelaw.com

David H. Moses    dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara    ohara@oharaohara.com

Mark A. Sevart    markchrissevart@yahoo.com

Lanny D. Welch    lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler    kloeffler@lawyer.com

John V. Wachtel    jvwachtel@klendalaw.com

David M. Rapp    drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty    s@mcenultylawfirm.com

Timothy J. Henry    Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell    gbell@forkersuter.com

Roger L. Falk    roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey    dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer    mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt    jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan    carl@mandmattorneys.com

Aaron L. Smith    aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara    ohara@oharaohara.com

Edward L. Robinson    erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz    michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon    molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman    joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon    jshannon@hinklaw.com

**6:12–cr–10089–MLB–16 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–17 Notice has been electronically mailed to:**

Mark L. Bennett, Jr    mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler    jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith    jlgriffithlaw@aol.com

Eric A. Hartenstein    erichartenstein@att.net

Michael D. Hepperly    mhepperly@aol.com

Paul S. McCausland   p.mccausland@youngboglelaw.com

David H. Moses   dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara   ohara@oharaohara.com

Mark A. Sevart   markchrissevart@yahoo.com

Lanny D. Welch   lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler   kloeffler@lawyer.com

John V. Wachtel   jvwachtel@klendalaw.com

David M. Rapp   drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty   s@mcenultylawfirm.com

Timothy J. Henry   Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell   gbell@forkersuter.com

Roger L. Falk   roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey   dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer   mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt   jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan   carl@mandmattorneys.com

Aaron L. Smith   aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara   ohara@oharaohara.com

Edward L. Robinson   erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz   michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon   molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman   joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon   jshannon@hinklaw.com

**6:12−cr−10089−MLB−17 Notice has been delivered by other means to:**

**6:12−cr−10089−MLB−18 Notice has been electronically mailed to:**

Mark L. Bennett, Jr    mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler    jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith    jlgriffithlaw@aol.com

Eric A. Hartenstein    erichartenstein@att.net

Michael D. Hepperly    mhepperly@aol.com

Paul S. McCausland    p.mccausland@youngboglelaw.com

David H. Moses    dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara    ohara@oharaohara.com

Mark A. Sevart    markchrissevart@yahoo.com

Lanny D. Welch    lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler    kloeffler@lawyer.com

John V. Wachtel    jvwachtel@klendalaw.com

David M. Rapp    drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty    s@mcenultylawfirm.com

Timothy J. Henry    Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell    gbell@forkersuter.com

Roger L. Falk    roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey    dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer    mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt    jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan    carl@mandmattorneys.com

Aaron L. Smith    aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara    ohara@oharaohara.com

Edward L. Robinson    erobinson@josephhollander.com, julie@josephhollander.com,

meaghan@josephhollander.com

Michael J. Shultz     michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon     molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman     joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon     jshannon@hinklaw.com

**6:12–cr–10089–MLB–18 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–19 Notice has been electronically mailed to:**

Mark L. Bennett, Jr     mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler     jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith     jlgriffithlaw@aol.com

Eric A. Hartenstein     erichartenstein@att.net

Michael D. Hepperly     mhepperly@aol.com

Paul S. McCausland     p.mccausland@youngboglelaw.com

David H. Moses     dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara     ohara@oharaohara.com

Mark A. Sevart     markchrissevart@yahoo.com

Lanny D. Welch     lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler     kloeffler@lawyer.com

John V. Wachtel     jvwachtel@klendalaw.com

David M. Rapp     drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty     s@mcenultylawfirm.com

Timothy J. Henry     Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell     gbell@forkersuter.com

Roger L. Falk     roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net,
ianm_clark@sbcglobal.net

Derek S. Casey     dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer    mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt    jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan    carl@mandmattorneys.com

Aaron L. Smith    aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara    ohara@oharaohara.com

Edward L. Robinson    erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz    michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon    molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman    joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon    jshannon@hinklaw.com

**6:12–cr–10089–MLB–19 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–20 Notice has been electronically mailed to:**

Mark L. Bennett, Jr    mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler    jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith    jlgriffithlaw@aol.com

Eric A. Hartenstein    erichartenstein@att.net

Michael D. Hepperly    mhepperly@aol.com

Paul S. McCausland    p.mccausland@youngboglelaw.com

David H. Moses    dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara    ohara@oharaohara.com

Mark A. Sevart    markchrissevart@yahoo.com

Lanny D. Welch    lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler    kloeffler@lawyer.com

John V. Wachtel    jvwachtel@klendalaw.com

David M. Rapp    drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty     s@mcenultylawfirm.com

Timothy J. Henry     Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell     gbell@forkersuter.com

Roger L. Falk     roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey     dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer     mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt     jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan     carl@mandmattorneys.com

Aaron L. Smith     aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara     ohara@oharaohara.com

Edward L. Robinson     erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz     michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon     molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman     joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon     jshannon@hinklaw.com

**6:12–cr–10089–MLB–20 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–21 Notice has been electronically mailed to:**

Mark L. Bennett, Jr     mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler     jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith     jlgriffithlaw@aol.com

Eric A. Hartenstein     erichartenstein@att.net

Michael D. Hepperly     mhepperly@aol.com

Paul S. McCausland     p.mccausland@youngboglelaw.com

David H. Moses     dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara     ohara@oharaohara.com

Mark A. Sevart     markchrissevart@yahoo.com

Lanny D. Welch     lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler     kloeffler@lawyer.com

John V. Wachtel     jvwachtel@klendalaw.com

David M. Rapp     drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty     s@mcenultylawfirm.com

Timothy J. Henry     Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell     gbell@forkersuter.com

Roger L. Falk     roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net,
ianm_clark@sbcglobal.net

Derek S. Casey     dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer     mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt     jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan     carl@mandmattorneys.com

Aaron L. Smith     aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara     ohara@oharaohara.com

Edward L. Robinson     erobinson@josephhollander.com, julie@josephhollander.com,
meaghan@josephhollander.com

Michael J. Shultz     michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon     molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman     joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon     jshannon@hinklaw.com

**6:12–cr–10089–MLB–21 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–22 Notice has been electronically mailed to:**

Mark L. Bennett, Jr     mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler     jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith     jlgriffithlaw@aol.com

Eric A. Hartenstein     erichartenstein@att.net

Michael D. Hepperly     mhepperly@aol.com

Paul S. McCausland     p.mccausland@youngboglelaw.com

David H. Moses     dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara     ohara@oharaohara.com

Mark A. Sevart     markchrissevart@yahoo.com

Lanny D. Welch     lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler     kloeffler@lawyer.com

John V. Wachtel     jvwachtel@klendalaw.com

David M. Rapp     drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty     s@mcenultylawfirm.com

Timothy J. Henry     Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell     gbell@forkersuter.com

Roger L. Falk     roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net,
ianm_clark@sbcglobal.net

Derek S. Casey     dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer     mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt     jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan     carl@mandmattorneys.com

Aaron L. Smith     aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara     ohara@oharaohara.com

Edward L. Robinson     erobinson@josephhollander.com, julie@josephhollander.com,
meaghan@josephhollander.com

Michael J. Shultz     michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon    molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman    joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon    jshannon@hinklaw.com

**6:12–cr–10089–MLB–22 Notice has been delivered by other means to:**

**6:12–cr–10089–MLB–23 Notice has been electronically mailed to:**

Mark L. Bennett, Jr    mark@mlbjrlaw.com, dana@mlbjrlaw.com

Jay F. Fowler    jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith    jlgriffithlaw@aol.com

Eric A. Hartenstein    erichartenstein@att.net

Michael D. Hepperly    mhepperly@aol.com

Paul S. McCausland    p.mccausland@youngboglelaw.com

David H. Moses    dmoses@cmzwlaw.com, heather@cmzwlaw.com

Charles A. O'Hara    ohara@oharaohara.com

Mark A. Sevart    markchrissevart@yahoo.com

Lanny D. Welch    lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Kevin W. Loeffler    kloeffler@lawyer.com

John V. Wachtel    jvwachtel@klendalaw.com

David M. Rapp    drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Sean C. McEnulty    s@mcenultylawfirm.com

Timothy J. Henry    Tim_Henry@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Gregory D. Bell    gbell@forkersuter.com

Roger L. Falk    roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net, dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Derek S. Casey    dscasey@twgfirm.com, JODownum@twgfirm.com

Mark T. Schoenhofer    mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

James R. Pratt    jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Carl Fredrick A. Maughan     carl@mandmattorneys.com

Aaron L. Smith     aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Christopher S. O'Hara     ohara@oharaohara.com

Edward L. Robinson     erobinson@josephhollander.com, julie@josephhollander.com, meaghan@josephhollander.com

Michael J. Shultz     michael@shultzlaw.net, lura@shultzlaw.net

Molly M. Gordon     molly@depewgillen.com, karin@depewgillen.com

Joel Mandelman     joel_mandelman@fd.org, beth_two_hatchett@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

Jessica M. Shannon     jshannon@hinklaw.com

**6:12–cr–10089–MLB–23 Notice has been delivered by other means to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 12-CR-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S OBJECTIONS TO THE "DISCLOSURE BY THE UNITED STATES OF EVIDENCE TO BE PRESENTED" [Doc. 633]**

COMES NOW Defendant Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby submits this memorandum in support of his motion for specific discovery related to street gangs in Dodge City, Kansas.

### I. Factual Background

1. Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains thirty-eight alleged separate violations of federal criminal law. (Doc. 1.)

2. COUNT 1, inter alia, charges Defendant Garcia, along with Jason Najera, Gonzalo Ramirez, Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together with persons known and unknown, being persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c) ... [a]ll in violation of 18 U.S.C. § 1962(d)." *Id.*

2. COUNT 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright with the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5). *Id.*

3.  COUNT 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering.  It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1).  *Id.*

4.  COUNT 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1).  *Id.*

5.  COUNT 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3).  *Id.*

6.  COUNT 6, charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A).  *Id.*

7.  COUNT 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3).  COUNT 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6).  COUNT 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A).  *Id.*

8.  On May 10, 2013, the government filed its Disclosure by the United States of Evidence to be Presented (Doc. 633) (hereinafter "Disclosure").  This filing was made by the government pursuant to an order of this Court directing the government to provide notice of any Rule 404(b) evidence which it will seek to admit against the defendants herein.  In the Disclosure, with respect to Mr. Garcia, the government sets out at Section A(1), four "RICO Predicates."  The Disclosure goes on in Section A(2) to identify eleven acts which it describes as "Enterprise Evidence."  With respect to Mr. Garcia, the government does not identify any conduct which it specifically describes as Rule 404(b) evidence; although with respect to many of the co-defendants, the government identifies what it calls "Rule 404(b) Evidence."  However, with respect to Gonzalo Ramirez, the government does designate one instance of Rule 404(b) conduct, to-wit:  "i.  2009 - Discharged a firearm at Jose

2

Alvarez/Ricardo Gomez, rival gang members.'  Disclosure p. 4.  What the government identifies as

404(b) conduct with respect to Mr. Ramirez sounds somewhat similar as conduct which is referenced

regarding Mr. Garcia in what the government identifies as "Enterprise Evidence."

## II.  Argument and Authorities

Rule 404(b) provides as follows:

> **(b) Crimes, Wrongs, or Other Acts**.
> **(1) Prohibited Uses**. Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> **(2) Permitted Uses; notice in a Criminal Case**.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. ...

Fed. R. Evid., 404(b) (emphasis in the original).        Rule 404(b) however, cannot be read in a

vacuum, and must be considered in the light of Rule 403, which provides:  "The court may exclude

relevant evidence if its probative value is substantially outweighed by a danger of one or more of the

following:  unfair prejudice, confusing the issues, misleading the jury, undue delay wasting time, or

needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  In light of Rule 403, Mr. Garcia

treats the alleged "Enterprise Evidence" as 404(b) evidence.

Paragraphs i, ii, and iii are all alleged admissions by Mr. Garcia to being a DV.  The conduct

in those paragraphs should be disallowed as being more prejudicial than probative.  The same is true

with respect to the conduct set out in paragraphs v, vi, vii, viii, ix and x.

The government also simply states in paragraph xi, that Mr. Garcia "distributed controlled

substances."  Interestingly enough, it appears to Mr. Garcia that the conduct described in xi is more

likely 404(b) evidence.  It should be omitted under Rule 403 as more prejudicial than probative,

misleading, and because it confuses the issues.

Paragraph  iv notes that Mr. Garcia, on November 6, 2009, was a felon in possession, and

<div align="center">3</div>

that he threatened witnesses not to testify against Nortenos. This conduct is not 404(b) evidence because it does not prove any of the uses permitted by the rule, and is more likely offered to prove that Mr. Garcia, on a particular occasion, acted in accordance with what the government believes his character is.

Accordingly, Mr. Garcia prays that the Court disallow the conduct that is in violation of Rules 403 and 404(b).

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail: jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2013 I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

KMAZ Doc. 21E6269

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT PEDRO GARCIA'S OBJECTIONS TO ADMISSION OF EVIDENCE IDENTIFIED IN "DISCLOSURE BY THE UNITED STATES OF EVIDENCE TO BE PRESENTED" (DOC. 633) AND MOTION TO EXCLUDE

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby provides notice of his objection to the intention of the Unites States to seek admission of certain evidence pursuant to Rule 404(b) and as set out in the government's Disclosure by the United States of Evidence to be Presented (Doc. 633) (hereinafter "Disclosure") and also moves the Court for an order precluding the government from introducing evidence of any prior convictions, other crimes, wrongs or bad acts of Mr. Garcia.

### Factual Background

1. Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains thirty-eight alleged separate violations of federal criminal law. (Doc. 1.)

2. COUNT 1, inter alia, charges the defendant, along with Jason Najera, Gonzalo Ramirez, Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together with persons known and unknown, being persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce,

knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c) . . . [a]ll in violation of 18 U.S.C. § 1962(d)." *Id.*

2. COUNT 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright with the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5). *Id.*

3. COUNT 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering. It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1). *Id.*

4. COUNT 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1). *Id.*

5. COUNT 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3). *Id.*

6. COUNT 6, charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

7. COUNT 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3). COUNT 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6). COUNT 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

8. In its Disclosure, with respect to Mr. Garcia, the government lists four "Rico Predicates," certain of which are addressed more fully below. In addition, the Disclosure contains eleven alleged incidents of what the government calls "Enterprise Evidence," which are also addressed below.

### Argument and Authorities

Evidence of other crimes or bad acts is admissible under Rule 404(b) if four factors are satisfied. The factors are (1) such evidence must be introduced for a proper purpose; (2) the

2

evidence must be relevant; (3) the court must make a Rule 403 determination of whether the probative value of the similar act is substantially outweighed by its potential for unfair prejudice; and (4) upon request the court must instruct the jury that the evidence of similar acts is to be considered only for the limited purpose for which it was admitted. *United States v. Farr*, 701 F.3d 1274, 1280 (10th Cir. 2012).

In addition, under Rule 404(b), evidence of a defendant's prior crimes, wrongs, or acts is not admissible to prove character and that an accused acted in conformity therewith. Such evidence may; however, be offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Fed. R. Evid. 404(b). It has been said that the rule is one of inclusion rather than exclusion unless the evidence is offered for an impermissible purpose or is unduly prejudicial. *United States v. Segien*, 114 F.3d 1014, 1022 (10th Cir. 1997). Additionally, the government must precisely articulate the purpose or purposes for which the evidence is to be admitted. *United States v. Hardwell*, 80 F.3d 1471, 1488 (10th Cir. 1996).

A. <u>RICO Predicates</u>

The government identifies in its disclosure four "RICO Predicates." See Disclosure, Doc. 633 at paragraph A. Predicates iii and iv simply identify Counts 2 through 4 of the Indictment and Counts 7 and 8 of the indictment. Alleged predicate act "i" states "12/28/04 - Sale of Opiates." The government cites no conviction or other information about the predicate act identified in "i." Mr. Garcia advises the Court that in 2004, he was a teenager and he was convicted in Juvenile Court of a felony drug crime. That conviction is not admissible in this case under Rule 404. Mr. Garcia calls the Court's attention to the Indictment (Doc. 1), and specifically to Count 1, ¶ 7. That paragraph specifically alleges that:

On or about and between 2008 through the date of this indictment, both dates being

approximate and inclusive, within the District of Kansas and elsewhere [certain defendants including Mr. Garcia] together with persons known and unknown, being persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities of which affected, interstate commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity . . . .

Indictment, Count 1, ¶ 7 (emphasis omitted).  What relevance to the present case does conduct engaged in by Mr. Garcia, in 2004, when he was a teenager have to proving a RICO conspiracy? The simple answer is "None."

The government's Disclosure at paragraph "iv", with respect to "Predicates," the government wrote:  "2008-2010 - Pedro Garcia distributed controlled substances."  *Id*. at (iv).  Mr. Garcia advises the Court that during all of 2008, most of 2009 and all of 2010, he was imprisoned.  He was released from prison for a short time during 2009.  The government's predicate may be admissible under Rule 404, but the defendant cannot see for what purpose the government seeks to admit the 'evidence' which is allowable under the Rule.

B.  Enterprise Evidence

In section 2 of its Disclosure, with respect to Mr. Garcia, the government identifies some eleven instances of conduct which it identifies as "Enterprise Evidence.  Subparagraphs (i) thorough (iii) allege that Mr. Garcia admitted on August 9, 2003, March 3, 2009, and June 19, 2009 an "affiliation with DV."  These 'admissions' are of uncharged conduct.

Subparagraph (iv) alleges information about the felon in possession charge of which Mr. Garcia was convicted and for which he is presently imprisoned.  It is, in sum and substance, the same RICO Predicate alleged in Paragraph A of the Disclosure.

Subsection (v) reads as follows:  "01/18/10 - Informant advises DCPD that Garcia is still active with DV."  That may or may not be so, and perhaps the Court will never know unless the

4

government produces the informant.

Subparagraphs (vi) through (x) are instances in which it is alleged that Mr. Garcia admitted to the Federal Bureau of Prisons that he was affiliated with the Nortenos. These 'admissions' stem out of the allegations contained in subparagraph (vii) which informs that on September 6, 2011, Mr. Garcia was involved in an "altercation with the Surenos while in federal prison." These admissions all stem from the altercation, which was an attack upon Mr. Garcia and from which he only defended himself. Following the attack, Mr. Garcia identified himself as a Norteno, so that he would not be incarcerated with Surenos whom he felt constituted a danger to him.

Subparagraph (xi) contains the same allegations which were set out as a RICO predicate in section (A)(ii). This allegation (xi) has been fully discussed hereinabove.

## Conclusion

The evidence discussed above is of a kind particularly prohibited by Rule 404(b). The government seeks to introduce this evidence for the sole purpose of drawing the inference that because Mr. Garcia may have committed certain acts or associated in any capacity with certain people in the past, he must therefore be guilty of the crimes charged in the Indictment. The government must be prohibited from introducing such evidence without first showing in a pre-trial hearing that each of the alleged incidents or claims are relevant to prove motive, intent, opportunity, preparation, plan, knowledge, identity or lack of mistake or accident. Moreover, admission of the conduct described is more prejudicial than it is probative and must not be allowed.

For the reasons set out hereinabove and based upon the authorities cited, Mr. Garcia requests that the government be prohibited from admitting the conduct attributed to Mr. Garcia as evidence in the upcoming trial. In addition, Mr. Garcia requests a pretrial hearing in order that the government might be compelled to identify the purpose for which the described conduct is admitted.

5

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2013 I electronically filed the foregoing by using the

CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

Doc. 21I9960

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S OBJECTIONS TO ADMISSION OF EVIDENCE
IDENTIFIED IN "DISCLOSURE BY THE UNITED STATES OF EVIDENCE TO BE
PRESENTED" (DOC. 633) AND MOTION TO EXCLUDE**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John

Val Wachtel of Klenda Austerman LLC, and hereby provides notice of his objection to the intention

of the Unites States to seek admission of certain evidence pursuant to Rule 404(b) and as set out in

the government's Disclosure by the United States of Evidence to be Presented (Doc. 633) (hereinafter

"Disclosure") and also moves the Court for an order precluding the government from introducing

evidence of any prior convictions, other crimes, wrongs or bad acts of Mr. Garcia.

**Factual Background**

1. Mr. Garcia and twenty-two other defendants are charged in an Indictment which contains

thirty-eight alleged separate violations of federal criminal law. (Doc. 1.)

2. COUNT 1, inter alia, charges the defendant, along with Jason Najera, Gonzalo Ramirez,

Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jason Vargas and Fabian Neave, "together

with persons known and unknown, being persons associated with the Nortenos street gang, an

enterprise which engaged in, and the activities of which affected, interstate and foreign commerce,

knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c) . . . [a]ll in violation of 18 U.S.C. § 1962(d)." *Id.*

2. COUNT 2 charges Mr. Garcia, Gonzalo Ramirez, Russell Worthey and Anthony Wright with the murder of Israel Peralta, in violation of 18 U.S.C. § 1959(a)(5). *Id.*

3. COUNT 3 charges these four defendants, and others known and unknown, with having committed violent crimes in aid of racketeering. It is further alleged that these defendants committed those crimes "for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959(a)(1). *Id.*

4. COUNT 4 charges these four defendants with an additional violation of 18 U.S.C. § 1959(a)(1). *Id.*

5. COUNT 5, charges these four defendants with having violated 18 U.S.C. § 1959(a)(3). *Id.*

6. COUNT 6, charges these four defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

7. COUNT 7 charges Mr. Garcia, Gonzalo Ramirez, Joshua Flores and Jesus Flores with an additional count of having violated 18 U.S.C. § 1959(a)(3). COUNT 8, charges these same defendants with having violated 18 U.S.C. § 1962(a)(6). COUNT 9, charges these same defendants with having violated 18 U.S.C. § 924(c)(1)(A). *Id.*

8. In its Disclosure, with respect to Mr. Garcia, the government lists four "Rico Predicates," certain of which are addressed more fully below. In addition, the Disclosure contains eleven alleged incidents of what the government calls "Enterprise Evidence," which are also addressed below.

### Argument and Authorities

Evidence of other crimes or bad acts is admissible under Rule 404(b) if four factors are satisfied. The factors are (1) such evidence must be introduced for a proper purpose; (2) the

2

evidence must be relevant; (3) the court must make a Rule 403 determination of whether the probative value of the similar act is substantially outweighed by its potential for unfair prejudice; and (4) upon request the court must instruct the jury that the evidence of similar acts is to be considered only for the limited purpose for which it was admitted. *United States v. Farr*, 701 F.3d 1274, 1280 (10th Cir. 2012).

In addition, under Rule 404(b), evidence of a defendant's prior crimes, wrongs, or acts is not admissible to prove character and that an accused acted in conformity therewith. Such evidence may; however, be offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Fed. R. Evid. 404(b). It has been said that the rule is one of inclusion rather than exclusion unless the evidence is offered for an impermissible purpose or is unduly prejudicial. *United States v. Segien*, 114 F.3d 1014, 1022 (10th Cir. 1997). Additionally, the government must precisely articulate the purpose or purposes for which the evidence is to be admitted. *United States v. Hardwell*, 80 F.3d 1471, 1488 (10th Cir. 1996).

A. <u>RICO Predicates</u>

The government identifies in its disclosure four "RICO Predicates." See Disclosure, Doc. 633 at paragraph A. Predicates iii and iv simply identify Counts 2 through 4 of the Indictment and Counts 7 and 8 of the indictment. Alleged predicate act "i" states "12/28/04 - Sale of Opiates." The government cites no conviction or other information about the predicate act identified in "i." Mr. Garcia advises the Court that in 2004, he was a teenager and he was convicted in Juvenile Court of a felony drug crime. That conviction is not admissible in this case under Rule 404. Mr. Garcia calls the Court's attention to the Indictment (Doc. 1), and specifically to Count 1, ¶ 7. That paragraph specifically alleges that:

On or about and between 2008 through the date of this indictment, both dates being

3

approximate and inclusive, within the District of Kansas and elsewhere [certain defendants including Mr. Garcia] together with persons known and unknown, being persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities of which affected, interstate commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity . . . .

Indictment, Count 1, ¶ 7 (emphasis omitted). What relevance to the present case does conduct engaged in by Mr. Garcia, in 2004, when he was a teenager have to proving a RICO conspiracy? The simple answer is "None."

The government's Disclosure at paragraph "iv", with respect to "Predicates," the government wrote: "2008-2010 - Pedro Garcia distributed controlled substances." *Id*. at (iv). Mr. Garcia advises the Court that during all of 2008, most of 2009 and all of 2010, he was imprisoned. He was released from prison for a short time during 2009. The government's predicate may be admissible under Rule 404, but the defendant cannot see for what purpose the government seeks to admit the 'evidence' which is allowable under the Rule.

   B.  Enterprise Evidence

In section 2 of its Disclosure, with respect to Mr. Garcia, the government identifies some eleven instances of conduct which it identifies as "Enterprise Evidence. Subparagraphs (i) thorough (iii) allege that Mr. Garcia admitted on August 9, 2003, March 3, 2009, and June 19, 2009 an "affiliation with DV." These 'admissions' are of uncharged conduct.

Subparagraph (iv) alleges information about the felon in possession charge of which Mr. Garcia was convicted and for which he is presently imprisoned. It is, in sum and substance, the same RICO Predicate alleged in Paragraph A of the Disclosure.

Subsection (v) reads as follows: "01/18/10 - Informant advises DCPD that Garcia is still active with DV." That may or may not be so, and perhaps the Court will never know unless the

4

government produces the informant.

Subparagraphs (vi) through (x) are instances in which it is alleged that Mr. Garcia admitted to the Federal Bureau of Prisons that he was affiliated with the Nortenos. These 'admissions' stem out of the allegations contained in subparagraph (vii) which informs that on September 6, 2011, Mr. Garcia was involved in an "altercation with the Surenos while in federal prison." These admissions all stem from the altercation, which was an attack upon Mr. Garcia and from which he only defended himself. Following the attack, Mr. Garcia identified himself as a Norteno, so that he would not be incarcerated with Surenos whom he felt constituted a danger to him.

Subparagraph (xi) contains the same allegations which were set out as a RICO predicate in section (A)(ii). This allegation (xi) has been fully discussed hereinabove.

### Conclusion

The evidence discussed above is of a kind particularly prohibited by Rule 404(b). The government seeks to introduce this evidence for the sole purpose of drawing the inference that because Mr. Garcia may have committed certain acts or associated in any capacity with certain people in the past, he must therefore be guilty of the crimes charged in the Indictment. The government must be prohibited from introducing such evidence without first showing in a pre-trial hearing that each of the alleged incidents or claims are relevant to prove motive, intent, opportunity, preparation, plan, knowledge, identity or lack of mistake or accident. Moreover, admission of the conduct described is more prejudicial than it is probative and must not be allowed.

For the reasons set out hereinabove and based upon the authorities cited, Mr. Garcia requests that the government be prohibited from admitting the conduct attributed to Mr. Garcia as evidence in the upcoming trial. In addition, Mr. Garcia requests a pretrial hearing in order that the government might be compelled to identify the purpose for which the described conduct is admitted.

5

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2013 I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

Doc. 21I9960

6

AO 245C   (Rev. 09/11 - D/KS 08/12) Amended Judgment in a Criminal Case         (NOTE:  Identify Changes with Asterisks (*))
Sheet 1

# United States District Court
## District of Kansas

UNITED STATES OF AMERICA                    **AMENDED JUDGMENT IN A CRIMINAL CASE**
v.

Jose  Neave                                 Case Number:  6:12CR10089 - 021

                                            USM Number:  22111-031

**Date of Original Judgment:**    **07/08/13**    Defendant's Attorney:  Kevin W. Loeffler
(Or Date of Last Amended Judgment)

**Reason for Amendment:**

[ ]  Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))      [ ]  Modification of Supervision Conditions (18 U.S.C § 3563© or 3583(e))
[ ]  Reduction of Sentence for Changed Circumstances (Fed. R.Crim.P.35(b))   [ ]  Modification of Imposed Term of Imprisonment for Extraordinary and
[ ]  Correction of Sentence by Sentencing Court (Fed.R.Crim.P.35(a))             Compelling Reasons (18 U.S.C. §3582(c)(1))
[x]  Correction of Sentence for Clerical Mistake (Fed.R.Crim.P.36)        [ ]  Modification of Imposed Term of Imprisonment for Retroactive
                                                                             Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))
                                                                          [ ]  Direct Motion to District Court Pursuant to  [ ]  28 U.S.C. § 2255, or
                                                                                                                         [ ]  18 U.S.C. § 3559(c)(7)
                                                                          [ ]  Modification of Restitution Order (18 U.S.C. § 3664)

**THE DEFENDANT:**

☒     pleaded guilty to count: 26 of the Indictment.

☐     pleaded nolo contendere to count(s) ___ which was accepted by the court.

☐     was found guilty on count(s) ___ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1959(a)(5) | VIOLENT CRIMES IN AID OF RACKETEERING-ATTEMPTED MURDER, a Class C Felony | 08/27/2011 | 26 |

     The defendant is sentenced as provided in pages 1 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐     The defendant has been found not guilty on count(s) ___.

☒     Count ___ is dismissed on the motion of the United States.

     IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

                                            *07/11/2013
                                            Date of Imposition of Judgment

                                            s/ Monti Belot
                                            Signature of Judge

                                            Honorable Monti L. Belot, Senior U.S. District Judge
                                            Name & Title of Judge

                                            7/15/13
                                            Date

Appellate Case: 14-3006  Document: 23-1  Date Filed: 04/01/2014  Page: 1015

AO 245C    (Rev. 09/11 - D/KS 08/12) Amended Judgment in a Criminal Case                    (NOTE:  Identify Changes with Asterisks (*))
           Sheet 2 — Imprisonment

Judgment – Page **2** of **6**

DEFENDANT:      Jose  Neave
CASE NUMBER:   6:12CR10089 - 021

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of <u>78 months</u> .

☐    The Court makes the following recommendations to the Bureau of Prisons:

☒    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district.

    ☐ at ___ on ___.

    ☐ as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before ___ on ___.

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____

UNITED STATES MARSHAL

By _____

Deputy U.S. Marshal

AO 245C   (Rev. 09/11 - D/KS 08/12) Amended Judgment in a Criminal Case                                   (NOTE:  Identify Changes with Asterisks (*))

Sheet 3 — Supervised Release

DEFENDANT:      Jose  Neave
CASE NUMBER:   6:12CR10089 - 021

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of <u>three (3) years</u>.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐      The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check if applicable)*

☒      The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check if applicable)*

☒      The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check if applicable)*

☐      The defendant shall register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student.  For initial registration purposes only, the defendant shall also register in the jurisdiction in which convicted, if such jurisdiction is different from the jurisdiction of residence.  Registration shall occur not later than 3 business days after being sentenced, if the defendant is not sentenced to a term of imprisonment.  The defendant shall, not later than 3 business days after each change in name, residence, employment, or student status, appear in person in at least one jurisdiction in which the defendant is registered and inform that jurisdiction of all changes in the information required.  *(Check if applicable)*

☐      The defendant shall participate in an approved program for domestic violence. *(Check if applicable)*

If this judgment imposes a fine or restitution, it is to be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without permission of the court or probation officer;
2)   the defendant shall report to the probation officer in a manner and frequency directed by the court or the probation officer;
3)   the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4)   the defendant shall support his or her dependents and meet other family responsibilities;
5)   the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substances or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)   the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245C    (Rev. 09/11 - D/KS 08/12) Amended Judgment in a Criminal Case                    (NOTE:  Identify Changes with Asterisks (*))
           Sheet 3C - Supervised Release

DEFENDANT:        Jose  Neave
CASE NUMBER:    6:12CR10089 - 021

## SPECIAL CONDITIONS OF SUPERVISION

1.    The defendant shall successfully participate in an approved program for substance abuse, which may include urine, breath, or sweat patch testing, outpatient and/or residential treatment, and share in the costs, based on the ability to pay. The defendant shall abstain from the use of alcohol and other intoxicants during said treatment program as directed by the Probation Office.

2.    The defendant shall abstain from the use of alcohol during the term of supervision.

3.    The defendant shall not be a member of any street gang, participate in any gang-related activities, or associate with any gang members during the term of supervision. The defendant shall comply with any curfew established by the probation officer, who may utilize electronic monitoring to verify the defendant's compliance with the curfew schedule. As instructed by the probation officer, the defendant may be required to maintain a telephone at the defendant's place of residence without call forwarding, caller ID, call waiting, portable cordless telephones, answering machines/service, or any other feature or service which would interfere with the operation of electrical monitoring equipment. The defendant may be required to wear an electronic monitoring device, which may include Global Positioning System and/or Random Tracking, and follow electronic monitoring procedures specified by the probation officer. Additionally, the probation officer may restrict the defendant from certain areas within the community, and the defendant must comply with these restrictions. The defendant shall assist in the costs of home confinement, based on the ability to pay, at the direction of the probation officer.

4.    The defendant shall submit his/her person, house, residence, vehicle(s), papers, business or place of employment and any property under the defendant's control to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

5.    The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon.

AO 245C    (Rev. 09/11 - D/KS 08/12) Amended Judgment in a Criminal Case                    (NOTE:  Identify Changes with Asterisks (*))
           Sheet 5 — Criminal Monetary Penalties

Judgment – Page **5** of **6**

DEFENDANT:      Jose  Neave
CASE NUMBER:    6:12CR10089 - 021

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the Schedule of Payments set forth in this Judgment.

|         | Assessment | Fine   | Restitution    |
|---------|------------|--------|----------------|
| Totals: | $100       | Waived | *$16,242.10    |

☐    The determination of restitution is deferred until ___. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐    The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---------------|-------------|---------------------|------------------------|
| Victims Compensation Board (Gabriel Rivera) |  | $2,811.60 |  |
| Victims Compensation Board (Carlos Ramirez) |  | $13,430.50 |  |
| Totals: | $ | *$16,242.10 |  |

☐    Restitution amount ordered pursuant to plea agreement $___.

☐    The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options set forth in this Judgment may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

*☒    The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

*☒ the interest requirement is waived for the ☐ fine and/or ☒ restitution.

☐ the interest requirement for the ☐ fine and/or ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1019

AO 245C   (Rev. 09/11 - D/KS 08/12) Amended Judgment in a Criminal Case                                     (NOTE:  Identify Changes with Asterisks (*))
Sheet 6A — Schedule of Payments

Judgment – Page **6** of **6**

DEFENDANT:        Jose  Neave
CASE NUMBER:   6:12CR10089 - 021

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A   ☐   Lump sum payment of $___ due immediately, balance due
    ☐  not later than ___, or
    ☐  in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B   ☒   Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☒ F below); or

C   ☐   Payment in monthly installments of not less than 5% of the defendant's monthly gross household income over a period of ___ years to commence ___ days after the date of this judgment; or

D   ☒   Payment of not less than 10%  of the funds deposited each month into the inmate's trust fund account and monthly installments of not less than 5% of the defendant's monthly gross household income over a period of ____ years, to commence ___ days after release from imprisonment to a term of supervision;  or

E   ☐   Payment during the term of supervised release will commence within ____ (e.g., 30 or 60 days) after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ☒   Special instructions regarding the payment of criminal monetary penalties:

If restitution is ordered, the Clerk, U.S. District Court, may hold and accumulate restitution payments, without distribution, until the amount accumulated is such that the minimum distribution to any restitution victim will not be less than $25.

Payments should be made to Clerk, U.S. District Court, U.S. Courthouse - Room 259, 500 State Avenue, Kansas City, Kansas 66101.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒   Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount Joint and Several Amount and corresponding payee, if appropriate.

| Case Number (Including Defendant Number) | Defendant Name | Joint and Several Amount |
|---|---|---|
| 6:12CR10089-01 | Jason Najera | $16,242.10 |
| 6:12CR10089-019 | Fabian Neave | $16,242.10 |
| 6:12CR10089-020 | Jesse Torres | $16,242.10 |
| 6:12CR10089-023 | Humberto Ortiz | $16,242.10 |

☐   The defendant shall pay the cost of prosecution.
☐   The defendant shall pay the following court cost(s):
☐   The defendant shall forfeit the defendant's interest in the following property to the United States.  Payments against any money judgment ordered as part of a forfeiture order should be made payable to the United States of America, c/o United States Attorney, at 301 N. Main, Ste 1200, Wichita, KS 67202 Attn: David Stevens.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-02-MLB |
| | } | |
| PEDRO GARCIA, | } | |
| a.k.a. Peter Garcia, | } | |
| a.k.a. Pistol Pete, | } | |
| | } | |
| Defendant. | } | |

**RESPONSE OF THE UNITED STATES
TO DEFENDANT PEDRO GARCIA'S
OBJECTIONS TO THE ADMISSION OF EVIDENCE**

The United States of America, by Aaron L. Smith and Lanny D. Welch, Assistant United States Attorneys, hereby responds to Defendant Pedro Garcia's objections to the admission of evidence.[1] In support of the government's disclosure[2] and in response to the defendant's objections, the United States avers as follows:

**A.     Charges**

Defendant Pedro Garcia is charged in the following counts of the indictment returned on April 16, 2012:

Count 1  -  RICO Conspiracy, in violation of Title 18, U.S.C. § 1962(d);

Count 2  -  Violent Crime in Aid of Racketeering/Conspiracy to Murder, in violation of Title 18, U.S.C. § 1959(a)(5);

Count 3  -  Violent Crime in Aid of Racketeering/Murder, in violation of Title 18, U.S.C. § 1959(a)(1);

---

[1] Filed as Docs. 647 and 687.
[2] Doc. 633.

1

Count 4 - Violent Crime in Aid of Racketeering/Attempted Murder, in violation of Title 18, U.S.C. § 1959(a)(5);

Count 5 - Violent Crime in Aid of Racketeering/Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(3);

Count 6 - Possess/Discharge a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A);

Count 7 - Violent Crime in Aid of Racketeering/Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(3);

Count 8 - Violent Crime in Aid of Racketeering/Conspiracy to Commit an Assault with a Dangerous Weapon, in violation of Title 18, U.S.C. § 1959(a)(6);

Count 9 - Possess and Brandish a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, U.S.C. § 924(c)(1)(A).

## B.    **Defendant's Objection**

The defendant's objection to the government's disclosure is that the evidence/prior acts are not admissible pursuant to Federal Rule of Evidence 404(b) because he suggests the government is offering such evidence in order to prove his character and that he acted in conformity with that character. In our notice, the United States did not list any evidence or events which were identified as Rule 404(b) evidence to be offered against him and the defendant's application of Rule 404(b) to this evidence is misplaced and fails to recognize the law governing the RICO and VICAR charges he faces.

**C.**   **RICO Conspiracy (18 U.S.C. § 1962(d))**

In the Disclosure of Evidence to be Presented filed by the United States on May 10, 2013, the government detailed a number of prior convictions/criminal activities and admissions which the United States contends will be relevant to the charges pending against this defendant. Included in the list of relevant charges is the racketeering conspiracy alleged in the indictment.

Count 1 charged this defendant, and seven other Nortenos, with RICO conspiracy in violation of Title 18, U.S.C. § 1962(d).[3]   In order to prove the defendant guilty of violating this statute, the United States must prove the following:[4]

|  |  |
|---|---|
| *First:* | A conspiracy or agreement, as detailed in the indictment, existed between two or more persons to participate in the affairs of an enterprise that affected interstate commerce through a pattern of racketeering activity; |
| *Second:* | That the defendant deliberately joined or became a member of the conspiracy or agreement with knowledge of its purpose; and |
| *Third:* | The defendant agreed that someone, not necessarily the defendant, would commit at least two of the racketeering acts detailed in the indictment. |

Title 18, U.S.C. § 1962(d) requires the government prove an agreement by the defendant that someone, not necessarily this defendant, would commit at least two racketeering acts.  However, the law and common sense dictate that if the United States can offer proof of racketeering acts committed by this defendant the same would clearly be highly relevant and admissible evidence against him in proving him guilty of participation in the RICO conspiracy.

---

[3] In addition to this defendant, Count 1 remains pending against Gonzalo Ramirez, Jesus Sanchez, Eusebio Sierra-Medrano and Jayson Vargas.

[4] *United States v. Harris*, 695 F.3d 1125, 1130-34 (10th Cir. 2012).

3

Racketeering activity is defined to include a seemingly inexhaustible list of federal and state crimes but, for the purposes of this indictment, includes any act or threat involving murder, robbery or dealing in controlled substances which is chargeable under State law and would constitute a felony.[5]  There is no requirement that the defendant be previously convicted of the RICO predicate in state court[6] and the RICO predicates can even include charges for which the defendant was previously acquitted.[7]  A pattern of racketeering activity requires proof of at least two acts of racketeering activity which occurred within 10 years of each other.[8]

In our disclosure, the United States included as RICO predicates pertaining to this defendant his distribution of controlled substances as well as the murder, threats of murder and robbery charged against him as Counts 2-5 and 7-8 of the indictment.[9]  All are viable predicates to offer against him at trial to prove Count 1.  The defendant's attempt to analogize RICO predicates to evidence offered pursuant to Federal Rule of Evidence 404(b) misapprehends the law which applies to RICO conspiracy.

### D.   VICAR (Title 18, U.S.C. § 1959)

The government also provided a list of criminal activity and gang membership admissions by this defendant as enterprise evidence which may be offered against him at

---

[5] Title 18, U.S.C. § 1961(1)(A).

[6] See, e.g.,  *Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 61 (1989); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 488 (1985); *United States v. Murphy,* 768 F.2d 1518, 1531 (7th Cir. 1985), *cert. denied,* 475 U.S. 1012 (1986) and *United States v. Malatesta,* 583 F.2d 748, 757-58 (5th Cir. 1978).

[7] See, e.g., *United States v. Coonan,* 938 F.2d 1553, 1563-65 (2d Cir.), *cert. denied,* 503 U.S. 941 (1992); *United States v. Licavoli,* 725 F.2d 1040, 1047 (6th Cir.), *cert denied,* 467 U.S. 1252 (1984) and *United States v. Frumento,* 563 F.2d 1083, 1086-89 (3d Cir.), *cert. denied,* 434 U.S. 1072 (1978).

[8] Title 18, U.S.C. § 1961(5).

[9] Doc. 633, p. 1.

trial.[10]  Although 1962(d) does not require proof of the existence of an enterprise the charges filed under the Violent Crimes in Aid of Racketeering (VICAR) statute[11] will.[12]

Clearly the counts charged against this defendant under the VICAR statute or those which are dependent on VICAR charges, such as those filed under Title 18, U.S.C. § 924(c),[13] permit the introduction of the evidence disclosed by the United States. Specifically, instances where the defendant has admitted his membership in the Nortenos and/or Diablos Viejos would be relevant to establish the existence of the enterprise named in this indictment and that he was a member of the enterprise.  In other words, Garcia's admissions in the past that he was a member of the Diablos Viejos establishes that the gang exists and, obviously, when he says he belongs to the DV those statements offer proof that he was a member.

One of the incidents listed by the United States as evidence of the enterprise is the defendant's possession of a firearm on November 6, 2009.  The defendant and another Norteno (Antonio Flores) produced firearms and threatened a person to prevent him from cooperating with the police against a fellow gang member.  The defendant pled guilty in federal court to possession of a firearm as a felon for this offense and was serving his

---

[10] Doc. 633, p. 2.

[11] Title 18, U.S.C. § 1959.

[12] See, e.g., *United States v. Angilau,* ___F.3d___, 2013 WL 2897877 (C.A.10 (Utah))(elements of assault with a dangerous weapon under VICAR include proof the assault was for the purpose of maintaining or increasing position in a racketeering enterprise); *United States v. Arrington,* 409 Fed. Appx. 190, 2010 WL 4027823 (C.A.10 (N.M.))(to prove conspiracy to murder under VICAR government was required to prove Aryan Brotherhood was an enterprise as defined in 18 U.S.C. § 1959(b)(2)); *United States v. Smith,* 413 F.3d 1253, 1277 (10th Cir. 2005), *abrogated on other grounds by United States v. Hutchinson*, 573 F.3d 1011 (10th Cir. 2009).

[13] *Angilau,* ___F.3d___, 2013 WL 2897877 (government must prove firearm was carried or used during a crime of violence for the purpose of maintaining or increasing defendant's position in a racketeering enterprise).

sentence in Bureau of Prisons custody when he was transported back to Kansas to answer

to the instant indictment.  It would seem self-evident that a prior conviction which was

motivated by this defendant's membership in the enterprise, and was an effort to further

the enterprise, should likewise be allowed to establish the enterprise exists and Pedro

Garcia is or was a member of that enterprise.

Respectfully submitted,

BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 26th day of July, 2013, we electronically filed the foregoing

motion with the clerk of the court by using the CM/ECF system, which will send a notice of

electronic filing to all counsel of record.

/s/ Lanny D. Welch
LANNY D. WELCH
Assistant United States Attorney

AO 245B   (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 1

# United States District Court
## District of Kansas

| UNITED STATES OF AMERICA | JUDGMENT IN A CRIMINAL CASE |
|---|---|
| v. | |
| Jesus  Torres | Case Number:  6:12CR10089 - 020 |
| | USM Number:  22110-031 |
| | Defendant's Attorney:  Charles A. O'Hara |
| | Christopher S. O'Hara |

**THE DEFENDANT:**

☒    pleaded guilty to count:  27 of the Indictment.

☐    pleaded nolo contendere to count(s) ___ which was accepted by the court.

☐    was found guilty on count(s) ___ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1959(a)(3) | VIOLENT CRIMES IN AID OF RACKETEERING-ASSAULT WITH DANGEROUS WEAPON, a Class C Felony | 08/27/2011 | 27 |

The defendant is sentenced as provided in pages 1 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐    The defendant has been found not guilty on count(s) ___.

☐    Count _ is dismissed on the motion of the United States.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

09/03/2013
Date of Imposition of Judgment

s/ Monti Belot
Signature of Judge

Honorable Monti L. Belot, U.S. District Judge
Name & Title of Judge

9/5/13
Date

AO 245B      (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 2 — Imprisonment

Judgment – Page **2** of **6**

DEFENDANT:      Jesus  Torres
CASE NUMBER:   6:12CR10089 - 020

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of
<u>36 months</u> .

☒      The Court makes the following recommendations to the Bureau of Prisons:

The defendant be designated as close to home as possible to facilitate family visitation.

☐      The defendant is remanded to the custody of the United States Marshal.

☐      The defendant shall surrender to the United States Marshal for this district.

  ☐ at __ on __.

  ☐ as notified by the United States Marshal.

☒      The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐ before __ on __.

  ☒ as notified by the United States Marshal.

  ☐ as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
                                                           UNITED STATES MARSHAL

                                    By _____
                                                           Deputy U.S.  Marshal

AO 245B   (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 3 – Supervised Release

Judgment – Page **3** of **6**

DEFENDANT:      Jesus  Torres
CASE NUMBER:   6:12CR10089 - 020

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of <u>three (3) years</u> .

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐      The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check if applicable)*

☒      The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check if applicable)*

☒      The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check if applicable)*

☐      The defendant shall register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student.  For initial registration purposes only, the defendant shall also register in the jurisdiction in which convicted, if such jurisdiction is different from the jurisdiction of residence.  Registration shall occur not later than 3 business days after being sentenced, if the defendant is not sentenced to a term of imprisonment.  The defendant shall, not later than 3 business days after each change in name, residence, employment, or student status, appear in person in at least one jurisdiction in which the defendant is registered and inform that jurisdiction of all changes in the information required.  *(Check if applicable)*

☐      The defendant shall participate in an approved program for domestic violence. *(Check if applicable)*

If this judgment imposes a fine or restitution, it is to be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without permission of the court or probation officer;
2)   the defendant shall report to the probation officer in a manner and frequency directed by the court or the probation officer;
3)   the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4)   the defendant shall support his or her dependents and meet other family responsibilities;
5)   the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substances or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)   the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case

Sheet 3C - Supervised Release

DEFENDANT:      Jesus  Torres
CASE NUMBER:   6:12CR10089 - 020

# SPECIAL CONDITIONS OF SUPERVISION

1.      The defendant shall successfully participate in an approved program for substance abuse, which may include urine, breath, or sweat patch testing, outpatient and/or residential treatment, and share in the costs, based on the ability to pay. The defendant shall abstain from the use of alcohol and other intoxicants during said treatment program as directed by the Probation Office.

2.      The defendant shall abstain from the use of alcohol during the term of supervision.

3.      The defendant shall not be a member of any street gang, participate in any gang-related activities, or associate with any gang members during the term of supervision. The defendant shall comply with any curfew established by the probation officer, who may utilize electronic monitoring to verify the defendant's compliance with the curfew schedule. As instructed by the probation officer, the defendant may be required to maintain a telephone at the defendant's place of residence without call forwarding, caller ID, call waiting, portable cordless telephones, answering machines/service, or any other feature or service which would interfere with the operation of electrical monitoring equipment. The defendant may be required to wear an electronic monitoring device, which may include Global Positioning System and/or Random Tracking, and follow electronic monitoring procedures specified by the probation officer. Additionally, the probation officer may restrict the defendant from certain areas within the community, and the defendant must comply with these restrictions. The defendant shall assist in the costs of home confinement, based on the ability to pay, at the direction of the probation officer.

4.      The defendant shall submit his/her person, house, residence, vehicle(s), papers, business or place of employment and any property under the defendant's control to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

5.      The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon.

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

DEFENDANT:    Jesus  Torres
CASE NUMBER:   6:12CR10089 - 020

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the Schedule of Payments set forth in this Judgment.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $100 | Waived | $16,242.10 |

☐    The determination of restitution is deferred until ___. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐    The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

     If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Gabriel Rivera |  | $2,811.60 |  |
| Carlos Ramirez |  | $13,430.50 |  |
| Totals: | $ | $ |  |

☐    Restitution amount ordered pursuant to plea agreement $___ .

☐    The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options set forth in this Judgment may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒    The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

    ☒ the interest requirement is waived for the ☐ fine and/or ☒ restitution.

    ☐ the interest requirement for the ☐ fine and/or ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case

Sheet 6 — Schedule of Payments

DEFENDANT:       Jesus  Torres
CASE NUMBER:   6:12CR10089 - 020

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A   ☐   Lump sum payment of $___ due immediately, balance due
         ☐  not later than ___, or
         ☐  in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B   ☒   Payment to begin immediately (may be combined with ☐ C, ☒ D, or ☒ F below); or

C   ☐   Payment in monthly installments of not less than 5% of the defendant's monthly gross household income over a period of ___ years to commence ___ days after the date of this judgment; or

D   ☒   Payment of not less than 10%  of the funds deposited each month into the inmate's trust fund account and monthly installments of not less than 5% of the defendant's monthly gross household income over a period of __3__ years, to commence __30__ days after release from imprisonment to a term of supervision;  or

E   ☐   Payment during the term of supervised release will commence within ____ (e.g., 30 or 60 days) after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ☒   Special instructions regarding the payment of criminal monetary penalties:

If restitution is ordered, the Clerk, U.S. District Court, may hold and accumulate restitution payments, without distribution, until the amount accumulated is such that the minimum distribution to any restitution victim will not be less than $25.

Payments should be made to Clerk, U.S. District Court, U.S. Courthouse - Room 259, 500 State Avenue, Kansas City, Kansas 66101.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒     Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount Joint and Several Amount and corresponding payee, if appropriate.

| Case Number (Including Defendant Number) | Defendant Name | Joint and Several Amount |
|---|---|---|
| 6:12CR10089-001 | Jason Najera | $16,242.10 |
| 6:12CR10089-019 | Fabian Neave | $16,242.10 |
| 6:12CR10089-021 | Jose Neave | $16,242.10 |
| 6:12CR10089-023 | Humberto Ortiz | $16,242.10 |

☐     The defendant shall pay the cost of prosecution.

☐     The defendant shall pay the following court cost(s):

☐     The defendant shall forfeit the defendant's interest in the following property to the United States.  Payments against any money judgment ordered as part of a forfeiture order should be made payable to the United States of America, c/o United States Attorney, at 301 N. Main, Ste 1200, Wichita, KS 67202 Attn: David Stevens.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245B   (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 1

# United States District Court
## District of Kansas

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|
| v. | |
| Enrique  Gobin | Case Number:  6:12CR10089 - 013 |
| | USM Number:  22218-031 |
| | Defendant's Attorney:  Edward L. Robinson |

### THE DEFENDANT:

☒   pleaded guilty to count: <u>20 of the Indictment</u>.

☐   pleaded nolo contendere to count(s) ___ which was accepted by the court.

☐   was found guilty on count(s) ___ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1959(a)(5) | VIOLENT CRIME IN AID OF RACKETEERING - ATTEMPTED MURDER, a Class C Felony | 03/30/2011 | 20 |

The defendant is sentenced as provided in pages 1 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐   The defendant has been found not guilty on count(s) ___.

☒   Counts <u>19, 21 and 22 of the Indictment as they pertain to this defendant</u> are dismissed on the motion of the United States.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

09/03/2013
Date of Imposition of Judgment

s/ Monti Belot
Signature of Judge

Honorable Monti L. Belot, U.S. District Judge
Name & Title of Judge

9/5/13
Date

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1033

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 2 - Imprisonment

Judgment – Page **2** of **6**

DEFENDANT:      Enrique  Gobin
CASE NUMBER:   6:12CR10089 - 013

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of <u>120 months</u>.

☐    The Court makes the following recommendations to the Bureau of Prisons:

☒    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district.

    ☐ at ___ on ___.

    ☐ as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before ___ on ___.

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
Deputy U.S.  Marshal

AO 245B  (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case

Sheet 3 — Supervised Release

DEFENDANT:      Enrique  Gobin
CASE NUMBER:   6:12CR10089 - 013

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of <u>three (3) years</u> .

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐      The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check if applicable)*

☒      The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check if applicable)*

☒      The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check if applicable)*

☐      The defendant shall register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student.  For initial registration purposes only, the defendant shall also register in the jurisdiction in which convicted, if such jurisdiction is different from the jurisdiction of residence.  Registration shall occur not later than 3 business days after being sentenced, if the defendant is not sentenced to a term of imprisonment.  The defendant shall, not later than 3 business days after each change in name, residence, employment, or student status, appear in person in at least one jurisdiction in which the defendant is registered and inform that jurisdiction of all changes in the information required.  *(Check if applicable)*

☐      The defendant shall participate in an approved program for domestic violence. *(Check if applicable)*

If this judgment imposes a fine or restitution, it is to be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without permission of the court or probation officer;
2)   the defendant shall report to the probation officer in a manner and frequency directed by the court or the probation officer;
3)   the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4)   the defendant shall support his or her dependents and meet other family responsibilities;
5)   the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substances or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)   the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case

Sheet 3C - Supervised Release

DEFENDANT:      Enrique  Gobin
CASE NUMBER:   6:12CR10089 - 013

## SPECIAL CONDITIONS OF SUPERVISION

1.    The defendant shall successfully participate in an approved program for substance abuse, which may include urine, breath, or sweat patch testing, outpatient and/or residential treatment, and share in the costs, based on the ability to pay. The defendant shall abstain from the use of alcohol and other intoxicants during said treatment program as directed by the Probation Office.

2.    The defendant shall abstain from the use of alcohol during the term of supervision.

3.    The defendant shall not be a member of any street gang, participate in any gang-related activities, or associate with any gang members during the term of supervision. The defendant shall comply with any curfew established by the probation officer, who may utilize electronic monitoring to verify the defendant's compliance with the curfew schedule. As instructed by the probation officer, the defendant may be required to maintain a telephone at the defendant's place of residence without call forwarding, caller ID, call waiting, portable cordless telephones, answering machines/service, or any other feature or service which would interfere with the operation of electrical monitoring equipment. The defendant may be required to wear an electronic monitoring device, which may include Global Positioning System and/or Random Tracking, and follow electronic monitoring procedures specified by the probation officer. Additionally, the probation officer may restrict the defendant from certain areas within the community, and the defendant must comply with these restrictions. The defendant shall assist in the costs of home confinement, based on the ability to pay, at the direction of the probation officer.

4.    The defendant shall submit his/her person, house, residence, vehicle(s), papers, business or place of employment and any property under the defendant's control to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

5.    The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon.

Appellate Case: 14-3006  Document: 23-1  Date Filed: 04/01/2014  Page: 1036

AO 245B  (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment – Page **5** of **6**

DEFENDANT:        Enrique  Gobin
CASE NUMBER:    6:12CR10089 - 013

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the Schedule of Payments set forth in this Judgment.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $100 | Waived | None |

☐  The determination of restitution is deferred until ___. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Totals: | $ | $ | |

☐  Restitution amount ordered pursuant to plea agreement $___ .

☐  The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options set forth in this Judgment may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

   ☐ the interest requirement is waived for the ☐ fine and/or ☐ restitution.

   ☐ the interest requirement for the ☐ fine and/or ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case

Sheet 6 — Schedule of Payments

Judgment – Page **6** of **6**

DEFENDANT:       Enrique  Gobin
CASE NUMBER:   6:12CR10089 - 013

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A    ☐    Lump sum payment of $___ due immediately, balance due
        ☐ not later than ___, or
        ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B    ☒    Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☒ F below); or

C    ☐    Payment in monthly installments of not less than 5% of the defendant's monthly gross household income over a period
        of ___ years to commence ___ days after the date of this judgment; or

D    ☐    Payment of not less than 10%  of the funds deposited each month into the inmate's trust fund account and monthly
        installments of not less than 5% of the defendant's monthly gross household income over a period of ____ years, to
        commence ___ days after release from imprisonment to a term of supervision;  or

E    ☐    Payment during the term of supervised release will commence within ____ (e.g., 30 or 60 days) after release from
        imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that
        time; or

F    ☒    Special instructions regarding the payment of criminal monetary penalties:

If restitution is ordered, the Clerk, U.S. District Court, may hold and accumulate restitution payments, without distribution, until the
amount accumulated is such that the minimum distribution to any restitution victim will not be less than $25.

Payments should be made to Clerk, U.S. District Court, U.S. Courthouse - Room 259, 500 State Avenue, Kansas City, Kansas 66101.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is
due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐      Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount Joint and Several Amount and
corresponding payee, if appropriate.

| Case Number (Including Defendant Number) | Defendant Name | Joint and Several Amount |
|---|---|---|
| | | |

☐      The defendant shall pay the cost of prosecution.

☐      The defendant shall pay the following court cost(s):

☐      The defendant shall forfeit the defendant's interest in the following property to the United States.  Payments against any
        money judgment ordered as part of a forfeiture order should be made payable to the United States of America, c/o United
        States Attorney, at 301 N. Main, Ste 1200, Wichita, KS 67202 Attn: David Stevens.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

1037

AO 245B   (Rev. 09/11 - D/KS 08/12)   Judgment in a Criminal Case
Sheet 1

# United States District Court
## District of Kansas

| UNITED STATES OF AMERICA | JUDGMENT IN A CRIMINAL CASE |
|---|---|
| v. | |
| Angel  Cerda | Case Number:  6:12CR10089 - 008 |
| | USM Number:  22102-031 |
| | Defendant's Attorney:  Paul S. McCausland |

**THE DEFENDANT:**

☒    pleaded guilty to count: 11 of the Indictment.
☐    pleaded nolo contendere to count(s) ___ which was accepted by the court.
☐    was found guilty on count(s) ___ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1959(a)(5) | VIOLENT CRIMES IN AID OF RACKETEERING-ATTEMPTED MURDER, a Class C Felony | 10/04/2008 | 11 |

The defendant is sentenced as provided in pages 1 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐    The defendant has been found not guilty on count(s) ___.

☒    Counts 10, 12 and 13 of the Indictment as they pertain to this defendant are dismissed on the motion of the United States.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

09/03/2013
Date of Imposition of Judgment

s/ Monti Belot
Signature of Judge

Honorable Monti L. Belot, U.S. District Judge
Name & Title of Judge

9/5/13
Date

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1039

AO 245B      (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 2 — Imprisonment

Judgment – Page **2** of **6**

DEFENDANT:       Angel  Cerda
CASE NUMBER:   6:12CR10089 - 008

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of
__78 months__ .

☐      The Court makes the following recommendations to the Bureau of Prisons:

☒      The defendant is remanded to the custody of the United States Marshal.

☐      The defendant shall surrender to the United States Marshal for this district.

  ☐ at __ on __.

  ☐ as notified by the United States Marshal.

☐      The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐ before __ on __.

  ☐ as notified by the United States Marshal.

  ☐ as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
                                           UNITED STATES MARSHAL

By _____
                                           Deputy U.S.  Marshal

AO 245B     (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case

Sheet 3 - Supervised Release

Judgment – Page **3** of **6**

DEFENDANT:     Angel  Cerda
CASE NUMBER:   6:12CR10089 - 008

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of <u>three (3) years </u>.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐     The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check if applicable)*

☒     The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check if applicable)*

☒     The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check if applicable)*

☐     The defendant shall register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student.  For initial registration purposes only, the defendant shall also register in the jurisdiction in which convicted, if such jurisdiction is different from the jurisdiction of residence.  Registration shall occur not later than 3 business days after being sentenced, if the defendant is not sentenced to a term of imprisonment.  The defendant shall, not later than 3 business days after each change in name, residence, employment, or student status, appear in person in at least one jurisdiction in which the defendant is registered and inform that jurisdiction of all changes in the information required.  *(Check if applicable)*

☐     The defendant shall participate in an approved program for domestic violence. *(Check if applicable)*

If this judgment imposes a fine or restitution, it is to be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without permission of the court or probation officer;
2)   the defendant shall report to the probation officer in a manner and frequency directed by the court or the probation officer;
3)   the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4)   the defendant shall support his or her dependents and meet other family responsibilities;
5)   the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substances or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)   the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B     (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 3C - Supervised Release

DEFENDANT:        Angel  Cerda
CASE NUMBER:    6:12CR10089 - 008

# SPECIAL CONDITIONS OF SUPERVISION

1.    The defendant shall successfully participate in an approved program for substance abuse, which may include urine, breath, or sweat patch testing, outpatient and/or residential treatment, and share in the costs, based on the ability to pay. The defendant shall abstain from the use of alcohol and other intoxicants during said treatment program as directed by the Probation Office.

2.    The defendant shall abstain from the use of alcohol during the term of supervision.

3.    The defendant shall not be a member of any street gang, participate in any gang-related activities, or associate with any gang members during the term of supervision. The defendant shall comply with any curfew established by the probation officer, who may utilize electronic monitoring to verify the defendant's compliance with the curfew schedule. As instructed by the probation officer, the defendant may be required to maintain a telephone at the defendant's place of residence without call forwarding, caller ID, call waiting, portable cordless telephones, answering machines/service, or any other feature or service which would interfere with the operation of electrical monitoring equipment. The defendant may be required to wear an electronic monitoring device, which may include Global Positioning System and/or Random Tracking, and follow electronic monitoring procedures specified by the probation officer. Additionally, the probation officer may restrict the defendant from certain areas within the community, and the defendant must comply with these restrictions. The defendant shall assist in the costs of home confinement, based on the ability to pay, at the direction of the probation officer.

4.    The defendant shall submit his/her person, house, residence, vehicle(s), papers, business or place of employment and any property under the defendant's control to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

5.    The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon.

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

DEFENDANT:       Angel  Cerda
CASE NUMBER:    6:12CR10089 - 008

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the Schedule of Payments set forth in this Judgment.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $100 | Waived | $14,926.52 |

☐      The determination of restitution is deferred until ___. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐      The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Rumalda Hipolito |  | $10,767.90 |  |
| Abel Hernandez |  | $4,158.62 |  |
| Totals: |  | $14,926.52 |  |

☐    Restitution amount ordered pursuant to plea agreement $___ .

☐      The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options set forth in this Judgment may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒      The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☒ the interest requirement is waived for the ☐ fine and/or ☒ restitution.

☐ the interest requirement for the ☐ fine and/or ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B   (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment – Page **6** of **6**

DEFENDANT:      Angel  Cerda
CASE NUMBER:   6:12CR10089 - 008

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A   ☐   Lump sum payment of $___ due immediately, balance due
    ☐  not later than ___ , or
    ☐  in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B   ☒   Payment to begin immediately (may be combined with ☐ C, ☒ D, or ☒ F below); or

C   ☐   Payment in monthly installments of not less than 5% of the defendant's monthly gross household income over a period of ___ years to commence ___ days after the date of this judgment; or

D   ☒   Payment of not less than 10%  of the funds deposited each month into the inmate's trust fund account and monthly installments of not less than 5% of the defendant's monthly gross household income over a period of ____ years, to commence ___ days after release from imprisonment to a term of supervision;  or

E   ☐   Payment during the term of supervised release will commence within ____ (e.g., 30 or 60 days) after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ☒   Special instructions regarding the payment of criminal monetary penalties:

If restitution is ordered, the Clerk, U.S. District Court, may hold and accumulate restitution payments, without distribution, until the amount accumulated is such that the minimum distribution to any restitution victim will not be less than $25.

Payments should be made to Clerk, U.S. District Court, U.S. Courthouse - Room 259, 500 State Avenue, Kansas City, Kansas 66101.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒      Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount Joint and Several Amount and corresponding payee, if appropriate.

| Case Number (Including Defendant Number) | Defendant Name | Joint and Several Amount |
|---|---|---|
| 6:12CR10089-003 | Gonzalo Ramirez | $14,926.52 |
| 6:12CR10089-009 | Juan Torres | $14,926.52 |

☐      The defendant shall pay the cost of prosecution.

☐      The defendant shall pay the following court cost(s):

☐      The defendant shall forfeit the defendant's interest in the following property to the United States.  Payments against any money judgment ordered as part of a forfeiture order should be made payable to the United States of America, c/o United States Attorney, at 301 N. Main, Ste 1200, Wichita, KS 67202 Attn: David Stevens.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-10089-03 MLB |
| | ) | |
| GONZALO RAMIREZ, et al., | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE REGARDING OUTSTANDING EVIDENTIARY ISSUES

The Defendant, Gonzalo Ramirez, by and through his attorneys, Joel Mandelman and Timothy J. Henry, Assistant Federal Public Defenders for the District of Kansas, hereby moves the Court to exclude the evidence described below.

## I. INTRODUCTION

The Defendant has filed a series of pretrial motions challenging the evidence he expects the United States to introduce at his upcoming racketeering trial.[1]  (*See, e.g.*, Docs. 542, 648, 690, 692). The Defendant now renews his prior objections and briefly addresses some of the outstanding evidentiary issues.  In summary, four sets of issues remain before the Court: the Defendant's alleged admissions to law enforcement that he was a member of the Diablos Viejos street gang; the admissibility of photos of the Defendant's tattoos apparently taken while he was in custody; the admissibility of several prior bad acts, including a 2004 Ford County conviction for aggravated assault, a 2009 Ford County conviction for selling drugs to a confidential informant, and an alleged

---

[1] Mr. Ramirez is accused of participating in a racketeering conspiracy, a homicide, a home invasion, and a drive-by shooting.  This matter is currently set for trial October 2, 2013.

2009 shooting; and the admissibility of Joe Galindo's statements under the Confrontation Clause and *Bruton v. United States*.[2]

While the admissibility of the above evidence raises various constitutional issues, Mr. Ramirez contends that this Court could exclude all the above evidence under the Fed. R. Evid. 403 balancing test, as the risk of unfair prejudice substantially outweighs the probative value. In particular, a majority of the above evidence relates to incidents that are tangential to this federal case. At trial, the principal evidence from the United States will come from about six or seven cooperating witnesses. Most of these witnesses have entered into plea agreements with the United States and will testify against the Defendant in hopes of receiving leniency from the Court. With the exception of Mr. Galindo's expected testimony, the evidence from these witnesses is not the subject of this pleading.

## II.  DISCUSSION

### A. Mr. Ramirez's alleged admission to the police that he is a Diablos Viejos member

The Government has proposed introducing evidence of the Defendant's alleged admissions to the police that he is a Diablos Viejos member. (Doc. 633). In anticipation of this testimony, the Defendant objected. (Doc. 542). The Defendant subsequently renewed these objections. (Doc. 692 at 4-5). These admissions apparently often occurred during traffic stops in which the Defendant was a passenger in a vehicle. The reasons for the initial stop is often sketchy, and the grounds for detaining and questioning the Defendant are not entirely clear from the reports. Moreover, the

---

[2] The Defendant has also sought additional discovery in Doc. 691. A few of these requests have not been resolved.

Defendant contends that these police contacts constitute inadmissible character evidence and that the admission of the Defendant's statements is unfairly prejudicial.[3]

### B. Mr. Ramirez's tattoos

The Defendant has been provided with photos of various tattoos that were taken while the Defendant was in custody.  He previously objected to their admission in Doc. 542.  Introduction of these photos would violate the Defendant's Fifth Amendment right against self-incrimination, and the photos were not obtained voluntarily.  Law-enforcement officials may very well have a legitimate reason for documenting the Defendant's tattoos, but this rationale does not make them admissible at a subsequent criminal trial.  Further, Mr. Ramirez asks the Court to exclude this evidence under Fed. R. Evid. 403, as the Defendant would be unfairly prejudiced by photos showing him in custody.

### C.  Prior bad acts

The Government has proposed introducing evidence of Mr. Ramirez's 2009 Ford County drug trafficking conviction, his 2004 Ford County aggravated assault conviction, and a 2009 alleged shooting.  The Defendant objected based on Fed. R. Evid. 401, 403, and 404(b)(1) in Doc. 692.

---

[3]Mr. Ramirez also apparently admitted being a gang member to an official with the Kansas Department of Corrections.  The Government claims that this admission falls under the routine booking exception to *Miranda*.  The Defendant disagrees.  The routine booking exception covers name, address, height, weight, eye color, date of birth, and current age.  *Pennsylvania v. Muniz*, 496 U.S. 582, 600-02 (1990).  It does not cover gang affiliation.  *See id.* at 602 n.14 ("As amicus United States explains, 'recognizing a 'booking exception' to Miranda does not mean, of course, that any question asked during the booking process falls within that exception.  Without obtaining a waiver of the suspect's Miranda rights, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions." (citations omitted)).

**D.  Joe Galindo's expected testimony**

The Defendant expects Mr. Galindo to testify that Pedro Garcia told Mr. Galindo that Mr. Garcia and Mr. Ramirez participated in the 2009 homicide alleged in the indictment.[4]   The Government claims that Mr. Ramirez and Mr. Garcia made independent admissions to Mr. Galindo. (Doc. 733 at 11-12).  But Mr. Galindo's prior sworn testimony in this case makes it clear that Mr. Ramirez did not make an admission about the homicide.  Instead, it appears Mr. Garcia implicated both himself and Mr. Ramirez.  The Government claims that Mr. Garcia's statements to Mr. Galindo are admissible as statements against interest or as statements made by a co-conspirator.  The Defendant contends that neither rule permits the introduction of these statements.  First, the Defendant's objection is not based on hearsay; the Confrontation Clause applies regardless of whether Mr. Garcia's statements are against interest.  Second, the co-conspirator exception does not apply to a post-hoc recap.

**III. CONCLUSION**

For the reasons above, the Defendant moves the Court to exclude the above evidence.

Respectfully submitted,

s/Joel Mandelman
JOEL MANDELMAN, KS Sup. Ct. No. 25726
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Joel_Mandelman@fd.org

---

[4]*See* Doc. 690.

4

And

s/Timothy J. Henry
TIMOTHY J. HENRY
KS Sup. Ct. No. 12934
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Tim_Henry@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2013, I electronically filed the foregoing

DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE REGARDING OUTSTANDING

EVIDENTIARY ISSUES with the Clerk of the Court by using the CM/ECF system which will send

a notice of electronic filing to the following:

Lanny Welch
Aaron Smith
Assistant U.S. Attorney
301 N. Main, Suite 1200
Wichita, KS  67202

David H. Moses
Case, Moses, Zimmerman & Martin, PA
200 West Douglas, Suite 900
Wichita, KS 67202

John V. Wachtel
Klenda, Austerman, L.L.C.
301 N. Main, Suite 1600
Wichita, KS 67202

James R. Pratt
Attorney at Law
445 N. Waco
Wichita, KS 67202

Jay F. Fowler
Foulston Siefkin, L.L.P.
1551 N. Waterfront Pkwy, Ste. 100
Wichita, KS 67206

Carl F.A. Maughan
Maughan & Maughan
200 West Douglas, Suite 350
Wichita, KS 67202

5

Roger L. Falk
Law office of Roger L. Falk, P.A.
301 West Central
Wichita, KS 67202

Paul S. McCausland
Young, Bogle, McCausland, Wells &
  Blanchard
100 North Main, Suite 1001
Wichita, KS 67202

Michael J. Shultz
Shultz Law Office, P.A.
445 North Waco
Wichita, KS 67202

David M. Rapp
Hinkle Law Firm LLC
301 N. Main St., Suite 2000
Wichita, KS 67202

Jeff L. Griffith
Griffith & Griffith
111 South Baltimore
Derby, KS 67037

Mark T. Schoenhofer
Law Office of Mark Schoenhofer
1631 E. 1st
Wichita, KS 67214

Edward L. Robinson
Joseph, Hollander & Craft
500 N. Market Street
Wichita, KS 67214

Michael D. Hepperly
Michael D. Hepperly Law Office, Chtd.
310 West Central, Suite 119
Wichita, KS 67202

Eric A. Hartenstein
Attorney at Law
200 West Douglas, Suite 600
Wichita, KS 67202

Mark L. Bennett, Jr.
Bennett & Hendrix, L.L.P.
5605 S.W. Barrington Ct. S., Suite 201
Topeka, KS 66614

Mark A. Sevart
Attorney at Law
P.O. Box 781602
Wichita, KS 67278

Sean C. McEnulty
McEnulty Law Firm
151 Whittier St., Suite 1000
Wichita, KS 67207

Gregory D. Bell
Forker Suter, L.L.C.
129 West 2nd Ave., Suite 200
Hutchinson, KS 67504

Charles A. O'Hara
O'Hara & O'Hara
1223 E. First
Wichita, KS 67214

Kevin W. Loeffler
Law Office of Kevin Loeffler
111 E. 7th
Newton, KS 67114

Derek S. Casey
Triplett, Woolf, Garretson, L.L.C.
2959 North Rock Road, Suite 300
Wichita, KS 67226

6

Molly M. Gordon
Depew, Gillen, Rathbun, & McInteer
8301 East 21st Street North, Suite 450
Wichita, KS 67206

One copy mailed to:

Gonzalo Ramirez
c/o Harvey County Jail
P.O. Box 267
Newton, KS 67114

s/Joel Mandelman
JOEL MANDELMAN
KS Sup. Ct. No. 25726
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Joel_Mandelman@fd.org

And

s/Timothy J. Henry
TIMOTHY J. HENRY
KS Sup. Ct. No. 12934
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Tim_Henry@fd.org

# United States District Court
## District of Kansas

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| Hernan  Quezada | Case Number:  6:12CR10089 - 022 |
| | USM Number:  22117-031 |
| | Defendant's Attorney:  Derek S. Casey |

**THE DEFENDANT:**

☒ pleaded guilty to count(s): <u>38 of the Indictment</u>.

☐ pleaded nolo contendere to count(s) __ which was accepted by the court.

☐ was found guilty on count(s) __ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1959(a)(3) | VIOLENT CRIMES IN AID OF RACKETEERING-ASSAULT WITH A DANGEROUS WEAPON, a Class C Felony | 02/05/2012 | 38 |

The defendant is sentenced as provided in pages 1 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) __.

☐ Count(s) __ is dismissed on the motion of the United States.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

| |
|---|
| 09/09/2013 |
| Date of Imposition of Judgment |

| |
|---|
| s/ Monti Belot |
| Signature of Judge |

| |
|---|
| Honorable Monti L. Belot, U.S. District Judge |
| Name & Title of Judge |

| |
|---|
| 9/11/13 |
| Date |

AO 245B     (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Appellate Case: 14-3006    Document: 23-1    Date Filed: 04/01/2014    Page: 1052
Sheet 2 - Imprisonment

Judgment – Page **2** of **6**

DEFENDANT:       Hernan  Quezada
CASE NUMBER:   6:12CR10089 - 022

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of
<u>33 months</u> .


☐       The Court makes the following recommendations to the Bureau of Prisons:


☒       The defendant is remanded to the custody of the United States Marshal.


☐       The defendant shall surrender to the United States Marshal for this district.

☐ at ___ on ___.

☐ as notified by the United States Marshal.


☐       The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before ___ on ___.

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.


_____
UNITED STATES MARSHAL


By _____
Deputy U.S.  Marshal

AO 245B     (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment – Page **3** of **6**

DEFENDANT:      Hernan  Quezada
CASE NUMBER:   6:12CR10089 - 022

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of <u>3 years</u> .

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check if applicable)*

☒    The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check if applicable)*

☒    The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check if applicable)*

☐    The defendant shall register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student.  For initial registration purposes only, the defendant shall also register in the jurisdiction in which convicted, if such jurisdiction is different from the jurisdiction of residence.  Registration shall occur not later than 3 business days after being sentenced, if the defendant is not sentenced to a term of imprisonment.  The defendant shall, not later than 3 business days after each change in name, residence, employment, or student status, appear in person in at least one jurisdiction in which the defendant is registered and inform that jurisdiction of all changes in the information required.  *(Check if applicable)*

☐    The defendant shall participate in an approved program for domestic violence. *(Check if applicable)*

If this judgment imposes a fine or restitution, it is to be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without permission of the court or probation officer;
2) the defendant shall report to the probation officer in a manner and frequency directed by the court or the probation officer;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substances or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B   (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 3C - Supervised Release

DEFENDANT:        Hernan  Quezada
CASE NUMBER:    6:12CR10089 - 022

# SPECIAL CONDITIONS OF SUPERVISION

1.      The defendant shall successfully participate in an approved program for substance abuse, which may include urine, breath, or sweat patch testing, outpatient and/or residential treatment, and share in the costs, based on the ability to pay. The defendant shall abstain from the use of alcohol and other intoxicants during said treatment program as directed by the Probation Office.

2.      The defendant shall participate in an approved program for mental health treatment, which may include psychological counseling and prescribed medication. The defendant shall share in the costs, based on the ability to pay, at the direction of the U.S. Probation Officer.

3.      The defendant shall abstain from the use of alcohol during the term of supervision.

4.      The defendant shall not be a member of any street gang, participate in any gang-related activities, or associate with any gang members during the term of supervision. The defendant shall comply with any curfew established by the probation officer, who may utilize electronic monitoring to verify the defendant's compliance with the curfew schedule. As instructed by the probation officer, the defendant may be required to maintain a telephone at the defendant's place of residence without call forwarding, caller ID, call waiting, portable cordless telephones, answering machines/service, or any other feature or service which would interfere with the operation of electrical monitoring equipment. The defendant may be required to wear an electronic monitoring device, which may include Global Positioning System and/or Random Tracking, and follow electronic monitoring procedures specified by the probation officer. Additionally, the probation officer may restrict the defendant from certain areas within the community, and the defendant must comply with these restrictions. The defendant shall assist in the costs of home confinement, based on the ability to pay, at the direction of the probation officer.

5.      The defendant shall submit his/her person, house, residence, vehicle(s), papers, business or place of employment and any property under the defendant's control to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

6.      The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon.

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

DEFENDANT:       Hernan  Quezada
CASE NUMBER:   6:12CR10089 - 022

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the Schedule of Payments set forth in this Judgment.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $100 | Waived | None |

☐      The determination of restitution is deferred until ___. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐      The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Totals: | $ | $ | |

☐      Restitution amount ordered pursuant to plea agreement $___.

☐      The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options set forth in this Judgment may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐      The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☐ the interest requirement is waived for the ☐ fine and/or ☐ restitution.

☐ the interest requirement for the ☐ fine and/or ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1056

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

DEFENDANT:     Hernan  Quezada
CASE NUMBER:   6:12CR10089 - 022

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A   ☐   Lump sum payment of $___ due immediately, balance due
        ☐ not later than ___, or
        ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B   ☒   Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☒ F below); or

C   ☐   Payment in monthly installments of not less than 5% of the defendant's monthly gross household income over a period
        of ___ years to commence ___ days after the date of this judgment; or

D   ☐   Payment of not less than 10%  of the funds deposited each month into the inmate's trust fund account and monthly
        installments of not less than 5% of the defendant's monthly gross household income over a period of ____ years, to
        commence ___ days after release from imprisonment to a term of supervision;  or

E   ☐   Payment during the term of supervised release will commence within ____ (e.g., 30 or 60 days) after release from
        imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that
        time; or

F   ☒   Special instructions regarding the payment of criminal monetary penalties:

If restitution is ordered, the Clerk, U.S. District Court, may hold and accumulate restitution payments, without distribution, until the
amount accumulated is such that the minimum distribution to any restitution victim will not be less than $25.

Payments should be made to Clerk, U.S. District Court, U.S. Courthouse - Room 259, 500 State Avenue, Kansas City, Kansas 66101.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is
due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐     Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount Joint and Several Amount and
corresponding payee, if appropriate.

| Case Number (Including Defendant Number) | Defendant Name | Joint and Several Amount |
|---|---|---|
| | | |

☐     The defendant shall pay the cost of prosecution.

☐     The defendant shall pay the following court cost(s):

☐     The defendant shall forfeit the defendant's interest in the following property to the United States.  Payments against any
      money judgment ordered as part of a forfeiture order should be made payable to the United States of America, c/o United
      States Attorney, at 301 N. Main, Ste 1200, Wichita, KS 67202 Attn: David Stevens.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 1

Appellate Case: 14-3006    Document: 23-1    Date Filed: 04/01/2014    Page: 1057

# United States District Court
## District of Kansas

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>Joshua  Flores | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number:  6:12CR10089 - 006<br>USM Number:  22125-031<br>Defendant's Attorney:  Carl Fredrick A. Maughan |

## THE DEFENDANT:

☒    pleaded guilty to count(s):  9 of the Indictment.
☐    pleaded nolo contendere to count(s) ___ which was accepted by the court.
☐    was found guilty on count(s) ___ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 924(c) | POSSESS AND BRANDISH A FIREARM IN FURTHERANCE OF A CRIME OF VIOLENCE, a Class A Felony | 06/08/2009 | 9 |

The defendant is sentenced as provided in pages 1 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐    The defendant has been found not guilty on count(s) ___.

☒    Count(s)  7 and 8 of the Indictment   are dismissed on the motion of the United States.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

09/09/2013
Date of Imposition of Judgment

s/ Monti Belot
Signature of Judge

Honorable Monti L. Belot, U.S. District Judge
Name & Title of Judge

9/11/13
Date

1057

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 2 - Imprisonment

Judgment – Page **2** of **6**

DEFENDANT:      Joshua  Flores
CASE NUMBER:   6:12CR10089 - 006

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of __84 months__ .

☐      The Court makes the following recommendations to the Bureau of Prisons:

☒      The defendant is remanded to the custody of the United States Marshal.

☐      The defendant shall surrender to the United States Marshal for this district.

   ☐ at ___ on ___.

   ☐ as notified by the United States Marshal.

☐      The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐ before ___ on ___.

   ☐ as notified by the United States Marshal.

   ☐ as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
                            UNITED STATES MARSHAL

By _____
                            Deputy U.S.  Marshal

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1059

AO 245B     (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment – Page **3** of **6**

DEFENDANT:      Joshua  Flores
CASE NUMBER:   6:12CR10089 - 006

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of <u>3 years</u> .

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐     The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check if applicable)*

☒     The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check if applicable)*

☒     The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check if applicable)*

☐     The defendant shall register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student.  For initial registration purposes only, the defendant shall also register in the jurisdiction in which convicted, if such jurisdiction is different from the jurisdiction of residence.  Registration shall occur not later than 3 business days after being sentenced, if the defendant is not sentenced to a term of imprisonment.  The defendant shall, not later than 3 business days after each change in name, residence, employment, or student status, appear in person in at least one jurisdiction in which the defendant is registered and inform that jurisdiction of all changes in the information required.  *(Check if applicable)*

☐     The defendant shall participate in an approved program for domestic violence. *(Check if applicable)*

If this judgment imposes a fine or restitution, it is to be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without permission of the court or probation officer;
2)   the defendant shall report to the probation officer in a manner and frequency directed by the court or the probation officer;
3)   the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4)   the defendant shall support his or her dependents and meet other family responsibilities;
5)   the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substances or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)   the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B      (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
             Sheet 3C - Supervised Release

DEFENDANT:        Joshua  Flores
CASE NUMBER:    6:12CR10089 - 006

## SPECIAL CONDITIONS OF SUPERVISION

1.      The defendant shall successfully participate in an approved program for substance abuse, which may include urine, breath, or sweat patch testing, outpatient and/or residential treatment, and share in the costs, based on the ability to pay. The defendant shall abstain from the use of alcohol and other intoxicants during said treatment program as directed by the Probation Office.

2.      The defendant shall participate in an approved program for mental health treatment, which may include psychological counseling and prescribed medication. The defendant shall share in the costs, based on the ability to pay, at the direction of the U.S. Probation Officer.

3.      The defendant shall abstain from the use of alcohol during the term of supervision.

4.      The defendant shall not be a member of any street gang, participate in any gang-related activities, or associate with any gang members during the term of supervision. The defendant shall comply with any curfew established by the probation officer, who may utilize electronic monitoring to verify the defendant's compliance with the curfew schedule. As instructed by the probation officer, the defendant may be required to maintain a telephone at the defendant's place of residence without call forwarding, caller ID, call waiting, portable cordless telephones, answering machines/service, or any other feature or service which would interfere with the operation of electrical monitoring equipment. The defendant may be required to wear an electronic monitoring device, which may include Global Positioning System and/or Random Tracking, and follow electronic monitoring procedures specified by the probation officer. Additionally, the probation officer may restrict the defendant from certain areas within the community, and the defendant must comply with these restrictions. The defendant shall assist in the costs of home confinement, based on the ability to pay, at the direction of the probation officer.

5.      The defendant shall submit his/her person, house, residence, vehicle(s), papers, business or place of employment and any property under the defendant's control to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

6.      The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon.

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

DEFENDANT:      Joshua  Flores
CASE NUMBER:   6:12CR10089 - 006

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the Schedule of Payments set forth in this Judgment.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $100 | None | None |

☐    The determination of restitution is deferred until ___. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐    The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Totals: | $ | $ | |

☐    Restitution amount ordered pursuant to plea agreement $___ .

☐    The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options set forth in this Judgment may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐    The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☐ the interest requirement is waived for the ☐ fine and/or ☐ restitution.

☐ the interest requirement for the ☐ fine and/or ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1062

AO 245B   (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment – Page **6** of **6**

DEFENDANT:      Joshua  Flores
CASE NUMBER:   6:12CR10089 - 006

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A   ☐   Lump sum payment of $___ due immediately, balance due
        ☐  not later than ___, or
        ☐  in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B   ☒   Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☒ F below); or

C   ☐   Payment in monthly installments of not less than 5% of the defendant's monthly gross household income over a period
        of ___ years to commence ___ days after the date of this judgment; or

D   ☐   Payment of not less than 10%  of the funds deposited each month into the inmate's trust fund account and monthly
        installments of not less than 5% of the defendant's monthly gross household income over a period of ____ years, to
        commence ___ days after release from imprisonment to a term of supervision;  or

E   ☐   Payment during the term of supervised release will commence within ____ (e.g., 30 or 60 days) after release from
        imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that
        time; or

F   ☒   Special instructions regarding the payment of criminal monetary penalties:

If restitution is ordered, the Clerk, U.S. District Court, may hold and accumulate restitution payments, without distribution, until the
amount accumulated is such that the minimum distribution to any restitution victim will not be less than $25.

Payments should be made to Clerk, U.S. District Court, U.S. Courthouse - Room 259, 500 State Avenue, Kansas City, Kansas 66101.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is
due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐      Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount Joint and Several Amount and
corresponding payee, if appropriate.

| Case Number (Including Defendant Number) | Defendant Name | Joint and Several Amount |
|---|---|---|
|  |  |  |

☐      The defendant shall pay the cost of prosecution.

☐      The defendant shall pay the following court cost(s):

☐      The defendant shall forfeit the defendant's interest in the following property to the United States.  Payments against any
        money judgment ordered as part of a forfeiture order should be made payable to the United States of America, c/o United
        States Attorney, at 301 N. Main, Ste 1200, Wichita, KS 67202 Attn: David Stevens.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Plaintiff, | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089-03-MLB |
| | } | |
| GONZALO RAMIREZ, | } | |
| a.k.a. Gonzo, | } | |
| | } | |
| Defendant. | } | |

**SUPPLEMENTAL RESPONSE OF THE UNITED STATES
TO DEFENDANT GONZALO RAMIREZ'S REPLY**

The United States of America, by Aaron L. Smith and Lanny D. Welch, Assistant United

States Attorneys, hereby responds to Defendant Gonzalo Ramirez's Reply to the Government's

Response.[1]  In support of this supplemental response, the United States avers as follows:

A.     **Gang tattoos**

1. **Fifth Amendment Inapplicable**

The defendant repeats his claim that admission of gang tattoos would violate his Fifth

Amendment right against self-incrimation.  This argument fails because tattoos are not

testimonial and much like handwriting or voice exemplars, are not subject to Fifth Amendment

protection.  The Fifth Amendment protects the accused from compelled verbal statements and

physical acts which constitute communications.  However, the Fifth Amendment does not apply

to physical characteristics such as the giving of a blood sample, voice sample or handwriting

exemplar.  *Pennsylvania v. Muniz,* 496 U.S. 582, 595-98 (1990); *United States v. Dionisio*, 410

U.S. 1, 7 (1973); *Gilbert v. California*, 388 U.S. 263, 266-67 (1967).  "Tattoos which are openly visible on the body are physical traits, as are voice, appearance, and handwriting."  *United States v. Toliver*, 387 Fed.Appx. 406, 2010 WL 2749599 (C.A. 4 (Va.))(evidence of gang tattoos properly admitted in RICO prosecution of gang members).

The United States further suggests the defendant lacks Fifth Amendment protection for evidence of his gang tattoos because the majority of the tattoos the government plans to present as evidence are in locations visible to the general public and would likewise be apparent to a police officer who has seen the defendant in public.  These include tattoos on his face, wrists, hands, arms and neck.  The placement of most of his gang tattoos makes it clear this defendant not only was not attempting to hide them but likely wanted them to be visible to members of his gang, members of rival gangs and members of the public.

### 2.  Gang Tattoos Relevant to Elements of RICO/VICAR charges

The United States previously submitted that gang tattoos are relevant to prove gang membership which is direct evidence that this defendant was a member of the Nortenos, the enterprise which is the subject of this indictment.  The RICO conspiracy charged in Count 1 and the VICAR offenses charged in Counts 2-5, 7-8 and 10-12 will require some evidence that an enterprise existed and that this defendant was a member of that enterprise.[2]   Evidence which

---

[1] Doc. 765.

[2] *United States v. Harris*, 695 F.3d 1125, 1130-34 (10th Cir. 2012)(elements of RICO conspiracy), *United States v. Angilau,* ___F.3d___, 2013 WL 2897877 (C.A.10 (Utah))(elements of assault with a dangerous weapon under VICAR include proof the assault was for the purpose of maintaining or increasing position in a racketeering enterprise); *United States v. Arrington,* 409 Fed. Appx. 190, 2010 WL 4027823 (C.A.10 (N.M.))(to prove conspiracy to murder under VICAR government was required to prove Aryan Brotherhood was an enterprise as defined in 18 U.S.C. § 1959(b)(2)); *United States v. Smith,* 413 F.3d 1253, 1277 (10th Cir. 2005), *abrogated on other grounds by United States v. Hutchinson*, 573 F.3d 1011 (10th Cir. 2009).

tends to show the defendant was a member of the Nortenos is highly relevant in this case.

Tattoos which tend to prove gang membership are relevant to charges that the defendants were

engaged in the commission of RICO and VICAR offenses.  See: *United States v. Fernandez*, 388

F.3d 1199, 1245-46 (9th Cir. 2004)(court properly allowed evidence that gang tattoos were an

indication the defendants were members of the gang which was the focus of the enterprise).

As the United States demonstrated during the *Daubert* hearings, members of the

Nortenos have adopted a variety of symbols which identify them as members of that gang.

These include, among others, the number 14, the letter "N", the huelga bird and the color red.  A

common method utilized by Dodge City Nortenos (to include the subsets Diablos Viejos and Los

Carnales Chingones) to demonstrate their affiliation with the gang is to tattoo these symbols on

their bodies.  Certainly, persons in Dodge City who have chosen to adorn themselves with these

symbols are making it clear to others they are members of this gang.  Membership in the gang is

direct evidence of the enterprise and, therefore, highly probative as to whether this defendant was

a member of the enterprise.

Respectfully submitted,


BARRY R. GRISSOM
UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith2@usdoj.gov

3

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov


CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of September, 2013, we electronically filed the

foregoing motion with the clerk of the court by using the CM/ECF system, which will send a

notice of electronic filing to all counsel of record.


/s/ Lanny D. Welch

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,      )
                         )
            Plaintiff,    )   **CRIMINAL ACTION**
                         )
v.                       )   No. 12-10089
                         )
GONZALO RAMIREZ, PEDRO GARCIA and )
JAYSON VARGAS               )
            Defendants.   )
                         )

**ORDER**

This case comes before the court on defendants' motions to exclude evidence (Docs. 647, 648, 651, 687) and defendant Gonzalo Ramirez's motions to exclude co-defendant statements and to produce additional discovery. (Docs. 690, 691). The motions have been fully briefed and are ripe for decision. (Docs. 727, 728, 730, 733, 765, 771). The court held a hearing on this matter on September 12, 2013.

**I.   Facts**

On April 16, 2012, the grand jury returned an indictment against 23 defendants. The indictment alleges 38 counts, including charges of violent crimes in aid of racketeering, conspiracy and felon in possession of a firearm. As of this date, 15 defendants have entered guilty pleas. Ramirez, Garcia and Vargas are set for trial on October 2. Adam Flores is set for trial on November 19. The remaining defendants are currently set for trial on December 3 although it is likely that the trial will be moved to January 2014.

Defendants are all charged in count 1 with conspiracy to commit racketeering activities in violation of 18 U.S.C. § 1962(d). The alleged RICO conspiracy occurred from 2008 through April 16, 2012.

The indictment alleges that defendants were engaged in a criminal organization, the Nortenos gang, whose members engaged in narcotics distribution and acts of violence including murder and robbery. These crimes were alleged to have been committed in Dodge City, Kansas.

Both Ramirez and Garcia are additionally charged in counts 2 through 9, which include VICAR conspiracies and VICAR substantive offenses. Ramirez is also charged in counts 10 through 13. Vargas is charged in counts 23, 24, 25 and 29.

## II. Analysis

### A. Motions to Exclude (Docs. 647, 648, 651, 687)

The government has notified defendants that it intends to offer evidence of past criminal activity to establish the existence of an enterprise and as evidence of RICO predicate acts. Defendants object to the introduction of this evidence, citing Rules 401, 403 and 404(b). In United States v. Harris, 695 F.3d 1125 (10th Cir. 2012), the Tenth Circuit set forth the elements for a RICO conspiracy as follows:

> First: A conspiracy or agreement, as detailed in the indictment, existed between two or more persons to participate in the affairs of an enterprise that affected interstate commerce through a pattern of racketeering activity;
>
> Second: that defendant deliberately joined or became a member of the conspiracy or agreement with knowledge of its purpose[;] and[ ]
>
> Third: the defendant agreed that someone, not necessarily the defendant, would commit at least two of the racketeering acts detailed in the indictment.

695 F.3d at 1131.

To satisfy its burden, the government must prove a "pattern of racketeering activity." Id. A prosecutor "must show that the

-2-

racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." United States v. Knight, 659 F.3d 1285, 1289 (10th Cir. 2011).  "[R]acketeering acts establish a threat of continued racketeering activity if they extend 'over a substantial period of time' or 'project[ ] into the future with a threat of repetition.'" Id. (citing H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 241-42 (1989)).  Therefore, because the crime charged requires the establishment of a defendant's continuing pattern of criminal activity, other acts which are part of the pattern must be used to prove the existence of the pattern without invoking the restrictions of Rule 404(b).[1]  See, e.g. United States v. Kaplan, 886 F.2d 536, 544 (2d Cir. 1989) (prior uncharged acts of racketeering admissible to prove continuity of racketeering activity in RICO case).

For those same reasons, the government may introduce evidence to establish an enterprise existed.  Evidence that defendants were in the company of other Nortenos, were in altercations with rival gangs and admitted to being a member of the Nortenos is relevant[2] to establish that each defendant was involved in the enterprise.

**B. Tatoos**

Defendants also move to exclude the photographs of their tattoos

---

[1] The court has offered counsel the opportunity to submit authority regarding Rule 404(b)'s application in a RICO case. Although the court questions the validity of counsel's arguments made at the September 12 hearing, it nevertheless will consider any authority counsel wishes to present.  However, because of the approaching trial, counsel is urged to submit the authority at the earliest possible date.

[2] Defendants may object to the admission of the statements admitting involvement with the Nortenos at trial on the basis that they were not voluntary.

-3-

on the basis that they violate their Fifth Amendment right against self-incrimination. The government seeks to introduce the photos as evidence of membership in the Nortenos. The court is not persuaded by defendants' position. The tattoos were "not compelled by the government." United States v. Greer, 631 F.3d 608, 613 (2d Cir. 2011). "The voluntary tattooing of an incriminating word" to a defendant's body plainly is "not the product of government compulsion." Id.

The court finds that the evidence is relevant and admissible for the purpose of establishing defendants' involvement in the Nortenos.[3]

### C. **Bruton**

Based upon the government's response, Bruton is inapplicable to the statements which will be offered against Ramirez. The motion to exclude Bruton evidence is denied, without prejudice. (Doc. 690).

### D. **Motion for Production**

In his reply, defendant Ramirez notes that all but a "few" production requests have been resolved. The court directs Ramirez to file a supplemental brief informing the court which discovery issues are outstanding. Based on the government's reply, however, the court is disinclined to order the government to produce any of the requested materials.

## III. Conclusion

Defendants' motions to exclude are denied. (Docs. 647, 648, 651, 687). Defendant Ramirez' motion to exclude statements is denied.

---

[3] The photographs which show defendants in prison attire and in handcuffs must be retaken. Should defendants refuse to comply, the current photographs will be admissible.

-4-

(Doc. 690).

IT IS SO ORDERED.

Dated this  16th   day of September 2013, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-5-

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S PROPOSED JURY INSTRUCTIONS**

COMES NOW Pedro Garcia, by and through his counsel of record, John Val Wachtel of Klenda Austerman LLC, and hereby submits his proposed jury instructions, which are attached hereto. The defendant reserves the right to submit additional instructions.

Respectfully submitted,

s/John Val Wachtel
John Val Wachtel
S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main St., Ste. 1600
Wichita, KS  67202-4816
Tele.:  (316) 267-0331
Fax:  (316) 267-0315
E-mail:  jvwachtel@klendalaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 23, 2013, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send electronic notice of this filing to:

s/John Val Wachtel
John Val Wachtel

**DEFENDANT GARCIA'S PROPOSED INSTRUCTION NO. 1**

**PRESUMPTION OF INNOCENCE—BURDEN OF PROOF — REASONABLE DOUBT**

The government has the burden of proving the defendant guilty beyond a reasonable doubt. The law does not require a defendant to prove his innocence or produce any evidence at all. The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning the defendant's guilt. A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

10TH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS, 1.05

**DEFENDANT GARCIA'S PROPOSED INSTRUCTION NO. 2**

**EVIDENCE—DEFINED**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

10TH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS, 1.06

**DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NO. 3**

**CREDIBILITY OF WITNESSES**

I remind you that it is your job to decide whether the government has proved the guilt of the defendant beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with either the government or the defense? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he/she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection—like failure of recollection—is not uncommon.

The defendant did not testify and I remind you that you cannot consider his decision not to testify as evidence of guilt. I want you to clearly understand, please, that the Constitution of the United States grants to a defendant the right to remain silent. That means the right not to testify or call any witnesses. That is a constitutional right in this country, it is very carefully guarded, and you should understand that no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that a defendant does not take the witness stand and testify or call any witnesses.]

In reaching a conclusion on particular point, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other.

10TH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS, 1.08

**DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NO. 4**

**NON-TESTIFYING DEFENDANT**

The defendant did not testify and I remind you that you cannot consider his decision not to

testify as evidence of guilt. You must understand that the Constitution of the United States grants to a defendant the right to remain silent. That means the right not to testify. That is a constitutional right in this country, it is very carefully guarded, and you must not presume or infer guilt from the fact that a defendant does not take the witness stand and testify or call any witnesses.

10TH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS, 1.08.1

**DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NO. 5**

**IMPEACHMENT BY PRIOR INCONSISTENCIES**

You have heard the testimony of [name of witness]. You have also heard that, before this trial, he made a statement that may be different from his testimony here in court.

This earlier statement was brought to your attention only to help you decide how believable his testimony in this trial was. You cannot use it as proof of anything else. You can only use it as one way of evaluating his testimony here in court.

10TH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS, 1.10

**DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NO. 6**

**DECIDING WHAT TO BELIEVE**

In deciding what the facts are, you must decide which testimony to believe, which testimony not to believe and how much weight to give the testimony of each witness.  In making those decisions there are a number of factors you may take into account, including the following:

A.  Did the witness seem to be honest?
B.  Did the witness have any particular reason not to tell the truth?
C.  Did the witness seem to have a good memory?
D.  Did the witness have the opportunity and ability to observe accurately the things he or she testified about?
E.  Did the witness appear to understand the questions clearly and answer them directly
F.  Was what the witness said supported by other evidence?
G.  Did the witness's testimony differ from the testimony of other witnesses

People sometime forget things.  A contradiction may be an innocent lapse of memory or it may be an intentional falsehood.  Consider therefore whether the contradiction has to do with an important fact or only a small detail.

Different people observing an event may remember it differently and therefore testify about it differently.  You may consider the factors I have just discussed with you and other relevant factors in deciding how much weight to give to the testimony.

Finally, if you find that a witness has lied to you about any matter, however insignificant, you may choose to disregard that witness's testimony in whole or in part.

Federal Jury Practice and Instructions, Criminal Companion Handbook, Westlaw 3013, Vol. 2, P. 10, United States v. Price, United States District Court E.D.N.Y., Docket No. 1:05-CR-00492, 2009WL2848256, RICO case.  Revised in part.

## DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NO. 7

### IMPEACHMENT BY PRIOR CONVICTION

#### (Witness Other Than Defendant)

The testimony of a witness may be discredited or impeached by showing that the witness previously has been convicted of a felony, that is, of a crime punishable by imprisonment for a term of years and/or of a crime of dishonesty or false statement. A prior conviction does not mean that a witness is not qualified to testify, but is merely one circumstance that you may consider in determining the credibility of the witness. You may decide how much weight to give any prior felony conviction and/or crime of dishonesty that was used to impeach a witness.

10TH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS, 1.12

## DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NO. 8
## ACCOMPLICE—INFORMANT—IMMUNITY

### Accomplice

An accomplice is someone who joined with another person in committing a crime, voluntarily and with common intent. The testimony of an accomplice may be received in evidence and considered by you, even though it is not supported by other evidence. You may decide how much weight it should have.

You are to keep in mind, however, that accomplice testimony should be received with caution and considered with great care. You should not convict a defendant based on the unsupported testimony of an alleged accomplice, unless you believe the unsupported testimony beyond a reasonable doubt.

### Informant

An informant is someone who provides evidence against someone else for a personal reason or

advantage. The testimony of an informant alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt, even though not corroborated or supported by other evidence. You must examine and weigh an informant's testimony with greater care than the testimony of an ordinary witness. You must determine whether the informant's testimony has been affected by self-interest, by an agreement he has with the government, by his own interest in the outcome of the case, or by prejudice against the defendant.

You should not convict a defendant based on the unsupported testimony of an informant, unless you believe the unsupported testimony beyond a reasonable doubt.

## Immunity

A person may testify under a grant of immunity (an agreement with the government). His testimony alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt even though it is not corroborated or supported by other evidence. You should consider testimony given under a grant of immunity with greater care and caution than the testimony of an ordinary witness. You should consider whether testimony under a grant of immunity has been affected by the witness's own interest, the government's agreement, the witness's interest in the outcome of the case, or by prejudice against the defendant.

On the other hand, you should also consider that an immunized witness can be prosecuted for perjury for making a false statement. After considering these things, you may give testimony given under a grant of immunity such weight as you feel it deserves.

You should not convict a defendant based on the unsupported testimony of an immunized witness, unless you believe the unsupported testimony beyond a reasonable doubt.

10TH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS, 1.14
(Suggested in addition to court's standard instruction personal advantage of witness.)

## DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NO. 9

## ACCOMPLICE—CO-DEFENDANT—PLEA AGREEMENT

The government called as some of its witnesses an alleged accomplice, who was named as a co-defendant in the indictment. The government has entered into a plea agreement with these co-defendants, providing *[e.g.,* for the dismissal of some charges and a recommendation of a lesser sentence than the co-defendant would otherwise likely receive]. Plea bargaining is lawful and proper, and the rules of this court expressly provide for it.

An alleged accomplice, including one who has entered into a plea agreement with the government, is not prohibited from testifying. On the contrary, the testimony of an alleged accomplice may, by itself, support a guilty verdict. You should receive this type of testimony with caution and weigh it with great care. You should never convict a defendant upon the unsupported testimony of an alleged accomplice, unless you believe that testimony beyond a reasonable doubt. The fact that an accomplice has entered a guilty plea to the offense charged is not evidence of the guilt of

any other person.

10TH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS, 1.15 (modified slightly) (Suggested in addition to court's standard instruction personal advantage of witness.)

## DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NO. 10

## CAUTION—CONSIDER ONLY CRIME CHARGED

You are here to decide whether the government has proved beyond a reasonable doubt that the defendant is guilty of the crimes charged against him. The defendant is not on trial for any act, conduct, or crime not charged in the indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crime charged. The fact that another person also may be guilty is no defense to a criminal charge.

The question of the possible guilt of others should not enter your thinking as you decide whether this defendant has been proved guilty of the crime charged.

10TH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS, 1.19 (Slightly modified.)

## DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NO. 11

## ATTEMPT

The defendant may be found guilty of attempting to commit a crime, even though he did not do all of the acts necessary in order to commit the crime. However, the defendant may not be found guilty of attempting to commit any crime merely by thinking about it, or even by making some plans or some preparation for the commission of a crime.

Instead, in order to prove an attempt, the government must prove beyond a reasonable doubt that (1) the defendant intended to commit the crime; and that (2) the defendant took a substantial step towards commission of that crime.

A "substantial step" is something beyond mere preparation. A substantial step is an act which, in the ordinary and likely course of events, would lead to the commission of the particular crime. The step must be a strong indication of the defendant's criminal intent, and must unequivocally mark the defendant's acts as criminal. It should demonstrate commitment to the crime charged.

10TH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS, 1.32

**DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NO. 12**

**CAUTIONARY INSTRUCTION DURING TRIAL**

**Transcript of Recorded Conversation**

During this trial, you have heard sound recordings of certain conversations. These conversations were legally recorded; they are a proper form of evidence and may be considered by you as you would any other evidence. You were also given transcripts of those recorded conversations.

Keep in mind that the transcripts are not evidence. They were given to you only as a guide to help you follow what was being said. The recordings themselves are the evidence. If you noticed any differences between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read. If you could not hear or understand certain parts of the recordings, you must ignore the transcript as far as those parts are concerned.

10TH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS, 1.40

**DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NUMBER 13**

**OPINION WITNESSES**

You have heard, during the course of this trial, the testimony of several individuals referred to as experts in certain fields.  This testimony is what is characterized by lawyers and judges as opinion witness testimony.  If scientific , technical, or other specialized knowledge will assist the jury to understand the evidence or to decide a disputed fact, a witness qualified as an expert by knowledge, skill, experience, training or education may be called to testify about such evidence of facts in issue in the form of opinion.

The rules of evidence ordinarily do not permit witnesses to testify to opinions or other conclusions.  Exceptions to this rule exist, including for those who we call expert witnesses who may state, their opinions and who may also state the reasons for their opinions.

You should consider the experts' opinions and give them such weight as you may think they deserve in light of all the evidence in the case.  If you should decide that the opinion of an expert witnesses is not based upon sufficient education and experience, or that the reasons given in short of the opinions are not sound, or that the opinion is outweighed by other evidence, you may disregard the opinion entirely.  You should not accept a witnesses testimony merely because he or she is an expert nor should you substitute it for your own reason, judgment or common sense.

In short, the expert witnesses are in all other respects the same as any other witnesses.

You should consider their qualifications, experience, interest in the outcome of the case, if any, demeanor, and all the other factors you have been instructed to consider in assessing the credibility of a witness.

*Federal Jury Practice and Instructions, Criminal Companion Handbook*, Westlaw 3013, Vol. 2, PP. 11-12, United States v. Price, United States District Court E.D.N.Y., Docket No. 1:05-CR-00492, 2009WL2848256, RICO case.

**DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NUMBER 14**

**TESTIMONY OF GOVERNMENT AGENTS AND LAW ENFORCEMENT WITNESSES**

During the trial, you have heard testimony from Government employees and law enforcement witnesses.  That a witness works in law enforcement or is a Government employee does not mean that his or her testimony is entitled to any greater weight by reason or his or her employment.  By the same token his or her testimony is not entitled to less consideration simply because he or she works in law enforcement or is a government employee.  You should  consider the testimony of Government agents and law enforcement officers just as you would consider any other evidence in the case and evaluate their credibility just as you would that of any other witness.  After reviewing all the evidence you will decide whether to accept the testimony of law enforcement and Government employee witnesses, and what weight, if any, that testimony deserves.

*Id.*, at P. 19

**DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NUMBER 15**

**COUNT 1 - RICO INTRODUCTION**

Defendants Jason Najera, Pedro Garcia, Gonzalo Ramirez, Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jayson Vargas, Fabian Neave, are charged in Count 1 with a violation of 18 U.S.C. 1962(d).  The law makes it a crime for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce to participate in the conduct of such enterprise's affairs through a pattern of racketeering activity.  Fabian Neave, Eusebio Sierra-Medrano and Fabian Neave are accused of directing the affairs of the enterprise.

Court's Instruction 21, United States v. Campbell, United States District Court for the District of Kansas, Case No. 07-CR-10142-JTM, March 3, 2009, modified.

**DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NUMBER 16**

**PREJUDICE FROM THE USE OF THE WORDS "RACKETEERING" AND/OR RACKETEER**

The defendant Garcia is charged with violation of the RICO statute. The words "racketeering" and "racketeer" have certain implications in our society. Use of those terms in this statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of this defendant has been proven. The term is only used by Congress to describe the statute.

10TH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS, 2.74.1, modified to include the work "racketeer."

**DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NUMBER 17**

**COUNT 1, RACKETEERING**

Count 1, charges the defendant Garcia - and others - with the crime of racketeering, commonly referred to as a violation of the "RICO" statute. Count 1 provides in part:

On or about between 2008 and __, such dates being approximate and inclusive, within the District of Kansas, the defendant Pedro Garcia together with others being persons associated with the Diablos Viejos and/or the Los Caranales Chingones, an enterprise engaged in , and the activities of which affected interstate and foreign commerce, did knowingly and intentionally conduct and participate directly and indirectly in the conduct of the affairs of that enterprise through a pattern of racketeering activity as that term is defined in Title 18 United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below. The relevant provisions of the RICO statute provide as follows:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...

The government must prove all of the following five elements beyond a reasonable doubt in order to establish the RICO count charged in Count 1:

One: An enterprise, as described in the Indictment, existed on or about the time alleged in the Indictment;

Two: The enterprise engaged in, or its activities affected interstate or foreign commerce;

Three: The defendant was employed by or associated with the enterprise;

Four: The defendant knowingly conducted or participated, either directly or

indirectly, in the conduct of the affairs of the enterprise; and

Five:  The defendant knowingly participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as described in the Indictment, that is, through the commission of at least two of the charged racketeering acts within 10 years of each other, or through causing or aiding and abetting the commission of two such racketeering acts.

I will now instruct you on the law applicable to each of these five essential elements.

The First Element:  An "Enterprise" Affecting Interstate Commerce Existed

The government must prove beyond a reasonable doubt that an enterprise affecting interstate commerce existed. The term "enterprise" as used in these instructions may include any group of people associated in fact, even though this association is not recognized as a legal entity. Thus an enterprise need not be a formal business entity such as a corporation, but may be merely an informal association of individuals.

The enterprise does not have to have a particular name, or, for that matter, any name at all. Nor must it be registered or licensed as an enterprise, or be a commonly recognized  legal entity such as a corporation, a partnership, a business, or the like.  A group or association of people can be an "enterprise" if the individuals have "associated together for a common purpose of engaging in a course of conduct."  Mere similarity of conduct or the fact that individuals may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of an enterprise, through you may consider such factors.

Such an association of persons may be established by evidence showing an ongoing organization, formal or informal, and by evidence that the people making up the association functioned as a continuing unit.  Therefore, the government must prove that: (1) there was an ongoing organization with some sort of framework for making or carrying out decisions, and (2) the various members and associates of the organization functioned as a continuing unit to achieve a common purpose.

Regarding "organization," it is not necessary that the enterprise have any particular or formal structure, but it must have sufficient organization that its members would function and operate in a coordinated manner in order to carry out the alleged common purpose or purposes of the enterprise.

"Continuing membership" exists even where the membership changes by adding or losing individuals during the course of its existence.  Therefore, such an association of individuals may retain its status as an "enterprise" even though the membership of the association changes during the course of its existence as long as a core group remains intact.

The government is not required to prove each and every allegation about the enterprise or the manner in which the enterprise operated.  The Indictment charges a specific criminal enterprise, namely the Diablos Viejos and/or the Los Caranales Chingones, and alleges that the defendant was a member of the enterprise.  If you find the government has proven beyond a reasonable doubt the existence of the enterprise, but has not proven beyond a reasonable doubt that the defendant was associated with it, then you must find the defendant not guilty of Count 1.

The government is not required to prove each and every allegation about the enterprise or the manner in which the enterprise operated. The Indictment charges a specific enterprise, namely the Diablos Viejos and/or the Los Caranales Chingones enterprise. If you find that the government has proven beyond a reasonable doubt the existence of the Enterprise, but has not proved beyond a reasonable doubt that the defendant was associated with it, then you must find the defendant not guilty of the racketeering charges.

The Second Element: The Enterprise Affected Interstate Commerce

To establish the existence of an "enterprise," the government must also prove beyond a reasonable doubt that the conduct of the enterprise affected interstate commerce. Interstate commerce means trade or conducting business, or travel between one state and another; and foreign commerce means such trade, business or travel between the United States and another country. Therefore, interstate and foreign commerce may include the movement of money, goods, services or persons from one state to another or between the United States and another country. This may include among other matters, the purchase or sale of goods or supplies from outside the United States, or the state in which the enterprise was located, the use of interstate or international mail or wire facilities, or the causing of any of those things.

An enterprise "is generally engaged in commerce" when it is itself directly engaged in the production, distribution, or acquisition of goods or services in interstate commerce." If you find that the evidence is sufficient to prove that the enterprise "engaged in" interstate commerce or foreign commerce, the required nexus to interstate or foreign commerce is established, and therefore the government is not required to prove the alternative that the actives of the enterprise would have affected interstate or foreign commerce.

Regarding that alternative method of satisfying this element, to establish the requisite effect on interstate commerce, the government is required to prove a significant or substantial effect on interstate or foreign commerce. It is not necessary for the government to prove that the defendant know that the enterprise would affect interstate or foreign commerce, that the defendant intended to effect interstate or foreign commerce, or that the defendant engaged in, or that his activities affected interstate or foreign commerce. It makes no difference whether the type of interstate commerce affected is legal or illegal.

The Third Element: Defendant's Position in The Enterprise

With regard to the defendant's position in the enterprise, the government must prove beyond a reasonable doubt that the defendant was, at all relevant time, a knowing member or associate of the charged enterprise. The defendant need not have been a member of or associated with the enterprise for the entire period of its existence, but the defendant must have been associated with the enterprise at the time he allegedly committed the crimes charged. That is the government must prove that the defendant was connected to the enterprise in some meaningful way and that he knew of the existence of the enterprise and the general nature of its activities.

The defendant's membership in and association with the enterprise must be "knowing." An act is done "knowingly" if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. Knowledge may be established by circumstantial evidence just as any other fact in this case. In determining whether the government has proved the requisite element of knowledge, you may consider all of the facts and circumstances and the inferences that

could logically be drawn therefrom, provided that such evidence satisfies you beyond a reasonable doubt that the defendant's actions were knowing.

The government is not required to prove that the defendant had a formal position in the enterprise, or participated in all the activities of the enterprise, or had full knowledge of all the activities of the enterprise, or know about the participation of all the other members of the enterprise.  Rather, it is sufficient that the government prove beyond a reasonable doubt that at some time during the existence of the enterprise as alleged in the Indictment, the defendant was "associated with" the enterprise and that he know of the general nature of the enterprise, and that the enterprise extended beyond his own role in it.

The Fourth Element:  Conduct or Participate in the Conduct of the Affairs of the Enterprise

This means that the defendant intentionally performed acts, functions or duties which are necessary to, or helpful in the operation of the enterprise.  Thus, if the defendant participated in the operation or management of the enterprise itself or he had some part in directing the enterprise's affairs, that would satisfy this element  However, the defendant need not have exercised significant control over or within the enterprise, nor must he have had a formal position in the enterprise or primary responsibility for the enterprise's affairs.  Rather, an enterprise is "operated" not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management or carry out upper management's orders.  In other words, all who participate in the conduct of the enterprise, whether they are generals or foot soldiers are responsible for the affairs of the enterprise.  An enterprise might also be managed by one who exerts control over the enterprise.

The Fifth Element:  Pattern of Racketeering Activity

The Indictment alleges that the defendant committed racketeering acts, including murder, attempted murder, assault with dangerous weapons discharge of a firearm in furtherance of a crime of violence and conspiracy to commit assault with a dangerous weapon and other acts.  A "pattern of racketeering activity," generally means the following:

First, the defendant intentionally committed, or caused to aided and abetted the commission of two or more racketeering acts alleged in the Indictment.  These two or more racketeering acts must have been committed within 10 years of each other.  Your verdict must be unanimous as to which specific racketeering acts you find that the defendant committed, caused, or aided and abetted.

Second, the racketeering acts are "related:" that is have the same or similar purpose, results, participants, victim, or methods of commission, or be otherwise interrelated by distinguishing characteristics and not be merely isolated events.  To establish that two racketeering acts are related to the enterprise, the government must establish either: (1)that the defendant's position in the enterprise facilitated his commission of those illegal acts and that the racketeering acts had some impact on the enterprise, or (2) that the acts were in some way related to the affairs of the enterprise, or (3) that the defendant was able to commit the acts by virtue of his position or involvement in the affairs of the enterprise.

Third, the racketeering acts themselves either extended over a substantial period of time or posed a threat of continued criminal activity.  The government need not prove such a threat of

continuity by any mathematical formula or by any particular method of proof, but rather may prove it in a variety of ways.  For example, the threat of continued unlawful activity may be established when the evidence shows that the racketeering acts are part of a long-term association that exists for criminal purposes or when the racketeering acts are shown to be the regular way of conducting the affairs of the enterprise.

Moreover, in determining whether the government has proven the threat of continued unlawful activity, you are not limited to consideration of the specific racketeering acts charged against the defendant; rather, in addition to considering such acts you also may consider the nature of the enterprise, and other unlawful activities of the enterprise  and its members viewed in their entirety, including both charged and uncharged unlawful activities.

*Federal Jury Practice and Instructions, Criminal Companion Handbook*, Westlaw 3013, Vol. 2, PP. 20-18, United States v. Price, United States District Court E.D.N.Y., Docket No. 1:05-CR-00492, 2009WL2848256, RICO case. (Modified.)

**DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NUMBER 18**

**COUNT 1, RACKETEERING CONSPIRACY**

Count 1 of the Indictment charges Mr. Garcia with conspiring to violate 18 U.S.C. 1962(d), the RICO Statute.  Count 1 reads as follows:  (Insert)

In order to convict Mr. Garcia on the RICO conspiracy offense charged you must have determined that the enterprise mentioned in the Count existed, that the enterprise affected interstate commerce, and that Mr. Garcia was knowingly associated by that enterprise, as I have explained each of these elements to you in an earlier instruction.   If you have not determined that those elements were established, you need not consider Count 1 further.

If you have found that those elements were satisfied beyond a reasonable doubt, then you must determine whether Mr. Garcia knowingly and willfully conspired with at least one other person to participate, directly or indirectly, in the conduct of the affairs of that enterprise through a "pattern of racketeering activity" as that phrase has been defined in these instructions.

In that regard, however, the Government need not prove that any racketeering acts were actually committed.  Remember in this count the government need only prove that a defendant agreed that he or a co-conspirator would participate in at least two racketeering acts for the purpose of participating in the conduct  of the affairs of the enterprise.  The Government must prove, however, that the agreement was still in existence on or after _____.

There are various ways in which you can find that a defendant agreed to participate in the affairs of the enterprise through a pattern of racketeering activity.  You may, but are not required to find, that by actually committing or agreeing to commit two or more racketeering acts the defendant has shown that he agreed  to participate in the affairs of the enterprise through a pattern of racketeering activity.

The Government is not required to prove that Mr. Garcia had an agreement with every other conspirator or that he knew every other conspirator, or that he had full knowledge of all the

details of the conspiracy.  All that is required is that the Government prove that Mr. Garcia agreed with one or more persons to commit at least two racketeering acts and that he knew the general nature of the conspiracy, and knowingly and willfully became a member of it.  You must be unanimous as to the two or more racketeering acts Mr. Garcia conspired, that is, agreed to commit.

*Id.*, at Pp. 48-49

## DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NUMBER 19

## VIOLENT CRIMES IN AID OF RACKETEERING GENERALLY

To sustain a conviction for violent crimes in aid of racketeering the government must prove five elements beyond a reasonable doubt.  Those elements are:  (1) that the organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise.

*United States v. Conception*, 938 F.2d 369, 381, (2d Cir. 1992) (a seminal case in VICAR murder).  (The requested instruction adds element (1) above as a separate requirement instead of combining elements (1) and (2).  This general instruction can be incorporated into each VICAR the instruction(s) on each VICAR count(s).

## DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NUMBER 20

## VIOLENT CRIME IN AID OF RACKETEERING CONSPIRACY TO COMMIT MURDER IN THE FIRST DEGREE

Count 2 alleges that Pedro Garcia, Gonzalo Ramirez, Russell Worthey, Anthony Wright and others known and unknown, unlawfully and knowingly conspired to murder Israel Peralta, Mariano Sorano, Faustino Peralta and Robert Arco in aid of racketeering activity and in  order to gain entrance to and maintain and increase his position in the Diablos Viejos, an enterprise engaged in racketeering activity, all in violation of 18 U.S.C.1959(a)(5).

To find the defendant guilty of this crime you must find the following elements beyond a reasonable doubt:

First, that the Diablos Viejos is an enterprise;

Second, that the Diablos Viejos is an enterprise engaged in racketeering activity;

Third, that the defendant Garcia had a position in the Diablos Viejos;

Fourth, that the defendant Garcia, and others, conspired to commit the murders of Israel Peralta, Mariano Sorano, Faustino Peralta and Robert Arco: and

Fifth, that the defendant Garcia did so for the purpose of gaining entry to and maintaining and increasing his position in the Diablos Viejos.

The government is not required to prove that gaining entry or maintaining or increasing his position in the racketeering enterprise was the defendant's sole or principal motive for the conspiracy. It is sufficient if the defendant committed the crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership. The term "enterprise" in this instruction means any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity which is engaged in, or the activities of which affect interstate or foreign commerce.

As used herein, the term "murder" is defined by the law of the State of Kansas, and the government must show that the conspiracy was to commit first degree murder under K.S.A. 21-5402.

First degree murder in Kansas, under K.S.A. 21-5402, exists if you find beyond a reasonable doubt that the defendant, First, conspired to intentionally kill Israel Peralta, Mariano Sorano, Faustino Peralta or Robert Arco; Second that such conspiracy occurred on or about June 9, 2009

Conspiracy to commit first degree murder exists if you must find beyond a reasonable doubt that the defendant, (1), agreed with others to commit the crime of murder, (2) that the defendant did so with the intent that murder be committed, (3) the defendant or any party to the agreement acted in furtherance of the agreement by killing Israel Peralta, and (4) that the act occurred  on or about June 8, 2009, in the District of Kansas.

A person may be convicted of a conspiracy only if some act in furtherance of the agreement is proved to have been committed by a member of the conspiracy in an effort to effect or accomplish an object or purpose of the conspiracy. The act itself  need not be criminal in nature. It must, however, be an act which follows and tends toward the accomplishment of the object of the conspiracy. The act may be committed by a conspirator alone and it is not necessary that the other conspirators be present at the time the act is committed. Proof of only one act is sufficient.


Defendant Campbell's proposed Instruction 2, in United States v. Campbell, United States District Court for the District of Kansas, Case No. 07-CR-10142-JTM, March 3, 2009, and Court's Instruction 14, modified. to include PIK 4th Crim. 53.030 conspiracy and 53.040, conspiracy, act in furtherance defined

**DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NUMBER 21**

**COUNT 3 VIOLENT CRIME IN AID OF RACKETEERING MURDER IN THE FIRST DEGREE**

Count 3 alleges that the defendant Pedro Garcia and others committed the crime of first degree murder in aid or racketeering activity in violation of 18. U.S.C. 1959(a)(1), Specifically, the government must prove that on or about between 2008 and _____, in the District of Kansas Pedro Garcia and others, for the purpose of gaining entrance to and maintaining and increasing their position in the Diablos Viejos, an enterprise engaged in racketeering activity, did knowingly intentionally and unlawfully murder Israel Peralta.

To find the defendant guilty of this crime you must find the following elements beyond a reasonable doubt:

First, that the Diablos Viejos is an enterprise;

Second, that the Diablos Viejos is an enterprise engaged in racketeering activity;

Third, that the defendant Garcia had a position in the Diablos Viejos;

Fourth, that the defendant Garcia, and others, murdered Israel: and

Fifth, that the defendant Garcia did so for the purpose of gaining entry to and maintaining and increasing his position in the Diablos Viejos.

The government is not required to prove that gaining entry or maintaining or increasing his position in the racketeering enterprise was the defendant's sole or principal motive for the conspiracy. It is sufficient if the defendant committed the crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership. The term "enterprise" in this instruction means any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity which is engaged in, or the activities of which affect interstate or foreign commerce.

As used herein, the term "murder" is defined by the law of the State of Kansas, and the government must show that the conspiracy was to commit first degree murder under K.S.A. 21-5402.

First degree murder in Kansas, under K.S.A. 21-5402, exists if you find beyond a reasonable doubt that the defendant, First, killed Israel Peralta; Second that such killing was done intentionally and with premeditation; and Third, that the act occurred on or about between June 8, 2009, in the District of Kansas.

Defendant Campbell's proposed Instruction 2, in United States v. Campbell, United States District Court for the District of Kansas, Case No. 07-CR-10142-JTM, March 3, 2009, modified and PIK 4th Crim. - 54.110

**DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NUMBER 22**

**COUNT 4 VIOLENT CRIME IN AID OF RACKETEERING ATTEMPTED MURDER IN THE FIRST DEGREE**

Count 4 alleges that the defendant Pedro Garcia and others attempted to murder Mariano Sorano, Faustino Peralta and Roberto Arco in violation of 18. U.S.C. 1959(a)(5), Specifically, the government must prove that on or about between 2008 and _____, in the District of Kansas Pedro Garcia and others, for the purpose of gaining  entrance to and maintaining  and increasing their position in the Diablos Viejos, an enterprise engaged in racketeering activity,  did knowingly intentionally and unlawfully attempt to murder Mariano Sorano, Faustino Peralta and Roberto Arco.

To find the defendant guilty of this crime you must find the following elements beyond a reasonable doubt:

First, that the Diablos Viejos is an enterprise;

Second, that the Diablos Viejos is an enterprise engaged in racketeering activity;

Third, that the defendant Garcia had a position in the Diablos Viejos;

Fourth, that the defendant Garcia, and others, murdered Israel: and

Fifth, that the defendant Garcia did so for the purpose of gaining entry to and maintaining and increasing his position in the Diablos Viejos.

The government is not required to prove that gaining entry or maintaining or increasing his position in the racketeering enterprise was the defendant's sole or principal motive for the conspiracy.  It is sufficient if the defendant committed the crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership.   The term "enterprise" in this instruction means any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity which is engaged in, or the activities of which affect interstate or foreign commerce.

As used herein, the term murder is defined by the law of the State of Kansas, .S.A. 21-5402.

First degree murder in Kansas, under K.S.A. 21-5402, exists if you find beyond a reasonable doubt that the defendant, First, killed Israel Peralta; Second that such killing was done intentionally and with premeditation; and Third, that the act occurred on or about June 8, 2009. To establish attempted murder, the government must also prove (1) that the defendant performed

an overt act toward the commission of murder; (2) the defendant did so with the intent to commit murder; (3) the defendant failed to complete the commission of first degree murder; and this act occurred on or about June 8, 2009 in the District of Kansas.

Defendant Campbell's proposed Instruction 2, in United States v. Campbell, United States District Court for the District of Kansas, Case No. 07-CR-10142-JTM, March 3, 2009, modified to include PIK 4th Crim. - 54.110, first degree murder  and PIK 4th Crim. - 53.010, attempt.

## DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NUMBER 23

## COUNT 5 VIOLENT CRIME IN AID OF RACKETEERING ASSAULT WITH A DANGEROUS WEAPON

Count 5 alleges that the defendant Pedro Garcia and others unlawfully and knowingly assaulted Israel Peralta, Mariano Sorano, Faustino Peralta and Robert Arco with a dangerous weapon, to-wit a firearm in violation of 18. U.S.C. 1959(a)(3), Specifically, the government must prove that on or about between 2008 and _____, in the District of Kansas Pedro Garcia and others, for the purpose of gaining  entrance to and maintaining  and increasing their position in the Diablos Viejos, an enterprise engaged in racketeering activity,  did knowingly intentionally and unlawfully attempt to murder Mariano Sorano, Faustino Peralta and Roberto Arco.

To find the defendant guilty of this crime you must find the following elements beyond a reasonable doubt:

First, that the Diablos Viejos is an enterprise;

Second, that the Diablos Viejos is an enterprise engaged in racketeering activity;

Third, that the defendant Garcia had a position in the Diablos Viejos;

Fourth, that the defendant Garcia, and others, murdered Israel: and

Fifth, that the defendant Garcia did so for the purpose of gaining entry to and maintaining and increasing his position in the Diablos Viejos.

The government is not required to prove that gaining entry or maintaining or increasing his position in the racketeering enterprise was the defendant's sole or principal motive for the conspiracy.  It is sufficient if the defendant committed the crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership.   The term "enterprise" in this instruction means any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity which is engaged in, or the activities of which affect interstate or foreign commerce.

As used herein, assault with a dangerous weapon is defined by the law of the State of Kansas, .S.A. 21-5412(b)(1).

To find assault with a dangerous weapon exists if you must find beyond a reasonable doubt that the defendant, (1), knowingly placed Israel Peralta, Mariano Sorano, Faustino Peralta and Robert Arco in reasonable apprehension of immediate bodily harm, (2) the defendant did so with a deadly weapon and (3) this act occurred on or about June 8, 2009, in the District of Kansas.

Defendant Campbell's proposed Instruction 2, in United States v. Campbell, United States District Court for the District of Kansas, Case No. 07-CR-10142-JTM, March 3, 2009, modified to include PIK 4th Crim.- 54.280, aggravated assault.

**DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NUMBER 24**

**COUNT 7 VIOLENT CRIME IN AID OF RACKETEERING ASSAULT WITH A DANGEROUS WEAPON**

Count 7 alleges that the defendant Pedro Garcia and others unlawfully and knowingly committed an assault with a dangerous weapon upon Isidro Raleas-Velasquez, on June 8, 2009, in violation of 18 U.S.C. 1959(a)(3). Specifically, the government must prove that on or about June 8, 2009,  in the District of Kansas Pedro Garcia and others, for the purpose of gaining entrance to and maintaining  and increasing their position in the Diablos Viejos, an enterprise engaged in racketeering activity, did knowingly assault Raleas-Velasquez with a dangerous weapon..

To find the defendant guilty of this crime you must find the following elements beyond a reasonable doubt:

First, that the Diablos Viejos is an enterprise;

Second, that the Diablos Viejos is an enterprise engaged in racketeering activity;

Third, that the defendant Garcia had a position in the Diablos Viejos;

Fourth, that the defendant Garcia, and others, murdered Israel: and

Fifth, that the defendant Garcia did so for the purpose of gaining entry to and maintaining and increasing his position in the Diablos Viejos.

The government is not required to prove that gaining entry or maintaining or increasing his position in the racketeering enterprise was the defendant's sole or principal motive for the conspiracy. It is sufficient if the defendant committed the crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership. The term "enterprise" in this instruction means any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity which is engaged in, or the activities of which affect interstate or foreign commerce.

As used herein, assault with a dangerous weapon is defined by the law of the State of Kansas, at .K.S.A. 21-5412(b)(1).

As used herein, assault with a dangerous weapon is defined by the law of the State of Kansas, .S.A. 21-5412(b)(1).

To find assault with a dangerous weapon exists if you must find beyond a reasonable doubt that the defendant, (1), knowingly placed Isidro Raleas-Velazquez in reasonable apprehension of immediate bodily harm, (2) the defendant did so with a deadly weapon and (3) this act occurred on or about June 8, 2009, in the District of Kansas.

Defendant Campbell's proposed Instruction 2, in United States v. Campbell, United States District Court for the District of Kansas, Case No. 07-CR-10142-JTM, March 3, 2009, modified to include PIK 4th - 54.280 aggravated assault

**DEFENDANT GARCIA'S PROPOSED JURY INSTRUCTION NUMBER 25**

**COUNT 8 VIOLENT CRIME IN AID OF RACKETEERING CONSPIRACY TO COMMIT AN ASSAULT WITH A DANGEROUS WEAPON**

Count 8 alleges that the defendant Pedro Garcia and others unlawfully and knowingly conspired to commit an assault with a dangerous weapon upon Isidro Raleas-Velasquez, on June 8, 2009, violation of 18 U.S.C. 1959(a)(6).  Specifically, the government must prove that on or about June 8, 2009,  in the District of Kansas Pedro Garcia and others, for the purpose of gaining entrance to and maintaining  and increasing their position in the Diablos Viejos, an enterprise engaged in racketeering activity, did knowingly conspire to assault Raleas-Velasquez with a dangerous weapon..

To find the defendant guilty of this crime you must find the following elements beyond a reasonable doubt:

First, that the Diablos Viejos is an enterprise;

Second, that the Diablos Viejos is an enterprise engaged in racketeering activity;

Third, that the defendant Garcia had a position in the Diablos Viejos;

Fourth, that the defendant Garcia, and others, murdered Israel: and

Fifth, that the defendant Garcia did so for the purpose of gaining entry to and maintaining and increasing his position in the Diablos Viejos.

The government is not required to prove that gaining entry or maintaining or increasing his position in the racketeering enterprise was the defendant's sole or principal motive for the conspiracy.  It is sufficient if the defendant committed the crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that

membership.   The term "enterprise" in this instruction means any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity which is engaged in, or the activities of which affect interstate or foreign commerce.

As used herein, assault with a dangerous weapon is defined by the law of the State of Kansas, at .K.S.A. 21-5412(b)(1).

As used herein, assault with a dangerous weapon is defined by the law of the State of Kansas, .S.A. 21-5412(b)(1).

To find conspiracy to commit assault with a dangerous weapon exists if you must find beyond a reasonable doubt that the defendant, (1), agreed with others to commit the crime of aggravated assault, (2) that the defendant did so with the intent that aggravated assault be committed, (3) the defendant or any party to the agreement acted in furtherance of the agreement by placing Isidro Raleas-Velasquez in fear, and (4) that the act occurred  on or about June 8, 2009, in the District of Kansas.

A person may be convicted of a conspiracy only if some act in furtherance of the agreement is proved to have been committed by a member of the conspiracy in an effort to effect or accomplish an object or purpose of the conspiracy.  The act itself  need not be criminal in nature.  It must, however, be an act which follows and tends toward the accomplishment of the object of the conspiracy.  The act may be committed by a conspirator alone and it is not necessary that the other conspirators be present at the time the act is committed.  Proof of only one act is sufficient


 Defendant Campbell's proposed Instruction 2, in United States v. Campbell, United States District Court for the District of Kansas, Case No. 07-CR-10142-JTM, March 3, 2009, modified to include PIK 4th - 54.280 aggravated assault, PIK 4th Crim. 53.030 conspiracy and PIK4th Crim. 53040, conspiracy, act in furtherance defined.

Klenda Doc. 21O7177

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS
### (Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| **Plaintiff,** | } | Criminal Action |
| | } | |
| v. | } | No. 12-10089 -02, 03, 17- MLB |
| | } | |
| PEDRO GARCIA, | } | |
| a.k.a. Peter Garcia, | } | |
| a.k.a. Pistol Pete, | } | |
| GONZALO RAMIREZ, | } | |
| a.k.a. Gonzo, | } | |
| and JAYSON VARGAS, | } | |
| a.k.a Wee Wee, | } | |
| | } | |
| **Defendants.** | } | |

### PROPOSED INSTRUCTIONS OF THE UNITED STATES

Comes now the United States of America, by and through Assistant United States

Attorneys Aaron L. Smith and Lanny D. Welch, and hereby submits its proposed

instructions to the jury.

Respectfully submitted,

 BARRY R. GRISSOM
 UNITED STATES ATTORNEY

/s/ Aaron L. Smith
AARON L. SMITH  #20447
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Aaron.Smith3@usdoj.gov

/s/ Lanny D. Welch
LANNY D. WELCH  #13267
Assistant United States Attorney
301 N. Main, 1200 Epic Center
Wichita, Ks  67202
Phone: 316-269-6481
Lanny.Welch@usdoj.gov

## CERTIFICATE OF FILING

I hereby certify that on September 26, 2013, I electronically filed the foregoing

Proposed Jury Instructions with the Clerk of the Court by using the CM/ECF system

which will send a notice of electronic filing to all counsel of record.

/s/ Lanny D. Welch
Lanny D. Welch
Assistant U.S. Attorney

2

## GOVERNMENT'S PROPOSED INSTRUCTIONS TO THE JURY

### GOVERNMENT'S PROPOSED INSTRUCTION NO. 1

**The Indictment**

**COUNT 1**

The Grand Jury charges:

**The Enterprise**

1.      At various times relevant to this Indictment;

**JASON NAJERA, PEDRO GARCIA, GONZALO RAMIREZ, RUSSELL WORTHEY, ANTHONY WRIGHT, JOSHUA FLORES, JESUS FLORES, ANGEL CERDA, JUAN TORRES, ALFREDO BELTRAN-RUIZ, DONTE BARNES, JESUS SANCHEZ, ENRIQUE GOBIN, ALFONSO BANDA-HERNANDEZ, ANDREW GUSMAN, EUSEBIO SIERRA-MEDRANO, JAYSON VARGAS, ADAM FLORES, FABIAN NEAVE, JESUS TORRES, JOSE NEAVE, HERNAN QUEZADA, HUMBERTO ORTIZ,** the defendants, and others known and unknown, were leaders, members and associates of the **Nortenos**, a criminal organization whose members and associates engaged in narcotics distribution and acts of violence including acts involving murder and robbery, and which operated principally in Dodge City, Kansas.

2.      The **Nortenos**, including its leadership, membership and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4) (hereinafter "the enterprise"), that is, a group of individuals associated in fact. The

3

enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

3.      The **Nortenos** (Spanish: Northerners) is a street gang present in numerous states in the United States.  In Dodge City, Kansas, **Nortenos** members and associates identify with "sets" named **Diablos Viejos (DV)** and **Los Carnales Chingones (LCC).** The **DV** and **LCC** members are organized under the common identity of **Nortenos**.  Both the **DV** and **LCC** members identify with the same colors and symbols, identify themselves as **Nortenos**, and associate regularly in the commission of various crimes.

### Purposes of the Enterprise

4.      The purposes of the enterprise included the following:

a.      Enriching the members and associates of the enterprise through, among other things, murder, robbery, and distribution of narcotics.

b.      Preserving and protecting the power, territory and profits of the enterprise through the use of actual and threatened violence, including assaults and murder.

c.      Promoting and enhancing the enterprise and the activities and reputations of its members and associates.

d.      Keeping victims in fear of the enterprise and in fear of its members and associates through actual violence and threats of violence.

**Roles of the Defendants**

5.     The defendants participated in the operation and management of the enterprise.

    a.     Members and associates of the enterprise identify themselves through, amongst other things, clothing, hand signals and tattoos which signify gang affiliation.  Red clothing and paraphernalia are associated with the **Nortenos** street gang.  **Nortenos** gang members frequently reference the number "14" through hand signals and tattoos because the letter "N", which represents "Norteno", is the 14th letter of the alphabet.

    b.     The defendant **Jason NAJERA** was a leader of the enterprise who directed other members of the enterprise in carrying out unlawful and other activities in furtherance of the conduct of the enterprise's affairs.

    c.     Under the direction of **Jason NAJERA** and other leaders of the enterprise, including **Eusebio SIERRA-MEDRANO** and **Fabian NEAVE**, the defendants and others participated in unlawful and other activities in furtherance of the conduct of the enterprise's affairs.

**Means and Methods of the Enterprise**

6.     Among the means and methods by which the defendants and others conducted and participated in the conduct of the affairs of the enterprise were the following:

a.      Members of the enterprise and their associates used, attempted to use, and conspired to use murder, robbery and assault, which affected interstate commerce.

b.      Members of the enterprise and their associates committed, attempted and threatened to commit acts of violence, including murder and robbery, to protect and expand the enterprise's criminal operations.

c.      Members of the enterprise and their associates promoted a climate of fear through violence and threats of violence.

d.      Members of the enterprise and their associates used and threatened to use physical violence against various individuals, including rival gang members and associates.

e.      Members of the enterprise and their associates trafficked in narcotics, including methamphetamine, cocaine and marijuana.

### The Racketeering Conspiracy

7.      On or about and between 2008 through the date of this Indictment, both dates being approximate and inclusive, within the District of Kansas, and elsewhere, **JASON NAJERA, PEDRO GARCIA, GONZALO RAMIREZ, ANTHONY WRIGHT, JESUS SANCHEZ, EUSEBIO SIERRA-MEDRANO, JAYSON VARGAS, FABIAN NEAVE,** together with persons known and unknown, being persons associated with the **Nortenos** street gang, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate,

6

directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Sections 1961(1) and 1961(5) of Title 18, United States Code, consisting of multiple acts involving:

> a.      Distribution and possession with intent to distribute controlled substances and conspiracy to do so under 21 U.S.C. §841 and  §846.

and multiple acts involving:

> b.      Distribution and possession with intent to distribute controlled substances and conspiracy to do so under Kan. Stat. Ann. §§21-5705 and 5302 (formerly §§65-4161 and 21-36a05 and 21-3302).

> c.      Murder, chargeable under Kan. Stat. Ann. §§21-5402 and 5403 (formerly §§21-3401 and 3402), Kan. Stat. Ann. §21-5403 (formerly §21-3402), and attempts and conspiracies to do so under Kan. Stat. Ann.  §§21-5301 and 5302 (formerly §§21-3301 and 3302).

> d.      Robbery, chargeable under Kan. Stat. Ann. §21-5420 (formerly §21-3426 and §21-3427), and attempts and conspiracies to do so under Kan. Stat. Ann.  §§21-5301 and 5302 (formerly §§21-3301 and 3302).

8.      It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT 2

### Violent Crimes in Aid of Racketeering
### Conspiracy to Murder Israel Peralta, Mariano Sorano, Faustino Peralta, and Roberto Arco

9.      At all times relevant to this Indictment, the **Nortenos**, as more fully described in Paragraphs 1 through 6 of Count One of this Indictment, which are realleged and incorporated by reference as though set forth fully herein, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), namely the **Nortenos**, that is, a group of individuals associated in fact which was engaged in, and the activities of which affected, interstate and foreign commerce.  The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

10.     At all times relevant to this Indictment, the above-described enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, robbery, and narcotics trafficking in violation of the laws of the State of Kansas, and narcotics trafficking in violation of Title 21, United States Code, Sections 841 and 846.

8

11. On or about June 8, 2009, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**PEDRO GARCIA,
GONZALO RAMIREZ,
RUSSELL WORTHEY, and
ANTHONY WRIGHT**,

the defendants herein, and others known and unknown, unlawfully, and knowingly conspired to murder Israel Peralta, Mariano Sorano, Faustino Peralta, and Roberto Arco, in violation of Kan. Stat. Ann. §21-5402 (formerly §21-3401).

In violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT 3

### Violent Crimes in Aid of Racketeering
### Murder of Israel Peralta

12. Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

13. On or about June 8, 2009, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**PEDRO GARCIA,
GONZALO RAMIREZ,
RUSSELL WORTHEY, and
ANTHONY WRIGHT,**

the defendants herein, unlawfully, and knowingly murdered Israel Peralta, in violation of Kan. Stat. Ann. § 21-5402 (formerly §21-3401).

In violation of Title 18, United States Code, Section 1959(a)(1) and Section 2.

## COUNT 4

### Violent Crimes in Aid of Racketeering
### Attempted Murder of Mariano Sorano, Faustino Peralta, and Roberto Arco

14.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

15.     On or about June 8, 2009, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**PEDRO GARCIA,**
**GONZALO RAMIREZ,**
**RUSSELL WORTHEY, and**
**ANTHONY WRIGHT**,

the defendants herein, unlawfully, and knowingly attempted the murder of Mariano Sorano, Faustino Peralta, and Roberto Arco, in violation of Kan. Stat. Ann. §21-5402 (formerly §21-3401).

All in violation of Title 18, United States Code, Section 1959(a)(5) and Section 2.

## COUNT 5

### Violent Crimes in Aid of Racketeering
### Assault With a Dangerous Weapon Upon Israel Peralta, Mariano Sorano, Faustino Peralta, and Roberto Arco

16.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

17.     On or about June 8, 2009, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**PEDRO GARCIA,
GONZALO RAMIREZ,
RUSSELL WORTHEY, and
ANTHONY WRIGHT**,

the defendants herein, unlawfully, and knowingly assaulted Israel Peralta, Mariano Sorano, Faustino Peralta, and Roberto Arco with a dangerous weapon, to wit: a firearm, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

All in violation of Title 18, United States Code, Section 1959(a)(3) and Section 2.

## COUNT 6

### Possess/Discharge a Firearm in Furtherance of a Crime of Violence

18.     On or about June 8, 2009, in the District of Kansas, the defendants,

**PEDRO GARCIA,
GONZALO RAMIREZ,
RUSSELL WORTHEY, and
ANTHONY WRIGHT**,

the defendants herein, did knowingly possess firearms and discharge firearms, in furtherance of a crime of violence for which they may be prosecuted in a court of the United States, to wit: 18 U.S.C.§1959, referencing Murder in the First Degree in violation of Kan. Stat. Ann. §21-5402 (formerly §21-3401).

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and Section 2.

11

## COUNT 7

### Violent Crimes in Aid of Racketeering
### Assault with a Dangerous Weapon Upon Isidro Raleas-Velasquez

19.    Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

20.    On or about June 8, 2009, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**PEDRO GARCIA,**
**GONZALO RAMIREZ,**
**JOSHUA FLORES, and**
**JESUS FLORES,**

the defendants herein, and others known and unknown, unlawfully, and knowingly committed an assault with a dangerous weapon, to wit: a firearm, upon Isidro Raleas-Velasquez, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

In violation of Title 18, United States Code, Section 1959(a)(3) and Section 2.

## COUNT 8

### Violent Crimes in Aid of Racketeering
### Conspiracy to Commit an Assault with a Dangerous Weapon

21.    Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

22.    On or about June 8, 2009, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**PEDRO GARCIA,**
**GONZALO RAMIREZ,**
**JOSHUA FLORES, and**
**JESUS FLORES,**

the defendants herein, and others known and unknown, unlawfully, and knowingly conspired to commit an assault with a dangerous weapon, to wit: a firearm, upon Isidro Raleas-Velasquez, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

In violation of Title 18, United States Code, Section 1959(a)(6).

## COUNT 9

### Possess and Brandish a Firearm in Furtherance of a Crime of Violence

23.     On or about June 8, 2009, in the District of Kansas,

**PEDRO GARCIA,**
**GONZALO RAMIREZ,**
**JOSHUA FLORES, and**
**JESUS FLORES,**

the defendants herein, did knowingly possess firearms and brandish firearms, in furtherance of a crime of violence for which they may be prosecuted in a court of the United States, to wit: 18 U.S.C. §1951 and 18 U.S.C. §1959, referencing Aggravated Robbery, in violation of Kan. Stat. Ann. §21-5420(b)(1) (formerly §21-3427).

In violation of Title 18, United States Code, Section 924(c)(1)(A) and Section 2.

13

## COUNT 10

### Violent Crimes in Aid of Racketeering
### Conspiracy to Commit the Murder of Rumalda Hipolito and Abel Hernandez

24.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

25.     On or about October 4, 2008, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

**ANGEL CERDA,**
**JUAN TORRES, and**
**GONZALO RAMIREZ,**

the defendants herein, and others known and unknown, unlawfully, and knowingly conspired to murder Rumalda Hipolito and Abel Hernandez, in violation of Kan. Stat. Ann. §21-5402  formerly §21-3401).

All in violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT 11

### Violent Crimes in Aid of Racketeering
### Attempted Murder of Rumalda Hipolito and Abel Hernandez

26.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

27.     On or about October 4, 2008, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

<div align="center">

**ANGEL CERDA,**
**JUAN TORRES, and**
**GONZALO RAMIREZ,**

</div>

the defendants herein, unlawfully, and knowingly attempted the murder of Rumalda Hipolito and Abel Hernandez, in violation of Kan. Stat. Ann. §21-5402 (formerly §21-3401).

All in violation of Title 18, United States Code, Section 1959(a)(5) and Section 2.

<div align="center">

### COUNT 12

### Violent Crimes in Aid of Racketeering
### Assault With a Dangerous Weapon Upon Rumalda Hipolito and Abel Hernandez

</div>

28.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

29.     On or about October 4, 2008, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the **Nortenos**, an enterprise engaged in racketeering activity,

<div align="center">

**ANGEL CERDA,**
**JUAN TORRES, and**
**GONZALO RAMIREZ,**

</div>

the defendants herein, unlawfully, and knowingly assaulted Rumalda Hipolito and Abel Hernandez, with a dangerous weapon, to wit: a firearm, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

<div align="center">15</div>

All in violation of Title 18, United States Code, Section 1959(a)(3) and Section 2.

## COUNT 13

### Possess and Discharge a Firearm in Furtherance of a Crime of Violence

30.      On or about October 4, 2008, in the District of Kansas,

**ANGEL CERDA,
JUAN TORRES, and
GONZALO RAMIREZ,**

the defendants herein, did knowingly possess firearms and discharge firearms, in

furtherance of a crime of violence for which they may be prosecuted in a court of the

United States, to wit: 18 U.S.C. § 1959, referencing Aggravated Assault, in violation of

Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and Section 2.

## COUNT 23

### Violent Crimes in Aid of Racketeering
### Assault with a Dangerous Weapon Upon Jose Santaella and Santos Gutierrez

47.      Paragraphs 9 and 10 of Count Two of this Indictment are realleged and

incorporated by reference as though fully set forth herein.

48.      On or about April 30, 2011, in the District of Kansas, for the purpose of

gaining entrance to and maintaining and increasing position in the **Nortenos**, an

enterprise engaged in racketeering activity,

**JAYSON VARGAS, and
ADAM FLORES,**

16

the defendants herein, unlawfully, and assaulted Jose Santaella and Santos Gutierrez with

a dangerous weapon, to-wit: a firearm, in violation of Kan. Stat. Ann. §21-5412(b)(1)

(formerly §21-3410(a)).

All in violation of Title 18, United States Code, Section 1959(a)(3) and Section 2.


## COUNT 24

### Violent Crimes in Aid of Racketeering
### Conspiracy to Commit an Assault with a Dangerous Weapon

49.     Paragraphs 9 and 10 of Count Two of this Indictment are realleged and

incorporated by reference as though fully set forth herein.

50.     On or about April 30, 2011, in the District of Kansas, for the purpose of

gaining entrance to and maintaining and increasing position in the **Nortenos**, an

enterprise engaged in racketeering activity,

**JAYSON VARGAS, and**
**ADAM FLORES,**

the defendants herein, and others known and unknown, unlawfully, and knowingly

conspired to commit an assault with a dangerous weapon, to wit; a firearm, against Jose

Santaella and Santos Gutierrez, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly

§21-3410(a)).

In violation of Title 18, United States Code, Section 1959(a)(6).

17

## COUNT 25

### Possess and Brandish a Firearm in Furtherance of a Crime of Violence

51.     On or about April 30, 2011, in the District of Kansas,

**JAYSON VARGAS, and
ADAM FLORES,**

the defendants herein, did knowingly possess firearms and brandish firearms, in furtherance of a crime of violence for which they may be prosecuted in a court of the United States, to wit:18 U.S.C. §1951 and 18 U.S.C. §1959, referencing Aggravated Robbery, in violation of Kan. Stat. Ann. §21-5420(b)(1) (formerly §21-3427).

In violation of Title 18, United States Code, Section 924(c)(1)(A) and Section 2.

## COUNT 29

### Felon in Possession of a Firearm

58.     On or about August 20, 2011, in the District of Kansas, the defendant,

**JAYSON VARGAS**,

having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce, a firearm, to wit: an Ejericto Argentino, Model 1927, .45 caliber handgun, with an obliterated Serial Number, said firearm having been shipped and transported in interstate commerce.

In violation of Title 18, United States Code, Section 922(g)(1) and Title 18, United States Code, Section 924(a)(2).

## GOVERNMENT'S PROPOSED
## INSTRUCTION NO. 2

**Count 1 – Racketeer Influenced and Corrupt Organizations (RICO) Conspiracy**

Count 1 of the indictment charges that from on or about 2008 to on or about 2012, the defendants knowingly conspired and agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity.  In order to convict a defendant on the RICO conspiracy offense charged in Count 1, the government must prove each of the following three elements beyond a reasonable doubt:

**One:**        A conspiracy or agreement, as detailed in the indictment, existed between two or more persons to participate in the affairs of an enterprise that affected interstate commerce through a pattern of racketeering activity;

**Two:**        That the defendant deliberately joined or became a member of the conspiracy or agreement with knowledge of its purpose; and

**Three:**      The defendant agreed that someone, not necessarily the defendant, would commit at least two of the racketeering acts detailed in the indictment.

The government need not prove a defendant actually committed two racketeering acts, nor that the objectives or purposes of the conspiracy, whatever they may have been, have been achieved or accomplished, nor that the alleged enterprise was actually established, that the defendant was actually employed by or associated with the enterprise, or that the enterprise was actually engaged in, or its activities actually

19

affected, interstate or foreign commerce.  The essential nature of Count 1 is the

conspiratorial agreement; the ultimate success or failure of the conspiracy is irrelevant.[1]

---

[1] United States v. Harris, 695 F.3d 1125, 1131 (10th Cir. 2012); United States v. Knight, 659 F.3d 1285 (10th Cir. 2011).

20

## GOVERNMENT'S PROPOSED
## INSTRUCTION NO. 3

### Agreement to Commit a RICO Offense

As I previously stated, the agreement to commit a RICO offense is the essential aspect of a RICO conspiracy offense.

The jury may find that a defendant has entered into the requisite agreement to violate RICO when the government has proven beyond a reasonable doubt that the defendant agreed with at least one other co-conspirator that at least two racketeering acts would be committed by a member of the conspiracy in the conduct of the affairs of the enterprise. The government is not required to prove that the defendant personally committed two racketeering acts, or that he agreed to personally commit two racketeering acts. Rather, it is sufficient if the government proves beyond a reasonable doubt that the defendant agreed to participate in the enterprise with the knowledge and intent that at least one member of the RICO conspiracy (which could be, but need not be, the defendant himself) would commit at least two acts of racketeering in the conduct of affairs of the enterprise.

Moreover, the indictment need not specify the predicate racketeering acts that the defendant agreed would be committed by some member of the conspiracy in conducting the affairs of the enterprise. You may also consider evidence presented of other racketeering acts committed or agreed to be committed by any co-conspirator in furtherance of the enterprise's affairs, including racketeering acts in which the defendant

21

is not named in the indictment, to determine whether the defendant agreed that at least one member of the conspiracy would commit two or more racketeering acts.

Moreover, in order to convict the defendant of the RICO conspiracy offense, the jury's verdict must be unanimous as to which type or types of predicate racketeering activity the defendant agreed would be committed; for example, at least two acts of murder, or robbery, or drug trafficking, or any combination thereof.[2]

Furthermore, to establish the requisite conspiratorial agreement, the government is not required to prove that each co-conspirator explicitly agreed with every other co-conspirator to commit the substantive RICO offense, knew all his fellow conspirators, or was aware of all of the details of the conspiracy.  Rather, to establish sufficient knowledge, it is only required that the defendant knew the general nature and common purpose of the conspiracy and that the conspiracy extended beyond his individual role. Moreover, the elements of a RICO conspiracy, such as the conspiratorial agreement, the defendant's knowledge of it, and the defendant's participation in the conspiracy, may be inferred from circumstantial evidence.  For example, when the evidence establishes that the defendant and at least one other conspirator committed several racketeering acts in furtherance of the charged enterprise's affairs, the jury may infer the existence of the requisite agreement to commit a RICO offense.[3]  However, it is for the jury to determine

---

[2] See, e.g., United States v. Glecier, 923 F.2d 496, 499-500 (7th Cir. 1991); United States v. Crockett, 979 F.2d 1204, 1208-09 (7th Cir. 1992); United States v. Phillips, 874 F.2d 123, 125-28 (3d Cir. 1989); United States v. Sutherland, 656 F.2d 1181, 1197 (5th Cir. 1981).

[3] See, e.g., United States v. Ashman, 979 F.2d 469, 492 (7th Cir. 1992); United States v. Crockett, 979 F.2d 1204, 1208-09 (7th Cir. 1992); United States v. Carlock, 806 F.2d 535, 547 (5th Cir. 1986); United States v. Melton, 689 F.2d 679, 683 (7th Cir. 1982); United States v. Sutherland, 656 F.2d 1181, 1187 n.4 (5th Cir. 1981); United States v. Elliott, 571 F.2d 880, 903 (5th Cir. 1978).

whether, based on the entirety of the evidence, the government has proven that the defendant entered into the required conspiratorial agreement.

Furthermore, it is not necessary that the government prove that a particular defendant was a member of the conspiracy from its beginning.  Different persons may become members of the conspiracy at different times.

If you find that there is a conspiracy, you may consider the acts and statements of any other member of the conspiracy during and in the furtherance of the conspiracy as evidence against a defendant whom you have found to be a member of it.  When persons enter into a conspiracy, they become agents for each other, so that the act or statement of one conspirator during the existence of, and in furtherance of, the conspiracy is considered the act or statement of all the other conspirators and is evidence against them all.

Moreover, a defendant may be convicted as a conspirator even though he plays a minor role in the conspiracy, provided that you find beyond a reasonable doubt that the conspiracy existed and that the defendant knowingly participated in the conspiracy with the intent to accomplish its objective(s) or assist other conspirators in accomplishing its objective(s).[4]

---

[4] Seventh Circuit Pattern Jury Instructions (1999 ed.); Eleventh Circuit Pattern Jury Instructions § 71.2 (2003 ed.); Salinas v. United States, 522 U.S. 52, 62-65 (1997); United States v. Lawson, 535 F.3d 434, 445 (6th Cir. 2008); United States v. Useni, 516 F.3d 634, 646 (7th Cir. 2008); United States v. Quinones, 511 F.3d 289, 316 (2d Cir. 2007); United States v. Browne, 505 F.3d 1229, 1265 (11th Cir. 2007); United States v. Smith, 413 F.3d 1253, 1272-1273 (10th Cir. 2005); United States v. Saadey, 393 F.3d 669, 676 (6th Cir. 2005); United States v. Pipkins, 378 F.3d 1281, 1288 (11th Cir. 2004); United States v. Lee, 374 F.3d 637, 646-47 (8th Cir. 2004); United States v. Harriston, 329 F.3d 779, 785 (11th Cir. 2003); United States v. Ciccone, 312 F.3d 535, 542 (2d Cir. 2002); United States v. Abbell, 271 F.3d 1286, 1299 (11th Cir. 2001); United States v. Nguyen, 255 F.3d 1335, 1341 (11th Cir. 2001); United

23

## GOVERNMENT'S PROPOSED
## INSTRUCTION NO. 4[5]

### Count 2 - Conspiracy to Murder

Count 2 charges the defendant(s) committed a violent crime in aid of racketeering,

Conspiracy to Murder, which is a violation of Title 18, United States Code § 1959(a)(5).

In order to convict a defendant of the Violent Crime in Aid of Racketeering offense

charged in Count 2, the government must prove each of the following five elements

beyond a reasonable doubt:

| | |
|---|---|
| **One:** | There existed an enterprise; |
| **Two:** | The enterprise was engaged in racketeering activity; |
| **Three:** | The defendant(s) was a member of the enterprise; |
| **Four:** | The defendant(s) conspired to murder any person; |
| **Five:** | For the general purpose of gaining entry, maintaining or increasing his position in the racketeering enterprise.[6] |

### Enterprise

"Enterprise" includes any group of individuals associated-in-fact although

not a legal entity, which is engaged in, or the activities of which affect, interstate

---

States v. Zichettello, 208 F.3d 72, 100 (2d Cir. 2000); United States v. Posada-Rios, 158 F.3d 832, 857 (5th Cir. 1998); United States v. To, 144 F.3d 737, 744 (11th Cir. 1998); United States v. Starrett, 55 F.3d 1525, 1543-44 (11th Cir. 1995); United States v. Quintanilla, 2 F.3d 1469, 1484 (7th Cir. 1993); United States v. Eufrasio, 935 F.2d 553, 577 (3d Cir. 1991); United States v. Rastelli, 870 F.2d 822, 825 (2d Cir. 1989); United States v. Neapolitan, 791 F.2d 489, 498 (7th Cir. 1968); United States v. Elliot, 571 F.2d 880, 903-04 (5th Cir. 1978).

[5] This instruction, with slight modification to identify the appropriate defendant, can also be used for Count 10.

[6] United States v. Smith, 413 F.3d 1253, 1277 (10th Cir. 2005); United States v. Arrington, 409 Fed.Appx. 190, 2010 WL 4027823 (C.A. 10 (N.M.)).

24

or foreign commerce.  An enterprise can be any group of persons associated together for a common purpose of engaging in a course of conduct and may be proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.  An enterprise need not have a hierarchical structure or a chain of command.  Decisions may be made on an ad hoc basis and by any number of methods – by majority vote, consensus or simply a show of strength.  Members of the enterprise may perform different roles at different times.  The group need not have a name, regular meetings, dues or established rules and regulations.  Such an association of persons may retain its status as an enterprise even though the membership of the association changes by the addition or loss of individuals during the course of its existence.  However, the government must prove that an association-in-fact enterprise, as charged in this case, had a common purpose, that they interacted or associated in some way to advance this shared purpose, and that the members of the enterprise so functioned long enough to complete a pattern of racketeering activity.[7]

In this case, the indictment charges that an illegal association-in-fact enterprise existed, and that it was an association of individuals known as Nortenos, with sub-sets identified as Diablos Viejos (DV) and Los Carnales Chingones (LCC), which engaged in narcotics distribution and acts of violence including acts

---

[7] Boyle v. United States, 556 U.S. 938 (2009); United States v. Hutchinson, 573 F.3d 1011, 1019-1022 (10th Cir. 2009).

25

of murder and robbery.  The indictment charges that the purpose of the Nortenos

enterprise was enriching the members and associates of the enterprise through,

among other things, murder, robbery and distribution of narcotics; preserving and

protecting the power, territory and profits of the Nortenos enterprise through the

use of actual and threatened violence, including assaults and murder; promoting

and enhancing the Nortenos enterprise and activities and reputations of its

members and associates; and keeping victims in fear of the Nortenos enterprise

and in fear of its members and associates through actual violence and threatened

violence.

### Interstate Commerce

The government must prove beyond a reasonable doubt that the enterprise

engaged in interstate or foreign commerce or that its activities had an effect on

interstate or foreign commerce in any way.  "Interstate commerce" means

commerce between the states of the United States and includes trade or conducting

business or travel between one state and another state; and foreign commerce

means such trade, business or travel between the United States and another

country.  Therefore, interstate or foreign commerce may include the movement of

money, goods, services or persons from one state to another state or between the

United States and another country.

It is not necessary to prove the acts of any particular defendant affected

interstate or foreign commerce as long as the acts of the enterprise had such effect.

It is also not necessary for the government to prove that the racketeering activity

affected interstate or foreign commerce; rather, it is the enterprise and its activities considered in their entirety that must be shown to have that effect.  On the other hand, this effect on interstate or foreign commerce may be established through the effect caused by the racketeering activity.

The evidence also need not show any particular degree of an effect on interstate commerce.  The government is not required to prove a significant or substantial effect on interstate or foreign commerce.  Rather, a minimal effect is sufficient.  Finally, the government is not required to prove that any defendant knew he was affecting interstate or foreign commerce.

You are instructed that the purchase or sale of controlled substances produced or cultivated outside of Kansas; the use of firearms manufactured outside of Kansas; or the theft of money intended by the rightful owner to be sent or wired in interstate or foreign commerce may be sufficient to prove an effect on interstate commerce.[8]

<div align="center">

**<u>Racketeering Activity</u>**

</div>

The indictment alleges that the following acts of racketeering activity were engaged in by the enterprise: Murder, Robbery and Distribution of Narcotics. "Racketeering Activity" includes such offenses as Murder, Robbery and Distribution of Narcotics.  To prove the Nortenos enterprise "engaged in racketeering activity" there must be some nexus between the enterprise and the racketeering activity.  This is

---

[8] United States v. Smith, 413 F.3d  1253, 1273-74 (10th Cir. 2005); United State v. Marino, 277 F.3d 11, 35 (1st Cir. 2002)(the government does not need to show that a RICO enterprise's effect on interstate commerce is substantial).

established by showing that members or associates of the enterprise committed

racketeering activity on behalf of or in connection with the enterprise.  It is up to you to

determine whether the enterprise engaged in these activities as charged.  You should give

the words "engaged in" their ordinary, everyday meaning.

## Conspiracy to Murder

The government must prove beyond a reasonable doubt that the defendant(s)

committed a Conspiracy to Murder as defined by Kansas state law.  Under Kansas

Statutes Annotated § 21-5402, a person commits the offense of Conspiracy to Murder if:

### Conspiracy to Murder[9]

To establish this charge, each of the following claims must be proved:

1. That the defendant agreed with another person or others to commit or assist in the commission of the crime of murder;

2. That the defendant did so agree with the intent that the crime of murder be committed;

3. That the defendant or any party to the agreement acted in furtherance of the agreement; and

4. That this act occurred on or about the 8th day of June, 2009, in Ford County, Kansas.

The definition of murder (murder in the first degree and felony murder), the crime charged to be the subject of the conspiracy, is set forth below.

---

[9] Pattern Instructions for Kansas (PIK) – Criminal 4th, PIK 55.03.

28

### Conspiracy - Defined[10]

A conspiracy is an agreement with another or other persons to commit a crime or to assist in committing a crime, followed by an act in furtherance of the agreement.

The agreement may be established in any manner sufficient to show understanding. It may be oral or written, or inferred from all of the facts and circumstances.

### Conspiracy - Act in Furtherance Defined[11]

A person may be convicted of a conspiracy only if some act in furtherance of the agreement is proved to have been committed. An act in furtherance of the agreement is any act knowingly committed by a member of the conspiracy in an effort to effect or accomplish an object or purpose of the conspiracy.  The act itself need not be criminal in nature. It must, however, be an act which follows and tends towards the accomplishment of the object of the conspiracy. The act may be committed by a conspirator alone and it is not necessary that the other conspirator be present at the time the act is committed. Proof of only one act is sufficient.

### Murder in the First Degree[12]

To establish this charge, each of the following claims must be proved:

1.      That the defendant intentionally killed Israel Peralta;

2.      That such killing was done with premeditation; and

3.      That this act occurred on or about the 8th day of June, 2009, in Ford County, Kansas.

---

[10] Pattern Instructions for Kansas (PIK) – Criminal 4th, PIK 55.05.
[11] Pattern Instructions for Kansas (PIK) – Criminal 4th, PIK 55.06.
[12] Pattern Instructions for Kansas (PIK) – Criminal 4th, PIK 56.01.

In this instruction the Court has set out for your consideration the essential claims which must be proved by the government before you may find the defendant guilty of premeditated murder.

If you do not have a reasonable doubt from all the evidence that the government has proven murder in the first degree then you will enter a verdict of guilty.

If you have a reasonable doubt as to the guilt of the defendant as to the crime of murder in the first degree, then you must consider whether the defendant is guilty of murder in the second degree.

## Premeditation - Defined[13]

Premeditation means to have thought the matter over beforehand, in other words, to have formed the design or intent to kill before the act. Although there is no specific time period required for premeditation, the concept of premeditation requires more than the instantaneous, intentional act of taking another's life.

## Intentionally - Defined[14]

Intentionally means conduct that is purposeful and willful and not accidental. Intentional includes the terms "knowing," "willful," "purposeful" and "on purpose."

## Murder in the Second Degree[15]

If you do not agree that the defendant is guilty of murder in the first degree, you should then consider the lesser included offense of murder in the second degree.

To establish this charge, each of the following claims must be proved:

1.      That the defendant intentionally killed Israel Peralta; and

---

[13] Pattern Instructions for Kansas (PIK) – Criminal 4th, PIK 56.04.
[14] Id.
[15] Pattern Instructions for Kansas (PIK) – Criminal 4th, PIK 56.03.

2.      That this act occurred on or about the 8th day of June, 2009, in Ford County, Kansas.

## Position Within the Enterprise

The government must prove the defendant's general purpose in committing the Conspiracy to Murder was to gain entrance, maintain or increase his position within the enterprise.  The government is not required to prove it was the defendant's sole or his principal motive in committing the crime.  Proof that the crime was committed as an integral aspect of membership in the enterprise is sufficient to establish he acted to gain entry, maintain or increase his position in the enterprise.[16]

---

[16] United States v. Smith, 413 F.3d 1253, 1277-78 (10th Cir. 2005); United States v. Concepcion, 983 F.2d 369, 381 (2d Cir. 1992).

31

## GOVERNMENT'S PROPOSED
## INSTRUCTION NO. 5

### Count 3 – Murder of Israel Peralta

Count 3 charges the defendant(s) committed a violent crime in aid of racketeering, Murder of Israel Peralta, which is a violation of Title 18, United States Code § 1959(a)(1).  In order to convict a defendant of the Violent Crime in Aid of Racketeering offense charged in Count 2, the government must prove each of the following five elements beyond a reasonable doubt:

| | | |
|---|---|---|
| **One:** | There existed an enterprise; |
| **Two:** | The enterprise was engaged in racketeering activity; |
| **Three:** | The defendant(s) was a member of the enterprise; |
| **Four:** | The defendant(s) murdered Israel Peralta; |
| **Five:** | For the general purpose of gaining entry, maintaining or increasing his position in the racketeering enterprise.[17] |

### Enterprise

"Enterprise" includes any group of individuals associated-in-fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce.  An enterprise can be any group of persons associated together for a common purpose of engaging in a course of conduct and may be proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.  An enterprise

---

[17] United States v. Smith, 413 F.3d 1253, 1277 (10th Cir. 2005); United States v. Arrington, 409 Fed.Appx. 190, 2010 WL 4027823 (C.A. 10 (N.M.)).

need not have a hierarchical structure or a chain of command.  Decisions may be made on an ad hoc basis and by any number of methods – by majority vote, consensus or simply a show of strength.  Members of the enterprise may perform different roles at different times.  The group need not have a name, regular meetings, dues or established rules and regulations.  Such an association of persons may retain its status as an enterprise even though the membership of the association changes by the addition or loss of individuals during the course of its existence.  However, the government must prove that an association-in-fact enterprise, as charged in this case, had a common purpose, that they interacted or associated in some way to advance this shared purpose, and that the members of the enterprise so functioned long enough to complete a pattern of racketeering activity.[18]

In this case, the indictment charges that an illegal association-in-fact enterprise existed, and that it was an association of individuals known as Nortenos, with sub-sets identified as Diablos Viejos (DV) and Los Carnales Chingones (LCC), which engaged in narcotics distribution and acts of violence including acts of murder and robbery.  The indictment charges that the purpose of the Nortenos enterprise was enriching the members and associates of the enterprise through, among other things, murder, robbery and distribution of narcotics; preserving and protecting the power, territory and profits of the Nortenos enterprise through the

---

[18] Boyle v. United States, 556 U.S. 938 (2009); United States v. Hutchinson, 573 F.3d 1011, 1019-1022 (10th Cir. 2009).

use of actual and threatened violence, including assaults and murder; promoting and enhancing the Nortenos enterprise and activities and reputations of its members and associates; and keeping victims in fear of the Nortenos enterprise and in fear of its members and associates through actual violence and threatened violence.

### Interstate Commerce

The government must prove beyond a reasonable doubt that the enterprise engaged in interstate or foreign commerce or that its activities had an effect on interstate or foreign commerce in any way.  "Interstate commerce" means commerce between the states of the United States and includes trade or conducting business or travel between one state and another state; and foreign commerce means such trade, business or travel between the United States and another country.  Therefore, interstate or foreign commerce may include the movement of money, goods, services or persons from one state to another state or between the United States and another country.

It is not necessary to prove the acts of any particular defendant affected interstate or foreign commerce as long as the acts of the enterprise had such effect. It is also not necessary for the government to prove that the racketeering activity affected interstate or foreign commerce; rather, it is the enterprise and its activities considered in their entirety that must be shown to have that effect.  On the other hand, this effect on interstate or foreign commerce may be established through the effect caused by the racketeering activity.

The evidence also need not show any particular degree of an effect on interstate commerce.  The government is not required to prove a significant or substantial effect on interstate or foreign commerce.  Rather, a minimal effect is sufficient.  Finally, the government is not required to prove that any defendant knew he was affecting interstate or foreign commerce.

You are instructed that the purchase or sale of controlled substances produced or cultivated outside of Kansas; the use of firearms manufactured outside of Kansas; or the theft of money intended by the rightful owner to be sent or wired in interstate or foreign commerce may be sufficient to prove an effect on interstate commerce.[19]

## Racketeering Activity

The indictment alleges that the following acts of racketeering activity were engaged in by the enterprise: Murder, Robbery and Distribution of Narcotics. "Racketeering Activity" includes such offenses as Murder, Robbery and Distribution of Narcotics.  To prove the Nortenos enterprise "engaged in racketeering activity" there must be some nexus between the enterprise and the racketeering activity.  This is established by showing that members or associates of the enterprise committed racketeering activity on behalf of or in connection with the enterprise.  It is up to you to determine whether the enterprise engaged in these activities as charged.  You should give the words "engaged in" their ordinary, everyday meaning.

---

[19] United States v. Smith, 413 F.3d  1253, 1273-74 (10th Cir. 2005); United State v. Marino, 277 F.3d 11, 35 (1st Cir. 2002)(the government does not need to show that a RICO enterprise's effect on interstate commerce is substantial).

35

**Murder**

The government must prove beyond a reasonable doubt that the defendant(s) committed a Murder as defined by Kansas state law.  Under Kansas Statutes Annotated § 21-5402, a person commits the offense of Murder if:

### Murder in the First Degree[20]

To establish this charge, each of the following claims must be proved:

1. That the defendant intentionally killed Israel Peralta;

2. That such killing was done with premeditation; and

3. That this act occurred on or about the 8th day of June, 2009, in Ford County, Kansas.

In this instruction the Court has set out for your consideration the essential claims which must be proved by the government before you may find the defendant guilty of premeditated murder.

If you do not have a reasonable doubt from all the evidence that the government has proven murder in the first degree then you will enter a verdict of guilty.

If you have a reasonable doubt as to the guilt of the defendant as to the crime of murder in the first degree, then you must consider whether the defendant is guilty of murder in the second degree.

### Premeditation - Defined[21]

Premeditation means to have thought the matter over beforehand, in other words, to have formed the design or intent to kill before the act. Although there is no specific time period required for premeditation, the concept of premeditation requires more than the instantaneous, intentional act of taking another's life.

---

[20] Pattern Instructions for Kansas (PIK) – Criminal 4th, PIK 56.01.
[21] Pattern Instructions for Kansas (PIK) – Criminal 4th, PIK 56.04.

## Intentionally - Defined[22]

Intentionally means conduct that is purposeful and willful and not accidental. Intentional includes the terms "knowing," "willful," "purposeful" and "on purpose."

## Murder in the Second Degree[23]

If you do not agree that the defendant is guilty of murder in the first degree, you should then consider the lesser included offense of murder in the second degree.

To establish this charge, each of the following claims must be proved:

1.    That the defendant intentionally killed Israel Peralta; and

2.    That this act occurred on or about the 8th day of June, 2009, in Ford County, Kansas.

## Position Within the Enterprise

The government must prove the defendant's general purpose in committing the Murder of Israel Peralta was to gain entrance, maintain or increase his position within the enterprise. The government is not required to prove it was the defendant's sole or even his principal motive in committing the crime. Proof that the crime was committed as an integral aspect of membership in the enterprise is sufficient to establish he acted to gain entry, maintain or increase his position in the enterprise.[24]

---

[22] Id.
[23] Pattern Instructions for Kansas (PIK) – Criminal 4th, PIK 56.03.
[24] United States v. Smith, 413 F.3d 1253, 1277-78 (10th Cir. 2005); United States v. Concepcion, 983 F.2d 369, 381 (2d Cir. 1992).

37

## GOVERNMENT'S PROPOSED
## INSTRUCTION NO. 6[25]

### Count 4 - Attempted Murder

Count 4 charges the defendant(s) committed a violent crime in aid of racketeering,

Attempted Murder, which is a violation of Title 18, United States Code § 1959(a)(5).  In

order to convict a defendant of the Violent Crime in Aid of Racketeering offense charged

in Count 4, the government must prove each of the following five elements beyond a

reasonable doubt:

> **One:**   There existed an enterprise;
>
> **Two:**   The enterprise was engaged in racketeering activity;
>
> **Three:**   The defendant(s) was a member of the enterprise;
>
> **Four:**   The defendant(s) attempted to murder Mariano Sorano, Faustino Peralta or Roberto Arco;
>
> **Five:**   For the general purpose of gaining entry, maintaining or increasing his position in the racketeering enterprise.[26]

### Enterprise

"Enterprise" includes any group of individuals associated-in-fact although

not a legal entity, which is engaged in, or the activities of which affect, interstate

or foreign commerce.  An enterprise can be any group of persons associated

together for a common purpose of engaging in a course of conduct and may be

---

[25] This instruction, with slight modification to identify the appropriate defendant, can also be used for Count 11.
[26] United States v. Smith, 413 F.3d 1253, 1277 (10th Cir. 2005); United States v. Arrington, 409 Fed.Appx. 190, 2010 WL 4027823 (C.A. 10 (N.M.)).

proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.  An enterprise need not have a hierarchical structure or a chain of command.  Decisions may be made on an ad hoc basis and by any number of methods – by majority vote, consensus or simply a show of strength.  Members of the enterprise may perform different roles at different times.  The group need not have a name, regular meetings, dues or established rules and regulations.  Such an association of persons may retain its status as an enterprise even though the membership of the association changes by the addition or loss of individuals during the course of its existence.  However, the government must prove that an association-in-fact enterprise, as charged in this case, had a common purpose, that they interacted or associated in some way to advance this shared purpose, and that the members of the enterprise so functioned long enough to complete a pattern of racketeering activity.[27]

In this case, the indictment charges that an illegal association-in-fact enterprise existed, and that it was an association of individuals known as Nortenos, with sub-sets identified as Diablos Viejos (DV) and Los Carnales Chingones (LCC), which engaged in narcotics distribution and acts of violence including acts of murder and robbery.  The indictment charges that the purpose of the Nortenos enterprise was enriching the members and associates of the enterprise through,

---

[27] Boyle v. United States, 556 U.S. 938 (2009); United States v. Hutchinson, 573 F.3d 1011, 1019-1022 (10th Cir. 2009).

among other things, murder, robbery and distribution of narcotics; preserving and protecting the power, territory and profits of the Nortenos enterprise through the use of actual and threatened violence, including assaults and murder; promoting and enhancing the Nortenos enterprise and activities and reputations of its members and associates; and keeping victims in fear of the Nortenos enterprise and in fear of its members and associates through actual violence and threatened violence.

<u>**Interstate Commerce**</u>

The government must prove beyond a reasonable doubt that the enterprise engaged in interstate or foreign commerce or that its activities had an effect on interstate or foreign commerce in any way.  "Interstate commerce" means commerce between the states of the United States and includes trade or conducting business or travel between one state and another state; and foreign commerce means such trade, business or travel between the United States and another country.  Therefore, interstate or foreign commerce may include the movement of money, goods, services or persons from one state to another state or between the United States and another country.

It is not necessary to prove the acts of any particular defendant affected interstate or foreign commerce as long as the acts of the enterprise had such effect. It is also not necessary for the government to prove that the racketeering activity affected interstate or foreign commerce; rather, it is the enterprise and its activities considered in their entirety that must be shown to have that effect.  On the other

hand, this effect on interstate or foreign commerce may be established through the effect caused by the racketeering activity.

The evidence also need not show any particular degree of an effect on interstate commerce.  The government is not required to prove a significant or substantial effect on interstate or foreign commerce.  Rather, a minimal effect is sufficient.  Finally, the government is not required to prove that any defendant knew he was affecting interstate or foreign commerce.

You are instructed that the purchase or sale of controlled substances produced or cultivated outside of Kansas; the use of firearms manufactured outside of Kansas; or the theft of money intended by the rightful owner to be sent or wired in interstate or foreign commerce may be sufficient to prove an effect on interstate commerce.[28]

## Racketeering Activity

The indictment alleges that the following acts of racketeering activity were engaged in by the enterprise: Murder, Robbery and Distribution of Narcotics. "Racketeering Activity" includes such offenses as Murder, Robbery and Distribution of Narcotics.  To prove the Nortenos enterprise "engaged in racketeering activity" there must be some nexus between the enterprise and the racketeering activity.  This is established by showing that members or associates of the enterprise committed racketeering activity on behalf of or in connection with the enterprise.  It is up to you to

---

[28] United States v. Smith, 413 F.3d  1253, 1273-74 (10th Cir. 2005); United State v. Marino, 277 F.3d 11, 35 (1st Cir. 2002)(the government does not need to show that a RICO enterprise's effect on interstate commerce is substantial).

41

determine whether the enterprise engaged in these activities as charged.  You should give the words "engaged in" their ordinary, everyday meaning.

## Attempted Murder

The government must prove beyond a reasonable doubt that the defendant(s) committed an Attempted Murder of Mariano Sorano, Faustino Peralta or Roberto Arco as defined by Kansas state law.  Under Kansas Statutes Annotated § 21-5402, a person commits the offense of Attempted Murder if:

### Attempt[29]

To establish this charge, each of the following claims must be proved:

1. That the defendant(s) performed an overt act toward the commission of the crime of murder;

2. That the defendant(s) did so with the intent to commit the crime of murder;

3. That the defendant(s) failed to complete commission of the crime  of murder; and

4. That this act occurred on or about the 8th day of June, 2009, in Ford County, Kansas.

An overt act necessarily must extend beyond mere preparations made by the accused and must sufficiently approach consummation of the offense to stand either as the first or subsequent step in a direct movement toward the completed offense. Mere preparation is insufficient to constitute an overt act.

### Murder in the First Degree[30]

To establish this charge, each of the following claims must be proved:

1. That the defendant intentionally killed Israel Peralta;

---

[29] Pattern Instructions for Kansas (PIK) – Criminal 4th, PIK 55.01.
[30] Pattern Instructions for Kansas (PIK) – Criminal 4th, PIK 56.01.

42

2.   That such killing was done with premeditation; and

3.   That this act occurred on or about the 8th day of June, 2009, in Ford County, Kansas.

In this instruction the Court has set out for your consideration the essential claims which must be proved by the government before you may find the defendant guilty of premeditated murder.

If you do not have a reasonable doubt from all the evidence that the government has proven murder in the first degree then you will enter a verdict of guilty.

If you have a reasonable doubt as to the guilt of the defendant as to the crime of murder in the first degree, then you must consider whether the defendant is guilty of murder in the second degree.

## Premeditation - Defined[31]

Premeditation means to have thought the matter over beforehand, in other words, to have formed the design or intent to kill before the act. Although there is no specific time period required for premeditation, the concept of premeditation requires more than the instantaneous, intentional act of taking another's life.

## Intentionally - Defined[32]

Intentionally means conduct that is purposeful and willful and not accidental. Intentional includes the terms "knowing," "willful," "purposeful" and "on purpose."

## Murder in the Second Degree[33]

If you do not agree that the defendant is guilty of murder in the first degree, you should then consider the lesser included offense of murder in the second degree.

---

[31] Pattern Instructions for Kansas (PIK) – Criminal 4th, PIK 56.04.
[32] Id.
[33] Pattern Instructions for Kansas (PIK) – Criminal 4th, PIK 56.03.

43

To establish this charge, each of the following claims must be proved:

1.      That the defendant intentionally killed Israel Peralta; and

2.      That this act occurred on or about the 8th day of June, 2009, in Ford County, Kansas.

## Position Within the Enterprise

The government must prove the defendant's general purpose in committing the Attempted Murder was to gain entrance, maintain or increase his position within the enterprise.  The government is not required to prove it was the defendant's sole or even his principal motive in committing the crime.  Proof that the crime was committed as an integral aspect of membership in the enterprise is sufficient to establish he acted to gain entry, maintain or increase his position in the enterprise.[34]

---

[34] United States v. Smith, 413 F.3d 1253, 1277-78 (10th Cir. 2005); United States v. Concepcion, 983 F.2d 369, 381 (2d Cir. 1992).

# GOVERNMENT'S PROPOSED
# INSTRUCTION NO. 7[35]

### Count 5 – Assault with a Dangerous Weapon

Count 5 charges the defendant(s) committed a violent crime in aid of racketeering, Assault with a Dangerous Weapon, which is a violation of Title 18, United States Code § 1959(a)(3).  In order to convict a defendant of the Violent Crime in Aid of Racketeering offense charged in Count 5, the government must prove each of the following five elements beyond a reasonable doubt:

**One:** There existed an enterprise;

**Two:** The enterprise was engaged in racketeering activity;

**Three:** The defendant(s) was a member of the enterprise;

**Four:** The defendant(s) committed an assault with a dangerous weapon of any person;

**Five:** For the general purpose of gaining entry, maintaining or increasing his position in the racketeering enterprise.

### Enterprise

"Enterprise" includes any group of individuals associated-in-fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce.  An enterprise can be any group of persons associated together for a common purpose of engaging in a course of conduct and may be proved by evidence of an ongoing organization, formal or informal, and by

---

[35] This instruction, with slight modification to identify the appropriate defendant(s), can also be used for Counts 7, 8, 12 and 24.

evidence that the various associates function as a continuing unit.  An enterprise need not have a hierarchical structure or a chain of command.  Decisions may be made on an ad hoc basis and by any number of methods – by majority vote, consensus or simply a show of strength.  Members of the enterprise may perform different roles at different times.  The group need not have a name, regular meetings, dues or established rules and regulations.  Such an association of persons may retain its status as an enterprise even though the membership of the association changes by the addition or loss of individuals during the course of its existence.  However, the government must prove that an association-in-fact enterprise, as charged in this case, had a common purpose, that they interacted or associated in some way to advance this shared purpose, and that the members of the enterprise so functioned long enough to complete a pattern of racketeering activity.[36]

In this case, the indictment charges that an illegal association-in-fact enterprise existed, and that it was an association of individuals known as Nortenos, with sub-sets identified as Diablos Viejos (DV) and Los Carnales Chingones (LCC), which engaged in narcotics distribution and acts of violence including acts of murder and robbery.  The indictment charges that the purpose of the Nortenos enterprise was enriching the members and associates of the enterprise through, among other things, murder, robbery and distribution of narcotics; preserving and

---

[36] Boyle v. United States, 556 U.S. 938 (2009); United States v. Hutchinson, 573 F.3d 1011, 1019-1022 (10th Cir. 2009).

protecting the power, territory and profits of the Nortenos enterprise through the use of actual and threatened violence, including assaults and murder; promoting and enhancing the Nortenos enterprise and activities and reputations of its members and associates; and keeping victims in fear of the Nortenos enterprise and in fear of its members and associates through actual violence and threatened violence.

### Interstate Commerce

The government must prove beyond a reasonable doubt that the enterprise engaged in interstate or foreign commerce or that its activities had an effect on interstate or foreign commerce in any way. "Interstate commerce" means commerce between the states of the United States and includes trade or conducting business or travel between one state and another state; and foreign commerce means such trade, business or travel between the United States and another country. Therefore, interstate or foreign commerce may include the movement of money, goods, services or persons from one state to another state or between the United States and another country.

It is not necessary to prove the acts of any particular defendant affected interstate or foreign commerce as long as the acts of the enterprise had such effect. It is also not necessary for the government to prove that the racketeering activity affected interstate or foreign commerce; rather, it is the enterprise and its activities considered in their entirety that must be shown to have that effect. On the other

hand, this effect on interstate or foreign commerce may be established through the effect caused by the racketeering activity.

The evidence also need not show any particular degree of an effect on interstate commerce. The government is not required to prove a significant or substantial effect on interstate or foreign commerce. Rather, a minimal effect is sufficient. Finally, the government is not required to prove that any defendant knew he was affecting interstate or foreign commerce.

You are instructed that the purchase or sale of controlled substances produced or cultivated outside of Kansas; the use of firearms manufactured outside of Kansas; or the theft of money intended by the rightful owner to be sent or wired in interstate or foreign commerce may be sufficient to prove an effect on interstate commerce.[37]

## Racketeering Activity

The indictment alleges that the following acts of racketeering activity were engaged in by the enterprise: Murder, Robbery and Distribution of Narcotics. "Racketeering Activity" includes such offenses as Murder, Robbery and Distribution of Narcotics. To prove the Nortenos enterprise "engaged in racketeering activity" there must be some nexus between the enterprise and the racketeering activity. This is established by showing that members or associates of the enterprise committed

---

[37] United States v. Smith, 413 F.3d 1253, 1273-74 (10th Cir. 2005); United State v. Marino, 277 F.3d 11, 35 (1st Cir. 2002)(the government does not need to show that a RICO enterprise's effect on interstate commerce is substantial).

48

racketeering activity on behalf of or in connection with the enterprise.  It is up to you to determine whether the enterprise engaged in these activities as charged.  You should give the words "engaged in" their ordinary, everyday meaning.

### Assault with a Dangerous Weapon

The government must prove beyond a reasonable doubt that the defendant(s) committed an Aggravated Assault as defined by Kansas state law.  Under Kansas Statutes Annotated § 21-5412, a person commits the offense of Aggravated Assault with if:

### Aggravated Assault

To establish this charge, each of the following claims must be proved:

1.  The defendant intentionally placed any person in reasonable apprehension of immediate bodily harm;

2.  The defendant used a deadly weapon;

3.  That this act occurred on or about the 8th day of June, 2009, in Ford County, Kansas.

No bodily contact is necessary.[38]

### Position Within the Enterprise

The government must prove the defendant's general purpose in committing the Assault with a Dangerous Weapon was to gain entrance, maintain or increase his position within the enterprise.  The government is not required to prove it was the defendant's sole or even his principal motive in committing the crime.  Proof that the crime was

---

[38] Pattern Instructions for Kansas (PIK) – Criminal 4th, PIK 56.14.

committed as an integral aspect of membership in the enterprise is sufficient to establish

he acted to gain entry, maintain or increase his position in the enterprise.[39]

---

[39] United States v. Smith, 413 F.3d 1253, 1277-78 (10th Cir. 2005); United States v. Concepcion, 983 F.2d 369, 381 (2d Cir. 1992).

50

# GOVERNMENT'S PROPOSED
# INSTRUCTION NO. 8[40][41]

## Count 6 – Possess/Discharge a Firearm in Furtherance of a Crime of Violence

Count 6 charges the defendant(s), Possessed and/or Discharged a Firearm in Furtherance of a Crime of Violence, which is a violation of Title 18, United States Code § 924(c)(1).  This law makes it a crime to possess or discharge a firearm in furtherance of a crime of violence.

To find the defendant(s) guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

**One:**    The defendant(s) committed the crime of murder as charged in Count 3 of the indictment, which is a crime of violence;

**Two:**    The defendant(s) possessed or discharged a firearm in furtherance of this crime.

The term "firearm" means any weapon which will, or is designed to, or may readily be converted to expel a projectile by the action of an explosive.  The term "firearm" also includes the frame or receiver of any such weapon, or any firearm muffler or firearm silencer, or destructive device.

Possession "in furtherance of" means for the purpose of assisting in, promoting, accomplishing, advancing, or achieving the goal or objective of the underlying offense.

---

[40] This instruction, with slight modification to identify the appropriate defendant, the appropriate violent crime and whether the firearm was brandished or discharged, can also be used for Counts 9, 13 and 25.
[41] Tenth Circuit Pattern Criminal Instruction No. 2.45.1.

# GOVERNMENT'S PROPOSED
# INSTRUCTION NO. 9[42]

## Count 29 – Possession of a Firearm by a Convicted Felon

Count 29 charges that Jayson Vargas, Possessed a Firearm as a Convicted Felon, which is a violation of Title 18, United States Code § 922(g)(1).  This law makes it a crime for a person who has been previously convicted in any court of a felony to knowingly possess any firearm, in or affecting interstate or foreign commerce.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

**One:**      The defendant knowingly possessed a firearm;

**Two:**      The defendant was convicted of a felony, that is, a crime punishable  by imprisonment for a term exceeding one year, before he possessed the firearm; and

**Three:**    Before the defendant possessed the firearm, the firearm had moved at some time from one state to another or from a foreign country to the United States.

The term "firearm" means any weapon which will, or is designed to, or may readily be converted to expel a projectile by the action of an explosive.  The term "firearm" also includes the frame or receiver of any such weapon, or any firearm muffler or firearm silencer, or destructive device.

---

[42] Tenth Circuit Pattern Criminal Instruction No. 2.44.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,       )
    Plaintiff,                )
                              )
vs.                             )       Case No. 12-10089-03 MLB
                              )
GONZALO RAMIREZ, et al.,         )
    Defendant.                )
_____ )

## PROPOSED JURY INSTRUCTIONS

COMES NOW, the Defendant, Gonzalo Ramirez, by and through his attorneys, Joel

Mandelman and Timothy J. Henry, Assistant Federal Public Defenders for the District of Kansas,

and hereby submits the following instruction for 18 U.S.C. § 1962(d) and his proposed definition

of interstate commerce.  The Defendant reserves the right to submit additional authority and

instructions during the trial.

                Respectfully submitted,

                s/Joel Mandelman
                JOEL MANDELMAN, KS Sup. Ct. No. 25726
                Assistant Federal Public Defender
                Federal Public Defender Office
                301 N. Main, Suite 850
                Wichita, KS 67202
                Telephone: (316) 269-6445
                Fax: (316) 269-6175
                E-mail: Joel_Mandelman@fd.org

DEFENDANT'S PROPOSED INSTRUCTION NUMBER _____

**RACKETEERING CONSPIRACY - COUNT ONE**

The crime of conspiracy to participate, directly or indirectly, in the affairs of an enterprise through a pattern of racketeering activity as alleged in Count 1 of the Indictment has five elements, which are:

One, an enterprise existed as alleged in the Indictment;

Two, the enterprise was engaged in or its conduct affected interstate commerce;

Three, the defendant was associated with the enterprise;

Four, that between 2008 and April 2012, two or more persons reached an agreement to conduct or participate in the affairs of the enterprise, directly or indirectly, through a pattern of racketeering activity; and

Five, that the defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in existence, and at the time the defendant joined in the agreement or understanding he specifically intended to otherwise participate in the affairs of the enterprise.

For you to find a defendant guilty of this crime the Government must prove all of these elements beyond a reasonable doubt as to that defendant; otherwise you must find that defendant not guilty.

Authority: This instruction comes from the Eighth Circuit's pattern jury instructions, 6.18.1962B. The Tenth Circuit has not adopted a pattern instruction. But, as this Court is aware, the Circuit has discussed the elements in *United States v. Harris,* 695 F.3d 1125 (10th Cir. 2012). The *Harris* court held proof of an enterprise is not required under 1962(d). *Harris*, 695 F.3d at 1131. Alternatively, the *Harris* court found that failure to require proof was not plain error. *See* 695 F.3d at 1134 n.7. Unlike the Tenth Circuit, other circuits have indicated that proof of an enterprise is an element under 1962(d). *See, e.g., United States v. Palacios*, 677 F.3d 234, 248-250 (4th Cir. 2012)(finding evidence of an enterprise sufficient to sustain conviction under 1962(d)). At a minimum, the Defendant seeks to preserve this issue for review.

This case requires the Government to prove that the alleged enterprise engaged in interstate commerce or that the enterprise's conduct affected interstate commerce. The Defendant submits the definition below for interstate commerce.

DEFENDANT'S PROPOSED INSTRUCTION NUMBER ____

**INTERSTATE COMMERCE**

The enterprise is "engaged in interstate or foreign commerce" if it directly engaged in the production, distribution, or acquisition of goods or services in such commerce. The enterprise's conduct "affected" interstate or foreign commerce if the conduct had a substantial effect on such commerce. A slight or minimal effect is not sufficient to find an enterprise's activities "affected" interstate or foreign commerce.

Authority: To the extent the Government intends to show the enterprise's conduct affected interstate commerce, the Government must show a substantial effect. As in *United States v. Morrison*, 529 U.S. 598 (2000), the acts of violence alleged in this case do not support the Government's proposed instruction that it only need to prove a *de minimis* effect on interstate commerce. This aggregate analysis is inapplicable to non-economic, violent criminal conduct. *See Waucaush v. United States*, 380 F.3d 251, 256 (6th Cir. 2004), quoting *Morrison*, 529 U.S. at 617-618 ("The Supreme Court in *Morrison* 'reject[ed] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce.'").

The Government additionally contends that the interstate commerce element can be met by the movement of money or goods between one state and another. (*See* Doc. 777 at 35). The Government uses this claim to argue that controlled substances or firearms produced or manufactured out of state, or money that may flow out of state, is sufficient to prove the effect-on-interstate-commerce element. Such a position conflicts with recent Commerce Clause jurisprudence from the Supreme Court.

In 1995, the Supreme Court addressed the interstate commerce issues surrounding RICO in *United States v. Robertson*, 514 U.S. 669 (1995). There, the issue concerned a gold mine in Alaska where some of the proceeds left the state of Alaska, and where some of its employees came from out of state. There, the Supreme Court found the gold mine fell under the second category of activities that Congress has the power to regulate under the Commerce Clause, *i.e.*, persons or things in

**inter**state commerce.   The Supreme Court did not decide this issue under the third category applicable in the present case, *i.e.*, an **intra**state activity that has a substantial effect on interstate commerce.

The Supreme Court in *Robertson*, however, noted its decision in *United States v. American Building Maintenance Industries*, 422 U.S. 271, 285 (1975), that local purchases of equipment and supplies that merely come from out of state are insufficient to show a company was "engaged in commerce" under the Clayton Act.   Likewise, in *Jones v. United States*, 529 U.S. 848 (2000), the Supreme Court rejected the theory that products from out of state that went to build one's home subject the act of arson of the same home to federal jurisdiction.   It is clear, when the underlying acts alleged by the Government fall under the third *Lopez*[1] category of simply intrastate activity, there must be proof that the activity **substantially affected interstate commerce**.

Such was the finding by the Sixth Circuit in *Waucaush*, *supra*, which made this holding under the RICO statute.   Such a requirement is even stronger under the alleged VCAR counts which do not otherwise have a jurisdictional element to permit application of such onerous federal penalties.   *See e.g., United States v. Garcia*, 68 F.Supp.2d 802, 808-809 (E.D. Mich. 1999) (disallowing *de minimis* theory of interstate commerce under VCAR).

In short, the Supreme Court jurisprudence on non-economic, violent criminal activity that falls under the third Commerce Clause category of regulation under *Lopez*, *Morrison* and *Jones*, requires the Government to prove beyond a reasonable doubt that the alleged enterprise's conduct had a substantial effect on interstate commerce.

---

[1]  *See United States v. Lopez*, 514 U.S. 549 (1995).

4

WHEREFORE, the Defendant moves the Court to use the above instructions and reserves the right to submit additional instructions and authority during trial.

Respectfully submitted,


s/Joel Mandelman
JOEL MANDELMAN, KS Sup. Ct. No. 25726
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Joel_Mandelman@fd.org

And

s/Timothy J. Henry
TIMOTHY J. HENRY
KS Sup. Ct. No. 12934
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Tim_Henry@fd.org

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 27, 2013, I electronically filed the foregoing PROPOSED

JURY INSTRUCTIONS with the Clerk of the Court by using the CM/ECF system which will send

a notice of electronic filing to the following:

Lanny Welch
Aaron Smith
Assistant U.S. Attorney
301 N. Main, Suite 1200
Wichita, KS  67202

David H. Moses
Case, Moses, Zimmerman & Martin, PA
200 West Douglas, Suite 900
Wichita, KS 67202

John V. Wachtel
Klenda, Austerman, L.L.C.
301 N. Main, Suite 1600
Wichita, KS 67202

James R. Pratt
Attorney at Law
445 N. Waco
Wichita, KS 67202

Jay F. Fowler
Foulston Siefkin, L.L.P.
1551 N. Waterfront Pkwy, Ste. 100
Wichita, KS 67206

Carl F.A. Maughan
Maughan & Maughan
200 West Douglas, Suite 350
Wichita, KS 67202

Roger L. Falk
Law office of Roger L. Falk, P.A.
301 West Central
Wichita, KS 67202

Paul S. McCausland
Young, Bogle, McCausland, Wells &
   Blanchard
100 North Main, Suite 1001
Wichita, KS 67202

Michael J. Shultz
Shultz Law Office, P.A.
445 North Waco
Wichita, KS 67202

David M. Rapp
Hinkle Law Firm LLC
301 N. Main St., Suite 2000
Wichita, KS 67202

Jeff L. Griffith
Griffith & Griffith
111 South Baltimore
Derby, KS 67037

Mark T. Schoenhofer
Law Office of Mark Schoenhofer
1631 E. 1st
Wichita, KS 67214

6

Edward L. Robinson
Joseph, Hollander & Craft
500 N. Market Street
Wichita, KS 67214

Eric A. Hartenstein
Attorney at Law
200 West Douglas, Suite 600
Wichita, KS 67202

Mark A. Sevart
Attorney at Law
P.O. Box 781602
Wichita, KS 67278

Gregory D. Bell
Forker Suter, L.L.C.
129 West 2nd Ave., Suite 200
Hutchinson, KS 67504

Kevin W. Loeffler
Law Office of Kevin Loeffler
111 E. 7th
Newton, KS 67114

Molly M. Gordon
Depew, Gillen, Rathbun, & McInteer
8301 East 21st Street North, Suite 450
Wichita, KS 67206

Michael D. Hepperly
Michael D. Hepperly Law Office, Chtd.
310 West Central, Suite 119
Wichita, KS 67202

Mark L. Bennett, Jr.
Bennett & Hendrix, L.L.P.
5605 S.W. Barrington Ct. S., Suite 201
Topeka, KS 66614

Sean C. McEnulty
McEnulty Law Firm
151 Whittier St., Suite 1000
Wichita, KS 67207

Charles A. O'Hara
O'Hara & O'Hara
1223 E. First
Wichita, KS 67214

Derek S. Casey
Triplett, Woolf, Garretson, L.L.C.
2959 North Rock Road, Suite 300
Wichita, KS 67226

One copy mailed to:

Gonzalo Ramirez
c/o Harvey County Jail
P.O. Box 267
Newton, KS 67114

s/Joel Mandelman
JOEL MANDELMAN
KS Sup. Ct. No. 25726
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Joel_Mandelman@fd.org

And

s/Timothy J. Henry
TIMOTHY J. HENRY
KS Sup. Ct. No. 12934
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Tim_Henry@fd.org

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 1

# United States District Court
## District of Kansas

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| Alfonso  Banda-Hernandez | Case Number:  6:12CR10089 - 014 |
| | USM Number:  22115-031 |
| | Defendant's Attorney:  Michael D. Hepperly |

## THE DEFENDANT:

☒  pleaded guilty to counts:  1 and 2 of the Information.

☐  pleaded nolo contendere to count(s) ___ which was accepted by the court.

☐  was found guilty on count(s) ___ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1959(a)(6) | VIOLENT CRIMES IN AID OF RACKETEERING - CONSPIRACY TO ASSAULT WITH A DANGEROUS WEAPON, a Class E Felony | 03/30/2011 | 1 |
| 18 U.S.C. § 1959(a)(6) | VIOLENT CRIMES IN AID OF RACKETEERING - CONSPIRACY TO ASSAULT WITH A DANGEROUS WEAPON, a Class E Felony | 04/30/2010 | 2 |

The defendant is sentenced as provided in pages 1 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐  The defendant has been found not guilty on count(s) ___.

☒   The Original Indictment   is dismissed on the motion of the United States.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

09/30/2013
Date of Imposition of Judgment

s/ Monti Belot
Signature of Judge

Honorable Monti L. Belot, U.S. District Judge
Name & Title of Judge

10/1/13
Date

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 2 - Imprisonment

Judgment – Page **2** of **6**

DEFENDANT:      Alfonso  Banda-Hernandez
CASE NUMBER:   6:12CR10089 - 014

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of
<u>72 months</u> .

> Count 1:  36 months, said term to run consecutively to Count 2, and
> Count 2:  36 months, said term to run consecutively to Count 1, for a total term of imprisonment of 72 months

☐   The Court makes the following recommendations to the Bureau of Prisons:

☒   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district.

  ☐ at ___ on ___.

  ☐ as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐ before ___ on ___.

  ☐ as notified by the United States Marshal.

  ☐ as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.


_____
UNITED STATES MARSHAL


By _____
Deputy U.S.  Marshal

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 3 — Supervised Release

DEFENDANT:       Alfonso  Banda-Hernandez
CASE NUMBER:   6:12CR10089 - 014

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of <u>one (1) year</u> .

 Counts 1 and 2:  1 year, each count, said terms to run concurrently with each other.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check if applicable)*

☒    The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check if applicable)*

☒    The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check if applicable)*

☐    The defendant shall register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student.  For initial registration purposes only, the defendant shall also register in the jurisdiction in which convicted, if such jurisdiction is different from the jurisdiction of residence.  Registration shall occur not later than 3 business days after being sentenced, if the defendant is not sentenced to a term of imprisonment.  The defendant shall, not later than 3 business days after each change in name, residence, employment, or student status, appear in person in at least one jurisdiction in which the defendant is registered and inform that jurisdiction of all changes in the information required.  *(Check if applicable)*

☐    The defendant shall participate in an approved program for domestic violence. *(Check if applicable)*

If this judgment imposes a fine or restitution, it is to be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without permission of the court or probation officer;
2) the defendant shall report to the probation officer in a manner and frequency directed by the court or the probation officer;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substances or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 3C - Supervised Release

Judgment – Page **4** of **6**

DEFENDANT:      Alfonso  Banda-Hernandez
CASE NUMBER:   6:12CR10089 - 014

## SPECIAL CONDITIONS OF SUPERVISION

1.      The defendant shall successfully participate in an approved program for substance abuse, which may include urine, breath, or sweat patch testing, outpatient and/or residential treatment, and share in the costs, based on the ability to pay. The defendant shall abstain from the use of alcohol and other intoxicants during said treatment program as directed by the Probation Office.

2.      The defendant shall abstain from the use of alcohol during the term of supervision.

3.      The defendant shall not be a member of any street gang, participate in any gang-related activities, or associate with any gang members during the term of supervision. The defendant shall comply with any curfew established by the probation officer, who may utilize electronic monitoring to verify the defendant's compliance with the curfew schedule. As instructed by the probation officer, the defendant may be required to maintain a telephone at the defendant's place of residence without call forwarding, caller ID, call waiting, portable cordless telephones, answering machines/service, or any other feature or service which would interfere with the operation of electrical monitoring equipment. The defendant may be required to wear an electronic monitoring device, which may include Global Positioning System and/or Random Tracking, and follow electronic monitoring procedures specified by the probation officer. Additionally, the probation officer may restrict the defendant from certain areas within the community, and the defendant must comply with these restrictions. The defendant shall assist in the costs of home confinement, based on the ability to pay, at the direction of the probation officer.

4.      The defendant shall submit his/her person, house, residence, vehicle(s), papers, business or place of employment and any property under the defendant's control to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

5.      The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon.

AO 245B   (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment – Page **5** of **6**

DEFENDANT:       Alfonso  Banda-Hernandez
CASE NUMBER:   6:12CR10089 - 014

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the Schedule of Payments set forth in this Judgment.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $200 | Waived | None |

☐       The determination of restitution is deferred until ___. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐       The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Totals: | $ | $ | |

☐   Restitution amount ordered pursuant to plea agreement $___ .

☐   The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options set forth in this Judgment may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☐ the interest requirement is waived for the ☐ fine and/or ☐ restitution.

☐ the interest requirement for the ☐ fine and/or ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment – Page **6** of **6**

DEFENDANT:      Alfonso  Banda-Hernandez
CASE NUMBER:   6:12CR10089 - 014

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A    ☐    Lump sum payment of $___ due immediately, balance due
          ☐  not later than ___, or
          ☐  in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B    ☒    Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☒ F below); or

C    ☐    Payment in monthly installments of not less than 5% of the defendant's monthly gross household income over a period
          of ___ years to commence ___ days after the date of this judgment; or

D    ☐    Payment of not less than 10%  of the funds deposited each month into the inmate's trust fund account and monthly
          installments of not less than 5% of the defendant's monthly gross household income over a period of ____ years, to
          commence ___ days after release from imprisonment to a term of supervision;  or

E    ☐    Payment during the term of supervised release will commence within ____ (e.g., 30 or 60 days) after release from
          imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that
          time; or

F    ☒    Special instructions regarding the payment of criminal monetary penalties:

If restitution is ordered, the Clerk, U.S. District Court, may hold and accumulate restitution payments, without distribution, until the
amount accumulated is such that the minimum distribution to any restitution victim will not be less than $25.

Payments should be made to Clerk, U.S. District Court, U.S. Courthouse - Room 259, 500 State Avenue, Kansas City, Kansas 66101.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is
due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐     Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount Joint and Several Amount and
corresponding payee, if appropriate.

| Case Number (Including Defendant Number) | Defendant Name | Joint and Several Amount |
|---|---|---|
|  |  |  |

☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall pay the following court cost(s):

☐    The defendant shall forfeit the defendant's interest in the following property to the United States.  Payments against any
     money judgment ordered as part of a forfeiture order should be made payable to the United States of America, c/o United
     States Attorney, at 301 N. Main, Ste 1200, Wichita, KS 67202 Attn: David Stevens.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT PEDRO GARCIA'S ADDITIONAL**
**PROPOSED JURY INSTRUCTION(S)**

COMES NOW Pedro Garcia, by and through his counsel of record, John Val Wachtel of Klenda Austerman LLC, and hereby submits his proposed jury instructions, which are attached hereto. The defendant reserves the right to submit additional instructions.

Respectfully submitted,

s/John Val Wachtel
John Val Wachtel
S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main St., Ste. 1600
Wichita, KS  67202-4816
Tele.:  (316) 267-0331
Fax:  (316) 267-0315
E-mail:  jvwachtel@klendalaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 11, 2013, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send electronic notice of this filing to:

s/John Val Wachtel
John Val Wachtel

**DEFENDANT GARCIA'S PROPOSED INSTRUCTION NO. 26**

**CREDIBILITY OF COOPERATING WITNESSES OR WITNESSES RECEIVING THINGS OF VALUE IN EXCHANGE FOR TESTIMONY**

The testimony of witnesses who have been extended offers of lenient treatment in exchange for their testimony must be examined with great care. Promises and offers of lenient treatment and/or intangible benefits by the United States in exchange for testimony are things of value and are as great a threat to a witnesses' truthfulness as is a cash payment. *United States v. Singleton*, 144 F.3d 1343, 1350 (10th Cir. 1998) *rev.* on other grounds 144 F.3d 1343 (1998), citing *United States v. Cervantes-Pacheco*, 926 F.2d 310, 315 (5th Cir. 1987) *cert denied*, 484 U.S. 1026 (1988). It is difficult to imagine a greater motivation to lie than the inducement of a reduced sentence. *Cervantes-Pacheo*, 926 F.2d at 315, cited in Singleton, 144 F.3d at 1350. Promises of immunity or leniency premised on cooperation in a particular case may provide a strong inducement to a witness to falsify his testimony in the case. *United States v. Meinste*r, 619 F.2d 1041, 1045 (4th Cir. 1880) cited in *Singleto*n, 144 F.3d at 1350.

*United States v. Singleton*, 144 F.3d 1343, 1350 (10th Cir. 1998) *rev.* on other grounds 144 F.3d 1343 (1998

Klenda Doc. 21T0361

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-10089-03 MLB |
| | ) | |
| GONZALO RAMIREZ, et al., | ) | |
| Defendant. | ) | |
| | ) | |

**MOTION IN LIMINE TO EXCLUDE TESTIMONY OF COOPERATING WITNESS**

COMES NOW the Defendant, Gonzalo Ramirez, by and through his attorneys, Joel

Mandelman and Timothy J. Henry, Assistant Federal Public Defenders for the District of Kansas,

and hereby moves this Court to exclude the testimony of David Ochoa.  In support, the

Defendant argues that Mr. Ochoa's testimony is not relevant to the case at bar; that the probative

value of his testimony is substantially outweighed by its prejudicial effect; and, finally, that his

testimony raises potential constitutional and ethical problems for the Defendant and his attorneys

because the Office of the Federal Public Defender represented Mr. Ochoa in a 2006 federal drug-

distribution case.  The Defendant relies on the additional grounds below.


**I.  INTRODUCTION**

The Defendant and one co-defendant, Pedro Garcia, are currently on trial in a case

alleging that they participated in a racketeering conspiracy.  The trial began October 2 and will

enter its eighth day on October 15.  When the trial resumes, the Government has indicated it

plans to a call a cooperating witness by the name of David Ochoa.  Mr. Ochoa has two prior

federal drug-trafficking convictions, and he will be testifying pursuant to a plea agreement in his most recent case. In his prior case, he was represented by now-retired Assistant Federal Public Defender Ron Wurtz.

Because Mr. Ramirez and Mr. Ochoa have both been incarcerated for periods of time during the last decade, it does not appear they have had any meaningful contact since 2004. The Defendant is not clear about what contact Mr. Ochoa may have had with Mr. Garcia during the last decade, but it also appears scant. Regardless, Mr. Ochoa is not named in indictment as being a member of the enterprise and, similarly, is not named as being part of the racketeering conspiracy alleged in Count 1. The Government has previously stated that there are no unknown or unnamed coconspirators in Count 1. It does appears Mr. Ochoa conspired with co-defendant Fabian Neave to distribute methamphetamine in December of 2011. (*See* Doc. 531 at 3). That allegation, charged in Count 31 of the indictment, appears to be a separate conspiracy and is not the subject of this trial.

## II. DISCUSSION

To be admissible, evidence must be relevant. To be relevant, evidence must have "any tendency to make a fact more or less probable than it would be without the evidence..." Fed. R. Evid. 401. In this case, Mr. Ochoa's dealings with members of the enterprise are not relevant to the case at bar. Mr. Ochoa is not charged as a participant in the alleged racketeering conspiracy in Count 1, and he is not a member of the alleged twenty-three-member enterprise. To the extent that Mr. Ochoa may have conspired with other members of the enterprise to distribute narcotics, those allegations are far beyond the scope of this trial.

To the extent Mr. Ochoa's dealings with members of the enterprise may be relevant, the probative value of this evidence is substantially outweighed by its prejudicial effect. *See* Fed. R. Evid. 403. There is no indication Mr. Ochoa dealt directly with either of the co-defendants or that either of the co-defendants had knowledge of Mr. Ochoa's activities. The trial already has contained evidence that members of the enterprise trafficked in narcotics. Introducing evidence from a drug dealer who did not deal with either of the defendants will be highly prejudicial and only marginally probative, if at all.

Finally, Mr. Ochoa's role of as a witness raises a potential conflict for the Defendant and his attorneys. A Defendant is entitled to effective assistance of counsel. U.S. Const. Amend. VI. Further, a former client is owed a duty of loyalty and confidentiality, and counsel cannot reasonably question a former client in a substantially related matter or use information that was obtained in the course of prior representation. *See, e.g., United States v. Trevino*, 992 F.2d 64, 65 (5th Cir. 1993); *see also* Kansas Rules of Professional Conduct (KRPC) 1.9 (Duties to Former Clients). Under state ethics rules, a conflict of interest may be imputed to all members of the same firm. *See* KPRC 1.10. Here, at least a possible conflict exists. If Mr. Ochoa denies his former conviction, the Defendant may have to cover this subject with Mr. Ochoa. Further, it may be necessary for counsel to question Mr. Ochoa about the circumstances surrounding his prior conviction if Mr. Ochoa claims to have had contact with the Defendant during that time.[1]

---

[1]If Mr. Ochoa and the Defendant have not had any prior contact since 2004, then the relevancy of Mr. Ochoa's testimony is likely to be extremely slight, at best. In that situation, the Court could safely eliminate any possible conflict by finding Mr. Ochoa's testimony inadmissible. *See United States v. McCullah*, 76 F.3d 1087, 1099 (10th Cir. 1996)("[T]he trial court assessed the risk of conflict and properly determined that disallowing Mr. Emberson's testimony adequately eliminated any risk."); *cf. Trevino*, 992 F.2d at 66 (finding "no real conflict" in representing a defendant on appeal when codefendant's case already had been

## III.  CONCLUSION

For the above reasons, the Defendant moves the Court to exclude the testimony of David Ochoa.

Respectfully submitted,

s/Joel Mandelman
JOEL MANDELMAN, KS Sup. Ct. No. 25726
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Joel_Mandelman@fd.org

And

s/Timothy J. Henry
TIMOTHY J. HENRY
KS Sup. Ct. No. 12934
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Tim_Henry@fd.org

### CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2013, I electronically filed the foregoing MOTION

IN LIMINE TO EXCLUDE TESTIMONY OF COOPERATING WITNESS with the Clerk of

closed).

the Court by using the CM/ECF system which will send a notice of electronic filing to the

following:

Lanny Welch
Aaron Smith
Assistant U.S. Attorney
301 N. Main, Suite 1200
Wichita, KS  67202

David H. Moses
Case, Moses, Zimmerman & Martin, PA
200 West Douglas, Suite 900
Wichita, KS 67202

John V. Wachtel
Klenda, Austerman, L.L.C.
301 N. Main, Suite 1600
Wichita, KS 67202

James R. Pratt
Attorney at Law
445 N. Waco
Wichita, KS 67202

Jay F. Fowler
Foulston Siefkin, L.L.P.
1551 N. Waterfront Pkwy, Ste. 100
Wichita, KS 67206

Carl F.A. Maughan
Maughan & Maughan
200 West Douglas, Suite 350
Wichita, KS 67202

Roger L. Falk
Law office of Roger L. Falk, P.A.
301 West Central
Wichita, KS 67202

Paul S. McCausland
Young, Bogle, McCausland, Wells &
   Blanchard
100 North Main, Suite 1001
Wichita, KS 67202

Michael J. Shultz
Shultz Law Office, P.A.
445 North Waco
Wichita, KS 67202

David M. Rapp
Hinkle Law Firm LLC
301 N. Main St., Suite 2000
Wichita, KS 67202

Jeff L. Griffith
Griffith & Griffith
111 South Baltimore
Derby, KS 67037

Mark T. Schoenhofer
Law Office of Mark Schoenhofer
1631 E. 1st
Wichita, KS 67214

Edward L. Robinson
Joseph, Hollander & Craft
500 N. Market Street
Wichita, KS 67214

Michael D. Hepperly
Michael D. Hepperly Law Office, Chtd.
310 West Central, Suite 119
Wichita, KS 67202

Eric A. Hartenstein

Mark L. Bennett, Jr.

5

Attorney at Law
200 West Douglas, Suite 600
Wichita, KS 67202

Bennett & Hendrix, L.L.P.
5605 S.W. Barrington Ct. S., Suite 201
Topeka, KS 66614

Mark A. Sevart
Attorney at Law
P.O. Box 781602
Wichita, KS 67278

Sean C. McEnulty
McEnulty Law Firm
151 Whittier St., Suite 1000
Wichita, KS 67207

Gregory D. Bell
Forker Suter, L.L.C.
129 West 2nd Ave., Suite 200
Hutchinson, KS 67504

Charles A. O'Hara
O'Hara & O'Hara
1223 E. First
Wichita, KS 67214

Kevin W. Loeffler
Law Office of Kevin Loeffler
111 E. 7th
Newton, KS 67114

Derek S. Casey
Triplett, Woolf, Garretson, L.L.C.
2959 North Rock Road, Suite 300
Wichita, KS 67226

Molly M. Gordon
Depew, Gillen, Rathbun, & McInteer
8301 East 21st Street North, Suite 450
Wichita, KS 67206

One copy mailed to:

Gonzalo Ramirez
c/o Harvey County Jail
P.O. Box 267
Newton, KS 67114

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 12-CR-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT PEDRO GARCIA'S MOTION FOR JOINDER IN CO-DEFENDANT GONZALO RAMIREZ'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF COOPERATING WITNESS**

**- DEFENDANT GARCIA'S TWENTY-THIRD MOTION -**

COMES NOW the defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and hereby moves to join in defendant Gonzalo Ramirez's Motion in Limine to Exclude Testimony of Cooperating Witness, to-wit, David Ochoa. (Doc. 816). But for the grounds of conflict of raised by Mr. Ramirez's counsel in Ramirez-s motion, the grounds for granting the motion in limine on behalf of Mr. Garcia, are virtually identical as those set out in Mr. Ramirez's motion.

1. The government intends to call David Ochoa, a twice convicted drug dealer to testify in this RICO case. Mr. Garcia, not unlike Mr. Ramirez has been incarcerated in either state or federal institutions for a substantial period of time over the past ten years. Mr. Garcia's contact with Mr. Ochoa over that period of time has been severely limited, and in no way meaningful. Mr. Garcia adopts herein the two paragraphs contained in the Introduction section of Mr. Ramirez's brief.

2. But for the portion(s) of the Discussion section of Mr. Ramirez's brief, Mr. Garcia adopts

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1169

that section as well.

For those reasons, Mr. Garcia prays that his motion in limine be granted.

<div style="margin-left:50%">

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2013, I electronically filed the foregoing by using the

CM/ECF system which will send a notice of electronic filing to the counsel of record.

<div style="margin-left:50%">

s/John Val Wachtel
John Val Wachtel

</div>

Klenda Doc. 21T2150

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-10089-03 MLB |
| | ) | |
| GONZALO RAMIREZ, et al., | ) | |
| Defendant. | ) | |
| | ) | |

**SUPPLEMENTAL PROPOSED JURY INSTRUCTIONS**

COMES NOW the Defendant, Gonzalo Ramirez, by and through his attorneys, Joel Mandelman and Timothy J. Henry, Assistant Federal Public Defenders for the District of Kansas, and hereby requests the attached jury instructions. The Defendant also renews his request for his prior jury instructions regarding 18 U.S.C. § 1962(d) and the definition of interstate commerce filed in Doc. 783. To the extent the Court delivers different instructions, the Defendant respectfully objects. The Defendant also reserves the right to make additional objections at the instructions conference and in a future pleading.

Before reaching the proposed instructions, the Defendant has a few specific concerns. First, the Defendant requests that the Court modify its proposed VICAR instruction by dividing the second element into two parts. This suggestion conforms with the Fifth Circuit Pattern Jury Instruction. Second, the Defendant requests that the Court add "as to each defendant" at the end of the opening paragraph of the substantive instructions on the individual counts. The Defendant is concerned that the present language of "or either of them" might suggest that the jury could convict both defendants if it believes either is guilty. Third, the Defendant objects to including the lesser-included offense of second-degree murder in the substantive VICAR murder charge. The Defendant does not believe

the federal statute reaches second-degree murder. Fourth, the Defendant asks that the drug predicates

be removed from the substantive §1962(d) instruction because the evidence is insufficient to show

that the distribution of narcotics is related to the enterprise. Fifth, the Defendant requests that the

Court include the following paragraph in its definition of Enterprise. Perhaps the Court could

substitute this paragraph for its last two paragraphs:

> Although the enterprise must be separate and apart from the pattern of racketeering activity in which the enterprise allegedly engaged, it is not necessary to find that the enterprise had some function wholly unrelated to the racketeering activity. The enterprise must be proven to have been an ongoing organization, formal or informal, that functioned as a continuing unit.

Other specified requested instructions are below.

2

DEFENDANT'S PROPOSED INSTRUCTION NUMBER ____

**MULTIPLE DEFENDANTS-MULTIPLE COUNTS**

A separate crime is charged against one or more of the defendants in each count of the Indictment.  You must separately consider the evidence against each defendant on each count and return a separate verdict for each defendant.

Your verdict as to any one defendant or count, whether it is guilty or not guilty, should not influence your verdict as to any other defendants or counts.

§1.22 Tenth Circuit Pattern Jury Instructions, (2011).

1173

DEFENDANT'S PROPOSED INSTRUCTION NUMBER ____

Count 2 charges the defendant committed a violent crime in aid of racketeering (VICAR), Conspiracy to Murder, which is in violation of Title 18, United States Code § 1959(a)(5).  In order to convict a defendant of the offense charged in Count 2, the government must prove each of the following five elements beyond a reasonable doubt:

First:  That the enterprise existed as alleged in the Indictment.

Second: That the enterprise's activities affected interstate commerce.

Third: That the enterprise was engaged in racketeering activity.

Fourth: That the defendant committed the following crime of violence: conspiracy to murder of any person as charged in Count 2.  I have instructed you on what the government must prove to establish that the defendant committed this act; and

Fifth: That the defendant's purpose in committing conspiracy to murder and murder, the crime of violence was to gain entrance to, or to maintain, or to increase his position in the enterprise.

§2.77A Fifth Circuit Pattern Jury Instructions, (2012).

4

DEFENDANT'S PROPOSED INSTRUCTION NUMBER _____

Count 3 charges the defendant committed a violent crime in aid of racketeering (VICAR), Murder, which is in violation of Title 18, United States Code § 1959(a)(1).  In order to convict a defendant of the offense charged in Count 3, the government must prove each of the following five elements beyond a reasonable doubt:

First:  That the enterprise existed as alleged in the Indictment.

Second: That the enterprise's activities affected interstate commerce.

Third: That the enterprise was engaged in racketeering activity.

Fourth: That the defendant committed the following crime of violence: murder of Israel Peralta as charged in Count 3.  I have instructed you on what the government must prove to establish that the defendant committed this act; and

Fifth: That the defendant's purpose in committing murder, the crime of violence was to gain entrance to, or to maintain, or to increase his position in the enterprise.

§2.77A <u>Fifth Circuit Pattern Jury Instructions</u>, (2012).

DEFENDANT'S PROPOSED INSTRUCTION NUMBER ____

Count 4 charges the defendant committed a violent crime in aid of racketeering (VICAR), Attempted Murder, which is in violation of Title 18, United States Code § 1959(a)(5). In order to convict a defendant of the offense charged in Count 4, the government must prove each of the following five elements beyond a reasonable doubt:

First: That the enterprise existed as alleged in the Indictment.

Second: That the enterprise's activities affected interstate commerce.

Third: That the enterprise was engaged in racketeering activity.

Fourth: That the defendant committed the following crime of violence: attempted murder of Mariano Sorano, Faustino Peralta, and/or Roberto Arco as charged in Count 4. I have instructed you on what the government must prove to establish that the defendant committed this act; and

Fifth: That the defendant's purpose in committing attempted murder, the crime of violence was to gain entrance to, or to maintain, or to increase his position in the enterprise.

§2.77A <u>Fifth Circuit Pattern Jury Instructions</u>, (2012).

DEFENDANT'S PROPOSED INSTRUCTION NUMBER ____

Count 5 charges the defendant committed a violent crime in aid of racketeering (VICAR), Assault With A Dangerous Weapon, which is in violation of Title 18, United States Code § 1959(a)(3).  In order to convict a defendant of the offense charged in Count 5, the government must prove each of the following five elements beyond a reasonable doubt:

First:  That the enterprise existed as alleged in the Indictment.

Second: That the enterprise's activities affected interstate commerce.

Third: That the enterprise was engaged in racketeering activity.

Fourth: That the defendant committed the following crime of violence: assaulted Israel Peralta, Mariano Sorano, Faustino Peralta, and Roberto Arco with a dangerous weapon as charged in Count 5.  I have instructed you on what the government must prove to establish that the defendant committed this act; and

Fifth: That the defendant's purpose in committing assault with a dangerous weapon, the crime of violence was to gain entrance to, or to maintain, or to increase his position in the enterprise.

§2.77A Fifth Circuit Pattern Jury Instructions, (2012).

DEFENDANT'S PROPOSED INSTRUCTION NUMBER ____

Count 7 charges the defendant committed a violent crime in aid of racketeering (VICAR), Assault With A Dangerous Weapon, which is in violation of Title 18, United States Code § 1959(a)(3).  In order to convict a defendant of the offense charged in Count 7, the government must prove each of the following five elements beyond a reasonable doubt:

First:  That the enterprise existed as alleged in the Indictment.

Second: That the enterprise's activities affected interstate commerce.

Third: That the enterprise was engaged in racketeering activity.

Fourth: That the defendant committed the following crime of violence: assaulted Isidro Raleas-Velasquez with a dangerous weapon as charged in Count 7.  I have instructed you on what the government must prove to establish that the defendant committed this act; and

Fifth: That the defendant's purpose in committing assault with a dangerous weapon, the crime of violence was to gain entrance to, or to maintain, or to increase his position in the enterprise.

§2.77A Fifth Circuit Pattern Jury Instructions, (2012).

8

DEFENDANT'S PROPOSED INSTRUCTION NUMBER ____

Count 8 charges the defendant committed a violent crime in aid of racketeering (VICAR), Conspiracy to Commit Assault With A Dangerous Weapon, which is in violation of Title 18, United States Code § 1959(a)(6).  In order to convict a defendant of the offense charged in Count 8, the government must prove each of the following five elements beyond a reasonable doubt:

First:  That the enterprise existed as alleged in the Indictment.

Second: That the enterprise's activities affected interstate commerce.

Third: That the enterprise was engaged in racketeering activity.

Fourth: That the defendant committed the following crime of violence: conspiracy to commit assault with a dangerous weapon as charged in Count 8.  I have instructed you on what the government must prove to establish that the defendant committed this act; and

Fifth: That the defendant's purpose in committing conspiracy to commit assault with a dangerous weapon, the crime of violence was to gain entrance to, or to maintain, or to increase his position in the enterprise.

§2.77A Fifth Circuit Pattern Jury Instructions, (2012).

9

DEFENDANT'S PROPOSED INSTRUCTION NUMBER _____

Count 10 charges the defendant committed a violent crime in aid of racketeering (VICAR), Conspiracy to Commit Murder, which is in violation of Title 18, United States Code § 1959(a)(5). In order to convict a defendant of the offense charged in Count 10, the government must prove each of the following five elements beyond a reasonable doubt:

First:  That the enterprise existed as alleged in the Indictment.

Second: That the enterprise's activities affected interstate commerce.

Third: That the enterprise was engaged in racketeering activity.

Fourth: That the defendant committed the following crime of violence: conspiracy to commit murder of Rumalda Hipolito and Abel Hernandez as charged in Count 10.  I have instructed you on what the government must prove to establish that the defendant committed this act; and

Fifth: That the defendant's purpose in committing conspiracy to commit assault with a dangerous weapon, the crime of violence was to gain entrance to, or to maintain, or to increase his position in the enterprise.

§2.77A Fifth Circuit Pattern Jury Instructions, (2012).

10

DEFENDANT'S PROPOSED INSTRUCTION NUMBER ____

Count 11 charges the defendant committed a violent crime in aid of racketeering (VICAR), Attempted Murder, which is in violation of Title 18, United States Code § 1959(a)(5).  In order to convict a defendant of the offense charged in Count 11, the government must prove each of the following five elements beyond a reasonable doubt:

First:  That the enterprise existed as alleged in the Indictment.

Second: That the enterprise's activities affected interstate commerce.

Third: That the enterprise was engaged in racketeering activity.

Fourth: That the defendant committed the following crime of violence: attempted murder of Rumalda Hipolito and Abel Hernandez as charged in Count 11.  I have instructed you on what the government must prove to establish that the defendant committed this act; and

Fifth: That the defendant's purpose in committing conspiracy to commit assault with a dangerous weapon, the crime of violence was to gain entrance to, or to maintain, or to increase his position in the enterprise.

§2.77A Fifth Circuit Pattern Jury Instructions, (2012).

11

DEFENDANT'S PROPOSED INSTRUCTION NUMBER _____

Count 12 charges the defendant committed a violent crime in aid of racketeering (VICAR), Assault With A Dangerous Weapon, which is in violation of Title 18, United States Code § 1959(a)(3).  In order to convict a defendant of the offense charged in Count 12, the government must prove each of the following five elements beyond a reasonable doubt:

First:  That the enterprise existed as alleged in the Indictment.

Second: That the enterprise's activities affected interstate commerce.

Third: That the enterprise was engaged in racketeering activity.

Fourth: That the defendant committed the following crime of violence: assaulted Rumalda Hipolito and Abel Hernandez with a dangerous weapon as charged in Count 12.  I have instructed you on what the government must prove to establish that the defendant committed this act; and

Fifth: That the defendant's purpose in committing assault with a dangerous weapon, the crime of violence was to gain entrance to, or to maintain, or to increase his position in the enterprise.

§2.77A Fifth Circuit Pattern Jury Instructions, (2012).

12

DEFENDANT'S PROPOSED INSTRUCTION NUMBER \_\_\_\_

During the trial, you heard evidence that Pedro Garcia allegedly made statements to Fabian Neave and Joe Galindo about the alleged homicide of Israel Peralta. These statements, if you believe they were made, are not admissible against Gonzalo Ramirez and you must not consider them in any way when evaluating the evidence against Mr. Ramirez.

13

DEFENDANT'S PROPOSED INSTRUCTION NUMBER ____

You heard testimony and received evidence that Pedro Garcia entered a plea agreement in a prior federal case involving the possession of a firearm. Neither Mr. Garcia's conviction nor any of the evidence against Mr. Garcia in that case may be used when evaluating the evidence against Mr. Ramirez in this case.

14

DEFENDANT'S PROPOSED INSTRUCTION NUMBER _____

Shane Webb and James Nau testified in this case as both expert witnesses and fact witnesses. These circumstances do not lend any extra credibility to their fact testimony. You must evaluate them as you would any other fact witness. Similarly, their expert testimony should not be given additional weight because of their testimony as fact witnesses.

DEFENDANT'S PROPOSED INSTRUCTION NUMBER _____

The testimony of an alleged accomplice, one who said he participated in the commission of a crime, must be examined and weighed by the jury with greater caution than the testimony of a witness who did not claim to participate in the commission of that crime. The fact that an alleged accomplice has pled guilty to the offense charged is not evidence of the guilt of any other person, including the defendant. The jury must determine whether the testimony of the alleged accomplice has been affected by self interest, or by an agreement he or she may have with the government, or by his or her own interest in the outcome of this case, or by prejudice against the defendant.

16

DEFENDANT'S PROPOSED INSTRUCTION NUMBER _____

You have heard the testimony of Anthony Wright, Russell Worthey, Jesus Flores, Juan Torres, and Fabian Neave, each of whom is providing evidence for the government in exchange for a promise from the government that the government may file a motion so they may receive a reduced prison term, and a promise from the government that the government will inform their sentencing judge of their testimony for the government in this case. These witnesses told the government what each would testify to in exchange for this promise. The government is permitted to present the testimony of someone who has been promised favorable treatment in his own case in exchange for his testimony, but you should consider the testimony of the above men with more caution than the testimony of other witnesses. Each of these witnesses may have had reason to make up a story or accuse a particular person because he wanted to strike a good bargain with the government about his own case. You should consider this agreement and the witness's hopes as to future advantages in judging the credibility of that witness. In deciding whether you believe the testimony of the above men, you should keep these comments in mind.

DEFENDANT'S PROPOSED INSTRUCTION NUMBER _____

You have heard evidence that Joe Galindo has received a promise from the government that his testimony will not be used against him in a criminal case in exchange for testifying.  His testimony was received in evidence and may be considered by you.  The government is permitted to present the testimony of someone who has received a benefit from the government in exchange for his testimony, but you should consider the testimony of Mr. Galindo with great care and caution. In evaluating Mr. Galindo's testimony, you should consider this factor along with the others I have called to your attention. Whether or not his testimony may have been influenced by the government's promise is for you to determine. You may give his testimony such weight as you think it deserves.

18

DEFENDANT'S PROPOSED INSTRUCTION NUMBER ____

Fabian Neave testified in this case as a jailhouse informant.  A jailhouse informant is someone who is currently incarcerated and who obtains information from a defendant regarding the crime in this case and agrees to testify for the government.  You must look with particular care at the testimony of a jailhouse informant and scrutinize it very carefully before you accept it.  You should determine the credibility of that witness in the light of any motive for testifying falsely and inculpating the accused.

In considering the testimony of this witness, you may consider such things as:

the extent to which the jailhouse informant's testimony is confirmed by other evidence;

the specificity of the testimony;

the extent to which the testimony contains details known only by the perpetrator;

the extent to which the details of the testimony could be obtained from a source other than the defendant;

the jailhouse informant's criminal record;

any benefits received in exchange for the testimony;

whether the jailhouse informant previously has provided reliable or unreliable information; and,

the circumstances under which the jailhouse informant initially provided the information to the police or the prosecutor, including whether the jailhouse informant was responding to leading questions.

Like all other questions of credibility, this is a question you must decide based on all of the evidence presented to you.

WHEREFORE, the Defendant moves the Court to use the above supplemental proposed jury instructions and reserves the right to propose additional instructions.

Respectfully submitted,


s/Joel Mandelman
JOEL MANDELMAN, KS Sup. Ct. No. 25726
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Joel_Mandelman@fd.org


And


s/Timothy J. Henry
TIMOTHY J. HENRY
KS Sup. Ct. No. 12934
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Tim_Henry@fd.org

20

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2013, I electronically filed the foregoing PROPOSED

JURY INSTRUCTIONS with the Clerk of the Court by using the CM/ECF system which will send

a notice of electronic filing to the following:

Lanny Welch
Aaron Smith
Assistant U.S. Attorney
301 N. Main, Suite 1200
Wichita, KS  67202

David H. Moses
Case, Moses, Zimmerman & Martin, PA
200 West Douglas, Suite 900
Wichita, KS 67202

John V. Wachtel
Klenda, Austerman, L.L.C.
301 N. Main, Suite 1600
Wichita, KS 67202

James R. Pratt
Attorney at Law
445 N. Waco
Wichita, KS 67202

Jay F. Fowler
Foulston Siefkin, L.L.P.
1551 N. Waterfront Pkwy, Ste. 100
Wichita, KS 67206

Carl F.A. Maughan
Maughan & Maughan
200 West Douglas, Suite 350
Wichita, KS 67202

Roger L. Falk
Law office of Roger L. Falk, P.A.
301 West Central
Wichita, KS 67202

Paul S. McCausland
Young, Bogle, McCausland, Wells &
   Blanchard
100 North Main, Suite 1001
Wichita, KS 67202

Michael J. Shultz
Shultz Law Office, P.A.
445 North Waco
Wichita, KS 67202

David M. Rapp
Hinkle Law Firm LLC
301 N. Main St., Suite 2000
Wichita, KS 67202

Jeff L. Griffith
Griffith & Griffith
111 South Baltimore
Derby, KS 67037

Mark T. Schoenhofer
Law Office of Mark Schoenhofer
1631 E. 1st
Wichita, KS 67214

21

Edward L. Robinson
Joseph, Hollander & Craft
500 N. Market Street
Wichita, KS 67214

Eric A. Hartenstein
Attorney at Law
200 West Douglas, Suite 600
Wichita, KS 67202

Mark A. Sevart
Attorney at Law
P.O. Box 781602
Wichita, KS 67278

Gregory D. Bell
Forker Suter, L.L.C.
129 West 2nd Ave., Suite 200
Hutchinson, KS 67504

Kevin W. Loeffler
Law Office of Kevin Loeffler
111 E. 7th
Newton, KS 67114

Molly M. Gordon
Depew, Gillen, Rathbun, & McInteer
8301 East 21st Street North, Suite 450
Wichita, KS 67206

Michael D. Hepperly
Michael D. Hepperly Law Office, Chtd.
310 West Central, Suite 119
Wichita, KS 67202

Mark L. Bennett, Jr.
Bennett & Hendrix, L.L.P.
5605 S.W. Barrington Ct. S., Suite 201
Topeka, KS 66614

Sean C. McEnulty
McEnulty Law Firm
151 Whittier St., Suite 1000
Wichita, KS 67207

Charles A. O'Hara
O'Hara & O'Hara
1223 E. First
Wichita, KS 67214

Derek S. Casey
Triplett, Woolf, Garretson, L.L.C.
2959 North Rock Road, Suite 300
Wichita, KS 67226

s/Joel Mandelman

JOEL MANDELMAN
KS Sup. Ct. No. 25726
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Joel_Mandelman@fd.org

And

<div align="center"></div>

s/Timothy J. Henry
TIMOTHY J. HENRY
KS Sup. Ct. No. 12934
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Tim_Henry@fd.org

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,      **)**

                     **)**

                Plaintiff,   **)**   **CRIMINAL ACTION**

                     **)**

v.                     **)**   No.  12-10089-MLB

                     **)**

PEDRO GARCIA and GONZALO RAMIREZ,  **)**

                     **)**

             Defendants.  **)**

                     **)**

<u>**INSTRUCTIONS TO THE JURY**</u>

**INDEX**

|  |  | Instruction Nos. |
|---|---|---|
| 1. | The Indictment and related instructions | 1-5 |
| 2. | Definitions | 6-14 |
| 3. | Count 1 RICO conspiracy elements | 15-20 |
| 4. | Counts 2 - 5, 7, 8, 10 - 12 VICAR elements | 21-40 |
| 5. | Counts 6, 9, and 13 elements | 41-46 |
| 6. | General instructions regarding presumption of innocence, burden of proof, consideration of evidence and testimony of witnesses | 47-65 |
| 7. | Miscellaneous instructions | 66-73 |

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1195

INSTRUCTION NO. ____1____

Members of the Jury:

Now that you have heard all of the evidence, it becomes my duty to instruct you on the law applicable to this case.  In the interest of clarity, I will read the instructions to you and each of you has a copy of the instructions to use in the jury room.

In any jury trial there are, in effect, two judges.  I am one of the judges; the other is the jury.  It is my duty to preside over the trial and to determine what testimony and evidence is relevant under the law for your consideration.  It is your duty, as judges of the facts, to follow and apply that law to the facts as you find them from the evidence in the case.  You are not to single out one instruction alone as stating the law, but you must consider the instructions as a whole.  Neither are you to be concerned with the wisdom of any rule of law stated by me.  That is, you must not substitute or follow your own notion or opinion as to what the law is or ought to be.  It is your duty to apply the law as I give it to you, regardless of the consequences.

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1196

INSTRUCTION NO. ___2___


An indictment is but a formal method of accusing a defendant of a crime.  It is not evidence of any kind against a defendant, and does not create any presumption or permit any inference of guilt.  It is a mere charge or accusation--nothing more and nothing less.

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1197

INSTRUCTION NO. ___3___


The indictment alleges that the crimes were committed "on or about" certain dates.  It is not necessary that the proof establish with certainty the exact dates of the alleged crimes.  It is sufficient if the evidence shows beyond a reasonable doubt that the crimes were committed on dates reasonably near the dates alleged.

INSTRUCTION NO. __4__


A separate crime is charged against each defendant in each count of the indictment. You must separately consider the evidence against each defendant on each count and return a separate verdict for each defendant.

Keep in mind that although both defendants are charged in counts 1 - 9, only defendant Gonzalo Ramirez is charged in counts 10 - 13.  Your verdict as to any one defendant or any count, whether it is guilty or not guilty, should not influence your verdict as to the other defendant or counts.

INSTRUCTION NO.    5

The indictment in this case charges substantially as follows:

## COUNT 1

The Grand Jury charges:

### The Enterprise

1.   At various times relevant to this Indictment;

JASON NAJERA, PEDRO GARCIA, GONZALO RAMIREZ, RUSSELL WORTHEY, ANTHONY WRIGHT, JOSHUA FLORES, JESUS FLORES, ANGEL CERDA, JUAN TORRES, ALFREDO BELTRAN-RUIZ, DONTE BARNES, JESUS SANCHEZ, ENRIQUE GOBIN, ALFONSO BANDA-HERNANDEZ, ANDREW GUSMAN, EUSEBIO SIERRA-MEDRANO, JAYSON VARGAS, ADAM FLORES, FABIAN NEAVE, JESUS TORRES, JOSE NEAVE, HERNAN QUEZADA, HUMBERTO ORTIZ, the defendants, and others known and unknown, were leaders, members and associates of the Nortenos, a criminal organization whose members and associates engaged in narcotics distribution and acts of violence including acts involving murder and robbery, and which operated principally in Dodge City, Kansas.

2. The Nortenos, including its leadership, membership and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4) (hereinafter "the enterprise"), that is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

3. The Nortenos (Spanish: Northerners) is a street gang

present in numerous states in the United States. In Dodge City, Kansas, Nortenos members and associates identify with "sets" named Diablos Viejos (DV) and Los Carnales Chingones (LCC). The DV and LCC members are organized under the common identity of Nortenos. Both the DV and LCC members identify with the same colors and symbols, identify themselves as Nortenos, and associate regularly in the commission of various crimes.

### Purposes of the Enterprise

4.   The purposes of the enterprise included the following:

a.      Enriching the members and associates of the enterprise through, among other things, murder, robbery, and distribution of narcotics.

b.      Preserving and protecting the power, territory and profits of the enterprise through the use of actual and threatened violence, including assaults and murder.

c.      Promoting and enhancing the enterprise and the activities and reputations of its members and associates.

d.      Keeping victims in fear of the enterprise and in fear of its members and associates through actual violence and threats of violence.

### Roles of the Defendants

5.   The defendants participated in the operation and management of the enterprise.

a.   Members and associates of the enterprise identify themselves through, amongst other things, clothing, hand signals and

tattoos which signify gang affiliation. Red clothing and paraphernalia are associated with the Nortenos street gang.

Nortenos gang members frequently reference the number "14" through hand signals and tattoos because the letter "N", which represents "Norteno", is the 14th letter of the alphabet.

b. The defendant Jason NAJERA was a leader of the enterprise who directed other members of the enterprise in carrying out unlawful and other activities in furtherance of the conduct of the enterprise's affairs.

c. Under the direction of Jason NAJERA and other leaders of the enterprise, including Eusebio SIERRA-MEDRANO and Fabian NEAVE, the defendants and others participated in unlawful and other activities in furtherance of the conduct of the enterprise's affairs.

### Means and Methods of the Enterprise

6. Among the means and methods by which the defendants and others conducted and participated in the conduct of the affairs of the enterprise were the following:

a. Members of the enterprise and their associates used, attempted to use, and conspired to use murder, robbery and assault, which affected interstate commerce.

b. Members of the enterprise and their associates committed, attempted and threatened to commit acts of violence, including murder and robbery, to protect and expand the enterprise's criminal operations.

c. Members of the enterprise and their associates promoted a climate of fear through violence and threats of violence.

d. Members of the enterprise and their associates used and

threatened to use physical violence against various individuals, including rival gang members andassociates.

e.   Members of the enterprise and their associates trafficked in narcotics, including methamphetamine, cocaine and marijuana.

### The Racketeering Conspiracy

7. On or about and between 2008 through the date of this Indictment, both dates being approximate and inclusive, within the District of Kansas, and elsewhere,

**JASON NAJERA, PEDRO GARCIA, GONZALO RAMIREZ,**

**ANTHONY WRIGHT, JESUS SANCHEZ, EUSEBIO SIERRA-MEDRANO,**

**JAYSON VARGAS, FABIAN NEAVE**,

together with persons known and unknown, being persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Sections 1961(1) and 1961(5) of Title 18, United States Code, consisting of multiple acts involving:

   a.   Distribution and possession with intent to distribute controlled substances and conspiracy to do so under 21 U.S.C. §841 and §846 and multiple acts involving:

   b.   Distribution and possession with intent to distribute controlled substances and conspiracy to do so under Kan. Stat. Ann. §§21-5705 and 5302 (formerly §§65-4161

and 21-36a05 and 21-3302).

    c.    Murder, chargeable under Kan. Stat. Ann. §§21-5402 and 5403(formerly §§21-3401 and 3402), Kan. Stat. Ann. §21-5403 (formerly §21-3402), and attempts and conspiracies to do so under Kan. Stat. Ann. §§21-5301 and 5302 (formerly §§21-3301 and 3302).

    d.    Robbery, chargeable under Kan. Stat. Ann. §21-5420 (formerly §21- 3426 and §21-3427), and attempts and conspiracies to do so under Kan. Stat. Ann. §§21-5301 and 5302 (formerly §§21-3301 and 3302).

8. It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT 2

**Violent Crimes in Aid of Racketeering**

**Conspiracy to Murder Israel Peralta, Mariano Sorano, Faustino Peralta, and Roberto Arco**

9. At all times relevant to this Indictment, the Nortenos, as more fully described in Paragraphs 1 through 6 of Count One of this Indictment, which are realleged and incorporated by reference as though set forth fully herein, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), namely the Nortenos, that is, a group of individuals associated in fact which was engaged in, and the activities of which affected, interstate and

foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

10. At all times relevant to this Indictment, the above-described enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, robbery, and narcotics trafficking in violation of the laws of the State of Kansas, and narcotics trafficking in violation of Title 21, United States Code, Sections 841 and 846.

11. On or about June 8, 2009, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity,

**PEDRO GARCIA, GONZALO RAMIREZ,**

**RUSSELL WORTHEY, and ANTHONY WRIGHT,**

the defendants herein, and others known and unknown, unlawfully, and knowingly conspired to murder Israel Peralta, Mariano Sorano, Faustino Peralta, and Roberto Arco, in violation of Kan. Stat. Ann. §21-5402 (formerly §21-3401).

In violation of Title 18, United States Code, Section 1959(a)(5).

**COUNT 3**

**Violent Crimes in Aid of Racketeering**

**Murder of Israel Peralta**

12. Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth

herein.

13. On or about June 8, 2009, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity,

**PEDRO GARCIA, GONZALO RAMIREZ,**

**RUSSELL WORTHEY, and ANTHONY WRIGHT,**

the defendants herein, unlawfully, and knowingly murdered Israel Peralta, in violation of Kan. Stat. Ann. § 21-5402 (formerly §21-3401).

In violation of Title 18, United States Code, Section 1959(a)(1) and Section 2.

## COUNT 4

### Violent Crimes in Aid of Racketeering

**Attempted Murder of Mariano Sorano, Faustino Peralta, and Roberto Arco**

14. Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

15. On or about June 8, 2009, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity,

**PEDRO GARCIA, GONZALO RAMIREZ,**

**RUSSELL WORTHEY, and ANTHONY WRIGHT,**

the defendants herein, unlawfully, and knowingly attempted the murder of Mariano Sorano, Faustino Peralta, and Roberto Arco, in violation of Kan. Stat. Ann. §21-5402 (formerly §21-3401).

All in violation of Title 18, United States Code, Section 1959(a)(5) and Section 2.

## COUNT 5

### Violent Crimes in Aid of Racketeering

### Assault With a Dangerous Weapon Upon Israel Peralta, Mariano Sorano, Faustino Peralta, and Roberto Arco

16. Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

17. On or about June 8, 2009, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity,

**PEDRO GARCIA, GONZALO RAMIREZ,**

**RUSSELL WORTHEY, and ANTHONY WRIGHT,**

the defendants herein, unlawfully, and knowingly assaulted Israel Peralta, Mariano Sorano, Faustino Peralta, and Roberto Arco with a dangerous weapon, to wit: a firearm, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

All in violation of Title 18, United States Code, Section 1959(a)(3) and Section 2.

## COUNT 6

### Possess/Discharge a Firearm in Furtherance of a Crime of Violence

18. On or about June 8, 2009, in the District of Kansas, the defendants,

**PEDRO GARCIA, GONZALO RAMIREZ,**

**RUSSELL WORTHEY, and ANTHONY WRIGHT,**

the defendants herein, did knowingly possess firearms and discharge firearms, in furtherance of a crime of violence for which they may be prosecuted in a court of the United States, to wit: 18 U.S.C.§1959, referencing Murder in the First Degree in violation of Kan. Stat. Ann. §21-5402 (formerly §21-3401).

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and Section 2.

## COUNT 7

### Violent Crimes in Aid of Racketeering

### Assault with a Dangerous Weapon Upon Isidro Raleas-Velasquez

19. Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

20. On or about June 8, 2009, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity,

**PEDRO GARCIA, GONZALO RAMIREZ,**

**JOSHUA FLORES, and JESUS FLORES,**

the defendants herein, and others known and unknown, unlawfully, and knowingly committed an assault with a dangerous weapon, to wit: a firearm, upon Isidro Raleas-Velasquez, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

In violation of Title 18, United States Code, Section 1959(a)(3) and Section 2.

## COUNT 8

### Violent Crimes in Aid of Racketeering

**Conspiracy to Commit an Assault with a Dangerous Weapon**

21. Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

22. On or about June 8, 2009, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity,

**PEDRO GARCIA, GONZALO RAMIREZ,**

**JOSHUA FLORES, and JESUS FLORES,**

the defendants herein, and others known and unknown, unlawfully, and knowingly conspired to commit an assault with a dangerous weapon, to wit: a firearm, upon Isidro Raleas-Velasquez, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

In violation of Title 18, United States Code, Section 1959(a)(6).

**COUNT 9**

**Possess and Brandish a Firearm in Furtherance of a Crime of Violence**

23. On or about June 8, 2009, in the District of Kansas,

**PEDRO GARCIA, GONZALO RAMIREZ,**

**JOSHUA FLORES, and JESUS FLORES,**

the defendants herein, did knowingly possess firearms and brandish firearms, in furtherance of a crime of violence for which they may be prosecuted in a court of the United States, to wit: 18 U.S.C. §1951 and 18 U.S.C. §1959, referencing Aggravated Robbery, in violation of Kan. Stat. Ann. §21-5420(b)(1) (formerly §21-3427).

In violation of Title 18, United States Code, Section 924(c)(1)(A) and Section 2.

### COUNT 10

**Violent Crimes in Aid of Racketeering**

**Conspiracy to Commit the Murder of Rumalda Hipolito and Abel Hernandez**

24. Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

25. On or about October 4, 2008, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity,

**ANGEL CERDA, JUAN TORRES, and GONZALO RAMIREZ,**

the defendants herein, and others known and unknown, unlawfully, and knowingly conspired to murder Rumalda Hipolito and Abel Hernandez, in violation of Kan. Stat. Ann. §21-5402 formerly §21-3401).

All in violation of Title 18, United States Code, Section 1959(a)(5).

### COUNT 11

**Violent Crimes in Aid of Racketeering**

**Attempted Murder of Rumalda Hipolito and Abel Hernandez**

26. Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

27. On or about October 4, 2008, in the District of Kansas,

for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity,

**ANGEL CERDA, JUAN TORRES, and GONZALO RAMIREZ,**

the defendants herein, unlawfully, and knowingly attempted the murder of Rumalda Hipolito and Abel Hernandez, in violation of Kan. Stat. Ann. §21-5402 (formerly §21-3401).

All in violation of Title 18, United States Code, Section 1959(a)(5) and Section 2.

## COUNT 12

### Violent Crimes in Aid of Racketeering

### Assault With a Dangerous Weapon Upon Rumalda Hipolito and Abel Hernandez

28. Paragraphs 9 and 10 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

29. On or about October 4, 2008, in the District of Kansas, for the purpose of gaining entrance to and maintaining and increasing position in the Nortenos, an enterprise engaged in racketeering activity,

**ANGEL CERDA, JUAN TORRES, and GONZALO RAMIREZ,**

the defendants herein, unlawfully, and knowingly assaulted Rumalda Hipolito and Abel Hernandez, with a dangerous weapon, to wit: a firearm, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

All in violation of Title 18, United States Code, Section

1959(a)(3) and Section 2.

## COUNT 13

### Possess and Discharge a Firearm in Furtherance of a Crime of Violence

30. On or about October 4, 2008, in the District of Kansas,

**ANGEL CERDA, JUAN TORRES, and GONZALO RAMIREZ,**

the defendants herein, did knowingly possess firearms and discharge firearms, in furtherance of a crime of violence for which they may be prosecuted in a court of the United States, to wit: 18 U.S.C. § 1959, referencing Aggravated Assault, in violation of Kan. Stat. Ann. §21-5412(b)(1) (formerly §21-3410(a)).

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and Section 2.

INSTRUCTION NO. _____6_____


        The following instructions define terms which apply to other instructions.   The term are conspiracy, aiding and abetting, enterprise, interstate commerce, foreign commerce, racketeering activity, pattern of racketeering activity, overt act and dangerous weapon.

INSTRUCTIONS NO. _____7_____

**Conspiracy**

Counts 1, 2, 8 and 10 charge separate conspiracies.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose. It is a kind of "partnership in criminal purposes" in which each member becomes the agent or partner of every other member. The evidence may show that some of the persons involved in the alleged conspiracy are not on trial. This does not matter. There is no requirement that all members of a conspiracy be charged or tried together in one proceeding.

The evidence need not show that the members entered into an express or formal agreement. Nor does the law require proof that the members agreed on all the details. But the evidence must show that the members of the alleged conspiracy came to a mutual understanding to try to accomplish a common and unlawful plan. If you are convinced that the charged conspiracies existed, or any of them, then you must next determine whether Garcia and/or Ramirez was a member of the charged conspiracies, that is, whether Garcia and/or Ramirez knew at least the essential goals of the conspiracy or conspiracies and voluntarily chose to be part of it (them).

The law does not require proof that a defendant knew all the other members of the conspiracy or knew all the details about how activities were to be carried out. A person may belong to a conspiracy for a brief period of time or play a minor role. On the other hand, proof is not sufficient if it merely shows that a defendant knew about the existence of the conspiracy or was associated with members of the conspiracy. Rather, the evidence must show Garcia and/or Ramirez

knowingly joined the charged conspiracies, or any of them, with the intent to advance their purposes.

You are also required to find that interdependence existed among the members of each conspiracy.  This means that the members intended to act for their shared mutual benefit.  To satisfy the interdependence element, you must conclude that Garcia and/or Ramirez participated in a shared criminal purpose with others in the conspiracy in which they are charged and that Garcia's and/or Ramirez's actions constituted an essential and integral step toward the realization of that purpose.

INSTRUCTION NO. ____8____

**Overt Act**

An "overt act" necessarily must extend beyond mere preparations made by the member of the conspiracy and must sufficiently approach consummation of the offense to stand either as the first or subsequent step in a direct movement toward the completed offense. Mere preparation is insufficient to constitute an overt act.

INSTRUCTION NO. ___9___


**Aiding and Abetting**

Counts 3, 4, 5, 6, 7, 9, 11, 12, and 13 of the indictment each charge an additional violation of 18 U.S.C. section 2, which provides that: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."  This law makes it a crime to intentionally help someone else commit a crime.  Aiding and abetting is a different crime from conspiracy, primarily because it does not require proof of an agreement.

To find Garcia guilty of aiding and abetting, you must be convinced that the government has proved both of the following essential elements beyond a reasonable doubt:

*First*: someone else committed the charged crimes in counts 3, 4, 5, 6, 7, 9, or any of them, and

*Second*: Garcia intentionally associated himself in some way with the crime or crimes and intentionally participated therein as he would in something he wished to bring about.  This means that the government must prove that Garcia consciously shared the knowledge of the underlying criminal acts and intended to help the individual and/or individuals who committed the crimes charged in counts 3, 4, 5, 6, 7, 9, or any of them.


To find Ramirez guilty of aiding and abetting, you must be convinced that the government has proved both of the following essential elements beyond a reasonable doubt:

*First*: someone else committed the charged crimes in counts

3, 4, 5, 6, 7, 9, 11, 12, 13, or any of them, and

> *Second*: Ramirez intentionally associated himself in some way with the crime or crimes and intentionally participated therein as he would in something he wished to bring about. This means that the government must prove that Ramirez consciously shared the knowledge of the underlying criminal acts and intended to help the individual and/or individuals who committed the crimes charged in counts 3, 4, 5, 6, 7, 9, 11, 12, 13, or any of them.

A defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene and knowledge that a crime is being committed also is not sufficient to establish aiding and abetting.

INSTRUCTION NO. ____10____


**Enterprise**

The term "enterprise" includes any union or group of individuals associated in fact although not a legal entity. An enterprise also includes a group of people who associated together for a common purpose of engaging in a course of conduct over a period of time.

In this case, the indictment charges that an illegal association-in-fact enterprise existed, and that it was an association of individuals known as Nortenos, with sub-sets identified as Diablos Viejos (DV) and Los Carnales Chingones (LCC), which engaged in narcotics distribution and acts of violence including acts of murder and robbery. The indictment charges that the purpose of the Nortenos enterprise was enriching the members and associates of the enterprise through, among other things, murder, robbery and distribution of narcotics; preserving and protecting the power, territory and profits of the Nortenos enterprise through the use of actual and threatened violence, including assaults and murder; promoting and enhancing the Nortenos enterprise and activities and reputations of its members and associates; and keeping victims in fear of the Nortenos enterprise and in fear of its members and associates through actual violence and threatened violence.

The group of people comprising the enterprise does not have to be a legally recognized entity, such as a partnership or corporation. This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose. The group must have (1) a common purpose; and (2) an ongoing organization,

either formal or informal; and (3) personnel who function as a continuing unit.  To function as a "continuing unit" means to continue in an essentially unchanged form during substantially the entire period charged in the indictment. This does not mean that everyone involved has to be the same, but the core of the enterprise has to be the same throughout.  A "continuing unit" element exists even where the membership changes by adding or losing individuals during the course of its existence.  Therefore, such an association of individuals may retain its status as an "enterprise" even though the membership of the association changes by adding or losing individuals during the course of its existence. The existence of internal disputes does not necessarily negate the existence of an enterprise.

It is not necessary that the enterprise have any particular or formal structure, but it must have sufficient organization that its members functioned and operated in a coordinated manner in order to carry out the purpose or purposes of the enterprise.

Although the enterprise must be separate and apart from the pattern of racketeering activity in which the enterprise allegedly engaged, it is not necessary to find that the enterprise had some function wholly unrelated to the racketeering activity. The enterprise must be proven to have been an ongoing organization, formal or informal, that functioned as a continuing unit.

You may consider proof of the racketeering acts to determine whether the evidence establishes the existence of the charged enterprise. The government is not required to prove each and every allegation about the enterprise or the manner in which the enterprise operated.

INSTRUCTION NO. _____11_____

**Interstate Commerce**

The term "interstate commerce" means commerce between the states of the United States and includes trade or conducting business or travel between one state and another state; and "foreign commerce" means such trade, business or travel between the United States and another country.  Therefore, interstate or foreign commerce may include the movement of money, goods, services or persons from one state to another state or between the United States and another country.

It is not necessary to prove the acts of any particular defendant affected interstate or foreign commerce as long as the acts of the enterprise had such effect.  It is also not necessary for the government to prove that the racketeering activity affected interstate or foreign commerce; rather, it is the enterprise and its activities considered in their entirety that must be shown to have that effect. On the other hand, this effect on interstate or foreign commerce may be established through the effect caused by the racketeering activity.

The evidence also need not show any particular degree of an effect on interstate commerce.  The government is not required to prove a significant or substantial effect on interstate or foreign commerce.  Rather, a minimal effect is sufficient.  Finally, the government is not required to prove that any defendant knew he was affecting interstate or foreign commerce.

INSTRUCTION NO.   12

**Racketeering**

The term "racketeering"  has certain implications in our society, all of which are completely irrelevant to your work as jurors. It has nothing to do with your determining whether the guilt of either defendant has, or has not, been proven. It is only a term used by Congress to describe the statute.

The term "racketeering activity" may consist of state offenses as well as federal offenses.  "Racketeering activity" includes drug trafficking, murder, robbery and aggravated assault.

INSTRUCTION NO. ___13___

**Pattern of Racketeering Activity**

To prove that the acts constituted a "pattern of racketeering activity," the government must prove that the acts of racketeering are related to the enterprise and to each other and that they pose a threat of continued criminal activity. A series of disconnected acts does not constitute a pattern, and a series of disconnected crimes does not constitute a pattern of racketeering activity, nor do they amount to or pose a threat of continued racketeering activity.

To prove that the acts of racketeering are related, the government must prove that the acts had the same or similar purposes, results, participants, victims, or methods of commission, or that they are otherwise interrelated by distinguishing characteristics and are not isolated events. To prove that the racketeering acts pose a threat of continued racketeering activity, the government must establish that the acts are part of a long-term association that exists for criminal purposes.

INSTRUCTION NO. __14__

**Dangerous Weapon**

A dangerous weapon is an instrument which, from the manner it is used, is calculated or likely to produce death or serious bodily injury.

INSTRUCTION NO. ___15___


To the charges contained in the indictment, defendants have entered pleas of "not guilty."  These pleas put in issue every element of the crimes charged and make it incumbent upon the government to prove beyond a reasonable doubt every element of the crimes charged.

INSTRUCTION NO.    16

The following instructions discuss each of the counts of the indictment and, in particular, the elements of each count which the government is required to prove beyond a reasonable doubt.

INSTRUCTION NO. ___17___

Count 1 alleges that beginning on or about 2008 and continuing until 2012, within the District of Kansas and elsewhere, the defendants Garcia and Ramirez violated Title 18 U.S.C. § 1962(d) by conspiring with each other, with Jason Najera, Anthony Wright, Jesus Sanchez, Eusebio Sierra-Medrano, Jayson Vargas, Fabian Neave, together with other persons, being persons associated with the Nortenos street gang, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, consisting of multiple acts under the following provisions of federal and state law:

a. Distribution and possession with intent to distribute controlled substances and conspiracy to do so under federal law;

b. Distribution and possession with intent to distribute controlled substances and conspiracy to do so under Kansas law.

c. Murder, chargeable under Kansas law.

d. Robbery, chargeable under Kansas law.

e. Aggravated assault, chargeable under Kansas law.

It is also alleged in Count 1 that as a further part of the conspiracy, each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1227

INSTRUCTION NO.   18

In order to sustain its burden of proof for the crime of conspiring to participate in the affairs of an interstate enterprise through a pattern of racketeering activity as charged in Count 1 of the Indictment, the government must prove the following three essential elements beyond a reasonable doubt as to each defendant:

First: A conspiracy or agreement, as detailed in the indictment, existed between two or more persons to participate in the affairs of an enterprise that affected interstate commerce through a pattern of racketeering activity;

Second: the defendant deliberately joined or became a member of the conspiracy or agreement with knowledge of its purpose, and;

Third: the defendant agreed that someone, not necessarily the defendant, would commit at least two of the racketeering acts detailed in the indictment.

INSTRUCTION NO.   19

To establish the existence of the conspiracy set forth in Count 1, the government need not prove that the objectives or purposes of the conspiracy, whatever they may have been, have been achieved. The essential nature of Count 1 is the conspiratorial agreement; the ultimate success or failure of the conspiracy is irrelevant.

The elements of a conspiracy, such as the conspiratorial agreement, a defendant's knowledge of it, and a defendant's participation in the conspiracy, may be inferred from circumstantial evidence. For example, when the evidence establishes that a defendant and at least one other conspirator committed several racketeering acts in furtherance of the charged enterprise's affairs, you may infer the existence of the requisite agreement. It is up to you to determine whether, based on the entirety of the evidence, the government has proven beyond a reasonable doubt that a defendant entered into the required conspiratorial agreement.

If you find that there is a conspiracy, you may consider the acts and statements of any other member of the conspiracy during and in the furtherance of the conspiracy as evidence against a defendant whom you have found to be a member of it. When persons enter into a conspiracy, they become agents for each other, so that the act or statement of one conspirator during the existence of, and in furtherance of, the conspiracy is considered the act or statement of all the other conspirators and is evidence against them all.

INSTRUCTION NO. _____20_____

With respect to the third element, your verdict must be unanimous as to which type or types of predicate racketeering activity each defendant agreed would be committed.  You will be required to specify the acts on the verdict forms.

You are not limited to considering only the specific racketeering acts alleged in Count 1 of the Indictment; you may also consider evidence presented of other racketeering acts committed or agreed to be committed by any co-conspirator in furtherance of the enterprise's affairs, including racketeering acts in which the defendants, or either of them, are not named in the indictment, to determine whether the defendants, or either of them, agreed that at least one member of the conspiracy would commit two or more racketeering acts.

The government is not required to prove that each conspirator explicitly agreed with every other co-conspirator to commit a violation of racketeering law; it need only show that a defendant knew the general nature and common purpose of the conspiracy and that the conspiracy extended beyond his individual role.

INSTRUCTION NO. ___21___


Counts 2 – 5, 7 – 8 and 10 –12 charge various VICAR (violent crimes in aid of racketeering) offenses.   Instruction numbers 22 through 40 pertain to those offenses.

INSTRUCTION NO. ___22___

Count 2 charges the defendants committed a violent crime in aid of racketeering (VICAR), Conspiracy to Murder, which is a violation of Title 18, United States Code § 1959(a)(5).  In order to convict a defendant of the offense charged in Count 2, the government must prove each of the following five elements beyond a reasonable doubt:

First: that an enterprise existed;

Second: that the enterprise engaged in racketeering activity;

Third: the enterprise affected interstate or foreign commerce;

Fourth: that the defendants, or either of them, were members of the enterprise;

Fifth: that the defendants, or either of them, conspired to murder one or more of the persons named in count 2; and

Sixth: that the defendants, or either of them, did so for the purpose of gaining entry to, maintaining and/or increasing his position in the enterprise.

INSTRUCTION NO. ___23___

To establish the fifth element of the VICAR charge in count 2, the government must prove the following beyond a reasonable doubt:

**Conspiracy to Murder:**

First:    That the defendants, or either of them, agreed with another person or others to commit or assist in the commission of the crime of murder;

Second:    That the defendants, or either of them, did so agree with the intent that the crime of murder be committed;

Third:    That the defendants, or either of them, acted in furtherance of the agreement; and

Fourth:    That this act occurred on or about June 8, 2009, in Ford County, Kansas.

INSTRUCTION NO.   24

        To establish the sixth element of every charged VICAR offense, the government must prove the defendant's general purpose in committing the crimes charged was to maintain or increase his position within the enterprise.  The government is not required to prove it was the defendant's sole or his principal motive in committing the crime. Proof that the crime was committed as an integral aspect of membership in the enterprise is sufficient to establish he acted to gain entry, maintain or increase his position in the enterprise.

INSTRUCTION NO.   25

Count 3 charges the defendants committed a violent crime in aid of racketeering (VICAR), Murder, which is a violation of Title 18, United States Code § 1959(a)(5).  In order to convict a defendant of the offense charged in Count 3, the government must prove each of the following five elements beyond a reasonable doubt:

First: that an enterprise existed;

Second: that the enterprise engaged in racketeering activity;

Third: the enterprise affected interstate or foreign commerce;

Fourth: that the defendants, or either of them, were members of the enterprise;

Fifth: that the defendants, or either of them, murdered Israel Peralta as charged in count 3; and

Sixth: that the defendants, or either of them, did so for the purpose of gaining entry to, maintaining and/or increasing his position in the enterprise.

INSTRUCTION NO.   26

To establish the fifth element of the VICAR charge in count 3, the government must prove the following beyond a reasonable doubt:

**Murder in the First Degree**:

First:    That the defendants, or either of them, intentionally killed Israel Peralta;

Second:   That such killing was done with premeditation; and

Third:    That this act occurred on or about June 8, 2009, in Ford County, Kansas.

Intentionally means conduct that is purposeful and willful and not accidental. Intentional includes the terms "knowing," "willful," "purposeful" and "on purpose."

Premeditation means to have thought the matter over beforehand; in other words, to have formed the design or intent to kill before the act.  Although there is no specific time period required for premeditation, the concept of premeditation requires more than the instantaneous, intentional act of taking another's life.

If you do not agree that the defendants, or either of them, are guilty of murder in the first degree, you should then consider the lesser included offense of murder in the second degree.

To establish this charge, the government must proved each of the following elements beyond a reasonable doubt:

First:    That the defendants, or either of them, intentionally killed Israel Peralta; and

Second:   That this act occurred on or about June 8, 2009,

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1236

in Ford County, Kansas.

The distinction between first and second degree murder is the existence, or lack thereof, of premeditation.

INSTRUCTION NO. ___27___


Count 4 charges the defendants committed a violent crime in aid of racketeering (VICAR), attempted murder, which is a violation of Title 18, United States Code § 1959(a)(5).  In order to convict a defendant of the offense charged in Count 4, the government must prove each of the following five elements beyond a reasonable doubt:

First: that an enterprise existed;

Second: that the enterprise engaged in racketeering activity;

Third: the enterprise affected interstate or foreign commerce;

Fourth: that the defendants, or either of them, were members of the enterprise;

Fifth: that the defendants, or either of them, attempted to murder Mariano Sorano, Faustino Peralta and/or Roberto Arco; and

Sixth: that the defendants, or either of them, did so for the purpose of gaining entry to, maintaining and/or increasing his position in the enterprise.

INSTRUCTION NO. ___28___


To establish the fifth element of the VICAR charge in count 4, the government must prove the following beyond a reasonable doubt:

**Attempted Murder**

First: That the defendants, or either of them, performed an overt act toward the commission of the crime of murder;

Second: That the defendants, or either of them, did so with the intent to commit the crime of murder;

Third: That the defendants, or either of them, failed to complete commission of the crime of murder; and

Fourth: That this act occurred on or about June 8, 2009, in Ford County, Kansas.

INSTRUCTION NO. _____29_____

Count 5 charges the defendants committed a violent crime in aid of racketeering (VICAR), assault with a dangerous weapon, which is a violation of Title 18, United States Code § 1959(a)(3).  In order to convict a defendant of the offense charged in Count 5, the government must prove each of the following five elements beyond a reasonable doubt:

First: that an enterprise existed;

Second: that the enterprise engaged in racketeering activity;

Third: the enterprise affected interstate or foreign commerce;

Fourth: that the defendants, or either of them, were members of the enterprise;

Fifth: that the defendants, or either of them, assaulted Israel Peralta, Mariano Sorano, and/or Roberto Arco, with a dangerous weapon as alleged in count 5; and

Sixth: that the defendants, or either of them, did so for the purpose of gaining entry to, maintaining and/or increasing his position in the enterprise.

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1240

INSTRUCTION NO. ___30___

To establish the fifth element of the VICAR charge in count 5, the government must prove the following beyond a reasonable doubt:

First: The defendants, or either of them, intentionally placed any person in reasonable apprehension of immediate bodily harm;

Second: The defendants, or either of them, used a dangerous weapon; and

Third: This event occurred on June 8, 2009, in Ford County, Kansas.

No bodily contact is necessary.

INSTRUCTION NO. ___31___


Count 7 charges the defendants committed a violent crime in aid of racketeering (VICAR), assault with a dangerous weapon, which is a violation of Title 18, United States Code § 1959(a)(3). In order to convict a defendant of the offense charged in Count 7, the government must prove each of the following five elements beyond a reasonable doubt:

First: that an enterprise existed;

Second: that the enterprise engaged in racketeering activity;

Third: the enterprise affected interstate or foreign commerce;

Fourth: that the defendants, or either of them, were members of the enterprise;

Fifth: that the defendants, or either of them, assaulted Isidro Raleas-Velasquez with a dangerous weapon as alleged in count 7; and

Sixth: that the defendants, or either of them, did so for the purpose of gaining entry to, maintaining and/or increasing his position in the enterprise.

INSTRUCTION NO.     32

To establish the fifth element of the VICAR charge in count 7, the government must prove the following beyond a reasonable doubt:

First: The defendants, or either of them, intentionally placed any person in reasonable apprehension of immediate bodily harm;

Second: The defendants, or either of them, used a dangerous weapon; and

Third: This event occurred on June 8, 2009, in Ford County, Kansas.

No bodily contact is necessary.

INSTRUCTION NO.   33

Count 8 charges the defendants committed a violent crime in aid of racketeering (VICAR), conspiracy to commit assault with a dangerous weapon, which is a violation of Title 18, United States Code § 1959(a)(3).  In order to convict a defendant of the offense charged in Count 8, the government must prove each of the following five elements beyond a reasonable doubt:

First: that an enterprise existed;

Second: that the enterprise engaged in racketeering activity;

Third: the enterprise affected interstate or foreign commerce;

Fourth: that the defendants, or either of them, were members of the enterprise;

Fifth: that the defendants, or either of them, conspired to commit assault with a dangerous weapon as charged in count 8; and

Sixth: that the defendants, or either of them, did so for the purpose of gaining entry to, maintaining and/or increasing his position in the enterprise.

INSTRUCTION NO.     34

To establish the fifth element of the VICAR charge in count 8, the government must prove the following beyond a reasonable doubt:

**Conspiracy to Commit Assault:**

First:     That the defendants, or either of them, agreed with another person or others to commit or assist in the commission of the crime of assault;

Second:     That the defendants, or either of them, did so agree with the intent that the crime of assault be committed;

Third:     That the defendants, or either of them, acted in furtherance of the agreement; and

Fourth:     That this act occurred on or about June 8, 2009, in Ford County, Kansas.

INSTRUCTION NO. ___35___

Count 10 charges defendant Gonzalo Ramirez committed a violent crime in aid of racketeering (VICAR), Conspiracy to Murder, which is a violation of Title 18, United States Code § 1959(a)(5). In order to convict Ramirez of the offense charged in Count 10, the government must prove each of the following five elements beyond a reasonable doubt:

First: that an enterprise existed;

Second: that the enterprise engaged in racketeering activity;

Third: the enterprise affected interstate or foreign commerce;

Fourth: that Ramirez was a member of the enterprise;

Fifth: that Ramirez conspired with others to murder Rumalda Hipolito and Abel Hernandez as charged in count 10; and

Sixth: that Ramirez did so for the purpose of gaining entry to, maintaining and/or increasing his position in the enterprise.

INSTRUCTION NO.    36

        To establish the fifth element of the VICAR charge in count 10, the government must prove the following beyond a reasonable doubt:

**Conspiracy to Murder**:

        First:    That Ramirez agreed with another person or others to commit or assist in the commission of the crime of murder;

        Second:   That Ramirez did so agree with the intent that the crime of murder be committed;

        Third:    That Ramirez acted in furtherance of the agreement; and

        Fourth:   That this act occurred on or about October 4, 2008, in Ford County, Kansas.

INSTRUCTION NO. _____37_____


Count 11 charges defendant Gonzalo Ramirez committed a violent crime in aid of racketeering (VICAR), attempted murder, which is a violation of Title 18, United States Code § 1959(a)(5). In order to convict Ramirez of the offense charged in Count 10, the government must prove each of the following five elements beyond a reasonable doubt:

First: that an enterprise existed;

Second: that the enterprise engaged in racketeering activity;

Third: the enterprise affected interstate or foreign commerce;

Fourth: that Ramirez was a member of the enterprise;

Fifth: that Ramirez committed the attempted murder of Rumalda Hipolito and/or Abel Hernandez as charged in count 11; and

Sixth: that Ramirez did so for the purpose of gaining entry to, maintaining and/or increasing his position in the enterprise.

INSTRUCTION NO. ____38____

To establish the fifth element of the VICAR charge alleged against Ramirez in count 11, the government must establish the following elements beyond a reasonable doubt:

**Attempted Murder**

First: That Ramirez performed an overt act toward the commission of the crime of murder;

Second: That Ramirez did so with the intent to commit the crime of murder;

Third: That Ramirez failed to complete commission of the crime of murder; and

Fourth: That this act occurred on or about October 4, 2008, in Ford County, Kansas.

INSTRUCTION NO. ___39___

Count 12 charges defendant Ramirez committed a violent crime in aid of racketeering (VICAR), assault with a dangerous weapon, which is a violation of Title 18, United States Code § 1959(a)(3). In order to convict Ramirez of the offense charged in Count 12, the government must prove each of the following five elements beyond a reasonable doubt:

First: that an enterprise existed;

Second: that the enterprise engaged in racketeering activity;

Third: the enterprise affected interstate or foreign commerce;

Fourth: that the defendants, or either of them, were members of the enterprise;

Fifth: that Ramirez assaulted Rumalda Hipolito, with a dangerous weapon as alleged in count 12; and

Sixth: that Ramirez did so for the purpose of gaining entry to, maintaining and/or increasing his position in the enterprise.

Appellate Case: 14-3006    Document: 23-1    Date Filed: 04/01/2014    Page: 1250

INSTRUCTION NO. ___40___


To establish the fifth element of the VICAR charge in count 12, the government must prove the following beyond a reasonable doubt:


First: Ramirez intentionally placed any person in reasonable apprehension of immediate bodily harm;

Second: Ramirez used a dangerous weapon; and

Third: This event occurred on October 4, 2008, in Ford County, Kansas.


No bodily contact is necessary.

INSTRUCTION NO. _____41_____


Defendants Garcia and Ramirez are charged in count 6 with a violation of 18 U.S.C. section 924(c)(1). This law makes it a crime to possess or discharge a firearm in furtherance of a crime of violence.

To find the defendants, or either of them, guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt as to each count:

First: Garcia and Ramirez, or either of them, committed the crime of murder as charged in count 6 of the indictment, which is a crime of violence;

Second: the defendants, or either of them, possessed or discharged a firearm in furtherance of this crime.

INSTRUCTION NO.    42

Defendants Garcia and Ramirez are charged in count 9 with a violation of 18 U.S.C. section 924(c)(1).  This law makes it a crime to possess or brandish a firearm in furtherance of a crime of violence.

To find the defendants, or either of them, guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt as to each count:

First: Garcia and Ramirez, or either of them, committed the crime of aggravated robbery as charged in count 9 of the indictment, which is a crime of violence;

Second: the defendants, or either of them, possessed or brandished a firearm in furtherance of this crime.

INSTRUCTION NO. ___43___

Defendant Ramirez is charged in count 13 with a violation of 18 U.S.C. section 924(c)(1).  This law makes it a crime to possess a firearm or discharge in furtherance of a crime of violence.

To find defendant Ramirez guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt as to each count:

First: Ramirez committed the crime of aggravated assault as charged in count 13 of the indictment, which is a crime of violence;

Second: Ramirez possessed or discharged a firearm in furtherance of this crime.

Appellate Case: 14-3006    Document: 23-1    Date Filed: 04/01/2014    Page: 1254

INSTRUCTION NO. _____44_____


The term "firearm" means any weapon which will, or is designed to, or may readily be converted to expel a projectile by the action of an explosive.

Possession "in furtherance of" means for the purpose of assisting in, promoting, accomplishing, advancing, or achieving the goal or objective of the underlying offense.

INSTRUCTION NO. _____45_____


The term "brandish" means to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person.

The term "discharge" means to fire a projectile from a firearm.

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1256

INSTRUCTION NO. ___46___

The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over an object or thing, at a given time, is then in actual possession of it.

A person who, although not in actual possession, knowingly has the power at a given time to exercise dominion or control over an object, either directly or through another person or persons, is then in constructive possession of it.

INSTRUCTION NO.    47

The law presumes a defendant to be innocent of crime. This presumption remains with him throughout the trial. Thus, a defendant, although accused, begins the trial with a "clean slate," with no evidence against him and the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against a defendant. The presumption of innocence alone is sufficient to acquit the defendants now on trial, unless the jurors are satisfied of the defendant's guilt, or either of them, beyond a reasonable doubt, from all the evidence.

Appellate Case: 14-3006    Document: 23-1    Date Filed: 04/01/2014    Page: 1258

INSTRUCTION NO. ____48____

Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true.  In criminal cases, the government's proof must be more powerful than that.  It must be beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of a defendant's guilt.  There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt.  If, based on your consideration of the evidence, you are firmly convinced that defendants, or either of them, are guilty of the crimes charged, or any of them, you must find that defendant guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt, and find him not guilty.

INSTRUCTION NO. ___49___


Burden of proof means burden of persuasion. The burden is always upon the government to prove beyond a reasonable doubt every essential element of the crimes charged. In determining whether or not it has met this burden, you must consider all the evidence.

INSTRUCTION NO. _____50_____


The question of each defendant's intent is a matter for you to determine.

Intent is a state of mind and may be proved by circumstantial evidence. Since it is not possible to look into a person's mind to see what went on, the only way you have of arriving at the intent of each defendant is for you to take into consideration all of the facts and circumstances shown by the evidence, including the exhibits, and determine from all such facts and circumstances what the intent of each defendant was at the time in question.

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1261

INSTRUCTION NO. ___51___


In every crime there must exist a union or joint operation of act and intent.

The burden is always upon the government to prove both act and intent beyond a reasonable doubt.

INSTRUCTION NO. ___52___

There are two types of evidence from which a jury may properly find a defendant guilty of crime.  One is direct evidence, such as the testimony of an eyewitness.  The other is circumstantial evidence, the proof of a chain of circumstances pointing to the commission of the offense.

The law makes no distinction between direct and circumstantial evidence but requires that, before convicting a defendant, the jury be satisfied of a defendant's guilt beyond a reasonable doubt from all the evidence.

INSTRUCTION NO. ___53___

Although you must consider all of the evidence, you are not required to accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to his or her testimony. In weighing the testimony of a witness you should consider the witness's relationship to the government or to the defendants; any interest the witness may have in the outcome of the case; the witness's manner while testifying; the opportunity and ability to observe or acquire knowledge concerning the facts about which the witness testified; the witness's candor, fairness and intelligence; and the extent to which the witness has been supported or contradicted by other credible evidence. You may, in short, accept or reject the testimony of any witness in whole or in part.

When weighing conflicting testimony you should consider whether the discrepancy has to do with a material fact or with an unimportant detail, and should keep in mind that innocent misrecollection -- like failure of recollection -- is not uncommon.

In addition, while you must consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by either direct or circumstantial evidence. I caution you, however, that the process of drawing inferences from the evidence is not a matter of guesswork or speculation. In order to return a verdict of guilty, you still must

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1264

be satisfied that the government has proved a defendant's guilt beyond

a reasonable doubt on all of the elements of each offense.

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1265

INSTRUCTION NO. ___54___


The weight to be given the evidence is determined not by the number of witnesses or the amount of testimony produced by either side, but by the credibility of the witnesses and the nature and quality of their testimony.  The evidence of one witness who is entitled to full credit is sufficient for the proof of any fact in this case, and you would be justified in returning a verdict in accordance with such testimony even though a number of witnesses gave conflicting testimony, if from the consideration of the whole case and the reliability and credibility of the various witnesses you believe the one witness as opposed to the greater number of witnesses.

Always keep in mind that the law never imposes on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

INSTRUCTION NO. ___55___


The rules of evidence provide that if scientific, technical, or other specialized knowledge might assist the jury in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify and state his or her opinion concerning such matters.

You should consider each expert opinion received in evidence in this case and give it such weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, then you may disregard the opinion entirely.

INSTRUCTION NO. ___56___

The law does not compel a defendant to testify. The fact that the defendants did not take the witness stand and testify in their own behalf does not create any presumption against either of them. You must not permit that fact to weigh in the slightest degree against the defendants, nor should it enter into your discussions or deliberations in any manner.

INSTRUCTION NO.   57

The defendants are on trial only for the acts alleged in the indictment.  They are not on trial for any other acts or conduct.  In determining whether a defendant, or either of them, is guilty or not guilty, you are therefore to consider only whether the defendant has or has not committed the acts charged in this indictment.  Even if you are of the opinion that either or both of them are guilty of some offense not charged in the indictment, you must find the defendants not guilty if the evidence does not show beyond a reasonable doubt that the defendants committed the specific acts charged in the indictment.

Appellate Case: 14-3006    Document: 23-1    Date Filed: 04/01/2014    Page: 1269

INSTRUCTION NO.   58

You may consider the testimony of Anthony Wright, Russell Worthey, Jesus Flores, Juan Torres, and Fabian Neave who are codefendants who have pled guilty to charges related to the charges against the defendants in this case.

You may consider the guilty pleas only to the extent that you find that may bear upon the credibility of the codefendants. The guilty pleas themselves are not evidence of the guilt of the defendants before you. You are not to consider the guilty pleas for any purpose other than in assessing the credibility of the codefendants as witnesses.

INSTRUCTION NO. ___59___


An accomplice is one who unites with another person in the commission of a crime, voluntarily and with common intent. An accomplice does not become incompetent as a witness because of participation in the crime charged. On the contrary, the testimony that a witness who is an accomplice may be received in evidence and considered by the jury, even though not corroborated by other evidence, and given such weight as the jury feels it should have.

The jury, however, should keep in mind that such testimony should be received with caution and considered with great care. You should not convict a defendant upon the unsupported testimony of an alleged accomplice unless you believe that unsupported testimony beyond a reasonable doubt.

INSTRUCTION NO. ___60___


A witness may be discredited or "impeached" by contradictory evidence, by a showing that he or she testified falsely concerning a material matter, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness's present testimony.

If you believe that any witness has been so impeached, then it is your exclusive province to give the  testimony of that witness such credibility or weight, if any, as you may think it deserves.

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1272

INSTRUCTION NO. ___61___


The testimony of a witness who provides evidence against a defendant for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the witness's testimony has been affected by interest, or by prejudice against a defendant.

INSTRUCTION NO. ___62___


When it has been shown that a witness has been convicted of a felony, you are to determine the witness's credibility and the weight to be given the witness's testimony the same as you would the testimony of any other witness.   The fact that a witness has been convicted of crime may be considered by you in determining what credit and weight you will give to that witness's testimony.

Appellate Case: 14-3006 Document: 23-1 Date Filed: 04/01/2014 Page: 1274

INSTRUCTION NO.    63

       The testimony of a drug abuser must be examined and weighed by the jury with greater care than the testimony of a witness who does not abuse drugs.

       The jury must determine whether the testimony of the drug abuser has been affected by drug use or the need for drugs.

INSTRUCTION NO. ___64___

During the trial, you heard evidence that Pedro Garcia allegedly made statements to Fabian Neave and Joe Galindo about the alleged homicide of Israel Peralta. These statements, if you believe they were made, are not admissible against Gonzalo Ramirez and you must not consider them in any way when evaluating the evidence against Ramirez.

INSTRUCTION NO. ___65___


You heard testimony and received evidence that Pedro Garcia entered a plea agreement in a prior federal case involving the possession of a firearm.  Neither Garcia's conviction nor any of the evidence against Garcia in that case may be used when evaluating the evidence against Ramirez in this case.

INSTRUCTION NO. ___66___


In considering the evidence, you are expected to use your good sense; consider the evidence for only those purposes for which it has been admitted, and give it a reasonable and fair construction in the light of your common knowledge of the natural tendencies and inclinations of human beings.

You are to perform your duty without bias as to any party or person. The law does not permit jurors to be governed by sympathy, prejudice, or public opinion. That was the promise you made and the oath you took before being accepted by the parties as jurors and they have the right to expect nothing less.

Keep constantly in mind that it would be a violation of your sworn duty to base a verdict upon anything but the evidence in, and the law applicable to, this case.

INSTRUCTION NO.     67

Statements, questions and arguments of counsel are not evidence.   The evidence consists of the sworn testimony of the witnesses and all exhibits received in evidence.

Any evidence as to which an objection was sustained by the court must be entirely disregarded.   Anything you may have seen or heard outside the courtroom is not evidence, and must be entirely disregarded.

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1279

INSTRUCTION NO. ___68___

During the trial I passed upon objections to the admission of certain testimony or exhibits into evidence. Questions relating to the admissibility of evidence are solely questions of law for the court, and you must not concern yourselves with the reasons for my rulings. In your consideration of the case, you must draw no inference from these rulings and you must consider only the evidence which I admitted.

Neither in these instructions, nor in any ruling, action or remark that I have made during the course of this trial, have I intended to express any opinion or suggestion as to how I would resolve any of the issues of this case. If I have made any remark that you believe indicates how I would decide this case, I instruct you to disregard such remark.

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1280

INSTRUCTION NO. ___69___


The punishment provided by law for the crimes charged is a matter exclusively within the province of the court and may not be considered by the jury in any way in deciding whether either defendant is guilty or not guilty of the crimes charged.

INSTRUCTION NO. ____70____

During your deliberations, you may refer, if you wish, to any notes you took during the trial.  Remember, however, that your notes are not evidence and remember, also, that it is your memories regarding the evidence, and not your notes, which control.

INSTRUCTION NO. ___71___

A final suggestion by the court--not technically an instruction upon the law--may assist your deliberations. The attitude of jurors at the outset of and during their deliberations is important. It is seldom productive for a juror, immediately upon entering the jury room, to make an emphatic expression of his or her opinion upon the case or to announce a determination to stand for a certain verdict. The reason is obvious: we are all human and it is difficult to recede from a position once definitely stated, even though later convinced it is unsound.

Jurors are selected for the purpose of doing justice. This presupposes and requires deliberation--counseling together in an effort to agree. Have in mind at all times, therefore, that you are a deliberative body, selected to function as judges of the facts in a controversy involving the substantial rights of the parties. You will make a definite contribution to efficient administration of justice when and if you arrive at a just and proper verdict under the evidence which has been adduced. No one can ask more and you will not be satisfied to do less.

INSTRUCTION NO. \_\_\_\_72\_\_\_\_

Any verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree thereto.  In other words, your verdict must be unanimous, and it must be unanimous as to each count and each defendant.

It is your duty as jurors to consult with one another and to deliberate in an effort to reach agreement if you can do so without violence to individual judgment.  Each of you must decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times you are not partisans.  You are judges--judges of the facts.  Your sole interest is to seek the truth from the evidence.

INSTRUCTION NO.     73

Upon retiring to the jury room you should first select one of your number to act as your foreperson, who will preside over your deliberations and be your spokesperson here in court.  The second thing you should do is review the court's instructions.  One of the purposes of the instructions is to guide your deliberations.  Not only will your deliberations be more productive if you understand the legal principles upon which your verdict must be based but, for your verdicts to be valid, you must follow the court's instructions throughout your deliberations.  Remember, you are judges of the facts, but you are bound by your oath to follow the law stated in the instructions.

Forms of verdict have been prepared for your convenience. When you have reached unanimous agreement as to your verdicts, you will have your foreperson fill them in, date and sign them, and then notify my law clerk that you have reached verdicts.

If, during your deliberations, you should desire to communicate with me, please reduce your message or question to writing, signed by the foreperson, and pass the note to my law clerk, who will bring it to my attention.  I will then respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally.  I caution you, however, with regard to any message or question you might send, that you should never state or specify your numerical division at the time.

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1285

s/ Monti Belot

MONTI L. BELOT

UNITED STATES DISTRICT JUDGE

FILED
U.S. DISTRICT COURT
DISTRICT OF KANSAS

IN THE UNITED STATES DISTRICT COURT   13   OCT 17   P4:30
FOR THE DISTRICT OF KANSAS

CLERK, U.S. DISTRICT COURT
BY: _____ DEPUTY CLERK
AT WICHITA, KS

|  |  |  |
|---|---|---|
|  | Plaintiff, | ) |
| vs. |  | ) Case No. |
|  | Defendant. | ) |

QUESTION FROM THE JURY

YOUR HONOR,

#6   Do you find that the defendant discharged the firearm
We are not unanimous - do we mark no or do we use the higest
vote?

Dated at Wichita on ___10/17/13___   Time ___1:02___

Signature of Presiding Juror

ANSWER OF THE JUDGE,

Please refer to instruction no. 72. Your verdicts
must be unanimous as to each count and
each defendant.

Dated at Wichita on __October 17 2013__ Time: __1:10 p.m.__

Monti Belot

Signature of Judge

FILED
U.S. DISTRICT COURT
DISTRICT OF KANSAS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

13 OCT 17  P 4 :30

CLERK U.S. DISTRICT COURT
BY:_____DEPUTY CLERK
AT WICHITA, KS

|  | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. |
|  | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |
|  | ) |  |

QUESTION FROM THE JURY

YOUR HONOR,

Count 6

We are trying to answer the yes and no questions, if we are not unanimous how do we mark the question. do we leave it blank or do we mark no.

Dated at Wichita on __10/17/13__        Time __1:20__

_____
Signature of Presiding Juror

ANSWER OF THE JUDGE,

Your answers to the Yes or No questions on the verdict forms must reflect unanimous agreement of all jurors

Dated at Wichita on October 17 2013   Time: 1:57 p.m

_Monk Belot_
Signature of Judge

FILED
U.S. DISTRICT COURT
DISTRICT OF KANSAS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS 13 OCT 17 P4 :30

CLERK U.S. DISTRICT COURT
BY:_____.DEPUTY CLERK
AT WICHITA. KS

)
)
Plaintiff,                    )
)
vs.                              )        Case No.
)
)
Defendant.                  )
)
)
_____ )

QUESTION FROM THE JURY

YOUR HONOR,

Count 1  Listing Racketeering act - Do they have to be specific acts testified to  or can i be generic - such as Robbery murder et,

Dated at Wichita on  10/17/13  ___   Time ___10:58___

_____
Signature of Presiding Juror

ANSWER OF THE JUDGE,

_____

_____

_____

Dated at Wichita on _____   Time: _____

_____
Signature of Judge

1290

Members of the jury:

I have your note, which I have discussed with counsel.

The answer to your question is that the jurors need only be unanimous as to the types of predicate racketeering acts each defendant agreed to commit, as shown by the evidence, but not as to specific predicate acts.

However, please keep in mind my instruction that you must give separate consideration regarding the evidence as to each defendant.

s/ Monti Belot

Monti Belot

October 17, 2013

FILED
U.S. DISTRICT COURT
IN THE UNITED STATES DISTRICT COURT OF KANSAS

FOR THE DISTRICT OF KANSAS
13 OCT 17 P4:30

CLERK U.S. DISTRICT COURT
BY:_____ DEPUTY CLERK
WICHITA. KS

UNITED STATES OF AMERICA,           )
                                    )
                   Plaintiff,       )     CRIMINAL ACTION
                                    )
v.                                  )     No.  12-10089-MLB
                                    )
PEDRO GARCIA,                       )
                                    )
                   Defendant.       )
_____)

## V E R D I C T

We the jury, duly impaneled and sworn, upon our oaths

find the defendant **Pedro Garcia**

1.  (GUILTY)              )
                          )     as charged in Count 1 of the Indictment;
    NOT GUILTY            )

If you find defendant guilty as charged in count 1, please list the two racketeering acts that defendant agreed at least one person would commit:

_Drug Trafficking_

_Aggravated assault_

2.  (GUILTY)              )
                          )     as charged in Count 2 of the Indictment;
    NOT GUILTY            )

3.  (GUILTY)              )
                          )     as charged in Count 3 of the Indictment;
    NOT GUILTY            )

If you find defendant guilty as charged in count 3, please state whether you determined the murder was first or second degree:

_First degree._

4.  (GUILTY)              )
                          )     as charged in Count 4 of the Indictment;
    NOT GUILTY            )

1294

5. (GUILTY)              )
                         )        as charged in Count 5 of the Indictment;
   NOT GUILTY            )

6. (GUILTY)              )
                         )        as charged in Count 6 of the Indictment;
   NOT GUILTY            )

If you find defendant guilty as charged in count 6 please answer the following questions:

Do you find that defendant discharged the firearm?

_____✓_____ Yes              _____ No

Do you find that defendant possessed the firearm?

_____✓_____ Yes              _____ No

7. (GUILTY)              )
                         )        as charged in Count 7 of the Indictment;
   NOT GUILTY            )

8. (GUILTY)              )
                         )        as charged in Count 8 of the Indictment;
   NOT GUILTY            )

9. (GUILTY)              )
                         )        as charged in Count 9 of the Indictment.
   NOT GUILTY            )

If you find defendant guilty as charged in count 9 please answer the following questions:

Do you find that defendant brandished the firearm?

_____✓_____ Yes              _____ No

Do you find that defendant possessed the firearm?

_____✓_____ Yes              _____ No

____10/17/13_____          _____
          DATE                              FOREPERSON

NOTE:  Circle the words "guilty" or "not guilty" to properly
       reflect your verdict.

## UNITED STATES' EXHIBIT SHEET

United States v. Pedro Garcia and Gonzalo Ramirez
Case No. 12-10089-02,03-MLB

| No. | DESCRIPTION | ID | OFF | ADM | WITNESS |
|-----|-------------|----|----|-----|---------|
| 1 | | | | | |
| 2 | | | | | |
| 3 | Gonzalo Ramirez Judgment Journal Entry | | | X | |
| 4 | Pedro Garcia PA | | | X | |
| 5 | Pedro Garcia Journal Entry | | | X | |
| 6 | Gang sheet | | | X | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | Photo:  Tagging at park | | | X | |
| 10 | Photo:  Tagging on garage door (03/22/2002) | | | X | |
| 11 | Photo:  Tagging on fence (06/30/2010) | | | X | |
| 12 | Photo:  Tagging on fence (06/30/2010) | | | X | |
| 13 | Photo:  Tagging on dumpster | | | X | |
| 14 | Photo:  Tagging on wall - Huelga bird | | | X | |
| 15 | | | | | |
| 16 | Photo:  Tagging Sur 13 | | | X | |
| 17 | Photo:  Red clothing/red & black bandana | | | X | |
| 18 | Photo:  Display of red bandana from pocket | | | X | |
| 19 | Photo:  Red/black clothing/N belt buckle | | | X | |
| 20 | Photo:  Red belt/N belt buckle | | | X | |
| 21 | Photo:  Adam Flores/red clothing | | | X | |

| No. | DESCRIPTION | ID | OFF | ADM | WITNESS |
|---|---|---|---|---|---|
| 22 | Photo:  Juan Torres/red clothing | | | X | |
| 23 | Photo:  Tattoo – Nortenos/Viejos | | | X | |
| 24 | Photo:  Tattoo – 14 on face | | | X | |
| 25 | Photo:  Tattoo – 14 on back of neck | | | X | |
| 26 | Photo:  Tattoo – "Norte" | | | X | |
| 27 | Photo:  Tattoo – 14 on arms Worthey | | | X | |
| 28 | Photo:  Tattoo – dots Gobin | | | X | |
| 29 | Photo:  Tattoo – dots E. Sanchez | | | X | |
| 30 | Photo:  Tattoo – huelga/N/XIV | | | X | |
| 31 | Photo:  Tattoo – eyebrows Jesus Sanchez | | | X | |
| 32 | Photo:  Tattoo – N – W.Tabor | | | X | |
| 33 | | | | | |
| 34 | Photo:  Tattoo - star | | | X | |
| 35 | | | | | |
| 36 | Photo:  Gang signs 1,4 | | | X | |
| 37 | Photo:  Group Norteno signs | | | X | |
| 38 | Photo:  Signs d,v | | | X | |
| 39 | Photo:  14, XIV | | | X | |
| 40 | Photo:  Gang party | | | X | |
| 41 | Photo:  TC mongolian | | | X | |
| 42 | Photo:  Worthey mongolian | | | X | |
| 43 | Photo:  Tattoos on face | | | X | |
| 44 | Photo:  David Ochoa red cap | | | X | |

| No. | DESCRIPTION | ID | OFF | ADM | WITNESS |
|---|---|---|---|---|---|
| 45 | Photo:  David Ochoa | | | X | |
| 46 | | | | | |
| 47 | | | | | |
| 48 | Photo:  Worthey signs | | | X | |
| 49 | Fabian Neave plea agreement | | | X | |
| 50 | Photo:  Pedro Garcia tattoo | | | X | |
| 51 | Photo:  Gonzalo Ramirez tattoo | | | X | |
| 52 | Photo:  Gonzalo Ramirez tattoo | | | X | |
| 53 | Photo:  Gonzalo Ramirez tattoo | | | X | |
| 54 | Photo:  Gonzalo Ramirez tattoo | | | X | |
| 55 | Photo:  Gonzalo Ramirez tattoo | | | X | |
| 56 | Photo:  Gonzalo Ramirez tattoo | | | X | |
| 57 | Photo:  Gonzalo Ramirez tattoo | | | X | |
| 58 | Photo:  Gonzalo Ramirez mongolian | | | X | |
| 59 | Photo:  Gonzalo Ramirez tattoo | | | X | |
| 60 | | | | | |
| 61 | Northtowne license plate | | | X | |
| 62 | | | | | |
| 63 | Clipboard | | | X | |
| 64 | | | | | |
| 65 | | | | | |
| 66 | | | | | |
| 67 | | | | | |

| No. | DESCRIPTION | ID | OFF | ADM | WITNESS |
|---|---|---|---|---|---|
| 68 | Photo:  Fabian/Juan T./Ramirez | | | X | |
| 69 | Photo:  Tattoo - DV | | | X | |
| 70 | | | | | |
| 71 | | | | | |
| 72 | | | | | |
| 73 | | | | | |
| 74 | | | | | |
| 75 | | | | | |
| 76 | | | | | |
| 77 | Rem Oil – Pedro Bedroom | | | X | |
| 78 | Break Free – Pedro Bedroom | | | X | |
| 79 | | | | | |
| 80 | Photo:  DV hand signs | | | X | |
| 81 | Photo:  Tattoos – Diablos Viejos | | | X | |
| 82 | Photo:  Vargas/J. Torres/J. Flores/Barnes | | | X | |
| 83 | Photo:  Vargas/Barnes/J. Flores | | | X | |
| 84 | | | | | |
| 85 | Photo:  Tattoo - X4DV | | | X | |
| 86 | Photo:  Mongolian – Diablos tattoo | | | X | |
| 87 | Photo:  Tattoo – Norte, 14, N | | | X | |
| 88 | Photo:  Jose Luna | | | X | |
| 89 | Photo:  Jose Luna | | | X | |
| 90 | | | | | |

| No. | DESCRIPTION | ID | OFF | ADM | WITNESS |
|-----|-------------|----|----|-----|---------|
| 91 | | | | | |
| 92 | | | | | |
| 93 | Photo:  Money | | | X | |
| 94 | Photo:  Safe | | | X | |
| 95 | Gun | | | X | |
| 96 | Shotgun Shells | | | X | |
| 97 | | | | | |
| 98 | Photo:  Ramirez house | | | X | |
| 99 | Photo:  Ramirez backyard | | | X | |
| 100 | Aerial:  201 E. McArtor – trailer park | | | X | |
| 101 | Photo:  Israel Peralta | | | X | |
| 102 | Photo:  Israel Peralta | | | X | |
| 103 | Diagram | | | X | |
| 104 | Photo:  VW/Trailer 23B | | | X | |
| 105 | Photo: Trailer 23B | | | X | |
| 106 | Photo:  Trailer 23B w/markers | | | X | |
| 107 | Photo:  Trailer 23A | | | X | |
| 108 | Photo:  Shell casing # 1 | | | X | |
| 109 | Photo:  Shell casing # 2 | | | X | |
| 110 | Photo:  Shell casing # 3 | | | X | |
| 111 | Photo:  Shell casing # 4 | | | X | |
| 112 | Photo:  Shell casing # 5 | | | X | |
| 113 | Photo:  Shell casing # 6 | | | X | |

| No. | DESCRIPTION | ID | OFF | ADM | WITNESS |
|-----|-------------|----|----|-----|---------|
| 114 | Photo:  Shell casing # 7 | | | X | |
| 115 | Photo:  Shell casing # 8 | | | X | |
| 116 | Photo:  Shell casing # 9 | | | X | |
| 117 | Photo:  Shell casing # 10 | | | X | |
| 118 | Photo: Live 9mm round | | | X | |
| 119 | Ten shell casings | | | X | |
| 120 | Live 9mm round | | | X | |
| 121 | Photo: Fence | | | X | |
| 122 | Photo: Fence w/ item 13 | | | X | |
| 123 | Photo: Item 13, spent round | | | X | |
| 124 | Item 13, spent round | | | X | |
| 125 | Photo: Blue VW Jetta | | | X | |
| 126 | Photo: Blue VW Jetta bullet hole | | | X | |
| 127 | Photo: Blue VW Jetta bullet hole | | | X | |
| 128 | Photo: Blue VW Jetta bullet hole trunk | | | X | |
| 129 | Photo: Items 15, 16 in trunk of Jetta | | | X | |
| 130 | Photo: Item 15 | | | X | |
| 131 | Photo: Item 16 | | | X | |
| 132 | Bullet recovered from VW Jetta | | | X | |
| 133 | Photo: Red Chevrolet | | | X | |
| 134 | Photo: Red Chevrolet tire | | | X | |
| 135 | Photo: Tire from red Chevrolet | | | X | |
| 136 | Photo: Bullet extracted from tire | | | X | |

| No. | DESCRIPTION | ID | OFF | ADM | WITNESS |
|-----|-------------|----|----|-----|---------|
| 137 | Bullet extracted from red Chevrolet | | | X | |
| 138 | Photo: Trailer 78A | | | X | |
| 139 | | | | | |
| 140 | Photo: Sorano | | | X | |
| 141 | Photo: Sorano head | | | X | |
| 142 | Photo: Sorano wound to leg | | | X | |
| 143 | Photo: Shirt | | | X | |
| 144 | Photo: pants, belt | | | X | |
| 145 | Photo: belt buckle | | | X | |
| 146 | Photo: Arco | | | X | |
| 147 | Photo: Israel Peralta at autopsy | | | X | |
| 148 | Photo: x-ray | | | X | |
| 149 | Photo: bullet | | | X | |
| 150 | Photo: Peralta back wound | | | X | |
| 151 | Photo: Peralta left arm wound | | | X | |
| 152 | | | | | |
| 153 | | | | | |
| 154 | Aerial of trailer park | | | X | |
| 155 | Anthony Wright plea agreement | | | X | |
| 156 | Photo: Garcia's backyard | | | X | |
| 157 | Photo: Garcia's alley | | | X | |
| 158 | Russell Worthey plea agreement | | | X | |
| 159 | Gang ledger/roster | | | X | |

| No. | DESCRIPTION | ID | OFF | ADM | WITNESS |
|-----|-------------|----|----|-----|---------|
| 160 | | | | | |
| 161 | | | | | |
| 162 | Gun – Fabian Neave | | | X | |
| 163 | Gun | | | X | |
| 164 | Gun | | | X | |
| 165 | Gun | | | X | |
| 166 | Photo:  Angelica | | | X | |
| 167 | Photo: 910 4th Ave | | | X | |
| 168 | Photo: 910 4th Ave | | | X | |
| 169 | | | | | |
| 170 | | | | | |
| 171 | | | | | |
| 172 | | | | | |
| 173 | | | | | |
| 174 | | | | | |
| 175 | | | | | |
| 200 | Photo: 1005 Avenue E | | | X | |
| 201 | Photo: Porch | | | X | |
| 202 | Photo: Bedroom | | | X | |
| 203 | Photo: Bedroom | | | X | |
| 204 | Photo: Blood on DVD player in bedroom | | | X | |
| 205 | Photo: Hole in bedroom door | | | X | |
| 206 | Photo: Blood on shirt | | | X | |

| No. | DESCRIPTION | ID | OFF | ADM | WITNESS |
|---|---|---|---|---|---|
| 207 | Photo: Velasquez | | | X | |
| 208 | Photo: Velasquez | | | X | |
| 209 | | | | | |
| 210 | Aerial – area between D, E, Elm, Hickory | | | X | |
| 211 | | | | | |
| 212 | Jesus Flores plea agreement | | | X | |
| 213 | | | | | |
| 214 | | | | | |
| 215 | | | | | |
| 216 | | | | | |
| 217 | | | | | |
| 218 | | | | | |
| 219 | | | | | |
| 220 | | | | | |
| 300 | Photo: 1110 4th Ave | | | X | |
| 301 | Photo: 1110 4th Ave side | | | X | |
| 302 | Photo: 1110 4th Ave | | | X | |
| 303 | Photo: 1110 4th Ave back | | | X | |
| 304 | Photo: Street w/ shell casings | | | X | |
| 305 | Photo: Street w/shell casings | | | X | |
| 306 | Photo: Shell casing # 1 | | | X | |
| 307 | Photo: Shell casing # 2 | | | X | |
| 308 | Photo: Shell casing # 3 | | | X | |

| No. | DESCRIPTION | ID | OFF | ADM | WITNESS |
|-----|-------------|----|----|-----|---------|
| 309 | Photo: Shell casing # 4 | | | X | |
| 310 | Photo: Shell casing # 5 | | | X | |
| 311 | Photo: Shell casing # 6 | | | X | |
| 312 | Photo: Shell casing # 7 | | | X | |
| 313 | Photo: Shell casing # 8 | | | X | |
| 314 | Photo: Shell casing # 9 | | | X | |
| 315 | Photo: Shell casing # 10 | | | X | |
| 316 | Photo: Shell casing # 11 | | | X | |
| 317 | Photo: Shell casing # 12 | | | X | |
| 318 | Photo: Shell casing # 13 | | | X | |
| 319 | Photo: Shell casing # 14 | | | X | |
| 320 | Photo: Shell casing # 15 | | | X | |
| 321 | Photo: Shell casing # 16 | | | X | |
| 322 | Photo: Shell casing # 17 | | | X | |
| 323 | Photo: Shell casing # 18 | | | X | |
| 324 | Photo: Shell casing # 19 | | | X | |
| 325 | Photo: Shell casing # 20 | | | X | |
| 326 | Shell casings | | | X | |
| 327 | Photo: House with 1-3 | | | X | |
| 328 | Photo: House with 4 | | | X | |
| 329 | Photo: House with 5-6 | | | X | |
| 330 | Photo: House with 7-11 | | | X | |
| 331 | Photo: House with 12 | | | X | |

| No. | DESCRIPTION | ID | OFF | ADM | WITNESS |
|-----|-------------|----|----|-----|---------|
| 332 | Photo: House with 13 | | | X | |
| 333 | Photo: House with 14 | | | X | |
| 334 | Photo: House with 15-18 | | | X | |
| 335 | Photo: House with 15-18 | | | X | |
| 336 | Photo: House with 19 | | | X | |
| 337 | Photo: Front of house | | | X | |
| 338 | Photo: Shelves in front of house | | | X | |
| 339 | Photo: Shelves in front of house | | | X | |
| 340 | Photo: Blinds | | | X | |
| 341 | Photo: Couches | | | X | |
| 342 | Photo: Couches | | | X | |
| 343 | Photo: Couches | | | X | |
| 344 | Photo: Bullet hole in couch | | | X | |
| 345 | Photo: Dining room | | | X | |
| 346 | Photo: Dining room | | | X | |
| 347 | Photo: Dining room | | | X | |
| 348 | Photo: Bedroom | | | X | |
| 349 | Photo: 18A | | | X | |
| 350 | Photo: 18A, 20 | | | X | |
| 351 | Photo: Boot w/rod | | | X | |
| 352 | Photo: 18C boot | | | X | |
| 353 | Photo: 18D table leg | | | X | |
| 354 | Photo: 21 bullet fragment | | | X | |

| No. | DESCRIPTION | ID | OFF | ADM | WITNESS |
|-----|-------------|----|----|-----|---------|
| 355 | Photo: 22 bullet | | | X | |
| 356 | | | | | |
| 357 | Photo: 26 bullet | | | X | |
| 358 | Photo: Bedroom cabinet | | | X | |
| 359 | Photo: Bedroom cabinet | | | X | |
| 360 | Photo: 27 bullet | | | X | |
| 361 | Photo: Mattress | | | X | |
| 362 | Photo: Mattress | | | X | |
| 363 | Photo: Box springs w/bullet | | | X | |
| 364 | Photo: Abel Hernandez | | | X | |
| 365 | Photo: Abel Hernandez at hospital | | | X | |
| 366 | Photo: Abel Hernandez at hospital | | | X | |
| 367 | Photo: Abel Hernandez at hospital | | | X | |
| 368 | Photo: Rumalda Hipolito | | | X | |
| 369 | Photo: Rumalda Hipolito | | | X | |
| 370 | Ramirez car at barn | | | X | |
| 371 | Ramirez car at barn | | | X | |
| 372 | Ramirez car at DCPD | | | X | |
| 373 | Ramirez car at DCPD | | | X | |
| 374 | Aerial: 1110 4th Ave. | | | X | |
| 375 | Bullets recovered from 1110 4th Ave. | | | X | |
| 375A | Bullet fragment - Item 21 | | | X | |
| 375B | Bullet – Item 22 | | | X | |

| No. | DESCRIPTION | ID | OFF | ADM | WITNESS |
|---|---|---|---|---|---|
| 375C | Bullet – Item 26 | | | X | |
| 375D | Bullet – Item 27 | | | X | |
| 375E | Bullet – Item 28 | | | X | |
| 376 | Juan Torres plea agreement | | | X | |
| 377 | | | | | |
| 378 | | | | | |
| 379 | | | | | |
| 380 | Photo: Guadalupe Amaro | | | X | |
| 381 | Photo: Alfonso Banda-Hernandez | | | X | |
| 382 | | | | | |
| 383 | | | | | |
| 384 | Photo: William "Tre" Edwards | | | X | |
| 385 | Photo: Jesus Flores | | | X | |
| 386 | Photo: Antonio Flores | | | X | |
| 387 | Photo: Joshua Flores | | | X | |
| 388 | | | | | |
| 389 | Photo: Pedro Garcia | | | X | |
| 390 | | | | | |
| 391 | | | | | |
| 392 | | | | | |
| 393 | | | | | |
| 394 | | | | | |
| 395 | | | | | |

| No. | DESCRIPTION | ID | OFF | ADM | WITNESS |
|-----|-------------|----|----|-----|---------|
| 396 |  |  |  |  |  |
| 397 |  |  |  |  |  |
| 398 |  |  |  |  |  |
| 399 |  |  |  |  |  |
| 400 | Photo: Benji Najera |  |  | X |  |
| 401 | Photo: Jason Najera |  |  | X |  |
| 402 | Photo: Jose Neave |  |  | X |  |
| 403 | Photo: Jose Ochoa |  |  | X |  |
| 404 | Photo: Eddie Ontiberos |  |  | X |  |
| 405 |  |  |  |  |  |
| 406 |  |  |  |  |  |
| 407 |  |  |  |  |  |
| 408 |  |  |  |  |  |
| 409 |  |  |  |  |  |
| 410 |  |  |  |  |  |
| 411 | Photo: Christian Sanchez |  |  | X |  |
| 412 | Photo:  Erik Sanchez |  |  | X |  |
| 413 | Photo: Eusebio Sierra-Medrano |  |  | X |  |
| 414 | Photo: Jesus Torres |  |  | X |  |
| 415 |  |  |  |  |  |
| 416 |  |  |  |  |  |
| 417 | Photo: Anthony Wright |  |  | X |  |
| 418 | Photo: Angel Cerda |  |  | X |  |

AO 245B   (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 1

# United States District Court
## District of Kansas

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>Andrew  Gusman | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number:  6:12CR10089 - 015<br>USM Number:  22100-031<br>Defendant's Attorney:  Eric A. Hartenstein |

**THE DEFENDANT:**

☒   pleaded guilty to count: 21 of the Indictment.
☐   pleaded nolo contendere to count(s) ___ which was accepted by the court.
☐   was found guilty on count(s) ___ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 1959(a)(3) and 2 | VIOLENT CRIMES IN AID OF RACKETEERING-ASSAULT WITH A DANGEROUS WEAPON, a Class C Felony | 03/30/2011 | 21 |

The defendant is sentenced as provided in pages 1 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐   The defendant has been found not guilty on count(s) ___.

☒   Counts 19, 20 and 22 of the Indictment are dismissed on the motion of the United States.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

11/18/2013
Date of Imposition of Judgment

s/ Monti   Belot
Signature of Judge

Honorable Monti L. Belot, Senior U.S. District Judge
Name & Title of Judge

11/19/13
Date

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1307

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 2 — Imprisonment

Judgment – Page **2** of **6**

DEFENDANT:       Andrew Gusman
CASE NUMBER:   6:12CR10089 - 015

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of <u>Twenty-one (21) months</u> .

☐    The Court makes the following recommendations to the Bureau of Prisons:

☒    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district.

   ☐ at ___ on ___.

   ☐ as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐ before ___ on ___.

   ☐ as notified by the United States Marshal.

   ☐ as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
Deputy U.S. Marshal

1313

AO 245B     (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case

Sheet 3 - Supervised Release

DEFENDANT:      Andrew Gusman
CASE NUMBER:    6:12CR10089 - 015

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of <u>three (3) years</u>.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐      The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check if applicable)*

☒      The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check if applicable)*

☒      The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check if applicable)*

☐      The defendant shall register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student.  For initial registration purposes only, the defendant shall also register in the jurisdiction in which convicted, if such jurisdiction is different from the jurisdiction of residence.  Registration shall occur not later than 3 business days after being sentenced, if the defendant is not sentenced to a term of imprisonment.  The defendant shall, not later than 3 business days after each change in name, residence, employment, or student status, appear in person in at least one jurisdiction in which the defendant is registered and inform that jurisdiction of all changes in the information required.  *(Check if applicable)*

☐      The defendant shall participate in an approved program for domestic violence. *(Check if applicable)*

If this judgment imposes a fine or restitution, it is to be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)  the defendant shall not leave the judicial district without permission of the court or probation officer;
2)  the defendant shall report to the probation officer in a manner and frequency directed by the court or the probation officer;
3)  the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4)  the defendant shall support his or her dependents and meet other family responsibilities;
5)  the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6)  the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7)  the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substances or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)  the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)  the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 3C - Supervised Release

Judgment – Page **4** of **6**

DEFENDANT:      Andrew Gusman
CASE NUMBER:   6:12CR10089 - 015

## SPECIAL CONDITIONS OF SUPERVISION

1.    The defendant shall successfully participate in an approved program for substance abuse, which may include urine, breath, or sweat patch testing, outpatient and/or residential treatment, and share in the costs, based on the ability to pay. The defendant shall abstain from the use of alcohol and other intoxicants during said treatment program as directed by the Probation Office.

2.    The defendant shall participate in an approved program for mental health treatment, which may include psychological counseling and prescribed medication. The defendant shall share in the costs, based on the ability to pay, at the direction of the U.S. Probation Officer.

3.    The defendant shall not be a member of any street gang, participate in any gang-related activities, or associate with any gang members during the term of supervision. The defendant shall comply with any curfew established by the probation officer, who may utilize electronic monitoring to verify the defendant's compliance with the curfew schedule. As instructed by the probation officer, the defendant may be required to maintain a telephone at the defendant's place of residence without call forwarding, caller ID, call waiting, portable cordless telephones, answering machines/service, or any other feature or service which would interfere with the operation of electrical monitoring equipment. The defendant may be required to wear an electronic monitoring device, which may include Global Positioning System and/or Random Tracking, and follow electronic monitoring procedures specified by the probation officer. Additionally, the probation officer may restrict the defendant from certain areas within the community, and the defendant must comply with these restrictions. The defendant shall assist in the costs of home confinement, based on the ability to pay, at the direction of the probation officer.

4.    The defendant shall submit his/her person, house, residence, vehicle(s), papers, business or place of employment and any property under the defendant's control to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

5.    The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon.

AO 245B     (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 5 - Criminal Monetary Penalties

DEFENDANT:      Andrew Gusman
CASE NUMBER:   6:12CR10089 - 015

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the Schedule of Payments set forth in this Judgment.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $100 | Waived | None |

☐     The determination of restitution is deferred until ___. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐     The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Totals: | $ | $ | |

☐     Restitution amount ordered pursuant to plea agreement $___ .

☐     The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options set forth in this Judgment may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐     The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

     ☐ the interest requirement is waived for the ☐ fine and/or ☐ restitution.

     ☐ the interest requirement for the ☐ fine and/or ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B   (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment – Page **6** of **6**

DEFENDANT:      Andrew Gusman
CASE NUMBER:   6:12CR10089 - 015

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A   ☐   Lump sum payment of $___ due immediately, balance due
         ☐ not later than ___ , or
         ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B   ☒   Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☒ F below); or

C   ☐   Payment in monthly installments of not less than 5% of the defendant's monthly gross household income over a period
         of ___ years to commence ___ days after the date of this judgment; or

D   ☐   Payment of not less than 10%  of the funds deposited each month into the inmate's trust fund account and monthly
         installments of not less than 5% of the defendant's monthly gross household income over a period of ____ years, to
         commence ___ days after release from imprisonment to a term of supervision;  or

E   ☐   Payment during the term of supervised release will commence within ____ (e.g., 30 or 60 days) after release from
         imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that
         time; or

F   ☒   Special instructions regarding the payment of criminal monetary penalties:

If restitution is ordered, the Clerk, U.S. District Court, may hold and accumulate restitution payments, without distribution, until the
amount accumulated is such that the minimum distribution to any restitution victim will not be less than $25.

Payments should be made to Clerk, U.S. District Court, U.S. Courthouse - Room 259, 500 State Avenue, Kansas City, Kansas 66101.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is
due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐      Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount Joint and Several Amount and
corresponding payee, if appropriate.

| Case Number (Including Defendant Number) | Defendant Name | Joint and Several Amount |
|---|---|---|
| | | |

☐      The defendant shall pay the cost of prosecution.

☐      The defendant shall pay the following court cost(s):

☐      The defendant shall forfeit the defendant's interest in the following property to the United States.  Payments against any
        money judgment ordered as part of a forfeiture order should be made payable to the United States of America, c/o United
        States Attorney, Attn: Asset Forfeiture Unit, 1200 Epic Center, 301 N. Main, Wichita, Kansas 67202.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

1317

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 1

# United States District Court
## District of Kansas

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| Fabian  Neave | Case Number:  6:12CR10089 - 019 |
| | USM Number:  22113-031 |
| | Defendant's Attorney:  Gregory D. Bell |

## THE DEFENDANT:

☒    pleaded guilty to count:  1 of the Indictment.

☐    pleaded nolo contendere to count(s) ___ which was accepted by the court.

☐    was found guilty on count(s) ___ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1962(d) | CONSPIRACY TO COMMIT ACTS OF RACKETEERING AND CORRUPT ORGANIZATIONS, a Class C Felony | 05/31/2012 | 1 |

The defendant is sentenced as provided in pages 1 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐    The defendant has been found not guilty on count(s) ___.

☒    Counts 27, 28, 30, 31 and 32 of the Indictment are dismissed on the motion of the United States.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

12/02/2013
Date of Imposition of Judgment

s/ Monti Belot
Signature of Judge

Honorable Monti L. Belot, U.S. District Judge
Name & Title of Judge

12/3/13
Date

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 2 - Imprisonment

Judgment – Page **2** of **6**

DEFENDANT:     Fabian  Neave
CASE NUMBER:   6:12CR10089 - 019

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of <u>60 months</u> .

☒     The Court makes the following recommendations to the Bureau of Prisons:

The defendant be designated to FCI Oxford, Wisconsin due to safety and separatee issues and the defendant be credited for time served in this matter since December 27, 2011 in Ford County Detention, Dodge City, Kansas.

☒     The defendant is remanded to the custody of the United States Marshal.

☐     The defendant shall surrender to the United States Marshal for this district.

   ☐ at ___ on ___.

   ☐ as notified by the United States Marshal.

☐     The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐ before ___ on ___.

   ☐ as notified by the United States Marshal.

   ☐ as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____  to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
Deputy U.S.  Marshal

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 3 — Supervised Release

DEFENDANT:      Fabian  Neave
CASE NUMBER:   6:12CR10089 - 019

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of <u>three (3) years</u>.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐     The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check if applicable)*

☒     The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check if applicable)*

☒     The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check if applicable)*

☐     The defendant shall register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student.  For initial registration purposes only, the defendant shall also register in the jurisdiction in which convicted, if such jurisdiction is different from the jurisdiction of residence.  Registration shall occur not later than 3 business days after being sentenced, if the defendant is not sentenced to a term of imprisonment.  The defendant shall, not later than 3 business days after each change in name, residence, employment, or student status, appear in person in at least one jurisdiction in which the defendant is registered and inform that jurisdiction of all changes in the information required.  *(Check if applicable)*

☐     The defendant shall participate in an approved program for domestic violence. *(Check if applicable)*

If this judgment imposes a fine or restitution, it is to be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)  the defendant shall not leave the judicial district without permission of the court or probation officer;
2)  the defendant shall report to the probation officer in a manner and frequency directed by the court or the probation officer;
3)  the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4)  the defendant shall support his or her dependents and meet other family responsibilities;
5)  the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6)  the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7)  the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substances or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)  the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)  the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case

Sheet 3C - Supervised Release

DEFENDANT:      Fabian  Neave
CASE NUMBER:    6:12CR10089 - 019

# SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant shall successfully participate in an approved program for substance abuse, which may include urine, breath, or sweat patch testing, outpatient and/or residential treatment, and share in the costs, based on the ability to pay. The defendant shall abstain from the use of alcohol and other intoxicants during said treatment program as directed by the Probation Office.

2.  The defendant shall not be a member of any street gang, participate in any gang-related activities, or associate with any gang members during the term of supervision. The defendant shall comply with any curfew established by the probation officer, who may utilize electronic monitoring to verify the defendant's compliance with the curfew schedule. As instructed by the probation officer, the defendant may be required to maintain a telephone at the defendant's place of residence without call forwarding, caller ID, call waiting, portable cordless telephones, answering machines/service, or any other feature or service which would interfere with the operation of electrical monitoring equipment. The defendant may be required to wear an electronic monitoring device, which may include Global Positioning System and/or Random Tracking, and follow electronic monitoring procedures specified by the probation officer. Additionally, the probation officer may restrict the defendant from certain areas within the community, and the defendant must comply with these restrictions. The defendant shall assist in the costs of home confinement, based on the ability to pay, at the direction of the probation officer.

3.  The defendant shall submit his/her person, house, residence, vehicle(s), papers, business or place of employment and any property under the defendant's control to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

4.  The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon.

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case

Sheet 5 — Criminal Monetary Penalties

DEFENDANT:      Fabian  Neave
CASE NUMBER:    6:12CR10089 - 019

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the Schedule of Payments set forth in this Judgment.

|            | Assessment | Fine   | Restitution  |
|------------|-----------|--------|--------------|
| Totals:    | $100      | Waived | $16,242.10   |

☐    The determination of restitution is deferred until ___. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐    The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee   | Total Loss* | Restitution Ordered | Priority or Percentage |
|-----------------|-------------|---------------------|------------------------|
| Gabriel Rivera  |             | $ 2,811.60          |                        |
| Carlos Ramirez  |             | $ 13,430.50         |                        |
| Totals:         | $           | $ 16,242.10         |                        |

☐    Restitution amount ordered pursuant to plea agreement $___.

☐    The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options set forth in this Judgment may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒    The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☒ the interest requirement is waived for the ☐ fine and/or ☒ restitution.

☐ the interest requirement for the ☐ fine and/or ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B   (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 6 – Schedule of Payments

Judgment – Page **6** of **6**

DEFENDANT:      Fabian  Neave
CASE NUMBER:   6:12CR10089 - 019

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A   ☐   Lump sum payment of $___ due immediately, balance due
          ☐ not later than ___, or
          ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B   ☒   Payment to begin immediately (may be combined with ☐ C, ☒ D, or ☒ F below); or

C   ☐   Payment in monthly installments of not less than 5% of the defendant's monthly gross household income over a period
          of ___ years to commence ___ days after the date of this judgment; or

D   ☒   Payment of not less than 10%  of the funds deposited each month into the inmate's trust fund account and monthly
          installments of not less than 5% of the defendant's monthly gross household income over a period of __3__ years, to
          commence __30__ days after release from imprisonment to a term of supervision;  or

E   ☐   Payment during the term of supervised release will commence within ____ (e.g., 30 or 60 days) after release from
          imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that
          time; or

F   ☒   Special instructions regarding the payment of criminal monetary penalties:

If restitution is ordered, the Clerk, U.S. District Court, may hold and accumulate restitution payments, without distribution, until the
amount accumulated is such that the minimum distribution to any restitution victim will not be less than $25.

Payments should be made to Clerk, U.S. District Court, U.S. Courthouse - Room 259, 500 State Avenue, Kansas City, Kansas 66101.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is
due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒      Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount Joint and Several Amount and
corresponding payee, if appropriate.

| Case Number (Including Defendant Number) | Defendant Name | Joint and Several Amount |
|---|---|---|
| 6:12CR10089-001 | Jason Najera | $16,242.10 |
| 6:12CR10089-020 | Jesus Torres | $16,242.10 |
| 6:12CR10089-021 | Jose Neave | $16,242.10 |
| 6:12CR10089-023 | Humberto Ortiz | $16,242.10 |

☐      The defendant shall pay the cost of prosecution.

☐      The defendant shall pay the following court cost(s):

☐      The defendant shall forfeit the defendant's interest in the following property to the United States.  Payments against any
         money judgment ordered as part of a forfeiture order should be made payable to the United States of America, c/o United
         States Attorney, Attn: Asset Forfeiture Unit, 1200 Epic Center, 301 N. Main, Wichita, Kansas 67202.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

1323

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 1

# United States District Court
## District of Kansas

UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE**
v. |
Eusebio  Sierra-Medrano |

Case Number:  6:12CR10089 - 016

USM Number:  22268-031

Defendant's Attorney:  Mark L. Bennett Jr.

## THE DEFENDANT:

☒    pleaded guilty to count: <u>1 of the Indictment</u>.

☐    pleaded nolo contendere to count(s) ___ which was accepted by the court.

☐    was found guilty on count(s) ___ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1962(d) | CONSPIRACY TO COMMIT ACTS OF RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS, a Class C Felony | 04/16/2012 | 1 |

The defendant is sentenced as provided in pages 1 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐    The defendant has been found not guilty on count(s) ___.

☒    Counts <u>14, 36 and 37 of the Indictment</u> are dismissed on the motion of the United States.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

12/09/2013
Date of Imposition of Judgment

s/ Monti Belot
Signature of Judge

Honorable Monti L. Belot, U.S. District Judge
Name & Title of Judge

12/9/13
Date

AO 245B     (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 2 - Imprisonment

Judgment – Page **2** of **6**

DEFENDANT:      Eusebio  Sierra-Medrano
CASE NUMBER:   6:12CR10089 - 016

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of <u>120 months</u>.

Said sentence to be served consecutive to State of Kansas, Ford County District Court Case No. 10CR358

☒     The Court makes the following recommendations to the Bureau of Prisons:

The defendant be returned to the State of Kansas Department of Corrections to complete his state sentencing prior to the commencement of the sentence imposed in this matter.

☒     The defendant is remanded to the custody of the United States Marshal.

☐     The defendant shall surrender to the United States Marshal for this district.

☐ at ___ on ___.

☐ as notified by the United States Marshal.

☐     The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before ___ on ___.

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
Deputy U.S.  Marshal

AO 245B     (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 3 — Supervised Release

DEFENDANT:      Eusebio  Sierra-Medrano
CASE NUMBER:   6:12CR10089 - 016

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of <u>three (3) years</u>.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐     The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check if applicable)*

☒     The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check if applicable)*

☒     The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check if applicable)*

☐     The defendant shall register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student.  For initial registration purposes only, the defendant shall also register in the jurisdiction in which convicted, if such jurisdiction is different from the jurisdiction of residence.  Registration shall occur not later than 3 business days after being sentenced, if the defendant is not sentenced to a term of imprisonment.  The defendant shall, not later than 3 business days after each change in name, residence, employment, or student status, appear in person in at least one jurisdiction in which the defendant is registered and inform that jurisdiction of all changes in the information required.  *(Check if applicable)*

☐     The defendant shall participate in an approved program for domestic violence. *(Check if applicable)*

If this judgment imposes a fine or restitution, it is to be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without permission of the court or probation officer;
2)    the defendant shall report to the probation officer in a manner and frequency directed by the court or the probation officer;
3)    the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4)    the defendant shall support his or her dependents and meet other family responsibilities;
5)    the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substances or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)    the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B     (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 3C - Supervised Release

DEFENDANT:       Eusebio  Sierra-Medrano
CASE NUMBER:   6:12CR10089 - 016

## SPECIAL CONDITIONS OF SUPERVISION

1.      The defendant shall successfully participate in an approved program for substance abuse, which may include urine, breath, or sweat patch testing, outpatient and/or residential treatment, and share in the costs, based on the ability to pay. The defendant shall abstain from the use of alcohol and other intoxicants during said treatment program as directed by the Probation Office.

2.      The defendant shall abstain from the use of alcohol during the term of supervision.

3.      The defendant shall not be a member of any street gang, participate in any gang-related activities, or associate with any gang members during the term of supervision. The defendant shall comply with any curfew established by the probation officer, who may utilize electronic monitoring to verify the defendant's compliance with the curfew schedule. As instructed by the probation officer, the defendant may be required to maintain a telephone at the defendant's place of residence without call forwarding, caller ID, call waiting, portable cordless telephones, answering machines/service, or any other feature or service which would interfere with the operation of electrical monitoring equipment. The defendant may be required to wear an electronic monitoring device, which may include Global Positioning System and/or Random Tracking, and follow electronic monitoring procedures specified by the probation officer. Additionally, the probation officer may restrict the defendant from certain areas within the community, and the defendant must comply with these restrictions. The defendant shall assist in the costs of home confinement, based on the ability to pay, at the direction of the probation officer.

4.      The defendant shall submit his/her person, house, residence, vehicle(s), papers, business or place of employment and any property under the defendant's control to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

5.      The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon.

AO 245B     (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

DEFENDANT:        Eusebio  Sierra-Medrano
CASE NUMBER:    6:12CR10089 - 016

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the Schedule of Payments set forth in this Judgment.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $100 | Waived | None |

☐     The determination of restitution is deferred until ___. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐     The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Totals: | $ | $ | |

☐     Restitution amount ordered pursuant to plea agreement $___ .

☐     The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options set forth in this Judgment may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐     The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☐ the interest requirement is waived for the ☐ fine and/or ☐ restitution.

☐ the interest requirement for the ☐ fine and/or ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

1328

AO 245B      (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case

Sheet 6 — Schedule of Payments

Judgment – Page **6** of **6**

DEFENDANT:      Eusebio  Sierra-Medrano
CASE NUMBER:   6:12CR10089 - 016

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A      ☐      Lump sum payment of $___ due immediately, balance due
                    ☐  not later than ___, or
                    ☐  in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B      ☒      Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☒ F below); or

C      ☐      Payment in monthly installments of not less than 5% of the defendant's monthly gross household income over a period
                    of ___ years to commence ___ days after the date of this judgment; or

D      ☐      Payment of not less than 10%  of the funds deposited each month into the inmate's trust fund account and monthly
                    installments of not less than 5% of the defendant's monthly gross household income over a period of ____ years, to
                    commence ___ days after release from imprisonment to a term of supervision;  or

E      ☐      Payment during the term of supervised release will commence within ____ (e.g., 30 or 60 days) after release from
                    imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that
                    time; or

F      ☒      Special instructions regarding the payment of criminal monetary penalties:

If restitution is ordered, the Clerk, U.S. District Court, may hold and accumulate restitution payments, without distribution, until the amount accumulated is such that the minimum distribution to any restitution victim will not be less than $25.

Payments should be made to Clerk, U.S. District Court, U.S. Courthouse - Room 259, 500 State Avenue, Kansas City, Kansas 66101.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐      Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount Joint and Several Amount and corresponding payee, if appropriate.

| Case Number (Including Defendant Number) | Defendant Name | Joint and Several Amount |
|---|---|---|

☐      The defendant shall pay the cost of prosecution.

☐      The defendant shall pay the following court cost(s):

☐      The defendant shall forfeit the defendant's interest in the following property to the United States.  Payments against any money judgment ordered as part of a forfeiture order should be made payable to the United States of America, c/o United States Attorney, Attn: Asset Forfeiture Unit, 1200 Epic Center, 301 N. Main, Wichita, Kansas 67202.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

1329

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| vs. | ) | No. 12-10089-02-MLB |
| | ) | |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT GARCIA'S SENTENCING MEMORANDUM**

COMES NOW Defendant, Pedro Garcia, by and through his CJA appointed counsel, John Val Wachtel of Klenda Austerman LLC, and with this Sentencing Memorandum, moves the Court to impose the minimum incarceration sentence(s) allowed by law. In terms of this memorandum Mr. Garcia believes that that minimum incarceration sentences total 32 years.

INTRODUCTION

Following jury trial, the jury convicted Mr. Garcia on the nine counts with which he was charged and which arose out of a thirty-eight-count racketeering indictment. Defendant's convictions included, inter alia, Count 3, murder, in violation of 18 U.S.C. § 1959(a)(1); and two 18 U.S.C. § 924(c) offenses: Count 6, possession and discharge of a firearm in furtherance of a crime of violence, and Count 9, possessing and brandishing a firearm in furtherance of a crime of violence. Defendant's remaining convictions related to an alleged racketeering conspiracy, in violation of § 1962(d), and eight § 1959 violations. At sentencing, there are three legal issues which Mr. Garcia seeks the court to address. Defendant discusses these issues below.

DISCUSSION

A. The 21USC 1959(a)(1) Conviction

For this homicide count, the penalty section of the statute states provides, in pertinent part, as follows: "... for murder, by death or life imprisonment, **or** a fine under this title, **or** both." 18 USC 1959(a)(1)(emphasis added). Plain reading of the statute allows the court to impose a fine only. The three Circuit Courts of Appeals which have addressed this issue have found that a conviction under this provision requires a life sentence. *United States v. Rollness*, 561 F.3d 996, 998 (9th Cir. 2009) (holding § 1959(a)(1) requires a life sentence "[g]iven the absurd results that would flow" from the fine-only interpretation); *See also United States v. James*, 239 F.3d 120, 127 (2nd Cir. 2000); *United States v. Carson*, 455 F.3d 336, 385, n.44 (D.C. Cir. 2006).

Counsel for Mr. Garcia has not found a case in which the Tenth Circuit has addressed this issue. For his 18 USC 1959(a)(1) crime, Mr. Garcia respectfully asks the Court to impose only a fine. In light of the plain reading of the statute, in consideration of the sentence he must receive for the § 924(c) counts, and the § 3553(a) factors, including the substantially shorter sentences of similarly situated co-defendants who have been sentenced as of this writing. *See* Chart of Sentences of Co-Defendants, a copy of which is attached hereto, marked ATTACHMENT A, and incorporated herein by reference.

B.  The § 924(c) Convictions

Title 18 United States Code, Section 924(c) requires a mandatory minimum of seven (7) years for brandishing a firearm in furtherance of a crime of violence and a mandatory minimum of ten years for discharging a firearm in furtherance of such crime. 18 USC 924(c)(1)(A)(ii),(iii). However, a second or subsequent conviction under § 924(c) carries a sentence of twenty-five (25) years, even if the conviction arose out of the same indictment. 18 U.S.C. 924(c)(1)(C)(I). In this case, the jury convicted Mr. Garcia of one count of discharge and one count of brandishing. The case law supports imposing the seven (7) year brandishing sentence first, then the twenty-five (25)

2

year sentences, yielding an aggregate sentence for the two offenses of thirty-two 32 years.[1] *See*

*United States v. Washington*, 714 F.3d 962, 969-71 (6th Cir. 2013) (remanding for resentencing to 57

years from 60 years after applying the rule of lenity); *United States v. Major*, 676 F.3d 803, 814-15

(9th Cir. 2012) (applying the rule of lenity to multiple § 924(c) counts).

C. The remaining § 1961(d) and § 1959(a) Counts

With respect to the racketeering conspiracy and the remaining § 1959(a) Counts, Mr. Garcia

requests that these sentences be run concurrently to each other; and in the event a life sentence might

be imposed, concurrently with that sentence; and concurrently with Mr. Garcia's remaining un-

discharged federal prison sentence. Such an approach is consistent with the § 3553(a) factors and

U.S. Sentencing Guidelines Manual § 5G1.3(c)(p.s.).

D. The § 3553(a) Factors

Section 3553(a) requires the Court to consider an extensive list of factors, including the

sentences of similarly situated defendants. To date, none of the co-defendants in this case has

received a sentence longer than 120 months. Mr. Garcia's conduct in this case does not warrant a

sentence lengthy prison sentence of a term of years in excess of 32 years or more, life in prison, or

life in prison plus a sentence of 32 years or more. Such a sentence would be "greater than necessary"

to effectuate the purposes of § 3553(a). *See* § 3553(a).

---

1 Should the court impose a life sentence on Count 3, Mr. Garcia asks the court to consider not imposing any additional time on the § 924(c) counts. The decision in *Abbott v. United States*, 131 S. Ct. 18 (2010), appears to preclude this result; however, Mr. Garcia seeks to preserve this issue for review or in the event a reviewing court limits its reading of § 924(c)'s opening paragraph, as interpreted in *Abbott.* The relevant portion of that paragraph states, "Except to the extent that a greater minimum sentence is otherwise provided by this subsection **or by any other provision of law** . . . ." § 924(c)(a)(A) (emphasis added). Section 1959(a)(1)'s mandatory life sentence appears to qualify, although the *Abbott* Court suggests otherwise. In any event, Mr. Garcia argues that a sentence of life plus 32 years violates the Eighth Amendment's prohibition against cruel and unusual punishment and due process of law, because it is absurd and cannot be executed. Such a sentence is also not consistent with § 3553(a).

CONCLUSION

For the reasons above, Defendant moves the Court to impose a prison sentence of thirty-two (32) years.  In addition, Mr. Garcia requests that the court impose a fine only for his conviction on Count 3 of the Indictment.

Respectfully submitted:

s/John Val Wachtel
John Val Wachtel
KS S.C. No. 08310
Attorney for Defendant Pedro Garcia
KLENDA AUSTERMAN LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele.: (316) 267-0331
Fax: (316) 267-0333
E-mail:  jvwachtel@klendalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2013, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to the counsel of record.

s/John Val Wachtel
John Val Wachtel

KA Doc. 2202061

# ATTACHMENT A

## <u>USA v. Gonzalo Ramirez, et al.</u>
Case No. 12-10089-03 MLB

Co-defendants's Sentencing Chart

| <u>Name of Defendant</u> | <u>Length of Sentence</u> | <u>Docket Entry No.</u> |
|---|---|---|
| Banda-Hernandez, Alfonso | 72 months | 796 |
| Cerda, Angel | 78 months | 757 |
| Flores, Joshua | 84 months | 768 |
| Gobin, Enrique | 120 months | 755 |
| Gusman, Andrew | 21 months | 847 |
| Najera, Jason | 120 months | 614 |
| Neave, Fabian | 60 months | 856 |
| Neave, Jose | 78 months | 710 |
| Ortiz, Humberto | 46 months | 502 |
| Quezada, Hernan | 33 months | 766 |
| Sierra-Medrano, Eusebio | 120 months | 861 |
| Torres, Jesus | 36 months | 753 |

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 1

# United States District Court
## District of Kansas

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>Pedro  Garcia | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number:  6:12CR10089 - 002<br>USM Number:  20432-031<br>Defendant's Attorney:  John V. Wachtel |

## THE DEFENDANT:

☐     pleaded guilty to count(s): ___.

☐     pleaded nolo contendere to count(s) ___ which was accepted by the court.

☒     was found guilty by jury trial on count(s) <u>1, 2, 3, 4, 5, 6, 7, 8, and 9 of the Indictment</u> after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| See Next Page | | | |

     The defendant is sentenced as provided in pages 1 through 7 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐     The defendant has been found not guilty on count(s) ___.

☐     Count(s) ___ is dismissed on the motion of the United States.

     IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

<div align="center">

01/06/2014
_____
Date of Imposition of Judgment

s/ Monti Belot
_____
Signature of Judge

Honorable Monti L. Belot, U.S. District Judge
_____
Name & Title of Judge

1/7/14
_____
Date

</div>

AO 245B   (Rev. 09/11 - D/KS 08/12) Judgment in a Criminal Case
Sheet 1A

DEFENDANT:     Pedro  Garcia
CASE NUMBER:   6:12CR10089 - 002

# ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1962(d) | CONSPIRACY TO COMMIT RACKETEERING ACTIVITIES | 04/16/2012 | 1 |
| 18 U.S.C. § 1959(a)(5) | VIOLENT CRIMES IN AID OF RACKETEERING- CONSPIRACY TO COMMIT MURDER | 06/08/2009 | 2 |
| 18 U.S.C. § 1959(a)(1) | VIOLENT CRIMES IN AID OF RACKETEERING – MURDER | 06/08/2009 | 3 |
| 18 U.S.C. § 1959(a)(5) | VIOLENT CRIMES IN AID OF RACKETEERING - ATTEMPTED MURDER | 06/08/2009 | 4 |
| 18 U.S.C. § 1959(a)(3) | VIOLENT CRIMES IN AID OF RACKETEERING - ASSAULT WITH A DANGEROUS WEAPON | 06/08/2009 | 5 |
| 18 U.S.C. § 924(c)(1)(A) | POSSESSION AND DISCHARGE OF FIREARM IN FURTHERANCE OF CRIME OF VIOLENCE | 06/08/2009 | 6 |
| 18 U.S.C. § 1959(a)(3) | VIOLENT CRIMES IN AID OR RACKETEERING - ASSAULT WITH A DANGEROUS WEAPON | 06/08/2009 | 7 |
| 18 U.S.C. § 1959(a)(6) | VIOLENT CRIMES IN AID OF RACKETEERING - CONSPIRACY TO COMMIT ASSAULT WITH A DANGEROUS WEAPON | 06/08/2009 | 8 |
| 18 U.S.C. § 924(c)(1)(A) | POSSESS AND BRANDISH A FIREARM IN FURTHERANCE OF A CRIME OF VIOLENCE - AGGRAVATED ROBBERY | 06/08/2009 | 9 |

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 2 - Imprisonment

Judgment – Page **3** of **7**

DEFENDANT:       Pedro  Garcia
CASE NUMBER:   6:12CR10089 - 002

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of <u>Life plus 32 years to be served consecutively</u> .

    Count 3:  Life;
    Counts 2 and 4:  120 months, each count, said terms to run concurrently with Counts 1, 3, 5, 7 and 8;
    Counts 1, 5 and 7:  240 months, each count, said terms to run concurrently with Counts 2, 3, 4, and 8;
    Count 8:  36 months, said term to run concurrently with Counts 1, 2, 3, 4, 5, 7, and 8;
    Count 9:  7 years, said term to run consecutively to all other counts.
    Count 6:  25 years, said term to run consecutively to all other counts.

☐    The Court makes the following recommendations to the Bureau of Prisons:

☒    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district.

    ☐ at ___ on ___.

    ☐ as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before ___ on ___.

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
Deputy U.S.  Marshal

AO 245B    (Rev. 09/11 - D/KS 08/12)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

DEFENDANT:       Pedro  Garcia
CASE NUMBER:   6:12CR10089 - 002

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of <u>three (3) years</u>.

Counts 1-7 and 9:  3 years, each count, said terms to run concurrently with each other and Count 8;
Count 8:  1 year, said term to run concurrently with all other counts.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐        The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check if applicable)*

☒        The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check if applicable)*

☒        The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check if applicable)*

☐        The defendant shall register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student.  For initial registration purposes only, the defendant shall also register in the jurisdiction in which convicted, if such jurisdiction is different from the jurisdiction of residence.  Registration shall occur not later than 3 business days after being sentenced, if the defendant is not sentenced to a term of imprisonment.  The defendant shall, not later than 3 business days after each change in name, residence, employment, or student status, appear in person in at least one jurisdiction in which the defendant is registered and inform that jurisdiction of all changes in the information required.  *(Check if applicable)*

☐        The defendant shall participate in an approved program for domestic violence. *(Check if applicable)*

If this judgment imposes a fine or restitution, it is to be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without permission of the court or probation officer;
2)    the defendant shall report to the probation officer in a manner and frequency directed by the court or the probation officer;
3)    the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4)    the defendant shall support his or her dependents and meet other family responsibilities;
5)    the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substances or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)    the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B      (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
             Sheet 3C - Supervised Release

Judgment – Page **5** of **7**

DEFENDANT:      Pedro  Garcia
CASE NUMBER:    6:12CR10089 - 002

# SPECIAL CONDITIONS OF SUPERVISION

1.    The defendant shall successfully participate in an approved program for substance abuse, which may include urine, breath, or sweat patch testing, outpatient and/or residential treatment, and share in the costs, based on the ability to pay. The defendant shall abstain from the use of alcohol and other intoxicants during said treatment program as directed by the Probation Office.

2.    The defendant shall abstain from the use of alcohol during the term of supervision.

3.    The defendant shall not be a member of any street gang, participate in any gang-related activities, or associate with any gang members during the term of supervision. The defendant shall comply with any curfew established by the probation officer, who may utilize electronic monitoring to verify the defendant's compliance with the curfew schedule. As instructed by the probation officer, the defendant may be required to maintain a telephone at the defendant's place of residence without call forwarding, caller ID, call waiting, portable cordless telephones, answering machines/service, or any other feature or service which would interfere with the operation of electrical monitoring equipment. The defendant may be required to wear an electronic monitoring device, which may include Global Positioning System and/or Random Tracking, and follow electronic monitoring procedures specified by the probation officer. Additionally, the probation officer may restrict the defendant from certain areas within the community, and the defendant must comply with these restrictions. The defendant shall assist in the costs of home confinement, based on the ability to pay, at the direction of the probation officer.

4.    The defendant shall submit his/her person, house, residence, vehicle(s), papers, business or place of employment and any property under the defendant's control to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

5.    The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon.

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 5 - Criminal Monetary Penalties

DEFENDANT:      Pedro  Garcia
CASE NUMBER:    6:12CR10089 - 002

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the Schedule of Payments set forth in this Judgment.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $900, representing $100 per count | Waived | Not applicable |

☐      The determination of restitution is deferred until ___. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐      The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

      If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Totals: | $ | $ | |

☐      Restitution amount ordered pursuant to plea agreement $___ .

☐      The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options set forth in this Judgment may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐      The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

    ☐ the interest requirement is waived for the ☐ fine and/or ☐ restitution.

    ☐ the interest requirement for the ☐ fine and/or ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 09/11 - D/KS 08/12)  Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

DEFENDANT:      Pedro  Garcia
CASE NUMBER:   6:12CR10089 - 002

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A    ☐    Lump sum payment of $___ due immediately, balance due
          ☐ not later than ___, or
          ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B    ☒    Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☒ F below); or

C    ☐    Payment in monthly installments of not less than 5% of the defendant's monthly gross household income over a period
          of ___ years to commence ___ days after the date of this judgment; or

D    ☐    Payment of not less than 10%  of the funds deposited each month into the inmate's trust fund account and monthly
          installments of not less than 5% of the defendant's monthly gross household income over a period of ____ years, to
          commence ___ days after release from imprisonment to a term of supervision;  or

E    ☐    Payment during the term of supervised release will commence within ____ (e.g., 30 or 60 days) after release from
          imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that
          time; or

F    ☒    Special instructions regarding the payment of criminal monetary penalties:

If restitution is ordered, the Clerk, U.S. District Court, may hold and accumulate restitution payments, without distribution, until the
amount accumulated is such that the minimum distribution to any restitution victim will not be less than $25.

Payments should be made to Clerk, U.S. District Court, U.S. Courthouse - Room 259, 500 State Avenue, Kansas City, Kansas 66101.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is
due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐    Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount Joint and Several Amount and
corresponding payee, if appropriate.

| Case Number (Including Defendant Number) | Defendant Name | Joint and Several Amount |
|---|---|---|
| | | |

☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall pay the following court cost(s):

☐    The defendant shall forfeit the defendant's interest in the following property to the United States.  Payments against any
     money judgment ordered as part of a forfeiture order should be made payable to the United States of America, c/o United
     States Attorney, Attn: Asset Forfeiture Unit, 1200 Epic Center, 301 N. Main, Wichita, Kansas 67202.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Wichita Docket)

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
|              ) | |
|       Plaintiff,    ) | |
|              ) | |
| vs.                 ) | Case No. 12-10089-02-MLB |
|              ) | |
| PEDRO GARCIA,       ) | |
|              ) | |
|      Defendant.   ) | |
|              ) | |

**NOTICE OF APPEAL OF DEFENDANT PEDRO GARCIA**

COMES NOW the defendant, Pedro Garcia, by and though his court appointed CJA attorney of record, John Val Wachtel, and pursuant to Rule 3 of the Federal Rules of Appellate Procedure, hereby gives notice of his appeal to the United States Court of Appeals for the Tenth Circuit, from his conviction, from all adverse rulings made against him during the pendency of this matter before the District Court, and from the sentence imposed upon him by that court on January 6, 2014, and filed of record by the court in its Judgment in a Criminal Case (Doc. 892) on January 7, 2014.

Respectfully submitted,

KLENDA AUSTERMAN LLC

By:  s/John Val Wachtel
     John V. Wachtel, #08310
     301 North Main, Suite 1600
     Wichita, KS  67203
     Tele. 316.267.0331
     Fax   316.267.0315
     E-mail: jvwachtel@klendalaw.com
     Attorney for Defendant Pedro Garcia

2

CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2014, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send electronic notice of this filing to all counsel of record, and a copy was mailed via the U.S. Postal Service to:

Pedro Garcia
Butler County Detention Facility
710 SE Stone Rd
El Dorado, KS 67042

s/John Val Wachtel
John Val Wachtel

Klenda Doc. 2210374

2

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT
### OFFICE OF THE CLERK
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker
Clerk of Court

January 09, 2014

Douglas E. Cressler
Chief Deputy Clerk

Mr. John Valentine Wachtel
Klenda Austerman LLC
301 North Main, Suite 1600
Wichita, KS 67203

RE:     **14-3006, United States of America v. Garcia**
        Dist/Ag docket: 6:12-CR-10089-MLB-2

Dear Counsel:

The court has received and docketed your appeal. Please note your case number above. Copies of the Tenth Circuit Rules, effective January 1, 2014, and the Federal Rules of Appellate Procedure, effective December 1, 2013, may be obtained by contacting this office or by visiting our website at http://www.ca10.uscourts.gov. In addition, please note all counsel are required to file pleadings via the court's Electronic Case Filing (ECF) system. You will find information regarding registering for and using ECF on the court's website. We invite you to contact us with any questions you may have about our operating procedures. Please note that all court forms are now available on the court's web site. Outlined below are some of the requirements for prosecuting this appeal.

Attorneys must complete and file an entry of appearance form within 14 days of the date of this letter. *See* 10th Cir. R. 46.1(A). Pro se parties must complete and file the form within thirty days of the date of this letter. Appellant's failure to enter an appearance may cause the appeal to be dismissed. An appellee who fails to enter an appearance may not receive notice or service of orders. If an appellee does not wish to participate in the appeal, a notice of non-participation should be filed via ECF as soon as possible. The notice should also indicate whether counsel wishes to continue receiving notice or service of orders issued in the case.

Although attorneys who file a notice of appeal have technically entered an appearance, and may not withdraw without the court's permission, counsel must still file a separate entry of appearance form. For criminal appeals, please note the court will require trial counsel to continue the representation whether retained or appointed, even if you did not sign the notice of appeal. *See* 10th Cir. R. 46.3(A). This continuity of counsel ensures that any criminal defendant who wishes to appeal has that appeal perfected.

Generally, the court will not allow counsel to withdraw until an entry of appearance form and the docketing statement are filed. *See* 10th Cir. R. 46.3(A). If there is an issue regarding the defendant's eligibility for the appointment of counsel, an appropriate motion must be filed in the district court. *See* 10th Cir. R. 46.4(A).

You are required to file a docketing statement within 14 days of filing the notice of appeal. If you have not yet filed that pleading, you should do so within 14 days of the date of this letter. Please note that under local rule 3.4(C), the appellant is not limited to the issues identified in his docketing statement and may raise other appropriate issues in the opening brief. In addition to the docketing statement, all transcripts must be ordered within 14 days of the date of this letter. If no transcript is necessary, you must file a statement to that effect.

As appointed counsel, you are required to file a designation of record with the district court. You must also file a copy with this court. Under 10th Cir. R. 10.2(A)(1), that designation must be filed within 14 days of filing the notice of appeal. If you have not done so already, you should file the designation immediately.

Under local rule 10.2(A)(2), the government may file an additional designation within 14 days after service of appellant's designation. Once that time passes, the district court will complete assembly of the record. The district court clerk will transmit the record to this court and will notify the parties. *See* Fed. R. App. P. 11(b); 10th Cir. R. 11.2(A).

The opening brief is due forty days after the appellate record is filed. *See* Fed. R. App. P. 31(a)(1); *see also* 10th Cir. R. 31.1(A). We will notify you when that happens. Likewise, at that time, the Circuit will appoint you formally under the Criminal Justice Act. This formality ensures that you receive compensation under the Criminal Justice Act for your efforts in this appeal.

With regard to briefing, please note that you must satisfy all the requirements of Fed. R. App. P. 28 and 32. In addition, please review Tenth Circuit local rules 28.1, 28.2, 32.1 and 31.3. Seven hard copies of briefs must be provided to the court within two days of filing via the court's Electronic Case Filing system. *See* 10th Cir. R. 31.5 and the court's CM/ECF User's Manual. Motions for extension of time to file briefs must comply with 10th Cir. R. 27.3, 27.4(B), 27.4(E), where applicable, and 27.4(F). These motions are not favored.

Thank you very much for your service to the court in your role as appointed counsel. If you are unfamiliar with the court's procedures or have questions, please call this office. In addition, you might also call the Appellate Division, created by the court to handle appeals circuit-wide, of the Office of the Federal Public Defender in Denver. That number is 303-294-7002. One of the appellate assistants will be happy to help you.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

cc:      Aaron L. Smith
         Lanny D. Welch

EAS/at

3

1347

```
MIME-Version:1.0
From:KSD_CMECF@ksd.uscourts.gov
To:ksd_nef@localhost.localdomain
Bcc:
--Case Participants: David M. Rapp (drapp@hinklaw.com, lcatlin@hinklaw.com,
lvitanova@hinklaw.com), John V. Wachtel (jvwachtel@klendalaw.com), Michael D. Hepperly
(mhepperly@aol.com), Jeff L. Griffith (jlgriffithlaw@aol.com), Molly M. Gordon
(karin@depewgillen.com, molly@depewgillen.com), Edward L. Robinson
(blythe@josephhollander.com, erobinson@josephhollander.com, meaghan@josephhollander.com),
David H. Moses (dmoses@cmzwlaw.com, heather@cmzwlaw.com), Mark A. Sevart
(markchrissevart@yahoo.com), Mark T. Schoenhofer (jenniferlewilson@yahoo.com,
mydefensefirst@yahoo.com), Timothy J. Henry (jackie_carter@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org, tim_henry@fd.org), Charles A. O'Hara
(ohara@oharaohara.com), Kevin W. Loeffler (kloeffler@lawyer.com), Gregory D. Bell
(gbell@forkersuter.com), Joel Mandelman (jackie_carter@fd.org, joel_mandelman@fd.org,
lorraine_schroeder@fd.org, sharon_padgett@fd.org), Paul S. McCausland
(p.mccausland@youngboglelaw.com), Derek S. Casey (dscasey@twgfirm.com,
jodownum@twgfirm.com), Mark L. Bennett, Jr (dmayfield@mlbjrlaw.com, mark@mlbjrlaw.com),
Christopher S. O'Hara (ohara@oharaohara.com), James R. Pratt (jim.prattesq@gmail.com,
jim@jamesrprattlaw.com), Roger L. Falk (courtney_unruh@sbcglobal.net,
dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net, roger_falk@sbcglobal.net), Lanny D.
Welch (lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov), Jessica M. Burtin
(jshannon@hinklaw.com), Aaron L. Smith (aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov),
Jay F. Fowler (jfowler@foulston.com, lclark@foulston.com), Carl Fredrick A. Maughan
(carl@mlglc.com), Sean C. McEnulty (s@mcenultylawfirm.com), Michael J. Shultz
(lura@shultzlaw.net, michael@shultzlaw.net), Eric A. Hartenstein
(erichartenstein@att.net), District Judge Monti L. Belot
(ksd_belot_chambers@ksd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:3175365@ksd.uscourts.gov
Subject:Activity in Case 6:12-cr-10089-MLB USA v. Najera et al Motion for New Trial
```
Content–Type: text/html

## U.S. District Court

## DISTRICT OF KANSAS

## Notice of Electronic Filing

The following transaction was entered by Wachtel, John on 1/23/2014 at 1:01 PM CST and filed on 1/23/2014

| | |
|---|---|
| **Case Name:** | USA v. Najera et al |
| **Case Number:** | 6:12–cr–10089–MLB |
| **Filer:** | Dft No. 2 – Pedro Garcia |
| **Document Number:** | 914 |

**Docket Text:**
 **MOTION for New Trial *PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 33 (Defendant's first post–trial motion)* by Pedro Garcia. (Attachments: # (1) Exhibit A and B)(Wachtel, John)**

**6:12–cr–10089–MLB–2 Notice has been electronically mailed to:**

Aaron L. Smith &nbsp &nbsp aaron.smith3@usdoj.gov, robin.wilson@usdoj.gov

Carl Fredrick A. Maughan &nbsp &nbsp carl@mlglc.com

Charles A. O'Hara &nbsp &nbsp ohara@oharaohara.com

Christopher S. O'Hara &nbsp &nbsp ohara@oharaohara.com

David H. Moses &nbsp &nbsp dmoses@cmzwlaw.com, heather@cmzwlaw.com

David M. Rapp &nbsp &nbsp drapp@hinklaw.com, lcatlin@hinklaw.com, lvitanova@hinklaw.com

Derek S. Casey &nbsp &nbsp dscasey@twgfirm.com, JODownum@twgfirm.com

Edward L. Robinson &nbsp &nbsp erobinson@josephhollander.com, blythe@josephhollander.com, meaghan@josephhollander.com

Eric A. Hartenstein &nbsp &nbsp erichartenstein@att.net

Gregory D. Bell &nbsp &nbsp gbell@forkersuter.com

James R. Pratt &nbsp &nbsp jim@jamesrprattlaw.com, jim.prattesq@gmail.com

Jay F. Fowler &nbsp &nbsp jfowler@foulston.com, lclark@foulston.com

Jeff L. Griffith &nbsp &nbsp jlgriffithlaw@aol.com

Jessica M. Burtin &nbsp &nbsp jshannon@hinklaw.com

Joel Mandelman &nbsp &nbsp joel_mandelman@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

John V. Wachtel &nbsp &nbsp jvwachtel@klendalaw.com

Kevin W. Loeffler &nbsp &nbsp kloeffler@lawyer.com

Lanny D. Welch &nbsp &nbsp lanny.welch@usdoj.gov, tracy.ballard@usdoj.gov

Mark T. Schoenhofer &nbsp &nbsp mydefensefirst@yahoo.com, jenniferlewilson@yahoo.com

Mark L. Bennett , Jr &nbsp &nbsp mark@mlbjrlaw.com, dmayfield@mlbjrlaw.com

Mark A. Sevart &nbsp &nbsp markchrissevart@yahoo.com

Michael J. Shultz &nbsp &nbsp michael@shultzlaw.net, lura@shultzlaw.net

Michael D. Hepperly &nbsp &nbsp mhepperly@aol.com

Molly M. Gordon &nbsp &nbsp molly@depewgillen.com, karin@depewgillen.com

Paul S. McCausland &nbsp &nbsp p.mccausland@youngboglelaw.com

Roger L. Falk &nbsp &nbsp roger_falk@sbcglobal.net, courtney_unruh@sbcglobal.net,

Appellate Case: 14-3006   Document: 23-1   Date Filed: 04/01/2014   Page: 1344

dee_falk@sbcglobal.net, ianm_clark@sbcglobal.net

Sean C. McEnulty &nbsp &nbsp s@mcenultylawfirm.com

Timothy J. Henry &nbsp &nbsp Tim_Henry@fd.org, jackie_carter@fd.org, lorraine_schroeder@fd.org, sharon_padgett@fd.org

**6:12−cr−10089−MLB−2 Notice has been delivered by other means to:**

Jason Najera(Terminated)
701 SE Stone Road
ElDorado, KS 67042

The following document(s) are associated with this transaction:

# CLERK'S CERTIFICATE

I, TIMOTHY M. O'BRIEN, Clerk of the United States District Court for the District of Kansas, do hereby certify that the foregoing pages are copies of original pleadings, orders, papers and transcripts of the court reporter, in a case lately pending in this court, wherein

| | | |
|---|---|---|
| USA | ) ) | |
| | Appellee ) | |
| | ) ) | |
| | ) | USDC No.  12-cr-10089-MLB-2 |
| | ) | |
| vs. | ) ) | USCA No.  14-3006 |
| | ) ) ) ) ) ) | |
| Pedro Garcia | ) | |
| | Appellant ) | |

IN TESTIMONY to the above, I do hereunto sign my name and affix the seal of the Court at ____Wichita____, Kansas this ___1___ day of _____April_____, 2014 .

TIMOTHY M. O'BRIEN, CLERK

By:  S/ A. Anderson
_____
Deputy Clerk